# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| Consumer Financial Protection Bureau, | ) | |
| | ) | |
| | ) | |
| *Plaintiff,* | ) | Civil Action No. 3:CV-17-00101 |
| | ) | (Hon. Robert D. Mariani) |
| v. | ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |
| Navient Corporation, *et al.,* | ) | |
| | ) | Electronically Filed |
| *Defendants.* | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT
## UNDER RULE 12(b)(6) OR, IN THE ALTERNATIVE,
## FOR A MORE DEFINITE STATEMENT UNDER RULE 12(e)

Matthew T. Martens (DC 1019099)
  (*pro hac vice*)
Jonathan E. Paikin (DC 466445)
  (*pro hac vice*)
Daniel P. Kearney (DC 977148)
  (*pro hac vice* petition forthcoming)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
matthew.martens@wilmerhale.com
jonathan.paikin@wilmerhale.com
daniel.kearney@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

Daniel T. Brier (PA 52348)
Donna A. Walsh (PA 74833)
Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
dbrier@mbklaw.com
dwalsh@mbklaw.com
Tel: 570-342-6100
Fax: 570-342-6147

*Counsel for Navient Corporation, Navient Solutions, LLC,
and Pioneer Credit Recovery, Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................1

PROCEDURAL HISTORY................................................................4

FACTUAL BACKGROUND ...........................................................4

    I.    FEDERAL STUDENT LOAN SERVICING REQUIREMENTS...........................4

    II.    OPTIONS AVAILABLE TO FEDERAL BORROWERS UNABLE TO MAKE THEIR DEBT PAYMENTS ........................................7

        A.    Forbearance ..............................................................8

        B.    Income-Driven Repayment Programs .......................................9

    III.    THE COMPLAINT'S ALLEGATIONS .....................................10

STATEMENT OF QUESTIONS INVOLVED...................................12

ARGUMENT ...................................................................12

    I.    CFPB'S UDAAP CLAIMS EXCEED ITS STATUTORY AUTHORITY.........12

    II.    THE DIRECTOR LACKS CONSTITUTIONAL AUTHORITY TO BRING THIS ACTION ......................................................15

    III.    CFPB HAS FAILED TO STATE A CLAIM AS TO COUNTS I–IV, VI, AND VII–X ........................................................18

        A.    Counts I And II Should Be Dismissed Because Navient Owed No Duty To Provide Individualized Financial Counseling ................................................18

            1.    Count I should be dismissed because, as a matter of law, borrowers cannot reasonably rely on a loan servicer to serve as a fiduciary ...........................20

            2.    Count II should be dismissed because borrowers had broad access to information regarding repayment options, rendering any alleged harm avoidable...........................23

        B.    Count III Should Be Dismissed Because CFPB Has Failed To Show That Links In Email Notices Created An Unreasonable Obstacle.................................25

        C.    Count IV Should Be Dismissed Because There Is Nothing Misleading About Navient's IDR Renewal Notice ....................................................27

D.    CFPB Should Provide A More Definite Statement For
      Count VI ...................................................................................29

E.    The Claims Against Pioneer (Counts VII–X) Should Be
      Dismissed Because Fraudulent Activity Cannot Be
      Pleaded On "Information And Belief" And, In Any
      Event, CFPB Has Not Stated A Cognizable Claim .................30

      1.    Pleading fraud on "information and belief" is not
            permitted under Rule 9(b) ...............................................30

      2.    No facts are alleged showing that Pioneer's statements
            would have been material to a borrower's decision to
            escape default .................................................................31

CONCLUSION .....................................................................................33

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alpine Bank v. Hubbell*, 555 F.3d 1097 (10th Cir. 2009) ........................................23

*Angino v. Wells Fargo Bank, N.A.*, No. 15-418, 2016 WL 787652
    (M.D. Pa. Feb. 19, 2016) .....................................................................29

*Barron Partners, LP v. Lab123, Inc.*, 593 F. Supp. 2d 667
    (S.D.N.Y. 2009) ....................................................................................22

*Bret Binder v. Weststar Mortg., Inc.*, No. 14-7073, 2016 WL 3762710
    (E.D. Pa. July 13, 2016) ......................................................................21

*Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294
    (3d Cir. 2008) .......................................................................................28

*Casey v. Fla. Coastal Sch. of Law, Inc.*, No. 14-1229, 2015 WL
    10096084 (M.D. Fla. 2015) .................................................................24

*Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010) .....................................................5

*Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 132 S. Ct.
    2156 (2012) ..........................................................................................14

*CFPB v. Intercept Corp.,* No. 16-00144, Doc. 46 (D.N.D. Mar. 17,
    2017) .....................................................................................................23

*CFPB v. Prime Mktg. Holdings, LLC*, No. 16-07111, Doc. 32 (C.D.
    Cal. Nov. 15, 2016) .............................................................................31

*Clark v. Martinez*, 543 U.S. 371 (2005) .....................................................................14

*Clark v. McDonald's Corp.*, 213 F.R.D. 198 (D.N.J. 2003) .....................................29

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012) ...........23, 24, 26

*Dommel Props., LLC v. Jonestown Bank & Trust Co.*, No. 11-2316,
    2013 WL 1149265 (M.D. Pa. Mar. 19, 2013) ...................................23

*Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604
    (3d Cir. 1995) .......................................................................................20

*F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239,
132 S. Ct. 2307 (2012)............................................................................14, 15

*Fed. Election Comm'n v. NRA Political Victory Fund*, 6 F.3d 821
(D.C. Cir. 1993) ...........................................................................................18

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007) ........................................30

*Humphrey's Executor v. United States*, 295 U.S. 602,
55 S. Ct. 869 (1935)......................................................................................17

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410
(3d Cir. 1997)..........................................................................................6, 11

*In re Merck & Co., Sec. Derivative & Erisa Litig.*, No. 05-2369, 2006
WL 2050577 (D.N.J. July 11, 2006) .............................................................22

*In re Westinghouse Sec. Litig.*, 90 F.3d 696 (3d Cir. 1996) ...................................30

*Jensen v. Pressler & Pressler*, 791 F.3d 413 (3d Cir. 2015)...................................32

*Morrison v. Olson*, 487 U.S. 654 (1988) ......................................................15, 17,18

*Mortellite v. Novartis Crop Prot., Inc.*, 460 F.3d 483 (3d Cir. 2006) ....................22

*Myers v. United States*, 272 U.S. 52 (1926) ...........................................................16

*Oran v. Stafford*, 226 F.3d 275 (3d Cir. 2000) .......................................................21

*Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47
(3d Cir. 1988)...............................................................................................21

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241
(3d Cir. 2011)...............................................................................................28

*PHH Corp. v. CFPB*, 839 F.3d 1 (D.C. Cir. 2016), *reh'g en banc*
*granted* (D.C. Cir. Feb. 16, 2017) ............................................................2, 16

*Shapiro v. UJB Fin. Corp.*, 964 F.2d 272 (3d Cir. 1992).......................................31

*Temp-Way Corp. v. Cont'l Bank*, 139 B.R. 299 (E.D. Pa. 1992) ...........................21

*Thomas v. Indep. Twp.*, 463 F.3d 285 (3d Cir. 2006)..............................................29

*United States v. Eastwick Coll.*, 657 F. App'x 89 (3d Cir. 2016) ..........................31

*Wilson v. Quadramed Corp.*, 225 F.3d 350 (3d Cir. 2000) ....................................28

*Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295 (D.N.J. 2005),
    *aff'd sub nom.*, 691 F.3d 527 (3d Cir. 2012) ..................................................31

## STATUTES, RULES, AND REGULATIONS

12 C.F.R. § 1026, Supp. I, Part 3 ............................................................................26

34 C.F.R. § 682.202 ...........................................................................................5, 8

34 C.F.R. § 682.205 ........................................................................................10, 19

34 C.F.R. § 682.208 ..............................................................................................5

34 C.F.R. § 682.209 ...........................................................................................5, 7

34 C.F.R. § 682.210 ..............................................................................................5

34 C.F.R. § 682.211 ........................................................................................5, 8, 9

34 C.F.R. § 682.215 ...........................................................................................9, 25

34 C.F.R. § 682.221 ........................................................................................10, 25

34 C.F.R. § 682.410 ............................................................................................32

34 C.F.R. § 682.700 ..............................................................................................5

34 C.F.R. § 682.706 ..............................................................................................5

34 C.F.R. § 685.202 ..............................................................................................5

34 C.F.R. § 685.204 ..............................................................................................5

34 C.F.R. § 685.205 ...........................................................................................5, 8

34 C.F.R. § 685.208 ...........................................................................................5, 7

34 C.F.R. § 685.221 ..............................................................................................9

874 Fed. Reg. 36,572 (July 23, 2009).....................................................................26

77 Fed. Reg. 42,086-01 (July 17, 2012) ....................................................6

78 Fed. Reg. 10,963 (Feb. 14, 2013) ...............................................26, 27

5 U.S.C. § 1212 .............................................................................17

5 U.S.C. § 1216 .............................................................................17

12 U.S.C. § 4511 ...........................................................................17

12 U.S.C. § 5491 .....................................................................15, 16

12 U.S.C. § 5492 ...........................................................................17

12 U.S.C. § 5497 ...........................................................................16

12 U.S.C. § 5531 ...................................................................*passim*

15 U.S.C. § 1692 ...........................................................................30

15 U.S.C. § 1692k .........................................................................32

20 U.S.C. § 1071 ............................................................................5

20 U.S.C. § 1077 .....................................................................10, 19

20 U.S.C. § 1078 ............................................................................7

20 U.S.C. § 1082 ............................................................................5

20 U.S.C. § 1083 .....................................................................10, 19

20 U.S.C. § 1087a ...........................................................................5

20 U.S.C. § 1087e ...................................................................6, 7, 10

20 U.S.C. § 1087f ...........................................................................6

20 U.S.C. § 1097 ...........................................................................28

20 U.S.C. § 1098a ...........................................................................6

31 U.S.C. § 3720A .........................................................................32

Health Care and Education Reconciliation Act, Pub. L. No. 111-152,
    § 2201, 124 Stat. 1029, 1074 (2010) ...............................................................5

Higher Education Act, Pub. L. No. 89-329, 79 Stat. 1219 (1965) ..........................4

U.S. Const. art. II, § 3 ............................................................................................15

## OTHER AUTHORITIES

CFPB Supervision and Examination Manual, Consumer Laws and
    Regulations: Deceptive Acts or Practices (2012),
    http://files.consumerfinance.gov/f/201210_cfpb_supervision-
    and-examination-manual-v2.pdf....................................................................28

CFPB Supervision and Examination Manual, Education Loan
    Examination Procedures (2013),
    http://files.consumerfinance.gov/f/201312_cfpb_exam-
    procedures_education-loans.pdf .....................................................................9

OCC Advisory Letter, Electronic Consumer Disclosures and Notices
    (Oct. 1, 2004) ...............................................................................................26

# PRELIMINARY STATEMENT

This lawsuit is a brazen attempt by the current Director of the Consumer Financial Protection Bureau ("CFPB") to impose new, after-the-fact rules on the servicing and collection of federal student loans and apply those rules to a single servicer, Navient.  For decades, the Higher Education Act ("HEA") has set forth the legal requirements governing the conduct of entities that service federal student loans.  The Department of Education, which administers the HEA and the entire program of federally backed and federally issued student loans, has promulgated comprehensive regulations prescribing the disclosures and repayment options provided to borrowers.  Moreover, federally issued loans are serviced by Navient (and other private entities) pursuant to Department of Education contracts, which specify in minute detail how servicers are supposed to collect payments and communicate with borrowers and, importantly, how servicers are paid for these activities.[1]  There is no allegation that Navient violated any of these established legal rules, regulations, or contract requirements.

After years investigating the company—and not finding violations of any *actual* servicing rules—this lawsuit invents new rules from whole cloth and claims that Navient failed to comply with them in the past.  The purported basis for most

---

[1] In this brief, "Navient" refers to Navient Solutions, LLC.  Navient Corporation is a holding company that does not engage in any student lending or servicing activities.  It joins in this motion, but it is not a proper defendant in this lawsuit.

of these claims is the CFPB's authority to prevent acts or practices it identifies as "unfair" or "abusive."  12 U.S.C. § 5531.  According to the CFPB, within these vague and undefined terms lie *additional* unannounced servicing requirements beyond those set forth in the comprehensive regulatory and contractual architecture governing federal student loans, and those requirements apply solely to Navient. This case is an attempt by one federal agency to impose penalties and fines on a single company acting pursuant to regulations promulgated by, and under contract as the agent of, *another* federal agency.  The Complaint must be dismissed for three reasons.

*First*, the CFPB is not permitted to bring an enforcement action for unfair, deceptive, or abusive acts or practices ("UDAAP") without first promulgating regulations defining *what* is unlawful.  The Consumer Financial Protection Act ("CFP Act") does not authorize the CFPB to bring surprise actions "declar[ing]" certain practices illegal without notice and simultaneously seek penalties for those actions in the past.  Nor does due process allow it.  Counts I–VIII should be dismissed.

*Second*, as a panel of the D.C. Circuit recently found, the CFPB's structure cannot be squared with the Constitution's vesting of executive authority in the President.  *PHH Corp. v. CFPB*, 839 F.3d 1, 19–22 (D.C. Cir. 2016), *reh'g en*

*banc granted* (D.C. Cir. Feb. 16, 2017).  Because the CFPB's Director lacked

constitutional authority to bring this lawsuit, it is invalid and must be dismissed.

*Finally*, even assuming the truth of the CFPB's allegations, nine out of the

eleven counts in the Complaint fail as a matter of law.[2]

> **Counts I and II**:  Navient is a loan servicer hired to collect payments at arm's-length from borrowers; it is not a fiduciary financial advisor. Nevertheless, the CFPB alleges that Navient failed to provide "costly" financial counseling to borrowers to urge them to enroll in alternative repayment plans.  There is no allegation that Navient failed to disclose these plans to borrowers in writing multiple times, as Federal regulations require.

> **Count III**:  The Complaint declares as illegal emails directing borrowers to click on an embedded link to access a notice with sensitive information. This practice is widely accepted in federal law and recommended elsewhere by federal regulators, including the OCC, FTC, and CFPB itself.

> **Count IV**:  Alleging deception, the CFPB cherry-picks a sentence from a two-page recertification letter to argue that borrowers were misled that there would be no consequence for submitting inaccurate or incomplete information.  But, in the parts of the letter omitted from the Complaint, borrowers were expressly warned of potential consequences.

> **Count VI**:  The CFPB vaguely describes a random assemblage of customer service issues and conclusorily alleges the existence of some "unfair" policies and procedures.  The CFPB must provide a more definite statement of what it believes was illegal, or the Count should be dismissed.

> **Counts VII–X**:  Despite a years-long investigation, the CFPB pleads deceptive conduct by Navient's affiliate, Pioneer Credit Recovery, Inc. ("Pioneer") only upon "information and belief," which is insufficient under Federal Rule 9(b).  It also fails to allege any material misstatement.

---

[2] Counts V and XI require a factual analysis more appropriate to summary judgment.

## PROCEDURAL HISTORY

The CFPB began investigating Defendants on September 5, 2013, when it issued a civil investigative demand ("CID") to Navient.  Six more CIDs followed over the next several years, along with countless informal requests and meetings that probed virtually every aspect of the companies' servicing and collection activities.  In full cooperation, Navient and Pioneer collectively provided more than 450,000 pages of documents and hundreds of hours of recorded phone calls, answered dozens of interrogatories, prepared over 30 written reports containing complex analyses of borrower data and information, and produced nine witnesses for testimony.

The CFPB filed this lawsuit—from which the Department of Education is notably absent—on January 18, 2017, two days before the inauguration.  There is no allegation in the Complaint that Navient failed to comply with the extensive statutory and regulatory requirements applicable to student loan servicing, or the terms of its contract with the Department of Education.

## FACTUAL BACKGROUND

## I.   FEDERAL STUDENT LOAN SERVICING REQUIREMENTS

Over fifty years ago, Congress enacted the HEA and began to "provide financial assistance for students in postsecondary and higher education."  Higher Education Act, Pub. L. No. 89-329, 79 Stat. 1219 (1965).  Two major federal student loan programs are at issue in the Complaint:  the Direct Loan Program, 20

4

U.S.C. § 1087a *et seq.*, under which the federal government provides student loans directly to eligible borrowers ("Direct Loans"); and the Family Education Loan Program, 20 U.S.C. § 1071 *et seq.,* under which the federal government guarantees qualifying student loans made by private lenders ("FFELP Loans").[3]

These programs are highly regulated.  Congress "instruct[ed]" the Department of Education to "[e]stablish a set of rules that will apply across the board." *Chae v. SLM Corp.*, 593 F.3d 936, 945 (9th Cir. 2010).  Through a public notice and comment process, detailed and extensive regulations have been promulgated prescribing every aspect of federal student loans, including charges to borrowers (34 C.F.R. § 682.202, § 685.202), repayment plans (§ 682.209, § 685.208), deferment and forbearance (§§ 682.210–211, §§ 685.204–205), and due diligence in servicing a loan (§ 682.208).  The Department may limit the participation of a federal student loan servicer that violates any statutory provision, regulation, or agreement. *Id.* § 682.700(a).  In some circumstances, it can terminate participation entirely. *Id.* § 682.706.

The Department administers the program and has broad and exclusive authority to prescribe servicer requirements.  20 U.S.C. §§ 1082(a)(1), 1087a,

---

[3] In 2010, Congress terminated lending under FFELP.  Health Care and Education Reconciliation Act, Pub. L. 111-152, § 2201 *et seq.* (Mar. 30, 2010).  No new FFELP Loans were disbursed after June 30, 2010. *Id.*

1087e.  The Education Department's rules are the product of statutorily required

"negotiated rulemakings" in which the Department develops regulations in public

meetings with representatives of interested parties, such as servicers and the CFPB.

20 U.S.C. § 1098a(a)(1), (b)(1).  Recent negotiated rulemaking sessions have

developed rules for alternative repayment options, forbearance, and electronic

notices to borrowers.  *See, e.g.*, 77 Fed. Reg. 42,086-01 (July 17, 2012).

In addition to regulations, the Department of Education enters into detailed

contracts with servicers to administer Direct Loans and FFELP Loans that it owns.

20 U.S.C. § 1087f(a)(1).  On June 17, 2009, the Department of Education entered

into a servicing contract with Navient to service its loans (the "Contract," attached

as Exhibit A).  Compl. ¶ 22 (Doc. 1).[4]  The Contract permits the Department to

modify the contract as it deems necessary (Ex. A, B.1(c)(1)(i)), and it has done so

hundreds of times, Compl. ¶ 22.[5]  Whenever a change affects Navient's costs in

ways specified in the Contract, the Department is required to adjust the contract

price accordingly.  Ex. A, B.1(c)(2).

The Department closely monitors Navient's compliance with regulations and

the Contract.  Navient is required to submit to annual audits and is "responsible for

---

[4] The Court may consider the Contract because it is referenced in the Complaint
and governs the acts and practices upon which the allegations are based.  *See, e.g.*,
*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

[5] *E.g.*, Ex. B.

resolving all deficiencies identified during audits and participating in corrective action plans as needed." *Id.*, Att. A-1, at 7–8, 12.  Navient also participates in quarterly monitoring reviews and annual program compliance reviews by the Education Department.  *Id.*  Further, Navient must escalate customer complaints to the Department and provide the Department the ability to monitor phone calls.  *Id.*, Att. A-2, at 11.  Navient does not receive payment for "[b]orrowers whose loans are not being serviced in compliance with the Requirements, Policy and Procedures for servicing federally held debt due to the fault of the servicer," including when notices are not sent properly.  *Id.*, B.13.C.

The Complaint does not allege that Navient breached any of these regulatory or contractual requirements.

## II.   OPTIONS AVAILABLE TO FEDERAL BORROWERS UNABLE TO MAKE THEIR DEBT PAYMENTS

As with nearly every other aspect of federal student loans, the HEA and regulations dictate how borrowers can repay their loans.  The "standard" repayment plan sets a term of ten years.  20 U.S.C. §§ 1078(b)(9)(A)(i), 1087e(d)(1)(a); 34 C.F.R. §§ 682.209(a)(6), 685.208(b).  But the Department of Education offers a number of options to borrowers unable to make their loan

payments.  Two are relevant to the Complaint:  forbearance and income-driven

repayment ("IDR") programs.[6]

### A.   Forbearance

A forbearance allows borrowers to stop making principal and interest

payments or to reduce their payments for a set period.  34 C.F.R. §§ 682.211(a)(1),

685.205(a).  Interest on the loan continues to accrue and (for some types of

forbearance) is eventually "capitalized," meaning that it is added to the principal

amount of the loan.  *Id.* §§ 682.211(a)(4), 682.202(b), 685.205(a).  Servicers may

grant a forbearance "for a period of up to one year at a time," and generally may

also grant consecutive forbearances.  *Id.* §§ 682.211(c), § 685.205(c)(8).

In fact, the Education Department "*encourages* a lender to grant forbearance

. . . in order to prevent the borrower" from defaulting or to allow the borrower to

"resume honoring [the loan] obligation after default."  34 C.F.R. § 682.211(a)(1)

(emphasis added); *see also id.* § 685.205(a).  In the Complaint, the CFPB criticizes

Navient for not actively counseling borrowers against forbearance, but its own

examination manual in effect at the time acknowledges that the "FFELP and the

Direct Loan programs *encourage servicers to grant forbearance* . . . when it would

help prevent a borrower from defaulting, or it would help a borrower repay after

---

[6] In fact, there are more than 50 different repayment options available to borrowers depending on loan type and borrower circumstances.

default." CFPB Supervision and Examination Manual, Education Loan Examination Procedures, Procedures 24 (2013) (emphasis added).[7]

Federal regulations also require servicers to provide borrowers a notice within 30 days of entering forbearance, confirming its terms. 34 C.F.R. § 682.211(b)(1). This notice includes information about interest capitalization. *Id.* § 682.211(e). In addition, every 180 days during the forbearance period, the servicer must provide information about how much interest will be capitalized and when capitalization will occur. *Id.* There is no allegation that Navient failed to provide these disclosures or that their content was in any way deficient.

## B.    Income-Driven Repayment Programs

Borrowers may be eligible to enroll in one of several IDR programs. Compl. ¶ 27. These programs generally adjust a borrower's monthly payment to reflect the borrower's current income and family size. *Id.* ¶¶ 29–30. Regulations require borrowers in IDR plans to recertify their income and family size to the government annually to remain in the program. *Id.* ¶ 55; 34 C.F.R. §§ 682.215(e)(1), 685.221(e)(1).

---

[7] *Available at* http://files.consumerfinance.gov/f/201312_cfpb_exam-procedures_education-loans.pdf.

Federal law imposes specific requirements on servicers to inform borrowers of the availability of IDR programs.  There is no allegation that Navient failed to provide these disclosures, which include:

- Throughout repayment, *every borrower's monthly billing statement* includes specified information regarding IDR plans, including a link to an Education Department website with further information.  20 U.S.C. §§ 1083(e)(1), 1087e(p).

- When a loan is disbursed and before the start of repayment, borrowers receive information on the types of repayment plans available, including IDR plans.  *Id.* §§ 1083(a)(11), (b)(6), 1087e(p).

- Before the start of repayment, borrowers are offered the option of enrolling in an IDR plan.  *Id.* §§ 1077(a)(2)(H), 1087e(d)(1)(D)–(E).  The notice includes eligibility requirements and directions for obtaining more information.  *Id.* § 1087e(p); 34 C.F.R. § 682.205(e).

- If "a borrower has notified the lender that the borrower is having difficulty making payments," a notice is sent to the borrower containing a description of the repayment plans available, how the borrower can request a change in plan, as well as the requirements for obtaining forbearance and expected costs.  20 U.S.C. §§ 1083(e)(2), 1087e(p).

## III.   THE COMPLAINT'S ALLEGATIONS

**Counts I and II** allege that Navient acted abusively and unfairly by not "adequately advising [borrowers choosing forbearance] about available income-driven repayment plans."  Compl. (Doc. No. 1) ¶ 51.  More specifically, Navient is accused of failing to engage in "time-consuming" and "costly" counseling sessions with borrowers "about alternative repayment plans and the borrower's financial

situation." *Id.* ¶¶ 42, 47.  There is no allegation Navient failed to comply with the existing regulatory or contractual disclosure requirements.

**Count III** takes issue with emails to borrowers in IDR plans, which provided "a hyperlink to [Navient's] website," and instructed borrowers to "log in to [their] account[s]" to access a recertification notice.  Compl. ¶¶ 68–70.  The Complaint alleges that it was "unfair" that the email itself did not affirmatively state that it related to IDR recertification.  *Id.* ¶ 149.[8]  The Complaint acknowledges that the only thing a borrower had to do in order to access the notice was click through to the website.

In **Count IV**, the CFPB quotes the following from a recertification notice provided to borrowers between July 2011 and December 2012:  "by providing incorrect or incomplete information the [renewal] process will be delayed."  The Complaint alleges that this statement misled borrowers to conclude that the *only* consequence for providing incorrect or incomplete information was a potential processing delay.  Compl. ¶ 64.  Omitted from the Complaint are the surrounding statements in the notice and accompanying form (attached as Exhibits C and D),[9]

---

[8] Only borrowers who consented to receive electronic communications were sent these emails.  Compl. ¶ 66.  Others receive a notice by postal mail.

[9]  Because the Complaint quotes from the notice, which was sent as a part of package that included the recertification form, the Court may consider this disclosure on this motion.  *See, e.g.*, *Burlington*, 114 F.3d at 1426.

which set forth the consequences of failing to accurately complete the recertification.

**Count VI** alleges "unfair" policies and procedures based on a hodgepodge of customer service issues.  Compl. ¶¶ 97–112.  No explanation is provided for what the CFPB means.

**Counts VII-X** allege, *on information and belief*, that Pioneer engaged in certain deceptive practices related to the enrollment of borrowers in a federal rehabilitation program to bring their student loans out of default.  The Complaint provides no specific instance where deceptive conduct allegedly occurred, even though the CFPB has been investigating for years.

## STATEMENT OF QUESTIONS INVOLVED

I.  Do the UDAAP claims exceed the CFPB's statutory authority?

II.  Is the Complaint invalid because the CFPB's structure is unconstitutional?

III.  Do Counts I–IV and VII–X fail to state a claim?

IV.  Is the CFPB required to provide a more definite statement of Count VI?

## ARGUMENT

### I.  CFPB'S UDAAP CLAIMS EXCEED ITS STATUTORY AUTHORITY

The CFP Act does not authorize the CFPB to first declare an act unlawful by filing a lawsuit, but rather gives the CFPB enforcement authority only as to those acts and practices that are unfair, deceptive, or abusive "under Federal law"—*i.e.*, acts and practices "declare[d]" or "identif[ied]" as unlawful through rulemaking.

12 U.S.C. § 5531(a), (b), (c).  Counts I–VIII must be dismissed because the CFPB has *never* used its rulemaking authority to identify and define the practices alleged in the Complaint as unlawful.

The structure of the CFP Act makes plain that the CFPB is required to define practices as unlawful using its rulemaking authority before bringing an action. Section 5531 sets out the parameters of the CFPB's UDAAP authority.  Subsection (a)'s grant of authority to take action to prevent UDAAP "under Federal law" looks to the section immediately following, entitled "Rulemaking," which empowers the CFPB to issue rules "identifying as unlawful unfair, deceptive, or abusive acts or practices."  12 U.S.C. § 5531(b).  The statute does not itself state the elements of an unfair or abusive practice, but rather includes restrictions on the types of practices the CFPB *may not* declare unlawful to cabin the rulemaking that Congress intended the CFPB to undertake.  *Id.* § 5531(c), (d).

Despite the import of § 5531, the CFPB has *never* exercised its rulemaking power to "identify[]" unfair, deceptive, or abusive acts or practices "under Federal law," much less the specific conduct at issue here.[10]  The current CFPB Director instead seeks to use this enforcement action to create new legal requirements out of

---

[10] In fact, not only did the CFPB not engage in rulemaking, it did nothing *at all* to publicly "declare" the alleged conduct unfair, deceptive, or abusive, and therefore provided no notice whatsoever of what it now claims the law requires.

whole cloth and only for Navient, without first identifying those requirements by rule. He is simply not permitted to—in a single stroke—announce what the law requires *and* seek penalties for past non-compliance. His attempt to skip public rulemaking and instead unilaterally declare practices illegal is contrary to the express statutory authority under which the CFPB is required to operate.

Nor does the CFPB's approach comport with basic principles of due process.[11] "[L]aws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 132 S. Ct. 2307, 2317 (2012). An agency cannot base an enforcement action on law created or changed after the conduct occurred. *Id.* at 2318; *see also Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 132 S. Ct. 2156, 2168 (2012).

Due process concerns are especially acute here. For over forty years, the HEA has set the standards for servicing federal student loans. The Department of Education has promulgated extensive regulations interpreting and applying HEA's requirements in nearly every aspect of federal student loan servicing. A federal servicing contract between the Department and Navient also sets forth in detail the

---

[11] Even if section 5531 could plausibly be interpreted to allow such an action, the Court should interpret the CFP Act to avoid serious due process concerns. *Clark v. Martinez*, 543 U.S. 371, 381–82 (2005).

14

terms and requirements of servicing federally owned loans.  Compl. ¶ 22.  Navient

conformed its conduct to *this* substantial body of law, not to any secret

requirements unveiled only now, for the first time in this action.

The Complaint itself acknowledges that compliance with the CFPB's newly

crafted requirements would have been "costly for Navient" and would have

required Navient "to increase the size of its staff" and "increase[] operating costs."

Compl. ¶¶ 46–47.  In other words, they are exactly the type of requirements one

would expect to be imposed, if at all, through changes to Education Department

rules and through requests and cost adjustments under the Contract.  Yet the CFPB

seeks to create and impose them for the first time them in this lawsuit, and "can

point to nothing that would have given [Navient] affirmative notice" of them.  *Fox*,

132 S. Ct. at 2319.  Section 5531 and fundamental due process principles do not

permit that course of action.

## II.   THE DIRECTOR LACKS CONSTITUTIONAL AUTHORITY TO BRING THIS ACTION

The CFPB's structure—which places vast rulemaking and enforcement

authority in the hands of a single Director virtually unaccountable to the

President—"unduly interfer[es] with the role of the Executive Branch" under

Article II of the Constitution.  *Morrison v. Olson*, 487 U.S. 654, 693 (1988); U.S.

Const. art. II, § 3; 12 U.S.C. § 5491.  This action must be dismissed because the

Director lacked constitutional authority to bring it.

Since its decision in *Myers v. United States*, 272 U.S. 52 (1926), the Supreme Court has made clear that restrictions on the President's power to remove officers are permissible only where they do not interfere with the authority of the Executive.  The CFP Act vests all powers of the CFPB in a single Director with a vast budget at his disposal and broad rulemaking authority, and with the ability to bring enforcement actions seeking cripplingly large fines; yet by statute he can be removed by the President only "for inefficiency, neglect of duty, or malfeasance in office."  12 U.S.C. § 5491(c)(3).[12]  In a recent decision, a panel of the D.C. Circuit found this structure unconstitutional.  *PHH*, 839 F.3d at 19–22.  The *en banc* D.C. Circuit is currently examining the case, with argument scheduled for May 24, 2017.[13]

The CFPB has none of the features that have permitted the Supreme Court to uphold restrictions on the Executive's power to control an agency.  For one, the CFPB is not structured as an "independent" agency.  Although the CFP Act characterizes the CFPB as "an independent bureau," 12 U.S.C. § 5491(a), unlike

---

[12] Nor, for that matter, is the Director accountable to Congress.  The CFPB's budget is fixed at 12 percent of the Federal Reserve's earnings, entirely free from "review by the Committees on Appropriations."  12 U.S.C. § 5497(a)(2)(C).

[13] Notably, the U.S. Department of Justice ("DOJ") filed an amicus brief on March 17, 2017, setting forth the United States Government's position that the structure of the CFPB is unconstitutional.  Brief for the United States as Amicus Curiae, *PHH Corp. v. CFPB*, No. 15-1177 (D.C. Cir. Mar. 17, 2017), Doc. No. 1666553, 2017 WL 1035617.

other independent agencies, the CFPB is overseen by a single director wielding broad executive authority rather than by a commission of multiple individuals with different political affiliations and viewpoints, which ensure functional "independence." *Humphrey's Executor v. United States*, 295 U.S. 602, 55 S. Ct. 869, 874 (1935).

Moreover, while restrictions on removal may be permissible where an officer's powers are "limited in jurisdiction," that is not the case here. *Morrison*, 487 U.S. at 672.[14]  The breadth and nature of the power that the Director wields is unparalleled for an officer who is unaccountable to the President.  Under the CFP Act, he promulgates the very rules that he then interprets and enforces against individuals and businesses through administrative prosecutions and multi-million-dollar ad-hoc settlement demands.  12 U.S.C. § 5492(a).

This case shows the dangers of such unconstrained power:  Through this lawsuit, the current Director seeks to impose after-the-fact rules on a private company subject to extensive regulation and contractual oversight by another

---

[14] The few other agencies with single directors removable for cause have much narrower jurisdictions than the CFPB.  *See, e.g.,* 12 U.S.C. § 4511(b)(2) (Federal Housing Finance Agency Director limited to exercising "regulatory authority" over Fannie Mae, Freddie Mac, and other federal home loan banks); 5 U.S.C. §§ 1212, 1216 (Office of Special Counsel only concerns itself with violations of personnel laws); *PHH Corp.*, 839 F.3d at 19–21(explaining that Social Security administration has no prosecuting authority).

federal agency.  The Constitution is designed to prevent this type of "investigative and prosecutorial authority" run amok.  *Morrison*, 487 U.S. at 706 (Scalia, J., dissenting).  Where the President's power to remove an executive officer is unconstitutionally constrained, that officer *cannot* exercise executive power.  *Fed. Election Comm'n v. NRA Political Victory Fund*, 6 F.3d 821, 822 (D.C. Cir. 1993) (Federal Election Commission "lack[ed] authority to bring [an] enforcement action because its composition violate[d] the Constitution's separation of powers").  The current Director's purported authorization of this action is therefore void, and the action should be dismissed.

## III.   CFPB HAS FAILED TO STATE A CLAIM AS TO COUNTS I–IV, VI, AND VII–X

### A.   Counts I and II Should Be Dismissed Because Navient Owed No Duty To Provide Individualized Financial Counseling

The CFPB alleges that Navient "steered" borrowers unable to make their monthly payments into forbearance rather than "adequately advising" them about IDR plans.  Compl. ¶ 140.  Three points are important to note at the outset.

*First*, despite rhetoric implying some active effort by Navient to mislead borrowers, there is no allegation that Navient affirmatively made any misrepresentation or false statement.  The CFPB alleges only omissions— specifically that Navient did not spend time providing individualized financial advice to borrowers unable to pay their debts.

*Second*, the Complaint does not allege that Navient failed to comply with the many existing federal regulations requiring disclosures about the availability and nature of IDR plans, including disclosures when the loan was disbursed, at the start of repayment, and on every monthly statement. *See, e.g.,* 20 U.S.C. §§ 1077(a)(2)(H), 1083(a)(11), 1083(b)(6), 1083(e)(1); 34 C.F.R. § 682.205(h). Nor does the CFPB allege that Navient somehow prevented borrowers from obtaining information about IDR plans through public resources such as the Department of Education's website or Navient's own website. In fact, the Complaint itself quotes Navient disclosures that expressly inform borrowers of the availability of alternative repayment plans. *E.g.*, Compl. ¶ 38 (quoting Navient website: "[I]f you're having trouble, there are options for assistance, including income-driven repayment plans . . . .").

*Third*, there is no allegation that the Department of Education modified the Contract, which would have required a price adjustment to compensate Navient for providing additional "costly" services. By contrast, one recent contract modification provided an additional $3 per application for servicers to "provide additional assistance to borrowers" submitting their first application for an alternative repayment plan. Ex. B, FSA C.R. 3571, at 3, 9. The required assistance included contacting borrowers by telephone and email or postal mail, and the Department provided the text to be used in written correspondence. *Id.*

19

Yet here, the CFPB not only seeks to impose "costly" changes to an Education

Department contract without any pricing allowance, but also to impose retroactive

penalties.

> **1.     Count I should be dismissed because, as a matter of law, borrowers cannot reasonably rely on a loan servicer to serve as a fiduciary**

The CFPB's abusiveness claim must be dismissed because it fails to state a

claim that Navient took "unreasonable advantage of . . . reasonable reliance by the

consumer" that Navient would "act in the interests of the consumer."  12 U.S.C.

§ 5531(d)(2)(C).  Borrowers could not reasonably rely on Navient to counsel them

into alternative payment plans unless Navient had an *affirmative duty* to provide

such individualized financial counseling.  But the law imposes no general duty to

provide information without some fiduciary relationship.  *Duquesne Light Co. v.*

*Westinghouse Elec. Corp.*, 66 F.3d 604, 611 (3d Cir. 1995) ("[T]o be liable for

material nondisclosures, a party must have a duty to speak" which exists only in

"limited circumstances").  The CFPB cannot plausibly allege any such relationship

or duty for several reasons.

*First*, Navient's relationship with borrowers is that of an arm's-length loan

servicer, not a fiduciary counselor.  A servicer's role is to collect payments owed

by borrowers.  In that role, the servicer acts in the *lender's* interest (here that lender

is often the federal government itself), and there is no expectation that the servicer

will "act in the interest of the consumer."  12 U.S.C. § 5531(d)(2)(C).  Courts

therefore routinely hold that servicers and lenders "do not owe borrowers any

specific fiduciary duties based upon their servicer/borrower relationship."  *Bret*

*Binder v. Weststar Mortg., Inc.*, No. 14-7073, 2016 WL 3762710, at *20 (E.D. Pa.

July 13, 2016).[15]

    *Second*, the Complaint identifies no statute or other regulatory or contractual

requirement that imposes a duty on Navient to provide financial counseling to

borrowers.  *Cf. Oran v. Stafford*, 226 F.3d 275, 285–86 (3d Cir. 2000) (rejecting a

fraud by omission claim when "Plaintiffs do not allege that there was any statute

requiring disclosure of th[e] information").  Although the federal government itself

hired Navient to service a substantial portion of the federal loans at issue in the

Complaint, nowhere did it require Navient to provide the type of financial

counseling the CFPB seeks—even while specifying thousands of other

requirements in exacting detail and pricing out various requirements and change

orders (such as sending additional borrower notices) to the penny.  The CFPB's

---

[15] *See also Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53 (3d Cir. 1988) (it "would be anomalous to require a lender to act as a fiduciary for interests on the opposite side of the negotiating table") (citation omitted); *Temp-Way Corp. v. Cont'l Bank*, 139 B.R. 299, 318 (E.D. Pa. 1992) (noting "well recognized principle that a lender is not a fiduciary of a borrower").  Pursuant to Local Rule 7.8(a), Defendants have included with this Memorandum an Appendix of all cited unpublished opinions.

financial counseling allegation in effect seeks a *post hoc* revision of the federal servicing deal, and would sanction the company for allegedly not undertaking activities that the federal government never contracted or agreed to pay for.

*Third*, the Complaint does not allege any conduct or statements by Navient that somehow transformed its arm's-length relationship with borrowers into a fiduciary one.  The CFPB points to four statements on Navient's website that allegedly induced borrowers to rely on Navient to act in their interests—all general statements that Navient would "work with" borrowers or "help" them find an affordable repayment option.  Compl. ¶¶ 38–39.[16]  But publicly disseminated statements reaching millions of borrowers cannot create a fiduciary-type relationship or obligation.[17]  Moreover, even if the statements had been made to individual borrowers, general pronouncements by a lender or servicer to borrowers that "we can work with you" or "help" do not create a fiduciary relationship.

---

[16] The Complaint also points to statements on the Department of Education's website.  Compl. ¶ 37.  But the federal government is not Navient's agent; it is the other way around.  The government's statements cannot be the basis for imposing liability *on Navient*.  *Mortellite v. Novartis Crop Prot., Inc.*, 460 F.3d 483, 493 (3d Cir. 2006).

[17] *Barron Partners, LP v. Lab123, Inc.*, 593 F. Supp. 2d 667, 671 (S.D.N.Y. 2009) ("[I]f such widely-disseminated and readily available statements were sufficient to give rise to a fiduciary relationship, the exception would swallow the rule."); *In re Merck & Co., Sec. Derivative & Erisa Litig.*, No. 05-2369(SRC), 2006 WL 2050577, at *13–14 (D.N.J. July 11, 2006) (plaintiffs could not impose fiduciary duties based on "public statements, press releases, and other dissemination of information").

*Dommel Props., LLC v. Jonestown Bank & Trust Co.*, No. 11-2316, 2013 WL
1149265, at *2, 21 (M.D. Pa. Mar. 19, 2013) ("plainly insufficient" to create
fiduciary relationship that bank told plaintiff "not to worry, we will work it out,"
"repeatedly assured him that the [b]ank would continue to work with him to
resolve the debts," and asserted it would act in "good faith"); *Alpine Bank v.
Hubbell*, 555 F.3d 1097, 1112 (10th Cir. 2009) (plaintiffs "could not reasonably
rely on the Bank's advertising slogan that it would 'take care of everything else'").
If such statements were enough, virtually every lender and loan servicer would be
transformed into a fiduciary, which is not the law.  Count I should be dismissed.

> **2.      Count II should be dismissed because borrowers had broad
> access to information regarding repayment options,
> rendering any alleged harm avoidable**

Count II repackages the CFPB's financial counseling allegations as an
unfairness claim, which fares no better.  A claim for unfairness requires an injury
that "is not reasonably avoidable by consumers."  12 U.S.C. § 5531(c)(1)(A); *see*
Order Granting Defs.' Mot. To Dismiss at 8–9, *CFPB v. Intercept Corp.*, No. 16-
00144, Doc. 46 (D.N.D. Mar. 17, 2017) (dismissing CFPB unfairness and
abusiveness claims).  An injury is "reasonably avoidable" if consumers have
"reason to anticipate the impending harm and the means to avoid it."  *Davis v.
HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168–69 (9th Cir. 2012) (internal
quotation marks omitted).

Here, the alleged injury—borrowers entering forbearance without considering alternative repayment plans—was entirely "avoidable" because federally mandated notices and other disclosures provided borrowers with the necessary information to make a "free and informed choice" regarding forbearance and alternative repayment options. *Davis,* 691 F.3d at 1168–69.[18]  As noted, *supra* pp. 9–10, disclosures were made repeatedly during the life of the loan, including with every monthly statement and when borrowers indicated difficulty making monthly payments.

Given these disclosures and other publicly available IDR information, the CFPB does not and could not allege that borrowers were *denied* information about forbearances and alternative repayment plans and thus unable reasonably to avoid any alleged harm.  The CFPB's claim that the information provided to borrowers was nevertheless "inadequate" (*e.g.*, Compl. ¶ 145) is an improper attempt to impose, retroactively, a new financial counseling requirement—on top of the existing comprehensive disclosure regime administered by the Education Department.  Count II should be dismissed.

---

[18] *See also Casey v. Fla. Coastal Sch. of Law, Inc.*, No. 14-1229, 2015 WL 10096084, at *15 (M.D. Fla. 2015) (dismissing unfairness claim because "there were . . . numerous sources of information available").

**B.     Count III Should Be Dismissed Because CFPB Has Failed To Show That Links In Email Notices Created An Unreasonable Obstacle**

As noted, the Education Department requires borrowers in IDR plans to recertify their income and family size annually to reenroll in the program.  Compl. ¶ 55; 34 C.F.R. §§ 682.215(e)(1), 682.221(e)(1).  The CFPB makes no allegation that Navient failed to send a recertification notice to borrowers.  Instead, the CFPB claims that Navient acted unfairly when it sent emails to borrowers to provide notice of the need to recertify, stating that "a new education loan document is available" on Navient's website, provided "a hyperlink to its website," and instructed them to "log in to [their] account[s]" to access the document.  Compl. ¶¶ 68–70.  According to the CFPB, this practice created an "unreasonable obstacle" to borrowers' recertification decision.  *Id.* ¶ 151.

This is miles away from what an unfairness claim requires under the law. Again, a claim for unfairness requires an injury that "is not reasonably avoidable by consumers."  12 U.S.C. § 5531(c)(1)(A).  The Complaint's allegations themselves show that borrowers could readily avoid any injury.  The borrowers in question *consented* to receive all communications electronically, putting them on notice that important documents, including legally required disclosure documents, would be provided through Navient's website.  Compl. ¶¶ 66–70.  The email notice informed borrowers that there was a new document available, provided a link to

access the document, and instructed the borrower to log in and view it. *Id.* No more information is needed: the "free and informed choice" of whether to click the link lay solely with the borrower. *Davis*, 691 F.3d at 1168–69.[19]

Moreover, sending secure information in this manner is a widely accepted practice under federal law. The CFPB itself has publicly stated that it approves the "common practice" of "contact[ing] a customer to let them know a message is available on a secure Web site." 78 Fed. Reg. 10,963 (Feb. 14, 2013); *cf.* 12 C.F.R. § 1026, Supp. I, Part 3 (providing that periodic statements may be delivered electronically by "send[ing] a notification that a consumer's statement is available, with a link to where the statement can be accessed, in place of the statement itself."). Similarly, Department of Education guidance states that servicers are permitted to send disclosures through "secure e-mail or *electronic links* to the borrower's account-specific information." 74 Fed. Reg. 36,572 (July 23, 2009) (emphasis added).

Federal regulators have also advised that communicating in this manner can serve important privacy interests. *See, e.g.*, OCC Advisory Letter, Electronic Consumer Disclosures and Notices at 5 (Oct. 1, 2004) (warning of the "inherently

---

[19] Indeed, here the email serves as little more than an envelope containing the underlying notice. Under the CFPB's reasoning, it would be "unfair" to mail an IDR recertification notification in an envelope unless the envelope explicitly described the nature of the enclosed letter.

insecure nature of most conventional e-mail").  And the CFPB has itself concluded that "notifying a consumer of a message on a secure Web site *presents less of a risk* than emailing the message, with potentially sensitive personal information, directly to the consumer."  78 Fed. Reg. 10,963 (Feb. 14, 2013) (emphasis added).

In short, there is nothing "unfair" in having a borrower click through an email to obtain a notice from a website.  Count III should be dismissed.

### C.   Count IV Should Be Dismissed Because There Is Nothing Misleading About Navient's IDR Renewal Notice

Count IV claims a recertification notice used by Navient between July 2011 and December 2012 was deceptive.  The Complaint plucks a single sentence from the notice stating that providing "incorrect or incomplete information" could lead to the renewal "process" being "delayed."  Compl. ¶ 64.  This, the CFPB asserts, would suggest to a reasonable borrower that no other consequences would result from the failure to provide a complete and accurate application by the renewal deadline.  *Id.*

This claim fails because the notice was not "likely to mislead" a reasonable consumer, as required for a deception claim.  12 U.S.C. § 5531(a).  While the notice states that failure to submit a complete and accurate application may result in a processing delay, it does *not* state that no other consequences could result from such failure, and a reasonable consumer would not draw that inference.

Moreover, the Court must assess the "statement, representation, or omission in the context of the entire advertisement, transaction, or course of dealing."  CFPB Supervision and Examination Manual, Consumer Laws and Regulations: Deceptive Acts or Practices, UDAAP 5 (2012).[20]  And the remainder of the notice (which the CFPB omitted from its Complaint) explains the host of consequences of failing to complete recertification.  The notice and accompanying form informed the borrower she must "*complete* the included Income-Based Repayment Plan Request Form" or else the plan "will expire" and the loan will return to the payment amount under the standard repayment plan with a ten-year repayment period.[21]  The form also warned that "[a]ny person who knowingly makes a false statement or misrepresentation on this form . . . is subject to penalties . . . under the U.S. Criminal Code and 20 U.S.C. 1097."[22]  No borrower reading these statements would conclude that the only possible consequence of submitting an incomplete or inaccurate recertification form was delay.  *Wilson v. Quadramed Corp.*, 225 F.3d

---

[20] http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.  *See also Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 252 (3d Cir. 2011); *Campuzano-Burgos v. Midland Credit Management, Inc.*, 550 F.3d 294, 299 (3d Cir. 2008).

[21] Ex. C, at NAV-00000085, NAV-00000088 ("your payment amount will be the payment amount for your loan(s) under the standard repayment plan with a 10-year repayment period"); Ex. D, at NAV-00000094, NAV-00000101 ("account will be placed on the [s]tandard [r]epayment plan" and "recalculated based on . . . the time remaining under the maximum 10-year repayment period").

[22] Ex. C, at NAV-00000087; Ex. D, at NAV-00000097.

350, 352 (3d Cir. 2000) (refusing to interpret language in a debt collection letter in a manner contradicted by statements in another paragraph).  Count IV should be dismissed.

### D.    CFPB Should Provide A More Definite Statement For Count VI

Count VI attempts to spin alleged payment processing errors into an unfairness claim.  But the Complaint describes only a random assemblage of customer service issues, Compl. ¶¶ 100–101, 106–110; vague accusations about the adequacy of policies and procedures, *id.* ¶¶ 98, 102, 110–112; and an apparent disagreement with payment allocation methodologies, *id.* ¶¶ 103–105.  "This lack of factual detail makes a complete assessment of this particular claim difficult" because Navient cannot admit or deny that its actions caused the alleged injury if it is not made aware of the mechanism of that injury.  *Angino v. Wells Fargo Bank, N.A.*, No. 15-418, 2016 WL 787652, at *15 (M.D. Pa. Feb. 19, 2016).

The CFPB should be required to provide a more definite statement as to what and how acts were supposedly unfair.  Rule 12(e) is appropriate when the complaint "does not disclose the facts underlying" the claim such that "the defendant cannot reasonably be expected to frame a proper, fact-specific . . . defense."  *Thomas v. Indep. Twp.*, 463 F.3d 285, 301 (3d Cir. 2006).  It is "an appropriate vehicle to pare down 'shotgun' pleadings."  *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 233 (D.N.J. 2003).  The CFPB has over 450,000 pages of

documents, dozens of interrogatories and written reports, and testimony from nine

witnesses.  If after years of investigating, the CFPB still is unable to provide a

more definite statement, the Court should "strike" this Count.  Fed. R. Civ. P.

12(e).

> **E.**   **The Claims Against Pioneer (Counts VII–X) Should Be Dismissed Because Fraudulent Activity Cannot Be Pleaded On "Information and Belief" And, In Any Event, CFPB Has Not Stated A Cognizable Claim**

The CFPB alleges in Counts VII–X that Pioneer engaged in deceptive

practices related to the enrollment of defaulted federal student loan borrowers in

loan rehabilitation programs in violation of the CFP Act, 12 U.S.C. § 5531(a) and

the FDCPA, 15 U.S.C. § 1692(e).  These counts fail for two reasons, either of

which independently mandates dismissal.

> **1.**   **Pleading fraud on "information and belief" is not permitted under Rule 9(b)**

Despite years investigating these issues, the CFPB pleads deceptive conduct

only upon "information and belief."  Compl. ¶¶ 122, 124, 129, 130.  Rule 9(b)

requires that "[i]n alleging fraud or mistake, a party must state with particularity

the circumstances constituting fraud or mistake."  The Third Circuit has held that

even where fraud "is not a necessary element of a claim," allegations that "sound[]

in fraud" still must be pled in accordance with the Rule.  *In re Westinghouse Sec.*

*Litig.*, 90 F.3d 696, 717 (3d Cir. 1996); *see also Frederico v. Home Depot*, 507

F.3d 188, 202 (3d Cir. 2007).[23]  Claims "sound in fraud" when the "claims are grounded in fraud rather than negligence."  *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 287–88 (3d Cir. 1992).

Here, the CFPB alleges, on "information and belief," that Pioneer purposely mispresented the benefits of loan rehabilitation to deceive borrowers as part of a purported scheme to maximize its fees and revenue.  Compl. ¶¶ 115–116.  It alleges, "on information and belief," that Pioneer's employees were trained to make "false promises" and misstate the conditions of rehabilitation, and that these statements "misled" consumers.  *Id*. ¶¶ 118 (section header), 123–124, 126 (section header), 133.  "[I]nformation and belief" does not satisfy Rule 9(b).  *Shapiro*, 964 F.2d at 285; *United States v. Eastwick Coll.*, 657 F. App'x 89, 95 (3d Cir. 2016); *Zavala v. Wal-Mart Stores, Inc*., 393 F. Supp. 2d 295, 314 (D.N.J. 2005), *aff'd sub nom.*, 691 F.3d 527 (3d Cir. 2012).  Counts VII–X should be dismissed.

### 2.    No facts are alleged showing that Pioneer's statements would have been material to a borrower's decision to escape default

Default on a federal student loan has severe consequences, including that the federal government can collect the debt by taking federal payments owed to the

---

[23] Although the Third Circuit has not addressed the issue, courts in other Circuits have expressly held that deceptiveness claims under the CFP Act sound in fraud.  Order re Defs.' Mot. to Dismiss at 8–11, *CFPB. v. Prime Mktg. Holdings, LLC*, No. 16-07111, Doc. 32 (C.D. Cal. Nov. 15, 2016).

borrower, such as social security payments or tax refunds.  31 U.S.C. § 3720A; 34

C.F.R. § 682.410(b)(6)(v).  Nothing Pioneer is alleged to have said would have led

a borrower to remain in default rather than enter the federal rehabilitation program.

*Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015) ("[A] false

statement is only actionable under the FDCPA if it has the potential to affect the

decision-making process . . . .").  For example, a borrower would not choose

default over rehabilitation because he or she misunderstood that some portion of

payments made during the program would be allocated to collection fees rather

than ultimately forgiven.  Compl. ¶¶ 130–132.  Thus, even if Rule 9(b) did not

apply, the CFPB has failed to allege facts showing why the alleged misstatements

would have been material to the decision-making process of defaulted borrowers.

*Id.* (communication must be "capable of influencing the decision of the least

sophisticated debtor" under FDCPA).  Counts VII–X should therefore be

dismissed.[24]

---

[24] If the FDCPA claims are not dismissed, the Court should limit those claims to conduct that occurred after January 18, 2016, under the one-year statute of limitations period.  15 U.S.C. § 1692k(d).

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated:  March 24, 2017            Respectfully submitted,

/s/ Matthew T. Martens
Matthew T. Martens (DC 1019099) (*pro hac vice*)
Jonathan E. Paikin (DC 466445) (*pro hac vice*)
Daniel P. Kearney (DC 977148) (*pro hac vice*
   petition forthcoming)
Wilmer Cutler Pickering
   Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
matthew.martens@wilmerhale.com
jonathan.paikin@wilmerhale.com
daniel.kearney@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

Daniel T. Brier (PA 52348)
Donna A. Walsh (PA 74833)
Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
dbrier@mbklaw.com
dwalsh@mbklaw.com
Tel: 570-342-6100
Fax: 570-342-6147

*Counsel for Navient Corporation, Navient Solutions, LLC, and Pioneer Credit Recovery, Inc.*

## CERTIFICATE OF WORD COUNT

I hereby certify in accordance with Local Rule 7.8(b)(2) that the foregoing

document is 7,498 words.

/s/ Matthew T. Martens
Matthew T. Martens (DC 1019099) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
matthew.martens@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2017, I filed the foregoing document with

the Clerk of Court via CM/ECF system, which will send notification of such filing

to all counsel of record who are deemed to have consented to electronic service:

/s/ Matthew T. Martens
Matthew T. Martens (DC 1019099) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
matthew.martens@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363