# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Consumer Financial Protection Bureau, | |
| Plaintiff, | Case No. 3:17-CV-00101-RDM (Hon. Robert D. Mariani) |
| v. | |
| Navient Corporation, *et al.*, | Electronically Filed |
| Defendants. | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER RULE 12(b)(6) OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT UNDER RULE 12(e)

Anthony Alexis
*Enforcement Director*

David Rubenstein
*Deputy Enforcement Director*

Thomas Kim
*Assistant Deputy Enforcement Director*

Nicholas Jabbour, DC 500626
Brandis Anderson, CA 261325
Ebony Sunala Johnson, VA 76890
*Enforcement Attorneys*

*Attorneys for Plaintiff*
*Consumer Financial Protection Bureau*

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................1

FACTS AND PROCEDURAL HISTORY ........................................... 3

STATEMENT OF QUESTIONS INVOLVED ................................... 4

ARGUMENT ..................................................................................... 4

    I.    The Bureau Has Authority to Bring this Lawsuit. ..................... 4

        A.    The CFPA does not require that the Bureau identify specific illegal practices through rulemaking before initiating an enforcement action. ..................................... 4

        B.    Defendants had fair notice that their conduct could be covered by the CFPA. ...........................................................7

        C.    Neither the HEA nor the contract between Navient Corporation and ED precludes this lawsuit. ....................10

        D.    The Bureau's structure is constitutional. ..........................13

    II.    All Counts in the Complaint State Claims Upon Which Relief Can Be Granted. ...............................................................17

        A.    Standard of review ...........................................................17

        B.    Count I pleads facts sufficient to support the inference that Navient engaged in abusive conduct related to forbearance steering. ......................................................18

        C.    Count II pleads facts sufficient to support the inference that Navient engaged in unfair conduct related to forbearance steering. ......................................................21

        D.    Count III pleads facts sufficient to support the inference that Navient engaged in unfair conduct related to its email communication regarding IDR recertification. ................................................................. 24

E.   Count IV pleads facts sufficient to support the inference that Navient engaged in deceptive conduct related to its postal mail communication regarding IDR recertification. ........................................................... 27

F.   Count VI pleads sufficient facts regarding Navient's unfair conduct relating to repeated payment processing errors to enable Navient to provide a responsive pleading. .......................................................... 31

G.   Counts VII through X plead facts sufficient to support the inference that Pioneer engaged in deceptive conduct by misrepresenting the benefits of the federal rehabilitation program.. ........................... 33

   1.   Rule 9(b) is inapplicable to these claims. .............. 33

   2.   The allegations regarding the materiality of Pioneer's misrepresentations are sufficient........... 36

CONCLUSION ........................................................................... 38

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Coast Prof'l,*
    2014 WL 4413598 (E.D. Pa. Sept. 5, 2014) ......................................... 11

*Am. Fed'n of Gov't Emps., AFL-CIO v. FLRA,*
    388 F.3d 405 (3d Cir. 2004) ........................................................ 16, 17

*Angino v. Wells Fargo Bank,*
    2016 WL 787652 (M.D. Pa. Feb. 19, 2016) ......................................... 32

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .......................................................................... 17

*Brogan v. Tunkhannock Twp.,*
    2015 WL 5028812 (M.D. Pa. Aug. 19, 2015) ...................................... 33

*Carcieri v. Salazar,*
    555 U.S. 379 (2009) ........................................................................... 10

*CFPB v. CashCall, Inc.,*
    2016 WL 4820635 (C.D. Cal. Aug. 31, 2016) ....................................... 8

*CFPB v. D&D Mktg.,*
    No. 15-9692-PSG (C.D. Cal. Nov. 17, 2016),
    Order Denying Defendants' Motion to Dismiss .................. 7, 8, 23, 34

*CFPB v. Frederick Hanna & Assocs.,*
    114 F. Supp. 3d 1342 (N.D. Ga. 2015) .................................... 33, 34, 37

*CFPB v. Gordon,*
    819 F.3d 1179 (9th Cir. 2016) ........................................................ 8, 27

*CFPB v. ITT Educ. Servs.,*
    2015 WL 1013508 (S.D. Ind. Mar. 6, 2015) ............................... *passim*

*CFPB v. Prime Mktg. Holdings,*
No. CV-16-07111-BRO (C.D. Cal. Nov. 15, 2016),
Order re Defendant's Motion to Dismiss............................................34

*Clark v. McDonald's Corp.,*
213 F.R.D. 198 (D.N.J. 2003) ............................................................32

*Cliff v. Payco General Am. Credits,*
363 F.3d 1113 (11th Cir. 2004) .........................................................11

*Connelly v. Lane Constr. Corp.,*
809 F.3d 780 (3d Cir. 2015) ..............................................................17

*Fowler v. UPMC Shadyside,*
578 F.3d 203 (3d Cir. 2009) .........................................................17, 18

*Free Enterprise Fund v. Public Company Accounting Oversight Board,*
561 U.S. 477 (2010) ...........................................................................15

*FTC v. Accusearch Inc.,*
570 F.3d 1187 (10th Cir. 2009) .........................................................12

*FTC v. AFD Advisors,*
2014 WL 274097 (N.D. Ill. Jan. 24, 2014) ........................................34

*FTC v. Amazon.com,*
71 F. Supp. 3d 1158 (W.D. Wash. 2014)............................................19

*FTC v. Brown & Williamson Tobacco Corp.,*
778 F.2d 35 (D.C. Cir. 1985) .............................................................30

*FTC v. Cantkier,*
767 F. Supp. 2d 147 (D.D.C .2011) ....................................................28

*FTC v. Davison Assocs., Inc.,*
431 F. Supp. 2d 548 (W.D. Pa. 2006).................................................30

*FTC v. Freecom Commc'ns, Inc.,*
401 F.3d 1192 (10th Cir. 2005) .........................................................34

iv

*FTC v. IFC Credit Corp.,*
    543 F. Supp. 2d 925 (N.D. Ill. 2008) ................................................... 23

*FTC v. Neovi,*
    604 F.3d 1150 (9th Cir. 2010) ............................................................. 22

*FTC v. Willms,*
    2011 WL 4103542 (W.D. Wash. Sept. 13, 2011) ................................. 30

*FTC v. Wyndham Worldwide Corp.,*
    10 F. Supp. 3d 602 (D.N.J. 2014), *aff'd* 799 F.3d 236
    (3d Cir. 2015) ............................................................................. *passim*

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972) ............................................................................. 9

*Hartig Drug Co. Inc. v. Senju Pharm. Co. Ltd.,*
    836 F.3d 261 (3rd Cir. 2016) ............................................................... 23

*Humphrey's Executor v. United States,*
    295 U.S. 602 (1935) ...................................................................... 14, 15

*Illinois v. Alta Colleges,*
    2014 WL 4377579 (N.D. Ill. Sept. 4, 2014) ........................................ 20

*In re UJB Financial Corp. S'holder Litig.,*
    1991 WL 321909 (D.N.J. Jan. 22, 1991), *aff'd in part,*
    *rev'd in part sub nom. Shapiro v. UJB Fin. Corp.,*
    964 F.2d 272 (3d Cir. 1992) ......................................................... 34, 36

*J.E.M. Ag Supply v. Pioneer Hi–Bred Int'l,*
    534 U.S. 124 (2001) ............................................................................ 11

*Jensen v. Pressler & Pressler,*
    791 F.3d 413 (3d Cir. 2015) ............................................................... 36

*John Doe Co. v. CFPB,*
    849 F.3d 1129 (D.C. Cir. 2017) .......................................................... 13

v

*Morrison v. Olson,*
    487 U.S. 654 (1988) ..................................................................14, 15

*Mortellite v. Novartis Crop Prot.,*
    460 F.3d 483 (3d Cir. 2006) ............................................................20

*Morton v. Mancari,*
    417 U.S. 535 (1974) ........................................................................ 10

*Myers v. United States,*
    272 U.S. 52 (1926) ......................................................................13, 14

*Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of the Fed.
    Reserve Sys.,*
    773 F. Supp. 2d 151 (D.D.C. 2011) ................................................ 21

*Orkin Exterminating Co. v FTC,*
    849 F.2d 1354 (11th Cir. 1988) ..................................................22, 25

*PHH Corp. v. CFPB,*
    839 F.3d 1 (D.C. Cir. 2016), *reh'g en banc granted* ......................... 13

*POM Wonderful v. Coca-Cola Co.,*
    134 S. Ct. 2228 (2014) .................................................................... 12

*Prophet v. Myers,*
    645 F. Supp. 2d 614 (S.D. Tex. 2008) ............................................ 34

*Schaedler v. Reading Eagle Publ'n,*
    370 F.2d 795 (3d Cir. 1966) ............................................................ 33

*Seamans v. Temple Univ.,*
    744 F.3d 853 (3d Cir. 2014) .............................................................11

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,*
    742 F.2d 786 (3d Cir. 1984) ............................................................ 35

*Smith v. Ingram Micro, Inc.,*
    2015 WL 7736742 (M.D. Pa. Dec. 1, 2015) ..................................... 31

*Thomas v. Indep. Twp.*,
    463 F.3d 285 (3d Cir. 2006) ................................................................ 32

*Tucker v. Mann Bracken, LLC*,
    2009 WL 151669 (M.D. Pa. Jan. 21, 2009) ........................................ 38

*United States v. Batchelder*,
    442 U.S. 114 (1979) ........................................................................... 11

*United States v. Eastwick Coll.*,
    657 F. App'x 89 (3d Cir. 2016) ........................................................... 36

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ............................................................ 35

*Wilson v. Quadramed Corp.*,
    225 F.3d 350 (3rd Cir. 2000) ............................................................. 31

*Zavala v. Wal-Mart Stores*,
    393 F. Supp. 2d 295 (D.N.J. 2005)..................................................... 36

## <u>Statutes</u>

7 U.S.C. § 6s .......................................................................................... 15

12 U.S.C. § 243 ...................................................................................... 17

12 U.S.C. § 5531 ............................................................................. *passim*

12 U.S.C. § 5536 .......................................................................... 6, 8, 15

12 U.S.C. §§ 5561-67 ............................................................................. 6

12 U.S.C. § 5564(g)(1) ......................................................................... 38

15 U.S.C. § 45 (1934).......................................................................... 15

15 U.S.C. § 45(n) ............................................................................... 6, 8

15 U.S.C. § 57a .................................................................................... 15

20 U.S.C. § 1071(a)(1) ..................................................................... 12

## Rules

Fed. R. Civ. P. 8(a)(2) .....................................................................17

Fed. R. Civ. P. 9(b) ............................................................. 33, 34, 35, 36

Fed. R. Civ. P. 12(b)(6) ....................................................... 3, 23, 36

Fed. R. Civ. P. 12(e) .............................................................3, 31, 32

Fed. R. Civ. P. 15(a)(2) ...................................................................38

## Regulations

74 Fed. Reg. 36,572 (2009) ......................................................... 27

78 Fed. Reg. 10,963 (2013) ......................................................... 27

## Other Authorities

CFPB Supervision & Examination Manual, available at
http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf (last accessed April 24, 2017)................ 8

ED, "Getting Out Of Default," at http://studentaid.ed.gov/sa/repay-loans/default/get-out (last accessed Apr. 24, 2017) ......................... 37

FTC Act Amendments of 1994, 108 Stat. 1691 .............................................8

Plaintiff Consumer Financial Protection Bureau ("CFPB" or "Bureau") respectfully submits this opposition to the motion, and accompanying brief ("Br."), of Navient Corporation, Navient Solutions, LLC ("Navient"), and Pioneer Credit Recovery, Inc. ("Pioneer") to dismiss the Complaint, or, alternatively, for a more definite statement.[1]

## **INTRODUCTION**

Pursuant to its statutory mandate to enforce federal consumer financial laws, the Bureau brought this action to seek relief for numerous consumers whom Defendants have harmed. Defendants failed student loan borrowers at every stage of the repayment process, including steering borrowers into costly forbearance before or instead of beneficial repayment plans, obscuring renewal information for those plans, systematically making payment processing errors, inaccurately reporting information about disabled borrowers' loans to credit reporting agencies, providing misleading information concerning the release of cosigners from borrowers' private loans, and providing inaccurate information to borrowers in default. When faced with the choice of applying procedures that benefited

---

[1] Defendants assert that Navient Corporation is not a proper defendant because it is a holding company. Br. at 1 n.1. The Complaint explains that Navient Corporation is a "related person" and therefore a proper defendant. Compl. ¶¶ 18-25.

consumers or acting in Defendants' own self-interest, Defendants all too often chose the latter. Defendants admitted as much in their brief: "[T]here is no expectation that the servicer will act in the interest of the consumer." Br. at 20-21 (quotation omitted).

Now, Defendants seek dismissal of this case based on arguments that ignore controlling law or that contest the Bureau's well-pleaded factual allegations. Defendants first challenge the Bureau's authority to bring this case under the Consumer Financial Protection Act ("CFPA") and the U.S. Constitution. However, contrary to Defendants' arguments, nothing in the CFPA required the Bureau to delineate the specific conduct at issue in this lawsuit through a prior rulemaking, nor is the CFPA impermissibly vague such that Defendants could not have foreseen that their conduct would fall within its scope. Defendants also assert that the Higher Education Act ("HEA") and Navient Corporation's contract with the U.S. Department of Education ("ED") somehow preclude this lawsuit. These arguments must be rejected because Defendants point to no actual conflict between the HEA and the CFPA; courts have rejected the proposition that the HEA allows servicers and debt collectors to violate consumer financial protection laws; and the contract with ED explicitly requires compliance with all federal

2

laws. Defendants' constitutional challenge fares no better, as there are no constitutional infirmities with the Bureau's structure.

In addition, although Defendants purport to seek dismissal of specific claims under Rules 12(b)(6) and 12(e), their brief makes manifest that there is no basis for dismissal under those rules. Rather than attacking the sufficiency of the Bureau's allegations, Defendants make unsupported, competing allegations, thereby demonstrating that their arguments are simply disagreements with the merits of Bureau's claims. The controlling legal standard requires only that the Bureau plead facts that allow a reasonable inference that Defendants are liable for the misconduct alleged. The Bureau has more than done so.

The Court should deny Defendants' motion in its entirety.

## **FACTS AND PROCEDURAL HISTORY**

The Complaint, which resulted from the Bureau's investigation of certain servicing and collection activities of Defendants, describes how Defendants failed to perform their core duties in the servicing and collection of student loans. It contains eleven counts, two of which Defendants do not contest in their motion. Br. at 3 n.2. The Bureau discusses the factual allegations of the nine contested claims later in this brief, when addressing Defendants' arguments about those claims. Among

3

other relief, the Complaint seeks restitution to compensate consumers for harms suffered, a civil money penalty, and injunctive relief to prevent Defendants' continued violations of the law.

## STATEMENT OF QUESTIONS INVOLVED

1.      Does the Bureau have authority to enforce the CFPA against Defendants for the alleged violations?

2.      Is the structure of the Bureau constitutional?

3.      Does the Complaint contain sufficient factual allegations, accepted as true, to draw the reasonable inference that Defendants are liable for the violations alleged in Counts I-IV and VI-X?

## ARGUMENT

### I.    The Bureau Has Authority to Bring this Lawsuit.

Defendants raise multiple arguments concerning the Bureau's authority to bring this lawsuit. None withstand scrutiny.

#### A.    The CFPA does not require that the Bureau identify specific illegal practices through rulemaking before initiating an enforcement action.

Defendants argue that the "structure" of the CFPA "makes plain that the CFPB is required to define practices as unlawful using its rulemaking authority before bringing an [enforcement] action." Br. at 13. In actuality,

there is nothing in the CFPA that makes rulemaking a predicate to enforcement.

To support their argument, Defendants claim that 12 U.S.C. § 5531(a), dealing with the Bureau's enforcement authority, "looks to" 12 U.S.C. § 5531(b), dealing with the Bureau's rulemaking authority. Br. at 13. That is false. Nothing in subsection 5531(a) or 5531(b) suggests that either "looks to" the other:

> (a) In general
> The Bureau may take any action authorized under part E to prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice under Federal law in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service.

> (b) Rulemaking
> The Bureau may prescribe rules applicable to a covered person or service provider identifying as unlawful unfair, deceptive, or abusive acts or practices in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service. Rules under this section may include requirements for the purpose of preventing such acts or practices.

12 U.S.C. §§ 5531(a), (b).[2] These provisions do not indicate that the Bureau must identify unlawful conduct through rulemaking before bringing an enforcement action based on that conduct.

If anything, subsection 5531(a) "looks to" 12 U.S.C. § 5536(a)(1)(B), which specifically makes it unlawful for "any covered person or service provider ... to engage in any unfair, deceptive, or abusive act or practice." So § 5536 is the "Federal law" that makes unfair, deceptive, or abusive practices (committed by a covered person or service provider) unlawful.

Nor do subsections 5531(c) and 5531(d) support Defendants' argument. Just as the Federal Trade Commission ("FTC") Act's unfairness standard (15 U.S.C. § 45(n)) has not been read to require that the FTC undertake a rulemaking prior to enforcement, the similarly structured subsections 5531(c) and 5531(d)—which set forth the CFPA's unfairness and abusiveness standards—should not be read to impose that requirement.

When enforcing the FTC Act—which, like the CFPA, prohibits unfair or deceptive acts or practices—"Circuit Courts of Appeal have affirmed FTC unfairness actions in a variety of contexts *without* preexisting rules or

---

[2] Subsection 5531(a) refers to "part E." Part E is titled "Enforcement Powers" and is at 12 U.S.C. §§ 5561-67.

6

regulations specifically addressing the conduct-at-issue." *FTC v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 618 (D.N.J. 2014), *aff'd* 799 F.3d 236 (3d Cir. 2015). Similarly, it is the Bureau's "prerogative to decide whether to proceed through a rulemaking, where it issues regulations associated with the law, or through an adjudication, where it develops the law through adversarial process. The CFPB here has chosen to proceed through litigation." *CFPB v. D&D Mktg.*, No. 15-9692-PSG (C.D. Cal. Nov. 17, 2016), Order Denying Defendants' Motion to Dismiss, slip op. at 12-13 (citations omitted). Indeed, in dozens of enforcement actions brought by the Bureau, no court has ever indicated that a prior rulemaking was required. Under Defendants' interpretation, any wrongdoer would always get an extra bite at the apple because it could continue to engage in a newly concocted unfair, deceptive, or abusive practice until the Bureau had first completed a rulemaking.

The Court should reject Defendants' request to rewrite the CFPA to require rulemaking before an enforcement action.

### B.   Defendants had fair notice that their conduct could be covered by the CFPA.

Defendants argue that the Bureau's claims under the CFPA impose "secret requirements" for which they lacked "fair notice." Br. at 14-15. Defendants, however, do not even attempt to show that the CFPA is "so

vague as to be no rule or standard at all," as they must do to prevail on their "fair notice" argument. *Wyndham*, 799 F.3d at 255 (quotation omitted).

Defendants cannot make such a showing in light of the law on this issue, including cases rejecting the very argument Defendants have asserted. *See CFPB v. ITT Educ. Servs.,* 2015 WL 1013508, at *17-20 (S.D. Ind. Mar. 6, 2015) (rejecting "fair notice" argument regarding CFPA "unfair" and "abusive" standards); *D&D Mktg.*, slip op. at 8-13 (same); *CFPB v. CashCall, Inc.*, 2016 WL 4820635, at *10-12 (C.D. Cal. Aug. 31, 2016) (rejecting "fair notice" argument regarding "deceptive" standard). As these cases explain, the CFPA explicitly sets forth the elements of unfairness and abusiveness. 12 U.S.C. §§ 5531(c)-(d), 5536(a)(1)(B); *see D&D Mktg.*, slip op. at 9-11. Further, the elements of unfairness are the same as those set forth in a provision of the FTC Act enacted in 1994 (15 U.S.C. § 45(n); FTC Act Amendments of 1994, 108 Stat. 1691, 1695), and the CFPB's deception standard is informed by the FTC's 1983 policy statement.[3] Similarly, "agencies and courts have successfully applied the

---

[3] *See* CFPB Supervision & Examination Manual, available at http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf (last accessed April 24, 2017), at UDAAP 5; *CFPB v. Gordon*, 819 F.3d 1179, 1193 n.7 (9th Cir. 2016).

[abusiveness] term as used in closely related consumer protection statutes and regulations." *ITT*, 2015 WL 1013508, at *20.

As the court in *ITT* held in rejecting a "fair notice" challenge to the CFPA, "as a statute imposing only civil liability and governing economic activity rather than protected constitutional interest like free expression, the CFPA's language is not subject to heightened scrutiny for vagueness." *Id.* at *17; *accord Wyndham*, 799 F.3d at 250-55. The court further noted that "Congress's charter for an agency could not, and should not, use descriptions so precise that they foreclose any interpretive uncertainty." *ITT*, 2015 WL 1013508 at *18. Rather, "'most statutes must deal with untold and unforeseen variations in factual situations, and [] practical necessities ... inevitably limit the specificity with which legislators can spell out prohibitions.'" *Id.* (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)).

Similarly, in considering a "fair notice" challenge to the FTC Act's unfairness standard, the Third Circuit recently explained that while "there will be borderline cases where it is unclear if a particular company's conduct falls below the requisite legal threshold[,] ... under a due process analysis a company is not entitled to such precision as would eliminate all close calls." *Wyndham*, 799 F.3d at 256. The court distilled the inquiry as

9

follows: "The relevant question is not whether Wyndham had fair notice of the *FTC's interpretation* of the statute, but whether Wyndham had fair notice of what the *statute itself* requires." *Id.* at 253-54. Because Wyndham should have known that its conduct "could fall within the meaning of the statute," there was no "fair notice" concern. *Id.* at 255.

Likewise, Defendants should have known that, as a servicer and collector of student loans, their conduct would fall within the scope of the CFPA. Defendants' fair notice argument should be rejected.

### C.   Neither the HEA nor the contract between Navient Corporation and ED precludes this lawsuit.

In another attempt to find support for a "fair notice" argument, Defendants claim that they are required only to comply with the requirements of the HEA. Br. at 14. But there is no authority for the proposition that a company can pick which federal statutes it will follow and which it will ignore. Rather, "absent a clearly expressed congressional intention," courts must give full effect to allegedly competing federal statutes unless they are "in irreconcilable conflict." *Carcieri v. Salazar*, 555 U.S. 379, 395 (2009) (quotation omitted). Thus, when considering two federal statutes that contain no express preclusion, "it is the duty of the courts ... to regard each as effective" if they "are capable of coexistence." *Morton v. Mancari*, 417 U.S. 535, 551 (1974). Even statutes that "overlap"

10

can be "fully capable of coexisting" and should be given full effect so long as no irreconcilable conflict exists. *United States v. Batchelder*, 442 U.S. 114, 122 (1979). When two federal statutes complement each other, it would show disregard to Congress to hold that one precludes the other. *See J.E.M. Ag Supply v. Pioneer Hi–Bred Int'l*, 534 U.S. 124, 143-44 (2001). Defendants' reliance on the HEA fails because they point to no actual conflict between the HEA and the CFPA implicated by the Bureau's claims, much less an irreconcilable conflict.

Indeed, courts have rejected arguments that the HEA precludes private actions brought under the Fair Credit Reporting Act ("FCRA") and Fair Debt Collection Practices Act ("FDCPA") because they discerned no conflict between those laws that would prevent both from being operative. *See Seamans v. Temple Univ.*, 744 F.3d 853, 863 (3d Cir. 2014) ("[The] HEA did not exempt [the defendant], as a furnisher, from its typical reporting obligations under FCRA."); *Cliff v. Payco General Am. Credits*, 363 F.3d 1113, 1123-24 (11th Cir. 2004) (FDCPA claim not precluded by HEA); *Alexander v. Coast Prof'l*, 2014 WL 4413598, at *3 n.1 (E.D. Pa. Sept. 5, 2014) (same).

Likewise, the Bureau's claims implicate no conflict between the CFPA and the HEA. Rather, the two statutes "complement each other" because

11

"each has its own scope and purpose," and their enforcement is entrusted to different regulators, each with differing areas of expertise and differing available remedies. *Cf. POM Wonderful v. Coca-Cola Co.*, 134 S. Ct. 2228, 2238-39 (2014). Specifically, the purposes of the HEA are to encourage lenders to make student loans and guarantee lenders against losses. *See* 20 U.S.C. § 1071(a)(1). Consistent with these purposes, the HEA authorizes the Secretary of Education to pursue remedies against lenders and schools for HEA violations. In contrast, the Bureau's function under the CFPA is to protect consumers, and the Bureau can seek restitution to compensate consumers for violations of consumer financial laws. Thus, there was a "congressional design to enact two different statutes, each with its own mechanisms" for enforcement that are meant to operate in a complementary manner. *See POM*, 134 S. Ct. at 2238-39; *see also FTC v. Accusearch Inc.*, 570 F.3d 1187, 1194-95 (10th Cir. 2009) (FTC could bring unfair practices lawsuit for conduct also regulated by another agency).

Defendants' reliance on Navient Corporation's contract with ED is also unavailing. The contract, which covers the servicing of only a subset of the loans at issue in the Complaint, does not allow Navient Corporation to violate consumer finance laws. Rather, it provides that Navient Corporation is "responsible for maintaining a full understanding of all federal and state

12

laws and regulations ... and ensuring that all aspects of the service[s] continue to remain in compliance as changes occur." Br., Exhibit A, at NAV-00000024. The contract further indicates in multiple places that Navient Corporation is "required to meet all statutory and legislative requirements." *Id.* at NAV-00000027, NAV-00000045, NAV-00000059.[4]

### D. The Bureau's structure is constitutional.

In a final attempt to question the Bureau's authority to bring this lawsuit, Navient presents a jumbled challenge to the Bureau's constitutionality based on the CFPA's for-cause removal provision, the Bureau's single-Director structure, and the Bureau's funding. Br. at 15-18. Even untangled, these arguments lack merit.

Navient begins by basing its argument on bad law: dicta from *Myers v. United States*, 272 U.S. 52 (1926), that has been disapproved. Br. at 16.[5]

---

[4] Defendants invite the Court to determine the appropriate profit margin to which Navient Corporation should be entitled under its contract with ED. Br. at 3, 10, 15, 19-20 (complaining about "'costly'" servicing duties). These arguments should be disregarded because they do not render the Bureau's claims implausible and, even if they were somehow relevant, would simply be factual disputes.

[5] Navient also relies on *PHH Corp. v. CFPB*, 839 F.3d 1 (D.C. Cir. 2016), *reh'g en banc granted.* Br. at 16. But the D.C. Circuit has vacated that decision. *See John Doe Co. v. CFPB*, 849 F.3d 1129, 1132 (D.C. Cir. 2017).

Although the Court in *Myers* made broad pronouncements in dicta, just nine years later the Court explained that "the narrow point actually decided [in *Myers*] was only that the President had power to remove a postmaster of the first class, without the advice and consent of the Senate." *Humphrey's Executor v. United States*, 295 U.S. 602, 626 (1935). As to the dicta in *Myers*, the Court explained that "these expressions are disapproved." *Id.* Thus, *Myers* is irrelevant to the constitutionality of the Bureau's structure.

*Humphrey's Executor*, however, is relevant. That case upheld the constitutionality of the for-cause removal provision that applied to FTC commissioners. *Id.* at 632. As the Court later explained, *Humphrey's Executor* reflected the Court's judgment that, given "the functions of the officials in question," "it was not essential to the President's proper execution of his Article II powers that [the FTC] be headed up by individuals who were removable at will." *Morrison v. Olson*, 487 U.S. 654, 691 (1988) (quotation omitted). The ability to terminate an official for good cause is sufficient for the President "to assure that the [official] is competently performing his or her statutory responsibilities." *Id.* at 692. The holding in *Humphrey's Executor* applies to the Bureau's single Director just as it applies to the FTC commissioners.

14

Navient urges this Court to ignore *Humphrey's Executor* because of the "breadth and nature" of the Bureau's authority. Br. at 17. But the Bureau's functions are not meaningfully different from those performed by the FTC when the Court decided *Humphrey's Executor* in 1935—indeed, the Bureau actually operates within a narrower slice of the economy. In 1935, the FTC had authority to prohibit "unfair methods of competition in commerce" by any person, partnership, or corporation. 15 U.S.C. § 45 (1934). The Bureau similarly may prohibit "unfair" (as well as deceptive and abusive) acts and practices—but only in connection with consumer financial products or services. 12 U.S.C. §§ 5531, 5536(a). The key point is that the Bureau's functions, like the largely similar functions of the FTC in 1935, are not "so central to the functioning of the Executive Branch as to require as a matter of constitutional law" that the Bureau's Director be terminable at will by the President. *Morrison*, 487 U.S. at 691-92.

Navient particularly complains about the Bureau's authority to implement and enforce rules. Br. at 17. Of course, this is authority that many independent agencies have. *See, e.g.*, 15 U.S.C. § 57a (FTC); 7 U.S.C. § 6s (Commodity Futures Trading Commission). And in *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), the Court noted that the Board has "expansive powers to govern an

entire industry," including the authority to enforce its own rules. *Id.* at 485. Nonetheless, the Court recognized that the President would have sufficient control over the Board if he was separated from its members by only "a single level of good-cause tenure." *Id.* at 509. So there is nothing unique, or unconstitutional, about the Bureau's rulemaking authority.

Navient cites no authority to support its contention that the Bureau's single-Director structure renders it unconstitutional. Br. at 17. The key issue is whether the President has sufficient authority to control the Director, and, as explained above, because the Director may be removed for cause, the President has sufficient authority. Indeed, an agency headed by a single Director may actually be more accountable to the President than a multi-member agency because the multi-member structure may impede the President's ability to hold any particular official responsible for the agency's performance.

Finally, Navient contends that the Bureau is not accountable to Congress because it is funded from the earnings of the Federal Reserve System. Br. at 16 n.12. But Navient ignores that Congress can alter the Bureau's funding, and thus retains full authority to oversee the Bureau. Nothing in the Constitution precludes Congress from funding agencies outside the annual appropriations process. *See Am. Fed'n of Gov't Emps.,*

*AFL-CIO v. FLRA*, 388 F.3d 405, 409 (3d Cir. 2004) (explaining that "Congress may ... decide not to finance a federal entity with appropriations," but rather through some other mechanism). Indeed, other financial regulators have long been funded outside that process. *See, e.g.*, 12 U.S.C. § 243 (Federal Reserve System).

## II. All Counts in the Complaint State Claims Upon Which Relief Can Be Granted.

### A. Standard of review.

Rule 8 requires only that the Bureau provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Defendants' motion must be denied if the Bureau has "plead[ed] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must assume all of the Complaint's "factual allegations to be true, construe those truths in the light most favorable to the [Bureau], and then draw all reasonable inferences from them." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2015); *see also Iqbal*, 556 U.S. at 678. Put differently, the matter for the Court's determination is not whether the Bureau ultimately will prevail on its claims, but whether the Bureau is entitled to offer evidence to support those claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir.

2009). Thus, the Complaint is sufficient if it has "put forth allegations [of fact] that raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of the claims. *Id.* (quotation omitted). The Complaint unquestionably meets this standard.

### B. Count I pleads facts sufficient to support the inference that Navient engaged in abusive conduct related to forbearance steering.

An act or practice is abusive under the CFPA if it takes "unreasonable advantage" of "the reasonable reliance by the consumer on a covered person to act in the interests of the consumer." 12 U.S.C. § 5531(d)(2)(C).[6] With respect to Count I, Navient does not dispute the sufficiency of the Bureau's allegation that Navient took "unreasonable advantage" of borrowers experiencing long-term financial hardship. Navient benefited from decreased operating costs by steering consumers into forbearance, before or instead of income-driven repayment ("IDR") plans. Compl. ¶¶ 40-49; *see ITT,* 2015 WL 1013508, at *29-30 (construing "unreasonable advantage" according to plain language).

---

[6] Navient opens its discussion about Counts I and II by asserting that "there is no allegation that Navient affirmatively made any misrepresentation or false statement." Br. at 18. But "misrepresentation[s] or false statement[s]" are not elements of either claim.

18

Instead, Navient focuses solely on the "reasonable reliance" prong, arguing that the Bureau must allege that Navient had an "affirmative duty" to provide individualized counseling to borrowers, which could only happen if Navient had some "fiduciary relationship" with the borrower. Br. at 20. However, "affirmative duty" and "fiduciary relationship" are not elements of a CFPA abusiveness claim. 12 U.S.C. § 5531(d); *ITT,* 2015 WL 1013508, at *31; *cf. FTC v. Amazon.com*, 71 F. Supp. 3d 1158, 1163-64 (W.D. Wash. 2014). The cases cited by Navient (Br. at 20-23) all deal with fraud or breach of fiduciary duty claims, and the Court should reject Navient's attempt to inject elements from those claims into the CFPA abusiveness standard.

The relevant question is whether the Bureau's allegations regarding "reasonable reliance" are sufficient. They plainly are. The Complaint alleges, for example, that Navient repeatedly encouraged distressed borrowers to contact the company for advice and guidance about repayment options that were most suitable for their situation. Compl. ¶¶ 38-39. Navient repeatedly made public statements such as "Contact us ...

19

and let us help you make the right decision for your situation." *Id.*[7]
Borrowers reasonably relied on Navient to do what it promised. These
allegations are more than sufficient to draw an inference that Navient
engaged in abusive conduct. *See ITT,* 2015 WL 1013508, at *31-32
(allegations against a student loan provider were sufficient to state a CFPA
abusiveness claim); *Illinois v. Alta Colleges,* 2014 WL 4377579, at *2 (N.D.
Ill. Sept. 4, 2014) (same).

In seeking to write a "fiduciary relationship" standard into the CFPA
and then distance itself from that standard, Navient reveals its fundamental
contention: that despite publicly promising to help distressed borrowers
understand alternative repayment plans, it had no obligation to do so. Br.
at 20-21 (asserting that there is "no expectation" that Navient will "'act in
the interest of the consumer'"). While Navient may not believe it has any
obligation to act in the interests of borrowers, that belief does not negate

[7] Statements on ED's website likewise encouraged borrowers to
contact their servicer for counseling about repayment plans. Compl. ¶ 37.
Navient argues that such statements cannot be considered in determining
whether borrowers reasonably relied on Navient. But the case cited by
Navient deals with "fraud in the inducement." *Mortellite v. Novartis Crop
Prot.,* 460 F.3d 483, 491-93 (3d Cir. 2006). The Bureau has not alleged
"fraud in the inducement," or even deception. The Bureau merely alleges
that the statements on ED's website—which borrowers were directed to via
several links on Navient's *own* website (*see* Compl. ¶¶ 37, 38 nn. 5-7)—
contributed to borrowers' "reasonable reliance" on Navient.

the sufficiency of the Bureau's allegation that borrowers reasonably, but mistakenly, trusted and relied on Navient to act in their interest because Navient told them it would do so. As the only case to analyze the "reasonable reliance" element of the CFPA's abusiveness standard noted, a consumer's reliance may be reasonable, yet erroneous. *ITT,* 2015 WL 1013508, at *31 ("'reasonable consumers may erroneous[ly] believe that loan originators are working on their behalf'") (quoting *Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of the Fed. Reserve Sys.,* 773 F. Supp. 2d 151, 172 (D.D.C. 2011)). None of Navient's arguments render implausible the Bureau's claim that certain borrowers reasonably relied on Navient's representations that it would help them find the right repayment option for their situation, and that Navient took unreasonable advantage of their reliance by steering them to forbearance rather than adequately advising them about suitable long-term solutions, as it promised to do. Compl. ¶¶ 40-54.

### C.   Count II pleads facts sufficient to support the inference that Navient engaged in unfair conduct related to forbearance steering.

The Bureau's allegations in Count II sufficiently allege that Navient's forbearance steering conduct constituted an unfair act or practice under the CFPA. An unfair practice is one which (1) "causes or is likely to cause

substantial injury to consumers," (2) where such substantial injury "is not

reasonably avoidable by consumers," and (3) "is not outweighed by

countervailing benefits to consumers or competition." 12 U.S.C.

§ 5531(c)(1).

Concerning the first and third elements, Navient does not dispute the

sufficiency of the allegations that Navient's steering practices caused

substantial injury in the form of significant costs to borrowers, such as the

addition of massive amounts of unpaid interest to the principal balance of

borrowers' loans, and that such injury was not outweighed by

countervailing benefits to consumers or competition. Compl. ¶¶ 35, 53-54,

144, 146.

As to the second element, Navient borrowers could not reasonably

avoid the injury caused by Navient's steering practices, despite Navient's

claims to the contrary. Br. at 23-24. In addressing whether an injury is

"reasonably avoidable," courts look to whether a consumer had "free and

informed choice" to avoid it. *FTC v. Neovi*, 604 F.3d 1150, 1158 (9th Cir.

2010). An injury is reasonably avoidable only where those harmed "have

reason to anticipate the impending harm and the means to avoid it." *Orkin*

*Exterminating Co. v FTC*, 849 F.2d 1354, 1365 (11th Cir. 1988) (quotation

omitted).

22

Navient argues that borrowers could have avoided injury because Navient sent disclosures to borrowers throughout the repayment period that, coupled with publicly-available information, provided information about alternative repayment plans. Br. at 23-24. [8] But this erroneously equates "access to information" with "free and informed choice," and disregards Navient's role in hindering consumer decision-making. *See generally D&D Mktg.,* slip op. at 16 (holding that "even diligent consumers ... [who] read disclosures" could not reasonably avoid injury); *FTC v. IFC Credit Corp.*, 543 F. Supp. 2d 925, 945-46 (N.D. Ill. 2008) ("'certain types of sales techniques may prevent consumers from effectively making their own decisions'") (quoting FTC Policy Statement on Unfairness).

The Bureau plausibly alleges that Navient interfered with borrowers' "free and informed choice" when it told borrowers that it would help them identify the right repayment option for their situation, but then,

---

[8] Navient's brief refers to disclosures it purportedly sends to borrowers throughout their repayment term. Br. at 9-10, 24. The Bureau's claims are not based on these disclosures, and the Court should not consider this unintroduced evidence. *Hartig Drug Co. Inc. v. Senju Pharm. Co. Ltd.*, 836 F.3d 261, 273 (3rd Cir. 2016) ("In deciding a Rule 12(b)(6) motion, a court ... consider[s] only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.") (quotation omitted).

unbeknownst to many borrowers, steered them into a repayment option that was not suitable for their situation. Compl. ¶¶ 40-54. By providing poor or incomplete information to borrowers who had no reason to suspect that Navient would act contrary to its stated commitment, Navient obstructed their ability to make a "free and informed choice."

The allegations in Count II are sufficient to draw an inference that Navient engaged in unfair conduct. *See generally Wyndham*, 10 F. Supp. 3d at 625 (issue of reasonable avoidability was "fact-dependent" and could not be decided "as a matter of law").

### D. Count III pleads facts sufficient to support the inference that Navient engaged in unfair conduct related to its email communication regarding IDR recertification.

Count III alleges that Navient committed an unfair practice by failing to adequately notify borrowers who consented to receive electronic communications of the existence of the IDR renewal notice because the email Navient sent to them related to renewal contained no information concerning the purpose or contents of the notice. Navient does not dispute the sufficiency of the Bureau's allegations of substantial injury in the form of negative financial consequences when borrowers' affordable income-based payment amounts expired and that such injury was not outweighed

by countervailing benefits to consumers or competition. Compl. ¶ 73-74, 150, 152.

Navient focuses on the second unfairness element, arguing that borrowers could have reasonably avoided injury by clicking on the hyperlink in the email, and then logging into their accounts to determine what the email concerned. Br. at 25. But as the Bureau alleges, Navient's recertification email did not provide enough information to enable borrowers to anticipate—and thus reasonably avoid—harm. *Orkin*, 849 F.2d at 1365. Here, borrowers had no reason to anticipate impending harm because the recertification email gave no indication that it pertained to time-sensitive IDR renewal, and it lacked the telltale signs of importance found in other Navient notification emails. Significantly, the recertification email made no reference to recertification whatsoever. Rather, the subject line simply stated, "New Document Ready to View" or "Your Sallie Mae Account Information." Compl. ¶ 69. Similarly, the email body declared, "[A] new education loan document is available." Compl. ¶ 70. This generic language stands in stark contrast to other emails from the same time period that contained an explanation of purpose. *See e.g.,* Compl. ¶ 71 (Navient's monthly statement email indicated, "Your monthly statement is now available."). Accepting these facts as true, it is reasonable to infer that

25

borrowers missed important recertification deadlines because the recertification email did not even indicate that the document accessible through the hyperlink concerned recertification, unlike other Navient emails that alerted borrowers to the purpose and importance of referenced documents.[9] At best, Defendants' arguments regarding reasonable avoidability raise a fact issue inappropriate for resolution at this juncture. *See generally Wyndham*, 10 F. Supp. 3d at 625.

Navient contends that the use of hyperlinks is a generally accepted practice to protect consumers' privacy. This argument misses the mark because the Complaint does not allege unfairness due to the use of a hyperlink itself; it focuses specifically on the overall lack of information provided in the recertification email, especially in light of Navient's practice of providing content and purpose information in other types of notification emails. Navient cannot credibly argue that privacy interests are implicated by the inclusion of information regarding an upcoming recertification deadline, particularly because Navient later revised its recertification email

---

[9] Navient's IDR renewal rate history supports this inference. During the period in question, "the percentage of borrowers who did not timely renew their enrollment in [IDR] regularly exceeded 60%." Compl. ¶ 73. When Navient revised its email to be more descriptive, the renewal rate more than doubled. Compl. ¶¶ 75-76.

to include this information. Compl. ¶ 75.[10] Navient's motion should be denied as to Count III.

### E.    Count IV pleads facts sufficient to support the inference that Navient engaged in deceptive conduct related to its postal mail communication regarding IDR recertification.

Count IV claims that Navient committed a deceptive practice in connection with its pre-December 2012 postal mail notice regarding IDR recertification. As the Bureau alleges, that notice created the false impression that a processing delay would be the only consequence of submitting an incorrect or incomplete recertification application.

An act or practice is deceptive under the CFPA if: (1) it is likely to mislead the consumer; (2) the consumer's interpretation of the act or practice is reasonable under the circumstances; and (3) the misleading act or practice is material. *Gordon*, 819 F.3d 1179, 1192. Navient does not dispute the Bureau's materiality allegation, and instead focuses only on

---

[10] Defendants incorrectly contend that Navient's recertification email is consistent with practices endorsed by federal regulators. Br. at 26-27. In the Federal Register notice cited by Defendants, the Bureau indicated that an email "notifying the consumer that [a periodic] *statement* is available"—*i.e.*, an email identifying the referenced document—is acceptable. 78 Fed. Reg. 10,963 (2013) (emphasis added). And the ED guidance cited by Navient indicates that lenders are "encourage[d]" to "document that the borrower has [electronically] accessed" disclosures "to help identify borrowers who may need additional contact." 74 Fed. Reg. 36,572 (2009).

whether a reasonable consumer would likely be misled. Navient asserts in conclusory fashion that a reasonable borrower would not infer that a delay in processing was the only consequence of submitting an incomplete or inaccurate recertification application. Br. at 27. But in attacking this claim, Navient simply disputes whether the Bureau will prevail in proving its factual allegations, which is not the standard for adjudicating motions to dismiss. *See, e.g.*, *FTC v. Cantkier*, 767 F. Supp. 2d 147, 159 (D.D.C. 2011) ("Whether or not [the] ads and websites, taken in their full context, were 'likely to mislead consumers acting reasonably under the circumstances' is ultimately a factual question that cannot be resolved at the motion to dismiss stage.").

As the Complaint indicates, Navient's pre-December 2012 notice "did not inform borrowers of the actual date by which they had to submit the renewal application," nor did it "advise borrowers of the likely consequences of submitting incorrect or incomplete information" that is not remedied by the undisclosed deadline. Compl. ¶¶ 61, 64. Instead, the notice implied "that the only consequence of providing incorrect or incomplete information was a 'delay' in the renewal 'process.'" Compl. ¶ 64. In reality, borrowers who submitted renewal applications with inaccuracies or omissions that were not corrected before some undisclosed deadline

could be subject to much more severe consequences, including a significant increase in the monthly payment amount, addition of unpaid interest to their principal balance, and partial loss of an interest subsidy. Compl. ¶ 65. But since these consequences were not disclosed in the notice and the only consequence mentioned was a "delay," it was reasonable under the circumstances for borrowers to not understand that such other consequences could result from submitting incomplete or incorrect information.

The Complaint clearly states that Count IV only concerns borrowers who had "clearly chosen to renew their enrollment" as "evidenced by their submission of the application, even if that application was incomplete or inaccurate in some respect." Compl. ¶ 65. Yet Navient's brief ignores the issue, instead selectively (and misleadingly) quoting language unrelated to borrowers submitting renewal applications. For example, Navient pulls language from ED-drafted forms that were enclosed with the Navient-drafted notices. Br. at 28 n.21. But Navient omits from the quoted sentences the opening clauses, which make clear that those sentences apply to borrowers who "do not have a partial financial hardship" (*i.e.*, borrowers who do not qualify for an affordable monthly payment amount based on income and family size) (Br., Exhibit C, at NAV-00000088) or "choose to

leave the IBR plan" (Br., Exhibit D, at NAV-00000101), not to borrowers

who do qualify for the affordable payment amount and have chosen to

renew.

Moreover, even if those opening clauses are ignored, the font size and

inconspicuous placement of the language cited by Defendants, especially

compared to the notice, rendered that language unlikely to be read and

unlikely to affect the borrower's net impression. *See FTC v. Davison*

*Assocs., Inc.*, 431 F. Supp. 2d 548, 560 (W.D. Pa. 2006) ("Disclaimers or

curative language must be sufficiently prominent and unambiguous such

that the overall net-impression of the communication becomes non-

deceptive.") (quotation omitted); *FTC v. Brown & Williamson Tobacco*

*Corp.*, 778 F.2d 35, 42-43 (D.C. Cir. 1985) (deception claim not defeated by

inconspicuous fine print that was unlikely to be read); *FTC v. Willms*, 2011

WL 4103542, at *7 (W.D. Wash. Sept. 13, 2011) (considering size,

placement, and prominence of text in evaluating deception claim).

Similarly, Navient points to language on the ED form warning against

"knowingly" making false statements as an example of a consequence

contained in the renewal notice. Br. at 28. The suggestion that the

Complaint seeks relief for dishonest consumers is a red herring. The

Complaint encompasses consumers making inadvertent errors or

omissions, and the salient point (which Navient avoids) is that a reasonable

consumer, reading the mailing as a whole, would have been misled to

believe that a "process [that] will be delayed" was the only consequence of

inadvertent errors or omissions.[11]

The Bureau has adequately pleaded its deception claim in Count IV.

**F.   Count VI pleads sufficient facts regarding Navient's unfair conduct relating to repeated payment processing errors to enable Navient to provide a responsive pleading.**

Though Navient moves for a more definite statement as to Count VI—

which addresses Navient's deficient practices with respect to payment

processing—Navient does not identify any specific allegations that are so

"vague or ambiguous" that Navient "cannot reasonably prepare a response."

Fed. R. Civ. P. 12(e). Navient's motion does nothing to show how the

Complaint is "'unintelligible'"—as is required for a Rule 12(e) motion

(*Smith v. Ingram Micro, Inc.*, 2015 WL 7736742, at *3 (M.D. Pa. Dec. 1,

---

[11] Navient cites *Wilson v. Quadramed Corp.*, 225 F.3d 350, 352 (3rd Cir. 2000) to make a conclusory assertion about how a borrower would read Navient's letters, but there is no analogy between the specific debt collection language parsed in *Wilson*, and the language in Navient's notice.

2015))—and instead focuses on whether the Complaint contains enough detail to satisfy Navient.[12]

Not only are Navient's arguments about the level of detail in Count VI inappropriate for a Rule 12(e) motion, they are also unfounded. For example, Navient claims that it was "not made aware of the mechanism of th[e] injury." Br. at 29. Yet the Complaint goes into abundant detail about the mechanisms that caused consumer injury. For example, Navient failed to adequately disclose its payment allocation methodology, and because it had no means for categorizing or searching non-escalated consumer complaints concerning payment processing errors, it could not recognize payment processing errors that were happening to consumers on a repeated basis, nor prevent the same errors from impacting other consumers. Compl. ¶¶ 103-112, 167. As a result, borrowers incurred

---

[12] The cases cited by Navient are not to the contrary. The Bureau has alleged facts supporting all required elements of its unfairness claim (in contrast to *Angino v. Wells Fargo Bank*, 2016 WL 787652, at \*16 (M.D. Pa. Feb. 19, 2016)); Navient has not identified a specific affirmative defense that may be applicable depending on additional facts that need to be alleged (in contrast to *Thomas v. Indep. Twp.*, 463 F.3d 285, 301 (3d Cir. 2006)); and the Bureau's allegations are sufficient to allow Navient to "determine from its own inspection or records its compliance or non-compliance . . . as to enable it to either admit or deny [them]" (in contrast to *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 234 (D.N.J. 2003)).

improper late fees, increased interest charges, and negative credit

reporting. Compl. ¶¶ 108, 168.

This is not "'the rare case where because of the vagueness or

ambiguity of the pleading the answering party will not be able to frame a

responsive pleading.'" *Brogan v. Tunkhannock Twp.*, 2015 WL 5028812, at

*6 (M.D. Pa. Aug. 19, 2015) (quoting *Schaedler v. Reading Eagle Publ'n*,

370 F.2d 795, 798 (3d Cir. 1966)). The allegations relating to Count VI

provide more than sufficient detail for Navient to admit or deny them.

### G. Counts VII through X plead facts sufficient to support the inference that Pioneer engaged in deceptive conduct by misrepresenting the benefits of the federal rehabilitation program.

Counts VII-X allege that Pioneer violated the FDCPA and CFPA by

making deceptive statements to borrowers concerning the benefits of the

federal rehabilitation program. Defendants provide no basis to dismiss

these claims.

### 1. Rule 9(b) is inapplicable to these claims.

Defendants argue that the claims against Pioneer sound in fraud and

should be subjected to Rule 9(b)'s heightened pleading standard. However,

by its terms, Rule 9(b) only applies to claims for "fraud or mistake," and

"consumer protection claims are not claims of fraud, even if there is a

deceptive dimension to them." *CFPB v. Frederick Hanna & Assocs.*, 114 F.

Supp. 3d 1342, 1372 (N.D. Ga. 2015). A claim for deception is "simply not a claim of fraud as that term is commonly understood or as contemplated by Rule 9(b)." *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1203 n. 7 (10th Cir. 2005).

"[T]he United States Supreme Court has consistently cautioned against extending [Rule 9(b)'s] heightened pleading standard beyond claims for fraud or mistake." *Hanna*, 114 F. Supp. 3d at 1372. Thus, most courts to address the issue have concluded that Rule 9(b) does not apply to deception claims brought under various consumer protection statutes, including: the CFPA (*id.* at 1371-74; *D&D Mktg.*, slip op. at 17-18); the FDCPA (*Prophet v. Myers*, 645 F. Supp. 2d 614, 617 (S.D. Tex. 2008)); the FTC Act (*Freecom*, 401 F.3d at 1203 n. 7; *Wyndham*, 10 F. Supp. 3d at 627-28); and the Telemarketing Sales Rule (*FTC v. AFD Advisors*, 2014 WL 274097, at *2 (N.D. Ill. Jan. 24, 2014)).

The cases cited by Defendants show that some courts have applied Rule 9(b) to claims that are based on allegations of fraud or scienter, even though fraud is not an element of the claim. *See, e.g., Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 287-88 (3d Cir. 1992) (claims were based on allegations of scienter); *CFPB v. Prime Mktg. Holdings*, No. CV-16-07111-BRO (C.D. Cal. Nov. 15, 2016), Order re Defendant's Motion to Dismiss, at

34

10 ("crux" of claims is that company "purposefully misrepresented" facts).

But even in such situations, the proper remedy is to disregard the particular

averments of fraud or scienter that fail to meet the Rule 9(b) standard—that

is, to "strip" them from the claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

1097, 1104-05 (9th Cir. 2003). The Pioneer claims are not based on *any*

allegations of fraud or scienter, contrary to Defendants' characterization.

Br. at 31.

But even if Rule 9(b) applied, the Bureau's allegations are sufficient.

The Third Circuit has held that Rule 9(b) requires that plaintiffs put

defendants "on notice of the precise misconduct with which they are

charged," and that, while "allegations of 'date, place or time' fulfill these

functions," plaintiffs can "use alternative means of injecting precision and

some measure of substantiation into their allegations of fraud." *Seville*

*Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.

1984).

The Complaint describes the particular deceptive acts and practices

on which its claims against Pioneer are based—that in calls with borrowers,

Pioneer mispresented the benefits of rehabilitation relating to credit

reporting and collection fees for defaulted loans. Compl. ¶ 122. The Bureau

also provided further detail—that ED conducted an audit confirming these

misrepresentations and that Pioneer's employee training manual provided

instructions contrary to those provided by ED. Compl. ¶ 123-24. Thus, even

if Rule 9(b) applied, the Complaint provides the required "measure of

substantiation."[13]

### 2. The allegations regarding the materiality of Pioneer's misrepresentations are sufficient.

Defendants also raise a factual dispute—inappropriate for resolution

on a Rule 12(b)(6) motion—as to whether the alleged misrepresentations

were material. While the Third Circuit has noted that the FDCPA contains a

materiality requirement, it has held that a statement is material "if it is

capable of influencing the decision of the least sophisticated debtor."

*Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015). This is "not

a particularly high bar." *Id.* "[T]he materiality requirement, correctly

---

[13] The cases Defendants cite do not hold that merely using the words "information and belief" automatically renders allegations insufficient under Rule 9(b). In those cases, the allegations were held insufficiently detailed *in content. See In re UJB Financial Corp. S'holder Litig.*, 1991 WL 321909, at *8 (D.N.J. Jan. 22, 1991) (allegations—which did not include phrase "information and belief"—held insufficient because they did not explain "how [the] statements were false"), *aff'd in part, rev'd in part sub nom. Shapiro*, 964 F.2d 272; *United States v. Eastwick Coll.*, 657 F. App'x 89, 95 (3d Cir. 2016) (allegations were "nothing more than speculation"); *Zavala v. Wal-Mart Stores*, 393 F. Supp. 2d 295, 314 (D.N.J. 2005) (court could not "discern the factual basis underlying Plaintiffs' 'information-and-belief' pleading").

applied, ... preclud[es] only claims based on hypertechnical misstatements ... that would not affect the actions of even the least sophisticated debtor." *Id.* at 422.

Here, the least sophisticated debtor (and a reasonable consumer) would have attached significance to Pioneer's misrepresentations, which overstated key benefits of the rehabilitation program concerning credit reporting and collection fee forgiveness. And while Pioneer attempts to suggest that a borrower's only options are to "remain in default" or "enter the federal rehabilitation program" (Br. at 32), other options are available such that a borrower with complete information could have chosen differently.[14] It is incongruous for Pioneer to suggest that rehabilitation has important benefits for borrowers such that it is obvious for borrowers to enroll in the program over other options, while simultaneously arguing that misrepresentation of those benefits is immaterial. At best, Pioneer's

---

[14] ED, "Getting Out Of Default," at
http://studentaid.ed.gov/sa/repay-loans/default/get-out (last accessed Apr. 24, 2017).

attempt to dispute materiality only raises a factual question that should not be decided at this juncture.[15]

## **CONCLUSION**

For these reasons, the Court should deny Defendants' motion. If any part of Defendants' motion is granted, the Bureau should be granted leave, pursuant to Federal Rule 15(a)(2), to file an amended complaint.

---

[15] The Court should decline Pioneer's request to limit the claims against Pioneer to conduct post-dating January 18, 2016. Br. at 32 n.24. Under the FDCPA, where the "allegedly wrongful conduct was part of a practice or pattern of conduct"—as is the case with Pioneer's conduct—the conduct constitutes a continuing violation such that calls made before the one-year period are actionable. *Tucker v. Mann Bracken, LLC*, 2009 WL 151669, at *4 (M.D. Pa. Jan. 21, 2009). The claims against Pioneer are also brought pursuant to the CFPA, for which the statute of limitations is three years from the date of discovery. 12 U.S.C. § 5564(g)(1); *see also Hanna*, 165 F. Supp. 3d at 1340.

Dated: April 24, 2017                    Respectfully submitted,

                                         Anthony Alexis
                                         *Enforcement Director*

                                         David Rubenstein
                                         *Deputy Enforcement Director*

                                         Thomas Kim
                                         *Assistant Deputy Enforcement Director*

                                         __/s/ Nicholas Jabbour_____
                                         Nicholas Jabbour, DC 500626
                                         (Email: Nicholas.Jabbour@cfpb.gov)
                                         (Phone: 202-435-7508)
                                         Brandis Anderson, CA 261325
                                         (Email: Brandis.Anderson@cfpb.gov)
                                         (Phone: 202-435-7548)
                                         Ebony Sunala Johnson, VA 76890
                                         (Email: Ebony.Johnson@cfpb.gov)
                                         (Phone: 202-435-7245)
                                         *Enforcement Attorneys*

                                         1700 G Street NW
                                         Washington, DC 20552
                                         Fax: 202-435-9346

                                         *Attorneys for Plaintiff*
                                         *Consumer Financial Protection Bureau*

## **<u>CERTIFICATE OF WORD COUNT</u>**

Pursuant to Local Rule 7.8(b)(2), I hereby certify that the foregoing

brief in opposition contains 7,997 words.


  _/s/ Nicholas Jabbour_____
  Nicholas Jabbour, DC 500626
  Nicholas.Jabbour@cfpb.gov
  1700 G Street NW
  Washington, DC 20552
  Phone: 202-435-7508
  Fax: 202-435-9346

  *Attorney for Plaintiff*
  *Consumer Financial Protection Bureau*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 24, 2017, I filed the foregoing document with the Court's ECF system, which will send notification of such filing to counsel for Defendants.

  /s/ Nicholas Jabbour
Nicholas Jabbour, DC 500626
Nicholas.Jabbour@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-7508
Fax: 202-435-9346

*Attorney for Plaintiff*
*Consumer Financial Protection Bureau*