**THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Consumer Financial Protection Bureau, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:CV-17-00101 |
| | ) | (Hon. Robert D. Mariani) |
| Navient Corporation, *et al.*, | ) | |
| | ) | Electronically Filed |
| *Defendants*. | ) | |

**JOINT CASE MANAGEMENT PLAN**

Plaintiff Consumer Financial Protection Bureau ("Bureau" or "CFPB"), and

Defendants Navient Corporation, Navient Solutions, LLC ("Navient Solutions"),

and Pioneer Credit Recovery, Inc. ("Pioneer") (collectively, "Defendants")

(Plaintiff and Defendants together, "Parties") respectfully submit the following

Joint Case Management Plan.

**1.0    Principal Issues**

**1.1    Separately for each party, please give a statement summarizing
this case:**

<u>**By Plaintiff:**</u>

The Bureau's Complaint alleges that Defendants have failed to perform their

core duties in the servicing and collection of student loans.  Specifically, the

Complaint alleges that:

- Navient Solutions, together with or on behalf of Navient Corporation,
  violated the Consumer Financial Protection Act ("CFPA") by: (1) steering
  federal loan borrowers experiencing financial hardship that was not short-

term or temporary into forbearance, before or instead of advising them about income-driven repayment ("IDR") plans that may have been more beneficial; (2) failing to adequately notify federal loan borrowers concerning their IDR plan renewal obligations and misleading federal loan borrowers concerning the consequences of inadvertently submitting an incorrect or incomplete IDR plan renewal application; (3) misleading private loan borrowers concerning the requirements to release a cosigner from their loans; and (4) repeatedly misallocating and misapplying payments made by federal and private loan borrowers, and failing to implement adequate processes and procedures to prevent the errors from recurring.

- Pioneer, together with or on behalf of Navient Corporation, violated the CFPA and the Fair Debt Collection Practices Act ("FDCPA"), by misrepresenting the benefits of the federal rehabilitation program to federal loan borrowers in default.

- Navient Solutions, together with or on behalf of Navient Corporation, violated the implementing regulation of the Fair Credit Reporting Act ("FCRA") by failing to establish and implement reasonable written policies and procedures regarding the accuracy and integrity of information that it furnished regarding federal loan borrowers who had received a discharge of their loans due to a total and permanent disability.

Defendants' "statement summarizing this case" contains many inaccurate representations about the investigation and incorrect arguments to support a stay of discovery. In response, the Bureau makes the following additional assertions:

*First*, Defendants mischaracterize the nature and scope of the Bureau's investigation. While the Bureau conducted an investigation sufficient to identify the violations alleged in the Complaint and plead them with particularity, the amount of information sought and obtained by the Bureau during the investigation was far short of what is common in discovery in a complex civil litigation, as the Bureau did not have to obtain the full quantum of evidence necessary to meet a

plaintiff's burden to prove claims in a court of law.[1] Consistent with that objective,

the Bureau notes the following:

- The investigation was directed at Navient Solutions, with the exception of one narrow civil investigative demand ("CID") for documents and responses to interrogatories served on Pioneer. The Bureau did not serve any CIDs on Navient Corporation, as the Bureau independently learned facts concerning Navient Corporation's involvement in the affairs of Navient Solutions and Pioneer.

- The Bureau's investigation of Navient Solutions began as a joint effort with the Federal Deposit Insurance Corporation ("FDIC") that was focused on violations that are not alleged in this action. As a result, two of the five CIDs for documents and written information issued to Navient Solutions (and its predecessor) by the Bureau were focused on topics unrelated to the issues in this action. In 2014, Navient entered into a settlement with the FDIC with respect to these alleged violations. *See* FDIC Press Release, at https://www.fdic.gov/news/news/press/2014/pr14033.html.

- The Bureau served its first civil investigative demand on Navient Solutions on September 5, 2013 and its last CID on July 7, 2015. The CIDs issued to Navient Solutions only requested information from January 1, 2010 through March 31, 2015. After the Bureau notified Navient Solutions of the results

---

[1] *See SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) ("[T]here is no authority which suggests that it is appropriate to limit the SEC's right to take discovery based upon the extent of its previous investigation into the facts underlying its case."); *United States v. GAF Corp.*, 596 F.2d 10, 14 (2d Cir. 1979) ("It is important to remember that the [Justice] Department's objective at the pre-complaint stage of the investigation is not to 'prove' its case but rather to make an informed decision on whether or not to file a complaint.") (quoting H.R. Rep. 94-1343 at 26, Hart-Scott-Rodino Antitrust Improvement Act of 1976); *SEC v. Espuelas*, 699 F. Supp. 2d 655, 659 (S.D.N.Y. 2010) ("contexts" of investigations and discovery are "sufficiently different" such that agency has "right to engage in discovery pursuant to the Federal Rules of Civil Procedure") (quotation omitted); SEC v. Saul, 133 F.R.D. 115, 118 (N.D. Ill. 1990) ("once [the SEC] has completed its investigation and filed suit, it is entitled to review its investigation and avail itself of its discovery rights in order to prepare its case for trial").

of its investigation on August 19, 2015, the Bureau did not issue any additional CIDs to Navient Solutions.

- The 450,000 pages of documents referenced by Defendants translate into fewer than 40,000 documents (many of which may be near-duplicates). Of those documents, many are unrelated to the issues in this case, as they cover topics that were the focus of the joint effort with the FDIC or topics that are not alleged in the Complaint (such as late fees, the use of auto-debit, or the treatment of borrowers whose cosigner passes away).

- The notion that the Bureau was somehow unreasonable during the investigation is untrue. Indeed, in order to limit the breadth of the investigation, the Bureau crafted its requests so that the searching and production of internal emails was not required, and even the production of external emails was limited to consumer complaints. The Bureau also granted a large number of Defendants' modification requests to address their burden concerns.

*Second*, the Court should not grant Defendants' request to stay discovery pending a ruling on their motion to dismiss, as Defendants have not provided a sufficient basis for the Court to grant such relief. Federal Rule of Civil Procedure 26(c) requires a showing of "good cause" by the moving party to justify a stay of discovery. Fed. R. Civ. P. 26(c) (providing that the court "may, for good cause, issue an order … specifying terms, including time … for the disclosure or discovery"). The Third Circuit has explained that "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). And the Supreme Court has held that a party seeking a stay of discovery "must make out a clear case of hardship or inequity in being required to go

forward, if there is even a fair possibility that the stay ... will work damage to [someone] else." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Thus, while a stay pending resolution of a motion to dismiss may be appropriate in certain circumstances (*see, e.g., Mann v. Brenner*, 375 F. App'x 232, 239-40 (3d Cir. 2010)), there must be "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Cipollone*, 785 F.2d 1121 (quotation omitted). "[T]he mere filing of a dispositive motion does not constitute 'good cause' for the issuance of a discovery stay." *Gerald Chamales Corp. v. Oki Data Americas, Inc.*, 247 F.R.D. 453, 454 (D.N.J. 2007). As one court has explained, many courts disfavor motions to stay discovery "because when discovery is delayed or prolonged it can create case management problems which impede the court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems.'" *Thompson v. Warren*, No. CIV.A. 13-4334 PGS, 2015 WL 3386487, at *2 (D.N.J. May 26, 2015).

Defendants' argument that the Bureau will not be prejudiced by a stay of discovery is misguided. The Bureau has not brought this lawsuit for its own benefit, but rather to enforce Federal consumer protection laws and to get relief for borrowers who have been harmed by Defendants' unlawful conduct. This is a case of substantial public importance given the large numbers of affected consumers and the total magnitude of consumer harm, and deferring discovery will delay the

relief provided to consumers for Defendants' violations.  Defendants' generalized assertions do not justify such delay.

**By Defendants:**

The servicing and collection of federal student loans is governed by the Higher Education Act ("HEA") and extensive Department of Education regulations and guidance.  Navient Solutions serves as the Department of Education's agent, and its actions are also prescribed in a detailed contract.  The Department of Education regularly monitors and audits Navient Solutions, and to the extent it wants things done differently, there is a regularly utilized mechanism in the contract to effect changes. ***The lawsuit does not allege that Defendants violated any of the requirements of the extensive regulatory and contractual regime governing the servicing and collection of student loans.***

The CFPB filed this enforcement action seeking to impose penalties for specific acts that it believes are "unfair," "deceptive," or "abusive" under the CFPA, 12 U.S.C. § 5531, as well as certain violations of the FDCPA, 15 U.S.C. § 1692(e), and the FCRA, 12 U.S.C. § 1022.42(a).  The CFPB uses outsized rhetoric to characterize its claims that does not match its factual allegations.  And the allegations in the Complaint surrounding the supposed wrongful practices leave out critical facts, such as extensive disclosures that are sent to borrowers and

various federal policy guidelines.  Moreover, despite three years of extensive investigation, other claims are pleaded only on "information and belief."

Defendants moved to dismiss this case in its entirety on the basis that (1) the claims of unfair, deceptive, or abusive acts or practices ("UDAAP") exceed the CFPB's statutory authority and violate due process; (2) the CFPB's structure is unconstitutional, an issue that is currently before the *en banc* D.C. Circuit Court of Appeals (argument to be held on May 24, 2017); and (3) the CFPB failed to state a claim as to the elements of nine of the Complaint's eleven counts.

In considering the sort of discovery that will be necessary should this case get past the motion to dismiss, it is important to recognize that this lawsuit was filed after nearly four years investigating every aspect of the Defendants' servicing and collection activities. [2]  Defendants have already spent hundreds of thousands of dollars responding to never-ending formal and informal requests.  Unlike a typical plaintiff in a civil lawsuit, the CFPB has substantial discovery with respect to the claims; none of which have merit or that can even survive the pending motion to dismiss.  There is no dispute that Defendants provided more than 450,000 pages of documents, answered dozens of interrogatories, prepared over 30 written reports containing complex analyses of borrower data and information, and produced nine

---

[2] The requests for information from the CFPB have been extremely burdensome and went well beyond what would be typical in civil litigation, including requiring Navient Solutions to write specific code to search its databases for information.

witnesses for testimony.[3]  Some of the specific topics on which Defendants

produced materials relevant to CFPB's claims are set forth in response to Item

4.1.[4]

In light of the pending motion to dismiss, and because the CFPB has already

conducted substantial, years-long investigational discovery, Defendants believe it

is appropriate to hold off on further discovery in this matter until after the Court

issues a ruling on the motion to dismiss.  "The idea that discovery should be

permitted before deciding a motion to dismiss is unsupported and defies common

sense because the purpose of [Rule] 12(b)(6) is to enable defendants to challenge

the legal sufficiency of complaints without subjecting themselves to discovery."

*Mann v. Brenner*, 375 F. App'x 232, 239 (3d Cir. 2010) (quoting *Rutman Wine Co.*

*v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir.1987) (brackets and internal

---

[3] CFPB claims two of its five CIDs for documents and written information do not relate to the issues in this lawsuit.  But, the fact remains that CFPB has undertaken substantial discovery with respect the allegations in the Complaint.  Defendants agree that CFPB issued its last CID on July 7, 2015, but the CFPB fails to mention that Defendants have voluntarily produced materials through October 2016. Defendants note that there are no allegations in the Complaint that post-date mid-2015.

[4] CFPB is correct that it has not served requests on one of the three defendants here, Navient Corporation, but that is a reflection of the fact that Navient Corporation is an improper defendant in this lawsuit.  Navient Corporation is a holding company that does not engage in any student lending or servicing activities.  In fact, one of the many CIDs directed to Navient Solutions' predecessor included requests for detailed information about its corporate structure and relationship with its parent company, Navient Corporation, and that information was provided.

quotation marks omitted); *see also Levey v. Brownstone Inv. Grp., LLC*, 590 F.

App'x 132, 137 (3d Cir. 2014); *Mutschler v. Tritt*, No. 3:14-1611, 2015 WL

4394018, at *4–5 (M.D. Pa. July 16, 2015); *Babalola v. Donegal Mut. Ins. Co.*,

No. 1:08-621, 2008 WL 5278393, at *1 (M.D. Pa. Dec. 18, 2008).[5]  The scope and

nature of the remaining discovery on the parties, as well as third parties, will

depend on what claims, if any, survive the pending motion.  There is no prejudice

to the CFPB from holding off on further discovery until the Court rules.  As noted,

the CFPB already has access to substantial discovery, and contrary to the CFPB's

assertions of delay, Defendants propose a shorter period for discovery than the

CFPB.

**1.2**    **The facts the parties <u>dispute</u> are as follows:**

 With the exception of certain general and background facts, the Parties

dispute all material facts relevant to liability and damages.

**The facts the parties <u>agree</u> upon are as follows:**

The Parties appear to agree on certain general and background facts related

to the claims asserted in the Complaint.

**1.3**    **The legal issues the parties <u>dispute</u> are as follows:**

The legal issues in dispute include (but are not limited to) the following:

---

[5] Plaintiffs' cases are not to the contrary.  Indeed, only one of the cases cited by the CFPB even involved a stay of discovery pending a decision on a motion to dismiss. And that case, *Mann,* 375 F. App'x 232, which Defendants cite above, held that it was appropriate to stay discovery "where, if the motion is granted, discovery would be futile."

a)   Whether the CFPB has statutory authority under the CFPA to bring its UDAAP claims;

b)   Whether the CFPB has the constitutional authority to bring this action;

c)   Whether Navient Corporation is a proper party to this action;

d)   Whether Navient Corporation, Navient Solutions, and Pioneer violated the CFPA's prohibition of unfair, deceptive, or abusive acts or practices, 12 U.S.C. § 5531;

e)   Whether Navient Corporation and Pioneer violated the FDCPA's prohibition of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e;

f)   Whether Navient Corporation and Navient Solutions violated Regulation V, 12 U.S.C. § 1022.42(a), the implementing regulation of the FCRA; and

g)   Whether applicable statutes of limitations under the FDCPA, 15 U.S.C. § 1692k(d), the CFPA, 12 U.S.C. § 5564(g), and the FCRA, 15 U.S.C. § 1681p, restrict the CFPB's claims.

**The principal legal issues the parties <u>agree</u> upon are as follows:**

The Parties likely agree on some general and background legal issues related to the claims asserted in the Complaint.

**1.4    Identify any unresolved issues as to service of process, personal jurisdiction, subject matter jurisdiction, or venue:**

No such unresolved issues exist.

**1.5    Identify any named parties that have not yet been served:**

All named parties have been served.

**1.6    Identify any additional parties that:**

**Plaintiff intends to join:**

At this time, the Bureau is not aware of any additional parties that it intends to join.

**Defendants intend to join:**

Depending on the claims that survive the pending motion to dismiss, if any, Defendants may seek to join additional parties.

**1.7    Identify any additional claims that:**

**plaintiff intends to add:**

At this time, the Bureau is not aware of any additional claims that it intends to add.

**defendant intends to add:**

Depending on the claims that survive the pending a motion to dismiss, if any, Defendants may bring counterclaims and/or claims against third-party defendant(s).

**2.0    Disclosures**

The Parties will exchange initial disclosures no later than May 10, 2017.

**The CFPB intends to disclose the identities of the following individuals under Federal Rule of Civil Procedure 26(a)(1)(A)(i):**

- John Zemetro, Senior Director, Back Office Servicing (employee of Navient Solutions and/or Navient Corporation)

- Patricia ("Patty") Peterson, Vice-President, Operational Support Services (employee of Navient Solutions, Pioneer, and/or Navient Corporation)

- Lisa Stashik, Vice-President, Office of the Customer Advocate (employee of Navient Solutions and/or Navient Corporation)

- Judy McNutt, Director, Customer Correspondence (employee of Navient Solutions and/or Navient Corporation)

- Debra Walsh, Senior Director, Loan Operations Training (employee of Navient Solutions and/or Navient Corporation)

- Roger Miller, Vice-President, Application Development (employee of Navient Solutions and/or Navient Corporation)

- John Kane, Chief Operating Officer (employee of Navient Solutions and/or Navient Corporation)

- Joseph Sbriglia, Senior Vice-President, Private Credit Collection (employee of Navient Solutions and/or Navient Corporation)

- John Sullivan (employee of Sallie Mae Bank, and formerly employed by the predecessor entity to Navient Solutions)

- Troy Standish, Senior Vice-President, Federal Default Prevention, Customer Resolution Services (employee of Navient Solutions and/or Navient Corporation)

- Linda Gramlich, Senior Director, Office of the Customer Advocate (employee of Navient Solutions and/or Navient Corporation)

- Patrick Theurer, Senior Director, Operational Analytics (employee of Navient Solutions and/or Navient Corporation)

- Jeanne Wisnewski, Director, Complaint Tracking & Reporting (employee of Navient Solutions and/or Navient Corporation)

- Nancy Sabulski, Manager, Office of the Customer Advocate (employee of Navient Solutions and/or Navient Corporation)

- Angela Kamionka, Senior Director, Office of Customer Advocate (employee of Navient Solutions and/or Navient Corporation)

- Temeka Easter, Director, Social Media (employee of Navient Solutions and/or Navient Corporation)

- Jack E. Frazier, Jr., Vice President, Operations (employee of Pioneer and/or Navient Corporation)

- Jeffery Mersmann, Vice President, Operations (employee of Pioneer and/or Navient Corporation)

- Kim Merrill, Vice President (employee of Pioneer and/or Navient Corporation)

- Other current or former employees of Navient Solutions, Pioneer, and Navient Corporation, to be determined during discovery

- Certain consumers with loans serviced by Navient Solutions, to be determined during discovery

- Certain consumers with defaulted loans for which Pioneer was the debt collector, to be determined during discovery

- Theresa Ridder, investigator (employee of Consumer Financial Protection Bureau)

**Defendants disclosed the identities of the following individuals under Federal Rule of Civil Procedure 26(a)(1)(A)(i):**

- Roger Miller*, Vice President, Systems Development

- Lisa Stashik*, Vice President, OCA, Customer Experience & Training

- John Zemetro*, Senior Director, Core Processing

- Patricia Peterson*, Senior Vice President, Operations Support

- Kevin Woods, Vice President, Title IV Servicing

- Jack Frazier, Senior Vice President, Contingency Services

The individuals with an asterisk after their name have already been deposed by the CFPB during its investigation preceding this lawsuit.

**3.0   Early Motions**

**Identify any motion(s) whose early resolution would <u>likely</u> have a significant effect either on the scope of discovery or other aspects of the litigation:**

| <u>Nature of Motion</u> | <u>Moving Party</u> | <u>Filing Date</u> |
|---|---|---|
| Motion to dismiss | Defendants | Filed on March 24, 2017 Opposition filed on April 24, 2017 Reply due on May 15, 2017 Oral Argument Requested by Defendants |

**4.0   Discovery**

**4.1   Briefly describe any discovery that has been completed or is in progress:**

**By Plaintiff:**

Neither party has produced any discovery. The Bureau received some information relating to the issues in this proceeding from Defendants prior to commencing litigation. As explained in the Bureau's response to item 1.1 above, Defendants have mischaracterized the nature and scope of the Bureau's investigation, including the amount of information obtained during the investigation that is relevant to the claims asserted in the Complaint.

**By Defendants:**

On September 5, 2013, the CFPB issued a CID—in effect, an administrative subpoena—to Navient Solutions. Over the next two years, four more CIDs for documents and written information were issued, along with many informal requests by the CFPB for information from the Defendants. The CFPB's investigational discovery probed virtually every aspect of the Defendants'

servicing and collection activities.  The Defendants cooperated with the CFPB's

investigation and collectively provided more than 450,000 pages of documents and

hundreds of hours of recorded phone calls, answered dozens of CFPB

interrogatories, prepared over 30 written reports containing complex analyses of

borrower data and information, and produced nine witnesses for testimony, all of

whom have been identified by the CFPB in section 2.0.

The information already obtained by the CFPB through investigational

discovery includes:

- Thousands of pages of policies and procedures relating to Defendants' communications with borrowers regarding repayment plan options, cosigner release requirements, loan rehabilitation consequences, payment processing, and other customer service issues;

- Thousands of pages of policies and procedures related to Defendants' administration of repayment plans, cosigner releases, loan rehabilitation, and payment processing;

- Descriptions of Navient Solutions' communications with borrowers regarding repayment plans, renewal of income-driven repayment ("IDR") plans, and cosigner releases;

- Hundreds of pages of billing statements containing disclosures to borrowers regarding repayment options and IDR recertification;

- Hundreds of thousands of pages of material related to Defendants' training of customer service and call center employees charged with servicing and collecting on student loans;

- Descriptions of Navient Solutions' policies and procedures governing borrower IDR recertification;

- Several examples of communications sent to borrowers, including IDR renewal disclosures and notification emails;

- Thousands of pages of marketing materials and other communications sent to borrowers regarding cosigner release;

- Thousands of documents representing borrower complaints about payment processing, reports and presentations documenting those complaints, and policies and procedures for handling those complaints;

- Descriptions of Pioneer's policies and procedures governing the federal loan rehabilitation program, including communications with borrowers about the program;

- A written report about information Navient Solutions' furnished to consumer credit reporting agencies regarding borrowers who applied for Total and Permanent Disability loan discharges; and

- Dozens of written reports analyzing both broadly and narrowly defined subgroups of borrowers enrolled in IDR plans, borrowers enrolled in forbearances, borrowers attempting to obtain loan rehabilitations, and borrowers attempting to obtain cosigner releases.

**4.2    Describe any <u>discovery</u> that all <u>parties agree</u> should be conducted, indicating for each discovery undertaking its purpose or what kinds of information will be developed through it (e.g., "plaintiff will depose Mr. Jones, defendant's controller, to learn what defendant's revenue recognition policies were and how they were applied to the kinds of contracts in this case"):**

<u>**Plaintiff's Position**</u>:  The Bureau believes that all parties should be

permitted to conduct fact discovery (including taking depositions, and propounding

requests for admission, interrogatories, and requests for production) to obtain

information relevant to the claims and defenses in this action, within the

boundaries allowed by the Federal Rules of Civil Procedure. The Bureau also

believes that expert discovery will be needed. To the extent that Defendants

believe that any discovery requests propounded by the Bureau in this litigation

seek documents or information that is duplicative of documents or information Defendants produced during the investigation, they can simply assert that in response to specific requests after the Bureau has served any such requests. But the Bureau's investigation should not hinder its ability to take discovery in this case. (*See* cases cited in footnote 1 above.)

**Defendants' Position**:  As a result of its extensive multi-year investigation, Defendants believe the CFPB is already in possession of substantial discovery it needs with respect to its claims.  Nonetheless, Defendants agree that discovery should proceed consistent with the Federal Rules of Civil Procedure and have set forth positions consistent with those rules.  For their part, Defendants have taken no discovery of the CFPB, and intend to take discovery of the CFPB regarding the factual support for its claims.  In addition, Defendants will seek to obtain documents and information in the possession of the Department of Education, which administers the relevant contracts and regulations.  The Parties will also need to engage in expert discovery, including with respect to the regulatory and contractual regime governing federal student loans and the CFPB's damages theories.

**4.3    Describe any <u>discovery</u> that one or more parties want(s) to conduct but <u>to which another party objects,</u> indicating for each such discovery undertaking its purpose or what kinds of information would be developed through it:**

**<u>Plaintiff's Position:</u>**  The Bureau is not aware of the specific nature of the discovery that Defendants intend to seek from the Bureau, and thus has no objections at this time. However, the Bureau reserves its right to object to specific requests that Defendants may serve. The Bureau does not believe that discovery should be stayed until the motion to dismiss is decided, for the reasons articulated in response to item 1.1.

**<u>Defendants' Position</u>**:  Other than believing that additional discovery should not begin until after a decision on the pending motion to dismiss, at this point, Defendants are not aware of any discovery to which it objects, but respectfully reserve their rights to object to specific requests that may later be served.

**4.4    Identify any <u>subject area limitations on discovery</u> that one or more parties would like imposed, at the first stage of or throughout the litigation:**

**<u>Plaintiff's Position</u>**:  At this time, the Bureau is unaware of any subject matter limitations on discovery it would like imposed. However, the Bureau reserves its right to object to specific requests that Defendants may serve, including on the grounds that specific requests seek information that is not relevant to any claim or defenses in this action. The Bureau does not believe that discovery should be stayed until the motion to dismiss is decided, for the reasons articulated in response to item 1.1.

**Defendants' Position**:  As noted above, Defendants believe it is appropriate to hold off on further discovery in this matter until after the Court issues a ruling on the motion to dismiss.  The scope and nature of the remaining discovery on the parties, as well as third parties, will heavily depend on what claims, if any, survive the pending motion.  To the extent claims are dismissed, the subject matter of those claims would not be appropriate for discovery.  Defendants are not currently aware of any subject area limitations that should be placed on discovery relevant to any surviving counts, but respectfully reserve their rights to object to specific requests that may later be served.

**4.5   For each of the following discovery tools, recommend the per-party or per-side limitation (specify a number) that should be fixed, subject to later modification by stipulation or court order on an appropriate showing (where the parties cannot agree, set forth separately the limits recommended by plaintiff(s) and by defendant(s)):**

**4.5.1   depositions (excluding experts) to be taken by:**

**Plaintiff's Position**:

The Bureau proposes that each side be permitted to take up to 20 depositions. The Bureau has named three entities as Defendants in this case and its Complaint includes eleven counts covering numerous distinct issues. An aggregate total of 20 depositions per side is necessary to allow the Bureau to obtain sufficient testimony from employees of those three companies relating to all of its claims. In addition, the Bureau will likely conduct depositions of multiple third-party

witnesses, including affected borrowers and Defendants' former employees, which

would count toward the aggregate limit of 20 depositions.

Twenty depositions per side is proportional to the needs of the case. Fed. R.

Civ. P. 26(b)(1). First, as to the "importance of the issues at stake in the action,"

this is a case of significant public importance. The Bureau's claims do not involve

merely one party's liability to another party. Numerous consumers were injured by

Defendants' conduct and are entitled to redress. *United States v. AT & T Inc.*, No.

1:11-CV-01560 ESH, 2011 WL 5347178, at *7 (D.D.C. Nov. 6, 2011) ("The

issues at stake in this litigation impact not just the financial prospects of the

Defendants but the rights of consumers to a competitive market."); *Zubulake v.*

*UBS Warburg LLC*, 217 F.R.D. 309, 321 (S.D.N.Y. 2003) ("[I]f a case has the

potential for broad public impact, then public policy weighs heavily in favor of

permitting extensive discovery."). Second, the "amount in controversy" is likely to

be significant given the large number of affected consumers. Third, with respect to

"the parties' relative access to relevant information," the vast majority of

documents and information relevant to the alleged violations is in Defendants'

exclusive possession.[6] Fourth, with respect to "the parties' resources," Navient

Corporation is a publicly-traded corporation with substantial resources and

---

[6] Advisory Committee Notes to 2015 Amendments to Fed. R. Civ. P. 26(b)(1)
(explaining that in cases where there is "information asymmetry" between the
parties, the "burden of responding to discovery lies heavier on the party who has
more information.")

hundreds of millions of dollars in annual income. Fifth, the additional depositions will be important to resolving the issues. As noted above, the Bureau will need to depose Defendants' employees, former employees, and consumers to obtain testimony covering the numerous issues in this case. Thus, the benefit of the additional depositions does not outweigh the burden on Defendants.

The nine investigational hearings conducted two to four years ago by the Bureau should not be a limiting factor on the number of depositions in this litigation, as Defendants suggest below. Courts have repeatedly rejected the argument that information obtained by a government enforcement agency in an investigation should be a factor in the determining the extent of discovery permitted in a court action, because the context and purpose of an investigation is sufficiently different from discovery. (*See* cases cited in footnote 1 above.) Indeed, the investigational hearings covered numerous topics, including a broad array of issues and potential violations not covered by the Complaint (including issues related to the Bureau's coordinated investigation with the FDIC), as well as important contextual background for the Bureau to understand the servicing practices of Navient Solutions. Thus, the hearings generally did not focus on the particular practices alleged in our Complaint with the same degree of depth and specificity as would be the case in a deposition. In addition, because the Bureau obtained few, if any, internal emails from Defendants during the investigation,

none of the hearings covered such internal emails. The Bureau anticipates that all of its depositions of Defendants' representatives, and potentially depositions of third-party witnesses (such as former employees), will seek testimony relating to such emails, as well as many other relevant documents Defendants did not produce during the investigation.

**Defendants' Position**:  Defendants believe that the number of depositions afforded by Federal Rule of Civil Procedure 30(a) should apply to Plaintiff and Defendants, such that each side may take up to ten (10) depositions.

The twenty (20) depositions sought by the CFPB, which are in addition to the nine (9) depositions it already took as part of its investigation before filing this lawsuit, is burdensome and not reasonable.  CFPB claims it needs double the amount set forth in the Rules because there are three defendants, but one of those defendants is a holding company that should not have been named in this lawsuit. It also notes that it has brought eleven counts, but the Court has a pending motion to dismiss that will determine whether any of those counts are viable.  In any event, to the extent that the CFPB can later articulate good cause for the need to depose additional witnesses beyond the ten afforded by the Rules, Defendants are willing to meet and confer in good faith.

### 4.5.2   interrogatories to be served by:

The Parties agree that CFPB should be permitted to serve up to twenty-five (25) interrogatories on each of the three Defendants and each Defendant should be permitted to serve up to twenty-five (25) interrogatories on the CFPB.  *See* Fed. R. Civ. P. 33 and Local Rule 33.3.

### 4.5.3   document production requests to be served by:

The Parties agree that CFPB should be permitted to serve up to fifty (50) requests for production on Navient Solutions, and up to twenty-five (25) requests for production on each of the other two Defendants.  Each Defendant should be permitted to serve a corresponding number of requests for production on the CFPB.

### 4.5.4   requests for admission to be served by:

The Parties agree that CFPB should be permitted to serve up to twenty-five (25) requests for admission on each of the three Defendants and each Defendant should be permitted to serve up to twenty-five (25) requests for admission on the Bureau. *See* Local Rule 36.1.

### 4.6    Discovery of Electronically Stored Information

Counsel certify that they have conferred about the matters addressed in M.D. Pa LR 26.1 and that they are in agreement about how those matters will be addressed in discovery.  The Parties are negotiating an Electronic Discovery Protocol and will submit it to the Court for approval.

**5.0**   **Protective Order**

The Parties are in the process of negotiating a stipulated protective order to be entered by the Court before the production of documents and information in discovery and will include a statement justifying the propriety of such a protective order under existing Third Circuit precedent.

**6.0**   **Scheduling**

**6.1**   **Final date for joining additional parties:**

Motions to join additional parties, to the extent necessary under the Federal Rules, should be filed no later than forty-five (45) days after the Court's decision on Defendants' motion to dismiss.

**6.2**   **Final date for amending pleadings:**

<u>**Plaintiff's Position**</u>:  Three (3) months before the end of fact discovery.

<u>**Defendants' Position**</u>:   Forty-five (45) days after the Court's decision on Defendants' motion to dismiss.

**6.3**   **All fact discovery commenced in time to be completed by:**

<u>**Plaintiff's Position**</u>:  The deadline to complete fact discovery should be one year from the date that discovery commences.

<u>**Defendants' Position**</u>:  As noted, Defendants believe that discovery should not commence until after the Court issues a decision on the pending motion

to dismiss.  All fact discovery should be completed eight (8) months after the

Court's decision on Defendant's motion to dismiss.

**6.4    All potentially dispositive motions should be filed by:** Thirty (30)

days after the close of expert discovery.

**6.5    Reports from retained experts due:**

**Plaintiff's experts:**  Thirty (30) days after the close of fact discovery.

**Defendants' experts:**  Sixty (60) days after the close of fact

discovery.

**6.6    Expert Supplementations due from Plaintiff's experts:**   Ninety

(90) days after the close of fact discovery.

**6.7    All expert discovery commenced in time to be completed by:**

Thirty (30) days after supplemental expert reports are served.

**6.8    The Parties anticipate that they will file cross-motions for
summary judgment that may resolve this litigation without the
need of a trial.  In the event that the cross-motions do not resolve
the litigation, the Parties agree that this case may be appropriate
for trial in approximately:**

Ninety (90) days after a ruling on the cross-motions for summary judgment.

**6.9    Suggested Date for the final Pretrial Conference:**  Fourteen

(14) days before trial.

**6.10    Trial**

**6.10.1    Suggested Date for Trial:**  Ninety (90) days after a ruling on

the cross-motions for summary judgment.

**7.0**   **Certification of Settlement Authority (All Parties Shall Complete the Certification)**

The Parties state that the following individual(s) have settlement authority.

For Plaintiff Consumer Financial Protection Bureau:

> Richard Cordray
> Director, Consumer Financial Protection Bureau
> 1700 G Street, NW
> Washington, DC 20552

The Bureau notes that the Court has indicated in its March 17, 2017 order that "the party or person with full settlement authority shall be available by telephone." The Bureau respectfully submits that the enforcement attorneys handling this matter will be present, and will have parameters and can make recommendations to the Director. This approach is consistent with the Advisory Committee Notes accompanying the 1993 Amendments to the Federal Rules of Civil Procedure, which recognize that when the United States is involved in litigation, "there may be no one with on-the-spot settlement authority, and the most that should be expected is access to a person who would have a major role in submitting a recommendation to the body or board with ultimate decision-making responsibility." Fed. R. Civ. P. 16, Notes of Advisory Committee to 1993 Amendments.

> For Defendants Navient Corporation, Navient Solutions, LLC, and Pioneer Credit Recovery, Inc.:

> Mark Heleen, Esq.
> Executive Vice President, Chief Legal Officer and Secretary

Navient Corporation

## 8.0     Alternative Dispute Resolution ("ADR")

The Parties were engaged in extensive settlement discussions prior to the

initiation of this lawsuit, and do not believe that settlement discussions are likely to

be productive at this time. However, at a later time, the Parties may be open to

considering ADR as a means to facilitate a resolution of this dispute.

## 9.0     Consent to Jurisdiction by a Magistrate Judge

The Parties do <u>not</u> consent to have a Magistrate Judge preside as the judge of

the case.

## 10.0   Other Matters

None

## 11.0   Identification of Counsel

For Plaintiff Consumer Financial Protection Bureau:


    /s/ Nicholas Jabbour
Nicholas Jabbour (DC 500626) (*pro hac vice*)
Brandis Anderson (CA 261325) (*pro hac vice*)
Ebony Johnson (VA 76890) (*pro hac vice*)
1700 G Street, NW
Washington, DC 20552
Nicholas.Jabbour@cfpb.gov
Brandis.Anderson@cfpb.gov
Ebony.Johnson@cfpb.gov
Tel: 202-435-7508
Fax: 202-435-9346

Plaintiff's counsel are registered ECF users. As a governmental entity, the
Bureau is exempt from the requirement in Fed. R. Civ. P. 7.1

For Defendants Navient Corporation, Navient Solutions, LLC, and Pioneer Credit Recovery, Inc.:[7]

　　　／s／ Jonathan E. Paikin　　　　
Matthew T. Martens (DC 1019099) (*pro hac vice*)
Jonathan E. Paikin (DC 466445) (*pro hac vice*)
Daniel P. Kearney (DC 977148) (*pro hac vice*)
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
matthew.martens@wilmerhale.com
jonathan.paikin@wilmerhale.com
daniel.kearney@wilmerhale.com
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

Daniel T. Brier (PA 52348)
Donna A. Walsh (PA 74833)
Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
dbrier@mbklaw.com
dwalsh@mbklaw.com
Tel: 570-342-6100
Fax: 570-342-6147

---

[7]　　Counsel for Defendants are registered ECF users, and Defendants have filed all disclosure statements required by Federal Rule 7.1.