**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Consumer Financial Protection Bureau, | ) | |
| *Plaintiff*, | ) | Civil Action No. 3:CV-17-00101 (Hon. Robert D. Mariani) |
| v. | ) | **ORAL ARGUMENT REQUESTED** |
| Navient Corporation, *et al*., | ) | Electronically Filed |
| *Defendants*. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Matthew T. Martens (DC 1019099)
(*pro hac vice*)
Jonathan E. Paikin (DC 466445)
(*pro hac vice*)
Daniel P. Kearney (DC 977148)
(*pro hac vice*)
Karin Dryhurst (DC 1034290)
(*pro hac vice*)
Wilmer Cutler Pickering
Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
matthew.martens@wilmerhale.com
jonathan.paikin@wilmerhale.com
daniel.kearney@wilmerhale.com
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

Daniel T. Brier (PA 52348)
Donna A. Walsh (PA 74833)
Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
dbrier@mbklaw.com
dwalsh@mbklaw.com
Tel: 570-342-6100
Fax: 570-342-6147

*Counsel for Navient Corporation, Navient Solutions, LLC, and Pioneer Credit Recovery, Inc.*

# TABLE OF CONTENTS

Page

I. The CFPB Must Provide Fair Notice Of What Is Unlawful Before Exercising Its Enforcement Powers ........................................3

II. The Complaint Should Be Dismissed Because The Director Lacked Authority To Bring This Action ............................................6

III. Counts I–IV, VI, And VII–X Should Be Dismissed............................8

A. Counts I and II – The CFPB Has Not Stated A Claim That Defendants' Practices Related to Forbearance/IDR Options Are "Abusive" or "Unfair"..........................................8

1. Count I Should Be Dismissed Because The CFPB Has Failed To Allege The Element Of Reasonable Reliance ........................................................................8

2. Count II Should Be Dismissed Because The CFPB Failed To Plead An Unfairness Claim............................12

B. Count III Should Be Dismissed Because The CFPB Fails To Plead That Borrowers Could Not Reasonably Avoid Any Alleged Harm By Clicking On A Link ............................14

C. Count IV Should Be Dismissed Because There Is Nothing Misleading About Navient's IDR Renewal Notice .........................................................................15

D. Count VI Requires A More Definite Statement .......................17

E. The Claims Against Pioneer (Counts VII–X) Should Be Dismissed Because The CFPB Cannot Plead Fraud "On Information And Belief" .........................................................19

CONCLUSION .........................................................................................21

## TABLE OF AUTHORITIES


Page(s)

*Alpine Bank v. Hubbell*, 555 F.3d 1097 (10th Cir. 2009)........................................12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..............................................................8

*Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677
(7th Cir. 1992) ..............................................................................20

*Barron Partners, LP v. Lab123, Inc.*, 593 F. Supp. 2d 667
(S.D.N.Y. 2009)............................................................................11

*Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470 (3d Cir. 2013) ............................10

*Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294
(3d Cir. 2008).......................................................................15, 16

*Casey v. Fla. Coastal Sch. of Law, Inc.*, No. 14-1229,
2015 WL 10096084 (M.D. Fla. Aug. 11, 2015)...........................................13

*CFPB v. D&D Mktg.*, No. 15-9692, Doc. 57
(C.D. Cal. Nov. 17, 2016)..................................................4, 5, 14

*CFPB v. ITT Educ. Servs., Inc.*, No. 14-00292, 2015 WL 1013508
(S.D. Ind. Mar. 6, 2015) ..........................................................11

*Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012).........................6

*Clark v. McDonald's Corp.*, 213 F.R.D. 198 (D.N.J. 2003) ..................................19

*Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152 (9th Cir. 2012) ............................12

*Dommel Props., LLC v. Jonestown Bank & Tr. Co.*, No. 11-2316,
2013 WL 1149265 (M.D. Pa. Mar. 19, 2013)...............................................11

*Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604
(3d Cir. 1995)...........................................................................10

*Fed. Election Comm'n v. NRA Political Victory Fund*, 6 F.3d 821
(D.C. Cir. 1993) ...........................................................................8

*Field v. Mans*, 516 U.S. 59 (1995)....................9, 10, 12

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007)....................19, 20

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010)....................7

*FTC v. Brown & Williamson Tobacco Corp.*, 778 F.2d 35 (D.C. Cir. 1985)....................16

*FTC v. Cyberspace.Com LLC*, 453 F.3d 1196 (9th Cir. 2006)....................17

*FTC v. Davison Assocs., Inc.*, 431 F. Supp. 2d 548 (W.D. Pa. 2006)....................16, 17

*FTC v. IFC Credit Corp.*, 543 F. Supp. 2d 925 (N.D. Ill. 2008)....................14

*FTC v. Neovi*, 604 F.3d 1150 (9th Cir. 2010)....................14

*FTC v. Willms*, No. 11-828, 2011 WL 4103542 (W.D. Wash. Sept. 13, 2011)....................16

*FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015)....................4

*Humphrey's Executor v. United States*, 295 U.S. 602 (1935)....................7

*Illinois v. Alta Colls.*, No. 14-3786, 2014 WL 4377579 (N.D. Ill. Sept. 4, 2014)....................11

*Jensen v. Pressler & Pressler*, 791 F.3d 413 (3d Cir. 2015)....................17

*K.A. ex rel. J.A. v. Abington Heights Sch. Dist.*, 28 F. Supp. 3d 356 (M.D. Pa. 2014)....................8

*Louis W. Epstein Family P'ship v. Kmart Corp.*, 13 F.3d 762 (3d Cir. 1994)....................18

*Myers v. United States*, 272 U.S. 52 (1926)....................7

*Orkin Exterminating Co. v. FTC*, 849 F.2d 1354 (11th Cir. 1988)....................14

*Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47 (3d Cir. 1988)....................10, 11

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3d Cir. 1993) .......... 13

*Quincy Park Condo. Unit Owners' Ass'n v. D.C. Bd. of Zoning Adjustment*, 4 A.3d 1283 (D.C. 2010) .......... 10

*Myers v. United States*, 272 U.S. 52 (1926) .......... 7

*Shapiro v. UJB Fin. Corp.*, 964 F.2d 272 (3d Cir. 1992) .......... 19, 20

*Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097 (9th Cir. 2003) .......... 20

*Wilson v. Quadramed Corp.*, 225 F.3d 350 (3d Cir. 2000) .......... 15, 16

## STATUTES, RULES, AND REGULATIONS

77 Fed. Reg. 42,086-01 (July 17, 2012) .......... 1

12 U.S.C. § 5531 .......... *passim*

12 U.S.C. § 5563 .......... 18

15 U.S.C. § 45 .......... 4

20 U.S.C. § 1098a .......... 1

Fed. R. Civ. P. 9 .......... 19, 20

## OTHER AUTHORITIES

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1376 (3d ed. 2017) .......... 17

There is no claim that Defendants failed to comply with any of the detailed Education Department regulations and contract requirements that govern nearly every aspect of federal student loan servicing. Nevertheless, the CFPB seeks penalties for new servicing requirements, announced for the very first time in this lawsuit, that it suggests are somehow more "fair" than those directed by the Education Department under the current and previous Administrations. This lawsuit should be dismissed.

It is certainly true that some borrowers struggle to repay their student loans. But the entire federal student loan program is the creation of federal statute and regulation—and U.S. taxpayers ultimately bear the risk of the money owed. Defendants also serve as agents under contract to the Education Department to service loans and collect payments for the federal government. Federal policymakers may disagree about the right balance between protecting taxpayers' interests and relieving borrowers' debts. But there exists a process for changing regulations and contract requirements to reflect that balance.[1] To impose liability

[1] One part of this process is negotiated rulemaking, which the Education Department uses to develop rules in collaboration with interested parties, including loan servicers and the CFPB. *See* 20 U.S.C. § 1098a(a)(1), (b)(1). The CFPB had the opportunity to participate in over a dozen such sessions, many of which addressed the very topics covered by the Complaint, *see, e.g.*, 77 Fed. Reg. 42,086-01 (July 17, 2012), but failed to offer up a single recommendation during these sessions.

on Defendants, however, there must be a breach of a cognizable legal duty flowing from statute, regulation, contract, or common law. Here, an examination of the Complaint shows none has been pled.

The CFPB must plead actual facts to back-up their conclusory accusations that Defendants were somehow engaged in "abuse," "deception," and "unfairness." It is not permitted to state a claim by selectively quoting from or wholly disregarding the many disclosures made to borrowers advising them of the very things Defendants are accused of deliberately concealing. Nor can the CFPB make allegations that Defendants should have provided *even more* information to borrowers and pretend it has stated a claim for affirmative misrepresentations. The federal government is, of course, free to direct servicers to provide additional services to borrowers through regulations or through the change order procedures under its contract. There is no legal basis, however, to impose retroactive liability on Defendants just because the current CFPB Director believes the Education Department should have made different policy judgments.

For good reason, the CFPB's enabling statute requires it to first weigh various public interests through the rulemaking process and provide notice of new requirements *before* seeking retroactive penalties; thus, by even bringing this lawsuit the CFPB is operating outside its statutory authority. And although the CFPB makes no mention of it in the Opposition, the United States, through the

Department of Justice, concluded in an amicus brief filed in the D.C. Circuit that the CFPB's structure is unconstitutional. This lawsuit itself demonstrates the very constitutional problem of an agency operating beyond Executive Branch control. Defendants' motion to dismiss should be granted.

## I. THE CFPB MUST PROVIDE FAIR NOTICE OF WHAT IS UNLAWFUL BEFORE EXERCISING ITS ENFORCEMENT POWERS

Congress authorized the CFPB to use its enforcement authority "to prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice *under Federal law*" and included provisions specifying the legal standard for what the CFPB may "declare" or "identify" as unlawful under Federal law. 12 U.S.C. § 5531 (emphasis added).[2] Yet the CFPB claims that it has no obligation to declare a practice unlawful before filing suit, and that it can announce what the law requires and punish entities for past non-compliance in one fell swoop. That argument fails, for several reasons.

*First*, the CFPB argues that the limiting phrase "under Federal law" in § 5531 is a reference to the general prohibition in § 5536, but that argument is entirely circular. Section 5536 merely prohibits "unfair, deceptive, or abusive

[2] *See, e.g.*, § 5331(c) ("The Bureau shall have no authority under this section to declare an act or practice . . . to be unlawful on the grounds that such act or practice is unfair, unless the Bureau has a reasonable basis to conclude that . . . the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers; and . . . such substantial injury is not outweighed by countervailing benefits to consumers or to competition.").

act[s] or practice[s]" ("UDAAP")—it does not say *what conduct* constitutes a UDAAP. Instead, to determine what is a UDAAP "under Federal law," the Court must return again to the subsections of § 5531 specifying what acts or practices the CFPB may "declare" or "identify[]" as unlawful. In short, Congress through § 5531 allowed the CFPB to *proscribe* certain acts or practices as unlawful, and the agency's enforcement authority is limited to preventing the acts or practices so proscribed.

*Second*, contrary to the CFPB's contention, the example of the Federal Trade Commission ("FTC") cuts against its argument. The FTC may "commence a civil action to recover a civil penalty in a district court" for unfair or deceptive acts or practices only when a person violates a previously promulgated rule or an existing final cease-and-desist order. 15 U.S.C. § 45(m)(1)(A)–(B). Thus, the FTC is limited to bringing civil enforcement actions for unfair or deceptive acts or practices previously identified or declared as unlawful by the FTC. Congress reasonably imposed similar constraints on the CFPB.

The two cases cited in the Opposition involved situations where *existing* agency guidance addressed the relevant conduct. *See FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 255–56 (3d Cir. 2015) (defendant had fair notice of cybersecurity standards *where FTC issued a guidebook titled* <u>*Protecting Personal Information: A Guide for Business*</u>); Order Denying Def.'s Mot. To Dismiss at *9,

11–12, *CFPB v. D&D Mktg.*, No. 15-9692, Doc. 57 (C.D. Cal. Nov. 17, 2016) (defendants had fair notice of duty to monitor third parties *where CFPB issued relevant guidance to businesses*).[3] The issue in both of those cases was whether existing guidance was sufficient to place the defendant on notice that the conduct at issue was prohibited. This is not a "borderline" case, where Defendants seek to distinguish previous guidance on its facts. *D&D Mktg.*, No. 15-9692, at *12. Here, *the CFPB provided no relevant guidance whatsoever* concerning student loan servicing practices. For the same reason, the argument that "any wrongdoer would always get an extra bite at the apple" is unavailing. Opp. 7. Defendants never got a first bite at the apple; the CFPB first declared the alleged practices unlawful in the Complaint.

This case shows that Congress had good reasons *not* to allow the CFPB to declare acts or practices as unlawful simply by bringing a lawsuit. Defendants are subject to a host of Education Department regulations and contractual requirements prescribing (among other things) the number, timing, and form of disclosures to student loan borrowers—and the compensation Defendants would receive for those services. The CFPB's suit is an attempt to retroactively "declare" new student loan servicing obligations. And instead of the federal government paying for what the

[3] Pursuant to Local Rule 7.8(a), Defendants have included with this Reply an Appendix of all cited unpublished opinions.

CFPB admits would be "costly" additional services under the terms of applicable contracts, the CFPB seeks penalties for non-compliance—contrary to express limits on the agency's authority to enforce only unlawful acts and practices under "under Federal law." 12 U.S.C. § 5531(a).

*Finally*, the CFPB misconstrues Defendants' fair notice argument. Defendants do not argue that the CFP Act is unconstitutionally vague on its face, Opp. 7–10, or that the Higher Education Act or Education Department contract categorically preclude this action, *id.* at 10–13. Rather, the issue is that Defendants conformed their conduct to the requirements of a comprehensive federal regulatory and contractual regime governing the very issues in the CFPB's lawsuit. The CFPB's claims are nothing short of an attempt to amend that regime after the fact through an enforcement action, based on the CFPB's own purported "complementary" function and supposed "expertise" (Opp. 12). Due process does not permit that kind of sandbagging. *See Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2160 (2012).

## II. THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE DIRECTOR LACKED AUTHORITY TO BRING THIS ACTION

The Opposition advances the same constitutional arguments the CFPB is currently making to the *en banc* D.C. Circuit (Opp. 13–17) but never once mentions that it is the position of the *United States* that the CFPB's structure is unconstitutional. *See* Brief for the United States as Amicus Curiae at 8–19, *PHH*,

839 F.3d 1 (D.C. Cir. filed March 17, 2017). That the CFPB continues to advance a position contrary to the rest of the Executive Branch simply highlights the problem of an agency operating outside constitutionally-required Executive control.

In any event, the CFPB's arguments are wrong on the merits. *First*, the CFPB's leadership by a single director, in contrast to the FTC's multi-member structure, is fatal. The CFPB disregards this distinction, Opp. 14, but the Supreme Court has approved for-cause removal of principal officers *only* in the context of a multi-member body. *See Humphrey's Executor v. United States*, 295 U.S. 602, 624 (1935); *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 508 (2010).

*Second*, *Myers v. United States*, 272 U.S. 52 (1926), remains good law; it is not "dicta" and "irrelevant to the constitutionality" of the CFPB's structure, as the Opposition (at 14) asserts. The Supreme Court recently described *Myers* as a "landmark case . . . [that] reaffirmed the principle that Article II confers on the President the general administrative control of those executing the laws." *Free Enter. Fund*, 561 U.S. at 492 (internal quotation marks omitted). *Myers* compels the conclusion that the CFPB is unconstitutional.

Notably, the CFPB provides no answer to the argument that if the agency's structure is unconstitutional, the Director's authorization of this lawsuit is void,

and the case must be dismissed in its entirety. *See Fed. Election Comm'n v. NRA Political Victory Fund*, 6 F.3d 821, 822 (D.C. Cir. 1993).

## III. COUNTS I–IV, VI, AND VII–X SHOULD BE DISMISSED

Contrary to the CFPB's repeated suggestions, *see*, *e.g.* Opp. 18, 22, 24, 27, Defendants' decision not to challenge the sufficiency of *every* element of *every* count is not an admission of wrongful conduct. The sole question before the Court on a motion to dismiss is whether, even assuming the Complaint's allegations as true, the CFPB failed to plead "more than the mere possibility of misconduct." *K.A. ex rel. J.A. v. Abington Heights School Dist.*, 28 F. Supp. 3d 356, 362–63 (M.D. Pa. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks omitted)). The CFPB's allegations in Counts I–IV and VI–X fail to state a plausible right to relief.

### A. Counts I and II – The CFPB Has Not Stated A Claim That Defendants' Practices Related to Forbearance/IDR Options Are "Abusive" or "Unfair"

#### 1. Count I Should Be Dismissed Because The CFPB Has Failed To Allege The Element Of Reasonable Reliance

The CFPB's claim is not that Navient[4] made *misrepresentations* to borrowers about IDR options or even that it *failed to disclose* those options. Rather, the claim is that Navient acted abusively when it did not "*adequately*

[4] Consistent with Defendants' opening brief, "Navient" as used herein refers to Navient Solutions LLC, and "Pioneer" refers to Pioneer Credit Recovery, Inc.

advis[e]" (Comp. ¶ 51) and "counsel[]" (¶ 47) borrowers about alternative IDR plans in phone calls with borrowers. To state such a claim, the CFPB must plead the existence of a legal duty to counsel borrowers about IDR options.[5] Unable to allege such facts, the CFPB argues instead that it was enough that borrowers might have *thought* servicers had such a legal duty (Opp. 19). This argument fails: imposing penalties for not doing something for which there is no legal duty is contrary to the express language of the CFP Act and centuries of common-law precedent.

The text of the CFP Act makes clear that such a legal duty is required, because the CFPB must plead facts showing that a provider took "unreasonable advantage of reasonable reliance by the consumer" that the provider would "act in the interests of the consumer." § 5531(d)(2)(C). These legal concepts have deep common-law foundations that necessarily inform interpretation of the CFP Act. *See Field v. Mans*, 516 U.S. 59, 73–74 (1995) (when statute uses common-law

---

[5] The absence of a *legal* requirement does not mean that Navient does not work to improve situations for borrowers, for example, by explaining IDR terms and the application process to borrowers in disclosures and over the phone, and by providing tools to help borrowers make repayment decisions. If this case proceeds beyond the motion to dismiss, Navient will present ample evidence rebutting the CFPB's unfounded accusations, including evidence showing that Navient has enrolled a higher percentage of loan balances in IDR than any other comparable servicer according to Education Department data.

terms courts are to "find[] Congress's meaning in the generally shared common law").

As a general matter, a legal obligation of this kind arises only when a party owes a fiduciary or similar special duty to that person. *See, e.g.*, *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 500 (3d Cir. 2013) (confidential relationship "exists whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest" (internal quotation marks omitted)). Similarly, the common law imposes no duty to disclose information absent a special relationship or other legal obligation. *See Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 611 (3d Cir. 1995) (to be liable for nondisclosure, a party must have a "duty to speak," which exists in only "limited circumstances"). And a person can reasonably rely on another to act as a fiduciary only where such a legal duty exists. *See, e.g.*, *Quincy Park Condo. Unit Owners' Ass'n v. D.C. Bd. of Zoning Adjustment*, 4 A.3d 1283, 1290 (D.C. 2010) (reliance on fiduciary entity to disclose information was reasonable "[g]iven the duties of loyalty and care imposed by law on a fiduciary").

The CFPB does not contest, Opp. 19, that there is no fiduciary or other special relationship between an arm's-length loan servicer and a borrower. *See Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53 (3d Cir. 1988) (noting that creditor-debtor relationship does not give rise to a fiduciary duty and

that it "would be anomalous to require a lender to act as a fiduciary for interests [of the borrower]" (internal quotation marks omitted)). Nor does it claim that the Education Department contract imposed such a duty. Instead, the CFPB points to general statements on Navient's website that it claims created reasonable reliance that a fiduciary or special relationship existed. Compl. ¶¶ 38–39. But these statements are no different than the ones held "plainly insufficient" to create a fiduciary relationship in *Dommel Props., LLC v. Jonestown Bank & Tr. Co.*, No. 11-2316, 2013 WL 1149265, at *2, 21 (M.D. Pa. Mar. 19, 2013), where a bank told a borrower "not to worry, we will work it out" and "repeatedly assured him that [it] would continue to work with him to resolve the debts." *See also Barron Partners, LP v. Lab123, Inc.*, 593 F. Supp. 2d 667, 671 (S.D.N.Y. 2009).

The two cases cited by the CFPB are not on point. Both involved affirmative acts and specific misrepresentations that went well beyond the general statements alleged here. *See CFPB v. ITT Educ. Servs., Inc.*, No. 14-00292, 2015 WL 1013508 at *1–3, 31 (S.D. Ind. Mar. 6, 2015) (employees engaged in one-on-one communications, including completing financial aid forms on behalf of students); *Illinois v. Alta Colls.*, No. 14-3786, 2014 WL 4377579, at *2 (N.D. Ill. Sept. 4, 2014) (defendant held salespeople out as admissions representatives in a manner designed to gain trust). By contrast, offers of general assistance on a public website are insufficient as a matter of law to induce "reasonable reliance."

*See Alpine Bank v. Hubbell*, 555 F.3d 1097, 1112 (10th Cir. 2009) (plaintiffs "could not reasonably rely on the Bank's advertising slogan that it would 'take care of everything else'").[6]

Ultimately, the CFPB seeks to impose fines based on an unbounded interpretation of the CFP Act's abusiveness provisions: a provider incurs an obligation to "act in [a person's] interests" whenever that person might have relied on the provider to do so, regardless of whether that reliance reasonably reflects actual common law or statutory obligations. This argument is not only wholly unsupported by any case law, it flies in the face of basic common-law terms incorporated into the CFP Act. *See Field*, 516 U.S. at 73–74.

### 2. Count II Should Be Dismissed Because The CFPB Failed To Plead An Unfairness Claim

To state an unfairness claim, the CFPB must allege facts to show that the asserted injury "is not reasonably avoidable by consumers." 12 U.S.C. § 5531(c)(1)(A). An injury is reasonably avoidable if consumers "have reason to anticipate the impending harm and the means to avoid it." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168–69 (9th Cir. 2012) (internal quotation marks

---

[6] The CFPB offers no authority for its argument (Opp. 20 n.7) that statements on the *Education Department*'s website created a legal requirement for student loan servicers to provide financial "counseling," which, if correct, would mean that the government could end-run the entire contractual change order and cost adjustment process merely by posting statements on the internet.

omitted). Because federal law required numerous disclosures to borrowers about IDR and forbearance, including in disclosures with each billing statement (Br. 10), borrowers had both reason to anticipate and the means to avoid any asserted harm. *Casey v. Fla. Coastal Sch. of Law, Inc.*, No. 14-1229, 2015 WL 10096084, at *15 (M.D. Fla. Aug. 11, 2015) (consumers could reasonably avoid harm because "there were . . . numerous sources of information available").

The CFPB does not dispute that borrowers received numerous disclosures and had ready access to information about IDR plans and forbearance. Opp. 23.[7] It instead argues that Navient "erroneously equates 'access to information' with 'free and informed choice,'" and that Navient somehow interfered with that choice. *Id*. Resorting repeatedly to loaded words like "steering," as the CFPB's Opposition does, cannot cure these pleading deficiencies. The Complaint does not allege any affirmative misrepresentation that interfered with borrower choices, only that Defendants should have "counsel[ed]" borrowers by providing even *more* information about IDR options.[8] Compl. ¶ 47. The borrowers could make a "free

[7] The CFPB argues its claims are "not based on these disclosures" and they are "unintroduced evidence." Opp. 23 n. 8. But the disclosures are mandated by federal regulations, Br. 9–10, 24, and on this motion the Court can consider "matters of public record," including "decisions of government agencies and published reports of administrative bodies." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993).

[8] The cases on which the CFPB relies are easily distinguishable because they involved affirmative acts or misrepresentations, which have no relevance here. *See*

and informed choice" by reading the disclosures in their possession. The CFPB has not pleaded "unavoidable" injury.

### B. Count III Should Be Dismissed Because The CFPB Fails To Plead That Borrowers Could Not Reasonably Avoid Any Alleged Harm By Clicking On A Link

The CFPB does not dispute that borrowers affirmatively consented to receive IDR recertification information and other federally required notices by email. Compl. ¶ 66; Opp. 24. Nor is there any dispute that the email stated that "a new education loan document is available," provided "a hyperlink," and instructed borrowers to "log in to [their] account[s]" to access the document. Compl. ¶¶ 68–70.

The CFPB's only support for its claim that the email "did not provide enough information to enable borrowers to anticipate—and thus reasonably avoid—harm," Opp. 25, is a feeble attempt to draw a "stark contrast" between the recertification email and "the telltale signs of importance found in other Navient

---

*FTC v. Neovi*, 604 F.3d 1150, 1158 (9th Cir. 2010) (defendant made unauthorized withdrawals from consumers' accounts); *Orkin Exterminating Co., Inc. v. FTC*, 849 F.2d 1354, 1365 (11th Cir. 1988) (defendant unilaterally raised contract price when contracts stated the price would not increase); *FTC v. IFC Credit Corp.*, 543 F. Supp. 2d 925, 948 (N.D. Ill. 2008) (defendant, aware of the fraudulent scheme, "made promises and representations to the consumers that furthered [the] perception"); *D&D Mktg.*, No. 15-9692, at *16 (defendants made false representations about loan terms).

notification emails." *Id*. But its allegations reveal no meaningful difference between the quoted emails. One states that an "education loan document is available"; the other states that a "monthly statement is now available." *Id*. The CFPB offers no explanation why the first inflicts "unavoidable" injury on borrowers while the latter does not. In either case, borrowers could reasonably avoid any harm by reading the email that they consented to receive, clicking on the link, and logging into their accounts.

### C. Count IV Should Be Dismissed Because There Is Nothing Misleading About Navient's IDR Renewal Notice

As explained in Defendants' Opening Brief, Navient's IDR renewal notice would not mislead a reasonable borrower about the consequences of failing to submit a complete and accurate application. The CFPB's claim that the Court cannot decide this issue on a motion to dismiss (Opp. 28) is incorrect. Third Circuit precedent recognizes that courts can determine, as a matter of law, on the face of a document whether the communication misleads consumers. *See Wilson v. Quadramed Corp*., 225 F.3d 350, 352 (3d Cir. 2000) (affirming dismissal of claim that debt collection letter was deceptive); *see also Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008) (notices not deceptive on their face).[9]

[9] The CFPB's attempts to distinguish *Wilson*, 225 F.3d at 352, on the basis that there is no analogy between the precise language in that case and Navient's notice

The plain text of the renewal notice belies the CFPB's claim that it was misleading. The Opposition completely ignores the first paragraph of the notice, which explains that the "IBR period will expire in approximately 90 days" and that "[i]f [the borrower would] like to continue with the IBR payments," the borrower will need to "complete the included Income-Based Repayment Plan Request Form."[10] The CFPB does not explain why a reasonable borrower would fail to read and understand the import of those statements. Nor does it explain how a borrower warned of the pending expiration could reasonably expect that submitting an incorrect or incomplete form would have no material consequences for continued enrollment.[11]

---

falls short. *See* Opp. 31 n.11. Like the CFPB, the plaintiff in *Wilson* sought to isolate the challenged portion of a notice from the surrounding content. 225 F.3d at 355. The court held that the challenged paragraphs did not "overshadow" the following paragraph. *Id.* at 356. The Opposition does not address *Campuzano*, 550 F.3d at 299.

[10] Br. Ex. C, at NAV-00000085.

[11] The accompanying application also explains that, like borrowers who "do not have a partial financial hardship" or who "choose to leave" the IDR plan, borrowers who permit the IDR plan to "expire" will no longer receive the benefits of the plan. Br. Ex. C, at NAV-00000088; Ex. D, at NAV-00000101. Contrary to the CFPB's suggestions, the statements on this *United States government form* appear in the same font size as the other text. Finally, the cases cited by the CFPB address only whether an accompanying disclosure can cure an affirmative misrepresentation, which is not alleged here. *See FTC v. Brown & Williamson Tobacco Corp.*, 778 F.2d 35, 42–43 (D.C. Cir. 1985) (affirmative statements not cured by subsequent disclaimer); *FTC v. Willms*, No. 11-828, 2011 WL 4103542, at *10 (W.D. Wash. Sept. 13, 2011) (advertisement of "free" offers not cured by subsequent disclosure of cost); *FTC v. Davison Assocs., Inc.*, 431 F. Supp. 2d 548,

The CFPB's attempt to save its claim by limiting it only to borrowers who made "inadvertent errors or omissions" completing the forms is its final death knell. Opp. 30–31. To establish that a statement is deceptive, a plaintiff must demonstrate that the representation in question is "capable of *influencing the decision*" of its audience. *See Jensen v. Pressler & Pressler*, 791 F.3d 413, 420 (3d Cir. 2015) (emphasis added); *see also FTC v. Cyberspace.Com LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006) (explaining that statement must be "likely to affect [the consumer's] choice" under the FTC Act). Borrowers who, according to the CFPB, *mistakenly* submitted a defective form necessarily did so because of a mistake, not based on any alleged misrepresentation that could not have "affect[ed] [a borrower's] choice" about how or when to respond. *Id*.

### D. Count VI Requires A More Definite Statement

A more definite statement is required unless the allegations are "sufficiently intelligible for the district court to be able to make out one or more potentially viable legal theories." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1376 (3d ed. 2017).

The CFPB's insistence that it has provided "abundant detail about the mechanisms that caused consumer injury," Opp. 32, does not hold up when

560 (W.D. Pa. 2006) (disclaimer could not outweigh the fact that defendants "overstate[d] the reasonable possibility of financial gain").

compared to its actual allegations, which only generally refer to "errors" in the allocation and application of payments. Compl. ¶¶ 100–102. To try to substantiate its claim, some vague examples are suggested in the Complaint, such as that Navient's mail reading equipment "*did not always* properly detect" payment instructions, *id.* ¶ 106 (emphasis added), but no facts are pled to demonstrate why the occasional malfunction of a mail reader satisfies the legal elements of an "unfair" practice. The CFPB does not allege that Navient had a policy of disregarding payment instructions, only that occasional errors occurred. The purpose of prohibiting "unfair" practices is to prevent general practices that harm borrowers, not to hold companies to a standard of error-free operation.

The CFPB requests injunctive relief, Compl. ¶ 199(c), a remedy available under the statute to prevent *particular* acts and practices. 12 U.S.C. § 5531(a); § 5563(b) (cease and desist authority). But what injunctive remedy could the Court possibly fashion for the assortment of unrelated customer service errors alleged in Count IV? Rather than enjoining particular acts and practices, the CFPB apparently seeks to enjoin Navient from making customer service errors at all. But, "[b]road, non-specific language that merely enjoins a party to obey the law . . . does not give the restrained party fair notice of what conduct will risk contempt." *Louis W. Epstein Family P'ship v. Kmart Corp.*, 13 F.3d 762, 771 (3d Cir. 1994). A more definite statement will serve the litigants and the Court by

permitting issue to be joined on the claims, the assertion of discrete defenses, and directed discovery. *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 233–34 (D.N.J. 2003).

**E. The Claims Against Pioneer (Counts VII–X) Should Be Dismissed Because The CFPB Cannot Plead Fraud "On Information And Belief"**

The CFPB's argument that it can plead a supposed fraudulent scheme on "information and belief" does not withstand scrutiny. Rule 9(b) applies when a claim is "grounded in fraud rather than negligence." *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 287–88 (3d Cir. 1992). Merely reading the Complaint—with its repeated accusations that Pioneer employees made "false promises" that "misled" borrowers (Compl. ¶¶ 118 (section header), 123–124, 126 (section header))—demonstrates that the CFPB's claims sound in fraud, not simply negligence, and that Rule 9(b) therefore applies.[12]

Moreover, the CFPB's suggestion that the Court can remedy the Complaint's overreach by "strip[ping]" the averments of scienter is misplaced. As the Third Circuit has held, claims alleging fraud must satisfy Rule 9(b) even where scienter is not ordinarily an element of the cause of action. *Shapiro*, 964 F.2d at 288; *see also Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (plaintiff failed to allege "with requisite specificity" a claim under state consumer protection

---

[12] Of course, Pioneer categorically rejects the CFPB's unsupported accusation that it engaged in fraudulent conduct.

law). Even *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097 (9th Cir. 2003), on which the CFPB relies (Opp. 35), makes clear that "[f]raud allegations may damage a defendant's reputation regardless of the cause of action in which they appear, and they are therefore properly subject to Rule 9(b) in every case." *Id*. at 1104–05.

Finally, the CFPB mischaracterizes Defendants' argument as a failure of particularity. Opp. 35. The pleading deficiency here is not lack of specificity; it concerns the CFPB's "sources of information." *Shapiro*, 964 F.2d at 285. Courts will "disregard[]" even detailed allegations where they are based "on information and belief" rather than direct knowledge. *Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 684 (7th Cir. 1992) ("essential" details pleaded by the plaintiff "must be disregarded" when pleaded "on information and belief"). After a multi-year investigation that included the production of thousands of pages of documents and hours of telephone recordings, it is telling that the allegations in the Complaint are made on "information and belief." Simply put, the CFPB has failed to meet its burden.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated: May 15, 2017

Respectfully submitted,

/s/ Matthew T. Martens
Matthew T. Martens (DC 1019099) (*pro hac vice*)
Jonathan E. Paikin (DC 466445) (*pro hac vice*)
Daniel P. Kearney (DC 977148) (*pro hac vice*)
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
matthew.martens@wilmerhale.com
jonathan.paikin@wilmerhale.com
daniel.kearney@wilmerhale.com
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

Daniel T. Brier (PA 52348)
Donna A. Walsh (PA 74833)
Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
dbrier@mbklaw.com
dwalsh@mbklaw.com
Tel: 570-342-6100
Fax: 570-342-6147

*Counsel for Navient Corporation, Navient Solutions, LLC, and Pioneer Credit Recovery, Inc.*

**CERTIFICATE OF WORD COUNT**

I hereby certify in accordance with Local Rule 7.8(b)(2) that the foregoing document is 4,947 words.

/s/ Matthew T. Martens
Matthew T. Martens (DC 1019099) (*pro hac vice*)
Wilmer Cutler Pickering
Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
matthew.martens@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2017, I filed the foregoing document with the Clerk of Court via CM/ECF system, which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service:

/s/ Matthew T. Martens

Matthew T. Martens (DC 1019099) (*pro hac vice*)
Wilmer Cutler Pickering
Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
matthew.martens@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363