

1700 G Street NW, Washington, DC 20552

January 16, 2018

**Filed Via ECF**

The Honorable Robert D. Mariani
U.S. District Court, Middle District of Pennsylvania
William J. Nealon Federal Bldg. & U.S. Courthouse
 235 N. Washington Avenue
 Scranton, PA 18503

  Re: *Consumer Financial Protection Bureau v. Navient Corp., et al.*,
    Case No. 3:17-CV-00101-RDM

Dear Judge Mariani:

  Pursuant to the Court's January 8, 2018 order, I write on behalf of the Consumer Financial Protection Bureau (Bureau) to outline our positions regarding the discovery issues raised in Defendants' January 5, 2018 letter.

  1. Defendants argue that pre-decisional documents related to policies and guidance considered by the Bureau and the Department of Education (ED) "are highly probative of whether Defendants' policies and practices were reasonable." This argument does not withstand scrutiny.

  The issue in this litigation is whether Defendants' alleged conduct is illegal under the Consumer Financial Protection Act (CFPA), the Fair Credit Reporting Act and its implementing regulation, and the Fair Debt Collection Practices Act. The Bureau has produced to Defendants the final versions of any policies and guidance relating to the practices alleged in the complaint, including Bureau reports, Bureau blog posts, and public remarks by Bureau officials. Now Defendants seek all documents relating to these final versions, including internal drafts and communications. In addition, Defendants seek documents relating to any policies and guidance that the Bureau considered but did not issue or publish.

  Defendants, however, cannot justify production of the requested pre-decisional documents. Numerous courts have held that unpublished views

of agency staff are not official agency positions and carry no legal significance. For example, in *United States v. Farley*, the Seventh Circuit held that internal DOJ and FTC documents containing discussions among agency staff were not discoverable because they were not relevant to any of the defendant's defenses, including his defenses based on his interpretation of a statute and a related regulation. 11 F.3d 1385, 1390-91 (7th Cir. 1993). As the court explained, "[c]ourts may not [] rely on unpublished opinions of agency staff" to interpret a statute or regulation, but instead "need look only to the language of the regulation and any official, public interpretations of it." *Id.* at 1391; *see also Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 581 n.11 (1981) ("[S]taff counsel may not speak for the Commission."); *Int'l Paper Co. v. Fed. Power Comm'n*, 438 F.2d 1349, 1358 (2d Cir. 1971) ("views of individual members of the Commission's staff are not legally germane").[1]

Defendants have not even contended that they were aware of the intra-Bureau drafts or communications, much less that they fashioned their behavior based on any such intra-Bureau document. *See Farley*, 11 F.3d at 1390-91 (noting that "[t]he suppositions of FTC staff members expressed in internal memoranda . . . are not pertinent," particularly because such intra-agency deliberations were not disseminated to the public and therefore could not have been relied upon); *United States v. Elsass*, 2012 WL 353739, at *1 (S.D. Ohio 2012) (denying motion to compel production of intra-agency communications because "'[a]ctions or positions of which Defendants had no knowledge are simply irrelevant to . . . the reasonableness of Defendants' conduct'").

Finally, even if Defendants could articulate some basis to believe that there might be relevant documents covered by its request, the requested discovery is not proportional to the needs of the case. The Bureau would have to undertake enormous efforts to gather and review possibly responsive materials, and even after identifying any responsive materials, it

---

[1] *United States v. Exxon Corp.*, 87 F.R.D. 624 (D.D.C. 1980), cited by Defendants, is not to the contrary. That case was limited to "specific circumstances" not present here–namely, instances where an agency "attempts to enforce [] subsequent regulations retrospectively." *Id.* at 631, 633. As the Court already held, "the CFPB's lawsuit does not retroactively impose any requirements on Navient." Docket #57, at 18.

is likely that the vast majority of them would be protected from disclosure by the deliberative process privilege. Thus, we believe that the Bureau's burden and expense of complying with Defendants' request cannot be justified when weighed against the remote possibility that production could lead to relevant, non-privileged evidence.

2.     Defendants seek documents relating to the policies and practices of other servicers and debt collectors on the ground that such documents will aid in determining whether Defendants' conduct was reasonable. However, the conduct of entities other than Defendants has no bearing on whether Defendants violated the law.

In government enforcement actions, courts have repeatedly rejected the "everyone else is doing it" or "why me" defense—the notion that, because competitors allegedly were engaging in the same conduct as the defendant, the government cannot take action against the defendant. *See, e.g., Moog Indus., Inc. v. FTC*, 355 U.S. 411, 413 (1958) (holding that the FTC's cease-and-desist order was valid, notwithstanding that the FTC had not yet pursued action against others in the industry); *Regina Corp. v. FTC*, 322 F.2d 765, 769 (3d Cir. 1963) (same). Accordingly, even if Defendants could show that their competitors were engaged in the same practices, that would not be relevant to resolving any issue in this litigation.

Nor need the Bureau show, as part of its prima facie case, that Defendants' practices deviated from any sort of industry norm. None of the claims that the Bureau has brought contain any elements that contemplate a comparison between Defendants and their competitors. Indeed, in denying a motion to compel production of FTC documents relating to the practices of other entities in an industry, a district court noted that determining whether a defendant's conduct violates the FTC Act does not at all hinge on the conduct of the defendant's competitors:

> The FTC's lawsuit concerns [the defendant's] actions, not its competitor's actions. . . . Every element in a Section 5 claim [for deception or unfairness under the FTC Act] relates to the conduct of the defendant in the lawsuit, not the conduct of other industry participants. Thus, the conduct of other participants in the [] industry . . . has no bearing on the FTC's claim.

*FTC v. Chemence, Inc.*, 209 F. Supp. 3d 981, 985 (N.D. Ohio 2016). The FTC Act is not concerned with industry practice and is instead solely concerned with the relationship between the defendant and the consumer. *See, e.g.*, *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 631 (6th Cir. 2014) (noting that, for deception claims under the FTC Act, the Court focuses on "'the likely effect the [defendant's] handiwork will have on the mind of the ordinary consumer'"). The same is true of the CFPA.[2]

The notion that a company cannot be deemed to have violated consumer finance law if one or more of its competitors were engaged in similar conduct is also impossible to square with the purpose of the CFPA. The CFPA was enacted in the wake of a financial crisis to combat widespread practices in various industries. *See, e.g.*, S. Rep. 111-176, at 17 (2010) (noting that "[a]busive lending, high and hidden fees, unfair and deceptive practices, confusing disclosures, and other anti-consumer practices have been a widespread feature in commonly available consumer financial products"). In light of this purpose, it would not make sense to allow all competitors in an industry to engage in behavior that injures consumers and then be insulated from prosecution by virtue of the fact that their behavior was the industry norm. However, that is precisely the type of argument that Defendants are trying to make in seeking discovery about the practices of their competitors.

We look forward to further discussion of these issues during the January 18, 2018 teleconference.

Thank you for your time and consideration.

---

[2] Defendants cite to *FTC v. Amazon.com, Inc.*, 2016 WL 1221654 (W.D. Wash. 2016), in an attempt to justify the relevance of the practices of third-party competitors. But the court in *Amazon* did not make a holding that any information was relevant. The court decided, in ruling on a motion *in limine* to exclude a rebuttal expert, that wholesale exclusion of the rebuttal expert was not warranted. The court reserved judgment about the relevance of various parts of that expert's report, specifically noting that it "may sustain any well-placed relevance objections at trial." *Id.* at *5.

Sincerely,

  /s/ Nicholas Jabbour
Nicholas Jabbour, DC 500626
Email: Nicholas.Jabbour@cfpb.gov
Phone: 202-435-7508
Enforcement Attorney
Consumer Financial Protection Bureau

Cc:    All counsel (via operation of ECF)