# Exhibit A

WILMERHALE

**Jonathan E. Paikin**

+1 202 663 6703 (t)
+1 202 663 6363 (f)
jonathan.paikin@wilmerhale.com

October 24, 2017

**By E-mail**

Nicholas Jabbour:  Nicholas.Jabbour@cfpb.gov
Ebony Sunala Johnson:  Ebony.Johnson@cfpb.gov
Lawrence DeMille-Wagman:  Lawrence.DeMille-Wagman@cfpb.gov
Andrea Matthews:  Andrea.Matthews@cfpb.gov
Thomas Kim:  Thomas.Kim@cfpb.gov
Manuel Arreaza:  Manuel.Arreaza@cfpb.gov
Nicholas Lee:  Nicholas.Lee@cfpb.gov

> Re:    *Consumer Financial Protection Bureau v. Navient Corp. et al.,*
>        Case No. 3:CV-17-00101 (M.D. Pa)

Dear Counsel:

I write in response to your October 6 letter.

*First*, we received the CFPB's supplemental initial disclosures.  We cannot tell from your descriptions what information the over fifty new witnesses listed possess.  The CFPB has asserted that attorney notes of interviews are work product, and we agreed that those notes do not need to be produced.  The facts learned from those interviews, however, need to be disclosed. Our interrogatories were, in part, directed at discovering this information and may need to be supplemented.  Please let us know whether the CFPB intends to supplement its interrogatory responses with whatever information was learned from these witnesses, including Navient Solutions Interrogatory Nos. 5, 7, 9, 10, 12, 13, and 14 and Pioneer Interrogatory Nos. 4, 5, 6, 7, and 9.  Please also clarify whether documents the CFPB is planning to produce will shed further light on the knowledge of these witnesses and their connection to this lawsuit.  To the extent we are not able to discern the nature or connection of facts known to the witnesses listed in the initial disclosures to this lawsuit from the documents or supplemental interrogatory responses, we need to discuss practical next steps that will allow us to promptly obtain this necessary information.

*Second*, we remain concerned that the CFPB plans to withhold large volumes of relevant documents on the basis of improper privilege assertions.  We elaborated on these concerns in our October 4 letter, and are still awaiting a response.

*Third*, you asked that we identify specific rules, regulations, and guidance relevant to this lawsuit.  While it is neither practical nor reasonable to expect Defendants to guess at what responsive documents may be in the CFPB's possession, we have done our best to identify below additional examples of relevant rules, regulations and guidance by the CFPB or the Department of Education (in which CFPB either participated or chose not to participate).  To be clear, these

Nicholas Jabbour, Esq.
October 24, 2017
Page 2

**WilmerHale**

examples are not an exhaustive list, and the CFPB is best positioned to know what is in its possession:

- The CFPB's Payback Playbook, which discusses student loan repayment options;

- The 2016 and 2017 CFPB Student Loan Examination Procedures;

- The "Joint Principles on Student Loan Servicing" issued by the CFPB, Department of Education, and Department of Treasury on September 29, 2015;

- "Student loan servicing: Analysis of public input and recommendations for reform" issued by the CFPB in September 2015. *See* 80 Fed. Reg. 29,302 (May 21, 2015);

- The CFPB's Mortgage Servicing Rules Under the Truth in Lending Act (Regulation Z). *See* 78 Fed. Reg. 10,963 (Feb. 14, 2013) (explaining that "notifying a consumer of a message on a secure Web site presents less of a risk than emailing the message, with potentially sensitive personal information, directly to the consumer");

- CFPB, "Ask CFPB," previously available at http://www.consumerfinance.gov/askcfpb/657/what-are-main-advantagesrehabilitation-option-when-dealing-collection-agency.html (updated Nov. 9, 2015, and since removed), regarding the benefits of loan rehabilitation;

- The 2014 and 2015 CFPB Ombudsman's reports, in particular, statements in those reports regarding student loan repayment options and communications with borrowers;

- Department of Education regulations creating the Income Contingent Repayment plan. 77 Fed. Reg. 66,088 (Nov. 1, 2012). The regulations were drafted through the Department's negotiated rulemaking process, which included three public hearings, a roundtable discussion, and a public comment period. *See* 77 Fed. Reg. 42,086, 42,098–42,103 (July 17, 2012);

- Department of Education regulations issued to "strengthen and clarify provisions of the Perkins Loan, FFEL, and Direct Loan program regulations including, but not limited to, regulations governing: deferments, forbearances, loan cancellation, rehabilitation of defaulted loans, administrative wage garnishment, and satisfactory repayment arrangements." 78 Fed. Reg. 65,768 (Nov. 1, 2013). The regulations were drafted through the Department's negotiated rulemaking process, which included three public hearings, a roundtable discussion, and a public comment period. *See* 78 Fed. Reg. 45,618, 45,630–41 (July 29, 2013);

- Department of Education regulations issued October 30, 2015, creating the REPAYE plan, strengthening rules governing loan collectors' communications with borrowers regarding repayment options, and modifying the Department's treatment of borrowers who fail to timely recertify the information necessary to remain enrolled in an income-driven repayment plan. 80 Fed. Reg. 67,204 (Oct. 30, 2015). The regulations were drafted through the Department's negotiated rulemaking process, which included three public hearings and a public comment period. *See* 80 Fed. Reg. 39,608, 39,619–21 (July 9, 2015);

Nicholas Jabbour, Esq.
October 24, 2017
Page 3

WilmerHale

- Materials associated with the Department of Education's 2015 and 2016 Federal Student Aid ("FSA") Training Conferences for FSA Professionals;

- The Department of Education's Direct Consolidation Loan Guide for Schools;

- The July 20, 2016 Memo from Ted Mitchell to James Runcie regarding "Policy Direction on Federal Student Loan Servicing," as well as the October 17, 2016 addendum to that letter;

- The April 11, 2017 letter from Department of Education Secretary Betsy DeVos to James Runcie, withdrawing memoranda by former Secretary John King and former Under Secretary Ted Mitchell; and

- The Solicitation of a Federal Aid Servicing Solution by the Department of Education on April 4, 2016, and the August 1, 2017 withdrawal of that solicitation.

*Fourth*, in a further effort to resolve our dispute regarding discovery of third-party servicing and collection practices, we will agree to limit our request to the following practices of other servicers, which we believe are indisputably relevant to the reasonableness of Defendants' alleged conduct.

- Communications with borrowers about repayment plans and policies, procedures, call scripts, and training materials related to such communications;

- Rates of enrollment in forbearance and income-driven repayment plans and rates of income-driven repayment plan recertification;

- Call center operations, including compensation plans and metrics for call center employees and average call times;

- Notices and disclosures regarding repayment options and income-driven repayment plan recertification;

- Policies and procedures for the categorization and escalation of borrower complaints and inquiries related to payment processing;

- Disclosures to borrowers regarding payment allocation and application;

- Policies, procedures, and call scripts relating to communications with borrowers regarding the impact of federal loan rehabilitation on credit reporting and collection fees;

- Rates of defaulted borrowers who rehabilitated their loans, consolidated their loans, or remained in default.

Nicholas Jabbour, Esq.
October 24, 2017
Page 4

WilmerHale

* * *

    Please let us know your positions with respect to the issues above and when we can expect to receive the requested information.  We look forward to hearing from you promptly.

Sincerely,

Jonathan E. Paikin