

1700 G Street NW, Washington, DC 20552

February 27, 2018

**Filed Via ECF**

The Honorable Robert D. Mariani
U.S. District Court, Middle District of Pennsylvania
William J. Nealon Federal Bldg. & U.S. Courthouse
235 N. Washington Avenue
Scranton, PA 18503

   Re: *Consumer Financial Protection Bureau v. Navient Corp., et al.*,
      Case No. 3:17-CV-00101-RDM

Dear Judge Mariani:

   I write on behalf of the Consumer Financial Protection Bureau (Bureau) to respectfully request a teleconference concerning Defendants' refusal to search for and produce documents requested by the Bureau. The parties have conferred at length about these issues without resolution. In addition to four teleconferences on November 10, 13, 27, and 28, 2017, the parties exchanged at least eleven substantive letters or emails on these topics on September 18, 2017; October 4, 2017; December 6, 2017; January 18, 26, and 30, 2018; and February 5, 8, 15, 19, and 20, 2018. Through this process, the Bureau has attempted to address Defendants' burden concerns by suggesting multiple potential modifications to search parameters, including by eliminating custodians, deleting or modifying many of Defendants' search terms, modifying proximity limiters within searches, and agreeing to narrower time periods for certain requests. This reduced the volume of documents to be reviewed by hundreds of thousands. Nevertheless, the parties are unable to agree on the scope of discovery. This letter provides examples of the categories of documents that Defendants refuse to search for or refuse to confirm they will search for, and the attached appendix identifies them all.[1]

   1. *Defendants refuse to confirm in writing that they will conduct a reasonable search for certain categories of documents responsive to multiple requests.*

   In their responses to fourteen requests, Defendants stated that they will

---

[1] The Bureau has sought to explain the numerous disputes concisely while offering sufficient detail to allow the Court to obtain a clear understanding of the issues.

search for and produce only certain categories of responsive documents, ignoring the requests' broader scopes.[2] For example, Request 5 to Navient Solutions seeks "[a]ll documents reflecting any discussion, evaluation, or analysis of the adequacy, inadequacy, effectiveness, ineffectiveness, appropriateness, or inappropriateness of any requirements, instructions, policies, procedures, guidance, or training relating to the communications [with borrowers about forbearance or income-driven repayment (IDR) plans]." Navient Solutions stated that it will search for and produce "analyses" of the "effectiveness" of those policies and procedures. This omits responsive documents that (1) it does not consider to be an "analysis" or (2) discuss deficiencies in those policies and procedures but not their "effectiveness." For example, it would omit a document that mentions, without analysis, a significant deficiency in Navient Solutions' communications with borrowers about IDR plans. Defendants have narrowed six other requests to "analyses."[3]

As another example, Request 7 to Navient Solutions seeks "[a]ll documents reflecting any discussion, evaluation, or analysis of the potential or actual suitability, unsuitability, appropriateness, inappropriateness, advantages, disadvantages, benefits, or costs of forbearance or any type of income-driven repayment plan for any type, category, or group of borrowers." Navient Solutions stated that it will search for and produce "[e]valuations [of] the costs and benefits to borrowers of forbearance as compared to IDR plans." This omits documents: (1) that relate to whether forbearance or IDR plans are unsuitable for borrowers for reasons that are not framed in terms of "cost," such as a document that only says that long-term use of forbearance is unsuitable for certain borrowers because it is correlated with higher default rates; (2) in which only forbearance is discussed, evaluated, or analyzed without a comparison to IDR; and (3) in which only IDR plans are discussed, evaluated, or analyzed without a comparison to forbearance.

Because Defendants' formal responses describe the documents they will search for and produce in substantially narrower terms than what the requests seek, the Bureau must treat the responses as limiting the scope of the search and production. *See Scranton Prod., Inc. v. Bobrick Washroom Equip., Inc.*, 190 F. Supp. 3d 419, 437–38 (M.D.  Pa. 2016), *reconsideration denied*, No. 3:14-CV-00853, 2016 WL 7173786 (M.D. Pa. Dec. 8, 2016) (quoting Advisory Committee Notes to 2015 Amendments to FRCP Rule 34(b)(2) for rule that "[a]n objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been 'withheld'"). Efforts

---

[2] Requests 3, 4, 5, 6, 7, 13, 14, 15, 16, 17, 18, 19, 21, and 24.
[3] Requests 5, 13, 14, 15, 16, and 17 to Navient Solutions.

to clarify this issue before raising it with the Court resulted in Defendants initially confirming that they were withholding categories of documents beyond the search parameters they identified, then later informing the Bureau that they never imposed substantive limitations on their responses. Because this later representation contradicts their formal responses, the Bureau sought written clarification. Specifically, the Bureau asked Defendants to confirm in writing that they had conducted or would conduct a reasonable search for each category of documents excluded in their formal responses. They refused. They also refused to give a written explanation of why they would not provide such confirmation, instead offering to discuss individual requests to address any "confusion." But oral representations are inadequate, especially in light of their formal written responses. Moreover, the parties have already discussed the individual requests at length, but those conversations failed to provide assurances that Defendants would conduct a reasonable search for the documents excluded by their formal responses.

> 2. *Defendants refuse to search for and produce emails in response to multiple Bureau requests.*

Defendants refuse to search for and produce emails responsive to fifteen requests,[4] including, but not limited to, emails relating to: (1) policies, procedures, and guidance to employees relating to communications with borrowers about repayment options, including emails discussing any deficiencies or problems with those policies, procedures, or guidance; (2) auditing, monitoring, and quality assurance relating to communications with borrowers about repayment options; (3) the suitability, unsuitability, appropriateness, inappropriateness, advantages, disadvantages, benefits or costs of forbearance or any type of IDR plan for particular groups of borrowers; (4) communications with borrowers about renewal of IDR plans, including emails discussing any deficiencies or problems with those policies, procedures, or guidance; and (5) the terms of Navient Corp.'s contract with the Department of Education and Defendants' performance under that contract with respect to issues relevant to the Bureau's claims or their defenses.

These requests seek highly relevant information. For example, policies and procedures relating to communications with borrowers about repayment options are centrally relevant to the Bureau's forbearance steering claims (Counts I and II). Emails would be useful to resolving disputes about the interpretation of policies and procedures as well as to show how they were applied in practice and their

---

[4] Requests 3, 4, 5, 6, 7, 13, 14, 15, 16, 17, 18, 19, and 21 to Navient Solutions and Requests 1 and 2 to Navient Corporation.

impact on borrowers. And if employees used email to discuss deficiencies in or problems with those policies and procedures, such as an instruction that caused employees to provide no or incomplete information about IDR plans, those emails would be relevant to the Bureau's claims. Another example relates to the Bureau's contention that forbearance is typically not suitable for borrowers experiencing long-term hardship and Defendants' apparent disagreement with that contention. Emails discussing the suitability or unsuitability of forbearance or IDR plans for particular groups of borrowers would be relevant to that issue. Defendants have also asserted a defense based on Navient Corporation's contract with the Department of Education. While Defendants have not identified any ambiguous contract term that requires extrinsic evidence to interpret it, the Court has not ruled that the contract is unambiguous and Defendants' discovery requests suggest that they will seek to rely on such extrinsic evidence. Absent a ruling barring extrinsic evidence, Defendants should produce relevant internal emails about the contract. And all of the requests seek emails that could bear on the appropriate tier for civil money penalties, for which scienter is a factor. *See* 12 U.S.C. § 5565(c)(2)(B), (C).

Discovery of the requested emails is proportional to the needs of the case. Defendants have asserted that they "are quickly approaching the point where, through [the Bureau's] investigation and discovery, over 1 million *pages* of materials have been produced" (emphasis added) and that additional email searches would require the review of approximately 1 million documents (not accounting for substantial modifications suggested by the Bureau on February 16, 2018).[5] But it is not uncommon for parties in complex litigation to review and produce millions of documents in discovery.[6] This action includes eleven counts that cover an array of practices. And the Bureau has attempted to address Defendants' burden concerns by suggesting multiple potential modifications to search parameters that have reduced the volume of documents to be reviewed by hundreds of thousands of documents, but they have continued to resist searching for emails. The importance of the issues at stake,[7] the amount in controversy, the

---

[5] The Bureau is currently reviewing approximately 478,000 documents in response to Defendants' discovery requests.

[6] *See In re Pool Products Distrib. Market Antitrust Litig.*, 2015 WL 4528880, at *13 (E.D. La. July 27, 2015) (4 million documents reviewed); *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 429 (S.D.N.Y. 2016) (11 million documents produced).

[7] *Zubulake v. UBS Warburg*, 217 F.R.D. 309, 321 (S.D.N.Y. 2003) (broad public impact favors extensive discovery).

parties' relative access to emails, their resources,[8] the importance of the discovery in resolving the issues, and whether the burden of the proposed discovery outweighs its likely benefit all support granting the requested discovery. The Bureau needs the emails to prevent this case from being litigated based on formal policies and "analyses" that may have been vetted by high-level officers and executives. Such documents are unlikely to contain the type of frank communication found in emails, including lower-level employees' emails. *See*, *e.g.*, *Capitol Records, Inc. v. MP3tunes, LLC*, 261 F.R.D. 44, 50–51 (S.D.N.Y. 2009).

### 3. *Defendants refuse to produce draft notices and disclosures.*

In response to Request 13, Navient Solutions has refused to produce drafts of notices and other communications that it sent to borrowers regarding the need to recertify their enrollment in IDR plans. Navient Solutions has asserted a relevance objection, arguing that the face of the document shows whether it was deceptive. But courts routinely consider drafts of communications to consumers in determining whether the final version was deceptive. *See, e.g., Kraft, Inc. v. FTC*, 970 F.2d 311, 323 (7th Cir. 1992) (upholding FTC order regarding deception where materiality was established, in part, by evidence that the defendants rejected modified advertisements with clearer disclosures); *FTC v. Directtv*, 2015 WL 7775274, at *6-7 (N.D. Cal. Dec. 3, 2015) (holding that drafts were relevant to whether final version contained material omissions); *First Mariner Bank v. Resolution Law Grp., P.C.*, 2014 WL 1652550, at *2 (D. Md. Apr. 22, 2014) (ordering production of "all advertisements including blanks and drafts" in a false advertising case). Here, the drafts are relevant to Count IV's deception claim because they could reveal deficiencies in the final notices. They could also reflect Defendants' scienter, which is relevant to civil money penalties.

### 4. *Defendants seek to exclude relevant periods from discovery.*

In connection with thirteen requests, Defendants are refusing discovery into relevant time periods.[9] For its requests relating to its steering claims in Counts I and II,[10] the Bureau seeks discovery starting on June 17, 2009, the effective date of Navient Corporation's contract with the Department of Education. Defendants have limited the time period for these requests as indicated in Appendix A, often

---

[8] Navient Corporation's public filings in September 2017 indicate that it has cash and cash equivalents of $1.248 billion and a quarterly net income of $376 million.

[9] Requests 3, 4, 5, 6, 7, 13, 14, 15, 16, 17, 18, 19, and 21 to Navient Solutions.

[10] Requests 3, 4, 5, 6, and 7 to Navient Solutions.

after January 1, 2010. Such a limitation would shield from discovery the period when they likely generated many of the key documents at issue here (such as policies, procedures, guidance, training materials, and job-aids), provided feedback on their adequacy, and ultimately approved them. Moreover, Defendants' position is inconsistent with its affirmative discovery. They served a subpoena on the Department of Education seeking, *inter alia*, documents relating to the Bureau's steering claims going back to January 1, 2009.

For other requests, Defendants seek to limit discovery into time periods covered by the Bureau's investigation of Navient Solutions.[11] But the scope of the requests in that investigation was narrower than the discovery requests here. For example, the Bureau did not seek internal email communications during the investigation. Accordingly, Defendants must search those time periods for responsive, non-privileged documents not previously produced.

For other requests, Defendants seek to limit discovery to time periods specified in the Complaint.[12] But courts routinely reject such positions. *See, e.g., Fassett v. Sears Holdings Corp.*, 319 F.R.D. 143, 157 (M.D. Pa. 2017) (permitting discovery five years prior to date of manufacture of product and approximately thirteen years prior to alleged injury, because discovery relating to the creation of a product is important when a plaintiff claims that the product is deficient); *Assured Guar. Mun. Corp. v. UBS Real Estate Sec. Inc.*, 2012 WL 5927379, at *2 (S.D.N.Y. Nov. 21, 2012) (ordering production of documents postdating the transactions at issue, because retrospective assessments of the transactions could have occurred and would be relevant). Here, discovery that predates and postdates time periods identified in the Complaint is relevant. For example, the Bureau alleges that Defendants began using deficient IDR recertification notices since at least January 1, 2010, and Defendants refuse to provide discovery of documents created in 2009. Defendants attempt to shield from discovery the period when they likely generated multiple draft notices, provided feedback on their adequacy, and ultimately approved them, which are relevant to Count IV's deception claim for the reasons discussed in the preceding section. The Bureau also alleges that the use of deficient IDR recertification emails continued into 2015 (when Defendants implemented enhanced recertification emails). Defendants refuse to produce documents created after December 31, 2015. Comparisons between the allegedly deficient emails and the enhanced emails would be relevant. So, too, would retrospective assessments of the allegedly deficient emails and analyses of the

---

[11] Requests 3, 4, 6, 19, and 21 to Navient Solutions.

[12] Requests 5, 6, 7, 13, 14, 15, 16, and 17 to Navient Solutions.

enhanced emails' impact on borrowers.

*          *          *

The Bureau respectfully requests that the Court order Defendants to conduct a reasonable search for documents responsive to the requests listed in Appendix A as written, subject to prior limitations to which the parties agreed, and to produce all non-privileged documents located as a result of those searches.

Sincerely,

/s/ Nicholas Lee
Nicholas Lee, DC Bar No.1004186
Email: Nicholas.Lee@cfpb.gov
Phone: 202-435-7059
Enforcement Attorney
Consumer Financial Protection Bureau

Cc:    All counsel (via operation of ECF)