WILMERHALE

March 6, 2018

Jonathan E. Paikin

+1 202 663 6703 (t)
+1 202 663 6363 (f)
jonathan.paikin@wilmerhale.com

**Via Electronic Filing**

The Honorable Robert D. Mariani
U.S. District Court, Middle District of Pennsylvania
William J. Nealon Federal Building & U.S. Courthouse
235 North Washington Avenue
Scranton, PA 18503

      Re:    *Consumer Financial Protection Bureau v. Navient Corp. et al.,*
                Case No. 3:17-CV-00101-RDM (M.D. Pa.)

Dear Judge Mariani:

      On February 27, Plaintiff Consumer Financial Protection Bureau ("CFPB") filed a letter with the Court requesting a teleconference to discuss certain discovery issues. The Court scheduled a teleconference for March 29 and ordered Defendants to respond to the CFPB's letter by March 23. Defendants submit this letter to raise additional issues that they believe should also be addressed and respectfully request that the CFPB be allowed to respond to this letter in advance of the teleconference.

1. *Nine months after receiving Defendants' document requests, the CFPB has yet to produce virtually any documents.*

      Defendants served document requests on June 5, 2017. In its February 27 letter, the CFPB stated that it identified 478,000 documents in its possession that are potentially responsive to Defendants' discovery requests. To date, however, the CFPB has produced only 800 documents, approximately half of which are duplicative and the vast majority of which were created after the date of the Complaint. For example, the CFPB's production includes approximately 180 autoreply emails to the CFPB's emailed press release announcing the filing of this lawsuit. In addition, critical documents that are at the ready have not been produced. For instance, the CFPB indicated that it possesses a number of declarations, but none of them have been produced. Defendants respectfully request that the Court direct the CFPB to produce documents on a rolling basis and to substantially complete production as soon as possible.

2. *The CFPB has frustrated Defendants' efforts to take discovery of the witnesses the CFPB intends to rely on to support its claims.*

      The CFPB filed the instant lawsuit after an extensive, four-year investigation into virtually every aspect of Defendants' loan servicing and collection activities. Defendants produced 450,000 pages of documents, hundreds of hours of phone recordings, prepared nine witnesses for testimony, answered multiple interrogatories, and prepared over 30 written reports.

WilmerHale

March 6, 2018
Page 2

In the CFPB's Complaint (and accompanying press release), the CFPB makes a number of factual allegations that Defendants believe to be counterfactual and inconsistent with information produced during the investigation. Through discovery, Defendants have sought to learn the factual basis for the CFPB's claims, including the identity of the borrowers it alleges were harmed and will rely upon to prove its case at trial.

In June 2017, Defendants served interrogatories that asked the CFPB to identify individuals who were harmed by the practices alleged in the Complaint. The CFPB resisted providing a response. Defendants also took a Rule 30(b)(6) deposition of the CFPB during which the CFPB was unable to identify a single borrower who was harmed.[1] Following the deposition and after repeated requests, the CFPB in November 2017 provided—in supplemental disclosures and sworn interrogatory responses—the names of 58 individual borrowers who supposedly supported its allegations. The CFPB has never explained how it identified these borrowers, or what diligence it undertook before including them in its sworn interrogatory responses.

Defendants—with only 20 depositions to allocate under the Court's scheduling order—asked the CFPB to work with Defendants to conduct discovery of the 58 borrowers identified. While it takes substantial effort to fully research the situation of each borrower, it quickly became apparent that at least some of the borrowers named by the CFPB did not have information supporting the CFPB's allegations. Defendants asked the CFPB to remove any borrower on whom it did not intend to rely at trial. The CFPB declined, stating "we are not in a position to narrow the lists of consumers that we provided in our supplemental initial disclosures and supplemental interrogatory responses."

After deposing three of the borrowers identified in the CFPB's responses, Defendants confirmed that their testimony does not support the CFPB's allegations (and indeed undercut them) and that the CFPB had done little diligence to confirm the statements it made about these borrowers and their potential testimony in its sworn interrogatory responses.

- **Kylie Berrena**. Despite the CFPB's assertions that borrowers are steered into forbearance and not advised about income-driven repayment options, Ms. Berrena admitted that Navient sent multiple notices about income-driven repayment options and that she spoke to Navient about income-driven repayment options on the phone before enrolling in a short forbearance *in order to allow her time to apply for income-driven repayment*. Ms. Berrena submitted the application the day after her call with Navient.

---

[1] For example: "Q. Do you know whether any of those 503,257 borrowers spoke with Navient by telephone concerning either IDR or forbearance? A. I can't name any individual borrowers who may have spoken with Navient and may be included in that number." Tr. at 83:13-18.

**WilmerHale**

March 6, 2018
Page 3

<u>After the deposition, the CFPB removed Ms. Berrena from its list of individuals supporting its claims.</u>

- **Savannah Cummings**. Ms. Cummings testified that she had been aware of income-driven repayment options since the time she first applied for her loans and confirmed that she had received numerous disclosures about those options over time. Ms. Cummings enrolled in a forbearance on a call to allow time for her to apply for unemployment deferment, which the Navient agent had told her was a "temporary" solution before she reenrolled in school. On another call, an agent recommended that Ms. Cummings apply for an income-driven repayment plan, and she did not do so. <u>After the deposition, the CFPB removed Ms. Cummings from its list of individuals supporting its claims.</u>

- **Gregory Jaklevich**. Like the other deponents, Mr. Jaklevich testified that he too had received information about income-driven repayment plans prior to enrolling in any forbearance. Mr. Jaklevich also testified that he had, in fact, been enrolled in an income-driven repayment plan from 2011 until 2015, when he no longer qualified because his income was too high—based on a threshold set by the federal government, not Navient. Although the CFPB insists that forbearance is always a worse option for borrowers than an income-driven repayment plan, Mr. Jaklevich complained about the interest that accrued on his account while he was enrolled in income-driven repayment, interest that was capitalized when he was no longer eligible.

Before including borrowers in a sworn interrogatory, some diligence should have been undertaken by the CFPB. It appears from the depositions taken, however, that many of the borrowers listed were identified solely from emails sent to the CFPB's complaint portal. Not surprisingly, many borrowers facing financial difficulties complain about their loans for reasons that have nothing to do with Navient and/or make allegations that are not true. NERA Economic Consulting, an independent expert (not currently retained by Defendants) recently published a study demonstrating the unreliability of the complaints made on the CFPB's website. *See* Sabry, et al., *What Does the CFPB Complaint Database Tell Us About the Quality of Servicing Student Loans?* (Feb. 14, 2018) (attached as Exhibit 1). In addition to mining unsubstantiated complaints on its portal, it appears that the CFPB in its interrogatories listed borrowers who emailed the CFPB to complain about Navient after the extensive media coverage of the filing of this lawsuit. A review of some of the complaints sent by these borrowers reveal that they largely parroted, almost verbatim, the conclusory allegations like "steering" in the Complaint. The same expert study above also noted the lack of reliability of complaints that are received after publicity surrounding a lawsuit. *See id.* at 14.

The CFPB has an obligation to investigate the complaints it received before providing sworn responses in reliance on them. But in each of the depositions taken to date, the borrowers

testified that the CFPB had not spoken to them in the months between an initial conversation after filing a complaint via the CFPB complaint portal and receiving the subpoena for the deposition. Indeed, before receiving the subpoena for a deposition, the borrowers did not even know that the CFPB had listed them as potential witnesses in this lawsuit.

After the depositions, Defendants once again asked the CFPB to confirm the accuracy of the factual statements in its interrogatories as well as its intent to rely on the 58 named borrowers, including several borrowers scheduled for upcoming depositions. When Defendants asked specifically about one upcoming deponent, the CFPB responded that "while the statements in the interrogatory responses . . . are correct to the best of our knowledge, information, and belief," the CFPB nonetheless intended "to remove [him] from our interrogatory responses and initial disclosures." Perplexed as to why the CFPB would not rely on a borrower that it said had information related to its claims, Defendants stated that they would proceed with the deposition that had been noticed a month earlier. Then, the day before the deposition, the CFPB sought to "clarify" its earlier statement, essentially conceding that it had no information to indicate the deponent supported its claims. Defendants canceled the deposition.

Defendants also received information from another borrower scheduled for deposition who said that he had previously told the CFPB that he had no information supporting the CFPB's claims. Defendants asked the CFPB to confirm its reliance on that borrower. The CFPB—without responding directly—served on February 27 amended disclosures and interrogatory responses that omitted the borrower's name. Only after Defendants followed up about the borrower for a third time did the CFPB confirm it would not be relying on his testimony. Two other borrowers who were previously scheduled for deposition also disappeared from the supplemental disclosures, but they remained in the interrogatory responses. Again, only when Defendants sought clarification from the CFPB as to whether it intends to rely on these borrowers did the CFPB respond that it had changed its mind and it now would not rely on them. Defendants have canceled the depositions.

The updated disclosures and interrogatory responses served on February 27 shed little light on which borrowers the CFPB ultimately intends to rely upon to prove its case at trial, or how to proceed with depositions of the borrowers in efficient way, for at least three reasons.

*First*, although the CFPB now lists 22 borrowers that it says it may rely upon to support its claims in its revised Rule 26(a) disclosures, more than 50 borrowers remain listed in the interrogatory responses as individuals with information about the allegations in the Complaint. Nothing would appear to prevent the CFPB from later deciding to rely upon any of these borrowers, necessitating the need to take discovery of them.

*Second*, the updated disclosures indicate that the CFPB finally spoke to some, but not all, of the borrowers in February 2018. It appears highly likely that the CFPB will continue to


**WilmerHale**

March 6, 2018
Page 5

remove borrowers from the list – and, if history is an indication, only after Defendants have spent significant time and effort researching their situation in preparation for their depositions.

*Third*, several of the named borrowers appear to complain only about alleged phone calls that predate the CFPB's authority. *See Consumer Fin. Prot. Bureau v. TCF Nat'l Bank*, No. 17-166 (D. Minn. Sept. 8, 2017) (dismissing claims prior to July 21, 2011, the effective date of the statute establishing the CFPB). The CFPB provided date ranges for only 14 of the 22 borrowers on the supplemented initial disclosures, and many of the descriptions are so vague that it is impossible to determine when the CFPB contends alleged phone calls occurred. Of the date ranges that are clear, several relate to alleged conduct occurring well before July 2011, with at least one dating all the way back to 2007.[2]

**Of the 10 borrowers whose depositions were noticed by Defendants, the CFPB has now removed *six* previously identified witnesses because they do not support the CFPB's claims.** And, it is not yet clear what the CFPB will do with respect to the other four borrowers as their depositions approach. That is an abysmal record for any plaintiff, let alone for a U.S. government agency that conducted a multi-year investigation. Over 50 borrowers remain on the CFPB's revised supplemental interrogatory responses for whom it appears that the CFPB similarly failed to conduct reasonable diligence. It is patently unfair for Defendants to be forced to engage in a game of whack-a-mole with respect to the CFPB's supposed witnesses. Defendants have already been prejudiced by the CFPB's repeated behavior of removing witnesses on the eve of depositions, or following depositions, after Defendants have spent significant time and expense preparing for and taking them. And, Defendants are not allocated enough depositions under the case management plan to test the current list of 50 borrowers, many, if not all, of whom – based on the 60 percent withdrawal rate to date – are unlikely to hold up after cursory cross-examination at deposition. Defendants respectfully request that the Court (i) order the CFPB to immediately confirm that it has a good faith basis for the factual statements made in its interrogatory responses based upon reasonable diligence, (ii) that the borrowers named in its supplemental disclosures are the witnesses on whom the CFPB has a good faith basis to assert it may rely at trial, and (iii) to increase Defendants' deposition limit to permit depositions of each of those potential witnesses.

---

[2] As discussed, in the depositions of the three borrowers, call recordings established that, contrary to the CFPB's allegations, borrowers were informed about income-driven repayment plans in multiple disclosures and on calls with Navient representatives. Call recordings often do not exist for calls that occurred prior to June 2011, and it is curious that after the three borrower depositions the CFPB now appears to principally rely on the memories of seven-year plus old calls for which recordings do not exist. In any event, the lack of recordings makes depositions to discover and test the memories of these borrowers all the more necessary.

WILMERHALE

March 6, 2018
Page 6

3.  *The CFPB has exceeded the number of document requests permitted by the Joint Case Management Plan.*

At the outset of this case, Defendants proposed that each Defendant be served up to 25 document requests. Given the multi-year investigation and large number of requests that had already been served prior to the initiation of this lawsuit, this seemed more than sufficient. The CFPB nevertheless demanded that each Defendant be served with up to 50 document requests. As a compromise, Defendants reluctantly agreed in the joint case management plan to the CFPB's demand for up to 50 document requests for Navient Solutions. *See* Doc. 39, Joint Case Management Plan, at ¶ 4.5.3.

On June 5, 2017, the CFPB served 26 numbered document requests on Navient Solutions, but they contained multiple subparts so that the actual number of requests exceeded 50. As just one example, Request 5 amounts to six requests, seeking three categories of information under subparts (a), (b), and (c) for "the communications described in subparts (a) and (b) of Request for Documents No. 4." For good reason, parties are not allowed to skirt limitations on the number of discovery requests by including multiple subparts – each subpart counts as a separate request. At the time, Defendants objected but did not withhold any documents on that basis.

Eight months later, on February 28 – with 10 weeks left in discovery – the CFPB served an additional 17 numbered (and exceedingly far-reaching and burdensome) requests on Navient Solutions. Each contains multiple subparts. For example, Request 34 asks Navient to turn over virtually the entire federal student loan servicing system, comprising millions of borrowers, to the CFPB, and totals 24 requests, seeking information about four categories of borrowers and at least six types of information: (1) borrower information, (2) loan-level data, (3) enrollment data, (4) credit reporting, (5) call recordings, and (6) correspondence. None of these new requests are for items that could not have been included in what was served back in June 2017 and several of which are not at issue in the present case.

On Defendants' count, the CFPB has served a total of over 120 requests for production to Navient Solutions; and that does not include the requests served on Navient Corporation or Pioneer, or the many document demands that were served in the multi-year investigation that preceded this lawsuit. The CFPB has not demonstrated good cause for its excessive delay in waiting eight months to serve additional demands for documents or why it should be allowed to serve requests more than twice the agreed upon limit or engage in what appears to be another wide-ranging fishing expedition on topics that are not raised in this matter. Defendants respectfully request that the Court enforce the limit set forth in the Joint Case Management Plan.

**WilmerHale**

March 6, 2018
Page 7

Sincerely,

Jonathan E. Paikin

cc ALL COUNSEL OF RECORD