**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Consumer Financial Protection Bureau, | |
| Plaintiff, | Case No. 3:17-CV-00101-RDM (Hon. Robert D. Mariani) |
| v. | |
| Navient Corporation, *et al.*, | Electronically Filed |
| Defendants. | |

**PLAINTIFF'S MOTION FOR AN
ENLARGEMENT OF TIME TO COMPLETE DISCOVERY,
OR, ALTERNATIVELY, FOR CONSOLIDATION**

Plaintiff Consumer Financial Protection Bureau ("Bureau") respectfully moves for an enlargement of time of six months in which to complete fact discovery in the above-captioned matter.

Fact discovery in this case is currently set to end on May 11, 2018. Unfortunately, the existing schedule is insufficient for the Bureau to obtain evidence necessary for the factfinder to make an informed decision on the merits of this important case. Discovery has not proceeded at the originally anticipated pace because, among other things, Defendants:

- Did not produce any documents until January 29, 2018;

- Initially produced the bulk of their documents in a prohibited format, which slowed the Bureau's review; and

- Refused to produce many categories of documents responsive to the
  Bureau's requests for production, including emails for the majority of the
  twelve employees of Defendants listed on their initial disclosures.

Alternatively, the Bureau moves to consolidate this case with the related case brought by the Pennsylvania Attorney General, *Commonwealth of Pennsylvania v. Navient Corp.*, No. 3:17-cv-1814 (M.D. Pa.) ("Commonwealth's Action"), and for adoption of the discovery schedule in that matter.

This is the first request from any party to extend a deadline in the case management order.

In support of this motion, the Bureau states as follows:

1.     The Bureau filed the Complaint in this case on January 18, 2017. Doc. 1. On May 12, 2017, the Court issued a case management order establishing a fact discovery deadline of May 11, 2018, followed by four months of expert discovery. Doc. 42.

2.     The Bureau is mindful that, in the May 12, 2017 scheduling conference, the Court indicated that, in light of the lengthy fact discovery period of one year, the Court "may not be as forthcoming" with extensions of the discovery schedule. Doc. 53, at 18.

3.     The Bureau respectfully submits that, though there was recognition that the case would be complex, the parties underestimated the demands of the

discovery in a case as complex as this. And where, as here, parties underestimate the time needed to conduct robust discovery, courts often enlarge the discovery period so that there can be a proper evidentiary record for the factfinder to decide the case. *See, e.g.*, *Tivoli LLC v. Targetti Sankey, s.p.a.*, 2016 WL 6138406, at *6 (C.D. Cal. Feb. 19, 2016) (granting six-month extension for discovery where Defendants began producing documents eight months before fact discovery cutoff, and noting that extension was warranted "given the complexity and scope of this case" and "Plaintiffs' need to review discovery responses that have recently been produced"); *Real Estate Indus. Solutions, LLC v. Concepts in Data Mgmt. U.S., Inc.*, 2012 WL 12903886, at *1-2 & n.2 (M.D. Fla. Feb. 16, 2012) (noting that a prior discovery extension was brought about by the fact that "production of documents in this case has taken far longer than what may usually be expected" because "the universe of potentially responsive documents is extraordinarily vast"); *Furukawa Elec. N. Am., Inc. v. Sterlite Optical Techs., Ltd.*, 2007 WL 9698028, at *5 n.5 (N.D. Ga. Feb. 23, 2007) (noting "numerous extensions of the discovery period requested by the parties," including "to allow [the plaintiff] time to conduct follow-up discovery based on late documents produced by [the defendant]"); *Kinetic Concepts, Inc. v. Convatec Inc.*, 2010 WL 1667285, at *9 (M.D.N.C. Apr. 23, 2010) (declining to reconsider discovery extension where plaintiffs "acted sufficiently diligently by participating in the exchange of a large

3

volume of documents," and "the large scale of the documentary material contributed to their failure to complete fact discovery").

4.      The timing of Defendants' production has left insufficient time for the Bureau to process, review, and meaningfully use the discovery. Though the Bureau served requests for production on Defendants shortly after the commencement of discovery on May 12, 2017, Defendants only began their production of documents recently. Specifically, the Bureau served requests for production to Navient Corporation and Pioneer Credit Recovery, Inc. on May 19, 2017, and to Navient Solutions, LLC on June 5, 2017. Defendants served their written responses on August 21, 2017.

5.      In early November 2017, Defendants informed the Bureau that they had identified approximately 40,000 pages of documents that were ready for production, but that they would not produce any of those documents until they obtained permission from the Department of Education to do so. A78.[1] The Bureau believed it would be more efficient to allow Defendants to seek the permission they claimed was necessary, rather than involve the Court, because Defendants did not appear to be resisting production of those documents.

---

[1] "A__" refers to a page of the appendix of supporting documentation filed concurrently with this motion.

6.      Defendants did not make their first production of responsive

documents until January 29, 2018, over eight months after the Bureau served the

requests for production.

7.      Apart from small productions of documents related to specific

consumers that Defendants have subpoenaed for depositions, Defendants have

made one additional production, on February 28, 2018. Setting aside the issues

related to documents that Defendants are withholding, Defendants have not

completed production of the documents that they have agreed to produce.[2]

8.      Defendants did not initially produce their documents, from either their

January 29, 2018 or February 28, 2018 productions, in compliance with the

Stipulation and Order Regarding Technical Specifications for Discovery

("Discovery Stipulation"). Specifically, Defendants produced emails and Word

documents in non-native format, in violation of a provision indicating that

"[d]ocuments created or stored electronically will be produced in their original

---

[2] The Bureau made its first production of documents on August 4, 2017,
when it produced three binders of documents at the Rule 30(b)(6) deposition of the
Bureau. The Bureau made additional productions on November 7, 2017; February
9, 2018; and March 30, 2018. As discussed below, the Bureau is working diligently
to complete its production. The document production on both sides has taken more
time than originally anticipated. However, the Bureau believes that when such a
circumstance arises, it is common for the parties work together to seek an
appropriate extension of the discovery period to allow the productions to be
completed, and to allow sufficient time afterwards for the productions to be
reviewed and for depositions based on those productions to be noticed.

electronic format." Doc. 66-2, at 5. The Bureau informed Defendants' counsel about this deficiency on February 16, 2018. A83. Approximately three weeks later, on March 6, Defendants' counsel indicated that they were refusing to produce emails and Word documents in native format, relying upon a portion of the Stipulation and Order applicable only to documents maintained in non-electronic format. A92. On March 9, the Bureau wrote to Defendants' counsel to encourage compliance with the Discovery Stipulation. A94. On March 15, nearly one month after the Bureau initially raised the issue, Defendants re-produced the documents at issue in native format, as required by the Stipulation and Order. A98.

9.     Reviewing documents in non-native format is more cumbersome and time-consuming than reviewing documents in native format. Non-native documents are imaged into TIFF format, and because an imaged TIFF document is larger in size than a native document, it takes substantially longer to load when being reviewed. In addition, non-native production impedes the Bureau's ability to use various analytic tools available in its document management platform to aid in the review; such analytical tools, for example, readily allow for locating documents

similar to a document of interest. Thus, Defendant's delay in complying with the

Discovery Stipulation slowed the Bureau's ability to review the documents.[3]

10.    These delayed and deficient document productions make it

impractical for the Bureau to review and analyze the documents, and then

incorporate the documents into depositions, all within the current fact discovery

period. Specifically, Defendants have now produced approximately 100,000

documents, and while the Bureau is reviewing those documents as expeditiously as

possible, it cannot feasibly complete its review, determine the depositions to be

conducted based on that review, and notice the depositions to be scheduled and

completed by May 11, 2018.

11.    In addition, as explained in the Bureau's February 27, 2018 letter to

the Court, Defendants have refused to search for and produce emails and many

other categories of documents in response to document requests that concern

---

[3] An additional problem that can be presented by non-native production
materialized. Specifically, on February 28, 2018, Defendants had to re-produce
1,800 Word documents because hidden information and track changes associated
with those documents were not initially produced. A87. This issue resulted in some
of the re-produced Word documents containing a different number of pages from
the original production, which posed particular challenges in replacing the
documents originally produced with the corrected versions in standard document
management software. The Bureau's e-discovery technicians spent considerable
time to correct the technical issues that were created by this problematic issue. Had
Defendants initially produced these documents in native format, as required by the
Discovery Stipulation, this issue would have been avoided.

central issues in the case. Doc. 74. The Bureau needs these documents to determine how to allocate its 20 depositions and to prepare for depositions based on those documents. Indeed, the Bureau expects that most of the depositions it will take will rely on documents that Defendants have yet to produce.

12.     On March 16, 2018, Defendants supplemented their initial disclosures to add six employees to the previous six employees that had been disclosed. *Compare* A3 *with* A101. Defendants have offered no explanation as to why they waited ten months from the beginning of discovery to add six of their own employees to their initial disclosures. And the emails that Defendants have refused to produce include emails from the majority of the twelve employees who are now on their initial disclosures. In addition, even now, Defendants continue to write that they "will supplement" their initial disclosures with the names of witnesses from the Department of Education at some later date. A102. Defendants have made their contractual relationship with the Department of Education the center of their defense. Once these witnesses are identified by Defendants, the Bureau will need additional time to depose them with respect to that defense, and, if necessary, conduct follow-up discovery in light of facts learned at their depositions.

13.     Regrettably, the progress of this case has also been hindered by discovery disputes. As explained in the Bureau's February 27, 2018 letter to the Court, Defendants, in their written responses to the Bureau's requests for

production, refused to state what categories of documents they were withholding based on the objections they asserted (in violation of FRCP 34(b)(2)(C)), and have refused – over the course of four teleconferences and eleven substantive letters – to search for or confirm they will search for numerous categories of documents. Doc. 74. And more recently, Defendants filed a letter with the Court raising issues about which Defendants never properly conferred with the Bureau. Doc. 79. These matters – which have diverted the Bureau's resources and delayed the production to the Bureau of important categories of documents – provide an additional ground for an extension. *See, e.g., Tracy v. Telemetrix, Inc.*, 2015 WL 7081901, at *4 (D. Neb. Nov. 13, 2015) (noting that discovery deadlines were stayed because of pending discovery disputes).

14.     The Bureau has devoted immense resources to this case and has made a good faith effort to meet the deadlines in the case management order. However, the Bureau did not anticipate, at the outset of this case, the breadth of Defendants' discovery requests. In the aggregate, Defendants' requests for production demand that the Bureau search for, among other things, all documents that relate to any of the allegations in the Complaint. A30-32; A52-54; A72-74. Though courts have

held that such requests are overly broad,[4] in the interest of cooperation, the Bureau

agreed to produce all documents relating to the practices alleged in the Complaint

(among other documents). The Bureau has been involved on student loan servicing

issues over the years, and thus there are myriad communications and other

documents from multiple divisions of the Bureau (including an Office for Students

that focuses on these issues) that could potentially relate to a practice alleged in the

Complaint. To identify and review these documents for responsiveness and

privilege, the enforcement team interviewed individuals throughout the Bureau to

determine those most likely to have relevant information, and ensured that all of

their documents were collected and uploaded into a document review platform.

The Bureau is reviewing 478,000 documents that were returned after applying

search terms to the universe of documents collected, and the Bureau has been

making rolling productions. The Bureau's efforts have been labor-intensive, with

all enforcement attorneys who have entered appearances in this matter helping in

---

[4] *See*, *e.g.*, *Carbajal v. Warner*, 2015 WL 4456190, at *4 (D. Colo. July 21, 2015) (prohibiting request seeking "[a]ny and all statements recorded or written in any manner by any party relating to the allegations contained in the Complaint and Answer" as "so broad that it contains an indeterminate number of requests"); *Gondola v. USMD PPM, LLC*, 223 F. Supp. 3d 575, 586 (N.D. Tex. 2016) (sustaining objections to requests seeking "[a]ll documents which evidence, describe, concern, or otherwise relate to the allegations in your Complaint" and "[a]ll documents not previously produced that support, contradict, or otherwise relate in any way to any of the allegations you have made in this lawsuit" as overly broad and akin to improper "blockbuster" interrogatories).

the effort, along with eight full-time contract attorneys and various other attorneys throughout the Bureau who are assisting as their workload permits. Based on Defendants' estimate that an attorney reviews approximately 240 documents per day,[5] the Bureau's review efforts will require approximately 2,000 days of attorney time. This does not include time to review responsive documents for privilege. A very large number of the Bureau's documents require privilege assessments because Bureau personnel frequently engage in pre-decisional deliberations over government decisions and policies, and many responsive communications reflect legal advice or work product of Bureau attorneys, making the Bureau's review highly time-consuming.

15.    In addition to document discovery, the Bureau has been working diligently on many other aspects of discovery since the Court entered the case management order. For example, at the outset of discovery, Defendants served a notice of Rule 30(b)(6) deposition that sought testimony on, among other things, every specific fact that the Bureau relied upon to support each allegation in its complaint. A14-16. Some courts have prohibited this type of broad discovery request – even when framed as an interrogatory, where the party is only tasked

---

[5] This estimate was shared to us by Defendants' counsel in a November 28, 2017 teleconference between the parties, and was based on Defendants' experience with their contract attorneys. The Bureau agrees with the estimate based on its own experience.

with providing a written response instead of 30(b)(6) testimony – as overly

burdensome and abusive.[6] In addition to that topic, the notice also sought

testimony regarding every communication that the Bureau had with any third party

relating to its investigation and the lawsuit, and every rule, regulation, or guidance

that the Bureau ever issued relating to the allegations in this case. In a spirit of

cooperation, the Bureau agreed to proceed with the deposition, despite the fact that

the topics were not tailored to specific allegations or claims. However, Bureau

attorneys and the witness spent hundreds of hours preparing for the deposition.[7]

---

[6] *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007) ("Contention interrogatories that systematically track all of the allegations in an opposing party's pleadings, and that ask for 'each and every fact' and application of law to fact that supports the party's allegations, are an abuse of the discovery process because they are overly broad and unduly burdensome."); *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 187-88 (D. Kan. 1997) (finding interrogatory that sought "each and every fact supporting all of the allegations in Counts I through IV of [the] Complaint" overly broad and unduly burdensome); *Megdal Assocs., LLC v. La-Z-Boy, Inc.*, 2016 WL 4503337, at *6 (S.D. Fla. Feb. 1, 2016) (prohibiting interrogatory seeking "the factual and legal bases for all allegations in Plaintiff's Complaint" because it was "not tailored to any specific claim or allegation" in the complaint).

[7] As one court has recognized, 30(b)(6) depositions seeking facts underlying the allegations in the complaint are highly burdensome because they require the attorneys who drafted the complaint to "collect and synthesize all of the information in their possession" relating to the complaint and "then impart that body of knowledge to [the witness]," who must "in turn, feed it back to defendants in response to their deposition questions." *United States v. District Council of New York City*, 1992 WL 208284, at *15 (S.D.N.Y. Aug. 18, 1992). The court concluded that "[h]owever liberal the discovery rules are, they could not reasonably be construed as requiring a party in a case such as this to make a Rule

The Bureau has also: (1) provided detailed responses to Defendants'
interrogatories; (2) identified and interviewed numerous consumers and former
employees of Defendants; (3) participated in seven depositions noticed by
Defendants, with Defendants having noticed eleven more depositions to take place
in the next three weeks; (4) served interrogatories on Navient Solutions; (5) served
a notice of Rule 30(b)(6) deposition on Navient Solutions; and (6) made progress
in expert discovery.

16.    For the reasons above, a discovery extension is necessary to develop a
complete record for any dispositive motions and a possible trial in this case. The
Bureau would be severely prejudiced without an extension, especially in light of
the timing of Defendants' production, their belated disclosure of witnesses, and
their refusal to search for and produce relevant emails and other categories of
documents (including for witnesses on the initial disclosures). The information
asymmetry found in enforcement actions such as this disproportionately favors
Defendants. Their conduct is at the heart of the case, and they are already in
possession of the vast majority of relevant information. The above-described
events have exacerbated this asymmetry, putting the Bureau at an unfair
disadvantage. This case involves important issues affecting potentially hundreds of

30(b)(6) deponent … the repository of all information known to counsel so that
she could then provide it to an adversary." *Id.*

thousands of consumers. The factfinder should have a full evidentiary record to resolve these issues.

17.     The Bureau recognizes that the requested extension, if granted, would require a corresponding extension of other deadlines that follow the end of fact discovery, including expert discovery. A proposed order setting forth a revised case management schedule is being filed concurrently with this motion. The Bureau will continue to work as diligently as possible to complete discovery within the requested extension period.

18.     As an alternative to extending the discovery deadlines in this matter and maintaining this matter separately from the Commonwealth's Action, the Bureau requests consolidation of this matter with the Commonwealth's Action for pretrial purposes. *See* FRCP 42(a) (indicating that the Court may consolidate matters that "involve a common question of law or fact"). In the Commonwealth's Action, eight of the nine claims in the Complaint share factual similarities with claims raised by the Bureau, and of those eight claims, four are brought under the same statute as the Bureau's similar claims. Thus, discovery in the two matters is likely to overlap substantially, and it appears that significant efficiencies would be realized by the Court and the parties by consolidating the two matters for pretrial purposes.

19.     Additionally, in the Commonwealth's Action, Defendants expressed concerns about litigating these two matters separately in the same Court, and accordingly, the Commonwealth noted that consolidation may be appropriate. *See* Commonwealth's Action, Doc. 25, at 9-10. Notably, one of the law firms representing Defendants in the Commonwealth's Action – Myers Brier & Kelly, LLP – is also representing Defendants in this matter. The other law firm representing Defendants in the Commonwealth's case – Kirkland & Ellis LLP – appears to be involved in document discovery in this case (*see* A80-81 (listing Kirkland in title of search term reports)), and has also appeared in three depositions that have occurred in this matter.

20.     The fact discovery cutoff in the Commonwealth's Action is March 26, 2019. If the matters are consolidated, the Bureau requests that the same discovery deadline apply to all parties, including the Bureau.

21.     Accordingly, the Bureau respectfully requests that the Court grant this motion and enter the accompanying order enlarging the time to complete discovery. Alternatively, the Bureau requests consolidation of this matter with the Commonwealth's Action for pretrial purposes, and adoption of the pretrial deadlines in that action.

Dated: April 4, 2018                  Respectfully submitted,

Kristen Donoghue
*Enforcement Director*

David Rubenstein
*Deputy Enforcement Director*

Thomas Kim
*Assistant Deputy Enforcement Director*

   /s/ Nicholas Jabbour
Nicholas Jabbour, DC 500626
(Nicholas.Jabbour@cfpb.gov; 202-435-7508)
Ebony Sunala Johnson, VA 76890
(Ebony.Johnson@cfpb.gov; 202-435-7245)
Nicholas Lee, DC 1004186
(Nicholas.Lee@cfpb.gov; 202-435-7059)
Manuel Arreaza, DC 1015283
(Manuel.Arreaza@cfpb.gov; 202-435-7850)
Andrea Matthews, MA 694538
(Andrea.Matthews@cfpb.gov; 202-435-7591)
David Dudley, DC 474120
(David.Dudley@cfpb.gov; 202-435-9284)
*Enforcement Attorneys*

1700 G Street NW
Washington, DC 20552
Fax: 202-435-9346

*Attorneys for Plaintiff*
*Consumer Financial Protection Bureau*

## <u>CERTIFICATE OF CONCURRENCE</u>

Pursuant to Local Rule 7.1, I certify that, on April 2, 2018, I conferred with

counsel for Defendants regarding this motion. I was informed, on April 3, 2018,

that Defendants do not concur in the relief requested by this motion.


 /s/ Nicholas Jabbour_____
Nicholas Jabbour, DC 500626
Nicholas.Jabbour@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-7508
Fax: 202-435-9346

*Attorney for Plaintiff*
*Consumer Financial Protection Bureau*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on April 4, 2018, I filed the foregoing document using the

Court's ECF system, which will send notification of such filing to counsel for

Defendants.

 /s/ Nicholas Jabbour
Nicholas Jabbour, DC 500626
Nicholas.Jabbour@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-7508
Fax: 202-435-9346

*Attorney for Plaintiff*
*Consumer Financial Protection Bureau*