## APPENDIX TO BUREAU'S APRIL 9, 2018 LETTER

| Exhibit | Date of exhibit | Description of exhibit | Beginning page number |
|---------|-----------------|------------------------|-----------------------|
| A | May 10, 2017 | Defendants' Initial Disclosures | A1 |
| B | May 10, 2017 | Bureau's Initial Disclosures | A7 |
| C | June 5, 2017 | Defendant Navient Corporation's First Set of Interrogatories and Requests for Production to the Bureau | A27 |
| D | June 5, 2017 | Defendant Navient Solutions, LLCs First Set of Interrogatories and Requests for Production to the Bureau | A44 |
| E | June 5, 2017 | Defendant Pioneer Credit Recovery, Inc.'s First Set of Interrogatories and Requests for Production to the Bureau | A66 |
| F | August 21, 2017 | Defendant Navient Solutions, LLC's Objections and Responses to Plaintiff's First Set of Requests for Production | A86 |
| G | September 18, 2017 | Letter from Bureau's counsel to Defendants' counsel | A134 |
| H | October 20, 2017 | Bureau's First Supplement to Its Initial Disclosures | A159 |
| I | February 6, 2018 | Email chain between Bureau's counsel and Defendants' counsel | A172 |
| J | February 27, 2018 | Bureau's Second Supplemental and Amended Initial Disclosures | A177 |
| K | March 6, 2018 | Email chain between Bureau's counsel and Defendants' counsel | A192 |

| L | March 8, 2018 | Email chain between Bureau's counsel and Defendants' counsel | A196 |
|---|---|---|---|
| M | March 16, 2018 | Defendants' First Supplemental and Amended Initial Disclosures | A202 |
| N | March 30, 2018 | Defendant Navient Solutions, LLC's Objections and Responses to Plaintiff's Second Set of Requests for Production | A209 |

# Exhibit A

**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Consumer Financial Protection Bureau, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:CV-17-00101 |
| | ) | (Hon. Robert D. Mariani) |
| Navient Corporation, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## <u>DEFENDANTS' INITIAL DISCLOSURES</u>

Pursuant to Federal Rule of Civil Procedure 26(a)(1) and the Court's Case
Management Conference Order, dated March 16, 2017, Defendants Navient
Corporation, Navient Solutions, LLC, and Pioneer Credit Recovery, Inc. make the
following disclosures.  Defendants make these disclosures based on the
information reasonably available to them as of May 10, 2017.  Defendants reserve
the right to clarify, alter, amend, modify, or supplement these disclosures if
additional information becomes available.  Defendants also do not waive their
rights to object to the use of the information or to the submission of any improper
discovery requests.

## I. INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION THAT DEFENDANTS MAY USE TO SUPPORT THEIR CLAIMS OR DEFENSES (FEDERAL RULE 26(a)(1)(A)(i))

| Name | Subjects |
|------|----------|
| Roger Miller* | Information technology related to servicing loans, including payment processing and borrower communications |
| Lisa Stashik* | Oversight of customer experience, customer complaints, and quality assurance, including oversight of the servicing call center and other borrower communications |
| John Zemetro* | Servicing operations, including payment and forms processing |
| Patricia Peterson* | Operational reporting and training related to collections |
| Kevin Woods | Department of Education contract negotiation, requirements, and change requests |
| Jack Frazier | Communications related to the repayment of defaulted federal student loans, including loan rehabilitation |

The individuals with an asterisk after their name have already been deposed by the Consumer Financial Protection Bureau ("CFPB") during its investigation preceding this lawsuit.  All of the individuals identified above may be contacted through undersigned counsel.  In addition to the individuals identified above, Defendants believe there are individuals at the United States Department of Education that have discoverable information that Defendants will use to support their claims or defenses.  Defendants will supplement these disclosures once the individuals have been identified.

2

## II. DESCRIPTION BY CATEGORY AND LOCATION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND TANGIBLE THINGS THAT DEFENDANTS MAY USE TO SUPPORT THEIR CLAIMS OR DEFENSES (FEDERAL RULE 26(a)(1)(A)(ii))

As a general matter, Defendants have already produced over 450,000 pages of documents to the CFPB as part of its investigation preceding this lawsuit. Thus, the vast majority of the documents in the categories below are already in the possession of the CFPB. They are also located in Defendants' offices. Defendants also believe that documents in the categories below are in the possession of the United States Department of Education. Documents prepared by or for counsel, and other documents subject to the protection of a privilege or the attorney work product doctrine, are not included. The following categories of documents may be used by Defendants to support their claims and defenses:

- Defendants' contractual relationship with the Department of Education, including communications about change requests and associated costs.

- Defendants' compliance with regulations governing student loan servicing and collection, and borrower privacy.

- Data, policies, procedures, and borrower communications related to forbearance and IDR repayment plans, including the requirements for renewing those plans.

- Expenses incurred in loan servicing and collections.

- Training materials and guidance provided to employees charged with servicing and collections.

- Borrower consent to receive electronic communications from Navient Solutions, and communications sent pursuant to that consent.

- Data, policies, procedures, and communications with borrowers related to payment processing.
- Policies, procedures, and communications with borrowers related to borrower complaints about payment processing.
- Navient Solutions' disclosure of borrower "total and permanent disability" loan discharges to consumer credit reporting agencies.
- Data, policies, procedures, and communications with borrowers regarding cosigner release requirements.
- Data, policies, procedures, and borrower communications related to the federal loan rehabilitation program.
- Defendants' corporate structure.

## III.    COMPUTATION OF DAMAGES (FEDERAL RULE 26(a)(1)(A)(iii))

Defendants have not asserted a claim for damages.  Defendants will supplement this response in the event they file a counterclaim or third party claim.

## IV.    INSURANCE AGREEMENTS (FEDERAL RULE 26(a)(1)(A)(iv))

Defendants are providing for inspection and copying as under Rule 34 the primary insurance agreement that may be available to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

4

Dated:  May 10, 2017          Respectfully submitted,

                              /s/ Matthew T. Martens
                              Matthew T. Martens (DC 1019099) (*pro hac vice*)
                              Jonathan E. Paikin (DC 466445) (*pro hac vice*)
                              Daniel P. Kearney (DC 977148) (*pro hac vice*)
                              Karin Dryhurst (DC 1034290) (*pro hac vice*)
                              Wilmer Cutler Pickering
                                Hale and Dorr LLP
                              1875 Pennsylvania Avenue, NW
                              Washington, DC 20006
                              matthew.martens@wilmerhale.com
                              jonathan.paikin@wilmerhale.com
                              daniel.kearney@wilmerhale.com
                              karin.dryhurst@wilmerhale.com
                              Tel: 202-663-6000
                              Fax: 202-663-6363

                              Daniel T. Brier (PA 52348)
                              Donna A. Walsh (PA 74833)
                              Myers Brier & Kelly, LLP
                              425 Spruce Street, Suite 200
                              Scranton, PA 18503
                              dbrier@mbklaw.com
                              dwalsh@mbklaw.com
                              Tel: 570-342-6100
                              Fax: 570-342-6147

                              *Counsel for Navient Corporation, Navient
                              Solutions, LLC, and Pioneer Credit Recovery, Inc.*

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Consumer Financial Protection Bureau, | |
| Plaintiff, | Case No. 3:17-CV-00101-RDM |
| v. | (Hon. Robert D. Mariani) |
| Navient Corporation, *et al.*, | |
| Defendants. | |

**PLAINTIFF'S INITIAL DISCLOSURES
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1)**

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Plaintiff Consumer Financial Protection Bureau ("Bureau") hereby makes the following initial disclosures to Defendants Navient Corporation, Navient Solutions, LLC ("Navient Solutions"), and Pioneer Credit Recovery, Inc. ("Pioneer"). The Bureau expressly reserves the right to clarify, revise, or correct any of these disclosures at any time. The Bureau will supplement these disclosures as necessary, pursuant to Federal Rule of Civil Procedure 26(e). No information contained in these disclosures should be construed as a waiver of any applicable privilege, including, but not limited to, the attorney work product privilege, the attorney-client privilege, or the deliberative process privilege.

A8

## I.   Rule 26(a)(1)(A)(i): "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment"

The lists below indicate the individuals who are likely to have discoverable information that the Bureau may use to support its claims, as well as the subject(s) of the discoverable information they are likely to have. Due to the ongoing nature of Bureau's investigatory work and the lack of any discovery to date, the lists should not be read to limit the subject matter(s) about which particular individuals may have discoverable information.

These disclosures do not include the names of any potential experts that may be retained or consulted by the Bureau. The Bureau will produce information relating to experts as may be appropriate under Federal Rule of Civil Procedure 26(a)(2) at the times provided by that Rule or any supervening order of the Court.

### A.   Defendants and their Employees, Independent Contractors, and Agents

Defendants and their employees, independent contractors, and agents are likely to have discoverable information that the Bureau may use

2

to support its claims, including but not limited to information about Defendants' business operations, policies, procedures, practices, organization, finances, interactions with consumers, and injuries to consumers, with respect to Defendants': (1) communications with consumers regarding forbearance and income-driven repayment plans; (2) communications with consumers regarding renewal of income-driven repayment plans; (3) furnishing of information to consumer reporting agencies relating to loans discharged due to the consumer's total and permanent disability; (4) representations to consumers relating to eligibility criteria for cosigner release for private student loans; (5) repeated errors in processing payments for consumers and cosigners; (6) representations to consumers regarding the impact of completion of the federal loan rehabilitation program on consumers' credit reports; and (7) representations to consumers regarding the impact of completion of the federal loan rehabilitation program on forgiveness of collection fees.

The names of these individuals and their contact information are within the custody and control of Defendants. The individuals whom the Bureau has identified at this time are listed below. During discovery, the Bureau may identify additional individuals who are likely to have

3

discoverable information that the Bureau may use to support its claims.

- John Zemetro, Senior Director, Back Office Servicing (employee of Navient Solutions and/or Navient Corporation)

- Patricia ("Patty") Peterson, Vice-President, Operational Support Services (employee of Navient Solutions, Pioneer, and/or Navient Corporation)

- Lisa Stashik, Vice-President, Office of the Customer Advocate (employee of Navient Solutions and/or Navient Corporation)

- Judy McNutt, Director, Customer Correspondence (employee of Navient Solutions and/or Navient Corporation)

- Debra Walsh, Senior Director, Loan Operations Training (employee of Navient Solutions and/or Navient Corporation)

- Roger Miller, Vice-President, Application Development (employee of Navient Solutions and/or Navient Corporation)

- John Kane, Chief Operating Officer (employee of Navient Solutions and/or Navient Corporation)

- Joseph Sbriglia, Senior Vice-President, Private Credit Collection (employee of Navient Solutions and/or Navient Corporation)

- Troy Standish, Senior Vice-President, Federal Default Prevention, Customer Resolution Services (employee of Navient Solutions and/or Navient Corporation)

- Linda Gramlich, Senior Director, Office of the Customer Advocate (employee of Navient Solutions and/or Navient Corporation)

- Patrick Theurer, Senior Director, Operational Analytics (employee of Navient Solutions and/or Navient Corporation)

- Jeanne Wisnewski, Director, Complaint Tracking & Reporting (employee of Navient Solutions and/or Navient Corporation)

4

- Nancy Sabulski, Manager, Office of the Customer Advocate (employee of Navient Solutions and/or Navient Corporation)

- Angela Kamionka, Senior Director, Office of Customer Advocate (employee of Navient Solutions and/or Navient Corporation)

- Temeka Easter, Director, Social Media (employee of Navient Solutions and/or Navient Corporation)

- Jack E. Frazier, Jr., Vice President, Operations (employee of Pioneer and/or Navient Corporation)

- Jeffery Mersmann, Vice President, Operations (employee of Pioneer and/or Navient Corporation)

- Kim Merrill, Vice President (employee of Pioneer and/or Navient Corporation)

## B.    Defendants' Former Employees

Defendants' former employees are likely to have discoverable information that the Bureau may use to support its claims, including but not limited to information about Defendants' business operations, policies, procedures, practices, organization, finances, interactions with consumers, and injuries to consumers, with respect to Defendants': (1) communications with consumers regarding forbearance and income-driven repayment plans; (2) communications with consumers regarding renewal of income-driven repayment plans; (3) furnishing of information to consumer reporting agencies relating to loans discharged due to the consumer's total

5

A12

and permanent disability; (4) representations to consumers relating to eligibility criteria for cosigner release for private student loans; (5) repeated errors in processing payments for consumers and cosigners; (6) representations to consumers regarding the impact of completion of the federal loan rehabilitation program on consumers' credit reports; and (7) representations to consumers regarding the impact of completion of the federal loan rehabilitation program on forgiveness of collection fees. One individual whom the Bureau has identified at this time is listed below. During discovery, the Bureau may identify additional individuals who are likely to have discoverable information that the Bureau may use to support its claims.

- John Sullivan (current employee of Sallie Mae Bank, and formerly employed by the predecessor entity to Navient Solutions). Contact information not known.

## C.    Bureau Employee

Theresa Ridder, a Bureau investigator, is likely to have discoverable information that the Bureau may use to support its claims. The subject matter about which Ms. Ridder is likely to have discoverable information is Defendants' contacts with certain consumers. Ms. Ridder can be contacted through Nicholas Jabbour (202-435-7508), Brandis Anderson (202-435-

6

7548), or Ebony Sunala Johnson (202-435-7245), all of whom are located at 1625 I Street NW, Washington, DC 20006.

### D.   Federal and State Governmental Agencies

Certain federal and state governmental agencies, and their employees and agents, are likely to have discoverable information that the Bureau may use to support its claims, including but not limited to information regarding Defendants' business operations, policies, procedures, practices, organization, finances, interactions with consumers, injuries to consumers, actions taken by the agency, and communications with Defendants and their employees and agents, with respect to Defendants': (1) communications with consumers regarding forbearance and income-driven repayment plans; (2) communications with consumers regarding renewal of income-driven repayment plans; (3) furnishing of information to consumer reporting agencies relating to loans discharged due to the consumer's total and permanent disability; (4) representations to consumers relating to eligibility criteria for cosigner release for private student loans; (5) repeated errors in processing payments for consumers and cosigners; (6) representations to consumers regarding the impact of completion of the federal loan rehabilitation program on consumers' credit

7

reports; and (7) representations to consumers regarding the impact of completion of the federal loan rehabilitation program on forgiveness of collection fees. At this time, the Bureau believes that the agencies listed below may possess discoverable information that the Bureau may use to support its claims. During discovery, the Bureau may identify additional agencies that are likely to have discoverable information that the Bureau may use to support its claims, as well as the names of specific individuals within any of the identified agencies who are likely to have discoverable information that the Bureau may use to support its claims.

- Office of the Illinois Attorney General, Consumer Fraud Bureau, 100 West Randolph Street, 12th Floor, Chicago, IL 60601, (312) 814-3000.

- Office of the Washington Attorney General, Consumer Protection Division, 800 Fifth Ave., Suite 2000, Seattle, WA 98104, (360) 753-6200.

- U.S. Department of Education, 400 Maryland Avenue, SW, Washington, DC 20202, (800) 872-5327.

- Federal Trade Commission, 600 Pennsylvania Avenue, NW, Washington, DC 20580, (202) 326-2222.

## E.    Affected Consumers

Certain consumers whose student loans were serviced by Defendants or assigned for collection by Defendants are likely to have discoverable

8

information that the Bureau may use to support its claims, including but not limited to information regarding Defendants' business practices and activities, their interaction with consumers, and the resulting injuries, with respect to Defendants': (1) communications with such consumers regarding forbearance and income-driven repayment plans; (2) communications with such consumers regarding renewal of income-driven repayment plans; (3) furnishing of information to consumer reporting agencies relating to loans discharged due to the total and permanent disability of such consumers; (4) representations to such consumers relating to eligibility criteria for cosigner release for private student loans; (5) repeated errors in processing payments for such consumers; (6) representations to such consumers regarding the impact of completion of the federal loan rehabilitation program on consumers' credit reports; and (7) representations to such consumers regarding the impact of completion of the federal loan rehabilitation program on forgiveness of collection fees. The Bureau has received some information from Defendants about consumers with complaints against Defendants, and the Bureau has also received thousands of complaints from consumers about Defendants. During discovery, the Bureau will seek to identify specific consumers who are likely to have

9

discoverable information that the Bureau may use to support its claims.

## II. Rule 26(a)(1)(A)(ii): "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment"

The Bureau may use the following categories of documents,

electronically stored information, and tangible things in its possession,

custody, or control to support its claims:

- Documents (including electronically stored information) and responses to interrogatories produced to the Bureau by Navient Solutions (or its predecessor) and Sallie Mae Bank during the Bureau's investigation of Navient Solutions (or its predecessor).

- Transcripts of investigational hearings conducted by the Bureau during the Bureau's investigation of Navient Solutions (or its predecessor).

- Documents (including electronically stored information) and responses to interrogatories produced to the Bureau by Pioneer during the Bureau's investigation of Pioneer.

- Documents (including electronically stored information) produced to the Bureau by Pioneer during the Bureau's supervisory exam of Pioneer.

- Documents (including electronically stored information) concerning consumer complaints about Defendants relating to the practices alleged in the Complaint.

All of the above categories of documents are located at the Bureau's offices

10

A17

at 1625 I Street NW, Washington, DC 20006, and at 1275 First St NE,

Washington, DC 20002.

## III.   Rule 26(a)(1)(A)(iii): "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered"

Pursuant to the Consumer Financial Protection Act, the Bureau may

seek any appropriate monetary relief for Defendants' violations of federal

consumer financial laws, including but not limited to restitution,

disgorgement, compensation for unjust enrichment, and other monetary

relief. 12 U.S.C. § 5565. The Bureau expects that the full extent of such relief

will be revealed through discovery, as most or all of the information

necessary to calculate the damages resulting from each of Defendants'

violations is in the possession, custody, or control of Defendants.

Nonetheless, at this time, the Bureau can provide the following information

concerning the nature and extent of injuries suffered by consumers:

- Counts I and II: With respect to Defendants' forbearance steering

  practices described in the Bureau's Complaint, the Bureau is

  entitled to pursue restitution based on the harms that consumers

11

A18

incurred as a result of being steered into forbearance. Components of this restitution include at least the following: (1) the additional interest that the affected consumers were charged or can expect to be charged as a result of any capitalization events associated with the forbearance(s); (2) compensation for delayed progress toward the loan forgiveness associated with income-driven repayment; and (3) for consumers with subsidized federal loans, compensation for any loss of the interest subsidy from the federal government. The Bureau has not yet obtained data sufficient to reasonably approximate the number of consumers impacted by Defendants' violation related to forbearance steering, nor the amount of harm that those consumers suffered. Documents NSI-036-1, NSI-038-1 and NSI-039-1 provide some information about some consumers who likely were impacted by Defendants' steering practices. However, that data only covers some categories of consumers that incurred harm from Defendants' practices, is for a limited time period, and is not at the transactional level, and therefore an appropriate computation of restitution cannot be performed at this time.

12

- Counts III and IV: With respect to Defendants' practices related to renewal of income-driven repayment plans described in the Bureau's Complaint, the Bureau is entitled to pursue restitution based on the harms that consumers incurred as a result of not timely renewing their enrollment due to those practices. Components of this restitution include at least the following: (1) the additional interest that the affected consumers were charged or can expect to be charged as a result of any capitalization events triggered by the failure to timely renew enrollment in income-driven repayment; (2) compensation for delayed progress toward the loan forgiveness associated with income-driven repayment; and (3) for consumers with subsidized federal loans, compensation for any loss of the interest subsidy from the federal government. The Bureau has not yet obtained data sufficient to reasonably approximate the number of consumers impacted by Defendants' practices related to renewal in income-driven repayment plans, nor the amount of harm that those consumers suffered. Document NSI-040-1 provides some information about some consumers who were likely impacted by Defendants' practices related to renewal in

13

income-driven repayment plans. However, that data only covers certain categories of consumers that incurred harm from Defendants' practices, is for a limited time period, and is not at the transactional level, and therefore an appropriate computation of restitution cannot be performed at this time.

- Count V: The Bureau intends to seek restitution for consumers for whom cosigner release was delayed or denied as a result of Defendants' imposition of a requirement concerning consecutive, on-time payments that was different from the requirement communicated to consumers. The Bureau has not yet obtained data sufficient to reasonably approximate the number of consumers impacted by Defendants' alleged violation related to cosigner release, nor the amount of harm that those consumers suffered.

- Count VI: The Bureau anticipates that, for consumers impacted by Defendants' repeated payment processing errors, the Bureau will seek restitution to compensate consumers for late fees, interest accrual, negative credit reporting, and other negative consequences that occurred as a result of the errors. The Bureau

14

has not yet obtained data sufficient to reasonably approximate the number of consumers impacted by Defendants' repeated payment processing errors, nor the amount of harm that those consumers suffered.

- Counts VII through X: A January 23, 2015 letter from counsel for Pioneer to counsel for the Bureau provides data about the number of consumers who may have been impacted by Pioneer's misrepresentations alleged by the Bureau. Specifically, in response to interrogatory 2b, Pioneer disclosed that, from 2012 to 2014, a total of 209,519 consumers agreed to begin a rehabilitation program through Pioneer. The Bureau intends to seek restitution that includes a refund of collection fees paid by affected consumers during the rehabilitation program that were not forgiven, as well as compensation for not receiving the credit reporting benefits promised by Pioneer. The Bureau does not have sufficient information at this time to determine if there are any affected consumers before 2012 or after 2014, or to reasonably approximate the harm resulting from Pioneer's alleged misrepresentations.

15

A22

- Count XI: A July 24, 2015 letter from counsel for Navient
  Solutions to counsel for the Bureau indicated that there were
  "approximately 19,000 borrowers" who "applied for TPD
  discharge" and for whom Navient Solutions "furnished to
  consumer reporting agencies Special Comment Code 'AL—
  Assigned to Government' following approval for TPD discharge."
  The Bureau does not have sufficient information at this time to
  determine if there are any affected consumers other than these
  "approximately 19,000 borrowers," or to reasonably approximate
  the harm resulting from Defendants' violation of Regulation V.

The documents referenced above were produced by Defendants and should
be in Defendants' possession, but the Bureau will make them available for
copying and inspection upon a request from Defendants.

The Bureau also intends to seek a civil money penalty which, though
not a category of damages, is an important part of an appropriate remedy in
this case. The Consumer Financial Protection Act authorizes civil money
penalties of up to $5,000 per day for any violation of Federal consumer
financial law; up to $25,000 per day for any reckless violation of Federal
consumer financial law; and up to $1,000,000 per day for every knowing

16

violation of Federal consumer financial law. 12 U.S.C. § 5565(c). Pursuant to the Inflation Adjustment Act, as amended by the Debt Collection Improvement Act of 1996 and further amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 28 U.S.C. § 2461 note, these amounts have been adjusted for inflation to $5,526 per day for any violation of Federal consumer financial law, $27,631 per day for any reckless violation of Federal consumer financial law, and $1,105,241 per day for any knowing violation of Federal consumer financial law. 12 C.F.R. § 1083.1. The Bureau expects that information necessary to calculate the amount of the civil money penalty, including the period of time during which the violations occurred and Defendants' degree of scienter with respect to the violations, will be revealed through discovery.

Finally, the Bureau intends to seek costs and pre-judgment interest.

All of the relief described above is in addition to the injunctive relief the Bureau intends to seek.

**IV. Rule 26(a)(1)(A)(iv): "for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment"**

This category is inapplicable to the Bureau in this case.

17

Dated: May 10, 2017

Anthony Alexis
*Enforcement Director*

David Rubenstein
*Deputy Enforcement Director*

Thomas Kim
*Assistant Deputy Enforcement Director*

  /s/ Nicholas Jabbour
Nicholas Jabbour, DC 500626
(Email: Nicholas.Jabbour@cfpb.gov)
(Phone: 202-435-7508)
Brandis Anderson, CA 261325
(Email: Brandis.Anderson@cfpb.gov)
(Phone: 202-435-7548)
Ebony Sunala Johnson, VA 76890
(Email: Ebony.Johnson@cfpb.gov)
(Phone: 202-435-7245)
*Enforcement Attorneys*

1700 G Street NW
Washington, DC 20552
Fax: 202-435-9346

*Attorneys for Plaintiff*
*Consumer Financial Protection Bureau*

18

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 10, 2017, I served the foregoing document by

email to the following counsel for Defendants:

Jonathan Paikin: jonathan.paikin@wilmerhale.com
Daniel P. Kearney, Jr.: Daniel.kearney@wilmerhale.com
Matthew T. Martens: matthew.martens@wilmerhale.com
Karin Dryhurst: Karin.dryhurst@wilmerhale.com
Gideon Hart: Gideon.hart@wilmerhale.com
Donna A. Walsh: dwalsh@mbklaw.com
Daniel T. Brier: dbrier@mbklaw.com

Mr. Kearney, on behalf of Defendants, previously consented to electronic

service.

  /s/ Nicholas Jabbour
Nicholas Jabbour, DC 500626
Nicholas.Jabbour@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-7508
Fax: 202-435-9346

*Attorney for Plaintiff*
*Consumer Financial Protection Bureau*

# Exhibit C

THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Consumer Financial Protection Bureau,    )
    )
             *Plaintiff*,    )
    )
       v.    )    Civil Action No. 3:CV-17-00101
    )    (Hon. Robert D. Mariani)
Navient Corporation, *et al.,*    )
    )
          *Defendants*.    )

## DEFENDANT NAVIENT CORPORATION'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO THE CONSUMER FINANCIAL PROTECTION BUREAU

Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure ("FRCP"), Defendant Navient Corporation ("Navient Corp."), by and through its undersigned attorneys, requests that Plaintiff the Consumer Financial Protection Bureau ("CFPB") respond to its First Set of Interrogatories and Requests for Production of Documents ("Document Requests") within thirty (30) days of service. The CFPB should produce responsive documents in its possession, custody, or control via Fedex or UPS to the following address: 1875 Pennsylvania Avenue NW, Washington, DC 20006. Each of the following Interrogatories and Document Requests is to be read in accordance with the Definitions and Instructions that follow. These Interrogatories and Document Requests are

1

provided without prejudice to, or waiver of, Navient Corp.'s right to conduct further discovery at a later date.

## **DEFINITIONS**

1.    The term "Action" refers to the above-captioned action.

2.    The term "Complaint" refers to the complaint filed on January 18, 2017 by the CFPB in this Action (Docket No. 17-00101).

3.    The term "Servicing Practices" refers to student loan servicing policies and practices, including Communications regarding repayment options and forbearance, Communications regarding renewal of income-driven repayment options, Communications regarding eligibility for cosigner release, payment processing, and credit reporting for disabled Borrowers.

4.    The terms "and" and "or" have both conjunctive and disjunctive meanings.  All use of language in the following Interrogatories that appears in the conjunctive form specifically includes the disjunctive form, and vice versa.  All words that are used in their singular form include the plural form, and vice versa. The past tense shall be construed to include the present tense, and vice versa.

5.    The term "all" means all, each, any, and every.

6.    The term "Borrower" means any individual borrower of student loans.

7.    The term "CFPB" means the Consumer Financial Protection Bureau, including its officers and employees.

8.    The term "identify" means (a) as applied to a natural Person, to state the Person's full name, title, present or last known address and telephone number, e-mail address, and any Documents relating to that individual; (b) as applied to a business entity, to state the entity's full name and present or last known business address and telephone number; (c) as applied to a Document or written Communication, to state, to the extent known, the type of Document, the general subject matter, the date of the Document, the author(s), addressee(s) and recipient(s), the present location and custodian of the Document, and any Bates number or other identifier; and (d) as applied to an oral Communication, to state, to the extent known, the names and present or last known addresses and telephone numbers of the Persons involved, the dates on which such oral Communication occurred, the location where the Communication happened or the locations at which the Persons involved were when the Communication happened, and a complete description of the topic or subject matter of such oral Communication.

9.    The use of the term "describe" includes a request for a complete description and explanation of the facts, circumstances, analysis, opinion and other information relating to (as that phrase is defined below) the subject matter of a

3

specific interrogatory, and a request for the identification of any Documents used to formulate that description and explanation.

10.   The term "including" means including without limitation.

11.   The term "Communication" means the transmission, sending, and/or receipt of information of any kind by and/or through any means, including, but not limited to, speech, writings, language, computer electronics of any kind, magnetic tape, video tape, photographs, graphs, symbols, signs, magnetic disks, sound, radio and/or video signal, telephone, teletype, telecommunication, telegram, microfilm, microfiche, and/or other media of any kind. Communications are a subset of Documents, and accordingly a request for Documents shall be deemed to encompass Communications.

12.   The term "Document" is defined to be synonymous in meaning and equal in scope to both the usage of the term "documents or electronically stored information" in FRCP 34(a)(1)(A) and "tangible things" in FRCP 34(a)(1)(B).  A draft or non-identical copy is a separate Document within the meaning of this term.

13.   The term "each" shall be construed to include "every," and "every" shall be construed to include "each."

4

14.   The term "Person" means any natural person or any business, legal or governmental entity or association.

15.   The term "relating to" means discussing, identifying, describing, reflecting, containing, analyzing, studying, reporting, commenting, evidencing, constituting, comprising, showing, setting forth, considering, recommending, concerning, explaining, referring to, or pertaining to, in whole or in part.

16.   The term "Navient Corporation" means Navient Corporation, as well as its predecessors in interest and successors in interest.

17.   The term "Navient Solutions" means Navient Solutions, LLC, as well as its predecessors in interest and successors in interest.

18.   The term "Third-Party Servicer" means any student loan servicer other than Navient Solutions.

19.   The term "Pioneer" means Pioneer Credit Recovery, Inc., as well as its predecessors in interest and successors in interest.

20.   The term "Federal Loan Rehabilitation Program" means any program in which a Borrower with federal student loans can bring those loans out of default status by making a series of on-time payments, including the programs described at 34 C.F.R. 674.39 and 34 C.F.R. 682.405.

5

21.   The term "Student Debt Collection Agency" refers to any entity that recovers, on behalf of the owners of federal student loans, unpaid debt from Borrowers with delinquent or defaulted student loans.

22.   The term "Third-Party Student Debt Collection Agency" means any student debt collection agency other than Pioneer.

23.   The term "U.S. Department of Education" means the U.S. Department of Education and any offices, agencies, divisions, branches, or components within the U.S. Department of Education (including the Office of Federal Student Aid and the Office of the General Counsel).

24.   The term "Contract" means any contract between the U.S. Department of Education, on the one hand, and either Navient Corporation, Navient Solutions or Pioneer, on the other hand.

25.   The terms "You" and "Your" refer to the CFPB.

26.   The use of any Definition for the purposes of these Interrogatories and Document Requests shall not be deemed to constitute an agreement or acknowledgement on the part of Defendants that such definition is accurate, meaningful, or appropriate for any other purpose in this action.

# NAVIENT CORPORATION'S FIRST SET OF INTERROGATORIES

## INSTRUCTIONS

1.     Unless otherwise specified, the time period covered by these Interrogatories shall be from January 1, 2010 to the present.

2.     If You object to any Interrogatory, state with specificity the grounds for such objection and the Interrogatory or Interrogatories to which each objection applies.

3.     The responses, under oath, to each Interrogatory shall include such information as is within Your custody, possession, or control, including, without limitation, information in the possession, custody, or control of any of Your employees, agents, attorneys, investigators, experts, or other Persons retained by You or acting or purporting to act on Your behalf.

4.     If You cannot answer an Interrogatory after exercising due diligence to secure the information to do so: (i) answer to the extent possible; (ii) state the basis for Your inability to answer the remainder; (iii) state whatever information or knowledge You have concerning the unanswered portion; and (iv) specify the type of information that You contend is not available.

5.     If You decline to answer all or part of an Interrogatory based on any claim of privilege, You must provide the information required by FRCP 26(b)(5).

7

6.    These Interrogatories are continuing in nature, up to and during the course of trial. Your response to these Interrogatories must be supplemented should You obtain additional Documents that are responsive to any Interrogatory.

## INTERROGATORIES

1.    Describe the factual basis for Your allegation that "Navient Corporation is a loan management, servicing, and asset recovery company," as alleged in paragraph 18 of the Complaint, and identify any Documents that You contend support Your allegation.

**Response:**

2.    Describe the factual basis for Your allegation that Navient Corp. "materially participates in the conduct of the affairs" of Navient Solutions and Pioneer, as alleged in paragraph 20 of the Complaint, and identify any Documents that You contend support Your allegation.

**Response:**

8

3.      Describe the factual basis for Your allegation that "[a]mong the liabilities assumed by Navient Corporation are all of the pre-organization servicing and collection conduct described in the Complaint," as alleged in paragraph 21 of the Complaint, and identify any Documents that You contend support Your allegation.

**Response:**

## NAVIENT CORPORATION'S FIRST SET OF DOCUMENT REQUESTS

## INSTRUCTIONS

1.      The Documents covered by the Requests include all Documents in Your possession, custody, or control, including Documents in the possession, custody, or control of any of Your employees, agents, attorneys, or other Persons acting or purporting to act on Your behalf.

9

2.      Unless otherwise specified, the time period covered by these Requests shall be from January 1, 2010 to the present.  With respect to Request No. 3, the time period covered shall be from January 1, 2009 to the present.

3.      These Requests are continuing in nature, up to and during the course of trial.  Your response to these Requests must be supplemented should You obtain additional Documents that are responsive to any Request for Production.

4.      If You object to any Request, state with specificity the grounds for such objection and the Request or Requests to which each objection applies.

5.      If You object to part of any Request herein, You must furnish Documents responsive to the remainder of the Request.

6.      If You are asked to identify or produce a Document that You deem to be properly withheld from production for inspection or copying:

a.      If You are withholding the Document under claim of privilege (including the work product doctrine), provide the information set forth in FRCP 26(b)(5), including the privilege or protection being claimed, the type of Document, the general subject matter of the Document, the date of the Document, and such other information as is sufficient to identify the Document, including the author, custodian, addressee, and any other recipient of the Document, in a manner that, without revealing the information claimed to be protected, will

10

enable Navient Corp. to assess the applicability of the privilege or protection that You are claiming.

        b.     If You are withholding the Document for any other reason, state the reason with respect to each Document so withheld and provide the information requested in Paragraph 6.a above as well as any other information necessary to support Your claim that withholding the Document is justified and to enable Navient Corp. to assess the reasons that You are withholding the Document.

        7.     When a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material.  When a Document has been redacted based on an assertion of privilege, provide the information set forth in paragraph 3.a above as to the information that has been redacted. Any redaction must be marked as such on the face of the redacted Documents.

        8.     If in responding to the Requests, You claim any ambiguity in interpreting a Request or a Definition or Instruction applicable thereto, You must nevertheless produce responsive Documents and set forth as part of Your response the language deemed to be ambiguous and the interpretation chosen or used in responding to the Request.

11

9.     Any Document that is attached electronically or physically, by staple, clip or otherwise, to a responsive Document shall be produced (attached in the same manner) regardless of whether the production of that Document is otherwise requested herein.

10.     Each responsive Document shall be produced as it is kept in the ordinary course of business, including without limitation, in its original file folder with all markings intact, or organized and labeled to correspond to the categories identified in these Requests.

11.     Responsive Documents are to be clearly designated so as to reflect their owner and/or custodian and the source and/or location from where they were produced.

12.     If there are no Documents responsive to any particular Request, provide a written response so stating.  Documents not otherwise responsive to these Requests shall be produced if such Documents mention, discuss, refer to, relate to, or explain the Documents called for by these Requests.

## DOCUMENT REQUESTS

1.     All Documents relating to the CFPB's investigation and supervision of Navient Corporation, including any investigative file, supervisory materials, witness statements, internal and external Communications, and all Documents

12

generated by the CFPB or received from any third party relating to the
Investigation.

2.      All Documents considered or relied upon in preparing the Complaint,
with respect to Navient Corporation.

3.      All Communications with the U.S. Department of Education relating
to the Contract, including any monitoring or audits performed by the U.S.
Department of Education under the Contract.

4.      All Documents that You contend support the assertion that Navient
Corporation controls Navient Solutions and Pioneer.

5.      All Communications relating to this Action or the allegations in the
Complaint, including internal Communications and external Communications
with the U.S. Department of Education or any other federal agency or official,
States Attorney General, Borrowers, members and/or committees of the U.S.
Congress, consumer advocacy organizations, and/or the media.

6.      All Documents, including supervisory materials, relating to the
Servicing Practices of Third-Party Servicers, including the standards of practice
and course of dealing by Third-Party Servicers as they relate to policies and
practices alleged in the Complaint.  These Documents shall include
Communications, including Communications with the U.S. Department of

13

Education, States Attorney General, Borrowers, members and/or committees of the
U.S. Congress, consumer advocacy organizations, and/or the media.

7.     All Documents authored, sent, received or in the possession of the
CFPB Student Loan Ombudsman relating to Servicing Practices.  Such
Documents shall include those relating to standards, requirements, guidance,
rulemaking, complaints, investigations and enforcement actions involving any
Defendant or any Third-Party Servicer as it relates to the policies and practices
alleged in the Complaint.

8.     All Communications with any member or committee of the U.S.
Congress relating to Servicing Practices.  Such Communications shall include
those relating to standards, requirements, guidance, rulemaking, investigations
and enforcement actions involving Defendants or any Third-Party Servicer.

9.     All Documents relating to whether the structure of the CFPB violates
the United States Constitution, including any Communications with the
Department of Justice or any member of the U.S. Congress.

10.     All Documents considered or relied upon in responding to any
Interrogatory.

14

Dated:  June 5, 2017                    Respectfully submitted,

                                        /s/ Matthew T. Martens
                                        Matthew T. Martens (DC 1019099) (*pro hac vice*)
                                        Jonathan E. Paikin (DC 466445) (*pro hac vice*)
                                        Daniel P. Kearney (DC 977148) (*pro hac vice*)
                                        Karin Dryhurst (DC 1034290) (*pro hac vice*)
                                        Wilmer Cutler Pickering
                                          Hale and Dorr LLP
                                        1875 Pennsylvania Avenue, NW
                                        Washington, DC 20006
                                        matthew.martens@wilmerhale.com
                                        jonathan.paikin@wilmerhale.com
                                        daniel.kearney@wilmerhale.com
                                        karin.dryhurst@wilmerhale.com
                                        Tel: 202-663-6000
                                        Fax: 202-663-6363

                                        Daniel T. Brier (PA 52348)
                                        Donna A. Walsh (PA 74833)
                                        Myers Brier & Kelly, LLP
                                        425 Spruce Street, Suite 200
                                        Scranton, PA 18503
                                        dbrier@mbklaw.com
                                        dwalsh@mbklaw.com
                                        Tel: 570-342-6100
                                        Fax: 570-342-6147

                                        *Counsel for Navient Corporation, Navient
                                        Solutions, LLC, and Pioneer Credit Recovery, Inc.*

15

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2017, I served the foregoing First Set of

Interrogatories and Requests for Production to the CFPB by email to the following

counsel for Plaintiff:

      Nicholas Jabbour:  Nicholas.Jabbour@cfpb.gov
      Ebony Sunala Johnson:  Ebony.Johnson@cfpb.gov
      Lawrence DeMille-Wagman:  Lawrence.Wagman@cfpb.gov
      Andrea Matthews:  Andrea.Matthews@cfpb.gob

Mr. Jabbour, on behalf of Plaintiff, previously consented to electronic service.


/s/ Karin Dryhurst
Karin Dryhurst (DC 10342909) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

*Counsel for Navient Corporation, Navient Solutions, LLC, and Pioneer Credit Recovery, Inc.*

# Exhibit D

**THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Consumer Financial Protection Bureau, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:CV-17-00101 |
| | ) | (Hon. Robert D. Mariani) |
| Navient Corporation, *et al.,* | ) | |
| | ) | |
| *Defendants*. | ) | |

**DEFENDANT NAVIENT SOLUTIONS, LLC'S FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION TO THE
CONSUMER FINANCIAL PROTECTION BUREAU**

Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure ("FRCP"), Defendant Navient Solutions, LLC ("Navient Solutions") by and through its undersigned attorneys, requests that Plaintiff the Consumer Financial Protection Bureau ("CFPB") respond to its First Set of Interrogatories and Requests for Production of Documents ("Document Requests") within thirty (30) days of service. The CFPB should produce responsive documents in its possession, custody, or control via Fedex or UPS to the following address: 1875 Pennsylvania Avenue NW, Washington, DC 20006. Each of the following Interrogatories and Document Requests is to be read in accordance with the Definitions and Instructions that follow. These Interrogatories and Document Requests are provided without prejudice to, or waiver of, Navient Solutions' right to conduct further discovery at a later date.

1

## DEFINITIONS

1.      The term "Action" refers to the above-captioned action.

2.      The term "Complaint" refers to the complaint filed on January 18, 2017 by the CFPB in this Action (Docket No. 17-00101).

3.      The term "Servicing Practices" refers to student loan servicing policies and practices, including Communications regarding repayment options and forbearance, Communications regarding renewal of income-driven repayment options, Communications regarding eligibility for cosigner release, payment processing, and credit reporting for disabled Borrowers.

4.      The terms "and" and "or" have both conjunctive and disjunctive meanings.  All use of language in the following Interrogatories that appears in the conjunctive form specifically includes the disjunctive form, and vice versa.  All words that are used in their singular form include the plural form, and vice versa. The past tense shall be construed to include the present tense, and vice versa.

5.      The term "all" means all, each, any, and every.

6.      The term "Borrower" means any individual borrower of student loans.

7.      The term "CFPB" means the Consumer Financial Protection Bureau, including its officers and employees.

8.      The term "identify" means (a) as applied to a natural Person, to state the Person's full name, title, present or last known address and telephone number,

2

e-mail address, and any Documents relating to that individual; (b) as applied to a business entity, to state the entity's full name and present or last known business address and telephone number; (c) as applied to a Document or written Communication, to state, to the extent known, the type of Document, the general subject matter, the date of the Document, the author(s), addressee(s) and recipient(s), the present location and custodian of the Document, and any Bates number or other identifier; and (d) as applied to an oral Communication, to state, to the extent known, the names and present or last known addresses and telephone numbers of the Persons involved, the dates on which such oral Communication occurred, the location where the Communication happened or the locations at which the Persons involved were when the Communication happened, and a complete description of the topic or subject matter of such oral Communication.

9.      The use of the term "describe" includes a request for a complete description and explanation of the facts, circumstances, analysis, opinion and other information relating to (as that phrase is defined below) the subject matter of a specific Interrogatory, and a request for the identification of any Documents used to formulate that description and explanation.

10.      The term "including" means including without limitation.

11.      The term "Communication" means the transmission, sending, and/or receipt of information of any kind by and/or through any means, including, but not

limited to, speech, writings, language, computer electronics of any kind, magnetic tape, video tape, photographs, graphs, symbols, signs, magnetic disks, sound, radio and/or video signal, telephone, teletype, telecommunication, telegram, microfilm, microfiche, and/or other media of any kind.  Communications are a subset of Documents, and accordingly a request for Documents shall be deemed to encompass Communications.

12.     The term "Document" is defined to be synonymous in meaning and equal in scope to both the usage of the term "documents or electronically stored information" in FRCP 34(a)(1)(A) and "tangible things" in FRCP 34(a)(1)(B).  A draft or non-identical copy is a separate Document within the meaning of this term.

13.     The term "each" shall be construed to include "every," and "every" shall be construed to include "each."

14.     The term "Person" means any natural person or any business, legal or governmental entity or association.

15.     The term "relating to" means discussing, identifying, describing, reflecting, containing, analyzing, studying, reporting, commenting, evidencing, constituting, comprising, showing, setting forth, considering, recommending, concerning, explaining, referring to, or pertaining to, in whole or in part.

16.     The term "Navient Corporation" means Navient Corporation, as well as its predecessors in interest and successors in interest.

17.    The term "Navient Solutions" means Navient Solutions, LLC, as well as its predecessors in interest and successors in interest.

18.    The term "Navient Borrower" means any Borrower whose student loans were serviced by Navient Solutions.

19.    The term "Third-Party Servicer" means any student loan servicer other than Navient Solutions.

20.    The term "U.S. Department of Education" means the U.S. Department of Education and any offices, agencies, divisions, branches, or components within the U.S. Department of Education (including the Office of Federal Student Aid and the Office of the General Counsel).

21.    The term "Contract" means any contract between the U.S. Department of Education, on the one hand, and either Navient Corporation, Navient Solutions, or Pioneer on the other hand.

22.    The terms "You" and "Your" refer to the CFPB.

23.    The use of any Definition for the purposes of these Interrogatories and Document Requests shall not be deemed to constitute an agreement or acknowledgement on the part of Defendants that such definition is accurate, meaningful, or appropriate for any other purpose in this Action.

## NAVIENT SOLUTIONS' FIRST SET OF INTERROGATORIES

### INSTRUCTIONS

1.     Unless otherwise specified, the time period covered by these Interrogatories shall be from January 1, 2010 to the present.

2.     If You object to any Interrogatory, state with specificity the grounds for such objection and the Interrogatory or Interrogatories to which each objection applies.

3.     The responses, under oath, to each Interrogatory shall include such information as is within Your custody, possession, or control, including, without limitation, information in the possession, custody, or control of any of Your employees, agents, attorneys, investigators, experts, or other Persons retained by You or acting or purporting to act on Your behalf.

4.     If You cannot answer an Interrogatory after exercising due diligence to secure the information to do so: (i) answer to the extent possible; (ii) state the basis for Your inability to answer the remainder; (iii) state whatever information or knowledge You have concerning the unanswered portion; and (iv) specify the type of information that You contend is not available.

5.     If You decline to answer all or part of an Interrogatory based on any claim of privilege, You must provide the information required by FRCP 26(b)(5).

6.     These Interrogatories are continuing in nature, up to and during the course of trial.  Your response to these Interrogatories must be supplemented should You obtain additional Documents that are responsive to any Interrogatory.

## INTERROGATORIES

1.     Identify each Person who has or might have information or knowledge relating to the allegations in the Complaint against Navient Solutions, including a description of what information or knowledge each identified Person possesses.

   **Response:**

2.     Describe the factual basis for Your allegation that Navient Solutions gained an "advantage" from Navient Borrowers' enrollment in forbearances rather than income-driven repayment plans, including as alleged in paragraphs 140 and 141 of the Complaint, and describe with particularity the alleged "advantage."

   **Response:**

7

3.      Describe the benefits and disadvantages to Borrowers of enrollment in income-driven repayment plans as compared to forbearance.

**Response:**

4.      Describe the factual basis for Your allegation that "enrolling in an income-driven repayment plan is usually a significantly better option than forbearance [for a Borrower]," as alleged in paragraph 36 of the Complaint.

**Response:**

5.      Identify each statement upon which a Navient Borrower relied for the belief that Navient Solutions would act in the Borrower's interests, including the identity of each Navient Borrower who relied on such statements, and describe the circumstances.

**Response:**

8

6.      Describe each instance in which Navient Solutions "steered" a

Navient Borrower, as alleged in paragraphs 4, 40, 140, and 144–46 of the

Complaint.

   **Response:**

7.      Identify each Navient Borrower harmed by enrollment in a

forbearance, as alleged in paragraph 146 of the Complaint, and describe the injury

suffered by that Borrower.

   **Response:**

8.      Describe each Communication about repayment plans and forbearance that Navient Solutions provided to Borrowers, including a description of Communications required by federal regulations.

**Response:**

9.      Identify each Navient Borrower whose income-driven repayment plan expired because the Borrower did not submit a renewal application as a result of not understanding Navient Solutions' email notice or otherwise failing to click through the link contained in the email, and describe the circumstances.

**Response:**

10

10.     Identify each Navient Borrower whose income-driven repayment plan expired because the Borrower submitted an incomplete or inaccurate application based on the belief that delay would be the only consequence, and describe the circumstances.

**Response:**

11.     Identify any and all false or misleading Communications from Navient Solutions to any Borrower, and identify any Documents that you contend support Your allegation.

**Response:**

11

12.     Identify each Navient Borrower whose cosigner agreed to cosign the loan based on the possibility of release following the Borrower's making consecutive, on-time principal and interest payments, and describe the circumstances.

**Response:**

13.     Identify each Navient Borrower who allegedly was wrongly denied cosigner release for failing to make an on-time payment in each of 12 consecutive months and describe the circumstances.

**Response:**

12

14.     Describe the harm to a Borrower that results from a cosigner not qualifying for release.

**Response:**

15.     Describe each of Navient Solutions' payment processing practices that You allege is unfair.

**Response:**

16.     Describe the methodology for calculating the damages identified in Your initial disclosures relating to allegations against Navient Solutions.

**Response:**

13

## NAVIENT SOLUTIONS' FIRST SET OF DOCUMENT REQUESTS

## INSTRUCTIONS

1.      The Documents covered by the Requests include all Documents in Your possession, custody, or control, including Documents in the possession, custody, or control of any of Your employees, agents, attorneys, or other Persons acting or purporting to act on Your behalf.

2.      Unless otherwise specified, the time period covered by these Requests shall be from January 1, 2010 to the present.

3.      These Requests are continuing in nature, up to and during the course of trial.  Your response to these Requests must be supplemented should You obtain additional Documents that are responsive to any Request for Production.

4.      If You object to any Request, state with specificity the grounds for such objection and the Request or Requests to which each objection applies.

5.      If You object to part of any Request herein, You must furnish Documents responsive to the remainder of the Request.

6.      If You are asked to identify or produce a Document that You deem to be properly withheld from production for inspection or copying:

a.      If You are withholding the Document under claim of privilege (including the work product doctrine), provide the information set forth in FRCP 26(b)(5), including the privilege or protection being claimed, the type of Document, the general subject matter of the Document, the date of the Document, and such other information as is sufficient to identify the Document, including the author, custodian, addressee, and any other recipient of the Document, in a manner that, without revealing the information claimed to be protected, will enable Navient Solutions to assess the applicability of the privilege or protection that You are claiming.

b.      If You are withholding the Document for any other reason, state the reason with respect to each Document so withheld and provide the information requested in Paragraph 6.a above as well as any other information necessary to support Your claim that withholding the Document is justified and to enable Navient Solutions to assess the reasons that You are withholding the Document.

7.      When a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material.  When a Document has been redacted based on an assertion of privilege, provide the information set forth in paragraph 3.a above as to the information that has been redacted. Any redaction must be marked as such on the face of the redacted Documents.

8.      If in responding to the Requests, You claim any ambiguity in interpreting a Request or a Definition or Instruction applicable thereto, You must nevertheless produce responsive Documents and set forth as part of Your response the language deemed to be ambiguous and the interpretation chosen or used in responding to the Request.

9.      Any Document that is attached electronically or physically, by staple, clip or otherwise, to a responsive Document shall be produced (attached in the same manner) regardless of whether the production of that Document is otherwise requested herein.

10.     Each responsive Document shall be produced as it is kept in the ordinary course of business, including without limitation, in its original file folder with all markings intact, or organized and labeled to correspond to the categories identified in these Requests.

11.     Responsive Documents are to be clearly designated so as to reflect their owner and/or custodian and the source and/or location from where they were produced.

12.     If there are no Documents responsive to any particular Request, provide a written response so stating.  Documents not otherwise responsive to these Requests shall be produced if such Documents mention, discuss, refer to, relate to, or explain the Documents called for by these Requests.

## DOCUMENT REQUESTS

1.      All Documents relating to the CFPB's investigation and supervision of Navient Solutions, including any investigative file, supervisory materials, witness statements, internal and external Communications, and all Documents generated by the CFPB or received from any third party relating to the Investigation.

2.      All Documents considered or relied upon in preparing the Complaint, with respect to Navient Solutions.

3.      Documents sufficient to identify each Person who provided information or statements (written or oral) relating to allegations against Navient Solutions in the Complaint, and any Documents relating to such information or statements.

4.      All Documents relating to Communications with Navient Borrowers relating to Servicing Practices or the allegations in the Complaint.

5.      All Documents relating to the relative benefits of repayment plans and forbearance.

6.      All Documents relating to the benefit obtained by Navient Solutions in enrolling Navient Borrowers in forbearance.

7.      All Documents relating to disclosures that Navient Solutions made to Navient Borrowers concerning repayment plans and forbearance.

17

8.     All Documents relating to proposed or final rules, regulations, and guidance considered or issued by the CFPB relating to protection of consumer privacy in email Communications.

9.     All Documents relating to proposed or final rules, regulations, and guidance considered or issued by the CFPB or Department of Education involving Servicing Practices, including as it relates to policies and practices alleged in the Complaint.

10.     All Documents relating to Navient Borrowers who were eligible for an income-driven repayment plan but failed to timely renew the plan because they did not understand the need to complete and submit a recertification form in order to continue receiving benefits.

11.     All Documents relating to Communications that Navient Solutions made to Navient Borrowers or their cosigners about eligibility for cosigner release.

12.     All Documents relating to Navient Borrowers who applied for cosigner release but did not qualify because they made no payment in a month in which the Borrower received a bill for $0.

13.     All Documents relating to Communications with credit reporting agencies relating to the AL reporting code.

14.     All Documents relating to the damages and civil money penalties being sought in the Complaint.

18

15.   All Documents considered or relied upon in responding to any

Interrogatory.

Dated:  June 5, 2017                    Respectfully submitted,


                                        /s/ Matthew T. Martens
                                        Matthew T. Martens (DC 1019099) (*pro hac vice*)
                                        Jonathan E. Paikin (DC 466445) (*pro hac vice*)
                                        Daniel P. Kearney (DC 977148) (*pro hac vice*)
                                        Karin Dryhurst (DC 1034290) (*pro hac vice*)
                                        Wilmer Cutler Pickering
                                          Hale and Dorr LLP
                                        1875 Pennsylvania Avenue, NW
                                        Washington, DC 20006
                                        matthew.martens@wilmerhale.com
                                        jonathan.paikin@wilmerhale.com
                                        daniel.kearney@wilmerhale.com
                                        karin.dryhurst@wilmerhale.com
                                        Tel: 202-663-6000
                                        Fax: 202-663-6363

                                        Daniel T. Brier (PA 52348)
                                        Donna A. Walsh (PA 74833)
                                        Myers Brier & Kelly, LLP
                                        425 Spruce Street, Suite 200
                                        Scranton, PA 18503
                                        dbrier@mbklaw.com
                                        dwalsh@mbklaw.com
                                        Tel: 570-342-6100
                                        Fax: 570-342-6147

                                        *Counsel for Navient Corporation, Navient
                                        Solutions, LLC, and Pioneer Credit Recovery, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2017, I served the foregoing First Set of

Interrogatories and Requests for Production to the CFPB by email to the following

counsel for Plaintiff:

Nicholas Jabbour:  Nicholas.Jabbour@cfpb.gov
Ebony Sunala Johnson:  Ebony.Johnson@cfpb.gov
Lawrence DeMille-Wagman:  Lawrence.Wagman@cfpb.gov
Andrea Matthews:  Andrea.Matthews@cfpb.gov

Mr. Jabbour, on behalf of Plaintiff, previously consented to electronic service.

/s/ Karin Dryhurst
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

*Counsel for Navient Corporation, Navient
Solutions, LLC, and Pioneer Credit Recovery, Inc.*

# Exhibit E

**THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Consumer Financial Protection Bureau, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:CV-17-00101 |
| | ) | (Hon. Robert D. Mariani) |
| Navient Corporation, *et al.,* | ) | |
| | ) | |
| *Defendants*. | ) | |

**DEFENDANT PIONEER CREDIT RECOVERY, INC.'S FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION TO THE
CONSUMER FINANCIAL PROTECTION BUREAU**

Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure

("FRCP"), Defendant Pioneer Credit Recovery, Inc. ("Pioneer"), by and through

its undersigned attorneys, requests that Plaintiff the Consumer Financial Protection

Bureau ("CFPB") respond to its First Set of Interrogatories and Requests for

Production of Documents ("Document Requests") within thirty (30) days of

service.  The CFPB should produce responsive documents in its possession,

custody, or control via Fedex or UPS to the following address: 1875 Pennsylvania

Avenue NW, Washington, DC 20006.  Each of the following Interrogatories and

Document Requests is to be read in accordance with the Definitions and

Instructions that follow.  These Interrogatories and Document Requests are

1

provided without prejudice to, or waiver of, Pioneer's right to conduct further

discovery at a later date.

## DEFINITIONS

1.      The term "Action" refers to the above-captioned action.

2.      The term "Complaint" refers to the complaint filed on January 18,

2017 by the CFPB in this Action (Docket No. 17-00101).

3.      The terms "and" and "or" have both conjunctive and disjunctive

meanings.  All use of language in the following Interrogatories that appears in the

conjunctive form specifically includes the disjunctive form, and vice versa.  All

words that are used in their singular form include the plural form, and vice versa.

The past tense shall be construed to include the present tense, and vice versa.

4.      The term "all" means all, each, any, and every.

5.      The term "Borrower" means any individual borrower of student loans.

6.      The term "CFPB" means the Consumer Financial Protection Bureau,

including its officers and employees.

7.      The term "identify" means (a) as applied to a natural Person, to state

the Person's full name title, present or last known address and telephone number,

e-mail address, and any Documents relating to that individual; (b) as applied to a

business entity, to state the entity's full name and present or last known business

2

address and telephone number; (c) as applied to a Document or written Communication, to state, to the extent known, the type of Document, the general subject matter, the date of the Document, the author(s), addressee(s) and recipient(s), the present location and custodian of the Document, and any Bates number or other identifier; and (d) as applied to an oral Communication, to state, to the extent known, the names and present or last known addresses and telephone numbers of the Persons involved, the dates on which such oral Communication occurred, the location where the Communication happened or the locations at which the Persons involved were when the Communication happened, and a complete description of the topic or subject matter of such oral Communication.

8.      The use of the term "describe" includes a request for a complete description and explanation of the facts, circumstances, analysis, opinion and other information relating to (as that phrase is defined below) the subject matter of a specific interrogatory, and a request for the identification of any Documents used to formulate that description and explanation.

9.      The term "including" means including without limitation.

10.      The term "Communication" means the transmission, sending, and/or receipt of information of any kind by and/or through any means, including, but not limited to, speech, writings, language, computer electronics of any kind, magnetic

3

tape, video tape, photographs, graphs, symbols, signs, magnetic disks, sound, radio and/or video signal, telephone, teletype, telecommunication, telegram, microfilm, microfiche, and/or other media of any kind.  Communications are a subset of Documents, and accordingly a request for Documents shall be deemed to encompass Communications.

11.     The term "Document" is defined to be synonymous in meaning and equal in scope to both the usage of the term "documents or electronically stored information" in FRCP 34(a)(1)(A) and "tangible things" in FRCP 34(a)(1)(B).  A draft or non-identical copy is a separate Document within the meaning of this term.

12.     The term "each" shall be construed to include "every," and "every" shall be construed to include "each."

13.     The term "Person" means any natural person or any business, legal or governmental entity or association.

14.     The term "relating to" means discussing, identifying, describing, reflecting, containing, analyzing, studying, reporting, commenting, evidencing, constituting, comprising, showing, setting forth, considering, recommending, concerning, explaining, referring to, or pertaining to, in whole or in part.

15.     The term "Pioneer" means Pioneer Credit Recovery, Inc., as well as its predecessors in interest and successors in interest.

4

16.     The term "Pioneer Debtor" means any student loan Borrower with outstanding or delinquent loans with respect to which Pioneer Credit Recovery, Inc. engaged in debt collection activities.

17.     The term "Federal Loan Rehabilitation Program" means any program in which a borrower with federal student loans can bring those loans out of default status by making a series of on-time payments, including the programs described at 34 C.F.R. 674.39 and 34 C.F.R. 682.405.

18.     The term "Student Debt Collection Agency" refers to any entity that recovers, on behalf of the owners of student loans, unpaid debt from borrowers with delinquent or defaulted student loans.

19.     The term "Third-Party Student Debt Collection Agency" means any Student Debt Collection Agency other than Pioneer.

20.     The term "U.S. Department of Education" means the U.S. Department of Education and any offices, agencies, divisions, branches, or components within the U.S. Department of Education (including the Office of Federal Student Aid and the Office of the General Counsel).

21.     The terms "You" and "Your" refer to the CFPB.

22.     The use of any Definition for the purposes of these Interrogatories and Document Requests shall not be deemed to constitute an agreement or

5

acknowledgement on the part of Defendants that such definition is accurate, meaningful, or appropriate for any other purpose in this Action.

## PIONEER'S FIRST SET OF INTERROGATORIES

## INSTRUCTIONS

1.      Unless otherwise specified, the time period covered by these Interrogatories shall be from January 1, 2009 to the present.

2.      If You object to any Interrogatory, state with specificity the grounds for such objection and the Interrogatory or Interrogatories to which each objection applies.

3.      The responses, under oath, to each Interrogatory shall include such information as is within Your custody, possession, or control, including, without limitation, information in the possession, custody, or control of any of Your employees, agents, attorneys, investigators, experts, or other Persons retained by You or acting or purporting to act on Your behalf.

4.      If You cannot answer an Interrogatory after exercising due diligence to secure the information to do so: (i) answer to the extent possible; (ii) state the basis for Your inability to answer the remainder; (iii) state whatever information or knowledge You have concerning the unanswered portion; and (iv) specify the type of information that You contend is not available.

6

5.     If You decline to answer all or part of an Interrogatory based on any claim of privilege, You must provide the information required by FRCP 26(b)(5).

6.     These Interrogatories are continuing in nature, up to and during the course of trial.  Your response to these Interrogatories must be supplemented should You obtain additional Documents that are responsive to any Interrogatory.

## INTERROGATORIES

1.     Identify the date on which the CFPB first had knowledge or awareness of the allegations contained in Counts VII through X of the Complaint, and describe the manner in which CFPB first learned of such allegations.

**Response:**

2.     Identify each Person who has or might have information or knowledge relating to the allegations in the Complaint against Pioneer, including a description of what information or knowledge each identified Person possesses.

**Response:**

7

A73

3.      Identify any and all false or misleading Communications from Pioneer to any Borrower, and identify any Documents that you contend support Your allegation.

**Response:**

4.      Identify each Pioneer Debtor informed by Pioneer that completing a Federal Loan Rehabilitation Program would result in the forgiveness of all collection fees, describe the circumstances of such Communication, and state whether the Pioneer Debtor subsequently enrolled in a Federal Loan Rehabilitation Program.

**Response:**

8

5.      Identify each Pioneer Debtor informed by Pioneer that completing a Federal Loan Rehabilitation Program would result in the removal from the Pioneer Debtor's credit report of all information related to the student loan, describe the circumstances of such Communication, and state whether the Pioneer Debtor subsequently enrolled in a Federal Loan Rehabilitation Program.

**Response:**

6.      Identify each Pioneer Debtor whose belief that completing a Federal Loan Rehabilitation Program would result in the forgiveness of all collection fees (as opposed to only the fees outstanding upon completion of the program) was a factor in their decision to enroll in such a program and describe the circumstances.

**Response:**

9

7.      Identify each Pioneer Debtor whose belief that completing a Federal Loan Rehabilitation Program would result in the removal of the original trade line and associated delinquencies (as opposed to merely the notice of default) was a factor in the Pioneer Debtor's decision to enroll in such a program and describe the circumstances.

**Response:**

8.      Describe the circumstances surrounding the allegation that Pioneer made the statement quoted in paragraph 124 of the Complaint, including the factual basis for the assertion that Pioneer Debtors interpreted "it" to mean "all adverse information related to the student loan," as alleged in paragraph 125.

**Response:**

10

9.      Describe the harm to each Pioneer Debtor that allegedly resulted from the Pioneer Debtor's enrollment in a Federal Loan Rehabilitation Program.

**Response:**

10.     Describe the methodology for calculating the damages alleged in Your initial disclosures relating to claims against Pioneer.

**Response:**

11

# PIONEER'S FIRST SET OF DOCUMENT REQUESTS

## INSTRUCTIONS

1.      The Documents covered by the Requests include all Documents in Your possession, custody, or control, including Documents in the possession, custody, or control of any of Your employees, agents, attorneys, or other Persons acting or purporting to act on Your behalf.

2.      Unless otherwise specified, the time period covered by these Requests shall be from January 1, 2009 to the present.

3.      These Requests are continuing in nature, up to and during the course of trial.  Your response to these Requests must be supplemented should You obtain additional Documents that are responsive to any Request for Production.

4.      If You object to any Request, state with specificity the grounds for such objection and the Request or Requests to which each objection applies.

5.      If You object to part of any Request herein, You must furnish Documents responsive to the remainder of the Request.

6.      If You are asked to identify or produce a Document that You deem to be properly withheld from production for inspection or copying:

a.      If You are withholding the Document under claim of privilege (including the work product doctrine), provide the information set forth in FRCP

26(b)(5), including the privilege or protection being claimed, the type of

Document, the general subject matter of the Document, the date of the Document,

and such other information as is sufficient to identify the Document, including the

author, custodian, addressee, and any other recipient of the Document, in a manner

that, without revealing the information claimed to be protected, will enable Pioneer

to assess the applicability of the privilege or protection that You are claiming.

b.      If You are withholding the Document for any other reason, state the

reason with respect to each Document so withheld and provide the information

requested in Paragraph 6.a above as well as any other information necessary to

support Your claim that withholding the Document is justified and to enable

Pioneer to assess the reasons that You are withholding the Document.

7.      When a Document contains both privileged and non-privileged

material, the non-privileged material must be disclosed to the fullest extent

possible without thereby disclosing the privileged material.  When a Document has

been redacted based on an assertion of privilege, provide the information set forth

in paragraph 3.a above as to the information that has been redacted. Any redaction

must be marked as such on the face of the redacted Documents.

8.      If in responding to the Requests, You claim any ambiguity in

interpreting a Request or a Definition or Instruction applicable thereto, You must

13

nevertheless produce responsive Documents and set forth as part of Your response the language deemed to be ambiguous and the interpretation chosen or used in responding to the Request.

9.      Any Document that is attached electronically or physically, by staple, clip or otherwise, to a responsive Document shall be produced (attached in the same manner) regardless of whether the production of that Document is otherwise requested herein.

10.      Each responsive Document shall be produced as it is kept in the ordinary course of business, including without limitation, in its original file folder with all markings intact, or organized and labeled to correspond to the categories identified in these Requests.

11.      Responsive Documents are to be clearly designated so as to reflect their owner and/or custodian and the source and/or location from where they were produced.

12.      If there are no Documents responsive to any particular Request, provide a written response so stating.  Documents not otherwise responsive to these Requests shall be produced if such Documents mention, discuss, refer to, relate to, or explain the Documents called for by these Requests.

14

## DOCUMENT REQUESTS

1.     All Documents relating to the CFPB's investigation and supervision of Pioneer, including any investigative file, supervisory materials, and internal and external Communications.

2.     All Documents related to rulemaking or guidance considered, proposed, or enacted by the CFPB or U.S. Department of Education involving the policies and practices by a Student Debt Collection Agency, including with respect to policies and practices alleged in the Complaint.

3.     All Documents considered or relied upon in preparing the Complaint, with respect to the allegations against Pioneer.

4.     All Documents sufficient to identify each Person who provided information or statements (written or oral) relating to allegations against Pioneer in the Complaint, and any Documents relating to such information or statements.

5.     All Documents relating to the U.S. Department of Education's audit or review of Pioneer, including Communications between the CFPB and the U.S. Department of Education relating to the basis for and scope of the audit before the institution of the audit.

15

6.     All Documents relating to Pioneer's policies and practices with respect to the Federal Loan Rehabilitation Program, including any statements made to Pioneer Debtors.

7.     All Documents relating to the benefits or disadvantages of completing a Federal Loan Rehabilitation Program, consolidating a defaulted student loan, and remaining in default on a student loan.

8.     All Documents relating to the number or percentage of Pioneer Debtors who, after defaulting on a student loan, (a) enrolled in a loan rehabilitation program; (b) consolidated their student loans; (c) repaid the defaulted loan in full; (d) remained in default.

9.     All Documents relating to the number or percentage of Borrowers of Third-Party Student Debt Collection Agencies who, after defaulting on a student loan, (a) enrolled in a loan rehabilitation program; (b) consolidated their student loans; (c) repaid the defaulted loan in full; (d) remained in default.

10.     All Documents, including supervisory materials, relating to the collection policies or practices of Third-Party Student Debt Collection Agencies, including the standards of practice and course of dealing by Third-Party Student Debt Collection Agencies as it relates to policies and practices alleged in the Complaint.

16

11.     All Documents considered or relied upon in responding to any

Interrogatory.

17

Dated:  June 5, 2017                    Respectfully submitted,

                                        /s/ Matthew T. Martens
                                        Matthew T. Martens (DC 1019099) (*pro hac vice*)
                                        Jonathan E. Paikin (DC 466445) (*pro hac vice*)
                                        Daniel P. Kearney (DC 977148) (*pro hac vice*)
                                        Karin Dryhurst (DC 1034290) (*pro hac vice*)
                                        Wilmer Cutler Pickering
                                          Hale and Dorr LLP
                                        1875 Pennsylvania Avenue, NW
                                        Washington, DC 20006
                                        matthew.martens@wilmerhale.com
                                        jonathan.paikin@wilmerhale.com
                                        daniel.kearney@wilmerhale.com
                                        karin.dryhurst@wilmerhale.com
                                        Tel: 202-663-6000
                                        Fax: 202-663-6363

                                        Daniel T. Brier (PA 52348)
                                        Donna A. Walsh (PA 74833)
                                        Myers Brier & Kelly, LLP
                                        425 Spruce Street, Suite 200
                                        Scranton, PA 18503
                                        dbrier@mbklaw.com
                                        dwalsh@mbklaw.com
                                        Tel: 570-342-6100
                                        Fax: 570-342-6147

                                        *Counsel for Navient Corporation, Navient
                                        Solutions, LLC, and Pioneer Credit Recovery, Inc.*

18

# CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2017, I served the foregoing First Set of

Interrogatories and Requests for Production to the CFPB by email to the following

counsel for Plaintiff:

Nicholas Jabbour:  Nicholas.Jabbour@cfpb.gov
Ebony Sunala Johnson:  Ebony.Johnson@cfpb.gov
Lawrence DeMille-Wagman:  Lawrence.Wagman@cfpb.gov
Andrea Matthews:  Andrea.Matthews@cfpb.gov

Mr. Jabbour, on behalf of Plaintiff, previously consented to electronic service.


/s/ Karin Dryhurst
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

*Counsel for Navient Corporation, Navient*
*Solutions, LLC, and Pioneer Credit Recovery, Inc*

# Exhibit F

**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Consumer Financial Protection Bureau, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:CV-17-00101 |
| | ) | (Hon. Robert D. Mariani) |
| Navient Corporation, *et al.*, | ) | |
| | ) | |
| *Defendants* | ) | |

## DEFENDANT NAVIENT SOLUTIONS, LLC'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION

Pursuant to Rule 34 of the Federal Rules of Civil Procedure ("FRCP"), Defendant Navient Solutions, LLC ("Navient Solutions"), through its undersigned counsel, responds and objects to Plaintiff the Consumer Financial Protection Bureau ("CFPB")'s First Set of Requests for Production, dated June 5, 2017, including the instructions and definitions therein (the "Requests").

Navient Solutions further states that the vast majority of documents responsive to these Requests are maintained on its computer systems in electronic format. The process for identifying, gathering, uploading, reviewing, and producing responsive documents is underway, but as of the date of these responses is not completed. Navient Solutions states that it will produce its documents on a rolling basis at a mutually agreeable date and location.

1

## GENERAL OBJECTIONS

The general objections apply to each specific Request, whether or not they are specifically referenced in response to a particular Request.  By making any general or specific objection, Navient Solutions expressly does not waive or prejudice any further objections it may later assert in response to a specific Request or any other discovery.

1.      Navient Solutions objects to the extent a Request seeks documents that are unreasonably cumulative or duplicative with those already in the possession of CFPB.  In response to multiple administrative subpoenas and informal requests during the investigation preceding this lawsuit, Defendants collectively provided more than 450,000 pages of documents, answered dozens of interrogatories, prepared over 30 written reports containing complex analyses of borrower data and information, and produced nine witnesses for testimony. Navient Solutions has identified Bates numbers for responsive materials previously produced where it is reasonably able to do so.

2.      Navient Solutions also objects on burden grounds to the extraordinary number of Requests, including subparts, served by CFPB on Defendants, both in its numerous administrative subpoenas and the discovery served in this action.

2

CFPB has served 26 Requests on Navient Solutions alone, each with multiple and distinct (49 total) sub-parts.

3.      Navient Solutions objects to each of the Requests to the extent it purports to impose on Navient Solutions a duty to search for documents beyond a reasonable search of the locations and files where potentially responsive materials would reasonably be found.  To the extent electronically stored information is necessary to answer a Request, Navient Solutions will search for responsive electronically stored documents in a manner that balances the desire to identify responsive documents with the avoidance of undue burden or expense.  Navient Solutions objects to the extent that each Request requires it to search for electronically stored information on back-up or legacy systems or to the extent that the Request calls for the restoration of any systems, programs, or media.  Navient Solutions further objects to the extent that a Request seeks voluminous information which can be located and copied only at tremendous expense of money and/or personnel resources and/or that will create a significant delay that would be disproportionate to the probative value or relevance of the material sought.

4.      Navient Solutions objects to the extent a Request purports to seek discovery of documents that are not in its immediate and present possession, including documents that are maintained in the files of subsidiaries and/or

3

affiliates.  CFPB sought permission to serve specific discovery on each separate

Defendant, and it has served such discovery.  Thus, unless otherwise stated,

Navient Solutions interprets the discovery directed to a particular Defendant to be

seeking documents and information that is in the immediate possession of that

particular Defendant (and not its subsidiaries and/or affiliates that are also

Defendants).

5.      Navient Solutions will produce confidential, proprietary, or personal

information subject to the terms of a mutually agreeable protective order.  Navient

Solutions notes that the U.S. Department of Education ("Education Department")

mandates that Navient Solutions seek approval for the production of protected

borrower information accompanied by a letter from the requesting party, here,

CFPB.  To the extent any of the Requests seek documents for which the Education

Department requires such approval, Navient Solutions will produce responsive

documents, should any exist, consistent with those requirements and pursuant to a

process agreed upon with CFPB.

6.      Navient Solutions objects to the extent a Request seeks documents

protected under the attorney-client privilege, the work product doctrine,

examination, or other applicable privileges.  If any protected information or

material is produced, such disclosure is not intentional and shall not be deemed a

4

waiver of any privilege or protection.  To the extent Navient Solutions identifies

privileged materials responsive to a Request, it will produce a log of those

documents in a format consistent with the requirements of FRCP 26(b)(5).

Navient Solutions will not undertake a search of the files of in-house counsel (or

produce a log) unless it has reason to believe that non-duplicative, non-privileged

materials can be located in those files.

7.     Navient Solutions objects to the extent a Request is vague,

ambiguous, indefinite, overbroad, or otherwise unclear as to the information

sought.  As a general matter, Navient Solutions will interpret the Requests as not

seeking documents unrelated to the practices and statements alleged in the

Complaint.  In addition, Navient Solutions does not adopt by responding to these

Requests any definition of words or phrases or any express or implied

characterizations of fact or law contained in the Requests.

8.     The responses below are made without waiver of, and with

preservation of:

    a.     all objections as to competency, relevancy, materiality, privilege, and
           admissibility of the responses and the subject matter thereof as
           evidence for any purposes in any further proceeding in this action
           (including the trial of this action) and any other action;

5

b.     Navient Solutions' right to object on any ground and at any time to a demand or request for additional documents or other discovery procedures related to the subject matter of this case; and

c.     Navient Solutions' right, at any time, to revise, correct, add to or clarify any of the documents produced by Navient Solutions.

## OBJECTIONS TO INSTRUCTIONS

1.     Navient Solutions objects to Instruction No. 3(b) to the extent it requires Navient Solutions to produce a log other than for documents withheld on the basis that they are "privileged or subject to protection as trial-preparation material." FRCP 26(b)(5). Navient Solutions will produce a log at a mutually agreeable date and time after a production is made from which privileged documents were withheld.

2.     Navient Solutions objects to Instruction No. 6 on the grounds that the timeframe specified for all of the Requests (January 1, 2009 to the present) seeks information beyond the scope of the Complaint, which alleges conduct occurring no earlier than January 1, 2010. *See* Compl. ¶¶ 50–61, 67–69, 86. Unless otherwise specified, Navient Solutions will provide documents responsive to each request from January 1, 2010 to the present.

3.     Navient Solutions objects to Instruction No. 9 to the extent it purports to require Navient Solutions to call CFPB should any materials responsive to the Requests contain the sensitive personally identifiable information of any

6

A92

individual.  As noted above in General Objection No. 2, Navient Solutions will

produce such documents pursuant to a mutually agreeable protective order and

consistent with applicable Education Department requirements.

## SPECIFIC OBJECTIONS AND RESPONSES
## TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION

**DOCUMENT REQUEST NO. 1:  All documents reflecting the provision, issuance, or communication of any instruction, requirement, command, directive, advice, guidance, suggestion, recommendation, or critique from Navient Corporation (including any business plans, strategic plans, policies, or procedures created or issued by Navient Corporation) relating to the servicing of student loans.**

**Response:**

In addition to the general objections, Request No. 1 is overbroad and unduly

burdensome to the extent that it seeks documents unrelated to the claims in this

action and/or the types of loans at issue.  Navient Solutions further objects to

Request No. 1 to the extent it is duplicative of Request No. 5 to Navient Corp., and

directs the CFPB to Navient Corp.'s response to that Request and the documents

produced in response thereto.  Navient Solutions is not aware of additional

responsive documents beyond those identified by Navient Corp.

**DOCUMENT REQUEST NO. 2:  For each type of notice or disclosure referenced on pages 9-10 of Defendants' brief in support of their motion to dismiss (docket entry #29), and any other written communication with borrowers about forbearance or income-driven repayment plans: (a) one example of every version of the notice, disclosure, or written communication**

7

**in the format as it was sent to a consumer (including any attachments to the notice, disclosure, or written communication), (b) all drafts of each version of the notice, disclosure, or written communication, and (c) all documents reflecting any testing or evaluation (such as through a focus group) of the notice, disclosure, or written communication, including any drafts. For part (a) of this Request, a notice, disclosure, or written communication that is identical to another notice, disclosure, or written communication but for information that is specific to the borrower shall not be considered a separate version of the document.**

**Response:**

    In addition to the general objections, Request No. 2 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and/or the types of loans at issue, and (b) "all drafts" of "each version" of every written communication with borrowers about forbearance or income-driven repayment plans.  Navient Solutions further objects that this Request is duplicative of previous requests for information, and that CFPB is already in possession of documents that appear to be responsive to this Request.  Specifically:

- On October 25, 2013, Sallie Mae, Inc. produced documents responsive to Document Request 5 of the September 5, 2013 CID issued by CFPB to Sallie Mae, Inc., which sought "Exemplars of all forms of billing statements for borrowers with multiple loans in repayment."  CFPB CID to Sallie Mae, Inc., Sep. 5, 2013.  These documents are located at the Bates Range detailed in Appendix 1(A) to these responses.

- On June 27, 2014 and July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 11 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "Each unique version of form or template documents and advertisements used to

8

communicate information to a student loan borrower or cosigner about repayment plans for Federal Student Loans and Private Student Loans." CFPB CID to Sallie Mae, Inc., Apr. 29, 2014.  These documents are located at the Bates Ranges detailed in Appendix 1(B) to these responses.

- On April 8, 2014, SLM Corporation produced to the Attorney General of Illinois documents responsive to a request for "all . . . scripts, form letters, policies, and training manuals related to advising borrowers of their repayment rights, including but not limited to any type of Loss Mitigation program including the ability for their loans to be placed into forbearance."  CID by the Attorney General of Illinois to SLM Corporation, Dec. 4, 2013.  On May 30, 2014 and August 15, 2014, Navient Solutions produced these documents to CFPB.  These documents are located at the Bates Ranges detailed in Appendix 1(C) to these responses

- On August 8, 2014, SLM Corporation produced to the Attorney General of Illinois documents responsive to a request for "all . . . educational, promotional, and other material provided by Sallie Mae and Third Parties to borrowers who are in default or have indicated an inability to pay on their (a) Government Education and (b) Private Education Loans."  CID by the Attorney General of Illinois to SLM Corporation, Dec. 4, 2013.  On May 30, 2014 and August 15, 2014, Navient Solutions, Inc. produced these documents to CFPB.  These documents are located at the Bates Ranges detailed in Appendix 1(D) to these responses.

Navient Solutions will identify the employees principally responsible for drafting or creating written communications with borrowers about forbearance or income-driven repayment plans.  Navient Solutions will use reasonable search terms to identify and produce final versions of templates used for written communications with borrowers that are related to the claims in this action and

9

were created after April 1, 2014, so as to capture materials, if any, created after the

prior productions.  In the regular course of business, Navient Solutions contracts

with Siegel and Gale, a brand strategy firm, to evaluate certain written

communications to borrowers.  Navient Solutions will produce evaluations

conducted by Siegel & Gale from July 1, 2011 to the present of written

communications with borrowers about forbearance or income-driven repayment

plans.

**DOCUMENT REQUEST NO. 3:  All documents containing, discussing, or reflecting any requirements, instructions, policies, procedures, guidance, or training provided to employees, agents, or subcontractors of Navient Solutions relating to the handling of, or communications with, borrowers who indicate that they are having difficulty paying their student loans, would like to reduce payments on their student loans (including paying zero), or would like to enroll in forbearance or an income-driven repayment plan, including all scripts, flowcharts, and decision trees relating to such interactions or communications.**

**Response:**

In addition to the general objections, Request No. 3 is overbroad and unduly

burdensome to the extent that it seeks (a) documents unrelated to the types of loans

at issue, and (b) "[a]ll" documents, even those "discussing" instructions, policies,

procedures, guidance, or training relating to communications with borrowers who

indicate they are having difficulty paying their student loans, would like to their

reduce payments, or would like to enroll in forbearance or an income-driven

10

repayment plan.  Navient Solutions further objects that this Request is duplicative of previous requests for information, and that CFPB is already in possession of documents that appear to be responsive to this Request.  Specifically:

- On June 13, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 1(a) of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "All policies and procedures relating to . . . a. Communications to borrowers regarding repayment plans for Federal Student Loans and Private Student Loans; b. Cosigner release; c. Consequences resulting from the death or bankruptcy of a cosigner; d. Quality assurance with respect to call center employees and customer service employees; and e. Collections for delinquent or defaulted student loans."  CFPB CID to Sallie Mae, Inc., Apr. 29, 2014. These documents are located at the Bates Range detailed in Appendix 1(E) to these responses.

- On July 11, 2014 and July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 3 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "[a]ll unique versions of any training materials provided to your call center employees and customer service representatives."  CFPB CID to Sallie Mae, Inc., Apr. 29, 2014.  These documents are located at the Bates Ranges detailed in Appendix 1(F) to these responses.

- On April 8, 2014, SLM Corporation produced to the Attorney General of Illinois its response to a request for a description of "all policies and procedures . . . concerning placing borrowers in forbearance."  CID by the Attorney General of Illinois to SLM Corporation, Dec. 4, 2013.  On May 30, 2014 and August 15, 2014, Navient Solutions, Inc. produced this response to CFPB.  These documents are located at the Bates Ranges detailed in Appendix 1(G) to these responses.

- On April 8, 2014, SLM Corporation produced to the Attorney General of Illinois its response to a request for a description of "all policies and procedures . . .  regarding communications with a borrower who is

11

delinquent."  CID by the Attorney General of Illinois to SLM Corporation, Dec. 4, 2013.  On May 30, 2014 and August 15, 2014, Navient Solutions, Inc. produced this response to CFPB.  These documents are located at the Bates Ranges detailed in Appendix 1(H) to these responses.

- On April 8, 2014, SLM Corporation produced to the Attorney General of Illinois its response to a request for a description of "all policies and procedures . . . for dealing with a borrower who has indicated a current inability to make payments in connection with a (a) Government Education Loan or (b) Private Education Loan."  CID by the Attorney General of Illinois to SLM Corporation, Dec. 4, 2013.  On May 30, 2014 and August 15, 2014, Navient Solutions, Inc. produced this response to CFPB.  These documents are located at the Bates Ranges detailed in Appendix 1(I) to these responses.

- On April 8, 2014, SLM Corporation produced to the Attorney General of Illinois documents responsive to a request for "all . . . scripts, form letters, policies, and training manuals related to advising borrowers of their repayment rights, including but not limited to any type of Loss Mitigation program including the ability for their loans to be placed into forbearance."  CID by the Attorney General of Illinois to SLM Corporation, Dec. 4, 2013.  On May 30, 2014 and August 15, 2014, Navient Solutions, Inc. produced these documents to CFPB.  These documents are located at the Bates Ranges detailed in Appendix 1(J) to these responses.

- On August 8, 2014, SLM Corporation produced to the Attorney General of Illinois documents responsive to a request for "all training materials Sallie Mae provides to its employees regarding servicing or Collection of (a) Government Education and (b) Private Education Loans."  CID by the Attorney General of Illinois to SLM Corporation, Dec. 4, 2013.  On May 30, 2014 and August 15, 2014, Navient Solutions, Inc. produced these documents to CFPB.  These documents are located at the Bates Ranges detailed in Appendix 1(K) to these responses.

12

Navient Solutions will identify the employees principally responsible for drafting or creating policies and procedures, call scripts, and training materials related to communications with borrowers who indicate they are having difficulty paying their student loans, would like to reduce their payments, or would like to enroll in forbearance or an income-driven repayment plan.  Navient Solutions will use reasonable search terms to identify and produce such policies and procedures, call scripts, and training materials created after April 1, 2014, so as to capture materials, if any, created after the prior productions.

**DOCUMENT REQUEST NO. 4:  All documents containing, discussing, or reflecting any requirements, instructions, policies, procedures, guidance, or training provided to employees, agents, or subcontractors of Navient Solutions relating to communications with borrowers about forbearance or income-driven repayment plans, including: (a) communications about the potential or actual suitability, unsuitability, appropriateness, inappropriateness, advantages, disadvantages, benefits, or costs of forbearance or any type of income-driven repayment plan for any type, category, or group of borrowers (including borrowers with a particular characteristic such as a temporary or long-term financial hardship), and (b) communications in which Navient Solutions recommends, advises, or suggests that the borrower consider or enroll in forbearance or any type of income-driven repayment plan, including all scripts, flowcharts, and decision trees relating to such communications.**

**Response:**

In addition to the general objections, Request No. 4 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the types of loans at issue, and (b) "[a]ll" documents, even those "discussing" requirements,

13

instructions, policies, procedures, guidance, or training relating to communications

with borrowers about forbearance or income-driven repayment plans.  Navient

Solutions further objects to the extent that this Request seeks documents already

encompassed by the response to Request No. 3, and directs CFPB to its response to

that Request.

**DOCUMENT REQUEST NO. 5:  All documents reflecting any discussion, evaluation, or analysis of the adequacy, inadequacy, effectiveness, ineffectiveness, appropriateness, or inappropriateness of any requirements, instructions, policies, procedures, guidance, or training relating to the communications described in subparts (a) and (b) of Request for Documents No. 4, including: (a) all communications or analyses regarding any deficiencies or problems in such requirements, instructions, policies, procedures, guidance, or training, (b) any analysis of the impact on borrowers of such requirements, instructions, policies, procedures, guidance, or training, and (c) all communications or analyses regarding potential improvements in such requirements, instructions, policies, procedures, guidance, or training.**

**Response:**

      In addition to the general objections, Request No. 5 is overbroad and unduly

burdensome to the extent that it seeks (a) documents unrelated to the types of loans

at issue, and (b) "[a]ll documents reflecting any discussion" of the adequacy of any

requirements, instructions, policies, procedures, guidance, or training relating to

communications with borrowers about forbearance or income-driven repayment

plans.

14

Navient Solutions will identify the employees principally responsible for evaluating the effectiveness of policies governing communications with borrowers regarding forbearance or income-driven repayment plans.  Navient Solutions will use reasonable search terms to identify and produce analyses of policies, procedures, guidance, call scripts, or training materials regarding forbearance or income-driven repayment plans that were conducted after July 1, 2011.

**DOCUMENT REQUEST NO. 6:  All documents relating to any evaluation, auditing, monitoring, oversight, due diligence, quality assurance, or compliance review (including those conducted by or on behalf of an investor or trustee of a loan securitization trust) relating to communications with or enrollment of borrowers in forbearance or any type of income-driven repayment plan, including any audit or compliance reports, any risk management analyses, all communications relating to any such audit or compliance reports or risk management analyses, and any action plans in response to any audit or compliance reports or risk management analyses.**

**Response:**

In addition to the general objections, Request No. 6 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the types of loans at issue, and (b) "[a]ll documents relating to any evaluation" relating to communications with or enrollment of borrowers in forbearance or income-driven repayment plans.

To the extent this Request calls for communications with regulators during the course of a supervisory exam, Navient Solutions objects on privilege grounds.

15

Navient Solutions will not undertake a search of the files of in-house counsel or

employees involved in those examinations, or produce a log, because it would be

unduly burdensome and not likely to lead to relevant non-privileged materials.

Navient Solutions further objects that this Request is duplicative of previous

requests for information, and that CFPB is already in possession of documents that

appear to be responsive to this Request.  Specifically:

- On June 13, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 1(d) of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "[a]ll policies and procedures relating to . . . Quality assurance with respect to call center employees and customer service employees."  CFPB CID to Sallie Mae, Inc., Apr. 29, 2014.  These documents are located at the Bates Range detailed in Appendix 1(L) of these responses.

- On July 11, 2014 and July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 5 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "[a]ll unique versions of any checklist used by your employees to perform quality assurance or conduct a compliance review of your call center employees or customer service representatives."  CFPB CID to Sallie Mae, Inc., Apr. 29, 2014. These documents are located at the Bates Ranges detailed in Appendix 1(M) of these responses.

- On July 11, 2014 and July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 6 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "[a] copy of each quality assurance report provided to your call center management team." CFPB CID to Sallie Mae, Inc., Apr. 29, 2014.  These documents are located at the Bates Ranges detailed in Appendix 1(N) of these responses.

16

- On July 11, 2014, Navient Solutions, Inc. produced its response to Interrogatory 11 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought a description of "any quality assurance reviews conducted with respect to . . . customer service representatives or call center employees." CFPB CID to Sallie Mae, Inc., Apr. 29, 2014.

Navient Solutions will identify the employees principally responsible for conducting audits, compliance reviews, or quality assurance reviews of communications with borrowers regarding forbearance or income-driven repayment plans.  Navient Solutions will use reasonable search terms to identify and produce audits or compliance reviews conducted after July 1, 2011, and quality assurance reviews conducted after April 30, 2014, so as to capture materials, if any, created after the prior productions.

**DOCUMENT REQUEST NO. 7:  All documents reflecting any discussion, evaluation, or analysis of the potential or actual suitability, unsuitability, appropriateness, inappropriateness, advantages, disadvantages, benefits, or costs of forbearance or any type of income-driven repayment plan for any type, category, or group of borrowers (including borrowers with a particular characteristic such as a temporary or long-term financial hardship), including any quantification or assessment of the costs of forbearance or any type of income-driven repayment plan for any type, category, or group of borrowers (whether on an absolute or relative basis). Communications with individual borrowers are not responsive to this Request.**

**Response:**

In addition to the general objections, Request No. 7 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the types of loans

17

at issue, and (b) "[a]ll documents reflecting any discussion" of the costs to

borrowers of forbearance and income-driven repayment plans.

Navient Solutions will identify the employees principally responsible for

evaluating the costs and benefits to borrowers of forbearance as compared to

income-driven repayment plans as well as the employees likely to receive such

analyses.  Navient Solutions will use reasonable search terms to identify and

produce evaluations—to the extent they exist—undertaken after July 1, 2011.

**DOCUMENT REQUEST NO. 8:  All documents reflecting any discussion, evaluation, analysis, quantification, or calculation of the time, expense, or burden incurred by Navient Solutions or any affiliate of Navient Solutions in enrolling borrowers in or communicating with borrowers about forbearance or income-driven repayment plans, including any cost savings resulting from enrolling borrowers in or communicating with borrowers about any particular type of repayment option (such as forbearance).**

**Response:**

In addition to the general objections, Request No. 8 is overbroad and unduly

burdensome to the extent that it seeks (a) documents unrelated to the claims in this

action and/or the types of loans at issue, and (b) "[a]ll documents reflecting any

discussion" of the time, expense, or burden incurred by enrolling borrowers in or

communicating with borrowers about forbearance or income-driven repayment

plans.

18

To the extent this Request calls for internal analyses conducted at the direction of counsel regarding the costs of any settlement demands by CFPB or certain state Attorneys General, Navient Solutions objects on privilege grounds. Navient Solutions will not undertake a search of the files of in-house counsel or those directed by counsel, or produce a log, because it would be unduly burdensome and not likely to lead to relevant non-duplicative, non-privileged materials.

Navient Solutions will produce year-end profit and loss reports from July 1, 2011 to the present for specific activities related to enrolling borrowers in forbearance and income-driven repayment plans.

**DOCUMENT REQUEST NO. 9**:  **All documents reflecting complaints, disputes, notices of error, or requests for escalation relating to any communication of the type described in subpart (a) or subpart (b) of Request for Documents No. 4.**

**Response**:

In addition to the general objections, Request No. 9 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the types of loans at issue, and (b) "[a]ll documents reflecting complaints" that relate to "any" communication.  Navient Solutions further objects that this Request is duplicative

19

of previous requests for information, and that CFPB is already in possession of

documents that appear to be responsive to this Request.  Specifically:

- On July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 4 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "[a] copy of all reports and presentations documenting complaints received by you about your servicing of student loans."  CFPB CID to Sallie Mae, Inc., Apr. 29, 2014.  These documents are located at the Bates Range detailed in Appendix 1(O) to these responses.

- On July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 7 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "[a]ll documents referencing complaints about your customer service representatives or call center employees."  CFPB CID to Sallie Mae, Inc., Apr. 29, 2014. These documents are located at the Bates Ranges detailed in Appendix 1(P) to these responses.

Navient Solutions states that it maintains a computer database in which

customer complaints are logged.  Navient Solutions will generate a report from that

system that describes complaints related to forbearance and income-driven

repayment plans that were received after July 1, 2011.

**DOCUMENT REQUEST NO. 10:  An image of each page of any consumer-facing website of Navient Solutions or Navient Corporation that contains any information about repayment options such as forbearance and income-driven repayment plans, including all versions of each such page during the time period set forth in Instruction No. 6, and documents sufficient to show how**

20

A106

each such page is connected (directly or indirectly) to each other page and to
the homepage of the Navient website.

**Response:**

In addition to the general objections, Request No. 10 is overbroad and

unduly burdensome to the extent it seeks historical webpages that are located on

legacy systems and no longer in the possession, custody, or control of Navient

Solutions.  Navient Solutions will produce current versions and historical

screenshots of each page of its consumer-facing public website and pages

accessible by borrower log-in that contain information about forbearance and

income-driven repayment plans.  To the extent they are available, Navient

Solutions will produce webpage organizational charts that depict how webpages

are connected.

**DOCUMENT REQUEST NO. 11:  Documents sufficient to show all
compensation metrics or policies for any employee, agent, or subcontractor of
Navient Solutions responsible for communications with or enrollment of
borrowers in forbearance or income-driven repayment plans, including any
incentive compensation structure applicable to any such employees, agents, or
subcontractors.**

**Response:**

In addition to the general objections, Request No. 11 is overbroad and

unduly burdensome to the extent that it seeks documents unrelated to the types of

loans at issue.  Navient Solutions further states that Request No. 11 is duplicative

21

of previous requests for information, and that CFPB is already in possession of

documents that appear to be responsive to this Request.  Specifically:

- On April 8, 2014, SLM Corporation produced to the Attorney General of Illinois documents responsive to a request for "all . . . policies regarding compensation of employees, supervisors, and managers charged with servicing and/or Collecting (a) Government Education and (b) Private Education Loans."  CID by the Attorney General of Illinois to SLM Corporation, Dec. 4, 2013.  On May 30, 2014 and August 15, 2014, Navient Solutions, Inc. produced these documents to CFPB.  These documents are located at the Bates Ranges detailed in Appendix 1(Q) to these responses.

- On August 8, 2014, SLM Corporation produced to the Attorney General of Illinois its response to a request for a description of  "any and all remuneration or compensation . . . provide[d] to  . . . employees in connection with servicing (a) Government Education Loan products and (b) Private Education Loan products."  CID by the Attorney General of Illinois to SLM Corporation, Dec. 4, 2013.  On May 30, 2014 and August 15, 2014, Navient Solutions, Inc. produced these documents to CFPB. These documents are located at Bates Ranges detailed in Appendix 1(R) to these responses.

Navient Solutions will use reasonable search terms to identify and produce

compensation policies and metrics created after April 1, 2014 for Navient

Solutions employees, agents, and subcontractors responsible for communicating

with or enrolling borrowers in forbearance or income-driven repayment plans, so

as to capture materials, if any, created after the prior productions.

**DOCUMENT REQUEST NO. 12:  All documents discussing, describing, or recording any infraction, error, non-compliance, or violation by any employee, agent, or subcontractor of Navient Solutions relating to**

22

**communications with borrowers about, or enrollment of borrowers in, forbearance or any income-driven repayment plan, including any disciplinary records.**

**<u>Response</u>:**

In addition to the general objections, Request No. 12 is overbroad and unduly burdensome to the extent that it seeks documents unrelated to the types of loans at issue, and because its use of the undefined terms "error" and "non-compliance" fails to identify with reasonable particularity the type of documents sought. Navient Solutions will construe the request to seek records of violations contained in the official disciplinary files of employees, agents, and subcontractors. Navient Solutions will undertake a reasonable search of documents in those files and produce: (1) disciplinary records related to communications with borrowers about, or enrollment of borrowers in, forbearance or any income-driven repayment plan, and (2) the audit and compliance reports produced in response to Request No. 6.

**<u>DOCUMENT REQUEST NO. 13</u>:  For every version of every notice, disclosure, or other written communication used by Navient Solutions relating to a borrower's need to renew or recertify enrollment in any income-driven repayment plan: (a) one example of the notice, disclosure, or written communication in the format as it was sent to a consumer (including any attachments to the notice, disclosure, or written communication), (b) all drafts of the notice, disclosure, or written communication, and (c) all communications concerning the drafting of the notice, disclosure, or written communication, and (d) all documents reflecting any testing or evaluation**

23

**(such as through a focus group) of the notice, disclosure, or written communication, including any drafts. For part (a) of this Request, a notice, disclosure, or written communication that is identical to another notice, disclosure, or written communication but for information that is specific to the borrower shall not be considered a separate version of the document.**

**Response:**

In addition to the general objections, Request No. 13 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action, which concern only "pre-December 2012 notices" that included specific language, *see* Compl. ¶ 64, and "electronic communications" sent between mid-2010 and March 2015, *see* Compl. ¶¶ 66-68, (b) "all drafts of [each] notice, disclosure, or written communication," and (c) "all communications concerning the drafting of [each] notice, disclosure, or written communication."  Navient Solutions further objects that this Request is duplicative of previous requests for information, and that CFPB is already in possession of documents that appear to be responsive to this Request.  Specifically:

- On June 27, 2014 and July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 11 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "Each unique version of form or template documents and advertisements used to communicate information to a student loan borrower or cosigner about repayment plans for Federal Student Loans and Private Student Loans." CFPB CID to Sallie Mae, Inc., Apr. 29, 2014.  These documents are located at the Bates Ranges detailed in Appendix 1(S) to these responses.

24

- On September 25, 2015, Navient Solutions, Inc. responded to the CFPB's September 18, 2015 email asking Navient Solutions, Inc. to identify the subject lines of its income-driven repayment plan renewal emails sent to borrowers.  In addition to its response, Navient Solutions, Inc. produced two examples of income-driven repayment plan renewal emails.  These documents are located at the Bates Range detailed in Appendix 1(T) to these responses.

Navient Solutions will produce one example of each notice referred to in paragraph 64 of the Complaint, created between June 1, 2010 and December 1, 2012, and not previously produced.  Navient Solutions also will produce one example of each electronic communication referred to in paragraphs 66–68 of the Complaint and created between June 1, 2014 and March 30, 2015, so as to capture materials, if any, created after the prior productions.  Navient Solutions will produce analyses of notices and/or disclosures regarding renewal and/or recertification that were conducted between June 1, 2010 and March 30, 2015.

**DOCUMENT REQUEST NO. 14:  All documents reflecting any discussion, evaluation, or analysis of the adequacy, inadequacy, effectiveness, ineffectiveness, appropriateness, or inappropriateness of any notice, disclosure, or written communication produced in response to Request for Documents No. 13.**

**Response:**

In addition to the general objections, Request No. 14 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action, which concern only "pre-December 2012 notices" that included

25

specific language, *see* Compl. ¶ 64, and "electronic communications" sent between mid-2010 and March 2015, *see* Compl. ¶¶ 66-68, and (b) "[a]ll documents reflecting any discussion" of the adequacy of the notices and written communications.  Navient Solutions further objects to the extent that this Request seeks documents already encompassed by the response to Request No. 13, and directs CFPB to its response to that Request.

**DOCUMENT REQUEST NO. 15:  All documents relating to the number, percentage, or rate of borrowers with federal loans serviced by Navient Solutions who were (or were not) opening, clicking links within, or otherwise responding to any email concerning renewal or recertification of a borrower's enrollment in any income-driven repayment plan, including any analysis, discussion, explanation, or evaluation of this data.**

**Response:**

In addition to the general objections, Request No. 15 is vague, overbroad, and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and/or the types of loans at issue, and (b) does not define with reasonable particularity how borrowers could have "otherwise respond[ed]" to an email concerning renewal or recertification.  Navient Solutions will identify the custodians principally responsible for analyzing the rates at which borrowers opened and clicked links within emails concerning the renewal of income-driven repayment plans during the relevant timeframe.  Navient Solutions will conduct a

26

reasonable search for and produce analyses of the number or percentage of

borrowers opening and/or clicking links within such emails that were conducted

between June 1, 2010 and March 30, 2015.

**DOCUMENT REQUEST NO. 16:  All documents reflecting the number, percentage, or rate of borrowers with federal loans serviced by Navient Solutions who timely renewed or recertified their enrollment in any income-driven repayment plan or who did not timely renew or recertify their enrollment in any income-driven repayment plan, including any analysis, discussion, explanation, or evaluation of this data.**

**Response:**

In addition to the general objections, Request No. 16 is overbroad and

unduly burdensome to the extent that it seeks (a) documents unrelated to the claims

in this action and/or the types of loans at issue, and (b) "[a]ll documents reflecting"

the number or percentage of borrowers who did or did not timely renew their

enrollment in any income-driven repayment plan.  Navient Solutions further

objects that this Request is duplicative of previous requests for information, and

that CFPB is already in possession of documents that appear to be responsive to

this Request.  Specifically:

- On August 7, 2015 and September 10, 2015, Navient Solutions, Inc. produced documents responsive to Written Report Request 11 of the July 7, 2015 CID issued by CFPB to Navient Solutions, Inc., which sought, "[f]or the time period between January 1, 2010 and March 31, 2015, in an Excel spreadsheet . . . a. The total number of borrowers with at least one subsidized Federal Student Loan that is within the

27

first three years of enrollment in IBR or PAYE who meet all of the following criteria: i. Had a $0 monthly payment amount for the subsidized Federal Student Loan(s) enrolled in IBR or PAYE; ii. Failed to recertify income information under IBR or PAYE for at least one billing period, causing the payment amount for the enrolled loan(s) to change from $0 to the permanent standard payment for at least one billing period; iii. Either enrolled in voluntary forbearance or had their delinquency cured by retroactive application of administrative forbearance following the failure to recertify income information under IBR or PAYE; and iv. Subsequently recertified income information under IBR, and returned to a $0 monthly payment amount for the loan(s) enrolled in IBR or PAYE."  Navient Solutions, Inc., July 7, 2015.  These documents are located at the Bates Ranges detailed in Appendix 1(U) to these responses.

Navient Solutions will identify the custodians principally responsible for analyzing or receiving data related to whether borrowers renew their enrollment in income-driven repayment plans during the relevant timeframe.  Navient Solutions will conduct a reasonable search for and produce analyses of the number or percentage of borrowers who renewed or failed to renew their enrollment in such plans between June 1, 2010 and March 30, 2015, to the extent any exist.

**DOCUMENT REQUEST NO. 17:  All documents reflecting the number, percentage, or rate of borrowers with federal loans serviced by Navient Solutions enrolled in any income-driven repayment plan who submitted an application to renew or recertify their enrollment in any income-driven repayment plan that was initially deemed incomplete or inaccurate but was subsequently made complete and accurate before the renewal deadline, who submitted an application to renew or recertify their enrollment in any income-driven repayment plan that was initially deemed incomplete or inaccurate but was not subsequently made complete and accurate before the renewal deadline, or who submitted an application to renew or recertify their**

28

enrollment in any income-driven repayment plan that was initially deemed complete and accurate, including any analysis, discussion, explanation, or evaluation of this data.

**Response**:

In addition to the general objections, Request No. 17 is overbroad and

unduly burdensome to the extent that it seeks (a) documents unrelated to the claims

in this action and/or the types of loans at issue, and (b) "[a]ll documents reflecting"

the number or percentage of borrowers who "did or did not" submit renewal forms.

Navient Solutions further objects to the extent that this Request seeks documents

already encompassed by the response to Request No. 16, and directs CFPB to its

response to that Request.

**DOCUMENT REQUEST NO. 18**:  **All documents reflecting any discussion, evaluation, or analysis of errors or problems in the processing, application, or allocation of payments for student loans that were happening on a repeated, recurring, or non-isolated basis or that had been the subject of complaints from more than one consumer, including any discussion, evaluation, or analysis of the adequacy, inadequacy, effectiveness, ineffectiveness, appropriateness, or inappropriateness of any policies, procedures, practices of Navient Solutions to prevent or reduce such errors or problems.**

**Response**:

In addition to the general objections, Request No. 18 is overbroad and

unduly burdensome to the extent that it seeks documents unrelated to the claims in

this action and/or the types of loans at issue.  CFPB has failed to identify any

29

specific payment processing errors underlying its claim that such errors were unfair to borrowers.  *See* Compl. ¶¶ 97-112.  Navient Solutions receives complaints regarding payment processing errors on a range of topics.  CFPB's request that Navient Solutions search for and produce documents related to payment processing errors without identifying the errors at issue is unreasonable.  Navient Solutions further objects that this Request is overbroad and unduly burdensome because it seeks "[a]ll documents reflecting" discussion, evaluation, and analysis of undefined payment processing errors.  Finally, Navient Solutions objects that this Request is duplicative of previous requests for information, and that CFPB is already in possession of documents that appear to be responsive to this Request. Specifically:

- On October 25, 2013 and December 20, 2013, Sallie Mae, Inc. produced documents responsive to Document Request 6 of the September 5, 2013 CID issued by CFPB to Sallie Mae, Inc., which sought "All customer complaints, whether received directly from the customer or through an intermediary, relating to your student loan payment processing, including, but not limited to, how overpayments, partial payments, and underpayments were applied to loans."  These documents are located at the Bates Ranges detailed in Appendix 1(V) to these responses.

- On July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 4 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "[a] copy of all reports and presentations documenting complaints received by you about your servicing of student loans."  CFPB CID to Sallie Mae, Inc., Apr. 29,

30

2014.  These documents are located at the Bates Range detailed in Appendix 1(W) of these responses.

**DOCUMENT REQUEST NO. 19:  All documents containing, discussing, or reflecting any requirements, instructions, policies, procedures, guidance, or training provided to employees, agents, or subcontractors of Navient Solutions relating to any requirement that a borrower demonstrate a certain payment history (such as making a certain number of consecutive, on-time payments) to become eligible for cosigner release for student loans.**

**Response:**

In addition to the general objections, Request No. 19 is unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and/or the types of loans at issue; and (b) "[a]ll documents," even those "discussing" requirements, instructions, policies, procedures, guidance, or training relating to communications regarding the payment history a borrower must demonstrate to be eligible for cosigner release.  Navient Solutions further objects that this Request is duplicative of previous requests for information, and that CFPB is already in possession of documents that appear to be responsive to this Request.  Specifically:

- On June 13, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 1 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "All policies and procedures relating to . . . a. Communications to borrowers regarding repayment plans for Federal Student Loans and Private Student Loans; b. Cosigner release; c. Consequences resulting from the death or bankruptcy of a cosigner; d. Quality assurance with respect to call center employees and customer service employees; and e. Collections for delinquent or defaulted student loans."  CFPB CID to Sallie Mae, Inc., Apr. 29, 2014.

31

These documents are located at the Bates Range detailed in Appendix 1(X) to these responses.

- On July 11, 2014 and July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 3 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "[a]ll unique versions of any training materials provided to your call center employees and customer service representatives."  CFPB CID to Sallie Mae, Inc., Apr. 29, 2014.  These documents are located at the Bates Range detailed in Appendix 1(Y) to these responses.

Navient Solutions will identify the custodians principally responsible for drafting or creating policies and procedures, call scripts, and training materials related to the payment history a borrower must demonstrate to be eligible for cosigner release.  Navient Solutions will undertake a reasonable search for and produce any such policies and procedures, call scripts, and training materials created between June 1, 2014 and July 1, 2015 so as to capture materials, if any, created after the prior productions.

**DOCUMENT REQUEST NO. 20:  All documents reflecting complaints, disputes, notices of error, or requests for escalation relating to any requirement that a borrower demonstrate a certain payment history (such as making a certain number of consecutive, on-time payments) to become eligible for cosigner release for student loans.**

**Response:**

In addition to the general objections, Request No. 20 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims

32

in this action and/or the types of loans at issue, and (b) "[a]ll documents reflecting"
borrower complaints and disputes relating to any requirement that a borrower
demonstrate a certain payment history to become eligible for cosigner release.

Navient Solutions further objects that this Request is duplicative of previous
requests for information, and that CFPB is already in possession of documents that
appear to be responsive to this Request.  Specifically:

- On July 30, 2014, Navient Solutions, Inc. produced documents
  responsive to Document Request 7 of the April 29, 2014 CID issued by
  CFPB to Sallie Mae, Inc., which sought "[a]ll documents referencing
  complaints about your customer service representatives or call center
  employees."  CFPB CID to Sallie Mae, Inc., Apr. 29, 2014.  These
  documents are located at the Bates Ranges detailed in Appendix 1(Z) to
  these responses.

- On July 30, 2014, Navient Solutions, Inc. produced documents
  responsive to Document Request 4 of the April 29, 2014 CID issued by
  CFPB to Sallie Mae, Inc., which sought "[a] copy of all reports and
  presentations documenting complaints received by you about your
  servicing of student loans."  CFPB CID to Sallie Mae, Inc., Apr. 29,
  2014.  These documents are located at the Bates Range detailed in
  Appendix 1(AA) of these responses.

- On July 11, 2014 and July 30, 2014, Navient Solutions, Inc. produced
  documents responsive to Document Request 6 of the April 29, 2014 CID
  issued by CFPB to Sallie Mae, Inc., which sought "[a] copy of each
  quality assurance report provided to your call center management team."
  CFPB CID to Sallie Mae, Inc., Apr. 29, 2014.  These documents are
  located at the Bates Ranges detailed in Appendix 1(BB) of these
  responses.

33

- On July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 8 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "[c]opies of all customer complaints, including, but not limited to, complaints received directly from a customer, indirectly through a governmental or other regulatory authority or the Better Business Bureau, or addressed to a Company executive, related to . . . [a] request to release the cosigner from obligations under the student loan borrower's loan." CFPB CID to Sallie Mae, Inc., Apr. 29, 2014. These documents are located at the Bates Range detailed in Appendix 1(CC) of these responses.

Navient Solutions states that it maintains a computer database in which customer complaints are logged. Navient Solutions will generate a report from that system that describes complaints related to eligibility for cosigner release that were received between July 1, 2014 and July 1, 2015, so as to capture customer complaints received after the prior productions.

**DOCUMENT REQUEST NO. 21:  All documents containing any discussion or analysis of the meaning or interpretation of any requirement that a borrower make a certain number of consecutive, on-time payments to become eligible for cosigner release for student loans.**

**Response:**

In addition to the general objections, Request No. 21 is unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and/or the types of loans at issue, and (b) "all" documents, even those "containing any discussion" of the number of consecutive, on-time payments a borrower must make to become eligible for cosigner release. Navient Solutions further objects to

34

the extent that this Request seeks documents already encompassed by the response to Request No. 19, and directs CFPB to its response to that Request.

**DOCUMENT REQUEST NO. 22:  All documents describing or referring to two or more on-time principal and interest payments that were not made in consecutive months as constituting "consecutive" payments (regardless of whether the document specifically relates to any cosigner release requirement).**

**Response:**

In addition to the general objections, Request No. 22 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and/or the types of loans at issue, and (b) "[a]ll documents describing or referring to" two or more on-time principal and interest payments that were not made in consecutive months as constituting "consecutive payments," regardless of whether such documents reflect any actual policy maintained by Navient Solutions.

Navient Solutions will identify the custodians principally responsible for drafting or creating requirements, instructions, policies, procedures, guidance, or training materials relating to borrower benefits during the relevant timeframe. Navient Solutions will conduct a reasonable search for and produce any such instructions, policies, procedures, guidance, or training materials created between January 1, 2010 and July 1, 2015, to the extent they define as "consecutive" two or

35

A121

more on-time principal and interest payments, even if the payments are not made

in consecutive months.

**DOCUMENT REQUEST NO. 23:  All documents containing, discussing, or reflecting any requirements, instructions, policies, procedures, guidance, or training provided to employees, agents, or subcontractors of Navient Solutions relating to credit reporting (i.e., the furnishing of information to credit reporting agencies) for borrowers whose federal student loans are discharged due to disability.**

**Response:**

In addition to the general objections, Request No. 23 is overbroad and

unduly burdensome to the extent that it seeks (a) documents unrelated to the claims

in this action and/or the types of loans at issue, including documents unrelated to

use of the AL ("Assigned to Government") code for borrowers whose federal

student loans are discharged due to disability, and (b) "[a]ll documents," even

those "discussing" requirements, instructions, policies, procedures, guidance, or

training materials.

Navient Solutions states that on or about May 17, 2013, Navient Solutions

discovered an issue regarding its use of the AL code to report a loan that had been

discharged due to the borrower's total and permanent disability.  Navient Solutions

will identify the custodians principally involved in discussions regarding Navient

36

Solutions' use of the AL Code after May 17, 2013 and will produce related

documents.

**DOCUMENT REQUEST NO. 24:  All documents relating to the use of the
"AL—Assigned to Government" code (or any variation thereof, including
"AL" or "Assigned to Government") in furnishing information to credit
reporting agencies, including (a) all documents containing, discussing, or
reflecting any requirements, instructions, policies, procedures, guidance, or
training relating to the use of the code in furnishing information to credit
reporting agencies, (b) all documents reflecting any awareness, discussion, or
analysis of the circumstances in which it is appropriate or inappropriate to
use the code in furnishing information to credit reporting agencies, and (c) all
documents reflecting any discussion, analysis, or quantification of the impact
on borrowers of the use of the code in furnishing information to credit
reporting agencies.**

**Response:**

In addition to the general objections, Request No. 24 is overbroad and

unduly burdensome to the extent that it seeks documents unrelated to the claims in

this action and/or the types of loans at issue.  Navient Solutions further objects to

the extent that this Request seeks documents already encompassed by the response

to Request No. 23, and directs CFPB to its response to that Request.

**DOCUMENT REQUEST NO. 25:  All documents reflecting complaints,
disputes, notices of error, or requests for escalation relating to credit
reporting for borrowers whose federal loans are discharged due to disability,
including any record of how such complaints or disputes were resolved and**

37

A123

**any communications with any credit reporting agency about any such complaints or disputes.**

**<u>Response</u>:**

In addition to the general objections, Request No. 25 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and/or the types of loans at issue, and (b) "[a]ll documents reflecting" borrower complaints, disputes, error notices, or escalation requests relating to credit reporting for borrowers whose federal loans are discharged due to disability, including documents not related to use of the AL code.

Navient Solutions states that it maintains a computer database in which customer complaints are logged. Navient Solutions will generate a report from that system that describes substantiated complaints related to use of the AL code.

**<u>DOCUMENT REQUEST NO. 26</u>:  All documents on which you rely to support any defense that you are asserting or will assert in this lawsuit.**

**<u>Response</u>:**

Navient Solutions objects to Request No. 26 as premature because it has not yet answered the Complaint or pled affirmative defenses. Navient Solutions will produce documents on which it intends to rely for summary judgment or trial.

38

Dated:  August 21, 2017          Respectfully submitted,

/s/ Matthew T. Martens
Matthew T. Martens (DC 1019099) (*pro hac vice*)
Jonathan E. Paikin (DC 466445) (*pro hac vice*)
Daniel P. Kearney (DC 977148) (*pro hac vice*)
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
matthew.martens@wilmerhale.com
jonathan.paikin@wilmerhale.com
daniel.kearney@wilmerhale.com
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

Daniel T. Brier (PA 52348)
Donna A. Walsh (PA 74833)
Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
dbrier@mbklaw.com
dwalsh@mbklaw.com
Tel: 570-342-6100
Fax: 570-342-6147

*Counsel for Navient Corporation, Navient Solutions, LLC, and Navient Solutions Credit Recovery, Inc.*

39

# CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2017, I served the foregoing Objections and Responses to Plaintiff's First Set of Requests for Production to CFPB by email to the following counsel for Plaintiff:

Nicholas Jabbour:  Nicholas.Jabbour@cfpb.gov
Ebony Sunala Johnson:  Ebony.Johnson@cfpb.gov
Lawrence DeMille-Wagman:  Lawrence.Wagman@cfpb.gov
Andrea Matthews:  Andrea.Matthews@cfpb.gov
Thomas H. Kim:  Thomas.Kim@cfpb.gov

Mr. Jabbour, on behalf of Plaintiff, previously consented to electronic service.


/s/ Karin Dryhurst
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

*Counsel for Navient Corporation, Navient Solutions, LLC, and Navient Solutions Credit Recovery, Inc.*

## Appendix 1

### (A)

| Bates Begin | Bates End |
|---|---|
| SLMA-005-0000001 | SLMA-005-0000100 |

### (B)

| Bates Begin | Bates End |
|---|---|
| NSI-005-0000754 | NSI-005-0009511 |
| NSI-010-0013393 | NSI-010-0013437 |
| NSI-011-0000001 | NSI-011-0004193 |

### (C)

| Bates Begin | Bates End |
|---|---|
| NSI-001-0004407 | NSI-001-0018519 |
| NSI-016-0018154 | NSI-016-0064412 |

### (D)

| Bates Begin | Bates End |
|---|---|
| NSI-001-0018849 | NSI-001-0018849 |
| NSI-016-0055313 | NSI-016-0055314 |
| NSI-016-0063674 | NSI-016-0063675 |

### (E)

| Bates Begin | Bates End |
|---|---|
| NSI-002-0000001 | NSI-002-0179951 |

### (F)

| Bates Begin | Bates End |
|---|---|
| NSI-007-0000001 | NSI-007-0062297 |
| NSI-008-0000001 | NSI-008-0005969 |
| NSI-010-0000001 | NSI-010-0007870 |

| NSI-014-0000001 | NSI-014-0001630 |

**(G)**

| Bates Begin | Bates End |
|---|---|
| NSI-001-0014644 | NSI-001-0014648 |
| NSI-001-0015569 | NSI-001-0015576 |
| NSI-001-0015577 | NSI-001-0015584 |
| NSI-001-0015942 | NSI-001-0015943 |

**(H)**

| Bates Begin | Bates End |
|---|---|
| NSI-001-0004558 | NSI-001-0004560 |
| NSI-001-0006490 | NSI-001-0006491 |
| NSI-001-0006497 | NSI-001-0006499 |
| NSI-001-0006617 | NSI-001-0006622 |
| NSI-001-0006664 | NSI-001-0006668 |
| NSI-001-0013592 | NSI-001-0013593 |
| NSI-001-0013596 | NSI-001-0013599 |
| NSI-001-0013600 | NSI-001-0013604 |
| NSI-001-0014542 | NSI-001-0014546 |
| NSI-001-0015530 | NSI-001-0015536 |
| NSI-001-0017164 | NSI-001-0018023 |

**(I)**

| Bates Begin | Bates End |
|---|---|
| NSI-001-0011222 | NSI-001-0011225 |
| NSI-001-0014817 | NSI-001-0014818 |
| NSI-001-0015926 | NSI-001-0015929 |
| NSI-001-0015942 | NSI-001-0015943 |
| NSI-001-0017164 | NSI-001-0018023 |

**(J)**

| Bates Begin | Bates End |
|---|---|

| | |
|---|---|
| NSI-001-0004407 | NSI-001-0018519 |
| NSI-016-0018154 | NSI-016-0064412 |

**(K)**

| Bates Begin | Bates End |
|---|---|
| NSI-016-0000426 | NSI-016-0000427 |
| NSI-016-0005083 | NSI-016-0005122 |
| NSI-016-0005126 | NSI-016-0005126 |
| NSI-016-0005129 | NSI-016-0005129 |
| NSI-016-0008336 | NSI-016-0008336 |
| NSI-016-0008399 | NSI-016-0011122 |
| NSI-016-0011124 | NSI-016-0011125 |
| NSI-016-0011129 | NSI-016-0011218 |
| NSI-016-0011220 | NSI-016-0011394 |
| NSI-016-0011400 | NSI-016-0012399 |
| NSI-016-0012505 | NSI-016-0012775 |
| NSI-016-0012779 | NSI-016-0012842 |
| NSI-016-0012847 | NSI-016-0013040 |
| NSI-016-0013043 | NSI-016-0013046 |
| NSI-016-0013056 | NSI-016-0013080 |
| NSI-016-0013086 | NSI-016-0014783 |
| NSI-016-0014791 | NSI-016-0015054 |
| NSI-016-0015057 | NSI-016-0015185 |
| NSI-016-0015193 | NSI-016-0016698 |
| NSI-016-0016700 | NSI-016-0016958 |
| NSI-016-0016960 | NSI-016-0017033 |
| NSI-016-0017055 | NSI-016-0017400 |
| NSI-016-0017403 | NSI-016-0017500 |
| NSI-016-0017504 | NSI-016-0017518 |
| NSI-016-0017576 | NSI-016-0017667 |
| NSI-016-0017669 | NSI-016-0017685 |
| NSI-016-0017689 | NSI-016-0017718 |
| NSI-016-0017732 | NSI-016-0017737 |
| NSI-016-0017739 | NSI-016-0017742 |
| NSI-016-0017744 | NSI-016-0017746 |
| NSI-016-0017820 | NSI-016-0017832 |

| NSI-016-0017899 | NSI-016-0017920 |
|---|---|
| NSI-016-0017942 | NSI-016-0018158 |
| NSI-016-0018163 | NSI-016-0018599 |
| NSI-016-0018634 | NSI-016-0055312 |
| NSI-016-0062919 | NSI-016-0062954 |
| NSI-016-0063107 | NSI-016-0063139 |

**(L)**

| Bates Begin | Bates End |
|---|---|
| NSI-002-0000001 | NSI-002-0179951 |

**(M)**

| Bates Begin | Bates End |
|---|---|
| NSI-007-0062298 | NSI-007-0062321 |
| NSI-010-0010016 | NSI-010-0013012 |

**(N)**

| Bates Begin | Bates End |
|---|---|
| NSI-007-0062322 | NSI-007-0071458 |
| NSI-010-0010016 | NSI-010-0013012 |
| NSI-014-0002728 | NSI-014-0003399 |

**(O)**

| Bates Begin | Bates End |
|---|---|
| NSI-014-0001631 | NSI-014-0003399 |

**(P)**

| Bates Begin | Bates End |
|---|---|
| NSI-012-0000001 | NSI-012-0007982 |
| NSI-013-0000001 | NSI-013-0038459 |

**(Q)**

| Bates Begin | Bates End |
|---|---|
| NSI-001-0000786 | NSI-001-0002205 |
| NSI-001-0002267 | NSI-001-0004082 |
| NSI-001-0005166 | NSI-001-0005190 |
| NSI-001-0005388 | NSI-001-0005390 |
| NSI-001-0006395 | NSI-001-0006414 |
| NSI-001-0006711 | NSI-001-0006713 |
| NSI-001-0012213 | NSI-001-0012241 |
| NSI-001-0012244 | NSI-001-0012288 |
| NSI-001-0012297 | NSI-001-0012310 |
| NSI-001-0012626 | NSI-001-0012631 |
| NSI-001-0013346 | NSI-001-0013370 |
| NSI-001-0013554 | NSI-001-0013591 |
| NSI-001-0013600 | NSI-001-0013616 |
| NSI-001-0013837 | NSI-001-0013855 |
| NSI-001-0014324 | NSI-001-0014349 |
| NSI-001-0014537 | NSI-001-0014551 |
| NSI-001-0014562 | NSI-001-0014594 |
| NSI-016-0016699 | NSI-016-0016699 |
| NSI-016-0017034 | NSI-016-0017043 |
| NSI-016-0063195 | NSI-016-0063224 |
| NSI-016-0063907 | NSI-016-0063916 |

**(R)**

| Bates Begin | Bates End |
|---|---|
| NSI-001-0000786 | NSI-001-0000794 |
| NSI-001-0000943 | NSI-001-0000954 |
| NSI-001-0000990 | NSI-001-0001003 |
| NSI-001-0001866 | NSI-001-0001877 |
| NSI-001-0001878 | NSI-001-0001879 |
| NSI-001-0003014 | NSI-001-0003030 |
| NSI-001-0004021 | NSI-001-0004032 |

**(S)**

| Bates Begin | Bates End |
|---|---|

A131

| NSI-005-0000754 | NSI-005-0009511 |
| NSI-010-0013393 | NSI-010-0013437 |
| NSI-011-0000001 | NSI-0004193 |

**(T)**

| Bates Begin | Bates End |
| --- | --- |
| NSI-030-0000001 | NSI-030-0000003 |

**(U)**

| Bates Begin | Bates End |
| --- | --- |
| NSI-029-0000001 | NSI-029-0000002 |
| NSI-026-0000001 | NSI-026-0000002 |

**(V)**

| Bates Begin | Bates End |
| --- | --- |
| SLMA-005-0000101 | SLMA-005-0000101 |
| SLMA-012-0000001 | SLMA-012-0000822 |

**(W)**

| Bates Begin | Bates End |
| --- | --- |
| NSI-014-0001631 | NSI-014-0003399 |

**(X)**

| Bates Begin | Bates End |
| --- | --- |
| NSI-002-0000001 | NSI-002-0179951 |

**(Y)**

| Bates Begin | Bates End |
| --- | --- |
| NSI-010-0002973 | NSI-010-0007870 |

**(Z)**

A132

| Bates Begin | Bates End |
|---|---|
| NSI-012-0000001 | NSI-012-0007982 |
| NSI-013-0000001 | NSI-013-0038459 |

**(AA)**

| Bates Begin | Bates End |
|---|---|
| NSI-014-0001631 | NSI-014-0003399 |

**(BB)**

| Bates Begin | Bates End |
|---|---|
| NSI-007-0062322 | NSI-007-0071458 |
| NSI-010-0010016 | NSI-010-0013012 |
| NSI-014-0002728 | NSI-014-0003399 |

**(CC)**

| Bates Begin | Bates End |
|---|---|
| NSI-013-0000001 | NSI-013-0003845 |

# Exhibit G



1700 G Street NW, Washington, DC 20552

September 18, 2017

<u>**Via Email**</u>

Matthew T. Martens: matthew.martens@wilmerhale.com
Jonathan Paikin: jonathan.paikin@wilmerhale.com
Daniel P. Kearney, Jr.: Daniel.kearney@wilmerhale.com
Karin Dryhurst: Karin.dryhurst@wilmerhale.com
Gideon Hart: Gideon.Hart@wilmerhale.com
Donna A. Walsh: dwalsh@mbklaw.com
Daniel Brier: dbrier@mbklaw.com

     Re:    *Consumer Financial Protection Bureau v. Navient Corp., et al.*,
             Case No. 3:17-CV-00101-RDM

Dear Counsel:

On behalf of the Consumer Financial Protection Bureau (Bureau), I write to begin the process of meeting and conferring with respect to serious deficiencies we have identified in the responses by each of the three Defendants to the requests for production that we served. In addition, I write to respond to your letter dated August 31, 2017 concerning our responses to the interrogatories and requests for production served by each of the three Defendants.

## I.   ISSUES REGARDING DEFENDANTS' RESPONSES TO THE BUREAU'S DISCOVERY

### A.   Failures to comply with requirements of Fed. R. Civ. P. 34

Before elaborating on specific issues with Defendants' responses to the Bureau's discovery, it is noteworthy that Defendants have approached their responses in ways that are plainly not allowed by the Federal Rules of Civil Procedure:

- Defendants assert a multitude of boilerplate "general objections," including burdensomeness, vagueness, and ambiguity. The Federal Rules do not allow general objections (except for privilege), requiring that, "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons."  Fed. R. Civ. P. 34(b)(2)(B); *Fischer v. Forrest*, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) (Peck, M.J.). Thus, courts have

made clear that general objections (except privilege) are disallowed and will not be deemed to have been properly asserted with respect to any specific discovery request. *See, e.g., Fischer*, 2017 WL 773694, at *3; *Sagness v. Duplechin*, 2017 WL 1183988, at *2 (D. Neb. Mar. 29, 2017); *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 2017 WL 976626 (N.D. Iowa Mar. 13, 2017); *Cafaro v. Zois*, 2016 WL 903307, at *1 (S.D. Fla. Mar. 9, 2016) ("Boilerplate objections may also border on a frivolous response to discovery requests.").

- Defendants have not complied with the requirement in the Federal Rules to specify a date certain by which documents will be produced. Fed. R. Civ. P. 34(b)(2)(B) (requiring that production "be completed no later than the time for inspection specified in the request or another reasonable time specified in the response"). While we understand that unexpected difficulties can arise that may necessitate extensions, and are willing to work with Defendants should those difficulties arise, the Rules require Defendants to provide a date by which they believe production will occur.

- In response to nearly every single document request, Defendants have asserted that the request is overbroad and unduly burdensome, without any explanation or elaboration as to the basis for such objections. Such conclusory objections are not permitted. *See* Fed. R. Civ. P. 34(b)(2)(B) (objections must be made "with specificity . . . , including the reasons").

- Finally, Defendants do not comply with the requirement that, to the extent objections (other than privilege) are asserted, Defendants must indicate "whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). Therefore, the Bureau has been placed in the position of trying to guess as to how the objections affect the scope of the search and production. By way of example, Navient Solutions asserts overbreadth and/or burden objections to 25 of the 26 requests, and in all of those 25 instances, Defendants do not indicate whether responsive materials are being withheld on the basis of these objections. Similarly, General Objection #7 of each of the Defendants' responses states: "As a general matter, [the Defendant] will interpret the Requests as not seeking documents unrelated to the practices and statements alleged in the Complaint." But none of the Defendants has indicated whether it is withholding any responsive materials on the basis of this general objection.  We believe your general objections are invalid, but in any case, please let us know if you plan to withhold documents based on any general objection.

### B.   Defendants' responses to specific document requests

We now proceed to a discussion of issues with Defendants' responses to specific document requests. At the outset, we will start with three points of agreement: (1) To the extent that Defendants already produced documents to the Bureau that are responsive to a particular request, Defendants need not re-produce those documents, as we made clear in our requests; (2) To the extent that a particular, identical version of a document is responsive to multiple requests, that document need not be produced multiple times; and (3) To the extent that it is obvious that a document deals only with a particular type of loan that is not at issue with respect to a particular claim (such as a document dealing only with the suitability of forbearance for private loans), such documents need not be produced. Thus, the Bureau does not take issue with any of Defendants' indications that they will not be producing the foregoing categories of documents, and will not further discuss Defendants' objections on the foregoing grounds.

### 1.   Navient Corporation's responses to the Bureau's requests for production

<u>Objections to Instructions, Item #2</u>

Navient Corporation does not present adequate grounds for limiting the scope of its production to documents beginning January 1, 2010, rather than January 1, 2009 (as the Bureau requested). It is well-established that parties are entitled to seek discovery of "[i]nformation concerning events that substantially preceded the occurrence of the incident that is the basis for the suit" because it "may shed important light on the facts directly relevant to a claim or defense, and thus may be relevant for discovery purposes." 6 James Wm. Moore et al., *Moore's Federal Practice* § 26.41[12] (3d ed.). Even an act beyond the period of limitations "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977). In particular, the contract between the Department of Education and Navient Corporation's predecessor-in-interest began on July 1, 2009, and therefore the Bureau's request for documents dating back to January 1, 2009 is reasonable. Accordingly, the Bureau does not agree with Navient Corporation's proposed time limitation.

<u>Document Request #1</u>

Navient Corporation has objected on the ground that the request seeks documents unrelated to the claims at issue, documents regarding contract terms never implemented, and all documents reflecting or discussing contract terms. While we agree

that Navient Corporation need not produce contract documents that are wholly irrelevant to the Bureau's claims or to any defense that Navient intends to assert, it is important that contract documents not be unreasonably withheld. For instance, because the complaint contains allegations concerning Defendants' uses of forbearance and income-driven repayment plans, and because Navient has suggested that it intends to raise compensation from the Department of Education as some sort of defense, contract documents concerning compensation for enrolling borrowers in such options are relevant. Similarly, even though the complaint contains allegations concerning two specific recertification communications, contract documents concerning Defendants' obligations with respect to recertification communications are relevant.

We cannot, however, agree to Navient Corporation's desire to exclude documents "regarding contract terms never implemented" and "all documents reflecting or discussing contract terms," to the extent such documents are relevant to the claims or defenses in this case. The Bureau is entitled to analyze all contract documents relevant to a claim or defense, including contract terms that were never implemented and discussions of contract terms.

Finally, Navient Corporation also indicates that it is limiting this request to a search of "centralized files for documents related to contracts with the Education Department and guaranty agencies," which would appear to exclude, among other things, internal communications. That limitation is unacceptable. Consistent with the Federal Rules, Navient Corporation must undertake a reasonable and diligent search of the sources and custodians most likely to have responsive information, and produce documents responsive to the request as written.

Document Request #2

While we agree that Navient Corporation need not produce documents that are wholly irrelevant to any claims or defenses in this litigation, Navient Corporation raises other limitations or objections that are unacceptable. The Bureau stands on its request for all documents "reflecting any discussion, evaluation, analysis, or dispute," and such documents should not be limited to "communications exchanged with the Education Department." Discussions, evaluations, and analyses concerning contractual performance (including discussions of any disputes concerning contractual performance) could occur internally to Navient Corporation or externally with parties other than the Education Department, and documents relating to any such discussions, evaluations, analyses, or disputes are relevant to the Bureau's claims or Navient Corporation's defenses.

4

Document Request #3

  In addition to invoices and requests for payments, the Bureau intended for this request to encompass responses to such invoices and requests for payments, and it was written accordingly. Therefore, the Bureau expects that responses to invoices and requests for payments will be produced.

Document Requests #4, #5, and #7

  While we agree that Navient Corporation need not produce documents that are wholly irrelevant to any claims or defenses in this litigation, to the extent that the remainder of Navient Corporation's responses are intended as some sort of additional substantive limitation, we do not accept those additional substantive limitations. Navient Corporation has not articulated any objection that would provide the basis for any additional substantive limitation, and Navient Corporation must conduct a reasonable and diligent search for documents responsive to the request as written (including internal and external communications) that is consistent with its obligations under the Federal Rules.

Document Request #6

  We agree that Navient Corporation need not produce documents that are wholly irrelevant to any claims or defenses in this litigation, but we do not accept any additional substantive limitation. For instance, the Bureau does not agree that this request encompasses only "audit reports," and stands on the original request seeking "[a]ll documents relating to any evaluation, auditing, monitoring, oversight, due diligence, quality assurance, or compliance review." Navient Corporation has not articulated any objection that would provide the basis for any additional substantive limitation, and Navient Corporation must conduct a reasonable and diligent search for documents responsive to the request as written (including internal and external communications) that is consistent with its obligations under the Federal Rules.

  With respect Navient Corporation's assertion that it "will not undertake a search of the files of in-house counsel or employees involved in [supervisory] examinations, or produce a log," the Bureau will agree to this limitation provided that it applies only to their documents generated in connection with supervisory examinations and provided that you agree the Bureau need not undertake a search of the files of its attorneys and employees involved in supervisory examinations for documents generated in connection with supervisory examinations.

<u>Document Requests #8, #9, #10, #11, #12</u>

In response to all of these requests, Navient Corporation states merely that it is "not aware of any documents" responsive to the requests. That is not an acceptable response. Consistent with the Federal Rules, Navient Corporation must undertake a reasonable and diligent search of the sources and custodians most likely to have responsive information, and produce documents responsive to the requests. *See, e.g., Hernandez v. Best Buy Co., Inc.*, 2014 WL 5454505, at *9 (S.D. Cal. Oct. 27, 2014) ("Simply stating that one is 'not aware' of responsive documents is vague and equivocal. . . . [T]he Court finds that plaintiff is entitled to an order compelling defendant to provide an unequivocal response . . . and to produce any and all responsive documents that are not privileged.").

Please state unequivocally that you have conducted a reasonable search for documents responsive to each of these requests and that you located no responsive documents as a result of those searches. If you have not conducted a reasonable search for documents responsive to these requests, please confirm that you will do so.

## 2. Pioneer Credit Recovery, Inc.'s responses to the Bureau's requests for production

<u>"Objections to Instructions," Item 2</u>

Pioneer, relying upon 12 U.S.C. § 5564(g)(1), indicates that it will "provide documents responsive to each request from January 18, 2014 to the present unless otherwise specified." However, as the Bureau has indicated in its response to interrogatory #1 from Pioneer, the statute of limitations set forth in 28 U.S.C. § 2462 (which requires commencement of an action "within five years from the date when the claim first accrued") may apply to certain of the claims against Pioneer. Thus, the Bureau's claims against Pioneer encompass the period from January 18, 2012 to the present. In any event, Pioneer's invocation of the statute of limitations is not adequate grounds for withholding of documents. As indicated above, it is well-established that parties are entitled to seek discovery of background information preceding the occurrence of the events underlying this lawsuit. In particular, Pioneer's contract with the Department of Education began on July 1, 2009, and therefore the Bureau's request for documents dating back to January 1, 2009 is reasonable. Accordingly, the Bureau does not agree with Pioneer's proposed time limitation.

6

Document Request #1

Pioneer's concern with respect to this request appears to be that it cannot speculate as to which documents it exchanged with the Department of Education that may have been used by the Department of Education to conduct the audit/review. However, even accepting your representation that the Department of Education did not specifically ask Pioneer for certain documents for the purpose of conducting the audit/review, this request does not seek only such documents. Rather, this request encompasses communications with the Department of Education after Pioneer was informed about the audit/review. Thus, while Pioneer need not speculate as to documents upon which the Department of Education may have relied in conducting the audit/review, to the extent that Pioneer exchanged documents with the Department of Education that discuss or mention the audit/review (regardless of when those documents were generated before or after the completion of the audit/review), Pioneer must produce those documents.

Document Request #2

While we agree that Pioneer need not produce documents that are wholly irrelevant to the claims in this litigation and that Pioneer need not provide any documents that are exact duplicates of documents produced by another defendant, Pioneer must search its files and produce documents responsive to this request.

Document Request #3

Pioneer has not articulated how it is unduly burdensome to produce "[a]ll documents containing, discussing, or reflecting" the items mentioned in this request, and the Bureau disagrees with Pioneer's attempt to limit this request to merely producing the policies and procedures, call scripts, and training materials post-dating August 2014. Pioneer has not articulated any objection that would provide the basis for any substantive or time limitation on this request, and Pioneer must conduct a reasonable and diligent search for documents responsive to the request as written that is consistent with its obligations under the Federal Rules. This includes, for example, responsive internal and external communications.

Document Request #4

While we agree that Pioneer need not produce documents that are wholly irrelevant to communications with borrowers about collection fees or credit reporting, Pioneer has not articulated how it is overbroad or unduly burdensome to search for and

7

produce the documents specified by this request. Thus, other than limiting this request to communications with borrowers about collection fees or credit reporting, to the extent that the remainder of Pioneer's response is intended to describe additional substantive limitations, we do not accept those additional substantive limitations. Pioneer has not articulated any objection that would provide the basis for any additional substantive limitation, and Navient Corporation must conduct a reasonable and diligent search that is consistent with its obligations under the Federal Rules. This includes, for example, responsive internal and external communications.

With respect Pioneer's assertion that it "will not undertake a search of the files of in-house counsel or employees involved in [supervisory] examination[s], or produce a log," the Bureau will agree to this limitation provided that it applies only to their documents generated in connection with supervisory examinations and provided that you agree the Bureau need not undertake a search of the files of its attorneys and employees involved in supervisory examinations for documents generated in connection with supervisory examinations.

Document Request #5

Pioneer indicates that it maintains a computer database in which customer complaints are logged, and will generate a report describing complaints related to the credit reporting and collection fee waiver benefits of rehabilitation. If any complaints are found in places other than this database (for example, borrower disputes conveyed through the e-OSCAR system), the Bureau expects that those sources will be searched as well. As articulated in the request, the Bureau also expects the production of all documents describing how the complaints or disputes were resolved and any communications with any credit reporting agency regarding the complaint or dispute. Please also confirm that the report of complaints you will generate will include all fields from the system that contain information reflecting any aspect of the complaints or resolution thereof.

Document Request #7

It is unclear from Pioneer's response whether the prior productions included the requested compensation metrics and policies created or implemented through the end of January 2015. The Bureau requests confirmation that there will be no gap in the time period for this request between the prior production and the production that Pioneer proposes to make. Please also confirm that the prior productions included the requested compensation metrics and policies for any agents or subcontractors of Pioneer responsible for enrolling consumers in the federal loan rehabilitation program.

8

### 3.   Navient Solutions, LLC's responses to the Bureau's requests for production

Objections to Instructions, Item #2

Navient Solutions does not present adequate grounds for limiting the scope of its production to documents from January 1, 2010, rather than January 1, 2009 (as the Bureau requested). As indicated above, it is well-established that parties are entitled to seek discovery of background information preceding the occurrence of the events underlying this lawsuit. In particular, the contract between the Department of Education and Navient Corporation's predecessor-in-interest began on July 1, 2009, and therefore the Bureau's request for documents dating back to January 1, 2009 is reasonable. Accordingly, the Bureau does not agree with Navient Solutions' proposed time limitation.

Document Request #1

While we agree that Navient Solutions need not produce documents that are wholly irrelevant to any claims or defenses in this litigation and that Navient Solutions need not provide any documents that are exact duplicates of documents produced by another defendant, Navient Solutions must otherwise produce documents responsive to this request. It is not sufficient for Navient Solutions to assert that, other than documents identified by Navient Corporation, it is "not aware of any documents" responsive to this request. Consistent with the Federal Rules, Navient Corporation must undertake a reasonable and diligent search of the sources and custodians most likely to have responsive information, and produce documents responsive to the requests. *See, e.g., Hernandez*, 2014 WL 5454505, at *9 ("Simply stating that one is 'not aware' of responsive documents is vague and equivocal. . . . [T]he Court finds that plaintiff is entitled to an order compelling defendant to provide an unequivocal response . . . and to produce any and all responsive documents that are not privileged.").

Document Request #2

We agree with Navient Solutions' proposed approach regarding subpart (a) of this request, except that we specifically request that, to the extent a template does not properly reflect any attachments that may be included with a communication to a borrower, Navient Solutions will need to produce the attachments that would have been included with the communication. With respect to subpart (c), we agree that this part can be satisfied by the production of evaluations conducted by Siegel and Gale, to the extent that no other testing or evaluation was done by any other entity, either internally

9

or externally. However, we cannot agree to the date limitation of July 1, 2011 with respect to subpart (c), as it would be relevant if there had been testing or evaluation of documents about forbearance or income-driven repayment plans that preceded July 1, 2011.

With respect to subpart (b), Navient Solutions has not provided any explanation as to how it is unduly burdensome or overbroad for Navient Solutions to produce the requested drafts of each version of communications with borrowers about forbearance or income-driven repayment plans. Indeed, Navient Solutions has identified that there are "employees principally responsible" for such drafting, and therefore, in the process of using "reasonable search terms to identify and produce final versions," it should not be unduly burdensome to also identify and produce drafts. Therefore, the Bureau stands by this request.

Document Request #3, #4, #5, #6, #7, #8, #22

In response to all of these requests, Navient Solutions attempts to rewrite the requests in either or both of two ways: (1) Navient Solutions attempts to produce only certain documents sought by the request, and/or (2) Navient attempts to impose a date range on the request that is narrower than the date range set forth by the Bureau. Navient does not explain why these limitations are appropriate, except to object in conclusory fashion on the grounds that the requests are overbroad and unduly burdensome, or to state that certain documents were previously produced (even though the request encompasses more documents than those that were previously produced). Because Navient Solutions has not articulated any objection that would provide the basis for any substantive limitation on these requests, the Bureau stands by these requests, and Navient Solutions must conduct a reasonable and diligent search for responsive documents (including internal and external communications) that is consistent with its obligations under the Federal Rules.

With respect Navient Solutions' assertion in response to document request #6 that it "will not undertake a search of the files of in-house counsel or employees involved in [supervisory] examinations, or produce a log," the Bureau will agree to this limitation provided that it applies only to their documents generated in connection with a supervisory examination and provided that you agree the Bureau need not undertake a search of the files of its attorneys and employees involved in supervisory examinations for documents generated in connection with supervisory examinations.

10

Document Request #9, #20, and #25

Navient Solutions indicates that it maintains a computer database in which customer complaints are logged, and will generate a report describing complaints related to forbearance and income-driven repayment plans (for request #9), complaint related to eligibility for cosigner release (for request #20), and "substantiated" complaints related to use of the AL code (for request #25). If any complaints are found in places other than this database, the Bureau expects that those sources will be searched as well. As articulated in the request, the Bureau also expects the production of all documents "reflecting" such complaints, which would include documents describing how the complaints or disputes were resolved and any analyses of the complaints or disputes on an aggregate basis. Please also confirm that the report of complaints you will generate will include all fields from the system that contain information reflecting any aspect of the complaints or resolution thereof.

In addition, we cannot agree to any date limitations with respect to these requests (as proposed in response to requests #9 and #20), as having all complaints from January 1, 2009 to the present is relevant in establishing the violations and the time period during which they occurred (as indicated previously, to the extent any responsive documents have been previously produced, they need not be re-produced). Finally, we do not agree to Navient Solutions only producing "substantiated" complaints in response to request #25; the Bureau's request is not limited to whatever substantiation test Navient Solutions has chosen to apply.

Document Request #10

The Bureau is concerned that limiting this request to only pages that contain "information about forbearance and income-driven repayment plans" – as opposed to pages that contain "any information about repayment options" – could exclude pages that contain statements to consumers such as those quoted in paragraphs 38 and 39 of the Complaint because those statements may merely reference forbearance or income-driven repayment plans without providing any substantive information about those options. Therefore, we request that Navient Solutions produce current versions and historical screenshots of each page of its consumer-facing public website and pages accessible by borrower log-in that contain any information about repayment options.

Document Request #11

The Bureau requests confirmation that Navient Solutions' prior productions included the requested compensation metrics and policies created or implemented

11

through April 1, 2014. Please also confirm that the prior productions included the requested compensation metrics and policies for any agents or subcontractors of Navient Solutions responsible for communications with or enrollment of borrowers in forbearance or income-driven repayment plans.

Document Requests #13 and #14

The Bureau disagrees with all limitations that Navient Solutions attempts to impose with respect to these requests, and stands by the requests as written. There is no basis for any date limitation proposed by Navient Solutions with respect to any part of these requests. All documents (including internal and external communications) reflecting the drafting, testing, evaluation, or analyses of the referenced communications, from January 1, 2009 to the present, are relevant to understand how specific language in the communications was chosen, how language in the communications impacted recertification rates, and whether Navient Solutions was precluded from using certain language (for privacy or other reasons). In addition, Navient Solutions has not explained any basis for limiting the scope of any part of these requests in the manner that it has proposed; conclusory assertions of burden or overbreadth do not suffice.

Document Requests #15, #16, and #17

The Bureau disagrees with any attempt to impose a date range that is narrower than the date range set forth by the Bureau. The Bureau is entitled to understand borrower behavior concerning recertification over time, in an attempt to understand how Navient Solutions' choices of language impacted borrowers.

We also disagree with any substantive limitations you seek to impose. For example, in response to request #15, you assert that you will search for and produce "analyses of the number or percentage of borrowers opening and/or clicking links within such emails." But this limitation would exclude responsive documents that are not "analyses," such as internal communications that discuss the click rates without analysis. Navient Solutions has not articulated any objection that would provide the basis for any substantive limitation, and it must conduct a reasonable and diligent search for documents responsive to the request as written (including internal and external communications) that is consistent with its obligations under the Federal Rules.

In response to request #17, Navient Solutions asserts an objection "to the extent that this Request seeks documents already encompassed by the response to Request No.

16." The Bureau expects that Navient Solutions will conduct a reasonable and diligent search for documents responsive to request #17, and if it is the case that all such documents are identical to documents being produced in response to request #16, then the documents need not be re-produced. However, any responsive documents that are not identical to documents produced in response to request #16 must be produced.

Document Request #18

The Bureau stands by this request as written, and expects Navient Solutions to conduct a reasonable and diligent search for responsive documents. The request does not require the identification of specific payment processing errors in order for Navient Solutions to conduct a reasonable and diligent search. Rather, Navient Solutions is required to identify those employees responsible for identifying errors or problems in the processing, application, or allocation of payments that were happening on a repeated, recurring, or non-isolated basis or that had been the subject of complaints from more than one consumer, and to produce responsive documents from those employees. If there are no such employees who perform such a function as part of any of their responsibilities (a fact that we believe would be highly probative with respect to the violation alleged in the complaint), then Navient Solutions can so indicate.

Document Requests #19 and #21

Navient Solutions attempts to rewrite request #19 in two ways: (1) Navient Solutions attempts to produce only certain documents sought by the request, and/or (2) Navient attempts to impose a date range on the request that is narrower than the date range set forth by the Bureau. Navient does not explain why these limitations are appropriate, except to object in conclusory fashion on the grounds that the request is unduly burdensome, and to state that certain documents were previously produced (even though the request encompasses more documents than those that were previously produced). Because Navient Solutions has not articulated any objection that would provide the basis for any substantive limitation on these requests, the Bureau stands by these requests, and Navient Solutions must conduct a reasonable and diligent search for responsive documents (including internal and external communications) that is consistent with its obligations under the Federal Rules.

In response to request #21, Navient Solutions asserts an objection "to the extent that this Request seeks documents already encompassed by the response to Request No. 19." The Bureau expects that Navient Solutions will conduct a reasonable and diligent search for documents responsive to request #21, and if it is the case that all such documents are identical to documents being produced in response to request #19, then

the documents need not be re-produced. However, any responsive documents that are not identical to documents produced in response to request #19 must be produced.

To the extent that the remainder of Navient Solutions' response to request #21 is intended to describe additional substantive limitations not set forth in the request, we do not accept those additional substantive limitations. Navient Solutions has not articulated any objection that would provide the basis for any additional substantive limitation, and Navient Solutions must conduct a reasonable and diligent search that is consistent with its obligations under the Federal Rules.

Document Requests #23 and #24

The Bureau disagrees with all limitations that Navient Solutions attempts to impose with respect to these requests, and stands by the requests as written. There is no basis for any date limitation proposed by Navient Solutions with respect to these requests; Navient's assertion that it discovered the "issue regarding its use of the AL code" "on or about May 17, 2013" and that it will therefore only produce documents after May 17, 2013 makes no sense; Navient's "discovery" date has no bearing on the scope of the production, and Navient's use of the "AL" code before and after that date are relevant to the reasonableness of Navient's furnishing policies and procedures. To the extent that the remainder of Navient Solutions' responses are intended as some sort of additional substantive limitation, we do not accept those additional substantive limitations. Navient Solutions has not articulated any objection that would provide the basis for any additional substantive limitation, and Navient Solutions must conduct a reasonable and diligent search for responsive documents (including internal and external communications) that is consistent with its obligations under the Federal Rules.

In response to request #24, Navient Solutions asserts an objection "to the extent that this Request seeks documents already encompassed by the response to Request No. 23." The Bureau expects that Navient Solutions will conduct a reasonable and diligent search for documents responsive to request #24, and if it is the case that all such documents are identical to documents being produced in response to request #23, then the documents need not be re-produced. However, any responsive documents that are not identical to documents produced in response to request #23 must be produced.

14

A148

**C.    Other Issues**

**1.    Document Custodians**

**a.    Selection of Custodians**

In your responses to many of our document requests, you have indicated that you will identify employees "principally responsible" for certain tasks and that you will search their files for responsive documents. We are concerned that in identifying the relevant custodians for many requests, you may be applying an overly narrow interpretation of the subject of the request.

For example, in response to document request #5 to Navient Solutions, Navient Solutions stated that it "will identify the employees principally responsible for *evaluating the effectiveness of policies* governing communications with borrowers regarding forbearance or income-driven repayment plans." (emphasis added). We are concerned that other individuals were or are principally responsible for other areas covered by the request as written, such as: (1) discussing, evaluating, or analyzing the adequacy, appropriateness, or effectiveness of any *instructions, guidance, or training regarding* the referenced communications that may not be a "policy" per se; (2) discussing, evaluating, or analyzing *deficiencies or problems* in Navient Solutions' requirements, instructions, policies, procedures, guidance, or training regarding the referenced communications; (3) discussing, evaluating, or analyzing the impact *on borrowers* of such requirements, instructions, policies, procedures, guidance, or training; and (4) discussing, evaluating, or analyzing *potential improvements* in such requirements, instructions, policies, procedures, guidance, or training.

To provide another example, in response to document request #6 to Navient Solutions, Navient Solutions stated that it "will identify the employees principally responsible for conducting audits, compliance reviews, or quality assurance reviews of communications with borrowers regarding forbearance and income-driven repayment plans." We are concerned that other individuals were or are principally responsible for other areas covered by the request as written, such as: (1) risk management analyses; and (2) developing actions plans in response to any audit or compliance reports or risk management analysis.

As a general matter, we do not accept any attempt to determine the relevant custodians for any request that is based on a narrowing of the request that the Bureau has not agreed to. We expect that the Defendants will comply with their obligation to

15

identify the key custodians for the document requests as written, unless a request is either narrowed by agreement or court order.

### b.  Exclusion of in-house counsel

General Objection #6 of each Defendant's responses to the Bureau's requests states that the Defendant "will not undertake a search of the files of in-house counsel (or produce a log) unless it has reason to believe that non-duplicative, non-privileged materials can be located in those files." However, in response to certain specific document requests, Defendants have stated that they will not search the files of in-house counsel or produce a log "because it would be unduly burdensome and not likely to lead to relevant non-privileged materials," without including an exception for in-house counsel for whom "it has reason to believe that non-duplicative, non-privileged materials can be located in those files."

Please confirm that the exception stated in General Objection #6 applies to the above-referenced statements in Defendants' responses to the specific requests. The exception is important for in-house counsel "[b]ecause in-house counsel may operate in a purely or primarily business capacity in connection with many corporate endeavors" and thus, "the presumption that attaches to communications with outside counsel does not extend to communications with in-house counsel." *Craig v. Rite Aid Corp.*, 2012 WL 426275, at *7 (M.D. Pa. 2012) (internal citation and quotation marks omitted).

### 2.  Entities to be searched

Though general objections are not allowed (and we believe they should be ignored entirely), we have an additional concern with respect to General Objection #4. Defendants indicate that because the Bureau has served discovery on each separate Defendant, Defendants are "interpret[ing] discovery directed to a particular Defendant to be seeking documents and information that is in the immediate possession of that particular Defendant (and not its subsidiaries and/or affiliates that are also Defendants)." While we agree that, unless otherwise stated, each Defendant need not produce documents and information that are in the possession of another Defendant, to the extent that a Defendant has possession, custody, or control of responsive documents or information that is in the possession of a subsidiary, affiliate, or other entity that is not a Defendant, we expect that such documents will be produced, consistent with the requirements of the Federal Rules. Please confirm that our understanding is correct.

16

## II.     RESPONSE TO YOUR AUGUST 31, 2017 LETTER

<u>Item #1</u>

Contrary to the assertion in item #1 of your letter, we have not refused to provide documents related to the investigation and supervision of any of the Defendants. As you acknowledge, your requests were overbroad because, as written, they did in fact seek documents such as hotel receipts from overnight stays by employees. We are open to discussing exactly what was meant by your requests. However, we note the following:

First, where the focus of our investigation and supervisory exams were documents received from Defendants that Defendants can readily examine in their own files, and where the Bureau has already identified and produced documents relied upon to support the allegations in the complaint, it is inaccurate for Defendants to claim that the Bureau is refusing to produce documents "that resulted in the filing of the Complaint."

Second, the portion of your request seeking "all documents generated by the CFPB" relating to the Bureau's investigation is overbroad because it would include many irrelevant documents, such as documents that merely reference the investigation. To the extent you seek documents generated by the Bureau that relate to the investigation and that contain information relating to Defendants' practices alleged in the Complaint, the key custodians for such documents are the Bureau employees who were principally responsible for the investigation – namely, the Bureau attorneys involved in the investigation of this action and others working at their direction. Consistent with the position stated in General Objection #6 and your responses to certain of the Bureau's documents requests, we will not search their files for "documents generated by the CFPB" relating to the investigation because it would be unduly burdensome and they are highly unlikely to contain non-duplicative, non-privileged documents responsive to these requests. However, the Bureau will search the files of personnel in the Bureau's Office for Students for non-privileged documents that relate to the investigation and that contain information relating to Defendants' practices alleged in the Complaint.

Third, the portion of your request seeking "all documents generated by the CFPB" relating to the Bureau's supervision of any Defendant is likewise overbroad because it would include many irrelevant documents, such as documents that merely reference the Bureau's supervision. To the extent you seek documents generated by the Bureau that relate to the Bureau's supervision of any Defendant and that contain information relating to Defendants' practices alleged in the Complaint, the key custodians for such documents are the Bureau attorneys and employees who were principally responsible

for the supervision of Defendants. Consistent with your position, we will not search the files of attorneys or employees involved in supervisory examinations for documents generated in connection with those supervisory examinations.

Fourth, we do not believe witness statements are discoverable. *See*, *e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 511 (1947) (internal citations omitted) ("This work is reflected, of course, in interviews, statements . . . and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the 'Work product of the lawyer.'"); *Peerless Heater Co. v. Mestek*, 1999 WL 35147370, at *1 (E.D. Pa. 1999) ("Traditionally, witness statements have been accorded work product protection because they reflect the attorney's thoughts and impressions from witness interviews."). We will search our investigative files for any other documents originally produced by a third-party (an entity that is neither a Defendant in this action nor a governmental agency) and produce any non-privileged documents that relate to Defendants' practices alleged in the Complaint.

<u>Item #2</u>

Defendants claim that the Bureau has not identified "a single witness other than its own enforcement lawyers," and has not provided "the names of third-party witnesses that provided information related to the allegations in the Complaint." Both claims are incorrect. In its discovery responses, the Bureau has identified all Bureau employees, including many non-attorneys, who are most knowledgeable about the allegations in the complaint. And in producing all of the documents upon which the Bureau relied to support our complaint (as the Bureau did at the Rule 30(b)(6) deposition), we provided the information known to the Bureau about many consumers upon whom the Bureau's allegations are based. Finally, in the Bureau's interrogatory responses, we identified specific calls with consumers upon which the Bureau's allegations are based; those calls were produced by Defendants, and Defendants can obtain the identifying information they desire about those consumers from their files.

With regard to your assertion that the Bureau must disclose the names of third-party witnesses who we intend to rely on to prove our case at trial, the Bureau is aware of its obligations under Rule 26(a)(1)(A)(i). Additionally, as stated in our response, other than the categories of information that we specifically state we will not produce based on our objections, we will search our files and produce non-privileged documents responsive to this request. This will include: (1) a list of individuals interviewed by the Bureau who provided information relating to Defendants' practices alleged in the Complaint; and (2) consumer complaints that relate to Defendants' practices alleged in

the Complaint that were submitted to the Bureau, other than those submitted to the Bureau's Office of Consumer Response or otherwise sent previously to Navient.

<u>Item #3</u>

You claim that it is not acceptable for the Bureau to not produce any documents in response to a request seeking "[a]ll Communications relating to this Action or the allegations in the Complaint."  As we noted in our response, that request is plainly overbroad, as it would encompass potentially numerous documents that are not relevant to any claim or defense – for example, communications that merely reference the lawsuit or that simply transmit complaints with no comment.

To the extent you seek communications relating to the Defendants' practices alleged in the Complaint, the key custodians for such documents are the Bureau's attorneys who were principally responsible for the investigation and prosecution of this action. Consistent with the position stated in General Objection #6 and your responses to certain of the Bureau's document requests, we will not search their files because it would be unduly burdensome and they are highly unlikely to contain non-duplicative, non-privileged documents responsive to these requests. However, the Bureau will search the files of personnel in the Bureau's Office for Students for non-privileged communications relating to Defendants' practices alleged in the Complaint.

<u>Item #4</u>

You have inserted the word "privilege" into Rule 34(b)(2)(C). But Rule 34(b)(2)(C) does not require a party to specify, at the time of responding to document requests, the exact documents that it is withholding on the basis of privilege. Privilege is an acceptable ground for an objection, and the responding party need not identify in its written responses whether any documents are being withheld on grounds of privilege; rather, a party can produce a privilege log after the production has been made. *See, e.g., Fischer*, 2017 WL 773694, at *3. There is no requirement for a pre-production privilege log, which appears to be what you are requesting. We note that you have made a general objection on privilege grounds that you assert applies to each of our discovery requests. *See* General Objection #6. With respect to footnotes 1-4 of your letter, we believe that any debate about privilege claims before privilege logs are exchanged is premature.

As for your request that the Bureau state whether it is planning to withhold certain categories of documents responsive to each request on the basis of some privilege, we are willing to provide such information if you are willing to provide the same information with respect to each of the Bureau's document requests.

19

Item #5

As you acknowledge, the Bureau has provided statements upon which borrowers relied to support its claim in Count I. The Bureau has also provided, in its complaint, at the Rule 30(b)(6) deposition, and in an itemized list of more than 200 calls the deceptive statements that form the basis for Counts VII-X. If Defendants do not believe that the Bureau has not satisfied its obligation at this early stage of the proceedings, we disagree.

With respect to Navient Solutions' interrogatory #11 and Pioneer interrogatory #3, as we stated in our responses, those requests are overly broad and unduly burdensome without any limitation as to subject matter. We request that you limit them to the false or misleading communications on which we rely to support our claims. If you agree, we will respond.

Item #6

As we indicated, we did not respond substantively to interrogatory #8 from Navient Solutions because the Bureau is not in possession of every such communication, while Navient Solutions can query its borrower files for the requested communications. Indeed, Navient Solutions' response to the Bureau's document request #2 served upon Navient Solutions confirms exactly what the Bureau wrote: Navient Solutions is in possession of the relevant documents and has not yet produced all of them to the Bureau. As we indicated, and as we reaffirm here, it defies logic for the Bureau to be expected to identify communications that it does not possess. In addition, if Navient Solutions believes that any such communications in its possession undermine the Bureau's theories, then Navient Solutions can make that argument at the appropriate time.

Item #7

In item #7, Defendants purport to provide a number of legal conclusions that the Bureau will be required to prove at trial. It is highly premature to brief the parties' contentions of law that should govern the outcome of this case. The Bureau stands on all of the interrogatory responses cited in item #7, which have been provided in the early stages of discovery, before the Bureau has received any substantive discovery responses from Defendants. As is the Bureau's right, the Bureau will further develop facts during discovery and supplement its responses as appropriate during the course of discovery.

Item #8

While interrogatory #15 from Navient Solutions refers to "payment processing *practices* that You allege is unfair," the heading of item #8 in your letter refers to "payment processing *errors* that are allegedly unfair." (emphases added). We hope that we can address your questions about this claim by clarifying the difference between the terms "practices" and "errors" as they are used in Count VI. In paragraphs 110-112 of the Complaint, the Bureau alleges that the following *practices* are unfair:

- "While Navient might correct a specific error if a consumer contacts Navient to report it, if the error is not escalated beyond a first-level customer service representative, Navient does not necessarily identify and fix the underlying issue causing the error to prevent it from recurring. As a result, some consumers have suffered the same payment processing error in multiple months." (Complaint ¶ 110.)

- "Moreover, Navient does not categorize most non-escalated consumer inquiries about payment processing errors. When borrowers and cosigners with non-escalated consumer inquiries contact Navient about payment processing errors, Navient personnel generally record details about the error in a freeform, narrative style in notes in the consumer's account, but those personnel are unable to use any codes or tags to categorize the inquiry or concern." (Complaint ¶ 111.)

- "Navient, thus, is unable to systematically search and/or aggregate these non-escalated inquiries. As a result, Navient has been unable to effectively understand many of the problems that consumers are experiencing with respect to payment processing and take action to prevent these problems from recurring or from impacting the same consumer again and again." (Complaint ¶ 112.)

The aforementioned practices resulted in recurring *errors*. The Bureau has alleged that the recurring *errors* that resulted from these practices include various payment processing *errors*. Examples of these payment processing *errors* are identified in our response to Navient Solutions' interrogatory #15.

Item #9

In response to Navient Solutions' document request #8, the Bureau has indicated that it "will produce the published versions of all proposed or final rules and regulations

and of all guidance relating to protection of consumer privacy in email Communications, as it relates to policies and practices alleged in the Complaint, to the extent such documents were not produced at the Rule 30(b)(6) deposition of the Bureau on August 4, 2017."

In response to Navient Solutions' document request #9, the Bureau has indicated that it will produce "the published versions of all proposed or final rules and regulations and of all guidance relating to the servicing policies and practices that are the subject of allegations in the Complaint, to the extent such documents were not produced at the Rule 30(b)(6) deposition of the Bureau on August 4, 2017."

Finally, in response to Pioneer document request #2, the Bureau has indicated that it "will produce the published versions of all proposed or enacted rulemaking and of all guidance that relates to Communications relating to the Federal Loan Rehabilitation Program that are the subject of allegations in the Complaint, to the extent such documents were not produced to Defendants at the Rule 30(b)(6) deposition of the Bureau on August 4, 2017."

It is not clear what additional documents Defendants believe they are entitled to that are not covered by the preceding statements. To the extent that Defendants believe they are entitled to pre-decisional and deliberative communications concerning rules, regulations, or guidance, we disagree. Such documents are neither relevant nor proportional to the needs of the case, and also are protected by the deliberative process privilege.

Item #10

We disagree that the practices of third-party servicers are relevant, and Defendants' conclusory allegation of "selective and inconsistent enforcement" is not relevant to any issue in this case. *See FTC v. Chemence, Inc.*, 209 F.Supp.3d 981, 986 (N.D. Ohio 2016) ("The FTC's lawsuit concerns *Chemence's* actions, not its competitor's actions. . . . Every element in [an FTC Act] claim relates to the conduct of the *defendant* in the lawsuit, not the conduct of other industry participants. Thus, the conduct of other participants in the cyanoacrylate glue industry–the information that Chemence now seeks–has no bearing on the FTC's claim. Even if Chemence could demonstrate that its competitors had violated the FTC Act but were not prosecuted, that would be irrelevant to the current lawsuit. The FTC alone is empowered to develop [an] enforcement policy best calculated to achieve the ends contemplated by Congress and to allocate its available funds and personnel in such a way as to execute its policy efficiently and economically.") (emphasis in original) (citations and quotations omitted).

Item #11

       Your request for documents "considered" is not tied in any way to a claim or defense in this case, and therefore does not satisfy the requirements of Rule 34. A request for documents "considered" could encompass every document that came into the possession of the Enforcement Attorneys investigating Defendants. That is simply not allowable under Rule 34. *See Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 4613390, at *10 n.8 (S.D.N.Y. Aug. 31, 2016) (holding that a request for all documents that came into the possession of the parties concerning the litigation did not satisfy the requirement that document requests must describe 'with reasonable particularity' what is to be produced). To the extent your request for documents "considered" requires the Bureau to divulge the identity of documents that Bureau attorneys physically reviewed and chose not to rely on, it seeks information protected by the attorney work product doctrine. *See, e.g., Weiss v. National Westminster Bank, PLC*, 242 F.R.D. 33, 62 (E.D.N.Y. 2007) (holding that interrogatory asking plaintiffs to identify all documents considered in preparing responses sought protected work product and narrowing interrogatory to require the plaintiff to identify and produce the non-privileged documents upon which they relied in preparing their responses).

Item #12

       With respect to damages, the Bureau has provided, in its initial disclosures, the "best information available related to the damages claim," which is the standard set forth in the case you cited. *Stemrich v. Zabiyaka*, 2013 WL 4080310, at *2 (M.D. Pa. Aug. 13, 2013). *See also* Fed. R. Civ. P. 26(a)(1) advisory committee's note ("[A] party would not be expected to provide a calculation of damages which ... depends on information in the possession of another party or person."). To the extent you believe that more is required at this point, we disagree. The Bureau will amend those initial disclosures as more information becomes available through discovery.

Item #13

       You argue that Defendants are entitled to know which documents, from Pioneer's and Navient Solutions' productions during the Bureau's investigations, the Bureau "intends to rely upon to support a particular claim." The Bureau identified such documents in a tabbed binder, along with a reference chart, at the Rule 30(b)(6) deposition of the Bureau.

<u>Item #14</u>

With the transmission of this letter, we are also transmitting the oath for the interrogatory responses required by Rule 33(b)(3).

We look forward to discussing these issues in more detail during our call scheduled for Thursday, September 21, 2017.

Sincerely,

/s/ Nicholas Jabbour

24

# Exhibit H

CONFIDENTIAL – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Consumer Financial Protection Bureau, | |
| Plaintiff, | |
| v. | Case No. 3:17-CV-00101-RDM (Hon. Robert D. Mariani) |
| Navient Corporation, *et al.*, | |
| Defendants. | |

## PLAINTIFF'S FIRST SUPPLEMENT TO
## ITS INITIAL DISCLOSURES

Pursuant to Rules 26(a)(1)(A) and 26(e)(1) of the Federal Rules of Civil Procedure, Plaintiff, the Consumer Financial Protection Bureau ("Bureau"), provides the following information to supplement its initial disclosures served upon Defendants Navient Corporation, Navient Solutions, LLC ("Navient Solutions"), and Pioneer Credit Recovery, Inc. ("Pioneer"), on May 10, 2017. The Bureau reserves the right to clarify, revise, or correct any of its initial disclosures, and may provide further supplementation as appropriate under Federal Rule of Civil Procedure 26(e). No information contained in these disclosures should be construed as a waiver of any applicable privilege, including, but not limited to, the attorney work product privilege, the attorney-client privilege, or the deliberative process privilege.

A160

CONFIDENTIAL – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

**I.  Rule 26(a)(1)(A)(i): "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment"**

In addition to the individuals identified in the Bureau's May 10, 2017 initial disclosures, the individuals listed below are likely to have discoverable information that the Bureau may use to support its claims. The lists include the subject(s) of the discoverable information they are likely to have, but because discovery in this action is ongoing, the lists should not be read to limit the subject matter(s) about which particular individuals may have discoverable information.

**A.  Defendants' Former Employees**

| Name | Contact Information | Date of Interview | Subject Matter |
|---|---|---|---|
| J█ B█ | █ | October 22, 2014 | Navient's customer service operations and quality assurance processes |
| E█ R█ | █ | October 29, 2014 | Navient's customer service operations, quality assurance processes, and employee training |
| I█ M█ | █ | October 28, 2014 | Navient's customer service operations and employee training |
| J█ B█ | █ | October 21, 2014 | Navient's customer service operations, quality assurance processes, and employee training |
| M█ A█ | █ | October 28, 2014 | Navient's customer service operations, collections operations, payment processing systems, consumer complaint resolution procedures, and employee training |

2

A161

CONFIDENTIAL – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

## B.   Consumers

| Name | Contact Information | Date of Interview | Subject Matter |
|---|---|---|---|
| K█ C█ | ████████ | January 27, 2017 | Navient's payment processing errors |
| M█ H█ | ████████ | January 25, 2017 | Navient's communications with the consumer regarding repayment options |
| J█ R█ | ████████ | January 25, 2017 | Navient's communications with the consumer regarding repayment options; Navient's payment processing errors |
| R█ W. D█ | ████████ | January 27, 2017 | Navient's communications with the consumer regarding repayment options |
| C█ P█ | ████████ | February 1, 2017 | Navient's communications with the consumer regarding repayment options; Pioneer's representations to consumers regarding the impact of completion of the federal loan rehabilitation program on the consumer's credit reports |
| J█ M█ | ████████ | February 2, 2017 | Navient's communications with the consumer regarding repayment options |
| R█ B█ | ████████ | February 13, 2017 | Navient's communications with the consumer regarding repayment options |
| N█ S█ | ████████ | July 19, 2016; February 13, 2017 | Navient's communications with the consumer regarding repayment options; Navient's payment processing errors |
| E█ W█ | ████████ | February 14, 2017 | Navient's communications with the consumer regarding repayment options |
| E█ W█ | ████████ | February 16, 2017 | Navient's communications with the consumer regarding repayment options; payment processing errors |

3

CONFIDENTIAL – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

| | | | |
|---|---|---|---|
| M█ B█ | ████████ | February 22, 2017 | Navient's communications with the consumer regarding repayment options |
| N█ W█ | ████████ | October 31, 2014; March 21, 2017 | Navient's furnishing of information to consumer reporting agencies relating to loans discharged due to the consumer's total and permanent disability |
| B█ C█ | ████████ | March 6, 2017 | Navient's communications with the consumer regarding repayment options |
| M█ P█ | ████████ | March 21, 2017 | Navient's communications with the consumer regarding repayment options |
| W█ M█ | ████████ | March 15, 2017 | Navient's communications with the consumer regarding repayment options |
| K█ R█ | ████████ | March 10, 2017 | Navient's communications with the consumer regarding repayment options |
| D█ S█ | ████████ | March 3, 2017 | Navient's communications with the consumer regarding repayment options |
| A█ H█ | ████████ | February 27, 2017 | Navient's communications with the consumer regarding repayment options |
| C█ C█ | ████████ | March 31, 2017 | Navient's communications with the consumer regarding repayment options |
| C█ M█ | ████████ | March 28, 2017 | Navient's furnishing of information to consumer reporting agencies relating to loans discharged due to the total and permanent disability of consumers |
| K█ B█ | ████████ | March 22, 2017 | Navient's communications with the consumer regarding repayment options |
| D█ T█ | ████████ | April 13, 2017 | Navient's communications with the consumer regarding repayment options |
| N█ T█ | ████████ | June 1, 2017 | Navient's payment processing errors |
| K█ K█ | ████████ | May 2, 2017 | Navient's payment processing errors |

4

CONFIDENTIAL – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

| | | | |
|---|---|---|---|
| J█ B█ | ███ | May 8, 2017 | Navient's communications with the consumer regarding repayment options |
| C█ S█ | ███ | June 14, 2017 | Navient's payment processing errors |
| M█ M█ | ███ | June 9, 2017 | Navient's communications with the consumer regarding repayment options |
| Z█ B█ | ███ | July 10, 2017 | Navient's communications with the consumer regarding repayment options; Navient's payment processing errors |
| N█ N█ | ███ | June 15, 2017 | Navient's communications with the consumer regarding repayment options |
| G█ J█ | ███ | June 26, 2017 | Navient's communications with the consumer regarding repayment options |
| S█ C█ | ███ | July 11, 2017 | Navient's communications with the consumer regarding repayment options |
| J█ M█y | ███ | July 17, 2017 | Navient's communications with the consumer regarding repayment options |
| J█ L█ | ███ | July 17, 2017 | Navient's communications with the consumer regarding repayment options |
| U█ E█ | ███ | July 17, 2017 | Navient's communications with the consumer regarding repayment options |
| J█ B█ | ███ | July 14, 2017 | Navient's communications with the consumer regarding repayment options |
| L█ F█ | ███ | July 19, 2017 | Navient's communications with the consumer regarding repayment options |
| R█ A█ | ███ | August 24, 2017 | Navient's communications with the consumer regarding repayment options |

CONFIDENTIAL – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

| | | | |
|---|---|---|---|
| H███ F███ | ████████ | August 16, 2017 | Navient's communications with the consumer regarding repayment options |
| S██ F██ | ████████ | July 31, 2017 | Navient's communications with the consumer regarding repayment options |
| V██ H███ | ██████ | August 7, 2017 | Navient's communications with the consumer regarding repayment options |
| B███ H███ | █████ | July 20, 2017 | Navient's communications with the consumer regarding repayment options |
| M██ M███ | ██████ | June 28, 2017 | Navient's communications with the consumer regarding repayment options |
| C███ H██ | | August 2, 2016 | Navient's payment processing errors |
| J████ G███ | | November 23, 2016 | Navient's communications with the consumer regarding repayment options |
| R███ B███ | | December 1, 2016 | Navient's communications with the consumer regarding repayment options |
| D███ H███ | | November 14, 2014 | Navient's payment processing errors |
| J███ S███ | | April 21, 2015 | Navient's communications with the consumer regarding repayment options; Navient's payment processing errors |
| B███ B███ | | September 8, 2016 | Navient's furnishing of information to consumer reporting agencies relating to loans discharged due to the consumer's total and permanent disability |
| J██ T██ | ██████ | | Navient's payment processing errors |
| C██ W██ | ██████ | | Navient's communications with the consumer regarding repayment options |
| C██ H██ | ██████ | | Navient's communications with the consumer regarding repayment options |

6

A165

CONFIDENTIAL – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

| Name | | Date | Subject Matter |
|---|---|---|---|
| L█ W█ | ██████████ | | Navient's communications with the consumer regarding repayment options |
| R█ W█ | ████████████ | February 7, 2017 | Navient's communications with the consumer regarding repayment options |
| J█ R█ | | | Navient's payment processing errors |
| R█ S█ | ██████ | | Navient's communications with the consumer regarding repayment options |
| O█ W█ | ██████ | | Navient's payment processing errors |

## C.    Other Individuals

| Name | Contact Information | Date of Interview | Subject Matter |
|---|---|---|---|
| J█ K█ | ██████ | February 24, 2017 | Navient's communications with consumers regarding repayment options; Navient's payment processing errors |
| A█ C█ | | | Navient's communications with consumers regarding repayment options; Navient's payment processing errors |
| J█ C█ | ██████ | | Navient's payment processing errors |
| K█ O█ | ████████ | | Navient's payment processing errors |

7

CONFIDENTIAL – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

II.   **Rule 26(a)(1)(A)(iii): "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered"**

The Bureau supplements the information provided in its May 10, 2017 disclosures, as follows:

- Count V: As stated previously, the Bureau intends to seek restitution for consumers for whom cosigner release was delayed or denied as a result of the imposition by Navient Solutions of a requirement concerning consecutive, on-time payments that was different from the requirement communicated to consumers. The Bureau believes that the amount of such restitution can be calculated by quantifying adverse consequences suffered by cosigners resulting from the delay or denial of cosigner release, such as impacts on credit reports and increased costs associated with obtaining financial products or services. The Bureau is unable to provide additional detail regarding this restitution theory at this time because information necessary to further develop the theory and quantify the amount is in the possession of Navient Solutions

8

CONFIDENTIAL – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

and/or Navient Corporation, including but not limited to information regarding the identity and characteristics of the affected cosigners. In addition to restitution for affected consumers, the Bureau is entitled to disgorgement against Navient Solutions and Navient Corporation of an amount that reasonably approximates their unjust enrichment flowing from their deceptive representations regarding cosigner release. The Bureau believes this amount can estimated based on the value to Navient Solutions and Navient Corporation of retaining cosigners on affected loans. The Bureau is unable to provide additional detail regarding this disgorgement theory at this time because information necessary to further develop the theory and quantify the amount is in the possession of Navient Solutions and Navient Corporation, including but not limited to documents or data regarding costs and risks associated with releasing cosigners, as well as documents or data regarding the benefit to Navient Solutions and Navient Corporation of retaining cosigners on loans.

- Count XI: As stated previously, the Bureau intends to seek

9

CONFIDENTIAL – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

restitution for borrowers who applied for TPD discharge and for whom Navient Solutions furnished to consumer reporting agencies Special Comment Code "AL—Assigned to Government" following approval for TPD discharge. The Bureau believes that the amount of such restitution can be calculated by quantifying adverse consequences suffered by such borrowers resulting from the use of that reporting code, such as impacts on credit reports and increased costs associated with obtaining financial products or services. The Bureau is unable to provide additional detail regarding this restitution theory at this time because information necessary to further develop the theory and quantify the amount is in the possession of Navient Solutions and Navient Corporation, including but not limited to information regarding the identity and characteristics of the affected consumers.

- Counts I-IV, VI-X: The Bureau is unable to provide additional detail regarding its restitution theories for these claims at this time because information necessary to further develop those theories and quantify the amounts is in the possession of Defendants,

10

CONFIDENTIAL – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

including but not limited to information regarding the identity and

characteristics of the affected consumers.


Dated: October 20, 2017                    Anthony Alexis
                                           *Enforcement Director*

                                           David Rubenstein
                                           *Deputy Enforcement Director*

                                           Thomas Kim
                                           *Assistant Deputy Enforcement Director*

                                           _/s/ Nicholas Jabbour_____
                                           Nicholas Jabbour, DC 500626
                                           (Email: Nicholas.Jabbour@cfpb.gov)
                                           (Phone: 202-435-7508)
                                           Ebony Sunala Johnson, VA 76890
                                           (Email: Ebony.Johnson@cfpb.gov)
                                           (Phone: 202-435-7245)
                                           Andrea Matthews, MA 694538
                                           (Email: Andrea.Matthews@cfpb.gov)
                                           (Phone: 202-435-7591)
                                           Manuel G. Arreaza, NY 5025309
                                           (Email: Manuel.Arreaza@cfpb.gov)
                                           (Phone: 202-435-7850)

                                           *Enforcement Attorneys*

                                           1700 G Street NW
                                           Washington, DC 20552
                                           Fax: 202-435-9346

                                           *Attorneys for Plaintiff*
                                           *Consumer Financial Protection Bureau*

                                           11

CONFIDENTIAL – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 20, 2017, I served the foregoing document by email to the following counsel for Defendants:

Jonathan Paikin: jonathan.paikin@wilmerhale.com
Daniel P. Kearney, Jr.: Daniel.kearney@wilmerhale.com
Matthew T. Martens: matthew.martens@wilmerhale.com
Karin Dryhurst: Karin.dryhurst@wilmerhale.com
Gideon Hart: Gideon.hart@wilmerhale.com
Donna A. Walsh: dwalsh@mbklaw.com
Daniel T. Brier: dbrier@mbklaw.com

Mr. Kearney, on behalf of Defendants, previously consented to electronic service.

   /s/ Nicholas Jabbour
Nicholas Jabbour, DC 500626
Nicholas.Jabbour@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-7508
Fax: 202-435-9346

*Attorney for Plaintiff*
*Consumer Financial Protection Bureau*

# Exhibit I

| From: | Jabbour, Nicholas (CFPB) |
|---|---|
| To: | Dryhurst, Karin; Paikin, Jonathan; Martens, Matthew T.; Kearney, Daniel P.; Hart, Gideon; "Dan Brier"; Donna Walsh |
| Cc: | Johnson, Ebony (CFPB); Wagman, Lawrence (CFPB); Matthews, Andrea (CFPB); Kim, Thomas (CFPB); Lee, Nicholas (CFPB); Arreaza, Manuel (CFPB) |
| Subject: | RE: CFPB v. Navient Corp. et al (M.D. Pa.) |
| Date: | Tuesday, February 06, 2018 8:55:08 PM |

Hi Karin,

Thanks for your message below.  The Bureau's attendees for the February 8 deposition will be Andrea Matthews and Nick Jabbour.  The Bureau's attendees for the February 12 deposition will be Andrea Matthews and Ebony Johnson.

At this point, we are not in a position to narrow the lists of consumers that we provided in our supplemental initial disclosures and supplemental interrogatory responses.  If Defendants would like to seek modification of any item in the Court's May 12, 2017 order, please let us know, and we will consider whether to consent to any proposed motion.

Thanks,
Nick

_____

**Nick Jabbour**
Enforcement Attorney
Consumer Financial Protection Bureau
Office:  202-435-7508
Cell:  202-760-5237
Email: nicholas.jabbour@cfpb.gov
consumerfinance.gov

Confidentiality Notice: If you received this email by mistake, you should notify the sender of the mistake and delete the email and any attachments. An inadvertent disclosure is not intended to waive any privileges.

**From:** Dryhurst, Karin [mailto:Karin.Dryhurst@wilmerhale.com]
**Sent:** Wednesday, January 31, 2018 7:36 PM
**To:** Jabbour, Nicholas (CFPB); Johnson, Ebony (CFPB); Wagman, Lawrence (CFPB); Matthews, Andrea (CFPB); Kim, Thomas (CFPB); Lee, Nicholas (CFPB); Arreaza, Manuel (CFPB)
**Cc:** Paikin, Jonathan; Martens, Matthew T.; Kearney, Daniel P.; Hart, Gideon; 'Dan Brier'; Donna Walsh
**Subject:** RE: CFPB v. Navient Corp. et al (M.D. Pa.)

Nick —

Thanks for confirming that the CFPB plans to attend the depositions on February 8 and 12.  Could you please provide a list of attendees for us to share with the firms that are hosting?  Counsel from Kirkland & Ellis will be in attendance at the deposition of Ms. ███████ on February 12, but will not participate on the record, and neither WilmerHale nor Kirkland & Ellis represent Ms. ██████ or Ms. ███████.  We will confirm the date and location of the deposition of M███ S███ once we have found a date that is convenient for her.

In your supplemental initial disclosures, you identified more than 50 consumers with information that the CFPB "may use to supports it claims."  As you know, each side is permitted to take only 20 depositions.  If you have identified consumers whose information you will not rely on at summary judgment or trial, we ask that you supplement your initial disclosures accordingly.  Similarly, in your supplemental interrogatory responses, you identified more than 30 consumers "harmed by enrollment in forbearance."  If you do not plan to rely on information from these consumers as evidence of harm, please supplement your interrogatory responses.  Otherwise, we need to figure out a plan for how to depose the people you have identified.

Thanks,
Karin

---

**From:** Jabbour, Nicholas (CFPB) [mailto:Nicholas.Jabbour@cfpb.gov]
**Sent:** Tuesday, January 30, 2018 8:13 PM
**To:** Dryhurst, Karin <Karin.Dryhurst@wilmerhale.com>; Paikin, Jonathan <Jonathan.Paikin@wilmerhale.com>; Martens, Matthew T. <Matthew.Martens@wilmerhale.com>; Kearney, Daniel P. <Daniel.Kearney@wilmerhale.com>; Hart, Gideon <Gideon.Hart@wilmerhale.com>; 'Dan Brier' <dbrier@mbklaw.com>; Donna Walsh <dwalsh@mbklaw.com>
**Cc:** Johnson, Ebony (CFPB) <Ebony.Johnson@cfpb.gov>; Wagman, Lawrence (CFPB) <Lawrence.DeMille-Wagman@cfpb.gov>; Kim, Thomas (CFPB) <Thomas.Kim@cfpb.gov>; Lee, Nicholas (CFPB) <Nicholas.Lee@cfpb.gov>; Matthews, Andrea (CFPB) <Andrea.Matthews@cfpb.gov>; Arreaza, Manuel (CFPB) <Manuel.Arreaza@cfpb.gov>
**Subject:** RE: CFPB v. Navient Corp. et al (M.D. Pa.)

Hello Karin,

Thanks very much for your letter.  The Bureau will attend the February 8 deposition of Ms. ████, as well as the February 12 deposition of Ms. ████.  Can you please let us know if there is any plan to proceed with the deposition of ████ that you previously noticed for February 7?

For the additional three witnesses that you will be subpoenaing tomorrow, the noticed deposition dates are all acceptable for the Bureau, but as you have done thus far, we would appreciate continuing to receive emails when you confirm deposition dates with third-party witnesses.

With respect to your inquiry regarding a plan to take discovery of the borrowers identified in the Bureau's interrogatory responses, we remain open to any suggestions you may have, but otherwise remain uncertain as to what input you are seeking from us.  In addition, I want to correct an inaccuracy in your letter.  You have indicated that we identified various borrowers in our interrogatory responses as having information that the Bureau "will rely upon to support [the Bureau's] claims"; that is not the representation we made in our interrogatory responses, nor in our initial disclosures.

Finally, you indicated that counsel from Kirkland & Ellis will attend at least one deposition.  Because

no attorneys from Kirkland have appeared in this matter, can you please confirm that counsel from Kirkland will not be asking any questions, or otherwise participating on the record, at whichever depositions they plan to attend?  Also, can you please confirm that any attorneys from Wilmer or Kirkland are appearing solely on behalf of the Defendants in the litigation with the Bureau, and are not representing the witnesses?

Thanks,
Nick

_____

**Nick Jabbour**
Enforcement Attorney
Consumer Financial Protection Bureau
Office:  202-435-7508
Cell:  202-760-5237
Email:  nicholas.jabbour@cfpb.gov
consumerfinance.gov

Confidentiality Notice: If you received this email by mistake, you should notify the sender of the mistake and delete the email and any attachments. An inadvertent disclosure is not intended to waive any privileges.

**From:** Dryhurst, Karin [mailto:Karin.Dryhurst@wilmerhale.com]
**Sent:** Tuesday, January 30, 2018 4:49 PM
**To:** Jabbour, Nicholas (CFPB); Johnson, Ebony (CFPB); Wagman, Lawrence (CFPB); Kim, Thomas (CFPB); Lee, Nicholas (CFPB); Matthews, Andrea (CFPB); Arreaza, Manuel (CFPB)
**Cc:** Paikin, Jonathan; Martens, Matthew T.; Kearney, Daniel P.; Hart, Gideon; 'Dan Brier'; Donna Walsh
**Subject:** CFPB v. Navient Corp. et al (M.D. Pa.)

Counsel –

Please see attached correspondence.

Thanks,
Karin

**Karin Dryhurst | WilmerHale**
1875 Pennsylvania Avenue NW
Washington, DC 20006 USA
+1 202 663 6248 (t)
+1 202 663 6363 (f)
karin.dryhurst@wilmerhale.com

**Please consider the environment before printing this email.**

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

A175

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

# Exhibit J

SENSITIVE – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Consumer Financial Protection Bureau,

      Plaintiff,

      v.

Navient Corporation, *et al.*,

      Defendants.

Case No. 3:17-CV-00101-RDM
(Hon. Robert D. Mariani)

### PLAINTIFF'S SECOND
### SUPPLEMENTAL AND AMENDED INITIAL DISCLOSURES

Pursuant to Rules 26(a)(1)(A) and 26(e)(1) of the Federal Rules of Civil Procedure, Plaintiff, the Consumer Financial Protection Bureau ("Bureau"), provides the following information to supplement and amend its initial disclosures served upon Defendants Navient Corporation, Navient Solutions, LLC ("Navient" or "Navient Solutions"), and Pioneer Credit Recovery, Inc. ("Pioneer"), on May 10, 2017 ("Opening Disclosures"), as well as the First Supplement to its Initial Disclosures served on October 20, 2017 ("First Supplement"). The Bureau reserves the right to clarify, revise, or correct any of its initial disclosures, and may provide further supplementation as appropriate under Federal Rule of Civil Procedure 26(e). No information contained in these disclosures should be construed as a waiver of any applicable privilege, including, but not limited to, the

SENSITIVE – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

attorney work product privilege, the attorney-client privilege, or the

deliberative process privilege.

**I.  Rule 26(a)(1)(A)(i): "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment"**

In addition to the individuals identified in the Opening Disclosures,

the individuals listed below are likely to have discoverable information that

the Bureau may use to support its claims. The chart below supplements and

amends the chart included in the First Supplement by removing certain

individuals from the chart, adding other individuals, and modifying certain

information associated with some of the previously disclosed individuals.

The chart includes the subject(s) of the discoverable information that the

individuals are likely to have, but because discovery in this action is

ongoing, the chart should not be read to limit the subject matter(s) about

which particular individuals may have discoverable information.

Individuals from whom the Bureau has obtained an executed declaration

are denoted with an asterisk next to the individual's name.

2

SENSITIVE – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

## A.    Former Employees of Defendants

| Name | Contact Information | Date of Interview | Description of Information or Knowledge |
|------|---------------------|-------------------|----------------------------------------|
| M█████ A█████ | ████████████ | October 28, 2014; November 1, 2017 | Navient's customer service operations, collections operations, payment processing systems, consumer complaint resolution procedures, employee training, and compensation of customer service employees.  The former employee worked as a collection specialist and later as a technical servicing trainer.  In those capacities, among other things, he made collections calls, trained new customer service employees in servicing, and listened to calls for training purposes.  During his time at Navient, the former employee gained familiarity with, among other things, Navient's hiring and training programs, software applications, scripts regarding forbearance, metrics used to analyze calls, the call escalation process, and payment processing of consecutive partial payments.  The former employee indicated that some employees put borrowers into forbearance without the borrower's consent. |

3

SENSITIVE – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

| P█ K████* | ████████ | November 9, 2017; January 8 and 12, 2018,; and February 13, 2018. | Navient's payment processing; complaint handling; and customer service operations. The former employee worked as a customer service representative responding to email and letter correspondence. He gained familiarity with Navient's training and the processes and practices associated with responding to consumer inquiries. He has familiarity with the complexities of responding to borrower inquires and the time it takes to respond to borrower inquiries. In his experience, borrowers relied on Navient Solutions and its customer service representatives to provide them with information so that they could make informed decisions.

He is familiar with Navient's productivity requirements, including that he had to respond to a certain number of correspondence per hour. He understood that failure to meet the requirement could lead to termination and that monetary bonuses were paid to employees who met or exceeded this requirement and other criteria. He has familiarity with shortcuts that customer service representatives took in order to meet the productivity requirement. He has information about how the training he received was in tension with the productivity requirement.

He has familiarity with how payment processing complaints were tracked and addressed, including that the ability to apply a direction from a borrower to future payments required escalation to the Office of the Customer Advocate. He also worked as a business analyst in the Office of the Customer Advocate, focusing on tracking and analyzing borrower feedback. |
|---|---|---|---|

4

SENSITIVE – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

| I███ S████* | ████████ | November 15, 2017; January 18 and 19, 2018; and February 13, 2018. | Navient's customer service operations, including employee training, employee compensation and performance review, communications with consumers regarding repayment options, and call center requirements and activities. The former employee worked as a customer service representative in or about 2012 and 2013. She regularly spoke with borrowers about repayment options, complaints, and account information, among other things. She gained familiarity with call center processes through, among other things, interacting with managers and customer service representatives and attending training. |
|---|---|---|---|
| | | | She has information relating to Navient cultivating a high-pressure environment that prioritized speed in resolving borrower calls. While she worked as a customer service representative, Navient Solutions imposed an average call time requirement of approximately seven minutes. The company conveyed it during training and through feedback sessions with managers. She has familiarity with how employees and Navient Solutions tracked call times. |
| | | | She has information about how Navient Solutions's compensation system provided bonuses to employees who, among other things, maintained average call times under the requirement. She has information about how Navient Solutions ranked employees according to, among other things, average call duration. In her experience, the call time requirement was difficult to ignore, in part because failure to satisfy the requirement led to termination. She is aware that employees took shortcuts to meet the call time requirement, including by not discussing or not thoroughly discussing income-driven repayment options. Other shortcuts that she is familiar with include needlessly transferring a call to another department and intentionally terminating a call. In her experience, it is difficult to have a thorough conversation with a borrower about their repayment options within the average call time requirement. |

5

SENSITIVE – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

| | | | |
|---|---|---|---|
| B█ K█ | ████████ | November 21, 2017; January 12, 2018 | Pioneer's collection practices. The former employee worked as a quality assurance monitoring specialist and a collections agent. She gained familiarity with representations to consumers regarding the impact of completion of the federal student loan rehabilitation program on the consumer's credit reports in or about 2012-2014, including communications in which the company indicated to the consumer that all derogatory information on her credit report concerning the loans in the rehabilitation program would be removed upon completion of the program. Her training did not distinguish between the derogatory information related to the delinquent payments leading up to the default and the derogatory information related to the default itself. Nor did the training explain that two trade lines exist when a borrower defaults on a student loan: the original trade line, which includes the delinquent payments leading to the default, and a separate trade line memorializing the default itself. She later discovered that the information about the delinquency would not be removed from the credit report. |

## B.   Consumers

| Name | Contact Information | Date of Interview | Description of Information or Knowledge |
|---|---|---|---|
| K█ C█ | ████████ | January 27, 2017 | Navient's payment processing errors in or about 2016 and 2017, including allocating the consumer's payments to loans contrary to the consumer's instructions specifying payments to certain loans. |
| R█ W. D█* | ████████ | January 27, 2017; February 23, 2018 | Navient's communications with the consumer regarding repayment options in or about 2015, including a call in which the consumer asked Navient if an income-based repayment option was available to her and Navient indicated it was not. In at least one other communication between Navient and the consumer, Navient offered the consumer a forbearance option only. |

6

A183

Case 3:17-cv-00101-RDM   Document 84-2   Filed 04/09/18   Page 186 of 236

SENSITIVE – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

| C█████ P████* | ██████████ | February 1, 2017; February 24-25, 2018 | Navient's communications with the consumer regarding repayment options, including communications regarding adjusting her federal loan payments.  In at least one such communication, Navient informed the consumer that her only option was forbearance. |
|---|---|---|---|
| F███ B███ | █████████ | February 13, 2017; February 26, 2018 | Navient's communications with the consumer regarding repayment options, including at least one communication in which Navient offered the consumer only the forbearance option for her federal loans. |
| N███ S███ | ██████████ | July 19, 2016; February 13, 2017; February 25, 2018 | Navient's communications with the consumer regarding repayment options in or about 2013, including at least one communication in which Navient informed the consumer that her only option was forbearance and did not provide information regarding other repayment options.

Navient's payment processing errors, including allocating the consumer's payments to all of the consumer's loans contrary to the consumer's instructions. |
| N█ W████ | ██████████ | October 31, 2014; March 21, 2017 | Navient's furnishing of information to consumer reporting agencies relating to loans discharged due to the consumer's total and permanent disability.  The consumer applied for a total and permanent disability discharge for his student loans and received a notice from Navient indicating that his loans were forgiven.  In or about 2014 or 2015, the consumer experienced difficulty applying for credit.  The consumer discovered that his credit score had dropped significantly because Navient used a credit reporting code indicating he had defaulted on the loan(s). |

7

SENSITIVE – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

| M█████ P██████ | ██████████████ | March 21, 2017 | Navient's communications with the consumer regarding repayment options in or after 2010, including at least one communication in which Navient advised the consumer to consider forbearance and deferment. Later, upon the consumer's own research, the consumer applied for an income-based repayment plan. |
|---|---|---|---|
| K█████ R██ | ██████████████ | March 10, 2017; February 26, 2018 | Navient's communications with the consumer regarding repayment options, including the consumer's request for reasonable repayment plans after the consumer's deferment options were exhausted.  At that time, the only options offered by Navient to the consumer were forbearance or deferment. |
| C█████ C██████ | ████████████ | March 31, 2017 | Navient's communications with the consumer regarding repayment options, including the following: Navient told the consumer that her federal loans were private loans and that she did not qualify for income-driven repayment plans. The consumer's loans were in forbearance at least once. In or about 2017, Navient advised the consumer that her loans were eligible for an income-driven repayment plan. |

8

SENSITIVE – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

| | | | |
|---|---|---|---|
| C████<br>M███* | ████████ | March 28, 2017 | Navient's furnishing of information to consumer reporting agencies relating to loans discharged due to the total and permanent disability of consumers, including the following: The Department of Education discharged the consumer's loans in March 2014 due to the consumer's total and permanent disability. After March 2014, the consumer's loans were reported as outstanding and 120 days late, and as having been "a collection account, insurance claim or government claim or [] terminated for default." The consumer's credit score declined during the period associated with the furnishing of incorrect credit information. |
| N███ T███ | ████████ | June 1, 2017; February 26, 2018 | Navient's payment processing errors, including that the consumer has had to contact Navient on at least four occasions to have Navient reallocate her payment to the loan with the highest interest rate. |
| J███ B███* | ████████ | May 8, 2017 | Navient's communications with the consumer regarding repayment options, including the following: In or about 2016, when the consumer called Navient to discuss repayment plans, Navient indicated that forbearance was the only option. The consumer's loans were enrolled in forbearance. The consumer subsequently learned from a third party about income-drive repayment options, and he proceeded to apply for an income-based repayment plan. |

9

SENSITIVE – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

| | | | |
|---|---|---|---|
| Z███ B████ * | ███████████ | July 10, 2017; February 26, 2018 | Navient's communications with the consumer regarding repayment options, including the following: From approximately 2010 to 2014, when the consumer called Navient to discuss repayment plans, Navient indicated on least one occasion that forbearance was the only option. During this time, the consumer's loans were in multiple forbearances. In 2014, the consumer's loans were in default. Subsequently, the consumer entered a loan rehabilitation program.<br><br>Navient's payment processing errors, including that Navient refused to allocate the consumer's payments to her highest interest rate loans. |
| N███ N███ | ████████ | June 15, 2017; Feb. 23, 2018 | Navient's communications with the consumer regarding repayment options. During 2013 or 2014, the consumer's account was current but the consumer was struggling to make payments. Navient provided the consumer with conflicting information about whether he should let his account become past due to receive help from Navient.  The consumer's loans were enrolled in forbearance from approximately 2009 until 2012. |
| G███ J█ | ████████ | June 26, 2017; February 2018 | Navient's communications with the consumer regarding repayment options, including the following: When the consumer contacted Navient about repayment assistance, Navient advised the consumer that forbearance or collections were the only options for his federal loans. The capitalization of interest on consumer's loans increased his principal balance by approximately $25,000. |

10

SENSITIVE – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

| | | | |
|---|---|---|---|
| J██ L██* | ██████ | July 17, 2017 | Navient's communications with the consumer regarding repayment options, including the following: beginning in or about 2007, Navient told the consumer that forbearance was her only option and did not discuss income-driven repayment plans. The consumer's principal balance increased by approximately $40,000. Navient recently suggested an income-based repayment plan after the consumer's eligibility for forbearance or deferment expired. |
| U██ H██ | ██████ | July 17, 2017 | Navient's communications with the consumer regarding repayment options. The consumer's loans were enrolled in multiple forbearances until approximately October 2015. The consumer discovered, on her own, income-driven repayment options and enrolled in income-based repayment in 2016. |
| L██ F██ | ██████ | July 19, 2017; February 25, 2018 | Navient's communications with the consumer regarding repayment options beginning in or about 2008, potentially including statements about forbearance or income-driven repayment plans.  The consumer's loans were enrolled in forbearance while the consumer was unemployed. |
| V██ H██ | ██████ | August 7, 2017; February 23, 2018 | Navient's communications with the consumer regarding repayment options, potentially including statements about forbearance or income-driven repayment plans. Prior to 2012, the consumer's loans were in forbearance or deferment multiple times, including during periods of unemployment. In 2012, the consumer enrolled in an income-driven repayment plan. |
| C██ H██ | ██████ | August 2, 2016; February 23, 2018 | Navient's payment processing errors, including Navient's inability to timely process the consumer's automatic debit application. |

11

SENSITIVE – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

| R█████ W█████ | ████████████ | February 7, 2017; February 23, 2018 | Navient's communications with the consumer regarding repayment options, including communications following the consumer's car accident in which Navient did not offer the consumer income-based repayment options. |
| A██ S████████ | ████████████ | June 12, 2017 February 26, 2018 | Navient's communications with the consumer regarding repayment options over a period of many years during which the consumer went into forbearance approximately three times due to job loss, disability and bankruptcy. |

## C.    Other Individuals

| Name | Contact Information | Date of Interview | Description of Information or Knowledge |
|---|---|---|---|
| R███ F█████* (former employee of i3 Group) | ████████████ | November 29, 2017; February 15-16, 2018 | Navient's communications with consumers regarding repayment options. As an employee of i3 Group, Mr. Farmer worked as a student loan counselor and as an auditor. He regularly participated in or audited calls between i3 Group employees, borrowers, and Navient representatives. He gained familiarity with Navient customer service representatives' practice in or about 2013 and 2014 of prioritizing forbearance or deferment for consumers who were struggling to make their payments, despite asking about income-driven repayment. He reported the problem to his supervisors and documented examples of the practice. He has knowledge that others also reported the problem. |

SENSITIVE – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

Dated: February 27, 2018

Kristen Donoghue
*Enforcement Director*

David Rubenstein
*Deputy Enforcement Director*

Thomas Kim
*Assistant Deputy Enforcement Director*

   /s/ Nicholas Jabbour
Nicholas Jabbour, DC 500626
(Nicholas.Jabbour@cfpb.gov; 202-435-7508)
Ebony Sunala Johnson, VA 76890
(Ebony.Johnson@cfpb.gov; 202-435-7245)
Nicholas Lee, DC 1004186
(Nicholas.Lee@cfpb.gov; 202-435-7059)
Manuel Arreaza, DC 1015283
(Manuel.Arreaza@cfpb.gov; 202-435-7850)
Andrea Matthews, MA 694538
(Andrea.Matthews@cfpb.gov; 202-435-7591)
*Enforcement Attorneys*

1700 G Street NW
Washington, DC 20552
Fax: 202-435-9346

*Attorneys for Plaintiff*
*Consumer Financial Protection Bureau*

13

SENSITIVE – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 27, 2018, I served the foregoing document

by email to the following counsel for Defendants:

Jonathan Paikin: jonathan.paikin@wilmerhale.com
Daniel P. Kearney, Jr.: Daniel.kearney@wilmerhale.com
Matthew T. Martens: matthew.martens@wilmerhale.com
Karin Dryhurst: Karin.dryhurst@wilmerhale.com
Gideon Hart: Gideon.hart@wilmerhale.com
Donna A. Walsh: dwalsh@mbklaw.com
Daniel T. Brier: dbrier@mbklaw.com

Mr. Kearney, on behalf of Defendants, previously consented to electronic

service.

   /s/ Nicholas Jabbour_____
Nicholas Jabbour, DC 500626
Nicholas.Jabbour@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-7508
Fax: 202-435-9346

*Attorney for Plaintiff*
*Consumer Financial Protection Bureau*

# Exhibit K

| From: | Dryhurst, Karin |
|---|---|
| To: | Jabbour, Nicholas (CFPB); Paikin, Jonathan; Kearney, Daniel P.; Martens, Matthew T.; "Dan Brier"; Donna Walsh; Hart, Gideon |
| Cc: | Matthews, Andrea (CFPB); Johnson, Ebony (CFPB); Kim, Thomas (CFPB); Lee, Nicholas (CFPB); Arreaza, Manuel (CFPB); Wagman, Lawrence (CFPB); Dudley, David (CFPB) |
| Subject: | RE: CFPB v. Navient Corp. et al (M.D. Pa.) |
| Date: | Tuesday, March 06, 2018 11:39:06 AM |

Nick,

By any reasonable count, your requests to Navient Solutions substantially exceed the 50 the CFPB agreed upon and that are allowed under the case management plan.  For example, in your first set of requests, Request 5 amounts to six requests, seeking three categories of information under subparts (a), (b), and (c) for "the communications described in subparts (a) and (b) of Request for Documents No. 4."  As another example, in your second set of requests, Request 34 totals 24 requests, seeking information about four categories of borrowers and at least six types of information on even a conservative reading: (1) borrower information, (2) loan-level data, (3) enrollment data, (4) credit reporting, (5) call recordings, and (6) correspondence.

The CFPB has not obtained permission from the Court to serve requests in excess of the agreed upon limits.  Please let us know immediately if you are withdrawing your requests.

Thanks,
Karin

---

**From:** Jabbour, Nicholas (CFPB) [mailto:Nicholas.Jabbour@cfpb.gov]
**Sent:** Tuesday, March 6, 2018 5:22 AM
**To:** Dryhurst, Karin <Karin.Dryhurst@wilmerhale.com>; Paikin, Jonathan <Jonathan.Paikin@wilmerhale.com>; Kearney, Daniel P. <Daniel.Kearney@wilmerhale.com>; Martens, Matthew T. <Matthew.Martens@wilmerhale.com>; 'Dan Brier' <dbrier@mbklaw.com>; Donna Walsh <dwalsh@mbklaw.com>; Hart, Gideon <Gideon.Hart@wilmerhale.com>
**Cc:** Matthews, Andrea (CFPB) <Andrea.Matthews@cfpb.gov>; Johnson, Ebony (CFPB) <Ebony.Johnson@cfpb.gov>; Kim, Thomas (CFPB) <Thomas.Kim@cfpb.gov>; Lee, Nicholas (CFPB) <Nicholas.Lee@cfpb.gov>; Arreaza, Manuel (CFPB) <Manuel.Arreaza@cfpb.gov>; Wagman, Lawrence (CFPB) <Lawrence.DeMille-Wagman@cfpb.gov>; Dudley, David (CFPB) <David.Dudley@cfpb.gov>
**Subject:** RE: CFPB v. Navient Corp. et al (M.D. Pa.)

Karin,

In order for us to better understand the basis for your concern, can you please inform us how you counted each of our requests for production to conclude that our first set of requests exceeded 50 and that the total number of requests exceeds 120?

Thank you,
Nick

**Nick Jabbour**
Enforcement Attorney
Consumer Financial Protection Bureau
Office: 202-435-7508
Cell: 202-760-5237
Email: nicholas.jabbour@cfpb.gov
consumerfinance.gov

Confidentiality Notice: If you received this email by mistake, you should notify the sender of the mistake and delete the email and any attachments. An inadvertent disclosure is not intended to waive any privileges.

**From:** Dryhurst, Karin [mailto:Karin.Dryhurst@wilmerhale.com]
**Sent:** Monday, March 05, 2018 12:05 PM
**To:** Jabbour, Nicholas (CFPB); Paikin, Jonathan; Kearney, Daniel P.; Martens, Matthew T.; 'Dan Brier'; Donna Walsh; Hart, Gideon
**Cc:** Matthews, Andrea (CFPB); Johnson, Ebony (CFPB); Kim, Thomas (CFPB); Lee, Nicholas (CFPB); Arreaza, Manuel (CFPB); Wagman, Lawrence (CFPB); Dudley, David (CFPB)
**Subject:** RE: CFPB v. Navient Corp. et al (M.D. Pa.)

Nick,

At the outset of this case, we proposed that each Defendant be served with up to 25 document requests.  Given the multi-year investigation and large number of requests that had already been served prior to the initiation of this lawsuit, this seemed more than sufficient.  The CFPB nevertheless demanded that each Defendant be served with up to 50 document requests.  As a compromise, we reluctantly agreed in the joint case management plan to the CFPB's demand for up to 50 document requests for Navient Solutions.  *See* Doc. 39, Joint Case Management Plan, at ¶ 4.5.3.  For good reason, parties are not allowed to skirt limitations on the number of discovery requests by including multiple subparts -- each subpart counts as a separate request.  The CFPB's first set of requests easily exceeded the agreed upon 50 requests.  We objected at the time, but again, in the interests of compromise did not withhold any documents on that basis.  With this second set of requests including subparts, the total document requests served on Navient Solutions now exceeds 120 requests; more than double the amount of requests that the CFPB itself proposed it be allowed and to which Defendants reluctantly agreed.  Notably, none of the new requests are for things that could not have been included at the time the first set of fifty-plus requests were served.  Accordingly, the CFPB needs to demonstrate good cause and obtain permission from the Court to serve these requests.  This second set of requests was improperly served in violation of the joint case management plan.   Please promptly confirm that you are withdrawing these requests.

Thanks,
Karin

**From:** Jabbour, Nicholas (CFPB) [mailto:Nicholas.Jabbour@cfpb.gov]
**Sent:** Wednesday, February 28, 2018 8:06 PM
**To:** Paikin, Jonathan <Jonathan.Paikin@wilmerhale.com>; Dryhurst, Karin <Karin.Dryhurst@wilmerhale.com>; Kearney, Daniel P. <Daniel.Kearney@wilmerhale.com>;

Martens, Matthew T. <Matthew.Martens@wilmerhale.com>; 'Dan Brier' <dbrier@mbklaw.com>;
Donna Walsh <dwalsh@mbklaw.com>; Hart, Gideon <Gideon.Hart@wilmerhale.com>
**Cc:** Matthews, Andrea (CFPB) <Andrea.Matthews@cfpb.gov>; Johnson, Ebony (CFPB)
<Ebony.Johnson@cfpb.gov>; Kim, Thomas (CFPB) <Thomas.Kim@cfpb.gov>; Lee, Nicholas (CFPB)
<Nicholas.Lee@cfpb.gov>; Arreaza, Manuel (CFPB) <Manuel.Arreaza@cfpb.gov>; Wagman,
Lawrence (CFPB) <Lawrence.DeMille-Wagman@cfpb.gov>; Dudley, David (CFPB)
<David.Dudley@cfpb.gov>
**Subject:** CFPB v. Navient Corp. et al (M.D. Pa.)

All,

Attached are the following:

1. The Bureau's second set of requests for production to Navient Solutions, LLC.
2. The Bureau's first set of interrogatories to Navient Solutions, LLC.
3. A subpoena to i3 Group, LLC.  The Bureau intends to serve the subpoena later this week.

To the extent that Defendants believe that approval from the U.S. Department of Education is
necessary to provide any of the information or documents sought by the requests for production or
interrogatories, we are happy to participate in any discussions that occur on this subject with the
U.S. Department of Education and recommend that those discussions occur as soon as possible to
avoid any delays in production.

Thanks,
Nick

_____

**Nick Jabbour**
Enforcement Attorney
Consumer Financial Protection Bureau
Office:  202-435-7508
Cell: 202-760-5237
Email:  nicholas.jabbour@cfpb.gov
**consumerfinance.gov**

Confidentiality Notice: If you received this email by mistake, you should notify the sender of the
mistake and delete the email and any attachments. An inadvertent disclosure is not intended to
waive any privileges.

# Exhibit L

| | |
|---|---|
| **From:** | Jabbour, Nicholas (CFPB) |
| **To:** | Paikin, Jonathan; Dryhurst, Karin; Martens, Matthew T.; Kearney, Daniel P.; Hart, Gideon; Dan Brier; Donna Walsh |
| **Cc:** | Lee, Nicholas (CFPB); Kim, Thomas (CFPB); Wagman, Lawrence (CFPB); Dudley, David (CFPB); Matthews, Andrea (CFPB); Johnson, Ebony (CFPB); Arreaza, Manuel (CFPB) |
| **Subject:** | RE: Navient █████ Deposition |
| **Date:** | Thursday, March 08, 2018 6:17:51 PM |
| **Attachments:** | █████ documents #2.zip |

Jonathan,

First, we are not refusing to meet with you to discuss discovery issues.  With respect to the issues raised in our February 27, 2018 letter, our view is that we had satisfied our meet-and-confer obligations, though we are well aware that you may disagree.  As to other issues, we never indicated an unwillingness to meet with you.

Second, I never "suggest[ed] that [you] ever agreed declarations are privileged."  I was simply explaining how we had expressed our view, in two letters, that witness statements are not discoverable, and how we did not read any of your letters as disputing that view.  We now understand, based on your letter to the Court two days ago, that you do dispute that view.

Finally, while we are not producing notes of interviews (which can be taken by attorneys and individuals acting at the direction of attorneys), we are producing all written communications with consumers we have interviewed, including executed declarations, draft declarations exchanged with the consumers, and all other written communications exchanged with the consumers.  We are willing to do this notwithstanding the fact that we believe that witness statements are privileged.  We cited case law to that effect in our September 18, 2017 letter, and case law also extends this privilege to draft witness statements and communications relating to the drafting of witness statements.  *See, e.g., Doe v. Luzerne County*, 2008 WL 2518131, at *4 (M.D. Pa. 2008); *Burlington v. News Corp.*, 2010 WL 11474545, at *1 (E.D. Pa. 2010); *Schoenmann v. Federal Deposit Insurance Corporation*, 7 F.Supp.3d 1009, 1014 (N.D. Cal. 2014).  Nonetheless, despite the case law, let me reiterate: we are producing all written communications with consumers we have interviewed, including executed declarations, draft declarations sent to or received from those consumers, and all other written communications exchanged with those consumers.  Our production of such documents is without prejudice to, and shall not be construed as a waiver of, any privilege we may assert with respect to any other category of documents.

In accordance with the preceding paragraph, attached is the remaining written communication we exchanged with Mr. B█████.  It is a cover letter, and a blank version of the declaration he signed.  These should be treated as Confidential pursuant to the Protective Order, and can be accessed using the same password as before.

Thanks,
Nick

_____

**Nick Jabbour**
Enforcement Attorney

Consumer Financial Protection Bureau
Office: 202-435-7508
Cell: 202-760-5237
Email: nicholas.jabbour@cfpb.gov
consumerfinance.gov

Confidentiality Notice: If you received this email by mistake, you should notify the sender of the
mistake and delete the email and any attachments. An inadvertent disclosure is not intended to
waive any privileges.

**From:** Paikin, Jonathan [mailto:Jonathan.Paikin@wilmerhale.com]
**Sent:** Thursday, March 08, 2018 9:26 AM
**To:** Jabbour, Nicholas (CFPB)
**Cc:** Dryhurst, Karin; Martens, Matthew T.; Kearney, Daniel P.; Hart, Gideon; Dan Brier; Donna Walsh;
Lee, Nicholas (CFPB); Kim, Thomas (CFPB); Wagman, Lawrence (CFPB); Dudley, David (CFPB);
Matthews, Andrea (CFPB); Johnson, Ebony (CFPB); Arreaza, Manuel (CFPB)
**Subject:** RE: Navient B███ Deposition

Nick,

We are still processing the potential implications of your 11 pm email.  This is an important issue,
and we need to have clarity on the CFPB's position with respect to what "witness statements" are
being withheld on the basis of privilege.  I went back and reread the letter exchanges referenced in
your email this morning.  I understood the CFPB's position to be that it was asserting work product
protection over attorney notes of interviews, but that it would be producing non-privileged
documents.  What I did not appreciate until your 11 pm email below is that the CFPB may not share
what I believed to be a common understanding of principles of work product protection.  I may be
misreading your email, but I think that you are saying that the CFPB's position is that sworn witness
declarations, drafts of declarations shared with non-parties, and perhaps other things beyond
attorney notes of interviews are privileged or subject to work product protection.  And, you seem to
be saying that as a "compromise," the CFPB will produce sworn witness declarations even though it
still considers them to be subject to work product protection, which leaves open the question of
what is not part of your "compromise" and is still being withheld on the basis of privilege.  To avoid
any inadvertent confusion, can you please succinctly state what categories of documents (other than
attorney notes, which we agreed were work product) the CFPB considers to be privileged "witness
statements" that it is withholding on the basis of a privilege.  And, given that Mr. B███'s deposition
is tomorrow, I would appreciate if you could identify as early in the day today as possible any
document (other than attorney notes) related to Mr. B███ that the CFPB has not produced on the
basis of privilege.  I know that you are refusing to meet with us to discuss discovery issues since
cancelling our planned Friday meeting, but I am available for a call if you would prefer to have a
discussion about this rather than exchange emails about it.

**Jonathan E. Paikin | WilmerHale**
1875 Pennsylvania Avenue, NW | Washington, DC 20006
(202) 663-6703 (office) | (202) 460-9571 (mobile)
e-mail: jonathan.paikin@wilmerhale.com

**From:** Paikin, Jonathan
**Sent:** Wednesday, March 7, 2018 11:49 PM
**To:** Jabbour, Nicholas (CFPB) <Nicholas.Jabbour@cfpb.gov>
**Cc:** Dryhurst, Karin <Karin.Dryhurst@wilmerhale.com>; Martens, Matthew T. <Matthew.Martens@wilmerhale.com>; Kearney, Daniel P. <Daniel.Kearney@wilmerhale.com>; Hart, Gideon <Gideon.Hart@wilmerhale.com>; Dan Brier <dbrier@mbklaw.com>; Donna Walsh <dwalsh@mbklaw.com>; Lee, Nicholas (CFPB) <Nicholas.Lee@cfpb.gov>; Kim, Thomas (CFPB) <Thomas.Kim@cfpb.gov>; Wagman, Lawrence (CFPB) <Lawrence.DeMille-Wagman@cfpb.gov>; Dudley, David (CFPB) <David.Dudley@cfpb.gov>; Matthews, Andrea (CFPB) <Andrea.Matthews@cfpb.gov>; Johnson, Ebony (CFPB) <Ebony.Johnson@cfpb.gov>; Arreaza, Manuel (CFPB) <Manuel.Arreaza@cfpb.gov>
**Subject:** Re: Navient ███ Deposition

Nick, in addition, while it should go without saying, any draft of a declaration that was transmitted to or from a third party borrower is not privileged and also must be produced.

On Mar 7, 2018, at 11:25 PM, Paikin, Jonathan <Jonathan.Paikin@wilmerhale.com> wrote:

> Nick, attorney notes of interviews may be work product.  Declarations are sworn statements of a witness, not attorney notes.   Your suggestion that I ever agreed declarations are privileged is both false and patently absurd.  Please produce all declarations immediately.

> On Mar 7, 2018, at 11:00 PM, Jabbour, Nicholas (CFPB) <Nicholas.Jabbour@cfpb.gov> wrote:

>> Karin,

>> Attached are the Bureau's communications with Mr. ███, including the executed declaration.  The password is the same as the one we have used before.  These documents should be treated as Confidential pursuant to the Confidentiality Agreement and Protective Order in this case.

>> Please note the following with respect to the Bureau's production of executed declarations: In our September 18, 2017 letter, we indicated that we do not believe that witness statements are discoverable, and provided case law supporting our position.  We reiterated our view in our October 6, 2017 letter.  In Jonathan's September 28, 2017 and October 24, 2017 letters, he indicated his view that the names of witnesses, along with the dates of interviews and subject matters of interviews, would need to be disclosed, but did not take issue with our position that witness statements are not discoverable.  Nonetheless, now that we are aware of your position, expressed below and in your letter to the Court filed

yesterday, that declarations should be produced, and in the interest of compromise, we will produce all executed declarations.  As noted in the preceding paragraph, Mr. B████'s declaration is attached to this email, and the remaining declarations, along with other communications with consumers, should be ready for production next week.

The Bureau's attendees at Mr. B████'s deposition will be Andrea Matthews and Nick Lee.

Thanks,
Nick

_____

**Nick Jabbour**
Enforcement Attorney
Consumer Financial Protection Bureau
Office:  202-435-7508
Cell:  202-760-5237
Email:  nicholas.jabbour@cfpb.gov
consumerfinance.gov

Confidentiality Notice: If you received this email by mistake, you should notify the sender of the mistake and delete the email and any attachments. An inadvertent disclosure is not intended to waive any privileges.

**From:** Dryhurst, Karin [mailto:Karin.Dryhurst@wilmerhale.com]
**Sent:** Wednesday, March 07, 2018 2:48 PM
**To:** Jabbour, Nicholas (CFPB); Lee, Nicholas (CFPB); Kim, Thomas (CFPB); Wagman, Lawrence (CFPB); Dudley, David (CFPB); Matthews, Andrea (CFPB); Johnson, Ebony (CFPB); Arreaza, Manuel (CFPB)
**Cc:** Paikin, Jonathan; Martens, Matthew T.; Kearney, Daniel P.; Hart, Gideon; 'Dan Brier'; Donna Walsh
**Subject:** Navient B████ Deposition

Nick –

Are you planning to produce your communications with █████ B████ regarding Navient, including the executed declaration referenced in your disclosures and interrogatory responses?  Please also provide your list of attendees.

Thanks,
Karin

**Karin Dryhurst | WilmerHale**
1875 Pennsylvania Avenue NW
Washington, DC 20006 USA
+1 202 663 6248 (t)

+1 202 663 6363 (f)

karin.dryhurst@wilmerhale.com

**Please consider the environment before printing this email.**

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com— and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

<█████ documents.zip>

# Exhibit M

THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Consumer Financial Protection Bureau, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:CV-17-00101 |
| | ) | (Hon. Robert D. Mariani) |
| Navient Corporation, *et al.,* | ) | |
| | ) | |
| *Defendants*. | ) | |

## DEFENDANTS' FIRST SUPPLEMENTAL AND AMENDED
## INITIAL DISCLOSURES

Pursuant to Federal Rule of Civil Procedure 26(a)(1) and the Court's Case Management Conference Order, dated March 16, 2017, Defendants Navient Corporation, Navient Solutions, LLC, and Pioneer Credit Recovery, Inc. make the following supplemental and amended disclosures.  Defendants make these disclosures based on the information reasonably available to them as of March 16, 2018.  Defendants reserve the right to clarify, alter, amend, modify, or supplement these disclosures if additional information becomes available.  Defendants also do not waive their rights to object to the use of the information or to the submission of any improper discovery requests.

1

I.    INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION THAT
      DEFENDANTS MAY USE TO SUPPORT THEIR CLAIMS OR DEFENSES
      (FEDERAL RULE 26(a)(1)(A)(i))

| Name | Subject(s) |
|------|-----------|
| Roger Miller* | Information technology related to servicing loans, including payment processing and borrower communications |
| Lisa Stashik* | Oversight of customer experience, customer complaints, and quality assurance, including oversight of the servicing call center and other borrower communications |
| John Zemetro* | Servicing operations, including payment and forms processing |
| Patricia Peterson* | Operational reporting and training related to servicing and collections |
| Kevin Woods | Department of Education contract negotiation, requirements, and change requests |
| Jack Frazier | Communications related to the repayment of defaulted federal student loans, including loan rehabilitation |
| Patricia Potomis | Audit and review processes related to servicing |
| Jennifer Domenick | Compliance related to servicing and collections |
| Brad Jones | Credit reporting |
| Angela Kamionka | Quality assurance related to servicing |
| Robert Sommer | Regulatory compliance related to servicing and collections |
| Brian Lanham | Call center operations |
| K█████ B█████ | Communications about repayment options, including income-driven repayment options |
| S█████ C█████ | Communications about repayment options, including income-driven repayment options |
| G█████ J█████ | Communications about repayment options, including income-driven repayment options |

2

| Name | Subject(s) |
|------|-----------|
| J███ B███ | Communications about repayment options, including income-driven repayment options |

The individuals with an asterisk after their name have already been deposed by the Consumer Financial Protection Bureau ("CFPB") during its investigation preceding this lawsuit.  With the exception of K██ B████, S██████ C███████, G████ J███████, and J███ B████, who the CFPB has previously contacted, all the individuals identified above may be contacted through undersigned counsel.  In addition to those individuals, Defendants believe there are individuals at the United States Department of Education that have discoverable information Defendants will use to support their claims or defenses.  Defendants will supplement their disclosures once those individuals have been identified.

## II.    DESCRIPTION BY CATEGORY AND LOCATION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND TANGIBLE THINGS THAT DEFENDANTS MAY USE TO SUPPORT THEIR CLAIMS OR DEFENSES (FEDERAL RULE 26(a)(1)(A)(ii))

The documents listed below are located at Defendants' offices.  Defendants also believe they are in the possession of the United States Department of Education.  Documents prepared by or for counsel, and other documents subject to the protection of a privilege or the attorney work product doctrine, are not included.  The following categories of documents may be used by Defendants to support their claims and defenses:

- Defendants' contractual relationship with the Department of Education, including communications about change requests and associated costs.

- Defendants' compliance with regulations governing student loan servicing and collection, and borrower privacy.

- Data, policies, procedures, and borrower communications related to forbearance and IDR repayment plans, including the requirements for renewing those plans.

- Expenses incurred in loan servicing and collections.

- Training materials and guidance provided to employees charged with servicing and collections.

- Borrower consent to receive electronic communications from Navient Solutions, and communications sent pursuant to that consent.

- Data, policies, procedures, and communications with borrowers related to payment processing.

- Policies, procedures, and communications with borrowers related to borrower complaints about payment processing.

- Navient Solutions' disclosure of borrower "total and permanent disability" loan discharges to consumer credit reporting agencies.

- Data, policies, procedures, and communications with borrowers regarding cosigner release requirements.

- Data, policies, procedures, and borrower communications related to the federal loan rehabilitation program.

- Defendants' corporate structure.

## III.     COMPUTATION OF DAMAGES (FEDERAL RULE 26(a)(1)(A)(iii))

Defendants have not asserted a claim for damages.  Defendants will

supplement this response in the event they file a counterclaim or third party claim.

4

## IV.       INSURANCE AGREEMENTS (FEDERAL RULE 26(a)(1)(A)(iv))

Defendants are providing for inspection and copying as under Rule 34 the

primary insurance agreement that may be available to satisfy all or part of a

possible judgment in the action or to indemnify or reimburse for payments made to

satisfy the judgment.

Dated:  March 16, 2017          Respectfully submitted,

/s/ Matthew T. Martens
Matthew T. Martens (DC 1019099) (*pro hac vice*)
Jonathan E. Paikin (DC 466445) (*pro hac vice*)
Daniel P. Kearney (DC 977148) (*pro hac vice*)
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
matthew.martens@wilmerhale.com
jonathan.paikin@wilmerhale.com
daniel.kearney@wilmerhale.com
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

Daniel T. Brier (PA 52348)
Donna A. Walsh (PA 74833)
Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
dbrier@mbklaw.com
dwalsh@mbklaw.com
Tel: 570-342-6100
Fax: 570-342-6147

*Counsel for Navient Corporation, Navient Solutions, LLC, and Pioneer Credit Recovery, Inc.*

6

# Exhibit N

**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

Consumer Financial Protection Bureau,

*Plaintiff,*

v.

Navient Corporation, *et al.,*

*Defendants*

Civil Action No. 3:CV-17-00101
(Hon. Robert D. Mariani)

## DEFENDANT NAVIENT SOLUTIONS, LLC'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION

Pursuant to Rule 34 of the Federal Rules of Civil Procedure ("FRCP"), Defendant Navient Solutions, LLC ("Navient Solutions"), through its undersigned counsel, responds and objects to Plaintiff Consumer Financial Protection Bureau ("CFPB")'s Second Set of Requests for Production (the "Requests") including the instructions and definitions therein.

These Requests were served in violation of the Joint Case Management Plan agreed upon by both parties and entered by the Court on May 5, 2017, limiting the number of Requests the CFPB is permitted to serve on Navient Solutions to fifty.  The CFPB neither sought nor received permission from the Court to serve these Requests.  Nor has the CFPB explained why any of these new Requests could not have been served in May 2017, as part of its first set of requests. In addition to exceeding the permitted number of requests, the CFPB's nine-month delay in serving these Requests has added needless expense by seeking the collection and review of documents that would have been far more efficient and less expensive to gather and review if it had been included as part of the efforts undertaken to respond to the first set of requests. Because the CFPB refused to seek permission from the Court to serve these Requests, and so as to have this issue resolved promptly, Navient Solutions itself raised this issue with the Court by letter dated March 6, 2018, and it will be the subject of a Hearing scheduled for April 17, 2018. Navient Solutions has nevertheless begun the steps necessary to be in position to promptly

A210

produce, or make available for inspection, documents responsive to these Requests in the event the Court permits them to be served, and sets forth its specific and general objections to these new Requests below.

Most of the documents responsive to these Requests are maintained on Navient Solutions' computer systems in electronic format.  As noted, the process for identifying, gathering, uploading, reviewing, and producing responsive documents is underway, but as of the date of these responses is not completed.  Navient Solutions will be prepared to produce documents responsive to these Requests on a rolling basis.  In addition, for some Requests, Navient Solutions will be prepared to make responsive documents available for inspection on a mutually convenient date.

## GENERAL OBJECTIONS

Navient Solutions incorporates by reference the general objections and objections to instructions made in its August 21, 2017 Responses and Objections to Plaintiff's First Set of Requests for Production in response to each specific Request below.  Navient Solutions expressly does not waive or prejudice any additional objection it may later assert in response to a specific Request or any other discovery.  Navient Solutions also makes the following additional general objection:

9.      The second set of Requests brings the total number of enumerated requests to 43, but through the CFPB's use of "subparts," the actual number of Requests served on Navient Solutions in this action exceeds 100.  And those Requests are in addition to the numerous formal and informal requests made during the multi-year investigation that preceded this lawsuit. Moreover, the nine months of delay between the service of the first set of requests and the second imposes significant costs and burden on Navient Solutions that was easily avoidable. These new Requests are, in many respects, not related to the issues that have been identified by

the CFPB for trial in response to discovery served by Defendants.  In addition, many of these

Requests seek information regarding spreadsheets that were prepared and shared solely for the

purpose of pre-litigation settlement discussions subject to Federal Rule of Evidence 408.  The

CFPB was also aware of the May 11, 2018 fact discovery cut-off date, but waited until less than

two months before the close of fact discovery to serve demands for literally millions of borrower

records and other information that could not practically be produced in that timeframe.

Accordingly, Navient Solutions objects because the timing, number, and substance of these new

Requests appear designed to harass and are not for a legitimate purpose.

## SPECIFIC RESPONSES

**DOCUMENT REQUEST NO. 27:  All documents considered or relied upon in responding
to any Interrogatory, or described in the response to any Interrogatory.**

**Response**:

      Navient Solutions will produce responsive, non-privileged documents.

**DOCUMENT REQUEST NO. 28:  All documents used to monitor, track, or record criteria
or factors relating to eligibility for monetary incentive awards or bonuses, including
spreadsheets and charts documenting average call handling time, for employees or agents
of Navient Solutions whose primary responsibility at any time during the applicable time
period was answering phone calls from federal loan borrowers (and who would therefore
speak with federal loan borrowers regarding repayment options).**

**Response**:

      Request No. 28 is overbroad and unduly burdensome to the extent that it seeks (a)

documents unrelated to the claims in this action and (b) "[a]ll documents" used to "monitor,

track, or record criteria or factors relating to monetary incentive awards or bonus" for any

employee or agent over a nine-year period who answered phone calls from federal loan

borrowers.  Navient Solutions has employed thousands of call agents since January 1, 2010 and

"all documents" would include every document related to every individual employee's

compensation.  Navient Solutions further objects because "primary responsibility" is an

ambiguous term that fails to identify with reasonable particularity the type of documents being sought.  Navient Solutions also objects because this Request is duplicative of Request No. 11, and directs the CFPB to Navient Solutions' response to that Request and the documents produced in response thereto.

Nonetheless, Navient Solutions has undertaken a reasonable search and will produce reports regarding compensation metrics used to determine monetary incentive awards or bonuses for employees or agents of Navient Solutions whose responsibilities included answering phone calls from federal loan borrowers.

**DOCUMENT REQUEST NO. 29: All documents containing an analysis, report, or calculation relating to the cost to Navient Solutions of longer or shorter average call handling times, or the relationship between average call handling time and Navient Solutions' profitability, revenues, or costs.**

**Response:**

Request No. 29 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and/or the types of loans at issue and (b) "[a]ll documents containing an analysis, report, or calculation," which could refer to any communication by any employee that considers the cost of call handling time.  Navient Solutions further objects to Request No. 29 to the extent it is duplicative of Request No. 4 to Navient Corp., and directs the CFPB to Navient Corp's response to that Request and the documents produced in response thereto.

Nonetheless, Navient Solutions will interpret Request No. 29 as seeking documents relating to the cost (or relationship to profitability, revenues, or costs) of call handling times of calls with federal loan borrowers.  Navient Solutions has undertaken a reasonable search of the custodians responsible for conducting such analyses and will produce any responsive documents.

**DOCUMENT REQUEST NO. 30:  All documents containing an analysis, report, or calculation relating to the cost of modifying policies or procedures relating to the handling**

**or escalation of borrower inquiries or complaints (including modifying a servicing platform to allow querying or tagging of borrower notes), or the effect of modifying such procedures and policies on Navient Solutions' profitability, revenues, or costs.**

**Response:**

Request No. 30 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and (b) "[a]ll documents containing an analysis," which could refer to any communication by any employee that considers the cost of modifying policies or procedures in any way. Navient Solutions further objects to the extent that Request No. 30 is duplicative of Request Nos. 18, 31, and 32, and directs the CFPB to its responses to those Requests and the documents produced in response thereto.

In response to Navient Solutions' Interrogatory No. 15, the CFPB explained that the challenged conduct is the categorization and escalation of payment processing errors. Navient Solutions accordingly interprets Request No. 30 as seeking documents containing any analysis, report, or calculation relating to the cost (or effect on profitability or revenues) of modifying policies or procedures relating to the categorization and escalation of borrower inquiries or complaints about payment processing errors. Navient Solutions has undertaken a reasonable search of the custodians responsible for such borrower complaint and inquiry procedures and will produce any responsive documents.

**DOCUMENT REQUEST NO. 31:  All documents containing an analysis, report, or calculation relating to the cost to Navient Solutions of modifying policies or procedures relating to the handling or processing of borrower payments, or the effect of modifying such procedures and policies on Navient Solutions' profitability, revenues, or costs.**

**Response:**

Request No. 31 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and (b) "[a]ll documents containing an analysis," which could refer to any communication by any employee that considers the cost of modifying

policies or procedures in any way.  Navient Solutions further objects to the extent that Request No. 31 is duplicative of Request Nos. 18, 30, and 32, and directs the CFPB to its responses to those Requests and the documents produced in response thereto.

In response to Navient Solutions' Interrogatory No. 15, the CFPB explained that the challenged conduct is the categorization and escalation of payment processing errors.  Navient Solutions accordingly interprets Request No. 31 as seeking documents containing an analysis, report, or calculation relating to the cost (or effect on profitability or revenues) of modifying payment processing procedures.  Navient Solutions has undertaken a reasonable search of the custodians responsible for modifying payment processing procedures and will produce any responsive documents.

**DOCUMENT REQUEST NO. 32:  All documents relating to any potential policies, procedures, practices, systems, tools, or methodologies to identify recurring payment processing errors and prevent or minimize their recurrence (whether for a single borrower or multiple borrowers) that Navient Solutions discussed or considered but did not adopt or implement, such as systems or tools to systematically search and/or aggregate non-escalated inquiries about payment processing errors.  Your response to this request should include, without limitation, all documents reflecting the reasons that any such policies, procedures, practices, systems, tools, or methodologies were not adopted or implemented, such as their expected cost.**

**Response**:

Request No. 32 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and (b) "[a]ll documents relating to any potential policies, procedures, practices, systems, tools, or methodologies" that may have been ever considered by any employee at the company over a nine-year period.  Navient Solutions further objects to the extent that Request No. 32 is duplicative of Request Nos. 18, 30, and 31, and directs the CFPB to its responses to those Requests and the documents produced in response thereto.

In response to Navient Solutions' Interrogatory No. 15, the CFPB explained that the challenged conduct is the categorization and escalation of payment processing errors.  Navient Solutions accordingly interprets Request No. 32 as seeking documents discussing potential changes to escalated inquiry procedures.  Any such discussions would be included in the email searches conducted in response to Request No. 18.  Navient Solutions will produce responsive emails to the extent they exist.

**DOCUMENT REQUEST NO. 33:  All documents containing an analysis, report, or calculation relating to the value or cost of retaining or releasing cosigners on private loans, including any quantification of the costs or benefits of a loan with a cosigner versus a loan without a cosigner, any quantification of the costs and risks associated with releasing cosigners, and any quantification of the benefit derived by Navient Solutions or the loan holder from retaining cosigners on loans.**

**Response:**

Request No. 33 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and (b) "[a]ll documents containing an analysis, report, or calculation," which could include any consideration by any employee about the value or cost of retaining or releasing cosigners.  Navient Solutions is unaware of any analysis, report, or calculation conducted relating to the cost of retaining or releasing cosigners.  The benefit or risk of retaining or releasing cosigners relates to the credit risk posed by a borrower with a cosigner or without a cosigner.  Navient Solutions interprets Request No. 33 as seeking documents related to the relative credit risk of loans with and without a cosigner.  Navient Solutions has undertaken a reasonable search of custodians responsible for considering the credit risk of private loans and will produce any responsive documents.

**DOCUMENT REQUEST NO. 34:  For every borrower who, during the applicable time period, enrolled in forbearance or any income-driven repayment plan for any of the borrower's federal loans, or who experienced delinquency or default for any of the borrower's federal loans, all data relating to all federal loans for that borrower, including but not limited to:**

- **Borrower and loan identifiers that allow information from different data sets to be linked together;**

- **Borrower's identifying information (name, address, email address, phone number);**

- **Borrower's educational attendance information, including institutions attended, dates, and graduation status;**

- **All loan-level data for the loans from the outset of repayment (including instances where repayment began prior to 2009), including type of loan, original loan balance, interest rate, payment amounts, and payment dates;**

- **All data regarding enrollment of the federal loans in any repayment option other than the standard repayment plan (including forbearance or an income-driven repayment plan), including dates of enrollment, reasons for enrollment, whether the borrower enrolled in forbearance over the phone or through some other means (such as online), dates of recertifications or missed recertifications for income-driven repayment plans, and any information captured from forms submitted by the borrower;**

- **All credit reporting information furnished for the loans;**

- **All recordings of phone calls with the borrower and all data that reflect communications with the borrower, including records reflecting the occurrence of phone calls with the borrower, the dates of such calls, and the content of such calls (i.e., all notes of such calls); and**

- **All demographic information concerning the borrower, including occupation, income, and family size.**

**Response:**

Request No. 34 is overbroad and unduly burdensome in that it seeks essentially the entire federal student loan servicing platform for Department of Education loans and seeks information unrelated to the claims in this action. By seeking "[a]ll data relating to all federal loans" for every borrower ever in forbearance, income-driven repayment, delinquency, or default over a nine-year period, Request No. 34 seeks all data relating to almost all of the millions of federal student loan borrowers serviced by Navient Solutions because the vast majority of federal student loan borrowers have been in one of those statuses at some point in time. After five years of investigation, the CFPB identified only 18 borrowers who were allegedly harmed by

forbearance, and with less than two months left in discovery, the CFPB nonetheless seeks information relating to millions of borrowers.

Furthermore, because Request No. 34 seeks all possible information related to millions of borrowers, the request would require Navient Solutions to transfer to the CFPB essentially *all* of the information housed on the various systems that comprise its federal loan servicing platform. Producing just the borrower, loan, and transactional information (which is housed on separate systems depending on whether a loan was issued under the FFEL program or directly by the U.S. Department of Education) would involve the transfer of an estimated 200 *terabytes* of data and require more than 250,000 of the disks the parties have used for productions.  An even more substantial effort would be required to collect and produce the *millions* of call recordings encompassed by the request.  Navient Solutions has used five different systems to store call recordings during the period in question, and linking an individual borrower to call files stored on these various systems is a manual process.  Moreover, even if these millions of files could be collected and transferred to the CFPB, Navient Solutions estimates that the recordings would represent the equivalent of *more than one hundred years* of call time.

The request is also overly broad and unduly burdensome because much of the borrower information requested is not maintained in the ordinary course of business.  For example, because Navient Solutions does not systematically record or track information regarding a borrower's income, family size, occupation, or education history, collecting and producing such information would require a manual review of applications and other communications and the creation of a new "borrower profile" for each of the millions of borrowers encompassed by the CFPB's request.  Such an effort lies well beyond what the rules of discovery require.

Not only is the CFPB's request unreasonably burdensome, it also raises serious data security and privacy concerns for the millions of federal student loan borrowers whose information the CFPB has demanded.  The CFPB has provided no assurances that it would be able to securely store the data once transferred.  To the contrary, the CFPB's own Inspector General has called into question whether the agency has adequate procedures for maintaining the security of this sensitive information,[1] and the Department of Education recently cancelled an arrangement with the CFPB through which it had previously shared borrower information similar to what is sought by this request.[2]  Thus, even if the CFPB's requests were reasonable and proportional to the needs of this case (which they are not), the CFPB has not proposed a mechanism for securely transferring and storing the information in question in a manner that ensures that borrower information would be adequately safeguarded.

Navient Solutions is prepared to make certain data available for inspection on its premises, subject to an appropriate agreement with the CFPB.  *See* Fed. R. Civ. P. 34(b)(2)(B). Pursuant to procedures to be agreed upon by the parties, the CFPB would be permitted to inspect certain federal loan servicing data through a secured computer terminal connected to Navient Solutions' federal student loan servicing systems.

**DOCUMENT REQUEST NO. 35:  For every borrower serviced by Navient Solutions who had his/her federal loans discharged due to total and permanent disability and who had the "AL" code furnished during the applicable time period, all data relating to all federal loans for that borrower, including but not limited to:**

- **Borrower and loan identifiers that allow information from different data sets to be linked together;**

- **Borrower's identifying information (name, address, email address, phone number);**

---

[1] Consumer Financial Protection Bureau, Office of Inspector General Evaluation Report (Sept. 20, 2017).

[2] Letter from Kathleen Smith and A. Wayne Johnson to Richard Cordray (Aug. 31, 2017).

- **Borrower's educational attendance information, including institutions attended, dates, and graduation status;**

- **All loan-level data for the loans from the outset of repayment (including instances where repayment began prior to 2009), including type of loan, original loan balance, interest rate, payment amounts, and payment dates;**

- **All credit reporting information furnished for the loans, including dates that the "AL" code was furnished;**

- **All recordings of phone calls with the borrower and all data that reflect communications with the borrower, including records reflecting the occurrence of phone calls with the borrower, the dates of such calls, and the content of such calls (i.e., all notes of such calls);**

- **All data relating to the discharge of the federal loans due to total and permanent disability, including the date on which Navient Solutions became aware that the borrower's loans were discharged; and**

- **All demographic information concerning the borrower, including occupation, income, and family size.**

**<u>Response</u>:**

Request No. 35 is overbroad and unduly burdensome to the extent that it seeks information relating to "every borrower" who had his/her federal loans discharged due to total and permanent disability and who had the "AL" code furnished to credit bureaus during the applicable time period. The CFPB's claim relates only to borrowers whose loans were not in default at the time Navient Solutions allegedly furnished the "AL" code to credit bureaus. Information relating to borrowers whose loans were already in default at the time they were discharged due to total and permanent disability thus has no potential relevance to the CFPB's claim. Request No. 35 is also overbroad and unduly burdensome to the extent it seeks "[a]ll data relating to all federal loans" for almost 20,000 borrowers. The CFPB's claim relates only to Navient Solutions' alleged furnishing of the "AL" code to credit bureaus when a borrower's loans were discharged due to total and permanent disability. Detailed income and demographic information, education history, and recordings of phone conversations have limited relevance to

that allegation.  Navient Solutions further objects that Request No. 35 raises data security and privacy concerns for thousands of borrowers, as described in its response to Request No. 34.

Navient Solutions is prepared to make certain data available for inspection on its premises, subject to an appropriate agreement with the CFPB.  *See* Fed. R. Civ. P. 34(b)(2)(B). Pursuant to procedures to be agreed upon by the parties, the CFPB would be permitted to inspect certain federal loan servicing data through a secured computer terminal connected to Navient Solutions' federal student loan servicing systems.

**DOCUMENT REQUEST NO. 36**: **For every borrower who had a private loan with a cosigner and for which at least one of his or her private loans was in paid ahead status at least once during the applicable time period, all data relating to each such private loan, including but not limited to:**

- **Borrower and loan identifiers that allow information from different data sets to be linked together;**

- **Borrower's identifying information (name, address, email address, phone number);**

- **Borrower's educational attendance information, including institutions attended, dates, and graduation status;**

- **Cosigner's identifying information (name, address, email address, phone number);**

- **All loan-level data for the loan from the outset of repayment (including instances where repayment began prior to 2009), including type of loan, original loan balance, interest rate, payment amounts, and payment dates;**

- **All credit reporting information furnished for the loan;**

- **All recordings of phone calls with the borrower and all data that reflect communications with the borrower or cosigner, including records reflecting the occurrence of phone calls with the borrower or cosigner, the dates of such calls, and the content of such calls (i.e., all notes of such calls);**

- **All data regarding the requirements for cosigner release, including the number of consecutive, on-time payments required for cosigner release;**

- **All data regarding any attempts by the borrower or cosigner to obtain cosigner release;**

- **All data reflecting the number of consecutive, on-time payments made by the borrower as tracked by Navient Solutions;**

- **All data quantifying or describing the value, costs, or risks of the loan with and without the cosigner; and**

- **All demographic information concerning the borrower and cosigner, including occupation, income, and family size.**

**Response:**

Request No. 36 is overbroad and unduly burdensome to the extent that it seeks information for "all borrowers" who had a private loan with a cosigner and for which at least one of his or her private loans was in paid ahead status at any point during the applicable time period. *First*, in the ordinary course of business, Navient Solutions does not maintain records of whether any of a borrower's private loans have been in "paid ahead" status at some point during the life of the loan. Identifying the population of borrowers encompassed by this request would thus require Navient Solutions to perform complex data analysis across its entire private loan servicing platform to determine whether millions of private student loan borrowers had at any point made a payment sufficient to cover multiple months (such that the borrower's loan would be in "paid ahead" status). Such analysis lies beyond what the discovery rules require. *Second,* the CFPB's allegations concern only borrowers who allegedly were denied cosigner release because of a failure to make a certain number of consecutive on-time payments. Information relating to borrowers whose loans were in paid-ahead status but who never applied to release a cosigner has no potential relevance to those allegations.

Request No. 36 is also overbroad and unduly burdensome to the extent it seeks "[a]ll data relating to each such private loan" for borrowers with loans that have been in "paid ahead" status. The CFPB's claim relates only to Navient's alleged requirement that a borrower make a particular number of consecutive, on-time payments in order to apply for cosigner release.

Detailed demographic information, education history, and recordings of phone conversations have limited relevance to that allegation.

Navient Solutions further objects that Request No. 36 raises data security and privacy concerns for thousands of borrowers, as described in response to Request No. 34.

Navient Solutions is prepared to make certain data available for inspection on its premises, subject to an appropriate agreement with the CFPB. *See* Fed. R. Civ. P. 34(b)(2)(B). Pursuant to procedures to be agreed upon by the parties, the CFPB would be permitted to inspect certain private loan servicing data through a secured computer terminal connected to Navient Solutions' private student loan servicing systems.

**DOCUMENT REQUEST NO. 37:** **For every borrower who, during the applicable time period, communicated or made a repeat concern, complaint, inquiry, or dispute to Navient Solutions about an asserted problem or error relating to the processing, allocation, or application of payments (where "repeat" means within 120 days of the prior concern, complaint, inquiry, or dispute by the borrower or anyone acting on the borrower's behalf that concerns the same type of problem or error), all data relating to the concerns, complaints, inquiries, or disputes and the affected loans, including but not limited to:**

- **Borrower and loan identifiers that allow information from different data sets to be linked together;**

- **Borrower's identifying information (name, address, email address, phone number);**

- **Borrower's educational attendance information, including institutions attended, dates, and graduation status;**

- **All loan-level data for the loans from the outset of repayment (including instances where repayment began prior to 2009), including type of loan, original loan balance, interest rate, payment amounts, and payment dates;**

- **The date of the initial concern, complaint, inquiry, or dispute;**

- **The date that the asserted problem or error was resolved;**

- **The subject matter(s) or issue(s) raised by the concern, complaint, inquiry, or dispute;**

- **The response to the concern, complaint, inquiry, or dispute (e.g., closed without any change to the borrower's account, closed with compensation, etc.).  If Navient Solutions uses specific codes to characterize the response, those codes should be supplied for this data element;**

- **The amount of any financial remediation, refund, or compensation provided to the consumer as a result of the concern, complaint, inquiry, or dispute, and if so, the date that this amount was provided;**

- **All credit reporting information furnished for the loans;**

- **All recordings of phone calls with the borrower and all data that reflect communications with the borrower, including records reflecting the occurrence of phone calls with the borrower, the dates of such calls, and the content of such calls (i.e., all notes of such calls); and**

- **All demographic information concerning the borrower, including occupation, income, and family size.**

**<u>Response</u>:**

Request No. 37 is overbroad and unduly burdensome to the extent that it seeks information for "every borrower" who communicated a "repeat" concern, complaint, inquiry, or dispute to Navient Solutions about an asserted problem or error relating to the processing, allocation, or application of payments.  Navient Solutions has policies and procedures for escalating, tracking, and resolving complaints and inquiries from borrowers, but it does not in the ordinary course of business track whether a particular borrower has had "the same type of problem or error more than once in a 120-day period," a time period made up by the CFPB.  Identifying the population of borrowers encompassed by Request No. 37 would thus require Navient Solutions to manually review *every* complaint or inquiry submitted over a period of more than eight years to determine (a) the borrower who submitted the complaint or inquiry and (b) whether the borrower submitted "the same type of" complaint or inquiry within a period of 120 days before or after the complaint or inquiry in question.  Given that many complaints are unsubstantiated and/or immediately resolved, such an effort is neither reasonable nor

proportional to the needs of this case—particularly in light of the fact that, after five years of

investigation, the CFPB has identified just 14 borrowers who allegedly support its payment

processing claims.

Request No. 37 is also overbroad and unduly burdensome to the extent it seeks "all data"

relating to loans for which a borrower submitted such complaints or inquiries.  Detailed income

and demographic information, education history, and recordings of phone conversations are of

limited relevance to the CFPB's claims regarding Navient Solutions' policies and procedures for

handling complaints and inquiries related to the processing, allocation, or application of

payments.

Navient Solutions further objects that Request No. 37 is duplicative of previous requests

for information, and that the CFPB is already in possession of documents that appear to be

responsive to this request.  Specifically:

- On October 25, 2013 and December 20, 2013, Sallie Mae, Inc. produced documents responsive to Document Request 6 of the September 5, 2013 CID issued by CFPB to Sallie Mae, Inc., which sought "All customer complaints, whether received directly from the customer or through an intermediary, relating to your student loan payment processing, including, but not limited to, how overpayments, partial payments, and underpayments were applied to loans." These documents are located at the Bates Ranges SLMA-005-0000101; SLMA-012-0000001 to SLMA-012-0000822.

- On July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 4 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "[a] copy of all reports and presentations documenting complaints received by you about your servicing of student loans."  CFPB CID to Sallie Mae, Inc., Apr. 29, 2014.  These documents are located at the Bates Range NSI-014-0001631 to NSI-014-0003399.

Navient Solutions also objects that Request No. 37 raises data security and privacy

concerns for borrowers, as described in response to Request No. 34.

Navient Solutions is prepared to make certain data available for inspection on its

premises, subject to an appropriate agreement with the CFPB.  *See* Fed. R. Civ. P. 34(b)(2)(B).

Pursuant to procedures to be agreed upon by the parties, the CFPB would be permitted to inspect certain loan servicing data through a secured computer terminal connected to Navient Solutions' student loan servicing systems.

**DOCUMENT REQUEST NO. 38:  Documents sufficient to show the complete basis of the data provided in the spreadsheet bearing Bates number NSI-036-00000001, including but not limited to: (a) documents sufficient to identify each consumer whose federal loan(s) is/are covered by or included within each figure in the spreadsheet and borrower and loan identifiers for each of their federal loans (which match the borrower and loan identifiers provided in response to Request for Production #34); (b) documents sufficient to show the complete methodology used to calculate each figure in the spreadsheet.**

**Response:**

Request No. 38 is overbroad and unduly burdensome to the extent that it seeks "documents sufficient to identify each consumer whose federal loan(s) is/are covered by or included within each figure in the spreadsheet."  Navient Solutions generated the report in question during settlement discussions with the CFPB by running queries on its federal loan servicing systems and then analyzing the results of those queries to determine the number of borrowers responsive to the requests made by the CFPB.  At the time it asked for this information, the CFPB did not request any information relating to the borrowers included in these figures, and Navient Solutions did not maintain documents sufficient to identify the individual borrowers tallied in that spreadsheet.  Navient Solutions has no obligation under the Federal Rules to perform (for a second time) the complex data analysis required to satisfy the CFPB's new request, and such analysis is neither reasonable nor proportional to the needs of this case, particularly because under Federal Rule of Evidence 408 the spreadsheet and any underlying materials are inadmissible as evidence of Navient Solutions' liability.

Navient Solutions further objects to the extent that the use of the undefined term "complete basis" fails to identify with particularity the information actually sought.  Moreover, to the extent the CFPB's request for documents sufficient to show the "complete methodology

used to calculate each figure in the spreadsheet" encompasses documents created at the direction

of counsel or communications or communications with counsel, Navient Solutions objects that

such files are protected by the attorney-client privilege and/or work product doctrine.

Navient Solutions further objects that Request No. 38 raises data security and privacy

concerns for thousands of borrowers, as described in response to Request No. 34.

Nonetheless, Navient Solutions has identified the custodians principally responsible for

preparing the figures included in the spreadsheet bearing Bates number NSI-036-00000001.

Navient Solutions has conducted a reasonable search and will produce non-privileged materials

relating to the methodology used to calculate those figures.  Further, as indicated in its response

to Request No. 34, Navient Solutions is prepared to make certain data available for inspection on

its premises, subject to an appropriate agreement with the CFPB.  *See* Fed. R. Civ. P.

34(b)(2)(B).

**DOCUMENT REQUEST NO. 39:  Documents sufficient to show the complete basis of the data provided in the spreadsheet bearing Bates number NSI-038-00000001, including but not limited to: (a) documents sufficient to identify each consumer whose federal loan(s) is/are covered by or included within each figure in the spreadsheet and borrower and loan identifiers for each of their federal loans (which match the borrower and loan identifiers provided in response to Request for Production #34); (b) documents sufficient to show the complete methodology used to calculate each figure in the spreadsheet.**

**Response:**

Request No. 39 is overbroad and unduly burdensome to the extent that it seeks

"documents sufficient to identify each consumer whose federal loan(s) is/are covered by or

included within each figure in the spreadsheet."  Navient Solutions generated the report in

question during settlement discussions with the CFPB by running queries on its federal loan

servicing systems and then analyzing the results of those queries to determine the number of

borrowers responsive to the requests made by the CFPB.  At the time it asked for this

information, the CFPB did not request any information relating to the borrowers included in

these figures, and Navient Solutions did not maintain documents sufficient to identify the

individual borrowers tallied in that spreadsheet.  Navient Solutions has no obligation under the

Federal Rules to perform (for a second time) the complex data analysis required to satisfy the

CFPB's new request, and such analysis is neither reasonable nor proportional to the needs of this

case, particularly because under Federal Rule of Evidence 408 the spreadsheet and any

underlying materials are inadmissible as evidence of Navient Solutions' liability.

Navient Solutions further objects to the extent that the use of the undefined term

"complete basis" fails to identify with particularity the information actually sought.  Moreover,

to the extent the CFPB's request for documents sufficient to show the "complete methodology

used to calculate each figure in the spreadsheet" encompasses documents created at the direction

of counsel or communications or communications with counsel, Navient Solutions objects that

such files are protected by the attorney-client privilege and/or work product doctrine.

Navient Solutions further objects that Request No. 39 raises data security and privacy

concerns for thousands of borrowers, as described in response to Request No. 34.

Nonetheless, Navient Solutions has identified the custodians principally responsible for

preparing the figures included in the spreadsheet bearing Bates number NSI-038-00000001.

Navient Solutions has conducted a reasonable search and will produce non-privileged materials

relating to the methodology used to calculate those figures.  Further, as indicated in its response

to Request No. 34, Navient Solutions is prepared to make certain data available for inspection on

its premises, subject to an appropriate agreement with the CFPB.  *See* Fed. R. Civ. P.

34(b)(2)(B).

**DOCUMENT REQUEST NO. 40:  Documents sufficient to show the complete basis of the data provided in the spreadsheet bearing Bates number NSI-039-00000001, including but not limited to: (a) documents sufficient to identify each consumer whose federal loan(s) is/are covered by or included within each figure in the spreadsheet and borrower and loan**

**identifiers for each of their federal loans (which match the borrower and loan identifiers provided in response to Request for Production #34); (b) documents sufficient to show the complete methodology used to calculate each figure in the spreadsheet.**

<u>**Response**</u>:

Request No. 40 is overbroad and unduly burdensome to the extent that it seeks "documents sufficient to identify each consumer whose federal loan(s) is/are covered by or included within each figure in the spreadsheet." Navient Solutions generated the report in question as part of settlement discussions with the CFPB by running queries on its federal loan servicing systems and then analyzing the results of those queries to determine the number of borrowers responsive to the requests made by the CFPB. At the time it asked for this information, the CFPB did not request any information relating to the borrowers included in these figures, and Navient Solutions did not maintain documents sufficient to identify the individual borrowers tallied in that spreadsheet. Navient Solutions has no obligation under the Federal Rules to perform (for a second time) the complex data analysis required to satisfy the CFPB's new request, and such analysis is neither reasonable nor proportional to the needs of this case, particularly because under Federal Rule of Evidence 408 the spreadsheet and any underlying materials are inadmissible as evidence of Navient Solutions' liability.

Navient Solutions further objects to the extent that the use of the undefined term "complete basis" fails to identify with particularity the information actually sought. Moreover, to the extent the CFPB's request for documents sufficient to show the "complete methodology used to calculate each figure in the spreadsheet" encompasses documents created at the direction of counsel or communications or communications with counsel, Navient Solutions objects that such files are protected by the attorney-client privilege and/or work product doctrine.

Navient Solutions further objects that Request No. 40 raises data security and privacy concerns for thousands of borrowers, as described in response to Request No. 34.

Nonetheless, Navient Solutions has identified the custodians principally responsible for preparing the figures included in the spreadsheet bearing Bates number NSI-039-00000001. Navient Solutions has conducted a reasonable search for and will produce any non-privileged materials relating to the methodology used to calculate those figures.  Further, as indicated in its response to Request No. 34, Navient Solutions is prepared to make certain data available for inspection on its premises, subject to an appropriate agreement with the CFPB.  *See* Fed. R. Civ. P. 34(b)(2)(B).

**DOCUMENT REQUEST NO. 41**:  **Documents sufficient to show the complete basis of the data provided in the spreadsheet bearing Bates number NSI-040-00000001, including but not limited to: (a) documents sufficient to identify each consumer whose federal loan(s) is/are covered by or included within each figure in the spreadsheet and borrower and loan identifiers for each of their federal loans (which match the borrower and loan identifiers provided in response to Request for Production #34); (b) documents sufficient to show the complete methodology used to calculate each figure in the spreadsheet.**

**Response:**

Request No. 41 is overbroad and unduly burdensome to the extent that it seeks "documents sufficient to identify each consumer whose federal loan(s) is/are covered by or included within each figure in the spreadsheet."  Navient Solutions generated the report in question during settlement discussions with the CFPB by running queries on its federal loan servicing systems and then analyzing the results of those queries to determine the number of borrowers responsive to the requests the CFPB made during its investigation.  At the time it asked for this information, the CFPB did not request any information relating to the borrowers included in these figures, and Navient Solutions did not maintain documents sufficient to identify those borrowers.  Navient Solutions has no obligation under the Federal Rules to perform (for a second time) the complex data analysis required to satisfy the CFPB's new request, and such analysis is neither reasonable nor proportional to the needs of this case, particularly because

under Federal Rule of Evidence 408 the spreadsheet and any underlying materials are inadmissible as evidence of Navient Solutions' liability.

Navient Solutions further objects to the extent that the use of the undefined term "complete basis" fails to identify with particularity the information actually sought.  Moreover, to the extent the CFPB's request for documents sufficient to show the "complete methodology used to calculate each figure in the spreadsheet" encompasses documents created at the direction of counsel or communications or communications with counsel, Navient Solutions objects that such files are protected by attorney-client or work product privileges.

Navient Solutions further objects that Request No. 41 raises data security and privacy concerns for thousands of borrowers, as described in response to Request No. 34.

Nonetheless, Navient Solutions has identified the custodians principally responsible for preparing the figures included in the spreadsheet bearing Bates number NSI-040-00000001. Navient Solutions has conducted a reasonable search for and will produce any non-privileged materials relating to the methodology used to calculate those figures.  Further, as indicated in its response to Request No. 34, Navient Solutions is prepared to make certain data available for inspection on its premises, subject to an appropriate agreement with the CFPB.  *See* Fed. R. Civ. P. 34(b)(2)(B).

**DOCUMENT REQUEST NO. 42:**  **All documents relating to the entity relationship diagram, relational database schema, or similar diagram showing all data collected, archived, maintained, or used by Navient Solutions relating to the servicing of student loans, including but not limited to documents showing all entities, attributes, and interrelationships for relevant flat-file and relational databases, and documents showing definitions of all elements.**

**Response:**

Request No. 42 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and/or the types of loans at issue, and (b) "[a]ll

documents relating to" diagrams "showing all data collected, archived, maintained, or used by Navient Solutions relating to the servicing of student loans," regardless of whether those documents are necessary to understand the systems in question.  Nonetheless, Navient Solutions has identified the custodians primarily responsible for maintaining data relating to Navient Solutions' servicing of student loans.  Navient Solutions has conducted a reasonable search and will produce any responsive diagrams or schemas and data dictionaries.

**DOCUMENT REQUEST NO. 43**:  **All documents or descriptions relating to identifying the relationship among data files produced in response to any of the foregoing requests, or relating to understanding the data files produced in response to any of the foregoing requests, including but not limited to:**

- **Descriptions of each data field in each data file;**

- **Descriptions of the structure and content of each data file;**

- **Descriptions detailing the high-level relationships among the data files;**

- **Descriptions detailing the limitations of the data files;**

- **Descriptions explaining any missing time for date-related fields;**

- **Descriptions explaining any differences in the data files; and**

- **Descriptions explaining any similarities in the data files.**

**Response**:

Request No. 43 is overbroad and unduly burdensome to the extent the request requires Navient Solutions to create documents that do not exist in the ordinary course of business.  As explained above, Navient Solutions is prepared to make certain data available for inspection on its premises, subject to an appropriate agreement with the CFPB.  To facilitate inspection, Navient Solutions will produce data dictionaries, system reference guides, and other materials.

Dated:  March 30, 2018

Respectfully submitted,

/s/ Jonathan E. Paikin
Matthew T. Martens (DC 1019099) (*pro hac vice*)
Jonathan E. Paikin (DC 466445) (*pro hac vice*)
Daniel P. Kearney (DC 977148) (*pro hac vice*)
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
   Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
matthew.martens@wilmerhale.com
jonathan.paikin@wilmerhale.com
daniel.kearney@wilmerhale.com
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

Daniel T. Brier (PA 52348)
Donna A. Walsh (PA 74833)
Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
dbrier@mbklaw.com
dwalsh@mbklaw.com
Tel: 570-342-6100
Fax: 570-342-6147

*Counsel for Navient Corporation, Navient Solutions, LLC, and Navient Solutions Credit Recovery, Inc.*

## CERTIFICATE OF SERVICE

I certify that on March 30, 2018, I served the foregoing Objections and Responses to

Plaintiff's Second Set of Requests for Production to the CFPB by email to the following counsel

for Plaintiff:

        Nicholas Jabbour:  Nicholas.Jabbour@cfpb.gov
        Ebony Sunala Johnson:  Ebony.Johnson@cfpb.gov
        Lawrence DeMille-Wagman: Lawrence.Wagman@cfpb.gov
        Andrea Matthews: Andrea.Matthews@cfpb.gov
        Thomas H. Kim: Thomas.Kim@cfpb.gov
        Manuel Arreaza (Manuel.Arreaza@cfpb.gov)
        Nicholas Lee (Nicholas.Lee@cfpb.gov)
        David Dudley (David.Dudley@cfpb.gov)

Mr. Jabbour, on behalf of Plaintiff, previously consented to electronic service.

                 /s/ Karin Dryhurst
                Karin Dryhurst (DC 1034290) (*pro hac vice*)
                Wilmer Cutler Pickering
                   Hale and Dorr LLP
                1875 Pennsylvania Avenue, NW
                Washington, DC 20006
                karin.dryhurst@wilmerhale.com
                Tel: 202-663-6000
                Fax: 202-663-6363

                *Counsel for Navient Corporation, Navient*
                *Solutions, LLC, and Navient Solutions Credit*
                *Recovery, Inc.*