## <u>APPENDIX TO BUREAU'S JULY 11, 2018 LETTER</u>

| Exhibit | Date of exhibit | Description of exhibit | Beginning page number |
|---------|-----------------|------------------------|------------------------|
| A | January 18, 2018 | Letter from Defendants' counsel to ED | A1 |
| B | March 30, 2018 | Defendant Navient Solutions, LLC's Objections and Responses to Plaintiff's Second Set of Requests for Production | A3 |
| C | May 8, 2018 | Data Access Protocol from Defendants' counsel | A29 |
| D | May 30, 2018 | Letter from Bureau to ED | A36 |

# Exhibit A

WILMERHALE

January 18, 2018

Daniel P. Kearney

**VIA E-MAIL AND FIRST-CLASS MAIL**

+1 202 663 6285 (t)
+1 202 663 6363 (f)
daniel.kearney@wilmerhale.com

Mr. Justin Riemer, Special Counsel
U.S. Department of Education
Office of the General Counsel
400 Maryland Avenue, S.W., Room 6E312
Lyndon Baines Johnson Building
Washington, D.C. 20202-2100

> Re: *Consumer Financial Protection Bureau v. Navient Corp., et al.,*
> Case No. 3:17-CV-00101-RDM (M.D. Pa.)

Dear Mr. Riemer:

I write in regard to the requests for production served by the Consumer Financial Protection Bureau ("CFPB") in the above-captioned litigation on Navient Corporation and Pioneer Credit Recovery, Inc. on May 19, 2017, and Navient Solutions, LLC on June 5, 2017. As we have previously discussed, we have put off production of materials pending resolution of the Education Department's concerns about providing documents to the CFPB.

We understand at this time that the Department does not have a general objection to the production of documents in the CFPB litigation. Accordingly, we intend to proceed next week with production of approximately 75,000 responsive documents, consistent with the requirements of Federal Rule of Civil Procedure 26 and the district court's discovery scheduling order issued May 12, 2017. The documents primarily concern the servicing and collection of federal student loans and include documents related to servicing contracts with the Department of Education and guaranty agencies, company policies and practices related to the servicing and collection of federal student loans, and various communications regarding borrowers, which may include certain borrower-specific information. The documents will be protected from disclosure to third parties under a protective order executed by the parties.

Thank you for your assistance throughout this process. Should you wish to discuss this matter, please give me a call at (202) 663-6285.

Sincerely,

Daniel P. Kearney

cc:   Brian Siegel
      Dawn Scaniffe

Wilmer Cutler Pickering Hale and Dorr LLP, 1875 Pennsylvania Avenue NW, Washington, DC 20006

Beijing   Berlin   Boston   Brussels   Denver   Frankfurt   London   Los Angeles   New York   Palo Alto   Washington

# Exhibit B

**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

Consumer Financial Protection Bureau,

                    *Plaintiff,*
          v.

Navient Corporation, *et al.,*

                    *Defendants*

Civil Action No. 3:CV-17-00101
(Hon. Robert D. Mariani)

## DEFENDANT NAVIENT SOLUTIONS, LLC'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION

Pursuant to Rule 34 of the Federal Rules of Civil Procedure ("FRCP"), Defendant Navient Solutions, LLC ("Navient Solutions"), through its undersigned counsel, responds and objects to Plaintiff Consumer Financial Protection Bureau ("CFPB")'s Second Set of Requests for Production (the "Requests") including the instructions and definitions therein.

These Requests were served in violation of the Joint Case Management Plan agreed upon by both parties and entered by the Court on May 5, 2017, limiting the number of Requests the CFPB is permitted to serve on Navient Solutions to fifty. The CFPB neither sought nor received permission from the Court to serve these Requests. Nor has the CFPB explained why any of these new Requests could not have been served in May 2017, as part of its first set of requests. In addition to exceeding the permitted number of requests, the CFPB's nine-month delay in serving these Requests has added needless expense by seeking the collection and review of documents that would have been far more efficient and less expensive to gather and review if it had been included as part of the efforts undertaken to respond to the first set of requests. Because the CFPB refused to seek permission from the Court to serve these Requests, and so as to have this issue resolved promptly, Navient Solutions itself raised this issue with the Court by letter dated March 6, 2018, and it will be the subject of a Hearing scheduled for April 17, 2018. Navient Solutions has nevertheless begun the steps necessary to be in position to promptly

A4

produce, or make available for inspection, documents responsive to these Requests in the event

the Court permits them to be served, and sets forth its specific and general objections to these

new Requests below.

Most of the documents responsive to these Requests are maintained on Navient

Solutions' computer systems in electronic format.  As noted, the process for identifying,

gathering, uploading, reviewing, and producing responsive documents is underway, but as of the

date of these responses is not completed.  Navient Solutions will be prepared to produce

documents responsive to these Requests on a rolling basis.  In addition, for some Requests,

Navient Solutions will be prepared to make responsive documents available for inspection on a

mutually convenient date.

## **GENERAL OBJECTIONS**

Navient Solutions incorporates by reference the general objections and objections to

instructions made in its August 21, 2017 Responses and Objections to Plaintiff's First Set of

Requests for Production in response to each specific Request below.  Navient Solutions

expressly does not waive or prejudice any additional objection it may later assert in response to a

specific Request or any other discovery.  Navient Solutions also makes the following additional

general objection:

9.      The second set of Requests brings the total number of enumerated requests to 43,

but through the CFPB's use of "subparts," the actual number of Requests served on Navient

Solutions in this action exceeds 100.  And those Requests are in addition to the numerous formal

and informal requests made during the multi-year investigation that preceded this lawsuit.

Moreover, the nine months of delay between the service of the first set of requests and the

second imposes significant costs and burden on Navient Solutions that was easily avoidable.

These new Requests are, in many respects, not related to the issues that have been identified by

the CFPB for trial in response to discovery served by Defendants.  In addition, many of these

Requests seek information regarding spreadsheets that were prepared and shared solely for the

purpose of pre-litigation settlement discussions subject to Federal Rule of Evidence 408.  The

CFPB was also aware of the May 11, 2018 fact discovery cut-off date, but waited until less than

two months before the close of fact discovery to serve demands for literally millions of borrower

records and other information that could not practically be produced in that timeframe.

Accordingly, Navient Solutions objects because the timing, number, and substance of these new

Requests appear designed to harass and are not for a legitimate purpose.

## SPECIFIC RESPONSES

**DOCUMENT REQUEST NO. 27:  All documents considered or relied upon in responding to any Interrogatory, or described in the response to any Interrogatory.**

**Response:**

Navient Solutions will produce responsive, non-privileged documents.

**DOCUMENT REQUEST NO. 28:  All documents used to monitor, track, or record criteria or factors relating to eligibility for monetary incentive awards or bonuses, including spreadsheets and charts documenting average call handling time, for employees or agents of Navient Solutions whose primary responsibility at any time during the applicable time period was answering phone calls from federal loan borrowers (and who would therefore speak with federal loan borrowers regarding repayment options).**

**Response:**

Request No. 28 is overbroad and unduly burdensome to the extent that it seeks (a)

documents unrelated to the claims in this action and (b) "[a]ll documents" used to "monitor,

track, or record criteria or factors relating to monetary incentive awards or bonus" for any

employee or agent over a nine-year period who answered phone calls from federal loan

borrowers.  Navient Solutions has employed thousands of call agents since January 1, 2010 and

"all documents" would include every document related to every individual employee's

compensation.  Navient Solutions further objects because "primary responsibility" is an

ambiguous term that fails to identify with reasonable particularity the type of documents being sought.  Navient Solutions also objects because this Request is duplicative of Request No. 11, and directs the CFPB to Navient Solutions' response to that Request and the documents produced in response thereto.

Nonetheless, Navient Solutions has undertaken a reasonable search and will produce reports regarding compensation metrics used to determine monetary incentive awards or bonuses for employees or agents of Navient Solutions whose responsibilities included answering phone calls from federal loan borrowers.

**DOCUMENT REQUEST NO. 29: All documents containing an analysis, report, or calculation relating to the cost to Navient Solutions of longer or shorter average call handling times, or the relationship between average call handling time and Navient Solutions' profitability, revenues, or costs.**

**Response:**

Request No. 29 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and/or the types of loans at issue and (b) "[a]ll documents containing an analysis, report, or calculation," which could refer to any communication by any employee that considers the cost of call handling time.  Navient Solutions further objects to Request No. 29 to the extent it is duplicative of Request No. 4 to Navient Corp., and directs the CFPB to Navient Corp's response to that Request and the documents produced in response thereto.

Nonetheless, Navient Solutions will interpret Request No. 29 as seeking documents relating to the cost (or relationship to profitability, revenues, or costs) of call handling times of calls with federal loan borrowers.  Navient Solutions has undertaken a reasonable search of the custodians responsible for conducting such analyses and will produce any responsive documents.

**DOCUMENT REQUEST NO. 30:  All documents containing an analysis, report, or calculation relating to the cost of modifying policies or procedures relating to the handling**

**or escalation of borrower inquiries or complaints (including modifying a servicing platform to allow querying or tagging of borrower notes), or the effect of modifying such procedures and policies on Navient Solutions' profitability, revenues, or costs.**

**Response:**

      Request No. 30 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and (b) "[a]ll documents containing an analysis," which could refer to any communication by any employee that considers the cost of modifying policies or procedures in any way.  Navient Solutions further objects to the extent that Request No. 30 is duplicative of Request Nos. 18, 31, and 32, and directs the CFPB to its responses to those Requests and the documents produced in response thereto.

      In response to Navient Solutions' Interrogatory No. 15, the CFPB explained that the challenged conduct is the categorization and escalation of payment processing errors.  Navient Solutions accordingly interprets Request No. 30 as seeking documents containing any analysis, report, or calculation relating to the cost (or effect on profitability or revenues) of modifying policies or procedures relating to the categorization and escalation of borrower inquiries or complaints about payment processing errors.  Navient Solutions has undertaken a reasonable search of the custodians responsible for such borrower complaint and inquiry procedures and will produce any responsive documents.

**DOCUMENT REQUEST NO. 31:  All documents containing an analysis, report, or calculation relating to the cost to Navient Solutions of modifying policies or procedures relating to the handling or processing of borrower payments, or the effect of modifying such procedures and policies on Navient Solutions' profitability, revenues, or costs.**

**Response:**

      Request No. 31 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and (b) "[a]ll documents containing an analysis," which could refer to any communication by any employee that considers the cost of modifying

policies or procedures in any way.  Navient Solutions further objects to the extent that Request No. 31 is duplicative of Request Nos. 18, 30, and 32, and directs the CFPB to its responses to those Requests and the documents produced in response thereto.

In response to Navient Solutions' Interrogatory No. 15, the CFPB explained that the challenged conduct is the categorization and escalation of payment processing errors.  Navient Solutions accordingly interprets Request No. 31 as seeking documents containing an analysis, report, or calculation relating to the cost (or effect on profitability or revenues) of modifying payment processing procedures.  Navient Solutions has undertaken a reasonable search of the custodians responsible for modifying payment processing procedures and will produce any responsive documents.

**DOCUMENT REQUEST NO. 32:  All documents relating to any potential policies, procedures, practices, systems, tools, or methodologies to identify recurring payment processing errors and prevent or minimize their recurrence (whether for a single borrower or multiple borrowers) that Navient Solutions discussed or considered but did not adopt or implement, such as systems or tools to systematically search and/or aggregate non-escalated inquiries about payment processing errors.  Your response to this request should include, without limitation, all documents reflecting the reasons that any such policies, procedures, practices, systems, tools, or methodologies were not adopted or implemented, such as their expected cost.**

**Response**:

Request No. 32 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and (b) "[a]ll documents relating to any potential policies, procedures, practices, systems, tools, or methodologies" that may have been ever considered by any employee at the company over a nine-year period.  Navient Solutions further objects to the extent that Request No. 32 is duplicative of Request Nos. 18, 30, and 31, and directs the CFPB to its responses to those Requests and the documents produced in response thereto.

In response to Navient Solutions' Interrogatory No. 15, the CFPB explained that the challenged conduct is the categorization and escalation of payment processing errors. Navient Solutions accordingly interprets Request No. 32 as seeking documents discussing potential changes to escalated inquiry procedures. Any such discussions would be included in the email searches conducted in response to Request No. 18. Navient Solutions will produce responsive emails to the extent they exist.

**DOCUMENT REQUEST NO. 33**:  **All documents containing an analysis, report, or calculation relating to the value or cost of retaining or releasing cosigners on private loans, including any quantification of the costs or benefits of a loan with a cosigner versus a loan without a cosigner, any quantification of the costs and risks associated with releasing cosigners, and any quantification of the benefit derived by Navient Solutions or the loan holder from retaining cosigners on loans.**

**Response**:

Request No. 33 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and (b) "[a]ll documents containing an analysis, report, or calculation," which could include any consideration by any employee about the value or cost of retaining or releasing cosigners. Navient Solutions is unaware of any analysis, report, or calculation conducted relating to the cost of retaining or releasing cosigners. The benefit or risk of retaining or releasing cosigners relates to the credit risk posed by a borrower with a cosigner or without a cosigner. Navient Solutions interprets Request No. 33 as seeking documents related to the relative credit risk of loans with and without a cosigner. Navient Solutions has undertaken a reasonable search of custodians responsible for considering the credit risk of private loans and will produce any responsive documents.

**DOCUMENT REQUEST NO. 34**:  **For every borrower who, during the applicable time period, enrolled in forbearance or any income-driven repayment plan for any of the borrower's federal loans, or who experienced delinquency or default for any of the borrower's federal loans, all data relating to all federal loans for that borrower, including but not limited to:**

- **Borrower and loan identifiers that allow information from different data sets to be linked together;**

- **Borrower's identifying information (name, address, email address, phone number);**

- **Borrower's educational attendance information, including institutions attended, dates, and graduation status;**

- **All loan-level data for the loans from the outset of repayment (including instances where repayment began prior to 2009), including type of loan, original loan balance, interest rate, payment amounts, and payment dates;**

- **All data regarding enrollment of the federal loans in any repayment option other than the standard repayment plan (including forbearance or an income-driven repayment plan), including dates of enrollment, reasons for enrollment, whether the borrower enrolled in forbearance over the phone or through some other means (such as online), dates of recertifications or missed recertifications for income-driven repayment plans, and any information captured from forms submitted by the borrower;**

- **All credit reporting information furnished for the loans;**

- **All recordings of phone calls with the borrower and all data that reflect communications with the borrower, including records reflecting the occurrence of phone calls with the borrower, the dates of such calls, and the content of such calls (i.e., all notes of such calls); and**

- **All demographic information concerning the borrower, including occupation, income, and family size.**

**<u>Response</u>:**

Request No. 34 is overbroad and unduly burdensome in that it seeks essentially the entire federal student loan servicing platform for Department of Education loans and seeks information unrelated to the claims in this action. By seeking "[a]ll data relating to all federal loans" for every borrower ever in forbearance, income-driven repayment, delinquency, or default over a nine-year period, Request No. 34 seeks all data relating to almost all of the millions of federal student loan borrowers serviced by Navient Solutions because the vast majority of federal student loan borrowers have been in one of those statuses at some point in time. After five years of investigation, the CFPB identified only 18 borrowers who were allegedly harmed by

forbearance, and with less than two months left in discovery, the CFPB nonetheless seeks information relating to millions of borrowers.

Furthermore, because Request No. 34 seeks all possible information related to millions of borrowers, the request would require Navient Solutions to transfer to the CFPB essentially *all* of the information housed on the various systems that comprise its federal loan servicing platform. Producing just the borrower, loan, and transactional information (which is housed on separate systems depending on whether a loan was issued under the FFEL program or directly by the U.S. Department of Education) would involve the transfer of an estimated 200 *terabytes* of data and require more than 250,000 of the disks the parties have used for productions. An even more substantial effort would be required to collect and produce the *millions* of call recordings encompassed by the request. Navient Solutions has used five different systems to store call recordings during the period in question, and linking an individual borrower to call files stored on these various systems is a manual process. Moreover, even if these millions of files could be collected and transferred to the CFPB, Navient Solutions estimates that the recordings would represent the equivalent of *more than one hundred years* of call time.

The request is also overly broad and unduly burdensome because much of the borrower information requested is not maintained in the ordinary course of business. For example, because Navient Solutions does not systematically record or track information regarding a borrower's income, family size, occupation, or education history, collecting and producing such information would require a manual review of applications and other communications and the creation of a new "borrower profile" for each of the millions of borrowers encompassed by the CFPB's request. Such an effort lies well beyond what the rules of discovery require.

Not only is the CFPB's request unreasonably burdensome, it also raises serious data security and privacy concerns for the millions of federal student loan borrowers whose information the CFPB has demanded.  The CFPB has provided no assurances that it would be able to securely store the data once transferred.  To the contrary, the CFPB's own Inspector General has called into question whether the agency has adequate procedures for maintaining the security of this sensitive information,[1] and the Department of Education recently cancelled an arrangement with the CFPB through which it had previously shared borrower information similar to what is sought by this request.[2]  Thus, even if the CFPB's requests were reasonable and proportional to the needs of this case (which they are not), the CFPB has not proposed a mechanism for securely transferring and storing the information in question in a manner that ensures that borrower information would be adequately safeguarded.

Navient Solutions is prepared to make certain data available for inspection on its premises, subject to an appropriate agreement with the CFPB.  *See* Fed. R. Civ. P. 34(b)(2)(B). Pursuant to procedures to be agreed upon by the parties, the CFPB would be permitted to inspect certain federal loan servicing data through a secured computer terminal connected to Navient Solutions' federal student loan servicing systems.

**DOCUMENT REQUEST NO. 35:  For every borrower serviced by Navient Solutions who had his/her federal loans discharged due to total and permanent disability and who had the "AL" code furnished during the applicable time period, all data relating to all federal loans for that borrower, including but not limited to:**

- **Borrower and loan identifiers that allow information from different data sets to be linked together;**

- **Borrower's identifying information (name, address, email address, phone number);**

---

[1] Consumer Financial Protection Bureau, Office of Inspector General Evaluation Report (Sept. 20, 2017).

[2] Letter from Kathleen Smith and A. Wayne Johnson to Richard Cordray (Aug. 31, 2017).

- **Borrower's educational attendance information, including institutions attended, dates, and graduation status;**

- **All loan-level data for the loans from the outset of repayment (including instances where repayment began prior to 2009), including type of loan, original loan balance, interest rate, payment amounts, and payment dates;**

- **All credit reporting information furnished for the loans, including dates that the "AL" code was furnished;**

- **All recordings of phone calls with the borrower and all data that reflect communications with the borrower, including records reflecting the occurrence of phone calls with the borrower, the dates of such calls, and the content of such calls (i.e., all notes of such calls);**

- **All data relating to the discharge of the federal loans due to total and permanent disability, including the date on which Navient Solutions became aware that the borrower's loans were discharged; and**

- **All demographic information concerning the borrower, including occupation, income, and family size.**

**<u>Response</u>:**

Request No. 35 is overbroad and unduly burdensome to the extent that it seeks information relating to "every borrower" who had his/her federal loans discharged due to total and permanent disability and who had the "AL" code furnished to credit bureaus during the applicable time period. The CFPB's claim relates only to borrowers whose loans were not in default at the time Navient Solutions allegedly furnished the "AL" code to credit bureaus. Information relating to borrowers whose loans were already in default at the time they were discharged due to total and permanent disability thus has no potential relevance to the CFPB's claim. Request No. 35 is also overbroad and unduly burdensome to the extent it seeks "[a]ll data relating to all federal loans" for almost 20,000 borrowers. The CFPB's claim relates only to Navient Solutions' alleged furnishing of the "AL" code to credit bureaus when a borrower's loans were discharged due to total and permanent disability. Detailed income and demographic information, education history, and recordings of phone conversations have limited relevance to

that allegation.  Navient Solutions further objects that Request No. 35 raises data security and

privacy concerns for thousands of borrowers, as described in its response to Request No. 34.

Navient Solutions is prepared to make certain data available for inspection on its

premises, subject to an appropriate agreement with the CFPB.  *See* Fed. R. Civ. P. 34(b)(2)(B).

Pursuant to procedures to be agreed upon by the parties, the CFPB would be permitted to inspect

certain federal loan servicing data through a secured computer terminal connected to Navient

Solutions' federal student loan servicing systems.

**DOCUMENT REQUEST NO. 36**: For every borrower who had a private loan with a cosigner and for which at least one of his or her private loans was in paid ahead status at least once during the applicable time period, all data relating to each such private loan, including but not limited to:

- **Borrower and loan identifiers that allow information from different data sets to be linked together;**

- **Borrower's identifying information (name, address, email address, phone number);**

- **Borrower's educational attendance information, including institutions attended, dates, and graduation status;**

- **Cosigner's identifying information (name, address, email address, phone number);**

- **All loan-level data for the loan from the outset of repayment (including instances where repayment began prior to 2009), including type of loan, original loan balance, interest rate, payment amounts, and payment dates;**

- **All credit reporting information furnished for the loan;**

- **All recordings of phone calls with the borrower and all data that reflect communications with the borrower or cosigner, including records reflecting the occurrence of phone calls with the borrower or cosigner, the dates of such calls, and the content of such calls (i.e., all notes of such calls);**

- **All data regarding the requirements for cosigner release, including the number of consecutive, on-time payments required for cosigner release;**

- **All data regarding any attempts by the borrower or cosigner to obtain cosigner release;**

- **All data reflecting the number of consecutive, on-time payments made by the borrower as tracked by Navient Solutions;**

- **All data quantifying or describing the value, costs, or risks of the loan with and without the cosigner; and**

- **All demographic information concerning the borrower and cosigner, including occupation, income, and family size.**

**<u>Response</u>:**

Request No. 36 is overbroad and unduly burdensome to the extent that it seeks information for "all borrowers" who had a private loan with a cosigner and for which at least one of his or her private loans was in paid ahead status at any point during the applicable time period. *First*, in the ordinary course of business, Navient Solutions does not maintain records of whether any of a borrower's private loans have been in "paid ahead" status at some point during the life of the loan.  Identifying the population of borrowers encompassed by this request would thus require Navient Solutions to perform complex data analysis across its entire private loan servicing platform to determine whether millions of private student loan borrowers had at any point made a payment sufficient to cover multiple months (such that the borrower's loan would be in "paid ahead" status).  Such analysis lies beyond what the discovery rules require.  *Second,* the CFPB's allegations concern only borrowers who allegedly were denied cosigner release because of a failure to make a certain number of consecutive on-time payments.  Information relating to borrowers whose loans were in paid-ahead status but who never applied to release a cosigner has no potential relevance to those allegations.

Request No. 36 is also overbroad and unduly burdensome to the extent it seeks "[a]ll data relating to each such private loan" for borrowers with loans that have been in "paid ahead" status.  The CFPB's claim relates only to Navient's alleged requirement that a borrower make a particular number of consecutive, on-time payments in order to apply for cosigner release.

Detailed demographic information, education history, and recordings of phone conversations have limited relevance to that allegation.

Navient Solutions further objects that Request No. 36 raises data security and privacy concerns for thousands of borrowers, as described in response to Request No. 34.

Navient Solutions is prepared to make certain data available for inspection on its premises, subject to an appropriate agreement with the CFPB. *See* Fed. R. Civ. P. 34(b)(2)(B). Pursuant to procedures to be agreed upon by the parties, the CFPB would be permitted to inspect certain private loan servicing data through a secured computer terminal connected to Navient Solutions' private student loan servicing systems.

**DOCUMENT REQUEST NO. 37**: **For every borrower who, during the applicable time period, communicated or made a repeat concern, complaint, inquiry, or dispute to Navient Solutions about an asserted problem or error relating to the processing, allocation, or application of payments (where "repeat" means within 120 days of the prior concern, complaint, inquiry, or dispute by the borrower or anyone acting on the borrower's behalf that concerns the same type of problem or error), all data relating to the concerns, complaints, inquiries, or disputes and the affected loans, including but not limited to:**

- **Borrower and loan identifiers that allow information from different data sets to be linked together;**

- **Borrower's identifying information (name, address, email address, phone number);**

- **Borrower's educational attendance information, including institutions attended, dates, and graduation status;**

- **All loan-level data for the loans from the outset of repayment (including instances where repayment began prior to 2009), including type of loan, original loan balance, interest rate, payment amounts, and payment dates;**

- **The date of the initial concern, complaint, inquiry, or dispute;**

- **The date that the asserted problem or error was resolved;**

- **The subject matter(s) or issue(s) raised by the concern, complaint, inquiry, or dispute;**

- **The response to the concern, complaint, inquiry, or dispute (e.g., closed without any change to the borrower's account, closed with compensation, etc.).  If Navient Solutions uses specific codes to characterize the response, those codes should be supplied for this data element;**

- **The amount of any financial remediation, refund, or compensation provided to the consumer as a result of the concern, complaint, inquiry, or dispute, and if so, the date that this amount was provided;**

- **All credit reporting information furnished for the loans;**

- **All recordings of phone calls with the borrower and all data that reflect communications with the borrower, including records reflecting the occurrence of phone calls with the borrower, the dates of such calls, and the content of such calls (i.e., all notes of such calls); and**

- **All demographic information concerning the borrower, including occupation, income, and family size.**

**<u>Response:</u>**

Request No. 37 is overbroad and unduly burdensome to the extent that it seeks information for "every borrower" who communicated a "repeat" concern, complaint, inquiry, or dispute to Navient Solutions about an asserted problem or error relating to the processing, allocation, or application of payments.  Navient Solutions has policies and procedures for escalating, tracking, and resolving complaints and inquiries from borrowers, but it does not in the ordinary course of business track whether a particular borrower has had "the same type of problem or error more than once in a 120-day period," a time period made up by the CFPB.  Identifying the population of borrowers encompassed by Request No. 37 would thus require Navient Solutions to manually review *every* complaint or inquiry submitted over a period of more than eight years to determine (a) the borrower who submitted the complaint or inquiry and (b) whether the borrower submitted "the same type of" complaint or inquiry within a period of 120 days before or after the complaint or inquiry in question.  Given that many complaints are unsubstantiated and/or immediately resolved, such an effort is neither reasonable nor

proportional to the needs of this case—particularly in light of the fact that, after five years of investigation, the CFPB has identified just 14 borrowers who allegedly support its payment processing claims.

Request No. 37 is also overbroad and unduly burdensome to the extent it seeks "all data" relating to loans for which a borrower submitted such complaints or inquiries. Detailed income and demographic information, education history, and recordings of phone conversations are of limited relevance to the CFPB's claims regarding Navient Solutions' policies and procedures for handling complaints and inquiries related to the processing, allocation, or application of payments.

Navient Solutions further objects that Request No. 37 is duplicative of previous requests for information, and that the CFPB is already in possession of documents that appear to be responsive to this request. Specifically:

- On October 25, 2013 and December 20, 2013, Sallie Mae, Inc. produced documents responsive to Document Request 6 of the September 5, 2013 CID issued by CFPB to Sallie Mae, Inc., which sought "All customer complaints, whether received directly from the customer or through an intermediary, relating to your student loan payment processing, including, but not limited to, how overpayments, partial payments, and underpayments were applied to loans." These documents are located at the Bates Ranges SLMA-005-0000101; SLMA-012-0000001 to SLMA-012-0000822.

- On July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 4 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "[a] copy of all reports and presentations documenting complaints received by you about your servicing of student loans." CFPB CID to Sallie Mae, Inc., Apr. 29, 2014. These documents are located at the Bates Range NSI-014-0001631 to NSI-014-0003399.

Navient Solutions also objects that Request No. 37 raises data security and privacy concerns for borrowers, as described in response to Request No. 34.

Navient Solutions is prepared to make certain data available for inspection on its premises, subject to an appropriate agreement with the CFPB. *See* Fed. R. Civ. P. 34(b)(2)(B).

Pursuant to procedures to be agreed upon by the parties, the CFPB would be permitted to inspect certain loan servicing data through a secured computer terminal connected to Navient Solutions' student loan servicing systems.

**DOCUMENT REQUEST NO. 38:  Documents sufficient to show the complete basis of the data provided in the spreadsheet bearing Bates number NSI-036-00000001, including but not limited to: (a) documents sufficient to identify each consumer whose federal loan(s) is/are covered by or included within each figure in the spreadsheet and borrower and loan identifiers for each of their federal loans (which match the borrower and loan identifiers provided in response to Request for Production #34); (b) documents sufficient to show the complete methodology used to calculate each figure in the spreadsheet.**

**Response:**

Request No. 38 is overbroad and unduly burdensome to the extent that it seeks "documents sufficient to identify each consumer whose federal loan(s) is/are covered by or included within each figure in the spreadsheet."  Navient Solutions generated the report in question during settlement discussions with the CFPB by running queries on its federal loan servicing systems and then analyzing the results of those queries to determine the number of borrowers responsive to the requests made by the CFPB.  At the time it asked for this information, the CFPB did not request any information relating to the borrowers included in these figures, and Navient Solutions did not maintain documents sufficient to identify the individual borrowers tallied in that spreadsheet.  Navient Solutions has no obligation under the Federal Rules to perform (for a second time) the complex data analysis required to satisfy the CFPB's new request, and such analysis is neither reasonable nor proportional to the needs of this case, particularly because under Federal Rule of Evidence 408 the spreadsheet and any underlying materials are inadmissible as evidence of Navient Solutions' liability.

Navient Solutions further objects to the extent that the use of the undefined term "complete basis" fails to identify with particularity the information actually sought.  Moreover, to the extent the CFPB's request for documents sufficient to show the "complete methodology

used to calculate each figure in the spreadsheet" encompasses documents created at the direction

of counsel or communications or communications with counsel, Navient Solutions objects that

such files are protected by the attorney-client privilege and/or work product doctrine.

Navient Solutions further objects that Request No. 38 raises data security and privacy

concerns for thousands of borrowers, as described in response to Request No. 34.

Nonetheless, Navient Solutions has identified the custodians principally responsible for

preparing the figures included in the spreadsheet bearing Bates number NSI-036-00000001.

Navient Solutions has conducted a reasonable search and will produce non-privileged materials

relating to the methodology used to calculate those figures.  Further, as indicated in its response

to Request No. 34, Navient Solutions is prepared to make certain data available for inspection on

its premises, subject to an appropriate agreement with the CFPB.  *See* Fed. R. Civ. P.

34(b)(2)(B).

**DOCUMENT REQUEST NO. 39:  Documents sufficient to show the complete basis of the data provided in the spreadsheet bearing Bates number NSI-038-00000001, including but not limited to: (a) documents sufficient to identify each consumer whose federal loan(s) is/are covered by or included within each figure in the spreadsheet and borrower and loan identifiers for each of their federal loans (which match the borrower and loan identifiers provided in response to Request for Production #34); (b) documents sufficient to show the complete methodology used to calculate each figure in the spreadsheet.**

**Response:**

Request No. 39 is overbroad and unduly burdensome to the extent that it seeks

"documents sufficient to identify each consumer whose federal loan(s) is/are covered by or

included within each figure in the spreadsheet."  Navient Solutions generated the report in

question during settlement discussions with the CFPB by running queries on its federal loan

servicing systems and then analyzing the results of those queries to determine the number of

borrowers responsive to the requests made by the CFPB.  At the time it asked for this

information, the CFPB did not request any information relating to the borrowers included in

these figures, and Navient Solutions did not maintain documents sufficient to identify the individual borrowers tallied in that spreadsheet.  Navient Solutions has no obligation under the Federal Rules to perform (for a second time) the complex data analysis required to satisfy the CFPB's new request, and such analysis is neither reasonable nor proportional to the needs of this case, particularly because under Federal Rule of Evidence 408 the spreadsheet and any underlying materials are inadmissible as evidence of Navient Solutions' liability.

Navient Solutions further objects to the extent that the use of the undefined term "complete basis" fails to identify with particularity the information actually sought.  Moreover, to the extent the CFPB's request for documents sufficient to show the "complete methodology used to calculate each figure in the spreadsheet" encompasses documents created at the direction of counsel or communications or communications with counsel, Navient Solutions objects that such files are protected by the attorney-client privilege and/or work product doctrine.

Navient Solutions further objects that Request No. 39 raises data security and privacy concerns for thousands of borrowers, as described in response to Request No. 34.

Nonetheless, Navient Solutions has identified the custodians principally responsible for preparing the figures included in the spreadsheet bearing Bates number NSI-038-00000001. Navient Solutions has conducted a reasonable search and will produce non-privileged materials relating to the methodology used to calculate those figures.  Further, as indicated in its response to Request No. 34, Navient Solutions is prepared to make certain data available for inspection on its premises, subject to an appropriate agreement with the CFPB.  *See* Fed. R. Civ. P. 34(b)(2)(B).

**DOCUMENT REQUEST NO. 40:  Documents sufficient to show the complete basis of the data provided in the spreadsheet bearing Bates number NSI-039-00000001, including but not limited to: (a) documents sufficient to identify each consumer whose federal loan(s) is/are covered by or included within each figure in the spreadsheet and borrower and loan**

**identifiers for each of their federal loans (which match the borrower and loan identifiers provided in response to Request for Production #34); (b) documents sufficient to show the complete methodology used to calculate each figure in the spreadsheet.**

<u>**Response**</u>:

Request No. 40 is overbroad and unduly burdensome to the extent that it seeks "documents sufficient to identify each consumer whose federal loan(s) is/are covered by or included within each figure in the spreadsheet."  Navient Solutions generated the report in question as part of settlement discussions with the CFPB by running queries on its federal loan servicing systems and then analyzing the results of those queries to determine the number of borrowers responsive to the requests made by the CFPB.  At the time it asked for this information, the CFPB did not request any information relating to the borrowers included in these figures, and Navient Solutions did not maintain documents sufficient to identify the individual borrowers tallied in that spreadsheet.  Navient Solutions has no obligation under the Federal Rules to perform (for a second time) the complex data analysis required to satisfy the CFPB's new request, and such analysis is neither reasonable nor proportional to the needs of this case, particularly because under Federal Rule of Evidence 408 the spreadsheet and any underlying materials are inadmissible as evidence of Navient Solutions' liability.

Navient Solutions further objects to the extent that the use of the undefined term "complete basis" fails to identify with particularity the information actually sought.  Moreover, to the extent the CFPB's request for documents sufficient to show the "complete methodology used to calculate each figure in the spreadsheet" encompasses documents created at the direction of counsel or communications or communications with counsel, Navient Solutions objects that such files are protected by the attorney-client privilege and/or work product doctrine.

Navient Solutions further objects that Request No. 40 raises data security and privacy concerns for thousands of borrowers, as described in response to Request No. 34.

Nonetheless, Navient Solutions has identified the custodians principally responsible for preparing the figures included in the spreadsheet bearing Bates number NSI-039-00000001. Navient Solutions has conducted a reasonable search for and will produce any non-privileged materials relating to the methodology used to calculate those figures.  Further, as indicated in its response to Request No. 34, Navient Solutions is prepared to make certain data available for inspection on its premises, subject to an appropriate agreement with the CFPB.  *See* Fed. R. Civ. P. 34(b)(2)(B).

**DOCUMENT REQUEST NO. 41**:  **Documents sufficient to show the complete basis of the data provided in the spreadsheet bearing Bates number NSI-040-00000001, including but not limited to: (a) documents sufficient to identify each consumer whose federal loan(s) is/are covered by or included within each figure in the spreadsheet and borrower and loan identifiers for each of their federal loans (which match the borrower and loan identifiers provided in response to Request for Production #34); (b) documents sufficient to show the complete methodology used to calculate each figure in the spreadsheet.**

**Response:**

Request No. 41 is overbroad and unduly burdensome to the extent that it seeks "documents sufficient to identify each consumer whose federal loan(s) is/are covered by or included within each figure in the spreadsheet."  Navient Solutions generated the report in question during settlement discussions with the CFPB by running queries on its federal loan servicing systems and then analyzing the results of those queries to determine the number of borrowers responsive to the requests the CFPB made during its investigation.  At the time it asked for this information, the CFPB did not request any information relating to the borrowers included in these figures, and Navient Solutions did not maintain documents sufficient to identify those borrowers.  Navient Solutions has no obligation under the Federal Rules to perform (for a second time) the complex data analysis required to satisfy the CFPB's new request, and such analysis is neither reasonable nor proportional to the needs of this case, particularly because

under Federal Rule of Evidence 408 the spreadsheet and any underlying materials are inadmissible as evidence of Navient Solutions' liability.

Navient Solutions further objects to the extent that the use of the undefined term "complete basis" fails to identify with particularity the information actually sought.  Moreover, to the extent the CFPB's request for documents sufficient to show the "complete methodology used to calculate each figure in the spreadsheet" encompasses documents created at the direction of counsel or communications or communications with counsel, Navient Solutions objects that such files are protected by attorney-client or work product privileges.

Navient Solutions further objects that Request No. 41 raises data security and privacy concerns for thousands of borrowers, as described in response to Request No. 34.

Nonetheless, Navient Solutions has identified the custodians principally responsible for preparing the figures included in the spreadsheet bearing Bates number NSI-040-00000001. Navient Solutions has conducted a reasonable search for and will produce any non-privileged materials relating to the methodology used to calculate those figures.  Further, as indicated in its response to Request No. 34, Navient Solutions is prepared to make certain data available for inspection on its premises, subject to an appropriate agreement with the CFPB.  *See* Fed. R. Civ. P. 34(b)(2)(B).

**DOCUMENT REQUEST NO. 42:  All documents relating to the entity relationship diagram, relational database schema, or similar diagram showing all data collected, archived, maintained, or used by Navient Solutions relating to the servicing of student loans, including but not limited to documents showing all entities, attributes, and interrelationships for relevant flat-file and relational databases, and documents showing definitions of all elements.**

**Response:**

Request No. 42 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and/or the types of loans at issue, and (b) "[a]ll

documents relating to" diagrams "showing all data collected, archived, maintained, or used by

Navient Solutions relating to the servicing of student loans," regardless of whether those

documents are necessary to understand the systems in question.  Nonetheless, Navient Solutions

has identified the custodians primarily responsible for maintaining data relating to Navient

Solutions' servicing of student loans.  Navient Solutions has conducted a reasonable search and

will produce any responsive diagrams or schemas and data dictionaries.

**DOCUMENT REQUEST NO. 43:  All documents or descriptions relating to identifying the relationship among data files produced in response to any of the foregoing requests, or relating to understanding the data files produced in response to any of the foregoing requests, including but not limited to:**

- **Descriptions of each data field in each data file;**

- **Descriptions of the structure and content of each data file;**

- **Descriptions detailing the high-level relationships among the data files;**

- **Descriptions detailing the limitations of the data files;**

- **Descriptions explaining any missing time for date-related fields;**

- **Descriptions explaining any differences in the data files; and**

- **Descriptions explaining any similarities in the data files.**

**Response:**

    Request No. 43 is overbroad and unduly burdensome to the extent the request requires

Navient Solutions to create documents that do not exist in the ordinary course of business.  As

explained above, Navient Solutions is prepared to make certain data available for inspection on

its premises, subject to an appropriate agreement with the CFPB.  To facilitate inspection,

Navient Solutions will produce data dictionaries, system reference guides, and other materials.

Dated:  March 30, 2018                    Respectfully submitted,

/s/ Jonathan E. Paikin
Matthew T. Martens (DC 1019099) (*pro hac vice*)
Jonathan E. Paikin (DC 466445) (*pro hac vice*)
Daniel P. Kearney (DC 977148) (*pro hac vice*)
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
   Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
matthew.martens@wilmerhale.com
jonathan.paikin@wilmerhale.com
daniel.kearney@wilmerhale.com
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

Daniel T. Brier (PA 52348)
Donna A. Walsh (PA 74833)
Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
dbrier@mbklaw.com
dwalsh@mbklaw.com
Tel: 570-342-6100
Fax: 570-342-6147

*Counsel for Navient Corporation, Navient
Solutions, LLC, and Navient Solutions Credit
Recovery, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 30, 2018, I served the foregoing Objections and Responses to

Plaintiff's Second Set of Requests for Production to the CFPB by email to the following counsel

for Plaintiff:

> Nicholas Jabbour:  Nicholas.Jabbour@cfpb.gov
> Ebony Sunala Johnson:  Ebony.Johnson@cfpb.gov
> Lawrence DeMille-Wagman: Lawrence.Wagman@cfpb.gov
> Andrea Matthews: Andrea.Matthews@cfpb.gov
> Thomas H. Kim: Thomas.Kim@cfpb.gov
> Manuel Arreaza (Manuel.Arreaza@cfpb.gov)
> Nicholas Lee (Nicholas.Lee@cfpb.gov)
> David Dudley (David.Dudley@cfpb.gov)

Mr. Jabbour, on behalf of Plaintiff, previously consented to electronic service.


  /s/ Karin Dryhurst
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

*Counsel for Navient Corporation, Navient Solutions, LLC, and Navient Solutions Credit Recovery, Inc.*

A28

# Exhibit C

DRAFT

## DATA ACCESS PROTOCOL

Plaintiff Bureau of Consumer Financial Protection (the "Bureau") and Defendant Navient

Solutions, LLC ("Navient Solutions") agree that the following Access Protocol shall facilitate

and govern the Bureau's access to certain data materials for purposes of providing information

responsive to Requests 34 through 43 of the Bureau's Second Set of Requests for Production to

Navient Solutions and to Interrogatories 18 and 20 of the Bureau's First Set of Interrogatories to

Navient Solutions.  The parties' agreement is without prejudice to their respective rights and

objections in regard to any written discovery previously served in this action.

**A.      Data Materials**

1.   On or before August 9, 2018, and pursuant to the Clean Room Protocol described in

     Section B, Navient Solutions shall make available for review the following

     (collectively, the "Data Materials"):

     a)     Real-time access to Navient Solutions' FDR, CLASS, CARES,
            Jack Henry, Artiva, Eagle, and Encore data and software systems,
            and any interfaces and monthly snapshots related to loan servicing
            and collections; real-time access to call recordings; and real-time
            access to the complaint database (collectively, the "Data Systems")
            to the extent applicable and available for borrowers with federal or
            private student loans serviced by Navient Solutions or its
            predecessor Sallie Mae, Inc. from 2010 to the present.  The Data
            Systems are the systems used to service federal and private student
            loans and contain the data requested to the extent it exists.  If the
            Data Systems do not encompass the data or information sought by
            Requests 34 through 43 of the CFPB's Second Set of Requests for
            Production to Navient Solutions and Interrogatories 18 and 20 of
            the Bureau's First Set of Interrogatories, but the data or
            information is otherwise available to Navient Solutions, the parties
            will meet and confer concerning access.

     b)     Encrypted productions of extracted data and information and
            available demographic information associated with a reasonable
            subset of borrowers (not to exceed 3 terabytes), to the extent the
            data and information exist in the ordinary course of business in the
            applicable Data Systems as of the date of the extraction, including

without limitation all historical data available for the applicable
borrowers; and

c)    Access in the Clean Room to the selected extracted data and
information in a separate database environment with access to
database tools and interfaces.

2.   Navient Solutions will produce available data dictionaries and system reference
guides for the Data Systems to the Bureau.

3.   The Bureau will provide a list of the data fields from the various data dictionaries to
be included in the encrypted data production.

4.   The Bureau shall provide a written certification that it has obtained permission from
the Department of Education for access to and production of records and property of
the Department of Education and that are restricted from disclosure pursuant to the
Privacy Act of 1974 ("Privacy Act') and the Department of Education's contract with
Navient, including in Department System of Records (SOR) such as Common
Services for Borrowers (CSB) SOR (18-11-16) and the Ombudsman SOR (18-11-11).

5.   All Data Materials shall be considered "Confidential Information" pursuant to the
parties' Confidentiality Agreement and Protective Order accepted by the Court on
November 3, 2017 (the "Protective Order"), and shall be subject to such additional
security requirements that Navient Solutions may determine are reasonably necessary
to ensure that the Data Materials are only used for proper purposes and to minimize
the risk of an inadvertent disclosure that could potentially harm the owners of the
information (collectively, the "Data Security Requirements").

6.   To the extent the Bureau believes that it needs more than 3 terabytes of information,
or that the Data Security Requirements unreasonably impair or restrict its ability to

use or analyze the Data Materials for purposes of the litigation, the parties will meet and confer.

**B.      Clean Room Protocol**

1.  Navient Solutions shall make real-time access to the Data Systems available by providing view-only access to the Data Systems via two or more computers (to be supplied by Navient Solutions) located in a separate room in Navient Solutions' Wilkes-Barre, Pennsylvania offices (a "Clean Room").  Navient Solutions employees will be made available to answer any technical questions that may be reasonably necessary to facilitate the Reviewers' (defined *infra*) access to the Data Systems, and to run scripts and queries that exist in the ordinary course of business.  Navient Solutions employees will generally not be present in the Clean Room, unless their assistance is requested by the Reviewers.

2.  Navient Solutions shall provide, as needed by the Bureau and at the Bureau's expense, one or more encrypted USB drives for the purpose of enabling "screen shots," data files, extracted data, or any other type of document to be taken offsite in regard to the Data Materials in the various applicable Data Systems.  Each such screen shot, data file, extracted data, or other type of document (each, a "Document") shall be assigned a unique document ID by the Bureau.  The Document(s) shall be saved onto the encrypted USB drive(s) using the unique document ID as the file name.  Within two business days after requested by the Bureau, Navient Solutions shall send to the Bureau, by hand delivery or overnight mail, a copy of the encrypted USB drive(s) with all saved Documents, which shall be designated and treated as Confidential Information under the Protective Order.  Navient Solutions shall retain a

copy of the encrypted USB drive(s) with all saved Documents.  The Bureau will be able to use any encrypted USB drive(s) offsite in a manner consistent with the Protective Order.

3.  The Bureau shall provide to Navient Solutions the following information for each of the CFPB's employees, third-party vendors, and/or experts seeking access to the Clean Room (each, a "Reviewer"):

a) First and last name;

b) Telephone number

c) E-mail address; and

d) Relationship with the Bureau.

4.  Authorized Reviewers may include the CFPB's employees, third-party vendors, and/or experts working under the supervision of the CFPB.  All Reviewers shall have their identities established through the verification of a state or federally issued ID prior to being granted access to the Clean Room or any Data Materials.

5.  No Reviewer shall have access to the Clean Room unless and until the Bureau has provided to Navient Solutions a copy, signed by that Reviewer, of an acknowledgment and agreement to be bound by the Protective Order and any Data Security Requirements.  It shall be the responsibility of the Bureau to supervise the Reviewers and ensure their compliance with the terms of the Protective Order and, if applicable, any Data Security Requirements.

6.  Beginning no later than May X, 2018, Navient Solutions shall make the Clean Room available to the Reviewers during normal business hours for up to five (5) business days that Navient Solutions is open, during dates and times that shall be agreed upon

by the parties.  To the extent the Bureau believes that it needs more than five business days, the parties will meet and confer.  The Reviewers will be allowed to communicate with the Bureau, its agents, or its contractors from within the Clean Room using a landline telephone to be supplied by Navient Solutions, for purposes of seeking technical assistance and guidance in identifying Data Materials to be reviewed (an "Assistance Call").  Other than an Assistance Call, no form of external communication from within the Clean Room is permitted.

7.  The Reviewers may bring one laptop (to be provided by the Bureau) into the Clean Room for the exclusive purposes of off-line viewing of documents previously produced in this proceeding and of taking or viewing notes, except that the Bureau may not take notes from the Clean Room that contain non-public information or borrower account information.  The Reviewers shall also be able to bring one cell phone per person solely to view text messages and missed calls, but otherwise there shall be no access to the internet, no outgoing texts, no emails, no phone conversations (except via the landline described above), or other communications or connectivity of any kind, and no audio or video recording or taking of any photographs, while in the Clean Room.  The Reviewers may also bring food and beverages intended for consumption that day into the Clean Room.

8.  No outerwear, bags, or other communication, storage, or electronic devices other than the laptop, cell phones, and food and beverages described above may be taken into or used in the Clean Room for any other purpose, and Navient Solutions' monitors may conduct security screenings (including of any laptop brought into the Clean Room by

the Reviewer(s)) to ensure no unauthorized materials or items are taken into or out of the Clean Room.

9.  With the exception of Documents saved to the encrypted USB drive(s) described above, no recordings or any other reproduction of non-public information accessed in the Data Systems may be taken from the Clean Room.

10. Navient Solutions may put in place appropriate measures to ensure the security of Navient Solutions' data and to limit the Reviewers' access to other portions of the Wilkes-Barre facility.

11. Navient Solutions' counsel may, but are not required to, participate in any and all interactions between the Reviewers and any employees or agents of its client in the Clean Room, via telephone, or otherwise pursuant to this Protocol.

12. No audio or video recording, or photographing, of the Clean Room will be conducted while the Reviewers are in the room.  The landline in the Clean Room will not be monitored or recorded.

Dated: [X], 2018

_____                    _____
Nicholas Jabbour                                        Jonathan E. Paikin
*Attorney for Plaintiff Bureau of Consumer*           *Attorney for Defendant Navient Solutions,*
*Financial Protection*                                 *LLC*

# Exhibit D

1700 G Street NW,
Washington, DC 20552



May 30, 2018

**<u>Via Email</u>**

J. Justin Riemer
Deputy General Counsel
U.S. Department of Education
400 Maryland Avenue SW
Lyndon Baines Johnson Building
Washington, DC 20202–2100

Re:   *Consumer Financial Protection Bureau v. Navient Corp., et al.,*
Case No. 3:17-CV-00101-RDM (M.D. Pa.)

Dear Mr. Riemer:

I write in connection with the above-captioned litigation. As Dan Kearney, counsel for Defendants, notified you in a letter dated May 8, 2018, the Bureau served on Defendant Navient Solutions LLC ("Navient Solutions") requests for production of various documents, including data, related to Department of Education ("Department") loans. Mr. Kearney sought "direction from the Department as to whether Navient Solutions is permitted to provide the requested information to the Bureau in response to the requests." Enforcement staff has conveyed to me that the Department is interested in a request from the Bureau indicating how the requirements of the Privacy Act permit disclosure of the documents.

The Privacy Act permits one agency to disclose information protected by the Act "to another agency or to an instrumentality of any governmental jurisdiction within or under the control of the United States for a civil or criminal law enforcement activity if the activity is authorized by law, and if the head of the agency or instrumentality has made a written request to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought." 5 U.S.C. § 552a(b)(7). The authority of the "head of the agency" to make the request can be delegated. Office of Management & Budget, *Privacy Act Guidelines*, 40 Fed. Reg. 28949, 28955 (1975) ("The words 'head of the agency' deserve elaboration. . . . Such duties may be delegated, like other duties, to other officials, when absolutely necessary but never below a section chief, and this is what is contemplated by subsection (b)(7). The Attorney General, for example, will have the power to delegate the authority to request the thousands of records which may be required for the operation of the Justice Department under this section.").

I have been delegated, pursuant to 12 U.S.C. § 5492(b) and 5 U.S.C. § 552a(b)(7), the authority to request records protected by the Privacy Act. *See* attached Delegation of Authority. Pursuant to that delegation, I hereby request access to all records protected by the Privacy Act that fall within the scope of the Bureau's Second Set of Requests for Production to Navient Solutions, which were attached to Mr. Kearney's May 8 letter. The Bureau is authorized by law

A37

to bring a lawsuit against any entity that violates Federal consumer financial law, and did so against Navient Solutions. *See* 12 U.S.C. § 5564. During fact discovery in that lawsuit, the Bureau has sought the records, which the Bureau is entitled to do because those records are in Navient Solutions' possession. *See* FRCP 34(a)(1). These records are necessary for the Bureau's litigation against Navient Solutions so that the Bureau can identify the consumers potentially harmed by the practices described in the Bureau's Complaint and can quantify the amount of harm suffered by those consumers. Therefore, disclosure is appropriate pursuant to 5 U.S.C. § 552a(b)(7).

Alternatively, the Privacy Act also permits the Department to disclose the records "for a routine use. . . ." 5 U.S.C. § 552a(b)(3). A "routine use" means, "with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected. . . ." 5 U.S.C. § 552a(a)(7). A routine use that is compatible with the purposes for which the data is collected must be described in a Federal Register notice. 5 U.S.C. § 552a(e)(4)(D). We understand that the records sought by the Bureau are located in the Department's Common Services for Borrowers (CSB) System of Record (SOR) (18-11-16) and the Ombudsman SOR (18-11-11). The SOR Notice for SOR 18-11-16 indicates that one routine use is disclosure "to governmental entities at the Federal, State, local, or tribal levels regarding the practices of Department contractors who have been provided with access to the CSB system (e.g., Federal Loan servicers, including not-for-profit servicers, the Federal Perkins Loan servicer, and private collection agencies) with regards to all aspects of loans and grants made under title IV of the HEA, in order to permit these governmental entities to verify the contractor's compliance with debt collection, financial, and other applicable statutory, regulatory, or local requirements." 81 Fed. Reg. 60683, 60687 (2016). Similarly, the SOR Notice for SOR 18-11-11 indicates that one routine use is disclosure "to any Federal, State, local, or foreign agency or other public authority responsible for enforcing, investigating, or prosecuting violations of administrative, civil, or criminal law or regulation if that information is relevant to any enforcement, regulatory, investigative, or prosecutorial responsibility within the receiving entity's jurisdiction." 81 Fed. Reg. 12081, 12083 (2016). These descriptions of routine uses are consistent with the longstanding recognition that a compatible use of collecting data is to provide that data to another agency for law enforcement purposes. *See, e.g., Privacy Act Guidelines*, 40 Fed. Reg. at 28953, 28955. Indeed, the Department's Privacy Act regulations acknowledge that inter-agency disclosure is appropriate for the purpose of investigating or prosecuting violations of law. 34 C.F.R. Pt. 5b, App. B, (5). Thus, providing the data to the Bureau for use in the litigation against Navient Solutions falls squarely within a "routine use" under 5 U.S.C. § 552a(b)(3).

Accordingly, pursuant to 5 U.S.C. § 552a(b)(7) or 5 U.S.C. § 552a(b)(3), the Bureau requests that the Department direct Navient Solutions to provide the Bureau with all access that the Bureau deems necessary for the Bureau to litigate its claims against Navient Solutions. The Bureau looks forward to your response to this request. Please note that the Bureau requested this information from Navient Solutions on February 28, 2018, and it was not until over two months later that Navient Solutions communicated to the Bureau that permission from the Department was required. Because fact discovery in the litigation is scheduled to end on August 9, 2018, the Bureau would appreciate a response to this request by June 4, 2018. Navient Solutions has previously conveyed to us the complexity of understanding its data systems and working with its

data, so while we regret the time sensitive nature of this request, we hope you understand the reasons why a response is needed in this timeframe. We are, of course, happy to make ourselves available to further discuss this request with you and answer any questions you may have.

Please note that, though we are making this request pursuant to 5 U.S.C. § 552(b)(7) or 5 U.S.C. § 552a(b)(3), we expressly reserve all rights to avail ourselves of any legally authorized means to satisfy the requirements of the Privacy Act. For example, we may, if necessary, seek to permit the Bureau's access to the data under 5 U.S.C. § 552a(b)(11), which allows for disclosure "pursuant to the order of a court of competent jurisdiction." *See also Privacy Act Guidelines*, 40 Fed. Reg. at 28955 ("Agencies or other entities seeking disclosure may, of course, seek a court order as a basis for disclosure."). We believe that existing orders in the litigation already satisfy this requirement, but we may seek an additional order if Navient Solutions does not provide access to the documents that have been requested on the grounds of asserted Privacy Act concerns. Our initial preference, however, is to seek permission from the Department through this letter pursuant to 5 U.S.C. § 552(b)(7) or 5 U.S.C. § 552a(b)(3), if such permission can be granted expeditiously.

Thank you for your time and consideration.

Sincerely,

*Kristen Donoghue* /by NJ

Kristen Donoghue
Assistant Director for Enforcement
Bureau of Consumer Financial Protection

3



Consumer Financial
Protection Bureau

1700 G Street, N.W., Washington, DC 20552

**BUREAU ORDER ##-#### (Delegating Authority to Request Privacy Act-Protected Records from the Director to the Assistant Director, Enforcement)**

<u>DATE</u>: October ____, 2014

<u>SUBJECT</u>: Delegation to the Assistant Director, Enforcement to Request Privacy Act-protected records for investigational purposes

<u>DELEGATION</u>

By virtue of the authority vested in me as the Director of the Consumer Financial Protection Bureau ("Bureau"), it is ordered that the Assistant Director, Enforcement, after consultation with the Legal Division, is authorized to request Privacy Act-protected records from other agencies for investigation purposes.  The authorities delegated herein may not be further delegated.

The Director shall retain the right to exercise any authority that is delegated under this Order and to review the Assistant Director's exercise of such authority.

<u>AUTHORITIES</u>:  12 U.S.C. § 5492(b); 5 U.S.C. 552a(b)(7)

OFFICES OF PRIMARY INTEREST:  Supervision, Enforcement, and Fair Lending; Privacy

_Richard Cordray_

Richard Cordray, Director

Consumer Financial Protection Bureau

1