# WILMERHALE

July 13, 2018

Jonathan E. Paikin

+1 202 663 6703 (t)
+1 202 663 6363 (f)
jonathan.paikin@wilmerhale.com

**Via ECF**

The Honorable Robert D. Mariani
U.S. District Court, Middle District of Pennsylvania
William J. Nealon Federal Building & U.S. Courthouse
235 North Washington Avenue
Scranton, PA 18503

    Re:    *CFPB v. Navient Corp. et al.*, No. 3:17-cv-00101 (M.D. Pa.)

Dear Judge Mariani:

    Defendants oppose the CFPB's request for an extension of the fact discovery deadline. As to the borrower records belonging to the U.S. Department of Education ("ED"), Defendants are obligated to adhere to ED's directives regarding access to those records under the Privacy Act. 5 U.S.C. § 552a. Defendants therefore request that the Court hold an in-person conference and afford ED the opportunity to be heard on this important issue.

    **1. Education Department Records**. The CFPB suggests that the impasse it has reached with ED over borrower records is the responsibility of Navient Solutions, LLC ("Navient"), but that is manifestly not the case.

    First, there is no dispute that the records requested by the CFPB belong to ED. The records exist on Navient's systems, but they are the property of the federal government and subject to ED's control. Navient merely acts as agent of the federal government in maintaining those records, just as it "stand[s] in the shoes" of ED in implementing the federal student loan program.[1] Indeed, the CFPB's own letter to ED recognizes that the records belong to ED and seeks ED's consent to access the records. (Doc. 95-1, Exhibit D). This issue is, fundamentally, a dispute between two agencies of the federal government, which is why ED is a necessary party to resolving the issue.

    Second, far from being an obstacle, Navient has consistently sought to resolve this impasse, despite the CFPB's refusal to engage with ED until very late in discovery. Defendants informed the CFPB on August 21, 2017 that permission from ED was required in order to produce certain information responsive to the CFPB's discovery requests. Yet the CFPB declined to engage with ED, compelling Navient to seek permission. In January 2018, hearing no objection from ED at the time, Defendants moved forward with the production of certain materials responsive to the CFPB's requests.

    By spring, circumstances had changed significantly. Initial depositions of the CFPB's borrower witnesses led the CFPB to withdraw several of them. Then, on February 28, 2018—just ten weeks before discovery was set to close—the CFPB suddenly requested from Navient "all data" for millions of borrowers, encompassing millions of ED borrower records and *hundreds of terabytes* of information. (For reference, just one terabyte of data is the equivalent of about 500 million pages of

---

[1] Department of Education, Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers, 83 Fed. Reg. 10619, 10621 (Mar. 12, 2018).

**WILMERHALE**

documents.) Navient nonetheless timely responded and offered to make its systems available to the CFPB pending an agreement to facilitate on-site access.

On May 4, with respect to litigation brought by the Pennsylvania Attorney General, ED informed counsel for Navient that discovery requests for borrower records must be made directly to ED by the requesting entity, to ensure compliance with the Privacy Act. *See* Exhibit A. As we explained to the CFPB, it was this letter that prompted Navient to seek permission from ED to respond to the CFPB's "all data" request for ED records. In fact, Navient provided the CFPB with ED's May 4 letter, contrary to the CFPB's assertion that Navient "did not articulate why it believed that ED's permission was required." (Doc. 95 at 1). The CFPB delayed making a formal request to ED until May 30.

The CFPB has been unable to resolve its dispute with ED. And Navient has been placed in the difficult position of being told by the CFPB to disregard the directives of ED, Navient's contracting agency. Defendants therefore request that: (1) ED be afforded an opportunity to participate in any conference on this issue, and (2) any order by the Court be confined to whether the CFPB may access ED borrower records consistent with the Privacy Act and not, by implication or otherwise, address scope and burden issues regarding the CFPB's "all data" request, as there is no ripe dispute over those issues.

**2. Discovery Extension**. The CFPB's request for yet another extension of the discovery deadline should be denied.

It is worth summarizing how we got here. At the initial case management conference, Defendants proposed an 8-month fact discovery period in light of the multi-year investigation that preceded the suit. The CFPB requested 12 months. The Court granted the CFPB's request, but cautioned that "a year is a long time for discovery" and advised that it would "not be as forthcoming" in granting extensions. (Doc. 53 at 18-19). With a month left before the initial fact discovery deadline, the CFPB moved for a 6-month extension, which Defendants opposed on the ground that any delay was due to the CFPB's lack of diligence. The Court granted a 3-month extension.

Now, the CFPB asks for an indefinite extension of the deadline to five months "from when Defendants complete their responses to the CFPB's written discovery requests." It does not explain how this open-ended deadline is supposed to work or why it is not an invitation to virtually endless discovery. Moreover, the CFPB makes its request despite Defendants' strenuous efforts to conclude discovery in the face of sweeping CFPB demands for internal emails and other documents of attenuated relevance. These efforts include:

- By February, Defendants had produced substantially all documents (including emails) responsive to requests to Pioneer Credit Recovery, Inc. ("Pioneer").

- By March, Defendants completed written responses to the CFPB interrogatories served in February. Defendants have fully responded to each of the CFPB's interrogatories. (The CFPB's contrary assertion is wrong.)

- By April, Defendants had produced substantially all policies responsive to requests to Navient Solutions (many of which were duplicative of requests made during the investigation). By mid-May, Defendants had substantially completed production of emails related to the policies at issue.

WILMERHALE

- Defendants have deposed 14 borrowers and former employees identified by the CFPB, and have conducted 30(b)(6) depositions of the CFPB and ED.

- Defendants have so far produced 2.2 million pages of documents to the CFPB (including 400,000 pages during the investigation).

The principal work that remains is final production of the additional emails returned by the search terms agreed by the parties on May 31 in accordance with the Court's order. These internal company emails are far afield from the CFPB's claims, as they do not relate to any policy or procedure identified in the Complaint or during the CFPB's extensive investigation (emails related to the policies and procedures actually at issue were produced in May). To meet the August 9 deadline, Defendants have proceeded at a ferocious pace to review the emails, engaging 126 contract attorneys for review seven days a week. As a result, by next week, Defendants will produce emails responsive to all five email categories identified in the parties' search-terms agreement, other than potentially privileged documents and certain other documents that require additional review. (And we expect to produce the privileged and additional-review documents before the August 9 deadline.)

By contrast, the CFPB has shown no interest in bringing discovery to a close. It waited until March to notice its first deposition—a 30(b)(6) deposition of Navient Solutions—and has noticed only two other depositions. The notion that the CFPB cannot proceed with depositions until they have the very last internal company email, about an as-yet-unidentified policy or procedure, is baseless. In fact, the CFPB has had all Pioneer-related documents since February and still has not noticed a single deposition on its Pioneer claims. The other reasons offered by the CFPB for an extension are similarly groundless. The CFPB waited until ten months into discovery to request the list of employees referenced in its letter—hardly a diligent effort to "locat[e] additional witnesses." (Doc. 95 at 2). Navient has no idea what "list of various categories of consumers" the CFPB is seeking because the CFPB has never raised this issue with us. (*Id.*).

Finally, the CFPB's belated request—just ten weeks before the close of discovery—for "all data" on millions of ED borrowers does not justify an extension. This has been a costly and protracted matter for Defendants, and they should not unfairly be subjected to an extension merely because the CFPB failed to resolve a dispute with ED over its sweeping demand for borrower records. And even if that dispute were resolved now, the CFPB has delayed in finalizing the details of an agreement concerning access to Navient's systems: Defendants have been waiting since May 31 for comments on a proposed access protocol. A further discovery extension is neither warranted nor appropriate given the CFPB's lack of diligence.

Respectfully submitted,

/s/ Jonathan E. Paikin