1700 G Street NW,
Washington, DC 20552



August 5, 2018

**Filed Via ECF**

The Honorable Robert D. Mariani
U.S. District Court, Middle District of Pennsylvania
William J. Nealon Federal Bldg. & U.S. Courthouse
235 N. Washington Avenue
Scranton, PA 18503

      Re:    *CFPB v. Navient Corp., et al.*, Case No. 3:17-CV-00101-RDM

Dear Judge Mariani:

      I write on behalf of the Bureau to raise two issues with respect to which the parties have met and conferred, but reached an impasse:

      1.     It appears that Defendant Navient Solutions, LLC ("Navient") has withheld relevant documents relating to borrowers on the Bureau's initial disclosures whom Navient has deposed.

      In the course of Navient's depositions of borrowers in this case, Navient has failed to produce: (1) certain calls concerning the borrowers' enrollment in forbearance, even where those calls occurred on or after June 2011[1]; (2) certain correspondence with the borrowers concerning events in their repayment history, such as letters confirming verbal agreements for forbearances; and (3) printable logs from its servicing system documenting notes of calls, notes of correspondence with the borrowers, and dates in which the borrowers were enrolled in various repayment options.

      Navient offered inconsistent explanations for its production decisions. At times, Navient candidly stated that it was selectively producing only those documents "we intend to use at [the] deposition." A91; *see also* A126.[2] Such a position is improper; Navient is withholding relevant documents that are responsive to a valid document request solely because Navient would presumably opt not to "use" them at a deposition. Navient now offers the seemingly benign explanation that it "review[s] the loan history for records that appear to relate to the issue identified for the borrower and conduct[s] a reasonable search for those materials." *See* A139. However, it is obvious that many documents "relat[ing] to the issue[s]" in this litigation have been withheld, including calls and correspondence relating to forbearance enrollment. And beginning in May, Navient cited to Privacy Act concerns to support the notion that it was selectively entitled to produce documents, despite the fact that written consent from borrowers authorizing release of all of their information has been obtained. *See, e.g.*, A136-37. Regardless of its varying explanations for what it is producing, it appears that Navient has withheld relevant documents relating to

---

[1] Navient previously represented to the Court that it has preserved recordings for calls beginning in June 2011, and that some call recordings from prior to June 2011 may also be preserved. *See* Doc. 79 at 5 n.2.

[2] "A_" refers to a page in the appendix being filed with this letter. The Bureau has redacted identifying information associated with individuals due to potential privacy issues.

borrower witnesses in advance of their depositions.

The Bureau has consistently argued that the propriety of withholding of a borrower's documents, whether arising from the Privacy Act or otherwise, should be resolved in advance of borrower depositions. On May 18, 2018, the Bureau wrote: "[t]he next borrower deposition is scheduled to take place in one week, so we would like to understand as soon as possible if there are outstanding procedural or legal issues that Defendants believe need to be resolved before then." A71. The Bureau followed up four days later, reiterating its concern and noting that if Navient believed the Privacy Act was not satisfied by the current protective order in the case, "we are open to understanding ways that the parties could obtain an order that you believe would be appropriate." A75. On June 20, when it became apparent that Navient was withholding call recordings in advance of a particular borrower's deposition, the Bureau called for immediate production of the recordings, noting "we are extremely troubled by this." A90. On June 22, the Bureau requested a call to meet and confer with Defendants on their withholding of relevant call recordings, because "[w]e need to get this issue resolved before any further depositions are conducted." A94.

On June 25 and July 5, the Bureau met and conferred with counsel for Navient regarding their method of identifying and producing calls, among other issues. *See* A101-02; A133. Counsel asserted that a log-type document containing a borrower's communication history is used to identify relevant calls, which counsel described as calls occurring adjacent to forbearance enrollment, and that a list of relevant calls is sent back to Navient to locate and produce. Despite this, counsel could not explain why Navient did not produce calls associated with the forbearance enrollment of a borrower who had recently been deposed, even though the calls occurred within the timeframe for which Navient maintains call recordings. Since that time, there have been other borrowers for whom Navient has not produced calls and correspondence associated with forbearance enrollment.

Navient's pattern of withholding materials that are relevant to borrower depositions is reinforced by its evolving position on the Privacy Act. As the Bureau previously informed the Court, after taking seven borrower depositions between February and April 2018 with no mention of a Privacy Act concern, Navient changed course in May (after the April hearing), and began taking the position that ED's permission, pursuant to the Act, was necessary to produce borrower information to the Bureau. Doc. 95 at 1. Rather than working with the Bureau to obtain an order from the Court that would resolve the Privacy Act concern, Navient sought to address it on a deposition-by-deposition basis. The Privacy Act allows disclosure of a person's information if the person provides written consent. ED provides a Privacy Act Request Form for a borrower to request his or her own records.[3] The form requires borrowers to describe the records they would like produced. If the records are to be provided to a third party (as would be the case with documents being used in a deposition), the form instructs a borrower to submit "a Certification of Identity and Consent Form" in addition to "your Privacy Act Request Form." A2.[4] In other words, the certification form cannot be used alone. Notably, the certification form does not contain any field to describe what records will be produced; that field only exists on the Privacy Act Request Form.

Navient proceeded to ask borrowers to execute only the Certification of Identity and

---

[3] The Privacy Act Request Form is available at https://www2.ed.gov/policy/gen/leg/foia/request_privacy.html and is included at pages A2-3 of the appendix.

[4] The Certification of Identity and Consent Form is included at page A5 of the appendix.

Consent Form, not the Privacy Act Request Form that is meant to be used in conjunction with it. *See, e.g.*, A87-88. Accordingly, Navient did not inform borrowers that Navient would be selectively producing documents and deprived borrowers of the opportunity to identify what loan information they wanted produced. When the Bureau learned of this, the Bureau reached out to borrowers, inquired whether borrowers wanted all loan information produced (rather than a selective set chosen by Navient), and informed borrowers that they could execute the Privacy Act Request Form, which many of them did. On the first occasion that a borrower executed the form describing the records sought, Navient postponed the deposition rather than producing the borrower's complete records. *See* A115. On other occasions, when borrowers asked Navient to confirm that all of their records would be produced in advance of their depositions pursuant to their Privacy Act requests, Navient evaded the request or responded that it would produce those documents on which it intended to rely. *See* A107-09; A111-12; A118-19; A122-23; A126-27.

Navient's failure to produce relevant documents relating to the loans of the borrowers being deposed, including correspondence, data, and call recordings, has had material consequences on those depositions. Specifically, Navient has used its selective productions to deprive borrowers of the documents necessary to refresh their recollection of confusing and detailed events, some of which occurred nearly a decade ago. This, in turn, has deprived the Bureau of a complete understanding of these borrowers' loan experiences. Although Navient most recently posits that it has been producing the relevant documents, the incidents discussed above contradict that assertion. In order to ensure that the Bureau has all relevant documents related to these borrowers, in light of this history, Navient should be required to produce, at a minimum, for all borrowers on the Bureau's initial disclosures: (1) all call recordings, (2) all correspondence with the borrowers, including correspondence concerning events in their repayment history, and (3) printable logs from Navient's servicing system documenting notes of calls, notes regarding correspondence exchanged with borrowers, and dates in which borrowers were enrolled in various repayment options.[5] These documents are necessary to developing a full and accurate record of borrowers' interactions with Navient, rather than the selective version that Navient may hope to present.[6]

    2.    On February 28, the Bureau served an interrogatory asking Navient to "[i]dentify all former employees of Navient Solutions whose primary responsibility at any time during the applicable time period was answering phone calls from federal loan borrowers." A16-17. A

---

[5] Because Navient has declined to share any borrower's full file with the Bureau, the Bureau is not in a position to determine the full scope of relevant records in Navient's possession. Based on the information available to the Bureau at this time, this list constitutes the minimum amount of information the Bureau believes may be conducive to discovering the relevant events of a borrower's repayment history.

[6] In a meet-and-confer on August 3, Navient suggested that it could not agree to such a production in light of Privacy Act issues. However, for borrowers for whom Navient disclosed records on or before April 2018, Navient has permission from ED to disclose records (Doc. 95-1, at A2), and Navient thus far has elected to use that permission to make only selective productions. For borrowers for whom Navient has disclosed records on or after May 2018, written consent from the borrowers authorizing the release of all of their records (rather than the selective subset of their records chosen by Navient) has been obtained. *See, e.g.*, A136-37. Thus, there are no procedural hurdles to Navient producing the information sought by the Bureau.

different interrogatory asked Navient to "identify all employees of Navient Solutions (whether current or former) who approved or authorized any policy or procedure relating to oral or written communications with borrowers about forbearance and/or income-driven repayment plans." A27. The interrogatory definitions indicated that "identify" included providing a "present or last known address, telephone number, and e-mail address." A12.

On July 9, Navient produced two lists that contained no addresses, telephone numbers, or e-mail addresses. *See* A130. When confronted about this deficiency, Navient took the remarkable position, without explanation, that the Bureau cannot contact former employees directly. A129. But contrary to Navient's assertion, ethics rules expressly allow such contact. *See, e.g.*, Pennsylvania Code of Ethics Rule 4.2 ("Consent of the organization's lawyer is not required for communication with a former constituent."); *State Farm Mut. Auto. Ins. Co. v. Sanders*, 975 F. Supp. 2d 509, 511 (E.D. Pa. 2013) (denying motion for protective order that sought "to prohibit [the plaintiff] from directly contacting former employees"); D.C. Bar Ethics Opinion 287 ("A lawyer may contact unrepresented former employees of a party-opponent without obtaining consent from that party irrespective of the position formerly held by the ex-employee in the opposing organization.").

If Navient's position is that it is refusing to provide the contact information because it represents all former employees in an attorney-client capacity, it is Navient's burden to establish the existence of an attorney-client relationship. *See, e.g., United States v. Norris*, 722 F. Supp. 2d 632, 639 (E.D. Pa. 2010). To the extent that is Navient's contention, it seems unlikely it has entered into a formal agreement with hundreds, if not thousands, of former employees whose primary responsibility was answering phone calls from federal loan borrowers or who approved or authorized any policy or procedure relating to oral or written communications with borrowers about forbearance and/or income-driven repayment plans. By way of one example, when the Bureau previously tried to notice depositions for two individuals that the Bureau believed to be current employees, but who were in fact former employees, Navient subsequently took the position that it could not even make contact with the two former employees, much less establish an attorney-client relationship with them. *See* A97. It seems equally unlikely that each of thousands of former employees present a risk of disclosing privileged information if interviewed by the Bureau. Regardless, it is unclear as to whether either is the basis for Navient's refusal to comply with the interrogatories. In a meet-and-confer on August 3, Navient claimed that it would be too burdensome to produce the contact information, but refused to indicate whether the contact information could be queried from its human resources database in an automated way, just as the initial list of employees was queried in an automated way. *See* A46.

The Bureau respectfully requests that the Court order the production of corrected spreadsheets containing "the present or last known address, telephone number, and e-mail address" for all former employees on those spreadsheets, as the Bureau plainly requested in its interrogatories.

Respectfully submitted,<br>
/s/ Nicholas Jabbour