WILMERHALE

October 10, 2018

Jonathan E. Paikin

+1 202 663 6703 (t)
+1 202 663 6363 (f)
jonathan.paikin@wilmerhale.com

**Via ECF**

The Honorable Robert D. Mariani
U.S. District Court, Middle District of Pennsylvania
William J. Nealon Federal Building & U.S. Courthouse
235 North Washington Avenue
Scranton, PA 18503

Re:  *CFPB v. Navient Corp. et al.*, No. 3:17-CV-00101 (M.D. Pa.)

Dear Judge Mariani:

We write to seek the Court's guidance on the CFPB's failure to produce virtually any documents and refusal to produce an adequate privilege log. We respectfully request appointment of a special master to review *in camera* certain documents identified in the CFPB's privilege log to determine whether the asserted privileges apply. In addition, a special master will be able to address other discovery issues that are likely to arise concerning the CFPB's expansive requests for millions of borrower records—issues as to which the parties continue to meet and confer in good faith, but for which having a special master to assist would be beneficial to their prompt and fair resolution.[1]

## 1. Relevant Documents Are Being Withheld

Other than the millions of borrower records requested at the end of discovery, the parties have completed their document productions. Defendants have now produced almost *6 million pages* of documents, including hundreds of thousands of emails and attachments. The burden has been enormous and the costs significant. And as the Court knows, Defendants believe that the vast majority of these documents are of attenuated relevance to the policies and alleged practices identified by the CFPB as being at issue in this case.

In contrast, many documents in the possession of the CFPB are likely to be critical to the case Defendants intend to present to a jury if this case is not disposed of on summary judgment. The CFPB itself identified 478,000 documents returned as responsive to its search terms. *See* Dkt. No. 74 at n.5. At the April 2018 hearing, the CFPB said it had completed 90% of its review and would promptly produce documents on a rolling basis. Now, more than a year after

---

[1] In its August 10, 2018 ruling, the Court made clear that it was not "deciding burden or scope issues that [were] not before the Court." Dkt. No. 103, at 3 n.2.[2] The CFPB produced its final privilege log on October 9, which Defendants are still reviewing. Defendants expect there will be additional documents withheld on the basis of a governmental privilege.

Wilmer Cutler Pickering Hale and Dorr LLP, 1875 Pennsylvania Avenue NW, Washington, DC 20006
Beijing    Berlin    Boston    Brussels    Denver    Frankfurt    London    Los Angeles    New York    Palo Alto    Washington

responding to our requests, the CFPB has produced only **1,267** documents of any substance—less than half of 1% of the documents reviewed.

While the CFPB will argue that it produced approximately 11,000 documents (still only 2% of the population of materials identified as potentially responsive), those documents include the following:

- 300 copies of the CFPB's logo (*See, e.g.*, Ex. 1);
- 176 auto-replies to an email circulating a press release about the lawsuit, a subset of about 2,200 documents outside the relevant timeframe (*See, e.g.*, Ex. 2);
- 200 attachments withheld in full as allegedly non-responsive (*See, e.g.*, Ex. 3);
- 3,800 publicly available documents (as the Court recognized, Defendants said the CFPB did not need to produce public documents) (*See, e.g.*, Ex. 4); and
- 3,200 documents withheld or heavily redacted on the basis of privilege (*See, e.g.*, Ex. 5-7).

The CFPB claims that 99% of the documents identified by its search terms as potentially responsive were "false positives." Defendants have no way to test the CFPB's assertions, for instance, that the 130,000 documents that hit on the term "Navient" or the 90,000 documents that hit on the term "Pioneer" are irrelevant or non-responsive. But one could only imagine the CFPB's skepticism if Defendants had produced less than 1% of the documents identified in response to tailored search terms of key custodians.

While Defendants can only guess at the review protocols employed by the CFPB, it appears, based on conversations with the CFPB, that the agency has taken the view that only documents supporting its claims are relevant, and is withholding everything else, including potentially exculpatory evidence. For example, when asked how documents that hit on the term "forbearance" were not responsive, the CFPB explained that borrower complaints about being pushed into forbearance were responsive, whereas communications with borrowers about forbearance that did not involve "steering" would not be responsive. The natural conclusion of this perverse view of relevance is that documents supportive of our defenses are left out, including documents suggesting a borrower requested forbearance or was informed about income-driven repayment.

The CFPB also appears to be withholding relevant documents produced by third parties (despite an earlier agreement to search for and produce such documents). For example, the CFPB has withheld documents from i3 Group, an organization that advises borrowers in connection with their loans and participates on certain borrower calls. Defendants are aware that the CFPB is in possession of a wide range of documents produced by i3 Group during the pre-lawsuit investigation. Rather than produce those documents (or even a subset of those documents), the CFPB served a third-party subpoena on i3 Group and asked i3 Group to produce only those materials that supported its claim that Navient had steered borrowers toward forbearance and not documents contrary to that narrative and therefore relevant to our defenses. The CFPB has also withheld communications with a former i3 Group employee identified as a

potential trial witness, including a draft declaration sent to him by the CFPB.  Upon learning this, Defendants requested that the CFPB produce all documents from i3 Group relating to Defendants.  When asked whether it had done so, the CFPB would not answer definitively.  The CFPB said only that it had produced everything related to Defendants that was responsive.  The CFPB produced only about 770 documents from i3 Group.  Given the CFPB's narrow definition of responsiveness, that production suggests to Defendants that additional relevant i3 Group documents exist.  Defendants do not know whether there are other documents produced by other third parties that the CFPB has withheld.

The CFPB also appears to be withholding communications with other third parties, including Congress and the media.  For example, the CFPB has produced only a single communication from the CFPB to a Congressional staffer.  It is completely implausible that the CFPB communicated with Congressional members and staff only once over the course of this highly politicized 5-year investigation.

Given the situation, the only practical remedy is to order the CFPB to produce all documents related to Defendants so that Defendants can review them and determine whether they are relevant to the issues in the case.  The Court has applied an expansive view of relevance to Defendants' productions, resulting in over 6 million pages produced.  At the very least, both parties to this litigation should be held to that same standard.

## 2. The CFPB's Privilege Assertions Are Deficient

In addition, the CFPB has used aggressive, and we believe unfounded, assertions of governmental privilege to withhold hundreds of documents among the few documents it deemed responsive.  At the same time, the CFPB has refused to provide adequate information to allow Defendants to assess and challenge these assertions.  The CFPB has withheld at least 846 documents on the basis of a governmental privilege.[2]

As the Court is aware, governmental privileges are not absolute.  To the contrary, they must be "narrowly construed."  *Redland Soccer Club, Inc. v. Dep't of Army*, 55 F.3d 827, 856 (3d Cir. 1995).  Courts often order disclosure, particularly when the government has initiated the litigation.  *See, e.g., United States v. Bd. of Educ. of City of Chicago*, 610 F. Supp. 695, 700 (N.D. Ill. 1985) ("This is not the usual deliberative process case in which a private party challenges governmental action or seeks documents via the Freedom of Information Act, and the government tries to prevent its decisionmaking process from being swept up unnecessarily into public.  Here, the decisionmaking process is not swept up into the case, it is the case." (brackets and internal quotation marks omitted)).  In particular, factual materials generally are not protected by governmental privileges.  *See In re Grand Jury*, 821 F.2d 946, 959 (3d Cir. 1987) ("In most situations, factual summaries prepared for informational purposes will not be protected even if they are part of an investigative record." (brackets and internal quotation marks omitted)).

---

[2] The CFPB produced its final privilege log on October 9, which Defendants are still reviewing.  Defendants expect there will be additional documents withheld on the basis of a governmental privilege.

Even where governmental privileges are found to apply, they are qualified, meaning they can be overcome based on the need for the information. *Id.*

The CFPB produced its first privilege log on July 6, which related to documents for which the CFPB did not contest relevance at the April hearing. *See* Ex. 8. At that hearing, the CFPB contested the relevance of (1) pre-decisional documents related to policies considered by the CFPB and the Department of Education ("ED"), and (2) documents related to other servicers and collection agencies. In its May 4 order, the Court upheld those relevance objections, with one exception. Dkt. No. 88, at 11. The Court overruled the CFPB's objection that communications with ED were not relevant, recognizing the "unique circumstances" presented by Defendants' relationship with ED. *Id.* Yet the CFPB has produced less than 30 communications with ED; everything else has been withheld or highly redacted on the basis of privilege.

Defendants must assume that the documents on the log have some relevance to Defendants or this lawsuit. The log identifies hundreds of documents withheld under the deliberative process privilege, which protects pre-decisional, "confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice." *Redland Soccer Club, Inc.*, 55 F.3d at 853–54. The government bears the burden of demonstrating its entitlement to the privilege. *Id.* at 854. To do so, the government must provide enough information for the court to determine whether the privilege should apply. *Id.* at 854–55 (remanding to district court because document descriptions too conclusory). As with all governmental privileges, the deliberative process privilege can be overcome based on the need for the documents. *Id.* Courts consider the following factors: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Id.* (brackets and internal quotation marks omitted).

For several categories, the CFPB has not provided enough information to determine whether the privilege applies or to conduct the required balancing of the parties' interests. In most cases, the CFPB has not even identified a decision to which the communications at issue pertain. Documents that "are not a part of a clear 'process' leading to a final decision . . . are less likely to be properly characterized as predecisional." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980). In such cases, "there is an additional burden on the agency to substantiate its claim of privilege." *Id.*

The CFPB has not met its burden. The CFPB's log is even more conclusory than logs previously found "patently inadequate." *Coastal States Gas Corp.*, 617 F.2d at 861 (log insufficient where government provided "who wrote the memorandum, to whom it was addressed, its date, and a brief description of the memorandum," along with the type of privilege asserted). Here, the CFPB has provided almost no meaningful information about hundreds of documents being withheld. Unlike the log identified as insufficient in *Coastal States Gas Corp.*, the CFPB has not even identified the memorandum at issue, let alone described it. For example,

WilmerHale

the CFPB has withheld 59 communications with ED with the description that they relate to "the identification and analysis of problems or failures in the student loan market." *See* Ex. 8, Categories 31–35. Defendants expect the relevance of these communications to outweigh any interest in withholding them, but the CFPB's general description provides insufficient information to assess the issue. Other descriptions are similarly vague. For example, Categories 1 and 30 recite the elements of the privilege and refer to vague "policy priorities." Other categories cite the "practices of student loan servicers or debt collectors, federal consumer financial law, and policy considerations." Such descriptions convey nothing about the documents, including whether they relate to Defendants or the issues in this lawsuit (i.e. communications about repayment options, payment processing errors, or credit reporting). When asked for further detail, the CFPB provided additional obscure descriptions. For Category 30, for example, the CFPB added that the documents related to "the student loan origination market, the student loan servicing market, the student loan debt collection market, and various other markets." This blatant lack of information prevents the Court or Defendants from determining whether the privilege should be overcome even if the Court were to determine that the privilege applies.

The CFPB has also sought to shield 31 documents on the basis of the law enforcement privilege. It is unclear whether the law enforcement privilege applies at all in this context. But even if it does, it is a qualified privilege that "requires the court to balance the government's interest in ensuring the secrecy of the documents whose discovery is sought against the need of the private litigant to obtain discovery of relevant materials in possession of the government." *Carusone v. Kane*, No. 1:16-CV-1944, 2017 WL 5900429, at *2–3 (M.D. Pa. Nov. 30, 2017) (quotation marks and citations omitted). The CFPB has not explained the basis for its assertion of the privilege, particularly where it has decided to sue the subject of its law enforcement activities and the information could be exculpatory. Categories 9 and 11 describe documents related to "investigation subjects" or "the identities and roles of Bureau sources." When asked for further explanation, the CFPB would not even say whether the documents relate to Defendants or identify the types of sources at issue. That these sources are not on the Plaintiff's witness list or in some other way identified likely means they were supportive of Defendants' position and potentially exculpatory. For Category 11, the CFPB did not even make the barebones assertion that the documents involve "presently active investigations underway or contemplated." *Coastal States Gas Corp.*, 617 F.2d at 870. Not only do such descriptions fail to show entitlement to the privilege, they do not provide the Court or Defendants any information necessary to balance the parties' interests.

While the log is plainly insufficient for determining whether the governmental privileges should apply, the small number of documents actually produced provide little or no assistance. In fact, most of the documents are almost entirely redacted. *See, e.g.*, Ex. 5-7.

As an initial matter, the CFPB has redacted information as "non-responsive." *See* Ex. 3, 5-7. There is absolutely no basis to do that. *See Orion Power Midwest, L.P. v. American Coal Sales Co.*, No. 2:05-cv-555, 2008 WL 4462301, at *1–2 (W.D. Pa. Sept. 30, 2008) (affirming special master's reasoning "that redaction of documents is disfavored and is appropriate only in

limited circumstances"); Dkt. No. 66-2, § 2(k). In the case of documents redacted for privilege, the redaction of non-responsive material eliminates crucial context for assessing privilege assertions. Furthermore, the CFPB made no attempt to segregate and produce factual material as required. Courts often order the production of factual information within protected documents even if other portions may be withheld. *See, e.g., Schreiber v. Society for Sav. Bancorp, Inc.*, 11 F.3d 217, 221 (D.C. Cir. 1993) (factual material "must be produced if it can be extricated from any non-factual material surrounding it"); *In re Subpoena Served Upon the Comptroller of the Currency*, 967 F.2d 630, 635 (D.C. Cir. 1992); *Cooney v. Sun Shipbuilding & Drydock Co.*, 288F. Supp. 708, 716 (E.D. Pa. 1968). Even if the factual and privileged materials are "intertwined," the court must balance the parties' interests to determine whether the information should be produced. *Schreiber*, 11 F.3d at 220. The CFPB simply asserts that hundreds of documents lack any factual material that can be produced. That does not suffice. *Schreiber*, 11 F.3d at 221 ("If the agency can establish that a document is privileged merely by filing a conclusory affidavit asserting that any factual portion of the document cannot be separated from the evaluative portion, then the agency itself and not the court can determine the extent of the privilege.").

Given the positions taken by the CFPB, Defendants request *in camera* review of—at a minimum—the 416 documents identified on the July 6 log to determine whether the asserted privileges apply, and if so, to provide Defendants an opportunity to show any need for the materials.[3] *Redland Soccer Club*, 55 F.3d at 855 ("[I]n camera review is a highly appropriate and useful means of dealing with claims of governmental privilege." (quoting *Kerr v. U.S. Dist. Court for N. District of Cal.*, 426 U.S. 394, 405–06 (1976)). *See also Schreiber*, 11 F.3d at 221 (collecting cases). Faced with entirely redacted documents and vague descriptions of their subject matter, Defendants unfortunately are not able to further narrow the number of documents for review.

In addition, Defendants request *in camera* review of documents identified on the CFPB's second privilege log, produced on August 31. The log pertains to the CFPB's communications with ED, which the Court held were potentially relevant in its May 4 order. Dkt. No. 88, at 11. The log describes 430 documents withheld (compared to around 30 produced) on the basis of a qualified governmental privilege that relate to the following public documents, many of which were identified in filings to the Court ahead of the May 4 ruling:

- The CFPB's Payback Playbook
- The CFPB's Student Loan Examination Procedures
- Joint Principles on Student Loan Servicing, issued by the CFPB, Department of Education, and Department of Treasury
- "Student loan servicing: Analysis of public input and recommendations for reform" issued by the CFPB in September 2015
- May 2015 Student Loan Servicing Request for Information

---

[3] The Bates numbers for the documents are listed under Categories 1–2, 11, 22, 27-31, 33, and 35–50 on the CFPB's July 6 privilege log. *See* Ex. 8.

- July 20, 2016, Memo from Ted Mitchell to James Runcie regarding "Policy Direction on Federal Student Loan Servicing"
- 2016 ED Student Loan Fact Sheets
- 2015 ED report on Strengthening Student Loan System

As the Court already ruled, these communications may be relevant to our defenses. Dkt. No. 88, at 11. The need for these communications in this litigation is likely to outweigh any justification for withholding the documents based on the deliberative process privilege. Defendants therefore request that these documents also be reviewed *in camera* or be produced.[4]

### 3. A Special Master Should Be Appointed

In light of the complexity of these issues and mindful of the burdens on the Court, Defendants seek the appointment of a special master. *See, e.g.*, *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 126 (3d Cir. 2009) (noting that discovery ran more smoothly after appointment of a special discovery master); *Luppino v. Mercedes Benz USA, LLC*, No. 2:09-CV-05582 DMC, 2013 WL 5025229, at *3 (D.N.J. Sept. 11, 2013) ("Courts in this Circuit have appointed special masters to oversee and facilitate complicated and contentious discovery."); *Jones v. Nationwide Ins. Co.*, No. 3:98-CV-2108, 2000 WL 1231402, at *1 (M.D. Pa. July 20, 2000) (noting appointment of a special master to resolve discovery issues).

When the Court initially suggested the appointment of a special master, Defendants were hopeful that the parties could negotiate the issues remaining before the prior discovery deadline of August 9. Since then, the Court has extended discovery until December 9 and cautioned that it was not "predisposed to grant further discovery extensions." Dkt. No. 103, at 9. Defendants believe the appointment of a special master will assist the parties in resolving discovery disputes efficiently over the less than two months remaining in discovery. In particular, Defendants have requested *in camera* review of 850 documents and expect there will be additional documents to review from the CFPB's final privilege log. A special master could assist with that review. *United States ex rel. Martin v. Life Care Centers of Am., Inc.*, No. 1:08-CV-251, 2015 WL 12917012, at *5 (E.D. Tenn. Apr. 27, 2015) (approving special master to individually review documents over which DOJ was asserting privilege).

In addition, the parties have been meeting and conferring in good faith to narrow the scope of the CFPB's data requests, but issues may still arise, such as the feasibility of producing call recordings requested by the CFPB. Defendants believe a special master could valuably assist the parties in resolving any disputes over data production in a timely manner. *See Royal Mile Co. v. UPMC*, No. 2:10-cv-01609, 2016 WL 6915978, at *13 (W.D. Pa. June 24, 2016) (special master considering declaration from IT systems analyst regarding types of information contained in different databases).

---

[4] The Bates numbers for the documents are listed under Categories 71–75, 79–81, and 85 on the CFPB's August 31 privilege log. *See* Ex. 9.

WILMERHALE

***

Defendants request that the Court (1) order the CFPB to produce all non-privileged documents in its possession that relate to Defendants, including documents produced by third parties and communications with third parties, (2) order the CFPB to remove redactions for non-responsiveness, and (3) appoint a special master to review *in camera* the documents identified above and address any additional issues that arise concerning the CFPB's requests for borrower data.

Respectfully submitted,


/s/ Jonathan E. Paikin