# WILMERHALE

November 14, 2018

**Via ECF**

The Honorable Robert D. Mariani
U.S. District Court, Middle District of Pennsylvania
William J. Nealon Federal Building & U.S. Courthouse
235 North Washington Avenue
Scranton, PA 18503

**Jonathan E. Paikin**

+1 202 663 6703 (t)
+1 202 663 6363 (f)
Jonathan.paikin@wilmerhale.com

Re: *CFPB v. Navient Corp. et al.*, No. 3:CV-17-00101 (M.D. Pa.)

Dear Judge Mariani:

We respectfully write to advise the Court of another dispute that has arisen and request that it be added to the agenda at the upcoming Hearing. At a November 6 deposition, the CFPB improperly instructed its investigator not to answer 286 questions that go to core issues in this case. A list of the specific questions is attached.

As the Court observed, the CFPB's lawsuit is grounded in "the experiences of borrowers, themselves, with Navient." Doc. 87 at 8. The CFPB intends to rely upon 14 borrowers to prove its allegations that Navient unfairly and abusively "steered" borrowers into forbearance rather than an income-driven repayment (IDR) plan. Compl. ¶¶ 40, 53; CFPB's Second Supplemental Disclosures, dated February 27, 2018 (listing 17 borrowers the CFPB may use to support its "steering" claims); CFPB's Third Supplemental Disclosures, dated November 9, 2018 (removing 3 of those borrowers). The CFPB stated that "Theresa Ridder, a Bureau investigator, is likely to have discoverable information that the Bureau may use to support its claims. The subject matter about which Ms. Ridder is likely to have discoverable information is Defendants' contacts with certain consumers." CFPB's Initial Disclosures, dated May 10, 2017. Ms. Ridder conducted interviews with the CFPB's borrower witnesses and drafted declarations on their behalf.

The CPFB does not have an attorney-client relationship with the borrowers. Nevertheless, the CFPB asserted work product and directed Ms. Ridder not to answer *any* questions about statements made by borrowers, including, for example: "Did any borrower ever tell you they were steered into forbearance by Navient?" (Tr. at 193); "Did Ms. Dinnoo tell you about her communications with Navient?" (*Id*. at 112); "Did Ms. Dinnoo tell you that Navient sent her an IDR application in 2015?" (*Id*. at 140); "Did Mr. Brown tell you about his employment history?" (*Id*. at 146); "Did Ms. Harris ever ask you whether she could receive any money by participating in this lawsuit?" (*Id*. at 207). The CFPB also directed Ms. Ridder not to answer questions regarding declarations she drafted on behalf of borrowers, including: "After you sent the draft to Ms. Dinnoo, did you ask [] if it was accurate?" (*Id*. at 136); "Did Ms. Dinnoo suggest any changes?" (*Id*.); "Did Mr. Neal ever refuse to sign a declaration that was drafted by you?" (*Id*. at 191); "Were you aware that the CFPB sent her a draft declaration that she did not sign because it was inaccurate?" (*Id*. at 200).

WILMERHALE

November 14, 2018
Page 2

Even if there was some argument that statements made by third party witnesses was protected work product, such protections are waived when "the [purportedly protected] material is disclosed in a manner inconsistent with keeping it from an adversary." *Fox v. Lackawanna Cty.*, No. 3:16-CV-1511, 2018 WL 4095854, at *4 (M.D. Pa. Aug. 27, 2018) (quoting *In re Chevron Corp.*, 633 F.3d 153, 165 (3d Cir. 2011)). Here, the CFPB identified the borrowers as its key witnesses and made the contents of the information provided a central feature of its case. Navient is entitled to explore those facts, as well as the borrowers' motivations. The CFPB's work product assertions are particularly puzzling given that it identified Ms. Ridder as a person with discoverable information on these subjects.

The CFPB also improperly instructed Ms. Ridder not to answer questions about how she conducted her investigation. *See, e.g., McSparran v. Pennsylvania*, No. 1:13-CV-1932, 2016 WL 687992, at *2 (M.D. Pa. Feb. 18, 2016) (rejecting work product assertion and allowing deposition to "inquire into the steps [the investigator] took during the course of her investigation").[1] Navient is permitted to ask questions about, for example, (1) the number of borrowers Ms. Ridder spoke to, (2) how she located those borrowers, (3) whether she asked the borrowers to provide her with documents, the documents she requested, and whether she reviewed those documents, and (4) whether she had researched student loan repayment options when she began working on the case. *E.g.*, Ridder Tr. at 36-37, 43, 50-52, 77, 85, 104, 154.

Defendants request that CFPB's work product objections be overruled and that Ms. Ridder's deposition be re-opened.

Respectfully submitted,

Jonathan E. Paikin

---

[1] *See also E.E.O.C. v. Greater Metroplex Interiors, Inc.*, No. 3-08-CV-1362-P, 2009 WL 412934, at *2 (N.D. Tex. Feb. 17, 2009) (allowing defendant to depose a government investigator "about the factual basis of her investigation and information provided to her by the complainant" because such "areas of inquiry are unquestionably relevant" and because the "defendant has been told by opposing counsel that the [agency] intends to use part of its investigation file at trial"); *Rau v. Allstate Fire & Cas. Ins. Co.*, No. 3:14-CV-00479, 2015 WL 3466134, at *3 (M.D. Pa. May 29, 2015) (allowing deposition questions regarding "the factual details of Allstate's investigation and evaluation of Ms. Rau's claim"); *Keefer v. Erie Ins. Exch.*, No. 1:13-CV-1938, 2014 WL 901123, at *4 (M.D. Pa. Mar. 7, 2014) ("The court will permit Plaintiff to inquire into the processes used to investigate Plaintiff's claims.").