## APPENDIX TO BUREAU'S NOVEMBER 20, 2018 LETTER

| Exhibit | Date of exhibit | Description of exhibit | Beginning page number |
|---------|-----------------|------------------------|------------------------|
| 1 | May 10, 2017 | Bureau's Initial Disclosures | A1 |
| 2 | July 16, 2018 to October 18, 2018 | Emails between Bureau and Defendants concerning deposition of Theresa Ridder | A21 |
| 3 | November 6, 2018 | Excerpts from deposition of Theresa Ridder | A26 |

# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Consumer Financial Protection Bureau,

      Plaintiff,

      v.

Navient Corporation, *et al.*,

      Defendants.

Case No. 3:17-CV-00101-RDM
(Hon. Robert D. Mariani)

## PLAINTIFF'S INITIAL DISCLOSURES
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1)

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Plaintiff Consumer Financial Protection Bureau ("Bureau") hereby makes the following initial disclosures to Defendants Navient Corporation, Navient Solutions, LLC ("Navient Solutions"), and Pioneer Credit Recovery, Inc. ("Pioneer"). The Bureau expressly reserves the right to clarify, revise, or correct any of these disclosures at any time. The Bureau will supplement these disclosures as necessary, pursuant to Federal Rule of Civil Procedure 26(e). No information contained in these disclosures should be construed as a waiver of any applicable privilege, including, but not limited to, the attorney work product privilege, the attorney-client privilege, or the deliberative process privilege.

## I.     Rule 26(a)(1)(A)(i): "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment"

The lists below indicate the individuals who are likely to have discoverable information that the Bureau may use to support its claims, as well as the subject(s) of the discoverable information they are likely to have. Due to the ongoing nature of Bureau's investigatory work and the lack of any discovery to date, the lists should not be read to limit the subject matter(s) about which particular individuals may have discoverable information.

These disclosures do not include the names of any potential experts that may be retained or consulted by the Bureau. The Bureau will produce information relating to experts as may be appropriate under Federal Rule of Civil Procedure 26(a)(2) at the times provided by that Rule or any supervening order of the Court.

### A.     Defendants and their Employees, Independent Contractors, and Agents

Defendants and their employees, independent contractors, and agents are likely to have discoverable information that the Bureau may use

2

A3

to support its claims, including but not limited to information about Defendants' business operations, policies, procedures, practices, organization, finances, interactions with consumers, and injuries to consumers, with respect to Defendants': (1) communications with consumers regarding forbearance and income-driven repayment plans; (2) communications with consumers regarding renewal of income-driven repayment plans; (3) furnishing of information to consumer reporting agencies relating to loans discharged due to the consumer's total and permanent disability; (4) representations to consumers relating to eligibility criteria for cosigner release for private student loans; (5) repeated errors in processing payments for consumers and cosigners; (6) representations to consumers regarding the impact of completion of the federal loan rehabilitation program on consumers' credit reports; and (7) representations to consumers regarding the impact of completion of the federal loan rehabilitation program on forgiveness of collection fees.

The names of these individuals and their contact information are within the custody and control of Defendants. The individuals whom the Bureau has identified at this time are listed below. During discovery, the Bureau may identify additional individuals who are likely to have

3

discoverable information that the Bureau may use to support its claims.

- John Zemetro, Senior Director, Back Office Servicing (employee of Navient Solutions and/or Navient Corporation)

- Patricia ("Patty") Peterson, Vice-President, Operational Support Services (employee of Navient Solutions, Pioneer, and/or Navient Corporation)

- Lisa Stashik, Vice-President, Office of the Customer Advocate (employee of Navient Solutions and/or Navient Corporation)

- Judy McNutt, Director, Customer Correspondence (employee of Navient Solutions and/or Navient Corporation)

- Debra Walsh, Senior Director, Loan Operations Training (employee of Navient Solutions and/or Navient Corporation)

- Roger Miller, Vice-President, Application Development (employee of Navient Solutions and/or Navient Corporation)

- John Kane, Chief Operating Officer (employee of Navient Solutions and/or Navient Corporation)

- Joseph Sbriglia, Senior Vice-President, Private Credit Collection (employee of Navient Solutions and/or Navient Corporation)

- Troy Standish, Senior Vice-President, Federal Default Prevention, Customer Resolution Services (employee of Navient Solutions and/or Navient Corporation)

- Linda Gramlich, Senior Director, Office of the Customer Advocate (employee of Navient Solutions and/or Navient Corporation)

- Patrick Theurer, Senior Director, Operational Analytics (employee of Navient Solutions and/or Navient Corporation)

- Jeanne Wisnewski, Director, Complaint Tracking & Reporting (employee of Navient Solutions and/or Navient Corporation)

- Nancy Sabulski, Manager, Office of the Customer Advocate (employee of Navient Solutions and/or Navient Corporation)

- Angela Kamionka, Senior Director, Office of Customer Advocate (employee of Navient Solutions and/or Navient Corporation)

- Temeka Easter, Director, Social Media (employee of Navient Solutions and/or Navient Corporation)

- Jack E. Frazier, Jr., Vice President, Operations (employee of Pioneer and/or Navient Corporation)

- Jeffery Mersmann, Vice President, Operations (employee of Pioneer and/or Navient Corporation)

- Kim Merrill, Vice President (employee of Pioneer and/or Navient Corporation)

## B. Defendants' Former Employees

Defendants' former employees are likely to have discoverable information that the Bureau may use to support its claims, including but not limited to information about Defendants' business operations, policies, procedures, practices, organization, finances, interactions with consumers, and injuries to consumers, with respect to Defendants': (1) communications with consumers regarding forbearance and income-driven repayment plans; (2) communications with consumers regarding renewal of income-driven repayment plans; (3) furnishing of information to consumer reporting agencies relating to loans discharged due to the consumer's total

and permanent disability; (4) representations to consumers relating to eligibility criteria for cosigner release for private student loans; (5) repeated errors in processing payments for consumers and cosigners; (6) representations to consumers regarding the impact of completion of the federal loan rehabilitation program on consumers' credit reports; and (7) representations to consumers regarding the impact of completion of the federal loan rehabilitation program on forgiveness of collection fees. One individual whom the Bureau has identified at this time is listed below. During discovery, the Bureau may identify additional individuals who are likely to have discoverable information that the Bureau may use to support its claims.

- John Sullivan (current employee of Sallie Mae Bank, and formerly employed by the predecessor entity to Navient Solutions).  Contact information not known.

## C.    Bureau Employee

Theresa Ridder, a Bureau investigator, is likely to have discoverable information that the Bureau may use to support its claims. The subject matter about which Ms. Ridder is likely to have discoverable information is Defendants' contacts with certain consumers. Ms. Ridder can be contacted through Nicholas Jabbour (202-435-7508), Brandis Anderson (202-435-

6

A7

7548), or Ebony Sunala Johnson (202-435-7245), all of whom are located at 1625 I Street NW, Washington, DC 20006.

### D.    Federal and State Governmental Agencies

Certain federal and state governmental agencies, and their employees and agents, are likely to have discoverable information that the Bureau may use to support its claims, including but not limited to information regarding Defendants' business operations, policies, procedures, practices, organization, finances, interactions with consumers, injuries to consumers, actions taken by the agency, and communications with Defendants and their employees and agents, with respect to Defendants': (1) communications with consumers regarding forbearance and income-driven repayment plans; (2) communications with consumers regarding renewal of income-driven repayment plans; (3) furnishing of information to consumer reporting agencies relating to loans discharged due to the consumer's total and permanent disability; (4) representations to consumers relating to eligibility criteria for cosigner release for private student loans; (5) repeated errors in processing payments for consumers and cosigners; (6) representations to consumers regarding the impact of completion of the federal loan rehabilitation program on consumers' credit

7

reports; and (7) representations to consumers regarding the impact of completion of the federal loan rehabilitation program on forgiveness of collection fees. At this time, the Bureau believes that the agencies listed below may possess discoverable information that the Bureau may use to support its claims. During discovery, the Bureau may identify additional agencies that are likely to have discoverable information that the Bureau may use to support its claims, as well as the names of specific individuals within any of the identified agencies who are likely to have discoverable information that the Bureau may use to support its claims.

- Office of the Illinois Attorney General, Consumer Fraud Bureau, 100 West Randolph Street, 12th Floor, Chicago, IL 60601, (312) 814-3000.

- Office of the Washington Attorney General, Consumer Protection Division, 800 Fifth Ave., Suite 2000, Seattle, WA 98104, (360) 753-6200.

- U.S. Department of Education, 400 Maryland Avenue, SW, Washington, DC 20202, (800) 872-5327.

- Federal Trade Commission, 600 Pennsylvania Avenue, NW, Washington, DC 20580, (202) 326-2222.

### E.    Affected Consumers

Certain consumers whose student loans were serviced by Defendants or assigned for collection by Defendants are likely to have discoverable

8

information that the Bureau may use to support its claims, including but
not limited to information regarding Defendants' business practices and
activities, their interaction with consumers, and the resulting injuries, with
respect to Defendants': (1) communications with such consumers regarding
forbearance and income-driven repayment plans; (2) communications with
such consumers regarding renewal of income-driven repayment plans; (3)
furnishing of information to consumer reporting agencies relating to loans
discharged due to the total and permanent disability of such consumers; (4)
representations to such consumers relating to eligibility criteria for cosigner
release for private student loans; (5) repeated errors in processing
payments for such consumers; (6) representations to such consumers
regarding the impact of completion of the federal loan rehabilitation
program on consumers' credit reports; and (7) representations to such
consumers regarding the impact of completion of the federal loan
rehabilitation program on forgiveness of collection fees. The Bureau has
received some information from Defendants about consumers with
complaints against Defendants, and the Bureau has also received thousands
of complaints from consumers about Defendants. During discovery, the
Bureau will seek to identify specific consumers who are likely to have

discoverable information that the Bureau may use to support its claims.

## II. Rule 26(a)(1)(A)(ii): "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment"

The Bureau may use the following categories of documents,

electronically stored information, and tangible things in its possession,

custody, or control to support its claims:

- Documents (including electronically stored information) and responses to interrogatories produced to the Bureau by Navient Solutions (or its predecessor) and Sallie Mae Bank during the Bureau's investigation of Navient Solutions (or its predecessor).

- Transcripts of investigational hearings conducted by the Bureau during the Bureau's investigation of Navient Solutions (or its predecessor).

- Documents (including electronically stored information) and responses to interrogatories produced to the Bureau by Pioneer during the Bureau's investigation of Pioneer.

- Documents (including electronically stored information) produced to the Bureau by Pioneer during the Bureau's supervisory exam of Pioneer.

- Documents (including electronically stored information) concerning consumer complaints about Defendants relating to the practices alleged in the Complaint.

All of the above categories of documents are located at the Bureau's offices

10

at 1625 I Street NW, Washington, DC 20006, and at 1275 First St NE,

Washington, DC 20002.

## III. Rule 26(a)(1)(A)(iii): "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered"

Pursuant to the Consumer Financial Protection Act, the Bureau may seek any appropriate monetary relief for Defendants' violations of federal consumer financial laws, including but not limited to restitution, disgorgement, compensation for unjust enrichment, and other monetary relief. 12 U.S.C. § 5565. The Bureau expects that the full extent of such relief will be revealed through discovery, as most or all of the information necessary to calculate the damages resulting from each of Defendants' violations is in the possession, custody, or control of Defendants. Nonetheless, at this time, the Bureau can provide the following information concerning the nature and extent of injuries suffered by consumers:

- Counts I and II: With respect to Defendants' forbearance steering practices described in the Bureau's Complaint, the Bureau is entitled to pursue restitution based on the harms that consumers

11

A12

incurred as a result of being steered into forbearance. Components of this restitution include at least the following: (1) the additional interest that the affected consumers were charged or can expect to be charged as a result of any capitalization events associated with the forbearance(s); (2) compensation for delayed progress toward the loan forgiveness associated with income-driven repayment; and (3) for consumers with subsidized federal loans, compensation for any loss of the interest subsidy from the federal government. The Bureau has not yet obtained data sufficient to reasonably approximate the number of consumers impacted by Defendants' violation related to forbearance steering, nor the amount of harm that those consumers suffered. Documents NSI-036-1, NSI-038-1 and NSI-039-1 provide some information about some consumers who likely were impacted by Defendants' steering practices. However, that data only covers some categories of consumers that incurred harm from Defendants' practices, is for a limited time period, and is not at the transactional level, and therefore an appropriate computation of restitution cannot be performed at this time.

12

- Counts III and IV: With respect to Defendants' practices related to renewal of income-driven repayment plans described in the Bureau's Complaint, the Bureau is entitled to pursue restitution based on the harms that consumers incurred as a result of not timely renewing their enrollment due to those practices. Components of this restitution include at least the following: (1) the additional interest that the affected consumers were charged or can expect to be charged as a result of any capitalization events triggered by the failure to timely renew enrollment in income-driven repayment; (2) compensation for delayed progress toward the loan forgiveness associated with income-driven repayment; and (3) for consumers with subsidized federal loans, compensation for any loss of the interest subsidy from the federal government. The Bureau has not yet obtained data sufficient to reasonably approximate the number of consumers impacted by Defendants' practices related to renewal in income-driven repayment plans, nor the amount of harm that those consumers suffered. Document NSI-040-1 provides some information about some consumers who were likely impacted by Defendants' practices related to renewal in

13

income-driven repayment plans. However, that data only covers

certain categories of consumers that incurred harm from

Defendants' practices, is for a limited time period, and is not at the

transactional level, and therefore an appropriate computation of

restitution cannot be performed at this time.

- Count V: The Bureau intends to seek restitution for consumers for

    whom cosigner release was delayed or denied as a result of

    Defendants' imposition of a requirement concerning consecutive,

    on-time payments that was different from the requirement

    communicated to consumers. The Bureau has not yet obtained

    data sufficient to reasonably approximate the number of

    consumers impacted by Defendants' alleged violation related to

    cosigner release, nor the amount of harm that those consumers

    suffered.

- Count VI: The Bureau anticipates that, for consumers impacted by

    Defendants' repeated payment processing errors, the Bureau will

    seek restitution to compensate consumers for late fees, interest

    accrual, negative credit reporting, and other negative

    consequences that occurred as a result of the errors. The Bureau

14

has not yet obtained data sufficient to reasonably approximate the number of consumers impacted by Defendants' repeated payment processing errors, nor the amount of harm that those consumers suffered.

- Counts VII through X: A January 23, 2015 letter from counsel for Pioneer to counsel for the Bureau provides data about the number of consumers who may have been impacted by Pioneer's misrepresentations alleged by the Bureau. Specifically, in response to interrogatory 2b, Pioneer disclosed that, from 2012 to 2014, a total of 209,519 consumers agreed to begin a rehabilitation program through Pioneer. The Bureau intends to seek restitution that includes a refund of collection fees paid by affected consumers during the rehabilitation program that were not forgiven, as well as compensation for not receiving the credit reporting benefits promised by Pioneer. The Bureau does not have sufficient information at this time to determine if there are any affected consumers before 2012 or after 2014, or to reasonably approximate the harm resulting from Pioneer's alleged misrepresentations.

15

- Count XI: A July 24, 2015 letter from counsel for Navient Solutions to counsel for the Bureau indicated that there were "approximately 19,000 borrowers" who "applied for TPD discharge" and for whom Navient Solutions "furnished to consumer reporting agencies Special Comment Code 'AL— Assigned to Government' following approval for TPD discharge." The Bureau does not have sufficient information at this time to determine if there are any affected consumers other than these "approximately 19,000 borrowers," or to reasonably approximate the harm resulting from Defendants' violation of Regulation V.

The documents referenced above were produced by Defendants and should be in Defendants' possession, but the Bureau will make them available for copying and inspection upon a request from Defendants.

The Bureau also intends to seek a civil money penalty which, though not a category of damages, is an important part of an appropriate remedy in this case. The Consumer Financial Protection Act authorizes civil money penalties of up to $5,000 per day for any violation of Federal consumer financial law; up to $25,000 per day for any reckless violation of Federal consumer financial law; and up to $1,000,000 per day for every knowing

16

violation of Federal consumer financial law. 12 U.S.C. § 5565(c). Pursuant to the Inflation Adjustment Act, as amended by the Debt Collection Improvement Act of 1996 and further amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 28 U.S.C. § 2461 note, these amounts have been adjusted for inflation to $5,526 per day for any violation of Federal consumer financial law, $27,631 per day for any reckless violation of Federal consumer financial law, and $1,105,241 per day for any knowing violation of Federal consumer financial law. 12 C.F.R. § 1083.1. The Bureau expects that information necessary to calculate the amount of the civil money penalty, including the period of time during which the violations occurred and Defendants' degree of scienter with respect to the violations, will be revealed through discovery.

Finally, the Bureau intends to seek costs and pre-judgment interest.

All of the relief described above is in addition to the injunctive relief the Bureau intends to seek.

## IV.   Rule 26(a)(1)(A)(iv): "for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment"

This category is inapplicable to the Bureau in this case.

17

Dated: May 10, 2017

Anthony Alexis
*Enforcement Director*

David Rubenstein
*Deputy Enforcement Director*

Thomas Kim
*Assistant Deputy Enforcement Director*

  /s/ Nicholas Jabbour
Nicholas Jabbour, DC 500626
(Email: Nicholas.Jabbour@cfpb.gov)
(Phone: 202-435-7508)
Brandis Anderson, CA 261325
(Email: Brandis.Anderson@cfpb.gov)
(Phone: 202-435-7548)
Ebony Sunala Johnson, VA 76890
(Email: Ebony.Johnson@cfpb.gov)
(Phone: 202-435-7245)
*Enforcement Attorneys*

1700 G Street NW
Washington, DC 20552
Fax: 202-435-9346

*Attorneys for Plaintiff*
*Consumer Financial Protection Bureau*

18

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 10, 2017, I served the foregoing document by

email to the following counsel for Defendants:

Jonathan Paikin: jonathan.paikin@wilmerhale.com
Daniel P. Kearney, Jr.: Daniel.kearney@wilmerhale.com
Matthew T. Martens: matthew.martens@wilmerhale.com
Karin Dryhurst: Karin.dryhurst@wilmerhale.com
Gideon Hart: Gideon.hart@wilmerhale.com
Donna A. Walsh: dwalsh@mbklaw.com
Daniel T. Brier: dbrier@mbklaw.com

Mr. Kearney, on behalf of Defendants, previously consented to electronic

service.

　　/s/ Nicholas Jabbour　　　　　　
Nicholas Jabbour, DC 500626
Nicholas.Jabbour@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-7508
Fax: 202-435-9346

*Attorney for Plaintiff*
*Consumer Financial Protection Bureau*

# Exhibit 2

**Jabbour, Nicholas (CFPB)**

| | |
|---|---|
| **From:** | Dryhurst, Karin <Karin.Dryhurst@wilmerhale.com> |
| **Sent:** | Thursday, October 18, 2018 9:48 AM |
| **To:** | Jabbour, Nicholas (CFPB); Paikin, Jonathan; Martens, Matthew T.; Kearney, Daniel P.; Dan Brier; Donna Walsh |
| **Cc:** | Johnson, Ebony (CFPB); Matthews, Andrea (CFPB); Arreaza, Manuel (CFPB); Lee, Nicholas (CFPB); Wagman, Lawrence (CFPB); Kim, Thomas (CFPB); Dudley, David (CFPB) |
| **Subject:** | RE: CFPB v. Navient Corp. et al (M.D. Pa.) |

Nick,

We would like to proceed on November 6.

Thanks,
Karin

---

**From:** Jabbour, Nicholas (CFPB) <Nicholas.Jabbour@cfpb.gov>
**Sent:** Friday, October 12, 2018 11:35 AM
**To:** Dryhurst, Karin <Karin.Dryhurst@wilmerhale.com>; Paikin, Jonathan <Jonathan.Paikin@wilmerhale.com>; Martens, Matthew T. <Matthew.Martens@wilmerhale.com>; Kearney, Daniel P. <Daniel.Kearney@wilmerhale.com>; Dan Brier <dbrier@mbklaw.com>; Donna Walsh <dwalsh@mbklaw.com>
**Cc:** Johnson, Ebony (CFPB) <Ebony.Johnson@cfpb.gov>; Matthews, Andrea (CFPB) <Andrea.Matthews@cfpb.gov>; Arreaza, Manuel (CFPB) <Manuel.Arreaza@cfpb.gov>; Lee, Nicholas (CFPB) <Nicholas.Lee@cfpb.gov>; Wagman, Lawrence (CFPB) <Lawrence.DeMille-Wagman@cfpb.gov>; Kim, Thomas (CFPB) <Thomas.Kim@cfpb.gov>; Dudley, David (CFPB) <David.Dudley@cfpb.gov>
**Subject:** RE: CFPB v. Navient Corp. et al (M.D. Pa.)

Karin – Ms. Ridder is available November 5, 6, or 9.

_____

**Nick Jabbour**
Enforcement Attorney
Bureau of Consumer Financial Protection
Office: 202-435-7508
Cell: 202-760-5237
Email: nicholas.jabbour@cfpb.gov
**consumerfinance.gov**

Confidentiality Notice: If you received this email by mistake, you should notify the sender of the mistake and delete the email and any attachments. An inadvertent disclosure is not intended to waive any privileges.

---

**From:** Dryhurst, Karin [mailto:Karin.Dryhurst@wilmerhale.com]
**Sent:** Wednesday, October 10, 2018 9:24 AM
**To:** Jabbour, Nicholas (CFPB); Paikin, Jonathan; Martens, Matthew T.; Kearney, Daniel P.; Dan Brier; Donna Walsh
**Cc:** Johnson, Ebony (CFPB); Matthews, Andrea (CFPB); Arreaza, Manuel (CFPB); Lee, Nicholas (CFPB); Wagman, Lawrence (CFPB); Kim, Thomas (CFPB); Dudley, David (CFPB)
**Subject:** RE: CFPB v. Navient Corp. et al (M.D. Pa.)

Nick,

Thanks for following up.  We are not able to do next Monday or October 22.  Does Ms. Ridder have availability the last week of October or the first week of November?

Karin

---

**From:** Jabbour, Nicholas (CFPB) <Nicholas.Jabbour@cfpb.gov>
**Sent:** Tuesday, October 9, 2018 10:01 PM
**To:** Dryhurst, Karin <Karin.Dryhurst@wilmerhale.com>; Paikin, Jonathan <Jonathan.Paikin@wilmerhale.com>; Martens, Matthew T. <Matthew.Martens@wilmerhale.com>; Kearney, Daniel P. <Daniel.Kearney@wilmerhale.com>; Dan Brier <dbrier@mbklaw.com>; Donna Walsh <dwalsh@mbklaw.com>
**Cc:** Johnson, Ebony (CFPB) <Ebony.Johnson@cfpb.gov>; Matthews, Andrea (CFPB) <Andrea.Matthews@cfpb.gov>; Arreaza, Manuel (CFPB) <Manuel.Arreaza@cfpb.gov>; Lee, Nicholas (CFPB) <Nicholas.Lee@cfpb.gov>; Wagman, Lawrence (CFPB) <Lawrence.DeMille-Wagman@cfpb.gov>; Kim, Thomas (CFPB) <Thomas.Kim@cfpb.gov>; Dudley, David (CFPB) <David.Dudley@cfpb.gov>
**Subject:** RE: CFPB v. Navient Corp. et al (M.D. Pa.)

Karin,

Ms. Ridder is available on October 15 or October 22.  We weren't sure exactly what timeframe you were aiming for, so please don't hesitate to let me know if you had a different time period in mind.

We wanted to let you know, however, that we will be amending our Rule 26(a)(1)(A) disclosures soon and will be removing Ms. Ridder.  We will be doing so because, now that you have deposed the third-party witnesses that she interviewed and whom we may use to support our claims, she has no independent factual information to offer, as her role was limited to interviewing third-party witnesses.  Thus, we will not be relying upon her as a witness.

Thanks,
Nick

---

**Nick Jabbour**
Enforcement Attorney
Bureau of Consumer Financial Protection
Office: 202-435-7508
Cell: 202-760-5237
Email: nicholas.jabbour@cfpb.gov
consumerfinance.gov

Confidentiality Notice: If you received this email by mistake, you should notify the sender of the mistake and delete the email and any attachments. An inadvertent disclosure is not intended to waive any privileges.

---

**From:** Dryhurst, Karin [mailto:Karin.Dryhurst@wilmerhale.com]
**Sent:** Friday, October 05, 2018 2:47 PM
**To:** Jabbour, Nicholas (CFPB); Paikin, Jonathan; Martens, Matthew T.; Kearney, Daniel P.; Dan Brier; Donna Walsh
**Cc:** Johnson, Ebony (CFPB); Matthews, Andrea (CFPB); Arreaza, Manuel (CFPB); Lee, Nicholas (CFPB); Wagman, Lawrence (CFPB); Kim, Thomas (CFPB); Dudley, David (CFPB)
**Subject:** RE: CFPB v. Navient Corp. et al (M.D. Pa.)

Nick,

We wanted to follow up to see when Ms. Ridder would be available for a deposition.

Thanks,

Karin

---

**From:** Jabbour, Nicholas (CFPB) <Nicholas.Jabbour@cfpb.gov>
**Sent:** Monday, July 23, 2018 9:16 AM
**To:** Dryhurst, Karin <Karin.Dryhurst@wilmerhale.com>; Paikin, Jonathan <Jonathan.Paikin@wilmerhale.com>; Martens, Matthew T. <Matthew.Martens@wilmerhale.com>; Kearney, Daniel P. <Daniel.Kearney@wilmerhale.com>; Hart, Gideon <Gideon.Hart@wilmerhale.com>; Dan Brier <dbrier@mbklaw.com>; Donna Walsh <dwalsh@mbklaw.com>
**Cc:** Johnson, Ebony (CFPB) <Ebony.Johnson@cfpb.gov>; Matthews, Andrea (CFPB) <Andrea.Matthews@cfpb.gov>; Arreaza, Manuel (CFPB) <Manuel.Arreaza@cfpb.gov>; Lee, Nicholas (CFPB) <Nicholas.Lee@cfpb.gov>; Wagman, Lawrence (CFPB) <Lawrence.DeMille-Wagman@cfpb.gov>; Kim, Thomas (CFPB) <Thomas.Kim@cfpb.gov>; Dudley, David (CFPB) <David.Dudley@cfpb.gov>
**Subject:** RE: CFPB v. Navient Corp. et al (M.D. Pa.)

Karin,

Ms. Ridder will be on overseas travel from August 1 through August 24.  However, we are happy to accommodate her deposition upon her return, and she is available on August 29, 30, or 31.

Thanks,
Nick

_____

**Nick Jabbour**
Enforcement Attorney
Bureau of Consumer Financial Protection
Office:  202-435-7508
Cell:  202-760-5237
Email:  nicholas.jabbour@cfpb.gov
**consumerfinance.gov**

Confidentiality Notice: If you received this email by mistake, you should notify the sender of the mistake and delete the email and any attachments. An inadvertent disclosure is not intended to waive any privileges.

---

**From:** Dryhurst, Karin [mailto:Karin.Dryhurst@wilmerhale.com]
**Sent:** Monday, July 16, 2018 12:21 PM
**To:** Jabbour, Nicholas (CFPB); Johnson, Ebony (CFPB); Matthews, Andrea (CFPB); Arreaza, Manuel (CFPB); Lee, Nicholas (CFPB); Wagman, Lawrence (CFPB); Kim, Thomas (CFPB); Dudley, David (CFPB)
**Cc:** Paikin, Jonathan; Martens, Matthew T.; Kearney, Daniel P.; Hart, Gideon; Dan Brier; Donna Walsh
**Subject:** CFPB v. Navient Corp. et al (M.D. Pa.)

Nick,

Please see the attached notice for the deposition of Theresa Ridder.

Thanks,
Karin

**Karin Dryhurst | WilmerHale**
1875 Pennsylvania Avenue NW
Washington, DC 20006 USA
+1 202 663 6248 (t)
+1 202 663 6363 (f)
karin.dryhurst@wilmerhale.com

**Please consider the environment before printing this email.**

---

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

# Exhibit 3

1                    T. RIDDER

2       IN THE UNITED STATES DISTRICT COURT

3     FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

4            Case No. 3:CV-17-00101

5    _____

6    CONSUMER FINANCIAL PROTECTION              )

7    BUREAU,                                    )

8                    Plaintiff,                 )

9        v.                                     )

10   NAVIENT CORPORATION; NAVIENT               )

11   SOLUTIONS, INC.; and PIONEER               )

12   CREDIT RECOVERY, INC.,                     )

13                   Defendants.                )

14   _____  )

15

16

17        DEPOSITION OF THERESA A. RIDDER

18              Washington, D.C.

19             November 6, 2018

20

21

22

23

24   Reported by:  Mary Ann Payonk

25   Job No. 150557

T. RIDDER

1

2     Q.    Was he an investigator on the Navient

3  team prior to you joining?

4     A.    I don't know.

5     Q.    When you joined the team did you

6  debrief with any other investigators prior to

7  joining?

8     A.    I did not.

9     Q.    So to your knowledge there was no

10 investigator on the team prior to you joining?

11    A.    I don't know if there was or was not.

12 I don't know.

13    Q.    Did you receive any transition memos

14 from another investigator on the Navient team?

15    A.    No.

16    Q.    Who oversees your work on the Navient

17 investigation?

18    A.    All of my work is related to anything

19 concerning discussions with attorneys, so

20 everything would be related to discussions with

21 attorneys who are working on the matter.

22    Q.    I'm asking for a name.

23    A.    All the attorneys who you've listed

24 are those who I've had many discussions with

25 related to this matter.

1                         T. RIDDER

2        Q.    Did anyone generally oversee those

3   communications?

4        A.    My communications with the attorneys

5   who I -- no, I'm not aware of one specific

6   person who oversaw, and I wouldn't know that.

7        Q.    Who do you report to directly?

8        A.    Michael Goddard.

9        Q.    Do you provide Mr. Goddard with

10  updates about the investigation?

11       A.    No.

12       Q.    Do you provide him with any reports

13  about the investigation?

14       A.    Reports?  No.

15       Q.    Do you ever talk to him about the

16  investigation?

17       A.    I talk to him what I'm doing -- about

18  what I'm doing, but not specifically about

19  specific investigations and what my role is

20  other than very generally.

21       Q.    What's your understanding of what

22  your evaluations are based on?

23       A.    My evaluations are based on what --

24  on what my supervisor reviews and some of my

25  work product, and sometimes it's -- what he

                    T. RIDDER

1  does is he discusses my work product with the

2  various attorneys who I work with related to

3  each of the investigations that I work on.

4      Q.   Do the attorneys provide written

5  reviews?

6      A.   No.

7      Q.   How do you view your role as an

8  investigator?

9      A.   Generally, or specifically relating

10 to Navient?

11     Q.   Generally.

12     A.    I have many different roles that I

13 play at the Bureau as it relates to my

14 investigations and what I do as an

15 investigator.  Some of it relates to actually

16 doing data analysis; some of it relates to

17 contacting consumers; some of it relates to

18 contacting former employees; and some of it

19 relates to conducting background checks on

20 various individuals and entities.  I also do

21 financial analysis related to both individuals

22 and entities.

23     Q.   Which of those roles have you played

24 on the Navient team?

1                        T. RIDDER

2        A.    I contacted consumers, and I think

3   there was one point in time for which I

4   contacted a couple of former employees.

5        Q.    Do you remember who those were?

6        A.    I don't.

7        Q.    Over what time period have you

8   contacted consumers for the Navient

9   investigation?

10        A.    At least starting since January of

11   2017 or somewhere around there.

12        Q.    And to when?

13        A.    And you mean actually going out and

14   contacting consumers?

15        Q.    Speaking to consumers.

16        A.    Speaking to consumers?  So I guess as

17   of maybe a month or so ago.

18        Q.    And when were you involved in

19   contacting former employees?

20        A.    I don't remember when that was, to be

21   honest.  I'm not sure.

22        Q.    Was it in 2017?

23        A.    It may have been, but I don't think

24   so.  I'm not sure.  It may have been before

25   then but I really don't know, honestly.

1                      T. RIDDER

2       product privilege.  Please don't answer.

3       Q.   Do you exercise any judgment in your

4  work as an investigator?

5       A.   In my work as an investigator, yes.

6       Q.   In what ways?

7       A.   Mostly related to financials.

8       Q.   What do you mean by that?

9       A.   Reviewing financials.  Because I have

10  a forensic accountant background, and because

11  of that background I do actually use my

12  discretion to determine whether or not what is

13  provided to us from various individuals and

14  entities is sufficient and accurate and

15  complete.

16       Q.   Have you ever decided to contact a

17  Navient consumer not at the direction of a CFPB

18  attorney?

19       A.   No.

20       Q.   What was your goal in interviewing

21  these borrowers?

22            MR. JABBOUR:  Objection, work

23       product privilege.  I'm going to

24       instruct the witness not to answer.

25       Q.   Did you use an outline of questions