# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>Navient Corporation, *et al.*,<br><br>　　　　Defendants. | Case No. 3:17-CV-00101-RDM<br>(Hon. Robert D. Mariani)<br><br>Electronically Filed |

## PLAINTIFF'S MOTION FOR AN
## ENLARGEMENT OF TIME TO COMPLETE DISCOVERY

Pursuant to Local Rules 7.1 and 7.5, the Bureau respectfully moves for an enlargement of time of three months to the discovery schedule in this matter, and for a corresponding extension of all subsequent deadlines set forth in the Court's August 10, 2018 Order (Doc. 104). In support of this motion, the Bureau states as follows:

　　1.　Fact discovery in this case began on May 12, 2017 (Doc. 42), and is currently set to end on December 7, 2018, with reports from the Bureau's experts due approximately one month after the close of fact discovery (Doc. 104). The Bureau is mindful that, in the Court's August 10, 2018 Opinion, the Court indicated a reluctance to further extend the discovery schedule. Doc. 103, at 9.

　　2.　Defendants produced approximately 455,000 documents – approximately half of the total number produced – on October 9, 2018. Many of

these documents were responsive to the Bureau's document requests served *seventeen months earlier*. While the Bureau is working with great urgency to review those documents as quickly as possible, the fact remains that it is not realistic to review hundreds of thousands of documents within two months, much less notice and take depositions based on those documents. In addition, some of the documents identify borrowers who complained about the issues alleged in the Bureau's complaint, or borrowers whom Defendants identified as presenting the issues identified in the Bureau's complaint, and the Bureau needs time to locate and conduct outreach to those borrowers. Simply put, the Bureau has not had sufficient time to process, review, and meaningfully use the documents that Defendants have produced.

3. In addition, Defendants' delayed production of contact information for former call center employees has limited the Bureau's ability to interview these individuals, supplement the Bureau's Rule 26(a)(1) disclosures with additional potential witnesses, and notice depositions, if necessary. The Bureau has added four former employees to its Rule 26(a)(1) disclosures, and the Bureau is continuing to attempt to contact additional former employees as expeditiously as possible. Had Defendants produced this information when their interrogatory responses were due in late March 2018, the Bureau could have begun its outreach over five months earlier.

4. Defendants have estimated that they will not be able to complete their production of relevant borrower data from their computerized systems of records and databases until the middle or end of December 2018. The Bureau requested this data *nine months ago*, in February 2018, but the Bureau was sent on an unnecessary goose-chase before Defendants committed to actually discussing the substance of the Bureau's data requests. Specifically, Defendants erected three major roadblocks:

   a. Defendants first claimed that the Bureau's request for the data was not allowed because the Bureau had supposedly exceeded the allowable number of requests for production (the Bureau had not done so). It was not until the April 17, 2018 hearing that Defendants indicated they would no longer be pursuing this objection.

   b. After the April hearing, Defendants invoked the Privacy Act as a bar to production of the data, despite having previously produced some borrower records that fell within the scope of the Privacy Act. The Bureau was forced bring that issue to the Court for resolution. Notably, even after the issue was resolved in the Bureau's favor, Defendants indicated that the burden of notifying borrowers whose data would be implicated by the Privacy Act (*see* 5 U.S.C. § 552a(e)(8)) was too significant, such that Defendants would be de-identifying the data. While

the Bureau agreed to de-identification, it is perplexing that Defendants had raised the Privacy Act as an issue over the course of several months (including forcing the Bureau to seek relief from the Court), when there was apparently, in Defendants' view, a way to produce the data that would have avoided implicating the Privacy Act entirely.

c. After the Privacy Act issues were resolved, Defendants indicated that the data could not be produced until the Bureau executed a "data access protocol" and came onsite to view Defendants' data systems, ostensibly so that the Bureau could understand how Defendants "run scripts and queries that exist in the ordinary course of business." A5.[1] Yet after negotiating and executing the protocol, then traveling to Defendants' servicing center in Wilkes-Barre, PA, the Bureau and its experts were denied access to any systems that would demonstrate how scripts and queries are run across the population of borrowers (even though this type of querying is done routinely by Defendants in the ordinary course of business for reporting to the Department of Education, investors, regulators, loan holders, and the public). Thus, at the conclusion of the onsite visit, the Bureau was left in virtually no better of a position to

---

[1] "A__" refers to a page of the appendix of supporting documentation filed with this motion.

understand how Defendants query data in ways that would be relevant to this case.

5. After all of the foregoing roadblocks, Defendants' counsel finally engaged with the Bureau, beginning in late September 2018, regarding the Bureau's data needs, based on the requests issued in February 2018, so that the parties could agree on the data that would be produced. Once those discussions occurred, the parties agreed on parameters for the production of data *within merely a few weeks*. None of the roadblocks that Defendants had constructed were necessary to have these discussions; they could have easily occurred at the time that the Bureau propounded its requests for data in February 2018 so that the data could have been produced long ago.

6. Once the data is produced – which Defendants have indicated will not be completed before the close of fact discovery – the Bureau will then need substantial time to work with its experts to analyze that data. This will likely be an extremely complex task. Indeed, during the investigation, Defendants repeatedly represented that their data was so complex that it took their employees – who have much greater familiarity with the data – months to analyze the data in order to respond to Bureau requests that were much narrower than the requests and corresponding analyses that may need to be done for purposes of an expert report in litigation. For example, on June 7, 2016, the Bureau asked Navient various

5

discrete questions about specific populations of borrowers, and did not receive responses until August 29 and September 15, 2016. Even now, after the parties agreed to parameters for the data production in early October, Defendants indicated that production is not expected to occur until mid-December, further demonstrating the complexity of their data.

7. The parties have agreed that the Bureau will identify recordings of calls between Defendants and consumers that the Bureau would like to be produced based on the Bureau's review of the data. Because Defendants have represented that querying call recordings is a cumbersome process for Defendants, and that many call recordings were not retained such that calls are unavailable before mid-2013 for most borrowers, the parties agreed that it would make the most sense for the Bureau to analyze the data and then identify various available call recordings most likely to be relevant to this case. This method will allow the Bureau to request fewer call recordings than it would otherwise have to, because the Bureau will aim to minimize the production of call recordings that are not relevant (*e.g.*, call recordings where borrowers seek only to change their mailing address).

8. The Bureau's experts will not be able to draft their reports until the data analysis is completed. Because the data production (excluding call recordings)

will not even be completed until a couple weeks before expert reports are currently due, the existing deadline for the Bureau's expert reports is not tenable.

9. Analysis of the data may also result in the Bureau identifying additional borrower witnesses upon whom the Bureau may rely to support its claims.

10. Discovery extensions are warranted where the late production of documents or data leaves insufficient time for the opposing party to analyze and use those documents and data, which is exactly the case here. Otherwise, parties would be incentivized to adopt a run-out-the-clock strategy of producing documents at or near the end of the discovery period, when the opposing party does not have time to make use of them. *See, e.g.*, *Tivoli LLC v. Targetti Sankey, s.p.a.*, 2016 WL 6138406, at *6 (C.D. Cal. Feb. 19, 2016) (granting six-month extension for discovery "given the complexity and scope of this case" and "Plaintiffs' need to review discovery responses that have recently been produced"); *Real Estate Indus. Solutions, LLC v. Concepts in Data Mgmt. U.S., Inc.*, 2012 WL 12903886, at *1-2 & n.1 (M.D. Fla. Feb. 16, 2012) (noting that a prior discovery extension was brought about by the fact that "production of documents in this case has taken far longer than what may usually be expected"); *Furukawa Elec. N. Am., Inc. v. Sterlite Optical Techs., Ltd.*, 2007 WL 9698028, at *5 n.5 (N.D. Ga. Feb. 23, 2007) (noting "numerous extensions of the discovery period," including "to

allow [the plaintiff] time to conduct follow-up discovery based on late documents produced by [the defendant]").

11. The Bureau has devoted immense resources to this case and has made a good faith effort to complete as much discovery as possible given the constraints placed upon it by Defendants' delayed productions. Thus far, in discovery, the parties have completed all written discovery and have conducted 47 depositions (20 by the Bureau, and 27 by Defendants).

12. The Bureau anticipates that the tasks remaining to be completed during fact discovery, which cannot be completed by the current deadline of December 7, are as follows:

   a. Defendants need to complete their production of borrower data, including producing the call recordings that the Bureau identifies after review of that data.

   b. The Bureau will likely disclose additional witnesses identified as a result of reviewing the documents and data that Defendants produced many months after the Bureau's requests.

   c. The Bureau needs to complete depositions. These include three depositions that the Bureau noticed on November 9, and one deposition noticed on November 13, some of which Defendants have indicated cannot be scheduled before the current close of fact discovery. The

Bureau is in the process of determining, based on the documents produced by Defendants, six additional witnesses from whom it will take depositions to stay within the limit of 30 depositions.

d. Defendants need to complete depositions. Based on outreach to former Navient employees on the list that the Court recently ordered Navient to produce (Doc. 104), the Bureau added some former Navient employees to its Rule 26(a)(1) disclosures, and Defendants have subpoenaed those witnesses. The Bureau continues to interview former employees, in addition to some borrowers identified through Defendants' document productions, and may add some additional witnesses to its Rule 26(a)(1) disclosures based on that outreach. The Bureau has indicated that it does not oppose Defendants exceeding the limit of 30 depositions so that every borrower and former employee witness on the Bureau's Rule 26(a)(1) disclosures can be deposed.

e. There are limited document production tasks to be completed. For example, as discussed at the August 8 hearing, the Bureau believes that Defendants have withheld relevant documents for borrowers whom Defendants have deposed. After that hearing, Defendants produced logs showing all correspondence and calls between those borrowers and Navient, and based on a time-consuming comparison of those logs with

the documents produced for those borrowers, the Bureau will soon transmit to Defendants a list of relevant documents for each borrower that the Bureau believes were improperly not produced.

13. For the reasons above, a discovery extension is necessary to develop a complete record for any dispositive motions and a possible trial in this case. The Bureau would be severely prejudiced without an extension, especially in light of the volume of documents that Defendants recently produced, Defendants' continued delays in producing data, and documents that Defendants withheld for borrower witnesses whom Defendants have already deposed. Defendants should not be rewarded for producing documents and data without sufficient time for the Bureau to review, analyze, and use them, and the Bureau believes that leaving the existing schedule intact would do exactly that.

14. With the requested extension, the total amount of time in fact discovery will be approximately one year and ten months, well within reason for a case of this magnitude and complexity. *See, e.g.*, *Equal Employment Opportunity Comm'n v. FedEx Ground Package Sys., Inc.*, 2018 WL 1441426, at *4 (W.D. Pa. Mar. 21, 2018) (approximately four years of fact discovery); *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1302 (S.D. Cal. 2017) (four years of fact discovery), *aff'd*, 881 F.3d 1111 (9th Cir. 2018); *Ely v. Cabot Oil & Gas Corp.*, 2016 WL 4169197, at *1 (M.D. Pa. Feb. 17, 2016) (over three years of fact discovery).

15. On November 26, the parties conferred regarding the relief sought by this motion. On November 27, Defendants indicated that they did not concur in the relief requested. Defendants expressed a "willing[ness] to discuss a limited extension of expert discovery deadlines," even though that discussion had already occurred on November 26, and the Bureau specifically asked whether Defendants would consent to a three-month extension. A10. In addition, Defendants did not agree to a "general extension" of the fact discovery deadline, insisting instead that the parties should itemize specific fact discovery tasks to be completed after the fact discovery deadline. *Id.* While the Bureau will endeavor to limit the universe of tasks to be completed after December 7, as set forth in paragraph 12 above, the Bureau is concerned that Defendants' proposed task list seeks to short-circuit the depositions of additional Navient employees and borrowers that the Bureau is identifying based on the documents produced and working to contact. In addition, there can be unanticipated other tasks that may arise for which a task list would be inadequate, such as production gaps for borrower witnesses (as the Bureau has experienced with respect to the borrowers who have already been deposed).

16. Accordingly, the Bureau respectfully requests that the Court grant this motion and enter the accompanying order enlarging all deadlines from the Court's August 10, 2018 Order by a period of three months.

Dated: November 29, 2018       Respectfully submitted,

Kristen Donoghue
*Enforcement Director*

David Rubenstein
*Deputy Enforcement Director*

Thomas Kim
*Assistant Deputy Enforcement Director*

   /s/ Nicholas Jabbour
Nicholas Jabbour, DC 500626
(Nicholas.Jabbour@cfpb.gov; 202-435-7508)
Ebony Sunala Johnson, VA 76890
(Ebony.Johnson@cfpb.gov; 202-435-7245)
Nicholas Lee, DC 1004186
(Nicholas.Lee@cfpb.gov; 202-435-7059)
Manuel Arreaza, DC 1015283
(Manuel.Arreaza@cfpb.gov; 202-435-7850)
Andrea Matthews, MA 694538
(Andrea.Matthews@cfpb.gov; 202-435-7591)
David Dudley, DC 474120
(David.Dudley@cfpb.gov; 202-435-9284)
*Enforcement Attorneys*

1700 G Street NW
Washington, DC 20552
Fax: 202-435-9346

*Attorneys for Plaintiff*

# CERTIFICATE OF NONCONCURRENCE

Pursuant to Local Rule 7.1, I certify that, on November 26, 2018, I conferred with counsel for Defendants regarding this motion. On November 27, 2018, I was informed that Defendants do not concur in the relief requested by this motion. A10.

      /s/ Nicholas Jabbour
Nicholas Jabbour, DC 500626
Nicholas.Jabbour@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-7508
Fax: 202-435-9346

*Attorney for Plaintiff*

# **CERTIFICATE OF SERVICE**

I certify that, on November 29, 2018, I filed the foregoing document using the Court's ECF system, which will send notification of such filing to counsel for Defendants.

    /s/ Nicholas Jabbour
Nicholas Jabbour, DC 500626
Nicholas.Jabbour@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-7508
Fax: 202-435-9346

*Attorney for Plaintiff*