IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br>*Plaintiff*,<br><br>v.<br><br>NAVIENT CORPORATION, *et al.*,<br>*Defendants*. | Case No. 3:17-CV-101-RDM<br>(Judge Robert D. Mariani) |

## DECLARATION OF DEEPAK GUPTA

I, Deepak Gupta, declare as follows:

1.  My name is Deepak Gupta. I am an attorney at Gupta Wessler PLLC in Washington, DC, and a member in good standing of the Bar of the District of Columbia. My firm and I have been retained by non-party Seth Frotman to represent him in connection with the deposition subpoena served on him by Navient in this action. I am submitting this declaration to describe our unsuccessful efforts to work cooperatively with Navient's counsel to clarify, narrow, or resolve this matter without the Court's involvement. True and correct copies of the original subpoena, the modified subpoena, and the correspondence between my firm and Navient's counsel are all attached hereto.

2.  Before seeking to depose him, Navient did not serve Mr. Frotman or any member of his former staff with interrogatories, or otherwise seek to obtain any information from them by other means. Nor, as far as we are aware, did Navient identify Mr. Frotman or any member of his former staff as a witness in this case until after Mr. Frotman resigned as the Student Loan Ombudsman of the Consumer Financial Protection Bureau on September 1, 2018. After Navient served him with a subpoena on October 6, 2018, Mr. Frotman realized that he would need to retain his own personal counsel and contacted my firm for assistance.

3. Shortly after Mr. Frotman retained our firm, my colleague Matt Wessler and I approached Navient's counsel with the aim of working cooperatively to identify the issues and resolve our initial concerns with the burdensomeness, lack of relevance, and overwhelmingly privileged nature of Navient's proposed lines of inquiry. Among other things, we hoped that that Navient's counsel could tell us how the broad and open-ended topics identified in its subpoena might be relevant to the claims and defenses in this litigation; how Mr. Frotman could be questioned about the identified topics without having the deposition be overwhelmingly focused on privileged information concerning his former government service; and whether it might be possible to clarify or limit the issues without involving the Court. To that end, on October 23, 2018, we wrote to Navient's counsel with a list of specific concerns and questions.

4. Having received no response, we wrote to Navient's counsel again on October 30, November 3, and November 9—each time respectfully requesting that Navient provide us with the courtesy of a response to our questions about the relevance, burdensomeness, and privileged nature of the topics for deposition, so that we might at least attempt to resolve our concerns without resorting to the Court. Each time, Navient declined to respond.

5. On November 12, Navient's counsel, Daniel Kearney, wrote to indicate that Navient did not believe it had *any* obligation to clarify the scope or nature of its proposed deposition. "Our initial subpoena included a list of topics as a courtesy to Mr. Frotman," he wrote. "But we were not required to provide you any topics at all, and we do not have an obligation to clarify for you exactly what questions we intend to ask in the deposition."

6. The following week, we wrote a lengthy response to Mr. Kearney, reiterating our concerns. We explained that we had "repeatedly sought clarification" from Navient because, as far as we could tell, "these lines of inquiry are breathtakingly open-ended; have no discernible connection to the claims and defenses in the litigation; are focused on matters covered by the

deliberative-process, law-enforcement, and attorney-client privileges; and are not limited in time or scope in any way." We tried to one last time to urge Navient to try to work cooperatively with us—regardless of whether it believed it had a specific legal obligation to do so: "You say that Navient has no specific legal 'obligation' to identify the topics for the proposed deposition or any 'obligation to clarify' those topics," we wrote. "But Navient's repeated refusal to do so makes it difficult or impossible for us—or for the CFFB or the Court, for that matter—to have confidence that the proposed deposition would not be unduly burdensome, focused on privileged matters, and wholly irrelevant to the claims or defenses in the litigation."

7. On November 26, 2018, my colleague Matt Wessler and I participated in a telephonic meet-and-confer with Navient's counsel, Daniel Kearney and Jonathan Paikan. At the outset of the call, Navient's counsel reiterated its position that it has no obligation whatsoever to provide us with the topics for the proposed deposition or to clarify those topics in response to our questions and concerns, and that Navient had initially provided a list of topics to Mr. Frotman only as a courtesy. Navient further stated that the proposed deposition would not even necessarily be "limited" to the open-eneded topics it had identified.

8. In response to our questions about how a deposition of Mr. Frotman could possibly be relevant to the claims and defenses in this case, Navient's counsel said only that it seeks to depose Mr. Frotman concerning his role in the "evolution" of "federal policy with respect to student loans." As we subsequently explained to Mr. Kearney and Mr. Paikan, this response only confirms that Navient is seeking to depose Mr. Frotman to probe pre-decisional policy communications that the Court has already deemed irrelevant to the claims and defenses in this litigation and that would, in any event, be necessarily protected by the work-product doctrine and the deliberative process, law enforcement, attorney-client privileges.

9. In response to our questions about whether Navient is seeking to depose any other current or former CFPB officials, Navient's counsel indicated that Navient has no "current" plans to do so but that it might decide to do so in the future. At the meet and confer and in subsequent correspondence, we informed Navient that we had concluded that we would have no choice but to file a motion to quash the subpoena. This did not alter Navient's position.

10. Pursuant to 20 C.F.R. § 1070.31, we informed the General Counsel's office of the CFPB of Navient's subpoena and our representation of him. *See* 20 C.F.R. 1070.31(e) (requiring "former employees" to provide notice to the General Counsel of any subpoena that "involves their official duties as CFPB employees"). As far as we are aware, Navient has neither made a formal request that it authorize Mr. Frotman to testify pursuant to 20 C.F.R. § 1070.31(a), nor provided the General Counsel with information that would be needed to make an informed assessment of the considerations identified in 20 C.F.R. § 1070.36. And, as far as we are aware, the General Counsel has not yet made any authorization determination with respect to the proposed deposition. As such, Mr. Frotman is currently prohibited from providing oral testimony by deposition concerning any official information. *See* 20 C.F.R. § 1070.32(a); *id.* § 1070.35.

10. Absent a stay or order quashing the subpoena, Navient's proposed deposition of Mr. Frotman is currently scheduled for December 14, 2018.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on December 3, 2018.

*/s/ Deepak Gupta*
_____
Deepak Gupta