IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>v.<br><br>Navient Corporation, *et al.*,<br><br>Defendants. | Case No. 3:17-CV-00101-RDM<br>(Hon. Robert D. Mariani)<br><br>Electronically Filed |

**PLAINTIFF'S RESPONSE TO NON-PARTY
<u>SETH FROTMAN'S MOTION TO QUASH SUBPOENA, TO STAY
DEPOSITION, AND IN THE ALTERNATIVE FOR PROTECTIVE ORDER</u>**

The Bureau of Consumer Financial Protection ("Bureau") respectfully submits this response to non-party Seth Frotman's motion to quash the third-party subpoena issued to him by Defendants. At a minimum, the Bureau requests that Mr. Frotman's deposition be limited to prohibit questions that seek certain information that is protected by the attorney work product doctrine, or that is irrelevant to any issue in the case, as described below.[1]

---

[1] The Bureau does not object in this response to Topics 5 and 8. However, Defendants have informed the Bureau that the topics for deposition will not be limited to the topics in their notice. There may also be unanticipated lines of questions even as to the topics listed. Accordingly, if testimony is ordered, the Bureau may make objections beyond those articulated here. The Bureau intends to lodge those objections on a question-by-question basis. Additionally, 12 C.F.R. § 1070.32 precludes Mr. Frotman from giving testimony "concerning any official information" absent authorization by the Bureau's General Counsel. Defendants

**I.  Defendants should be prohibited from asking questions seeking Mr. Frotman's participation in and knowledge of the Bureau's investigation of and action against Defendants.**

In large part, Topics 1-4 seek information about Mr. Frotman's knowledge of and participation in the Bureau's investigation of and action against Defendants. Topics 1 and 2 seek information regarding the Bureau's investigation of, and its decision to take action against, Defendants. Topic 3 seeks, among other information, Mr. Frotman's communications with other federal agencies and state attorneys general relating to the investigation or action. And Topic 4 seeks Mr. Frotman's knowledge of the factual basis of the allegations in the Bureau's complaint. All of these categories of information are protected under the attorney work product doctrine.

Mr. Frotman's involvement in the Bureau's investigation of and action against Defendants was entirely under the direction of the Bureau enforcement attorneys who conducted the investigation and developed the legal theories underlying the complaint. (Frotman Decl. (Doc. 124) ¶ 9.) As a result, his participation in discussions about the investigation, responses to questions from Bureau attorneys in connection with the investigation, and all knowledge he gained

---

have not sought such authorization for Mr. Frotman's deposition, but in any case the General Counsel would not authorize disclosure of official information protected by the attorney work product doctrine, attorney-client privilege, the common interest privilege, or the deliberative process privilege.

about the investigation necessarily reveal the mental impressions of those attorneys.

Mr. Frotman's participation in the investigation and in the Bureau's decisions regarding its action against Defendants, and thus his knowledge about them (Topics 1, 2 and 4), arose exclusively from the role he served as an in-house expert in student loans. *Id.* That role was similar to that of a non-testifying expert retained in anticipation of litigation. Where an individual is consulted "to provide pre-litigation advice and has not been disclosed as a testifying expert" and engages in work at the direction of an attorney in anticipation of litigation, that work is protected as core attorney work product under Fed. R. Civ. P. 26(b)(3). *Quinn Const., Inc. v. Skanska USA Bldg., Inc.* 263 F.R.D. 190, 194 (E.D. Pa. 2009). Mr. Frotman's participation in the Bureau's investigation and the knowledge he gained as result of that participation, including his knowledge of the factual basis of the Bureau's allegations, are inseparable from the mental impressions of Bureau enforcement attorneys who directed him and "are at the core of the work product doctrine . . . ." *In re Cendant Corp. Secs. Litig.*, 343 F.3d 658, 667 (3d Cir. 2003). As a result, he cannot testify to these topics without revealing privileged information.

There are no "rare and exceptional circumstances" that can justify overriding the work product protection here. *In re Cendant*, 343 F.3d at 667. Courts

considering these "exceptional circumstances" have looked to whether one party had "the exclusive opportunity to observe or test a particular condition or object at a point in time critical to the litigation," such that the facts obtained by that party are not able to be obtained by the other. *Comm'r of Dep't of Planning and Natural Res. v. Century Aluminum Co.*, 279 F.R.D. 317 (D.V.I. 2012) (citing cases). Defendants cannot meet this stringent standard. For example, Defendants are already in possession of all factual information underlying the Bureau's allegations in the Complaint. On August 4, 2017, the Bureau produced a witness to testify pursuant to Defendants' Rule 30(b)(6) deposition notice. Among other topics, that witness testified to "[t]he specific facts, information, Documents, and other evidence, as well as a description of the sources, relied upon by the Plaintiff to support each Count of the Complaint . . . ." A8.[2] In addition to furnishing hours of testimony on this topic, the Bureau's designee produced a collection of the documentary evidence underlying the Bureau's allegations. Because the Bureau has already provided Defendants with a complete response regarding the basis of the allegations in the Complaint, Mr. Frotman cannot have anything to add on these topics outside of offering Defendants an opportunity to probe the core work product of Bureau attorneys.

---

[2] "A__" refers to a page of the appendix of supporting documentation filed with this brief.

As to Topic 3, to the extent Mr. Frotman had any communications with other federal agencies or state attorneys general relating to the investigation or action, those communications would have been consistent with maintaining secrecy from Navient (*see* Frotman Decl. ¶ 11), and thus would not have waived attorney work product protection. *See, e.g.*, *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980); *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 311 (D.N.J. 2008) ("Waiver of work-product protection occurs only when a disclosure enables an adversary to gain access to the information.").

## II. Defendants should be prohibited from asking questions seeking Mr. Frotman's interpretations of any regulation or public guidance.

Mr. Frotman's deposition should be limited so as to prohibit Defendants from asking questions regarding his interpretation of any regulation or other public guidance issued by the Bureau or the Department of Education (Topic 6) – whether or not such questions are phrased to seek his "personal" views or his views as a government official obtained through his work at the Bureau (if such a distinction could even be drawn).[3] Courts have repeatedly held that a government employee's interpretation of regulations issued by a federal agency is not relevant to any issue

---

[3] While the Bureau anticipates that Topic 6 may include such questions, the Bureau supports an order barring such questions regardless of the topic to which they purportedly relate.

5

in the case. This is so even when the regulation as to which the employee's interpretation was sought or provided is the precise regulation under which the agency has brought suit, and even when the employee was directly involved in drafting that regulation. *See*, *e.g.*, *Armco Inc. v. Comm'r of Internal Revenue*, 87 T.C. 865, 867-68 (1986) (affidavit of former employee who had drafted regulation not relevant as "no one's personal views can be accepted as a pronouncement of the intended meaning of the regulation"); *Sidell v. C.I.R.*, 225 F.3d 103, 110-11 (1st Cir. 2000) (explaining that "the IRS must speak with a single voice, that is, through formal statements of policy such as regulations or revenue rulings" and thus, internal memoranda whose production was sought to "debunk the IRS's interpretation of the proposed regulations" were irrelevant to the regulation's interpretation because they reflected the "views of the authors, not the official position of the agency"). Here, the guidance documents that Defendants have previously claimed are relevant to their defenses consist of various public documents issued by the Bureau or the Department of Education. These documents reflect those agencies' policies regarding an array of student loan-related issues. If a government official's interpretation of the specific law or regulation that a defendant has been accused of violating is irrelevant, Mr. Frotman's interpretation of any statements in those guidance documents must also be irrelevant.

Because Mr. Frotman's interpretations of regulations or guidance documents

are irrelevant as a matter of law, the Court can bar questions that seek such interpretations without having to determine whether such testimony would disclose privileged information. For example, in *Evergreen Trading, LLC ex rel Nussdorf v. United States*, the court granted a motion for protective order filed by the United States to bar the plaintiff from taking depositions of three Treasury employees who drafted regulations at issue, solely on the grounds of lack of relevance. 75 Fed. Cl. 730, 730-31 (Fed. Cl. 2007). Citing several cases that "explicitly make clear that the views expressed by individual IRS employees are irrelevant in construing regulations or determining the validity thereof," the court held that "the requested depositions will not lead to the discovery of information relevant to the claim or defense of any party in this litigation" and thus "the requested depositions fall well outside the scope of appropriate discovery under RCFC 26(b)(1)." *Id.* The court noted that because of its ruling on lack of relevance, it "need not reach defendant's argument that the information sought by plaintiff is protected by the deliberative process privilege." *Id.* n.1.[4]

---

[4] The Bureau believes that questions relating to public guidance issued by the Bureau or the Department of Education, whether under Topic 6 or any other topic, are highly likely to require disclosure of privileged information. The Bureau intends to lodge its objections on a question-by-question basis.

### III. Defendants should be prohibited from asking questions seeking disclosure of Bureau deliberations that did not include the Department of Education.

Defendants should not be permitted to ask Mr. Frotman questions that would require him to disclose the substance of the Bureau's internal deliberations that did not include the Department of Education.[5] Numerous courts have held, in a variety of contexts, that internal government deliberations are wholly irrelevant to whether the defendant violated the law. *See*, *e.g.*, *United States v. Farley*, 11 F.3d 1385, 1390-91 (7th Cir. 1993) (holding that intra-agency deliberations sought by the defendant were irrelevant because they were not disseminated to the public and therefore could not have been relied upon); *Int'l Paper Co. v. Fed. Power Comm'n*, 438 F.2d 1349 (2d Cir. 1971) (agreeing with district court holding that "the views of individual members of the Commission's staff" expressed in internal agency documents "are not legally germane"); *United States v. Elsass*, 2012 WL 353739 at *1-2 (S.D. Ohio 2012) (rejecting defendants' argument that IRS's internal policy debates about an IRS code provision the defendants were accused of violating were relevant to the IRS's claims); *EEOC v. Mobil Oil Corp.*, 1973 WL 272, at *2

---

[5] The Bureau has limited this request in light of the Court's holding that communications between the Bureau and the Department of Education "may be relevant." May 4, 2018 Mem. Op. at 11 (Doc. No. 88). The Bureau intends to make privilege objections to questions about its communications with the Department of Education on a question-by-question basis.

(W.D. Mo. 1973) ("The Court, however, has no intention of disclosing Commission staff opinions, views, thought processes, and other irrelevant matters which may be reflected in these documents").[6] Because questions regarding internal government deliberations seek information that is irrelevant as a matter of law, the Court can bar such questions without having to determine whether such testimony would disclose privileged information.

### IV. Defendants should be prohibited from asking questions about Mr. Frotman's resignation from the Bureau.

Topic 7 should be stricken because it seeks irrelevant information. Per the Court's May 4, 2018 Order, and as Defendants recognize in their deposition notice, the relevant period for this lawsuit runs through January 18, 2017. *See* A19 (definition of "Relevant Time Period"). Mr. Frotman's separation from the Bureau occurred on September 1, 2018, well after the relevant period. Even apart from the fact that the resignation post-dates the relevant time period, Mr. Frotman's separation from the Bureau does not have any bearing on this case. The circumstances of his resignation are not related to any claim or defense at issue.

---

[6] The cases cited in section II above also support this proposition.

Dated: December 17, 2018						Respectfully submitted,

Kristen Donoghue
*Enforcement Director*

David Rubenstein
*Deputy Enforcement Director*

Thomas Kim
*Assistant Deputy Enforcement Director*

   /s/ Nicholas Jabbour
Nicholas Jabbour, DC 500626
(Nicholas.Jabbour@cfpb.gov; 202-435-7508)
Ebony Sunala Johnson, VA 76890
(Ebony.Johnson@cfpb.gov; 202-435-7245)
Andrea Matthews, MA 694538
(Andrea.Matthews@cfpb.gov; 202-435-7591)
Manuel Arreaza, DC 1015283
(Manuel.Arreaza@cfpb.gov; 202-435-7850)
Nicholas Lee, DC 1004186
(Nicholas.Lee@cfpb.gov; 202-435-7059)
David Dudley, DC 474120
(David.Dudley@cfpb.gov; 202-435-9284)
*Enforcement Attorneys*

1700 G Street NW
Washington, DC 20552
Fax: 202-435-9346

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I certify that, on December 17, 2018, I filed the foregoing document using the Court's ECF system, which will send notification of such filing to counsel for Defendants.

    /s/ Nicholas Jabbour
Nicholas Jabbour, DC 500626
Nicholas.Jabbour@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-7508
Fax: 202-435-9346

*Attorney for Plaintiff*