# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CONSUMER FINANCIAL
PROTECTION BUREAU,

    Plaintiff,

v.

NAVIENT CORPORATION, et al.,

    Defendants.

3:17-CV-101
(JUDGE MARIANI)

## MEMORANDUM OPINION

### I. BACKGROUND

Through this lawsuit, the Consumer Financial Protection Bureau ("Plaintiff" or "CFPB") seeks to prove that Navient Corporation, Navient Solutions, Inc., and Pioneer Credit Recovery, Inc., (collectively, "Defendants" or "Navient"), committed various violations of the Consumer Financial Protection Act, 12 U.S.C. §§ 5531, 5536, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e, and Regulation V of the Fair Credit Reporting Act, 12 C.F.R. §1022.42. (Doc. 1). Presently before the Court are several new disputes that have arisen during the course of discovery.

On October 10, 2018, Navient, pursuant to the procedure of the Court, filed a letter with the Court (Doc. 107) seeking: (1) the production of "all documents related to Defendants so that Defendants can review them and determine whether they are relevant to the issues of the case," as Navient asserts the CFPB has improperly withheld thousands of

documents from production (*id.* at 1-3); (2) remedies related to alleged deficient privilege logs provided by the CFPB, such as *in camera* review of the purportedly privileged documents (*id.* at 3-7); and (3) the appointment of a special master to handle these and other issues arising from the complex nature of the case and the entailing discovery (*id.* at 7-8). Pursuant to an order by the Court (Doc. 109), the CFPB submitted a letter on November 2, 2018, attempting to justify its document productions made thus far and the sufficiency of its privilege logs and discounting the necessity of the appointment of a special master. (Doc. 110). The Court ordered the parties to appear before the Court at a hearing on December 10, 2018 to present argument on their respective positions. (Doc. 111).

The hearing agenda quickly expanded. On November 14, 2018, Navient submitted another letter to the Court requesting that discussion regarding another dispute be added to the hearing agenda: Navient's claim that the CFPB improperly invoked work-product protection during Navient's deposition of a CFPB investigator, Theresa Ridder, and Navient's request to reopen her deposition. (Doc. 112). The Court ordered the CFPB to respond to Navient's letter (Doc. 113), and the CFPB filed a reply with the Court on November 20, 2018, asserting that it properly objected to the questions posed by Navient during Ms. Ridder's deposition. (Doc. 114). Subsequently, on November 29, 2018, the CFPB filed a Motion for an Enlargement of Time to Complete Discovery (Doc. 117), seeking a three-month extension of the discovery period. The Court requested that the parties to be ready to discuss this issue at the hearing (Doc. 122), and Navient filed a Brief in Opposition

to the Motion for an Enlargement of Time on December 6, 2018. (Doc. 126). The CFPB filed a Reply Brief in support of its Motion for an Enlargement of Time on December 7, 2018. (Doc. 129).

At the December 10 hearing, the Court attempted to clarify and crystallize the numerous disputes. After extensive presentation by counsel for Navient and the CFPB, the Court understands that the first issue is "whether [the Court] ought to order CFPB to turn over those documents that mention Navient and mention Pioneer[.]" (Doc. 134 at 45:20-23). The second issue is the sufficiency of the CFPB privilege logs and the propriety of appointing a special master to sort through the CFPB's claims of privilege. Here, the Court noted that, based on its own review of the privilege logs, the Court had "reservations about the sufficiency of the descriptions" in many of the listed categories. (*Id.* at 82:19-22). Accordingly, the Court directed Navient, to the extent possible based on the summary nature of many of the challenged document categories, to provide a "statement of what [Navient] think[s] the relevance would be of the documents that are made reference to in each of these categories." (*Id.* at 82:9-16). Additionally, the Court noted that it was inclined to appoint a special master to review the purportedly privileged documents *in camera* as necessary, and the parties agreed to such an appointment for that purpose.[1] (*Id.* at 76:7-77:14). On the third issue, the CFPB's pervasive invocation of privilege during Navient's

---

[1] The CFPB noted at the hearing that it would have to get official approval from CFPB leadership to agree to the appointment of a special master, but that such approval was likely. On December 17, 2018, the CFPB filed a letter with the Court expressing its consent to the appointment of a special master. (Doc. 136).

3

deposition of Ms. Ridder, the Court noted that relevant Third Circuit authority, *In re Hughes*, 633 F.2d 282 (3d Cir. 1980), appeared to extend work product privilege to Ms. Ridder, and "that the only question here would really be whether all of the questions were properly objected to, and that Ms. Ridder was properly instructed not to answer them." (Doc. 134 at 84:23-25). Finally, on the fourth issue, the request by the CFPB to extend the discovery period, the Court noted that it was not realistic to end discovery on the scheduled date in December 2018 and that the parties needed a "substantial extension of time," especially given that both sides still need to conduct additional depositions and that the instant discovery disputes portended future disputes. (*Id.* at 99:1-17). The Court issued an order after the hearing that directed the parties to follow up with the Court on several of the above disputes, (Doc. 132), and the parties have complied by filing supplemental documents with the Court.[2] (Doc. 136, Doc. 137, Doc. 139).

After further consideration of the arguments of the parties contained in their submissions to the Court and delivered at the December 10 hearing, and for the reasons that follow, the Court will resolve the discovery disputes as follows: (1) order the CFPB to produce all non-privileged documents that mention "Navient" or "Pioneer," (2) seek input from the parties on the appointment of a special master to sort through claims of privilege

---

[2] The Court understands that the CFPB has until December 24, 2018 to submit a reply to Navient's statement regarding its views on the possible relevance of the documents listed in the CFPB's privilege logs. (Doc. 132 ¶ 2). Although the Court is issuing this Memorandum Opinion and accompanying Order before receipt of the CFPB's reply, the Court notes that Navient's statement and the CFPB's reply are immaterial to the reasoning and findings of the Court on the matters discussed herein, and that the putative special master will be able to utilize the statement and reply in fulfilling duties related to the evaluation of the assertions of privilege, as discussed *infra*.

4

asserted by the CFPB, (3) sustain the vast majority of the CFPB's objections lodged at Ms. Ridder's deposition, and (4) extend the discovery period by six months.

## II. DISCOVERY DISPUTE RULINGS

### A. The CFPB Must Produce All Non-Privileged Documents that Mention "Navient" or "Pioneer."

At the December 10 hearing, the parties made varying claims as to what the CFPB had identified in its records as responsive to Navient's discovery requests. For example, Navient asserted that there were 478,000 documents flagged as potentially responsive by the CFPB, with 130,000 of these documents mentioning "Navient" and another 90,000 documents mentioning "Pioneer." (Doc. 134 at 15:11-25). The CFPB responded that the Court's May 2, 2018 Order (Doc. 89) limited the time period for discovery, and that after applying this time period filter to the original universe of 478,000 documents, the CFPB was left with 336,000 documents, with 32,000 documents mentioning "Navient" and 23,000 documents mentioning "Pioneer." (Doc. 134 at 37:5-12). Regardless of the exact number of documents at issue, the Court agrees with Navient that the CFPB should turn over all documents that mention "Navient" or "Pioneer."

> The Federal Rules of Civil Procedure establish a broad scope for discovery:
>
> Unless otherwise limited by court order, the scope of discovery is as follows: *Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense* and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its

5

> likely benefit. *Information within this scope of discovery need not be admissible in evidence to be discoverable.*

Fed. R. Civ. P. 26(b)(1) (emphasis added); *see also, e.g., Pacitti v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999) ("It is well recognized that the federal rules allow broad and liberal discovery.") (citing *In re Madden*, 151 F.3d 125, 128 (3d Cir. 1998)). "At the discovery stage, the discovery requested may be wide-ranging because under Rule 26(b)(1), 'relevance is a broader inquiry at the discovery stage than at the trial stage.'" *Pollock v. Energy Corp. of Am.*, No. 10-cv-1553, 2014 WL 562726, at *1 (W.D. Pa. Feb. 11, 2014) (quoting *In re Gateway Engineers, Inc.*, No. 09-mc-209, 2009 WL 3296625, at *2 (W.D. Pa. Oct. 9, 2009)). "[D]istrict courts have broad discretion to manage discovery." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995) (citations omitted).

Here, the Court is presented with a situation where the CFPB has essentially made relevance determinations on Navient's behalf, instead of treating as presumptively relevant all of the search results found utilizing search terms to which Navient has no objection. (*See* Doc. 134 at 7:22-8:4 (the CFPB arguing that certain documents "are unrelated to the issues in this case"), 22:22-24 (Navient's dispute is with the CFPB's culling of documents)). This is improper given the broad scope of discovery and relevance at this stage; the important and expansive nature of this matter; the lack of insight that Navient has into the documents retained by the CFPB; and as Navient noted at the December 10 hearing, the existence of a protective order that mitigates the potential harm of the CFPB turning over irrelevant materials to Navient. (*Id.* at 26:13-15). Navient is entitled to documents relevant

to the CFPB's claims and its own defenses. (See id. at 34:14-18 (Navient arguing that the CFPB has "defined relevance in such a narrow way, so that issues that relate to our defenses" were not produced)). While the Court does not want to micro-manage discovery, the Court finds it appropriate to utilize its discretion to grant Navient's request to order the CFPB to turn over all non-privileged documents that mention "Navient" or "Pioneer." The CFPB should provide an appropriate and detailed privilege log in the event it withholds any documents based on privilege.

### B. The Court Will Appoint a Special Master.

Navient challenges 35 categories of documents listed on the CFPB's privilege logs as insufficiently asserting a claim of privilege: 1-2, 11, 22, 27-31, 33, 35-50, 71-75, 79-81, and 85. (Doc. 134 at 81:20-22). The Court agrees that many of the categories listed on the privilege logs, appear, on their face, to insufficiently state a claim of privilege. (Id. at 48:22-49:4). Pursuant to the agreement of the parties, the Court will appoint a special master to sort through the CFPB's claims of privilege, most likely through in camera review of the purportedly privileged documents. (Id. at 76:7-77:14, Doc. 136). Federal Rule of Civil Procedure 53 grants the Court the authority to appoint a special master to "perform duties consented to by the parties," and, before appointing such a master, requires the Court to "give the parties' notice and an opportunity to be heard [and that] [a]ny party may suggest candidates for appointment." Fed. R. Civ. P. 53(a)(1)(A), (b)(1). The Court invites suggestions from the parties and will defer to their choice if they are able to agree on a

suitable candidate. Upon selection of a special master, the Court will separately issue an order that specifically defines the special master's authority and duties.[3] See Fed. R. Civ. P. 53(b).

### C. The CFPB Properly Objected to the Vast Majority of the Questions Posed to Ms. Ridder During Her Deposition.

With respect to the third dispute, Navient argues that the CFPB improperly instructed its investigator, Theresa Ridder, to refuse to answer many or most of the questions posed to her by Navient at her deposition on the basis of work product. Navient contends that Ms. Ridder was listed as a witness by the CFPB on its initial disclosures, and that Navient is entitled to discover information about Ms. Ridder's contact with borrowers and how she conducted her investigation; thus, Navient seeks to reopen her deposition. (Doc. 112). The CFPB responds that all relevant authority indicates that it was within its rights to assert work product as to the questions asked of Ms. Ridder, arguing that it constitutes "opinion work product," and that it informed Navient several weeks before her deposition that she will not be offered by the CFPB as a witness at trial. (Doc. 114).

The Court agrees with the CFPB with respect to the vast majority of the questions Ms. Ridder refused to answer. (See Doc. 112-1 (list of questions provided by Navient)). As noted at the December 10 hearing, the most relevant authority on this type of situation in

---

[3] The Court notes that an additional October 2018 privilege log was not before the Court at the hearing. (See Doc. 134 at 64-65). The CFPB expressed optimism that the documents listed on that privilege log are covered by the Court's May 4, 2018 Order (Doc. 89), and will not require the intervention of the Court to resolve privilege disputes. (Doc. 134 at 64:21-65:1). However, to the extent appropriate and necessary, disputes regarding this privilege log can also be within the ambit of the putative special master.

8

this circuit is *In re Hughes*, 633 F.2d 282 (3d Cir. 1980). In *Hughes*, the Third Circuit found that work product protection extends to investigators employed on behalf of attorneys, and that recollections of investigators regarding witness interviews can improperly reveal the mental processes of the investigator and the directing attorney. *Hughes*, 633 F.2d at 290 (noting that this is the "core of the work product of an agent of an attorney"). This type of work product is "generally afforded near absolute protection from discovery." *In re Cendant Corp. Secs. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003) (citations omitted). After review of the questions that the CFPB instructed Ms. Ridder to refuse to answer, the Court finds that most would improperly reveal the "mental impressions, conclusions, opinions, or legal theories" of the CFPB.[4] *See* Fed. R. Civ. P. 26(b)(3)(B).

However, the Court does find that two questions posed by Navient could be properly asked of Ms. Ridder: "How many borrowers have you interviewed for the Navient investigation?" and "For how many borrowers have you served as a point of contact?" (Doc. 112-1 at 243:14-18). To the extent the answers to these questions would reveal work product, the Court notes that they would not constitute core, opinion work product, and that

---

[4] At the December 10 hearing, Navient argued that it was entitled to ask Ms. Ridder about witnesses that had become unavailable, specifically, a borrower witness who, during his deposition by Navient, pled the Fifth Amendment in refusing to answer certain questions about his financial status. (Doc. 134 at 89-92). The CFPB responded that the case law indicates that it would likely only be appropriate to consider overriding work product protection in that instance if the borrower witness that Ms. Ridder interviewed had died, and that, here, Navient could go through its own records to get the answers to its questions about the borrower's financial status. (*Id.* at 93:14-25). The Court notes that unavailability of a witness in federal litigation typically has a broader meaning than death. *See* Fed. R. Evid. 804(a)(2). However, the Court agrees that Navient would be able to find the answers to the specific borrower-related questions it highlighted at the December 10 hearing by reviewing its own records. Thus, it will not permit Navient to ask these questions of Ms. Ridder.

Navient has a need for the materials and would not be able to obtain this information by other means. See Cendant, 343 F.3d at 663 (noting that there are two "tiers of protection" for work product"); Fed. R. Civ. P. 26(b)(A)(ii). Navient will be permitted to reopen its deposition of Ms. Ridder to ask these questions, or if the parties find it more efficient, Navient can seek these answers through written discovery.

### D. The Court Will Extend the Discovery Period by Six Months.

Finally, the Court will extend the discovery period in this matter by six months. As noted at the hearing, the complexity of this case and the numerous, multifaceted discovery disputes that have plagued the parties and the Court mean that it is not realistic to assume that discovery can be rapidly concluded. While the Court, in its previous orders, had held out hope that no further extensions to discovery would be necessary, that was, in hindsight, an assertion of undue optimism. As the parties have been unable to agree on an appropriate extension of time, the Court will order a six month extension. This length of extension is especially appropriate given that additional documents must be produced by the CFPB, the appointment of a special master and privilege review will take time, and the parties still have additional depositions to conduct.

### III. CONCLUSION

For the reasons outlined above, the Court will order the CFPB to produce all non-privileged documents that mention "Navient" or "Pioneer," seek input from the parties on the appointment of a special master to sort through claims of privilege asserted by the CFPB,

sustain the vast majority of the CFPB's objections lodged at Ms. Ridder's deposition, and extend the discovery period by six months. A separate Order follows.

*signature*
Robert D. Mariani
United States District Judge