# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Consumer Financial Protection Bureau, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:CV-17-00101 |
| | ) | (Hon. Robert D. Mariani) |
| Navient Corporation, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |

## DEFENDANTS' BRIEF IN OPPOSITION TO NON-PARTY SETH FROTMAN'S MOTION TO QUASH SUBPOENA, TO STAY DEPOSITION, AND IN THE ALTERNATIVE FOR PROTECTIVE ORDER

Jonathan E. Paikin (DC 466445)
  (*pro hac vice*)
Daniel P. Kearney (DC 977148)
  (*pro hac vice*)
Karin Dryhurst (DC 1034290)
  (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
jonathan.paikin@wilmerhale.com
daniel.kearney@wilmerhale.com
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

Daniel T. Brier (PA 52348)
Donna A. Walsh (PA 74833)
Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
dbrier@mbklaw.com
dwalsh@mbklaw.com
Tel: 570-342-6100
Fax: 570-342-6147

*Counsel for Navient Corporation, Navient Solutions, LLC,
and Pioneer Credit Recovery, Inc.*

## INTRODUCTION

Mr. Frotman's motion to quash is meritless, and the Court should deny it. *First*, his testimony is plainly relevant to the claims and defenses in this lawsuit. During the period at issue, Mr. Frotman served as the CFPB's Student Loan Ombudsman. In that capacity, he was responsible for reviewing and analyzing tens of thousands of complaints from student loan borrowers and preparing public reports about issues faced by borrowers, including issues related to the government's income-driven repayment ("IDR") programs. *See* 12 U.S.C. § 5535. Mr. Frotman's position also required him to communicate with the Department of Education ("ED") regarding contractual and regulatory requirements for federal student loan servicers like Navient — an issue that the Court has already concluded is relevant to this lawsuit. *See* May 4, 2018 Op. at 11 (Doc. No. 88).

*Second*, Mr. Frotman's privilege objections to the subpoena are unfounded. The fact that questioning may touch on issues protected by privilege is no categorical bar to proceeding with the deposition. *See Consumer Fin. Prot. Bureau v. Universal Debt Sols., LLC*, No. 1:15-CV-859-RWS, 2017 WL 3887187, at *2 (N.D. Ga. Aug. 25, 2017) (attached as Ex. K). Moreover, Mr. Frotman does not have standing to assert the CFPB's law enforcement, deliberative process, or attorney work product privileges. *See Yang v. Reno*, 157 F.R.D. 625, 635 (M.D. Pa. 1994). Notably, the CFPB has not sought to quash Mr. Frotman's subpoena, nor did it seek to quash

Navient's 30(b)(6) deposition of the Bureau based on almost identical topics.  Mr. Frotman's privilege objections are at best premature and speculative: any appropriate privilege objections may be made by the CFPB at the deposition in response to specific questions, as the CFPB has made clear it intends to do.

*Third*, contrary to Mr. Frotman's contention, the so-called "*Morgan* doctrine" does not immunize him from being deposed.  *See United States v. Morgan*, 313 U.S. 409 (1941).  *Morgan* insulates senior agency officials from inquiries into their mental processes and deliberations in connection with an agency decision.  It does not confer a general immunity on former government employees from having to testify about their relevant, first-hand knowledge.  In any event, the doctrine is designed to protect the *agency's* interests, not those of an individual former employee, and is inapplicable where, as here, the relevant agency has not sought to block the deposition.

*Finally*, the CFPB's *Touhy* regulations are inapplicable, because they apply only where the "the United States or the CFPB is *not* a party" to the proceeding. 12 C.F.R. § 1070.34(a) (emphasis added).  Nor do *Touhy* rules create any testimonial privilege on the part of current or former government officials in suits where the federal government is a party.  *See Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 776-78 (9th Cir. 1994).  Rather, when the federal government is a party to

a lawsuit, "it is placed in the same position as a private litigant, and the rules of discovery in the Federal Rules of Civil Procedure apply." *Id.* at 776 n.4.[1]

## **BACKGROUND**

Over two months ago, on October 6, 2018, Mr. Frotman accepted service of Navient's subpoena noticing a deposition for October 24, 2018.  Exhibit[2] ("Ex.") A, Oct. 2 Subpoena; Ex. B, Affidavit of Service.  Mr. Frotman's counsel responded to the subpoena with a request for alternative dates, which Navient's counsel provided on October 17.  Ex. C, Oct. 17 Kearney Email.  On October 23, two weeks after receiving the subpoena, Mr. Frotman's counsel sent a list of questions regarding possible deposition topics that Navient provided to Mr. Frotman as a courtesy and were similar to the topics in Navient's 30(b)(6) deposition of the CFPB.  *See* Ex. C, Oct. 23 Gupta Email; Ex. D, Defendants' Notice of 30(b)(6) Deposition to the CFPB.

---

[1] In addition, the Court should deny the motion to quash because it is untimely under Rule 45.  *See Behne v. Halstead*, No. 1:13-CV-0056, 2014 WL 4672486, at *2 (M.D. Pa. Sept. 18, 2014) (attached as Ex. L) ("A motion to quash a subpoena must be filed within the specified compliance period or within fourteen days after the subpoena is served, whichever is earlier.").  Navient served the initial subpoena on Mr. Frotman on October 6, 2018, and the revised subpoena on November 1, 2018.  At the latest, a motion to quash should have been filed on November 15, 2018.  Instead, Mr. Frotman waited until December 4, three days before the end of discovery, to file a motion to quash.

[2] All references to "Ex." refer to exhibits attached to the Declaration of Daniel Kearney, included as Exhibit 1 to this Opposition.

Contrary to Mr. Frotman's assertion that Navient's counsel did not respond, Navient's counsel promptly sent an email offering to discuss any issues with the subpoena prior to the deposition.  Ex. C, Oct. 25 Kearney Email.  Counsel for Mr. Frotman did not accept Navient's offer, and instead demanded a written response to its questions seeking details of what Navient intended to ask in the deposition.

In an attempt to accommodate Mr. Frotman's schedule, Navient agreed to postpone the October 24 deposition to December 5, two days before the end of discovery.  On November 1, Navient's counsel sent a revised subpoena to Mr. Frotman's counsel, who accepted service on his behalf.  Ex. E, Nov. 1 Subpoena; Ex. C, Nov. 3 Gupta Email.  The revised subpoena did not contain deposition topics.

Mr. Frotman's claim that Navient counsel refused to discuss the subpoena is simply incorrect.  In a November 12 email, Navient counsel asked Mr. Frotman's counsel to clarify their privilege concerns because Mr. Frotman had not been identified by the CFPB as someone providing legal advice in connection with this case. Ex. C, Nov. 12 Kearney Email.  In addition, Navient's counsel informed Mr. Frotman's counsel that, as the CFPB's top liaison with ED during much of the period at issue in this lawsuit, Mr. Frotman's knowledge is relevant to this litigation.  *Id.* The email once again offered to discuss these issues by phone.

The parties to the subpoena conferred via telephone on November 26.  During the conversation, Navient counsel reiterated their desire to depose Mr. Frotman on

issues relevant to the litigation, such as his oversight of complaints from student loan borrowers and his communications with ED.  *See* Ex. F,  Nov. 27 Kearney email; May 4, 2018 Op. at 11 (Doc. No. 88).  At Mr. Frotman's counsel's request,  the deposition was rescheduled again for December 14.  Navient's counsel also met and conferred with counsel for the CFPB regarding Mr. Frotman's deposition on November 29, 2018.

On December 4, nearly two months after he was initially served, Mr. Frotman filed a motion to quash.  On December 10, the Court stayed the deposition pending resolution of this motion.  On December 17 the CFPB filed a response (Doc. No. 138), which asks the Court to limit certain questioning but does not seek to block Mr. Frotman from being deposed.

## LEGAL STANDARD

A subpoena may be quashed if it (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits of Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.  Fed. R. Civ. Pro. 45(d)(3).  The party seeking to quash bears a "heavy" burden, *CedarCrestone Inc. v. Affiliated Computer Services LLC*, No. 1:14-MC-0298, 2014 WL 3055355, at *3 (M.D. Pa. July 3, 2014) (attached as Ex. M), because "the Federal Rules of Civil Procedure promote a 'broad and liberal policy' of discovery 'for the parties to obtain the fullest

possible knowledge of the issues and facts before trial,'" May 4, 2018 Op. at 4 (Doc.

No. 88) (quoting *In re MSTG, Inc.*, 675 F.3d 1337, 1346 (Fed. Cir. 2012)).

## ARGUMENT

## I.   THE MOTION TO QUASH SHOULD BE DENIED

### A.   Mr. Frotman Possesses Extensive Knowledge Of Student Loan Borrower Complaints And Participated In Relevant Communications With ED and Third Parties

Mr. Frotman's knowledge is relevant to the claims and defenses in this

lawsuit.   *First*, in his "unique" (Frotman Mem. at 11) role as Student Loan

Ombudsman, Mr. Frotman had extensive knowledge of student loan borrower

complaints, which he reviewed and analyzed as part of his statutory responsibility.

Those complaints, and Mr. Frotman's analysis of them, bear on core issues in this

case, including: (1) whether and to what extent any student loan borrowers

complained of being "steered" into forbearance by Navient; (2) whether and how

borrowers were informed about IDR by Navient or ED; and (3) the reasons why

many borrowers may fail to apply for IDR despite efforts to inform them about the

program.   For example, Mr. Frotman likely has information showing that a key

reason many borrowers do not apply for IDR is that servicers like Navient are

prohibited by federal law from enrolling borrowers in IDR over the phone.   This is

highly relevant information because it would tend to rebut any inference that

borrowers failed to apply for IDR due to Navient's conduct.   In fact, the CFPB has

essentially admitted the relevance of Mr. Frotman's role by producing emails

involving Mr. Frotman's review of borrower complaints.  The CFPB recently shared one of those emails with the Court as an example of the "exculpatory materials" it had produced to Defendants.  *See* Ex. G, June 2, 2016 email, CFBP-NAV-0019824.

*Second*, Mr. Frotman likely played a critical part in communications with ED about federal policy relating to IDR and forbearance.  The Court has already held that "[g]iven Defendants' relationship with the Department of Education, this type of communication [between Plaintiff and the Department of Education] may be relevant to their defenses."  May 4, 2018 Op. at 11 (Doc. No. 88).  These communications go to the core of Navient's defense that its conduct was known to the federal government and consistent with the government's expectations.  For example, Mr. Frotman is likely to have had communications with ED about the importance of forbearance to prevent borrowers from defaulting on their loans and about the government's expectations for how servicers should communicate IDR information to borrowers.

*Third*, Mr. Frotman has made many public statements regarding student loan policy and likely had many interactions with third parties about issues faced by borrowers.  Those communications also are clearly relevant to potential Navient defenses.  For example, Mr. Frotman made public comments about a July 20, 2016 ED policy memo setting forth standards for how servicers communicate with borrowers about IDR, which Mr. Frotman publicly characterized as "new policy

guidance."[3] Defendants are entitled to question Mr. Frotman about those statements, in order to explore their defense that Navient's conduct conformed to the government's previous guidance.  In light of these and other potential areas of inquiry, the claim that Mr. Frotman's testimony is not *relevant* to this lawsuit borders on the frivolous.

The CFPB does not attempt to argue that Mr. Frotman's testimony is not relevant, but instead asks the Court to bar Navient from asking certain questions that the CFPB views as irrelevant.  This approach is improper and unworkable.  For one, Defendants are entitled to reasonable latitude in their questioning of Mr. Frotman to obtain information that may be relevant to their defenses.  *See Yang*, 157 F.R.D. at 631 ("where relevance is in doubt, the court should be permissive in allowing discovery").  Given that relevance is not a proper basis for a deponent to refuse to answer a question, *see* Fed. R. Civ. Pro. 30(c)(2), there is no basis for the Court to prejudge the relevance of particular questions and bar Defendants from even *asking* them of Mr. Frotman.  The only cited case remotely on point comes from the Federal

---

[3] *See, e.g.*, Ex. H, Seth Frotman and John McNamara, "Increasing Transparency in the Student Loan Servicing Market," CFPB Blog (February 16, 2017), https://www.consumerfinance.gov/about-us/blog/increasing-transparency-student-loan-servicing-market/; Ex. I, January 13, 2017, Letter from Seth Frotman to Under Secretary Mitchell.

Court of Claims and involved entirely different circumstances.[4]  *See Evergreen Trading, LLC ex rel Nussdorf v. United States*, 75 Fed. Cl. 730 (Fed. Cl. 2007).  In *Evergreen*, the government sought a protective order barring several depositions altogether on the ground that the government employees possessed no relevant information.  Here, the CFPB concedes that Mr. Frotman's testimony is relevant and that it is appropriate to depose him, but it wants to litigate in advance the relevance of particular questions Defendants may ask.  That proposal is an invitation to unnecessary question-by-question litigation over relevance and would put Defendants in the impossible position of potentially violating a Court order merely by asking a deposition question.

Finally, contrary to Mr. Frotman's and the CFPB's assertions, Defendants are not required to confine their questioning of Mr. Frotman to a specific time period. While the Court has defined the time period for production of documents and for the conduct at issue, this does not prohibit parties from asking deposition questions about events that pre-date or post-date the specified period.  For example, the CFPB has frequently asked Navient's Rule 30(b)(1) employee deponents about their employment experience outside the specified time period or about their preparation for depositions.  Those questions are entirely proper and can lay a foundation for

---

[4] The CFPB also relies on *Armco, Inc. v. Comm'r*, 87 T.C. 865, 866-68 (1986), and *Sidell v. Comm'r*, 225 F.3d 103, 110 (1st Cir. 2000), but those cases have nothing to do with depositions.

eliciting relevant testimony.   Here too, information from Mr. Frotman's public statements and work as Ombudsman in the year following the CFPB's lawsuit can provide "valuable context" potentially relevant to Navient's defenses.  *See E.E.O.C. v. Kronos Inc.*, 620 F.3d 287, 299 (3d Cir. 2010).  Likewise, Mr. Frotman's publicly-released letter resigning from the CFPB describes his work as Ombudsman and refers to efforts to "cut[] through red tape" and promote "systematic reforms" to help student loan borrowers.[5]  Navient is entitled to question Mr. Frotman about these statements and to elicit potentially relevant testimony.

### B.     Defendants Do Not Seek Privileged Testimony, And Mr. Frotman Lacks Standing To Object Based On The CFPB's Privileges

Mr. Frotman's privilege objections are also no bar to taking his deposition. *First*, the fact that a deposition may touch on privileged topics is no basis to quash the deposition altogether.  *See United States v. Educ. Mgmt. LLC*, No. 2:07–CV–461, 2014 U.S. Dist. LEXIS 48841, at *15–16, 19 (W.D. Pa. Apr. 9, 2014) ("the attorney-client privilege and work product doctrines cannot be wielded as a preemptive shield to quash the depositions in advance") (attached as Ex. N);  *Furey v. Wolfe*, No. CIV.A. 10-1820, 2011 WL 597038, at *8–9 (E.D. Pa. Feb. 18, 2011) (refusing to quash deposition on the grounds that some information was subject to the deliberative process privilege) (attached as Ex. O).  Moreover, the deposition

---

[5] Ex. J, Letter from Seth Frotman to Acting Director Mulvaney (Aug. 27, 2018).

topics provided to Mr. Frotman as a courtesy do not require disclosure of privileged information.  For example, topic 5 concerns Mr. Frotman's "public statements," and topic 3 seeks information about Mr. Frotman's "communications and interaction with Third Parties," including ED, Congress, or the media—areas that clearly encompass non-privileged information.

*Second*, Mr. Frotman does not have standing to assert the work product, deliberative process, or law enforcement privileges he raises, because those privileges and protections belong to the CFPB.  Mr. Frotman is not an employee of the CFPB, much less the head of the CFPB, and cannot invoke executive privileges belonging to the agency.  *See United States v. Reynolds*, 345 U.S. 1, 7–8, 73 S. Ct. 528, 532 (1953) ("There must be formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer."); *Yang*, 157 F.R.D. at 635 (concluding that the executive secretary failed to invoke executive privileges because he did not have adequate authority).[6]

*Third*, any privilege objections belonging to the CFPB can be made at the deposition by the CFPB itself, in response to specific questions.  Defendants can assure the Court that they do *not* seek to invade privileged or protected matters

---

[6] *See also Furey*, No. CIV.A. 10-1820, 2011 WL 597038, at *7–8 (recognizing the law enforcement privilege must be invoked by head of asserting agency); *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 866 (3d Cir. 1994) ("[T]he protection stemming from the work product doctrine belongs to the professional, rather than the client.").

concerning the CFPB's investigation and its litigation against the Defendants. Otherwise, the CFPB will attend the deposition and has stated that it intends to make privilege objections where appropriate, as it is entitled to do. There is simply no need for the Court to resolve privilege objections in advance, based on hypotheticals.

### C.   *Morgan* Does Not Immunize Mr. Frotman From Being Deposed

Mr. Frotman incorrectly claims that the principles of *United States v. Morgan*, 313 U.S. 409 (1941), immunize him from being deposed.

As an initial matter, the so-called *Morgan* doctrine is of limited scope. The case itself involved a challenge to an administrative rate-setting decision by the Secretary of Agriculture. The challengers were permitted by the lower court to depose the Secretary about his decision, a procedure the Supreme Court deemed inappropriate. "Just as a judge cannot be subjected to such scrutiny," the Court reasoned, "so the integrity of the administrative process must be equally respected." *Morgan*, 313 U.S. at 422. Thus, "*Morgan* stands for the principle that when the Secretary's duties take on a judicial quality there is no right to conduct a deposition of such a decision maker in the absence of extraordinary circumstances." *United States v. Wal-Mart Stores, Inc.*, No. CIV.A. PJM-01-1521, 2002 WL 562301, at *1 (D. Md. Mar. 29, 2002) (attached as Ex. P). To the extent *Morgan* applies at all to non-quasi-judicial decisions, the doctrine serves as an adjunct to the deliberative process privilege. *See id.*

The subpoena to Mr. Frotman bears no resemblance to circumstances in which *Morgan* has been applied. *First*, this case—and Mr. Frotman's deposition—is not an effort to look behind an administrative decision by the CFPB or to delve into Mr. Frotman's "mental process." *Id.* As explained, as Student Loan Ombudsman, Mr. Frotman was responsible for compiling and analyzing borrower complaints and publishing independent reports about issues affecting student loans; Navient intends to question Mr. Frotman regarding his first-hand knowledge of those issues. *Second*, even if the *Morgan* doctrine applies to *former* officials (which it does not),[7] the doctrine is designed to protect the interests of the *agency*, and cannot apply where (as here) the agency itself does not seek to block the deposition. Mr. Frotman does not cite a single case that demonstrates otherwise.[8] *Third*, there is no need to invoke

---

[7] The Third Circuit has never applied the *Morgan* Doctrine limitations to former government employees. Nor do the policy reasons supporting the *Morgan* Doctrine support its application to former employees in this situation. Among other things, Mr. Frotman's deposition will not distract him from official duties or hinder agency functions.

[8] *See, e.g.*, *K.C.R. v. Cty. of Los Angeles*, No. CV 13-3806 PSG (SSX), 2014 WL 3434257, at *1 (C.D. Cal. July 11, 2014) (motion to quash filed by Defendant County of Los Angeles); *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 318 (D.N.J. 2009) (Government filed brief in support of motion to quash and deposing party made no showing of first-hand knowledge); *New York v. Nat'l R.R. Passenger Corp.*, No. 04-CV-962 DNH/RFT, 2007 WL 4377721, at *1 (N.D.N.Y. Dec. 12, 2007) (motion to quash filed by Office of the New York State Comptroller); *Bank of Commerce of Laredo v. City Nat'l Bank of Laredo*, 484 F.2d 284, 286 (5th Cir. 1973) (involving attempt to force the Comptroller of the Currency of the United States to explain the reasons for his approval of the charter application).

*Morgan* here, because the CFPB's deliberative process privilege adequately protects its internal deliberations and policymaking decisions.[9]

**D.    *Touhy* Regulations Do Not Apply Where the CFPB Is A Party**

Despite never raising the subject during discussions with Navient counsel, Mr. Frotman now claims that the CFPB's *Touhy* regulations bar him from testifying pursuant to the subpoena.  That is simply incorrect.  Because the CFPB is itself a party in this litigation, the CFPB's *Touhy* regulations do not apply and are not a bar to Mr. Frotman's appearance.  The CFPB itself has stated that its *Touhy* rules impose special procedural requirements only "for those *who seek to serve third party subpoenas upon the Bureau*."  CFPB, Disclosure of Records and Information, 78 Fed. Reg. 11484, 11502 (Feb. 15, 2013) (emphasis added).  And the rules themselves expressly carve out instances where the CFPB is a party to the litigation.  *See* 12 C.F.R. § 1070.31(a) (General Counsel may receive subpoenas "[e]xcept in cases in which the CFPB is represented by legal counsel who have entered an appearance"); § 1070.34(a) (notice to the CFPB General Counsel required only when the information is sought "as a part of a proceeding in which the United States or the CFPB is *not* a party" (emphasis added)).

---

[9] In any event, even if *Morgan* applies, Defendants have demonstrated how Mr. Frotman has relevant, first-hand knowledge material to their defenses.  *See, e.g.*, *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (*Morgan* standard met where the "official has unique first-hand knowledge related to the litigated claims").

Indeed, it makes no sense to apply *Touhy* regulations where the government is a party to the lawsuit. *Touhy* regulations are about agency housekeeping: they are designed "to conserve governmental resources where the United States is not a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business." *Boron Oil Co. v. Downie*, 873 F.2d 67, 70 (4th Cir. 1989). That rationale is inapplicable when the government is a party. In that circumstance, the agency "is placed in the same position as a private litigant, and the rules of discovery in the Federal Rules of Civil Procedure apply." *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 776 n.4 (9th Cir. 1994).

Finally, Mr. Frotman claims that the purported *Touhy* bar applies "[u]ntil the [CFPB] … can make an informed assessment of Navient's demands." Frotman Mem. at 2. The CFPB has weighed in, and it does not seek to block Mr. Frotman's deposition.

## CONCLUSION

Defendants respectfully request that the Court deny Mr. Frotman's motion.

Dated: December 21, 2018                    Respectfully submitted,

                                                              /s/ Jonathan E. Paikin
                                                            Jonathan E. Paikin (DC 466445)
                                                              (*pro hac vice*)
                                                            Daniel P. Kearney (DC 977148)
                                                              (*pro hac vice*)
                                                            Karin Dryhurst (DC 1034290)
                                                              (*pro hac vice*)

Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
jonathan.paikin@wilmerhale.com
daniel.kearney@wilmerhale.com
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

Daniel T. Brier (PA 52348)
Donna A. Walsh (PA 74833)
Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
dbrier@mbklaw.com
dwalsh@mbklaw.com
Tel: 570-342-6100
Fax: 570-342-6147

*Attorneys for Defendants Navient Corporation, Navient Solutions, LLC, and Pioneer Credit Recovery, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2018, I filed the foregoing document with the Clerk of Court via CM/ECF system, which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

_/s/ Karin Dryhurst_
Karin Dryhurst (DC 1034290)
   (*pro hac vice*)
Wilmer Cutler Pickering
   Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363
