# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Consumer Financial Protection Bureau,

      Plaintiff,

      v.

Navient Corporation, *et al.*,

      Defendants.

Case No. 3:17-CV-00101-RDM
(Hon. Robert D. Mariani)

Electronically Filed

## PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT REGARDING POTENTIAL RELEVANCE OF DOCUMENTS WITHHELD UNDER QUALIFIED GOVERNMENT PRIVILEGES

Kristen Donoghue
*Enforcement Director*

David Rubenstein
*Deputy Enforcement Director*

Thomas Kim
*Assistant Deputy Enforcement Director*

Nicholas Jabbour, DC 500626
Ebony Sunala Johnson, VA 76890
Nicholas Lee, DC 1004186
Manuel Arreaza, DC 1015283
Andrea Matthews, MA 694538
David Dudley, DC 474120
*Enforcement Attorneys*

*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

I.    INTERNAL GOVERNMENT DELIBERATIONS ARE IRRELEVANT
AS A MATTER OF LAW, BUT EVEN IF DEFENDANTS COULD
ESTABLISH RELEVANCE, A COMPELLING OR PARTICULARIZED
NEED WOULD BE NECESSARY TO OVERCOME   THE
DELIBERATIVE PROCESS PRIVILEGE. ....................................................1

II.    WITH RESPECT TO MOST OF THE DISPUTED CATEGORIES,
THE DOCUMENTS ARE IRRELEVANT.. ...................................................7

    A.    Bucket 1: Disputed Categories 27-29, 37, 47........................................7

    B.    Bucket 2: Disputed Categories 39, 48, 49. ...........................................8

    C.    Bucket 3: Disputed Categories 1-2, 11, 22, 30, 36, 38,
        40-46, 50.............................................................................................10

III.    WITH RESPECT TO THE REMAINING CATEGORIES OF
DOCUMENTS, ALL OF WHICH INCLUDE THE BUREAU'S
COMMUNICATIONS WITH ED, DEFENDANTS CANNOT
SHOW A COMPELLING OR PARTICULARIZED NEED FOR THE
DOCUMENTS.. .........................................................................................12

IV.    DEFENDANTS SHOULD BE REQUIRED TO ARTICULATE THE
RELEVANCE OF THE DOCUMENTS THEY REQUESTED.. ................16

V.    DEFENDANTS' COUNSEL SHOULD NOT BE ALLOWED TO
PRE-SCREEN DOCUMENTS SUBJECT TO A PRIVILEGE CLAIM
BEFORE THE *IN CAMERA* REVIEW HAS BEEN CONDUCTED.. ........18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013)..................................................................................... 13

*Ancient Coin Collectors Guild v. Dept. of State*,
641 F.3d 504 (D.C. Cir. 2011)........................................................................ 5

*Averett v. Honda of America Manufacturing, Inc.*,
2009 WL 799638 (S.D. Ohio Mar. 24, 2009) ............................................... 14

*Color of Change v. Dept. of Homeland Security*,
325 F. Supp. 3d 447 (S.D.N.Y. 2018) ......................................................... 10

*Conn. General Life Ins. Co. v. C.I.R.*,
177 F.3d 136 (3d Cir. 1999) ........................................................................... 3

*Contreras v. Artus*,
778 F.3d 97 (2d Cir. 2015) ........................................................................... 19

*EEOC v. FAPS, Inc.*,
2012 WL 1656738 (D.N.J. May 10, 2012)..................................................... 2

*Evergreen Trading, LLC v. United States*,
75 Fed. Cl. 730 (Fed. Cl. 2007) ..................................................................... 3

*Ford Motor Co. v. United States*,
94 Fed. Cl. 211 (2010)................................................................................... 13

*General Elec. Co. v. Johnson*,
2007 WL 433095 (D.D.C. Feb. 5, 2007)....................................................... 13

*Gondola v. USMD PPM, LLC*,
223 F. Supp. 3d 575 (N.D. Tex. 2016)......................................................... 17

*Gosen v. U.S. Citizenship & Immigration Servs.*,
118 F. Supp. 3d 232 (D.D.C. 2015).............................................................. 6

*ICM Registry, LLC v. Dept. of Commerce,*
    538 F. Supp. 2d 130 (D.D.C. 2008) ............................................................ 10

*In re Asbestos Prod. Liab. Litig.,*
    2011 WL 6181334 (E.D. Pa. Dec. 13, 2011) ............................................ 21

*In re Wilmington Tr. Sec. Litig.,*
    2017 WL 2467059 (D. Del. June 7, 2017) .................................................. 21

*International Paper Co. v. Federal Power Commission,*
    438 F.2d 1349 (2d Cir. 1971) ...................................................................... 4

*Jowett, Inc. v. Dept. of Navy,*
    729 F. Supp. 871 (D.D.C. 1989) ................................................................ 16

*Lopez v. Chertoff,*
    2009 WL 1575214 (E.D. Cal. June 2, 2009) .............................................. 17

*Meeropol v. Meese,*
    790 F.2d 942 (D.C. Cir. 1986) .................................................................... 20

*Montrose Chem. Corp. v. Train,*
    491 F.2d 63 (D.C. Cir. 1974) ....................................................................... 5

*National Wildlife Fed'n v. U.S. Forest Serv.,*
    861 F.2d 1114 (9th Cir. 1988) .................................................................... 11

*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975) .................................................................................... 10

*Patroski v. Ridge,*
    2011 WL 5977582 (W.D. Pa. Nov. 29, 2011) ............................................ 14

*Public Emps. for Envtl. Responsibility v. EPA,*
    926 F. Supp. 2d 48 (D.D.C. 2013) ............................................................... 6

*Redland Soccer Club, Inc. v. Dep't of Army,*
    55 F.3d 827 (3d Cir. 1995) ..................................................................... 2, 20

*Regan-Touhy v. Walgreen Co.*,
   526 F.3d 641 (10th Cir. 2008) ...................................................................... 15

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
   421 U.S. 168 (1975)...................................................................................... 16

*Robbins v. Camden City Bd. of Educ.*,
   105 F.R.D. 49 (D.N.J. 1985) ........................................................................ 14

*Rupert v. United States*,
   225 F.R.D. 154 (M.D. Pa. 2004) ................................................................... 1

*SEC v. Nacchio*,
   704 F. Supp. 2d 1099 (D. Colo. 2010) ...................................................... 3, 4

*Sidell v. C.I.R.*,
   225 F.3d 103 (1st Cir. 2000).......................................................................... 3

*Sourgoutsis v. U.S. Capitol Police*,
   323 F.R.D. 100 (D.D.C. 2017) ...................................................................... 2

*United States v. Elsass*,
   2012 WL 353739 (S.D. Ohio Feb. 2, 2012) ......................................... 3, 4, 11

*United States v. Farley*,
   11 F.3d 1385 (7th Cir. 1993) ............................................................... 1, 2, 12

*United States v. Nunez*,
   2016 WL 3658980 (E.D. La. July 7, 2016) .................................................. 19

*Warnick v. Home Depot U.S.A., Inc.*,
   516 F. Supp. 2d 459 (E.D. Pa. 2007)........................................................... 13

*Wartluft v. Milton Hershey Sch. & Sch. Tr.*,
   2018 WL 3995697 (M.D. Pa. Aug. 21, 2018)............................................... 18

Pursuant to the Court's Order dated December 10, 2018 (Doc. 132), the

Bureau respectfully responds to Defendants' statement (Doc. 139).[1]

With respect to the *in camera* review of the thirty-five categories of

privileged material that Defendants seek ("Disputed Categories"), the Bureau

respectfully requests that: (1) the Court (and the special master to be appointed by

the Court) consider the case law and arguments below in determining whether

Defendants can overcome the deliberative process privilege, and (2) the Court

deny Defendants' request to pre-screen the documents before the *in camera* review

is conducted.

## I.   INTERNAL GOVERNMENT DELIBERATIONS ARE IRRELEVANT AS A MATTER OF LAW, BUT EVEN IF DEFENDANTS COULD ESTABLISH RELEVANCE, A COMPELLING OR PARTICULARIZED NEED WOULD BE NECESSARY TO OVERCOME THE DELIBERATIVE PROCESS PRIVILEGE.

Where, as here, "the documents at issue are not relevant to the controversy,"

the party seeking the documents "cannot, as a matter of law" overcome the

deliberative process privilege. *United States v. Farley*, 11 F.3d 1385, 1390 (7th

Cir. 1993); *see also Rupert v. United States,* 225 F.R.D. 154, 157 (M.D. Pa. 2004).

But even if relevance can be established, "relevance alone is an insufficient reason

for breaching" the privilege. *Farley*, 11 F.3d at 1390. "The party seeking discovery

---

[1] The Bureau endeavored to be as concise as possible in this brief. Defendants' submission included an appended chart that contained extensive arguments, and thus a brief of comparable length was necessary to respond.

bears the burden of showing that its need for the documents outweighs the government's interest." *Redland Soccer Club, Inc. v. Dep't of Army*, 55 F.3d 827, 854 (3d Cir. 1995).[2] Courts have required the seeking party's need for the requested documents to be "particularized" or "compelling" to overcome the government's interest – including why the specific documents sought are necessary to establish a specific claim or defense and why that claim or defense cannot be established through other evidence. *See, e.g.*, *Farley*, 11 F.3d at 1389-90 ("particularized need"); *Sourgoutsis v. U.S. Capitol Police*, 323 F.R.D. 100, 111 (D.D.C. 2017) ("compelling need"); *EEOC v. FAPS, Inc.*, 2012 WL 1656738, at *26 (D.N.J. May 10, 2012) ("compelling need").

Internal government deliberations, including unpublished views of government personnel, are wholly irrelevant to whether a defendant violated the law. "Courts may not [] rely on unpublished opinions of agency staff" because they are "not pertinent." *Farley*, 11 F.3d at 1390.

This is so even when the defendant is seeking internal deliberations about the interpretation and application of the very regulation at issue in the case. Courts have repeatedly held that such information is irrelevant as a matter of law. For

---

[2] In conducting this balancing test, the following five factors should be considered: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; [and] (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Id.* (quotation omitted).

instance, in *United States v. Elsass*, the court rejected the defendants' argument that "internal debate over the application of the" IRS regulation at issue was relevant because it would shed light on "the reasonableness" of the defendants' conduct. 2012 WL 353739, at *1 (S.D. Ohio Feb. 2, 2012). The court explained: "Actions or positions of which Defendants had no knowledge are simply irrelevant." *Id.*; *see also SEC v. Nacchio*, 704 F. Supp. 2d 1099, 1112 n.16 (D. Colo. 2010) ("What opinions SEC staffers may have" regarding accounting rules at issue "is irrelevant"); *Evergreen Trading, LLC v. United States*, 75 Fed. Cl. 730, 730 (Fed. Cl. 2007) (barring depositions of Treasury employees on "regulations at issue" because they would "not lead to the discovery of information relevant to the claim or defense of any party"); *Sidell v. C.I.R.*, 225 F.3d 103, 111 (1st Cir. 2000) ("Because these internal memoranda represent the personal views of the authors, not the official position of the agency, they do not figure in our decisional calculus."); *Conn. General Life Ins. Co. v. C.I.R.*, 177 F.3d 136, 145 (3d Cir. 1999) ("[R]eliance upon remembered details from officials who lacked the ultimate authority to issue any proposed regulation has little support in the law."). Thus, for example, even if the Bureau had issued a regulation directly addressing forbearance steering (it has not), its internal deliberations relating to such a regulation would be irrelevant. The deliberative documents that Defendants seek are even less tethered to the issues in the case.

The legal irrelevance of government deliberations does not change simply because the party seeking the documents speculates that the documents might contain discussions contrary to the government's position. In *International Paper Company v. Federal Power Commission,* the court rejected the plaintiff's argument that the requested materials were relevant because they "favored the legal position taken" by the plaintiff. 438 F.2d 1349, 1358 (2d Cir. 1971). Likewise, in other cases, it did not matter that the materials sought might support the defendant's case. *Elsass*, 2012 WL 353739, at *1; *Nacchio*, 704 F. Supp. 2d at 1112.

Nor does the presence of factual information within the requested materials alter the analysis. Importantly, the Bureau did not independently generate any facts about Defendants. Rather, it collected facts exclusively from outside sources. *Defendants already have all of the facts about their alleged conduct in the Disputed Categories in their original form.* Defendants have the information they provided to the Bureau during the pre-lawsuit investigation. And during the normal course of business, the Bureau made available to Defendants the consumer complaints received through its complaint portal. The Bureau also searched for and produced additional responsive complaints received by other means.[3] Finally, all comments submitted in response to the Bureau's May 2015 request for information

---

[3] Defendants argue that "non-public complaints" in Category 50 would "be relevant to the extent that they relate to Defendants or the issues in this lawsuit." Doc. 139-1, at 6. The Bureau conducted a reasonable search for and produced responsive consumer complaints, including non-public complaints.

4

regarding student loan servicing are publicly available. There are no additional sources of information regarding Defendants' alleged conduct within the Disputed Categories.

With respect to servicing issues, the factual materials in the documents in the Disputed Categories consist entirely of Bureau staff's selections, summaries, or analyses of (1) facts about Defendants that they already have, (2) facts about third parties that the Court has already held are irrelevant (May 4 Mem. Op. at 16), or (3) facts that are publicly available.[4] As the D.C. Circuit explained in holding that government employees' summaries of factual information reflected their personal judgments: "Even if they cited portions of the evidence verbatim, [they] were making an evaluation of the relative significance of the facts recited in the record; separating the pertinent from the impertinent is a judgmental process, sometimes of the highest order." *Montrose Chem. Corp. v. Train*, 491 F.2d 63, 68 (D.C. Cir. 1974); *see also Ancient Coin Collectors Guild v. Dept. of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) ("factual summaries" in reports "were culled . . . from the much larger universe of facts . . . and reflect an exercise of judgment as to what issues are most relevant") (quotations omitted).

---

[4] The documents contain some general, publicly-available information about servicing and repayment options, such as the fact that servicers process payments and that IDR plans allow reduced payments.

5

Because such selections, summaries, and analyses of factual material reflect the unpublished personal views of government personnel, they are irrelevant under *Farley*, *International Paper*, and other cases cited above. In these cases, the court held that the government's internal deliberative documents could be withheld in their entirety without requiring production of factual materials contain within them.[5] Thus, Defendants cannot demonstrate the relevance of such materials. For example, while Defendants complain that the Bureau is withholding facts about Pioneer's conduct in connection with the Bureau's supervisory examination of Pioneer (Doc. 139-1, at 1), all facts about Pioneer's conduct obtained in that exam were provided by Pioneer. The Bureau's internal selections, summaries, and analyses of those facts in connection with drafting the examination report are irrelevant.

Defendants ignore the extensive body of case law developed over decades and across multiple jurisdictions regarding the legal irrelevance of internal government deliberations.

---

[5] Courts have required production of "mere factual inventory," chronological lists, segregable background facts, and similar material that are not "assembled through an exercise of judgment." *Gosen v. U.S. Citizenship & Immigration Servs.*, 118 F. Supp. 3d 232, 243 (D.D.C. 2015) (citation omitted); *see also Public Emps. for Envtl. Responsibility v. EPA*, 926 F. Supp. 2d 48, 57 (D.D.C. 2013). Despite the irrelevance of the requested documents, the Bureau produced segregable factual material in otherwise deliberative documents. *See, e.g.,* A1-31; A32-37. ("A__" refers to a page in the appendix being filed with this brief.)

## II.   WITH RESPECT TO MOST OF THE DISPUTED CATEGORIES, THE DOCUMENTS ARE IRRELEVANT.

Common characteristics across the thirty-five Disputed Categories allow them to be grouped into four buckets. As described below, because the documents in the Disputed Categories in Buckets 1-3 are legally irrelevant, the Bureau's assertion of the deliberative process privilege cannot be overcome.

### A.   Bucket 1: Disputed Categories 27-29, 37, 47

The categories in Bucket 1 fall within section 2(b) of the Court's May 4 Order, in which the Court ruled that, other than non-privileged communications with ED, the Bureau need not produce "predecisional communications related to the fourteen publicly issued rules, regulations, and guidance that Defendants identified or any other predecisional communications related to proposed rules, regulations, and guidance that were not ultimately issued." The Court further held: "Even if there were policy debates in which agency staff took positions favorable to Defendants, however, these statements would have no legal significance because they would not be official agency positions . . . . [B]ecause these types of communications have no legal significance, they are simply not relevant to Defendants' defenses." May 4, 2018 Mem. Op. at 10 (Doc. 88).

The Disputed Categories within Bucket 1 fall squarely within this ruling. First, none include communications with ED.[6] Second, except for Category 37, each relates to one of the documents Defendants identified in a previous submission to the Court (*see* Doc. 72, at 4):

| Category Number | Published Guidance Document |
| --- | --- |
| 27 and 47 | Report titled "Student Loan Servicing: Analysis of Public Input and Recommendations for Reform" |
| 28 | Payback Playbook |
| 29 | Report titled "2014 Annual Report of the Student Loan Ombudsman" |

Category 37 consists of documents relating to the development of public guidance regarding student loan credit reporting that was never issued. Category 37 falls squarely within the May 4 Order's inclusion of "any other predecisional communications related to proposed rules, regulations, and guidance that were not ultimately issued." Doc. 88, at 11.

The May 4 Order is dispositive as to Bucket 1.

**B.     Bucket 2: Disputed Categories 39, 48, 49**

The categories in Bucket 2 both: (a) do not include communications with ED and (b) relate to published rules, regulations, or guidance other than the fourteen

---

[6] Every category that includes communications with ED so states in the descriptions provided by the Bureau. Using those category descriptions, Defendants identified the categories that include communications with ED. No other Disputed Category includes communications with ED.

publicly issued rules, regulations, and guidance that are the subject of section 2(b) of the Court's May 4 Order (Doc. 89). Like Bucket 1, the three Disputed Categories in Bucket 2 only contain internal deliberations about public guidance documents:

| Category Number | Published Guidance Document |
|---|---|
| 39 | Report titled "CFPB data point: Student loan repayment"[7] |
| 48 | Report titled "2016 Annual Report of the Student Loan Ombudsman" |
| 49 | Report titled "CFPB Snapshot of older consumers and student loan debt" |

The only difference between Buckets 1 and 2 is that Defendants did not previously argue that the internal deliberations about the reports in Bucket 2 were relevant. In connection with the disputes resolved in the May 4 Order, Defendants advised the Court that they had narrowed the set of purportedly relevant rules, regulations, and guidance documents to the fourteen addressed in that Order. *See* Doc. 72, at 3-4. The public reports at issue in Bucket 2 were not included.[8]

---

[7] The description in the privilege log for Category 39 indicates that the sole document within that category contributed to the "drafting of a report published by the Bureau." The declaration accompanying the log identifies the report. *See* July 2, 2018 Declaration of Christopher D'Angelo (Doc. 110-1), at ¶ 189 n.7.

[8] Contrary to Defendants' assertion, the Bureau has not conceded the relevance of documents on its privilege log. First, the Bureau logged documents that were either (a) *responsive* to a document request or (b) a *non-responsive* family member of a responsive document. Second, Defendants conflate

Having narrowed the set of purportedly relevant rules, regulations, and guidance documents to the fourteen, Defendants cannot now expand it. In any event, the documents in the Disputed Categories in Bucket 2 are not relevant for the same reasons as Bucket 1.

## C.    Bucket 3: Disputed Categories 1-2, 11, 22, 30, 36, 38, 40-46, 50

The categories in Bucket 3 both: (a) do not include communications with ED and (b) are not directly connected to any specific rule, regulation, or public guidance (which are the subject of Buckets 1 and 2). The documents in Bucket 3 concern internal decision-making about, among other things, setting Bureau strategies and policies for various markets and resource-allocation issues that were not directly connected to any particular rule, regulation, or public guidance.

As an initial matter, these types of documents are at the core of the deliberative process privilege. Discussions about "policy matters are quintessentially deliberative." *ICM Registry, LLC v. Dept. of Commerce*, 538 F. Supp. 2d 130, 135 (D.D.C. 2008); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (privilege applies to "process by which governmental decisions and policies are formulated") (quotation omitted); *Color of Change v.*

---

*responsiveness* with *relevance*. As the Bureau stated in its written responses to Defendants' document requests, by producing or withholding *responsive* documents, the Bureau "does not waive, and hereby expressly reserves, its right to assert" that those documents are *not relevant* to any claim or defense. Defendants included a similar reservation in their responses to the Bureau's discovery requests.

*Dept. of Homeland Security*, 325 F. Supp. 3d 447, 453 (S.D.N.Y. 2018) (documents that "inform policy decisions . . . and resource planning and allocation" are deliberative); *National Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1121 (9th Cir. 1988) (documents that "identify and assign priority to the issues" and reflect that the government "believes that some area of concern creates a problem worthy of some sort of regulation itself reflects a policy judgment").

While the Court's May 4 Order addressed Defendants' request for documents relating to the fourteen rules, regulations, and guidance documents, the Court's holding of legal irrelevance appears to be equally applicable to internal policy and strategy debates that are not directly connected to any particular rule, regulation, or public guidance. Consistent with *Farley* and *International Paper*, that holding rested on the fact that internal Bureau "policy debates" are not "official agency positions" and should not "possess de-facto official status." May 4 Order, at 10. That is true even if the unpublished policy debates do not lead to the issuance of any official agency position. Indeed, the Court's ruling applied to the "issuance or non-issuance of . . . policies." *Id.* And just as with Buckets 1 and 2, Defendants had no knowledge of the internal deliberations reflected in the documents in Bucket 3. *See Elsass*, 2012 WL 353739, at *1 ("Actions or positions of which Defendants had no knowledge are simply irrelevant"). There is no basis

11

to treat the Disputed Categories in Bucket 3 any differently from Buckets 1 and 2, as those documents reflect only the unpublished personal views of staff. *See Farley*, 11 F.3d at 1389-90 (unofficial, inter-agency documents not relevant).

## III.   WITH RESPECT TO THE REMAINING CATEGORIES OF DOCUMENTS, ALL OF WHICH INCLUDE THE BUREAU'S COMMUNICATIONS WITH ED, DEFENDANTS CANNOT SHOW A COMPELLING OR PARTICULARIZED NEED FOR THE DOCUMENTS.

Bucket 4 contains Disputed Categories 31, 33, 35, 71-75, 79-81, 85, all of which include privileged communications with ED.[9] For each of these Disputed Categories, Defendants offer the same relevance theories: (a) documents "would be relevant to Navient's defense that it conformed its conduct to the expectations of ED"; (b) communications that "relate to Defendants" are relevant; and (c) communications that relate "to the issues in this lawsuit" are relevant. But even if such documents were relevant, Defendants cannot show a substantial, compelling, and particularized need for them.

*First,* Defendants have not explained how any defense requires information about whether Defendants conformed their conduct to the expectations of ED. None of their sixteen stated affirmative defenses reference conformity to ED's

---

[9] Pursuant to the Court's May 4 Order, the Bureau previously produced non-privileged communications that it had with ED that fell within the subject matter of Defendants' discovery requests.

expectations or otherwise require such proof. *See* Answer (Doc. 61).[10] But even if

conformity with ED's expectations were relevant, Defendants cannot demonstrate

a particularized need for the Bureau's communications with ED because there are

other sources of evidence regarding ED's expectations. *See Ford Motor Co. v.*

*United States*, 94 Fed. Cl. 211, 220 (2010) (documents not needed because the

issue "can be resolved without resort to the Government's internal deliberations");

*General Elec. Co. v. Johnson*, 2007 WL 433095, at *16 (D.D.C. Feb. 5, 2007)

(deliberative documents unnecessary to resolve issue due to availability of other

evidence).

Defendants have their written communications with ED, and their

employees have knowledge of any oral communications with ED in which such

expectations were expressed. Defendants also subpoenaed documents from ED.

And Defendants took three days of Rule 30(b)(6) testimony from ED on topics that

were expansive. *See* A38-51. Despite arguing now that they need the personal

---

[10] To the extent Defendants are alluding to their third defense, which claims
that the relief sought in this case would require modification of their contract with
ED, "expectations" are irrelevant to the contractual analysis. Defendants have
repeatedly stated that their contracts with ED "speak for themselves." *See* Answer
¶¶ 3, 22, 26-33 (Doc. 61). Based on this view, there can be no exception to the ban
on parole evidence. *See, e.g.*, *Amgen v. Conn. Ret. Plans & Trust Funds*, 568 U.S.
455, 470 n.6 (2013) ("Factual assertions in pleadings . . . are considered judicial
admissions conclusively binding on the party who made them.") (quotation
omitted); *Warnick v. Home Depot U.S.A.*, Inc., 516 F. Supp. 2d 459, 478 (E.D. Pa.
2007) ("Consideration of terms outside the [contract] is barred by the parole
evidence rule" because "the contract speaks for itself").

views of ED staff contained within Bureau communications with ED to show that

Navient "conformed its conduct to the expectations of ED," in June, Defendants

chose not to depose ED on a topic that would have covered that subject and for

which ED had prepared a witness: ED's "reviews, assessments, or knowledge of

Servicers' call center practices." A50.

*Second*, the theory that mere references to Defendants should be sufficient to

overcome the privilege is incorrect. Indeed, while the Bureau is mindful that the

Court has ordered the production of non-privileged documents mentioning

Defendants' names (Doc. 140, at 5-7), the special master's analysis to determine

whether the deliberative process privilege should be overcome should not turn on

whether the document merely mentions a defendant. Indeed, in contexts less

weighty than overcoming privilege determinations, courts have been reluctant to

find that merely mentioning the name of a party is sufficient to establish the

relevance of a document. *See, e.g.*, *Averett v. Honda of America Manufacturing,*

*Inc.*, 2009 WL 799638, at *1 (S.D. Ohio Mar. 24, 2009) (request for "*all*

*documents* that may mention plaintiff" was "unlikely to uncover additional

relevant information"); *Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 60

(D.N.J. 1985) (request for all documents referring to plaintiff lacked reasonable

particularity); *Patroski v. Ridge*, 2011 WL 5977582, at *2 (W.D. Pa. Nov. 29,

2011) (same); *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir. 2008) (same).[11]

*Third*, Defendants argue that internal deliberations are relevant if they relate to the issues in this case. Such circular logic does not address the Court's request for an explanation of the relevance of each category. During the April 2018 hearing, the Court and the Bureau had an extended discussion about the Bureau's document requests and what information Defendants were withholding on relevance grounds. The Bureau was put to the task of explaining why each category of documents it requested was relevant, despite not knowing anything about the withheld information. 4/17/18 Hearing Tr. at 125:20-140:02.

Defendants have not endeavored to make a similar showing here, even though the category descriptions in Bucket 4 routinely identify specific, public documents that Defendants, on multiple occasions, previously advised the Court were "clearly relevant" to this case (Doc. 72, at 3), and "directly related to the practices at issue in this complaint" (1/18/18 Hearing Tr. at 7:16-18). If Defendants were able to make such statements before, they cannot now claim that they lack information to articulate why government deliberations about these same public documents are relevant to any defense.

---

[11] Defendants never served a document request seeking all documents that mention Navient or Pioneer or even a request for all communications between the Bureau and ED that merely reference a Defendant. The lack of such requests belies any claim of need.

*Finally*, Defendants' status as government contractors does not entitle them to more access to ED's communications than other litigants. For example, in *Jowett, Inc. v. Department of Navy*, "a government contractor [sought] disclosure by the Navy of certain audit reports" in connection with a contract dispute. 729 F. Supp. 871, 873 (D.D.C. 1989). The court refused to compel production of this information despite the entity's status as a government contractor, citing the deliberative process privilege. *Id.* at 876-77. If anything, a contracting agency should not face a heightened risk of disclosure. The law does "not distinguish between inter-agency and intra-agency memoranda," nor "requir[e] that the [inter-agency] advice be any more disclosable than similar advice received from within the agency." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 188 (1975).

## IV.   DEFENDANTS SHOULD BE REQUIRED TO ARTICULATE THE RELEVANCE OF THE DOCUMENTS THEY REQUESTED.

Defendants argue that the Bureau has not provided enough information on its privilege log to enable Defendants to make a sufficiently specific relevance argument for the Disputed Categories. The Bureau is aware of no authority for the proposition that a party responding to document requests must assist the requesting party in making relevance arguments. As is routine in litigation, Defendants are perfectly capable of crafting document requests that meet the "reasonable

particularity" requirement of Rule 34 and articulating why the requested documents are relevant, without help from their adversary.

Defendants' document requests were highly nonspecific and, in the aggregate, demanded that the Bureau search for, among other things, all documents that relate to any of the allegations in the Complaint. *See Lopez v. Chertoff*, 2009 WL 1575214, at *2 (E.D. Cal. June 2, 2009) ("Courts tend to find document requests seeking all documents related to a claim or defense as lacking particularity."); *Gondola v. USMD PPM, LLC*, 223 F. Supp. 3d 575, 586 (N.D. Tex. 2016) (sustaining objections to requests seeking "[a]ll documents which evidence, describe, concern, or otherwise relate to the allegations in your Complaint" and "[a]ll documents not previously produced that support, contradict, or otherwise relate in any way to any of the allegations you have made in this lawsuit" as overly broad). Despite the overbreadth of these requests, the Bureau – to be as cooperative as possible – agreed to search for the requested documents and produce them or place them on its privilege log. But a party's agreement to search for responsive documents in no way obligates the party to then undertake the entirely separate and additional task of providing a detailed description of information within privileged documents to help the opposing party make relevance arguments. And Defendants cite no authority for the proposition that they can serve such an extraordinarily overbroad set of document requests, then

blame the other side for their own inability to explain to the Court the relevance of the documents they requested. Indeed, it is the requesting party's burden to establish relevance. *See, e.g.*, *Wartluft v. Milton Hershey Sch. & Sch. Tr.*, 2018 WL 3995697, at *3 (M.D. Pa. Aug. 21, 2018). There is no basis for such a shifting of the burden. Nor have Defendants cited any authority to support the notion that a party can demand that information going to the *relevance* of documents should be provided through a privilege log, whose sole purpose is to provide information sufficient to substantiate a party's *privilege* claims. (Defendants certainly did not describe the relevance of the withheld documents on their privilege log.)

The appropriate course here is for the master to make independent determinations – based on the Answer, Defendants' requests for production, and other pleadings – as to whether the documents are indeed relevant to this case, in addition to weighing the other factors necessary to overcome the deliberative process privilege.

## V. DEFENDANTS' COUNSEL SHOULD NOT BE ALLOWED TO PRE-SCREEN DOCUMENTS SUBJECT TO A PRIVILEGE CLAIM BEFORE THE *IN CAMERA* REVIEW HAS BEEN CONDUCTED.

Defendants suggest that, if a special master is appointed, the number of documents to be reviewed by the master can be reduced by allowing Defendants' attorneys to do a pre-screening of the documents on an "Attorneys' Eyes Only" basis. This suggestion is highly problematic.

18

Defendants misapprehend the entire purpose of an *in camera* review. *In camera* review is intended to prevent disclosure to an opposing party so that the opposing party does not see information that is subject to a potential claim of privilege. Thus, an *in camera* inspection "cannot begin by revealing that material to the defendant" before it is revealed to the court. *Contreras v. Artus*, 778 F.3d 97, 114 (2d Cir. 2015). "Rather, the point of the court's *in camera* review is to ensure the disclosure of [improperly withheld] evidence while preserv[ing] the confidentiality of those documents that the court determines need not be disclosed." *Id.* (quotations omitted). Providing the documents to the party seeking them in advance of the court's review "might very well defeat the purpose of an *in camera* inspection." *United States v. Nunez*, 2016 WL 3658980, at *3 (E.D. La. July 7, 2016).

Defendants' suggestion here is no different than saying that when there is a claim of work-product or attorney client privilege, the opposing party should be able to view the documents to determine if the claim has been validly asserted. Once that occurs, however, the very harm that *in camera* inspection is designed to prevent – disclosure of potentially privileged materials to the opposing party – has already occurred. Indeed, the two cases that Defendants cite allowed an "Attorneys' Eyes Only" designation *after* the court had already conducted an *in camera* review and concluded that the documents at issue were not privileged. The

"Attorneys' Eyes Only" designation was purely for governing how the documents – *already determined to not be privileged* – would be treated when used on a going-forward basis.

There are sound policy reasons for not allowing a pre-screening by Defendants' counsel before the *in camera* review. The rationale behind the deliberative process privilege is to safeguard "the frank exchange of ideas and opinions" in order "to prevent injury to the quality of agency decisions" – a goal that would be thwarted with blanket disclosure to an opposing party before an *in camera* inspection has occurred. *See Redland Soccer Club, Inc.*, 55 F.3d at 854 (quotations omitted). In addition, in this matter, some documents at issue cover both student loan servicing, as well as topics unrelated to student loan servicing (such as payday loans), or cover investigations of entities that have no connection to this action. It is entirely conceivable that some of the withheld documents could relate to other clients that Defendants' counsel currently represent or may represent in the future.

Accordingly, Defendants' counsel should not be allowed to pre-screen the disputed documents. Rather, if the Court believes that the volume of documents to be reviewed by a master is too large, sampling should be used. Unlike Defendants' suggested approach, courts have repeatedly used sampling to conduct *in camera* reviews to assess the validity of privilege claims. *See, e.g.*, *Meeropol v. Meese*, 790

F.2d 942, 958 (D.C. Cir. 1986) (noting that a district court may engage in sampling

to facilitate *in camera* review of voluminous materials withheld on basis of

deliberative process privilege); *In re Wilmington Tr. Sec. Litig.*, 2017 WL

2467059, at *2 (D. Del. June 7, 2017) (using sampling for *in camera* review); *In re*

*Asbestos Prod. Liab. Litig.*, 2011 WL 6181334, at *7 (E.D. Pa. Dec. 13, 2011)

(same).

Dated: December 24, 2018          Respectfully submitted,

                                  Kristen Donoghue
                                  *Enforcement Director*

                                  David Rubenstein
                                  *Deputy Enforcement Director*

                                  Thomas Kim
                                  *Assistant Deputy Enforcement Director*

                                  ___/s/ Nicholas Jabbour_____
                                  Nicholas Jabbour, DC 500626
                                  (Nicholas.Jabbour@cfpb.gov; 202-435-7508)
                                  Ebony Sunala Johnson, VA 76890
                                  (Ebony.Johnson@cfpb.gov; 202-435-7245)
                                  Nicholas Lee, DC 1004186
                                  (Nicholas.Lee@cfpb.gov; 202-435-7059)
                                  Manuel Arreaza, DC 1015283
                                  (Manuel.Arreaza@cfpb.gov; 202-435-7850)
                                  Andrea Matthews, MA 694538
                                  (Andrea.Matthews@cfpb.gov; 202-435-7591)
                                  David Dudley, DC 474120
                                  (David.Dudley@cfpb.gov; 202-435-9284)
                                  *Enforcement Attorneys*

                                  1700 G Street NW
                                  Washington, DC 20552
                                  Fax: 202-435-9346

                                  *Attorneys for Plaintiff*

## **<u>CERTIFICATE OF WORD COUNT</u>**

Pursuant to Local Rule 7.8(b)(2), I hereby certify that the foregoing brief in

opposition contains 4826 words.


   /s/ Nicholas Jabbour
Nicholas Jabbour, DC 500626
Nicholas.Jabbour@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-7508
Fax: 202-435-9346

*Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

I certify that on December 24, 2018, I filed the foregoing document with the

Court's ECF system, which will send notification of such filing to counsel for

Defendants.

/s/ Nicholas Jabbour
Nicholas Jabbour, DC 500626
Nicholas.Jabbour@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-7508
Fax: 202-435-9346

*Attorney for Plaintiff*