

1700 G Street NW,
Washington, DC 20552

December 27, 2018

**Filed Via ECF**

The Honorable Robert D. Mariani
U.S. District Court, Middle District of Pennsylvania
William J. Nealon Federal Bldg. & U.S. Courthouse
235 N. Washington Avenue
Scranton, PA 18503

      Re:    *CFPB v. Navient Corp., et al.*, Case No. 3:17-CV-00101-RDM

Dear Judge Mariani:

    I write on behalf of the Bureau regarding Defendants' refusal to provide an adequate privilege log for tens of thousands of documents. Despite multiple conferrals concerning the problems with Defendants' log, myriad deficiencies remain.[1]

    *First,* Defendants have failed to provide complete sender and recipient information for documents over which they assert privilege. Specifically, they refuse to identify anyone other than the sender and recipient(s) on the most recent email in withheld email chains.[2] This deprives the Bureau of critical information, such as whether an earlier-in-time disclosure to a third party has destroyed the alleged privilege. *See In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (a required element of the attorney-client privilege is that communication must be between the client, the attorney, and any agents who facilitate the representation). For any document that includes more than one distinct legal entity (*i.e.*, it includes third parties or multiple affiliates such as Navient Solutions and Pioneer), Defendants should be required to disclose the senders and recipients of all emails in those email chains, as well as the job titles of any individuals employed by any Defendant or affiliate of Defendants. *See Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 237 (N.D. Cal. 2015) ("a privilege log must identify . . . all persons or entities shown on the document to have received or sent the document"); *Freedman & Gersten, LLP v. Bank of Am., N.A.*, 2010 WL 5139874, at *7 (D.N.J. Dec. 8, 2010) (requiring names and job titles).[3]

---

    [1] This letter does not include issues with Defendants' privilege log about which the parties continue to confer.

    [2] *See, e.g.,* A10-12, which contains sample entries from Defendants' October 9, 2018 log in which senders and recipients for only a forwarded or reply email, but not the emails preceding the forward or the reply, are disclosed. ("A__" refers to a page of the appendix filed with this letter.)

    [3] In refusing to provide sender and recipient information for earlier emails, which Defendants claim cannot be extracted automatically using metadata, Defendants rely on a provision of the discovery protocol stating that, "[i]f using a traditional privilege log," sender and recipient information "may be extracted in an automated fashion via available metadata." Doc. 66-2, ¶ 7. That provision does not excuse Defendants' withholding of the information, as it explicitly requires the parties to provide sender and recipient information for each "portion of a document withheld" (*i.e.*, earlier emails in a chain). *Id.* In addition, the protocol merely *permits* use of "available metadata" to provide such information; it does not say that "available metadata" is the exclusive means to provide such information, nor does it allow the wholesale withholding of the information.

*Second,* Defendants asserted attorney-client privilege over 24,895 documents, including communications with third parties, but have not provided information sufficient to determine whether the attorney-client privilege is applicable to whichever of those documents include third parties.[4] Defendants have "agree[d] that documents shared with third parties are generally not protected." A2; *see also Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1427 (3d Cir. 1991) ("a voluntary disclosure to a third party waives the attorney-client privilege") (footnote omitted); *Teleglobe*, 493 F.3d at 361 ("Disclosing a communication to a third party unquestionably waives the privilege."). That agreement, however, cannot be squared with the fact that Defendants have claimed the attorney-client privilege over communications with third parties, while simultaneously refusing to provide information necessary to determine the validity of the privilege claims, and insisting in conclusory fashion that "[n]othing further is required." A2. Defendants' unwillingness to provide information about which documents it exchanged with third parties and for what purpose makes it impossible for the Bureau to assess whether there is any basis for Defendants to be claiming an exception to the normal rule that the attorney-client privilege is waived when a third party is involved in the communication. *See, e.g.*, *Westinghouse*, 951 F.2d at 1424; *Teleglobe*, 493 F.3d at 361. Defendants should be required to establish each element of the attorney-client privilege for all documents involving third parties that are withheld on that privilege ground, including why the privilege survives the disclosure to a third party.

*Third*, Defendants claimed work product protection over 14,518 communications without providing information sufficient to determine "whether in light of the nature of the document and *the factual situation in the particular case*, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Martin v. Bally's Park Place Hotel & Casino,* 983 F.2d 1252, 1260 (3d Cir. 1993) (quotation omitted, emphasis added). Defendants' log asserts the privilege as follows:

> **Communications and documents prepared by or for Defendants related to ongoing or anticipated litigation.** Communications among employees, in-house counsel, outside counsel, and/or non-adversarial third parties that seek, provide, discuss, or convey legal advice and/or would not have been created but for pending or anticipated litigation; and collections of materials prepared at the request of in-house counsel, the selection of which reveals legal strategy in response to pending or anticipated litigation. These collections of documents were compiled in anticipation of litigation between June 19, 2009 and January 18, 2017.

A6. While Defendants provided a supplemental spreadsheet identifying certain metadata for the withheld documents, in most instances, that spreadsheet says nothing about the factual situation of

---

[4] Defendants' category descriptions for the documents withheld on the basis of the attorney-client privilege omit the basic fact that some of the documents include third parties. *See* A6-7. Compounding the problem, as noted above, Defendants have withheld complete sender and recipient information regarding many documents on their privilege log. Thus, it is impossible for the Bureau to identify comprehensively which of the 24,895 documents include third parties. Notwithstanding these issues, where sender and recipient information is available, some of the entries do, in fact, include third parties. By way of example, the Bureau has included sample entries in which the attorney-client privilege is claimed over communications with ED, without enough information to assess why such a claim of attorney-client privilege can be sustained. *See* A16.

2

the particular litigation for which each document was prepared.[5] *See, e.g.*, *Solis v. Food Emp'r Labor Relations Ass'n*, 644 F.3d 221, 233 (4th Cir. 2011) (identity of specific litigation required); *In re Veiga*, 746 F.Supp.2d 27, 41 (D.D.C. 2010) (same). Without this, it is impossible to assess whether the communications related to anticipated or actual litigation or were merely "materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other non-litigation purposes." Fed. R. Civ. P. 26(b)(3) advisory committee note (1970); *Martin*, 983 F.2d at 1260. Defendants should be required to describe for each document or category of documents the litigation or anticipated litigation involved.

*Fourth,* Defendants' privilege log does not provide information to assess whether communications between Navient Corporation and its subsidiaries or between various Navient affiliates (*e.g.*, Navient Solutions, Pioneer, and General Revenue Corp.)—all separate legal entities—are protected.[6] Navient Corporation has structured its operations in a manner that centralizes in-house counsel within Navient Solutions, and those Navient Solutions attorneys provides counsel to other Navient Corporation subsidiaries. A2. In the Third Circuit, communications shared among corporate family members are not automatically entitled to protection. *See Teleglobe*, 493 F.3d at 371. Rather, there must be: (a) a common interest, or (b) joint representation. *Id.* at 359. Defendants do not satisfy either test.

Common interest privilege "only applies when clients are represented by separate counsel. Thus, it is largely inapplicable to disputes . . . that revolve around corporate family members' use of common attorneys (namely, centralized in-house counsel)." *Id.* at 365. Here, Defendants' counsel's admission that in-house counsel is centralized in Navient Solutions (*see* A2) is irreconcilable with their assertion of common interest privilege. The Director of Pioneer confirmed that Navient Solutions provides legal counsel regarding Pioneer's policies and procedures relating to collecting defaulted student loans. A46-47. And the lists of in-house counsel provided by Defendants also show that Pioneer does not employ in-house counsel. A22-42. Thus, Defendants cannot demonstrate that the common interest privilege applies to their inter-subsidiary communications.

To be sure, joint representation can protect communications among corporate family members involving a shared attorney, but the co-clients' "legal interests must be identical (or nearly so)." *Teleglobe*, 493 F.3d at 366; *see also Graco, Inc. v. PMC Glob., Inc.*, 2011 WL 666048, at *21 (D.N.J. Feb. 14, 2011). Defendants have failed to provide any information to address this test. For each withheld document or communication exchanged between Navient Corporation and its subsidiaries, or between its subsidiaries, Defendants should be required to provide information showing how those entities had shared "legal interests" that were "identical (or nearly so)."

The Bureau respectfully requests an order directing Defendants to produce in full all affected documents or to supplement their privilege log with the missing information such that the Bureau and the Court can determine whether the asserted privileges apply. The Bureau is amenable to referring the foregoing issues to a special master.

Respectfully submitted,
/s/ Nicholas Jabbour

---

[5] *See, e.g.,* A14, which contains sample entries from Defendants' October 9, 2018 log that do not indicate the specific or anticipated litigation for which the document was prepared.

[6] *See, e.g.,* A18-20, which contains sample entries from Defendants' October 9, 2018 log showing communications among subsidiaries of Navient Corporation.