# WILMERHALE

January 7, 2019

**Jonathan E. Paikin**

+1 202 663 6703 (t)
+1 202 663 6363 (f)
jonathan.paikin@wilmerhale.com

**Via ECF**

The Honorable Robert D. Mariani
U.S. District Court, Middle District of Pennsylvania
William J. Nealon Federal Building & U.S. Courthouse
235 North Washington Avenue
Scranton, PA 18503

    Re:    *CFPB v. Navient Corp. et al.*, No. 3:CV-17-00101 (M.D. Pa.)

Dear Judge Mariani:

    Pursuant to the Court's January 2, 2019 Order, Defendants respectfully submit this response to the CFPB's letter, dated December 27, 2018. Before turning to the specific issues raised, there are four general points.

    *First*, Defendants produced the detailed log at issue on October 9, 2018. At no time during the 79 days between October 9 and December 27 did the CFPB raise a single complaint with the log. *See* Local Rule 26.3 (requiring parties to meet and confer). It should also be noted that the parties appeared for a hearing on December 10 to discuss outstanding discovery issues, and no mention was made by the CFPB of an issue with the October 9 log. It is telling that the CFPB first lodged any complaint with Defendants' detailed log *after* this Court agreed to appoint a Special Master to address the "sufficiency of the statements justifying the assertion of privilege in each of the 35 disputed categories on Plaintiff's privilege logs." Doc. 132.

    *Second*, as contemplated by the Discovery Order, Doc. 66-2, the parties agreed to produce categorical privilege logs. The purpose of the categorical log was to reduce the burden for the large-scale productions envisioned and because attorney-client privilege and work-product protections are often relatively straightforward. Under this approach, if a specific category of documents raises concerns, the parties confer and agree to produce a more detailed log for the limited set of documents at issue. Here, once Defendants produced the agreed-upon categorical log, the CFPB immediately demanded a more detailed and comprehensive log from Defendants. Yet the CFPB refused to produce anything other than a vague categorical log for their own documents, including the documents withheld on the basis of qualified governmental privileges.

    *Third*, the burden imposed by the CFPB's unreasonable insistence on a more detailed log has been substantial. As the Court knows, the volume of information produced by Defendants has exceeded 6 million pages. Only about three percent of the documents reviewed were withheld as privileged, but three percent of a massive production is a significant number. It has taken approximately 40,000 hours of attorney time to conduct a privilege review and prepare the detailed log that was produced.

WILMERHALE

January 7, 2019
Page 2

*Fourth*, as noted and unlike the CFPB, Defendants produced a detailed document-by-document log.  Defendants provided a) the privilege or protection claimed; b) the type of document; c) date and time; d) sender, addressees, and/or recipients; e) custodian; and f) Bates number range, if applicable.  As prescribed in the Discovery Order, Defendants extracted this information using available metadata.  *See* Doc. 66-2, ¶ 7.  Defendants also went beyond what was agreed and included for each document the results of search terms based on the names of privileged persons.  Defendants also included whether the withheld document was a parent email or attachment so that the CFPB could review the produced documents within a family for context.

With respect to the specific issues raised in the CFPB's letter, the CFPB has not identified which specific communications it is challenging.  When the CFPB raised questions with prior iterations of the log, Defendants attempted to resolve the CFPB's concerns by explaining their review process and reviewing the sample entries cited by the CFPB.  Defendants remain willing to address specific entries as they have done in the past whenever the CFPB raised questions.  For this reason, it was surprising that the CFPB filed their letter before even attempting a conferral, as it likely would have resolved many of the issues raised in their letter.

**Sender and recipient information**.  The CFPB's request for additional sender and recipient information is burdensome and entirely unnecessary.  For one, Defendants' review process and privilege log provided more than sufficient information for the CFPB to assess Defendants' privilege claims.  As provided in the Discovery Order, Doc. 66-2, ¶ 7, Defendants' process was to review for any third parties that would break privilege within email chains and to mark such documents for production with only the privileged portion redacted.  Defendants produced thousands of such redactions, and the CFPB has not raised any issues with those redactions.  Defendants also logged each privileged document that was reviewed, even if the document was embedded in another email chain, so that the CFPB can review responsive earlier- or later-in-time emails that appear on the log with the senders and recipients.  *See* Ex. 1 (Entries 275 and 276 show email from employee to in-house attorney and reply from in-house attorney to employee).  Moreover, Defendants specifically searched the documents for emails sent to external domains (*i.e.* @ed.gov), conducted an additional review of those documents for privilege-breaking communications, and produced any such communications.  In light of all of this, the CFPB's request would entail an unnecessary re-review of the documents that would yield duplicative or pointless information (e.g., the names of attorneys or employees on embedded emails in a "reply" chain who would not break the privilege).  Indeed, Defendants again reviewed the sample log entries cited by the CFPB, and there are no communications with third parties embedded in those email chains.[1]

---

[1] The CFPB is also, for the first time, asking Defendants to compile a list of job titles for everyone on the log. Defendants have already produced a list of in-house privileged persons, along with job titles, company, division, and

WILMERHALE

January 7, 2019
Page 3

**Communications with third parties**. The only communications with third parties that the CFPB specifically identifies are communications with the Department of Education ("ED"), covered by the category describing documents related to ongoing or anticipated litigation. Contrary to the CFPB's assertion, that category description specifically identifies "non-adversarial third parties" as potential senders or recipients. Doc. 146-1, A6. Navient is a contractor for ED, and it should not be surprising that there are times when their communications are covered by a common interest. *Id.* at A2. For example, the two entries identified by the CFPB involve 1) requests from ED "for Legal Records" for a pending litigation matter, and 2) "Litigation Hold Mandates" sent from ED to Title IV servicers. *Id.* at A16.

**Work product claims**. Once again, the CFPB has not identified the specific entries it is challenging, instead making a blanket assertion that Defendants' log does not include sufficient factual information for work product claims.[2] This assertion is inconsistent with the detail that does appear on the log. For example, in many instances the log entries identify the specific litigation, or the entries obviously relate to summaries of all litigation against the company. *See, e.g.*, Ex. 1 (Entry 141, "Smith Valentine Litigation Package"); *id.* (Entry 96, "Litigation Report" authored by in-house counsel). All the sample entries identified by the CFPB involve communications among in-house counsel and employees. Doc. 146-1, A14. The CFPB has provided no reason to support an assertion that such documents are not protected from disclosure.

**Privileged communications among affiliates**. As previously explained to the CFPB, Defendants have produced the business services agreements under which Navient Solutions has contracted to provide legal services to its affiliates. Defendants have taken the uncontroversial position that communications among affiliates with shared in-house counsel are protected from disclosure to a third party. The Third Circuit case cited by the CFPB itself states: "Recognizing that any other result would wreak havoc on corporate counsel offices, courts almost universally hold that intra-group information sharing does not implicate the disclosure rule. This result is unquestionably correct." *See In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 369 (3d Cir. 2007). There are limited exceptions not at issue here, such as disputes *among the affiliated entities*. *Id.* at 386-87 (limiting district court to ordering production under "the adverse-litigation exception to the co-client privilege"). Here, Defendants are withholding privileged documents from a federal agency pursuing an enforcement action against them. A Navient Solutions attorney appears on each communication identified by the CFPB, and Navient Solutions (formerly, Sallie Mae) provides legal services to its affiliates (here, Pioneer and non-party

---

job history. *See* Doc. 146, Ex. 7. And Defendants have provided titles for many of the other recipients through responses to document requests, interrogatories, or deposition questions. If the CFPB identifies a specific employee for whom it does not already have job title information, Defendants will provide that information.

[2] The CFPB refers to Defendants' privilege log as a "supplemental spreadsheet," and the accompanying letter as a "log." But Defendants produced their privilege log in spreadsheet form at the CFPB's request.

WILMERHALE

January 7, 2019
Page 4

General Revenue Corporation).  *See* Doc. 146-1, A18-20.  The CFPB is essentially asking Defendants to prove the absence of a conflict between affiliated entities as to those communications when there is no basis to assert one exists.

     The CFPB's request for the production of tens of thousands of privileged documents is unwarranted, and Defendants' log provides even more information than that contemplated by the Discovery Order.  We have addressed the "sample" entries above, and as Defendants have told the CFPB on multiple occasions, we remain willing to provide additional information for specific documents where the CFPB identifies particularized concerns.

Respectfully submitted,

Jonathan E. Paikin