## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Consumer Financial Protection Bureau, | ) | |
| | ) | |
| *Plaintiff*, | ) | Civil Action No. 3:CV-17-00101 |
| | ) | (Hon. Robert D. Mariani) |
| v. | ) | |
| | ) | |
| Navient Corporation, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

In accordance with Local Rule 56(a)(1) and in support of the Motion for Partial Summary Judgment, Defendant Navient Solutions, LLC ("Navient") submits the following statement of undisputed material facts.

### I.   FEDERAL REPAYMENT OPTIONS

1.    Two federal loan programs are relevant to this motion: the Direct Loan Program ("Direct Loans") and Family Education Loan Program ("FFELP Loans").[1]  Both programs are overseen by the Department of Education ("ED").[2]

---

[1] 20 U.S.C. § 1087a *et seq*. (Direct Loan Program); 20 U.S.C. § 1071 *et seq*. (FFELP Loan Program).  In 2010, Congress terminated lending under FFELP.  *See* Health Care and Education Reconciliation Act, P.L. 111–152, § 2201 *et seq*. (Mar. 30, 2010).

[2] *Id.*

2.      The Higher Education Act ("HEA") and ED regulations provide

several options for avoiding default, including forbearance, deferment, and

income-driven repayment ("IDR") plans.[3]

3.      Forbearance allows borrowers to temporarily stop making payments

or to cover past-due amounts.[4]  A borrower in forbearance can continue to make

regular payments; the forbearance means she will not be deemed delinquent if she

does not make payments.[5]

4.      Repayment plans, including IDR plans, allow borrowers to change

their monthly payment amount for a period of time (and in the case of IDR, based

on the borrower's income).[6]

5.      Deferment allows borrowers in specific situations, like unemployment

or economic hardship, to temporarily stop making payments.[7]

---

[3] *See* Higher Education Act, Pub. L. No. 89–329, 79 Stat. 1219, 421–469 (1965) (establishing federal student assistance programs); *infra* ¶¶ 3–21; Ex. 1 at 80:6–20 (one goal of program is to help borrowers avoid default), 44:9–13 (forbearance is "tool" to address delinquency and default), 29:9–11 (repayment plans also keep default rates down).

[4] *See* 34 C.F.R. §§ 682.211, 685.205 (2018).

[5] *See id.*; *see also* Ex. 39 at *5.

[6] *See* 34 C.F.R. §§ 682.215, 685.209, 685.221 (2018).

[7] *See* 34 C.F.R. §§ 682.210, 685.204 (2018).

6.      ED rules prevent a delinquent borrower from applying for IDR or deferment.  Unless the borrower can pay the past-due amount in full, the borrower must use a forbearance to cover the past-due amount.[8]

7.      Borrowers often request forbearance to allow time to complete the IDR paperwork, which generally requires income information in the form of tax returns or paystubs.[9]

8.      Some borrowers in IDR still cannot manage their payments, and request forbearance while in IDR.[10]

9.      Servicers cannot enroll borrowers in IDR over the phone under ED rules; borrowers must submit a written application and income information.[11]

10.     Under federal law, servicers are "encourage[d] . . . to grant forbearance for the benefit of a borrower . . . in order to prevent the borrower . . . from defaulting."[12]

---

[8] Ex. 1 at 80:6–20; Ex. 2 at 198:18–200:11; 34 C.F.R. §§ 682.211(f)(14), 685.205(b)(2) (2018).

[9] *See* 34 C.F.R. §§ 682.211(f)(11), 685.205(b)(9) (2018).  *See also* Ex. 2 at 203:6–205:21.

[10] *Infra* ¶¶ 100, 115–17.

[11] *See* 34 C.F.R. §§ 682.215(e)(1)(i)–(ii), 685.221(e)(1)(i)–(ii) (2018).  *See also* Ex. 1 at 89:16–22.

[12] 34 C.F.R. § 682.211(a)(1) (2018).

11.     ED formulas determine whether borrowers are eligible for IDR based on income and family size, along with federal poverty guidelines for the borrower's state.[13]

12.     ED expanded IDR options during the alleged time period.[14]

13.     Until July 2009, the only IDR plan available for Direct Loans was the Income-Contingent Repayment ("ICR") plan,[15] and the only IDR plan available for FFELP loans was the Income-Sensitive Repayment ("ISR") plan.[16]

14.     In July 2009, ED introduced the Income-Based Repayment ("IBR") plan for both FFELP and Direct Loans.[17]  The formula for determining eligibility and payment amounts under the IBR plan enabled borrowers with higher incomes than previously to qualify for the plan and offered lower monthly payment amounts than previous IDR plans.[18]

---

[13] *See, e.g.*, 34 C.F.R. §§ 682.215(b)(1), 685.221(b)(1) (2018).

[14] *See infra ¶¶* 13–18.  *See also* Ex. 2 at 108:4–9.

[15] *See* 34 C.F.R. § 685.209(b)(1)(ii) (2018).

[16] *See* 34 C.F.R. § 682.209(a)(6)(viii) (2018).

[17] *See* 73 Fed. Reg. 63232, 63248–59 (Oct. 23, 2008).

[18] *See* 34 C.F.R. §§ 682.215(b)(1), 685.221(b)(1) (2018).

15.     In November 2012, ED introduced the Pay As You Earn ("PAYE")

plan for borrowers with Direct Loans issued on or after Oct. 1, 2011.[19]  With the

PAYE plan, ED once again raised the income threshold for determining eligibility

and calculating the borrower's payment amount.[20]

16.     Also in November 2012, ED enacted regulations implementing

statutory changes to the IBR plan for borrowers with Direct Loans issued after July

1, 2014, including revised eligibility criteria similar to the formulas used under the

PAYE plan.[21]

17.     In December 2015, ED introduced for borrowers with Direct Loans

the Revised Pay As You Earn ("REPAYE"), which it intended to serve as a

"widely available income-contingent repayment plan."[22]  Unlike prior plans,

borrowers do not have to demonstrate financial hardship to qualify for REPAYE;

instead, ED rules provide that all borrowers are eligible for the plan, with monthly

---

[19] 77 Fed. Reg. 66087, 66136–40 (Nov. 1, 2012); 34 C.F.R. § 685.209(a)(1)(iii) (2018).

[20] 34 C.F.R. § 685.209(a)(2)(i) (2018).

[21] 77 Fed. Reg. 66087, 66128–46 (Nov. 1, 2012); 34 C.F.R. § 685.221(a)(5) (2018).

[22] 80 Fed. Reg. 67204, 67204–5 (Oct. 30, 2015).

payment amounts set according to the borrower's income relative to the poverty guidelines for the borrower's family size and state.[23]

18.    The introduction of these new options meant that between 2009 and 2015, millions of additional borrowers became eligible for at least one IDR plan.[24]

19.    Certain types of loans (FFELP and Parent PLUS) remain ineligible for certain IDR plans.  FFELP loans are not eligible for either the PAYE or REPAYE plan,[25] and Parent Plus Loans (federal loans issued to the parents of undergraduate students) are not eligible for any IDR plan.[26]

20.    ED rules allow borrowers to enroll in forbearance after agreeing either orally or in writing that they agree to pay the loan but are temporarily unable to make scheduled payments.[27]  Borrowers can also enroll in forbearance by submitting a request to the servicer over the Internet.[28]

---

[23] 34 C.F.R. § 685.209(c)(2) (2018).

[24] 77 Fed. Reg. 66087, 66089 (Nov. 1, 2012) (estimating 1.6 million borrowers for the PAYE plan and 1 million borrowers for the revised IBR plan); 80 Fed. Reg. 67205, 67227 (Oct. 30, 2015 (estimating two million borrowers for the REPAYE plan).

[25] *See* 34 C.F.R. § 682.209(a)(6)(iii) (2018).

[26] *See* 34 C.F.R. § 682.215(a)(2) (2018); 34 C.F.R. § 685.208(a)(1)–(2) (2018).

[27] *See* 34 C.F.R. § 682.211(a)–(c) (2018).  *See also* Ex. 1 at 183:8–23.

[28] *See* Ex. 1 at 183:8–23.

21.     Interest also accrues while a borrower is enrolled in IDR (unless the borrower is entitled to interest subsidies).[29]  Unpaid interest will be capitalized under federal rules when a borrower is no longer enrolled in IDR.[30]

## II.   NAVIENT PROVIDED INFORMATION ABOUT IDR TO BORROWERS

22.     Navient provided the following information about IDR to borrowers during the alleged time period:

23.     For borrowers who started repaying their loans, Navient sent a letter offering options to "make student loan payments more manageable," including "[p]ayments tied to your income."[31]

24.     Borrowers who expressed difficulty making payments received a letter about the availability of IDR.  For example, Navient letters stated that a borrower could "[c]hange your [r]epayment [p]lan" to "Income-Related Plans," which offered "[m]onthly payments that can change annually as your income changes."[32]

25.     For borrowers who fell behind on their payments, Navient sent notices stating that "options may be available to help bring your account current,"

---

[29] *See* 34 C.F.R. §§ 682.215(b)(4), 685.221(b)(3) (2018).

[30] *See* 34 C.F.R. §§ 682.215(b)(5), 685.221(b)(4) (2018).

[31] *See, e.g.*, Ex. 15 at *1.

[32] *See, e.g.*, Ex. 21 at *3.

including "lower monthly payments provided through income-sensitive or income-based repayment plans."[33]

26.     Borrowers who expressed an interest in IDR received a letter stating how to apply.[34]

27.     Borrowers approaching the end of a deferment or forbearance received a notice asking whether the borrower had "looked into the government's income-driven repayment plans."  The notice stated: "These repayment options can allow you to make monthly payments based on your current income.  **You could even qualify for a payment of $0!**  It's worth checking out!"[35]

28.     In addition, several borrowers recalled visiting Navient's website, which has information about IDR displayed.  Immediately below language cited by the CFPB to prove "steering,"[36] the website stated that Navient offered "standard, graduated, income-sensitive, income-based, and extended repayment plans on federal student loans."[37]

---

[33] *See, e.g.*, Ex. 47 at *45.

[34] *See, e.g.*, *infra* ¶ 57; Ex. 15 at *2.

[35] *See, e.g.*, *infra* ¶ 143; Ex. 3; Ex. 39 at *1 (emphasis in original); Ex. 63 at -7956.

[36] Compl. ¶ 39.

[37] *See infra* ¶¶ 181–82; Ex. 54 at *12.

### III.   Borrowers Identified by the CFPB

29.   Navient served the following interrogatory: "Identify each Navient Borrower harmed by enrollment in a forbearance, as alleged in paragraph 146 of the Complaint, and describe the injury suffered by that Borrower."[38]

30.   The CFPB initially did not identify any borrowers.[39]

31.   The CFPB eventually identified thirty-two borrowers,[40] many of whom were found in a database of complaints borrowers had submitted to the CFPB through a portal on the CFPB's website.[41]

32.   After Navient deposed three borrowers who admitted to receiving IDR information, the CFPB withdrew fifteen borrowers from its list of potential witnesses.[42]   The CFPB has since removed three additional borrowers.[43]

---

[38] Ex. 5 (Interrogatory #7).

[39] Ex. 4 at 83:13–84:20 ("I can't name any individual borrowers . . . ."); Ex. 5 (Response to Interrogatory #7).

[40] Ex. 6 (Response to Interrogatory #7).

[41] *See, e.g.*, Ex. 15 at *5; Ex. 30 at *17.  Between July 21, 2011 and August 31, 2017, the CFPB handled more than fifty thousand complaints from student loan borrowers.  *See* Annual Report of the CFPB Student Loan Ombudsman (Oct. 2017), at 2, *available at* https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/cfpb_annual-report_student-loan-ombudsman_2017.

[42] *See* Ex. 7 (Response to Interrogatory #7); Ex. 8 (Response to Interrogatory #7).

[43] *See id.*

33.     On December 5, 2018, the CFPB added one additional borrower.[44]

34.     Navient has deposed the fourteen remaining borrowers identified prior to December 2018.[45]

35.     The CFPB did not interview any of the fourteen borrowers until after filing its Complaint.[46]

36.     Navient deposed the CFPB's principal investigator, Theresa Ridder, on November 6, 2018.  Ms. Ridder could not answer the question "What is a forbearance?"[47]  Nor could she identify the different IDR plans available under federal law, describe how to apply for IDR (including whether it is possible to apply for IDR over the phone), or explain the difference between subsidized and unsubsidized loans.[48]

37.     Navient searched its various call recording systems for calls between the fourteen borrowers and Navient representatives that appeared to discuss repayment options.  Navient produced to the CFPB all calls it was able to locate on its systems that related to repayment options for federal loans.  By September

---

[44] *See* Ex. 9 (Disclosure I(B)).

[45] *Infra* ¶¶ 38–228.

[46] *See* Ex. 7 (Response to Interrogatory #1).

[47] Ex. 10 at 39:3–6.

[48] *See id.* at 38:13–21, 40:21–41:24, 41:5–24.

2018, Navient also produced the borrowers' correspondence histories to the CFPB and offered to search for any recording the CFPB identified that had not been produced. On December 7, 2018, the previous deadline for fact discovery, the CFPB for the first time requested additional call recordings for particular borrowers. Navient will produce available call recordings to the extent they relate to repayment options.

### A. Borrowers Informed About IDR, But Ineligible

#### 1. CC

38. CC[49] was repeatedly informed by Navient about IDR but did not enroll and was too wealthy to qualify.[50]

39. In March 2016, a Navient phone representative asked CC about her family size and income, and CC responded that her income was $450,000 per year.[51]

40. When the representative told CC that this income was "just too high" for "the income-based" plan, CC responded that her husband did not have any income because of a recent health issue and that her income was "$4,000 per

---

[49] To preserve borrower privacy, the fourteen borrowers have been identified only by their initials, and all personal identifying information has been redacted from Defendants' exhibits, including audio files.

[50] *Infra* ¶¶ 39–54.

[51] Ex. 11 at 187:19–24; Ex. 12 at *26 (lines 13–18).

month."[52]  CC provided this information, which was not accurate, based on instructions from her husband to "lie and deceive [Navient]."[53]

41.     Based on this new information, the representative informed CC "If you apply for the income-based, ma'am, the payments are not going to be postponed but it's going to be lowered to $145 a month for one year."  CC responded "Oh, my God, thank you" and asked the representative to mail her an application for the income-based plan.[54]

42.     The representative sent an IDR application and processed a forbearance "to give [CC] time to apply" for the income-based repayment plan.[55]

43.     CC did not apply for the income-based plan at that time.[56]

44.     In October 2016, CC told a Navient representative that her monthly gross income was "about a thousand dollars."  The representative again told CC about "the Income-Based Repayment Plan," stating that CC was "qualified for a zero dollar monthly payment" and that "any remaining balance of [her] loans may be forgiven" after 25 years in the program.[57]

---

[52] Ex. 11 at 190:3–6; Ex. 12 at *26 (line 19) through *28 (line 20).

[53] Ex. 11 at 190:3–6.

[54] Ex. 12 at *32 (line 10) through *33 (line 16).

[55] Ex. 11 at 200:11–201:23; Ex. 12 at *35 (line 4) through *38 (line 21).

[56] Ex. 11 at 203:12–14.

[57] *Id.* at 234:13–236:14; Ex. 12 at *65 (line 8) through *66 (line 23).

45.     CC then inquired about "other options" that did not require filling out paperwork.[58]

46.     The representative stated that all options would require a written application and, at CC's request, granted a sixty-day forbearance while CC decided which option to pursue.[59]

47.     CC (who is an attorney) later applied for and received an unemployment deferment, despite being employed at the time and earning $120,000 annually.[60]  According to CC, she obtained this deferment because she was "buying time" and did not "really owe [Navient] any duty to be completely truthful."[61]

48.     During calls with Navient in 2016, CC also claimed her husband had died and that she needed a forbearance while she got her finances in order.[62]

---

[58] Ex. 11 at 234:13–236:14; Ex. 12 at *67 (line 8) through *70 (line 6).

[59] Ex. 12 at *70 (line 5) through *79 (line 23).

[60] Ex. 11 at 260:13–264:17; Ex. 12 at *90–93.

[61] Ex. 11 at 263:20–264:3.

[62] *Id.* at 213:10–214:10, 219:4–220:14; Ex. 12 at *47 (line 6) through *48 (line 4), *64 (lines 11–24).

49.     Records show that CC and her husband purchased a $1 million home outside Chicago in 2012.[63]  CC's husband is alive.[64]

50.     CC also received a forbearance in March 2010 to resolve a past delinquency and to allow time to enroll in an economic hardship deferment.[65]

51.     Prior to that forbearance, Navient had sent her information about IDR multiple times.[66]

52.     CC was required to select a repayment plan when she consolidated her FFELP loans in 2002, and she chose the standard payment plan, rather than the income-sensitive payment plan.[67]

53.     Letters Navient sent CC in April and June 2009 described the availability of "income-sensitive repayment plans that can provide you with lower monthly payments."[68]

54.     On March 7, 2010, Navient sent CC a notice that asked, "Need smaller payments?" and stated that "Income-Sensitive Repayment allows for payments based on a percentage of your income," and "Income-Based Repayment

---

[63] Ex. 11 at 26:4–28:4.

[64] *Id.* at 26:4–28:4; 213:10–217:6.

[65] Ex. 12 at *9, *86–*87; Ex. 13 at -7301 through -7302.

[66] *Infra* ¶¶ 53–54.

[67] Ex. 11 at 144:22–145:12, 150:9–23; Ex. 12 at *1.

[68] Ex. 12 at *6, 8.

determines your monthly payment amount by taking into account your income, family size, and total amount borrowed."[69]

### 2. NN

55.     Before his first payment was due, NN spoke to Navient representatives on the phone twice in August 2009.[70]

56.     On both occasions, the Navient representative checked NN's eligibility for IDR.[71]

57.     On August 12, 2009, Navient sent NN a letter stating, "Thank you for your interest in an Income-Based Repayment (IBR) plan" that included an application form and instructions for how to apply for the plan.[72]

58.      NN did not apply and instead requested forbearance when he subsequently fell behind on his payments.[73]

59.     In 2010, NN began working at a bank, where he now provides wealth management services.[74]

---

[69] *Id.* at *9.

[70] Ex. 14 at 67:25–69:23; Ex. 16 at -7333 through -7336.

[71] *Id.*

[72] Ex. 14 at 66:3–67:5; Ex. 15 at *2–4.

[73] Ex. 14 at 69:24– 72:7; Ex. 16 at -7333 through -7336, -7350.

[74] Ex. 14 at 25:6–26:21, 31:7–32:2.

60.    Since then, his FFELP loans were "not eligible for income-based repayment programs" because he was "a single, no-dependent [individual] that had little debt-to-income."[75]

61.    NN specifically remembered discussing IDR "in a telephone conversation" with Navient at some point in 2012,[76] but he "simply didn't qualify" because of his income.[77]

62.    NN does not remember what repayment options were discussed on calls with Navient representatives between 2009 and 2012,[78] but he does remember that on calls during that time, he was asked about "how much [he was] earning and [his] family size."[79]

63.    NN received information about IDR multiple times prior to 2012.  For example, in July 2009, Navient sent him a notice that described the availability of "several repayment options that help make student loan payments more manageable," including Income-Based Repayment, which offered payments based

––––––––––––––––––––

[75] *Id.* at 94:16–95:13.

[76] *Id.* at 79:11–80:15.

[77] *Id.* at 88:14–22.

[78] *Id.* at 76:3–17.

[79] *Id.* at 83:9–87:6.

on "your income, your family size and total outstanding balance of eligible loans."[80]

64.    NN admitted at his deposition that his "situation" was "outside the scope of the CFPB complaint," because his complaint was focused on the lack of repayment options available for his private loans.[81]

### 3.    AS

65.    AS testified that she knew about IDR options "throughout the life of" her FFELP loan because she "researched all the options that were available" and called Navient to discuss those options.[82]

66.    AS enrolled in forbearances because she "did not qualify" for IDR options.[83]

67.    At one point, AS used an online tool where "she input[] various information to determine if [she] qualified for an income-driven repayment plan" and confirmed that she was not eligible.[84]

---

[80] Ex. 14 at 59:4–18; Ex. 15 at *1; Ex. 16 at -7332 through -7333.

[81] Ex. 14 at 140:8–141:24.

[82] Ex. 17 at 97:4–98:10.

[83] *Id.* at 99:12–13, 125:22–128:10.

[84] *Id.* at 116:21–117:10.

68.    During her deposition, AS would not provide specific information about either her income or her husband's income during the alleged time period.[85]

69.    Navient sent AS information about IDR on multiple occasions.  For example, in July 2010, Navient sent AS a letter containing "a list of options for which you might qualify on your federal student loan(s)," including Income-Based Repayment, which provided "a reduction in your monthly payment . . . based on a federal formula that considers your income and family size."[86]

70.    Navient sent AS similar letters in August 2011 and June 2012.[87]

### 4.    *CP*

71.    CP was often delinquent on her payments.[88]  She often received forbearances to bring her account current.[89]

72.    Before and after receiving forbearances, CP received information about IDR on multiple occasions.[90]

---

[85] *Id.* at 62:22–63:5, 73:17–21, 75:21–78:19.

[86] Ex. 17 at 126:6–127:14; Ex. 18 at *1–3.

[87] Ex. 17 at 136:4–137:7, 144:14–145:10; Ex. 18 at *4–7.

[88] *See, e.g.*, Ex. 20 at *2, *4, *19, *26; Ex. 21 at *10, *12, *25.

[89] Ex. 22 at -7236 through -7237, -7240 through -7241, -7244 through -7245, -7256, -7260, -7266 through -7267.

[90] *E.g.*, Ex. 20 at *8–9, *12, *15–17, *19, *21–22, *25, *28, *35, *37; Ex. 21 at *1–2, *3, *4, *6, *7.

73.     For example, on November 27, 2009, she received a notice that she was past due and advising her that she "may be eligible for reduced payment options, such as interest-only payments, income-based repayment and income-sensitive repayment."[91]

74.     On October 20, 2010, Navient sent CP a notice asking "Want to lower your payments?" and explaining that "Sallie Mae offers . . . several repayment options that help make payments more manageable," including "Income-based repayment with payments that are tied to your income, family size, and total outstanding balance of eligible loans."[92]

75.     On December 10, 2010, Navient sent information about Income-Sensitive Repayment and Income-Based Repayment.[93]

76.     She received a similar letter at least six times.[94]

77.     CP confirmed at her deposition that such documents "inform[ed] [her] of a variety of repayment options," "[i]ncluding payments that are tied to your

---

[91] Ex. 20 at *12.

[92] *Id.* at *25.

[93] *Id.* at *28; Ex. 19 at 128:19–131:18.

[94] Ex. 20 at *28; Ex. 21 at *3, *22, *23, *27, *30.

income."[95]  CP also "recall[ed] inquiring about . . . payments that are tied to my income" sometime after 2011.[96]

78.     In November 2013, a Navient representative asked CP on the phone "[w]hat if we lower down your regular monthly payments to something you can afford on a monthly basis?"[97]

79.     CP stated that she did not want to pursue that option, and she declined to answer questions about her financial circumstances.[98]

80.     Although Navient sent CP another notice about IDR that same day,[99] she did not apply at that time.[100]

81.     CP later applied for IDR in 2015 but was denied because her consolidated Parent PLUS loan was ultimately ineligible.[101]

82.     CP re-applied and was again denied on April 13, 2015, this time because she did not meet the "federal definition of 'partial financial hardship.'"[102]

---

[95] Ex. 19 at 99:17–102:2, 113:14–115:17; Ex. 20 at *1, *7.

[96] Ex. 19 at 102:7–15.

[97] Ex. 19 at 191:14–193:5, 205:16–208:4; Ex. 21 at *19 (lines 1–3).

[98] Ex. 19 at 191:14–193:5, 205:16–208:4; Ex. 21 at *19 (lines 4–18).

[99] Ex. 19 at 209:17–210:19; Ex. 21 at *22.

[100]  Ex. 22 at -7284 through -7286.

[101] Ex. 21 at *29; Ex. 22 at -7295 through -7297.

[102] Ex. 21 at *32.

83.     CP submitted a sworn declaration to the CFPB stating that Sallie Mae only told her about forbearance and enrolled her loans in forbearance in January 2011.[103]

84.     CP testified that she was unsure whether she discussed applying for an unemployment deferment with Navient in January 2011.  CP in fact submitted an unemployment deferment application to Navient on January 5, 2011.[104]

85.     CP testified that she did not know the difference between an unemployment deferment and forbearance when she submitted her declaration.[105]

### B.     Borrowers Who Enrolled in IDR

#### 1.     FB

86.     Navient began servicing FB's loans in August 2011, when they were transferred from another servicer.[106]

87.     In August 2011, a Navient representative checked whether FB was eligible for IDR during a phone call.[107]

---

[103] Ex. 23 ¶ 5.

[104] Ex. 19 at 138:8–147:18; Ex. 20 at *33.

[105] Ex. 19 at 144:15–145:7, 146:9–19.

[106] Ex. 24 at 35:3–36:12; Ex. 25 at *1.

[107] Ex. 27 at -9386.

88.     Afterwards, Navient sent her information about "Income-Related Plans (Income-Based and Income Sensitive) – Monthly payments that can change annually as your income changes."[108]

89.     FB did not apply,[109] and instead chose to enroll in another forbearance in October 2011.[110]

90.     Before that forbearance period ended, in August 2012, FB called Navient.  During that phone call, a Navient representative checked whether FB was eligible for IDR.[111]

91.     Following that phone call, Navient sent FB a letter stating, "Thanks for your interest in an Income-Based Repayment (IBR) Plan," along with an application and instructions on how to apply.[112]  FB instead applied for an economic hardship deferment, which was denied because she did not meet the federal requirements.[113]

---

[108] Ex. 24 at 36:22–39:16; Ex. 25 at *3.

[109] Ex. 27 at -9386 through -9387.

[110] Ex. 25 at *5.

[111] Ex. 27 at -9390.

[112] Ex. 24 at 44:10–47:3; Ex. 25 at *9.

[113] Ex. 24 at 47:13–53:14; Ex. 25 at *17, *24.

92.     At that time, FB requested a forbearance online without speaking to Navient.[114]

93.     Between August 2011 and August 2013, Navient sent her information about IDR at least nine times.[115]

94.     FB admitted in her deposition that such letters "informed [her] about income-related repayment plans."[116]

95.     On March 29, 2013, FB discussed IDR on the phone with a Navient representative, who informed FB that her "remaining balance will be forgiven" after "25 years of being in an income-based repayment [plan]."[117]  The representative explained that FB could go to studentloans.gov to apply for the plan.[118]

96.     On June 14, 2013, and July 26, 2013, FB spoke to Navient representatives, who did not discuss IDR during the calls.  FB did not receive a forbearance on either call.[119]

---

[114] Ex. 25 at *26; Ex. 27 at -9391 through -9392.

[115] Ex. 25 at *3–4, *8, *16, *23, *25, *37–39.

[116] Ex. 24 at 41:16–20; Ex. 25 at *4.

[117] Ex. 24 at 61:6–25; Ex. 25 at *33 (lines 3–5).

[118] Ex. 25 at *34 (lines 16–17).

[119] Ex. 24 at 111:12–113:15, 114:8–115:22; Ex. 27 at -9393 through -9394.

97.    FB admitted in her deposition that she was "informed about income-based repayment options prior to . . . [the] two calls" that took place on June 14, 2013 and July 26, 2013.[120]

98.    A Navient representative again checked FB's eligibility for IDR during a phone call on August 20, 2013, and the same day Navient sent FB another IDR application.[121]

99.    In August 2013, FB applied for IDR, and she was approved in September 2013.[122]

100.    The same month that FB enrolled in IDR, FB told a Navient representative that Navient had "tried to do that IBR, in which the payment is still not low enough."[123]  FB requested forbearances while enrolled in IDR.[124]

### 2.    UE

101.    The only forbearances UE ever received from Navient were to provide her time to complete an IDR application.[125]

---

[120] Ex. 24 at 128:11–14.

[121] Ex. 25 at *40; Ex. 27 at -9395.

[122] Ex. 24 at 65:8–66:11, 69:9–70:12; Ex. 25 at *42, *47.

[123] Ex. 24 at 71:2–73:8; Ex. 26 at *3 (lines 23–24).

[124] Ex. 24 at 71:2–73:14; 79:17–81:25, 82:10–83:16, 86:2–93:22; Ex. 26 at *2 (line 16) through *3 (line 14), *9, *10, *17 (line 8) through *22 (line 2).

[125] *See infra* ¶¶ 111–113.

102.   Although UE received forbearances from her prior loan servicer, [126] UE regularly made payments for several years after Navient started servicing her loans in September 2011.[127]

103.   On October 23, 2013, a Navient representative told UE about "an income-based repayment plan where we can lower the monthly payment amount based [on] your income."[128]

104.   UE acknowledged in her deposition that by October 23, 2013, "[Navient] had informed [her] about income-based repayment plans."[129]

105.   UE asked the representative to "send [her] the paperwork."[130]  Navient mailed her an IDR application the same day.[131]

106.   UE did not return the application and continued to make regular payments on her student loans.[132]

---

[126] Ex. 28 at 41:5–9; Ex. 29 at *3.

[127] Ex. 28 at 48:5–9, 49:22–24; Ex. 29 at *4; Ex. 31 at -6613 through -6655.

[128] Ex. 29 at *12 (line 19) through *13 (line 4).

[129] Ex. 28 at 55:5–9.

[130] Ex. 29 at *14 (lines 15–18).

[131] *Id.* at *17–23; Ex. 28 at 55:14–56:3.

[132] Ex. 28 at 58:2–15.

107.   In 2015, UE engaged a third-party company to work with Navient to obtain a reduced payment plan.[133]

108.   On December 31, 2015, an individual working for that third party contacted Navient, claimed to be UE, and provided UE's personal information, including her birthdate.  On that call, the Navient representative described the IDR application process and processed a two-month forbearance to allow time to apply.[134]

109.   In early 2016, Navient received an IDR application for UE dated December 31, 2015, but the application was incomplete.[135]

110.   On January 20, 2016, Navient sent UE a letter stating that it could not process her IDR application because it did not include the required income documentation.[136]

111.   UE called Navient herself on April 15, 2016 and confirmed that she had previously applied for IDR "through a third-party company" that "took [her] money."[137]  On that call, the Navient representative explained that UE could apply

---

[133] *Id.* at 59:4–15.

[134] *Id.* at 58:16–63:24; Ex. 29 at *25 (line 24) through *29 (line 17).

[135] Ex. 28 at 64:15–67:13; Ex. 29 at *32–37.

[136] Ex. 28 at 71:3–72:7; Ex. 29 at *38.

[137] Ex. 28 at 72:25–74:6; Ex. 30 at *3 (line 22) through *4 (line 2).

for IDR directly at studentloans.gov.  The representative processed a two-month

forbearance to "give [UE] some time to get that information over to [Navient]."[138]

112.   UE applied for IDR and was approved on August 4, 2016.[139]

113.   Although UE had complained about forbearances she received from

Navient, she admitted in her deposition that she may have confused Navient with

her prior servicer.[140]

### 3.   VH

114.   VH and her husband enrolled in IDR in December 2012.[141]

115.   The couple continued to request forbearance while enrolled in IDR.[142]

116.   In April 2013, the couple requested to be removed from IDR, and then

requested a forbearance, but did not qualify.[143]

117.   The couple subsequently reenrolled in IDR but missed several

monthly payments.[144]

---

[138] Ex. 30 at *4 (line 11) through *5 (line 13).

[139] Ex. 28 at 81:6–8, 82:11–25; Ex. 30 at *15.

[140] Ex. 28 at 40:11–41:11, 84:8–88:21; Ex. 30 at *174.

[141] Ex. 32 at 118:6–24; Ex. 33 at *14–15.

[142] Ex. 32 at 119:1–120:6; Ex. 34 at -6100.

[143] Ex. 32 at 134:7–137:19; Ex. 33 at *16–17.

[144] Ex. 32 at 137:20–139:11, 141:18–145:21; Ex. 33 at *33.

118.    Prior to enrolling in IDR in December 2012, Navient had informed VH about IDR on multiple occasions.[145]

119.    From 2009 through 2011, Navient on at least four occasions sent VH information about Income-Based Repayment, under which she could potentially qualify for a reduction in her monthly payment based on "a federal formula that considers your income and your family size," including once on November 9, 2009.[146]

120.    VH confirmed at her deposition that such letters "inform[ed]" her and her husband about "repayment options based on income."[147]

121.    VH "did not remember" whether "Sallie Mae or Navient discussed income-driven repayment options" during phone calls between 2009 and 2011.[148] VH remembers calls during that period during which Navient representatives asked her "questions about household size and income . . . to determine what repayment options might work for [her]."[149]

---

[145] *See infra* ¶¶ 119–120.

[146] Ex. 32 at 85:24–89:2; Ex. 33 at *1, *4, *7, *10, *13.

[147] Ex. 32 at 93:19–94:18; Ex. 33 at *4.

[148] Ex. 32 at 22:5–15; *see also id.* at 18:24–19:13, 73:11–78:15, 84:19–85:23.

[149] *Id.* at 187:5–188:12.

### 4.    MP

122.   MP enrolled in IDR in October 2013, and apart from short gaps when information was required to verify his income, he has been enrolled in IDR ever since.[150]

123.   Prior to enrolling, Navient sent MP information about IDR on multiple occasions.[151]

124.   When he consolidated his FFELP loans in 2005, MP selected a standard repayment plan from a list of options that included income-sensitive repayment.[152]

125.   On October 18, 2010, after speaking to a Navient representative on the phone, Navient sent MP a letter stating, "Thank you for your interest in an Income-Sensitive Repayment (ISR) Plan," along with an application and instructions on how to apply.[153]

---

[150] Ex. 35 at 78:1–18; Ex. 37 at -8937 through -8990.

[151] *Infra ¶¶* 124–130.

[152] Ex. 35 at 29:8–31:12; Ex. 36 at *1–3.  MP brought documents to his deposition, many of which were marked as exhibits and therefore lack Bates numbers.  *See* Ex. 35 at 39:4–39:12.

[153] Ex. 35 at 47:20–49:25; Ex. 36 at *16–19.

126.   That day, Navient approved a forbearance to cover past-due amounts and provided two additional months of forbearance, which allowed MP time to apply for IDR.[154]

127.   MP did not apply for IDR at that time.[155]

128.   MP missed monthly payments from December 2010 to February 2011 and received a forbearance to cover the past-due amount and additional forbearance time.[156]

129.   In February 2011, MP also received a letter listing Income-Based Repayment and stating, "you may qualify for a reduction in your monthly payment under this plan . . . based on a federal formula that considers your income, state of residence and your family size."  From October 2010 to October 2013, MP received information about IDR at least six times.[157]

130.   MP acknowledged at his deposition that such letters "inform[ed] [him] of the existence of income-related repayment plans."[158]

131.   In 2011 or 2012, MP's wife also researched IDR.[159]

---

[154] Ex. 36 at *20.

[155] Ex. 35 at 49:23–50:4.

[156] Ex. 36 at *23, *37; Ex. 37 at -8928 through -8929.

[157] Ex. 35 at 61:16–63:9; Ex. 36 at *10, *34-35, *40, *42-43, *62.

[158] Ex. 35 at 64:20–65:10; Ex. 36 at *10, *34, *40.

[159] Ex. 35 at 93:14–99:10; Ex. 36 at *25, *41.

132.    On September 6, 2012, a Navient representative again checked MP's eligibility for IDR options while speaking with him on the phone.[160]

133.    MP did not apply for IDR at that time.[161]

134.    MP does not remember any specific calls he had with Navient between 2009 and 2012, or what options Navient representatives may have discussed on those calls.[162]

135.    MP recalls having conversations with Navient representatives between 2009 and 2012 in which he would "review with them what are the options and discuss each one," including whether he could "literally afford that monthly obligation" based on his other expenses.[163]

136.    Following these conversations, MP would decide that "deferment and forbearance" were the options he "could handle at that time."[164]

137.    On September 24, 2013, a Navient representative again checked MP's eligibility for IDR while speaking with him on the phone.[165]  Following this phone

---

[160] Ex. 37 at -8932.

[161] *Id.* at -8392 through -8933; Ex. 35 at 65:19–68:22.

[162] Ex. 35 at 33:25–34:12, 36:12–22, 39:1–3, 59:23–60:4, 65:19–21.

[163] *Id*. at 68:14–22, 71:17–24.

[164] *Id.* at 68:14–22.

[165] *Id.* at 72:9–73:5, 75:21–77:25; Ex. 37 at -8936.

call, Navient again sent MP a letter stating, "Thanks for your interest in an Income-Based Repayment (IBR) Plan" and instructions on how to apply.[166]

138.   In October 2013, MP applied for and was approved for an IDR plan.[167]

### 5.   JB

139.   JB enrolled in IDR in December 2016.[168]

140.   Four months prior, in August 2016, JB spoke to a Navient representative about obtaining additional deferment time.[169]

141.   JB did not have any additional deferment time available to him, and he enrolled in a forbearance.[170]

142.   Before and after the August 2016 phone call, JB received information about IDR on multiple occasions.[171]

143.   JB produced an email he received on June 8, 2016, which asked whether he had "looked into the government's income-driven repayment plans for federal loans."  In bold, purple text, the email said, "You could even qualify for a

---

[166] Ex. 35 at 75:19–76:19; Ex. 36 at *44.

[167] Ex. 35 at 78:1–18; Ex. 36 at *51; Ex. 37 at -8937.

[168] Ex. 38 at 214:17–215:14; Ex. 39 at *13.

[169] Ex. 42 at -6513.

[170] *Id.*; Ex. 38 at 186:12–187:22.

[171] *Infra* ¶¶ 143–146.

payment of $0!"  The e-mail then provided instructions for applying on studentloans.gov.[172]

144.    By the time he called Navient in August 2016, JB had received this email at least eight times.[173]

145.    JB remembered receiving e-mails similar to the June 8, 2016 message he received from Navient.[174]

146.    On August 12, 2016, Navient sent JB an e-mail with the subject line "Here are some payment options that may help you."  The top of the e-mail stated, "**[JB], we have payment options that may help you.**"  The body of the e-mail thanked JB for his recent phone call and stated, "[a]s a follow-up, we want to be sure you know about additional repayment options," including the option to "reduce your monthly payments for twelve months based on your income and other factors."[175]

---

[172] Ex. 38 at 154:24–163:24; Ex. 39 at *1.

[173] Ex. 38 at 164:4–14; Ex. 40 at -6042 through -6045 (X558 – EXIT DUAR/DUEM EMAIL SNT).

[174] Ex. 38 at 164:13–15.

[175] Ex. 38 at 194:9–198:13; Ex. 39 at *10–11 (emphasis in original).

147.    Prior to receiving forbearance in August 2016, JB had received

unemployment and hardship deferments online from December 2011 to July 2016,

without speaking to a Navient representative.[176]

148.    During his deposition, JB declined to answer whether he was

unemployed while he was enrolled in unemployment deferment.[177]  When asked

about his financial circumstances or employment history, he invoked the Fifth

Amendment or otherwise declined to answer.[178]

149.    The declaration JB signed on August 24, 2017, omitted the fact that he

received multiple written notices about IDR, including a notice Navient sent at the

same time it sent confirmation of JB's enrollment in forbearance.[179]  At his

deposition, JB testified that the CFPB investigator who drafted his declaration had

only requested notices related to forbearance.[180]

---

[176] Ex. 38 at 126:17–127:5, 138:13–140:24; Ex. 40 at -6037 through -6045.

[177] Ex. 38 at 127:6–134:3.

[178] *Id.* at 10:16–20:21; 76:8–78:24, 80:20–25; 127:6–22; 133:18–134:13; 135:4–6.

[179] *See* Ex. 41.

[180] Ex. 38 at 241:20–242:7, 248:8–25.

### 6. GJ

150. GJ was enrolled in IDR from May 2011 through August 2015, at which point he was no longer eligible under ED formulas because his income had increased.[181]

151. GJ enrolled in one forbearance before May 2011.[182]

152. GJ does not remember the other repayment options discussed on the call where he enrolled in forbearance.[183]

153. Before the call, GJ received a letter stating that Navient "offers several repayment options that help make payments more manageable," including Income-Sensitive Repayment and Income-Based Repayment.[184]

154. After he was no longer eligible for IDR, he requested another forbearance.[185]

---

[181] Ex. 43 at 111:9–16, 129:6–8, 130:11–134:9, 140:20–141:8; Ex. 44 at *14, *23 (line 19) through *24 (line 2).

[182] *See* Ex. 45 at -6724.

[183] Ex. 43 at 104:23–105:3.

[184] Ex. 43 at 93:4–95:4; Ex. 44 at *1.

[185] Ex. 43 at 139:3–141:25; Ex. 44 at *15, *23 (line 19) through *25 (line 14), *29 (lines 4–20).

155. Because GJ did not pay accrued interest during the three years he was enrolled in IDR, his unpaid interest capitalized when he was no longer enrolled, as required by federal regulations.[186]

156. This increased his principal by more than $3,000.[187]

157. GJ complained to Navient that IDR had actually increased his balance. He told the representative that he had been "screwed" by IDR and that the program was "stupid as f***."[188]

## C. Borrowers Who Avoided Efforts to Inform Them About IDR

### 1. RD

158. RD received information about IDR on multiple occasions.[189]

159. When RD took out FFELP loans, she signed a promissory note that described IDR.[190]

160. On February 12, 2009, before her first payment was due, Navient sent RD a letter stating that Navient "offers several repayment options that help make

---

[186] Ex. 43 at 135:6–136:24; Ex. 44 at *12. *See infra* ¶ 21.

[187] Ex. 44 at *12.

[188] Ex. 43 at 135:6–136:24; Ex. 44 at *39 (line 19) through *41 (line 12).

[189] *Infra* ¶¶ 159–162, 165–166.

[190] Ex. 46 at 101:8–104:19; Ex. 47 at *1–4.

student loan payments more manageable," including "payments that are tied to your income."[191]

161.   In April 2009, RD was delinquent on her loans, and Navient sent a notice that asked, "NEED SMALLER PAYMENTS?" and went on to state that "Income-Sensitive Repayment allows for payments based on a percentage of your income."[192]

162.   On September 20, 2009, after speaking to RD on the phone, Navient sent RD a letter stating, "Thank you for your interest in an Income-Based Repayment (IBR) Plan," along with an application and instructions for how to apply.[193]

163.   RD did not apply for IDR during that time.[194]

164.   RD missed several payments on her student loans while consistently making payments on two luxury automobiles.[195]

---

[191] Ex. 46 at 122:1–8; Ex. 47 at *5.

[192] Ex. 46 at 130:5–132:9; Ex. 47 at *8–9.

[193] Ex. 46 at 142:10–146:14; Ex. 47 at *19–21.

[194] Ex. 46 at 146:15–147:5.

[195] *Id.* at 86:24–88:2, 180:17–182:6.

165.   From 2009 to 2015, Navient sent RD information about IDR at least thirty-six times.[196]   In particular, when RD expressed difficulty making payments to Navient phone representatives, Navient sent a letter stating, "**Important Information – Please Read**."   The letter listed available options, including "**Income-Related Plans** (such as Income-Based and Income-Sensitive) [which] allow monthly payments that can change annually as your income changes."[197]

166.   RD acknowledged in her deposition that "from 2010 through 2014, [Navient] sent [her] multiple letters with information about income-based repayment options."  She testified she did not "pursue [an IDR plan] because [she] had the best one, forbearance."[198]

167.   Navient also attempted to reach RD by phone when she was delinquent, but on several occasions, she did not answer or hung up.[199]

168.   A Navient representative reached her on April 1, 2014.  RD confirmed that, during that call, the representative said she wanted "to see what options [RD] qualified for" but she could not do that unless RD "told [the representative] her

---

[196] Ex. 47 at *8–9, *11, *13, *16, *22, *24, *27, *30, *32, *35, *37, *40, *42, *45, *47, *48; Ex. 48 at *1, *4, *6, *7, *8, *10, *13, *15, *16, *19–*21, *23, *25, *38, *39, *42; Ex. 49 at *10, *12.

[197] *See, e.g.*, Ex. 48 at *19.

[198] Ex. 46 at 169:17–170:4.

[199] Ex. 51 at -7604 through -7672.

monthly income."[200]  RD did not provide the information requested by the

representative and asked if she could "call [Navient] back at another time."[201]  RD

did not call Navient back.[202]

169.   In August 2014, RD requested a forbearance online, without speaking

to a Navient representative.[203]

170.   Navient again contacted RD on October 17, 2014.  The representative

explained that he could "prequalify [RD] for options," but when he asked for RD's

"gross monthly income," RD asked if she could call him back.  RD did not provide

income information despite the representative explaining repeatedly that he was

"trying to check on [her] options."[204]

171.   On August 28, 2015, a Navient representative again contacted RD.[205]

172.   RD explained that she was not working, and the representative pre-

qualified her for "a zero dollar amount" under the "income-based program," stating

_____

[200] Ex. 46 at 182:25–187:13.

[201] Ex. 48 at *33 (line 7) through *34 (line 22).

[202] Ex. 46 at 187:23–25; Ex. 51 at -7646 through -7648.

[203] Ex. 51 at -7649.

[204] Ex. 46 at 205:19–207:17; Ex. 49 at *3 (lines 20–22), *6 (line 12) through *7 (line 25).

[205] Ex. 46 at 213:16–214:15; Ex. 51 at -7661 through -7663.

that under that program "your loans are forgiven at the end of that 25 years as long as you're making payments—even if they happen to be a zero dollar payment."[206]

173.    The representative processed a forbearance to cover past-due payments and sent RD an IDR application.[207]

174.    RD did not apply for IDR at that time.[208]

175.    In October 2015, a Navient representative again sent an IDR application after speaking with RD on the phone.[209]

176.    RD applied for unemployment deferment through February 2017.[210]

177.    RD testified that "from 2010 to 2015, [she] was not focused on [her] school loans," and "if [she] didn't get on an income-based repayment plan back then, it wasn't intentional."[211]

178.    On August 18, 2017, RD signed a declaration drafted by the CFPB stating that Navient had consistently informed her that her "best and only

---

[206] Ex. 46 at 213:16–19; Ex. 49 at *17 (lines 4–16).

[207] Ex. 49 at *21 (lines 4–7), *25–36.

[208] Ex. 46 at 225:9–18.

[209] *Id.* at 228:20–24, 241:8–25; Ex. 50 at *10 (lines 4–8), *14–25.

[210] Ex. 46 at 243:6–244:19, 322:14–323:1; Ex. 50 at *26–29.

[211] Ex. 46 at 194:5–10.

repayment option . . . was forbearance" and that she learned about the IBR plan only after completing her "own research in 2015."[212]

179.    When asked about inconsistencies between her declaration and recordings of her phone calls with Navient, RD explained that she did not "intentionally lie" by signing the declaration because she "didn't remember" the calls in which Navient informed her about IDR options.[213]

### 2.    ZB

180.    ZB received information about IDR on multiple occasions.[214]

181.    Although ZB testified that she did not remember whether she read about IDR options on the Sallie Mae website, she testified that she had visited the website[215] and "would have" clicked on a link entitled "Repaying your student loans."[216]

182.    At that time, Sallie Mae's website included information about IDR plans on a page entitled "Repaying your student loans."[217]

---

[212] Ex. 46 at 314:18–20; Ex. 52 at ¶¶ 7–8.

[213] Ex. 46 at 217:9–17.

[214] *Infra* ¶¶ 181–182, 185–188, 193–194, 197–198, 200.

[215] Ex. 53 at 83:12–18.

[216] *Id.* at 83:19–84:15.

[217] *Id.* at 83:19–85:13; Ex. 54 at *12.

183.    When Navient began servicing her Direct loans in April 2012, she had defaulted on them.[218]

184.    For her FFELP loans, ZB did not have a payment due until May 2011 because she had been in an in-school deferment and a grace period.[219]

185.    On February 10, 2011, Navient sent a notice asking, "Want to lower your scheduled payments?" and stating that Navient "offers several repayment plans," including Income-Sensitive Repayment and Income-Based Repayment.[220]

186.    ZB was delinquent on her loans from 2011 to 2014 on multiple occasions, and she received delinquency notices offering IDR at least twenty-two times.[221]

187.    In December 2011, Navient sent a letter notifying ZB that she was close to default and stating that she "may still be eligible for . . . repayment plans such as income-sensitive and income-based repayment."[222]

---

[218] Ex. 53 at 182:8–183:2; Ex. 55 at *1, *4.

[219] Ex. 53 at 79:15–81:3; Ex. 54 at *16.

[220] Ex. 53 at 75:9–23; Ex. 54 at *14.

[221] *See, e.g.*, Ex. 54 at *18, *20, *23, *25, *27, *31; Ex. 55 at *7, *11, *14, *16, *19, *22, *24, *26, *28, *31, *34, *37, *39, *42, *44.

[222] Ex. 54 at *31.

188.   ZB confirmed that she "read letters from [Navient]" and that "[Navient] informed [her] about income-related plans."[223]

189.   Navient representatives attempted to reach ZB on the phone, but ZB on several occasions did not answer or hung up on representatives.[224]

190.   In February 2012, ZB's loans were 254 days delinquent and she was nearing default.[225]  At that time, ZB spoke with a Navient representative, who processed a forbearance to bring her account current.[226]  The representative also sent ZB an application for unemployment deferment and processed a forbearance of twenty-one days that provided time "to fill out the unemployment deferment request."[227]

191.   ZB did not apply for an unemployment deferment at that time.[228]

192.   ZB does not remember the repayment options she discussed with Navient between 2011 and 2016.[229]

---

[223] Ex. 53 at 76:5–9, 111:7–9, 116:16–23.

[224] *See, e.g.*, Ex. 57 at -6832, -6837, -6843, -6865, -6874.

[225] *Id.* at -6828; Ex. 54 at *33.

[226] Ex. 53 at 112:2–113:9; Ex. 54 at *35; Ex. 57 at -6827 through -6828.

[227] Ex. 53 at 112:2–113:22; Ex. 54 at *38–42, *35; Ex. 57 at -6827 through -6828.

[228] Ex. 57 at -6827 through -6828.

[229] Ex. 53 at 101:4–102:10.

193.    On January 12, 2015, ZB spoke to a Navient representative who told her that she was "pre-eligible for zero dollar monthly payments with the income-based repayment program."  The representative sent ZB an IDR application and also stated that she could apply at studentloans.gov.[230]

194.    The representative processed a forbearance effective until March 14, 2015, and stated that ZB "would need to get that [IDR] application turned in before then" to avoid going "straight back into repayment."[231]

195.    ZB did not apply for IDR until October 2015.  She was approved on October 6, 2015.[232]

196.    ZB did not renew her IDR plan the next year.  She applied for another unemployment deferment.[233]

197.    The unemployment deferment application she signed stated "[i]nstead of deferment, I may be eligible for a repayment plan that determines my monthly payment amount based on my income."[234]

---

[230] Ex. 53 at 185:23–186:22, 194:21–197:21; Ex. 56 at *6 (lines 3–24), *10–21.

[231] Ex. 56 at *6 (line 23) through *7 (line 23).

[232] *Id.* at *24; Ex. 53 at 197:22–199:20; Ex. 57 at -6879.

[233] Ex. 53 at 199:25–202:6; Ex. 56 at *25–26.

[234] Ex. 53 at 200:20–203:14; Ex. 56 at *26.

198.   In January 2017, a Navient representative recommended that ZB re-apply for IDR, stating, "you would still want to get back on the income-based program so that when [your loans] go into repayment, you'll have a payment based on your income and your family size."[235]  ZB applied and was approved until July 25, 2018.[236]

199.   When asked at her deposition, ZB did not know that she was currently enrolled in IDR.[237]

200.   ZB submitted a sworn declaration in which she stated "[f]rom 2010 through 2014, the only repayment option that Sallie Mae offered was forbearance."[238]  ZB testified in her deposition that this statement was not correct, stating, "[n]ow that we're sitting here reading these letters, the letters say that I was offered more than that."[239]

### 3.   LF

201.   LF received information about IDR on multiple occasions.[240]

---

[235] Ex. 53 at 204:3–207:5; Ex. 56 at *32 (line 23) through *33 (line 7).

[236] Ex. 56 at *40.

[237] Ex. 53 at 13:20–14:8.

[238] Ex. 58 ¶ 9.

[239] Ex. 53 at 151:7–155:8.

[240] *Infra* ¶¶ 202–204, 207–08, 212–214.

202.   When LF took out FFELP loans in 2006, she signed a promissory note describing IDR.[241]

203.   On January 20, 2009, when she was scheduled to begin repaying her loans, Navient sent LF a letter stating that Navient "offers several repayment options that help make student loan payments more manageable," including "[p]ayments that are tied to your income."[242]

204.   From 2009 through 2014, she received information about IDR at least eighteen times.[243]

205.   LF does not remember the repayment options that she discussed with Navient representatives from 2009 to 2014.[244]

206.   LF requested and received several forbearances online without speaking to a Navient representative.[245]

207.   On April 23, 2015, a Navient representative discussed repayment options with LF and "pre-qualified" her for the "income-based repayment

---

[241] Ex. 59 at 50:24–55:17; Ex. 60 at *1–9.

[242] Ex. 59 at 58:14–60:21; Ex. 60 at *10–13.

[243] Ex. 60 at *18–20, *24–26, *31–36, *45; Ex. 61 at *4–29.

[244] Ex. 59 at 173:11–175:24, 84:14–85:8, 96:10–12, 86:12–20.

[245] Ex. 59 at 77:7–82:3, 94:17–95:21; Ex. 60 at *22–23, *43–44.

program," explaining that her payment under this plan could be as low as "zero dollars."[246]

208.   The representative applied a forbearance to cover past-due amounts and sent LF an IDR application.[247]

209.   LF did not apply for IDR at that time.[248]

210.   On July 15, 2015, LF called Navient to request another forbearance to bring her loans current so that she could apply for an apartment.[249]

211.   After asking LF questions about her income and family size, the representative approved a forbearance until December 2016.[250]

212.   In January 2016, LF again contacted Navient and asked to "defer [her] loan."  The representative offered to "pre-qualify [LF] for other options."  Based on the financial information LF provided, the representative informed her that she "may be eligible to have a zero [dollar] payment for 12 months and that's renewable every year."[251]

---

[246] Ex. 59 at 122:14–123:14; Ex. 61 at *32 (line 25) through *34 (line 7).

[247] Ex. 59 at 125:13–128:10; Ex. 61 at *34 (lines 5–24).

[248] Ex. 59 at 133:3–16.

[249] *Id.* at 130:19–134:19; Ex. 61 at *38 (line 4) through *39 (line 10).

[250] Ex. 59 at 133:17–134:19; Ex. 61 at *39 (line 14) through *40 (line 16), *46 (line 24) through *47 (line 3).

[251] Ex. 59 at 137:24–140:17; Ex. 62 at *5 (line 7) through *8 (line 7).

213.   LF responded that she was interested in this plan.  The representative sent LF IDR application instructions, processed a forbearance to cover the past-due amounts, and applied a forbearance to give LF time to apply for IDR.[252]

214.   LF submitted the application in February 2016 and was approved that month.[253]

215.   Even with the reduced monthly payment amount under an IDR plan, LF missed her payments on several occasions.[254]

### 4.   KR

216.   KR consolidated his FFELP loans in 2005 and selected a standard repayment plan instead of IDR.[255]

217.   Soon after, he defaulted on his federal student loans in 2005 and 2006.[256]

218.   KR testified that repaying his student loans was a lower priority than other expenses.[257]

---

[252] Ex. 62 at *1–3, *8 (line 2) through *11 (line 5).

[253] Ex. 59 at 143:8–23; Ex. 62 at *13–14.

[254] Ex. 59 at 144:5–146:14; Ex. 62 at *15–20.

[255] Ex. 64 at 63:7–64:12, 65:18–66:21, 101:22–102:10; Ex. 65 at *1–7.

[256] Ex. 70 at *10, *12, *14, *16, *19.

[257] Ex. 64 at 172:10–174:24.

219.   After KR completed federal loan rehabilitation, Navient began servicing his federal loans.[258]

220.   Navient frequently attempted to reach KR.  He ignored several phone calls.[259]  When he did answer, on several occasions, he prevented representatives from discussing his loans by refusing to provide identifying information,[260] verbally abusing them,[261] or hanging up.[262]

221.   In one instance, on June 28, 2012, KR called the representative a "stupid b**ch" before asking what options were available.[263]

222.   The representative responded that KR could "possibly apply[] for income-based repayments."  KR interrupted the representative and asked for someone "more competent."[264]

---

[258] Ex. 64 at 74:5–76:10; Ex. 69 at *30.

[259] *See, e.g.*, Ex. 71 at -6361, -6369, -6373, -6391, -6440.

[260] *See, e.g.*, Ex. 64 at 146:2–151:17, 152:17–154:2, 195:4–197:15, 279:24–281:23; Ex. 66 at *16 (line 1) through *20 (line 10); Ex. 67 at *15 (line 1) through *17 (line 12), *38 (lines 1–18); Ex. 69 at *19 (line 1) through *24 (line 17).

[261] *See infra* ¶¶ 221–24.

[262] Ex. 64 at 212:10–22; Ex. 67 at *27 (line 17) – *28 (line 2).

[263] Ex. 64 at 221:24–222:2; Ex. 67 at *39 (lines 1–10).

[264] Ex. 64 at 222:25–223:7; Ex. 67 at *39 (lines 11–18).

223.   After the representative again offered IDR as an option,[265] KR responded, "Look, b**ch, I don't want to talk to you."[266]

224.   On at least ten other calls, KR referred to the agents as "b**ch," "dumbass," and other profanities.[267]

225.   Navient sent KR information about IDR on multiple occasions.[268]

226.   From June 2009 to June 2013, he received more than 50 delinquency notices offering IDR.[269]   KR often received forbearances to cover the past-due amounts.[270]

227.   On September 10, 2013, when Navient warned him that he was approaching default during a phone call, KR laughed.[271]

228.   He again defaulted.[272]

---

[265] Ex. 64 at 223:21–224:18, 227:24–228:6; Ex. 67 at *39 (line 19) through *40 (line 5).

[266] Ex. 64 at 230:6–10; Ex. 67 at *40 (lines 2–9).

[267] Ex. 72 at -6047, -6052, -6055, -6068, -6142, -6204, -6658, -6663, -6665, -6666, -6668.

[268] *Infra* ¶ 226.

[269] Ex. 65 at *8–9, *11–36; Ex. 66 at *1–14, *38–43; Ex. 67 at *1–13, *30–36; Ex. 68 at *1, *5–46; Ex. 69 at *1–10.

[270] Ex. 65 at *10; Ex. 66 at *44–46; Ex. 68 at *2–4.

[271] Ex. 69 at *27 (line 9) through *28 (line 8).

[272] Ex. 64 at 71:8–73:16; Ex. 69 at *32.

## VI.   NAVIENT'S PROCEDURES

229.   Navient's procedures and training materials state in a red box that "Forbearance should not be considered until all other options have been exhausted."[273]

230.   Collections representatives have used an online tool that guided them "to ask specific questions designed to determine the best option for the borrower based on their current situation."[274]

231.   Navient has multiple processes for monitoring and listening to representatives' phone calls with borrowers to check whether representatives discuss repayment options based on a borrower's financial circumstances.[275]

232.   When Navient identifies a call where a representative does not discuss appropriate repayment options, Navient's practice has been to coach the representative and contact the borrower to discuss available options, including IDR plans where appropriate.[276]

233.   A Navient supervisor testified that the call with JB was not consistent with the Company's policies and practices: he stated that the representative on the

---

[273] Ex. 73 at -0510; Ex. 74.

[274] Ex. 75 at -8302.

[275] *See, e.g.*, Ex. 76 at 62:22–66:14, 85:10–12, 89:15–93:15; Ex. 77 at 34:10–17, 93:9–94:8, 99:22–100:1; Ex. 78 at 48:24–49:25.

[276] Ex. 76 at 66:4–25, 203:15–204:4; Ex. 79 at 186:14–187:10, 188:21–190:8.

call with JB should have discussed IDR, and that the supervisor would have

provided coaching to the representative had he listened to the call during Navient's

regular call monitoring.[277]

---

[277] Ex. 80 at 169:9–173:25.

Dated:  January 17, 2019      Respectfully submitted,

/s/ Jonathan E. Paikin
Jonathan E. Paikin (DC 466445) (*pro hac vice*)
Daniel P. Kearney (DC 977148) (*pro hac vice*)
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
jonathan.paikin@wilmerhale.com
daniel.kearney@wilmerhale.com
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

Daniel T. Brier (PA 52348)
Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
dbrier@mbklaw.com
Tel: 570-342-6100
Fax: 570-342-6147

*Counsel for Navient Corporation, Navient Solutions, LLC, and Pioneer Credit Recovery, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2019, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

/s/ Karin Dryhurst
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363