# EXHIBIT 5

Exhibit 5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Consumer Financial Protection Bureau, | |
| Plaintiff, | Case No. 3:17-CV-00101-RDM (Hon. Robert D. Mariani) |
| v. | |
| Navient Corporation, *et al.*, | |
| Defendants. | |

## PLAINTIFF'S RESPONSE TO
## DEFENDANT NAVIENT SOLUTIONS, LLC'S FIRST SET OF
## INTERROGATORIES AND REQUESTS FOR PRODUCTION

Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, Plaintiff, the Consumer Financial Protection Bureau ("Bureau"), hereby responds to the First Set of Interrogatories and Requests for Production from Defendant Navient Solutions, LLC ("Navient Solutions").

## PRELIMINARY STATEMENT

1.      The Bureau's investigation and development of all facts and circumstances relating to this action are ongoing. These responses and objections are made without prejudice to, and are not a waiver of, the Bureau's right to rely on other facts or documents in the course of this action.

2.     The Bureau is not producing documents that are protected from disclosure under the attorney-client privilege, deliberative process privilege, attorney work product doctrine, law enforcement investigatory privilege, bank examination privilege, or any other applicable privilege or immunity. The Bureau will produce either a categorical or document-by-document privilege log providing information about the documents that it has withheld on the basis of any privilege or immunity.

3.     The Bureau is not producing the following categories of documents that are equally available to Defendants: (1) any of the documents that Defendants in this action previously produced to the Bureau during the Bureau's investigation of Navient Solutions, Inc., the Bureau's investigation of Pioneer Credit Recovery, Inc., or the Bureau's supervisory exam of Pioneer Credit Recovery Inc.; (2) any transcripts of investigational hearings that occurred during the Bureau's investigation of Navient Solutions, Inc.; (3) any communications between counsel for the Bureau and counsel for any Defendant; and (4) consumer complaints submitted to the Bureau's Office of Consumer Response that have been made available to any Defendant. Producing to Defendants documents that are available to them would be unduly burdensome and impose

unnecessary costs on the Bureau.

4.      The Bureau will not produce the documents identified in the interrogatory responses below that are publicly and currently available on the internet free of charge, or that are Federal court filings available on PACER that are not under seal.

5.      By making the responses below and the accompanying productions, the Bureau does not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of such responses and accompanying productions into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege. Further, the Bureau makes the responses below and accompanying productions without in any way implying that it considers the requests, responses, and productions to be relevant or material to any claim or defense in this action.

6.      The Bureau expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, in one or more subsequent supplemental response(s).

## DEFINITION

1.    "Search its files and produce non-privileged documents responsive" to a particular document request means that the Bureau will undertake a reasonable search to locate the documents in its possession, custody, or control that are responsive to the request, and will produce non-privileged responsive documents in its possession, custody, or control in a format agreed upon by the parties. The production will occur within 60 days of service of these written responses. This term does not mean that responsive documents in the Bureau's possession, custody, or control necessarily exist, nor does it mean that any responsive documents in the Bureau's possession, custody, or control that do exist will be produced if they are privileged.

## RESPONSES TO NAVIENT SOLUTIONS, LLC'S FIRST SET OF INTERROGATORIES

**Interrogatory #1**:

Identify each Person who has or might have information or knowledge relating to the allegations in the Complaint against Navient Solutions, including a description of what information or knowledge each identified Person possesses.

**Response to Interrogatory #1**:

The Bureau objects to this interrogatory on the ground that it is overly broad and unduly burdensome in seeking the identity of every "person who has or might have information or knowledge relating to the allegations in the Complaint against Navient Solutions," along with "a description of what information or knowledge each identified Person possesses." Because numerous individuals are or have been employed by the Bureau, it is not reasonable to request that the Bureau identify every such person.

Subject to and without waiving the foregoing objections, the Bureau identifies below the following list of individuals who are most knowledgeable about the Bureau's allegations in its Complaint against Navient Solutions. Each of these individuals has knowledge relating to the conduct of Navient Solutions described in the Complaint.

| Name | Position |
|------|----------|
| David Rubenstein | Deputy Enforcement Director |
| Thomas Kim | Assistant Deputy Enforcement Director |
| Cynthia Lesser | Assistant Deputy Enforcement Director |

| Leanne Hartmann | Enforcement Attorney |
| --- | --- |
| Nick Jabbour | Enforcement Attorney |
| Ebony Johnson | Enforcement Attorney |
| Andrea Matthews | Enforcement Attorney |
| Brandis Anderson | Former Enforcement Attorney |
| Theresa Ridder | Enforcement Investigator |

**Interrogatory #2**:

Describe the factual basis for Your allegation that Navient Solutions gained an "advantage" from Navient Borrowers' enrollment in forbearances rather than income-driven repayment plans, including as alleged in paragraphs 140 and 141 of the Complaint, and describe with particularity the alleged "advantage."

**Response to Interrogatory #2**:

The Bureau objects to this interrogatory on the ground that it is a premature contention interrogatory. The factual basis of the Bureau's contention that Navient Solutions gained an "advantage" from Navient Borrowers' enrollment in forbearances rather than income-driven repayment plans, as alleged in paragraphs 140 and 141 of the Complaint,

will be the subject of discovery, which is ongoing. The Bureau further objects to this request because information necessary to provide a complete response is in the possession, custody, or control of Navient Solutions.

Subject to and without waiving the foregoing objections, the Bureau responds as follows: Navient Solutions gained the alleged advantage because enrolling borrowers into forbearance is quicker and less expensive to administer than other repayment plans, thus decreasing Navient's operating costs. Because of the number and complexity of repayment options available for federal loans, a conversation about alternative repayment plans and the borrower's financial situation is usually time-consuming. The U.S. Department of Education's website underscores the complexity of the repayment options: "If you've decided that an income-driven repayment plan is right for you, you'll want to choose the plan that provides the most benefit to you based on your individual circumstances. Although all four income-driven plans allow you to make a monthly payment based on your income, the plans differ in terms of who qualifies,

how much you have to pay each month, the length of the repayment period, and the types of loans that can be repaid under the plan."[1]

Moreover, since a borrower is required to submit a paper or online application, and include certain income tax documentation or alternative documentation of income with that application, to enroll in an income-driven repayment plan, the process of enrolling a borrower in such plans sometimes requires multiple, lengthy conversations with the borrower. Navient itself has highlighted these issues:[2]

- "[T]he IDR application requires the borrower to use a separate government website or to complete a 12-page paper application form. With either option, enrollment is not immediate and oftentimes requires time to gather required income documentation."

- "Our experience has shown that a borrower's intent to enroll in an IDR is not always enough. Because the IDR process must be completed away from the servicer's website and where our

[1] https://studentaid.ed.gov/sa/repay-loans/understand/plans/income-driven
[2] Navient 2016 RFI response (pages 4 and 12), available through http://news.navient.com/fact-sheets.cfm

customer service agents are not allowed to co-browse (where the representative can see the borrower's application entries) with the customer, we have found that borrowers require reminders and encouragement to complete the required forms."

- "Many of those who ultimately fell delinquent or even defaulted had discussed enrolling and also received information indicating they were eligible for the plans but did not take the necessary follow-up action to enroll. The majority of these borrower's [sic] simply never followed though [sic] towards IDR enrollment despite our reminders including follow-up calls and written correspondence."

Indeed, more than half of Navient Solutions borrowers who enroll in income-driven repayment plans for the first time report that they could not navigate the application process on their own.[3]

In addition to the paperwork required to enroll a borrower in an income-driven repayment plan, a borrower in such a plan must also complete an annual recertification form each year to document his/her

[3] Navient 2015 RFI response (pages 20-21), available through http://news.navient.com/fact-sheets.cfm

current income and family size, which is then used to adjust the borrower's payment amount.[4] Processing this renewal paperwork has further increased the employee time that Navient Solutions has had to devote to borrowers who enroll in an income-driven repayment plan, especially because many customers require support to renew.[5]

Indeed, as the volume of income-driven repayment plan applications and renewals received by Navient Solutions has increased, Navient Solutions has also increased the size of its staff to review and process those forms, thereby increasing operating costs. Navient Solutions detailed some of these increased operating costs in a submission to the Bureau:[6]

- "The Company has been so concerned about getting information to borrowers that in 2014 it created a specialized customer service team, which is comprised of 70 dedicated employees to assist borrowers with their recertification questions."

- "[I]n its back-office operations, the Company in 2014 created a new department, called Repayment Options, to process IDR-related

---

[4] https://studentaid.ed.gov/sa/repay-loans/understand/plans/income-driven
[5] Navient 2015 RFI response (pages 20-21), available through http://news.navient.com/fact-sheets.cfm
[6] NORA Response, at pages 55, 57.

paperwork and other repayment paperwork. This department has grown to more than 100 employees during peak season."

In sum, counseling borrowers about and enrolling those borrowers in income-driven repayment plans is costly for Navient Solutions.

In contrast, the Bureau believes that enrollment in forbearance is typically completed over the phone, in a matter of minutes, and generally without the submission of any paperwork. Navient Solutions has directed borrowers who are having trouble making payments on their loans to call Navient Solutions to ask for help in choosing among various options for assistance, including forbearance. For example, Navient's website includes a webpage that borrowers can access after clicking a link called "Postponing Payments." The first paragraph that the borrower sees after clicking this link states: "[I]f you're having trouble, there are options for assistance, including income-driven repayment plans, deferment, forbearance, and solutions to help you avoid delinquency and prevent default .... Contact us

at 800-722-1300 and let us help you make the right decision for your situation."[7]

If a borrower who called Navient Solutions either requested forbearance or accepted the customer service representative's advice to enroll in forbearance, the enrollment process was typically completed over the phone without the submission of any paperwork. Navient Solutions employee Patricia Peterson testified during an investigational hearing on April 28, 2015:

> Q. And so after a borrower makes an oral request for forbearance for federal student loans, is there any paperwork that they're required to submit?
> A. Not typically.
> Q. So during the phone conversation with a customer service agent, during that conversation could the customer service agent complete the enrollment of that borrower into a hardship forbearance program?
> A. Yes....
> Q. Can a request for income-based repayment be made orally?
> A. Not in the same way that a forbearance can be done.

Thus, as compared to the staff resources and time expenditure required to enroll and renew borrowers in income-driven repayment plans, enrolling

---

[7] https://www.navient.com/loan-customers/postponing-payments/if-you-are-having-trouble/

borrowers in forbearance is substantially less expensive for Navient Solutions.

**Interrogatory #3**:

Describe the benefits and disadvantages to Borrowers of enrollment in income-driven repayment plans as compared to forbearance.

**Response to Interrogatory #3**:

The Bureau objects to this interrogatory on the ground that it is a premature contention interrogatory. The factual basis of the Bureau's contentions concerning the benefits and disadvantages of enrollment in income-driven repayment plans as compared to forbearance, as alleged in paragraphs 31, 32, 35, and 36 of the Complaint, will be the subject of discovery, which is ongoing. The Bureau further objects to this request because information necessary to provide a complete response is in the possession, custody, or control of Navient Solutions.

Subject to and without waiving the foregoing objections, the Bureau responds as follows: By enrolling in an income-driven repayment plan, the monthly amount that the borrower will pay is set at an amount that is intended to be more affordable based on the borrower's income and family

size.[8] Depending on the borrower's income and family size, a borrower's monthly payment may be as low as $0 per month when enrolled in an income-driven repayment plan.[9]

In addition to providing a more affordable monthly payment, most income-driven repayment plans offer several other benefits for federal student loan borrowers, especially borrowers experiencing financial hardship that is not temporary or short-term. For example, for borrowers with subsidized loans whose monthly payment amount does not fully cover accrued interest, the federal government will pay any remaining unpaid interest that accrues on those loans during the first three consecutive years of enrollment in the plan.[10] This interest subsidy can be a significant benefit to such borrowers because they generally have no obligation to ever pay the remaining unpaid interest that accrues during those three years. Furthermore, because that unpaid interest is paid in full by the federal government, it is not added to the principal balance of the loan. When

---

[8] https://studentaid.ed.gov/sa/repay-loans/understand/plans/income-driven
[9] https://studentaid.ed.gov/sa/repay-loans/understand/plans/income-driven
[10] https://studentaid.ed.gov/sa/sites/default/files/income-driven-repayment-q-and-a.pdf (page 24)

interest is not paid, it can be added to the principal balance of the loan; additional interest is then charged on the increased principal balance of the loan, which could significantly increase the total amount repaid over the life of the loan.[11] Thus, the interest subsidy available to many borrowers enrolled in income-driven repayment plans can reduce these additional harmful effects, mitigating the financial strain on those borrowers.

Another benefit available to borrowers who are enrolled in an income-driven repayment plan is forgiveness of the remaining balance of their federal loan, either after making 20-25 years of qualifying payments for most income-driven repayment plans or 10 years of qualifying payments while working full time for certain public service employers.[12]

When a borrower enrolls in forbearance, the borrower is able to stop making payments or reduce his or her monthly payment for a defined period of time in order to address "a temporary financial difficulty" or "temporary need."[13] However, borrowers who enroll in forbearance face significant costs, which generally increase the longer the borrower is in

[11] https://studentaid.ed.gov/sa/repay-loans/deferment-forbearance
[12] https://studentaid.ed.gov/sa/repay-loans/understand/plans/income-driven
[13] https://www.navient.com/loan-customers/postponing-payments/deferment-and-forbearance/

forbearance. These include the accumulation of unpaid interest and the addition of that unpaid interest to the principal balance of the loan.[14] In addition, in some cases, following a forbearance, a loan may be reamortized, where the monthly payments may be recalculated, which can lead to an increase in the borrower's monthly payment amount.[15] As a result of these costs, long-term enrollment in forbearance can dramatically increase the total amount due each month after the forbearance period ends and over the repayment term for a borrower's federal loans.

**Interrogatory #4**:

Describe the factual basis for Your allegation that "enrolling in an income-driven repayment plan is usually a significantly better option than forbearance [for a Borrower]," as alleged in paragraph 36 of the Complaint.

**Response to Interrogatory #4**:

The Bureau objects to this interrogatory on the ground that it is a premature contention interrogatory. The factual basis of the Bureau's contentions that "enrolling in an income-driven repayment plan is usually a significantly better option than forbearance [for a Borrower]" as alleged in

---

[14] https://studentaid.ed.gov/sa/repay-loans/deferment-forbearance
[15] Investigational Hearing testimony of John Zemetro, December 12, 2013, at page 116.

paragraph 36 of the Complaint will be the subject of discovery, which is ongoing. The Bureau further objects to this request because information necessary to provide a complete response is in the possession, custody, or control of Navient Solutions.

Subject to and without waiving the foregoing objections, the Bureau responds as follows: By enrolling in an income-driven repayment plan, the monthly amount that the borrower will pay is set at an amount that is intended to be more affordable based on the borrower's income and family size.[16] Depending on the borrower's income and family size, a borrower's monthly payment may be as low as $0 per month when enrolled in an income-driven repayment plan.[17]

In addition to providing a more affordable monthly payment, most income-driven repayment plans offer several other benefits for federal student loan borrowers, especially borrowers experiencing financial hardship that is not temporary or short-term. For example, for borrowers with subsidized loans whose monthly payment amount does not fully cover

[16] https://studentaid.ed.gov/sa/repay-loans/understand/plans/income-driven
[17] https://studentaid.ed.gov/sa/repay-loans/understand/plans/income-driven

accrued interest, the federal government will pay any remaining unpaid interest that accrues on those loans during the first three consecutive years of enrollment in the plan.[18] This interest subsidy can be a significant benefit to such borrowers because they generally have no obligation to ever pay the remaining unpaid interest that accrues during those three years. Furthermore, because that unpaid interest is paid in full by the federal government, it is not added to the principal balance of the loan. When interest is not paid, it can be added to the principal balance of the loan; additional interest is then charged on the increased principal balance of the loan, which could significantly increase the total amount repaid over the life of the loan.[19] Thus, the interest subsidy available to many borrowers enrolled in income-driven repayment plans can reduce these additional harmful effects, mitigating the financial strain on those borrowers.

Another benefit available to borrowers who are enrolled in an income-driven repayment plan is forgiveness of the remaining balance of their federal loan, either after making 20-25 years of qualifying payments

[18] https://studentaid.ed.gov/sa/sites/default/files/income-driven-repayment-q-and-a.pdf (page 24)
[19] https://studentaid.ed.gov/sa/repay-loans/deferment-forbearance

for most income-driven repayment plans or 10 years of qualifying payments while working full time for certain public service employers.[20]

When a borrower enrolls in forbearance, the borrower is able to stop making payments or reduce his or her monthly payment for a defined period of time in order to address "a temporary financial difficulty" or "temporary need."[21] However, borrowers who enroll in forbearance face significant costs, which generally increase the longer the borrower is in forbearance. These include the accumulation of unpaid interest and the addition of that unpaid interest to the principal balance of the loan.[22] In addition, in some cases, following a forbearance, a loan may be reamortized, where the monthly payments may be recalculated, which can lead to an increase in the borrower's monthly payment amount.[23] As a result of these costs, long-term enrollment in forbearance can dramatically increase the total amount due each month after the forbearance period ends and over the repayment term for a borrower's federal loans.

---

[20] https://studentaid.ed.gov/sa/repay-loans/understand/plans/income-driven
[21] https://www.navient.com/loan-customers/postponing-payments/deferment-and-forbearance/
[22] https://studentaid.ed.gov/sa/repay-loans/deferment-forbearance
[23] Investigational Hearing testimony of John Zemetro, December 12, 2013, at page 116.

**Interrogatory #5**:

Identify each statement upon which a Navient Borrower relied for the belief that Navient Solutions would act in the Borrower's interests, including the identity of each Navient Borrower who relied on such statements, and describe the circumstances.

**Response to Interrogatory #5**:

The Bureau objects to this interrogatory on the ground that it is a premature contention interrogatory. The identity of each statement upon which Navient Borrowers relied for the belief that Navient Solutions would act in the Borrower's interests and the identity of any Navient Borrowers whom the Bureau may contend relied on such statements will be the subject of discovery, which is ongoing. The Bureau further objects to this interrogatory because information necessary to provide a complete response is in the possession, custody, or control of Navient Solutions. The Bureau further objects to this interrogatory on the ground that the phrase "describe the circumstances" is vague and ambiguous. The Bureau also objects to this request on the ground that it is unduly burdensome because identifying every statement upon which a Navient borrower relied for the belief that Navient Solutions would act in the borrower's interest would

require interviewing every Navient Solutions borrower.

Subject to and without waiving the foregoing objections, the Bureau states as follows: Navient and the U.S. Department of Education have published statements on their websites that are of the type generally relied upon by borrowers. Specifically, the U.S. Department of Education has publicly encouraged borrowers to consult their federal student loan servicer to determine the best repayment option or alternative for that individual borrower. In several places on its website, the U.S. Department of Education has advised borrowers to contact their student loan servicer before applying for any alternative repayment plan or forbearance, with statements such as the following: "Work with your loan servicer to choose a federal student loan repayment plan that's best for you";[24] "Before you apply for an income-driven repayment plan, contact your loan servicer if you have any questions. Your loan servicer will help you decide whether one of these plans is right for you";[25] and "Always contact your loan servicer

[24] https://studentaid.ed.gov/sa/repay-loans/understand/plans
[25] https://studentaid.ed.gov/sa/repay-loans/understand/plans/income-driven

immediately if you are having trouble making your student loan payment."[26]

Likewise, Navient Solutions has repeatedly encouraged borrowers experiencing financial hardship to contact Navient for assistance in evaluating the various alternative repayment options. For example, Navient's website has included the following statements inviting borrowers to contact Navient for guidance in finding long-term repayment solutions:

- "[I]f you're having trouble, there are options for assistance, including income-driven repayment plans, deferment, forbearance, and solutions to help you avoid delinquency and prevent default .... We can work with you to help you get back on track, and are sometimes able to offer new or temporarily reduced payment schedules. Contact us at 800-722-1300 and *let us help you make the right decision for your situation.*"[27]

- "If you're experiencing problems making your loans payments, please contact us. *Our representatives can help you by identifying options and solutions, so you can make the right decision for your situation.*"[28]

- "*Navient is here to help.* We've found that, 9 times out of 10, when we can talk to a struggling federal loan customer we

[26] https://studentaid.ed.gov/sa/repay-loans/deferment-forbearance
[27] https://www.navient.com/loan-customers/postponing-payments/if-you-are-having-trouble/ (emphasis added).
[28] https://www.navient.com/loan-customers/postponing-payments/avoiding-default/ (emphasis added).

can help him or her get on an affordable payment plan and avoid default."[29]

For many years, Navient's website has included other, similar statements. For example, its website previously stated that it was "committed to giving you the information and tools you need to understand and evaluate your student loan payment options. *We can help you find an option that fits your budget, simplifies payment, and minimizes your total interest cost.*" (emphasis added).

## Interrogatory #6:

Describe each instance in which Navient Solutions "steered" a Navient Borrower, as alleged in paragraphs 4, 40, 140, and 144–46 of the Complaint.

## Response to Interrogatory #6:

The Bureau objects to this interrogatory on the ground that it is a premature contention interrogatory. Specific instances of steering that the Bureau will contend occurred, as alleged in paragraphs 4, 40, 140, and 144–46 of the Complaint, will be the subject of discovery, which is ongoing. The Bureau further objects to this request because information necessary to

---

[29] https://www.navient.com/loan-customers/getting-started/successful-student-loan-borrowers/ (emphasis added).

provide a complete response is in the possession, custody, or control of Navient Solutions, including audio files of calls that have never been produced to the Bureau.

Subject to and without waiving the foregoing objections, the Bureau responds as follows: The Bureau alleges that any calls between Navient Solutions and borrowers that reflected the guidance provided to Navient Solutions employees in the flow charts NAVAG-0077778 and NAVAG-0077780, in which Navient Solutions employees were directed to offer only deferment or forbearance to borrowers who could not afford to make any payment, constitute steering of a Navient borrower.

In addition, any calls from Navient Solutions to borrowers that reflect the procedures outlined in the following testimony of Patricia Peterson constitute steering:

> Q: "So is it fair to say that deferment is – for a borrower who is expressing a short-term or temporary situation, that deferment would be the first thing that could likely be introduced to them, and then you would – the agent would next be instructed to offer some sort of income-driven repayment plan; is that correct?"
>
> A: . . . .  If they can't afford to make any payment, then you would be looking at a forbearance.
>
> In addition, the data at tab A-20 of the binder produced by the

Bureau at the Bureau's Rule 30(b)(6) deposition demonstrates additional instances of steering. Between January 1, 2010 and March 31, 2015, Navient enrolled over 1.5 million borrowers in two or more consecutive forbearances totaling twelve months or longer. More than 470,000 of these borrowers were enrolled in three consecutive forbearances, and more than 520,000 of them were enrolled in four or more consecutive forbearances. For borrowers enrolled in three or more consecutive forbearances, each forbearance period lasted, on average, six months. Hundreds of thousands of consumers were continuously enrolled in forbearance for a period of two or three years, or more.

In addition, the data at tabs A-21 and A-22 of the binder produced by the Bureau at the Bureau's Rule 30(b)(6) deposition demonstrates additional instances of steering. Between January 1, 2010 and March 31, 2015, nearly 25% of borrowers who ultimately enrolled in IBR with a $0 payment were enrolled in voluntary forbearance within the twelve-month period immediately preceding their enrollment in IBR. During that same time period, nearly 16% of borrowers who ultimately enrolled in PAYE with a $0 payment were enrolled in voluntary forbearance within the twelve-month period immediately preceding their enrollment in PAYE. The

majority of these borrowers were enrolled in voluntary forbearance more than three months prior to their enrollment in the income-driven repayment plan.

In addition, tabs A-24 through A-26 of the binder produced by the Bureau at the Bureau's Rule 30(b)(6) deposition contain correspondence that illustrate specific instances in which steering occurred.

Further instances of steering are found in the written complaints that the Bureau compiled at tabs A-27 through A-31 of the binder produced by the Bureau at the Bureau's Rule 30(b)(6) deposition. The Bureau has also identified the following audio calls in which instances of steering occurred:

NSI-017-11
NSI-018-5
NSI-018-8
NSI-018-54
NSI-018-70
NSI-018-73
NSI-018-86
NSI-018-92
NSI-018-95
NSI-018-98
NSI-018-109
NSI-020-37
NSI-020-38
NSI-020-78
NSI-020-87
NSI-020-93
NSI-020-116
NSI-020-150

NSI-020-175
NSI-020-179
NSI-020-185
Illinois AG presentation, Part 2, Call 65590
Illinois AG presentation, Part 4, Call 65554
Audio file attached to August 21, 2014 email from Ralph Farmer, Audit and
  Compliance Auditor, CEANNATE Corp.

  Finally, steering occurred in every instance in which a borrower who was experiencing financial distress that appeared to be neither short-term nor temporary, and who spoke with Navient, was not adequately advised about available income-driven repayment plans.

**Interrogatory #7**:

  Identify each Navient Borrower harmed by enrollment in a forbearance, as alleged in paragraph 146 of the Complaint, and describe the injury suffered by that Borrower.

**Response to Interrogatory #7**:

  The Bureau objects to this interrogatory on the ground that it is a premature contention interrogatory. The Bureau's contentions regarding borrowers harmed by enrollment in forbearance and their injuries will depend on discovery, including information in the possession, custody, or control of Navient Solutions. As stated in the Bureau's initial disclosures, "[t] he Bureau is entitled to pursue restitution based on the harms that

consumers incurred as a result of being steered into forbearance. Components of this restitution include at least the following: (1) the additional interest that the affected consumers were charged or can expect to be charged as a result of any capitalization events associated with the forbearance(s); (2) compensation for delayed progress toward the loan forgiveness associated with income-driven repayment; and (3) for consumers with subsidized federal loans, compensation for any loss of the interest subsidy from the federal government." However, "[t]he Bureau has not yet obtained data sufficient to reasonably approximate the number of consumers impacted by Defendants' violation related to forbearance steering, nor the amount of harm that those consumers suffered. Documents NSI-036-1, NSI-038-1 and NSI-039-1 provide some information about some consumers who likely were impacted by Defendants' steering practices. However, that data only covers some categories of consumers that incurred harm from Defendants' practices, is for a limited time period, and is not at the transactional level." Beyond what it set forth in the Bureau's initial disclosures, the Bureau is unable to respond to this interrogatory at this time.

**Interrogatory #8**:

Describe each Communication about repayment plans and forbearance that Navient Solutions provided to Borrowers, including a description of Communications required by federal regulations.

**<u>Response to Interrogatory #8</u>**:

The Bureau objects to this request on the ground that the information it seeks is in the possession, custody, or control of Navient Solutions. Navient Solutions can query its borrower files for the requested communications, but the Bureau has no way to do the same thing. The Bureau further objects to this request on the ground that it is overly broad and unduly burdensome in seeking every communication about repayment plans and forbearance provided to every Navient Solutions borrower. The Bureau further objects to the portion of this request seeking a "description of Communications required by federal regulations" on the ground that because the Bureau is not in possession, custody, or control of the requested communications, and also cannot discern the drafting intent behind every such communication, the Bureau is not in a position to identify which communications were deemed by Navient Solutions to be required by federal regulations. Based on the foregoing objections, the Bureau is not substantively responding to this interrogatory.

**Interrogatory #9**:

Identify each Navient Borrower whose income-driven repayment plan expired because the Borrower did not submit a renewal application as a result of not understanding Navient Solutions' email notice or otherwise failing to click through the link contained in the email, and describe the circumstances.

**Response to Interrogatory #9**:

The Bureau objects to this interrogatory on the ground that it mischaracterizes the allegations in the Complaint related to Navient Solutions' email recertification notice. The Complaint alleges that Navient Solutions failed to adequately notify borrowers who consented to receive electronic communications of the existence of the renewal notice because the email it sent to them that purportedly provided such notice included no information about the purpose or contents of the notice in the subject line or body of the email. The Bureau also objects to this interrogatory on the ground that it is a premature contention interrogatory. The identity of any borrowers whom the Bureau may contend had their income-driven repayment plan expire because Navient Solutions failed to adequately notify them of the existence of the renewal notice will be the subject of

discovery, which is ongoing. The Bureau further objects to this request because information necessary to provide a complete response is in the possession, custody, or control of Navient Solutions. The Bureau also objects to this interrogatory on the ground that the phrase "describe the circumstances" is vague and ambiguous.

Subject to and without waiving the foregoing objection, the Bureau states that, at tab B-15 of the binder of documents produced by the Bureau at the Rule 30(b)(6) deposition of the Bureau, the Bureau re-produced to Defendants a document from Defendants showing that recertification rates dramatically increased when Navient Solutions changed its recertification email notice in or around March 2015. This data suggests that many Navient Solutions borrowers had been failing to recertify as a result of the recertification email notice that contained no information about the purpose or contents of the notice. In addition, tabs B-19 and B-20 of the binder contain examples of consumers who did not recognize the need to timely submit a renewal application and who suffered adverse consequences as a result. Further discovery is needed to identify the specific borrowers who had been failing to recertify as a result of the recertification email notice that contained no information about the

purpose or contents of the notice.

**Interrogatory #10**:

Identify each Navient Borrower whose income-driven repayment plan expired because the Borrower submitted an incomplete or inaccurate application based on the belief that delay would be the only consequence, and describe the circumstances.

**Response to Interrogatory #10**:

The Bureau objects to this interrogatory on the ground that it is unduly burdensome because ascertaining the "belief" of every individual borrower whose income-driven repayment plan expired because the borrower submitted an incomplete or inaccurate application would likely require interviewing every such borrower. The Bureau also objects to this interrogatory on the ground that it is a premature contention interrogatory. The identity of any borrowers whom the Bureau may contend had their income-driven repayment plan expire because the borrower submitted an incomplete or inaccurate application based on the belief that delay would be the only consequence will be the subject of discovery, which is ongoing. The Bureau further objects to this request because information necessary to provide a complete response is in the possession, custody, or control of

Navient Solutions. The Bureau also objects to this interrogatory on the ground that the phrase "describe the circumstances" is vague and ambiguous.

Subject to and without waiving the foregoing objections, the Bureau responds as follows: at tabs B-16 and B-17 of the binder of documents produced by the Bureau at the Rule 30(b)(6) deposition of the Bureau, the Bureau produced two examples of consumers whose income-driven repayment plan expired because the Borrower submitted an incomplete or inaccurate application and who demonstrated confusion over the consequences that had befallen them as a result of the income-driven repayment plan expiration. Further discovery is needed to identify additional borrowers who submitted an incomplete or inaccurate application because of confusion over the consequences associated with income-driven repayment plan expiration.

In addition, because the consequences of failing to timely recertify are central characteristics of the renewal process, a reasonable borrower would have attached significance to Navient Solutions' misrepresentation that the only consequence of providing incorrect or incomplete information was a "delay" in the renewal "process."

**Interrogatory #11**:

Identify any and all false or misleading Communications from Navient Solutions to any Borrower, and identify any Documents that you contend support Your allegation.

**Response to Interrogatory #11**:

The Bureau objects to this interrogatory on the ground that it is overly broad and unduly burdensome because it does not reference any specific allegations in the Complaint or any of the policies and practices alleged in the Complaint, but rather seeks an identification of "any and all false or misleading Communications from Navient Solutions to any Borrower," without any limitation as to subject matter. Accordingly, the Bureau is not substantively responding to this interrogatory.

**Interrogatory #12**:

Identify each Navient Borrower whose cosigner agreed to cosign the loan based on the possibility of release following the Borrower's making consecutive, on-time principal and interest payments, and describe the circumstances.

**Response to Interrogatory #12**:

The Bureau objects to this interrogatory on the ground that it is a

premature contention interrogatory. The identity of any borrowers whose cosigner the Bureau may contend agreed to cosign the loan based on the possibility of release following the borrower's making consecutive, on-time principal and interest payments will be the subject of discovery, which is ongoing. The Bureau further objects to this request because information necessary to provide a complete response is in the possession, custody, or control of Navient Solutions. The Bureau also objects to this interrogatory on the ground that the phrase "describe the circumstances" is vague and ambiguous.

The Bureau further objects to this interrogatory on the ground that it is overly burdensome because ascertaining the subjective intent of every individual cosigner who agreed to cosign a loan and whether the agreement to cosign was "based on the possibility of release following the borrower's making consecutive, on-time principal and interest payments" would likely require interviewing every such cosigner.

Subject to and without waiving the foregoing objections, the Bureau responds as follows: At tabs C-7 through C-11 of the binder produced to Defendants at the Rule 30(b)(6) deposition of the Bureau, the Bureau identified borrowers or cosigners whose complaints suggest that they may

have been misled concerning the requirement that a borrower make a certain number of consecutive, on-time principal and interest payments in order to be eligible for cosigner release.

In addition, according to a study by Navient Solutions (located at Tab C-6 of the same binder), 77% of undergraduate students and 84% of parents indicated that cosigner release was a desirable feature for a private student loan. For parents, it was the second most desirable feature (no origination fees was the most desirable feature).

**Interrogatory #13**:

Identify each Navient Borrower who allegedly was wrongly denied cosigner release for failing to make an on-time payment in each of 12 consecutive months and describe the circumstances.

**Response to Interrogatory #13**:

The Bureau objects to this interrogatory on the ground that it is a premature contention interrogatory. The identity of any borrowers whom the Bureau may contend were wrongly denied cosigner release for failing to make an on-time payment in each of 12 consecutive months will be the subject of discovery, which is ongoing. The Bureau further objects to this interrogatory on the ground that this information in the possession,

custody, or control of Navient Solutions. The Bureau also objects to this interrogatory on the ground that the phrase "describe the circumstances" is vague and ambiguous.

Subject to and without waiving the foregoing objections, the complaints located at tabs C-7 through C-11 of the binder produced by the Bureau at the Rule 30(b)(6) deposition of the Bureau, contain examples of Navient Solutions borrowers or cosigners whose complaints suggest that they may have been wrongly denied cosigner release for failing to make an on-time payment in each of 12 consecutive months.

**Interrogatory #14**:

Describe the harm to a Borrower that results from a cosigner not qualifying for release.

**Response to Interrogatory #14**:

The Bureau objects to this interrogatory on the ground that it is a premature contention interrogatory. The Bureau's contentions regarding harm that occurred to a borrower from a cosigner not qualifying for release will depend on discovery, including information in the possession, custody, or control of Navient Solutions. As stated in the Bureau's initial disclosures, "[t]he Bureau intends to seek restitution for consumers for whom cosigner

release was delayed or denied as a result of Defendants' imposition of a requirement concerning consecutive, on-time payments that was different from the requirement communicated to consumers. The Bureau has not yet obtained data sufficient to reasonably approximate the number of consumers impacted by Defendants' alleged violation related to cosigner release, nor the amount of harm that those consumers suffered." Beyond what it set forth in the Bureau's initial disclosures, the Bureau is unable to respond to this interrogatory at this time.

**Interrogatory #15**:

Describe each of Navient Solutions' payment processing practices that You allege is unfair.

**Response to Interrogatory #15**:

The Bureau objects to this interrogatory on the ground that it misstates the allegations in the Complaint. The Bureau has alleged that Navient Solutions does not have adequate processes and procedures in place to sufficiently address certain errors it makes in the processing of payments received from borrowers and cosigners or to prevent errors from recurring, and that this failure to have adequate processes and procedures constitutes an unfair act or practice.

The Bureau further objects to this interrogatory on the ground that it is a premature contention interrogatory. The Bureau's contention that Navient Solutions does not have adequate processes and procedures in place to sufficiently address certain errors it makes in the processing of payments received from borrowers and cosigners or to prevent errors from recurring will depend on discovery, including information in the possession, custody, or control of Navient Solutions.

Subject to and without waiving the foregoing objections, some of the repeated errors that Navient Solutions appears to have made in the processing of payments that demonstrate the lack of adequate processes and procedures in place to prevent errors from recurring include the following: misapplying payments from cosigners to loans that they had not cosigned; allocating payments from borrowers in a manner that, during certain periods, was not disclosed on any billing statement, promissory note, or printed or online resource available to borrowers; and failing to notify consumers of unsuccessful payoff attempts until a significant period of time, sometimes many years, had elapsed.

**Interrogatory #16**:

Describe the methodology for calculating the damages identified in

Your initial disclosures relating to allegations against Navient Solutions.

**Response to Interrogatory #16**:

The Bureau objects to this interrogatory on the ground that it is a premature contention interrogatory. The Bureau's initial disclosures speak for themselves, and the Bureau's contentions regarding the methodology for calculating damages relating to its claims against Navient Solutions will depend on discovery, including information in the possession, custody, or control of Navient Solutions. Therefore, the Bureau is unable to respond to this interrogatory at this time beyond what is set forth in the Bureau's initial disclosures.

## RESPONSES TO NAVIENT SOLUTIONS, LLC'S
## FIRST SET OF DOCUMENT REQUESTS

**Document Request #1**:

All Documents relating to the CFPB's investigation and supervision of Navient Solutions, including any investigative file, supervisory materials, witness statements, internal and external Communications, and all Documents generated by the CFPB or received from any third party relating to the Investigation.

**Response to Document Request #1**:

The Bureau objects to this request to the extent it seeks documents protected from disclosure by the deliberative process privilege, bank examination privilege, law enforcement investigatory privilege, attorney work product doctrine, attorney-client privilege, common interest privilege, or any other privilege or protection.  In addition, the Bureau objects to this request on the ground that it has already produced documents responsive to this request at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017. Finally, the Bureau objects to this request on the ground that documents that contain information sought by this document request are equally available to Navient Solutions and the Bureau; as explained in item 3 of the Preliminary Statement, the Bureau is not producing those documents.

The Bureau further objects to this request on the ground that it is overly broad and unduly burdensome. Specifically, the request is not tied in any way to a claim or defense in this case. For example, if a Bureau employee stayed in a hotel overnight in order to attend an investigational hearing during the investigation of Navient Solutions, the employee's hotel receipt would "relat[e] to" the investigation of Navient Solutions and therefore be within the scope of this request, despite the fact that the

receipt has no bearing on any claim or defense in this case.

Because this request is not tailored at all to any specific claim or defense in this case, it cannot elicit any meaningful response from the Bureau. Accordingly, the Bureau is not producing any documents in response to this request. The Bureau notes, however, that Navient Solutions is already in possession of all of the documents obtained from Navient Solutions during the Bureau's investigation of Navient Solutions. As explained in item 3 of the Preliminary Statement, the Bureau is not producing those documents. In addition, the Bureau produced documents responsive to this request at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017.

**Document Request #2**:

All Documents considered or relied upon in preparing the Complaint, with respect to Navient Solutions.

**Response to Document Request #2**:

The Bureau objects to this request to the extent it seeks documents protected from disclosure by the deliberative process privilege, bank examination privilege, law enforcement investigatory privilege, attorney work product doctrine, attorney-client privilege, common interest privilege,

or any other privilege or protection. In addition, the Bureau objects to this request on the ground that it has already produced documents responsive to this request at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017. Finally, the Bureau objects to this request on the ground that documents that contain information sought by this document request are equally available to Navient Solutions and the Bureau; as explained in item 3 of the Preliminary Statement, the Bureau is not producing those documents.

With respect to the portion of the request seeking documents "considered" by the Bureau in preparing the Complaint, the Bureau further objects to the request on the ground that it specifically requests that the Bureau produce documents revealing the work product of Bureau attorneys. Producing documents that the Bureau considered but did not rely upon in preparing the Complaint would reveal the thought processes, mental impressions, and litigation strategy of Bureau attorneys.

The Bureau also objects to the production of documents "considered" by the Bureau on the ground that the request is overly broad and unduly burdensome. Specifically, the request is not tied in any way to any claim or defense in this case. For example, if the Bureau considered a consumer

complaint against Navient Solutions involving issues unrelated to anything that the Bureau ended up alleging in its Complaint, that consumer complaint would be within the scope of this request, despite the fact that it has no bearing on any claim or defense in this case.

Based on the foregoing objections, the Bureau will not produce: (a) documents produced at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017; (b) documents encompassed by item 3 of the Preliminary Statement; and (c) any documents in response to the portion of the request seeking documents "considered" by the Bureau. Subject to the limitations in the preceding sentence, the Bureau will search its files and produce non-privileged documents responsive to this request.

**Document Request #3**:

Documents sufficient to identify each Person who provided information or statements (written or oral) relating to allegations against Navient Solutions in the Complaint, and any Documents relating to such information or statements.

**Response to Document Request #3**:

The Bureau objects to this interrogatory to the extent it seeks documents that reveal the identity of any person interviewed by the Bureau,

information provided to the Bureau in any such interviews, and witness statements. Such information is protected from disclosure by the attorney work product doctrine, law enforcement investigatory privilege, deliberative process privilege, and common interest privilege. In addition, the Bureau has already produced the documents it relied upon to support the allegations in the Complaint – including complaints from persons relating to the allegations in the Complaint – at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017. Finally, the Bureau objects to this request on the ground that documents that contain information sought by this document request are equally available to Navient Solutions and the Bureau; as explained in item 3 of the Preliminary Statement, the Bureau is not producing those documents.

Based on the foregoing objections, the Bureau will not produce (a) documents that reveal the identity of any person interviewed by the Bureau, information provided to the Bureau in any such interviews, and witness statements; (b) documents produced at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017; and (c) documents encompassed by item 3 of the Preliminary Statement. Other than documents covered by the preceding sentence, the Bureau will search its files and produce non-

privileged documents responsive to this request.

**Document Request #4**:

All Documents relating to Communications with Navient Borrowers relating to Servicing Practices or the allegations in the Complaint.

**Response to Document Request #4**:

The Bureau objects to this request to the extent it seeks documents protected from disclosure by the deliberative process privilege, bank examination privilege, law enforcement investigatory privilege, attorney work product doctrine, attorney-client privilege, common interest privilege, or any other privilege or protection. In addition, the Bureau has already produced the documents it relied upon to support the allegations in the Complaint – including communications with Navient borrowers – at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017. Finally, the Bureau objects to this request on the ground that documents that contain information sought by this document request are equally available to Navient Solutions and the Bureau; as explained in item 3 of the Preliminary Statement, the Bureau is not producing those documents.

The Bureau also objects to this request on the ground that it is overly broad and unduly burdensome because "Communications with Navient

Borrowers relating to Servicing Practices or the allegations in the Complaint" is not limited to Navient Solutions' policies and practices that are the subject of the allegations in the Complaint. Navient Solutions' student loan servicing policies and practices that are not the subject of the allegations in the Complaint are not relevant to any claim or defense in this litigation.

Subject to and without waiving the foregoing objections, the Bureau will search its files and produce non-privileged documents responsive to this request, if the documents relate to Navient Solutions' policies and practices that are the subject of the allegations in the Complaint. The Bureau will not produce: (a) documents that relate solely to policies and practices of Navient Solutions that are not the subject of the allegations in the Complaint; (b) documents produced at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017; and (c) documents encompassed by item 3 of the Preliminary Statement.

**Document Request #5**:

All Documents relating to the relative benefits of repayment plans and forbearance.

**Response to Document Request #5**:

The Bureau objects to this request to the extent it seeks documents protected from disclosure by the deliberative process privilege, bank examination privilege, law enforcement investigatory privilege, attorney work product doctrine, attorney-client privilege, common interest privilege, or any other privilege or protection.  In addition, the Bureau objects to this request on the ground that it has already produced documents responsive to this request at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017. Finally, the Bureau objects to this request on the ground that documents that contain information sought by this document request are equally available to Navient Solutions and the Bureau; as explained in item 3 of the Preliminary Statement, the Bureau is not producing those documents.

Based on the foregoing objections, the Bureau will not produce: (a) documents produced at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017; and (b) documents encompassed by item 3 of the Preliminary Statement. Subject to the limitations in the preceding sentence, the Bureau will search its files and produce non-privileged documents responsive to this request.

**<u>Document Request #6</u>**:

All Documents relating to the benefit obtained by Navient Solutions in enrolling Navient Borrowers in forbearance.

**<u>Response to Document Request #6</u>**:

The Bureau objects to this request to the extent it seeks documents protected from disclosure by the deliberative process privilege, bank examination privilege, law enforcement investigatory privilege, attorney work product doctrine, attorney-client privilege, common interest privilege, or any other privilege or protection. In addition, the Bureau objects to this request on the ground that it has already produced documents responsive to this request at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017. Finally, the Bureau objects to this request on the ground that documents that contain information sought by this document request are equally available to Navient Solutions and the Bureau; as explained in item 3 of the Preliminary Statement, the Bureau is not producing those documents.

Based on the foregoing objections, the Bureau will not produce: (a) documents produced at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017; and (b) documents encompassed by item 3 of the Preliminary Statement. Subject to the limitations in the preceding

sentence, the Bureau will search its files and produce non-privileged documents responsive to this request.

**<u>Document Request #7</u>**:

All Documents relating to disclosures that Navient Solutions made to Navient Borrowers concerning repayment plans and forbearance.

**<u>Response to Document Request #7</u>**:

The Bureau objects to this request to the extent it seeks documents protected from disclosure by the deliberative process privilege, bank examination privilege, law enforcement investigatory privilege, attorney work product doctrine, attorney-client privilege, common interest privilege, or any other privilege or protection. In addition, the Bureau objects to this request on the ground that it has already produced documents responsive to this request at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017. Finally, the Bureau objects to this request on the ground that documents that contain information sought by this document request are equally available to Navient Solutions and the Bureau; as explained in item 3 of the Preliminary Statement, the Bureau is not producing those documents.

Based on the foregoing objections, the Bureau will not produce: (a)

documents produced at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017; and (b) documents encompassed by item 3 of the Preliminary Statement. Subject to the limitations in the preceding sentence, the Bureau will search its files and produce non-privileged documents responsive to this request.

**<u>Document Request #8</u>**:

All Documents relating to proposed or final rules, regulations, and guidance considered or issued by the CFPB relating to protection of consumer privacy in email Communications.

**<u>Response to Document Request #8</u>**:

The Bureau objects to this request to the extent it seeks documents protected from disclosure by the deliberative process privilege, bank examination privilege, law enforcement investigatory privilege, attorney work product doctrine, attorney-client privilege, common interest privilege, or any other privilege or protection. In addition, the Bureau objects to this request on the ground that it has already produced documents responsive to this request at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017.

The Bureau further objects to this request on the ground that it is not

relevant to a claim or defense in this matter because Navient Solutions has not indicated how any "proposed or final rules, regulations, and guidance considered or issued by the CFPB relating to protection of consumer privacy in email Communications" formed the basis for its conduct with respect to any claim. The Bureau further objects to the request on the ground that any argument that any "rules, regulations, and guidance . . . relating to protection of consumer privacy in email Communications" is not limited to Navient Solutions' policies and practices that are the subject of the allegations in the Complaint.

The Bureau further objects to the request on the ground that any argument that any "rules, regulations, and guidance" is relevant to a claim or defense should be addressed by production of the final versions that were published or otherwise issued to a person outside of the Bureau. Requiring the Bureau to produce "[a]ll Documents" relating to such rules, regulations, and guidance — including all drafts and all communications and other documents that mention or otherwise relate to such rules, regulations, and guidance — is not proportional to the needs of the case because the burden or expense of the proposed discovery outweighs any minimal relevance of such documents other than the final versions that

were published by the Bureau. The Bureau also objects to the request for all documents relating to rules, regulations, and guidance "considered" but not issued by the Bureau on the grounds that such documents are protected by the deliberative process privilege, the attorney work product doctrine, the attorney-client privilege, and the bank examination privilege. In addition, all pre-decisional and deliberative documents related to issued, proposed or final rules, regulations, and guidance are protected from disclosure by the deliberative process privilege.

Subject to and without waiving the foregoing objections, the Bureau will search its files and produce non-privileged documents responsive to this request, as follows: the Bureau will produce the published versions of all proposed or final rules and regulations and of all guidance relating to protection of consumer privacy in email Communications, as it relates to policies and practices alleged in the Complaint, to the extent such documents were not produced at the Rule 30(b)(6) deposition of the Bureau on August 4, 2017. Based on the foregoing objections, the Bureau will not produce any other documents in response to this request, including: (1) draft versions of rules, regulations, and guidance proposed, enacted, or issued by the Bureau; (2) rules, regulations, or guidance

considered but not proposed, enacted, or issued by the Bureau; (3) rules, regulations, and guidance not relating to Navient Solutions' policies and practices that are the subject of the allegations in the Complaint; and (4) documents, such as communications, relating to rules, regulations, and guidance.

**Document Request #9**:

All Documents relating to proposed or final rules, regulations, and guidance considered or issued by the CFPB or Department of Education involving Servicing Practices, including as it relates to policies and practices alleged in the Complaint.

**Response to Document Request #9**:

The Bureau objects to this request to the extent it seeks documents protected from disclosure by the deliberative process privilege, bank examination privilege, law enforcement investigatory privilege, attorney work product doctrine, attorney-client privilege, common interest privilege, or any other privilege or protection. In addition, the Bureau objects to this request on the ground that it has already produced documents responsive to this request at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017.

The Bureau further objects to this request on the ground that it is overly broad and unduly burdensome because "Servicing Practices" is not limited to the student loan servicing policies and practices that are the subject of the allegations in the Complaint. Student loan servicing policies and practices that are not the subject of the allegations in the Complaint are not relevant to any claim or defense in this litigation. The Bureau also objects to the phrase "as it relates to" as undefined, vague, and ambiguous, especially in light of the fact that the policies and practices are alleged in the Complaint only with respect to Navient Solutions and thus those allegations do not "relate[] to" any other servicers.

The Bureau further objects to the request on the ground that any argument that any "rules, regulations, and guidance" are relevant to a claim or defense should be addressed by production of the final versions that were published or otherwise issued to a person outside of the Bureau. Requiring the Bureau to produce "[a]ll Documents" relating to such rules, regulations, and guidance — including all drafts and all communications and other documents that mention or otherwise relate to such rules, regulations, and guidance – is not proportional to the needs of the case because the burden or expense of the proposed discovery outweighs any

minimal relevance of such documents other than the final versions that were published or otherwise issued to a person outside of the Bureau. The Bureau also objects to the request for all documents relating to rules, regulations, and guidance "considered" but not issued by the Bureau or U.S. Department of Education on the grounds that such documents are protected by the deliberative process privilege, the attorney work product doctrine, the attorney-client privilege, and the bank examination privilege. In addition, all pre-decisional and deliberative documents related to issued, proposed or final rules, regulations, and guidance are protected from disclosure by the deliberative process privilege. Finally, the Bureau objects to the portion of the request seeking documents relating to "rules, regulations, and guidance considered or issued by the . . . Department of Education involving Servicing Practices" because Defendants have equal ability to identify and obtain the final versions of such documents.

Subject to and without waiving the foregoing objections, the Bureau will search its files and produce non-privileged documents responsive to this request, as follows: the Bureau will produce the published versions of all proposed or final rules and regulations and of all guidance relating to the servicing policies and practices that are the subject of allegations in the

Complaint, to the extent such documents were not produced at the Rule 30(b)(6) deposition of the Bureau on August 4, 2017. Based on the foregoing objections, the Bureau will not produce any other documents in response to this request, including: (1) draft versions of rules, regulations, and guidance proposed, enacted, or issued; (2) rules, regulations, and guidance considered but not proposed, enacted, or issued; (3) rules, regulations, and guidance not relating to Navient Solutions' servicing policies and practices that are the subject of the allegations in the Complaint; (4) documents, such as communications, relating to rules, regulations, and guidance; and (5) final versions of rules, regulations, and guidance considered or issued by the U.S. Department of Education.

**Document Request #10**:

All Documents relating to Navient Borrowers who were eligible for an income-driven repayment plan but failed to timely renew the plan because they did not understand the need to complete and submit a recertification form in order to continue receiving benefits.

**Response to Document Request #10**:

The Bureau objects to this request to the extent it seeks documents protected from disclosure by the deliberative process privilege, bank

examination privilege, law enforcement investigatory privilege, attorney work product doctrine, attorney-client privilege, common interest privilege, or any other privilege or protection. In addition, the Bureau objects to this request on the ground that it has already produced documents responsive to this request at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017. Finally, the Bureau objects to this request on the ground that documents that contain information sought by this document request are equally available to Navient Solutions and the Bureau; as explained in item 3 of the Preliminary Statement, the Bureau is not producing those documents.

Based on the foregoing objections, the Bureau will not produce: (a) documents produced at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017; and (b) documents encompassed by item 3 of the Preliminary Statement. Subject to the limitations in the preceding sentence, the Bureau will search its files and produce non-privileged documents responsive to this request.

**<u>Document Request #11</u>**:

All Documents relating to Communications that Navient Solutions made to Navient Borrowers or their cosigners about eligibility for cosigner

release.

**<u>Response to Document Request #11</u>**:

The Bureau objects to this request to the extent it seeks documents protected from disclosure by the deliberative process privilege, bank examination privilege, law enforcement investigatory privilege, attorney work product doctrine, attorney-client privilege, common interest privilege, or any other privilege or protection. In addition, the Bureau objects to this request on the ground that it has already produced documents responsive to this request at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017. Finally, the Bureau objects to this request on the ground that documents that contain information sought by this document request are equally available to Navient Solutions and the Bureau; as explained in item 3 of the Preliminary Statement, the Bureau is not producing those documents.

The Bureau further objects to this request on the ground that it is overly broad and unduly burdensome, and seeks information not relevant to any claim or defense, because it is not limited to the communications about eligibility for cosigner release that are the subject of the allegations in the Complaint.

Subject to and without waiving the foregoing objections, the Bureau will search its files and produce non-privileged documents relating to communications that Navient Solutions made to Navient Borrowers or their cosigners about the minimum number of consecutive, on-time payments required to apply for cosigner release.  Based on the foregoing objections, the Bureau will not produce: (a) documents produced at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017; (b) documents encompassed by item 3 of the Preliminary Statement; and (c) documents that relate solely to communications about any aspects of eligibility for cosigner release that are not the subject of any allegation in the Complaint.

**Document Request #12**:

All Documents relating to Navient Borrowers who applied for cosigner release but did not qualify because they made no payment in a month in which the Borrower received a bill for $0.

**Response to Document Request #12**:

The Bureau objects to this request to the extent it seeks documents protected from disclosure by the deliberative process privilege, bank examination privilege, law enforcement investigatory privilege, attorney

work product doctrine, attorney-client privilege, common interest privilege, or any other privilege or protection. In addition, the Bureau objects to this request on the ground that it has already produced documents responsive to this request at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017. Finally, the Bureau objects to this request on the ground that documents that contain information sought by this document request are equally available to Navient Solutions and the Bureau; as explained in item 3 of the Preliminary Statement, the Bureau is not producing those documents.

Based on the foregoing objections, the Bureau will not produce: (a) documents produced at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017; and (b) documents encompassed by item 3 of the Preliminary Statement. Subject to the limitations in the preceding sentence, the Bureau will search its files and produce non-privileged documents responsive to this request.

**Document Request #13**:

All Documents relating to Communications with credit reporting agencies relating to the AL reporting code.

**Response to Document Request #13**:

The Bureau objects to this request to the extent it seeks documents protected from disclosure by the deliberative process privilege, bank examination privilege, law enforcement investigatory privilege, attorney work product doctrine, attorney-client privilege, common interest privilege, or any other privilege or protection. In addition, the Bureau objects to this request on the ground that it has already produced documents responsive to this request at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017. Finally, the Bureau objects to this request on the ground that documents that contain information sought by this document request are equally available to Navient Solutions and the Bureau; as explained in item 3 of the Preliminary Statement, the Bureau is not producing those documents.

Based on the foregoing objections, the Bureau will not produce: (a) documents produced at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017; and (b) documents encompassed by item 3 of the Preliminary Statement. Subject to the limitations in the preceding sentence, the Bureau will search its files and produce non-privileged documents responsive to this request.

**<u>Document Request #14</u>**:

All Documents relating to the damages and civil money penalties being sought in the Complaint.

**Response to Document Request #14**:

The Bureau objects to this request to the extent it seeks documents protected from disclosure by the deliberative process privilege, bank examination privilege, law enforcement investigatory privilege, attorney work product doctrine, attorney-client privilege, common interest privilege, or any other privilege or protection. In addition, the Bureau objects to this request on the ground that it has already produced documents responsive to this request at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017. Finally, the Bureau objects to this request on the ground that documents that contain information sought by this document request are equally available to Navient Solutions and the Bureau; as explained in item 3 of the Preliminary Statement, the Bureau is not producing those documents.

Based on the foregoing objections, the Bureau will not produce: (a) documents produced at the Rule 30(b)(6) deposition of the Bureau that occurred on August 4, 2017; and (b) documents encompassed by item 3 of the Preliminary Statement. Subject to the limitations in the preceding

sentence, the Bureau will search its files and produce non-privileged documents responsive to this request.

**Document Request #15**:

All Documents considered or relied upon in responding to any Interrogatory.

**Response to Document Request #15**:

The documents relied upon in responding to the above interrogatories are all identified in the responses. To the extent that these documents do not fall within the scope of items 3 and 4 in the "Preliminary Statement," the Bureau will search its files and produce non-privileged documents responsive to this portion of the request.

With respect to the remainder of the request seeking documents "considered" by the Bureau in preparing the response to any interrogatory, the Bureau objects to the request on the ground that it requests that the Bureau produce documents revealing the Bureau's attorney work product. Producing documents that the Bureau considered but did not rely upon in preparing the response to any interrogatory would reveal the thought processes, mental impressions, and litigation strategy of Bureau attorneys. The Bureau will not produce any documents in response to this portion of

the request.

Dated: August 21, 2017

Anthony Alexis
*Enforcement Director*

David Rubenstein
*Deputy Enforcement Director*

Thomas Kim
*Assistant Deputy Enforcement Director*

  /s/ Nicholas Jabbour
Nicholas Jabbour, DC 500626
(Email: Nicholas.Jabbour@cfpb.gov)
(Phone: 202-435-7508)
Ebony Sunala Johnson, VA 76890
(Email: Ebony.Johnson@cfpb.gov)
(Phone: 202-435-7245)
Andrea Matthews, MA 694538
(Email: Andrea.Matthews@cfpb.gov)
(Phone: 202-435-7591)
*Enforcement Attorneys*

1700 G Street NW
Washington, DC 20552
Fax: 202-435-9346

*Attorneys for Plaintiff*
*Consumer Financial Protection Bureau*

## CERTIFICATE OF SERVICE

I certify that on August 21, 2017, I served the foregoing document by email to the following counsel for Defendants:

Jonathan Paikin: jonathan.paikin@wilmerhale.com
Daniel P. Kearney, Jr.: Daniel.kearney@wilmerhale.com
Matthew T. Martens: matthew.martens@wilmerhale.com
Karin Dryhurst: Karin.dryhurst@wilmerhale.com
Gideon Hart: Gideon.hart@wilmerhale.com
Donna A. Walsh: dwalsh@mbklaw.com
Daniel T. Brier: dbrier@mbklaw.com

Mr. Kearney, on behalf of Defendants, previously consented to electronic service.

  /s/ Nicholas Jabbour
Nicholas Jabbour, DC 500626
Nicholas.Jabbour@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-7508
Fax: 202-435-9346

*Attorney for Plaintiff*
*Consumer Financial Protection Bureau*