# EXHIBIT 6

Exhibit 6

CONFIDENTIAL – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Consumer Financial Protection Bureau, <br><br> Plaintiff, <br><br> v. <br><br> Navient Corporation, *et al.*, <br><br> Defendants. | Case No. 3:17-CV-00101-RDM <br> (Hon. Robert D. Mariani) |

## PLAINTIFF'S SUPPLEMENTAL RESPONSE TO DEFENDANT NAVIENT SOLUTIONS, LLC'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff, the Consumer Financial Protection Bureau ("Bureau"), hereby submits this Supplemental Response to the First Set of Interrogatories and Requests for Production from Defendant Navient Solutions, LLC ("Navient Solutions"). The Bureau incorporates by reference, as though fully restated herein, all paragraphs of the Preliminary Statement set forth in the Bureau's prior Response to Navient Solutions' First Set of Interrogatories and Requests for Production.

**Interrogatory #1**:

Identify each Person who has or might have information or knowledge relating to the allegations in the Complaint against Navient Solutions, including a description of what information or knowledge each identified Person possesses.

**Supplemental Response to Interrogatory #1**:

The Bureau incorporates by reference, as if fully set forth herein, all objections asserted in its prior response to interrogatory #1. Subject to and without waiving those objections, the Bureau supplements its response by identifying the following individuals along with a description of the information or knowledge each individual has or might have relating to the allegations in the Complaint against Navient Solutions:

### A.    Defendants' Former Employees

| Name | Contact Information | Date of Interview | Description of Information or Knowledge |
|------|---------------------|-------------------|----------------------------------------|
| Joseph Bednarski | ███████████ | October 22, 2014 | Navient's customer service operations and quality assurance processes.  The former employee worked as a claims analyst and later as a quality assurance specialist.  In those capacities, among other things, he rated and scored customer service calls.  He also gained familiarity with Navient's training processes, call centers and escalation processes, software applications, automated systems, and scripts. |

| | | | |
|---|---|---|---|
| Ebone Ross | ███████ | October 29, 2014 | Navient's customer service operations, quality assurance processes, and employee training. The former employee worked as a customer service representative from 2007-2010 and later in quality assurance. In those capacities, among other things, she handled and rated customer service calls and escalated calls and provided technical training to new employees. |
| Isaiah McGhee | ███████ | October 28, 2014 | Navient's customer service operations and employee training. The former employee worked as a loan specialist and later in fraud prevention and technical training. In those capacities, among other things, he trained new hires and gained familiarity with Navient's call center processes. |
| John Blum | ███████ | October 21, 2014 | Navient's customer service operations, quality assurance processes, and employee training. The former employee worked as a sales specialist and later as a monitoring specialist in quality assurance. In those capacities, among other things, he scored customer service calls and gained familiarity with metrics used to analyze customer calls, as well as Navient's employee training and software applications. The former employee elevated concerns to management regarding the fact that customer calls lasting longer than six minutes that may contain issues were not subject to review. |

| | | | |
|---|---|---|---|
| Morgan Anderson | ███████ | October 28, 2014; November 1, 2017 | Navient's customer service operations, collections operations, payment processing systems, consumer complaint resolution procedures, employee training, and compensation of customer service employees. The former employee worked as a collection specialist and later as a technical servicing trainer. In those capacities, among other things, he made collections calls, trained new customer service employees in servicing, and listened to calls for training purposes. During his time at Navient, the former employee gained familiarity with, among other things, Navient's hiring and training programs, software applications, scripts regarding forbearance, metrics used to analyze calls, the call escalation process, and payment processing of consecutive partial payments. |
| Alan Collinge | | | Navient's communications with consumers regarding repayment options, including Navient's failure to adequately inform consumers who enroll in forbearance that interest will capitalize during the forbearance period.

Navient's payment processing errors, including continuing to bill consumers whose accounts were paid in full. |

## B.    Consumers[1]

| Name | Contact Information | Date of Interview | Description of Information or Knowledge |
|---|---|---|---|
| ████ | ████ ████ | January 27, 2017 | Navient's payment processing errors in or about 2016 and 2017, including allocating the consumer's payments to loans contrary to the consumer's instructions specifying payments to certain loans. |
| ████ | ████ ████ | January 25, 2017 | Navient's communications with the consumer regarding repayment options in or about 2012, including a call with the consumer regarding Navient placing the consumer's loan in forbearance.  At that time, the consumer requested other repayment options and Navient did not offer any alternatives. |
| ████ | ████ | January 25, 2017 | Navient's communications with the consumer regarding repayment options in or about 2017, including a call with the consumer regarding an unpaid balance on his Stafford loans. At that time, the consumer requested repayment options and Navient indicated that there were no options available.<br><br>Navient's payment processing errors in or about 2013, including allocating the consumer's payments across multiple loans despite consumer's request to allocate payments to his Stafford loan. |

---

[1] This list includes all of the consumers identified in the Bureau's First Supplement to its Initial Disclosures, served on October 20, 2017, with the exception of ████. Upon further consideration, the Bureau does not at this time believe that Mr. ████ has information or knowledge relating to the allegations in the Complaint against Navient Solutions.

| | | | |
|---|---|---|---|
| ███████ | ████████ | January 27, 2017 | Navient's communications with the consumer regarding repayment options in or about 2015, including a call in which the consumer asked Navient if an income-based repayment option was available to her and Navient indicated it was not. In subsequent communications between Navient and the consumer, Navient offered the consumer a forbearance option only. |
| ███████ | ██████ | February 1, 2017 | Navient's communications with the consumer regarding repayment options, including communications regarding adjusting her federal loan payments.   At the time of such communication, Navient informed the consumer that her only option was forbearance. |
| ██████ | ██████ | February 2, 2017 | Navient's communications with the consumer regarding repayment options in or about 2011 and 2012, including communications regarding potential repayment options for her federal loans.  At that time, Navient offered the consumer only forbearance as an option. |
| ██████ | ██████ | February 13, 2017 | Navient's communications with the consumer regarding repayment options, including communications in which Navient offered the consumer only the forbearance option for her federal loans. Thereafter, when the consumer's forbearance options were exhausted, Navient offered to enroll her in an income-driven repayment plan. |

| | | July 19, 2016; February 13, 2017 | Navient's communications with the consumer regarding repayment options in or about 2013, including communications in which Navient informed the consumer that her only option was forbearance and did not provide information regarding other repayment options.<br><br>Navient's payment processing errors, including allocating the consumer's payments to all of the consumer's loans contrary to the consumer's instructions. |
|---|---|---|---|
| | | February 14, 2017 | Navient's communications with the consumer regarding repayment options, including communications in which Navient informed the consumer that the only options available to the consumer to repay her loans were forbearance or deferment. |
| | | February 16, 2017 | Navient's communications with the consumer regarding repayment options, potentially including statements about forbearance or income-driven repayment plans. The consumer's Parent PLUS loans were in forbearance multiple times prior to 2012.<br><br>Navient's payment processing errors, including Navient's changes to the consumer's monthly payment date resulting in overdraft charges and bounced checks on the consumer's bank account and Navient's failure to follow the consumer's instruction to adjust the payment date in or about 2011. |
| | | February 22, 2017 | Navient's communications with the consumer regarding repayment options in or about 2014, including certain communications in which the consumer requested a repayment plan for her federal loans. At that time, Navient did not offer her any repayment plans as option. |

| | | October 31, 2014; March 21, 2017 | Navient's furnishing of information to consumer reporting agencies relating to loans discharged due to the consumer's total and permanent disability. The consumer applied for a total and permanent disability discharge for his student loans and received a notice from Navient indicating that his loans were forgiven. In or about 2014 or 2015, the consumer experienced difficulty applying for credit. The consumer discovered that his credit score had dropped significantly because Navient used a credit reporting code indicating he had defaulted on the loan(s). |
| --- | --- | --- | --- |
| | | March 6, 2017 | Navient's communications with the consumer regarding repayment options, including certain communications with the consumer regarding repayment options on Parent Plus loans. At that time, Navient did not offer any repayment options other than forbearance. The consumer's loans were in forbearance from time to time beginning in or about 2007. |
| | | March 21, 2017 | Navient's communications with the consumer regarding repayment options in or after 2010, including communications in which Navient advised the consumer to consider forbearance and deferment. Later, upon the consumer's own research, the consumer applied for an income-based repayment plan. |
| | | March 15, 2017 | Navient's communications with the consumer regarding repayment options beginning in or about 2011, including communications regarding the consumer's repayment options. |

| | | | |
|---|---|---|---|
| ███████ | ███████ | March 10, 2017 | Navient's communications with the consumer regarding repayment options, including the consumer's request for reasonable repayment plans after the consumer's deferment options were exhausted. At that time, the only option offered by Navient to the consumer was forbearance. |
| ███████ | ███████ | March 3, 2017 | Navient's communications with the consumer regarding repayment options beginning in or about 2016, including the consumer's request for a lower monthly payment on the consumer's Parent PLUS loans. At that time, the only option offered by Navient to the consumer was forbearance. In 2017, Navient again offered the consumer a forbearance option. |
| ███████ | ███████ | February 27, 2017 | Navient's communications with the consumer regarding repayment options beginning in or about 2006 or 2007. When the consumer called Navient to discuss repayment plans, Navient indicated that forbearance was the only option. The consumer's loans were enrolled in multiple forbearances. |
| ███████ | ███████ | March 31, 2017 | Navient's communications with the consumer regarding repayment options, including the following: Navient told the consumer that her federal loans were private loans and that she did not qualify for income-driven repayment plans. The consumer's loans were in forbearance at least once. In or about 2017, Navient advised the consumer that her loans were eligible for an income-driven repayment plan. |

| | | | |
|---|---|---|---|
| ███████████ ████ | ████████ ████████ | March 28, 2017 | Navient's furnishing of information to consumer reporting agencies relating to loans discharged due to the total and permanent disability of consumers, including the following: The Department of Education discharged the consumer's loans in March 2014 due to the consumer's total and permanent disability. After March 2014, Navient reported the consumer's loans as outstanding and 120 days late. The consumer's credit score declined during the period associated with Navient's furnishing of incorrect credit information. |
| ████████ | ████████ | March 22, 2017 | Navient's communications with the consumer regarding repayment options, including the following: In or about 2016, Navient advised the consumer that forbearance was her only repayment option for one of her loans. The consumer discovered income-driven repayment options on her own. |
| ████████ | ████████ | April 13, 2017 | Navient's communications with the consumer regarding repayment options, including the following: Navient offered forbearance, an interest-only repayment plan, and income-based repayment as options. The consumer enrolled in forbearance for a long time. In or about 2007 or 2008, the consumer inquired with Navient about federal public service loan forgiveness. The principal balance on consumer's loan increased from approximately $45,000 to approximately $60,000 after at least one forbearance. |
| ████████ | ████████ | June 1, 2017 | Navient's payment processing errors, including that the consumer has had to contact Navient on at least four occasions to have Navient reallocate her payment to the loan with the highest interest rate. |

| | | | |
|---|---|---|---|
| ███████ | ████████ | May 2, 2017 | Navient's payment processing errors relating to Navient's processing of payments from the U.S. military, which were made in connection with the consumer's military service. The consumer believes that the U.S. military provided sufficient funds to pay off the loans, but an error by Navient resulted in an outstanding balance. |
| ███████ | ████████ | May 8, 2017 | Navient's communications with the consumer regarding repayment options, including the following: In or about 2016, when the consumer called Navient to discuss repayment plans, Navient indicated that forbearance was the only option. The consumer's loans were enrolled in forbearance. The consumer subsequently learned from a third party about income-drive repayment options, and he proceeded to apply for an income-based repayment plan. |
| ████████ | ████████ | June 14, 2017 | Navient's payment processing errors, including the following: In approximately fall 2015, Navient told the consumer that it was enrolling him in forbearance but did not do so, resulting in late payments and negative information reported to credit bureaus. The consumer attempted to bring his account current using auto-debit, but Navient did not collect sufficient funds as he intended. |
| █████ | ██████ | June 9, 2017 | Navient's communications with the consumer regarding repayment options. Beginning on or about 2007, the consumer's loans have been in forbearance and deferment from time to time. |

| | | | |
|---|---|---|---|
| ███████ | ███████████ | July 10, 2017 | Navient's communications with the consumer regarding repayment options, including the following: From approximately 2010 to 2014, when the consumer called Navient to discuss repayment plans, Navient indicated that forbearance was the only option. During this time, the consumer's loans were in multiple forbearances. In 2014, the consumer's loans were in default. Subsequently, the consumer entered a loan rehabilitation program. Navient's payment processing errors, including that Navient refused to allocate the consumer's payments to her highest interest rate loans. |
| ████████ | ████████ | June 15, 2017 | Navient's communications with the consumer regarding repayment options. During 2013 or 2014, the consumer's account was current but the consumer was struggling to make payments. Navient provided the consumer with conflicting information about whether he should let his account become past due to receive help from Navient.  The consumer's loans were enrolled in forbearance from approximately 2009 until 2012. |
| ██████ | ████████ | June 26, 2017 | Navient's communications with the consumer regarding repayment options, including the following: When the consumer contacted Navient about repayment assistance, Navient advised the consumer that forbearance or collections were the only options for his federal loans. The capitalization of interest on consumer's loans increased his principal balance by approximately $██████ |

| | | | |
|---|---|---|---|
| ▉ | ▉ | July 11, 2017 | Navient's communications with the consumer regarding repayment options in or about 2016.  When the consumer called Navient, she indicated that she was unemployed and that her payments were too high. Navient indicated that her only option was forbearance and did not discuss income-driven repayment plans. |
| ▉ | ▉ | July 17, 2017 | Navient's communications with the consumer regarding repayment options. The consumer's loans were in multiple forbearances during periods of the consumer's unemployment, including during 2009. Prior to one of the forbearances, Navient advised the consumer that income-driven repayment was not available for her. Consumer learned about income-based repayment on her own, and enrolled in it recently. |
| ▉ | ▉ | July 17, 2017 | Navient's communications with the consumer regarding repayment options, including the following: beginning in or about 2007, Navient repeatedly told the consumer that forbearance was her only option and did not discuss income-driven repayment plans. The consumer's principal balance increased by approximately $▉. Navient recently suggested an income-based repayment plan after the consumer's eligibility for forbearance or deferment expired. |
| ▉ | ▉ | July 17, 2017 | Navient's communications with the consumer regarding repayment options. The consumer's loans were enrolled in multiple forbearances until approximately October 2015, The consumer discovered, on her own, income-driven repayment options and enrolled in income-based repayment in 2016. |

| | | | |
|---|---|---|---|
| ▮▮▮▮ | ▮▮▮▮ | July 14, 2017 | Navient's communications with the consumer regarding repayment options, including the following: From approximately 2007 until recently, when the consumer called Navient to discuss repayment plans, Navient indicated that forbearance was the only option. During this period, the consumer's loans were enrolled in multiple forbearances. The consumer discovered, on his own, income-driven repayment options and applied in 2017 for such a plan. |
| ▮▮▮▮ | ▮▮▮▮ | July 19, 2017 | Navient's communications with the consumer regarding repayment options beginning in or about 2008, potentially including statements about forbearance or income-driven repayment plans.  The consumer's loans were enrolled in forbearance while the consumer was unemployed. |
| ▮▮▮▮ | ▮▮▮▮ | August 24, 2017 | Navient's communications with the consumer regarding repayment options beginning in or about 2005, potentially including statements about forbearance or income-driven repayment plans. |
| ▮▮▮▮ | ▮▮▮▮ | August 16, 2017 | Navient's communications with the consumer regarding repayment options, potentially including statements about forbearance or income-driven repayment plans. The consumer's loans have been in forbearance multiple times, including during periods of unemployment. |
| ▮▮▮▮ | ▮▮▮▮ | July 31, 2017 | Navient's communications with the consumer regarding repayment options beginning in or about 2008, including that Navient advised the consumer that forbearance was the only available option when he faced financial hardship. |

| | | | |
|---|---|---|---|
| ■■■■■ | ■■■■■ | August 7, 2017 | Navient's communications with the consumer regarding repayment options, potentially including statements about forbearance or income-driven repayment plans. Prior to 2015, the consumer's loans were in forbearance or deferment multiple times, including during periods of unemployment. In 2015, the consumer enrolled in an income-driven repayment plan. |
| ■■■■■ | ■■■■■ | July 20, 2017 | Navient's communications with the consumer regarding repayment options, including the following: Beginning in or about 2012 until 2015, when the consumer called Navient to discuss repayment plans, Navient indicated that forbearance was the only option. The consumer's loans were in forbearance during this period. |
| ■■■■■ | ■■■■■ | June 28, 2017 | Navient's communications with the consumer regarding repayment options beginning in or about 2014, potentially including statements about forbearance or income-driven repayment plans. |
| ■■■■■ | ■■■■■ | August 2, 2016 | Navient's payment processing errors, including Navient's inability to correctly process payments submitted through autopay and charging related late fees and interest capitalization. |
| ■■■■■ | ■■■■■ | November 23, 2016 | Navient's communications with the consumer regarding repayment options, including communications in which Navient pushed the consumer to enroll in forbearance and informed her that her only option other than regular repayment was forbearance. |

| | | | |
|---|---|---|---|
| ▮▮▮▮▮ | | December 1, 2016 | Navient's communications with the consumer regarding repayment options, potentially including statements about forbearance or income-driven repayment plans. The consumer has several federal student loans.  While the consumer is currently making payments, she has experienced significant financial hardship as a result. |
| ▮▮▮ | ▮▮▮ | November 14, 2014 | Navient's payment processing errors, including Navient's autopay withdrawal of funds from the consumer's bank account in excess of the monthly amount due reported in the consumer's billing statements. |
| ▮▮▮ | ▮▮▮ | April 21, 2015 | Navient's communications with the consumer regarding repayment options, potentially including statements about forbearance or income-driven repayment plans. The consumer's loans were in forbearance in or about 2015.<br><br>Navient's payment processing errors, including debiting the consumer's bank account on an incorrect payment processing date, resulting in overdrafts of the consumer's account. |
| ▮▮ | ▮▮ | | Navient's payment processing errors, including misapplication of the consumer's loan payments. |
| ▮▮ | ▮▮ | | Navient's communications with the consumer regarding repayment options.  When the consumer contacted Navient because he was unable to make the scheduled payment, the only option Navient provided was to use forbearance. |
| ▮▮ | ▮▮▮ | ▮▮ | Navient's communications with the consumer regarding repayment options.  Prior to the consumer enrolling in an income-based repayment plan, the consumer's loans were in forbearance based upon Navient's recommendation. |

| | | | |
|---|---|---|---|
| ■■■■ | ■■■■■ | | Navient's communications with the consumer regarding repayment options prior to the consumer's application for income-based repayment in 2017, during a period that the consumer experienced severe financial hardship. |
| ■■■■ | ■■■■■ | February 7, 2017 | Navient's communications with the consumer regarding repayment options, including communications following the consumer's car accident in which Navient did not offer the consumer income-based repayment options. |
| ■■■ | | | Navient's payment processing errors, including processing the consumer's in-school deferment, charging associated late fees, and related credit reporting. |
| ■■■ | ■■■ | | Navient's communications with the consumer regarding repayment options. In or about 2017, the consumer's loans were on a graduated extended plan under which the consumer repaid interest only and the consumer was not aware of any other repayment plans. |
| ■■■ | ■■■ | | Navient's payment processing errors. Navient erroneously charged late fees. |
| ■■■■ | ■■■■■ | December 3, 2013 | Navient's payment processing errors, including misapplication of payments contrary to the consumer's instructions and errors regarding the processing of overpayments. |
| ■■■■ | | | Navient's communications with the consumer regarding repayment options. The consumer's federal loans with Navient were put into forbearance beginning in or about 2016. During that period and later, the consumer experienced significant financial hardship but was unable to obtain a workable repayment option. |

| | | June 12, 2017 | Navient's communications with the consumer regarding repayment options over a period of many years during which the consumer went into forbearance approximately three times due to job loss, disability and bankruptcy. |
|---|---|---|---|

## C.    Other Individuals

| Name | Contact Information | Date of Interview | Description of Information or Knowledge |
|---|---|---|---|
| | | February 24, 2017 | Navient's communications with consumers regarding repayment options, including communications in which Navient enrolled consumers in forbearance and did not inform consumers of other repayment options.<br><br>Navient's payment processing errors, including misallocation of student loans payment made to Navient. |
| | | | Navient's payment processing errors, including Navient's repeated allocation of a consumer's payments to all of the consumer's student loans contrary to the consumer's instructions to allocate the payment to the consumer's federal loan. |
| | | | Navient's payment processing errors, including Navient's repeated misallocation or misapplication of a consumer's loan reduction payments made within 120 days of disbursement of the consumer's loans, contrary to the consumer's instructions. |

## **Interrogatory #5**:

Identify each statement upon which a Navient Borrower relied for the

belief that Navient Solutions would act in the Borrower's interests, including the identity of each Navient Borrower who relied on such statements, and describe the circumstances.

**<u>Supplemental Response to Interrogatory #5</u>:**

The Bureau incorporates by reference, as if fully set forth herein, all objections asserted in its prior response to interrogatory #5. Subject to and without waiving those objections, the Bureau supplements its response as follows: In delinquency notices sent to borrowers in various stages of delinquency, Sallie Mae instructed those borrowers to contact Sallie Mae for assistance in evaluating various alternative repayment options, including explicit assurances that it was "here to help" the borrower "[f]ind the best option for you." For example, several template delinquency notices contain the following language:

- "If you're experiencing financial difficulty, options may be available to help bring your account current: lower monthly payments provided through income-sensitive, income-based, or income-contingent repayment plans; payment postponement, such as deferment or forbearance; loan consolidation. Find the best option for you by calling us immediately, toll free at 800-

722-1300. We're here to help you Monday–Thursday, 8 a.m. to 9 p.m., and Friday, 8 a.m. to 5 p.m., ET.[2]

Other template delinquency notices contained similar language, including instructions to the borrower to call Sallie Mae "to discuss the best option for you" and other similar representations.[3]

Sallie Mae also included the following statement or substantially similar statements in various other notices sent to borrowers, such as notices informing federal student loan borrowers of a change in interest rate or a transfer of their loans to Sallie Mae: "If the new payment amount is difficult for you to manage, we encourage you to contact us for repayment options that better meet your needs."[4]

_____

[2] NSI-011-0001261, NSI-011-0001493, NSI-011-0003010, NSI-011-0003162.
[3] NSI-005-0001664, NSI-005-0001690, NSI-005-0001694, NSI-005-0002344, NSI-005-0002348, NSI-005-0002653, NSI-005-0005692, NSI-005-0005694, NSI-005-0006072, NSI-005-0006074, NSI-005-0006106, NSI-005-0006111, NSI-005-0006270, NSI-005-0006272, NSI-005-0006554, NSI-005-0006556, NSI-011-0000295, NSI-011-0001264, NSI-011-0001279, NSI-011-0001455, NSI-011-0003012, NSI-011-0003018, NSI-011-0003109, NSI-011-0003115, NSI-011-0003164.
[4] NSI-005-0004638, NSI-005-0001221, NSI-005-0004636, NSI-005-0008069, NSI-005-0008080.

## Interrogatory #7

Identify each Navient Borrower harmed by enrollment in a forbearance, as alleged in paragraph 146 of the Complaint, and describe the injury suffered by that Borrower.

## Supplemental Response to Interrogatory #7:

The Bureau incorporates by reference, as if fully set forth herein, all objections asserted in its prior response to interrogatory #7. Subject to and without waiving those objections, the Bureau identifies the following consumers:



- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
-



The Bureau believes these consumers likely suffered one or more of the following harms: (1) additional interest charged or expected to be charged as a result of any capitalization events associated with the forbearance(s); (2) delayed progress toward the loan forgiveness associated with income-driven repayment; and (3) loss of an interest subsidy from the federal government.

**<u>Interrogatory #8</u>**:

Describe each Communication about repayment plans and forbearance that Navient Solutions provided to Borrowers, including a description of Communications required by federal regulations.

## Supplemental Response to Interrogatory #8:

The Bureau incorporates by reference, as if fully set forth herein, all objections asserted in its prior response to interrogatory #8. Subject to and without waiving those objections, the Bureau identifies the following communications that Navient Solutions provided to Borrowers about repayment plans and forbearance. These communications are reflected in the documents cited below, which speak for themselves.

## 1. Website statements

Navient Solutions has published various statements on its website that have communicated information to borrowers about repayment plans and forbearance, including such statements on the following pages of its website (as of October 20, 2017):

- https://www.navient.com/loan-customers/payment-plans/traditional-repayment-plans/

- https://www.navient.com/loan-customers/payment-plans/plans-based-on-your-income/

- https://www.navient.com/loan-customers/payment-plans/income-driven-repayment-annual-renewal/

- https://www.navient.com/loan-customers/postponing-payments/if-you-are-having-trouble/

- https://www.navient.com/loan-customers/postponing-

  payments/deferment-and-forbearance/

- https://www.navient.com/loan-customers/postponing-payments/avoiding-default/

- https://www.navient.com/loan-customers/documents-and-forms/general-forms/

  In addition to providing general information about forbearance, deferment, and types of repayment options, these pages include the following statements encouraging borrowers experiencing financial hardship to contact Navient Solutions for assistance in evaluating the various alternative repayment options:

- "[I]f you're having trouble, there are options for assistance, including income-driven repayment plans, deferment, forbearance, and solutions to help you avoid delinquency and prevent default .... We can work with you to help you get back on track, and are sometimes able to offer new or temporarily reduced payment schedules. Contact us at 800-722-1300 and let us help you make the right decision for your situation."[5]

- "If you're experiencing problems making your loans payments, please contact us. Our representatives can help you by identifying options and solutions, so you can make the right decision for your situation."[6]

---

[5] https://www.navient.com/loan-customers/postponing-payments/if-you-are-having-trouble/.

[6] https://www.navient.com/loan-customers/postponing-payments/avoiding-default/.

- "Navient is here to help. We've found that, 9 times out of 10, when we can talk to a struggling federal loan customer we can help him or her get on an affordable payment plan and avoid default."[7]

Previously, Navient's website similarly told borrowers that it was "committed to giving you the information and tools you need to understand and evaluate your student loan payment options. We can help you find an option that fits your budget, simplifies payment, and minimizes your total interest cost."

The Navient Solutions website, as of October 20, 2017, also includes links to the following videos that provide information to borrowers about repayment options, including income-driven repayment plans:

- Video titled "Student Loan Repayment Options," at https://www.navient.com/loan-customers/money-and-finances/path-to-success-video-series/
- Video titled "Income-Driven Repayment Plans" at https://www.navient.com/loan-customers/money-and-finances/path-to-success-video-series/

## 2. Phone calls with borrowers

Navient Solutions has had oral communications with borrowers about repayment options and forbearance during phone calls with

_____

[7] https://www.navient.com/loan-customers/getting-started/successful-student-loan-borrowers/.

borrowers, as indicated by the flow charts produced by Navient Solutions that appear to instruct its employees who handle calls with borrowers to mention or discuss one or more repayment plans, deferment, or forbearance, depending on the borrower's responses to certain questions. *See* NAVAG-0077777 and NAVAG-0077780. For example, the flow charts bates numbered NAVAG-0077778 and NAVAG-0077780 direct Navient Solutions employees to offer only deferment or forbearance to borrowers who indicate that they cannot afford to make any payment.

Similarly, calls between Navient Solutions and borrowers that reflected the procedures outlined in the following testimony of Patricia Peterson are communications that relate to forbearance:

> Q: "So is it fair to say that deferment is – for a borrower who is expressing a short-term or temporary situation, that deferment would be the first thing that could likely be introduced to them, and then you would – the agent would next be instructed to offer some sort of income-driven repayment plan; is that correct?"
>
> A: . . . . If they can't afford to make any payment, then you would be looking at a forbearance.

The Bureau has also identified the following specific calls in which forbearance or repayment options (including deferment) are mentioned or discussed:

- NSI-017-11
- NSI-018-5
- NSI-018-8
- NSI-018-54
- NSI-018-70
- NSI-018-73
- NSI-018-86
- NSI-018-92
- NSI-018-95
- NSI-018-98
- NSI-018-109
- NSI-020-37
- NSI-020-38
- NSI-020-78
- NSI-020-87
- NSI-020-93
- NSI-020-116
- NSI-020-150
- NSI-020-175
- NSI-020-179
- NSI-020-185
- Illinois AG presentation, Part 2, Call 65590
- Illinois AG presentation, Part 4, Call 65554
- Audio file attached to August 21, 2014 email from Ralph Farmer, Audit and Compliance Auditor, CEANNATE Corp.

## 3. Additional examples of communications with specific borrowers

The documents included at tabs A-24 through A-31 of the binder

produced by the Bureau at Defendants' Rule 30(b)(6) deposition of the

Bureau reflect additional specific examples of communications between

Navient Solutions and specific borrowers about repayment plans and forbearance.

## 4. Forms, templates, and exemplars of communications with borrowers about repayment plans or forbearance

In its responses to the Bureau's First Set of Requests for Production, Navient Solutions listed four categories of documents that it produced to the Bureau during the pre-litigation investigation that Navient Solutions claims contain or reflect communications with borrowers about repayment plans or forbearance. *See* Navient Solutions response to interrogatory #2. The Bureau addresses each of these categories below.

First, Navient Solutions has represented that it has produced documents that are exemplars of billing statements, within the Bates range SLMA-005-0000001 – SLMA-005-0000100. The Bureau does not dispute that these documents are exemplars of billing statements. The Bureau also does not dispute that each of these documents contains the following language: "What repayment options are available? We provide various repayment options that may be available to you. Log in to your account at SallieMae.com to view the available options, or call us for more info. For your Department of Education loan(s), please visit StudentAid.ed.gov."

Second, Navient Solutions has represented that it has produced form or template documents used to communicate with borrowers about repayment plans or forbearance. According to Navient Solutions, these documents fall within the Bates ranges NSI-005-0000754 – NSI-005-0009511, NSI-010-0013393 – NSI-010-0013437, and NSI-011-0000001 – NSI-011-0004193. The Bureau does not currently have information that confirms or disputes Navient Solutions' representation that these documents are form or template documents used to communicate with borrowers. As for the content of such communications, the documents speak for themselves. The documents within these Bates ranges that contain or reflect information about repayment plans or forbearance communicated to borrowers can be determined from the face of the documents. A number of the documents within these Bates ranges do not contain or reflect any information about repayment plans or forbearance communicated to borrowers. *See, e.g.*, NSI-005-0002267, NSI-005-0004634. It would be unduly burdensome for the Bureau to review all of these documents to determine which ones contain or reflect information about repayment plans or forbearance communicated to borrowers and which ones do not. Moreover, the burden of doing so would be less for

Navient Solutions because they are its own documents, and Navient Solutions thus has superior ability to identify the responsive documents within the set. Therefore, pursuant to Federal Rule of Civil Procedure 33(d), the Bureau responds that Navient Solutions can identify responsive documents within the Bates ranges indicated above.

Notwithstanding the above and subject to ongoing discovery, the Bureau states that it does not at this time dispute: (1) Navient Solutions' representation that documents within the Bates ranges indicated above are form or template documents used to communicate with borrowers and (2) a portion of the communication is about repayment plans or forbearance, to the extent that the part(s) of the document that reflects the information communicated to the borrower contains any of the following terms:

- forbearance
- repayment plan
- repayment option
- income-driven repayment
- income-driven plan
- IDR
- income-sensitive repayment
- income-sensitive plan
- income-based repayment
- income-based plan
- IBR
- income-contingent repayment
- income-contingent plan

- ICR
- Pay As You Earn
- PAYE
- graduated repayment
- extended repayment

Third, Navient Solutions has represented that it has produced scripts, form letters, policies, or training manuals related to advising borrowers of their repayment rights, including but not limited to any type of loss mitigation program including the ability for their loans to be placed into forbearance. According to Navient Solutions, these documents fall within the Bates ranges NSI-001-0004407 – NSI-001-0018519 and NSI-016-0018154 – NSI-016-0064412. While scripts and form letters used to communicate with borrowers about repayment rights, including any type of loss mitigation program and forbearance, would be responsive to this interrogatory, it would be unduly burdensome for the Bureau to identify each such document within the entire set. Numerous documents within this set contain no information about forbearance or repayment plans, including many internal policies that cover topics entirely unrelated to communications about forbearance or repayment plans. *See, e.g.,* NSI-001-0004934, NSI-001-0004937, NSI-001-0005261, NSI-016-0018158, NSI-

016-0062753, NSI-001-0009351, NSI-001-0004695. Additionally, the Bureau's ability to perform this task is greatly limited because the nature and purpose of each specific document is often unclear to the Bureau. The burden of performing this task is substantially less for Navient Solutions because they are its own documents and thus, it has superior ability to identify the responsive documents within the set. Therefore, pursuant to Federal Rule of Civil Procedure 33(d), the Bureau responds that Navient Solutions can identify responsive documents within the Bates ranges indicated above.

Fourth, Navient Solutions has represented that it has produced three documents that are educational, promotional, or other material provided by SLM Corporation or a third party to borrowers who were in default or indicated an inability to pay their federal or private loans. These documents are Bates numbered NSI-001-0018849, NSI-016-0055313 – NSI-016-0055314, and NSI-016-0063674 – NSI-016-0063675. The Bureau does not dispute that these documents contain information about repayment options or forbearance.

## 5. Description of communications required by federal regulations

To the extent this interrogatory seeks to have the Bureau separately identify "Communications required by federal regulations," the Bureau continues to object on the ground that the Bureau cannot discern the drafting intent behind every communication that Navient Solutions sent to borrowers and is thus not in a position to identify which communications were deemed by Navient Solutions to be required by federal regulations. Subject to and without waiving its objections, pursuant to Federal Rule of Civil Procedure 33(d), the Bureau responds that Navient Solutions can identify these documents by reviewing the documents in the Bates ranges listed under: SLMA-005-0000001 – SLMA-005-0000100, NSI-005-0000754 – NSI-005-0009511, NSI-010-0013393 – NSI-010-0013437, and NSI-011-0000001 – NSI-011-0004193, NSI-001-0004407 – NSI-001-0018519 and NSI-016-0018154 – NSI-016-0064412, NSI-001-0018849, NSI-016-0055313 – NSI-016-0055314, and NSI-016-0063674 – NSI-016-0063675.

**Interrogatory #11**:

Identify any and all false or misleading Communications from

Navient Solutions to any Borrower, and identify any Documents that you contend support Your allegation.

**<u>Supplemental Response to Interrogatory #11</u>**:

The Bureau incorporates by reference, as if fully set forth herein, all objections asserted in its prior response to interrogatory #11. In its September 28, 2017 letter to the Bureau, Navient Solutions agreed to limit this interrogatory so that it seeks identification of only the false or misleading statements that form the basis for the allegations in the Complaint. Subject to and without waiving its objections and in light of the agreed-upon modification, the Bureau identifies the following false or misleading communications from Navient Solutions to any borrower:

- The statements on Navient's website quoted in paragraphs 38 and 39 of the Complaint, in which Navient Solutions informed borrowers experiencing financial hardship that if they contacted Navient Solutions, Navient Solutions would help the borrower identify the right repayment option for their situation.

- The communications referenced in the Bureau's supplemental response to interrogatory #5 in which Sallie Mae assured

delinquent borrowers that if they called Sallie Mae, Sallie Mae would be "here to help" the borrower "[f]ind the best option for you" or that Sallie Mae would "discuss the best option for you." Documents that the Bureau contends support this allegation include: NSI-011-0001261, NSI-011-0001493, NSI-011-0003010, NSI-011-0003162, NSI-005-0001664, NSI-005-0001690, NSI-005-0001694, NSI-005-0002344, NSI-005-0002348, NSI-005-0002653, NSI-005-0005692, NSI-005-0005694, NSI-005-0006072, NSI-005-0006074, NSI-005-0006106, NSI-005-0006111, NSI-005-0006270, NSI-005-0006272, NSI-005-0006554, NSI-005-0006556, NSI-011-0000295, NSI-011-0001264, NSI-011-0001279, NSI-011-0001455, NSI-011-0003012, NSI-011-0003018, NSI-011-0003109, NSI-011-0003115, and NSI-011-0003164.

- The communications referenced in the Bureau's supplemental response to interrogatory #5 in which Sallie Mae included the following language or similar language: "If the new payment amount is difficult for you to manage, we encourage you to

contact us for repayment options that better meet your needs."
Documents that the Bureau contends support this allegation
include: NSI-005-0004638, NSI-005-0001221, NSI-005-
0004636, NSI-005-0008069, and NSI-005-0008080.

- Calls with borrowers experiencing financial hardship who did
  not indicate that their hardship was short-term or temporary, in
  which Navient Solutions stated, suggested, or implied either (1)
  that forbearance was the only available option or the
  appropriate option for the borrower or (2) that income-driven
  repayment plans were not an available or suitable option for the
  borrower, either by affirmatively saying so or by failing to
  mention or adequately advise the borrower about income-
  driven repayment plans as a potentially suitable option.
  Documents that the Bureau contends support this allegation
  include: Tabs A-24 through A-31 of the binder produced by the
  Bureau at Defendants' Rule 30(b)(6) deposition; the calls
  identified in the Bureau's supplemental response to
  interrogatory #8.

- The statement in Navient Solutions' pre-December 2012 recertification notice informing borrowers that "by providing incorrect or incomplete information the [renewal] process will be delayed." Documents that the Bureau contends support this allegation include: Tabs B-8 through B-11 of the binder produced by the Bureau at Defendants' Rule 30(b)(6) deposition.

- Navient Solutions' representation to borrowers that they could apply for co-signer release if they made a certain number of "consecutive, on-time principal and interest payments." Documents that the Bureau contends support this allegation include: Navient Solutions' June 13, 2014 response to interrogatory #5 of the Bureau's April 29, 2014 CID.

**Interrogatory #15**:

Describe each of Navient Solutions' payment processing practices that You allege is unfair.

**Supplemental Response to Interrogatory #15**:

The Bureau incorporates by reference, as if fully set forth herein, all

objections asserted in its prior response to interrogatory #15. Subject to and without waiving those objections, the Bureau supplements its response as follows: The Bureau alleges, in paragraphs 110-112 of the Complaint, that the following practices are unfair:

- "While Navient might correct a specific error if a consumer contacts Navient to report it, if the error is not escalated beyond a first-level customer service representative, Navient does not necessarily identify and fix the underlying issue causing the error to prevent it from recurring. As a result, some consumers have suffered the same payment processing error in multiple months." (Complaint ¶ 110.)

- "Moreover, Navient does not categorize most non-escalated consumer inquiries about payment processing errors. When borrowers and cosigners with non-escalated consumer inquiries contact Navient about payment processing errors, Navient personnel generally record details about the error in a freeform, narrative style in notes in the consumer's account, but those personnel are unable to use any codes or tags to categorize the

inquiry or concern." (Complaint ¶ 111.)

- "Navient, thus, is unable to systematically search and/or aggregate these non-escalated inquiries. As a result, Navient has been unable to effectively understand many of the problems that consumers are experiencing with respect to payment processing and take action to prevent these problems from recurring or from impacting the same consumer again and again." (Complaint ¶ 112.)

The Bureau further alleges that the foregoing practices resulted in recurring errors, including various payment processing errors. Examples of these payment processing errors are identified in the Bureau's prior response to this interrogatory.

CONFIDENTIAL – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

Dated: November 3, 2017

Anthony Alexis
*Enforcement Director*

David Rubenstein
*Deputy Enforcement Director*

Thomas Kim
*Assistant Deputy Enforcement Director*

_/s/ Nicholas Jabbour_____
Nicholas Jabbour, DC 500626
(Email: Nicholas.Jabbour@cfpb.gov)
(Phone: 202-435-7508)
Ebony Sunala Johnson, VA 76890
(Email: Ebony.Johnson@cfpb.gov)
(Phone: 202-435-7245)
Andrea Matthews, MA 694538
(Email: Andrea.Matthews@cfpb.gov)
(Phone: 202-435-7591)
Manuel G. Arreaza, NY 5025309
(Email: Manuel.Arreaza@cfpb.gov)
(Phone: 202-435-7850)
Nicholas Lee, DC 1004186
(Email: Nicholas.Lee@cfpb.gov)
(Phone: 202-435-7059)
*Enforcement Attorneys*

1700 G Street NW
Washington, DC 20552
Fax: 202-435-9346

*Attorneys for Plaintiff*
*Consumer Financial Protection Bureau*

CONFIDENTIAL – CONTAINS PERSONALLY IDENTIFIABLE INFORMATION (PII)
DO NOT DISTRIBUTE OR FILE PUBLICLY WITHOUT REDACTING PII

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 3, 2017, I served the foregoing document

by email to the following counsel for Defendants:

Jonathan Paikin: jonathan.paikin@wilmerhale.com
Daniel P. Kearney, Jr.: Daniel.kearney@wilmerhale.com
Matthew T. Martens: matthew.martens@wilmerhale.com
Karin Dryhurst: Karin.dryhurst@wilmerhale.com
Gideon Hart: Gideon.hart@wilmerhale.com
Donna A. Walsh: dwalsh@mbklaw.com
Daniel T. Brier: dbrier@mbklaw.com

Mr. Kearney, on behalf of Defendants, previously consented to electronic

service.

_/s/ Nicholas Jabbour_____
Nicholas Jabbour, DC 500626
Nicholas.Jabbour@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-7508
Fax: 202-435-9346

*Attorney for Plaintiff*
*Consumer Financial Protection Bureau*