# EXHIBIT 7

Exhibit 7

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Consumer Financial Protection Bureau,

Plaintiff,

v.

Navient Corporation, *et al.*,

Defendants.

Case No. 3:17-CV-00101-RDM
(Hon. Robert D. Mariani)

## PLAINTIFF'S SECOND SUPPLEMENTAL
## AND AMENDED RESPONSE TO DEFENDANT NAVIENT
## SOLUTIONS, LLC'S FIRST SET OF
## INTERROGATORIES AND REQUESTS FOR PRODUCTION

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff, the Consumer Financial Protection Bureau ("Bureau"), hereby submits this Second Supplemental and Amended Response to the First Set of Interrogatories and Requests for Production from Defendant Navient Solutions, LLC ("Navient" or "Navient Solutions"). The Bureau incorporates by reference, as though fully restated herein, all paragraphs of the Preliminary Statement set forth in the Bureau's prior Response to Navient Solutions' First Set of Interrogatories and Requests for Production.

**Interrogatory #1**:

Identify each Person who has or might have information or knowledge relating to the allegations in the Complaint against Navient Solutions, including a description of what information or knowledge each identified Person possesses.

**Supplemental Response to Interrogatory #1**:

The Bureau incorporates by reference, as if fully set forth herein, all objections asserted in its initial response to interrogatory #1. Subject to and without waiving those objections, the Bureau hereby supplements and amends the chart set forth in its Supplemental Response to interrogatory #1 by removing certain individuals from the chart, adding other individuals, and modifying certain information associated with some of the previously disclosed individuals. The chart below includes a description of the information or knowledge each individual has or might have relating to the allegations in the Complaint against Navient Solutions, but because discovery in this action is ongoing, the lists should not be read to limit the information or knowledge each individual has or might have relating to the allegations in the Complaint. Individuals from whom the Bureau has obtained an executed declaration are denoted with an asterisk next to the

individual's name.

## A.    Former Employees of Defendants

| Name | Contact Information | Date of Interview | Description of Information or Knowledge |
|---|---|---|---|
| Morgan Anderson | ███████ | October 28, 2014; November 1, 2017 | Navient's customer service operations, collections operations, payment processing systems, consumer complaint resolution procedures, employee training, and compensation of customer service employees.  The former employee worked as a collection specialist and later as a technical servicing trainer.  In those capacities, among other things, he made collections calls, trained new customer service employees in servicing, and listened to calls for training purposes.  During his time at Navient, the former employee gained familiarity with, among other things, Navient's hiring and training programs, software applications, scripts regarding forbearance, metrics used to analyze calls, the call escalation process, and payment processing of consecutive partial payments.  The former employee indicated that some employees put borrowers into forbearance without the borrower's consent. |

| Philip Kasper* | ███████ | November 9, 2017; January 8 and 12, 2018,; and February 13, 2018. | Navient's payment processing; complaint handling; and customer service operations. The former employee worked as a customer service representative responding to email and letter correspondence. He gained familiarity with Navient's training and the processes and practices associated with responding to consumer inquiries. He has familiarity with the complexities of responding to borrower inquires and the time it takes to respond to borrower inquiries. In his experience, borrowers relied on Navient Solutions and its customer service representatives to provide them with information so that they could make informed decisions.<br><br>He is familiar with Navient's productivity requirements, including that he had to respond to a certain number of correspondence per hour. He understood that failure to meet the requirement could lead to termination and that monetary bonuses were paid to employees who met or exceeded this requirement and other criteria. He has familiarity with shortcuts that customer service representatives took in order to meet the productivity requirement. He has information about how the training he received was in tension with the productivity requirement.<br><br>He has familiarity with how payment processing complaints were tracked and addressed, including that the ability to apply a direction from a borrower to future payments required escalation to the Office of the Customer Advocate. He also worked as a business analyst in the Office of the Customer Advocate, focusing on tracking and analyzing borrower feedback. |

| Lynn Sabulski* | ███████ | November 15, 2017; January 18 and 19, 2018; and February 13, 2018. | Navient's customer service operations, including employee training, employee compensation and performance review, communications with consumers regarding repayment options, and call center requirements and activities. The former employee worked as a customer service representative in or about 2012 and 2013. She regularly spoke with borrowers about repayment options, complaints, and account information, among other things. She gained familiarity with call center processes through, among other things, interacting with managers and customer service representatives and attending training.

She has information relating to Navient cultivating a high-pressure environment that prioritized speed in resolving borrower calls. While she worked as a customer service representative, Navient Solutions imposed an average call time requirement of approximately seven minutes. The company conveyed it during training and through feedback sessions with managers. She has familiarity with how employees and Navient Solutions tracked call times.
She has information about how Navient Solutions's compensation system provided bonuses to employees who, among other things, maintained average call times under the requirement. She has information about how Navient Solutions ranked employees according to, among other things, average call duration. In her experience, the call time requirement was difficult to ignore, in part because failure to satisfy the requirement led to termination. She is aware that employees took shortcuts to meet the call time requirement, including by not discussing or not thoroughly discussing income-driven repayment options. Other shortcuts that she is familiar with include needlessly transferring a call to another department and intentionally terminating a call. In her experience, it is difficult to have a thorough conversation with a borrower about their repayment options within the average call time requirement. |

## B. Consumers

| Name | Contact Information | Date of Interview | Description of Information or Knowledge |
|------|---------------------|-------------------|----------------------------------------|
| ███████ | ███████████████ | January 27, 2017 | Navient's payment processing errors in or about 2016 and 2017, including allocating the consumer's payments to loans contrary to the consumer's instructions specifying payments to certain loans. |
| ███████ | ███████████████ | January 25, 2017 | Navient's communications with the consumer regarding repayment options in or about 2012, including a call with the consumer regarding Navient placing the consumer's loan in forbearance.  At that time, the consumer requested other repayment options and Navient did not offer any alternatives. |
| ██████████* | ██████████████ | January 27, 2017; February 23, 2018 | Navient's communications with the consumer regarding repayment options in or about 2015, including a call in which the consumer asked Navient if an income-based repayment option was available to her and Navient indicated it was not. In at least one other communication between Navient and the consumer, Navient offered the consumer a forbearance option only. |
| ██████████* | ████████ | February 1, 2017; February 24-25, 2018 | Navient's communications with the consumer regarding repayment options, including communications regarding adjusting her federal loan payments.   In at least one such communication, Navient informed the consumer that her only option was forbearance. |
| █████████ | ████████ | February 2, 2017 | Navient's communications with the consumer regarding repayment options in or about 2011 and 2012, including a communication regarding potential repayment options for her federal loans.  At that time, Navient offered the consumer only forbearance as an option. |

| | | | |
|---|---|---|---|
| ███████ | ███████ | February 13, 2017; February 26, 2018 | Navient's communications with the consumer regarding repayment options, including at least one communication in which Navient offered the consumer only the forbearance option for her federal loans. |
| ███████ | ███████ | July 19, 2016; February 13, 2017; February 25, 2018 | Navient's communications with the consumer regarding repayment options in or about 2013, including at least one communication in which Navient informed the consumer that her only option was forbearance and did not provide information regarding other repayment options.<br><br>Navient's payment processing errors, including allocating the consumer's payments to all of the consumer's loans contrary to the consumer's instructions. |
| ███████ | ███████ | February 14, 2017 | Navient's communications with the consumer regarding repayment options, including at least one communication in which Navient informed the consumer that the only options available to the consumer to repay her loans were forbearance or deferment. |
| ███████ | ███████ | February 16, 2017 | Navient's communications with the consumer regarding repayment options, potentially including statements about forbearance or income-driven repayment plans. The consumer's Parent PLUS loans were in forbearance multiple times prior to 2012.<br><br>Navient's payment processing errors, including Navient's changes to the consumer's monthly payment date resulting in overdraft charges and bounced checks on the consumer's bank account and Navient's failure to follow the consumer's instruction to adjust the payment date in or about 2011. |

| | | February 22, 2017; February 23, 2018 | Navient's communications with the consumer regarding repayment options in or about 2014, including certain communications in which the consumer requested a repayment plan for her federal loans. On at least one occasion, Navient did not offer her any repayment plans as option. |
|---|---|---|---|
| | | October 31, 2014; March 21, 2017 | Navient's furnishing of information to consumer reporting agencies relating to loans discharged due to the consumer's total and permanent disability. The consumer applied for a total and permanent disability discharge for his student loans and received a notice from Navient indicating that his loans were forgiven. In or about 2014 or 2015, the consumer experienced difficulty applying for credit. The consumer discovered that his credit score had dropped significantly because Navient used a credit reporting code indicating he had defaulted on the loan(s). |
| | | March 6, 2017; Feb. 23 and 24, 2018 | Navient's communications with the consumer regarding repayment options, including certain communications with the consumer regarding repayment options on Parent Plus loans. |
| | | March 21, 2017 | Navient's communications with the consumer regarding repayment options in or after 2010, including at least one communication in which Navient advised the consumer to consider forbearance and deferment. Later, upon the consumer's own research, the consumer applied for an income-based repayment plan. |

| | | March 10, 2017; February 26, 2018 | Navient's communications with the consumer regarding repayment options, including the consumer's request for reasonable repayment plans after the consumer's deferment options were exhausted.  At that time, the only options offered by Navient to the consumer were forbearance or deferment. |
|---|---|---|---|
| | | March 3, 2017 | Navient's communications with the consumer regarding repayment options beginning in or about 2016, including the consumer's request for a lower monthly payment on the consumer's Parent PLUS loans.  At that time, the only option offered by Navient to the consumer was forbearance.  In 2017, Navient again offered the consumer a forbearance option. |
| | | February 27, 2017 | Navient's communications with the consumer regarding repayment options beginning in or about 2006 or 2007.  When the consumer called Navient to discuss repayment plans, Navient indicated that forbearance was the only option. The consumer's loans were enrolled in multiple forbearances. |
| | | March 31, 2017 | Navient's communications with the consumer regarding repayment options, including the following: Navient told the consumer that her federal loans were private loans and that she did not qualify for income-driven repayment plans. The consumer's loans were in forbearance at least once. In or about 2017, Navient advised the consumer that her loans were eligible for an income-driven repayment plan. |

| | | March 28, 2017 | Navient's furnishing of information to consumer reporting agencies relating to loans discharged due to the total and permanent disability of consumers, including the following: The Department of Education discharged the consumer's loans in March 2014 due to the consumer's total and permanent disability. After March 2014, the consumer's loans were reported as outstanding and 120 days late, and as having been "a collection account, insurance claim or government claim or [] terminated for default." The consumer's credit score declined during the period associated with the furnishing of incorrect credit information. |
| --- | --- | --- | --- |
| | | March 22, 2017; February 8, 2018 | Navient's communications with the consumer regarding repayment options, including the following: In or about 2016, Navient advised the consumer that forbearance was her only repayment option for one of her loans. The consumer discovered income-driven repayment options on her own. |
| | | April 13, 2017; February 23, 2018 | Navient's communications with the consumer regarding repayment options. The principal balance on consumer's loan increased from approximately $⬛ to approximately $⬛. |
| | | June 1, 2017; February 26, 2018 | Navient's payment processing errors, including that the consumer has had to contact Navient on at least four occasions to have Navient reallocate her payment to the loan with the highest interest rate. |

| | | May 2, 2017 | Navient's payment processing errors relating to Navient's processing of payments from the U.S. military, which were made in connection with the consumer's military service. The consumer believes that the U.S. military provided sufficient funds to pay off the loans, but an error by Navient resulted in an outstanding balance. |
|---|---|---|---|
| ＊ | | May 8, 2017 | Navient's communications with the consumer regarding repayment options, including the following: In or about 2016, when the consumer called Navient to discuss repayment plans, Navient indicated that forbearance was the only option. The consumer's loans were enrolled in forbearance. The consumer subsequently learned from a third party about income-drive repayment options, and he proceeded to apply for an income-based repayment plan. |
| | | June 14, 2017 | Navient's payment processing errors, including the following: In approximately fall 2015, Navient told the consumer that it was enrolling him in forbearance but did not do so, resulting in late payments and negative information reported to credit bureaus. The consumer attempted to bring his account current using auto-debit, but Navient did not collect sufficient funds as he intended. |
| | | June 9, 2017 Feb. 25, 2018 | Navient's communications with the consumer regarding repayment options. Beginning on or about 2007, the consumer's loans have been in forbearance and deferment from time to time. |

| | | | |
|---|---|---|---|
| ██████████ * | ██████ ████ ████████ | July 10, 2017; February 26, 2018 | Navient's communications with the consumer regarding repayment options, including the following: From approximately 2010 to 2014, when the consumer called Navient to discuss repayment plans, Navient indicated on least one occasion that forbearance was the only option. During this time, the consumer's loans were in multiple forbearances. In 2014, the consumer's loans were in default. Subsequently, the consumer entered a loan rehabilitation program.<br><br>Navient's payment processing errors, including that Navient refused to allocate the consumer's payments to her highest interest rate loans. |
| ██████ | ██████ | June 15, 2017; Feb. 23, 2018 | Navient's communications with the consumer regarding repayment options. During 2013 or 2014, the consumer's account was current but the consumer was struggling to make payments. Navient provided the consumer with conflicting information about whether he should let his account become past due to receive help from Navient.  The consumer's loans were enrolled in forbearance from approximately 2009 until 2012. |
| ███ █ ███ | ██████ | June 26, 2017; February 2018 | Navient's communications with the consumer regarding repayment options, including the following: When the consumer contacted Navient about repayment assistance, Navient advised the consumer that forbearance or collections were the only options for his federal loans. The capitalization of interest on consumer's loans increased his principal balance by approximately $████. |

| | | | |
|---|---|---|---|
| ■■■■■ | ■■■■■ | July 11, 2017; February 11, 2018 | Navient's communications with the consumer regarding repayment options in or about 2016. When the consumer called Navient, she indicated that she was unemployed and that her payments were too high. Navient indicated that her only option was forbearance and did not discuss income-driven repayment plans. |
| ■■■■■ | ■■■■■ | July 17, 2017; February 24, 2018 | Navient's communications with the consumer regarding repayment options. The consumer's loans were in multiple forbearances during periods of the consumer's unemployment, including during 2009. Consumer learned about income-based repayment on her own, and enrolled in it recently. |
| ■■■■■* | ■■■■■ | July 17, 2017 | Navient's communications with the consumer regarding repayment options, including the following: beginning in or about 2007, Navient told the consumer that forbearance was her only option and did not discuss income-driven repayment plans. The consumer's principal balance increased by approximately $■■■■. Navient recently suggested an income-based repayment plan after the consumer's eligibility for forbearance or deferment expired. |
| ■■■■■ | ■■■■■ | July 17, 2017 | Navient's communications with the consumer regarding repayment options. The consumer's loans were enrolled in multiple forbearances until approximately October 2015. The consumer discovered, on her own, income-driven repayment options and enrolled in income-based repayment in 2016. |

| | | | |
|---|---|---|---|
| ███████ | ████████ | July 14, 2017; February 26, 2018 | Navient's communications with the consumer regarding repayment options, including the following: When the consumer called Navient to discuss repayment plans, Navient indicated on at least one occasion that forbearance was the only option. During this period, the consumer's loans were enrolled in multiple forbearances. |
| ██████ | ██████ | July 19, 2017; February 25, 2018 | Navient's communications with the consumer regarding repayment options beginning in or about 2008, potentially including statements about forbearance or income-driven repayment plans. The consumer's loans were enrolled in forbearance while the consumer was unemployed. |
| ███████ | ██████ | August 24, 2017 | Navient's communications with the consumer regarding repayment options beginning in or about 2005, potentially including statements about forbearance or income-driven repayment plans. |
| █████ | ██████ | July 31, 2017 | Navient's communications with the consumer regarding repayment options beginning in or about 2008, including that Navient advised the consumer that forbearance was the only available option. |
| ██████ | ██████ | August 7, 2017; February 23, 2018 | Navient's communications with the consumer regarding repayment options, potentially including statements about forbearance or income-driven repayment plans. Prior to 2012, the consumer's loans were in forbearance or deferment multiple times, including during periods of unemployment. In 2012, the consumer enrolled in an income-driven repayment plan. |

| | | July 20, 2017 | Navient's communications with the consumer regarding repayment options, including the following: Beginning in or about 2012 until 2015, when the consumer called Navient to discuss repayment plans, Navient indicated that forbearance was the only option. The consumer's loans were in forbearance during this period. |
|---|---|---|---|
| ███████ | ███████ | June 28, 2017 | Navient's communications with the consumer regarding repayment options beginning in or about 2014, potentially including statements about forbearance or income-driven repayment plans. |
| ███████ | ███████ | August 2, 2016; February 23, 2018 | Navient's payment processing errors, including Navient's inability to timely process the consumer's automatic debit application. |
| ███████ | ███████ | November 23, 2016 | Navient's communications with the consumer regarding repayment options, including communications in which Navient pushed the consumer to enroll in forbearance and informed her that her only option other than regular repayment was forbearance. |
| ███████ | | December 1, 2016 | Navient's communications with the consumer regarding repayment options, potentially including statements about forbearance or income-driven repayment plans. The consumer has several federal student loans. While the consumer is currently making payments, she has experienced significant financial hardship as a result. |
| ███████ | ███████ | November 14, 2014 | Navient's payment processing errors, including Navient's autopay withdrawal of funds from the consumer's bank account in excess of the monthly amount due reported in the consumer's billing statements. |

| | | April 21, 2015 | Navient's communications with the consumer regarding repayment options, potentially including statements about forbearance or income-driven repayment plans. The consumer's loans were in forbearance in or about 2015.<br><br>Navient's payment processing errors, including debiting the consumer's bank account on an incorrect payment processing date, resulting in overdrafts of the consumer's account. |
|---|---|---|---|
| | | | Navient's payment processing errors, including misapplication of the consumer's loan payments. |
| | | | Navient's communications with the consumer regarding repayment options. When the consumer contacted Navient because he was unable to make the scheduled payment, the only option Navient provided was to use forbearance. |
| | | | Navient's communications with the consumer regarding repayment options. Prior to the consumer enrolling in an income-based repayment plan, the consumer's loans were in forbearance based upon Navient's recommendation. |
| | | February 26, 2018 | Navient's communications with the consumer regarding repayment options prior to the consumer's application for income-driven repayment, during a period that the consumer experienced severe financial hardship. |
| | | February 7, 2017; February 23, 2018 | Navient's communications with the consumer regarding repayment options, including communications following the consumer's car accident in which Navient did not offer the consumer income-based repayment options. |

| Name | Contact Information | Date of Interview | Description of Information or Knowledge |
|---|---|---|---|
| ███ | | | Navient's payment processing errors, including processing the consumer's in-school deferment, charging associated late fees, and related credit reporting. |
| ███ | ███ | | Navient's payment processing errors. Navient erroneously charged late fees. |
| ███ | ███ | December 3, 2013 | Navient's payment processing errors, including misapplication of payments contrary to the consumer's instructions and errors regarding the processing of overpayments. |
| ███ | | | Navient's communications with the consumer regarding repayment options. The consumer's federal loans with Navient were put into forbearance beginning in or about 2016. During that period and later, the consumer experienced significant financial hardship but was unable to obtain a workable repayment option. |
| ███ | ███ | June 12, 2017 February 26, 2018 | Navient's communications with the consumer regarding repayment options over a period of many years during which the consumer went into forbearance approximately three times due to job loss, disability and bankruptcy. |

## C.    Other Individuals

| Name | Contact Information | Date of Interview | Description of Information or Knowledge |
|---|---|---|---|

| | | | |
|---|---|---|---|
| Ralph Farmer* (former employee of i3 Group) | | November 29, 2017; February 15-16, 2018 | Navient's communications with consumers regarding repayment options. As an employee of i3 Group, Mr. Farmer worked as a student loan counselor and as an auditor. He regularly participated in or audited calls between i3 Group employees, borrowers, and Navient representatives. He gained familiarity with Navient customer service representatives' practice in or about 2013 and 2014 of prioritizing forbearance or deferment for consumers who were struggling to make their payments, despite asking about income-driven repayment. He reported the problem to his supervisors and documented examples of the practice. He has knowledge that others also reported the problem. |
| Joel Kellum (lawyer involved in student loan issues) | | February 24, 2017 | Navient's communications with consumers regarding repayment options, including communications in which Navient enrolled consumers in forbearance and did not inform consumers of other repayment options.<br><br>Navient's payment processing errors, including misallocation of student loans payment made to Navient. |
| Joshua Cohen (lawyer involved in student loan issues) | | | Navient's payment processing errors, including Navient's repeated allocation of a consumer's payments to all of the consumer's student loans contrary to the consumer's instructions to allocate the payment to the consumer's federal loan. |
| Karen Owens (college financial aid officer) | | | Navient's payment processing errors, including Navient's repeated misallocation or misapplication of a consumer's loan reduction payments made within 120 days of disbursement of the consumer's loans, contrary to the consumer's instructions. |

**Interrogatory #7**

Identify each Navient Borrower harmed by enrollment in a forbearance, as alleged in paragraph 146 of the Complaint, and describe the injury suffered by that Borrower.

**Supplemental Response to Interrogatory #7**:

The Bureau incorporates by reference, as if fully set forth herein, all objections asserted in its initial response to interrogatory #7. Subject to and without waiving those objections, the Bureau identifies the following consumers (all consumers identified by name in the supplemental response but not identified below have been removed):

- 
-
-
-
-
-
-
-
-
-
-
-
-
-

- 

The Bureau believes these consumers likely suffered one or more of the following harms: (1) additional interest charged or expected to be charged as a result of any capitalization events associated with the forbearance(s); (2) delayed progress toward the loan forgiveness associated with income-driven repayment; and (3) loss of an interest subsidy from the federal government.

Dated: February 27, 2018

Kristen Donoghue
*Enforcement Director*

David Rubenstein
*Deputy Enforcement Director*

Thomas Kim
*Assistant Deputy Enforcement Director*

   /s/ Nicholas Jabbour
Nicholas Jabbour, DC 500626
(Nicholas.Jabbour@cfpb.gov; 202-435-7508)
Ebony Sunala Johnson, VA 76890
(Ebony.Johnson@cfpb.gov; 202-435-7245)
Nicholas Lee, DC 1004186
(Nicholas.Lee@cfpb.gov; 202-435-7059)
Manuel Arreaza, DC 1015283
(Manuel.Arreaza@cfpb.gov; 202-435-7850)
Andrea Matthews, MA 694538
(Andrea.Matthews@cfpb.gov; 202-435-7591)
*Enforcement Attorneys*

1700 G Street NW
Washington, DC 20552
Fax: 202-435-9346

*Attorneys for Plaintiff*
*Consumer Financial Protection Bureau*

## CERTIFICATE OF SERVICE

I certify that on February 27, 2018, I served the foregoing document

by email to the following counsel for Defendants:

Jonathan Paikin: jonathan.paikin@wilmerhale.com
Daniel P. Kearney, Jr.: Daniel.kearney@wilmerhale.com
Matthew T. Martens: matthew.martens@wilmerhale.com
Karin Dryhurst: Karin.dryhurst@wilmerhale.com
Gideon Hart: Gideon.hart@wilmerhale.com
Donna A. Walsh: dwalsh@mbklaw.com
Daniel T. Brier: dbrier@mbklaw.com

Mr. Kearney, on behalf of Defendants, previously consented to electronic

service.

    /s/ Nicholas Jabbour
Nicholas Jabbour, DC 500626
Nicholas.Jabbour@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-7508
Fax: 202-435-9346

*Attorney for Plaintiff*
*Consumer Financial Protection Bureau*