

1700 G Street NW,
Washington, DC 20552

February 4, 2019

**Via ECF and Overnight Mail**

The Honorable Thomas I. Vanaskie, Special Master
U.S. District Court, Middle District of Pennsylvania
William J. Nealon Federal Bldg. & U.S. Courthouse
235 N. Washington Avenue
Scranton, PA 18503

      Re:    *CFPB v. Navient Corp., et al.*, Case No. 3:17-CV-00101-RDM

Dear Judge Vanaskie:

      Pursuant to Your Honor's instruction at the January 28, 2019 status conference, I am writing on behalf of Plaintiff Consumer Financial Protection Bureau ("Bureau") regarding Your Honor's *in camera* review of documents in 35 disputed privilege categories, which the Court referred to Your Honor in the January 16, 2019 Order (Doc. 158).

**I.    The Bureau's First Distribution of Documents in the 35 Disputed Categories**

      The Bureau is enclosing with this letter encrypted media that contains: (i) the Bureau's first distribution of documents for *in camera* review, which consists of redacted and unredacted versions of 173 privileged documents in Categories 22, 28, 37, 40, 44, and 80 from the Bureau's July 6, 2018 and August 31, 2018 privilege logs (Bates numbered CFPB-NAV-0056669.0001 through CFPB-NAV-0056907.0001;[1] (ii) the Bureau's supplemental privilege log for the 173 documents; (iii) the Declarations of Christopher D'Angelo dated July 2, 2018 and December 7, 2018 regarding the Bureau's assertions of the deliberative process privilege; and (iv) a confidential spreadsheet, at Exhibit A to the D'Angelo Declaration dated July 2, 2018, listing certain employee information reflected in records of the Bureau's Office of Human Capital from 2012-2017, including each employee's division and office, official title, and supervisors. The Bureau will transmit the password for the enclosed documents to Your Honor via email. The Bureau will also produce the enclosed materials to Defendants, excluding the unredacted versions of the 173 privileged documents.

      The Bureau is also conducting an extensive re-review of all of the documents in the 35 Disputed Categories and waiving the deliberative process privilege over certain documents by producing documents that were previously withheld in their entirety, or by removing some or all of the redactions on previously redacted documents. As a result, certain documents that were listed on a previous privilege log are not listed on the enclosed supplemental privilege log and are being produced in full to Defendants.

---

[1] In addition to the 173 privileged documents, the enclosed media includes a number of non-privileged cover emails. The Bureau has included the cover email for each privileged attachment to provide additional information that may be useful to Your Honor's evaluation of the Bureau's privilege assertions. The non-privileged cover emails are denoted as such. (Because the Bureau is waiving privilege over certain documents, as described later in this letter, 173 documents is approximately 25% of the total volume that Your Honor will need to review *in camera*.)

## II. The Bureau's Supplemental Privilege Log for the First Distribution

The descriptions for Categories 22, 28, 37, 40, 44, and 80 from the Bureau's July 6, 2018 and August 31, 2018 Privilege Logs are included in Appendix A of this letter. The Bureau has provided additional information in the description for Category 37.

The enclosed supplemental privilege log lists, in the first two columns, the Bates number and the corresponding Category number, respectively, for each document. In addition, the Bureau notes the following with respect to the information contained in the log:

- **Date(s) of Deliberative Communication(s)**: For emails, this column lists the date(s) of each individual email within an email chain over which the Bureau asserts deliberative process privilege. For attachments, this column reflects the date listed for the parent email.

- **Sender(s) and Recipient(s) of Deliberative Communications**: For emails, these columns list the sender(s) and recipient(s) of all individual emails within an email chain over which the Bureau asserts deliberative process privilege. For attachments, these columns reflect the sender and recipient information for the parent email.[2]

- **What Decision Was Under Discussion or Deliberation?**: This column is responsive to the Court's request for such information at the December 10, 2018 hearing. *See* 12/10/18 Hearing Tr. at 47:15-24 (Doc. 134).

- **When the Decision Was Made**: This column is responsive to the Court's request that the Bureau provide a date to "serve as a framing or reference point for determining whether the privilege is validly asserted." *Id.* at 47:24-48:4. Where no decision was made, the Bureau has so indicated in the log.

## III. Applicable Authority Regarding the Bureau's Assertion of Privilege over the Six Categories of Documents Included in the Bureau's First Distribution

To assist in Your Honor's evaluation of the Bureau's privilege assertions over the documents in this first distribution, the Bureau summarizes below applicable case law.[3]

First, each of the six categories include numerous draft documents and communications relating to the drafting of documents. It is well established that such documents may properly be withheld on deliberative process privilege grounds. *See Wadhwa v. Sec'y U.S. Dep't of Veterans*

---

[2] In many instances, the Bureau is asserting privilege over one or more individual emails in an email chain. Because sender/recipient/date metadata is only available for the most recent individual email in the chain, the Bureau could not rely on metadata extraction to provide such information for all individual emails it is asserting privilege over, including individual emails below the most recent individual email in the chain (*i.e.*, those sent earlier in time). Instead, the Bureau conducted a re-review of all privileged documents in the Disputed Categories and manually entered the sender/recipient/date information for those earlier individual emails. If Defendants are permitted to rely entirely on metadata extraction to provide sender/recipient/date information—as Defendants argue section 7 of the Discovery Protocol allows them to do (Doc. 153 at 2)—the Bureau respectfully submits that it should be allowed to do the same.

[3] At the December 10, 2018 hearing, the Court "emphasize[d]" that it was only expressing an "initial view" regarding the Bureau's privilege assertions, and had not "made a final decision." *See* 12/10/18 Hearing Tr. at 49:18-21. The Court invited the Bureau to convince the Court that its assertions were valid. The Bureau submits this case law in part to respond to the Court's invitation.

*Affairs*, 707 Fed. Appx. 61, 63 (3d Cir. 2007); *Competitive Enter. Inst. v. Office of Science and Tech. Policy*, 161 F. Supp. 3d 120, 129 (D.D.C. 2016) ("Courts in this district have held, in many instances, that drafts are protected by the deliberative process privilege.") (citations omitted); *Marzen v. Dep't of Health & Human Servs.*, 825 F.2d 1148, 1155 (7th Cir. 1987) (deliberative process privilege "protects not only the opinions, comments and recommendations in the draft, but also the process itself"); *Elec. Privacy Info. Ctr. v. DHS*, 928 F. Supp. 2d 139, 151–52 (D.D.C. 2013) (deeming numerous draft documents to be protected under the deliberative process privilege and rejecting plaintiff's assertion that to protect a "draft" document, an agency must identify a corresponding final document). Factual material contained in drafts is also properly withheld. *See, e.g.*, *Competitive Enter. Inst.*, 161 F. Supp. 3d at 132 (D.D.C. 2016) ("The deliberative process privilege protects not only the content of drafts, but also the drafting process itself . . . . Any effort to segregate the 'factual' portions of the drafts, as distinct from their deliberative portions, would run the risk of revealing 'editorial judgments—for example, decisions to insert or delete material or to change a draft's focus or emphasis.'") (citations omitted); *EEOC v. FAPS, Inc.*, 2012 WL 1656738, at *10-11 (D.N.J. 2012) ("[R]equiring production of the factual information in or related to draft decisions or letters would reveal the government officials' deliberations concerning what factual matter was or was not appropriate for inclusion in the final agency decision or letter"); *National Sec. Archive v. CIA*, 752 F.3d 460, 465 (D.C. Cir. 2014) (entirety of draft protected because selection of relevant facts in draft involved "policy-oriented judgment").

Second, each category includes documents reflecting the process of developing Bureau policies and strategies to address issues and problems in the student loan market. Discussions about "policy matters are quintessentially deliberative." *ICM Registry v. Dep't of Commerce*, 538 F. Supp. 2d 130, 135 (D.D.C. 2008); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (privilege applies to "process by which governmental decisions and policies are formulated") (quotation omitted). Indeed, "[r]ecommendations on how best to deal with a particular issue are themselves the essence of the deliberative process" because "[t]o identify and assign priority to relevant issues lies at the very heart of the decisionmaking process." *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1121 (9th Cir. 1988); s*ee also*, *e.g.*, *In re United States*, 678 Fed. Appx. 981, 989 (Fed. Cir. 2017) (privilege protects draft memoranda for purpose of "establishing a strategy for reforming the mortgage finance system"); *Judicial Watch, Inc. v. U.S. Dep't of State*, 282 F. Supp. 3d 36, 49 (D.D.C. 2017) (privilege protects communications relating to development of "a strategy for official action."); *Soghoian v. OMB*, 932 F. Supp. 2d 167, 183 (D.D.C. 2013) (privilege protects communications relating to Strategic Plan "to help determine the Administration's response to an ongoing policy issue").

Third, with respect to Categories 28 and 80, courts have repeatedly held that documents relating to the development and drafting of guidance documents published by a federal agency are protected by the privilege. *E.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 926 F. Supp. 2d 121, 134 (D.D.C. 2013) (privilege protects discussions concerning Department's adoption of final guidance); *Ford Motor Co. v. U.S.*, 94 Fed. Cl. 211, 223 (2010) (privilege shields emails discussing employees' views on proposed agency guidance before it was completed and published); *FPL Group, Inc. v. I.R.S.*, 698 F. Supp. 2d 66, 90 (D.D.C. 2010) (privilege protects drafts of IRS's revenue rulings). The involvement of an outside consultant (Fors Marsh) in the documents in Category 28 does not destroy the privilege. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 10 (U.S. 2001) (deliberative process privilege can extend to "communications between Government agencies and outside consultants hired by them") (citing cases). Nor does the use of the phrase "Fact Sheet" in the titles of the final documents at issue in Category 80 render the

drafts of those documents non-privileged. *See, e.g., Elec. Privacy Info. Ctr.v. U.S. Dep't of Homeland Sec.*, 928 F. Supp. 2d 139, 151 (D.D.C. 2013) ("drafts and deliberations surrounding these fact sheets were part of DHS's deliberations … whether 'factual' or not, they are part of DHS's deliberative process"); *FTC v. Digital Interactive Assocs., Inc.*, 1997 WL 524905, at *1-2 (D. Colo. 1997) (privilege applied to drafts of a fact sheet exchanged between FTC and FCC).

Fourth, with respect to Categories 40 and 44, draft and final versions of such briefing materials submitted to senior agency officials, and communications concerning the drafting of those materials, are routinely protected by the deliberative process privilege. *E.g., Elec. Frontier Found. v. U.S. Dep't of Justice*, 890 F. Supp. 2d 35, 51–52 (D.D.C. 2012) (briefing materials submitted to senior policy officials to prepare them for certain meetings were privileged because those officials were ultimately responsible for adopting data protection principles even if they were not the main negotiators of them, and drafters of the briefing materials had to determine the factual and advisory information they deemed significant enough to provide those senior officials, which involved an exercise of judgment; no requirement to "pinpoint a decision . . . to which the briefing materials contributed"); *Judicial Watch, Inc. v. CFPB*, 60 F. Supp. 3d 1, 9 (D.D.C. 2014) (final draft of briefing materials prepared by Bureau for senior decision-makers at Treasury properly withheld).

Fifth, the deliberative process privilege protects documents shared between federal agencies. *See, e.g., Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 188 (1975) (the privilege "does not distinguish between inter-agency and intra-agency memoranda," as "Congress plainly intended to permit one agency possessing decisional authority to obtain written recommendations and advice from a separate agency not possessing such decisional authority without requiring that the advice be any more disclosable than similar advice received from within the agency."); *Nat'l Wildlife*, 861 F.2d at 1121 (privilege protected inter-agency letters in which one agency provided recommendations to another agency to assist that agency in making a determination). The internal Bureau communications in Category 37 are protected because their purpose was to develop technical assistance provided by the Bureau to the Department of Education, in connection with the Department's consideration of potential strategies to address problems in the student loan market. *See Soghoian*, 932 F. Supp. 2d at 178 ("Exemption 5 has never required agencies to have final decision-making authority themselves, but instead requires only that they be part of the deliberative process along with another agency possessing such authority.").

Sixth, while the documents in Categories 37, 40 and 44 relate to Bureau processes that did not result in a specific decision, the lack of a decision is not an impediment to asserting the deliberative process privilege. *See Cozen O'Connor v. U.S. Dep't of Treasury*, 570 F. Supp. 2d 749, 780 (E.D. Pa. 2008) ("To invoke the deliberative process privilege, the agency need not identify the specific policy decision related to the document. The privilege turns on the process, not the result. Documents may be privileged even though the recommendations and discussions contained in them did not result in final action or decision." (citing *Sears, Roebuck*, 421 U.S. at 153 n.18)); *ICM Registry*, 538 F. Supp. 2d at 134–35 (D.D.C. 2008) (A draft document prepared in the "ongoing process of examining agency policies," is deliberative and is predecisional even if its ideas, recommendations, or suggestions "do not ripen into agency decisions.") (citations omitted).

### IV. One Round of *in Camera* Review That Encompasses Both a Determination of Whether the Documents are Privileged and a Ruling on the Balancing Test is Appropriate

The Bureau summarizes two additional points from the case law that are applicable to Your Honor's *in camera* review. First, once documents have been submitted for *in camera* review, courts have deemed satisfaction of the formal requirements to assert the deliberative process privilege to

be unnecessary. As one court has explained:

> Generally, four requirements must be met in order for the privilege to be sustained . . . . However, when the disputed documents have been submitted to the court for *in camera* inspection, courts have suggested that compliance with these four requirements is unnecessary . . . . Submission of the documents for *in camera* review may substitute for these four requirements because the court will then have enough information upon which to decide a claim of privilege. The four requirements have only been applied where the documents claimed privileged were *not* submitted for *in camera* inspection … Submission of the documents for in camera review may substitute for these four requirements because the court will then have enough information upon which to decide a claim of privilege.

*Harris v. City of Philadelphia*, 1995 WL 350296, at *8 (E.D. Pa. June 6, 1995) (citing cases); *Manna v. U.S. DOJ*, 815 F. Supp. 798, 805 (D.N.J. 1993), *aff'd*, 51 F.3d 1158 (3d Cir. 1995) (even if affidavit from agency official is insufficient, "the district court may, in its discretion, examine the disputed documents in camera in order to make 'a first-hand determination of their exempt status'").

Second, courts routinely conduct a single round of *in camera* review that encompasses both a determination of whether the documents are privileged and a ruling on the balancing test.[4] *See, e.g.*, *Rupert v. United States*, 225 F.R.D. 154, 156 (M.D. Pa. 2004) (conducting one round of *in camera* review to evaluate privilege assertions and rule on the balancing test); *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 854–55 (3d Cir. 1995) ("The district court *may elect* to perform a preliminary *in camera* review of the documents in question before balancing the competing interests and exercising its discretion.") (first emphasis added). The Bureau submits that conducting one round of *in camera* review is both appropriate and more efficient. As the Bureau has shown through abundant cites to case law, internal Bureau documents are irrelevant as a matter of law, and Defendants cannot show a compelling or particularized need for the Bureau's communications with the Department of Education. CFPB's Response to Defs.' Statement of Potential Relevance (Doc. 144). Thus, Defendants simply cannot prevail on the balancing test.[5]

\* \* \*

If Your Honor has any questions regarding any of the enclosed materials, the Bureau would welcome the opportunity to address those questions at a forthcoming teleconference or in writing.

                                                  Respectfully submitted,
                                                  /s/ Nicholas Jabbour

---

[4] The balancing test factors are listed in footnote 2 of the Bureau's Response to Defendants' Statement Regarding Potential Relevance of Documents Withheld Under Qualified Government Privileges (Doc. 144).

[5] The Court previously asked why the Bureau had not indicated whether the deliberations were "to set CFPB policy or to make a specific decision on a matter relevant to this case." 12/10/18 Hearing Tr. at 48:5-8. Defendants alone bear the burden on relevance, but they failed to identify any Bureau decision they believe is relevant to any specific pled defense, and precisely how. The Bureau does not consider any decision under deliberation in the withheld documents to be relevant. Nor does the presence of information in a document that may conceivably be *related to* an issue in the case (such as a reference to Navient's steering conduct) make the material *relevant* to any defense. Such a view would eviscerate the holdings in the extensive body of case law cited by the Bureau. (Doc. 144).

# APPENDIX A

**Category 22**

Description: Confidential pre-decisional and deliberative communications prepared by or shared among Bureau examiners and Bureau attorneys relating to the drafting of the September 15, 2014 Examination Report to Pioneer, including drafts of the report and communications about drafting the report; communications and documents contain or reflect analyses, opinions, recommendations, and/or suggestions of Bureau examiners and Bureau attorneys in connection with the process of determining the content of the report; communications and documents preceded any final determination regarding the content of the report.

Privileges: Deliberative Process Privilege

**Category 28**

Description: Confidential pre-decisional and deliberative communications and documents relating to the development of the Bureau's "Payback Playbook"; communications and documents contain or reflect analyses of borrower experiences and perceptions relating to student loan servicing practices that an outside consultant (Fors Marsh) performed for the Bureau to assist in the development of the Payback Playbook, and discussions, evaluations, selections, or summaries of the data obtained by Fors Marsh on behalf of the Bureau; facilitated the Office for Students's ability to develop and arrive at recommendations to former Director Cordray regarding the Payback Playbook and reflects the process used by staff in the Office for Students to develop the Payback Playbook, including the factors they considered and the analyses performed by Fors Marsh at their request to help them make recommendations to former Director Cordray regarding the content and publication of the Payback Playbook; communications and documents precede any final decisions about the content of the Payback Playbook that was released to the public or any other proposed courses of action, decisions, or recommendations based on the results of the testing and analysis reflected in the documents.

Privileges: Deliberative Process Privilege

**Category 37**

Description: Confidential pre-decisional and deliberative communications and documents relating to an inter-agency collaborative process between the Bureau and the Department of Education to consider, develop, and potentially pursue policies or strategies to address problems and other issues relating to student loan credit reporting, including drafts or versions of internal Bureau documents prepared by personnel in the Office of Markets containing their analysis of problems and other issues relating to student loan credit reporting and proposed policy recommendations to address

such problems or issues, and communications relating to the preparation and drafting of these documents; documents and communications enabled personnel in the Office of Research, Markets & Regulations to develop an understanding of risks, problems, and other issues in the student loan servicing market in order to directly inform the discussion, consideration, and implementation of strategies in other Bureau offices to address those risks, problems, and other issues, including the provision of technical assistance and other recommendations by the Bureau's Office for Students to the Department of Education in connection with the Department of Education's consideration of whether to develop and issue public guidance regarding student loan credit reporting; documents and communications reflect the opinions, impressions, or recommendations of the employees who drafted them, including comments and revisions proposed by the employees involved in the drafting process; documents and communications preceded any final decisions regarding strategies or potential courses of action by other Bureau offices in response to the assessments performed by the Office of Research, Markets & Regulations reflected in the documents and any final decisions by the Department of Education regarding what, if any, policies and strategies to adopt or pursue regarding student loan credit reporting.

Privileges: Deliberative Process Privilege


**Category 40**

Description: Confidential pre-decisional and deliberative communications and documents relating to the drafting and submission of briefing materials to former Director Richard Cordray regarding an August 29, 2016 Federal Student Aid Advisory Board Meeting, including draft and final versions of a memorandum presented to the former Director and related communications containing selections or summaries of facts and issues deemed pertinent to the meeting and recommended discussion points for the meeting in connection with the process of preparing the former Director for the meeting and furthering the partnership among various executive agencies regarding the student loan market; purpose of documents and communications was to compile the information staff deemed most pertinent to former Director Cordray's participation in the meetings, to present him with candid assessments about issues likely to be discussed at the meetings, and to make suggestions about questions and key discussion points to raise during the meetings; briefing materials formed part of an analysis or discussion that was considered as part of Director Cordray's anticipated participation in the meetings but did not result in a specific decision, were advisory only, and were prepared by subordinates who lacked authority to make final decisions on these topics or direct Director Cordray's actions.

Privileges: Deliberative Process Privilege


**Category 44**

Description: Confidential pre-decisional and deliberative communications and documents relating to the drafting and submission of briefing materials to former Director Richard Cordray regarding a May 9, 2016 meeting between the former Director and Navient's CEO, including draft and final

versions of a memorandum presented to the former Director and related communications containing selections or summaries of facts and issues deemed pertinent to the meeting and recommended discussion points for the meeting in connection with the process of preparing the former Director for the meeting; purpose of communications and documents was to bring former Director Cordray up to speed on Bureau and other state and federal government activity relevant to the meetings, to select and distill the facts deemed most relevant to the Director's participation in the meetings, and to suggest key discussion points for the Director to raise during the meetings; briefing materials formed part of an analysis or discussion that was considered as part of Director Cordray's anticipated participation in the meetings but did not result in a specific decision, were advisory only, and were prepared by subordinates who lacked authority to make final decisions on these topics or direct Director Cordray's actions.

Privileges: Deliberative Process Privilege

**Category 80**

Description: Confidential pre-decisional and deliberative communications and documents prepared by or shared among personnel in the Bureau, personnel in the Department of Education, personnel in the Department of Treasury, and/or personnel in the Executive Office of the President relating to the development and drafting of the documents titled "Fact Sheet: Protecting Student Loan Borrowers" and "Fact Sheet: Taking Action to Help More Americans Manage Student Debt" (released on April 28, 2016), including drafts of the documents and related communications; purpose of communications and documents was to develop, obtain, provide, or discuss opinions, recommendations, reactions, suggestions, or views of personnel in the Bureau and other federal agencies or offices regarding the content of the document in connection with the process of drafting the document; communications and documents contain or reflect non-final analyses, reactions, recommendations, suggestions, or views of personnel in the aforementioned federal agencies or offices in connection with the aforementioned process; communications and documents preceded final decisions regarding the content and publication of the document.

Privileges: Deliberative Process Privilege