

February 8, 2019

**VIA ECF**

Judge Thomas I. Vanaskie
JAMS, Inc.
1717 Arch St., Suite 3810
Philadelphia, PA 19103

      Re:  Letter Brief re Asserted "Key Custodians,"
           *CFPB v. Navient Corp. et al.*, No. 3:17-CV-00101 (M.D. Pa.)

Dear Judge Vanaskie:

      Pursuant to Special Master Order #5 dated February 5, 2019, Defendants respectfully submit this letter responding to the CFPB's request for additional email custodians to be searched and responsive documents produced.

      Defendants do not understand on what basis the CFPB asserts that additional custodians should be searched at this late stage. The CFPB agreed *over eight months ago* to what it termed a "global compromise" regarding the scope of Defendants' email search. Further, this demand is especially unreasonable because the CFPB has had the documents it claims prompted its request for anywhere from seven months to a year. Accordingly, the CFPB cannot meet its burden to show that it is entitled to additional documents. *See Enslin v. Coca-Cola Co., No.* 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) ("[T]he burden appropriately lies with the requesting party to show that the responding party's search was inadequate").

      Some context is in order. In early 2018, the parties had a dispute regarding the scope of Defendants' email review. Defendants sought to review emails that hit on search terms related to the policies identified by the CFPB as allegedly unlawful, such as, for example, the call flow that the CFPB relies on for its claim that Defendants steered borrowers into forbearance. The CFPB, by contrast, insisted on broader search terms that would have resulted in Defendants reviewing close to a million emails. Defendants objected given the burden of reviewing such a significant number of emails that were, at best, only tangentially related to the claims at issue.

      The dispute went before Judge Mariani, who on May 4, 2018, ordered the parties to meet and confer and come to an agreement regarding the scope of Defendants' email review. Doc. 89 at 2–3. The parties followed the Court's instructions, conferring multiple times and for many hours throughout May 2018. As part of that conferral process, the CFPB asked Defendants to "provide the Bureau with the custodians whose records Defendants applied the search terms to and the custodians' respective titles during the applicable time period." Ex. 1, at 1. The CFPB

explained that the "custodians' titles during the relevant time period ... is crucial to our ability to reach an agreement." Ex. 2, at 1.

On May 21, 2018, Defendants provided the CFPB the requested information (Ex. 3), and the parties continued to confer, including exhaustively discussing changes to Defendants' proposed custodian list. The CFPB requested that Defendants add custodians who supervised call centers and who were involved in auditing calls with customers about repayment options. To be certain that Defendants identified the correct additional custodians, Defendants asked the CFPB to clarify the level of custodians it sought to add. Ex. 4, at 2 ("Please confirm which level of custodian you are interested in."). The CFPB informed Defendants that it sought custodians—both supervisors of call centers and call auditors—who were at the "lowest level." Ex. 4, at 2; Ex. 5, at 6, n. 3(3). Defendants, following the CFPB's explicit direction, added additional custodians who met that criteria.

On May 31, 2018—after significant revisions to the search terms for existing custodians and the addition of new custodians—the parties finally reached "the Bureau's global compromise." Ex. 5, at 4–7. That agreement codified the CFPB's request for new custodians. With respect to call center supervisors, the CFPB wrote as follows:

> A random sampling of two individuals responsible for managing call centers on the federal loan servicing side of the business. (We request that the sample be drawn from employees who were *employed by the company on January 1, 2013 in the lowest level of management over a single entire servicing call center as of that date*, and who were employed in that position for at least one year. Once the pool of potential employees is identified, select the first two individuals in alphabetical order.)

Ex. 5, at 6, n. 3(3) (emphasis added). At the Court's direction, the CFPB then filed a letter with the Court, approved by Defendants, confirming this agreement. Doc. 93. Defendants then undertook an enormous burden to conduct its email review, hiring more than 100 contract attorneys to review about a million documents as expeditiously as possible, ahead of the then-current fact discovery deadline of August 9, 2018.

This May 31, 2018 comprehensive agreement should be the end of the issue. The parties engaged in extensive discussions regarding the scope of Defendants' email review—discussions that explicitly included which custodians the CFPB wanted Defendants to include—and then reached a "global compromise." It is unreasonable for the CFPB to ignore that agreement and now demand that Defendants search the emails of additional custodians, more than eight months after that agreement was reached and relied upon and four months after review was completed and the final documents were produced. *See Harry M. v. Pennsylvania Dep't of Pub. Welfare*, 2011 WL 53047, at *2 (M.D. Pa. Jan. 7, 2011) (denying plaintiff's motion to compel additional document production because the parties already reached an agreement regarding defendants' electronic document search protocol).

Even if the May 2018 agreement did not conclusively resolve this issue, there can be no dispute that the CFPB's specific requests are improper. First, the CFPB argues that it should be entitled to the emails of Matthew Bailer, who managed some of Defendants' call centers for a year before he left the company in February 2012. But the *CFPB itself* explicitly excluded Mr. Bailer from its request for custodians. In the May 2018 agreement, the CFPB confirmed that it requested a sample of "employees who were employed by the company on January 1, 2013 in the lowest level of management over a single entire servicing call center as of that date." Ex. 5, at 6, n. 3(3). Mr. Bailer did not work for Defendants on January 1, 2013; he left the company in February 2012. He also was not in the lowest level of management. The CFPB knows these facts, as it put them in its letter requesting Mr. Bailer's emails. Nevertheless, the CFPB omitted that *its own criteria* excluded Mr. Bailer from the list of potential custodians.

Moreover, the document the CFPB uses to argue that it needs Mr. Bailer's emails—a 2010 memorandum from Mr. Bailer—was produced to the CFPB *over seven months ago*, in July 2018. The CFPB has had this document in its possession since that time, and, in fact, the CFPB deposed Mr. Bailer regarding this document in November 2018. If the CFPB believed it was entitled to or needed Mr. Bailer's emails (notwithstanding its own request and the parties' agreement to the contrary), the time to raise that issue would have been months ago, not at this late date as the parties are moving to wrap up discovery.

The CFPB's insistence that Defendants search custodians related to loan securitization is equally baseless. As an initial matter, it is not clear to Defendants how the emails of its employees who dealt with loan securitization would be relevant to this case. There is no mention in the CFPB's complaint of securities or securitization. In any event, Defendants already fully responded to the CFPB's document request at issue, which seeks "[a]ll documents relating to any evaluation, auditing, monitoring, oversight, due diligence, quality assurance, or compliance review (including those conducted by or on behalf of an investor or trustee of a loan securitization trust) relating to communications with or enrollment of borrowers in forbearance or any type of income-driven repayment plan."

After the CFPB served this request, counsel interviewed employees responsible for performing and coordinating audits and reviews, and those employees confirmed that there had been no internal audits or reviews on behalf of investors or trustees related to forbearance or income-driven repayment plans. Therefore, there were no relevant custodians for the parenthetical reference in the CFPB's document request. Defendants produced responsive third-party audits more than a year ago, in January 2018, and in July 2018, produced emails from the custodians primarily responsible for the auditing, monitoring, and quality assurance related to communications with borrowers about repayment options. The CFPB has had these documents in its possession for many months, and has already deposed the relevant custodians, never once raising an issue with Defendants' productions until its letter to the Special Master on January 29, 2018.

As support for its argument that Defendants should be required to conduct this eleventh-hour email review, the CFPB cites two out-of-circuit cases that are, at best, inapposite, and to the

extent they are relevant, actually support Defendants' position.  First, the CFPB points to *California Earthquake Auth. v. Metro. W. Secs.*, LLC, 2012 WL 5880345 (E.D. Cal. Nov. 21, 2012) for the unremarkable proposition that the producing party must identify the appropriate custodians.  That is of course true—and is exactly what Defendants did.  In fact, Defendants not only identified them, but engaged in extensive discussions with the CFPB regarding those custodians, clarified which custodians the CFPB was interested in, and then added additional custodians to satisfy the CFPB.  Second, the CFPB cites *Dryer v. Nat'l Football League*, 2012 WL 12895563 (D. Minn. May 21, 2012), but in that case the court actually *denied* the plaintiff's request with respect to four out of the five additional custodians from whom the plaintiff sought electronically stored information, ruling that the burdens outweighed the likely benefit.  *Id.* at *7.

The parties engaged in extensive discussions—and disagreements—over the scope of Defendants' email review, but ultimately reached an agreement.  In light of those discussions, the CFPB's January 29, 2019 representation that they have recently "noticed two problematic deficiencies" in the email custodians (without disclosing that the CFPB defined the applicable criteria) is revealing.  The CFPB should not be allowed to renege on the parties' agreement and re-trade the deal at this late stage.

Respectfully,

Daniel T. Brier

DTB:cak

# Exhibit 1

1700 G Street NW,
Washington, DC 20552

May 10, 2018

**Via E-Mail to Defendants' Counsel**

Re:   *Consumer Financial Protection Bureau v.*
      *Navient Corp., et al.,* Case No. 3:17-CV-00101-RDM

Dear Counsel:

I write in connection with the Court's May 4 Order directing the parties to confer on search terms associated with Defendants' obligation to search for and produce responsive, non-privileged email communications.

As discussed during our meeting yesterday, the Bureau proposed the following:

1. For requests where Defendants previously provided the Bureau with search terms (via December 6, 2017 and February 5, 2018 emails), reducing the proximity limiters associated with the search terms to eliminate from the universe documents that are unlikely to be relevant. Thus, for the 50, 25, and 15 proximity limiters that Defendants originally used, cut those down to 30, 20, and 12. The Bureau also requested that Defendants calculate (in the same manner that they originally calculated the number of unique documents) the number of unique documents that would result from such a reduction.

2. For requests where Defendants have not provided the Bureau with search terms (including requests 4, 7, 14, 16, and 17 to Navient Solutions), Defendants would provide the Bureau with the search terms, if any, it originally used in connection with those searches, and the Bureau would propose edits to those search terms. Defendants stated that they did not think that they had unique search terms for these requests and thought that other search terms encompassed these requests. Defendants also stated a willingness to consider any search terms the Bureau proposes in connection with these requests if the Bureau believes that the previously produced search terms do not cover these requests. It would be helpful if you could confirm whether any independent search terms exist in connection with these requests, so that the Bureau knows whether we should wait to receive search terms from you or proceed with crafting ones targeted to the requests (if necessary).

3. For all requests, Defendants would provide the Bureau with the custodians whose records Defendants applied the search terms to and the custodians' various titles during the applicable time period. You indicated that pulling historic titles could delay the turnaround time. We explained that historic titles will help avoid the scenario where an individual's current title is not reflective of their prior responsibilities and thus not probative of whether they were a proper custodian.

One thing we asked was what system is being used to review Defendants' documents, and you informed us that it is Relativity. In our Relativity-based review of Bureau documents, we noticed that, because Relativity automatically stems search terms (i.e., searches for variations of search terms), some search terms ended up sweeping in variations that would lead to too many false positives. To the extent you have not done so, we would appreciate it if you could run a report showing all of the variations of each search term that Relativity sweeps in due to stemming, as that may reveal terms for which stemming needs to be turned off, which may in turn significantly reduce document counts. We are happy to have our e-discovery specialist walk through the process of generating the stemming report, and we also would be happy to review the stemming report to locate terms for which we believe that stemming can be turned off.

We look forward to receiving the foregoing information and would appreciate receiving it on a rolling basis, as you indicated that (i) you already have data on the effect of our proposal to significantly reduce proximity limiters and (ii) marshaling the titles of custodians could slow the process. The stemming report can be quickly generated, and we would be happy to review that as soon as possible as well.

There were two other topics we discussed in connection with searches of Defendants' email. First, the Bureau indicated that the universe of documents that Defendants must search has changed. During the hearing, the parties discussed an original universe of approximately 1 million emails, but that figure was based on Defendants' temporal limitations to discovery, which the parties were also litigating. The Court has since established the relevant period for discovery, which limits discovery on certain requests while expanding it for others. And the Court stated that the categories of documents we requested are potentially relevant. We do not understand you to dispute the Court's ruling on the dates, the potential relevance of the categories, or the fact that it does change the universe of emails that are at issue. But we do understand that you dispute whether the Court's order on the relevance of emails and the applicable time periods means that you must search for relevant emails from the allowable time period that are electronically stored on the Email Xtender system that Defendants maintain. While it appears that we are far apart on this particular issue (the Bureau understanding that Defendants should  search the legacy system for responsive emails because the Bureau never agreed to exclude that system and it sought emails from the entire period, and Defendants understanding that it has no general obligation to search the legacy system for responsive emails, in part because the Bureau did not explicitly raise the issue of the legacy system before the Court, including Defendants' alleged burden associated with accessing this system), we are hopeful that continued conferrals will help resolve this issue along with the others.

Second, the parties also discussed a proposal from Defendants whereby Defendants have crafted new search terms using terms contained within policies, procedures, job aides, and the like that the Bureau previously identified in connection with Defendants' 30(b)(6) of the Bureau. While this approach is similar to the approach Defendants presented to the Court, we nonetheless agreed to review the search terms and hit counts associated with Defendants' proposal. Defendants' proposal also included

running searches based on "letter codes" that you represented stay the same as a letter is revised over the years. We noted that this is an interesting approach and are willing to look at the search terms you provide in connection with it. One concern with this approach is that it appears to focus on specific documents and not the broader issues. In any event, we will review the search terms you provide. With respect to Defendants' internal discussions about the contract with the Education Department, Defendants asked the Bureau to propose search terms. We suggested that you use the same searches that you used when searching for external communications with the Education Department about this topic. You indicated that that resulted in too many documents to review. Accordingly, we look forward to seeing how the Bureau's proposal to reduce proximity limiters and to review the stemming report for all searches affects this category of documents in particular. If proximity limiters and possible elimination of stemming for certain search terms are ineffective at eliminating potentially irrelevant information, we will gladly propose search terms.

I believe this covers the parties' deliverables and initial proposals. If I've inadvertently misstated your position, I apologize and welcome any clarification.

We will follow up with another communication regarding the other topics we discussed yesterday that are not subject to the Court's May 4 Order.

Regards,

/s/ Nicholas Lee

# Exhibit 2

1700 G Street NW,
Washington, DC 20552



May 18, 2018

**<u>Via E-mail to Defendants' Counsel</u>**

Re:   *Consumer Financial Protection Bureau v. Navient*
*Corp., et al.*, Case No. 3:17-CV-00101

Counsel:

I write in connection with the parties' ongoing discussions regarding the Court's May 4 Order.

*First,* part of the Bureau's May 17 proposal concerning searches for documents responsive to category 3 (also known as Request 7 to Navient Solutions) would require Defendants to search additional custodians' email using new search terms that the Bureau provided and "the searches relating to Counts I and II that you referenced on May 11." During yesterday's call, the Bureau agreed to identify additional, specific searches for category 3. A complete list of custodians and search terms we are proposing for category 3 is attached.

*Second,* there are a variety of items that the parties owe each other. During yesterday's call, you indicated that your new proposal for search terms, which you sent to us on May 14, builds off the search terms you used to produce the figures contained in your April 9 letter to the Court (Doc. 83). We requested that you provide us with the searches you used to produce the figures in your April 9 letter. This will help the Bureau understand how your new proposal differs from searches underlying the approach you presented to the Court, and will allow us to provide feedback on the proposal. You also agreed to provide custodians' titles during the relevant time period. As we noted, this information is crucial to our ability to reach an agreement. We also reiterate our request for search term reports for the same categories and time period reflected in the reports you provided on May 11, but using your original, larger proximity limiters of 50, 25, and 15, instead of the reduced limiters of 30, 20, and 12 that the Bureau proposed. By holding the relevant time period constant, such reports would enable the parties to assess how effective the Bureau's across-the-board reduction in proximity limiters is in eliminating documents that are unlikely to be responsive. We would appreciate receiving this information by Monday so that we can consider it prior to our Tuesday meeting. And, should you have new concerns with any of the proposals the Bureau has presented, please feel free to let us know in writing before our Tuesday meeting.

The Bureau agreed to share the contact information of a Bureau IT professional so that the parties' respective IT personnel can discuss how to quantify the effect of the Bureau's proposal that only inclusive emails need to be reviewed. Her name is Tracy Van Atta, her phone number is 202-435-9779, and she is available for a call on Monday, May 21, from 2:30 PM to 5:30 PM. If that time does not work, feel free to suggest an alternative. If Defendants' counsel will be on the call, please advise the Bureau by noon on Monday so that a Bureau attorney can participate as well. Quantifying the effect of this offer is important because we expect it to significantly reduce the volume of email that would need to be reviewed.

1

We look forward to receiving the information requested above and continuing to meet and confer to reach an agreement on these and other issues.

Regards,

/s/ Nicholas Lee

# Exhibit 3

## Dryhurst, Karin

| | |
|---|---|
| **From:** | Dryhurst, Karin |
| **Sent:** | Monday, May 21, 2018 4:47 PM |
| **To:** | Lee, Nicholas (CFPB); Jabbour, Nicholas (CFPB); Johnson, Ebony (CFPB); Matthews, Andrea (CFPB); Arreaza, Manuel (CFPB); Kim, Thomas (CFPB); Dudley, David (CFPB); Wagman, Lawrence (CFPB) |
| **Cc:** | Paikin, Jonathan; Martens, Matthew T.; Kearney, Daniel P.; Hart, Gideon; Dan Brier; Donna Walsh |
| **Subject:** | CFPB v. Navient Corp. et al (M.D. Pa.) |
| **Attachments:** | Category 1 Emails re Policies.pdf; Category 2 Emails re Audits.pdf; Category 4 Emails re IDR Notices.pdf; Category 5 Internal Emails re ED.pdf; Email Custodian Titles.pdf; April 9 Search Terms.pdf; Proposed Category1.pdf; Proposed Category 2.pdf; Proposed Category 4.pdf; CFPB Category 3 Terms.pdf |

Nick –

Attached are the documents we discussed.

1. Search term reports for Categories 1, 2, 4, and 5 using the broader proximity limiters.
2. Titles for the custodians we have searched for Categories 1–5.
3. Search terms used for the proposal for Categories 1 and 4 in our April 9 letter, and search term reports for our current proposal for Categories 1, 2, and 4.
4. Search term report for the CFPB's proposed Category 3 search terms run against the attached custodians.

Thanks,
Karin

**Karin Dryhurst | WilmerHale**
1875 Pennsylvania Avenue NW
Washington, DC 20006 USA
+1 202 663 6248 (t)
+1 202 663 6363 (f)
karin.dryhurst@wilmerhale.com

**Please consider the environment before printing this email.**

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

**CONFIDENTIAL**
*For discussion purposes*

### Email Custodian Titles (Categories 1-5)

| Worker | Effective Date | Job Title |
|--------|----------------|-----------|
| Amanda LaPenta | 12/17/2012 | Project Coordinator |
| Amanda LaPenta | 8/1/2015 | Customer Correspondence Mgr |
| Amanda LaPenta | 9/12/2015 | Customer Correspondence Manager |
| Angela Kamionka | 1/1/2010 | Director |
| Angela Kamionka | 1/3/2015 | Senior Director, Office of the Customer Advocate |
| Brian Lanham | 6/27/2009 | Dir Credit & Mkting Analytics |
| Brian Lanham | 1/28/2010 | Sr Dir Operation Data Mgmt |
| Brian Lanham | 7/21/2012 | Vice President, Operations Support |
| Brian Lanham | 3/29/2014 | VP Servicing Call Center |
| Brian Lanham | 7/18/2015 | VP, Call Center |
| Cheryl Hammes | 1/1/2010 | Dir Business Solutions |
| Cheryl Hammes | 4/25/2015 | Dir Change Management |
| Daniel Yost | 6/27/2009 | VP Guarantor Servicing & Compl |
| Daniel Yost | 2/4/2010 | VP Title IV Srvcg Contract Mgt |
| Eileen Herbert | 7/1/2009 | Sr Compliance Coordinator |
| Hans Stullken | 7/15/2006 | Director |
| Hans Stullken | 7/20/2013 | Director, Customer Experience |
| Hans Stullken | 1/4/2016 | Sr Dir, Office of the Customer Experience |
| Holli Jeckell | 7/11/2009 | Tech Training Spec II |
| Holli Jeckell | 12/26/2009 | Manager |
| Holli Jeckell | 10/26/2013 | Customer Experience Manager |
| Jamie Hedge | 7/1/2009 | Dir Customer Set Up Ops |
| Jamie Hedge | 4/17/2010 | Project Manager |
| Jeanine Pysniak | 7/11/2009 | Customer Advocate II |
| Jeanine Pysniak | 8/16/2014 | Sr Compliance Coordinator |
| Jennifer Domenick | 1/1/2010 | Dir Coll Direct Mail Channel |
| Jennifer Domenick | 4/28/2012 | Dir Collection Strategies |
| Jennifer Domenick | 7/18/2015 | Dir, Monitoring & Testing |
| Jennifer Domenick | 1/4/2016 | Sr Dir, Asset Recovery Compliance |
| Judith Grassi | 6/30/2009 | VP & Pres & Region Head-Sales |
| Judith Grassi | 9/4/2010 | VP CPS Strat Imp & Sales Rprtg |
| Judith Grassi | 11/3/2012 | VP, Client Management Department of Education Loan Services |

**CONFIDENTIAL**
*For discussion purposes*

| | | |
|---|---|---|
| Kevin Woods | 6/27/2009 | Sr Dir Guar Serv Data Mgmt&Com |
| Kevin Woods | 8/31/2009 | Sr Dir Title IV Servicing |
| Kevin Woods | 1/4/2016 | VP, Title IV Servicing |
| Lisa Stashik | 11/28/2009 | Sr Dir, Ofc of Cust Advocate |
| Lisa Stashik | 1/28/2010 | VP Office of Customer Advocate |
| Lisa Stashik | 7/18/2015 | VP, OCA, Customer Experience & Training |
| Marjorie Belton | 6/30/2009 | Sr Dir&Pres, Regions Educ Lend |
| Marjorie Belton | 10/30/2010 | Sr Dir TitleIVSrvcg Cntrct Mgt |
| Michael Maier | 12/28/2009 | SVP Operations Support |
| Michael Maier | 2/24/2011 | SVP Loan Operations |
| Michael Maier | 7/18/2015 | SVP, Strategic Initiative |
| Michael Outten | 6/27/2011 | Collections Spec I - Educ |
| Michael Outten | 10/13/2012 | Project Coordinator |
| Michael Outten | 8/29/2015 | Communications Project Manager |
| Patricia Novrocki | 7/11/2009 | Manager |
| Patricia Novrocki | 12/8/2012 | Training Director, Loan Operations |
| Patricia Novrocki | 12/17/2016 | Dir, Loan Operations Training |
| Patricia Peterson | 6/27/2009 | Sr Dir Priv Cred, Admin&Stragy |
| Patricia Peterson | 7/25/2009 | VP Priv Cred Coll&APG Bus Supp |
| Patricia Peterson | 1/4/2016 | SVP, Operations Support |
| Patricia Potomis | 7/1/2009 | Director |
| Patricia Potomis | 7/29/2010 | Sr Dir, Servicing Compliance |
| Paul Mayer | 1/1/2010 | SVP, Corporate Development |
| Rich Nickel | 1/1/2010 | SVP & Pres, USA Funds Services |
| Rich Nickel | 2/6/2010 | SVP Dept of Ed Services |
| Robert Leary | 8/8/2009 | Mging Dir, Corp Development |
| Robert Leary | 1/28/2010 | VP Title IV Srvcg Contract Mgt |
| Robert Sommer | 1/1/2010 | Managing Dir, Loan Policy |
| Robyn Hughes | 7/21/2014 | Sr Technical Solutions Consultant |
| Robyn Hughes | 11/7/2015 | School Ombudsman |
| Sara Patterson | 1/1/2010 | Dir Contract Admin |
| Sara Patterson | 12/5/2015 | Dir, Title IV Servicing Contract Admin |
| Troy Standish | 6/27/2009 | VP Operations, PA |
| Troy Standish | 1/1/2010 | VP Pennsylvania Operations |
| Troy Standish | 1/28/2010 | SVP, Servicing Operations |

**CONFIDENTIAL**
*For discussion purposes*

| Troy Standish | 7/18/2015 | SVP, Default Prevention |
|---|---|---|

# Exhibit 4

## Dryhurst, Karin

| | |
|---|---|
| **From:** | Lee, Nicholas (CFPB) <Nicholas.Lee@cfpb.gov> |
| **Sent:** | Wednesday, May 23, 2018 5:35 PM |
| **To:** | Dryhurst, Karin; Paikin, Jonathan; Martens, Matthew T.; Kearney, Daniel P.; Hart, Gideon; Dan Brier; Donna Walsh |
| **Cc:** | Johnson, Ebony (CFPB); Arreaza, Manuel (CFPB); Matthews, Andrea (CFPB); Dudley, David (CFPB); Kim, Thomas (CFPB); Jabbour, Nicholas (CFPB) |
| **Subject:** | RE: CFPB v. Navient Corp. et al (M.D. Pa.) - Summary of Proposal |

Karin:

Regarding your questions below, I can confirm your understanding with respect to bullets 1 and 2. With respect to bullet 3, the custodians that the Bureau is interested in are those with responsibility for reviewing the quality of customer service provided by call center customer service representatives on the federal loan servicing side of the business—i.e. those quality assurance staff at the lowest level of call listening. We can confirm your understanding with respect to the time period applicable to the review of employees' emails for category 3.

Earlier today, you proposed requesting from the Court a one-week extension to the May 25 deadline set in the Court's May 4 Order. We are amenable to such an extension. I will circulate draft language shortly.

As to rescheduling this evening's call, we are available Friday between 11:30 a.m. and 2:30 p.m. I understand that Dan may not be available in this window but hope that we can move forward nonetheless. We can use the following dial-in:

> 877-849-6920
> 14273230

Regards,
Nick

---

**From:** Dryhurst, Karin [mailto:Karin.Dryhurst@wilmerhale.com]
**Sent:** Wednesday, May 23, 2018 1:37 PM
**To:** Lee, Nicholas (CFPB); Paikin, Jonathan; Martens, Matthew T.; Kearney, Daniel P.; Hart, Gideon; Dan Brier; Donna Walsh
**Cc:** Johnson, Ebony (CFPB); Arreaza, Manuel (CFPB); Matthews, Andrea (CFPB); Dudley, David (CFPB); Kim, Thomas (CFPB); Jabbour, Nicholas (CFPB)
**Subject:** RE: CFPB v. Navient Corp. et al (M.D. Pa.) - Summary of Proposal

Nick,

Thank you for the draft proposal.  Following up on our discussion, we are running the searches and analytics in response to your proposal and hope to have answers as soon as possible.  In the meantime, we wanted to make sure we understand a few points.

1. The search term reports sent on May 11 use the proximity limiters of 30, 20, and 12.  We understood from our discussion yesterday that the limiters would change from 30 to 25, from 20 to 15, and from 12 to 10.  This seems consistent with your written proposal, but please confirm.

2.  With respect to inclusive emails, our understanding from our discussion on May 17 was that non-inclusive emails need not be reviewed *or produced*.  We clarified this point on May 17 and understood you to agree given our concern with producing documents that have not been reviewed.

3.  We understood from our discussion yesterday that the customer quality custodians would be the first level of management above the actual call listeners.  The written proposal suggests you would like the individuals at the lowest level of call listening.  Please confirm which level of custodian you are interested in.  In addition, we understand that we would be searching emails for the new custodians limited to the timeframe they were in the relevant position in call center management and customer quality.  Please let us know.

As discussed, once we have the numbers, we will need to discuss the proposal with our client.  In particular, we need an understanding of the burden of the proposed additional custodians before we can provide an educated response.  We are working quickly to gather all the relevant data points.

Thanks,
Karin

**From:** Lee, Nicholas (CFPB) <Nicholas.Lee@cfpb.gov>
**Sent:** Tuesday, May 22, 2018 5:08 PM
**To:** Dryhurst, Karin <Karin.Dryhurst@wilmerhale.com>; Paikin, Jonathan <Jonathan.Paikin@wilmerhale.com>; Martens, Matthew T. <Matthew.Martens@wilmerhale.com>; Kearney, Daniel P. <Daniel.Kearney@wilmerhale.com>; Hart, Gideon <Gideon.Hart@wilmerhale.com>; Dan Brier <dbrier@mbklaw.com>; Donna Walsh <dwalsh@mbklaw.com>
**Cc:** Johnson, Ebony (CFPB) <Ebony.Johnson@cfpb.gov>; Arreaza, Manuel (CFPB) <Manuel.Arreaza@cfpb.gov>; Matthews, Andrea (CFPB) <Andrea.Matthews@cfpb.gov>; Dudley, David (CFPB) <David.Dudley@cfpb.gov>; Kim, Thomas (CFPB) <Thomas.Kim@cfpb.gov>; Jabbour, Nicholas (CFPB) <Nicholas.Jabbour@cfpb.gov>
**Subject:** CFPB v. Navient Corp. et al (M.D. Pa.) - Summary of Proposal

Counsel:

Attached is a summary of the current proposal under consideration by the parties. Please let me know if the summary is inconsistent with your understanding of the proposal.

Regards,
Nick

# Exhibit 5

**Dryhurst, Karin**

| | |
|---|---|
| **From:** | Lee, Nicholas (CFPB) <Nicholas.Lee@cfpb.gov> |
| **Sent:** | Thursday, May 31, 2018 12:52 PM |
| **To:** | Dryhurst, Karin; Paikin, Jonathan; Martens, Matthew T.; Kearney, Daniel P.; Hart, Gideon; 'Dan Brier'; 'Donna Walsh' |
| **Cc:** | Johnson, Ebony (CFPB); Arreaza, Manuel (CFPB); Matthews, Andrea (CFPB); Dudley, David (CFPB); Kim, Thomas (CFPB); Jabbour, Nicholas (CFPB) |
| **Subject:** | RE: CFPB v. Navient - Search Terms Agreement |
| **Attachments:** | Joint Ltr to Court - 5.31.18 - Draft (WH edits)_(167940524)_(1).pdf; Summary of Agreement - 5.31.18.pdf |

Thanks, Karin.

We've updated both documents accordingly. The revised summary of the agreement is attached. Also attached is the revised joint letter.

Please note that I corrected the date of the Court's memorandum opinion from May 5 to May 4. I don't anticipate any concern with the change, but please confirm Defendants' consent to the Bureau's filing of the attached joint letter with that minor change.

Regards,
Nick

---

**From:** Dryhurst, Karin [mailto:Karin.Dryhurst@wilmerhale.com]
**Sent:** Thursday, May 31, 2018 12:34 PM
**To:** Lee, Nicholas (CFPB); Paikin, Jonathan; Martens, Matthew T.; Kearney, Daniel P.; Hart, Gideon; 'Dan Brier'; 'Donna Walsh'
**Cc:** Johnson, Ebony (CFPB); Arreaza, Manuel (CFPB); Matthews, Andrea (CFPB); Dudley, David (CFPB); Kim, Thomas (CFPB); Jabbour, Nicholas (CFPB)
**Subject:** RE: CFPB v. Navient - Search Terms Agreement

Nick,

Thanks for sending along. The summary of the agreement is consistent with our understanding, but there appears to be an inadvertent error in footnote 3. The first sentences of paragraphs #2 and #3 accurately refer to two custodians, but both paragraphs refer to three custodians in the parenthetical describing the sample. We assume you meant to change those references to "the first *two* individuals in alphabetical order." Please confirm.

In addition, we made one change to the letter to refer to the Court's memorandum opinion. Please let us know if you would like to discuss.

Thanks,
Karin

---

**From:** Lee, Nicholas (CFPB)
**Sent:** Thursday, May 31, 2018 11:20 AM
**To:** Dryhurst, Karin ; Paikin, Jonathan ; Martens, Matthew T. ; Kearney, Daniel P. ; Hart, Gideon ; 'Dan Brier' ; 'Donna Walsh'
**Cc:** Johnson, Ebony (CFPB) ; Arreaza, Manuel (CFPB) ; Matthews, Andrea (CFPB) ; Dudley, David (CFPB) ; Kim, Thomas

(CFPB) ; Jabbour, Nicholas (CFPB)
**Subject:** CFPB v. Navient - Search Terms Agreement

Counsel:

Please find attached a draft joint letter to the Court regarding the parties' agreement. Also attached for your records is a summary of the agreement, as we discussed this morning. As it relates to the sampling of QA staff for category 3, the parties understand that the sample will be drawn from the quality assurance group that Ms. Dryhurst described yesterday. Per Ms. Dryhurst, these individuals listen to servicing calls for quality and compliance.

Regards,
Nick

**Nicholas Lee**
Enforcement Attorney
Consumer Financial Protection Bureau
202 435 7059
nicholas.lee@cfpb.gov

**consumerfinance.gov**

Confidentiality Notice: If you received this email by mistake, you should notify the sender of the mistake and delete the e-mail and any attachments. An inadvertent disclosure is not intended to waive any privileges.

1700 G Street NW,
Washington, DC 20552

May 31, 2018

**Filed Via ECF**

The Honorable Robert D. Mariani
U.S. District Court, Middle District of Pennsylvania
William J. Nealon Federal Bldg. & U.S. Courthouse
235 N. Washington Avenue
Scranton, PA 18503

      Re:   *Consumer Financial Protection Bureau v. Navient Corp., et al.*, Case
             No. 3:17-CV-00101-RDM

Dear Judge Mariani:

      The Bureau writes in connection with the Court's May 29 Order (Doc. 92)

directing the parties to "file a joint letter advising the Court whether they have

reached an agreement on the search terms Defendants shall use to respond to

Plaintiff's request for certain internal and external emails." The parties have

reached an agreement on search terms for all five categories of emails at issue

during the April 17 hearing. Defendants have reviewed this letter and have

authorized the Bureau to file it on behalf of all parties to this litigation.

                Respectfully,

                /s/ Nicholas C. Lee

CC: All counsel (via operation of ECF)

**Categories 1, 2, 4, and 5**

For these categories, the Bureau's global compromise consists of the following:
- **Search Terms:** Subject to the proposed modifications identified below, Defendants will use the search terms attached to Ms. Dryhurst's May 11 email to the Bureau. The attachments are titled "Category 1 Emails re Policies.pdf," "Category 2 Emails re Audits.pdf," "Category 4 Emails re IDR Notices.pdf," and "Category 5 Emails re ED.pdf."
  - o **Modification of Category 1 searches:** Eliminate all searches referencing "cosign*" or "(renew* OR recertif*)."
  - o **Modification of Category 4 searches:** Eliminate the searches in footnote 1.[1]
- **Proximity limiters:** An across-the-board reduction in proximity limiters from 50, 25, and 15 to 25, 15, and 10, respectively.
- **Documents with hits:** Only documents with hits need to be reviewed for responsiveness. If a document with a hit is responsive, its non-privileged family members without hits must be produced. If a document with a hit is not responsive, its family members without hits need not be reviewed or produced.
- **Inclusive emails:** Non-inclusive emails (as defined by Relativity) need not be reviewed or produced.
  - o Relativity defines an inclusive email as "An email that contains unique content not included in any other email, and thus, must be reviewed. An email with no replies or forwards is by definition inclusive. The last email in a thread is also by definition inclusive." Relativity defines a non-inclusive email as "An email whose text and attachments are fully contained in another (inclusive) email."
- **Email Xtender:** No documents stored exclusively on Email Xtender need to be reviewed or produced.

**Category 3**

For this category, the Bureau's global compromise consists of the following:
- **Proximity limiters:** Same as above.
- **Documents with hits:** Same as above.
- **Inclusive emails:** Same as above.
- **Email Xtender:** Same as above.
- **New Searches and Custodians:**
  - o For the existing custodians[2] identified in footnote 2 below, add the following searches:

---

[1] Eliminated Searches:
1. (forbearance OR FORA OR FORV OR FORB) w/25 (advantage OR disadvantage) w/15 (borrow* OR consumer OR customer)
2. (forbearance OR FORA OR FORV OR FORB) w/25 (effective* OR ineffective*)
3. (forbearance OR FORA OR FORV OR FORB) w/25 (encourage* OR sell OR sold)
4. (forbearance OR FORA OR FORV OR FORB) w/25 (priority w/15 ("income-driven" OR IDR OR IBR OR PAYE OR REPAYE))
5. (forbearance OR FORA OR FORV OR FORB) w/25 advis*
6. (forbearance OR FORA OR FORV OR FORB) w/25 alternative
7. (forbearance OR FORA OR FORV OR FORB) w/25 counsel

1. ((forbearance* OR FORA OR FORV OR FORB) OR ("income-driven" OR "income-based" OR "income-contingent" OR "income based" OR "income driven" OR "income contingent" OR IDR OR IBR OR PAYE OR REPAYE OR ICR)) w/10 (good OR better OR best OR bad OR wors* OR ideal OR prefer* OR priorit* OR optimal OR first OR last OR always OR explor* OR temporar* or brief* OR advantag* OR disadvantag* OR positive* OR negative* OR benefi* OR suited OR suitable OR applicab* OR compar* OR default* OR push* OR steer* OR pressur*)

2. (fail* OR "does not" OR "did not" OR never OR inadequate* OR adequate* OR insufficient* OR sufficient*) W/10 (mention* OR inform* OR told OR tell* OR advis* OR advice OR communicat* OR explain* OR notif* OR present*) W/10 (forbearance* OR FORB OR FORA OR FORV OR "income-driven" OR "income driven" OR "income-based" OR "income based" OR "income-contingent" OR "income contingent" OR IDR OR IBR OR ICR)

3. steer* W/5 (borrower* OR consumer* OR customer* OR caller*)

o  For the categories of new custodians[3] identified in footnote 3 below, use the following searches:

---

[2] Existing Custodians:
1. Brian Lanham
2. Patricia Peterson
3. Jennifer Domenick
4. Eileen Herbert
5. Patricia Novrocki
6. Jeanine Pysniak
7. Troy Standish
8. Patricia Potomis
9. Angela Kamionka
10. Holli Jeckell
11. Kevin Woods
12. Robert Sommer
13. Marjorie Belton
14. Judith Grassi
15. Cheryl Hammes
16. Jamie Hedge
17. Robyn Hughes
18. Robert Leary
19. Michael Maier
20. Paul Mayer
21. Rick Nickel
22. Sara Patterson
23. Daniel Yost

[3] New Custodians:

1. ((forbearance* OR FORA OR FORV OR FORB) OR ("income-driven" OR "income-based" OR "income-contingent" OR "income based" OR "income driven" OR "income contingent" OR IDR OR IBR OR PAYE OR REPAYE OR ICR)) w/10 (good OR better OR best OR bad OR wors* OR ideal OR prefer* OR priorit* OR optimal OR first OR last OR always OR explor* OR temporar* OR brief* OR advantag* OR disadvantag* OR positive* OR negative* OR benefi* OR suited OR suitable OR applicab* OR compar* OR default* OR push* OR steer* OR pressur*)

2. (fail* OR "does not" OR "did not" OR never OR inadequate* OR adequate* OR insufficient* OR sufficient*) W/10 (mention* OR inform* OR told OR tell* OR advis* OR advice OR communicat* OR explain* OR notif* OR present*) W/10 (forbearance* OR FORB OR FORA OR FORV OR "income-driven" OR "income driven" OR "income-based" OR "income based" OR "income-contingent" OR "income contingent" OR IDR OR IBR OR ICR)

3. steer* W/5 (borrower* OR consumer* OR customer* OR caller*)

4. ((forbearance* OR FORA OR FORV OR FORB) OR ("income-driven" OR "income-based" OR "income-contingent" OR "income based" OR "income driven" OR "income contingent" OR IDR OR IBR OR PAYE OR REPAYE OR ICR)) W/25 (suitability OR unsuit* OR appropriate* OR inappropriate* OR inapplicab* OR advisable)[4]

---

1. Jack Remondi.
2. A random sampling of two individuals responsible for managing call centers on the federal loan servicing side of the business. (We request that the sample be drawn from employees who were employed by the company on January 1, 2013 in the lowest level of management over a single entire servicing call center as of that date, and who were employed in that position for at least one year. Once the pool of potential employees is identified, select the first two individuals in alphabetical order.) The Bureau agrees to limit the time period for discovery in this sample to the periods during which the custodians were in the role of managing call centers on the federal loan servicing side of the business.
3. A random sampling of two individuals responsible for reviewing the quality of customer service provided by call center customer service representatives on the federal loan servicing side of the business. (We request that the sample be drawn from employees who were employed by the company on January 1, 2013 in the lowest level of reviewing the quality of customer service provided by call center customer service representatives on the federal loan servicing side of the business, and who were employed in that position for at least one year. Once the pool of potential employees is identified, select the first two individuals in alphabetical order.) The Bureau agrees to limit the time period for discovery in this sample to the periods during which the custodians were in the role of reviewing the quality of customer service provided by call center customer service representatives on the federal loan servicing side of the business .

[4] This search was previously identified as search #5 in the Bureau's May 18 email to Defendants.

5. ((forbearance* OR FORA OR FORV OR FORB) OR ("income-driven" OR "income-based" OR "income-contingent" OR "income based" OR "income driven" OR "income contingent" OR IDR OR IBR OR PAYE OR REPAYE OR ICR)) W/25 (cost OR expens* OR loss OR effective* OR ineffective* metric OR criteria)[5]

6. ((forbearance* OR FORA OR FORV OR FORB) OR ("income-driven" OR "income-based" OR "income-contingent" OR "income based" OR "income driven" OR "income contingent" OR IDR OR IBR OR PAYE OR REPAYE OR ICR)) W/25 ((long W/5 term) OR (short W/5 term) OR limit*)[6]

---

[5] This search was previously identified as search #8 in the Bureau's May 18 email to Defendants.
[6] This search was previously identified as search #9 in the Bureau's May 18 email to Defendants.