WILMERHALE

**Karin Dryhurst**

+1 202 663 6248 (t)
+1 202 663 6363 (f)
karin.dryhurst@wilmerhale.com

February 11, 2019

**VIA ECF**

Judge Thomas I. Vanaskie
JAMS, Inc.
1717 Arch Street, Suite 3810
Philadelphia, Pennsylvania 19103

  Re: Defendants' Letter Brief in Support of Intra-Group Attorney-Client
     Privilege

Dear Judge Vanaskie:

  Pursuant to Special Master Order #5 dated February 5, 2019, Defendants respectfully submit this letter brief addressing attorney-client privilege in the context of affiliated corporate entities.

  "Courts almost universally hold that intra-group information sharing does not implicate the disclosure rule." *In re Teleglobe Communications Corp.*, 493 F.3d 345, 369 (3d Cir. 2007). The Third Circuit agrees that "[t]his result is unquestionably correct." *Id.* Although courts have offered varying rationales for this principle, the rationale adopted by the Third Circuit is "that the members of the corporate family are joint clients." *Id.* at 372. "When co-clients and their common

WilmerHale

February 11, 2019
Page 2

attorneys communicate with one another, those communications are 'in confidence' for privilege purposes," and thus "privilege protects those communications from compelled disclosure to persons outside the joint representation." *Id.* at 363; *see also* Restatement (Third) of the Law Governing Lawyers § 75(1) (2000).

The existence and scope of a joint representation are established through "the parties' intent and expectations." 493 F.3d at 363. The joint representation begins when the lawyer and co-clients agree to the representation. *See id.* at 362. The lawyer and co-clients are permitted but not required to limit the scope of the joint representation by agreement. *See id.* at 362–63. The representation continues until the relationship terminates (either because the client discharges the lawyer, the lawyer withdraws, or "it becomes clear to all parties that the clients' legal interests have diverged too much to justify using common attorneys"). *Id.* at 362.

There is a limited "exception" to this general principle when corporate entities engage in adverse litigation against each other. *Id.* at 363. In such exceptional circumstances, as the Third Circuit recognized, "the default rule is that all communications made in the course of the joint representation are

WILMERHALE

February 11, 2019
Page 3

discoverable." *Id.* at 366.  Importantly, it is *this exception* that was at issue in *Teleglobe*.  In fact, the entire discussion cited by the CFPB in its January 25, 2019 letter concerns the adverse litigation exception and its application to the facts of *Teleglobe*.  *See* CFPB letter; 493 F.3d at 366–71.

Here, the adverse litigation exception has no application, and the intent and expectations of the Navient affiliates clearly establish a joint representation.  In 2003, Pioneer Credit Recovery, Inc. ("Pioneer") and non-party General Revenue Corporation ("GRC"),[1] along with other affiliates, agreed that in-house counsel at Sallie Mae, Inc. (now, Navient Solutions, LLC) would provide legal services to them.  *See* Ex. A ¶ 1; *see id.* at NAV-01144258, -01144264.[2]  The affiliates renewed that agreement in 2015.  *See* Ex. B ¶ 1; *see id.* at NAV-01144234; -01144235.  Nothing in those agreements limits the scope of the joint representation.  *See* Exs. A, B.  And there is no other agreement limiting its scope.  Exs. C, D.  No current affiliate has discharged Navient Solutions in-house counsel,

---

[1] The CFPB has identified six communications among employees and officers of Sallie Mae, Inc., Pioneer, and GRC.  *See* Doc. 146-1, A18–20.  As an initial matter, it is unclear why the CFPB is interested in communications between in-house counsel and GRC, who is not a party to this lawsuit.  In any event, because the CFPB has not identified the additional entries it is challenging, Defendants have responded based on the examples provided.  The same basic agreements, facts, and arguments would apply with respect to communications among other Navient affiliates and their common counsel.  *See* Exs. A, B.

[2] Because Exs. A and B are confidential, Defendants will submit them separately to the Special Master.

WILMERHALE

February 11, 2019
Page 4

and Navient Solutions in-house counsel has not withdrawn from its representation of any of them. Ex. D. Nor has there been, in the time period at issue, any divergence in the affiliates' legal interests from which the Court could infer that the affiliates have *de facto* ended their joint representation. *Id.* Under black-letter law, Navient's intra-group communications are therefore shielded from disclosure to a third party such as the CFPB.

The CFPB's misreading of *Teleglobe* would impose a needless and an unprecedented burden on corporate affiliates seeking to protect privileged communications from discovery by third parties. Specifically, the CFPB demands that Defendants be required to describe, for each individual communication exchanged among affiliates, the affiliates' shared legal interests as to that specific communication. Jan. 28 Tr. 77:2–9. Requiring Navient's affiliates to make such a showing to a third-party would turn on its head the rule that intra-group communications are "in confidence" for privilege purposes. There is simply no basis to demand that corporate entities justify, and risk divulging confidential details about, their joint representations to a third party. Imposing such a requirement would have broad, significant, and unintended consequences for

WILMERHALE

February 11, 2019
Page 5

corporate defendants. Because "parent companies often centralize the provision of legal services to the entire corporate group in one in-house legal department," imposing such a requirement would "wreak havoc on corporate counsel offices." *In re Teleglobe Communications Corp.*, 493 F.3d at 369.

The fundamental error of the CFPB's position is also shown by the adverse litigation exception itself. The premise of the rule that joint-representation communications are privileged against third persons is that all joint clients control invocation of the privilege. The adverse litigation exception comes into play only where there is a *disagreement* among co-clients regarding whether a communication should remain privileged "as between the co-clients in a subsequent adverse proceeding between them"—*i.e.*, when one co-client seeks to assert the privilege against another in a proceeding. *See* Restatement (Third) of the Law Governing Lawyers § 75(2) (2000). But if the co-clients *agree* that a communication should remain privileged, even in subsequent adverse litigation, then the communication continues to be privileged. *See id.* This basic principle—that the co-clients continue to control assertion of the privilege—is squarely at odds with the CFPB's demand that the Navient affiliates disprove any divergence

**WILMERHALE**

February 11, 2019
Page 6

of interest as to each document withheld.  Even if the CFPB could point to some adversity between two Navient entities as to a particular withheld communication (and it cannot), this would in no way entitle the CFPB or any third party to overcome the co-client affiliates' assertion of privilege as to the communication.

Unsurprisingly, the CFPB has never pointed to a case (and Defendants are aware of none) requiring corporate affiliates to prove to a third party the existence of a joint representation on a document-by-document basis.  And no court has ever applied *Teleglobe* in the manner the CFPB seeks.  This stands to reason: In *Teleglobe*, "[e]veryone agree[d] that the attorney-client privilege protect[ed] these documents against third parties." 493 F.3d at 352.  Rather, the question was "whether Company A may assert privilege *against its former family members*." *Id.* at 353 (emphasis added).  In that narrow context, the Third Circuit held that a court may only compel documents in adverse litigation among former affiliates if the former affiliates "were jointly represented by the same attorneys on a matter of common interest that is the subject of those documents." *Id.* at 386–87.

Nothing in *Teleglobe* requires a corporate litigant to, document-by-document, identify legal interests shared among corporate affiliates to justify

February 11, 2019
Page 7

withholding those communications from third parties.  Rather, the assertion that communications were (1) among attorneys and clients and (2) "for the purpose of securing or providing legal services" is generally sufficient to establish privilege.  *See SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 478 (E.D. Pa. 2005).  "Other required information, such as the relationship between the individuals listed in the log and the litigating parties . . . is then typically supplied by affidavit or deposition testimony," rather than in the log itself.  *Id.* at 482 (quoting *Bowne of N.Y.C., Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y.)).  Defendants have provided that information.  *See* Exs. A–D.  Navient Solutions, Pioneer, and GRC are affiliates who continue to be jointly represented by in-house counsel at Navient Solutions.  It has been their understanding and expectation that, with respect to any matter about which they communicate jointly with in-house counsel, they are jointly represented as co-clients.  *See* Exs. C, D.

The language on which the CFPB relies to manufacture additional requirements comes not from *Teleglobe*'s discussion of the requirements for establishing privilege but from its discussion of attorneys' ethical obligations when representing multiple clients.  *See* 493 F.3d at 366.  The Third Circuit explained

**WILMERHALE**

February 11, 2019
Page 8

that, precisely "because co-clients agree to share all information related to the matter of common interest with each other and to employ the same attorney"—thus establishing the privilege—"their legal interests must be identical (or nearly so) in order that an attorney can represent them all with the candor, vigor, and loyalty that our ethics require." *Id.* In other words, for an attorney to ethically represent two or more parties as co-clients, those parties' interests must not "have diverged too much to justify using common attorneys." *Id.* at 362. Here, they have not, and there is no basis to require a document-by-document explication to further justify the assertion of the attorney-client privilege.

Respectfully submitted,

Karin Dryhurst