

1700 G Street NW,
Washington, DC 20552

February 11, 2019

**Via ECF and Overnight Mail (to previously provided address)**

The Honorable Thomas I. Vanaskie, Special Master
U.S. District Court, Middle District of Pennsylvania
William J. Nealon Federal Bldg. & U.S. Courthouse
235 N. Washington Avenue
Scranton, PA 18503

   Re: *CFPB v. Navient Corp., et al.*, Case No. 3:17-CV-00101-RDM

Dear Judge Vanaskie:

  In accordance with Your Honor's instruction at the January 28, 2019 status conference, I am writing on behalf of Plaintiff Consumer Financial Protection Bureau ("Bureau") regarding the *in camera* review of documents in 35 disputed privilege categories. The Bureau encloses with this letter: (i) the Bureau's second distribution of documents for *in camera* review, which consists of redacted and unredacted versions of 198 privileged documents in Categories 41, 72, and 79 from the Bureau's July 6, 2018 and August 31, 2018 privilege logs (Bates numbered CFPB-NAV-0056908.0001 through CFPB-NAV-0057142.0002);[1] and (ii) the Bureau's supplemental privilege log for the 198 documents. The Bureau will transmit the password for the enclosed documents via email. The Bureau is also producing the enclosed materials to Defendants, excluding the unredacted versions of the 198 privileged documents.[2]

  To assist in Your Honor's evaluation of the Bureau's privilege assertions over the documents in this second distribution, the Bureau provides a summary of applicable case law.

  With respect to Category 41 (briefing materials for former Director Cordray in preparation for a November 22, 2016 Federal Student Aid advisory board meeting), the Bureau refers to the cases cited in the Bureau's February 4 letter. *See* Doc. 207, at 4 (citing cases for the proposition that draft and final versions of briefing materials submitted to senior agency officials, and related communications, are protected by the deliberative process privilege); *see also, e.g., Sierra Club v. U.S. Dep't. of Int.*, 384 F. Supp. 2d 1, 24 (D.D.C. 2004) (briefing materials "designed to identify issues of concern and factual information that may be used to support the Department's eventual response" to Senator John Kerry's speech were protected) (quotation omitted); *U.S. v. Life Care Centers of Am., Inc.*, 2015 WL 10987073, at *15 (E.D. Tenn. Aug. 31, 2015), *report and*

---

[1] In addition to the 198 privileged documents, the enclosed media includes a number of non-privileged cover emails. The Bureau has included the cover email for each privileged attachment to provide additional information that may be useful to Your Honor's evaluation of the Bureau's privilege assertions. The non-privileged cover emails are denoted as such.

[2] As noted in the Bureau's February 4, 2019 letter (Doc. 207, at 1), the Bureau is conducting an extensive re-review of all of the documents in the 35 disputed categories and waiving the deliberative process privilege over certain documents by producing documents that were previously withheld in their entirety, or by removing some or all of the redactions on previously redacted documents. As a result, certain documents that were listed on a previous privilege log are not listed on the enclosed supplemental privilege log and are being produced in full to Defendants.

*recommendation adopted*, 2015 WL 10987032 (E.D. Tenn. Sept. 22, 2015) ("Even final internal briefing papers that are created by agency staff to inform their management about issues and the formulation of policy decisions are predecisional and deliberative.") (quotation omitted).

With respect to Category 72 (communications between the Department of Education ("ED") and the Bureau about the drafting of the Bureau's student loan examination procedures) and Category 79 (communications between ED and the Bureau about the drafting of the Department of Education's July 20, 2016 memorandum from Ted Mitchell to James Runcie, titled "Policy Direction on Student Loan Servicing"), as explained in the Bureau's February 4, 2019 letter, the deliberative process privilege protects documents relating to the development of a federal agency's policies and the drafting of published guidance by a federal agency. *See* Doc. 207, at 3. These categories consists of documents relating to the development or drafting of two of the fourteen published "rules, regulations, and guidance" documents that Defendants claim are relevant to this case. *See* Doc. 72, at 3-5.

The final, published versions of both documents reflect the policies or priorities adopted by the Bureau or ED. Protection of documents relating to the development or drafting of those official, published documents serves the policy bases underlying the privilege. First, the privilege "protects creative debate and candid consideration of alternatives within an agency," and therefore "improves the quality of agency policy decisions." *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982) (quoting *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 772–73 (D.C. Cir. 1978)). Second, the privilege "protects the public from the confusion that would result from premature exposure to discussions occurring before the policies" had been made final. *Id.*; *see also*, *e.g.*, *Archer v. Cirrincione*, 722 F. Supp. 1118, 1122 (S.D.N.Y. 1989) ("The privilege is also meant to minimize public confusion: the release of unfinished drafts either before or after the agency's final decision could easily mislead the public as to the reality of agency policy."); Third, the privilege "protects the integrity of the decision-making process itself by confirming that 'officials should be judged on what they decided[,] not for matters they considered before making up their minds." *Russell*, 682 F.2d at 1048 (quotation omitted); *see also*, *e.g.*, *Pennsylvania Dept. of Pub. Welfare v. U.S.*, 2006 WL 3792628, at *24 (W.D. Pa. Dec. 21, 2006) ("The purpose of the deliberative process privilege is to ensure open communication between subordinates and superiors, prevent premature disclosure of policies before final adoption, and to avoid public confusion if grounds for policies that were not part of the final adopted agency policy happened to be exposed to the public.") (quotation omitted). And the protection also applies to editorial judgments made in the process of drafting policy documents. *See, e.g.*, *Natl. Sec. Archive v. CIA*, 752 F.3d 460, 466 (D.C. Cir. 2014) (protection applies to "editorial judgments" made in the drafting process).

Finally, the documents in Categories 72 and 79 that reflect the exchange of opinions, feedback, recommendations, or technical assistance among the Bureau, ED, and other federal agencies in connection with the development or drafting of the final published documents at issue in those categories are protected by the deliberative process privilege. *See* Doc. 207, at 4 (citing cases for the proposition that the deliberative process privilege protects documents shared between federal agencies).

\*   \*   \*

If Your Honor has any questions regarding any of the enclosed materials, the Bureau would welcome the opportunity to address those questions at a forthcoming teleconference or in writing.

                                    Respectfully submitted,
                                    /s/ Nicholas Jabbour

## APPENDIX A

**Category 41**

Description: Confidential pre-decisional and deliberative communications and documents relating to the drafting and submission of briefing materials to former Director Richard Cordray regarding a November 22, 2016 Federal Student Aid Advisory Board Meeting, including draft and final versions of a memorandum presented to the former Director and related communications containing selections or summaries of facts and issues deemed pertinent to the meeting and recommended discussion points for the meeting in connection with the process of preparing the former Director for the meeting and furthering the partnership among various executive agencies regarding the student loan market; purpose of documents and communications was to compile the information staff deemed most pertinent to former Director Cordray's participation in the meetings, to present him with candid assessments about issues likely to be discussed at the meetings, and to make suggestions about questions and key discussion points to raise during the meetings; briefing materials formed part of an analysis or discussion that was considered as part of Director Cordray's anticipated participation in the meetings but did not result in a specific decision, were advisory only, and were prepared by subordinates who lacked authority to make final decisions on these topics or direct Director Cordray's actions.

Privileges: Deliberative Process Privilege

**Category 72**

Description: Confidential pre-decisional and deliberative communications from personnel in the Bureau to personnel in the Department of Education relating to the drafting of a revised version of the Student Loan Examination Procedures, and attached drafts of the revised Examination Procedures; purpose of communications was to obtain comments or feedback from personnel in the Department of Education regarding the revised Examination Procedures in connection with the process of developing recommendations to former Director Richard Cordray regarding the content of the revised Examination Procedures; redacted communications and attached drafts reflect non-final views, opinions, or proposals of Bureau personnel regarding the content of the revised Examination Procedures or Supervisory Highlights in connection with the aforementioned process; communications and documents preceded final decisions regarding the content of the revised Examination Procedures.

Privileges: Deliberative Process Privilege

**Category 79**

Description: Confidential pre-decisional and deliberative communications and documents prepared by or shared among personnel in the Bureau, personnel in the Department of Education, personnel in the Department of Treasury, and/or personnel in the Executive Office of the President relating to the development and drafting of the July 20, 2016 Memorandum from Ted Mitchell to James Runcie regarding "Policy Direction on Federal Student Loan Servicing," including documents reflecting the provision of technical assistance from personnel in the Office for Students to

personnel in the Department of Education relating to student loan servicing, drafts of the memorandum, and related communications; purpose of communications and documents was to develop, obtain, provide, or discuss opinions, recommendations, reactions, suggestions, or views of personnel in the Bureau and other federal agencies or offices regarding the content of the memorandum in connection with the process of drafting the memorandum; communications and documents contain or reflect non-final analyses, reactions, recommendations, suggestions, or views of personnel in the aforementioned federal agencies or offices in connection with the aforementioned process; communications and documents preceded final decisions regarding the content and publication of the memorandum.

<u>Privileges</u>: Deliberative Process Privilege