**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CONSUMER FINANCIAL PROTECTION BUREAU,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| | : | **3:17-CV-101** |
| **v.** | : | **(Judge Mariani)** |
| | : | |
| | : | |
| **NAVIENT CORPORATION, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

### SPECIAL MASTER REPORT #1

In anticipation of a status conference scheduled for January 28, 2019, the

parties were directed to provide a "[p]rioritization of discovery disputes for

resolution." (Special Master Order dated Jan. 22, 2019, Doc. 197, at 1.) Plaintiff

Consumer Financial Protection Bureau (the "Bureau") identified as the most

pressing issue, at least in terms of the need for prompt resolution, the following

question: "Whether the Discovery Protocol contains an exhaustive list of fields that

should be used to adequately assert privileges." (Doc. 199 at 1.)[1] The matter was

deemed urgent because the Bureau had recently been ordered to produce all non-

---

[1] The "Discovery Protocol" is embodied in a stipulation of the parties filed on
November 2, 2017 (Doc. 66), and was approved by the Court on November 3,
2017. (Doc. 67.)

privileged documents that mention the name "Navient" or "Pioneer" that had not previously been produced – a corpus that approximated 55,000 documents – and to "provide an appropriate and detailed privilege log in the event it withholds any documents based on privilege." (Mem. Op. of 12/21/18 (Doc. 140) at 7.)  The Bureau desires to know what is required of it in connection with any privilege log prepared in connection with its court-ordered production.[2]

The Bureau also raised the question of what information needed to be provided to properly assert a disclosure protection in the context of challenging the adequacy of Defendants' October 9, 2018 privilege logs.  This issue was first presented to the Court in the Bureau's December 27, 2018 letter (Doc. 146), to which Defendants responded by letter dated January 7, 2019.  (Doc. 153.)  The Bureau detailed its arguments on the requirements of any privilege log in its January 25, 2019 letter to the Special Master (Doc. 199), to which Defendants replied by letter dated February 4, 2019.  (Doc. 206.)  The requirements of a privilege log were discussed during the January 28, 2009 in-person status conference, as well as during the February 5th telephonic conference.

Having carefully considered the parties' submissions and arguments, pertinent authorities, as well as the Discovery Protocol itself, it is my conclusion

---

[2] The Bureau anticipates producing the first set of these documents at the end of February.  *See* Doc. 199 at 10.

that the Discovery Protocol lists the information that must be provided to adequately claim protection by a privilege, and thereby avoid waiver of the protection.[3] My rationale for this conclusion follows.

## DISCUSSION

"Privilege logging is arguably the most burdensome and time-consuming task a litigant faces during the document production process." *Sedona Conference Commentary on Protection of Privileged ESI*, 17 Sedona Conf. J. 95, 155 (2016). The issue before me is what information must be provided in a privilege log to *claim* that information is protected from disclosure. This question has vexed both the courts and the litigants. *See* Hon. John M. Facciola and Jonathan M. Redgrave, *Asserting and Challenging Privilege Claims in Modern Litigation: The Facciola-Redgrave Framework*, 4 Fed. Cts. L. Rev. 19, 31 (2009) ("There have been a number of problems with privilege logs as they have evolved with the rules. The first problem is a lack of agreement as to what is required to make an adequate log.").

While the Federal Rules of Civil Procedure address the matter of claiming protection from disclosure of protected information, they do not provide an

---

[3] "Claiming and proving [privilege] are two separate requirements." *Acosta v. Target Corp.*, 281 F.R.D. 314, 319 (N.D. Ill. 2012). At issue here is what information must be presented to properly claim a privilege or other information-disclosure protection. What must be proven, and how the proof is presented, pose separate questions.

exhaustive list of information that must be provided in a privilege log.  Rule

26(b)(5)(A) states:

> When a party withholds information otherwise discoverable by
> claiming that the information is privileged or subject to protection
> as trial preparation material, the party must: (i) expressly make the
> claim; and (ii) describe the nature of the documents,
> communications, or tangible things not produced or disclosed—
> and do so in a manner that, without revealing information itself
> privileged or protected, will enable other parties to assess the
> claim.

Fed. R. Civ. P. 26(b)(5)(A).[4]  The Advisory Committee Note for this provision

poignantly observes that "[d]etails concerning time, persons, general subject

matter, etc. may be appropriate if only a few items are withheld, but may be unduly

burdensome when voluminous documents are claimed to be privileged or

protected, particularly if the items can be described by categories."

The Advisory Committee's reference to describing protected information by

"categories" provides "a path between logging individual documents and blanket

assertions of privilege."  Facciola and Redgrave, *supra*, 4 Fed. Cts. L. Rev. at 27-

28.  Thus,

> "in appropriate circumstances, the court may permit the holder
> of withheld documents *to provide summaries of the documents*
> *by category or otherwise limit the extent of his disclosure.*
> This would certainly be the case if (a) a document-by-
> document listing would be unduly burdensome and (b) the

---

[4] This rule, which went into effect in 1993, is regarded as having "resulted in the
rise of the modern privilege log."  *Sedona Conference Commentary on Protection
of Privileged ESI*, 17 Sedona Conf. J. at 155.

> additional log would be of no material benefit to the
> discovering party in assessing whether the privilege claim is
> well-grounded."

*S.E.C. v. Nacchio*, No. CIV.A. 05-CV-00480MS, 2007 WL 219966, at *9–10 (D.

Colo. Jan. 25, 2007) (quoting *S.E.C. v. Thrasher*, No. 92 Civ. 6987 (JFK)(MHD),

1996 WL 125661, at *1 (S.D.N.Y. Mar. 20, 1996)).

A categorical privilege log enables the parties to avoid the labor-intensive

effort of listing on a document-by-document basis the evidence supporting each and

every element of the asserted privilege. This approach, however, leaves open the

question of whether each particular withheld document is indeed protected from

disclosure.

One solution to this problem is to require a more detailed log. Requesting

more detail in a privilege log involving thousands of documents, however, is likely

to result in the expenditure of enormous resources and the consumption of countless

time, without necessarily producing sufficient information to assess the validity of

the privilege claims. *See* Facciola and Redgrave, *supra*, 4 Fed. Cts. L. Rev. at 34.

Another option is in camera review of the challenged documents. When it

comes to determining whether privilege or other protection has been established, in

camera inspection of the withheld documents "is the most forgiving in terms of the

potential loss of privilege; however, it is also the most consumptive of judicial

resources." *Id.* at 35.

5

Another option is to have in camera review of a sample of the withheld documents, thereby testing the reliability of a party's invocation of a particular privilege.[5] *See In re: Vioxx Products Liability Litig.,* No. 06-30378, 06-30379, 2006 WL 1726675, at *3 (5th Cir., May 26, 2006) (remanding matter to the District Court to limit its initial in camera review to 2,000 documents from a corpus consisting of 30,000 documents);[6] *D'Onofrio v SFX Sports Grp., Inc.*, 256 F.R.D. 277, 278 (D.D.C. 2009). "[A] potential problem with this hybrid approach is determining

---

[5] In cases like this matter, involving millions of pages of documents, it is not realistic to expect 100% accuracy in claiming protection from disclosure, whether the privilege review is conducted by counsel or by a court conducting in camera review. For example, in *In re: Vioxx Products Liability Litigation,* No. 06-30378, 06-30379, 2006 WL 1726675, at *2 (5th Cir., May 26, 2006), the appellate court noted that the District Court's in camera review of 30,000 documents resulted in 200 instances of marking exact duplicates inconsistently, "concluding that one copy of a document was privileged and that exact duplicates of the same document were not."

[6] For a comprehensive account of the in camera review of a sample of the documents undertaken by a Special Master in the *Vioxx* case, see Paul R. Rice, *Electronic Evidence, Law and Practice*, 281-88 (2d ed. 2008). Professor Rice, who served as Special Master in the *Vioxx* case, observed:

> With experimentation and refinement, sampling may prove to be an answer for courts having to deal with massive numbers of privilege claims. Indeed, had sampling been in place at the beginning of the Vioxx privilege resolution process . . ., months of time would have been saved and probably millions of dollars of expenses could have been avoided.

*Id.* at 283-84.

which documents will be subject to the sampling, and what conclusions can be drawn from the sampling to apply to other documents without further review." Facciola and Redgrave, *supra*, 4 Fed. Cts. L. Rev. at 36. This problem, however, can be addressed by the parties' good faith negotiations to reach agreement on sample size and acceptable error rate, with the court being the final arbiter of what is reasonable and appropriate.

In this case, Judge Mariani sanctioned use of categorical privilege logs as an alternative to a document-by-document claim for protection from disclosure. Paragraph 7 of the parties' stipulated "Discovery Protocol," (Doc. 66), provides as follows:

> Should any documents be withheld, in whole or in part, by either Party on the basis of attorney/client privilege, work-product privilege, a joint-defense privilege or any other applicable privilege, immunity or protective doctrine, the parties will exchange privilege logs. *Each party may use a categorical privilege log in lieu of a traditional privilege log.* If using a traditional privilege log, state the following information separately for each document or portion of a document withheld:
>
> (a) the specific privilege, protection, or immunity claimed;
>
> (b) the type of document (i.e. e-mail reflecting legal advice);
>
> (c) the date of the document, which may be extracted in an automated fashion via available metadata;
>
> (d) the author(s) of the document, which may be extracted in an automated fashion via available metadata;

(e) the sender(s), addressee(s) and/or recipient(s) of the
document, which may be extracted in an automated fashion
via available metadata;

(f) the custodian(s) of the document;

(g) the Bates number range of the document and family, if
applicable; and

(h) the general subject matter of the document (e.g., "legal
advice regarding borrower communications").

If a claim of privilege applies to only a portion of a document,
the document should be produced and the portion claimed to
be privileged obscured and stamped "redacted." *The parties
shall meet and confer in good faith regarding any additional
substantive and formatting requirements for privilege logs.*
[Emphasis added.]

Both the Bureau and the Defendants opted to follow the categorical privilege

approach.  The Bureau identified 109 categories of protected documents, covering

approximately 9,300 documents.  The Bureau supplemented its log with production

of redacted documents that disclosed information in metadata that was generally

called for in subparts (a) through (h) of paragraph 7 of the parties' court-approved

Discovery Protocol.  The Defendants, by way of contrast, identified only 11

categories of protected documents, but provided in spreadsheet information the

information called for in paragraph 7 of the Discovery Protocol on a document-by-

document basis.  Defendants claimed protection for more than 40,000 documents.

As evidence of the efficacy of this approach, Defendants have not challenged

any of the numerous claims of attorney-client privilege and work product protection

asserted by the Bureau.  Defendants did challenge the assertion of the deliberative

process privilege, and Judge Mariani did conclude that he could not determine the validity of the Bureau's claim to this protection from the face of the Bureau's categorical log for a large number of entries on the Bureau's categorical log. *See* Tr. of 12/10/18 hearing at 47-49.[7]  This finding, however, did not result in a finding that the privilege had been waived.  Instead, Judge Mariani called for in camera review by the Special Master of approximately 800 documents.[8]

This result is completely consistent with use of a categorical approach to *claim* privilege, with challenges to the validity of the claim handled by various means, including through in camera review.   Moreover, Judge Mariani's finding of insufficiencies in the Bureau's privilege log to *prove* the deliberative process privilege in some 800 instances did not mean that the Bureau had failed to comply with the Discovery Protocol.

The Bureau contends that the information called for in paragraph 7 of the Discovery Protocol is "not sufficient to satisfy any privilege assertion, and that instead privilege assertions must meet the elements set forth in the case law." (Doc. 199 at 2.)  The Bureau is correct that case law suggests that more information

---

[7] Judge Mariani did find that 37 of the Bureau's categories were "structured so that, on their face, they appear to be valid assertions of privilege." *Id.* at 49.

[8] The Bureau has since informed the Special Master that it is withdrawing its claim to deliberative process privilege over a host of documents, thereby reducing the extent of in camera review.  Bureau's letter of Feb. 4, 2019 to Special Master (Doc. 207) at 1.

ordinarily must be presented in a privilege log. *See, e.g., Ramooe, Inc. v. City of New York,* No. 13CIV01045SLTVMS, 2017 WL 5054713, at *4 (E.D.N.Y. Nov. 2, 2017); *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Tr. No. 1B,* 230 F.R.D. 398, 406 (D. Md. 2005) ("The standard for testing the adequacy of the privilege log is whether, as to each document, it sets forth facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed."). But this general rule can give way where, as here, the parties have provided otherwise. The Discovery Protocol allowed for the categorical assertion of privileges or document-by-document claims of privilege with specifically identified information disclosed, and nothing more need be provided to preserve a privilege. This is made clear by the Discovery Protocol's directive that "[t]he parties . . . meet and confer in good faith regarding *any additional substantive* and formatting requirements for privilege logs."

In fact, this is the process that is currently taking place with respect to the four deficiencies the Bureau asserts with respect to Defendants' log. The Bureau argues that Defendants have failed to provide (a) complete sender and recipient information for documents over which they assert the attorney client privilege; (b) information sufficient to determine whether a communication with a third party constituted a disclosure that abrogated the attorney-client privilege; (c) adequate information to assess the validity of work product claims; and (d) sufficient information to

determine whether communications among entities affiliated with Defendants were entitled to protection. Through the conferral process, progress has been made in the first three areas, and the parties are submitting briefs to the Special Master on the fourth area. For example, Defendants have agreed to provide sender/recipient information for approximately 1,100 email threads and to identify specific litigation-related information for approximately 915 entries for which work product protection has been asserted. The parties are working toward an agreement for having a sample of thousands of documents claimed to be protected by work product doctrine reviewed in camera by the Special Master. This approach is certainly more efficient and less costly than requiring Defendants to undertake "the make-work of a document-by-document privilege log," *Fed. Deposit Ins. Corp. for Valley Bank v. Crowe Horwath LLP,* No. 17 CV 04384, 2018 WL 3105987, at *6 (N.D. Ill. June 25, 2018), containing information sufficient to establish each of the elements of the claimed privilege for thousands of documents.

## CONCLUSION

The parties agreed through the Discovery Protocol to set forth the information necessary to withhold disclosure of documents on the basis of a privilege or other protected basis. Provision of that information is sufficient to avoid waiver of a protected ground. Whether the asserted ground for protection is valid is then to be determined in accordance with the established elements for the

asserted privilege.  A party may be able to satisfy its burden of establishing each of the elements of the asserted privilege by way of a supplemental privilege log, by affidavit, or by other evidentiary submission.  Alternatively, in camera review of all or a sample of the documents may be requested or ordered by the court.

And so I conclude that the question posed by the Bureau – whether the Discovery Protocol "contains an exhaustive list of fields that should be used to adequately assert privileges" – must be answered in the affirmative.  Compliance with the Discovery Protocol is sufficient to preserve a claim of privilege, with the merits of the claim being decided on the basis of the settled law.

s/ Thomas I. Vanaskie
THOMAS I. VANASKIE
SPECIAL MASTER