WILMERHALE

February 15, 2019

**Jonathan E. Paikin**

+1 202 663 6703 (t)
+1 202 663 6363 (f)
jonathan.paikin@wilmerhale.com

**Via ECF**

Judge Thomas I. Vanaskie
JAMS, Inc.
1717 Arch Street, Suite 3810
Philadelphia, Pennsylvania 19103

      Re:  CFPB's February 4 Letter Regarding *In Camera* Review

Dear Judge Vanaskie:

I write in response to the CFPB's February 4, 2019 letter submitting its first set of documents for *in camera* review. Defendants appreciate this opportunity to respond.

As an initial observation, it is important to keep in mind that in Defendants' view, the CFPB has sought through its enforcement powers to impose its policy preferences over those of the Department of Education ("ED"), which prescribed and oversaw Defendants' student loan servicing and collections. The CFPB is not acting solely as an enforcement agency; it has been intimately involved in discussions with policymakers about servicing and collection practices during the period at issue in this lawsuit. This case, at its core, is about the reasonableness of Defendants' conduct under a government contract servicing and collecting on federal student loans. And, fundamentally, if that conduct falls within the range of choices debated among policymakers in the federal government that administers and controls the contract, Defendants should be allowed to present those facts to the jury.

The CFPB has made two arguments regarding relevance: (1) that Defendants cannot make a "compelling" or "particularized" showing regarding the CFPB's communications with ED, and (2) that internal CFPB communications are "legally irrelevant." *See* Doc. 144 at 6–8. As the Court previously recognized, Defendants are at a distinct disadvantage in describing the potential relevance of documents based on the CFPB's conclusory and vague descriptions of them. *See* Dec. 10, 2018 Hrg., at 69:3–7 (Defendants cannot effectively "identify the reason why they seek the documents" without knowing "what the documents provide."). Likewise, the Special Master previously stated that a "definitive determination" on relevance likely could not be made without additional information from the parties. *See* Jan 28, 2019 Hrg., at 100–01.

Nevertheless, Defendants have reviewed what little information has been provided and write to provide some context to inform *in camera* review of the documents. Navient very much welcomes the opportunity to meaningfully address specific questions that may arise during that review so that the Special Master can apply the Third Circuit's balancing test, which requires taking into account both "the issues involved" in the litigation and "the role of the government"

WILMERHALE

in the controversy.  *See Redland Soccer Club, Inc. v. Dep't of Army*, 55 F.3d 827, 854 (3d Cir. 1995).

*First*, as to the CFPB's argument about relevance, the Court previously ruled that communications between ED and the CFPB are "inherently relevant" because Defendants performed the activities at issue under contract with ED and subject to ED's continuous oversight.  *See* Dec. 10, 2018 Hrg., at 75:4–10.  Without seeing the documents, Defendants are already aware of some areas of disagreement between the CFPB and ED.  For example, the CFPB alleges in Counts I and II that Navient failed to adequately advise borrowers about repayment options.  As evidence, the CFPB points principally to a repayment options guide provided to call center representatives.  But the guide that forms the basis of the CFPB's claims was submitted to ED on several occasions and approved by ED.[1]  Likewise, ED performed call monitoring throughout the period at issue.  The CFPB cites to one of those reviews as evidence, but ED had actually concluded from that review that Navient was *not* improperly steering borrowers into forbearance.[2]  The CFPB may not agree with ED, but at all relevant times Navient acted as a contractor for ED and was required by law to conform its conduct to ED's expectations.  That issue goes to essential elements of the CFPB's claims—*i.e.*, whether implementing a federal government program consistent with regulatory and contractual expectations can constitute "taking unreasonable advantage" of consumers or causing them "substantial injury," as well as whether any such injury is "outweighed by countervailing benefits to consumers or to competition."  12 U.S.C. § 5531.  In addition, Navient's affirmative defenses include defenses based on its expectations under that contract, including a defense that ED had not expressed any concern about Navient's servicing policies and that the company lacked fair notice that another federal agency would later impose different requirements through an enforcement action.  *See* Answer at 29 (describing fair notice defense); *id.* at 30–31 (describing defenses based on Defendants' contract with ED).  Communications between ED and the CFPB would be relevant to those defenses.  *See, e.g.*, *S.E.C. v. Kovzan*, 2012 WL 4819011, at *5 (D. Kan. Oct. 10, 2012) (ruling that non-public agency documents were relevant to fair notice defense to the extent they showed inconsistent interpretations of regulation).

The CFPB's February 4 submission includes various documents that could be relevant to those defenses.  For example, Category 80 relates to communications between the CFPB and ED regarding "a new set of repayment rights" for borrowers that ED would seek to implement in future servicing contracts, including new requirements for informing borrowers about repayment options.[3]  Similarly, Category 40 contains briefing materials to prepare the former CFPB Director for a meeting with the Federal Student Aid Advisory Board to discuss issues related to

---

[1] *See* Ex. 1 (Rule 30(b)(6) Deposition of the Department of Education, By and Through Their Designee, Lisa Tessitore, Tr. 30-34 (May 24, 2018).

[2] Doc. 126-1 (ED statement in response to press reports regarding this review).

[3] U.S. Department of Education, Fact Sheet: Protecting Student Loan Borrowers (April 28, 2016), available at https://www2.ed.gov/documents/press-releases/04282016-protecting-borrowers.doc.

WilmerHale

student loans.  *See* Doc. 207 at 7.  Federal Student Aid is the ED office responsible for communicating with contractors like Navient.  If these documents describe ED's views about how servicers were expected to perform under the contract, those documents would be relevant to the defenses.  Similarly, Category 37 includes discussions regarding the guidance the CFPB and ED should provide to servicers regarding credit reporting.  *See* Doc. 107 at 6–7; CFPB Supplemental Privilege Log (Feb. 5, 2019).  The CFPB claims in Count XI that Navient furnished inaccurate information to credit reporting agencies.  As evidence, the CFPB relies on guidance from ED.  Documents containing ED's interpretation of that guidance or ED's views on accurate credit reporting would therefore be relevant to Navient's defenses.

*Second*, the CFPB's assertion that all internal documents are "irrelevant as a matter of law" is unsupported.  Even if "unpublished views" of low-level CFPB employees are irrelevant, the facts underlying those views may be relevant.  Facts are not protected by the deliberative process privilege.  *See In re Grand Jury*, 821 F.2d 946, 959 (3d Cir. 1987).  To the contrary, the government is required to segregate and produce relevant facts contained in documents over which it is asserting deliberative process privilege.  *See Pa. Dep't of Pub. Welfare v. United States HHS*, 623 F. Supp. 301, 307 (M.D. Pa. 1985).  And even if facts are not segregable from deliberative materials, such materials must be produced if the relevance of those facts outweighs the government's interest in withholding them.  *See Redland Soccer Club*, 55 F.3d at 854.  Here, the CFPB has not demonstrated that it has produced reasonably segregable facts.  To the contrary, the Court found the CFPB's assertion that it had produced all segregable facts to be "heavily opinion-laden" and "entirely conclusory."  Dec. 10, 2018 Hrg., at 51–53.

Defendants expect that there are relevant facts that have been withheld.  For example, Category 28 describes the CFPB's engagement of an outside consultant to collect borrower data for use in developing a proposal for how borrowers should be informed about repayment options.  *See* Doc 207 at 6.  Even if the deliberations leading to the proposal are privileged, the underlying data is purely factual and relevant to the CFPB's claim that Navient did not adequately inform borrowers about repayment options.

The CFPB argues that "Defendants already have all of the facts about their alleged conduct," Doc. 144 at 9, and that "reference[s] to [Defendants'] conduct" contained in internal CFPB documents are irrelevant, Doc. 2017 at 5 n. 5.  This is a remarkable proposition given what Defendants have learned to date.  For example, the CFPB initially withheld as privileged an internal report describing a 2013 site visit the CFPB performed at Navient's facilities.  The CFPB subsequently unredacted portions of the report that included exculpatory facts, such as descriptions of instances where Navient appropriately advised borrowers about repayment options.  *See* CFPB-NAV-0043785.  To the extent withheld materials similarly contain facts about Defendants' conduct, those facts should be produced.  For example, Category 22 refers to documents prepared in the course of an examination of statements made by Pioneer about federal loan rehabilitation (Counts VII-X).  Defendants would also expect that Categories 40 and 44, which contain briefing materials to prepare the former CFPB Director for discussions related to student loans, would include factual information about Navient and Pioneer.

WILMERHALE

Furthermore, internal documents, even though unpublished, may actually reflect the official views of the federal government that are relevant to the CFPB's claims. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867–69 (D.C. Cir. 1980) (requiring production of internal documents containing "established policy on which the agency relies" in order to prevent the agency from "develop[ing] a body of secret law . . . hidden behind a veil of privilege"). The CFPB has published essentially no guidance on the conduct that it considers unlawful. Where internal agency documents are necessary to establish the scope of conduct being challenged by the government, courts have overruled the government's objection that such materials are not relevant. *See, e.g.*, *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 9 (D.D.C. 2016) (ordering production of government analysis regarding defendant's transactions). Defendants are entitled to such documents here.

\* \* \*

Again, we respectfully request the opportunity to address specific questions that the Special Master may have about specific documents as it applies the balancing test set forth in *Redland Soccer Club*. It is necessarily a speculative exercise to attempt to explain the relevance of documents for which we have been provided no meaningful information—much less to make the "particularized" showing the CFPB has demanded. Defendants are entitled to present their defenses to the jury, and the reasonableness of their conduct is informed by the government's policy discussions related to servicing and collection activities performed by Defendants.

Respectfully submitted,

/s/ Jonathan E. Paikin