# WILMERHALE

February 22, 2019

**Daniel P. Kearney**

+1 202 663 6285 (t)
+1 202 663 6363 (f)
daniel.kearney@wilmerhale.com

**Via ECF**

Judge Thomas I. Vanaskie
JAMS, Inc.
1717 Arch Street, Suite 3810
Philadelphia, Pennsylvania 19103

Re:   CFPB's February 18 Letter Regarding Identification of Securitization Custodians

Dear Judge Vanaskie:

Pursuant to Special Master Order #9, Navient hereby responds to the CFPB's February 18, 2019 letter regarding the CFPB's request to add a custodian related to asset-backed securities. For each of the following three reasons, the CFPB's request should be denied.

*First*, the parties had an unequivocal, transparent, and comprehensive agreement regarding email custodians, which resolved significant document discovery disputes last spring and required important concessions by both sides. That agreement expressly resolved earlier disputes regarding Document Request No. 6 to Navient Solutions, which the CFPB now focuses on and which sought:

> All documents relating to any evaluation, auditing, monitoring, oversight, due diligence, quality assurance, or compliance review (including those conducted by or on behalf of an investor or trustee of a loan securitization trust) relating to communications with or enrollment of borrowers in forbearance or any type of income-driven repayment plan.[1]

The focus of this request was on documents relating to *evaluations, audits, and other reviews*—not on loan securitization *per se*—and the CFPB did not at the time of the parties' discussions raise loan securitization nor has the CFPB ever, until now, attempted to draw any connection between its claims and asset-backed securities. To respond to Request No. 6, in 2017, Defendants interviewed the custodians "principally responsible for conducting audits,

---

[1] Doc. 227-1, at 129. The CFPB first raised Request No. 6 to Navient Corporation in its February 18, 2019 letter. Defendants request that the CFPB be required to meet and confer regarding new issues prior to filing correspondence with the Special Master. In any event, Navient Corporation described in August 2017 exactly what would be produced in response to this request: "Navient Corp. will produce internal audit reports related to the claims in this lawsuit and presented to the Board of Directors . . . ." Those documents were produced in January 2018.

WILMERHALE

February 22, 2019
Page 2

compliance reviews, or quality assurance reviews."[2]  These custodians confirmed that no audits or reviews had been performed on behalf of investors or trustees related to forbearance or IDR. Defendants proceeded to collect audits and reviews that had been conducted for other third parties, like the Department of Education ("ED"), from the files of those custodians and produced them in January 2018.

At that time, the parties had not agreed on the scope of emails to be searched in response to Request No. 6.  That dispute became the subject of Judge Mariani's May 2018 decision ordering the parties to meet and confer and reach a compromise and prohibiting the parties from serving any new document requests.[3]  The exacting details of that "global compromise" are set forth in Defendants' February 8, 2019 submission.[4]

That compromise renders this dispute fundamentally different from the cases cited in the CFPB's letter.  None of those cases involved a "global compromise" following a Court order to reach such an agreement.  Defendants did not "unilaterally" choose the custodians searched.  Nor is this a case where the CFPB was operating in the dark:  At the time the parties reached agreement, the CFPB had taken nine investigative depositions and had *two million pages* of documents in its possession.  The CFPB had the historical job titles of everyone whose emails were to be searched and selected additional custodians to search.  The CFPB knowingly drafted and entered into its global compromise.  Pursuant to the global compromise, Defendants reviewed a million additional documents.  Had Defendants known that the CFPB did not intend to honor its agreement (or that the agreement would not be enforced), Defendants would never have agreed to undertake such unreasonable burdens, including hiring more than 100 contract attorneys, most of whom have now been released.

*Second*, nothing learned in discovery justifies this belated request for another new custodian.  The documents the CFPB cites have been publicly available since well before the Complaint was filed in January 2017.  The cited 10-K filings are from 2012 and 2015, and the publicly-available correspondence with Moody's dates from 2015.  Further, the referenced Board materials were produced over a year ago in response to a separate request for documents "sent or received by the board of directors . . . relating to the servicing or collection of student loans."[5] Nothing in that response can be construed as an *admission* by Defendants that loan securitization is somehow relevant to the CFPB's claims.  Nor do the Board documents provide any reason to infer that there are any securitization-related documents responsive to the CFPB's latest demand. Notably, none of the Board documents referred to by the CFPB actually cite any audits or

---

[2] Doc. 227-1, at A131.

[3] *See* Doc. 89, at 3.

[4] *See* Doc. 214, at 1.

[5] Doc. 227-1, at A102-03 (Document Request No. 7).

WILMERHALE

February 22, 2019
Page 3

reviews conducted on behalf of investors. Finally, nothing in Navient's October 19, 2015 letter to Moody's (which is a ratings agency, not an investor) indicates that such audits or reviews were performed.

*Third*, loan securitization is not relevant to the CFPB's claims. Although the Complaint alleges various motives on the part of Navient, none have anything to do with loan securitization.[6] Rather, the CFPB's theory has been that Navient rushed borrowers off phone calls by offering forbearance and not informing them about income-driven repayment, and that this somehow lowered Navient's operating costs. Testimony from multiple witnesses has undermined this theory—hence the CFPB's new focus on loan securitization. The new theory—which was not pleaded—now appears to be that Navient encouraged forbearance over IDR based on investor concerns about final maturity dates for securities backed by FFELP loans.

The new theory makes no sense. As an initial matter, Congress ended the FFELP program in 2010, and federal student loans owned by ED constitute the majority of Navient's servicing portfolio. ED loans have no connection to loan securitization, and thus the CFPB's imagined motive is irrelevant to the majority of loans. Further, the very documents that the CFPB attached to its submission illustrate the implausibility of the notion that investor concerns drove Navient to push forbearance and discourage IDR. Moody's described a belief that "high rates of *deferment and forbearance*" in addition to "the growing use of IDR and other similar programs have increased the risk that some tranches will not pay off by their final maturity dates."[7] That is because all such programs may extend the life of a loan beyond its original repayment term. The CFPB simply has not made the showing of need necessary to justify adding a new document custodian at this late stage. *See Chemtech Int'l, Inc. v. Chem. Techs., Inc.*, 170 F. App'x 805, 808 (3d Cir. 2006) ("[T]he price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings." (quoting *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999))); *Enslin v. Coca-Cola Co.*, No. 2:14-cv-06476, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) ("[T]he burden appropriately lies with the requesting party to show that the responding party's search was inadequate").

\*   \*   \*

There are less than four months remaining in fact discovery, which is already the result of a third extension at the CFPB's request. The CFPB's continuing efforts to re-tread the carefully

---

[6] *See* Compl. ¶¶ 138–47.

[7] Doc. 227-1, at A7 (emphasis added).

WILMERHALE

February 22, 2019
Page 4

negotiated global compromise in its effort to ever-expand discovery, now into implausible theories it never pleaded nor raised before, should be stopped.

      Defendants respectfully ask that the Special Master deny the CFPB's request.

                              Respectfully submitted,

                              /s/ Daniel P. Kearney