

1700 G Street NW,
Washington, DC 20552

February 25, 2019

**Via ECF and Overnight Mail (to previously provided address)**

The Honorable Thomas I. Vanaskie, Special Master
U.S. District Court, Middle District of Pennsylvania
William J. Nealon Federal Bldg. & U.S. Courthouse
235 N. Washington Avenue
Scranton, PA 18503

      Re:    *CFPB v. Navient Corp., et al.*, Case No. 3:17-CV-00101-RDM

Dear Judge Vanaskie:

    In accordance with Your Honor's instruction at the January 28, 2019 status conference, I am writing on behalf of Plaintiff Consumer Financial Protection Bureau ("Bureau") regarding the *in camera* review of documents in 35 disputed privilege categories. The Bureau encloses with this letter: (i) the Bureau's fourth and final distribution of documents for *in camera* review, which consists of redacted and unredacted versions of 75 privileged documents in Categories 1, 11, 30, and 39 from the Bureau's July 6, 2018 privilege log (Bates numbered CFPB-NAV-0057479.0001 through CFPB-NAV-0057668.0001);[1] and (ii) the Bureau's supplemental privilege log for the 75 documents. The Bureau will transmit the password for the enclosed documents via email. The Bureau is also producing the enclosed materials to Defendants, excluding the unredacted versions of the 75 privileged documents.[2]

    Appendix A contains the Bureau's descriptions of the documents in the above Categories and the bases of its deliberative process privilege assertions over those documents. The Bureau has made the following changes from the July 6, 2018 privilege log:

- Subdivision of Category 1: The Bureau has subdivided Category 1 into nine narrower Categories (Categories 1-A through 1-J). The descriptions for those nine narrower Categories are provided in Appendix A. These descriptions replace the description for Category 1 provided in the Bureau's July 6, 2018 privilege log, upon which the Bureau is no longer relying.

---

[1] In addition to the 75 privileged documents, the enclosed media includes a number of non-privileged cover emails. The Bureau has included the cover email for each privileged attachment to provide additional information that may be useful to Your Honor's evaluation of the Bureau's privilege assertions. The non-privileged cover emails are denoted as such.

[2] As noted in the Bureau's February 4, 2019 letter (Doc. 207, at 1), the Bureau conducted an extensive re-review of all of the documents in the 35 disputed categories and waived the deliberative process privilege over certain documents by producing documents that were previously withheld in their entirety, or by removing some or all of the redactions on previously redacted documents. As a result, certain documents that were listed on a previous privilege log are not listed on the enclosed supplemental privilege log and are being produced in full to Defendants.

- Reclassification of Category 2 Documents Under Category 1: All documents previously listed under Category 2 of the Bureau's July 6, 2018 privilege log have been reclassified under Categories 1-B, 1-G, or 1-H. Accordingly, the Bureau is no longer relying upon the description for Category 2 provided in its July 6, 2018 privilege log.

- Revised Descriptions for Categories 11, 30, and 39: The Bureau has revised its descriptions for Categories 11, 30, and 39.

- Withdrawal of Law Enforcement Privilege for Category 11: The Bureau is withdrawing its law enforcement privilege assertion over the documents in Category 11.

- Attorney-Client Privilege Claim: The Bureau is asserting attorney-client privilege over the document Bates numbered CFPB-NAV-0057636.0001, in addition to the deliberative process privilege. The Bureau has not previously asserted attorney-client privilege over this document. The claim is described in Appendix B to this letter.

To assist in Your Honor's evaluation of the Bureau's privilege assertions over the documents in this fourth distribution, the Bureau describes or refers to applicable case law below.

The documents in Categories 1-A and 1-I reflect the Bureau's development and drafting of guidance documents. The document in Category 1-A relates to the content and development of the Bureau's Payback Playbook and the Bureau's Request for Information Regarding Student Loan Borrower Communications. Category 1-I consists of materials reflecting the development of the Bureau's seventh Supervisory Highlights—a periodic Bureau publication covering key examination findings, operational changes to the Bureau's supervision program, and information on the Bureau's recent guidance documents. The documents in these categories are pre-decisional and deliberative for the same reasons articulated on pages 2-4 of the Bureau's February 4, 2018 letter (Doc. 207).[3]

The documents in Categories 1-B through 1-H, 11, and 30 reflect various Bureau processes to develop policies and strategies to address issues and problems relating to consumer financial products and services. These include documents used to develop recommendations about how to address such issues and problems, how to prioritize such issues and problems, and how to allocate resources across various divisions and offices within the Bureau. The cases discussed on page 3 of the Bureau's February 4, 2018 letter (Doc. 207) show that these types of documents are at the heart of the deliberative process privilege. In addition, many courts have held that documents reflecting recommendations regarding resource allocation are properly withheld under the deliberative process privilege. *See*, *e.g.*, *Nat'l Wildlife Federation v. U.S. Forest Serv.*, 861 F.2d 1114, 1121 (9th Cir. 1988) ("These materials represent the tentative opinions and recommendations of Forest Service employees on matters instrumental to the formulation of policies governing the allocation of the Forest's resources to competing uses."); *DeFraia v. CIA*, 311 F. Supp. 3d 42, 50 (D.D.C. 2018) (document discussing "potential resource allocation" was properly withheld under the deliberative

---

[3] The Court has also already held that internal agency documents relating to the drafting of guidance do not have to be produced because they are not relevant to any issue in the case. In its May 4, 2018 Opinion, the Court held: "Plaintiff need not turn over any other predecisional communications related to the fourteen publicly issued rules, regulations, and guidance that Defendants identified or any other predecisional communications related to proposed rules, regulations, and guidance that were not ultimately issued." Doc. 88 at 11.

process privilege); *Lemieux & O'Neill ex. rel. Las Virgenes-Triunfo Jt. Powers Auth. v. McCarthy*, 2017 WL 679652, at *5 (C.D. Cal. Jan. 27, 2017) (documents reflecting potential allocation of resources were properly withheld); *Perez v. Blue Mt. Farms*, 2015 WL 11112414, at *2 (E.D. Wash. Aug. 10, 2015) (crediting the government's assertion that "disclosure of the document could dampen the free internal discussion of how best to allocate its resources" in holding that the document was properly withheld).

The withheld materials in the above categories preceded any decisions to approve the proposed strategies or policies reflected in the withheld materials. However, it is important to note that the Bureau's policies and strategies have been developed through a continuous, iterative process that often consisted of multiple decisions, including decisions that reflected a re-examination, modification, or extension of an earlier decision. For example, in 2014, the Bureau commenced a process called "One Bureau" that was designed to facilitate long-term planning at the Bureau by identifying multiyear, cross-divisional agency priority goals. After the "One Bureau" recommendations were approved by former Director Richard Cordray in July 2015, various groups were formed to develop additional proposals and recommendations regarding divisional strategic planning, budgeting, and cross-Bureau resource allocation consistent with the "One Bureau" recommendations approved by Mr. Cordray. These included the "Waterfront Working Group" and the "Student Finance Cross Bureau Working Group" whose documents are covered by Categories 1-C, 1-D, and 1-E. In addition, in 2016, the Bureau commenced a One Bureau "validation" process to re-examine the policies, priorities, and goals that had been previously been approved during the original "One Bureau" process.

The communications and documents generated in connection with these processes are properly withheld, even though they post-date the decisions made under the "One Bureau" process. As the Supreme Court has explained: "Agencies are, and properly should be, engaged in a continuing process of examining their policies." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 n.18 (1975). Likewise, the U.S. District Court for the District of Columbia has explained: "Even after a path has been cut by an agency, it is the very process of debating, shaping, and changing a ... policy that needs candor, vigorous to-and-fro, and freedom of expression." *Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 162 (D.D.C. 2012) (internal quotations omitted); *accord Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208 (D.D.C. 2010) (documents that post-dated "the original grant of immunity" were pre-decisional and deliberative because they were "generated as part of a continuous process of agency decision making" that "required multiple decisions"); *SEC v. Nacchio*, 704 F. Supp. 2d 1099, 1112 (D. Colo. 2010) (emails discussing "the need for further reconsideration and refinement of [an existing] policy" were properly withheld); *Judicial Watch, Inc. v. Reno*, 2001 WL 1902811, at *3 (D.D.C. Mar. 31, 2001) ("documents discussing past decision as it impacts on future decision" are protected by the deliberative process privilege). Indeed, documents relating to the development of an agency's policies may "appear as retrospective explanations of past event only when they are impermissibly abstracted from the context of … ongoing development of [the agency's] position." *City of Virginia Beach, Va. v. Dep't of Commerce*, 995 F.2d 1247, 1254 (4th Cir. 1993).

Category 1-B consists of redacted pages of a Powerpoint presentation that describe pre-decisional recommendations developed in the "One Bureau" process. While the Powerpoint presentation was generated in 2016, after the conclusion of the "One Bureau" process in July 2015, those slides are properly withheld because they recount pre-decisional deliberations. Many courts have recognized that post-decisional documents that recount or describe pre-decisional deliberations are covered by the privilege. *See*, *e.g.*, *Ford Motor Co. v. U.S.*, 94 Fed. Cl. 211, 223 (Fed. Cl. 2010)

3

("Because these e-mails recount government employees' views of the proposed ruling before it was adopted, they qualify as pre-decisional even though they were created after the decision date."); *Judicial Watch, Inc. v. U.S. Dep't of Treasury*, 796 F. Supp. 2d 13, 31 (D.D.C. 2011) ("Post-decisional documents properly fall under the deliberative process privilege when they recount or reflect predecisional deliberations"); *North Dartmouth Properties, Inc. v. Dep't of Housing & Urban Development,* 984 F. Supp. 65, 68 (D. Mass.1997) (holding, after *in camera* review, that a post-decisional email that "relate[d] to and essentially re-state[d] discussions" had during the agency's predecisional deliberations was properly withheld on the basis of the deliberative process privilege).

   Category 30 consists of drafts of a document prepared by personnel in the Bureau's Division of Consumer Education & Engagement describing proposed tasks, projects, and research issues to be handled by various offices within that division. As indicated in the description in Appendix A, this document was used to develop the division's policies, priorities, strategies, and goals for FY 2012, which were reflected in another, subsequent document. The preliminary nature of this list of proposed tasks, projects, and research issues is no impediment to asserting the deliberative process privilege. In *Color of Change v. U.S. Dept. of Homeland Security*, the U.S. District Court for the Southern District of New York held that papers prepared by an analyst and intern that "reflect[ed] the preliminary processes through which DHS policy is created" were properly withheld because their "[r]elease would reveal the give-and-take through which agencies ultimately reach their positions." 325 F. Supp. 3d 447, 453-54 (S.D.N.Y. 2018). And in *Lemieux & O'Neill ex. rel. Las Virgenes-Triunfo Jt. Powers Auth. v. McCarthy*, the U.S. District Court for the Central District of California explained that "[a]n agency's substantive policy decisions are shaped to a significant extent by the logistical decisions it makes during the policymaking process" and that "[d]ecisions about ... what research to undertake, how to assign staff, and when to set deadlines are all important determinants of the quality and content of the final policy." 2017 WL 679652, at *5 (C.D. Cal. Jan. 27, 2017).

   Category 39 consists of emails between personnel in the Bureau's Office of Research to develop a preliminary list of issues relating to student loan credit reporting for the Office of Research to research and analyze for potential use in drafting reports published by the Bureau. The cases discussed in the preceding paragraph support the Bureau's assertion of privilege over this email chain. In addition, courts have held that documents relating to the development or drafting of a report issued by a federal agency are properly withheld under the deliberative process privilege. For example, in *Reliant Energy Power Generation, Inc. v. FERC*, the U.S. District Court for the District of Columbia held that the Federal Energy Regulatory Commission ("FERC") had properly asserted the deliberative process privilege over (1) drafts of a report it published regarding its investigation of potential abuses in the California energy market; (2) internal discussions contain opinions, recommendations, suggestions and strategies "pertaining to the creation of the Staff Report"; and (3) spreadsheets and tables containing FERC's analysis of factual data, which were used to prepare the report. 520 F.Supp.2d 194, 204-06 (D.D.C. 2007). Finally, although the emails withheld under Category 39 were exclusively between staff in the Office of Research, there is no requirement that the relevant decision-maker be included in a communication for the deliberative process privilege to apply; it is sufficient that the email was part of the deliberative process at issue (*i.e.*, developing the content of the reports). *See, e.g.*, *Sears*, 421 U.S. at 150 (holding that the deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising *part of a process* by which governmental decisions and policies are formulated") (emphasis added) (internal quotation omitted); *Moye, O'Brien, O'Rourke, Hogan, &*

*Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1280 (11th Cir. 2004) ("[T]he district court erred in focusing exclusively upon whether the final decision-maker viewed the requested material rather than viewing the entire auditing process as a whole.").

\* \* \*

If Your Honor has any questions regarding any of the enclosed materials, the Bureau would welcome the opportunity to address those questions at a forthcoming teleconference or in writing.

    Respectfully submitted,
    /s/ Nicholas Jabbour

# APPENDIX A

**Category 1-A**

Description: Confidential pre-decisional and deliberative portions of drafts of a presentation made by the personnel in the Bureau's Office for Students to the Bureau's Policy Committee to provide proposals to the Policy Committee and obtain preliminary feedback from the Policy Committee regarding the potential content of a "Payback Playbook," a set of prototype written disclosures regarding repayment options, and a proposed Request for Information regarding the Payback Playbook; redacted slides contain proposals regarding the content of the Payback Playbook and the process of issuing the RFI; recommendations preceded Mr. Cordray's decision regarding the content and publication of the "Payback Playbook" and RFI, both published on April 28, 2016, including what policies, priorities, and issues to reflect or emphasize in the final published versions of those materials, how to develop and present those policies, priorities, and issues in the final published versions of those materials, and whether to publish those materials.

Privileges: Deliberative Process Privilege

**Category 1-B**

Description: Confidential pre-decisional and deliberative portions of drafts of a presentation to attorneys in the Bureau's Office of Enforcement regarding the student finance market; redacted slides describe and recount recommendations made by members of a student finance working group (consisting of Bureau staff in various Bureau divisions who were involved in student finance issues) to the leaders of the various Bureau divisions (Steven Antonakes, Meredith Fuchs, Gail Hillebrand, Zixta Martinez, David Silberman, and Sartaj Alaj) regarding what policies, priorities, strategies, and goals the Bureau should adopt and pursue in the student finance market in FY 2016-17 as part of the Bureau's "One Bureau" process; recommendations made to these division leaders informed and influenced their own, subsequent recommendations to Mr. Cordray regarding these decisions; recommendations preceded decisions made by Mr. Cordray as part of the "One Bureau" process, including what policies, priorities, strategies, and goals the Bureau should adopt and pursue in the student finance market in FY 2016-17.

Privileges: Deliberative Process Privilege

**Category 1-C**

Description: Confidential pre-decisional and deliberative communications between members of the "Waterfront Working Group," a group consisting primarily of personnel in the Bureau's Division of Supervision, Enforcement & Fair Lending (SEFL) whose primary purpose was to develop recommendations to former Director Richard Cordray regarding what specific policies, priorities, strategies, and goals the SEFL division should adopt and pursue after the conclusion of the "One Bureau" process; communications facilitated discussion among members of the "Waterfront Working Group" regarding how to allocate and deploy resources across the SEFL Division, tool

choice decisions for the SEFL Division, and strategic priorities for the SEFL Division within various markets, for the purpose of developing potential recommendations to Mr. Cordray regarding such decisions; communications preceded decisions by Mr. Cordray regarding how to allocate and deploy resources across the SEFL Division, tool choice decisions for the SEFL Division, and strategic priorities for the SEFL Division within various markets.

Privileges: Deliberative Process Privilege

**Category 1-D**

Description: Confidential pre-decisional and deliberative draft of a presentation discussing a proposed Strategic Plan for the Bureau's Office of Enforcement; presentation was circulated to members of the "Waterfront Working Group" to assist in developing potential recommendations to former Director Richard Cordray regarding what specific policies, priorities, strategies, and goals the SEFL division should adopt and pursue after the conclusion of the "One Bureau" process; presentation preceded decision by Mr. Cordray to approve the Office of Enforcement's Strategic Plan.

Privileges: Deliberative Process Privilege

**Category 1-E**

Description: Confidential pre-decisional and deliberative documents and communications generated by or exchanged between members of the Student Finance Cross Bureau Working Group, a group consisting of personnel from across various divisions of the Bureau involved in student finance issues; purpose of documents and communications was to develop recommendations to Bureau decision-makers regarding how to coordinate the activities of and allocate resources across the Bureau's various divisions to most effectively address issues in the student finance market, including what policies, priorities, strategies, and goals the Bureau's Office of Supervision Policy and the Bureau's Office of Enforcement should adopt and pursue and what issues those offices should address or focus on, as later reflected in the Supervision Examination Calendar for FY 2017-18 and the Enforcement Strategic Plan for Student Finance for 2017-2018; documents and communications preceded Mr. Cordray's decision to approve the Supervision Examination Calendar for FY 2017-18 and Christopher D'Angelo's decision to approve the Enforcement Strategic Plan for Student Finance for 2017-18.

Privileges: Deliberative Process Privilege

**Category 1-F**

Description: Confidential pre-decisional and deliberative briefing memorandum submitted to former Director Richard Cordray to brief Mr. Cordray regarding a proposed approach to validating cross-Bureau policies, priorities, strategies, and goals that Mr. Cordray previously approved as part of the Bureau's "One Bureau" process and to seek Mr. Cordray's approval to proceed with the proposed

"One Bureau" validation approach; purpose of recommendations contained in the briefing memorandum was to help Mr. Cordray make decisions regarding allocation and deployment of resources across various components of the Bureau, tool choice decisions, and strategic priorities within multiple, specific markets; briefing memorandum preceded Mr. Cordray's decisions regarding allocation and deployment of resources across various components of the Bureau, tool choice decisions, and strategic priorities within multiple, specific markets as part of the "One Bureau" validation process.

Privileges: Deliberative Process Privilege

**Category 1-G**

Description: Confidential pre-decisional and deliberative documents and communications relating to the setting of the Office of Supervision's strategies for FY 2016 and FY 2017, including the order, priority, and focus of examinations as reflected in the Office of Supervision's Examination Calendar for FY 2016 and FY 2017; purpose of documents and communications was to develop or present recommendations and proposals regarding the order, priority, and focus of supervisory examinations for FY 2016 and FY 2017; documents and communications preceded Mr. Cordray's decision to approve the Office of Supervision's Examination Calendar for FY 2016 and FY 2017, including the order, priority, and focus of supervisory examinations reflected in the Examination Calendar.

Privileges: Deliberative Process Privilege

**Category 1-H**

Description: Confidential pre-decisional and deliberative documents and communications relating to the setting of the Office of Supervision's strategies for FY 2017 and FY 2018, including the order, priority, and focus of examinations as reflected in the Office of Supervision's Examination Calendar for FY 2017 and FY 2018; purpose of documents and communications was to develop or present recommendations and proposals regarding the order, priority, and focus of supervisory examinations for FY 2017 and FY 2018; documents and communications preceded Mr. Cordray's decision to approve the Office of Supervision's Examination Calendar for FY 2017 and FY 2018, including the order, priority, and focus of supervisory examinations reflected in the Examination Calendar.

Privileges: Deliberative Process Privilege

**Category 1-I**

Description: Confidential pre-decisional and deliberative portions of a presentation made by the personnel in the Bureau's Office for Supervision Policy to the Bureau's Policy Committee to provide proposals to the Policy Committee and obtain preliminary feedback from the Policy Committee regarding the potential content of the seventh edition of the Bureau's "Supervisory

Highlights,"[4] a document published by the Bureau that summarizes key findings in the Bureau's supervisory examinations; redacted slides contain proposals regarding the content of the Supervisory Highlights; recommendations preceded Mr. Cordray's decision regarding the content and publication of the seventh edition of the Supervisory Highlights, published in March 2015, including what policies, priorities, and issues regarding student loans to reflect or emphasize in the final published version of the document, how to present such policies, priorities, and issues in the final published version of the document, and whether to publish the document.

Privileges: Deliberative Process Privilege

**Category 11**

Description: Confidential pre-decisional and deliberative draft of the Office of Enforcement's Strategic Plan for Student Finance for 2017-18 and portions of a cover email between attorneys in the Bureau's Office of Enforcement discussing the draft; email and attached draft of the Strategic Plan for Student Finance were used to develop recommendations to Christopher D'Angelo regarding what policies, priorities, strategies, and goals the Office of Enforcement should adopt and pursue in the student finance market in 2017-2018, including how to allocate and deploy the office's resources to address various problems in the student finance market; email and attached draft of the Strategic Plan for Student Finance preceded decision by Christopher D'Angelo (former Associate Director of the Bureau's Division of Supervision, Enforcement & Fair Lending) to approve the Strategic Plan for Student Finance for 2017-18.

Privileges: Deliberative Process Privilege

**Category 30**

Description: Confidential pre-decisional and deliberative drafts of a document prepared by personnel in the Bureau's Division of Consumer Education & Engagement describing proposed tasks, projects, and research issues to be handled by various offices within the Division of Consumer Education & Engagement; drafts reflect recommendations, preliminary feedback, and input from personnel in the Division of Consumer Education & Engagement regarding those proposed tasks, projects, and research items and the potential policy priorities reflected therein; drafts were used to develop the Division of Consumer Education & Engagement's policies, priorities, strategies, and goals for FY 2012, which were reflected in a subsequent document titled "FY 2012 Objectives and Strategic Initiatives," including how to allocate and deploy the Division's resources to address issues in various consumer finance markets; drafts preceded the decision by Gail Hillebrand (Associate Director of the Division of Consumer Education & Engagement) to approve the document titled "FY 2012 Objectives and Strategic Initiatives" and the policies, priorities, strategies, and goals set forth in that document.

Privileges: Deliberative Process Privilege

---

[4] The final, published version of this document is available at http://files.consumerfinance.gov/f/201503_cfpb_supervisory-highlights-winter-2015.pdf.

**Category 39**

Description: Confidential communications between personnel in the Bureau's Office of Research to develop a preliminary list of issues relating to student loan credit reporting for the Office of Research to research and analyze for potential use in the drafting of reports to be published by the Office of Research; communications resulted in research and analysis that contributed to the drafting of the following reports prepared by Office of Research and published by the Bureau: (1) an August 2017 report titled "CFPB Data Point: Student Loan Repayment" and (2) a June 2018 report titled "Data Point: Final Student Loan Payments and Broader Household Borrowing"; communications preceded final decisions by former Director Richard Cordray and former Acting Director Mick Mulvaney regarding the content of those reports.

Privileges: Deliberative Process Privilege

## **APPENDIX B**

**NEW CATEGORY:**

**Category 112**

Description: Confidential communications among attorneys in the Bureau's Office of Enforcement, Legal Division, Office of Supervision Policy, and Division of Consumer Education & Engagement, for the purpose of developing and providing legal advice regarding the prohibition against unfair, deceptive, and abusive conduct in the Consumer Financial Protection Act of 2010.

Privileges: Attorney-Client Privilege

Documents Withheld or Redacted: CFPB-NAV-0057636.0001