# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Consumer Financial Protection Bureau, <br><br> Plaintiff, <br><br> v. <br><br> Navient Corporation, *et al.*, <br><br> Defendants. | Case No. 3:17-CV-00101-RDM <br> (Hon. Robert D. Mariani) <br><br><br> Electronically Filed |

**FILED PURSUANT TO SPECIAL MASTER ORDER #5 (DOC. 211), ¶ 6**

**PLAINTIFF'S BRIEF CONCERNING THE ASSERTION
OF ATTORNEY CLIENT PRIVILEGE IN THE CONTEXT
OF AFFILIATED ENTITIES UNDER *IN RE TELEGLOBE
COMMUNICATIONS CORPORATION*, 493 F.3D 345 (3D CIR. 2007)**

Kristen Donoghue
*Enforcement Director*

David Rubenstein
*Deputy Enforcement Director*

Thomas Kim
*Assistant Deputy Enforcement Director*

Nicholas Jabbour, DC 500626
Manuel Arreaza, DC 1015283
David Dudley, DC 474120
Ebony Sunala Johnson, VA 76890
Nicholas Lee, DC 1004186
Andrea Matthews, MA 694538
*Enforcement Attorneys*

*Attorneys for Plaintiff*

## INTRODUCTION

The question at issue is whether, when two or more affiliated legal entities share common legal counsel, there is a presumption that any communications between the legal entities and the common legal counsel concerning legal advice are protected by the attorney-client privilege.

*In re Teleglobe Communications Corporation*, 493 F.3d 345 (3d Cir. 2007), establishes that there is no such presumption. Rather, as is true of all privileges, the burden is on the party asserting the privilege to demonstrate that it applies. *Id.* at 365 n.22. In the specific context of the "co-client privilege" (also known as the "joint client privilege" or "joint representation"), if communications concerning legal advice between corporate affiliates and common counsel are to be protected by the attorney-client privilege, the party asserting the privilege must identify a common legal interest between those corporate affiliates for which the legal advice was sought. Defendants cannot withhold documents without demonstrating compliance with this facet of the attorney-client privilege.

## ARGUMENT

**I.      *Teleglobe* establishes that there is no presumption that the attorney-client privilege applies when multiple corporate affiliates communicate with common legal counsel regarding legal advice.**

In *Teleglobe*, the Third Circuit accepted an interlocutory appeal and issued an in-depth opinion discussing the attorney-client privilege. The case concerned

BCE Inc. ("BCE"), which broke up with Teleglobe, Inc. ("Teleglobe"), a company with which BCE had earlier merged. Teleglobe's subsidiaries (the "Debtors") sued BCE, and a dispute arose concerning BCE's withholding of documents requested by the Debtors. As the court summarized:

> BCE . . . agreed to produce (even without the filing of a suit) the 'common interest' documents to the Debtors, seemingly agreeing that they fell within the scope of their shared interest . . . . It continued to maintain, however, that the rest of the documents designated as privileged represented advice provided solely to it and were not part of any joint representation with Teleglobe or the Debtors.

*Id.* at 354. The district court rejected BCE's argument and ordered production of all of the documents on the ground that BCE's in-house attorneys jointly represented BCE, Teleglobe, and the Debtors. *Id.* at 357. According to the district court, the Debtors were entitled to the withheld documents because they were a party to the privilege with respect to those documents. *Id.* The Third Circuit held that the district court erred by not making factual findings to support the existence of such a broadly construed privilege. *Id.* at 353, 380-81.

In its decision, the Third Circuit began by "explor[ing] two oft-confused privileges: (1) the co-client (or joint-client) privilege, which applies when multiple clients hire the same counsel to represent them on a matter of common interest, and (2) the community-of-interest (or common-interest) privilege, which comes into play when clients with separate attorneys share otherwise privileged information in order to coordinate their legal activities." *Id.* at 360. Only the co-client privilege

2

was relevant because the case dealt with in-house counsel who had represented the entire corporate family.[1]

The key issue that the Third Circuit addressed was whether the district court had established that the Debtors were part of a joint representation with BCE. The Third Circuit held that "BCE and the Debtors [had to be] jointly represented by the same attorneys on a matter of common interest that is the subject-matter of those documents" and that "[f]inding that BCE and Teleglobe were jointly represented is not enough." *Id.* at 387.[2] The Third Circuit noted that the co-client privilege should not be presumed merely because BCE and the Debtors were part of the same corporate family, but instead that production of the documents required a factual finding that BCE and the Debtors shared a common legal interest such the co-client

---

[1] As the court noted, the co-client privilege "protects communications from compelled disclosure to parties outside the joint representation." *Id.* at 366. However, "[w]hen former co-clients sue one another," the issue is different because a party to the joint representation itself seeks the communications, and therefore, rather than an outside party trying to establish that the privilege does not apply (as is the case here), the co-client is trying to establish that the privilege does apply and that it was a party to the privilege. This is known as the "adverse litigation exception." *Id.* While the court discussed the "adverse litigation exception" extensively, the court concluded that the analysis is the same regardless of whether a party to the purported joint representation seeks the documents, or a party outside the purported joint representation seeks the documents: the basic question is whether a joint representation existed in the first place. *Id.* at 380, 387.

[2] If only BCE and Teleglobe were parties to the joint representation, Teleglobe could not provide the documents to the Debtors, because Teleglobe could not unilaterally waive any co-client privilege it had with BCE. *Id* at 387.

privilege applied. *Id.* at 380, 387.

In reaching its holding that a co-client privilege between BCE and the Debtors should not be presumed, the Third Circuit held that the rationale for the co-client privilege is not that the corporate affiliates are a single client, but instead that the distinct corporate affiliates are separate clients that use common counsel. *Id.* at 371 ("treating members of a corporate family as one client fails to respect the corporate form"). Put differently, "[b]y structuring its various activities by forming separate corporations, a parent company realizes numerous benefits, not the least of which are the liability shields. With that structure comes the responsibility to treat the various corporations as separate entities." *Id.* at 372.

The Third Circuit held that the Debtors were entitled to the withheld communications only if there was a "factual finding that BCE and the Debtors were parties to a joint representation." *Id.* at 380. In other words, if counsel was representing both BCE and the Debtors on a matter of common interest, the Debtors should receive the documents. *Id.* at 380, 387. If counsel was representing only BCE, or only BCE and Teleglobe, and a common interest was not established between BCE and the Debtors, then the Debtors should not receive the documents. *Id.* at 380, 387.

The key holding of *Teleglobe* is that communications are *not* privileged merely because they passed through counsel that two corporate affiliates shared.

4

Rather, a joint representation only arises when common attorneys are affirmatively doing legal work for both entities on a matter of "common interest," and the joint-client doctrine is "limited by the extent of the legal matter of common interest." *Id.* at 363, 379 (quotations omitted). As the Third Circuit further explained, "[i]n particular, because co-clients agree to share all information related to the matter of common interest with each other and to employ the same attorney, their legal interests *must be identical (or nearly so)* in order that an attorney can represent them all with the candor, vigor, and loyalty that our ethics require." *Id.* at 366 (emphasis added). Thus, "absent some compelling reason to disregard entity separateness, in the typical case courts should treat the various members of the corporate group as the separate corporations they are and not as one client . . . . [I]t assumes too much to think that members of a corporate family necessarily have a substantially similar *legal* interest . . . . in *all* of each other's communications." *Id.* at 372 (emphasis in original).[3]

Courts have correctly recognized and applied the holding from *Teleglobe*, requiring that the factual record demonstrate that corporate affiliates shared a common legal interest, and refusing to presume that the mere fact of corporate

---

[3] The *Teleglobe* decision went to great lengths to explain why corporate affiliates should never be treated as a single client. *Id.* at 369-72. Yet presuming a common interest means that the affiliates are being treated as a single client, contrary to *Teleglobe*.

affiliation suffices to demonstrate a common interest. *See, e.g.*, *In re Grand Jury Subpoena # 06-1*, 274 F. App'x 306, 311 (4th Cir. 2008) ("Subsidiary has failed to demonstrate that the communications reflected any 'legal matter of common interest' [with the parent corporation]. Therefore, it has not satisfied its burden of establishing that the joint client or co-client privilege applies.") (citation omitted); *Newsome v. Lawson*, 286 F.Supp.3d 657, 665 (D. Del. 2017) (noting that the parties sharing a corporate affiliation must articulate the "matter of common interest," in order for any determination to be made about which communications "fall within the scope of the joint representation").

## II.   Defendants misconstrue *Teleglobe*.

Defendants' brief, which is based on out-of-context quotations from *Teleglobe*, misapprehends the holding of the case. Indeed, Defendants argue for precisely the outcome that *Teleglobe* rejects – a presumption that corporate affiliates have a common interest.

For example, Defendants contend that the existence of business service agreements showing that one affiliate provided legal counsel to other affiliates are sufficient to establish a common legal interest. However, this argument misses the point: The fact that Pioneer could pay Navient Solutions' counsel to provide legal services to Pioneer has no bearing on whether, if Navient Solutions and Pioneer businesspeople are jointly on a communication with Navient Solutions' legal

counsel, a co-client privilege can be presumed. The business service agreements do not speak to this question. *See* Doc. 218, Exs. A and B (filed under seal). They do not purport to establish that the various affiliates shared common legal interests, much less with respect to the subject matter of the withheld communications. *Id.* Likewise, the declarations at Exhibits C and D (Doc. 218-1) suffer from the same deficiency. They state in conclusory fashion that the communications were for the purpose of joint representation. That is precisely the type of blanket presumption that the Third Circuit rejected in *Teleglobe.* 493 F.3d at 372.

Defendants' position would drastically expand the co-client privilege to shield from production any communications seeking legal advice that are between corporate affiliates and shared in-house counsel. *See* Doc. 218, at 1-2. The Third Circuit rejected such a regime, finding untenable the proposition that "members of a corporate family necessarily have a substantially similar *legal* interest . . . in *all* of each other's communications." 493 F.3d at 372 (emphasis in original).[4]

The approach advocated by Defendants – that two corporate affiliates can

---

[4] Moreover, such a standard advocated by Defendants, would disregard the corporate form that Navient Corporation chose when structuring its subsidiaries, allowing Navient Corporation to realize the benefits of that corporate form without any of the concomitant responsibilities. *See Teleglobe*, 493 F.3d at 371. This is not a result that "wreak[s] havoc," as Defendants suggest; it simply means that Defendants have to articulate a common interest to claim privilege for communications among affiliates, rather than being entitled to a presumption that a common interest always exists. *Id.* at 380, 387.

simply agree that all communications between them and common counsel are covered by the attorney-client privilege – elevates form over substance. It would be no different than if an attorney and a client agreed that all communications between them were covered by the attorney-client privilege, regardless of whether the communications were made in confidence or for the purpose of providing or seeking legal advice.

The authority offered by Defendants to support their contention that nothing requires a corporate defendant to "identify legal interests shared among corporate affiliates" provides no such support. In *SmithKline Beecham Corp. v. Apotex Corp.*, the court analyzed the privilege assertions across a wide array of corporate documents and the information provided to support each assertion. 232 F.R.D. 467 (E.D. Pa. 2005). After laying out general requirements for adequate demonstration of the attorney-client privilege, the court stated that, "[e]ven under this approach, however, if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected." *Id.* at 482 (quotation omitted). Evaluating whether the plaintiff included sufficient information to sustain its attorney-client privilege claims, the court noted that in the log, "[p]laintiff has defined the role of attorneys in their organization and the policy of confidentiality that applied to all attorney-employee communications," and "descriptions demonstrat[ing] how, with

respect to each communication, legal advice or legal services were being requested, rendered, secured, sought, or provided." *Id*. at 483. Rather than the general descriptions and conclusory affidavits provided by Defendants here, the court in *SmithKline Beecham* upheld, or denied, assertions of attorney-client privilege based on an analysis as to whether all of the legal requirements were set forth in the privilege log for each privilege claim.[5]

Finally, though Defendants devote much of their brief to arguing that a showing of a common legal interest is only required when the corporate affiliates are in litigation adverse to each other, *Teleglobe*'s holding is not this narrow. The "adverse litigation exception" was discussed in *Teleglobe* because, rather than an outside party seeking the communications on the ground that the communications are *not covered by the co-client privilege*, it was a corporate affiliate seeking the communications in an adverse litigation against another affiliate on the ground that it was *a party to a relationship covered by the co-client privilege. See Teleglobe*, 493 F.3d at 387. The "exception" is simply that in the latter situation, the co-client privilege normally does not apply. *Id.* at 359, 366. That does not mean the co-client

---

[5] Despite Defendants' assertions, the Bureau has not demanded a document-by-document log of the communications Defendants believe are protected by the co-client privilege. Rather, as stated in our December 27, 2018 letter to the Court (Doc. 146, at 3), and reiterated during the January 28, 2019 hearing (Transcript of 1/28/2019 hearing, at 77:2-78:10), the Bureau simply seeks information sufficient to establish that the privilege exists. Defendants can provide it in a document-by-document or categorical manner.

privilege automatically applies in the former situation. Indeed, regardless of who is seeking the purportedly privilege communications and whether the requesting party is trying to prove or disprove a co-client relationship, the court in *Teleglobe* made clear that a common legal interest cannot be presumed. *Id.* at 380, 387. While disclosure to an affiliated entity should not automatically waive privilege, that does not mean there should be a presumption that the privilege applies when disclosure to an affiliated entity occurs. Rather, as is true of all privileges, the burden is on the party asserting the privilege to demonstrate that it applies. *Id.* at 365 n.22.

## <u>CONCLUSION</u>

For the foregoing reasons, the Bureau respectfully requests that Defendants be ordered to identify the common legal interest that forms the basis for their attorney-client privilege assertions for communications relating to legal advice that involved common counsel and businesspeople from two or more affiliated corporate entities.

Dated: February 25, 2019          Respectfully submitted,

                                  Kristen Donoghue
                                  *Enforcement Director*

                                  David Rubenstein
                                  *Deputy Enforcement Director*

                                  Thomas Kim
                                  *Assistant Deputy Enforcement Director*

                                    /s/ Nicholas Jabbour              
                                  Nicholas Jabbour, DC 500626
                                  (Nicholas.Jabbour@cfpb.gov; 202-435-7508)
                                  Manuel Arreaza, DC 1015283
                                  (Manuel.Arreaza@cfpb.gov; 202-435-7850)
                                  David Dudley, DC 474120
                                  (David.Dudley@cfpb.gov; 202-435-9284)
                                  Ebony Sunala Johnson, VA 76890
                                  (Ebony.Johnson@cfpb.gov; 202-435-7245)
                                  Nicholas Lee, DC 1004186
                                  (Nicholas.Lee@cfpb.gov; 202-435-7059)
                                  Andrea Matthews, MA 694538
                                  (Andrea.Matthews@cfpb.gov; 202-435-7591)
                                  *Enforcement Attorneys*

                                  1700 G Street NW
                                  Washington, DC 20552
                                  Fax: 202-435-9346

                                  *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on February 25, 2019, I filed the foregoing document using the

Court's ECF system, which will send notification of such filing to counsel for

Defendants.

<div style="margin-left: 40%;">

\_\_/s/ Nicholas Jabbour_____
Nicholas Jabbour, DC 500626
Nicholas.Jabbour@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-7508
Fax: 202-435-9346

*Attorney for Plaintiff*

</div>