

February 28, 2019

**VIA ECF**

Judge Thomas I. Vanaskie
JAMS, Inc.
1717 Arch St., Suite 3810
Philadelphia, PA  19103

>       Re:  Letter Brief re Matthew Bailer Email Request,
>       *CFPB v. Navient Corp. et al.*, No. 3:17-CV-00101 (M.D. Pa.)

Dear Judge Vanaskie:

Pursuant to Special Master Order #9, dated February 15, 2019, Defendants respectfully submit this letter responding to the CFPB's argument that, notwithstanding an explicit agreement to the contrary, Defendants should be required to search the emails of former Navient employee, Matthew Bailer.

**I.     The CFPB Has Not Met Its Burden With Respect To Matthew Bailer's Emails**

As Defendants made clear in their February 9 letter, on May 31, 2018, the parties reached a comprehensive agreement concerning Defendants' email productions—an agreement that the CFPB itself called "the Bureau's global compromise." Ex. 1, at 4.  That agreement expressly covered the custodians whose emails Defendants would search. At the *request of the CFPB*, Defendants selected call center supervisor custodians who 1) were employed on January 1, 2013, and 2) worked in the lowest level of management over a single servicing call center.  *Id.* at 6 n. 3(2).  Mr. Bailer did not meet either criteria, so he was not included as a custodian.  There is no claim, nor can there be, that Navient failed to comply with the "global compromise" that defined the Navient custodians to be searched.

Rather, the CFPB now argues that it is entitled to renege on this agreement—and disregard *its own custodian demands*—because of two pieces of information it purportedly learned during Mr. Bailer's deposition on November 16, 2018. *First*, the CFPB claims that it "learned for the first time" during the deposition that Mr. Bailer had a supervisory role over federal loan servicing. *Second*, the CFPB makes much of the fact that Mr. Bailer testified that he personally could not remember when he learned that a $0 payment was possible under an income-driven repayment plan.  The first assertion is demonstrably untrue.  The second is, at best, only tangentially relevant, and it certainly should not justify disregarding a comprehensive agreement that the parties negotiated in good faith.



*Judge Thomas I. Vanaskie*
*February 28, 2019*
*Page 2*

The CFPB's claim that it first learned of Mr. Bailer's role during his deposition is inaccurate. In fact, Defendants produced numerous materials relevant to Mr. Bailer *during the CFPB's pre-litigation investigation.* One such document laid out the organizational structure of the ED Servicing Call Center and specifically noted that the "team reports to Matt Bailer, Sr. Director." Ex. 2, at 1. That document was produced to the CFPB in July 2014—*over four years* before the CFPB claims it "learned for the first time" of Mr. Bailer's supervisory role. The suggestion by the CFPB that it is somehow in the dark as to any aspect of Navient's organization after what is now a five-year-old investigation is not credible: the CFPB represents that it first learned that Mr. Bailer was "vice president of customer service" during his deposition, but in fact Navient produced organizational charts identifying him as such almost ten months prior. Ex. 3, at 2. And these organizational charts are just two of several produced documents showing Mr. Bailer's role with Navient.[1] The CFPB has therefore "had ample opportunity … to obtain the information sought," Fed. R. Civ. P. 26(b)(2)(ii),[2] and its eleventh-hour request to add another custodian to the scores already searched cannot be justified.

The CFPB's second claim—that it needs Mr. Bailer's emails because he personally could not remember when he learned of a $0 IBR option—seriously overstates the significance of this information. For one, there is nothing new about the $0 IBR issue; the CFPB raised that issue in its complaint and in the pre-litigation investigation, and the CFPB could have made it the focus of the global compromise agreement before the parties finalized the protocol. But it did not. Moreover, Mr. Bailer left the company over seven years ago, and it is therefore unsurprising that he does not remember exactly when he personally learned of specific repayment options. It is not clear why his inability to recall the date matters: Defendants long ago produced the policies and procedures that were used to train the representatives who spoke with borrowers—including representatives under Mr. Bailer's supervision. Those documents are contemporaneous evidence of the Company's practices at the time and demonstrate that Navient offered $0 IBR plans to borrowers well before the period described in Mr. Bailer's testimony.[3] Nothing about Mr. Bailer's inability to recollect the exact date he learned about $0 IBR contradicts the contemporaneous records already produced. Moreover, because some of Mr. Bailer's emails were included in the files of the custodians whom the CFPB selected to search, it already has numerous emails sent, from, or cc'd to Mr. Bailer, as evidenced by the exhibits that were used at

---

[1] *See, e.g.*, NAV-00057799-00057800;  NAV-04583981-NAV-04584171 at NAV-04583996; NAV-04831019-NAV-04831021.

[2] "The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that . . . (ii) the party seeking discovery has had *ample opportunity by discovery* in the action to obtain the information sought." Fed. R. Civ. P. 26(b)(2)(ii) (emphasis added).

[3] Ex. 4, at 3 (September 2010 procedure for calculating an IDR plan with a zero-dollar monthly payment).



*Judge Thomas I. Vanaskie*
*February 28, 2019*
*Page 3*

his deposition.  The CFPB's second justification for discarding the global compromise does not withstand scrutiny.

**II.      The Issue of Email Xtender Has Long Been Settled**

In addition to the agreement reached regarding custodians, the CFPB now also seeks to walk away from an indispensable element of its global compromise agreement: that Defendants would not be required to search and produce emails on its long-mothballed legacy email system, Email Xtender.  (The agreement required Defendants to search another one of its legacy email systems.)  To understand just how critical this element of the agreement was from Defendants' perspective, it is useful to provide some background.

From the earliest stages of discovery, Defendants expressly objected to searching Email Xtender.  In August 2017, Navient noted in its objections to the CFPB's initial set of requests for production that it "objects to the extent that each Request requires it to search for electronically stored information on back-up or legacy systems or to the extent that the Request calls for the restoration of any systems, programs, or media."  Ex. 5, at 3.  For the next three months, the CFPB never once took issue with this objection.  For example, in a September 18, 2017 letter, the CFPB outlined 24 pages of "serious deficiencies" with Defendants' responses, but it did not include the subject of back-up or legacy systems.  Ex. 6.

After much correspondence over the next several weeks in which the CFPB did not mention legacy systems, it raised Email Xtender for the first time during marathon meet-and-confer sessions in November 2017.  At that time, Defendants discussed at length the complications involved in accessing documents from back-up and legacy systems like Email Xtender, including the fact that data is spread across seven separate servers, that vendors no longer support standard extraction tools related to the database, and that data security patch deficiencies exist related to firewall restrictions.

Following the extensive November 2017 meet-and-confers, the CFPB sat on the issue for another two months, until it raised it again in January of 2018.  Defendants and the CFPB evidently have a different recollection as to what happened next.  Defendants' counsel understood that as part of the extensive negotiations and discussions that took place in January and February with respect to the various discovery issues, the CFPB dropped its demand that Defendants search Email Xtender.  The contemporaneous record is consistent with Defendants' recollection.  Specifically, in its February 27, 2018 letter to the Court regarding the then-live discovery disputes, the CFPB did not identify Defendants' legacy or back-up systems as a point of disagreement.  Doc. 74.  Nor did the CFPB raise this as an issue during the April 17, 2018 discovery hearing before Judge Mariani.  Doc. 87.  And, because the issue was not raised with the Court, the May 4, 2018 Discovery Order did not mention Email Xtender.  Doc. 89.



*Judge Thomas I. Vanaskie*
*February 28, 2019*
*Page 4*

Notwithstanding that the CFPB did not raise the issue with the Court, the CFPB argued that the Court had actually ordered "that Defendants should search the legacy system for responsive emails because the Bureau never agreed to exclude that system . . . ." Ex. 7, at 2. Thus, during the meet and confer negotiations ordered by the Court in May of 2018 to reach agreement on the scope of additional email searches, Email Xtender was again a topic of negotiation. On May 16, 2018, the CFPB claimed not to know any of the information that had previously been provided and asked Defendants to provide "information regarding why . . . documents on the Email Xtender system are not readily accessible." Ex. 8 at 2. The following day, Defendants again provided this information to the CFPB during a meet-and-confer.

Several days later, on May 22, after considerable negotiations between the parties and significant concessions from Defendants, the CFPB agreed to drop its demand and circulated a proposal that included the following: "No documents stored exclusively on Email Xtender need to be reviewed." Ex. 9, at 2. Given the CFPB's belated efforts to revive the Email Xtender issue, it was critical to Defendants that this material term (and, in fact, the entire agreement on searches and custodians) be memorialized in writing so that there could be no dispute over the agreement that had been painstakingly reached. In its May 29, 2018 letter to Defendants, the CFPB underscored that the "Bureau's proposals have eliminated from your review hundreds of thousands of documents that are unlikely to contain relevant information. We are hopeful that Defendants will accept this proposal." Ex. 10, at 2. Based on express reliance on the material terms reached with respect to Email Xtender, Defendants accepted the proposal, which included many significant and burdensome concessions by Defendants. On May 31, the parties submitted a joint letter informing the Court of their agreement. Doc. 93. It was important to Defendants that the agreement be presented to the Court so that it would be enforced. This "global compromise" included, in clear, unequivocal terms, the following language: "No documents stored exclusively on Email Xtender need to be reviewed or produced." Ex. 1, at 4.

As this Court noted while reviewing this agreement during the February 12 status conference, "I'm looking at a document in which the Bureau agreed that no document stored exclusively [ph] on e-mail extender need to be reviewed or produced. I understand the argument of Navient that this is a resolved issue and shouldn't be re-examined based upon the showing that has been made thus far." Ex. 11. This is indeed a resolved issue—one that the parties discussed and negotiated for many months before reaching a written agreement that was presented to the Court.

Respectfully,

/s/ Daniel T. Brier

# EXHIBIT 1

**Dryhurst, Karin**

| | |
|---|---|
| **From:** | Lee, Nicholas (CFPB) <Nicholas.Lee@cfpb.gov> |
| **Sent:** | Thursday, May 31, 2018 12:52 PM |
| **To:** | Dryhurst, Karin; Paikin, Jonathan; Martens, Matthew T.; Kearney, Daniel P.; Hart, Gideon; 'Dan Brier'; 'Donna Walsh' |
| **Cc:** | Johnson, Ebony (CFPB); Arreaza, Manuel (CFPB); Matthews, Andrea (CFPB); Dudley, David (CFPB); Kim, Thomas (CFPB); Jabbour, Nicholas (CFPB) |
| **Subject:** | RE: CFPB v. Navient - Search Terms Agreement |
| **Attachments:** | Joint Ltr to Court - 5.31.18 - Draft (WH edits)_(167940524)_(1).pdf; Summary of Agreement - 5.31.18.pdf |

Thanks, Karin.

We've updated both documents accordingly. The revised summary of the agreement is attached. Also attached is the revised joint letter.

Please note that I corrected the date of the Court's memorandum opinion from May 5 to May 4. I don't anticipate any concern with the change, but please confirm Defendants' consent to the Bureau's filing of the attached joint letter with that minor change.

Regards,
Nick

**From:** Dryhurst, Karin [mailto:Karin.Dryhurst@wilmerhale.com]
**Sent:** Thursday, May 31, 2018 12:34 PM
**To:** Lee, Nicholas (CFPB); Paikin, Jonathan; Martens, Matthew T.; Kearney, Daniel P.; Hart, Gideon; 'Dan Brier'; 'Donna Walsh'
**Cc:** Johnson, Ebony (CFPB); Arreaza, Manuel (CFPB); Matthews, Andrea (CFPB); Dudley, David (CFPB); Kim, Thomas (CFPB); Jabbour, Nicholas (CFPB)
**Subject:** RE: CFPB v. Navient - Search Terms Agreement

Nick,

Thanks for sending along. The summary of the agreement is consistent with our understanding, but there appears to be an inadvertent error in footnote 3. The first sentences of paragraphs #2 and #3 accurately refer to two custodians, but both paragraphs refer to three custodians in the parenthetical describing the sample. We assume you meant to change those references to "the first *two* individuals in alphabetical order." Please confirm.

In addition, we made one change to the letter to refer to the Court's memorandum opinion. Please let us know if you would like to discuss.

Thanks,
Karin

**From:** Lee, Nicholas (CFPB)
**Sent:** Thursday, May 31, 2018 11:20 AM
**To:** Dryhurst, Karin ; Paikin, Jonathan ; Martens, Matthew T. ; Kearney, Daniel P. ; Hart, Gideon ; 'Dan Brier' ; 'Donna Walsh'
**Cc:** Johnson, Ebony (CFPB) ; Arreaza, Manuel (CFPB) ; Matthews, Andrea (CFPB) ; Dudley, David (CFPB) ; Kim, Thomas

(CFPB) ; Jabbour, Nicholas (CFPB)
**Subject:** CFPB v. Navient - Search Terms Agreement

Counsel:

Please find attached a draft joint letter to the Court regarding the parties' agreement. Also attached for your records is a summary of the agreement, as we discussed this morning. As it relates to the sampling of QA staff for category 3, the parties understand that the sample will be drawn from the quality assurance group that Ms. Dryhurst described yesterday. Per Ms. Dryhurst, these individuals listen to servicing calls for quality and compliance.

Regards,
Nick

**Nicholas Lee**
Enforcement Attorney
Consumer Financial Protection Bureau
202 435 7059
nicholas.lee@cfpb.gov

**consumerfinance.gov**

Confidentiality Notice: If you received this email by mistake, you should notify the sender of the mistake and delete the e-mail and any attachments. An inadvertent disclosure is not intended to waive any privileges.

1700 G Street NW,
Washington, DC 20552

May 31, 2018

**Filed Via ECF**

The Honorable Robert D. Mariani
U.S. District Court, Middle District of Pennsylvania
William J. Nealon Federal Bldg. & U.S. Courthouse
235 N. Washington Avenue
Scranton, PA 18503

      Re:   *Consumer Financial Protection Bureau v. Navient Corp., et al.*, Case
           No. 3:17-CV-00101-RDM

Dear Judge Mariani:

The Bureau writes in connection with the Court's May 29 Order (Doc. 92)

directing the parties to "file a joint letter advising the Court whether they have

reached an agreement on the search terms Defendants shall use to respond to

Plaintiff's request for certain internal and external emails." The parties have

reached an agreement on search terms for all five categories of emails at issue

during the April 17 hearing. Defendants have reviewed this letter and have

authorized the Bureau to file it on behalf of all parties to this litigation.

                                  Respectfully,

                                  /s/ Nicholas C. Lee

CC: All counsel (via operation of ECF)

## Categories 1, 2, 4, and 5

For these categories, the Bureau's global compromise consists of the following:

- **Search Terms:** Subject to the proposed modifications identified below, Defendants will use the search terms attached to Ms. Dryhurst's May 11 email to the Bureau. The attachments are titled "Category 1 Emails re Policies.pdf," "Category 2 Emails re Audits.pdf," "Category 4 Emails re IDR Notices.pdf," and "Category 5 Emails re ED.pdf."
  - **Modification of Category 1 searches:** Eliminate all searches referencing "cosign*" or "(renew* OR recertif*)."
  - **Modification of Category 4 searches:** Eliminate the searches in footnote 1.[1]
- **Proximity limiters:** An across-the-board reduction in proximity limiters from 50, 25, and 15 to 25, 15, and 10, respectively.
- **Documents with hits:** Only documents with hits need to be reviewed for responsiveness. If a document with a hit is responsive, its non-privileged family members without hits must be produced. If a document with a hit is not responsive, its family members without hits need not be reviewed or produced.
- **Inclusive emails:** Non-inclusive emails (as defined by Relativity) need not be reviewed or produced.
  - Relativity defines an inclusive email as "An email that contains unique content not included in any other email, and thus, must be reviewed. An email with no replies or forwards is by definition inclusive. The last email in a thread is also by definition inclusive." Relativity defines a non-inclusive email as "An email whose text and attachments are fully contained in another (inclusive) email."
- **Email Xtender:** No documents stored exclusively on Email Xtender need to be reviewed or produced.

## Category 3

For this category, the Bureau's global compromise consists of the following:

- **Proximity limiters:** Same as above.
- **Documents with hits:** Same as above.
- **Inclusive emails:** Same as above.
- **Email Xtender:** Same as above.
- **New Searches and Custodians:**
  - For the existing custodians[2] identified in footnote 2 below, add the following searches:

---

[1] Eliminated Searches:
1. (forbearance OR FORA OR FORV OR FORB) w/25 (advantage OR disadvantage) w/15 (borrow* OR consumer OR customer)
2. (forbearance OR FORA OR FORV OR FORB) w/25 (effective* OR ineffective*)
3. (forbearance OR FORA OR FORV OR FORB) w/25 (encourage* OR sell OR sold)
4. (forbearance OR FORA OR FORV OR FORB) w/25 (priority w/15 ("income-driven" OR IDR OR IBR OR PAYE OR REPAYE))
5. (forbearance OR FORA OR FORV OR FORB) w/25 advis*
6. (forbearance OR FORA OR FORV OR FORB) w/25 alternative
7. (forbearance OR FORA OR FORV OR FORB) w/25 counsel

1. ((forbearance* OR FORA OR FORV OR FORB) OR ("income-driven" OR "income-based" OR "income-contingent" OR "income based" OR "income driven" OR "income contingent" OR IDR OR IBR OR PAYE OR REPAYE OR ICR)) w/10 (good OR better OR best OR bad OR wors* OR ideal OR prefer* OR priorit* OR optimal OR first OR last OR always OR explor* OR temporar* or brief* OR advantag* OR disadvantag* OR positive* OR negative* OR benefi* OR suited OR suitable OR applicab* OR compar* OR default* OR push* OR steer* OR pressur*)

2. (fail* OR "does not" OR "did not" OR never OR inadequate* OR adequate* OR insufficient* OR sufficient*) W/10 (mention* OR inform* OR told OR tell* OR advis* OR advice OR communicat* OR explain* OR notif* OR present*) W/10 (forbearance* OR FORB OR FORA OR FORV OR "income-driven" OR "income driven" OR "income-based" OR "income based" OR "income-contingent" OR "income contingent" OR IDR OR IBR OR ICR)

3. steer* W/5 (borrower* OR consumer* OR customer* OR caller*)

o  For the categories of new custodians[3] identified in footnote 3 below, use the following searches:

---

[2] Existing Custodians:
1. Brian Lanham
2. Patricia Peterson
3. Jennifer Domenick
4. Eileen Herbert
5. Patricia Novrocki
6. Jeanine Pysniak
7. Troy Standish
8. Patricia Potomis
9. Angela Kamionka
10. Holli Jeckell
11. Kevin Woods
12. Robert Sommer
13. Marjorie Belton
14. Judith Grassi
15. Cheryl Hammes
16. Jamie Hedge
17. Robyn Hughes
18. Robert Leary
19. Michael Maier
20. Paul Mayer
21. Rick Nickel
22. Sara Patterson
23. Daniel Yost
[3] New Custodians:

1. ((forbearance* OR FORA OR FORV OR FORB) OR ("income-driven" OR "income-based" OR "income-contingent" OR "income based" OR "income driven" OR "income contingent" OR IDR OR IBR OR PAYE OR REPAYE OR ICR)) w/10 (good OR better OR best OR bad OR wors* OR ideal OR prefer* OR priorit* OR optimal OR first OR last OR always OR explor* OR temporar* OR brief* OR advantag* OR disadvantag* OR positive* OR negative* OR benefi* OR suited OR suitable OR applicab* OR compar* OR default* OR push* OR steer* OR pressur*)

2. (fail* OR "does not" OR "did not" OR never OR inadequate* OR adequate* OR insufficient* OR sufficient*) W/10 (mention* OR inform* OR told OR tell* OR advis* OR advice OR communicat* OR explain* OR notif* OR present*) W/10 (forbearance* OR FORB OR FORA OR FORV OR "income-driven" OR "income driven" OR "income-based" OR "income based" OR "income-contingent" OR "income contingent" OR IDR OR IBR OR ICR)

3. steer* W/5 (borrower* OR consumer* OR customer* OR caller*)

4. ((forbearance* OR FORA OR FORV OR FORB) OR ("income-driven" OR "income-based" OR "income-contingent" OR "income based" OR "income driven" OR "income contingent" OR IDR OR IBR OR PAYE OR REPAYE OR ICR)) W/25 (suitability OR unsuit* OR appropriate* OR inappropriate* OR inapplicab* OR advisable)[4]

---

1. Jack Remondi.
2. A random sampling of two individuals responsible for managing call centers on the federal loan servicing side of the business. (We request that the sample be drawn from employees who were employed by the company on January 1, 2013 in the lowest level of management over a single entire servicing call center as of that date, and who were employed in that position for at least one year. Once the pool of potential employees is identified, select the first two individuals in alphabetical order.) The Bureau agrees to limit the time period for discovery in this sample to the periods during which the custodians were in the role of managing call centers on the federal loan servicing side of the business.
3. A random sampling of two individuals responsible for reviewing the quality of customer service provided by call center customer service representatives on the federal loan servicing side of the business. (We request that the sample be drawn from employees who were employed by the company on January 1, 2013 in the lowest level of reviewing the quality of customer service provided by call center customer service representatives on the federal loan servicing side of the business, and who were employed in that position for at least one year. Once the pool of potential employees is identified, select the first two individuals in alphabetical order.) The Bureau agrees to limit the time period for discovery in this sample to the periods during which the custodians were in the role of reviewing the quality of customer service provided by call center customer service representatives on the federal loan servicing side of the business .

[4] This search was previously identified as search #5 in the Bureau's May 18 email to Defendants.

5. ((forbearance* OR FORA OR FORV OR FORB) OR ("income-driven" OR "income-based" OR "income-contingent" OR "income based" OR "income driven" OR "income contingent" OR IDR OR IBR OR PAYE OR REPAYE OR ICR)) W/25 (cost OR expens* OR loss OR effective* OR ineffective* metric OR criteria)[5]

6. ((forbearance* OR FORA OR FORV OR FORB) OR ("income-driven" OR "income-based" OR "income-contingent" OR "income based" OR "income driven" OR "income contingent" OR IDR OR IBR OR PAYE OR REPAYE OR ICR)) W/25 ((long W/5 term) OR (short W/5 term) OR limit*)[6]

---

[5] This search was previously identified as search #8 in the Bureau's May 18 email to Defendants.
[6] This search was previously identified as search #9 in the Bureau's May 18 email to Defendants.

# EXHIBIT 2

# EXHIBIT FILED
# UNDER SEAL

# EXHIBIT 3

# EXHIBIT FILED
# UNDER SEAL

EXHIBIT 4

# EXHIBIT FILED UNDER SEAL

# EXHIBIT 5

## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Consumer Financial Protection Bureau,   )
)
          *Plaintiff*,   )
)
     v.   )   Civil Action No. 3:CV-17-00101
)   (Hon. Robert D. Mariani)
Navient Corporation, *et al.*,   )
)
        *Defendants*   )

## DEFENDANT NAVIENT SOLUTIONS, LLC'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION

Pursuant to Rule 34 of the Federal Rules of Civil Procedure ("FRCP"), Defendant Navient Solutions, LLC ("Navient Solutions"), through its undersigned counsel, responds and objects to Plaintiff the Consumer Financial Protection Bureau ("CFPB")'s First Set of Requests for Production, dated June 5, 2017, including the instructions and definitions therein (the "Requests").

Navient Solutions further states that the vast majority of documents responsive to these Requests are maintained on its computer systems in electronic format. The process for identifying, gathering, uploading, reviewing, and producing responsive documents is underway, but as of the date of these responses is not completed. Navient Solutions states that it will produce its documents on a rolling basis at a mutually agreeable date and location.

1

## GENERAL OBJECTIONS

The general objections apply to each specific Request, whether or not they are specifically referenced in response to a particular Request.  By making any general or specific objection, Navient Solutions expressly does not waive or prejudice any further objections it may later assert in response to a specific Request or any other discovery.

1.      Navient Solutions objects to the extent a Request seeks documents that are unreasonably cumulative or duplicative with those already in the possession of CFPB.  In response to multiple administrative subpoenas and informal requests during the investigation preceding this lawsuit, Defendants collectively provided more than 450,000 pages of documents, answered dozens of interrogatories, prepared over 30 written reports containing complex analyses of borrower data and information, and produced nine witnesses for testimony. Navient Solutions has identified Bates numbers for responsive materials previously produced where it is reasonably able to do so.

2.      Navient Solutions also objects on burden grounds to the extraordinary number of Requests, including subparts, served by CFPB on Defendants, both in its numerous administrative subpoenas and the discovery served in this action.

CFPB has served 26 Requests on Navient Solutions alone, each with multiple and distinct (49 total) sub-parts.

3.      Navient Solutions objects to each of the Requests to the extent it purports to impose on Navient Solutions a duty to search for documents beyond a reasonable search of the locations and files where potentially responsive materials would reasonably be found.  To the extent electronically stored information is necessary to answer a Request, Navient Solutions will search for responsive electronically stored documents in a manner that balances the desire to identify responsive documents with the avoidance of undue burden or expense.  Navient Solutions objects to the extent that each Request requires it to search for electronically stored information on back-up or legacy systems or to the extent that the Request calls for the restoration of any systems, programs, or media.  Navient Solutions further objects to the extent that a Request seeks voluminous information which can be located and copied only at tremendous expense of money and/or personnel resources and/or that will create a significant delay that would be disproportionate to the probative value or relevance of the material sought.

4.      Navient Solutions objects to the extent a Request purports to seek discovery of documents that are not in its immediate and present possession, including documents that are maintained in the files of subsidiaries and/or

3

affiliates.  CFPB sought permission to serve specific discovery on each separate

Defendant, and it has served such discovery.  Thus, unless otherwise stated,

Navient Solutions interprets the discovery directed to a particular Defendant to be

seeking documents and information that is in the immediate possession of that

particular Defendant (and not its subsidiaries and/or affiliates that are also

Defendants).

5.     Navient Solutions will produce confidential, proprietary, or personal

information subject to the terms of a mutually agreeable protective order.  Navient

Solutions notes that the U.S. Department of Education ("Education Department")

mandates that Navient Solutions seek approval for the production of protected

borrower information accompanied by a letter from the requesting party, here,

CFPB.  To the extent any of the Requests seek documents for which the Education

Department requires such approval, Navient Solutions will produce responsive

documents, should any exist, consistent with those requirements and pursuant to a

process agreed upon with CFPB.

6.     Navient Solutions objects to the extent a Request seeks documents

protected under the attorney-client privilege, the work product doctrine,

examination, or other applicable privileges.  If any protected information or

material is produced, such disclosure is not intentional and shall not be deemed a

4

waiver of any privilege or protection.  To the extent Navient Solutions identifies privileged materials responsive to a Request, it will produce a log of those documents in a format consistent with the requirements of FRCP 26(b)(5). Navient Solutions will not undertake a search of the files of in-house counsel (or produce a log) unless it has reason to believe that non-duplicative, non-privileged materials can be located in those files.

7.      Navient Solutions objects to the extent a Request is vague, ambiguous, indefinite, overbroad, or otherwise unclear as to the information sought.  As a general matter, Navient Solutions will interpret the Requests as not seeking documents unrelated to the practices and statements alleged in the Complaint.  In addition, Navient Solutions does not adopt by responding to these Requests any definition of words or phrases or any express or implied characterizations of fact or law contained in the Requests.

8.      The responses below are made without waiver of, and with preservation of:

a.      all objections as to competency, relevancy, materiality, privilege, and admissibility of the responses and the subject matter thereof as evidence for any purposes in any further proceeding in this action (including the trial of this action) and any other action;

5

b.     Navient Solutions' right to object on any ground and at any time to a demand or request for additional documents or other discovery procedures related to the subject matter of this case; and

c.     Navient Solutions' right, at any time, to revise, correct, add to or clarify any of the documents produced by Navient Solutions.

## OBJECTIONS TO INSTRUCTIONS

1.     Navient Solutions objects to Instruction No. 3(b) to the extent it requires Navient Solutions to produce a log other than for documents withheld on the basis that they are "privileged or subject to protection as trial-preparation material." FRCP 26(b)(5).  Navient Solutions will produce a log at a mutually agreeable date and time after a production is made from which privileged documents were withheld.

2.     Navient Solutions objects to Instruction No. 6 on the grounds that the timeframe specified for all of the Requests (January 1, 2009 to the present) seeks information beyond the scope of the Complaint, which alleges conduct occurring no earlier than January 1, 2010.  *See* Compl. ¶¶ 50–61, 67–69, 86.  Unless otherwise specified, Navient Solutions will provide documents responsive to each request from January 1, 2010 to the present.

3.     Navient Solutions objects to Instruction No. 9 to the extent it purports to require Navient Solutions to call CFPB should any materials responsive to the Requests contain the sensitive personally identifiable information of any

individual.  As noted above in General Objection No. 2, Navient Solutions will

produce such documents pursuant to a mutually agreeable protective order and

consistent with applicable Education Department requirements.

## SPECIFIC OBJECTIONS AND RESPONSES
## TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION

**DOCUMENT REQUEST NO. 1:  All documents reflecting the provision, issuance, or communication of any instruction, requirement, command, directive, advice, guidance, suggestion, recommendation, or critique from Navient Corporation (including any business plans, strategic plans, policies, or procedures created or issued by Navient Corporation) relating to the servicing of student loans.**

**Response:**

In addition to the general objections, Request No. 1 is overbroad and unduly

burdensome to the extent that it seeks documents unrelated to the claims in this

action and/or the types of loans at issue.  Navient Solutions further objects to

Request No. 1 to the extent it is duplicative of Request No. 5 to Navient Corp., and

directs the CFPB to Navient Corp.'s response to that Request and the documents

produced in response thereto.  Navient Solutions is not aware of additional

responsive documents beyond those identified by Navient Corp.

**DOCUMENT REQUEST NO. 2:  For each type of notice or disclosure referenced on pages 9-10 of Defendants' brief in support of their motion to dismiss (docket entry #29), and any other written communication with borrowers about forbearance or income-driven repayment plans: (a) one example of every version of the notice, disclosure, or written communication**

7

**in the format as it was sent to a consumer (including any attachments to the notice, disclosure, or written communication), (b) all drafts of each version of the notice, disclosure, or written communication, and (c) all documents reflecting any testing or evaluation (such as through a focus group) of the notice, disclosure, or written communication, including any drafts. For part (a) of this Request, a notice, disclosure, or written communication that is identical to another notice, disclosure, or written communication but for information that is specific to the borrower shall not be considered a separate version of the document.**

**Response:**

In addition to the general objections, Request No. 2 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and/or the types of loans at issue, and (b) "all drafts" of "each version" of every written communication with borrowers about forbearance or income-driven repayment plans. Navient Solutions further objects that this Request is duplicative of previous requests for information, and that CFPB is already in possession of documents that appear to be responsive to this Request. Specifically:

- On October 25, 2013, Sallie Mae, Inc. produced documents responsive to Document Request 5 of the September 5, 2013 CID issued by CFPB to Sallie Mae, Inc., which sought "Exemplars of all forms of billing statements for borrowers with multiple loans in repayment." CFPB CID to Sallie Mae, Inc., Sep. 5, 2013. These documents are located at the Bates Range detailed in Appendix 1(A) to these responses.

- On June 27, 2014 and July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 11 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "Each unique version of form or template documents and advertisements used to

8

communicate information to a student loan borrower or cosigner about repayment plans for Federal Student Loans and Private Student Loans." CFPB CID to Sallie Mae, Inc., Apr. 29, 2014.  These documents are located at the Bates Ranges detailed in Appendix 1(B) to these responses.

- On April 8, 2014, SLM Corporation produced to the Attorney General of Illinois documents responsive to a request for "all . . . scripts, form letters, policies, and training manuals related to advising borrowers of their repayment rights, including but not limited to any type of Loss Mitigation program including the ability for their loans to be placed into forbearance."  CID by the Attorney General of Illinois to SLM Corporation, Dec. 4, 2013.  On May 30, 2014 and August 15, 2014, Navient Solutions produced these documents to CFPB.  These documents are located at the Bates Ranges detailed in Appendix 1(C) to these responses

- On August 8, 2014, SLM Corporation produced to the Attorney General of Illinois documents responsive to a request for "all . . . educational, promotional, and other material provided by Sallie Mae and Third Parties to borrowers who are in default or have indicated an inability to pay on their (a) Government Education and (b) Private Education Loans."  CID by the Attorney General of Illinois to SLM Corporation, Dec. 4, 2013.  On May 30, 2014 and August 15, 2014, Navient Solutions, Inc. produced these documents to CFPB.  These documents are located at the Bates Ranges detailed in Appendix 1(D) to these responses.

Navient Solutions will identify the employees principally responsible for drafting or creating written communications with borrowers about forbearance or income-driven repayment plans.  Navient Solutions will use reasonable search terms to identify and produce final versions of templates used for written communications with borrowers that are related to the claims in this action and

9

were created after April 1, 2014, so as to capture materials, if any, created after the

prior productions.  In the regular course of business, Navient Solutions contracts

with Siegel and Gale, a brand strategy firm, to evaluate certain written

communications to borrowers.  Navient Solutions will produce evaluations

conducted by Siegel & Gale from July 1, 2011 to the present of written

communications with borrowers about forbearance or income-driven repayment

plans.

**DOCUMENT REQUEST NO. 3:  All documents containing, discussing, or reflecting any requirements, instructions, policies, procedures, guidance, or training provided to employees, agents, or subcontractors of Navient Solutions relating to the handling of, or communications with, borrowers who indicate that they are having difficulty paying their student loans, would like to reduce payments on their student loans (including paying zero), or would like to enroll in forbearance or an income-driven repayment plan, including all scripts, flowcharts, and decision trees relating to such interactions or communications.**

**Response:**

In addition to the general objections, Request No. 3 is overbroad and unduly

burdensome to the extent that it seeks (a) documents unrelated to the types of loans

at issue, and (b) "[a]ll" documents, even those "discussing" instructions, policies,

procedures, guidance, or training relating to communications with borrowers who

indicate they are having difficulty paying their student loans, would like to their

reduce payments, or would like to enroll in forbearance or an income-driven

10

repayment plan. Navient Solutions further objects that this Request is duplicative of previous requests for information, and that CFPB is already in possession of documents that appear to be responsive to this Request. Specifically:

- On June 13, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 1(a) of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "All policies and procedures relating to . . . a. Communications to borrowers regarding repayment plans for Federal Student Loans and Private Student Loans; b. Cosigner release; c. Consequences resulting from the death or bankruptcy of a cosigner; d. Quality assurance with respect to call center employees and customer service employees; and e. Collections for delinquent or defaulted student loans." CFPB CID to Sallie Mae, Inc., Apr. 29, 2014. These documents are located at the Bates Range detailed in Appendix 1(E) to these responses.

- On July 11, 2014 and July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 3 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "[a]ll unique versions of any training materials provided to your call center employees and customer service representatives." CFPB CID to Sallie Mae, Inc., Apr. 29, 2014. These documents are located at the Bates Ranges detailed in Appendix 1(F) to these responses.

- On April 8, 2014, SLM Corporation produced to the Attorney General of Illinois its response to a request for a description of "all policies and procedures . . . concerning placing borrowers in forbearance." CID by the Attorney General of Illinois to SLM Corporation, Dec. 4, 2013. On May 30, 2014 and August 15, 2014, Navient Solutions, Inc. produced this response to CFPB. These documents are located at the Bates Ranges detailed in Appendix 1(G) to these responses.

- On April 8, 2014, SLM Corporation produced to the Attorney General of Illinois its response to a request for a description of "all policies and procedures . . . regarding communications with a borrower who is

11

delinquent." CID by the Attorney General of Illinois to SLM Corporation, Dec. 4, 2013. On May 30, 2014 and August 15, 2014, Navient Solutions, Inc. produced this response to CFPB. These documents are located at the Bates Ranges detailed in Appendix 1(H) to these responses.

- On April 8, 2014, SLM Corporation produced to the Attorney General of Illinois its response to a request for a description of "all policies and procedures . . . for dealing with a borrower who has indicated a current inability to make payments in connection with a (a) Government Education Loan or (b) Private Education Loan." CID by the Attorney General of Illinois to SLM Corporation, Dec. 4, 2013. On May 30, 2014 and August 15, 2014, Navient Solutions, Inc. produced this response to CFPB. These documents are located at the Bates Ranges detailed in Appendix 1(I) to these responses.

- On April 8, 2014, SLM Corporation produced to the Attorney General of Illinois documents responsive to a request for "all . . . scripts, form letters, policies, and training manuals related to advising borrowers of their repayment rights, including but not limited to any type of Loss Mitigation program including the ability for their loans to be placed into forbearance." CID by the Attorney General of Illinois to SLM Corporation, Dec. 4, 2013. On May 30, 2014 and August 15, 2014, Navient Solutions, Inc. produced these documents to CFPB. These documents are located at the Bates Ranges detailed in Appendix 1(J) to these responses.

- On August 8, 2014, SLM Corporation produced to the Attorney General of Illinois documents responsive to a request for "all training materials Sallie Mae provides to its employees regarding servicing or Collection of (a) Government Education and (b) Private Education Loans." CID by the Attorney General of Illinois to SLM Corporation, Dec. 4, 2013. On May 30, 2014 and August 15, 2014, Navient Solutions, Inc. produced these documents to CFPB. These documents are located at the Bates Ranges detailed in Appendix 1(K) to these responses.

12

Navient Solutions will identify the employees principally responsible for drafting or creating policies and procedures, call scripts, and training materials related to communications with borrowers who indicate they are having difficulty paying their student loans, would like to reduce their payments, or would like to enroll in forbearance or an income-driven repayment plan.  Navient Solutions will use reasonable search terms to identify and produce such policies and procedures, call scripts, and training materials created after April 1, 2014, so as to capture materials, if any, created after the prior productions.

**DOCUMENT REQUEST NO. 4:  All documents containing, discussing, or reflecting any requirements, instructions, policies, procedures, guidance, or training provided to employees, agents, or subcontractors of Navient Solutions relating to communications with borrowers about forbearance or income-driven repayment plans, including: (a) communications about the potential or actual suitability, unsuitability, appropriateness, inappropriateness, advantages, disadvantages, benefits, or costs of forbearance or any type of income-driven repayment plan for any type, category, or group of borrowers (including borrowers with a particular characteristic such as a temporary or long-term financial hardship), and (b) communications in which Navient Solutions recommends, advises, or suggests that the borrower consider or enroll in forbearance or any type of income-driven repayment plan, including all scripts, flowcharts, and decision trees relating to such communications.**

**Response:**

In addition to the general objections, Request No. 4 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the types of loans at issue, and (b) "[a]ll" documents, even those "discussing" requirements,

13

instructions, policies, procedures, guidance, or training relating to communications

with borrowers about forbearance or income-driven repayment plans. Navient

Solutions further objects to the extent that this Request seeks documents already

encompassed by the response to Request No. 3, and directs CFPB to its response to

that Request.

**DOCUMENT REQUEST NO. 5:  All documents reflecting any discussion, evaluation, or analysis of the adequacy, inadequacy, effectiveness, ineffectiveness, appropriateness, or inappropriateness of any requirements, instructions, policies, procedures, guidance, or training relating to the communications described in subparts (a) and (b) of Request for Documents No. 4, including: (a) all communications or analyses regarding any deficiencies or problems in such requirements, instructions, policies, procedures, guidance, or training, (b) any analysis of the impact on borrowers of such requirements, instructions, policies, procedures, guidance, or training, and (c) all communications or analyses regarding potential improvements in such requirements, instructions, policies, procedures, guidance, or training.**

**Response:**

In addition to the general objections, Request No. 5 is overbroad and unduly

burdensome to the extent that it seeks (a) documents unrelated to the types of loans

at issue, and (b) "[a]ll documents reflecting any discussion" of the adequacy of any

requirements, instructions, policies, procedures, guidance, or training relating to

communications with borrowers about forbearance or income-driven repayment

plans.

14

Navient Solutions will identify the employees principally responsible for evaluating the effectiveness of policies governing communications with borrowers regarding forbearance or income-driven repayment plans.  Navient Solutions will use reasonable search terms to identify and produce analyses of policies, procedures, guidance, call scripts, or training materials regarding forbearance or income-driven repayment plans that were conducted after July 1, 2011.

**DOCUMENT REQUEST NO. 6:  All documents relating to any evaluation, auditing, monitoring, oversight, due diligence, quality assurance, or compliance review (including those conducted by or on behalf of an investor or trustee of a loan securitization trust) relating to communications with or enrollment of borrowers in forbearance or any type of income-driven repayment plan, including any audit or compliance reports, any risk management analyses, all communications relating to any such audit or compliance reports or risk management analyses, and any action plans in response to any audit or compliance reports or risk management analyses.**

**Response:**

In addition to the general objections, Request No. 6 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the types of loans at issue, and (b) "[a]ll documents relating to any evaluation" relating to communications with or enrollment of borrowers in forbearance or income-driven repayment plans.

To the extent this Request calls for communications with regulators during the course of a supervisory exam, Navient Solutions objects on privilege grounds.

15

Navient Solutions will not undertake a search of the files of in-house counsel or

employees involved in those examinations, or produce a log, because it would be

unduly burdensome and not likely to lead to relevant non-privileged materials.

Navient Solutions further objects that this Request is duplicative of previous

requests for information, and that CFPB is already in possession of documents that

appear to be responsive to this Request.  Specifically:

- On June 13, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 1(d) of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "[a]ll policies and procedures relating to . . . Quality assurance with respect to call center employees and customer service employees."  CFPB CID to Sallie Mae, Inc., Apr. 29, 2014.  These documents are located at the Bates Range detailed in Appendix 1(L) of these responses.

- On July 11, 2014 and July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 5 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "[a]ll unique versions of any checklist used by your employees to perform quality assurance or conduct a compliance review of your call center employees or customer service representatives."  CFPB CID to Sallie Mae, Inc., Apr. 29, 2014. These documents are located at the Bates Ranges detailed in Appendix 1(M) of these responses.

- On July 11, 2014 and July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 6 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "[a] copy of each quality assurance report provided to your call center management team." CFPB CID to Sallie Mae, Inc., Apr. 29, 2014.  These documents are located at the Bates Ranges detailed in Appendix 1(N) of these responses.

16

- On July 11, 2014, Navient Solutions, Inc. produced its response to Interrogatory 11 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought a description of "any quality assurance reviews conducted with respect to . . . customer service representatives or call center employees." CFPB CID to Sallie Mae, Inc., Apr. 29, 2014.

Navient Solutions will identify the employees principally responsible for conducting audits, compliance reviews, or quality assurance reviews of communications with borrowers regarding forbearance or income-driven repayment plans.  Navient Solutions will use reasonable search terms to identify and produce audits or compliance reviews conducted after July 1, 2011, and quality assurance reviews conducted after April 30, 2014, so as to capture materials, if any, created after the prior productions.

**DOCUMENT REQUEST NO. 7:  All documents reflecting any discussion, evaluation, or analysis of the potential or actual suitability, unsuitability, appropriateness, inappropriateness, advantages, disadvantages, benefits, or costs of forbearance or any type of income-driven repayment plan for any type, category, or group of borrowers (including borrowers with a particular characteristic such as a temporary or long-term financial hardship), including any quantification or assessment of the costs of forbearance or any type of income-driven repayment plan for any type, category, or group of borrowers (whether on an absolute or relative basis). Communications with individual borrowers are not responsive to this Request.**

**Response:**

In addition to the general objections, Request No. 7 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the types of loans

17

at issue, and (b) "[a]ll documents reflecting any discussion" of the costs to

borrowers of forbearance and income-driven repayment plans.

Navient Solutions will identify the employees principally responsible for

evaluating the costs and benefits to borrowers of forbearance as compared to

income-driven repayment plans as well as the employees likely to receive such

analyses.  Navient Solutions will use reasonable search terms to identify and

produce evaluations—to the extent they exist—undertaken after July 1, 2011.

**DOCUMENT REQUEST NO. 8:  All documents reflecting any discussion, evaluation, analysis, quantification, or calculation of the time, expense, or burden incurred by Navient Solutions or any affiliate of Navient Solutions in enrolling borrowers in or communicating with borrowers about forbearance or income-driven repayment plans, including any cost savings resulting from enrolling borrowers in or communicating with borrowers about any particular type of repayment option (such as forbearance).**

**Response:**

In addition to the general objections, Request No. 8 is overbroad and unduly

burdensome to the extent that it seeks (a) documents unrelated to the claims in this

action and/or the types of loans at issue, and (b) "[a]ll documents reflecting any

discussion" of the time, expense, or burden incurred by enrolling borrowers in or

communicating with borrowers about forbearance or income-driven repayment

plans.

18

To the extent this Request calls for internal analyses conducted at the direction of counsel regarding the costs of any settlement demands by CFPB or certain state Attorneys General, Navient Solutions objects on privilege grounds. Navient Solutions will not undertake a search of the files of in-house counsel or those directed by counsel, or produce a log, because it would be unduly burdensome and not likely to lead to relevant non-duplicative, non-privileged materials.

Navient Solutions will produce year-end profit and loss reports from July 1, 2011 to the present for specific activities related to enrolling borrowers in forbearance and income-driven repayment plans.

**DOCUMENT REQUEST NO. 9**:  **All documents reflecting complaints, disputes, notices of error, or requests for escalation relating to any communication of the type described in subpart (a) or subpart (b) of Request for Documents No. 4.**

**Response**:

In addition to the general objections, Request No. 9 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the types of loans at issue, and (b) "[a]ll documents reflecting complaints" that relate to "any" communication.  Navient Solutions further objects that this Request is duplicative

19

of previous requests for information, and that CFPB is already in possession of

documents that appear to be responsive to this Request.  Specifically:

- On July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 4 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "[a] copy of all reports and presentations documenting complaints received by you about your servicing of student loans."  CFPB CID to Sallie Mae, Inc., Apr. 29, 2014.  These documents are located at the Bates Range detailed in Appendix 1(O) to these responses.

- On July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 7 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "[a]ll documents referencing complaints about your customer service representatives or call center employees."  CFPB CID to Sallie Mae, Inc., Apr. 29, 2014.  These documents are located at the Bates Ranges detailed in Appendix 1(P) to these responses.

Navient Solutions states that it maintains a computer database in which

customer complaints are logged.  Navient Solutions will generate a report from that

system that describes complaints related to forbearance and income-driven

repayment plans that were received after July 1, 2011.

**DOCUMENT REQUEST NO. 10:  An image of each page of any consumer-facing website of Navient Solutions or Navient Corporation that contains any information about repayment options such as forbearance and income-driven repayment plans, including all versions of each such page during the time period set forth in Instruction No. 6, and documents sufficient to show how**

**each such page is connected (directly or indirectly) to each other page and to the homepage of the Navient website.**

**<u>Response</u>:**

In addition to the general objections, Request No. 10 is overbroad and unduly burdensome to the extent it seeks historical webpages that are located on legacy systems and no longer in the possession, custody, or control of Navient Solutions.  Navient Solutions will produce current versions and historical screenshots of each page of its consumer-facing public website and pages accessible by borrower log-in that contain information about forbearance and income-driven repayment plans.  To the extent they are available, Navient Solutions will produce webpage organizational charts that depict how webpages are connected.

**<u>DOCUMENT REQUEST NO. 11</u>:  Documents sufficient to show all compensation metrics or policies for any employee, agent, or subcontractor of Navient Solutions responsible for communications with or enrollment of borrowers in forbearance or income-driven repayment plans, including any incentive compensation structure applicable to any such employees, agents, or subcontractors.**

**<u>Response</u>:**

In addition to the general objections, Request No. 11 is overbroad and unduly burdensome to the extent that it seeks documents unrelated to the types of loans at issue.  Navient Solutions further states that Request No. 11 is duplicative

of previous requests for information, and that CFPB is already in possession of

documents that appear to be responsive to this Request.  Specifically:

- On April 8, 2014, SLM Corporation produced to the Attorney General of Illinois documents responsive to a request for "all . . . policies regarding compensation of employees, supervisors, and managers charged with servicing and/or Collecting (a) Government Education and (b) Private Education Loans."  CID by the Attorney General of Illinois to SLM Corporation, Dec. 4, 2013.  On May 30, 2014 and August 15, 2014, Navient Solutions, Inc. produced these documents to CFPB.  These documents are located at the Bates Ranges detailed in Appendix 1(Q) to these responses.

- On August 8, 2014, SLM Corporation produced to the Attorney General of Illinois its response to a request for a description of  "any and all remuneration or compensation . . . provide[d] to  . . . employees in connection with servicing (a) Government Education Loan products and (b) Private Education Loan products."  CID by the Attorney General of Illinois to SLM Corporation, Dec. 4, 2013.  On May 30, 2014 and August 15, 2014, Navient Solutions, Inc. produced these documents to CFPB.  These documents are located at Bates Ranges detailed in Appendix 1(R) to these responses.

Navient Solutions will use reasonable search terms to identify and produce

compensation policies and metrics created after April 1, 2014 for Navient

Solutions employees, agents, and subcontractors responsible for communicating

with or enrolling borrowers in forbearance or income-driven repayment plans, so

as to capture materials, if any, created after the prior productions.

**DOCUMENT REQUEST NO. 12:  All documents discussing, describing, or recording any infraction, error, non-compliance, or violation by any employee, agent, or subcontractor of Navient Solutions relating to**

22

**communications with borrowers about, or enrollment of borrowers in, forbearance or any income-driven repayment plan, including any disciplinary records.**

**Response**:

In addition to the general objections, Request No. 12 is overbroad and unduly burdensome to the extent that it seeks documents unrelated to the types of loans at issue, and because its use of the undefined terms "error" and "non-compliance" fails to identify with reasonable particularity the type of documents sought. Navient Solutions will construe the request to seek records of violations contained in the official disciplinary files of employees, agents, and subcontractors. Navient Solutions will undertake a reasonable search of documents in those files and produce: (1) disciplinary records related to communications with borrowers about, or enrollment of borrowers in, forbearance or any income-driven repayment plan, and (2) the audit and compliance reports produced in response to Request No. 6.

**DOCUMENT REQUEST NO. 13:  For every version of every notice, disclosure, or other written communication used by Navient Solutions relating to a borrower's need to renew or recertify enrollment in any income-driven repayment plan: (a) one example of the notice, disclosure, or written communication in the format as it was sent to a consumer (including any attachments to the notice, disclosure, or written communication), (b) all drafts of the notice, disclosure, or written communication, and (c) all communications concerning the drafting of the notice, disclosure, or written communication, and (d) all documents reflecting any testing or evaluation**

23

**(such as through a focus group) of the notice, disclosure, or written communication, including any drafts. For part (a) of this Request, a notice, disclosure, or written communication that is identical to another notice, disclosure, or written communication but for information that is specific to the borrower shall not be considered a separate version of the document.**

**Response:**

In addition to the general objections, Request No. 13 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action, which concern only "pre-December 2012 notices" that included specific language, *see* Compl. ¶ 64, and "electronic communications" sent between mid-2010 and March 2015, *see* Compl. ¶¶ 66-68, (b) "all drafts of [each] notice, disclosure, or written communication," and (c) "all communications concerning the drafting of [each] notice, disclosure, or written communication."  Navient Solutions further objects that this Request is duplicative of previous requests for information, and that CFPB is already in possession of documents that appear to be responsive to this Request.  Specifically:

- On June 27, 2014 and July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 11 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "Each unique version of form or template documents and advertisements used to communicate information to a student loan borrower or cosigner about repayment plans for Federal Student Loans and Private Student Loans." CFPB CID to Sallie Mae, Inc., Apr. 29, 2014.  These documents are located at the Bates Ranges detailed in Appendix 1(S) to these responses.

24

- On September 25, 2015, Navient Solutions, Inc. responded to the CFPB's September 18, 2015 email asking Navient Solutions, Inc. to identify the subject lines of its income-driven repayment plan renewal emails sent to borrowers.  In addition to its response, Navient Solutions, Inc. produced two examples of income-driven repayment plan renewal emails.  These documents are located at the Bates Range detailed in Appendix 1(T) to these responses.

Navient Solutions will produce one example of each notice referred to in paragraph 64 of the Complaint, created between June 1, 2010 and December 1, 2012, and not previously produced.  Navient Solutions also will produce one example of each electronic communication referred to in paragraphs 66–68 of the Complaint and created between June 1, 2014 and March 30, 2015, so as to capture materials, if any, created after the prior productions.  Navient Solutions will produce analyses of notices and/or disclosures regarding renewal and/or recertification that were conducted between June 1, 2010 and March 30, 2015.

**DOCUMENT REQUEST NO. 14:  All documents reflecting any discussion, evaluation, or analysis of the adequacy, inadequacy, effectiveness, ineffectiveness, appropriateness, or inappropriateness of any notice, disclosure, or written communication produced in response to Request for Documents No. 13.**

**Response:**

In addition to the general objections, Request No. 14 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action, which concern only "pre-December 2012 notices" that included

25

specific language, *see* Compl. ¶ 64, and "electronic communications" sent between mid-2010 and March 2015, *see* Compl. ¶¶ 66-68, and (b) "[a]ll documents reflecting any discussion" of the adequacy of the notices and written communications.  Navient Solutions further objects to the extent that this Request seeks documents already encompassed by the response to Request No. 13, and directs CFPB to its response to that Request.

**DOCUMENT REQUEST NO. 15:  All documents relating to the number, percentage, or rate of borrowers with federal loans serviced by Navient Solutions who were (or were not) opening, clicking links within, or otherwise responding to any email concerning renewal or recertification of a borrower's enrollment in any income-driven repayment plan, including any analysis, discussion, explanation, or evaluation of this data.**

**Response:**

In addition to the general objections, Request No. 15 is vague, overbroad, and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and/or the types of loans at issue, and (b) does not define with reasonable particularity how borrowers could have "otherwise respond[ed]" to an email concerning renewal or recertification.  Navient Solutions will identify the custodians principally responsible for analyzing the rates at which borrowers opened and clicked links within emails concerning the renewal of income-driven repayment plans during the relevant timeframe.  Navient Solutions will conduct a

reasonable search for and produce analyses of the number or percentage of borrowers opening and/or clicking links within such emails that were conducted between June 1, 2010 and March 30, 2015.

**DOCUMENT REQUEST NO. 16:  All documents reflecting the number, percentage, or rate of borrowers with federal loans serviced by Navient Solutions who timely renewed or recertified their enrollment in any income-driven repayment plan or who did not timely renew or recertify their enrollment in any income-driven repayment plan, including any analysis, discussion, explanation, or evaluation of this data.**

**Response:**

In addition to the general objections, Request No. 16 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and/or the types of loans at issue, and (b) "[a]ll documents reflecting" the number or percentage of borrowers who did or did not timely renew their enrollment in any income-driven repayment plan.  Navient Solutions further objects that this Request is duplicative of previous requests for information, and that CFPB is already in possession of documents that appear to be responsive to this Request.  Specifically:

- On August 7, 2015 and September 10, 2015, Navient Solutions, Inc. produced documents responsive to Written Report Request 11 of the July 7, 2015 CID issued by CFPB to Navient Solutions, Inc., which sought, "[f]or the time period between January 1, 2010 and March 31, 2015, in an Excel spreadsheet . . . a. The total number of borrowers with at least one subsidized Federal Student Loan that is within the

first three years of enrollment in IBR or PAYE who meet all of the following criteria: i. Had a $0 monthly payment amount for the subsidized Federal Student Loan(s) enrolled in IBR or PAYE; ii. Failed to recertify income information under IBR or PAYE for at least one billing period, causing the payment amount for the enrolled loan(s) to change from $0 to the permanent standard payment for at least one billing period; iii. Either enrolled in voluntary forbearance or had their delinquency cured by retroactive application of administrative forbearance following the failure to recertify income information under IBR or PAYE; and iv. Subsequently recertified income information under IBR, and returned to a $0 monthly payment amount for the loan(s) enrolled in IBR or PAYE." Navient Solutions, Inc., July 7, 2015.  These documents are located at the Bates Ranges detailed in Appendix 1(U) to these responses.

Navient Solutions will identify the custodians principally responsible for analyzing or receiving data related to whether borrowers renew their enrollment in income-driven repayment plans during the relevant timeframe.  Navient Solutions will conduct a reasonable search for and produce analyses of the number or percentage of borrowers who renewed or failed to renew their enrollment in such plans between June 1, 2010 and March 30, 2015, to the extent any exist.

**DOCUMENT REQUEST NO. 17:  All documents reflecting the number, percentage, or rate of borrowers with federal loans serviced by Navient Solutions enrolled in any income-driven repayment plan who submitted an application to renew or recertify their enrollment in any income-driven repayment plan that was initially deemed incomplete or inaccurate but was subsequently made complete and accurate before the renewal deadline, who submitted an application to renew or recertify their enrollment in any income-driven repayment plan that was initially deemed incomplete or inaccurate but was not subsequently made complete and accurate before the renewal deadline, or who submitted an application to renew or recertify their**

28

enrollment in any income-driven repayment plan that was initially deemed complete and accurate, including any analysis, discussion, explanation, or evaluation of this data.

**Response:**

In addition to the general objections, Request No. 17 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and/or the types of loans at issue, and (b) "[a]ll documents reflecting" the number or percentage of borrowers who "did or did not" submit renewal forms. Navient Solutions further objects to the extent that this Request seeks documents already encompassed by the response to Request No. 16, and directs CFPB to its response to that Request.

**DOCUMENT REQUEST NO. 18:** **All documents reflecting any discussion, evaluation, or analysis of errors or problems in the processing, application, or allocation of payments for student loans that were happening on a repeated, recurring, or non-isolated basis or that had been the subject of complaints from more than one consumer, including any discussion, evaluation, or analysis of the adequacy, inadequacy, effectiveness, ineffectiveness, appropriateness, or inappropriateness of any policies, procedures, practices of Navient Solutions to prevent or reduce such errors or problems.**

**Response:**

In addition to the general objections, Request No. 18 is overbroad and unduly burdensome to the extent that it seeks documents unrelated to the claims in this action and/or the types of loans at issue. CFPB has failed to identify any

29

specific payment processing errors underlying its claim that such errors were unfair to borrowers.  *See* Compl. ¶¶ 97-112.  Navient Solutions receives complaints regarding payment processing errors on a range of topics.  CFPB's request that Navient Solutions search for and produce documents related to payment processing errors without identifying the errors at issue is unreasonable.  Navient Solutions further objects that this Request is overbroad and unduly burdensome because it seeks "[a]ll documents reflecting" discussion, evaluation, and analysis of undefined payment processing errors.  Finally, Navient Solutions objects that this Request is duplicative of previous requests for information, and that CFPB is already in possession of documents that appear to be responsive to this Request. Specifically:

- On October 25, 2013 and December 20, 2013, Sallie Mae, Inc. produced documents responsive to Document Request 6 of the September 5, 2013 CID issued by CFPB to Sallie Mae, Inc., which sought "All customer complaints, whether received directly from the customer or through an intermediary, relating to your student loan payment processing, including, but not limited to, how overpayments, partial payments, and underpayments were applied to loans."  These documents are located at the Bates Ranges detailed in Appendix 1(V) to these responses.

- On July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 4 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "[a] copy of all reports and presentations documenting complaints received by you about your servicing of student loans."  CFPB CID to Sallie Mae, Inc., Apr. 29,

2014.  These documents are located at the Bates Range detailed in Appendix 1(W) of these responses.

**DOCUMENT REQUEST NO. 19:  All documents containing, discussing, or reflecting any requirements, instructions, policies, procedures, guidance, or training provided to employees, agents, or subcontractors of Navient Solutions relating to any requirement that a borrower demonstrate a certain payment history (such as making a certain number of consecutive, on-time payments) to become eligible for cosigner release for student loans.**

**Response:**

In addition to the general objections, Request No. 19 is unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and/or the types of loans at issue; and (b) "[a]ll documents," even those "discussing" requirements, instructions, policies, procedures, guidance, or training relating to communications regarding the payment history a borrower must demonstrate to be eligible for cosigner release.  Navient Solutions further objects that this Request is duplicative of previous requests for information, and that CFPB is already in possession of documents that appear to be responsive to this Request.  Specifically:

- On June 13, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 1 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "All policies and procedures relating to . . . a. Communications to borrowers regarding repayment plans for Federal Student Loans and Private Student Loans; b. Cosigner release; c. Consequences resulting from the death or bankruptcy of a cosigner; d. Quality assurance with respect to call center employees and customer service employees; and e. Collections for delinquent or defaulted student loans."  CFPB CID to Sallie Mae, Inc., Apr. 29, 2014.

31

These documents are located at the Bates Range detailed in Appendix 1(X) to these responses.

- On July 11, 2014 and July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 3 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "[a]ll unique versions of any training materials provided to your call center employees and customer service representatives." CFPB CID to Sallie Mae, Inc., Apr. 29, 2014. These documents are located at the Bates Range detailed in Appendix 1(Y) to these responses.

Navient Solutions will identify the custodians principally responsible for drafting or creating policies and procedures, call scripts, and training materials related to the payment history a borrower must demonstrate to be eligible for cosigner release. Navient Solutions will undertake a reasonable search for and produce any such policies and procedures, call scripts, and training materials created between June 1, 2014 and July 1, 2015 so as to capture materials, if any, created after the prior productions.

**DOCUMENT REQUEST NO. 20:** **All documents reflecting complaints, disputes, notices of error, or requests for escalation relating to any requirement that a borrower demonstrate a certain payment history (such as making a certain number of consecutive, on-time payments) to become eligible for cosigner release for student loans.**

**Response:**

In addition to the general objections, Request No. 20 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims

32

in this action and/or the types of loans at issue, and (b) "[a]ll documents reflecting" borrower complaints and disputes relating to any requirement that a borrower demonstrate a certain payment history to become eligible for cosigner release. Navient Solutions further objects that this Request is duplicative of previous requests for information, and that CFPB is already in possession of documents that appear to be responsive to this Request.  Specifically:

- On July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 7 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "[a]ll documents referencing complaints about your customer service representatives or call center employees."  CFPB CID to Sallie Mae, Inc., Apr. 29, 2014.  These documents are located at the Bates Ranges detailed in Appendix 1(Z) to these responses.

- On July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 4 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "[a] copy of all reports and presentations documenting complaints received by you about your servicing of student loans."  CFPB CID to Sallie Mae, Inc., Apr. 29, 2014.  These documents are located at the Bates Range detailed in Appendix 1(AA) of these responses.

- On July 11, 2014 and July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 6 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "[a] copy of each quality assurance report provided to your call center management team." CFPB CID to Sallie Mae, Inc., Apr. 29, 2014.  These documents are located at the Bates Ranges detailed in Appendix 1(BB) of these responses.

33

- On July 30, 2014, Navient Solutions, Inc. produced documents responsive to Document Request 8 of the April 29, 2014 CID issued by CFPB to Sallie Mae, Inc., which sought "[c]opies of all customer complaints, including, but not limited to, complaints received directly from a customer, indirectly through a governmental or other regulatory authority or the Better Business Bureau, or addressed to a Company executive, related to . . . [a] request to release the cosigner from obligations under the student loan borrower's loan." CFPB CID to Sallie Mae, Inc., Apr. 29, 2014. These documents are located at the Bates Range detailed in Appendix 1(CC) of these responses.

Navient Solutions states that it maintains a computer database in which customer complaints are logged. Navient Solutions will generate a report from that system that describes complaints related to eligibility for cosigner release that were received between July 1, 2014 and July 1, 2015, so as to capture customer complaints received after the prior productions.

**DOCUMENT REQUEST NO. 21:** **All documents containing any discussion or analysis of the meaning or interpretation of any requirement that a borrower make a certain number of consecutive, on-time payments to become eligible for cosigner release for student loans.**

**Response:**

In addition to the general objections, Request No. 21 is unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and/or the types of loans at issue, and (b) "all" documents, even those "containing any discussion" of the number of consecutive, on-time payments a borrower must make to become eligible for cosigner release. Navient Solutions further objects to

34

the extent that this Request seeks documents already encompassed by the response to Request No. 19, and directs CFPB to its response to that Request.

**DOCUMENT REQUEST NO. 22:  All documents describing or referring to two or more on-time principal and interest payments that were not made in consecutive months as constituting "consecutive" payments (regardless of whether the document specifically relates to any cosigner release requirement).**

**Response:**

In addition to the general objections, Request No. 22 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and/or the types of loans at issue, and (b) "[a]ll documents describing or referring to" two or more on-time principal and interest payments that were not made in consecutive months as constituting "consecutive payments," regardless of whether such documents reflect any actual policy maintained by Navient Solutions.

Navient Solutions will identify the custodians principally responsible for drafting or creating requirements, instructions, policies, procedures, guidance, or training materials relating to borrower benefits during the relevant timeframe. Navient Solutions will conduct a reasonable search for and produce any such instructions, policies, procedures, guidance, or training materials created between January 1, 2010 and July 1, 2015, to the extent they define as "consecutive" two or

more on-time principal and interest payments, even if the payments are not made in consecutive months.

**DOCUMENT REQUEST NO. 23:  All documents containing, discussing, or reflecting any requirements, instructions, policies, procedures, guidance, or training provided to employees, agents, or subcontractors of Navient Solutions relating to credit reporting (i.e., the furnishing of information to credit reporting agencies) for borrowers whose federal student loans are discharged due to disability.**

**Response:**

In addition to the general objections, Request No. 23 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and/or the types of loans at issue, including documents unrelated to use of the AL ("Assigned to Government") code for borrowers whose federal student loans are discharged due to disability, and (b) "[a]ll documents," even those "discussing" requirements, instructions, policies, procedures, guidance, or training materials.

Navient Solutions states that on or about May 17, 2013, Navient Solutions discovered an issue regarding its use of the AL code to report a loan that had been discharged due to the borrower's total and permanent disability.  Navient Solutions will identify the custodians principally involved in discussions regarding Navient

36

Solutions' use of the AL Code after May 17, 2013 and will produce related

documents.

**DOCUMENT REQUEST NO. 24:  All documents relating to the use of the "AL—Assigned to Government" code (or any variation thereof, including "AL" or "Assigned to Government") in furnishing information to credit reporting agencies, including (a) all documents containing, discussing, or reflecting any requirements, instructions, policies, procedures, guidance, or training relating to the use of the code in furnishing information to credit reporting agencies, (b) all documents reflecting any awareness, discussion, or analysis of the circumstances in which it is appropriate or inappropriate to use the code in furnishing information to credit reporting agencies, and (c) all documents reflecting any discussion, analysis, or quantification of the impact on borrowers of the use of the code in furnishing information to credit reporting agencies.**

**Response:**

In addition to the general objections, Request No. 24 is overbroad and

unduly burdensome to the extent that it seeks documents unrelated to the claims in

this action and/or the types of loans at issue.  Navient Solutions further objects to

the extent that this Request seeks documents already encompassed by the response

to Request No. 23, and directs CFPB to its response to that Request.

**DOCUMENT REQUEST NO. 25:  All documents reflecting complaints, disputes, notices of error, or requests for escalation relating to credit reporting for borrowers whose federal loans are discharged due to disability, including any record of how such complaints or disputes were resolved and**

**any communications with any credit reporting agency about any such complaints or disputes.**

**<u>Response</u>:**

In addition to the general objections, Request No. 25 is overbroad and unduly burdensome to the extent that it seeks (a) documents unrelated to the claims in this action and/or the types of loans at issue, and (b) "[a]ll documents reflecting" borrower complaints, disputes, error notices, or escalation requests relating to credit reporting for borrowers whose federal loans are discharged due to disability, including documents not related to use of the AL code.

Navient Solutions states that it maintains a computer database in which customer complaints are logged. Navient Solutions will generate a report from that system that describes substantiated complaints related to use of the AL code.

**<u>DOCUMENT REQUEST NO. 26</u>:  All documents on which you rely to support any defense that you are asserting or will assert in this lawsuit.**

**<u>Response</u>:**

Navient Solutions objects to Request No. 26 as premature because it has not yet answered the Complaint or pled affirmative defenses. Navient Solutions will produce documents on which it intends to rely for summary judgment or trial.

Dated:  August 21, 2017          Respectfully submitted,

/s/ Matthew T. Martens
Matthew T. Martens (DC 1019099) (*pro hac vice*)
Jonathan E. Paikin (DC 466445) (*pro hac vice*)
Daniel P. Kearney (DC 977148) (*pro hac vice*)
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
   Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
matthew.martens@wilmerhale.com
jonathan.paikin@wilmerhale.com
daniel.kearney@wilmerhale.com
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

Daniel T. Brier (PA 52348)
Donna A. Walsh (PA 74833)
Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
dbrier@mbklaw.com
dwalsh@mbklaw.com
Tel: 570-342-6100
Fax: 570-342-6147

*Counsel for Navient Corporation, Navient
Solutions, LLC, and Navient Solutions Credit
Recovery, Inc.*

39

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2017, I served the foregoing Objections and Responses to Plaintiff's First Set of Requests for Production to CFPB by email to the following counsel for Plaintiff:

Nicholas Jabbour:  Nicholas.Jabbour@cfpb.gov
Ebony Sunala Johnson:  Ebony.Johnson@cfpb.gov
Lawrence DeMille-Wagman:  Lawrence.Wagman@cfpb.gov
Andrea Matthews:  Andrea.Matthews@cfpb.gov
Thomas H. Kim:  Thomas.Kim@cfpb.gov

Mr. Jabbour, on behalf of Plaintiff, previously consented to electronic service.


/s/ Karin Dryhurst
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

*Counsel for Navient Corporation, Navient Solutions, LLC, and Navient Solutions Credit Recovery, Inc.*

## Appendix 1

**(A)**

| Bates Begin | Bates End |
|---|---|
| SLMA-005-0000001 | SLMA-005-0000100 |

**(B)**

| Bates Begin | Bates End |
|---|---|
| NSI-005-0000754 | NSI-005-0009511 |
| NSI-010-0013393 | NSI-010-0013437 |
| NSI-011-0000001 | NSI-011-0004193 |

**(C)**

| Bates Begin | Bates End |
|---|---|
| NSI-001-0004407 | NSI-001-0018519 |
| NSI-016-0018154 | NSI-016-0064412 |

**(D)**

| Bates Begin | Bates End |
|---|---|
| NSI-001-0018849 | NSI-001-0018849 |
| NSI-016-0055313 | NSI-016-0055314 |
| NSI-016-0063674 | NSI-016-0063675 |

**(E)**

| Bates Begin | Bates End |
|---|---|
| NSI-002-0000001 | NSI-002-0179951 |

**(F)**

| Bates Begin | Bates End |
|---|---|
| NSI-007-0000001 | NSI-007-0062297 |
| NSI-008-0000001 | NSI-008-0005969 |
| NSI-010-0000001 | NSI-010-0007870 |

| | |
|---|---|
| NSI-014-0000001 | NSI-014-0001630 |

**(G)**

| Bates Begin | Bates End |
|---|---|
| NSI-001-0014644 | NSI-001-0014648 |
| NSI-001-0015569 | NSI-001-0015576 |
| NSI-001-0015577 | NSI-001-0015584 |
| NSI-001-0015942 | NSI-001-0015943 |

**(H)**

| Bates Begin | Bates End |
|---|---|
| NSI-001-0004558 | NSI-001-0004560 |
| NSI-001-0006490 | NSI-001-0006491 |
| NSI-001-0006497 | NSI-001-0006499 |
| NSI-001-0006617 | NSI-001-0006622 |
| NSI-001-0006664 | NSI-001-0006668 |
| NSI-001-0013592 | NSI-001-0013593 |
| NSI-001-0013596 | NSI-001-0013599 |
| NSI-001-0013600 | NSI-001-0013604 |
| NSI-001-0014542 | NSI-001-0014546 |
| NSI-001-0015530 | NSI-001-0015536 |
| NSI-001-0017164 | NSI-001-0018023 |

**(I)**

| Bates Begin | Bates End |
|---|---|
| NSI-001-0011222 | NSI-001-0011225 |
| NSI-001-0014817 | NSI-001-0014818 |
| NSI-001-0015926 | NSI-001-0015929 |
| NSI-001-0015942 | NSI-001-0015943 |
| NSI-001-0017164 | NSI-001-0018023 |

**(J)**

| Bates Begin | Bates End |
|---|---|

| | |
|---|---|
| NSI-001-0004407 | NSI-001-0018519 |
| NSI-016-0018154 | NSI-016-0064412 |

**(K)**

| Bates Begin | Bates End |
|---|---|
| NSI-016-0000426 | NSI-016-0000427 |
| NSI-016-0005083 | NSI-016-0005122 |
| NSI-016-0005126 | NSI-016-0005126 |
| NSI-016-0005129 | NSI-016-0005129 |
| NSI-016-0008336 | NSI-016-0008336 |
| NSI-016-0008399 | NSI-016-0011122 |
| NSI-016-0011124 | NSI-016-0011125 |
| NSI-016-0011129 | NSI-016-0011218 |
| NSI-016-0011220 | NSI-016-0011394 |
| NSI-016-0011400 | NSI-016-0012399 |
| NSI-016-0012505 | NSI-016-0012775 |
| NSI-016-0012779 | NSI-016-0012842 |
| NSI-016-0012847 | NSI-016-0013040 |
| NSI-016-0013043 | NSI-016-0013046 |
| NSI-016-0013056 | NSI-016-0013080 |
| NSI-016-0013086 | NSI-016-0014783 |
| NSI-016-0014791 | NSI-016-0015054 |
| NSI-016-0015057 | NSI-016-0015185 |
| NSI-016-0015193 | NSI-016-0016698 |
| NSI-016-0016700 | NSI-016-0016958 |
| NSI-016-0016960 | NSI-016-0017033 |
| NSI-016-0017055 | NSI-016-0017400 |
| NSI-016-0017403 | NSI-016-0017500 |
| NSI-016-0017504 | NSI-016-0017518 |
| NSI-016-0017576 | NSI-016-0017667 |
| NSI-016-0017669 | NSI-016-0017685 |
| NSI-016-0017689 | NSI-016-0017718 |
| NSI-016-0017732 | NSI-016-0017737 |
| NSI-016-0017739 | NSI-016-0017742 |
| NSI-016-0017744 | NSI-016-0017746 |
| NSI-016-0017820 | NSI-016-0017832 |

| | |
|---|---|
| NSI-016-0017899 | NSI-016-0017920 |
| NSI-016-0017942 | NSI-016-0018158 |
| NSI-016-0018163 | NSI-016-0018599 |
| NSI-016-0018634 | NSI-016-0055312 |
| NSI-016-0062919 | NSI-016-0062954 |
| NSI-016-0063107 | NSI-016-0063139 |

**(L)**

| Bates Begin | Bates End |
|---|---|
| NSI-002-0000001 | NSI-002-0179951 |

**(M)**

| Bates Begin | Bates End |
|---|---|
| NSI-007-0062298 | NSI-007-0062321 |
| NSI-010-0010016 | NSI-010-0013012 |

**(N)**

| Bates Begin | Bates End |
|---|---|
| NSI-007-0062322 | NSI-007-0071458 |
| NSI-010-0010016 | NSI-010-0013012 |
| NSI-014-0002728 | NSI-014-0003399 |

**(O)**

| Bates Begin | Bates End |
|---|---|
| NSI-014-0001631 | NSI-014-0003399 |

**(P)**

| Bates Begin | Bates End |
|---|---|
| NSI-012-0000001 | NSI-012-0007982 |
| NSI-013-0000001 | NSI-013-0038459 |

**(Q)**

| Bates Begin | Bates End |
|---|---|
| NSI-001-0000786 | NSI-001-0002205 |
| NSI-001-0002267 | NSI-001-0004082 |
| NSI-001-0005166 | NSI-001-0005190 |
| NSI-001-0005388 | NSI-001-0005390 |
| NSI-001-0006395 | NSI-001-0006414 |
| NSI-001-0006711 | NSI-001-0006713 |
| NSI-001-0012213 | NSI-001-0012241 |
| NSI-001-0012244 | NSI-001-0012288 |
| NSI-001-0012297 | NSI-001-0012310 |
| NSI-001-0012626 | NSI-001-0012631 |
| NSI-001-0013346 | NSI-001-0013370 |
| NSI-001-0013554 | NSI-001-0013591 |
| NSI-001-0013600 | NSI-001-0013616 |
| NSI-001-0013837 | NSI-001-0013855 |
| NSI-001-0014324 | NSI-001-0014349 |
| NSI-001-0014537 | NSI-001-0014551 |
| NSI-001-0014562 | NSI-001-0014594 |
| NSI-016-0016699 | NSI-016-0016699 |
| NSI-016-0017034 | NSI-016-0017043 |
| NSI-016-0063195 | NSI-016-0063224 |
| NSI-016-0063907 | NSI-016-0063916 |

**(R)**

| Bates Begin | Bates End |
|---|---|
| NSI-001-0000786 | NSI-001-0000794 |
| NSI-001-0000943 | NSI-001-0000954 |
| NSI-001-0000990 | NSI-001-0001003 |
| NSI-001-0001866 | NSI-001-0001877 |
| NSI-001-0001878 | NSI-001-0001879 |
| NSI-001-0003014 | NSI-001-0003030 |
| NSI-001-0004021 | NSI-001-0004032 |

**(S)**

| Bates Begin | Bates End |
|---|---|

| NSI-005-0000754 | NSI-005-0009511 |
| NSI-010-0013393 | NSI-010-0013437 |
| NSI-011-0000001 | NSI-0004193 |

**(T)**

| Bates Begin | Bates End |
| NSI-030-0000001 | NSI-030-0000003 |

**(U)**

| Bates Begin | Bates End |
| NSI-029-0000001 | NSI-029-0000002 |
| NSI-026-0000001 | NSI-026-0000002 |

**(V)**

| Bates Begin | Bates End |
| SLMA-005-0000101 | SLMA-005-0000101 |
| SLMA-012-0000001 | SLMA-012-0000822 |

**(W)**

| Bates Begin | Bates End |
| NSI-014-0001631 | NSI-014-0003399 |

**(X)**

| Bates Begin | Bates End |
| NSI-002-0000001 | NSI-002-0179951 |

**(Y)**

| Bates Begin | Bates End |
| NSI-010-0002973 | NSI-010-0007870 |

**(Z)**

| Bates Begin | Bates End |
| --- | --- |
| NSI-012-0000001 | NSI-012-0007982 |
| NSI-013-0000001 | NSI-013-0038459 |

**(AA)**

| Bates Begin | Bates End |
| --- | --- |
| NSI-014-0001631 | NSI-014-0003399 |

**(BB)**

| Bates Begin | Bates End |
| --- | --- |
| NSI-007-0062322 | NSI-007-0071458 |
| NSI-010-0010016 | NSI-010-0013012 |
| NSI-014-0002728 | NSI-014-0003399 |

**(CC)**

| Bates Begin | Bates End |
| --- | --- |
| NSI-013-0000001 | NSI-013-0003845 |

# EXHIBIT 6



1700 G Street NW, Washington, DC 20552

September 18, 2017

**Via Email**

Matthew T. Martens: matthew.martens@wilmerhale.com
Jonathan Paikin: jonathan.paikin@wilmerhale.com
Daniel P. Kearney, Jr.: Daniel.kearney@wilmerhale.com
Karin Dryhurst: Karin.dryhurst@wilmerhale.com
Gideon Hart: Gideon.Hart@wilmerhale.com
Donna A. Walsh: dwalsh@mbklaw.com
Daniel Brier: dbrier@mbklaw.com

      Re:    *Consumer Financial Protection Bureau v. Navient Corp., et al.*,
               Case No. 3:17-CV-00101-RDM

Dear Counsel:

On behalf of the Consumer Financial Protection Bureau (Bureau), I write to begin the process of meeting and conferring with respect to serious deficiencies we have identified in the responses by each of the three Defendants to the requests for production that we served. In addition, I write to respond to your letter dated August 31, 2017 concerning our responses to the interrogatories and requests for production served by each of the three Defendants.

## I.    ISSUES REGARDING DEFENDANTS' RESPONSES TO THE BUREAU'S DISCOVERY

### A.    Failures to comply with requirements of Fed. R. Civ. P. 34

Before elaborating on specific issues with Defendants' responses to the Bureau's discovery, it is noteworthy that Defendants have approached their responses in ways that are plainly not allowed by the Federal Rules of Civil Procedure:

- Defendants assert a multitude of boilerplate "general objections," including burdensomeness, vagueness, and ambiguity. The Federal Rules do not allow general objections (except for privilege), requiring that, "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B); *Fischer v. Forrest*, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) (Peck, M.J.). Thus, courts have

made clear that general objections (except privilege) are disallowed and will not be deemed to have been properly asserted with respect to any specific discovery request. *See, e.g., Fischer*, 2017 WL 773694, at *3; *Sagness v. Duplechin*, 2017 WL 1183988, at *2 (D. Neb. Mar. 29, 2017); *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 2017 WL 976626 (N.D. Iowa Mar. 13, 2017); *Cafaro v. Zois*, 2016 WL 903307, at *1 (S.D. Fla. Mar. 9, 2016) ("Boilerplate objections may also border on a frivolous response to discovery requests.").

- Defendants have not complied with the requirement in the Federal Rules to specify a date certain by which documents will be produced. Fed. R. Civ. P. 34(b)(2)(B) (requiring that production "be completed no later than the time for inspection specified in the request or another reasonable time specified in the response"). While we understand that unexpected difficulties can arise that may necessitate extensions, and are willing to work with Defendants should those difficulties arise, the Rules require Defendants to provide a date by which they believe production will occur.

- In response to nearly every single document request, Defendants have asserted that the request is overbroad and unduly burdensome, without any explanation or elaboration as to the basis for such objections. Such conclusory objections are not permitted. *See* Fed. R. Civ. P. 34(b)(2)(B) (objections must be made "with specificity . . . , including the reasons").

- Finally, Defendants do not comply with the requirement that, to the extent objections (other than privilege) are asserted, Defendants must indicate "whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). Therefore, the Bureau has been placed in the position of trying to guess as to how the objections affect the scope of the search and production. By way of example, Navient Solutions asserts overbreadth and/or burden objections to 25 of the 26 requests, and in all of those 25 instances, Defendants do not indicate whether responsive materials are being withheld on the basis of these objections. Similarly, General Objection #7 of each of the Defendants' responses states: "As a general matter, [the Defendant] will interpret the Requests as not seeking documents unrelated to the practices and statements alleged in the Complaint." But none of the Defendants has indicated whether it is withholding any responsive materials on the basis of this general objection.  We believe your general objections are invalid, but in any case, please let us know if you plan to withhold documents based on any general objection.

## B.     Defendants' responses to specific document requests

We now proceed to a discussion of issues with Defendants' responses to specific document requests. At the outset, we will start with three points of agreement: (1) To the extent that Defendants already produced documents to the Bureau that are responsive to a particular request, Defendants need not re-produce those documents, as we made clear in our requests; (2) To the extent that a particular, identical version of a document is responsive to multiple requests, that document need not be produced multiple times; and (3) To the extent that it is obvious that a document deals only with a particular type of loan that is not at issue with respect to a particular claim (such as a document dealing only with the suitability of forbearance for private loans), such documents need not be produced. Thus, the Bureau does not take issue with any of Defendants' indications that they will not be producing the foregoing categories of documents, and will not further discuss Defendants' objections on the foregoing grounds.

### 1.     Navient Corporation's responses to the Bureau's requests for production

Objections to Instructions, Item #2

Navient Corporation does not present adequate grounds for limiting the scope of its production to documents beginning January 1, 2010, rather than January 1, 2009 (as the Bureau requested). It is well-established that parties are entitled to seek discovery of "[i]nformation concerning events that substantially preceded the occurrence of the incident that is the basis for the suit" because it "may shed important light on the facts directly relevant to a claim or defense, and thus may be relevant for discovery purposes." 6 James Wm. Moore et al., *Moore's Federal Practice* § 26.41[12] (3d ed.). Even an act beyond the period of limitations "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977). In particular, the contract between the Department of Education and Navient Corporation's predecessor-in-interest began on July 1, 2009, and therefore the Bureau's request for documents dating back to January 1, 2009 is reasonable. Accordingly, the Bureau does not agree with Navient Corporation's proposed time limitation.

Document Request #1

Navient Corporation has objected on the ground that the request seeks documents unrelated to the claims at issue, documents regarding contract terms never implemented, and all documents reflecting or discussing contract terms. While we agree

that Navient Corporation need not produce contract documents that are wholly irrelevant to the Bureau's claims or to any defense that Navient intends to assert, it is important that contract documents not be unreasonably withheld. For instance, because the complaint contains allegations concerning Defendants' uses of forbearance and income-driven repayment plans, and because Navient has suggested that it intends to raise compensation from the Department of Education as some sort of defense, contract documents concerning compensation for enrolling borrowers in such options are relevant. Similarly, even though the complaint contains allegations concerning two specific recertification communications, contract documents concerning Defendants' obligations with respect to recertification communications are relevant.

We cannot, however, agree to Navient Corporation's desire to exclude documents "regarding contract terms never implemented" and "all documents reflecting or discussing contract terms," to the extent such documents are relevant to the claims or defenses in this case. The Bureau is entitled to analyze all contract documents relevant to a claim or defense, including contract terms that were never implemented and discussions of contract terms.

Finally, Navient Corporation also indicates that it is limiting this request to a search of "centralized files for documents related to contracts with the Education Department and guaranty agencies," which would appear to exclude, among other things, internal communications. That limitation is unacceptable. Consistent with the Federal Rules, Navient Corporation must undertake a reasonable and diligent search of the sources and custodians most likely to have responsive information, and produce documents responsive to the request as written.

<u>Document Request #2</u>

While we agree that Navient Corporation need not produce documents that are wholly irrelevant to any claims or defenses in this litigation, Navient Corporation raises other limitations or objections that are unacceptable. The Bureau stands on its request for all documents "reflecting any discussion, evaluation, analysis, or dispute," and such documents should not be limited to "communications exchanged with the Education Department."  Discussions, evaluations, and analyses concerning contractual performance (including discussions of any disputes concerning contractual performance) could occur internally to Navient Corporation or externally with parties other than the Education Department, and documents relating to any such discussions, evaluations, analyses, or disputes are relevant to the Bureau's claims or Navient Corporation's defenses.

Document Request #3

     In addition to invoices and requests for payments, the Bureau intended for this request to encompass responses to such invoices and requests for payments, and it was written accordingly. Therefore, the Bureau expects that responses to invoices and requests for payments will be produced.

Document Requests #4, #5, and #7

     While we agree that Navient Corporation need not produce documents that are wholly irrelevant to any claims or defenses in this litigation, to the extent that the remainder of Navient Corporation's responses are intended as some sort of additional substantive limitation, we do not accept those additional substantive limitations. Navient Corporation has not articulated any objection that would provide the basis for any additional substantive limitation, and Navient Corporation must conduct a reasonable and diligent search for documents responsive to the request as written (including internal and external communications) that is consistent with its obligations under the Federal Rules.

Document Request #6

     We agree that Navient Corporation need not produce documents that are wholly irrelevant to any claims or defenses in this litigation, but we do not accept any additional substantive limitation. For instance, the Bureau does not agree that this request encompasses only "audit reports," and stands on the original request seeking "[a]ll documents relating to any evaluation, auditing, monitoring, oversight, due diligence, quality assurance, or compliance review." Navient Corporation has not articulated any objection that would provide the basis for any additional substantive limitation, and Navient Corporation must conduct a reasonable and diligent search for documents responsive to the request as written (including internal and external communications) that is consistent with its obligations under the Federal Rules.

     With respect Navient Corporation's assertion that it "will not undertake a search of the files of in-house counsel or employees involved in [supervisory] examinations, or produce a log," the Bureau will agree to this limitation provided that it applies only to their documents generated in connection with supervisory examinations and provided that you agree the Bureau need not undertake a search of the files of its attorneys and employees involved in supervisory examinations for documents generated in connection with supervisory examinations.

Document Requests #8, #9, #10, #11, #12

In response to all of these requests, Navient Corporation states merely that it is "not aware of any documents" responsive to the requests. That is not an acceptable response. Consistent with the Federal Rules, Navient Corporation must undertake a reasonable and diligent search of the sources and custodians most likely to have responsive information, and produce documents responsive to the requests. *See, e.g., Hernandez v. Best Buy Co., Inc.*, 2014 WL 5454505, at *9 (S.D. Cal. Oct. 27, 2014) ("Simply stating that one is 'not aware' of responsive documents is vague and equivocal. . . . [T]he Court finds that plaintiff is entitled to an order compelling defendant to provide an unequivocal response . . . and to produce any and all responsive documents that are not privileged.").

Please state unequivocally that you have conducted a reasonable search for documents responsive to each of these requests and that you located no responsive documents as a result of those searches. If you have not conducted a reasonable search for documents responsive to these requests, please confirm that you will do so.

## 2. Pioneer Credit Recovery, Inc.'s responses to the Bureau's requests for production

"Objections to Instructions," Item 2

Pioneer, relying upon 12 U.S.C. § 5564(g)(1), indicates that it will "provide documents responsive to each request from January 18, 2014 to the present unless otherwise specified." However, as the Bureau has indicated in its response to interrogatory #1 from Pioneer, the statute of limitations set forth in 28 U.S.C. § 2462 (which requires commencement of an action "within five years from the date when the claim first accrued") may apply to certain of the claims against Pioneer. Thus, the Bureau's claims against Pioneer encompass the period from January 18, 2012 to the present. In any event, Pioneer's invocation of the statute of limitations is not adequate grounds for withholding of documents. As indicated above, it is well-established that parties are entitled to seek discovery of background information preceding the occurrence of the events underlying this lawsuit. In particular, Pioneer's contract with the Department of Education began on July 1, 2009, and therefore the Bureau's request for documents dating back to January 1, 2009 is reasonable. Accordingly, the Bureau does not agree with Pioneer's proposed time limitation.

Document Request #1

Pioneer's concern with respect to this request appears to be that it cannot speculate as to which documents it exchanged with the Department of Education that may have been used by the Department of Education to conduct the audit/review. However, even accepting your representation that the Department of Education did not specifically ask Pioneer for certain documents for the purpose of conducting the audit/review, this request does not seek only such documents. Rather, this request encompasses communications with the Department of Education after Pioneer was informed about the audit/review. Thus, while Pioneer need not speculate as to documents upon which the Department of Education may have relied in conducting the audit/review, to the extent that Pioneer exchanged documents with the Department of Education that discuss or mention the audit/review (regardless of when those documents were generated before or after the completion of the audit/review), Pioneer must produce those documents.

Document Request #2

While we agree that Pioneer need not produce documents that are wholly irrelevant to the claims in this litigation and that Pioneer need not provide any documents that are exact duplicates of documents produced by another defendant, Pioneer must search its files and produce documents responsive to this request.

Document Request #3

Pioneer has not articulated how it is unduly burdensome to produce "[a]ll documents containing, discussing, or reflecting" the items mentioned in this request, and the Bureau disagrees with Pioneer's attempt to limit this request to merely producing the policies and procedures, call scripts, and training materials post-dating August 2014. Pioneer has not articulated any objection that would provide the basis for any substantive or time limitation on this request, and Pioneer must conduct a reasonable and diligent search for documents responsive to the request as written that is consistent with its obligations under the Federal Rules. This includes, for example, responsive internal and external communications.

Document Request #4

While we agree that Pioneer need not produce documents that are wholly irrelevant to communications with borrowers about collection fees or credit reporting, Pioneer has not articulated how it is overbroad or unduly burdensome to search for and

produce the documents specified by this request. Thus, other than limiting this request to communications with borrowers about collection fees or credit reporting, to the extent that the remainder of Pioneer's response is intended to describe additional substantive limitations, we do not accept those additional substantive limitations. Pioneer has not articulated any objection that would provide the basis for any additional substantive limitation, and Navient Corporation must conduct a reasonable and diligent search that is consistent with its obligations under the Federal Rules. This includes, for example, responsive internal and external communications.

With respect Pioneer's assertion that it "will not undertake a search of the files of in-house counsel or employees involved in [supervisory] examination[s], or produce a log," the Bureau will agree to this limitation provided that it applies only to their documents generated in connection with supervisory examinations and provided that you agree the Bureau need not undertake a search of the files of its attorneys and employees involved in supervisory examinations for documents generated in connection with supervisory examinations.

Document Request #5

Pioneer indicates that it maintains a computer database in which customer complaints are logged, and will generate a report describing complaints related to the credit reporting and collection fee waiver benefits of rehabilitation. If any complaints are found in places other than this database (for example, borrower disputes conveyed through the e-OSCAR system), the Bureau expects that those sources will be searched as well. As articulated in the request, the Bureau also expects the production of all documents describing how the complaints or disputes were resolved and any communications with any credit reporting agency regarding the complaint or dispute. Please also confirm that the report of complaints you will generate will include all fields from the system that contain information reflecting any aspect of the complaints or resolution thereof.

Document Request #7

It is unclear from Pioneer's response whether the prior productions included the requested compensation metrics and policies created or implemented through the end of January 2015. The Bureau requests confirmation that there will be no gap in the time period for this request between the prior production and the production that Pioneer proposes to make. Please also confirm that the prior productions included the requested compensation metrics and policies for any agents or subcontractors of Pioneer responsible for enrolling consumers in the federal loan rehabilitation program.

### 3.     Navient Solutions, LLC's responses to the Bureau's requests for production

Objections to Instructions, Item #2

Navient Solutions does not present adequate grounds for limiting the scope of its production to documents from January 1, 2010, rather than January 1, 2009 (as the Bureau requested). As indicated above, it is well-established that parties are entitled to seek discovery of background information preceding the occurrence of the events underlying this lawsuit. In particular, the contract between the Department of Education and Navient Corporation's predecessor-in-interest began on July 1, 2009, and therefore the Bureau's request for documents dating back to January 1, 2009 is reasonable. Accordingly, the Bureau does not agree with Navient Solutions' proposed time limitation.

Document Request #1

While we agree that Navient Solutions need not produce documents that are wholly irrelevant to any claims or defenses in this litigation and that Navient Solutions need not provide any documents that are exact duplicates of documents produced by another defendant, Navient Solutions must otherwise produce documents responsive to this request. It is not sufficient for Navient Solutions to assert that, other than documents identified by Navient Corporation, it is "not aware of any documents" responsive to this request. Consistent with the Federal Rules, Navient Corporation must undertake a reasonable and diligent search of the sources and custodians most likely to have responsive information, and produce documents responsive to the requests. *See, e.g., Hernandez*, 2014 WL 5454505, at *9 ("Simply stating that one is 'not aware' of responsive documents is vague and equivocal. . . . [T]he Court finds that plaintiff is entitled to an order compelling defendant to provide an unequivocal response . . . and to produce any and all responsive documents that are not privileged.").

Document Request #2

We agree with Navient Solutions' proposed approach regarding subpart (a) of this request, except that we specifically request that, to the extent a template does not properly reflect any attachments that may be included with a communication to a borrower, Navient Solutions will need to produce the attachments that would have been included with the communication. With respect to subpart (c), we agree that this part can be satisfied by the production of evaluations conducted by Siegel and Gale, to the extent that no other testing or evaluation was done by any other entity, either internally

9

or externally. However, we cannot agree to the date limitation of July 1, 2011 with respect to subpart (c), as it would be relevant if there had been testing or evaluation of documents about forbearance or income-driven repayment plans that preceded July 1, 2011.

With respect to subpart (b), Navient Solutions has not provided any explanation as to how it is unduly burdensome or overbroad for Navient Solutions to produce the requested drafts of each version of communications with borrowers about forbearance or income-driven repayment plans. Indeed, Navient Solutions has identified that there are "employees principally responsible" for such drafting, and therefore, in the process of using "reasonable search terms to identify and produce final versions," it should not be unduly burdensome to also identify and produce drafts. Therefore, the Bureau stands by this request.

<u>Document Request #3, #4, #5, #6, #7, #8, #22</u>

In response to all of these requests, Navient Solutions attempts to rewrite the requests in either or both of two ways: (1) Navient Solutions attempts to produce only certain documents sought by the request, and/or (2) Navient attempts to impose a date range on the request that is narrower than the date range set forth by the Bureau. Navient does not explain why these limitations are appropriate, except to object in conclusory fashion on the grounds that the requests are overbroad and unduly burdensome, or to state that certain documents were previously produced (even though the request encompasses more documents than those that were previously produced). Because Navient Solutions has not articulated any objection that would provide the basis for any substantive limitation on these requests, the Bureau stands by these requests, and Navient Solutions must conduct a reasonable and diligent search for responsive documents (including internal and external communications) that is consistent with its obligations under the Federal Rules.

With respect Navient Solutions' assertion in response to document request #6 that it "will not undertake a search of the files of in-house counsel or employees involved in [supervisory] examinations, or produce a log," the Bureau will agree to this limitation provided that it applies only to their documents generated in connection with a supervisory examination and provided that you agree the Bureau need not undertake a search of the files of its attorneys and employees involved in supervisory examinations for documents generated in connection with supervisory examinations.

Document Request #9, #20, and #25

Navient Solutions indicates that it maintains a computer database in which customer complaints are logged, and will generate a report describing complaints related to forbearance and income-driven repayment plans (for request #9), complaint related to eligibility for cosigner release (for request #20), and "substantiated" complaints related to use of the AL code (for request #25). If any complaints are found in places other than this database, the Bureau expects that those sources will be searched as well. As articulated in the request, the Bureau also expects the production of all documents "reflecting" such complaints, which would include documents describing how the complaints or disputes were resolved and any analyses of the complaints or disputes on an aggregate basis. Please also confirm that the report of complaints you will generate will include all fields from the system that contain information reflecting any aspect of the complaints or resolution thereof.

In addition, we cannot agree to any date limitations with respect to these requests (as proposed in response to requests #9 and #20), as having all complaints from January 1, 2009 to the present is relevant in establishing the violations and the time period during which they occurred (as indicated previously, to the extent any responsive documents have been previously produced, they need not be re-produced). Finally, we do not agree to Navient Solutions only producing "substantiated" complaints in response to request #25; the Bureau's request is not limited to whatever substantiation test Navient Solutions has chosen to apply.

Document Request #10

The Bureau is concerned that limiting this request to only pages that contain "information about forbearance and income-driven repayment plans" – as opposed to pages that contain "any information about repayment options" – could exclude pages that contain statements to consumers such as those quoted in paragraphs 38 and 39 of the Complaint because those statements may merely reference forbearance or income-driven repayment plans without providing any substantive information about those options. Therefore, we request that Navient Solutions produce current versions and historical screenshots of each page of its consumer-facing public website and pages accessible by borrower log-in that contain any information about repayment options.

Document Request #11

The Bureau requests confirmation that Navient Solutions' prior productions included the requested compensation metrics and policies created or implemented

through April 1, 2014. Please also confirm that the prior productions included the requested compensation metrics and policies for any agents or subcontractors of Navient Solutions responsible for communications with or enrollment of borrowers in forbearance or income-driven repayment plans.

Document Requests #13 and #14

The Bureau disagrees with all limitations that Navient Solutions attempts to impose with respect to these requests, and stands by the requests as written. There is no basis for any date limitation proposed by Navient Solutions with respect to any part of these requests. All documents (including internal and external communications) reflecting the drafting, testing, evaluation, or analyses of the referenced communications, from January 1, 2009 to the present, are relevant to understand how specific language in the communications was chosen, how language in the communications impacted recertification rates, and whether Navient Solutions was precluded from using certain language (for privacy or other reasons). In addition, Navient Solutions has not explained any basis for limiting the scope of any part of these requests in the manner that it has proposed; conclusory assertions of burden or overbreadth do not suffice.

Document Requests #15, #16, and #17

The Bureau disagrees with any attempt to impose a date range that is narrower than the date range set forth by the Bureau. The Bureau is entitled to understand borrower behavior concerning recertification over time, in an attempt to understand how Navient Solutions' choices of language impacted borrowers.

We also disagree with any substantive limitations you seek to impose. For example, in response to request #15, you assert that you will search for and produce "analyses of the number or percentage of borrowers opening and/or clicking links within such emails." But this limitation would exclude responsive documents that are not "analyses," such as internal communications that discuss the click rates without analysis. Navient Solutions has not articulated any objection that would provide the basis for any substantive limitation, and it must conduct a reasonable and diligent search for documents responsive to the request as written (including internal and external communications) that is consistent with its obligations under the Federal Rules.

In response to request #17, Navient Solutions asserts an objection "to the extent that this Request seeks documents already encompassed by the response to Request No.

12

16." The Bureau expects that Navient Solutions will conduct a reasonable and diligent search for documents responsive to request #17, and if it is the case that all such documents are identical to documents being produced in response to request #16, then the documents need not be re-produced. However, any responsive documents that are not identical to documents produced in response to request #16 must be produced.

Document Request #18

The Bureau stands by this request as written, and expects Navient Solutions to conduct a reasonable and diligent search for responsive documents. The request does not require the identification of specific payment processing errors in order for Navient Solutions to conduct a reasonable and diligent search. Rather, Navient Solutions is required to identify those employees responsible for identifying errors or problems in the processing, application, or allocation of payments that were happening on a repeated, recurring, or non-isolated basis or that had been the subject of complaints from more than one consumer, and to produce responsive documents from those employees. If there are no such employees who perform such a function as part of any of their responsibilities (a fact that we believe would be highly probative with respect to the violation alleged in the complaint), then Navient Solutions can so indicate.

Document Requests #19 and #21

Navient Solutions attempts to rewrite request #19 in two ways: (1) Navient Solutions attempts to produce only certain documents sought by the request, and/or (2) Navient attempts to impose a date range on the request that is narrower than the date range set forth by the Bureau. Navient does not explain why these limitations are appropriate, except to object in conclusory fashion on the grounds that the request is unduly burdensome, and to state that certain documents were previously produced (even though the request encompasses more documents than those that were previously produced). Because Navient Solutions has not articulated any objection that would provide the basis for any substantive limitation on these requests, the Bureau stands by these requests, and Navient Solutions must conduct a reasonable and diligent search for responsive documents (including internal and external communications) that is consistent with its obligations under the Federal Rules.

In response to request #21, Navient Solutions asserts an objection "to the extent that this Request seeks documents already encompassed by the response to Request No. 19." The Bureau expects that Navient Solutions will conduct a reasonable and diligent search for documents responsive to request #21, and if it is the case that all such documents are identical to documents being produced in response to request #19, then

13

the documents need not be re-produced. However, any responsive documents that are not identical to documents produced in response to request #19 must be produced.

To the extent that the remainder of Navient Solutions' response to request #21 is intended to describe additional substantive limitations not set forth in the request, we do not accept those additional substantive limitations. Navient Solutions has not articulated any objection that would provide the basis for any additional substantive limitation, and Navient Solutions must conduct a reasonable and diligent search that is consistent with its obligations under the Federal Rules.

Document Requests #23 and #24

The Bureau disagrees with all limitations that Navient Solutions attempts to impose with respect to these requests, and stands by the requests as written. There is no basis for any date limitation proposed by Navient Solutions with respect to these requests; Navient's assertion that it discovered the "issue regarding its use of the AL code" "on or about May 17, 2013" and that it will therefore only produce documents after May 17, 2013 makes no sense; Navient's "discovery" date has no bearing on the scope of the production, and Navient's use of the "AL" code before and after that date are relevant to the reasonableness of Navient's furnishing policies and procedures. To the extent that the remainder of Navient Solutions' responses are intended as some sort of additional substantive limitation, we do not accept those additional substantive limitations. Navient Solutions has not articulated any objection that would provide the basis for any additional substantive limitation, and Navient Solutions must conduct a reasonable and diligent search for responsive documents (including internal and external communications) that is consistent with its obligations under the Federal Rules.

In response to request #24, Navient Solutions asserts an objection "to the extent that this Request seeks documents already encompassed by the response to Request No. 23." The Bureau expects that Navient Solutions will conduct a reasonable and diligent search for documents responsive to request #24, and if it is the case that all such documents are identical to documents being produced in response to request #23, then the documents need not be re-produced. However, any responsive documents that are not identical to documents produced in response to request #23 must be produced.

14

**C.    Other Issues**

**1.    Document Custodians**

**a.    Selection of Custodians**

In your responses to many of our document requests, you have indicated that you will identify employees "principally responsible" for certain tasks and that you will search their files for responsive documents. We are concerned that in identifying the relevant custodians for many requests, you may be applying an overly narrow interpretation of the subject of the request.

For example, in response to document request #5 to Navient Solutions, Navient Solutions stated that it "will identify the employees principally responsible for *evaluating the effectiveness of policies* governing communications with borrowers regarding forbearance or income-driven repayment plans." (emphasis added). We are concerned that other individuals were or are principally responsible for other areas covered by the request as written, such as: (1) discussing, evaluating, or analyzing the adequacy, appropriateness, or effectiveness of any *instructions, guidance, or training regarding* the referenced communications that may not be a "policy" per se; (2) discussing, evaluating, or analyzing *deficiencies or problems* in Navient Solutions' requirements, instructions, policies, procedures, guidance, or training regarding the referenced communications; (3) discussing, evaluating, or analyzing the impact *on borrowers* of such requirements, instructions, policies, procedures, guidance, or training; and (4) discussing, evaluating, or analyzing *potential improvements* in such requirements, instructions, policies, procedures, guidance, or training.

To provide another example, in response to document request #6 to Navient Solutions, Navient Solutions stated that it "will identify the employees principally responsible for conducting audits, compliance reviews, or quality assurance reviews of communications with borrowers regarding forbearance and income-driven repayment plans." We are concerned that other individuals were or are principally responsible for other areas covered by the request as written, such as: (1) risk management analyses; and (2) developing actions plans in response to any audit or compliance reports or risk management analysis.

As a general matter, we do not accept any attempt to determine the relevant custodians for any request that is based on a narrowing of the request that the Bureau has not agreed to. We expect that the Defendants will comply with their obligation to

identify the key custodians for the document requests as written, unless a request is either narrowed by agreement or court order.

### b.    Exclusion of in-house counsel

General Objection #6 of each Defendant's responses to the Bureau's requests states that the Defendant "will not undertake a search of the files of in-house counsel (or produce a log) unless it has reason to believe that non-duplicative, non-privileged materials can be located in those files." However, in response to certain specific document requests, Defendants have stated that they will not search the files of in-house counsel or produce a log "because it would be unduly burdensome and not likely to lead to relevant non-privileged materials," without including an exception for in-house counsel for whom "it has reason to believe that non-duplicative, non-privileged materials can be located in those files."

Please confirm that the exception stated in General Objection #6 applies to the above-referenced statements in Defendants' responses to the specific requests. The exception is important for in-house counsel "[b]ecause in-house counsel may operate in a purely or primarily business capacity in connection with many corporate endeavors" and thus, "the presumption that attaches to communications with outside counsel does not extend to communications with in-house counsel." *Craig v. Rite Aid Corp.*, 2012 WL 426275, at *7 (M.D. Pa. 2012) (internal citation and quotation marks omitted).

### 2.    Entities to be searched

Though general objections are not allowed (and we believe they should be ignored entirely), we have an additional concern with respect to General Objection #4. Defendants indicate that because the Bureau has served discovery on each separate Defendant, Defendants are "interpret[ing] discovery directed to a particular Defendant to be seeking documents and information that is in the immediate possession of that particular Defendant (and not its subsidiaries and/or affiliates that are also Defendants)." While we agree that, unless otherwise stated, each Defendant need not produce documents and information that are in the possession of another Defendant, to the extent that a Defendant has possession, custody, or control of responsive documents or information that is in the possession of a subsidiary, affiliate, or other entity that is not a Defendant, we expect that such documents will be produced, consistent with the requirements of the Federal Rules. Please confirm that our understanding is correct.

## II.   RESPONSE TO YOUR AUGUST 31, 2017 LETTER

Item #1

Contrary to the assertion in item #1 of your letter, we have not refused to provide documents related to the investigation and supervision of any of the Defendants. As you acknowledge, your requests were overbroad because, as written, they did in fact seek documents such as hotel receipts from overnight stays by employees. We are open to discussing exactly what was meant by your requests. However, we note the following:

First, where the focus of our investigation and supervisory exams were documents received from Defendants that Defendants can readily examine in their own files, and where the Bureau has already identified and produced documents relied upon to support the allegations in the complaint, it is inaccurate for Defendants to claim that the Bureau is refusing to produce documents "that resulted in the filing of the Complaint."

Second, the portion of your request seeking "all documents generated by the CFPB" relating to the Bureau's investigation is overbroad because it would include many irrelevant documents, such as documents that merely reference the investigation. To the extent you seek documents generated by the Bureau that relate to the investigation and that contain information relating to Defendants' practices alleged in the Complaint, the key custodians for such documents are the Bureau employees who were principally responsible for the investigation – namely, the Bureau attorneys involved in the investigation of this action and others working at their direction. Consistent with the position stated in General Objection #6 and your responses to certain of the Bureau's documents requests, we will not search their files for "documents generated by the CFPB" relating to the investigation because it would be unduly burdensome and they are highly unlikely to contain non-duplicative, non-privileged documents responsive to these requests. However, the Bureau will search the files of personnel in the Bureau's Office for Students for non-privileged documents that relate to the investigation and that contain information relating to Defendants' practices alleged in the Complaint.

Third, the portion of your request seeking "all documents generated by the CFPB" relating to the Bureau's supervision of any Defendant is likewise overbroad because it would include many irrelevant documents, such as documents that merely reference the Bureau's supervision. To the extent you seek documents generated by the Bureau that relate to the Bureau's supervision of any Defendant and that contain information relating to Defendants' practices alleged in the Complaint, the key custodians for such documents are the Bureau attorneys and employees who were principally responsible

for the supervision of Defendants. Consistent with your position, we will not search the files of attorneys or employees involved in supervisory examinations for documents generated in connection with those supervisory examinations.

Fourth, we do not believe witness statements are discoverable. *See*, *e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 511 (1947) (internal citations omitted) ("This work is reflected, of course, in interviews, statements . . . and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the 'Work product of the lawyer.'"); *Peerless Heater Co. v. Mestek*, 1999 WL 35147370, at *1 (E.D. Pa. 1999) ("Traditionally, witness statements have been accorded work product protection because they reflect the attorney's thoughts and impressions from witness interviews."). We will search our investigative files for any other documents originally produced by a third-party (an entity that is neither a Defendant in this action nor a governmental agency) and produce any non-privileged documents that relate to Defendants' practices alleged in the Complaint.

<u>Item #2</u>

Defendants claim that the Bureau has not identified "a single witness other than its own enforcement lawyers," and has not provided "the names of third-party witnesses that provided information related to the allegations in the Complaint." Both claims are incorrect. In its discovery responses, the Bureau has identified all Bureau employees, including many non-attorneys, who are most knowledgeable about the allegations in the complaint. And in producing all of the documents upon which the Bureau relied to support our complaint (as the Bureau did at the Rule 30(b)(6) deposition), we provided the information known to the Bureau about many consumers upon whom the Bureau's allegations are based. Finally, in the Bureau's interrogatory responses, we identified specific calls with consumers upon which the Bureau's allegations are based; those calls were produced by Defendants, and Defendants can obtain the identifying information they desire about those consumers from their files.

With regard to your assertion that the Bureau must disclose the names of third-party witnesses who we intend to rely on to prove our case at trial, the Bureau is aware of its obligations under Rule 26(a)(1)(A)(i). Additionally, as stated in our response, other than the categories of information that we specifically state we will not produce based on our objections, we will search our files and produce non-privileged documents responsive to this request. This will include: (1) a list of individuals interviewed by the Bureau who provided information relating to Defendants' practices alleged in the Complaint; and (2) consumer complaints that relate to Defendants' practices alleged in

the Complaint that were submitted to the Bureau, other than those submitted to the Bureau's Office of Consumer Response or otherwise sent previously to Navient.

Item #3

      You claim that it is not acceptable for the Bureau to not produce any documents in response to a request seeking "[a]ll Communications relating to this Action or the allegations in the Complaint." As we noted in our response, that request is plainly overbroad, as it would encompass potentially numerous documents that are not relevant to any claim or defense – for example, communications that merely reference the lawsuit or that simply transmit complaints with no comment.

      To the extent you seek communications relating to the Defendants' practices alleged in the Complaint, the key custodians for such documents are the Bureau's attorneys who were principally responsible for the investigation and prosecution of this action. Consistent with the position stated in General Objection #6 and your responses to certain of the Bureau's document requests, we will not search their files because it would be unduly burdensome and they are highly unlikely to contain non-duplicative, non-privileged documents responsive to these requests. However, the Bureau will search the files of personnel in the Bureau's Office for Students for non-privileged communications relating to Defendants' practices alleged in the Complaint.

Item #4

      You have inserted the word "privilege" into Rule 34(b)(2)(C). But Rule 34(b)(2)(C) does not require a party to specify, at the time of responding to document requests, the exact documents that it is withholding on the basis of privilege. Privilege is an acceptable ground for an objection, and the responding party need not identify in its written responses whether any documents are being withheld on grounds of privilege; rather, a party can produce a privilege log after the production has been made. *See, e.g., Fischer*, 2017 WL 773694, at *3. There is no requirement for a pre-production privilege log, which appears to be what you are requesting. We note that you have made a general objection on privilege grounds that you assert applies to each of our discovery requests. *See* General Objection #6. With respect to footnotes 1-4 of your letter, we believe that any debate about privilege claims before privilege logs are exchanged is premature.

      As for your request that the Bureau state whether it is planning to withhold certain categories of documents responsive to each request on the basis of some privilege, we are willing to provide such information if you are willing to provide the same information with respect to each of the Bureau's document requests.

Item #5

As you acknowledge, the Bureau has provided statements upon which borrowers relied to support its claim in Count I. The Bureau has also provided, in its complaint, at the Rule 30(b)(6) deposition, and in an itemized list of more than 200 calls the deceptive statements that form the basis for Counts VII-X. If Defendants do not believe that the Bureau has not satisfied its obligation at this early stage of the proceedings, we disagree.

With respect to Navient Solutions' interrogatory #11 and Pioneer interrogatory #3, as we stated in our responses, those requests are overly broad and unduly burdensome without any limitation as to subject matter. We request that you limit them to the false or misleading communications on which we rely to support our claims. If you agree, we will respond.

Item #6

As we indicated, we did not respond substantively to interrogatory #8 from Navient Solutions because the Bureau is not in possession of every such communication, while Navient Solutions can query its borrower files for the requested communications. Indeed, Navient Solutions' response to the Bureau's document request #2 served upon Navient Solutions confirms exactly what the Bureau wrote: Navient Solutions is in possession of the relevant documents and has not yet produced all of them to the Bureau. As we indicated, and as we reaffirm here, it defies logic for the Bureau to be expected to identify communications that it does not possess. In addition, if Navient Solutions believes that any such communications in its possession undermine the Bureau's theories, then Navient Solutions can make that argument at the appropriate time.

Item #7

In item #7, Defendants purport to provide a number of legal conclusions that the Bureau will be required to prove at trial. It is highly premature to brief the parties' contentions of law that should govern the outcome of this case. The Bureau stands on all of the interrogatory responses cited in item #7, which have been provided in the early stages of discovery, before the Bureau has received any substantive discovery responses from Defendants. As is the Bureau's right, the Bureau will further develop facts during discovery and supplement its responses as appropriate during the course of discovery.

Item #8

While interrogatory #15 from Navient Solutions refers to "payment processing *practices* that You allege is unfair," the heading of item #8 in your letter refers to "payment processing *errors* that are allegedly unfair." (emphases added). We hope that we can address your questions about this claim by clarifying the difference between the terms "practices" and "errors" as they are used in Count VI. In paragraphs 110-112 of the Complaint, the Bureau alleges that the following *practices* are unfair:

- "While Navient might correct a specific error if a consumer contacts Navient to report it, if the error is not escalated beyond a first-level customer service representative, Navient does not necessarily identify and fix the underlying issue causing the error to prevent it from recurring. As a result, some consumers have suffered the same payment processing error in multiple months." (Complaint ¶ 110.)

- "Moreover, Navient does not categorize most non-escalated consumer inquiries about payment processing errors. When borrowers and cosigners with non-escalated consumer inquiries contact Navient about payment processing errors, Navient personnel generally record details about the error in a freeform, narrative style in notes in the consumer's account, but those personnel are unable to use any codes or tags to categorize the inquiry or concern." (Complaint ¶ 111.)

- "Navient, thus, is unable to systematically search and/or aggregate these non-escalated inquiries. As a result, Navient has been unable to effectively understand many of the problems that consumers are experiencing with respect to payment processing and take action to prevent these problems from recurring or from impacting the same consumer again and again." (Complaint ¶ 112.)

The aforementioned practices resulted in recurring *errors*. The Bureau has alleged that the recurring *errors* that resulted from these practices include various payment processing *errors*. Examples of these payment processing *errors* are identified in our response to Navient Solutions' interrogatory #15.

Item #9

In response to Navient Solutions' document request #8, the Bureau has indicated that it "will produce the published versions of all proposed or final rules and regulations

and of all guidance relating to protection of consumer privacy in email Communications, as it relates to policies and practices alleged in the Complaint, to the extent such documents were not produced at the Rule 30(b)(6) deposition of the Bureau on August 4, 2017."

In response to Navient Solutions' document request #9, the Bureau has indicated that it will produce "the published versions of all proposed or final rules and regulations and of all guidance relating to the servicing policies and practices that are the subject of allegations in the Complaint, to the extent such documents were not produced at the Rule 30(b)(6) deposition of the Bureau on August 4, 2017."

Finally, in response to Pioneer document request #2, the Bureau has indicated that it "will produce the published versions of all proposed or enacted rulemaking and of all guidance that relates to Communications relating to the Federal Loan Rehabilitation Program that are the subject of allegations in the Complaint, to the extent such documents were not produced to Defendants at the Rule 30(b)(6) deposition of the Bureau on August 4, 2017."

It is not clear what additional documents Defendants believe they are entitled to that are not covered by the preceding statements. To the extent that Defendants believe they are entitled to pre-decisional and deliberative communications concerning rules, regulations, or guidance, we disagree. Such documents are neither relevant nor proportional to the needs of the case, and also are protected by the deliberative process privilege.

Item #10

We disagree that the practices of third-party servicers are relevant, and Defendants' conclusory allegation of "selective and inconsistent enforcement" is not relevant to any issue in this case. *See FTC v. Chemence, Inc.*, 209 F.Supp.3d 981, 986 (N.D. Ohio 2016) ("The FTC's lawsuit concerns *Chemence's* actions, not its competitor's actions. . . . Every element in [an FTC Act] claim relates to the conduct of the *defendant* in the lawsuit, not the conduct of other industry participants. Thus, the conduct of other participants in the cyanoacrylate glue industry–the information that Chemence now seeks–has no bearing on the FTC's claim. Even if Chemence could demonstrate that its competitors had violated the FTC Act but were not prosecuted, that would be irrelevant to the current lawsuit. The FTC alone is empowered to develop [an] enforcement policy best calculated to achieve the ends contemplated by Congress and to allocate its available funds and personnel in such a way as to execute its policy efficiently and economically.") (emphasis in original) (citations and quotations omitted).

Item #11

Your request for documents "considered" is not tied in any way to a claim or defense in this case, and therefore does not satisfy the requirements of Rule 34. A request for documents "considered" could encompass every document that came into the possession of the Enforcement Attorneys investigating Defendants. That is simply not allowable under Rule 34. *See Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 4613390, at \*10 n.8 (S.D.N.Y. Aug. 31, 2016) (holding that a request for all documents that came into the possession of the parties concerning the litigation did not satisfy the requirement that document requests must describe 'with reasonable particularity' what is to be produced). To the extent your request for documents "considered" requires the Bureau to divulge the identity of documents that Bureau attorneys physically reviewed and chose not to rely on, it seeks information protected by the attorney work product doctrine. *See, e.g., Weiss v. National Westminster Bank, PLC*, 242 F.R.D. 33, 62 (E.D.N.Y. 2007) (holding that interrogatory asking plaintiffs to identify all documents considered in preparing responses sought protected work product and narrowing interrogatory to require the plaintiff to identify and produce the non-privileged documents upon which they relied in preparing their responses).

Item #12

With respect to damages, the Bureau has provided, in its initial disclosures, the "best information available related to the damages claim," which is the standard set forth in the case you cited. *Stemrich v. Zabiyaka*, 2013 WL 4080310, at \*2 (M.D. Pa. Aug. 13, 2013). *See also* Fed. R. Civ. P. 26(a)(1) advisory committee's note ("[A] party would not be expected to provide a calculation of damages which ... depends on information in the possession of another party or person."). To the extent you believe that more is required at this point, we disagree. The Bureau will amend those initial disclosures as more information becomes available through discovery.

Item #13

You argue that Defendants are entitled to know which documents, from Pioneer's and Navient Solutions' productions during the Bureau's investigations, the Bureau "intends to rely upon to support a particular claim." The Bureau identified such documents in a tabbed binder, along with a reference chart, at the Rule 30(b)(6) deposition of the Bureau.

<u>Item #14</u>

With the transmission of this letter, we are also transmitting the oath for the interrogatory responses required by Rule 33(b)(3).

We look forward to discussing these issues in more detail during our call scheduled for Thursday, September 21, 2017.

Sincerely,

/s/ Nicholas Jabbour

# EXHIBIT 7

1700 G Street NW,
Washington, DC 20552



May 10, 2018

**<u>Via E-Mail to Defendants' Counsel</u>**

      Re:    *Consumer Financial Protection Bureau v.*
              *Navient Corp., et al.*, Case No. 3:17-CV-00101-RDM

Dear Counsel:

      I write in connection with the Court's May 4 Order directing the parties to confer on search terms associated with Defendants' obligation to search for and produce responsive, non-privileged email communications.

      As discussed during our meeting yesterday, the Bureau proposed the following:

1. For requests where Defendants previously provided the Bureau with search terms (via December 6, 2017 and February 5, 2018 emails), reducing the proximity limiters associated with the search terms to eliminate from the universe documents that are unlikely to be relevant. Thus, for the 50, 25, and 15 proximity limiters that Defendants originally used, cut those down to 30, 20, and 12. The Bureau also requested that Defendants calculate (in the same manner that they originally calculated the number of unique documents) the number of unique documents that would result from such a reduction.

2. For requests where Defendants have not provided the Bureau with search terms (including requests 4, 7, 14, 16, and 17 to Navient Solutions), Defendants would provide the Bureau with the search terms, if any, it originally used in connection with those searches, and the Bureau would propose edits to those search terms. Defendants stated that they did not think that they had unique search terms for these requests and thought that other search terms encompassed these requests. Defendants also stated a willingness to consider any search terms the Bureau proposes in connection with these requests if the Bureau believes that the previously produced search terms do not cover these requests. It would be helpful if you could confirm whether any independent search terms exist in connection with these requests, so that the Bureau knows whether we should wait to receive search terms from you or proceed with crafting ones targeted to the requests (if necessary).

3. For all requests, Defendants would provide the Bureau with the custodians whose records Defendants applied the search terms to and the custodians' various titles during the applicable time period. You indicated that pulling historic titles could delay the turnaround time. We explained that historic titles will help avoid the scenario where an individual's current title is not reflective of their prior responsibilities and thus not probative of whether they were a proper custodian.

One thing we asked was what system is being used to review Defendants' documents, and you informed us that it is Relativity. In our Relativity-based review of Bureau documents, we noticed that, because Relativity automatically stems search terms (i.e., searches for variations of search terms), some search terms ended up sweeping in variations that would lead to too many false positives. To the extent you have not done so, we would appreciate it if you could run a report showing all of the variations of each search term that Relativity sweeps in due to stemming, as that may reveal terms for which stemming needs to be turned off, which may in turn significantly reduce document counts. We are happy to have our e-discovery specialist walk through the process of generating the stemming report, and we also would be happy to review the stemming report to locate terms for which we believe that stemming can be turned off.

We look forward to receiving the foregoing information and would appreciate receiving it on a rolling basis, as you indicated that (i) you already have data on the effect of our proposal to significantly reduce proximity limiters and (ii) marshaling the titles of custodians could slow the process.  The stemming report can be quickly generated, and we would be happy to review that as soon as possible as well.

There were two other topics we discussed in connection with searches of Defendants' email. First, the Bureau indicated that the universe of documents that Defendants must search has changed. During the hearing, the parties discussed an original universe of approximately 1 million emails, but that figure was based on Defendants' temporal limitations to discovery, which the parties were also litigating. The Court has since established the relevant period for discovery, which limits discovery on certain requests while expanding it for others. And the Court stated that the categories of documents we requested are potentially relevant. We do not understand you to dispute the Court's ruling on the dates, the potential relevance of the categories, or the fact that it does change the universe of emails that are at issue. But we do understand that you dispute whether the Court's order on the relevance of emails and the applicable time periods means that you must search for relevant emails from the allowable time period that are electronically stored on the Email Xtender system that Defendants maintain. While it appears that we are far apart on this particular issue (the Bureau understanding that Defendants should  search the legacy system for responsive emails because the Bureau never agreed to exclude that system and it sought emails from the entire period, and Defendants understanding that it has no general obligation to search the legacy system for responsive emails, in part because the Bureau did not explicitly raise the issue of the legacy system before the Court, including Defendants' alleged burden associated with accessing this system), we are hopeful that continued conferrals will help resolve this issue along with the others.

Second, the parties also discussed a proposal from Defendants whereby Defendants have crafted new search terms using terms contained within policies, procedures, job aides, and the like that the Bureau previously identified in connection with Defendants' 30(b)(6) of the Bureau. While this approach is similar to the approach Defendants presented to the Court, we nonetheless agreed to review the search terms and hit counts associated with Defendants' proposal. Defendants' proposal also included

running searches based on "letter codes" that you represented stay the same as a letter is revised over the years. We noted that this is an interesting approach and are willing to look at the search terms you provide in connection with it. One concern with this approach is that it appears to focus on specific documents and not the broader issues. In any event, we will review the search terms you provide. With respect to Defendants' internal discussions about the contract with the Education Department, Defendants asked the Bureau to propose search terms. We suggested that you use the same searches that you used when searching for external communications with the Education Department about this topic. You indicated that that resulted in too many documents to review. Accordingly, we look forward to seeing how the Bureau's proposal to reduce proximity limiters and to review the stemming report for all searches affects this category of documents in particular. If proximity limiters and possible elimination of stemming for certain search terms are ineffective at eliminating potentially irrelevant information, we will gladly propose search terms.

I believe this covers the parties' deliverables and initial proposals. If I've inadvertently misstated your position, I apologize and welcome any clarification.

We will follow up with another communication regarding the other topics we discussed yesterday that are not subject to the Court's May 4 Order.

Regards,

/s/ Nicholas Lee

# EXHIBIT 8

1700 G Street NW,
Washington, DC 20552

May 16, 2018

**Via E-mail to Defendants' Counsel**

      Re:     *Consumer Financial Protection Bureau v. Navient
              Corp., et al.*, Case No. 3:17-CV-00101

Counsel:

      In advance of our call tomorrow, we write in response to your May 11, 2018 email as it relates to the Court's May 4 Order.

      ***First,*** thank you for providing search reports in connection with four of the five categories of documents at issue.[1] Setting aside the issue of Email Xtender, we understand that your updated search reports reflect the hits that result from (1) changing the applicable time period for discovery to comply with the Court's May 4 Order and (2) reducing proximity limiters as proposed by the Bureau. Because the applicable time period has changed, the parties cannot, without more information, conduct an apples-to-apples comparison of the volume of potentially responsive documents using Defendants' original, larger proximity limiters and the narrower proximity limiters the Bureau has proposed. Accordingly, we request that you provide search term reports for the same categories and time period reflected in the reports you provided on May 11, but using your original, larger proximity limiters. This would eliminate the changing time period as a variable, leaving only the Bureau's proposed reduction in proximity limiters to account for any change in the universe of documents. We remain hopeful that by working further with the already developed search terms and proximity limiters, we will be able to eliminate additional emails unlikely to contain relevant information.

      ***Second***, we are concerned that the 1.1. million total that you have cited may double-count documents that are returned as "hits" for multiple categories (i.e., certain documents are counted as hits on multiple reports, even though they only need to be reviewed once). We would like to understand what steps, if any, you have taken to avoid such double-counting, as well as to remove documents that have already been reviewed in connection with prior productions. To the extent that no such filtering has occurred, we request that a report be run to show the volume of unique documents that would need to be reviewed under the parties' respective proposals.

      I want to reiterate the Bureau's willingness to engage with you in a productive conversation about whether the Bureau's proposal effectively eliminates emails that are unlikely to be relevant to this case, as the Court directed. The above-requested information is critical to this endeavor. If the Bureau's initial proposal proves ineffective, we are willing to revise it or consider other options.

      ***Third***, as to documents pre-dating 2012 that are electronically stored on Defendants' Email Xtender system, we respectfully disagree with your statement "that this issue was

---

[1] We note the absence of both custodians and a search term report for category 3. We understand this to mean that you did not previously run independent email searches for this category of emails. Accordingly, we will craft search terms and identify categories of custodians.

resolved." And we also do not understand your statement that Defendants "understood from our conversations that we had reached agreement," as the parties did not confer orally on this issue after Defendants never provided the Bureau with information about the burden associated with porting electronically stored information from one database to another, as we requested on January 18, 2018. In our February 22 letter to the Court (Doc. 74) and appendix (Doc. 74-1), we also made clear that we were seeking email from 2009 forward. Certain pre-2012 email is housed exclusively on Email Xtender. As we noted last Wednesday, it was not the Bureau's burden to identify the specific databases on which the information was electronically stored, much less provide information about the burden associated with data retrieval from those databases. Though you noted in a January 26 letter that if the Bureau identifies particular "custodians or issues of interest for pre-2012 emails, [Defendants] will consider further efforts" to search the data," we cannot evaluate the reasonableness of the substantially more limited searches you appear to be proposing without the specific details regarding the burden that you have yet to provide. As we also mentioned last Wednesday, we reiterate our January 18 request for information regarding why you believe documents on the Email Xtender system are not readily accessible.

In the interest of trying to move forward while we await this information from you, we would like to discuss your request for an identification of "custodians or issues of interest." First, we do not understand how we can identify the relevant custodians, as that information is within Defendants' control. Second, we do not understand your request for an identification of "issues of interest." The "issues of interest" are identified in the document requests we served. If you can provide us with an understanding of why the burden of accessing information on the Email Xtender system would depend on identification of "issues of interest," perhaps we can find a way to alleviate the burden.

Relatedly, we note that the Washington and Pennsylvania Attorneys General have alleged loan origination violations dating back well before 2009, and thus we would like to understand whether data from Email Xtender is already being restored to provide documents responsive to requests from those Attorneys General.

***Fourth,*** in addition to our initial proposal, we are interested in your feedback on a second proposal that could result in a global compromise. Because this proposal would result in a massive reduction of the documents to be reviewed, it is contingent on Defendants agreeing to all three of the components described below. First, the Bureau would agree that Defendants need not review for responsiveness the 685,737 documents that your search reports indicate do not have hits (i.e., family members without hits). This would remove approximately 62 percent of the 1.1 million documents that you indicated must be reviewed as a result of the Bureau's initial proposal. Should documents from that group be family members of documents that your reviewers determine are responsive, they would only need to be reviewed for privilege. Second, Defendants would agree to search emails on Email Xtender, and the Bureau would agree that Defendants could apply the search protocol outlined above to the emails housed on Email Xtender. Because Defendants have not provided information on the volume of email on Email Xtender associated with the applicable custodians, we do not know how many documents this proposal will exclude from the review, but we suspect that the 62 percent reduction outlined above is a fair estimate. Third, the parties would need to agree on custodians and searches to be applied to category 3. As noted above, the Bureau will craft searches and identify categories of

custodians. The parties would further agree that the same protocol outlined above for reviewing documents will apply here too. Given that Defendants have argued that there is much overlap between the first, second, and third categories of documents, we are hopeful that our searches will not result in a significant increase in the volume of *unique* documents to be reviewed.

**Fifth,** the Bureau is willing to agree that only "inclusive emails" (as defined by Relativity) need to be reviewed. This should also reduce the volume of documents that you have to review by obviating the need to review earlier communications in an email chain that are completely subsumed within a later version of the chain. We are happy to discuss this further to ensure that the parties have a consistent definition of "inclusive emails."

We look forward to receiving the information requested above and continuing to meet and confer to reach an agreement on these and other issues.

Regards,

/s/ Nicholas Lee

# EXHIBIT 9

**Dryhurst, Karin**

---

| | |
|---|---|
| **From:** | Lee, Nicholas (CFPB) <Nicholas.Lee@cfpb.gov> |
| **Sent:** | Tuesday, May 22, 2018 5:08 PM |
| **To:** | Dryhurst, Karin; Paikin, Jonathan; Martens, Matthew T.; Kearney, Daniel P.; Hart, Gideon; Dan Brier; Donna Walsh |
| **Cc:** | Johnson, Ebony (CFPB); Arreaza, Manuel (CFPB); Matthews, Andrea (CFPB); Dudley, David (CFPB); Kim, Thomas (CFPB); Jabbour, Nicholas (CFPB) |
| **Subject:** | CFPB v. Navient Corp. et al (M.D. Pa.) - Summary of Proposal |
| **Attachments:** | Summary of Proposal.pdf |

Counsel:

Attached is a summary of the current proposal under consideration by the parties. Please let me know if the summary is inconsistent with your understanding of the proposal.

Regards,
Nick

## Categories 1, 2, 4, and 5

For these categories, the Bureau's global compromise consists of the following:

- **Search Terms:** Subject to the proposed modifications identified below, Defendants will use the search terms attached to Ms. Dryhurst's May 11 email to the Bureau. The attachments are titled "Category 1 Emails re Policies.pdf," "Category 2 Emails re Audits.pdf," "Category 4 Emails re IDR Notices.pdf," and "Category 5 Emails re ED.pdf."
- **Proximity limiters:** An across-the-board reduction in proximity limiters from 50, 25, and 15 to 25, 15, and 10, respectively.
- **Documents with hits:** Only documents with hits need to be reviewed for responsiveness. If a document with a hit is responsive, its non-privileged family members without hits must be produced. If a document with a hit is not responsive, its family members without hits need not be reviewed or produced.
- **Inclusive emails:** Non-inclusive emails (as defined by Relativity) need not be reviewed.
  - Relativity defines an inclusive email as "An email that contains unique content not included in any other email, and thus, must be reviewed. An email with no replies or forwards is by definition inclusive. The last email in a thread is also by definition inclusive." Relativity defines a non-inclusive email as "An email whose text and attachments are fully contained in another (inclusive) email."
- **Email Xtender:** No documents stored exclusively on Email Xtender need to be reviewed.

## Category 3

For this category, the Bureau's global compromise consists of the following:

- **Proximity limiters:** Same as above.
- **Documents with hits:** Same as above.
- **Inclusive emails:** Same as above.
- **Email Xtender:** Same as above.
- **New Searches and Custodians:**
  - For the existing custodians[1] identified in footnote 1 below, add the following searches:

---

[1] Existing Custodians:
  1. Brian Lanham
  2. Patricia Peterson
  3. Jennifer Domenick
  4. Eileen Herbert
  5. Patricia Novrocki
  6. Jeanine Pysniak
  7. Troy Standish
  8. Patricia Potomis
  9. Angela Kamionka
  10. Holli Jeckell
  11. Lisa Stashik
  12. Hans Stullken
  13. Amanda LaPenta
  14. Michael Outten

1. ((forbearance* OR FORA OR FORV OR FORB) OR ("income-driven" OR "income-based" OR "income-contingent" OR "income based" OR "income driven" OR "income contingent" OR IDR OR IBR OR PAYE OR REPAYE OR ICR)) w/10 (good OR better OR best OR bad OR wors* OR ideal OR prefer* OR priorit* OR optimal OR first OR last OR always OR explor* OR temporar* or brief* OR advantag* OR disadvantag* OR positive* OR negative* OR benefi* OR suited OR suitable OR applicab* OR compar* OR default* OR push* OR steer* OR pressur*)

2. (fail* OR "does not" OR "did not" OR never OR inadequate* OR adequate* OR insufficient* OR sufficient*) W/10 (mention* OR inform* OR told OR tell* OR advis* OR advice OR communicat* OR explain* OR notif* OR present*) W/10 (forbearance* OR FORB OR FORA OR FORV OR "income-driven" OR "income driven" OR "income-based" OR "income based" OR "income-contingent" OR "income contingent" OR IDR OR IBR OR ICR)

3. steer* W/5 (borrower* OR consumer* OR customer* OR caller*)

o  For the categories of new custodians[2] identified in footnote 2 below, use the following searches:

---

15. Kevin Woods
16. Robert Sommer
17. Marjorie Belton
18. Judith Grassi
19. Cheryl Hammes
20. Jamie Hedge
21. Robyn Hughes
22. Robert Leary
23. Michael Maier
24. Paul Mayer
25. Rick Nickel
26. Sara Patterson
27. Daniel Yost

[2] New Custodians:
1. Jack Remondi.
2. A random sampling of three individuals responsible for managing call centers on the federal loan servicing side of the business. (We request that the sample be drawn from employees who were employed by the company on January 1, 2013 in the lowest level of management over a single entire servicing call center as of that date, and who were employed in that position for at least one year. Once the pool of potential employees is identified, select the first three individuals in alphabetical order.)
3. A random sampling of three individuals responsible for reviewing the quality of customer service provided by call center customer service representatives on the federal loan servicing side of the business. (We request that the sample be drawn from employees

1. ((forbearance* OR FORA OR FORV OR FORB) OR ("income-driven" OR "income-based" OR "income-contingent" OR "income based" OR "income driven" OR "income contingent" OR IDR OR IBR OR PAYE OR REPAYE OR ICR)) w/10 (good OR better OR best OR bad OR wors* OR ideal OR prefer* OR priorit* OR optimal OR first OR last OR always OR explor* OR temporar* or brief* OR advantag* OR disadvantag* OR positive* OR negative* OR benefi* OR suited OR suitable OR applicab* OR compar* OR default* OR push* OR steer* OR pressur*)

2. (fail* OR "does not" OR "did not" OR never OR inadequate* OR adequate* OR insufficient* OR sufficient*) W/10 (mention* OR inform* OR told OR tell* OR advis* OR advice OR communicat* OR explain* OR notif* OR present*) W/10 (forbearance* OR FORB OR FORA OR FORV OR "income-driven" OR "income driven" OR "income-based" OR "income based" OR "income-contingent" OR "income contingent" OR IDR OR IBR OR ICR)

3. steer* W/5 (borrower* OR consumer* OR customer* OR caller*)

4. ((forbearance* OR FORA OR FORV OR FORB) OR ("income-driven" OR "income-based" OR "income-contingent" OR "income based" OR "income driven" OR "income contingent" OR IDR OR IBR OR PAYE OR REPAYE OR ICR)) W/25 (suitability OR unsuit* OR appropriate* OR inappropriate* OR inapplicab* OR advisable)[3]

5. ((forbearance* OR FORA OR FORV OR FORB) OR ("income-driven" OR "income-based" OR "income-contingent" OR "income based" OR "income driven" OR "income contingent" OR IDR OR IBR OR PAYE OR REPAYE OR ICR)) W/25 (cost OR expens* OR loss OR effective* OR ineffective* metric OR criteria)[4]

6. ((forbearance* OR FORA OR FORV OR FORB) OR ("income-driven" OR "income-based" OR "income-contingent" OR "income based" OR "income driven" OR "income contingent" OR IDR OR IBR OR PAYE OR REPAYE OR ICR)) W/25 ((long W/5 term) OR (short W/5 term) OR limit*)[5]

---

who were employed by the company on January 1, 2013 in the lowest level of reviewing the quality of customer service provided by call center customer service representatives on the federal loan servicing side of the business, and who were employed in that position for at least one year. Once the pool of potential employees is identified, select the first three individuals in alphabetical order.)

[3] This search was previously identified as search #5 in the Bureau's May 18 email to Defendants.
[4] This search was previously identified as search #8 in the Bureau's May 18 email to Defendants.
[5] This search was previously identified as search #9 in the Bureau's May 18 email to Defendants.

# EXHIBIT 10

1700 G Street NW,
Washington, DC 20552

May 29, 2018

**<u>Via E-mail to Defendants' Counsel</u>**

   Re: *Consumer Financial Protection Bureau v. Navient*
      *Corp., et al.*, Case No. 3:17-CV-00101

Counsel:

   In light of the Court's Order to submit a joint letter by May 31 indicating whether the parties have reached an agreement, the Bureau has considered your May 25 modifications to the Bureau's May 22 proposal and writes to provide the Bureau's final proposal. A summary of the components of the Bureau's proposal is attached.

   During the parties' May 25 meeting, Defendants proposed changes relating to categories 1, 3, and 4 of the Bureau's May 22 proposal. Regarding the search for documents responsive to category 1, the Bureau's proposal incorporates your request to exclude search terms that relate to cosigner release or to recertification/renewal of income-driven repayment plans.

   Regarding the search for documents responsive to category 3 from the email files of existing custodians, the Bureau's proposal incorporates part of your request to exclude certain existing custodians. We agree to exclude the following four custodians: Lisa Stashik, Hans Stullken, Amanda LaPenta, and Michael Outten. The other custodians whom you propose excluding have responsibility for topics that relate to category 3. For example, certain of those custodians have primary responsibility for auditing, monitoring, and quality assurance relating to communications with borrowers about repayment options. Discussions about the appropriateness, suitability, costs, or benefits of income-driven repayments plans or forbearance for certain groups of borrowers could easily arise in the context of auditing communications with borrowers about repayment options. Similarly, certain custodians that you propose excluding have primary responsibility for Navient's contract with the Department of Education, as it relates to this case. Defendants told the Court that any discussions relating to the issues covered by category 3 would flow from and be contained in Defendants' communications with the Department. (Doc. 83, p. 4-5.) It stands to reason that, like the external communications of those custodians, their internal communications are likely to contain documents relevant to category 3.

   As to the search for documents responsive to category 3 from the email files of new custodians, the Bureau appreciates that Defendants are unlikely to know the volume of documents with hits from those custodians by Wednesday. To address this concern while meeting the May 31 deadline set by the Court, the Bureau proposes capping the volume of documents with hits that Defendants would be required to search with respect to these new custodians. The Bureau's proposal includes a cap of 100,000 documents with hits, after removing duplicates and non-inclusive emails. Should the search terms identify more than 100,000 documents with hits, the Bureau would request search reports from Defendants so that the Bureau can determine how to reduce the volume down to the cap.

   Regarding the search for documents responsive to category 4, the Bureau's proposal eliminates seven of Defendants' original searches. The proposal maintains a focus on the issues

relevant to this case. We cannot accept Defendants' May 21 proposal, as it continues to rely heavily on identifying emails discussing specific documents, not the issues.

During Friday's discussion, you asked for the Bureau's position on how it would react if aspects of Defendants' privilege review resulted in privileged documents being produced. The Bureau requested additional information to understand the process which you contemplated using and for which you are seeking assurances that the Bureau would not claim that the process was deficient for purposes of FRE 502. As noted during our call, the Bureau will continue to act reasonably when dealing with protected information. For example, after Defendants previously produced documents that appeared to be privileged, the Bureau notified Defendants and, after receiving privilege assertions from Defendants that were untimely under the Protective Order, destroyed the documents.

The Bureau's proposals have eliminated from your review hundreds of thousands of documents that are unlikely to contain relevant information. We are hopeful that Defendants will accept this proposal. The Bureau continues to be available at 5:00 p.m. today should Defendants have any questions about the proposal, but we are amenable to postponing the call until Wednesday morning should Defendants require additional time to review it. Given the need to file a joint letter with the Court by May 31, we think it is imperative that the parties' conferral process conclude imminently.

Finally, we look forward to today's 3:00 p.m. conversation with Defendants e-discovery employees and vendors to ensure that Defendants receive the full benefit of the Bureau's proposal to exclude non-inclusive emails from the review.

Regards,

/s/ Nicholas Lee

## Categories 1, 2, 4, and 5

For these categories, the Bureau's global compromise consists of the following:

- **Search Terms:** Subject to the proposed modifications identified below, Defendants will use the search terms attached to Ms. Dryhurst's May 11 email to the Bureau. The attachments are titled "Category 1 Emails re Policies.pdf," "Category 2 Emails re Audits.pdf," "Category 4 Emails re IDR Notices.pdf," and "Category 5 Emails re ED.pdf."
    - **Modification of Category 1 searches:** Eliminate all searches referencing "cosign*" or "(renew* OR recertif*)."
    - **Modification of Category 4 searches:** Eliminate the searches in footnote 1.[1]
- **Proximity limiters:** An across-the-board reduction in proximity limiters from 50, 25, and 15 to 25, 15, and 10, respectively.
- **Documents with hits:** Only documents with hits need to be reviewed for responsiveness. If a document with a hit is responsive, its non-privileged family members without hits must be produced. If a document with a hit is not responsive, its family members without hits need not be reviewed or produced.
- **Inclusive emails:** Non-inclusive emails (as defined by Relativity) need not be reviewed or produced.
    - Relativity defines an inclusive email as "An email that contains unique content not included in any other email, and thus, must be reviewed. An email with no replies or forwards is by definition inclusive. The last email in a thread is also by definition inclusive." Relativity defines a non-inclusive email as "An email whose text and attachments are fully contained in another (inclusive) email."
- **Email Xtender:** No documents stored exclusively on Email Xtender need to be reviewed or produced.

## Category 3

For this category, the Bureau's global compromise consists of the following:
- **Proximity limiters:** Same as above.
- **Documents with hits:** Same as above.
- **Inclusive emails:** Same as above.
- **Email Xtender:** Same as above.
- **New Searches and Custodians:**
    - For the existing custodians[2] identified in footnote 2 below, add the following searches:

---

[1] Eliminated Searches:
1. (forbearance OR FORA OR FORV OR FORB) w/25 (advantage OR disadvantage) w/15 (borrow* OR consumer OR customer)
2. (forbearance OR FORA OR FORV OR FORB) w/25 (effective* OR ineffective*)
3. (forbearance OR FORA OR FORV OR FORB) w/25 (encourage* OR sell OR sold)
4. (forbearance OR FORA OR FORV OR FORB) w/25 (priority w/15 ("income-driven" OR IDR OR IBR OR PAYE OR REPAYE))
5. (forbearance OR FORA OR FORV OR FORB) w/25 advis*
6. (forbearance OR FORA OR FORV OR FORB) w/25 alternative
7. (forbearance OR FORA OR FORV OR FORB) w/25 counsel

1. ((forbearance* OR FORA OR FORV OR FORB) OR ("income-driven" OR "income-based" OR "income-contingent" OR "income based" OR "income driven" OR "income contingent" OR IDR OR IBR OR PAYE OR REPAYE OR ICR)) w/10 (good OR better OR best OR bad OR wors* OR ideal OR prefer* OR priorit* OR optimal OR first OR last OR always OR explor* OR temporar* or brief* OR advantag* OR disadvantag* OR positive* OR negative* OR benefi* OR suited OR suitable OR applicab* OR compar* OR default* OR push* OR steer* OR pressur*)

2. (fail* OR "does not" OR "did not" OR never OR inadequate* OR adequate* OR insufficient* OR sufficient*) W/10 (mention* OR inform* OR told OR tell* OR advis* OR advice OR communicat* OR explain* OR notif* OR present*) W/10 (forbearance* OR FORB OR FORA OR FORV OR "income-driven" OR "income driven" OR "income-based" OR "income based" OR "income-contingent" OR "income contingent" OR IDR OR IBR OR ICR)

3. steer* W/5 (borrower* OR consumer* OR customer* OR caller*)

o   For the categories of new custodians[3] identified in footnote 3 below, use the following searches:

---

[2] Existing Custodians:
   1. Brian Lanham
   2. Patricia Peterson
   3. Jennifer Domenick
   4. Eileen Herbert
   5. Patricia Novrocki
   6. Jeanine Pysniak
   7. Troy Standish
   8. Patricia Potomis
   9. Angela Kamionka
   10. Holli Jeckell
   11. Kevin Woods
   12. Robert Sommer
   13. Marjorie Belton
   14. Judith Grassi
   15. Cheryl Hammes
   16. Jamie Hedge
   17. Robyn Hughes
   18. Robert Leary
   19. Michael Maier
   20. Paul Mayer
   21. Rick Nickel
   22. Sara Patterson
   23. Daniel Yost
[3] New Custodians:

1. ((forbearance* OR FORA OR FORV OR FORB) OR ("income-driven" OR "income-based" OR "income-contingent" OR "income based" OR "income driven" OR "income contingent" OR IDR OR IBR OR PAYE OR REPAYE OR ICR)) w/10 (good OR better OR best OR bad OR wors* OR ideal OR prefer* OR priorit* OR optimal OR first OR last OR always OR explor* OR temporar* OR brief* OR advantag* OR disadvantag* OR positive* OR negative* OR benefi* OR suited OR suitable OR applicab* OR compar* OR default* OR push* OR steer* OR pressur*)

2. (fail* OR "does not" OR "did not" OR never OR inadequate* OR adequate* OR insufficient* OR sufficient*) W/10 (mention* OR inform* OR told OR tell* OR advis* OR advice OR communicat* OR explain* OR notif* OR present*) W/10 (forbearance* OR FORB OR FORA OR FORV OR "income-driven" OR "income driven" OR "income-based" OR "income based" OR "income-contingent" OR "income contingent" OR IDR OR IBR OR ICR)

3. steer* W/5 (borrower* OR consumer* OR customer* OR caller*)

4. ((forbearance* OR FORA OR FORV OR FORB) OR ("income-driven" OR "income-based" OR "income-contingent" OR "income based" OR "income driven" OR "income contingent" OR IDR OR IBR OR PAYE OR REPAYE OR ICR)) W/25 (suitability OR unsuit* OR appropriate* OR inappropriate* OR inapplicab* OR advisable)[4]

---

1. Jack Remondi.
2. A random sampling of three individuals responsible for managing call centers on the federal loan servicing side of the business. (We request that the sample be drawn from employees who were employed by the company on January 1, 2013 in the lowest level of management over a single entire servicing call center as of that date, and who were employed in that position for at least one year. Once the pool of potential employees is identified, select the first three individuals in alphabetical order.) The Bureau agrees to limit the time period for discovery in this sample to the periods during which the custodians were in the role of managing call centers on the federal loan servicing side of the business.
3. A random sampling of three individuals responsible for reviewing the quality of customer service provided by call center customer service representatives on the federal loan servicing side of the business. (We request that the sample be drawn from employees who were employed by the company on January 1, 2013 in the lowest level of reviewing the quality of customer service provided by call center customer service representatives on the federal loan servicing side of the business, and who were employed in that position for at least one year. Once the pool of potential employees is identified, select the first three individuals in alphabetical order.) The Bureau agrees to limit the time period for discovery in this sample to the periods during which the custodians were in the role of reviewing the quality of customer service provided by call center customer service representatives on the federal loan servicing side of the business .

[4] This search was previously identified as search #5 in the Bureau's May 18 email to Defendants.

5. ((forbearance* OR FORA OR FORV OR FORB) OR ("income-driven" OR "income-based" OR "income-contingent" OR "income based" OR "income driven" OR "income contingent" OR IDR OR IBR OR PAYE OR REPAYE OR ICR)) W/25 (cost OR expens* OR loss OR effective* OR ineffective* metric OR criteria)[5]

6. ((forbearance* OR FORA OR FORV OR FORB) OR ("income-driven" OR "income-based" OR "income-contingent" OR "income based" OR "income driven" OR "income contingent" OR IDR OR IBR OR PAYE OR REPAYE OR ICR)) W/25 ((long W/5 term) OR (short W/5 term) OR limit*)[6]

o For the searches of the new custodians identified in footnote 3, the Bureau agrees to cap the volume of documents with hits that Defendants will search for these new custodians at 100,000. The 100,000 cap applies after Defendants have conducted deduplication, eliminated non-inclusive emails from the universe, and eliminated any emails that are part of the review being done for any other request or for the other custodians that are part of this request. If necessary to satisfy the cap, the Bureau will modify the searches or custodians to reduce the volume. In connection with any such modification, Defendants will provide the Bureau with search term reports for each category of new custodian showing the volume of unique documents with hits (excluding family members without hits) after conducting deduplication, eliminating non-inclusive emails, and eliminating any emails that are part of the review being done for any other request or for the other custodians that are part of this request.

---

[5] This search was previously identified as search #8 in the Bureau's May 18 email to Defendants.
[6] This search was previously identified as search #9 in the Bureau's May 18 email to Defendants.

# EXHIBIT 11

1

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF PENNSYLVANIA

Consumer Financial          )
Protection Bureau,          )
                            )
        Plaintiff           )
                            )
    VS.                     )    CASE NO. 3:17-CV-00101
                            )
                            )
                            )
Navient Corporation,        )
                            )
        Defendant           )
                            )
                            )
_____ )


TRANSCRIPT OF PROCEEDINGS - TELECONFERENCE
BEFORE THE SPECIAL MASTER THOMAS I. VANASKIE
THURSDAY, FEBRUARY 14, 2019 AT 11:43 A.M.
SCRANTON, PENNSYLVANIA


FOR THE PLAINTIFF:

    Andrea J. Matthews, Esq.
    Nicholas K. Jabbour, Esq.
    Nicholas C. Lee, Esq.
    Manuel G. Arreaza, Esq.

FOR THE DEFENDANT:

    Daniel P. Kearney, Esq.
    Daniel T. Brier, Esq.
    Richard Armezzani, Esq.
    Jonathan E. Paikin, Esq.
    Karin Dryhurst, Esq.

_____

DIANA GILBRIDE, RMR, FCRR
FEDERAL OFFICIAL COURT REPORTER
P.O. BOX G
SCRANTON, PA 18501-0090

54

1   case is focused.  That's simply not consistent with our own

2   understanding of the case, nor is it consistent with the

3   relevant periods that the Court has set forth, which runs from

4   2009 until January of 2017.

5           Now, to the extent that there may or may not be some

6   focus in discovery, I would point to the fact that defendants

7   have potentially produced e-mails not from e-mail extender but

8   from these more recent e-mail systems.  I just think the

9   assertion some more limited time period is the core of its 2014

10  to 2016 is not something that we think is an accurate

11  characterization.

12          I just want to reiterate at this point we think that

13  the steps that your Honor has put forward makes sense.  First

14  production off the -- off of the other systems that are not

15  e-mail extender, and second, a consideration of what costs

16  might be involved so that the Bureau may consider covering it.

17  We think that moving forward in that fashion makes since.

18          THE COURT:  I understand that.  But I also have a

19  problem in ordering that as a solution here because I'm looking

20  at a document in which the Bureau agreed that no document

21  stored exclusively [ph] on e-mail extender need to be reviewed

22  or produced.  I understand the argument of Navient that this is

23  a resolved issue and shouldn't be re-examined based upon the

24  showing that has been made thus far.  So, what I'm going to

25  suggest now is that we're back to sending to me the 2010