WILMERHALE

**Karin Dryhurst**

+1 202 663 6248 (t)
+1 202 663 6363 (f)
karin.dryhurst@wilmerhale.com

March 4, 2019

**<u>VIA ECF</u>**

Judge Thomas I. Vanaskie
JAMS, Inc.
1717 Arch Street, Suite 3810
Philadelphia, Pennsylvania 19103

      Re:  Defendants' Reply Brief in Support of Intra-Group Attorney-Client Privilege

Dear Judge Vanaskie:

Pursuant to Special Master Order #5 dated February 5, 2019, Defendants respectfully submit this letter brief in reply to the CFPB's February 25, 2019 brief, addressing attorney-client privilege in the context of affiliated corporate entities.

The issue before the Special Master is whether communications among various Navient entities and their shared counsel, in connection with the rendering of legal advice to those entities, are subject to the attorney-client privilege. Because each of the Navient entities was indisputably represented by Navient Solutions counsel and because the communications involved the rendering of legal advice jointly for those entities, there can be no question that the attorney-client privilege applies and protects the documents from disclosure to the CFPB. The

March 4, 2019
Page 2

WILMERHALE

CFPB has not cited a *single case* in which a court, on behalf of a third party, invaded the privilege as to communications involving the rendering of legal advice to corporate affiliates and the affiliates properly asserted the attorney-client privilege over the communications.  Nothing in the fact that such communications jointly involved affiliates changes their privileged status, because it is "indisputably correct" that "intra-group information sharing does not implicate the disclosure rule."  *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 363 (3d Cir. 2007).

      The CFPB's extended exposition of *Teleglobe* serves only to obscure these controlling principles.  Indeed, its brief fails even to *mention* the disclosure rule, and instead spends pages discussing analysis in *Teleglobe* that is unrelated to the circumstances here.  *Teleglobe* involved litigation between a subsidiary (Teleglobe) and its former corporate parent (Bell Canada, or "BCE") arising out of the bankruptcy of the subsidiary.  The litigation prompted a discovery dispute regarding BCE's withholding of documents in response to Teleglobe's requests.  The dispute centered around two main categories of documents: (1) documents related to communications among BCE attorneys and Teleglobe employees as to which BCE recognized a "common interest" with Teleglobe; and (2) documents reflecting legal advice regarding BCE's plans for Teleglobe that were, according to

BCE, "intended as advice solely to [BCE] and not as part of any joint representation" with Teleglobe.  *Teleglobe*, 493 F.3d at 355.  BCE produced the former category, in recognition of its "common interest" with Teleglobe, but withheld the latter category.  The issue before the Third Circuit was whether Teleglobe could obtain documents involving only legal advice to BCE because the documents were part of a joint representation between Teleglobe, BCE, and BCE's attorneys.  In other words, the question was whether, in adverse litigation, Teleglobe's status as a joint client entitled it to BCE documents that were within the scope of that representation.

The circumstances of *Teleglobe* bear no resemblance to the CFPB's contentions here.  Rather, the CFPB seeks to have the Special Master apply the disclosure rule, on behalf of a third party, to invade the privilege of corporate affiliates jointly represented by in-house counsel.  No case supports that approach, and it flies directly in the face of *Teleglobe*'s conclusion that "intra-group information sharing does not implicate the disclosure rule."  *Teleglobe*, 493 F.3d at 363.  The CFPB's only response on this critical issue is in a footnote, where it appears to elide the adverse litigation exception and the disclosure rule, claiming that *Teleglobe* "concluded that the analysis is the same regardless whether a party to the purported joint representation seeks the documents."  Doc. 234, at 3 n.1.

That is plainly incorrect. The Third Circuit held that the *only* basis on which Teleglobe (and its debtors) could obtain BCE documents was as joint clients subject to the adverse litigation exception. *See Teleglobe*, 493 F.3d at 386-87 ("We hold that the District Court may only compel BCE to produce disputed documents because of the adverse-litigation exception to the co-client privilege."). And as Defendants explained in their initial brief, the adverse litigation exception applies only between the parties to the representation—*i.e.*, because *each* party controls the privilege, their shared attorney communications remain protected as to third parties. *See* Doc. 218, at 5-6. *Teleglobe* therefore provides no basis for an unrelated third party to use the disclosure rule to invade the privilege as to attorney communications involving corporate affiliates.

In the end, the CFPB's response boils down to the suggestion that Navient in-house counsel were somehow *not* jointly representing Navient's corporate affiliates. But that suggestion has no basis in fact. The existence of a joint representation is determined based on "the understanding of the parties and the lawyers in light of the circumstances," *Teleglobe*, 493 F.3d at 362 (quoting Restatement (Third) of the Law Governing Lawyers § 75 cmt. c), and its scope is likewise determined based on "the parties' intent and expectations," *id.* at 363. Here, Defendants have established that they are jointly represented by the same

attorneys, *see* Doc. 218-1 at ¶ 1; Doc. 218-2 at ¶ 4, and that their common counsel would not jointly represent them if their interests were adverse, *see* Doc. 218-1 at ¶ 3.  Defendants have also established their expectations that the scope of their joint representation has encompassed all joint communications with common counsel to date.  *See* Doc. 218-1 at ¶ 4; Doc. 218-2 at ¶ 5.  And there is nothing whatsoever from which it can be inferred that the joint representation has terminated.  *See* Doc. 218-1 at ¶ 7; Doc. 218-2 at ¶ 8.  No further inquiry is required.

  The CFPB offers no caselaw to the contrary.  *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467 (E.D. Pa. 2005) says nothing at all about what is required to establish a joint representation among corporate family members.  In fact, the court in *SmithKline* upheld reliance on attorney affidavits to support privilege assertions.  *See* 232 F.R.D. at 478.  The other cases cited by the CFPB, like *Teleglobe*, deal with corporate families whose relationships are in dispute.  *In re Grand Jury Subpoena #??06-1*, for example, rejected an argument that the former subsidiary of a defunct parent company could categorically assert privilege over the parent's attorney-client communications based solely on its status as a former subsidiary.  274 F. App'x 306, 310–11 (4th Cir. 2008).  And *Newsome v. Lawson* held that a joint-client suing a formerly joint attorney may compel the production of communications from the joint representation under the adverse-

**WilmerHale**

litigation exception. 286 F. Supp. 3d 657, 655 (D. Del. 2017). None of these cases support applying the disclosure rule to invade the privileged communications of corporate affiliates with their shared counsel.

                    Respectfully submitted,

                    /s/ Karin Dryhurst