

1700 G Street NW,
Washington, DC 20552

March 20, 2019

**Via ECF**

The Honorable Thomas I. Vanaskie, Special Master
U.S. District Court, Middle District of Pennsylvania
William J. Nealon Federal Bldg. & U.S. Courthouse
235 N. Washington Avenue
Scranton, PA 18503

      Re:    *CFPB v. Navient Corp., et al.*, Case No. 3:17-CV-00101-RDM

Dear Judge Vanaskie:

    I write on behalf of the Consumer Financial Protection Bureau. In response to Your Honor's instruction in Special Master Order #15 (Doc. 249) that the Bureau show cause in writing why it should not be required to produce certain documents, the Bureau respectfully states as follows:[1]

## I.    Documents under Category 1-E

    The Bureau will produce the documents listed in section 1 of Special Master Order #15. By producing these documents, the Bureau is not waiving, and expressly reserves, any objections to the relevance or materiality of the documents.

## II.    Document under Category 1-G

    The document identified in section 2 of Special Master Order #15, Bates numbered CFPB-NAV-0057522, is a memorandum from three attorneys in the Bureau's Office of Supervision Policy providing their legal advice and counseling regarding potential strategies for student loan servicing examinations in 2016 and 2017.

    The Bureau should not be required to produce the parts of this memorandum identified in Special Master Order #15 because the document is protected by the attorney-client privilege. The Bureau previously asserted attorney-client privilege over this document, and Defendants have not challenged that assertion.[2] As indicated in the description of the Bureau's attorney-client privilege assertion for this document (included at Appendix A to this letter), the memorandum is a

---

[1] To support the arguments below, the Bureau has attempted to address the content of each document as directly as possible while preserving their privileged nature.

[2] The Bureau logged this document at Bates number CFPB-NAV-0028117 under Category 3 of the Bureau's July 6, 2018 privilege log. Category 3 covers certain documents over which the Bureau asserts both the attorney-client privilege and the deliberative process privilege. Due to an inadvertent omission, the Bureau did not indicate in its supplemental privilege log that this document was also logged under Category 3. Category 3 is not included among the disputed categories challenged by Defendants and referred to Your Honor by the Court for *in camera* review.

communication from attorneys for the purpose of providing legal advice regarding potential violations of federal consumer financial protection law that may be identified in Bureau examinations or investigations.[3] The attorney-client privilege squarely applies to the specified paragraphs. The first of the two specified paragraphs on page 2 reflect the provision of legal advice by the attorneys regarding their "interpretations of the law." The second specified paragraph on page 2 states the attorneys' legal opinion that an entity has engaged in "questionable" (*i.e.*, potentially illegal) conduct and recommends appropriate parameters for a potential examination of that entity in light of that legal advice. The specified portion of the paragraph on page 6 reflects the attorneys' legal advice regarding whether certain practices would constitute a violation of the statutory prohibition against UDAAPs.

Because the document is protected by the attorney-client privilege, the Bureau believes that no further analysis is needed. However, to explain the Bureau's assertion of the deliberative process privilege, the Bureau notes that the memorandum presents legal recommendations and opinions from staff attorneys regarding supervisory examination strategies for 2016 and 2017, including their assessment of various legal factors they considered pertinent to decisions regarding examination strategies. It is predecisional to the final decision by former director Richard Cordray in October 2015 regarding the Office of Supervision's Examination Calendar for 2016 and 2017, including what entities and markets to examine and the order, priority, and focus of supervisory examinations for that period. Accordingly, the memorandum was a core part of a "quintessentially deliberative" process: the development of the Bureau's strategies to address particular issues under its statutory authority. *ICM Registry v. Dep't of Commerce*, 538 F. Supp. 2d 130, 135 (D.D.C. 2008); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (privilege applies to "process by which governmental decisions and policies are formulated") (quotation omitted); *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1121 (9th Cir. 1988) (recommendations for dealing with particular issues are "the essence of the deliberative process" and identifying and assigning priority to issues "lies at the very heart of the decisionmaking process").

Analysis of the specific paragraphs at issue leads to the same conclusion. The paragraphs on page 2 each discuss a "consideration" that the staff attorneys deemed pertinent to the deliberative process at issue. *See Carter, Fullerton & Hayes, LLC v. FTC*, 637 F. Supp. 2d 1, 6 (D.D.C. 2009) (declining to order production of "what the author decided and selected as pertinent facts or information" because that "would expose the deliberative process"). The specified portion of the paragraph on page 6 is deliberative because it contains the staff attorneys' discussion and analysis of certain practices for purposes of rendering recommendations regarding examination strategies. As the subsequent paragraph makes clear, their discussion was tied to consideration of whether focusing on issues would be "resource-intensive." Recommendations regarding resource allocation are deliberative. *See, e.g., Nat'l Wildlife*, 861 F.2d at 1121 ("These materials represent the tentative opinions and recommendations of Forest Service employees on matters instrumental to the formulation of policies governing the allocation of the Forest's resources to competing uses.").

Third, the specified paragraphs should not be produced because they are irrelevant, and Defendants cannot show a need for those materials. Where, as here, "documents at issue are not

---

[3] Legal advice and analysis is explicit throughout the document, including but not limited to the paragraphs immediately preceding the two specified paragraphs on page 2 (providing legal advice relating to examining entities for potential violations of specified laws and regulations), the fourth full paragraph of page 3 (same), and the second full paragraph on page 4 (same).

relevant to the controversy," the party seeking the documents "cannot, as a matter of law" overcome the deliberative process privilege. *U.S. v. Farley*, 11 F.3d 1385, 1390 (7th Cir. 1993). This memorandum in its entirety is irrelevant because internal government deliberations, including unpublished views of government personnel, are wholly irrelevant to whether a defendant violated the law. "Courts may not [] rely on unpublished opinions of agency staff" because they are "not pertinent" to that determination. *Id.*

In addition, the first part of the first specified paragraph on page 2 reflects Bureau staff's views regarding federal statutes and regulations that are different from the statutes cited in the Complaint (UDAAP, FCRA, and FDCPA). The second part of that paragraph is also irrelevant to this case because it involves an issue that is entirely unrelated to any claim or defense in this case – misrepresentations about late fees. As to the second identified paragraph on page 2, the analyses and recommendations of staff attorneys regarding which entities the Bureau should examine, and the scope and focus of the Bureau's examinations, are not relevant to any claim or defense.

The specified portion of the paragraph on page 6 is also irrelevant. It involves staff's discussion of a particular practice that the Bureau's examiners analyzed in "previous exams" of third parties. The discussion of "previous exams" does not refer to any examination of Defendants.[4] The Court has already held that the practices of third party servicers and debt collectors are irrelevant to this lawsuit. *See* 5/4/18 Mem. Op. at 88 ("[T]he actions, inactions, or understandings of other industry participants are not relevant to the present lawsuit …. [T]his suit is against specific defendants, and, consequently, those defendants are the only loan servicers whose actions are relevant."). Consequently, the Bureau "need not produce any documents related to the policies and practices of other entities that service federal student loans." *Id.* Further, with regard to the first sentence of the paragraph on page 6, the choice of which issues to cover in the Bureau's examinations is not relevant to any claim or defense.

### III.    Documents under Category 79

The documents Bates numbered CFPB-NAV-0057077 and CFPB-NAV-0057081 are drafts of the July 20, 2016 Memorandum from Under Secretary of Education Ted Mitchell to James Runcie, COO of Federal Student Aid, regarding "Policy Direction on Federal Student Loan Servicing." Bureau staff provided assistance to personnel in the Department of Education (ED) in drafting the July 20, 2016 memorandum. These two documents are deliberative drafts with numerous tracked edits and comments containing or reflecting the views, opinions, and recommendations of personnel from various agencies, including the Bureau and ED. It is well established that drafts of such documents, and communications relating to the drafting of such documents, are properly withheld. *See, e.g., Wadhwa v. Sec'y U.S. Dep't of Veterans Affairs*, 707 Fed. Appx. 61, 63 (3d Cir. 2007). In addition, the Supreme Court has explained that the deliberative process privilege "does not distinguish between inter-agency and intra-agency memoranda," as "Congress plainly intended to permit one agency possessing decisional authority to obtain written recommendations and advice from a separate agency not possessing such decisional authority without requiring that the advice be any more disclosable than similar advice received from within the agency." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 188 (1975). *See also Nat'l Wildlife*, 861 F.2d at 1121 (privilege protected inter-agency letters in which one agency provided recommendations to another agency to assist that agency in making a determination);

---

[4] The Bureau has never examined Navient, and the Bureau's examination of Pioneer did not cover the practice at issue (Pioneer is not a servicer).

*Soghoian v. OMB*, 932 F. Supp. 2d 167, 183 (D.D.C. 2013) ("Exemption 5 has never required agencies to have final decision-making authority themselves, but instead requires only that they be part of the deliberative process along with another agency possessing such authority."). Like internal Bureau documents, the July 20, 2016 Memorandum drafts relate to this inter-agency process of developing policies and strategies to address issues and problems in the student loan market. *See, e.g., ICM Registry*, 538 F. Supp. 2d at 135.

The documents Bates numbered CFPB-NAV-0057119 and CFPB-NAV-005690 are drafts of a document titled "Technical Assistance for Federal Student Aid," which contains recommendations and advice regarding student loan servicing issues that the Bureau provided to ED to assist in the development and drafting of the July 20, 2016 policy memorandum. This document is protected by the deliberative process privilege for the reasons explained in the preceding paragraph.

The document Bates numbered CFPB-NAV-0057082 is an email chain involving personnel at various federal agencies, including the Bureau and ED, concerning the drafting of the July 20, 2016 policy memorandum. The document was part of the process of drafting the memorandum, and it is protected by the deliberative process privilege for the reasons explained above with respect to the drafts themselves. In addition, the Bureau is asserting the attorney-client privilege and attorney work product doctrine over the last paragraph on page 1 of the document and the remainder of that paragraph on page 2 (in the email sent by Mike Pierce on July 18, 2016 at 2:43 pm). The description supporting these privilege assertions is included in Appendix B.[5] The paragraph at issue is protected by the attorney-client privilege because Mr. Pierce sent the communication to convey legal advice from attorneys in the Bureau's Office of Enforcement regarding their assessment of potential claims against an entity and potential defenses. Communications that reflect or relay legal advice from an attorney are protected by the attorney-client privilege even if the attorney who provided the legal advice is not included on the communication. *See, e.g., King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 2013 WL 4836752, at *8 (E.D. Pa. Sept. 11, 2013) ("A document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds.") (quotation omitted); *Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, 2017 WL 10259770, at *3 (D.N.J. Sept. 12, 2017) (email reflecting legal advice from an attorney was privileged even though no attorneys were "a party to the email"), report and recommendation adopted, 2017 WL 10259774 (D.N.J. Nov. 21, 2017). Similarly, disclosure of the paragraph at issue would reveal the opinion work product of Bureau enforcement attorneys – specifically, their mental impressions, opinions, and legal theories in anticipation of potential litigation – which is accorded nearly absolute protection. Fed. R. Civ. P. 26(b)(3); *Sporck v. Peil*, 759 F.2d 312, 313 (3d Cir. 1985) (opinion work product "is accorded almost absolute protection" to "ensur[e] that each side relies on its own wit in preparing their respective cases").

Even if these documents could be said to have some relevance, "relevance alone is an insufficient reason for breaching" the privilege. *Farley*, 11 F.3d at 1390. Defendants cannot demonstrate a particularized and compelling need for the documents overcome the government's interest. *See Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 854 (3d Cir. 1995) (internal citation omitted); *Farley*, 11 F.3d at 1389-90 (party must show a "particularized need"). First, any attempt to use the agencies' pre-decisional deliberations regarding potential new contract

---

[5] Due to an inadvertent omission, the Bureau did not previously assert attorney-client privilege or attorney work product over this paragraph.

4

terms to make inferences about ED's interpretation of its existing contracts is precluded by the repeated assertions in Defendants' Answer that their contracts with ED "speak for themselves." Answer ¶¶ 3, 22, 26-33 (Doc. 61). *Warnick v. Home Depot U.S.A., Inc.*, 516 F. Supp. 2d 459, 478 (E.D. Pa. 2007) ("Consideration of terms outside the [contract] is barred by the parole evidence rule" because "the contract speaks for itself").[6] Second, the Court has already held that "the CFPB's lawsuit does not retroactively impose any requirements on Navient" and "complying with . . . contractual obligations does not relieve Navient of its obligation" to comply with the CFPA. 8/4/17 Mem. Op. at 18, 20 (Doc. 57).

If Your Honor has any questions regarding the above, the Bureau would welcome the opportunity to address such questions at a forthcoming teleconference or in writing.

Respectfully submitted,<br>
/s/ Manuel Arreaza

---

[6] Even if parole evidence were permissible, Defendants cannot demonstrate a particularized need for these materials because there are other sources of evidence regarding the meaning of the contract, as explained on pages 12-13 of the Bureau's Response to Defendants' Statement of Relevance (Doc. 144). *See Redland Soccer Club, Inc.*, 55 F.3d at 854 (internal quotations and citation omitted) (balancing test must consider "the availability of other evidence"); *Ford Motor Co. v. United States*, 94 Fed. Cl. 211, 220 (2010) (documents not needed because the issue "can be resolved without resort to the Government's internal deliberations"); *General Elec. Co. v. Johnson*, 2007 WL 433095, at *16 (D.D.C. Feb. 5, 2007) (deliberative documents unnecessary to resolve issue due to availability of other evidence).

# APPENDIX A

## Category 3

Description: Confidential pre-decisional and deliberative communications and documents, or portions of documents, relating to the drafting and submission of briefing and recommendation documents addressed to former Director Richard Cordray and Assistant Directors Peggy Twohig and Paul Sanford concerning setting Office of Supervision strategy; email discussions and drafts of recommendation memoranda were generated to develop the content of the memoranda through a collaborative drafting and input process; final recommendation memoranda reflect the opinions of staff and present suggestions about how to shape and steer Supervision strategy; documents contain the authors' opinions, recommendations, and contemporaneous thoughts about Bureau activities and strategies, prior exams and investigations, risks presented by entities or industries, market trends in student loan servicing and origination, and the Bureau's resources; documents preceded decisions as to Supervision strategy or formed part of an analysis or discussion that was considered as part of an overall strategy formulation but did not result in a specific decision; communications were made for the purpose of formulating or providing legal advice to the Bureau regarding potential violations of federal consumer financial protection law that may be identified in Bureau exams or investigations.

Privileges: Deliberative Process Privilege, Attorney-Client Privilege

# APPENDIX B

NEW CATEGORY:

**Category 113**

Description: Confidential communication by personnel in the Bureau's Office for Students to personnel in the Bureau, the Department of Treasury, the Department of Education, and the Executive Office of the President for the purpose of conveying legal advice provided by Bureau enforcement attorneys regarding potential claims against an entity and potential defenses; communication was made in anticipation of potential litigation and reflects mental impressions, legal theories, and opinions of the Bureau's enforcement attorneys in anticipation of potential litigation.

Privileges: Attorney-Client Privilege; Attorney Work Product

Documents Withheld or Redacted: CFPB-NAV-0057082