1700 G Street NW,
Washington, DC 20552



April 9, 2019

**<u>Via ECF</u>**

The Honorable Thomas I. Vanaskie, Special Master
U.S. District Court, Middle District of Pennsylvania
William J. Nealon Federal Bldg. & U.S. Courthouse
235 N. Washington Avenue
Scranton, PA 18503

      Re:    *CFPB v. Navient Corp., et al.*, Case No. 3:17-CV-00101-RDM

Dear Judge Vanaskie:

      The Bureau writes concerning Defendants' withholding of hundreds of responsive, non-privileged documents based on inappropriate assertions of the attorney work product privilege. Since the Bureau first raised the issue with Your Honor in January, Defendants have re-examined 1,377 assertions of the work product privilege. As a result, Defendants recently produced to the Bureau hundreds of responsive documents that were initially withheld as privileged, and re-classified hundreds more as not actually being protected by the attorney work product privilege and instead being protected by the attorney-client privilege. Though Your Honor's *in camera* review is underway, the Bureau believes that relief is warranted now, because the error rate of 44.8% that came to light as a result of Defendants' re-examination of their privilege assertions is unacceptably high.

      Ordering re-examination of all of a party's privilege assertions is appropriate when sampling shows unacceptably high error rates. For example, in *Meeropol v. Meese*, 790 F.2d 942, 960 (D.C. Cir. 1986), the D.C. Circuit found a sample's error rate of 25% to be "unacceptably high" and remanded to the district court with instructions to require the re-examination of all of that party's privilege assertions that had not been previously submitted for review. Other courts have reached similar results. *See, e.g., United States v. Louisiana*, 2015 WL 4619561, at *7-8 (M.D. La. July 31, 2015) (ordering re-review of all privilege assertions after high error rate associated with sample); *Henderson Apartment Venture, LLC v. Miller*, 2011 WL 1300143, at *10 (D. Nev. Mar. 31, 2011) (same).

      Here, the error rate of 44.8% nearly doubles the error rate that the D.C. Circuit found to be unacceptable in *Meeropol.* The 44.8% error rate is a weighted average of the error rates associated with two sets of documents over which Defendants asserted work product privilege. The first set is comprised of the 915 documents that Defendants identified as lacking information about the actual or anticipated litigation needed to support a work product privilege claim. On March 11, Defendants provided supplemental information for only 364 of those 915 work product privilege assertions. *See* Ex. 1 (Mar. 11, 2019 Letter, filed under seal) at part II. They ceased asserting the work product privilege over the remaining 551 documents (approximately 60% of the 915 documents). *See id.* Of those 551 documents, Defendants produced 341 of them, advising the Bureau that the documents "have been determined not to be privileged" (Ex. 2 (Mar. 5, 2019 Letter)); and for 210 of them,

Defendants determined that another privilege, not the work product privilege, applied (Ex. 1 at parts III and IV).

The second set is comprised of the 462 documents that were selected for *in camera* review. On March 5 and 13, Defendants provided Your Honor with supplemental information in connection with that review. After a request by the Bureau, Defendants provided that supplemental information to the Bureau on March 15. Of the 462 documents to be reviewed, Defendants re-categorized 12 documents as protected by the attorney-client privilege, not the work product privilege. And Defendants did not provide supplemental information for 54 documents, opting instead to produce the documents to the Bureau. Thus, even before Your Honor's review began, 14 percent of the documents in the sample set (66 out of 462) had been erroneously marked as being protected by the attorney work product privilege.

During the parties' April 3 conferral about this issue (which followed a March 26 letter from the Bureau), Defendants contended that switching a privilege assertion from the work product privilege to the attorney-client privilege should not be considered an error. The Bureau disagrees. The relevant question is whether Defendants' initial designation of documents as protected by the work product privilege accurately identified documents prepared by or for an attorney in anticipation of litigation. Because Defendants have concluded that the work product privilege does not attach to these documents, the original assertions of the work product privilege are appropriately classified as errors. *See, e.g.*, *Fosbre v. Las Vegas Sands Corp.,* 2016 WL 183476, at *9 (D. Nev. Jan. 14, 2016) ("Defendants' withdrawal of privilege assertions to a significant number of documents weighs in favor of *in camera* review . . . . [because it] raises legitimate doubts about its care in asserting the attorney-client privilege"). In any event, even if those documents were excluded, as Defendants suggested, the error rate would remain unacceptably high at 28.7% across all 1,377 documents.

Defendants also have suggested that the errors associated with the set of 915 documents should be ignored because that set was not a random sample. But, if anything, these errors are even more probative because Defendants self-identified that sample; neither Your Honor nor the Bureau had a hand in identifying the 915 documents in this set. *See* Defendants' Ltr. to Judge Vanaskie (Doc. 206) at 3; Feb. 5, 2019 Hearing Transcript at 11:4-10. Indeed, though the Bureau requested that Defendants provide us with a list of the 915 documents that they identified before their review commenced, and Defendants agreed to do so (*see* Feb. 14, 2019 Hearing Transcript at 21:9-19), they never did. Thus, the fact that Defendants' selected their sample of 915 documents does not provide a basis for exclusion of that sample in calculating an error rate.

In light of the high error rate that has been discovered, and consistent with the approach adopted by other courts, the Bureau proposes a path forward where Defendants re-evaluate the remaining documents for which they assert the work product privilege that are not part of the above-described supplementations. Thereafter, a new sample for *in camera* review should be drawn to test whether the incorrect assertions of the work product privilege persist at a rate that warrants more drastic relief. *See, e.g., United States v. Louisiana*, 2015 WL 4619561, at *7-8 (M.D. La. July 31, 2015) (warning party, after *in camera* review of a sample of documents from the privilege log showed an unacceptably high error rate, that persistent erroneous privilege assertions "may result in a finding of waiver and an order of production as to all documents being withheld").

      The Bureau should not be deprived of responsive documents for which the work product privilege is incorrectly asserted. Defendants' flawed privilege review withheld hundreds of responsive documents that were only recently produced to the Bureau after Defendants were required to re-examine their privilege assertions. Given the high error rate associated with Defendants' work product privilege assertions, the requested relief is the bare minimum that needs to be done to credibly conclude that responsive, non-privileged documents are not being withheld in significant numbers.

                                              Respectfully submitted,
                                              /s/ Nicholas Lee