# WILMERHALE

April 15, 2019

**Karin Dryhurst**

<u>Via ECF</u>

+1 202 663 6248 (t)
+1 202 663 6363 (f)
karin.dryhurst@wilmerhale.com

Honorable Thomas I. Vanaskie
JAMS, Inc.
1717 Arch Street, Suite 3810
Philadelphia, Pennsylvania 19103

Re: The CFPB's Request For Re-Review of Defendants' Work-Product Assertions

Dear Judge Vanaskie:

Defendants respectfully submit this response to the CFPB's April 9 letter. Although the CFPB does not acknowledge it, the letter is in effect a belated motion for reconsideration of Special Master Order #5. Doc. 211 ¶¶ 4-5. For the reasons below, the request should be denied as premature.

As background, Defendants withheld approximately 6,600 documents out of the nearly one million produced (approximately 0.007%) on the basis of attorney work product only. On February 5, the CFPB requested *in camera* review of a sample of Defendants' work-product assertions as "a substitute for going back through" all of the documents. Feb. 5 Tr. at 12. The Court used a random number generator and identified 462 documents to be provided for *in camera* inspection. Upon review, Defendants withdrew their work product assertions and produced 11% (or 53) of those documents.[1] On March 5, Defendants provided the remainder to the Court, which has been conducting its *in camera* review. Rather than wait for the outcome of the review, the CFPB demands that Defendants be ordered to undertake the highly burdensome task of re-reviewing all documents logged as attorney work product. It justifies this demand by improperly inflating the 11% "error rate" of the random sample to 44.8% in two ways.

*First*, 12 of the 462 documents (2.6%) in the *in camera* review were re-designated attorney-client privileged. The CFPB claims these as "errors," but the re-designation of a small percentage of properly withheld documents from one privilege category to another is not an appropriate basis on which to demand a re-review of thousands of documents. As this Court noted: "[T]he question is, Was a privilege properly asserted? Were the documents properly withheld or properly redacted? And that's the issue I would be most concerned with and would want to focus on." Feb. 5 Tr. at 20. The situation here is no different than when the CFPB

---

[1] As this Court noted, "[i]n cases like this matter, involving millions of pages of documents, it is not realistic to expect 100% accuracy in claiming protection from disclosure, whether the privilege review is conducted by counsel or by a court conducting in camera review." Special Master Order No. 1, at 6, n.5.

WILMERHALE

April 15, 2019
Page 2

added claims of attorney-client privilege to its challenged deliberative-process documents. *See, e.g.*, Doc. 258 at 2-3. In both instances, there was no contention that the attorney-client designated documents were improperly withheld.

*Second*, nearly three months ago, the CFPB complained that the descriptions on Defendants' log of work-product protection for certain documents "largely fail to identify the factual situation of the particular cases" at issue. Doc. 199 at 5. To resolve this dispute, Defendants agreed to re-review the 915 documents at issue and to identify the litigation (or anticipated litigation) on which the work product claims were based. Doc. 206 at 3. Defendants ultimately produced a subset of these documents, which is not surprising given the unique circumstances of the review. The 915 were not a random sample, however, and it is not surprising that the "error rate" for these documents might be somewhat higher. But the Court has already selected a true random sample, and it is the Court's ongoing *in camera* review of that sample that will determine any "error rate."

Defendants respectfully request that the Court deny the CFPB's request and instead follow the plan it ordered in Special Master Order No. 5. The parties can discuss appropriate next steps, if any are needed, after the Court completes *in camera* review.

Respectfully submitted,

KD/NB

Karin Dryhurst