IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | : | |
| Plaintiff | : | |
| | : | 3:17-CV-101 |
| v. | : | (Judge Mariani) |
| | : | Special Master Thomas I. Vanaskie |
| NAVIENT CORPORATION, et al., | : | |
| Defendants. | : | |

## SPECIAL MASTER REPORT #4: SETH FROTMAN'S MOTION TO QUASH SUBPOENA, TO STAY DEPOSITION, AND IN THE ALTERNATIVE FOR PROTECTIVE ORDER

### I. INTRODUCTION

This matter comes before me as Special Master pursuant to the Referral Order dated January 31, 2019. (Doc. 202). The current discovery dispute concerns a Motion to Quash Defendants' subpoena of a third-party, Seth Frotman ("Mr. Frotman"), who served as Plaintiff's Student Loan Ombudsman before his retirement on September 1, 2018. Mr. Frotman argues that (1) based on the strong presumption against deposing former high-level government officials, Defendants cannot demonstrate that his testimony is essential and necessary to obtain information unavailable elsewhere and (2) that the proposed deposition covers

1

information protected by the work product doctrine as well as the deliberative-process, law-enforcement, and attorney-client privileges. (Mem. in Supp. of Mot. to Quash (Doc. 128) at 2-3.)

In opposition to the Motion to Quash, Defendants argue that Mr. Frotman has relevant testimony and although some information they seek may be privileged, this is not a complete bar to his deposition. (Defendants' Br. in Opp. Mot. to Quash (Doc. 143) at 1-2.) Defendants further argue that Mr. Frotman cannot assert Plaintiff's privileges and Plaintiff Consumer Financial Protection Bureau (the "Bureau") has not sought to block Mr. Frotman's deposition. *Id.* at 2.

By way of its own response, the Bureau requests that Defendants be precluded from deposing Mr. Frotman on matters that are protected by the attorney-client privilege or that are irrelevant to any issue in the case. (Plaintiff's Response to Mot. to Quash (Doc. 138) at 1.)

Following submission of written briefs, I held oral argument on March 29, 2019. For the following reasons, I conclude that Mr. Frotman's deposition may proceed within the following parameters: (1) inquiries concerning the Bureau's internal policymaking and deliberations on student-loan servicing are irrelevant; (2) inquiries regarding Mr. Frotman's interpretation of regulations or other public guidance issued by the Bureau or the Department of Education ("ED") are irrelevant; and (3) the Bureau may interpose on a question-by-question basis any

objection on grounds of privilege or work product protection. Accordingly, the motion to quash the subpoena will be denied, but the motion for a protective order will be granted in part.

## II. BACKGROUND

The Bureau, an independent agency of the United States charged with regulating the offering and provision of consumer financial products and services under Federal consumer financial laws, brought this suit against Navient Corporation and two of its subsidiaries, Navient Solutions, Inc. and Pioneer Credit Recovery, Inc. Defendant Navient Corporation is a Delaware loan management, servicing, and asset recovery corporation. Defendant Navient Solutions, Inc., a wholly-owned subsidiary of Navient Corporation and formerly known as Sallie Mae, Inc., services federal and private student loans for more than 12 million borrowers. Defendant Pioneer Credit Recovery, Inc., an indirect wholly-owned subsidiary of Navient Corporation, is a debt collector that has collected defaulted federal student loan debt on behalf of ED and several state-based loan guaranty agencies. The Bureau's 11-count Complaint asserts claims against Defendants under the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5531, 5536(a), 5564, 5565, the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq., and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq., for alleged unlawful acts and practices in connection with Defendants' servicing and

collection of student loans. The Bureau requests, among other things, injunctive relief, restitution to harmed student borrowers, disgorgement of "ill-gotten revenue," and monetary penalties. (Doc. 1 at 65-66.) Defendants have denied the claims and asserted several affirmative defenses, including the defense that Defendants' conduct complied with ED regulations as well as their contracts with ED, so that they lacked "fair notice of what conduct the CFPB would later assert in this lawsuit are 'unfair', 'deceptive', or 'abusive' acts or practices." (Doc. 61 at 29.)

On October 6, 2018, Defendants served a deposition subpoena on Mr. Frotman, the Bureau's former Student Loan Ombudsman, calling for his deposition to be taken on October 24, 2018. Attached as Exhibit A to the subpoena was the following list of topics that Defendants intended to cover at his deposition:

> 1. Your knowledge of, participation in, and Communications related to the Investigation and the Servicing Practices alleged in the Complaint.
>
> 2. Your knowledge of, participation in, and Communications related to the [Bureau's] decisions, action, and/or statements in connection with the Action.
>
> 3. Your communications and interactions with Third Parties, including the U.S. Department of Education and any other federal agencies, any State Attorney General, any members or staff of the U.S. Congress, consumer advocacy organizations, any employee, agent, or officer of the [Bureau], and/or the media, relating to the Investigation or Action.

> 4. Your knowledge of the factual basis of the allegations in the Complaint.
>
> 5. Your public statements during the Relevant Time Period relating to the Investigation or this Action.
>
> 6. Your knowledge of and involvement in Communications between the [Bureau] and the U.S. Department of Education relating to proposed and final rules, regulations, and guidance the [Bureau] or Department of Education considered or issued relating to Servicing Practices or Communications relating to the Federal Loan Rehabilitation Program that are the subject of the allegations in the [Bureau's] Complaint filed in this Action.
>
> 7. The circumstances of your resignation from the [Bureau].
>
> 8. The steps you have taken to prepare to answer questions on the foregoing topics.

(Ex. A to Defendants' Br. in Opp. to Mot. to Quash, Doc. 143-1.)

Following service of the subpoena there ensued an exchange of communications between Mr. Frotman's attorney and Defendants, with Defendants agreeing to re-schedule the deposition. Unable to agree upon the scope of the deposition, Defendants served a new subpoena on November 1, 2018, scheduling the deposition for December 5, 2018, two days before the then-scheduled close of fact discovery. (Ex. E to Defendants' Br. in Opp. to Mot. to Quash, Doc. 143-1.) Defendants later agreed to Mr. Frotman's request to conduct the deposition on December 14, 2018. On December 4, 2018, Mr. Frotman moved to quash the

subpoena, stay the deposition, and in the alternative for a protective order. (Doc. 123.) By Order dated December 10, 2018, Judge Mariani stayed the deposition pending a decision on the motion to quash. (Doc. 131.)

Until his retirement from the Bureau on September 1, 2018, Mr. Frotman was charged with overseeing consumer protection in the nation's student loan market, chaired the cross-Bureau policymaking body focused on student loans, and led the staff of the Bureau's Office for Students and Young Consumers. Appointed by the Secretary of the Treasury, Mr. Frotman was the principal liaison between the Bureau and ED on student loan matters.

Mr. Frotman was heavily involved policy development within the Bureau. From March 2015 through January 2017, Mr. Frotman led the internal policy process in response to President Obama's 2015 directive to study the effects of student debt, address industry abuses, and strengthen borrower protections. Further, Mr. Frotman directed the development of a major 2015 report making specific recommendations on student loan servicing practices and conducted an internal deliberative process to evaluate rulemaking options. Mr. Frotman did not have authority over the initiation, investigation, or litigation of enforcement actions, including that of Defendants. Instead, Mr. Frotman acted as a subject-matter expert for enforcement attorneys. He did, however, hold a press conference on the day this action was filed.

By letter dated August 27, 2018, Mr. Frotman informed the Bureau's Acting Director that he was resigning as the Bureau's Student Loan Ombudsman effective September 1, 2018. In his letter, Mr. Frotman wrote:

> In my time at the Bureau I have traveled across the country, meeting with consumers in over three dozen states, and with military families from over 100 military units. I have met with dozens of state law enforcement officials and, more importantly, I have heard directly from tens of thousands of individual student loan borrowers.
>
> A common thread ties these experiences together – the American Dream under siege, told through the heart wrenching stories of individuals caught in a system rigged to favor the most powerful financial interests. For seven years, the Consumer Financial Protection Bureau fought to ensure these families received a fair shake as they as they strived for the American Dream.
>
> Sadly, the damage you have done to the Bureau betrays these families and sacrifices the financial futures of millions of Americans in communities across the country.
>
> For these reasons, I resign effective September 1, 2018. Although I will no longer be Student Loan Ombudsman, I remain committed to fighting on behalf of borrowers who are trapped in a broken student loan system.

(Ex. J to Defendants' Brief in Opp. to Mot. to Quash, Doc. 143-1.)

In seeking to avoid being deposed, Mr. Frotman argues that, based on his role as a former high-level federal agency official, Defendants cannot demonstrate the exceptional circumstances necessary to overcome the strong presumption that he is immune from depositions concerning information acquired in the course of his official duties. (Mem. in Supp. of Mot. to Quash Subpoena (Doc. 128) at 8.)

Mr. Frotman further argues that Defendants cannot show that the relevance of the information they seek outweighs the burden imposed on him to be deposed. *Id.* at 13. Finally, Mr. Frotman contends that most of the information covered in the proposed deposition is protected by the work-product doctrine and the Bureau's deliberative-process, law-enforcement, and attorney-client privileges. *Id.* at 15.

On December 17, 2018, the Bureau filed its response to the Motion to Quash. (Doc. 138.) The Bureau argues that information regarding Mr. Frotman's participation in and knowledge of the Bureau's investigation of and action against Defendants (covered by Topics 1 through 4 of the list of topics accompanying the initial subpoena) is protected under the attorney work product doctrine. *Id.* at 2. The Bureau notes that it has already provided Defendants with a complete response regarding the basis of the allegations in the Complaint from a designee who furnished hours of testimony. *Id.* at 4. The Bureau contends that questions regarding Mr. Frotman's interpretation of any regulation or other public guidance issued by the Bureau or ED should be prohibited as irrelevant. *Id.* at 5. The Bureau further contends that Defendants should not be permitted to ask questions that would require Mr. Frotman to disclose the substance of the Bureau's internal deliberations that did not include ED. *Id.* at 8. The Bureau also argues that Defendants should be prohibited from asking questions about Mr. Frotman's

resignation from the Bureau because the relevant time period runs through January 18, 2017, and his resignation has no bearing on this case. *Id.* at 9.

In opposition to the Motion to Quash, Defendants argue that Mr. Frotman's testimony is highly relevant to the claims and defenses in this case. (Br. in Opp. to Mot. to Quash (Doc. 143) at 1). Defendants elaborated:

> *First,* in his "unique" (Frotman Mem. at 11) role as Student Loan Ombudsman, Mr. Frotman had extensive knowledge of student loan borrower complaints, which he reviewed and analyzed as part of his statutory responsibility. Those complaints, and Mr. Frotman's analysis of them, bear on core issues in this case, including: (1) whether and to what extent any student loan borrowers complained of being "steered" into forbearance by Navient; (2) whether and how borrowers were informed about [income dependent repayment (IDR) options] by Navient or ED; and (3) the reasons why many borrowers may fail to apply for IDR despite efforts to inform them about the program. . . .
>
> *Second,* Mr. Frotman likely played a critical part in communications with ED about federal policy relating to IDR and forbearance. The Court has already held that "[g]iven Defendants' relationship with [ED] this type of communication [between Plaintiff and ED] may be relevant to their defenses. . . .
>
> *Third,* Mr. Frotman has made many public statements regarding student loan policy and likely had many interactions with third parties about issues faced by borrowers. Those communications also are clearly relevant to potential Navient defenses. For example, Mr. Frotman made public comments about an ED policy memo setting forth standards for how servicers communicate with borrowers about IDR, which Mr. Frotman publicly characterized as new policy "guidance." Defendants are entitled to question Mr. Frotman about those statements in order to explore their defense that Navient's conduct conformed to the government's previous guidance.

(*Id.* at 6, 7-8.) Defendants further argue that the fact that questioning may touch on issues protected by privilege is no categorical bar to proceeding with the deposition. (*Id.* at 1.) Defendants also contend that Mr. Frotman does not have standing to assert the Bureau's privileges and the Bureau has not moved to quash the subpoena. (*Id.*)

## III. DISCUSSION

Federal Rule of Civil Procedure 26(b)(1) states in part that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ." Fed. R. Civ. P. 26(b)(1). Depositions of parties and non-parties are valuable and efficient tools in the discovery process. However, there exists a balance between the need for broad discovery and the need to protect certain information. Accordingly, a subpoena may be quashed if it (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits of Rule 45(c); (iii) requires disclosure of privileged or protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3). The issues raised in this case concern privilege and undue burden.

### A. MR. FROTMAN'S POSITION AS THE BUREAU'S FORMER STUDENT LOAN OMBUDSMAN

In order to protect the "integrity of the administrative process," the United States Supreme Court has cautioned against deposing top federal officials in the absence of exceptional circumstances. *United States v. Morgan*, 313 U.S. 409, 422 (1941). The five-prong inquiry to determine whether exceptional circumstances exist is done on a case-by-case basis and has been applied to both current and former high-ranking government officials. *United States v. Sensient Colors, Inc.*, 649 F.Supp.2d 309, 322 (D.N.J. 2009). For the deposition of a high-level federal official to be permitted, the party seeking the deposition must show that "(1) the official's testimony is necessary to obtain relevant information that is not available from another source; (2) the official has first-hand information that cannot reasonably be obtained from other sources; (3) the testimony is essential to the case at hand; (4) the deposition would not significantly interfere with the ability of the official to perform his government duties; and (5) the evidence sought is not available through less burdensome means or alternative sources." *Id.* As explained in *United States v. Wal-Mart Stores, Inc.*, No. CIV.A. PJM-01-1521, 2002 WL 562301, at *3 (D. Md. Mar. 29, 2002):

> The courts will require the high-ranking official submit to deposition in litigation not specifically directed at his conduct if: 1) extraordinary circumstances are shown; or 2) the official is personally involved in a material way. The courts are cognizant of the fact that high-ranking officials will be privy to a wide range of information due solely to their positions. However, there comes a point when their involvement becomes less supervisory and directory and more hands-on and personal, that it is considered so

> intertwined with the issues in controversy that fundamental fairness requires the discovery of factual information held by the official by way of deposition. . . .

Assuming that Mr. Frotman previously occupied a sufficiently high level position in the federal government and that the protection suggested by the Supreme Court in *Morgan* extends to *former* government officials, Defendants have shown the requisite extraordinary circumstances and Mr. Frotman's personal involvement in the matters at issue here so as to warrant that he be deposed. Mr. Frotman served as the Bureau's Student Loan Ombudsman until his resignation. The Student Loan Ombudsman is only one of two political appointees within the Bureau and is the only position in the Bureau appointed directly by a member of the cabinet, the Secretary of the Treasury.[1] He thus stands in a unique position. As Mr. Frotman himself has noted, "Congress gave the Ombudsman the power, *unique* within the Bureau, to publicly issue his or her own reports, and to make independent recommendations, to the Secretary of Treasury, the Secretary of Education, and the relevant committees in Congress." (Mem. in Supp. of Mot. to Quash (Doc. 128) at 11; emphasis added.) His staff consisted of only a handful of members, indicating that he had hands on involvement in the matters for which he was responsible (Tr. of March 29, 2019 Oral Argument at 39, 57.) He was the

---

[1] The only other political appointee is the Bureau's Director, a presidential appointee.

principal liaison with ED on student loan matters, dealing directly with his counterpart political appointees at ED. (*Id.* at 49.) He appears to have played a critical role in the preparation of ED's "new set of repayment rights for borrowers" in the summer of 2016. (*Id.* at 55.) He was responsible for reviewing and analyzing thousands of complaints from student loan borrowers and preparing public reports about issues faced by borrowers, including issues related to the government's IDR programs. He also communicated with the Department of Education regarding contractual and regulatory requirements for federal student loan servicers like Defendants. Thus, Mr. Frotman has potentially relevant, first-hand knowledge of key issues in this case.

Defendants seek information regarding (1) whether and to what extent any student loan borrowers complained of being "steered" into forbearance by Defendants, (2) whether and how borrowers were informed about IDR by Defendants or ED, and (3) the reasons why many borrowers may fail to apply for IDR despite efforts to inform them about the program. Mr. Frotman's role in reviewing and analyzing student borrower complaints and his communications with ED about federal policy relating to IDR and forbearance are thus significant.

Based on the Court's previous ruling that "[g]iven Defendants' relationship with [ED], this type of communication [between Plaintiff and ED] may be relevant to their defenses," I find that Mr. Frotman is not immune from deposition given the

first-hand knowledge of potentially relevant topics that he alone can provide. However, as decided by Judge Mariani, inquiries concerning the Bureau's policymaking and deliberations on student-loan servicing "have no legal significance" and "are simply not relevant to Defendants' defenses." (May 4, 2018 Memorandum Opinion (Doc. 88) at 10.) Further, Mr. Frotman's interpretation of any regulation or other public guidance issued by the Bureau or ED is irrelevant. One former official's interpretation cannot adequately represent the Bureau's interpretation or position as to those regulations or guidance.

Therefore, with these categories of questions excluded, I find that Mr. Frotman's deposition is not barred based on his previous role as the Bureau's Student Loan Ombudsman.[2] Accordingly, the Bureau may make objections on a question-by-question basis to assert any applicable privilege, and the ordinary standards of relevance under Federal Rule of Civil Procedure 26 still apply, but the deposition of Mr. Frotman may proceed.[3]

---

[2] Given his unique position and substantial knowledge, I find that any burden imposed on Mr. Frotman to appear for a deposition is not "undue." Furthermore, because he is no longer employed by the federal government, there is no concern that important government functions will be disrupted by having him deposed.

[3] Mr. Frotman initially relied upon the Bureau's "*Touhy* regulations" as erecting a barrier to his deposition. *See* Brief in Supp. of Mot. to Quash (Doc. 128) at 17. During the oral argument, counsel for both Mr. Frotman and the Bureau receded from this position. (Tr. of March 29, 2019 Argument at 59-62, 67.)

### B. WORK PRODUCT DOCTRINE AND DELIBERATIVE-PROCESS, LAW-ENFORCEMENT, AND ATTORNEY-CLIENT PRIVILEGES

The work product doctrine, deliberative-process, law-enforcement, and attorney-client privileges are still available to the Bureau in response to any questions asked by Defendants to Mr. Frotman. Further, these protections belong to the Bureau, not to individual officials, and must be asserted by the Bureau itself. The Bureau argues that Topics 1 through 4 seek information about Mr. Frotman's knowledge of and participation in the Bureau's investigation of and action against Defendants and that this information is protected under the attorney work product doctrine. (Doc. 138 at 2.) I agree that Mr. Frotman's knowledge of the Bureau's investigation into Defendants is generally protected, and Defendants should avoid questions seeking this protected information during the deposition. But the existence of these privileges is not a complete bar to Mr. Frotman's deposition. *See New York v. Nat'l R.R. Passenger Corp.*, No. 04-CV-962 DNH/RFT, 2007 WL 4377721, at *3 (N.D.N.Y. Dec. 12, 2007). The Bureau "intends to make privilege objections to questions about its communications with the Department of Education on a question-by-question basis," and this is the appropriate method for asserting these protections rather than barring the deposition in its entirety. (Doc. 138 at 8.)[4]

---

[4] The parties have suggested that I preside over any deposition of Mr. Frotman to rule contemporaneously on objections to questions posed by

15

## IV. CONCLUSION

Mr. Frotman's Motion to Quash Subpoena will be denied, but his motion for a protective order will be granted to the extent that Mr. Frotman's deposition may proceed within the following guidelines: (1) inquiries concerning the Bureau's policymaking and deliberations on student-loan servicing are irrelevant; (2) inquiries regarding Mr. Frotman's interpretation of any regulation or other public guidance issued by the Bureau or ED is irrelevant; (3) inquiries regarding Mr. Frotman's participation in and knowledge of the Bureau's investigation of and action against Defendants will not be allowed; and (4) the Bureau may assert any appropriate privilege or make any appropriate objection on a question-by-question basis during the deposition.

## V. ORDER

IT IS ORDERED THAT:

1. Mr. Frotman's Motion to Quash Subpoena is hereby denied.

2. Mr. Frotman's alternative Motion for a Protective Order is granted as follows:
(a) the Bureau's policymaking and deliberations on student-loan servicing are irrelevant;

---

Defendants, and I am willing to do so. (*See* Tr. of March 29, 2019 oral argument at 75-76, 80.)

(b) Mr. Frotman's interpretation of regulations or other public guidance issued by the Bureau or ED are irrelevant, and

(c) Mr. Frotman may not be questioned about his participation in and knowledge of the Bureau's investigation of and action against Defendants.

3. The Bureau may assert any appropriate privilege or make any appropriate objection on a question-by-question basis.

4. Objections to this Report and Order must be submitted no later than twenty-one (21) days after service of this Report and Order.

DATE: April 16, 2019

s/ Thomas I. Vanaskie
THOMAS I. VANASKIE
SPECIAL MASTER