## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CONSUMER FINANCIAL      :
PROTECTION BUREAU,       :
                           :

      **Plaintiff**       :

                           :

                           :     **3:17-CV-101**
      **v.**              :     **(Judge Mariani)**
                           :     **Special Master Thomas I. Vanaskie**

                           :

NAVIENT CORPORATION, et al.,:
                           :

      **Defendants.**    :

## SPECIAL MASTER REPORT #5:
## *IN CAMERA* REVIEW OF DOCUMENTS WITHHELD IN WHOLE OR IN PART ON THE BASIS OF THE DELIBERATIVE PROCESS PRIVILEGE – FEBRUARY 11, 2019 PRODUCTION

### I.    INTRODUCTION

Special Master Report #3 (Doc. 266) sets forth the context for the *in camera* review of documents withheld by Plaintiff Consumer Financial Protection Bureau (sometimes referred to as Plaintiff, CFPB, or the Bureau) ordered by the Honorable Robert Mariani to be conducted by the Special Master.  Report #3 presented the background of this litigation along with an explication of the legal principles governing the examination of documents withheld in whole or in part based on the deliberative process privilege, also known as the "Inter- and Intra-Agency Deliberative Communications Privilege."  Paul F. Rothstein and Susan W. Crump,

1

*Federal Testimonial Privileges: Evidentiary Privileges Relating to Witnesses &
Documents in Federal-Law Cases* § 5:3 (2d ed. 2006). Special Master Report #3
also described the process by which that review was conducted and the preliminary
conclusions drawn from the review of the first set of documents produced by the
Bureau. This Special Master Report #5 incorporates by reference the discussion of
the background of this case, the governing legal principles, and review process
contained in the first 15 pages of Report #3. This Report #5 sets forth my
preliminary conclusions with respect to the Bureau's second production, made by
letter dated February 11, 2019.[1]

## II. Document Review by Category – The February 11, 2019 Production

The second production by Plaintiff was transmitted by letter dated February
11, 2019 (Doc. 219), and consisted of 198 documents from 3 separate Categories:
Category 41 (materials to brief Former Bureau Director Richard Cordray for a
Federal Student Aid Advisory Board Meeting), Category 72 (documents relating to
the preparation of revised Student Loan Examination Procedures), and Category 79
(documents relating to the drafting of a memorandum to Federal Student Aid Chief
Operating Officer James Muncie on the "Policy Direction on Federal Student Loan
Servicing"). In response to Special Master Orders #12 (Doc. 242) and #15 (Doc.

---

[1] As in the case of the Report #3, the parties will be afforded an opportunity
to submit objections to the preliminary conclusions expressed in this Report.

249), Plaintiff agreed to produce several documents.  This Report sets forth my

conclusions with respect to the documents that Plaintiff still maintains are

protected by the qualified deliberative process privilege.

### A.  Category 41 – Briefing Materials

Seventeen documents were grouped under Category 41, which was

described by Plaintiff as follows:

> Confidential pre-decisional and deliberative communications and
> documents relating to the drafting and submission of briefing
> materials to former Director Richard Cordray regarding a
> November 22, 2016 Federal Student Aid Advisory Board Meeting,
> including draft and final versions of a memorandum presented to
> the former Director and related communications containing
> selections or summaries of facts and issues deemed pertinent to the
> meeting and recommended discussion points for the meeting in
> connection with the process of preparing the former Director for the
> meeting and furthering the partnership among various executive
> agencies regarding the student loan market; purpose of documents
> and communications was to compile the information staff deemed
> most pertinent to former Director Cordray's participation in the
> meetings, to present him with candid assessments about issues
> likely to be discussed at the meetings, and to make suggestions
> about questions and key discussion points to raise during the
> meetings; briefing materials formed part of an analysis or
> discussion that was considered as part of Director Cordray's
> anticipated participation in the meetings but did not result in a
> specific decision, were advisory only, and were prepared by
> subordinates who lacked authority to make final decisions on these
> topics or direct Director Cordray's actions.

(Doc. 219 at 3.)

In response to Special Master Order #12 (Doc. 242), Plaintiff agreed to

produce two of the documents withheld under this Category, identified as Bates

Numbers CFPB-NAV-0057058 and 0057059 and appearing on the Plaintiff's

February 11th Spreadsheet as Documents 6 and 7.[2]  The first document, CFPB-NAV-0057058, is a 36-page draft of a slide deck entitled, "Federal Student Aid Loan Portfolio Briefing Document,"[3] and is dated August 29, 2016.  Duplicate copies of this document are found at Documents 11 (CFPB-NAV-0057063) and 16 (CFPB-NAV-0057068).[4]  Because they are exact duplicates, there is no need to produce them again.

The second document produced by Plaintiff in response to Special Master Order #12 (Doc. 242), CFPB-NAV-0057059, is a 29-page slide deck prepared by the Federal Student Aid Office.  It is titled, "IDR Enrollment," and dated November 22, 2106.  Duplicate copies of this slide deck are found at Documents 12 (CFPB-NAV-0057064) and 17 (CFPB-NAV-0057069).  Once again, because duplicates of these documents have been produced, there is no need to produce them again.

---

[2]  The numbers on the Spreadsheet appear above and to the left of Bates Number column, the farthest column to the left.  Unless otherwise indicated, any reference to "Document" in this Report is to the Document number on the February 11th Spreadsheet.

[3]  Federal Student Aid is an Office within the United States Department of Education ("ED").

[4] As previously noted, the inclusion of multiple duplicate copies for *in camera* review needlessly prolonged the process.

The remaining eleven documents withheld under Category 41 include two drafts of a November 18, 2016 five-page briefing memo to former Director Cordray (Documents 2 (CFPB-NAV-0057054) and 4 (CFPB-NAV-0057056)); duplicate copies of the final five-page briefing memo (Documents 9 (CFPB-NAV-0057061) and 14 (CFPB-NAV-0057066); four slightly redacted emails that transmitted the drafts and final copies of the briefing memo (Documents 1 (CFPB-NAV-0057053), 3 (CFPB-NAV-0057055), 8 (CFPB-NAV-0057060), and 13 (CFPB-NAV-0057065); and three copies of the agenda for the November 22, 2016 Federal Student Aid Advisory Board Meeting with the topics redacted (Documents 5 (CFPB-NAV-0057057), 10 (CFPB-NAV-0057062), and 15 (CFPB-NAV-0057067).

As explained at pages 29 and 30 of Special Master Report #3 (Doc. 266), briefing materials supplied to an agency head by staff are protected by the deliberative process privilege. *See Elec. Frontier Found. v. U.S. Dep't of Justice*, 890 F. Supp. 2d 35, 53 (D.D.C. 2012). So, too, are the email exchanges from which substantive content has been redacted. And while the redacted briefing memos and related emails may concern matters relevant to this litigation, the pertinent information is otherwise available to Defendants, especially considering the production of the August 29, 2016 "Federal Student Aid Loan Portfolio Briefing Document," and the November 22, 2016 Federal Student Aid IDR

Enrollment slide deck.  Consistent with Special Master Report #3, however, the

agenda for the November 22, 2016 meeting of the Federal Student Aid Advisory

Board, should not be withheld.  Accordingly, Plaintiff will be directed to produce

unredacted copies of the agenda (Documents 5 (CFPB-NAV-0057057), 10 (CFPB-

NAV-0057062), and 15 (CFPB-NAV-0057067)).

### B. Category 72 – Revised Student Loan Examination Procedures

Eight documents were withheld in whole or in part under Category 72,

described as follows:

> Confidential pre-decisional and deliberative communications from
> personnel in the Bureau to personnel in the Department of
> Education relating to the drafting of a revised version of the Student
> Loan Examination Procedures, and attached drafts of the revised
> Examination Procedures; purpose of communications was to obtain
> comments or feedback from personnel in the Department of
> Education regarding the revised Examination Procedures in
> connection with the process of developing recommendations to
> former Director Richard Cordray regarding the content of the
> revised Examination Procedures; redacted communications and
> attached drafts reflect nonfinal views, opinions, or proposals of
> Bureau personnel regarding the content of the revised Examination
> Procedures or Supervisory Highlights in connection with the
> aforementioned process; communications and documents preceded
> final decisions regarding the content of the revised Examination
> Procedures.

(Doc. 219 at 3.)

Withheld entirely were six drafts of the Bureau's October 2016 Education

Loan Examination Procedures (Documents 18 (CFPB-NAV-0057111), 19 (CFPB-

NAV-0057113), 21 (CFPB-NAV-0057115), 23 (CFPB-NAV-0057121), and 25

(CFPB-NAV-0057052).  Withheld in part were three email exchanges relating to

the drafting of the Examination Procedures (Documents 20 (CFPB-NAV-

0057111), 22 (CFPB-NAV-0057114), and 24 (CFPB-NAV-0057051).

Significantly, the final version of the CFPB Education Loan Examination

Procedures is accessible to Defendants.  It is this final document that is the most

material one.  The withheld drafts and related redacted email exchanges are plainly

pre-decisional and deliberative in nature.  And while Plaintiff shared drafts of the

Examination Procedures with ED, such inter-agency collaboration on a matter of

mutual concern does not destroy the deliberative process protection.  *See Soghoian*

*v. Office of Mgmt. & Budget,* 932 F. Supp. 2d 167, 178–79 (D.D.C. 2013).

Because Defendants have available to them the final version of the Examination

Procedures, they cannot show that their interest in piercing the internal

deliberations of the involved government agencies outweighs the interest in

assuring the full and frank communications essential to the development of sound

policies and procedures.  *See E.E.O.C. v. FAPS, Inc.,* No. Civ. A. 10-3095 PGS,

2012 WL 1656738, at *26 (D.N.J., May 10, 2012) ("'in all but exceptional

circumstances it is considered against the public interest to compel the government

to produce inter-agency advisory opinions'").  Accordingly, Plaintiff will not be

required to produce any of the documents withheld in whole or in part under

Category 72.

**C. Category 79 – July 2016 Runcie Memorandum**

In a 50-page Memorandum dated July 20, 2016, ED Under Secretary Ted

Mitchell provided to James Runcie, Chief Operating Officer of Federal Student

Aid, "policy direction for the servicing of all federal student loans."[5]  The

Memorandum, a copy of which was shared with Plaintiff and the U.S. Treasury

Department, continues:

> The direction [provided] below is driven by the experiences of
> federal student loan borrowers and is responsive to the need to
> establish a transparent and accountable system that allows for
> continuous improvement. Federal Student Aid should continuously
> evaluate its servicing contracts to ensure that public resources are
> used efficiently and effectively to promote borrower success and
> protect taxpayers' investments. We look forward to working with
> you in developing a servicing system consistent with the following
> policy direction. To that end, we will continue our collaboration
> with our colleagues across the Administration as we work with
> Congress to ensure the public's commitment to these programs is
> safeguarded by the investment necessary to create the high-quality
> student loan servicing system warranted by a trillion dollar
> portfolio, and that adequate resources are made available to ensure
> success.

Plaintiff claims that 172 documents relating to the Runcie Memorandum,

Documents 26 through 198, fall under the protection of the deliberative process

privilege.  Those documents are collected under Category 79, described as follows:

> Confidential pre-decisional and deliberative communications and
> documents prepared   by or shared among personnel in the Bureau,
> personnel in the Department of Education, personnel  in the

---

[5] The final Memorandum has been produced by Plaintiff, and it is the copy
provided by Plaintiff that is the source for quotations from it in this Report.

> Department of Treasury, and/or personnel in the Executive Office
> of the President relating to the development and drafting of the July
> 20, 2016 Memorandum from Ted Mitchell to James
> Runcie regarding "Policy Direction on Federal Student Loan
> Servicing," including documents reflecting the provision of
> technical assistance from personnel in the Office for Students to
> personnel in the Department of Education relating to student loan
> servicing, drafts of the memorandum, and related communications;
> purpose of communications and documents was to develop, obtain,
> provide, or discuss opinions, recommendations, reactions,
> suggestions, or views of personnel in the Bureau and other federal
> agencies or offices regarding the content of the memorandum in
> connection with the process of drafting the memorandum;
> communications and documents contain or reflect non-final
> analyses, reactions, recommendations, suggestions, or views of
> personnel in the aforementioned federal agencies or offices in
> connection with the aforementioned process; communications and
> documents preceded final decisions regarding the content and
> publication of the memorandum.

(Doc. 219 at 3-4.)

Of those 172 documents, Plaintiff also claims that 27 are protected from

disclosure by the Attorney-Client Privilege.  (Documents 171 through 198.)

Fifteen of those documents are grouped under Categories 79 and 83 of Plaintiff's

Categorical Privilege Log.  Category 83 provides:

> Confidential communications involving attorneys in the Bureau's
> Legal Division and/or Bureau's Office of Supervision for the
> purpose of obtaining or providing legal advice regarding the
> drafting of the July 20, 2016 Memorandum from Ted Mitchell to
> James Runcie regarding "Policy Direction on Federal Student Loan
> Servicing"; attached drafts of the memorandum reflect such legal
> advice provided by attorneys in the Bureau's Legal Division and/or
> Bureau's Office of Supervision Policy.

(Doc. 107-9 at 10.)  The remaining 12 documents are grouped under Categories 79

and 84.  Category 84 carries the following description:

> Confidential communications for the purpose of obtaining or
> providing legal advice from attorney in the Department of
> Education regarding Department of Education regulations and
> aspects of student loan servicing; communications reflect sharing of
> information relating to and in furtherance of common interests
> relating to student loan servicing.

(*Id.* at 10-11.)  Plaintiff also asserts the "common interest" privilege for these last

12 documents.  Defendants have not presented any challenge to Plaintiff's

invocation of either the attorney-client or common interest privilege.  Because no

challenge has been made to Plaintiff's decision to withhold from discovery

Documents 171 through 198 on Plaintiff's February 11th spreadsheet, the

substance of those documents will not be addressed in this Report.[6]

---

[6]  Special Master Order #12 directed Plaintiff to explain the basis for withholding
under Categories 79 and 83 the document identified by Bates Number CFPB-
NAV-0057126.0001 (Document 179).  Plaintiff responded by letter dated March
13, 2019 (Doc. 248):

> The Bureau continues to assert the attorney-client privilege over a
> portion of the document bearing Bates number CFPB-NAV-
> 0057126 in Category 83. . ... Specifically, the Bureau asserts the
> attorney-client privilege over the top email in the email chain. That
> email is a confidential communication from an attorney in the
> Bureau's Legal Division to attorneys in the Office of Supervision
> Policy and the Office of the Director and personnel in the Office for
> Students and the External Affairs Division for the purpose of
> providing legal assistance regarding the drafting of the July 20,
> 2016 Memorandum from Ted Mitchell to James Runcie regarding
> "Policy Direction on Federal Student Loan Servicing." The Bureau

The 145 Documents for which only the deliberative process privilege has been asserted (Documents 26 through 170)[7] can be analyzed in three broad groups. The first group consists of 11 versions of a memorandum bearing the title, "Technical Assistance for Federal Student Aid." (Documents 26 through 28, 65 through 70, 169, and 170.) The second group is made up of 72 drafts of the Runcie Memorandum, with various edits and comments appearing on each draft. (Documents 30, 32, 34, 35, 39, 41, 42, 43, 45, 46, 48, 49, 51, 53, 55, 57, 58, 60, 62, 64, 71, 72, 73, 75, 77, 78, 88, 97, 98, 99, 100, 102, 103, 105, 106, 107, 108, 109, 110, 111, 113, 115, 116, 118 through 126, 128, 130, 132, 133, 135, 136, 138, 139, 141, 143, 144, 146, 148, 150, 152, 153, 155, 157, 158, and 160.) The final group is comprised of 63 email chains that include substantive comments or suggested edits for the Runcie Memorandum. (Documents 29, 31, 33, 36 through 38, 40, 44, 47,

---

is not asserting attorney-client privilege over the second and third emails in the chain, and will produce those emails to Defendants in unredacted form.

In light of the statement that only part of CFPB-NAV-0057216 is protected by the attorney-client privilege, Plaintiff will be directed to state whether only parts of Documents 171 through 198 are protected by the attorney-client or "common interest" privilege, and if so, what parts are protected by those privileges. If necessary, I will then address the question of whether those parts of the documents for which only the deliberative process privilege has been asserted were properly withheld from discovery.

[7] Bates Numbers will be supplied only for documents specifically addressed in this section of the report.

50, 52, 54, 56, 59, 61, 63, 74, 76, 79 through 87, 89 through 96, 101, 104, 112,

114, 117, 127, 129, 131, 134, 137, 140, 142, 145, 147, 149, 151, 154, 156, 159,

and 161 through 168.)

### 1.   The Technical Assistance for Federal Student Aid Drafts

As noted above, Federal Student Aid is an office within ED, and Runcie was

the Chief Operating Officer of Federal Student Aid.  The February 11th

Spreadsheet states that the decision under discussion or deliberation in connection

with each instance of the Technical Assistance document was:

> The content and publication of the July 20, 2016 Memorandum
> from Ted Mitchell to James Runcie regarding "Policy Direction on
> Federal Student Loan Servicing," including what policies or
> priorities regarding the servicing of federal student loans to reflect
> in the final published version of the memorandum, how to present
> such policies or priorities in the final published version of the
> memorandum, and whether to publish the memorandum.

The content of the Technical Assistance document does not, however, correlate

directly to the Runcie Memorandum.  On the contrary, the content of the Technical

Assistance document indicates that it was intended to elaborate on standards for

student loan servicers that were contained in statements previously issued by ED

and the Bureau.  The Technical Assistance documents are replete with comments

that relate to student loan servicing, the subject of guidance previously issued by

the Bureau and ED.  Furthermore, transmittal emails, which have been produced as

not privileged, list the purpose of meetings at which these documents were to be

discussed as "Technical Assistance on [Student Loan Servicing]." (CFPB-NAV-0056931.)  By way of contrast, emails concerning the Runcie Memorandum list as their purpose the "Servicing Recompete Policy Memo." (CFPB-NAV-0056916.) To the extent that the Technical Assistance documents represent an explanation of previously issued guidance, they may not fall within the deliberative process privilege.  *See N. L. R. B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 152 (1975) ("courts have uniformly drawn a distinction between predecisional communications, which are privileged, and communications made after the decision and designed to explain it, which are not").

On the other hand, the D'Angelo Declaration of December 7, 2018 notes that the Bureau did provide "technical assistance . . . in connection with the [Runcie] Memorandum, to assist personnel at [ED] in developing and arriving at recommendations to their leadership regarding the content of the [Runcie] Memorandum." (*Id.* at 14.)  Thus, Plaintiff has provided a sufficient evidentiary foundation for concluding that the Technical Assistance documents were part of the deliberative process that resulted in the Runcie Memorandum.

Of course, that does not end the inquiry.  Accepting the fact that the Technical Assistance documents were part of the deliberative process and were pre-decisional, the factors to be assessed in determining whether the qualified

deliberative process privilege has been overcome predominate in favor of

Defendants.

"Once the Court determines that the deliberative process privilege applies,

the Court is required . . . to balance the parties' interests, because the party seeking

disclosure may overcome the claim of privilege by showing a sufficient need for

the material in the context of the facts or the nature of the case. . . ." *Griffin-El v.*

*Beard*, No. CIV.A. 06-2719, 2009 WL 1606891, at *8 (E.D. Pa. June 8, 2009)

(citations and internal quotation marks omitted). Five factors have been identified

as pertinent to the determination of whether documents falling within the

deliberative process privilege should nonetheless be produced: "(i) the relevance of

the evidence sought to be protected; (ii) the availability of other evidence; (iii) the

'seriousness' of the litigation and the issues involved; (iv) the role of the

government in the litigation; [and] (v) the possibility of future timidity by

government employees who will be forced to recognize that their secrets are

violable." *Id.* (citations and internal quotation marks omitted).

The first factor weighs in favor of Defendants. The Technical Assistance

documents deal directly with the question of the conduct expected of student loan

servicers. The documents indicate the Bureau's expectations of appropriate

student loan servicer conduct in various contexts arising under student loan

servicer contracts with ED. One of the defenses in this case is that Defendants

complied with their contractual obligations. To the extent that the Technical
Assistance documents suggest that the Defendants' student loan servicing
obligations were not clearly set forth in the ED contracts, Defendants may be able
to point to the Technical Assistance documents to support their position.

The second factor – the availability of other evidence – favors Defendants.
Unlike the other Bureau documents that represent drafts of eventually-issued
public documents dealing with student loan servicing, there does not appear to be a
publicly-issued final document that reflects the content of the Technical Assistance
documents. And there is no other apparent source for the important information
contained in the Technical Assistance documents.

Also weighing in favor of Defendants is the third factor – the seriousness of
the litigation and the issues involved. Plaintiff is seeking substantial equitable and
monetary relief. This litigation affects millions of student loan borrowers. The
issues involved in this case are dealt with extensively in the Technical Assistance
documents.

The fourth factor – the role of the government in the litigation – favors
Defendants as well. "When a government agency is a party to the litigation and is
the potential beneficiary of the invocation of the privilege, careful scrutiny is
required to ensure that the proper scope of the privilege is not exceeded." *In re
Methyl Tertiary Butyl Ether (MTBE) Prod. Liab.* Litig., 274 F.R.D. 106, 114

(S.D.N.Y. 2011). To be sure, the mere fact that the Bureau has initiated this litigation does not waive the deliberative process privilege. *See United States v. Malik,* No. 15-CV-9092-CM-TJJ, 2016 WL 3167307, at *8 (D. Kan. June 7, 2016). But it is a factor that weighs in favor of the Defendants.

The final factor – chilling government employees from engaging in a full and uninhibited exchange of information to promote quality agency decisions – weighs in favor of Plaintiff. Indeed, "the privilege presumes that disclosure will affect the quality of government decisionmaking, reflecting the notion that policy is best formulated in an environment of free, open, and robust discussion without fear of public disclosure." *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.,* 274 F.R.D. at 114.

This factor, however, is outweighed by the other four factors, particularly the nature of the relevant information contained in the Technical Assistance documents and the absence of another readily available source for this evidence. Accordingly, Plaintiff will be ordered to produce Documents 26 through 28, 65 through 70, 169, and 170 on the February 11th Spreadsheet.[8]

---

[8] Special Master Order #15 (Doc. 249) directed Plaintiff to show cause why two instances of the Technical Assistance memo should not be produced: CFPB-NAV-0056909 (Document 28) and CFPB-NAV-0057119 (Document 27). Plaintiff replied by letter dated March 20, 2019 (Doc. 254), asserting that inter-agency documents can be shielded by the deliberative process privilege. Plaintiff's letter, however, did not address the second part of the deliberative process inquiry, the

## 2. Drafts of the Runcie Memorandum

There is no doubt that the 72 drafts of the Runcie Memorandum produced by Plaintiff for *in camera* review fall within the deliberative process privilege. *See United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) (drafts are clearly part of the deliberative process and entitled to protection); *Wadhwa v. Sec'y United States Dep't of Veterans Affairs*, 707 F. App'x 61, 63 (3d Cir. 2017) (same); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 928 F. Supp. 2d 139, 151–55 (D.D.C. 2013) (same). The question then is whether at step 2 of the Court's inquiry Defendants' need for the drafts outweighs Plaintiff's interest in protecting its internal deliberations.[9]

Of the five factors noted above, three factors weigh in favor of Defendants: the relevance of the information, the seriousness of and issues involved in the litigation, and the government's role in the case. But the other two factors predominate in favor of Plaintiff. There is available to Defendants other evidence in the form of the Runcie Memorandum itself. Indeed, the operative document is

balancing of interests. It is at this part of the inquiry that I have concluded the Technical Assistance documents should be produced.

[9] Special Master Order #15 (Doc. 249) directed Plaintiff to show cause why two of the drafts of the Runcie Memorandum, CFPB-NAV-0057077 (Document 42) and CFPB-NAV-005781 (Document 43). As in the case of the Technical Assistance documents addressed in footnote 8 above, Plaintiff only explained why the inter-agency collaborative documents fall within the deliberative process privilege, but did not address the balance of interests.

the final Runcie Memorandum.  Defendants know what conclusions were reached

by ED Under Secretary Mitchell.  They do not have a compelling need to see the

various iterations of the Memorandum.  Nor do they have a substantial need to

know what input the Bureau provided.  The conclusions reached are what matters

most, not the advice and information communicated to reach those conclusions.

The Bureau, ED, and the Treasury Department collaborated on the Runcie

Memorandum.  The deliberative process privilege extends to such inter-agency

collaborations.  *See Wadhwa*, 707 F. App'x at 63.  Making drafts of inter-agency

policy memoranda accessible would have a substantial chilling effect on inter- and

intra-agency deliberations.  Indeed, "the risk of harm to the Government from

disclosure is significant because of the resulting 'possibility of future timidity by

government employees who [would] be forced to recognize their secrets are

violable.'"  *Malik*, 2016 WL 3167307, at *10.  Because Defendants have the

Runcie Memorandum itself and the need to protect the policy-making process of

federal governmental agencies is so strong, Plaintiff will not be required to produce

any of the 72 drafts of the Runcie Memorandum.[10]

### 3.  Email exchanges concerning the Runcie Memorandum

---

[10]  There may be another avenue by which the drafts could be obtained, and
that is by way of a request to the other agencies involved in the process of
preparing the Runcie Memorandum.  It is not clear whether Defendants sought to
obtain these records from ED, Treasury or the White House.  Presumably,
however, the other government units would also assert the deliberative process
privilege.

The 63 redacted email exchanges produced under Category 79 can be grouped into six email threads by the subject titles on the emails. The first group bears the subject title, "CFPB Edits on Policy Memo." (CFPB-NAV-0056961 (Document 96).)   There are 22 documents that fall within this group (Documents 29, 36, 37, 74, 76, 79 through 87, and 89 through 96). The emails, dated from July 5 through July 8, 2016, involve Plaintiff, ED, and the Treasury Department. Redacted from the emails are comments that reflect the involved agencies' deliberations on the substantive content of the Runcie Memorandum. The emails are clearly part of the deliberative process that produced the Runcie Memorandum. *See Wadhwa*, 707 F. App'x at 63 ("draft reports and internal communications generated as part of agency decisionmaking may be properly withheld pursuant to" the deliberative process privilege). And as previously noted, the privilege protects both intra- as well as inter-agency communications where, as here, multiple government agencies collaborate on a mutual project.

The second group of redacted emails bears the subject title, "Final check in on PM." (CFPB-NAV-0056916 (Document 31).) There are 26 email collections that bear this subject line: Documents 31, 33, 34, 44, 47, 50, 52, 54, 56, 59, 61, 63, 127, 129, 131, 134, 137, 140, 142, 145, 147, 149, 151, 154, 156, and 159. The emails in this thread are dated July 18 and 19, 2016, and involve Plaintiff, ED, Treasury, and the White House. The thread builds from Document 31, which is

two pages long and consists of three emails on July 18th, to Document 159, which is three pages long and consists of eight emails from July 18th and 19th.  The three emails on Document 31 are repeated in Document 159 and all the other redacted emails in this group.  The principal redaction from this email thread appears on Document 31 and the remaining 23 documents in this group.  Redacted from each of these Documents is a brief recitation of a few substantive issues identified in a July 18, 2016 email from Plaintiff.[11]  Clearly deliberative and pre-decisional in nature, the redacted content falls within the deliberative process privilege.

The third group of redacted emails has as its subject line the following: "are you two available at 4 p.m. today?"  (CFPB-NAV-0057074 (Document 40).)  There are ten Documents in this group: Documents 38, 40, 101, 104, 161, 162, and 164 through 167.  The several emails in the thread with the subject line, "are you two available at 4 p.m. today?," are all dated July 12, 2016.  Each document in this group has the same content redacted – a list of "Outstanding Issues to Discuss" identified by ED.  (*Id.*)  This content is plainly pre-decisional and deliberative.

---

[11] Special Master Order #15 (Doc. 249) directed the Bureau to show cause why CFPB-NAV-0057082 (Document 44) should not be produced.  The Bureau responded by claiming that part of the email was protected by the attorney client privilege and the work product doctrine. (Doc. 254.)  There is no need to determine whether the content in question is protected from discovery under those grounds because I find that the qualified deliberative process privilege is not overcome with respect to that content.

The fourth grouping of redacted emails has the subject line, "Mostly-done CFPB Comments." (CFPB-NAV-005997 (Document 114).)  There are only two Documents in this group, Documents 114 and 117.  Plaintiff, ED and Treasury are involved in the brief email exchange spanning July 14 and 15, 2016 in this grouping.  Both Documents in this group are only 1-page long, and both have the same 32 words redacted.  The redacted content is pre-decisional and deliberative in nature as it bears on the Runcie Memorandum.

Only two Documents comprise the fifth group of redacted emails: Documents 163 and 168.  Their subject line is, "Discuss Servicing Policy Memo." (CFPB-NAV-0057130 (Document 163.)  Plaintiff and ED are involved in this one-page email exchange.  Redacted from each Document is the same list of "Outstanding Issues to Discuss" identified by ED.  (*Id.*)  The redacted content is pre-decisional and deliberative in nature.

The final group is only one single-page email, Document 112 (CFPB-NAV-0056995), with the title, "Part two back around."  The July 14, 2016 email is from Plaintiff to ED with a copy to Treasury.  The redacted content essentially concerns what to leave in and what to leave out of the Runcie Memorandum, and is plainly pre-decisional and deliberative in nature.

The dispositive question then for each of the redacted email groups withheld under Category 79 is whether Defendants' need to know what was redacted in the

context of this litigation outweighs the Bureau's interest in protecting the process

by which important governmental policies are developed.  As in the case of the

drafts of the Runcie Memorandum, three factors favor Defendants: the relevance of

the redacted content, the seriousness of the litigation, and Plaintiff's role in this

case.  But the other two factors clearly militate against compelling production:  the

outcome of the inter-agency deliberative process is what is most important here,

and the frank and uninhibited disclosure of information essential to developing

sound public policy would be impaired substantially if agency staff knew that their

internal discussions would be revealed when the agency qua regulator engages in

enforcement litigation.  Also weighing against disclosure is the relative

insignificance of the redactions.  For example, the list of topics ED wanted to

discuss with the Bureau in connection with the preparation of the Runcie

Memorandum is not all that significant in the context of this case.  Nor would it

seem to advance Defendants' position in this litigation to gain access to the word-

smithing discussions reflected in some of the emails.  Finally, none of the

redactions is plainly exculpatory.  Accordingly, Plaintiff will not be compelled to

produce any of the 62 redacted email exchanges.

## III.   CONCLUSION

For the reasons set forth above, I have tentatively concluded that the Bureau

should be directed to produce the drafts of the "Technical Assistance"

memorandum (Documents 26, 27, 28, 65, 66, 67, 68, 69, 70, 169, and 170), and

unredacted agenda of the topics for the Federal Student Aid Advisory Board

meeting (Documents 5, 10, and 15).  In addition, the Bureau should be directed to

state whether only parts of Documents 171 through 198 are protected by the

attorney-client or "common interest" privilege, and if so, what parts are protected

by those privileges.  Otherwise, the Bureau need not produce any additional

documents from its second set of deliberative process documents.

The parties will be afforded an opportunity to object to this Report. The

timetable for objections will be addressed during our April 30, 2019 weekly

conference call.


s/ Thomas I. Vanaskie
THOMAS I. VANASKIE
SPECIAL MASTER