1700 G Street NW,
Washington, DC 20552



May 6, 2019

**Via ECF**

The Honorable Thomas I. Vanaskie, Special Master
U.S. District Court, Middle District of Pennsylvania
William J. Nealon Federal Bldg. & U.S. Courthouse
235 N. Washington Avenue
Scranton, PA 18503

      Re:    *CFPB v. Navient Corp., et al.*, Case No. 3:17-CV-00101-RDM

Dear Judge Vanaskie:

    The Bureau submits this letter to address two issues regarding Special Master Report #5 (Doc. 279). First, in response to the opportunity for the parties to submit objections to the preliminary conclusions expressed in the Report, the Bureau respectfully objects to the production of the Technical Assistance documents in Category 79, discussed in Part II.C.1 of the Report. The Bureau does not object to the preliminary conclusion to produce other documents specified in the Report. Second, the Bureau responds to the instruction in footnote 6 of the Report regarding the Bureau's attorney-client privilege and common interest privilege assertions over certain documents.

    1.    **Objection to Production of Technical Assistance Documents in Category 79**

    The Bureau objects to production of the Technical Assistance documents in Category 79 because the Court's Memorandum Opinion denying Defendants' motion to dismiss (Doc. 57) forecloses Defendants' relevance argument as to those documents. In light of the lack of relevance of the documents, the Bureau believes that Defendants cannot demonstrate the "particularized" or "compelling" need to overcome the government's interest in protecting its pre-decisional and deliberative communications. *See, e.g.*, *United States v. Farley*, 11 F.3d 1385, 1389-90 (7th Cir. 1993); *EEOC v. FAPS, Inc.*, 2012 WL 1656738, at *26 (D.N.J. May 10, 2012).

    The Report states that the first factor for overcoming the deliberative process privilege (relevance) weighs in favor of Defendants because the Technical Assistance documents might support Defendants' defense that they "complied with their contractual obligations." Report at 14-15. But the Court has already held that even if Defendants had complied with their contractual obligations, that would not be a defense to the Bureau's claims under the Consumer Financial Protection Act (CFPA). In their motion to dismiss, Defendants argued that the Bureau's CFPA claims should be dismissed because Defendants' contracts with the Department of Education "specify in minute detail how servicers are supposed to collect payments and communicate with borrowers and, importantly, how servicers are paid for these activities," and the Bureau's CFPA claims improperly imposed "additional unannounced servicing requirements beyond those set forth in the comprehensive regulatory and contractual architecture governing federal student loans." Doc. 29 at 1-2. In its Memorandum Opinion denying the motion to dismiss, the Court held that "even assuming the truth of" Navient's assertion "that it complied with . . . Navient's contracts with the Department of Education," "complying with . . . contractual obligations does not relieve Navient of its obligation to refrain from committing acts that are unlawful under the [CFPA]." Doc. 57 at 20.

    Thus, the defense that Navient complied with its contractual obligations was squarely presented to the Court, and the Court rejected it. This ruling is the law of the case. *See Arizona v.*

*California*, 460 U.S. 605, 618 (1983), decision supplemented, 466 U.S. 144 (1984) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."); *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) ("This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues.") (quotation omitted). And because the Court's ruling states that it applies "*even assuming* the truth of [Defendants'] assertions" that they complied with their contractual obligations (Doc. 57 at 20 (emphasis added)), discovery regarding Defendants' purported compliance with their contractual obligations is unnecessary. While courts typically draw all reasonable inferences regarding the evidence in favor of the *plaintiff* in ruling on motions to dismiss,[1] the Court applied the opposite presumption in disposing of Defendants' contract compliance defense as a matter of law, by assuming that the evidence on that issue would be maximally favorable to Defendants. Thus, Defendants cannot establish a need, based on purported relevance to Defendants' contract compliance defense, that is sufficient to overcome the Bureau's substantial interest in protecting its pre-decisional and deliberative documents.

Moreover, to the extent Defendants seek to recast their rejected contract compliance defense as a new argument that their purported compliance with the contract defeats the Bureau's CFPA claims because such compliance somehow demonstrates the "reasonableness" of their conduct, that argument is the same defense cloaked in new language, and it fails for the same reason. It is not even clear how Defendants are able to equate contract compliance with a concept of "reasonableness" that insulates them from liability for other legal violations – a notion that is completely at odds with what the contract actually says.[2] But in any event, issues regarding contract compliance are separate from the question of whether Defendants violated the CFPA. *See* Doc. 57 at 20.

However Defendants choose to phrase their arguments for overcoming the deliberative process privilege, at bottom, these arguments amount to nothing more than the claim that their purported compliance with their contracts "relieve[s] [them] of [their] obligation to refrain from committing acts that are unlawful under the [CFPA]" – a result that is precluded by the Court's prior ruling. Thus, the Bureau respectfully objects to the production of the documents in Category 79.

### 2. Response to Instruction in Footnote 6

Footnote 6 of the Report directed the Bureau to identify what parts, if any, of Documents 171-198 listed in the Bureau's February 11, 2019 supplemental privilege log are protected by the attorney-client or common interest privileges. As the Report acknowledges, the Bureau also asserts

---

[1] *See, e.g.*, *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2015) (on motion to dismiss, a court construes the complaint's "factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them").

[2] Notably, a failure to comply with federal laws enforced by regulators other than the Department of Education is prohibited by the contract. The contract itself indicates that Defendants are "responsible for maintaining a full understanding of all federal and state laws and regulations . . . and ensuring that all aspects of the service[s] continue to remain in compliance as changes occur." Doc. 29-1, at NAV-00000024. Driving home the point, the contract indicates, in multiple places and in clear terms, that Defendants are "required to meet all statutory and legislative requirements." *Id.* at NAV-00000027, NAV-00000045, NAV-00000059.

the deliberative process privilege (as described in Category 79) over these documents. This letter addresses only the Bureau's assertions of the attorney-client and common interest privileges as described in Categories 83 and 84. As explained below, for all of the emails at issue, the Bureau's assertions of the attorney-client and common interest privileges apply to all of the redactions that were previously made. As further explained below, with respect to the drafts attached to those emails, the Bureau does not assert the attorney-client and common interest privileges over two of the drafts (Documents 172 and 176), asserts these two privileges for only certain comment bubbles in six of the drafts (Documents 174, 178, 180, 182, 184, and 186), and asserts these two privileges for the entirety of the remaining three drafts (Documents 188, 191, and 193).

Documents 171-186 are email communications relating to the drafting of the July 20, 2016 Memorandum regarding "Policy Direction on Federal Student Loan Servicing" (the Policy Memorandum), and attached drafts of the Policy Memorandum. The Bureau asserts the attorney-client privilege over all of the redacted portions of the emails (Documents 171, 173, 175, 177, 179, 181, 183, and 185) and over all comments from Bureau attorneys in the margin of the Policy Memorandum drafts attached to those emails (Documents 174, 178, 180, 182, 184, and 186).[3] The redacted portions of those emails and the attorney comments in the margin of those drafts contain or reflect legal advice regarding the drafting of the Policy Memorandum.[4]

Documents 187-198 are email communications and attached documents concerning the drafting of a part of the Policy Memorandum related to partial payments. The Bureau asserts the attorney-client and common interest privileges over all of the redacted portions of the emails (Documents 187, 189, 190, 192, 194, 195, 196, 197, and 198) and all of the drafts attached to certain of those emails (Documents 188, 191, and 193). The emails were sent for the purpose of obtaining, providing, or applying legal advice from an attorney in the Department of Education regarding a regulation relating to the drafting of a part of the Policy Memorandum. The redacted portions of the emails, and the entirety of the attached drafts (which include extensive tracked edits and comments from the Department of Education attorney) contain or reflect the attorney's legal advice. These materials also reflect sharing of information between the Bureau and the Department of Education relating to and in furtherance of common interests relating to student loan servicing.

If Your Honor has any questions regarding the foregoing, the Bureau would welcome the opportunity to address those questions at the May 7, 2019 teleconference or in writing.

Respectfully submitted,

/s/ Manuel Arreaza

---

[3] The Bureau attorneys whose comments in the margin are contained in these drafts include Brian Shearer, Martha Fulford, and John Pitts, and their comments are titled with their initials (SB, FM, and PJ). The two drafts at Documents 172 and 176 do not contain any such comments, and accordingly, the Bureau is no longer asserting the attorney-client privilege over those documents.

[4] While the Bureau does not assert the attorney-client privilege over the drafts in their entirety, those drafts are independently protected by the deliberative process privilege under Category 79. The Bureau agrees with the Report's preliminary conclusion that those drafts should not be produced. Report at 17-18.