

1700 G Street NW,
Washington, DC 20552

May 10, 2019

**Via ECF**

The Honorable Thomas I. Vanaskie, Special Master
U.S. District Court, Middle District of Pennsylvania
William J. Nealon Federal Bldg. & U.S. Courthouse
235 N. Washington Avenue
Scranton, PA 18503

      Re:    *CFPB v. Navient Corp., et al.*, Case No. 3:17-CV-00101-RDM

Dear Judge Vanaskie:

    The Bureau writes in response to Defendants' May 6, 2019 letter about the Notice of Recall issued by the Bureau concerning certain documents produced by the Bureau to Defendants.

    As an initial matter, the Bureau notes that it followed all timelines in the protective order, issuing a Notice of Recall on April 8, 2019 (10 business days after discovery of the inadvertent production), then following with the privilege log on April 22, 2019 (10 business days after the Notice of Recall). *See* Doc. 66-1, at 10-11. However, Defendants did not adhere to the protective order, which states in relevant part as follows:

> Within 10 business days of receipt of the privilege log for a recalled document, the Receiving Party may request a meet and confer to discuss the appropriateness of the privilege claim. If the Receiving Party does not request a meet and confer within the allotted time period, it waives any right to challenge the privilege claim and must certify destruction of the document as set forth in subparagraph (d) below.

Doc. 66-1, at 12. Defendants never requested a meet and confer within the allotted time period.

    The Bureau has some concern that there can be attempts to selectively invoke the protective order's requirement to meet and confer in certain circumstances, while ignoring the requirement in other circumstances. For example, with respect to the Bureau's pending challenge of certain of Defendants' confidentiality designations, at Defendants' insistence, the Bureau undertook time-consuming efforts to confer with Defendants over a period of nearly two months, during which time Defendants never substantively engaged with the Bureau, instead making unfounded, irrelevant attacks on the Bureau that are similar to those in their letter to Your Honor on that issue. *See* Bureau's March 22, 2019 Letter, at Exhibit A; Defendants March 29, 2019 Letter, at 1-2. At the end of that process, Defendants insisted that they wanted to confer even more, and went so far as to claim that "the parties have not conferred on most of [the documents at issue]," which was demonstrably untrue. *See* Bureau's March 22, 2019 Letter, at Exhibit A. The Bureau could have saved much time and effort by opting not to confer with Defendants, as Defendants have done here.

    Setting aside the fact that Defendants have not complied with the protective order, the Bureau has decided that it will no longer seek to recall the redacted portions of the documents at issue, and that Defendants can have access to the documents in full. The Bureau does so in the interest of compromise, and also in recognition of the fact that Special Master Order #6 has ordered production of portions of documents that Defendants believe are relevant to the Bureau's credit reporting claim.

      As with all documents produced in this case, the Bureau reserves all rights to object to the admissibility of these documents, including on grounds of relevance. The Bureau has concerns that the trial in this matter has the potential to devolve into a series of mini-trials dealing with a variety of deliberations that the Bureau undertook, as to which Defendants had no knowledge. For example, with respect to the recalled documents at issue – which led to a published blog post (https://www.consumerfinance.gov/about-us/blog/veterans-dont-let-student-loan-forgiveness-damage-your-credit/) – the statements in the previously redacted portions of those documents were not included in the final, published version of the blog post. Specifically, the Bureau did not state in the public blog post that the "AL" code (which means "assigned to government") was misinterpreted by the FICO credit scoring model because the Bureau found no factual support for that theory. To the contrary, as reflected in the blog post, the Bureau identified that "incorrect information" was being provided by the servicer (not by FICO), and the Bureau specifically noted that the servicer should *not* be furnishing the "AL" code: "[Y]our credit report should show that you no longer owe the loan, not that it was 'assigned to government' for monitoring."

                                                              Respectfully submitted,
                                                              /s/ Nick Jabbour