IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CONSUMER FINANCIAL
PROTECTION BUREAU,                    :

      Plaintiff                     :

                                :     3:17-CV-101

      v.                            :     (Judge Mariani)

                                :

NAVIENT CORPORATION, et al.,          :

      Defendants.                   :

SPECIAL MASTER REPORT #9 – *IN CAMERA* REVIEW OF
DOCUMENTS WITHHELD IN WHOLE OR IN PART ON THE BASIS OF
THE DELIBERATIVE PROCESS PRIVILEGE – FEBRUARY 15, 2019
PRODUCTION – CATEGORIES 42, 43, 48, 71, 73, 74, 75, and 81

## I.    INTRODUCTION

Special Master Reports #3 (Doc.[1] 266) and #5 (Doc. 279) set forth my

preliminary conclusions with respect to the first and second sets of document

production made by Plaintiff Consumer Financial Protection Bureau (the

"Bureau") for *in camera* review to determine whether the documents were properly

withheld from discovery, in whole or in part, based on the deliberative process

privilege. After considering objections to those reports, Special Master Reports #6

---

[1] The designation "Doc." followed by a number refers to the docket entry
number on the electronically-maintained docket sheet for this case.

(Doc. 290) and #7 (Doc. 295) presented my final conclusions with respect to the

first two document productions.  In Special Master Report #8 (Doc. 297), I set

forth final conclusions with respect to the Documents withheld by the Bureau

under Category 35, one of the nine Categories of deliberative process documents

that were covered by the Bureau's third deliberative process production.[2]  This

Report #9 sets forth my final conclusions with respect to the other eight Categories

of Documents that accompanied the Bureau's February 15, 2019 letter.[3]  (Doc.

225.)[4]

---

[2] I explained in Special Master Report #8 that I am now issuing final reports because the nature of the parties' objections are reasonably apparent as they deal with the second part of the two-part deliberative process inquiry – whether the Defendants' need for access to the deliberative communications outweighs the Bureau's interest in protecting its deliberative processes.  *See Redland Soccer Club, Inc. v. Dep't of the Army*, 55 F.3d 827, 853-54 (3d Cir. 1995).  I am also issuing final reports to facilitate conclusion of discovery by June 7, 2019, the deadline for fact discovery.

[3] The parties, however, are not foreclosed from seeking reconsideration by me, but are urged to do so promptly.

[4] Accompanying each set of Documents produced by the Bureau was an electronic spreadsheet that listed the Documents in numerical order from 1 to the conclusion of the Document production for that set.  The spreadsheet provided for each Document its Bates Number, Category number from the Bureau's Categorical Privilege Log under which the Document was produced, the date(s) of the communication(s), the custodian(s), the author(s), the sender(s), the recipient(s), the subject if the document was an email thread, the file name if the document was not an email thread, the decision that was under consideration, the decision-maker, and the date of the decision, if one was made.  The spreadsheet will be referred to herein as the Bureau's February 15, 2019 Supplemental Privilege Log.

## II.   DISCUSSION[5]

### A.      Category 42

Sixteen documents (Documents 18 through 33 on the Bureau's February 15, 2019 Supplemental Privilege Log) were withheld under Category 42, which carries the following description:

> Confidential pre-decisional and deliberative communications and documents relating to the drafting and submission of briefing materials to former Director Richard Cordray regarding a July 30, 2014 meeting between the former Director and Navient's CEO, including draft and final versions of a memorandum presented to the former Director and related communications containing selections or summaries of facts and issues deemed pertinent to the meeting and recommended discussion points for the meeting in connection with the process of preparing the former Director for the meeting; purpose of communications and documents was to bring former Director Cordray up to speed on Bureau and other state and federal government activity relevant to the meetings, to select and distill the facts deemed most relevant to the Director's participation in the meetings, and to suggest key discussion points for the Director to raise during the meetings; briefing materials formed part of an analysis or discussion that was considered as part of Director Cordray's anticipated participation in the meetings but did not result in a specific decision, were advisory only, and were prepared by subordinates who lacked authority to make final decisions on these topics or direct Director Cordray's actions.

(Doc. 225 at 5.)

---

[5] This Special Master Report #9 incorporates by reference the discussion of the background of this case, the governing legal principles, and review process contained in the first 15 pages of Special Master Report #3.

In response to Special Master Order #16 (Doc. 252), the Bureau agreed to produce 8 of the sixteen documents (Documents 20 through 27 on the February 15, 2019 Supplemental Privilege Log).  Of the remaining 8 documents, 4 are drafts of a July 2014 Briefing Memo to former Bureau Director Richard Cordray to prepare him for an upcoming meeting with Jack Remondi, CEO of Navient, Inc. (Documents 19, 29, 30, and 33).  The other 4 documents are redacted emails pertaining to the content of the Briefing Memo. (Documents 18, 28, 31 and 32.)

Special Master Report #3 addressed the deliberative process privilege in the context of a Briefing Memo to Director Cordray to prepare him for a different meeting with Navient's CEO.  What was said there applies equally here:

> The Bureau is entitled to withhold these documents, some of which Defendants already have or which are publicly accessible. Navient's CEO participated in the meeting with former Director Cordray, and so has knowledge of what was discussed. Under these circumstances, Defendants cannot show that its interests in knowing what information was provided to former Director Cordray outweighs the Bureau's interest in ensuring that its leader has received all the information and advice essential to prepare him to represent the Bureau in its dealings with student loan servicers.

(Doc. 266 at 32.)  Accordingly, the Bureau will not be required to produce any other Documents withheld under Category 42.

## B. Category 43

Two Documents (34 and 35 on the February 15, 2019 Supplemental Privilege Log) were withheld under Category 43, which is described as follows:

4

> Confidential pre-decisional and deliberative communications and
> documents relating to the drafting and submission of briefing
> materials to former Director Richard Cordray regarding a
> September 12, 2014 call between the former Director and Navient's
> CEO, including draft and final versions of a memorandum
> presented to the former Director and related communications
> containing selections or summaries of facts and issues deemed
> pertinent to the call and recommendations regarding potential
> topics for the call in connection with the process of preparing the
> former Director for the call; purpose of communications and
> documents was to bring former Director Cordray up to speed on
> Bureau and other state and federal government activity relevant to
> the meetings, to select and distill the facts deemed most relevant to
> the Director's participation in the meetings, and to suggest key
> discussion points for the Director to raise during the meetings;
> briefing materials formed part of an analysis or discussion that was
> considered as part of Director Cordray's anticipated participation in
> the meetings but did not result in a specific decision, were advisory
> only, and were prepared by subordinates who lacked authority to
> make final decisions on these topics or direct Director Cordray's
> actions.

(Doc. 225 at 5-6.)  The two withheld Documents are drafts of a Briefing Memo to

prepare former Director Cordray for a conference call with Navient's CEO.  For

the reasons expressed above and in Special Master Reports #3 and #5, Defendants

are not entitled to production of the Briefing Memo drafts.

### C. Category 48

Document 36 on the Bureau's February 15, 2019 Supplemental Privilege

Log has been withheld under Category 48.[6]  It is a memorandum to former

---

[6] **Category 48**
Description: Confidential pre-decisional and deliberative
communications and documents relating to the drafting and

Director Cordray that sets forth Bureau staff's recommendation concerning

publication of the Bureau's Student Loan Ombudsman Midyear Update. The

memorandum is clearly pre-decisional and deliberative in nature. Defendants'

interest in obtaining this memorandum does not outweigh the Bureau's strong

interest that this type of document not be discoverable. Accordingly, Defendants

are not entitled to its production.

### D. Category 71

Seventeen Documents (Documents 37 through 53 on the Feb. 15, 2019

Supplemental Privilege Log) were withheld under Category 71, described as

follows:

> Confidential pre-decisional and deliberative communications and
> documents prepared by or shared among personnel in the Bureau's
> Office for Students, personnel in the Department of Education,
> personnel in the Department of Treasury, and/or personnel in the
> Executive Office of the President relating to the development and
> drafting of the Bureau's "Payback Playbook," including drafts of

---

> submission of a recommendation memorandum to former Director
> Richard Cordray regarding the Bureau's report titled "2016 Midyear
> Complaint Update" (published on August 18, 2016), including draft
> and final versions of a memorandum presented to the former
> Director regarding the report and related communications; purpose
> of communications and documents was to make recommendations
> to the Director and assist him in deciding whether and
> how to present to the public the Bureau's analyses, policies, and
> recommendations regarding the student loan market;
> communications and documents preceded decisions by the Director
> about the finalization and publication of the report.

(Doc. 225 at 6.)

the Payback Playbook, drafts of documents related to the Payback
Playbook that were released with the Payback Playbook on April
28, 2016 or January 13, 2017, and related communications; purpose
of communications and documents was to obtain, provide, or
discuss  feedback, comments, recommendations, or suggestions
from personnel in the Department of Education regarding the
content of the Payback Playbook or related documents in
connection with the process of developing recommendations to
former Director Richard Cordray regarding the content and
publication of the Payback Playbook; drafts of the Payback
Playbook and drafts of related documents contain or reflect non-
final recommendations, suggestions, or views of Bureau personnel
regarding the content of such documents in connection with the
aforementioned process; communications and documents preceded
final decisions regarding the content or publication of the Payback
Playbook.

(Doc. 225 at 6.)

In response to Special Master Order #16 (Doc. 252), the Bureau agreed to

produce the first five pages of Document 47 (CFPB-NAV-0057210) – a draft of a

January 13, 2017 Memorandum to ED Under Secretary Mitchell – and Document

51 (CFPB-NAV-0057325) – a draft of the January 13, 2017 Memorandum

authored by Seth Frotman on "Public Feedback on the *Payback Playbook.*"  (Doc.

257.)  Both documents were nearly identical or identical to their publicly-released

counterparts.

Seven of the Documents consist of email threads pertaining to the content of

a Request for Information ("RFI") that ultimately became a publicly-issued

document.[7]  (Documents 37, 38, and 42 through 46  on the February 15, 2019

Supplemental Privilege Log.)  Two of the Documents are drafts of the RFI.

(Documents 40 and 41.)  Although the U.S. Department of Education ("ED") was

involved in the development of the RFI, ED's communications do not concern the

conduct of student loan servicers in general or of Navient in particular.[8]  The final

RFI is available to Defendants and their need to see drafts of the RFI or email

communications concerning the RFI is not so compelling as to overcome the

interests in protecting the deliberative process.

    Three documents withheld under Category 71 are drafts of the January 13,

2017 Memorandum to ED Under Secretary Ted Mitchell.[9]  (Documents 39, 48,

and 50 on the Feb. 15 Supplemental Privilege Log.)  The Memorandum, which the

Bureau published, summarized the public comments received in reply to the RFI

---

[7] The RFI sought comments from the public pertaining to borrower
decision-making when repaying student loans to assist in the development of
effective written communications to student loan borrowers concerning repayment
options.  The information provided in response to the RFI was used to develop the
"Payback Playbook," released to the public on January 13, 2017.

[8] Defendants have made clear that they are particularly interested in
obtaining access to communications from ED that expressed its expectations of
student loan servicers.  (*See* (Doc. 277 (Defendants' Objections to Special Master
Report #3) and Doc. 287 (Objections to Special Master Report #5.)

[9] As noted above, the Bureau did produce a draft of the Memorandum to
Under Secretary Mitchell (the first five pages of Document 47 (CFPB-NAV-
0057210), but continued to assert the deliberative process privilege over the
attachments to the Memorandum.

RFI concerning student loan servicing.  The final version of the RFI was published

in the Federal Register.  None of the drafts bear any marginal notations, let alone

comments attributable to ED.  And while the drafts were shared with ED "to obtain

feedback or comments from [ED] regarding the content of the RFI, to assist

Bureau personnel in the process of developing and arriving at recommendations to

former Director Cordray regarding the content of the RFI," (D'Angelo Dec. 7,

2018 Declaration at 9), the nature of the document in question does not support a

substantial need on the part of Defendants to obtain the drafts.  They know the

outcome of the deliberative process – the publicly-issued RFI – and the Bureau

will not be compelled to provide the drafts of the RFI.

---

concerning student loan servicing prepared by personnel in the
Bureau's Office for Students ("RFI"); drafts were sent to personnel
in the Department of Education for the purpose of obtaining
feedback or comments from personnel in the Department of
Education regarding the content of the RFI in connection with the
process of developing recommendations to former Director Richard
Cordray regarding the content of the RFI; drafts preceded final
decisions regarding the content of the RFI.

(Doc. 225 at 7.)

and attached the revise "Payback Playbook" and other documents.  Because the January 13, 2017 Memorandum was published by the Bureau, the drafts are clearly pre-decisional and deliberative in nature.  Defendants have the pertinent information in the form of the publicly released Memorandum and its interest in obtaining the drafts does not overcome the interest in safeguarding the deliberative process.

The remaining Document in this category consist of Document 49 (CFPB-NAV-0057322), a draft of the "Payback Playbook," and Documents 52 and 53 (CFPB-NAV-0057326 and 0057327), email threads in January of 2017 that include ED suggestions with respect to the content of the "Payback Playbook."  ED's comments do not concern the conduct of student loan servicers or indicate its expectations with respect to student loan servicers.  Accordingly, Defendants' interest in the email exchanges concerning the "Payback Playbook" is not such as to warrant requiring production of the emails or the draft of the "Payback Playbook."

### E.  Category 73

Documents 54 through 57 on the February 15, 2019 Privilege Log were withheld under Category 73.[10]  Each of the withheld documents is a draft Bureau

---

[10]  **Category 73**
        Description: Confidential pre-decisional and deliberative
     drafts of the Bureau's May 14, 2015 Request for Information

### F.  Category 74

Thirty-four Documents are grouped exclusively under Category 74, appearing as Documents 58 through 92 on the Bureau's February 15, 2019 Privilege Log.[11]  Category 74 concerns the preparation of the Bureau's report titled, "Student Loan Servicing: Analysis of Public Input and Recommendations for Reform," publicly released at the end of September, 2015.[12]  Three of the

_____

[11]  One of the Documents has been placed by the Bureau under Categories 74 and 75, and appears twice on the February 15 Privilege Log as Documents 82 and 93 (CFPB-NAV-0057428).  It will be considered under Category 75.

[12]  The Bureau's full description for this Category is as follows:

> Confidential pre-decisional and deliberative communications and documents prepared by or shared among personnel in the Bureau's Office for Students, personnel in the Department of Education, personnel in the Department of Treasury, and/or personnel in the Executive Office of the President relating to the development, drafting, or publication of the September 2015 report titled "Student Loan Servicing: Analysis of Public Input and Recommendations for Reform," including drafts of the report and related communications; purpose of communications and documents was to obtain, provide, or discuss feedback, comments, recommendations, or suggestions from personnel in the aforementioned federal agencies or offices regarding the content of the report in connection with the process of developing recommendations to former Director Richard Cordray regarding the content and publication of the report; drafts of the report reflect non-final recommendations, suggestions, or views of Bureau personnel regarding the content of the report; communications and documents preceded final decisions regarding the content or publication of the report.

(Doc. 225 at 7.)

withheld Documents (59, 61 and 62 on the February 15, 2019 Supplemental

Privilege Log) are drafts of the report itself.  There are no margin notes or

substantive edits on these Documents.  As drafts are plainly covered by the

deliberative process privilege, *see Wadhwa v. Sec'y United States Dep't of*

*Veterans Affairs*, 707 F. App'x 61, 63 (3d Cir. 2017); *Competitive Enter. Inst. v.*

*Office of Sci. & Tech. Policy*, 161 F. Supp. 3d 120, 128 (D.D.C.), modified, 185 F.

Supp. 3d 26 (D.D.C. 2016), and there is no way to discern whether ED contributed

to the content of the drafts in a way that reflected its expectations of student loan

servicers, production of the drafts will not be required.

The remaining Documents under Category 74 can be divided into three

groups.  The first group consists of redacted email threads which reflect the

transmission of the draft report to ED.  (Documents 58, 60, 67 through 71, and 83

through 89.)  The redactions concern the views of Bureau staff with respect to the

content of the Bureau's report, and are plainly part of the deliberative process.

Moreover, the redacted content does not pertain to ED's expectations of student

loan servicers.  Thus, the redacted content has little significance in the context of

this action, and the Bureau will not be required to produce any of the email threads

in this group.

The second group of Documents is comprised of two copies of two pages of

ED comments with respect to the draft report.  (Documents 64 and 66 on the

February 15, 2019 Privilege Log.)  The third and final group of Documents under

Category 74 consists of redacted email exchanges pertaining to the ED comments.

(Documents 72 through 81 and 90 through 92 on the February 15, 2019

Supplemental Privilege Log.)

 Both groups of Documents are plainly part of the collaborative deliberative

process in which the Bureau and ED engaged.  If Defendants were seeking this

information under the Freedom of Information Act, 5 U.S.C. § 552, the

deliberative process would trump Defendants' need for the information.  But

Defendants' desire for documents that may reveal ED's expectations of student

loan servicers arises in the context of very serious litigation.  And while it is

appropriate to point to publicly-accessible documents authored by ED as the

repositories of final positions taken by ED, the "Student Loan Servicing: Analysis

of Public Input and Recommendations for Reform" is a Bureau report.  The

conclusions and recommendations expressed in the final report do not necessarily

reflect ED's conclusions and recommendations.  Considering Judge Mariani's

observation that communications between ED and the Bureau may be relevant; the

seriousness of the litigation; the absence of alternative available evidence

reflecting ED's comments; and the Bureau's role in initiating this litigation, I find

that the interests in protecting the deliberative process are outweighed by

Defendants' need for access to the kind of information that may aid its defense of

the Bureau's claims that they engaged in unfair, deceptive or abusive loan servicing practices.  Accordingly, the Bureau will be directed to provide the two-page ED comments on the draft student loan servicing report, Documents 64 (CFPB-NAV-0057295) and 66 (CFPB-NAV-0057297) on the February 15, 2019 Privilege Log.  The Bureau will also be required to eliminate certain redactions of comments from email threads that comprise Documents 72 through 81 and 90 through 92 on the February 15, 2019 Privilege Log.  Specifically, the Bureau shall remove the redactions of comments that were made in email exchanges subsequent to the email from ED's Jeff Appel at 1:06 p.m. on September 28, 2015.[13]

### G.  Category 75

On September, 29, 2015, the Bureau, ED, and the U.S. Department of the Treasury released a "Joint Statement of Principles on Student Loan Servicing" (the "Student Loan Servicing Principles").[14]  The purpose of the Student Loan Servicing Principles was to provide "a framework to improve student loan

---

[13] The redactions made on the emails in question prior to that date do not concern comments made by ED, are deliberative in nature, and consequently do not need to be undone.

[14] The Student Loan Servicing Principles were published by the Bureau at 80 Fed. Reg. 67389 (Nov. 2, 2015).  Quotations from the Student Loan Servicing Principles will be from the online version of the Principles published in the Federal Register.

servicing practices, promote borrower success and minimize defaults."[15]  80 Fed.

Reg. 67389 (Nov. 2, 2015).  To this end, the Bureau, ED and Treasury affirmed

their commitment to "working together so that all student loan borrowers have

access to (1) the information they need to repay their loans responsibly and avoid

default; (2) protections so that they will be treated fairly even if they are struggling

to repay their loans; and (3) mechanisms so that errors are resolved expeditiously

and assurances that student loan servicers, both in the marketplace and through

federally-contracted companies, are held accountable for their conduct." *Id.*  The

three-page joint statement articulates the following four principles for student loan

servicing:

> • Consistent. Student loan borrowers and servicers alike would
> benefit from a clear set of expectations for what constitutes
> minimum requirements for services provided by student loan
> servicers and servicer communications with borrowers, including
> adequate and timely customer service. . . .
> • Accurate and Actionable. Student loan borrowers often depend on
> servicers to provide basic information about account features,
> borrower protections, and loan terms. It is critical that information
> provided to borrowers by student loan servicers be accurate and
> actionable. Information, including explanation and instructions
> regarding borrowers' loans and repayment options, should be
> presented in a manner that best informs borrowers, helps them
> achieve positive outcomes, and mitigates the risk and costs of
> default.

---

[15] The Student Loan Servicing Principles were released in conjunction with
the Bureau's September 30, 2015 report titled, "Student Loan Servicing: Analysis
of Public Input and Recommendations for Reform."  This report is the subject of
Category 74, discussed above.

> • Accountable. Student loan servicers . . . should be accountable for
> serving borrowers fairly, efficiently and effectively. If servicers fall
> short and violate federal or state consumer financial laws, the
> [Higher Education Act], contractual requirements, or federal
> regulations, borrowers, federal and state agencies and regulators,
> and law enforcement officials should have access to appropriate
> channels for recourse, as authorized under law.
> • Transparent. The public, including student loan borrowers, may
> benefit from information about the performance of private and
> federal student loans and the practices of individual student loan
> lenders and servicers, including information related to loan
> origination, loan terms and conditions, borrower characteristics,
> portfolio composition, delinquency and default, payment plan
> enrollment, utilization of forbearance and deferment, the
> administration of borrower benefits and protections, and the
> handling of borrower complaints. . . .

*Id.* at 67390.

The pithy statement of student loan servicing principles is the focus of 175

documents withheld under Category 75 (Documents 93 through 267 on the

February 15, 2019 Supplemental Privilege Log).  Category 75 covers the

following:

> Confidential pre-decisional and deliberative communications and
> documents prepared by or shared among personnel in the Bureau's
> Office for Students, personnel in other divisions of the Bureau,
> personnel in the Department of Education, personnel in the
> Department of Treasury, and/or personnel in the Executive Office
> of the President relating to the drafting, development, or publication
> of the "Joint Statement of Principles on Student Loan Servicing"
> issued by the Bureau, the Department of Education, and the
> Department of Treasury on September 29, 2015, including drafts of
> the Joint Statement of Principles and related communications and
> documents; purpose of communications and documents was to
> obtain, provide, or discuss feedback, comments, reactions,

> recommendations, or suggestions from personnel in the aforementioned federal agencies or offices regarding the content of the Joint Statement of Principles in connection with the process of developing recommendations to former Director Cordray and leadership at other federal agencies regarding the content and publication of the Joint Statement of Principles; communications and documents contain or reflect non-final analyses, reactions, recommendations, suggestions, or views of personnel in the aforementioned federal agencies or offices in connection with the aforementioned process; communications and documents preceded final decisions regarding the content and publication of the Joint Statement of Principles.

(Doc. 225 at7-8.) Of the 175 documents withheld under this Category, 41 are drafts of the Student Loan Servicing Principles, and the other 134 are email threads. The drafts and emails show that there was a considerable exchange of views concerning the precise language to be used for the principles, but very little debate over the substance of the principles. In other words, the expectations of ED, the Bureau and Treasury for student loan servicers were aligned. The disagreement, to the extent there was disagreement, was over how to articulate those expectations.

The email threads under Category 75 can be grouped by the subject line on the emails. There are only five separate subjects: (1) "Call on JSOP" – 47 redacted documents; (2) "For Discussion: Joint Statement of Principles on Student Loan Servicing" – 17 redacted documents; (3) "UPDATE: Reconciled ED-TREAS-CFPB Joint Statement on SLS" – 51 redacted documents; (4) "Final Joint Statement of Principles on Student Loan Servicing" – 15 redacted documents; and (5) "ED-TREAS-CFPB Call on Joint Statement of Principles" – 4 redacted documents.

The redactions in the email threads labeled "For Discussion: Joint Statement of Principles on Student Loan Servicing" and "ED-TREAS-CFPB Call on Joint

Statement of Principles" are not substantive in nature and do not reflect ED or Treasury's expectations of student loan servicers. Thus, the Bureau will not be required to produce unredacted copies of the documents in these email threads.[16]

The redactions from the other three email threads are more substantive in nature, but somewhat difficult to consider because of the numerous repeat copies of the emails. To assist me in making a final determination on whether to require production of the emails in these three threads, I will direct the Bureau to identify by Bates Number and Privilege Log Document Number the one email thread in each grouping that contains ALL the emails so that I can consider the question of whether Defendants' need to see all or some of the redacted content outweighs the Bureau's interest in protecting the deliberative processes.[17] The Bureau will be asked to make that identification prior to our conference call on May 14, 2019 so

---

[16] The Documents in the email thread bearing the subject line, "For Discussion: Joint Statement of Principles on Student Loan Servicing," are numbered 97, 99, 101, 124, 126, 128, 170 through 173, 126, 221, 222, and 243 through 245 on the February 15, 2019 Supplemental Privilege Log. The Documents in the email thread bearing the subject line, "ED-TREAS-CFPB Call on Joint Statement of Principles," are numbered 174, 175, 223 and 224 on that Privilege Log.

[17] It seems to me that the complete email thread with the subject, "Call on JSOP," comprises 8 pages and spans the period August 30, 2015 through September 16, 2015 (see Document 264 on the February 15, 2019 Privilege Log, CFPB-NAV-0057459); the email thread with the subject, "UPDATE: Reconciled ED-TREAS-CFPB Joint Statement on SLS," appears to comprise 5 pages and spans the period August 30, 2015 through September 9, 2015 (see Document 253, CFPB-NAV-0057448); and the email thread with the subject line, "Final Joint Statement of Principles on Student Loan Servicing," consists of 8 pages and covers the period August 30, 2015 through September 29, 2015 (see Document 220, CFPB-NAV-0057393). The Bureau, however, should be able to more readily identify the one instance in each email thread that contains all the emails than I can.

that we may have a discussion on whether some or all the redactions should be undone.

After careful consideration, I have concluded that none of the drafts of the Student Loan Servicing Principles need be produced.  The drafts are plainly deliberative in nature.  Although the subject of the drafts – best practices for student loan servicing – is clearly germane to this litigation, the language preferences expressed by ED, the Bureau, and Treasury do not reflect disagreement on the core principles of consistency in servicing requirements, the need to provide borrowers with accurate and actionable information, accountability for student loan servicers, and transparency.  More importantly, the disagreements in language preferences are irrelevant as the Student Loan Servicing Principles were issued as a *joint* statement of ED, Treasury and the Bureau.  Thus, it is the publicly-released Student Loan Servicing Principles that articulated ED's expectations of student loan servicers, and not some comment made by an agency staff member leading up to the issuance of the Student Loan Servicing Principles, that is relevant here.  *See* May 4, 2018 Decision of Judge Mariani (Doc. 88) at 10.  Reinforcing my conclusion that the Bureau's interest in maintaining the integrity of this inter-agency deliberative process outweighs Defendants interest in seeing the drafts is the fact that ED has asserted the deliberative process privilege in response to Defendants' discovery efforts directed at ED.[18]  Also buttressing my conclusion is the fact that the comments and redline edits on this concise document cannot be

---

[18] During the May 14, 2019 conference call, the Bureau represented that ED has asserted the deliberative process privilege with respect to certain documents. (Tr. of May 14, 2019 Conference at 8.)  It is not clear, however, whether ED has claimed the deliberative process privilege with respect to the development of the Student Loan Servicing Principles.  To the extent that ED does not seek to protect the communications leading up to issuance of the Student Loan Serving Principles, Defendants have an alternative source for obtaining the documents in question.

segregated as readily as can the ED comments on drafts of the Runcie
Memorandum that I ordered produced in Special Master Report #7. (Doc. 295 at 5-
6.) It simply would be impossible to produce only the comments and suggestions
made by ED or Treasury.  For all these reasons, production of drafts of the Student
Loan Servicing Principles will not be required.

### H. Category 81

The final Category in the Bureau's third production of deliberative process
privilege documents is 81, described as follows:

> Confidential pre-decisional and deliberative communications and
> documents prepared by or shared among personnel in the Bureau,
> personnel in the Department of Education, and/or personnel in the
> Department of Treasury relating to the drafting of public relations
> materials relating to the release of the July 20, 2016 Memorandum
> from Ted Mitchell to James Runcie regarding "Policy Direction on
> Federal Student Loan Servicing," including drafts of Q&As for
> press, a draft of remarks from former Director Richard Cordray,
> and related communications; purpose of the communications and
> documents was to develop, obtain, provide, or discuss opinions,
> recommendations, suggestions, or views of personnel in the Bureau
> and other federal agencies or offices regarding the content of the
> press materials in connection with the process of determining how
> to present the agencies' policies or positions regarding student loan
> servicing to the public; communications and documents contain or
> reflect non-final analyses, reactions, recommendations, suggestions,
> or views of personnel in the aforementioned federal agencies or
> offices in connection with the aforementioned process;
> communications and documents preceded final decisions regarding
> the content and release of the press materials.

(Doc. 225 at 8.)

There are 22 Documents under this Category, numbered 268 through 289 on
the Bureau's February 15, 2019 Supplemental Privilege Log.  Significantly, the
Bureau's letter of February 15, 2019 transmitting the third set of deliberative

process documents states that it has also asserted the attorney-client privilege over

21 of the 22 Documents, with the deliberative process privilege alone applying

only to Document 268.  Defendants have not challenged the Bureau's assertion of

the attorney-client privilege.  Unlike the deliberative process privilege, the

attorney-client privilege is absolute, dispensing with the consideration of any

competing interests.  Consequently, I have not reviewed Documents 269 through

289 on the February 15, 2019 Supplemental Privilege Log.

The remaining Document under Category 81 (Document 268 (CFPB-NAV-

0057313)), is described on the Bureau's February 15, 2019 Supplemental Privilege

Log as "[t]he content of former Director Richard Cordray's remarks at a roundtable

discussion regarding [ED's] July 20, 2016 policy memorandum titled 'Policy

Direction on Federal Student Loan Servicing.'"  It is not clear whether this

Document is a verbatim recitation of remarks given by former Director Cordray.  If

it is a verbatim recitation, the Bureau should be required to produce the Document.

If it is draft of his remarks, however, it is covered by the deliberative process

privilege.  *See ICM Registry, LLC v. U.S. Dep't of Commerce*, 538 F. Supp. 2d

130, 137 (D.D.C. 2008) (extending deliberative process protection to "internal

deliberations on how best to present the issues to be discussed to the public").

Accordingly, the Bureau will be asked during our May 21, 2019 conference call to

state whether Document 268 is a draft of former Director Cordray's remarks, or a verbatim recitation of those remarks.

## III.   CONCLUSION

All Documents withheld, in whole or in part, under Categories 42, 43, 48, 71, 73, 74, 75, and 81 of the Bureau's Categorical Privilege Log are pre-decisional and deliberative in nature.  The Defendants' interest in obtaining several of the Documents, however, exceeds the Bureau's interest in protecting its deliberative process.  The accompanying Order directs the Bureau to take actions consistent with the preceding discussion.

s/ Thomas I. Vanaskie
THOMAS I. VANASKIE
SPECIAL MASTER

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CONSUMER FINANCIAL      :
PROTECTION BUREAU,       :
                           :
       **Plaintiff**       :
                           :
                           :     **3:17-CV-101**
       **v.**              :     **(Judge Mariani)**
                           :
                           :
NAVIENT CORPORATION, et al.,  :
                           :
       **Defendants.**     :

## ORDER

**NOW,** this 17th Day of May 2019, in accordance with the foregoing Special Master Report #9, **IT IS HEREBY ORDERED THAT:**

1. The Bureau shall provide the two-page comments of the United States Department of Education on the draft student loan servicing report, Documents 64 (CFPB-NAV-0057295) and 66 (CFPB-NAV-0057297) on the February 15, 2019 Supplemental Privilege Log.

2. The Bureau shall eliminate redactions of comments from email threads that comprise Documents 72 through 81 and 90 through 92 on the February 15, 2019 Supplemental Privilege Log that were made in email exchanges

subsequent to the email from ED's Jeff Appel at 1:06 p.m. on September 28, 2015.

3. No later than May 21, 2019 at 11:00 am., the Bureau shall identify by Supplemental Privilege Log number and Bates Number from Category 75 one complete email thread with the subject, "Call on JSOP," one complete email thread with the subject, "UPDATE: Reconciled ED-TREAS-CFPB Joint Statement on SLS," and one complete email thread with the subject line, "Final Joint Statement of Principles on Student Loan Servicing." The Bureau shall also be prepared to state during our May 21, 2019 conference call whether Document 268 is a draft of former Director Cordray's remarks, or a verbatim recitation of those remarks.

4. Objections to this Report #8 and Order must be submitted no later than twenty-one (21) days after service of this Order.

s/ Thomas I. Vanaskie
THOMAS I. VANASKIE
SPECIAL MASTER