1700 G Street NW,
Washington, DC 20552
May 24, 2019



**Via ECF (publicly with redactions and under seal without
redactions) and Email (without redactions)**

The Honorable Thomas I. Vanaskie, Special Master
U.S. District Court, Middle District of Pennsylvania
William J. Nealon Federal Bldg. & U.S. Courthouse
235 N. Washington Avenue
Scranton, PA 18503

      Re:     *CFPB v. Navient Corp., et al.*, Case No. 3:17-CV-00101-RDM

Dear Judge Vanaskie:

      Defendants submitted an *ex parte* communication to Your Honor on May 21, 2019
containing the Bureau's Fifth Supplemental and Amended Initial Disclosures ("Fifth Disclosures").[1]
After discussion about the Fifth Disclosures on the teleconference that day, Your Honor provided an
opportunity for written submissions. The Bureau writes to respond to Defendants' May 22 letter.

      **1.**     **FRCP 26(a)(1)(A) and 26(e) require supplementation once a party decides that
it "may use" a witness, which can occur well past the end of fact discovery.** FRCP 26(a)(1)(A)
requires disclosure of witnesses whom a party "may use to support its claims or defenses," and
FRCP 26(e) mandates supplementation "in a timely manner if the party learns that in some material
respect the disclosure or response is incomplete or incorrect." Thus, from the plain language of
these rules, the duty to supplement does not, as Defendants appear to suggest, expire at some
arbitrary time before the end of fact discovery, nor does it expire at the end of fact discovery. *See,
e.g., Novak v. Capital Mgmt. & Dev. Corp.*, 2004 WL 7334070, at *5 (D.D.C. Feb. 26, 2004)
("There is no rule in the Federal Rules of Civil Procedure nor any provision in an order by the
presiding judge that required the supplementation that was done to have been done any sooner. As a
result, the motions to strike are completely unwarranted."); *accord Brock v. R.J. Auto Parts & Serv.,
Inc.,* 864 F.2d 677, 679 (10th Cir. 1988) ("The Federal Rules of Civil Procedure specify the pretrial
conference as the appropriate occasion on which to identify witnesses.").

      As this Court has stated, the pretrial order sets the time period by which disclosure of all
witnesses should be made to be considered timely. *See Davies By & Through Davies v.
Lackawanna County*, 2018 WL 924205, at *7 (M.D. Pa. Feb. 14, 2018) (Mariani, J.) (indicating that
a timeliness objection to disclosure of new witnesses three weeks before trial may be appropriate,
because such disclosure occurred past the 30-day cutoff set forth in the pretrial order). And the
advisory committee notes to Rule 26(e) underscore that the appropriate cutoff for disclosure of

---

      [1] It is not clear to the Bureau why Defendants chose to provide to the Court clerk a copy of
the Fifth Disclosures, purportedly with no instructions as to whether they should be filed, sent to
Judge Mariani, or sent to Your Honor, in the apparent hopes that they would reach Your Honor
before the 11:00 AM teleconference that day. *See* A2-8, 10-12. Defendants did not notify the
Bureau of the transmission to the clerk in advance of the teleconference. This is not the first time
that Defendants made an *ex parte* communication, as the Bureau became aware on March 14, 2019
that a document provided to Your Honor on March 4, 2019 had never been provided to the Bureau.
*See* A14-15, 17-18.

witnesses is some point prior to the beginning of trial: "Supplementations need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness *as the trial date approaches*." 1993 advisory committee notes to FRCP 26(e) (emphasis added).[2]

FRCP 26 also makes evident that the trigger for disclosure is when a party determines that it "may use" a witness, not merely when the party learns about the witness. *See* 2000 advisory committee note to FRCP 26(a)(1) (noting that, under the amendment to the rule, "[a] party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use," and that, "[a]s case preparation continues, a party must supplement its disclosures when it determines that it may use a witness or document that it did not previously intend to use"). Accordingly, it is irrelevant whether a party spoke to the witnesses in advance of the disclosure, as the party is "under no obligation to inform" the opposing party of the identity of any witness until the party knows it may use the testimony of the witnesses to support its claims or defenses. *Baughman v. Cheung Enterprises, LLC*, 2014 WL 6773791, at *4 (M.D. Pa. Dec. 2, 2014); *accord Columbia Data Prod., Inc. v. Autonomy Corp., Ltd.*, 2012 WL 6212898, at *2 (D. Mass. Dec. 12, 2012) ("[E]ven if an individual has personal knowledge of facts relevant to the parties' claims and defenses, a party is not obligated to disclose the individual if the party does not intend to use the individual to support its claims or defenses.").

This Court, in accordance with FRCP 26, allows disclosure of witnesses exactly as the Bureau has done here:

- *Supinski v. United Parcel Serv., Inc.*, 2012 WL 2905381, at *9 (M.D. Pa. July 16, 2012) (citations omitted): "Before trial, UPS filed a motion *in limine* to exclude the testimony of witnesses not disclosed by Plaintiff prior to the filing of his pretrial memorandum. The Court denied UPS' motion on the grounds that any failure to disclose was harmless. However, the Court permitted UPS to take the depositions of these witnesses on the Friday and Saturday prior to trial. . . . UPS was permitted to depose these witnesses, which cured the alleged prejudice[.]"

- *Ponzini v. PrimeCare Med., Inc.*, 269 F. Supp. 3d 444, 569-72 (M.D. Pa. 2017): "At the conclusion of the second day of trial, counsel for the Plaintiffs informed the Court that [they wanted to disclose a new witness for trial]. . . . The Court finds that the late disclosure of . . . a witness did not prejudice the Defendants . . . . The Defendants' argument that they lacked sufficient time to obtain evidence to impeach her testimony is unavailing. . . . [I]t is worth noting that the [defendants] . . . declined the opportunity to take [the witness's] deposition[.]"

- *Baughman*, 2014 WL 6773791, at *3-4: "Plaintiff . . . did not identify [the eight new] witnesses until filing her supplemental disclosures, 'a week before the close of discovery.' . . . Even if Plaintiff knew the identities of the eight disputed witnesses at the time of her initial disclosures, she was under no obligation to inform Defendant of their identities if she did not intend to use them to support her claims. . . . Furthermore, any prejudice that Defendant suffered is minimal. Defendant was notified of the witnesses' identities . . . long before the January 2015 trial[.]"

---

[2] In *Estate of McDermed, v. Ford Motor Co.*, 2016 WL 1298096 (D. Kan. Apr. 1, 2016) – relied upon by Defendants in their letter and during the May 21 teleconference – the court had issued a scheduling order requiring "supplemental disclosures be served 40 days before the deadline for completion of discovery." *Id.* at *1. There is no such deadline for supplementation in any of the scheduling orders in this litigation.

The foregoing case law from this Court is in accordance with the case law from other district courts throughout the country, which indicates that supplementation with new witnesses close to the end of discovery, or even well past the close of discovery, is acceptable and does not result in prejudicial error that cannot be cured. *See, e.g., Phillip M. Adams, LLC v. Winbond Elec. Corp.*, 2010 WL 3258161, *2 (D. Utah Aug. 17, 2010) ("the Court will deny the Motion to exclude [the witness's] testimony, but will do so on the condition that [he be made] available for deposition in advance of his trial testimony"); *Ortega v. City & Cty. of Denver*, 2013 WL 1751944, at *2-3 (D. Colo. Apr. 23, 2013) ("Plaintiffs have represented that the failure to include these four witnesses in an earlier supplemental disclosure was an 'oversight.' There is no evidence in the record which would call the veracity of this representation into question. . . .  [T]he Court finds that exclusion of the four late disclosed witnesses is not appropriate."); *Dynetix Design Sols., Inc. v. Synopsys, Inc.,* 2013 WL 4537838, at *7 (N.D. Cal. Aug. 22, 2013) ("Even though these witnesses were not disclosed in Synopsys' initial disclosures, they were disclosed before the end of fact discovery in Synopsys' supplemental initial disclosures"); *Intel Corp. v. VIA Tech., Inc.*, 204 F.R.D. 450, 451 (N.D. Cal. 2001) ("As the deadline for summary judgment nears in any civil case, it is customary for counsel to solicit declarations. . . . In this process, it would be unreasonable and burdensome (and rarely, if ever, done in practice) to require all sides to augment any . . . disclosure lists each and every time they obtain a declaration for potential use on summary judgment."); *Clark v. Wilkin*, 2008 WL 2388634, at *2 (D. Utah June 11, 2008) (disclosure of new witnesses allowed several months after conclusion of fact discovery); *Peterson v. Pan Am Railways, Inc.*, 2015 WL 2451227, at *4 (N.D.N.Y. May 21, 2015) ("[T]he Court finds that the fact that the supplementation occurred after the close of discovery is harmless. . . . [T]his is not a case where the disclosing party waited until the eve of trial to disclose its witnesses.") (quotation omitted); *Neurovision Med. Prod., Inc. v. NuVasive, Inc.*, 2013 WL 12111590, at *2 (C.D. Cal. Oct. 22, 2013) ("Defendant also was not harmed by this untimely disclosure, as trial remains months away.").

Further, to the extent that there is any alleged prejudice from a late disclosure, courts have consistently held that the prejudice is cured by allowing the witness to be deposed before the trial occurs. *See, e.g., In re Mercedes-Benz Anti-Trust Litig.*, 225 F.R.D. 498, 508 (D.N.J. 2005); *Maritime-Ontario Freight Lines, Ltd. v. STI Holdings, Inc.*, 481 F. Supp. 2d 963, 972 (W.D. Wis. 2007); *Wright v. Aargo Sec. Svcs., Inc.*, 2001 WL 1035139, at *3 (S.D.N.Y. Sept. 7, 2001); *Ortega*, 2013 WL 1751944, at *3; *North Dakota v. Heydinger*, 2013 WL 10180918, at *4-5 (D. Minn. Oct. 24, 2013); *Rodriguez-Garcia v. Municipality of Caguas*, 225 F.R.D. 67, 68 (D.P.R. 2004); *Krause v. Buffalo & Erie County Workforce Develop.*, 426 F. Supp. 2d 68, 89 (W.D.N.Y. 2005).

**2.    The Bureau timely disclosed all four witnesses.** It is important to keep in mind a few key points regarding the history of the Bureau's use of third-party witnesses in this case:

- Defendants have claimed that the Bureau is required to conduct certain diligence on witnesses before disclosing them. *See, e.g.*, A20. But Defendants have delayed the production of data and documents that would allow the Bureau to perform such diligence. *See, e.g., id.*

- Third-party borrowers and former employees are obviously not compensated by the Bureau, and there can be significant personal inconvenience or embarrassment associated with agreeing to be a witness, such that it is not straightforward to locate cooperative witnesses. For example, Defendants refused to accommodate at least two witnesses who desired a Saturday deposition

due to work conflicts, and those witnesses ceased to be cooperative. A23, 25-30.[3] In addition, the Bureau warns prospective witnesses that, based on the depositions that have occurred, Navient will investigate every detail of the witnesses' personal lives and probe these irrelevant issues in great detail at depositions, including past lawsuits, medical issues, hobbies, and vehicle choices. *See* A32-49, 51-58, 60-63. Finally, when borrowers have tried to obtain information about their loans from Defendants to properly prepare for their depositions, they have been rebuffed. *See* A68-73, 75-76, 79-80, 82-83, 86-87, 90-91.

- The aggressive methods of Defendants' process server has been causing witnesses to cease cooperating after being placed on the Bureau's disclosures. Because of that, the Bureau previously requested that the Bureau receive subpoenas on behalf of witnesses who so agreed, but Defendants refused. Defendants' explanation for their refusal (A65) is nonsensical in light of the fact that attorneys routinely receive subpoenas on behalf of third-parties.

- A significant number of former employees of Defendants signed non-disclosure agreements in exchange for compensation at the time of their departure from employment. On this basis, these employees have declined to speak with the Bureau. Other former employees have declined to speak with the Bureau because they have family members still employed by Defendants. *See, e.g.*, Exhibit D to Defendants' May 22 Letter (email from Bureau to former employee, who forwarded the email to a family member employed by Navient).

With respect to the four witnesses disclosed by the Bureau, the Bureau further notes as follows:

- B███ W████████: As Defendants note, they did not produce a list of all witnesses affected by the Bureau's credit reporting claim until November 2018. It is unacceptable for Defendants to delay their production so substantially, and then claim that the Bureau was the dilatory party.

- T███ C██████ and A████ N█████: The Bureau endeavored to use Defendants' data produced in February 2019 to confirm the accuracy of the information provided by these witnesses. Again, Defendants should not be entitled to reap a benefit from their delayed productions.

- T█████ M████: Defendants substantially delayed their production of former employee contact information, requiring the Bureau to seek Court intervention to obtain its production such that the production did not occur until September 2018. And as noted above, it is very difficult to obtain information from Defendants' former employees in light of the fact that a significant number of them refuse to speak with the Bureau because of nondisclosure agreements.

Thus, contrary to what Defendants would have the Court believe, Defendants ate up approximately two-thirds of the discovery period before making useful productions, and these delays directly contributed to the fact that the Bureau is disclosing new witnesses at this juncture. Finally, as the Bureau indicated on the May 21 teleconference, if Defendants want to depose the four newly disclosed witnesses but do not find it convenient to do so before the end of fact discovery, then the Bureau is amenable to doing so at a later date – an accommodation that Defendants found acceptable in the past. *See* A108. Defendants cannot reasonably argue that, with a trial date not set, they will suffer prejudice from the disclosure of these four witnesses.

**3.      Defendants' quotations from the May 14 teleconference are misleading.**
Defendants quote from the May 14 teleconference in an attempt to claim that the Bureau was required to preview that it would be amending its disclosures. The notion that each party was

---

[3] It is odd that Defendants bring up former employee A██ Q██████ as proof that the Bureau does not secure the cooperation of witnesses. It was not until after Defendants adamantly refused to accommodate her request for a Saturday deposition that she ceased to be responsive. *See* A23.

Case 3:17-cv-00101-RDM   Document 308   Filed 05/24/19   Page 5 of 5

required to catalog all outstanding fact discovery tasks on that call is false. On that teleconference, Your Honor posed the following question: "The last item that I have for today is the items remaining to be decided within the discovery period. . . . [L]et me ask the Bureau, what items do you believe still need to be decided?" 5/14/19 Hearing Trans. at 7-8.  There was nothing "to be decided" regarding the Fifth Disclosures at that time.

If, as Defendants now suggest in their letter, they believe that there was supposed to be some sort of itemizing, on that teleconference, of everything that is in progress, then it begs the question as to why they omitted certain items when given the opportunity to indicate the items to be decided. For instance, **on the same day as the May 14 teleconference**, Defendants issued a notice of recall for various documents that they now claim are privileged (A93-94), yet Defendants did not mention this on the teleconference. In addition, Defendants served a subpoena on FICO on May 3, 2019, with a return date of May 31, 2019 (A96), yet they also did not mention that on the teleconference.

**4.      Defendants seek to hold the Bureau to a different standard than themselves.** Defendants' objections to the Bureau's disclosures cannot be squared with their own conduct. For example, Defendants supplemented their disclosures **on the same day that fact discovery was previously set to close**. A98. While Defendants may contend that their late disclosures were permissible because they added witnesses who had been deposed, nothing in FRCP 26(e) draws a distinction about the timing of allowable supplementation based on whether a witness was deposed. To the contrary, a witness must be disclosed if a party "may use" the witness to support its claims or defenses. FRCP 26(a)(1)(A). The rule does not contain an exemption for deposed witnesses.

Further, Defendants' disclosures do not even list a single witness from ED. Defendants have claimed that "Navient is really a marionette that is being held by the Department of Education." Doc. 76, at 6. They have pressed the view that they are in constant communication with ED about expectations, and also that these expectations of ED are highly relevant to this case. Yet not a single ED witness appears on their disclosures, despite the fact that, on March 16, 2018, Defendants stated as follows: "Defendants believe there are individuals at the United States Department of Education that have discoverable information Defendants will use to support their claims or defenses. Defendants will supplement their disclosures once those individuals have been identified." A103.[4]

In contrast to the issues with Defendants' disclosures, the record bears out that the Bureau has been diligent in amending its disclosures during discovery. The Bureau has now made five supplemental disclosures at regular intervals during the discovery period, doing so despite Defendants' significantly delayed production of documents, borrower data, and former employee contact information.

> Respectfully submitted,
> /s/ Nick Jabbour

---

[4] Though Defendants took a Rule 30(b)(6) deposition of ED, the Rule 30(b)(6) designees were not testifying from their personal knowledge. Thus, it is not appropriate for Defendants to disclose that deposition on their initial disclosures, and claim that this somehow serves as an indication of specific witnesses *with personal knowledge* whom Defendants "may use," much less the "subjects of [the discoverable] information" within the personal knowledge of those witnesses (FRCP 26(a)(1)(A)(i)). *See, e.g., Union Pump Co. v. Centrifugal Tech. Inc.*, 404 Fed. Appx. 899, 907 (5th Cir. 2010); *Reuther v. Realtors*, 2016 WL 5337839, at *3 (E.D. La. Sept. 23, 2016).