# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CONSUMER FINANCIAL
PROTECTION BUREAU,

        Plaintiff

        v.

NAVIENT CORPORATION, et al.,

        Defendants.

:
:
:
:
:
:  **3:17-CV-101**
:  **(Judge Mariani)**
:
:
:
:
:

## SPECIAL MASTER REPORT #11 – *IN CAMERA* REVIEW OF A SAMPLE OF THE DOCUMENTS WITHHELD BY DEFENDANTS BASED UPON THE ATTORNEY WORK PRODUCT DCOTRINE

### I.      INTRODUCTION

Addressed in this Special Master Report is the attorney work product

doctrine. First recognized by the Supreme Court of the United States in the

seminal case of *Hickman v. Taylor*, 329 U.S. 495 (1947), and later codified in

Federal Rule of Civil Procedure 26(b)(3)(A), *see United Coal Companies v. Powell

Const. Co.,* 839 F.2d 958, 966 (3d Cir. 1988), the attorney work product doctrine

"shelters the mental processes of the attorney, providing a privileged area within

which he can analyze and prepare his client's case." *United States v. Nobles*, 422

U.S. 225, 238 (1975). Viewed as "a complement to the attorney client privilege,"

the work product doctrine "promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients." *In re Grand Jury Matter #3*, 847 F.3d 157, 165 (3d Cir. 2017) (internal quotation marks and citation omitted).

As codified in Fed. R. Civ. P. 26(b)(3)(A),[1] the attorney work product doctrine has three requirements: "(1) the material in question must be a document or tangible thing (2) which was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for its representative." Paul F. Rothstein and Susan W. Crump, *Federal Testimonial Privileges: Evidentiary Privileges Relating to Witnesses & Documents in Federal-Law Cases* § 11:2 (2d ed. 2006). Rule 26(b)(3)(A) defines "representative" broadly, in recognition of the Supreme Court's observation that the work product doctrine "is an intensely practical one, grounded in the realities of litigation in our adversary system[,]" and that "[o]ne of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial." *Nobles,*

---

[1] In pertinent part, Federal Rule of Civil Procedure 26(b)(3)(A) provides:

(A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).

422 U.S. at 238.  As the Court continued, "[i]t is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." *Id.* at 238-29.  "This [protection] encompasses factual materials." *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1261 (3d Cir. 1993).

However, "the work product doctrine does not extend to documents in an attorney's possession that were prepared by a third party in the ordinary course of business and that would have been created in essentially similar form irrespective of any litigation anticipated by counsel." *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 384–85 (2d Cir. 2003).  "[T]he principle underlying the work product doctrine—sheltering the mental processes of an attorney as reflected in documents prepared for litigation—is not generally promoted by shielding from discovery materials in an attorney's possession that were prepared neither by the attorney nor his agents." *Id.* at 384.  On the other hand, the selection and compilation of documents from a larger mass of materials is entitled to protection because "identification of the documents as a group will reveal . . . counsel's selection process, and thus [counsel's] mental impressions." *Sporck v. Peil*, 759 F.2d 312, 315 (3d Cir. 1985).  Indeed, the Third Circuit

considered the compilation of documents to fall within "the highly protected

category of attorney opinion work product." *Id.* at 316.[2]

It is with these principles in mind that I reviewed *in camera* a random

sample of the thousands of documents that Defendants claimed to be protected

from discovery under the work product doctrine.  To understand the conclusions

expressed in this Report, it is essential that I briefly recount the background of this

litigation and the process that led to the selection of the random sample.

## II.    BACKGROUND

The Bureau, an independent agency of the United States charged with

regulating the offering and provision of consumer financial products and services

under Federal consumer financial laws, brought this suit against Navient

Corporation and two of its subsidiaries, Navient Solutions, Inc. and Pioneer Credit

Recovery, Inc.  Defendant Navient Corporation is a Delaware loan management,

servicing, and asset recovery corporation.  Defendant Navient Solutions, Inc., a

wholly-owned subsidiary of Navient Corporation and formerly known as Sallie

Mae, Inc., services federal and private student loans for more than 12 million

borrowers.  Defendant Pioneer Credit Recovery, Inc., an indirect wholly-owned

subsidiary of Navient Corporation, is a debt collector that has collected defaulted

---

[2] This heightened protection of counsel's opinions is codified in Fed. R. Civ. P. 26(b)(3)(B), which provides that if a court finds that a party has substantial need for attorney work product material that it cannot otherwise obtain, the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."

federal student loan debt on behalf of the United States Department of Education

("ED") and several state-based loan guaranty agencies.  The Bureau's 11-count

Complaint asserts claims against Defendants under the Consumer Financial

Protection Act of 2010, 12 U.S.C . §§ 5531, 5536(a), 5564, 5565; the Fair Credit

Reporting Act, 15 U.S.C. §§ 1681 *et seq.*; and the Fair Debt Collection Practices

Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, for alleged unlawful acts and practices

in connection with Defendants' servicing and collection of student loans. The

Bureau requests, among other things, injunctive relief, restitution to harmed

student borrowers, disgorgement of "ill-gotten revenue," and monetary penalties.

(Doc.[3] 1 at 65-66.)

This litigation was instituted after a lengthy investigation by the Bureau.

During its investigation, the Bureau issued to Defendants "Civil Investigative

Demands" ("CIDs") requiring the production of copious amounts of documents.[4]

Defendants were represented by both in-house and outside counsel in responding

to the CIDs.  When this litigation ensued, the Bureau served requests for

production of documents and electronically stored information ("ESI") that

encompassed materials that had been reviewed by in-house and outside counsel in

---

[3] The designation "Doc." followed by a number refers to the docket entry number on the electronically-maintained docket sheet for this case.

[4] The Bureau is authorized to issue CIDs pursuant to 12 U.S.C. § 5562(c).

connection with the CIDs.  This fact undoubtedly resulted in the Defendants

claiming work product protection in this litigation for compilations of documents

that had been requested by or provided to counsel to respond to the CIDs.

By Order dated January 16, 2019, I was appointed Special Master "to decide

all current and future discovery disputes."  (Doc. 158 at 2.)  By letter dated

February 4, 2019, the Bureau questioned Defendants' invocation of attorney work

product protection over "nearly 15,000 documents."  (Doc. 204 at 2.)  Following

up on a discussion during my initial status conference with the parties on January

28, 2019, the Bureau proposed a method for determining whether work product

protection was properly claimed over this mass of documents:

> At the last hearing, Your Honor suggested that a sample could be
> drawn from entries that contain a work product protection claim.
> Defendants would be given an opportunity to supplement their log
> for that sample. The Bureau could then review that sample of
> entries and indicate unilaterally whether it wanted Your Honor to
> review the documents associated with those entries *in camera* to
> determine, within that sample, how often the work product
> privilege was inappropriately invoked. *See* Jan. 28 Transcript at
> 66:25-72:6.
>
> Your Honor invited the parties to propose possible sample sizes
> that would be statistically significant. *Id.* at 71:20-24. The Bureau
> proposes a sample size of 997 (which is under 7% of the universe at
> issue). This sample size would allow Your Honor to make a
> determination with 95% confidence that the frequency of correct
> privilege assertions observed is within 3% (in either direction) of
> the actual frequency, which are common statistical norms.
>
> Accordingly, the Bureau respectfully requests that the parties
> coordinate to generate a list of all 15,000 documents withheld on

6

the basis of the attorney work product privilege, that Your Honor
draw a sample of 997 numbers from 1 to 15,000 using any readily
available random number generator on the internet, and that
Defendants supplement their privilege assertions for those 997
entries within four weeks.

(Doc. 204 at 2.)

Defendants responded by pointing out that they also had claimed "the

attorney-client privilege over all but about 6,600 of these [15,000] documents."

(Doc. 206 at 3.)  Thus, the universe of documents for which only work product

protections had been asserted was then limited to about 6,600 documents.

The question of how best to test the accuracy of Defendants' claim of

attorney work product protection over approximately 6,600 documents was the

subject of considerable discussion during a telephonic conference conducted on

February 5, 2019.  (See Feb. 5, 2019 Tr. at 10-26.)  Special Master Order #5, dated

February 5, 2019, directed the parties to "confer in good faith to reach an

agreement on the sample size for the approximate 6,600 entries for which the only

claim of privilege is the work product doctrine and the method for drawing the

sample."  (Doc. 211 at 2.)  During the February 14 conference call, the parties

confirmed an agreement to have a sample size of 7% of 6,607 documents withheld

from production solely based on the work product doctrine.  (Feb. 14, 2019 Tr. at

22.)  A spreadsheet in PDF format identifying in numerical order from 1 to 6,607

the documents for which only work product protection had been claimed was

provided to me.  Using www.randomizer.org, I generated a random set of 462

numbers from the list of 6,607 documents on the spreadsheet, representing 7% of

the total corpus.  By Special Master Order #7, dated February 14, 2019, I directed

Defendants to produce for *in camera* review the randomly selected documents.

(Doc. 222.)

By letter dated March 4, 2019, Defendants transmitted to me an encrypted

flash drive containing *most* of the documents called for by Special Master Order

#7.[5]  Accompanying the letter as Appendix A was a spreadsheet providing

"supplemental information about the privilege claims."[6]  The letter continued:

> Upon additional review and consideration, Defendants have
> determined that some of the documents previously identified as
> attorney work product are instead protected by the attorney-client
> privilege.  Defendants have nonetheless included those documents
> for review, and the revised privilege claims are described in
> Appendix A.  Defendants have also decided not to withhold certain
> documents on the basis of privilege and anticipate producing those
> documents to the [Bureau]. . . .

---

[5] The March 4 letter does not appear on the Docket.  Defendants are
requested to have the letter placed on the Docket.  If necessary, Defendants shall
seek leave to have the accompanying Appendix A filed under seal.

[6] On March 13, 2019, Defendants provided a "Supplemental Spreadsheet"
that included the sample number for each document produced for *in camera*
review.  Defendants are requested to place the Supplemental Spreadsheet on the
docket and seek leave to have it filed under seal if necessary.

The encrypted flash drive contained 409 documents.[7]  Notably, the

spreadsheet indicated that 12 of those documents were protected from discovery

only by the attorney-client privilege, and 101 of those documents were immune

from discovery under *both* the work product doctrine *and* the attorney-client

privilege.  Thus, while originally it had been anticipated that Defendants would

produce 462 documents covered solely by the work product doctrine, only 296

documents randomly drawn from a corpus of 6,607 documents ostensibly protected

from discovery solely by the work product doctrine were produced.

By letter dated April 9, 2019, the Bureau asserted that the withdrawal of

privilege claims on more than 10% of the randomly drawn documents and the

reclassification of 12 of the 462 documents from work product to attorney-client

privilege (2.6% of the corpus) demonstrates an unacceptably high error rate in the

Defendants' assertion of work product protection.  (Doc. 265.)  The Bureau's letter

also represented that, aside from the random sample set of 462 documents,

"Defendants have reexamined 1,377 assertions of the work product privilege.  As a

result, Defendants recently produced to the Bureau hundreds of responsive

documents that were initially withheld as privileged, and reclassified hundreds

more as not actually being protected by the attorney work product privilege and

---

[7] Defendants decided to produce 53 of randomly drawn documents rather
than claim protection from discovery under the work product doctrine or on some
other basis.

instead being protected by the attorney-client privilege." (*Id*. at 1.)  Defendants

asked that the Bureau be required to "re-evaluate the remaining documents for

which they assert the work product privilege that are not part of the above-

described supplementations," (*i.e.*, excluding the sample set of 462 documents and

the 1,377 documents already reexamined), and that after Defendants completed

their re-evaluation, "a new sample for in camera review should be drawn to test

whether the incorrect assertions of the work product privilege persist at a rate that

warrants more drastic relief." (*Id.* 2.)

Defendants responded by letter dated April 15, 2009.  (Doc. 268.)  Pointing

out that the Bureau itself had re-classified documents withheld under the

deliberative process privilege to being protected by the attorney-client privilege,

and that I had made clear that the focus of my *in camera* review would be on

whether documents were properly withheld from discovery and not on the question

of whether the precise basis for protection was work product, attorney-client,

deliberative process, or some other privilege, Defendants urged that consideration

of "next steps, if any are needed," be deferred until after I had issued this Report.

This issue was addressed during our April 16, 2019 conference call.  I

indicated that I would conclude my *in camera* review before considering whether

any additional review by Defendants would be necessary.  (Tr. of April 16, 2019

Call at 17-18.)  I did, however, raise a question for Defendants, and that was

whether documents withheld as having been compiled by counsel had otherwise been produced. (*Id.* at 18-19.) By Special Master Order #23, Defendants were directed to provide the rationale for withholding more 232 sample documents that had been "'collected in connection with review performed by outside counsel Hudson Cook in anticipation of CFPB litigation.'"[8] (Doc. 271 at 1-2.)

Defendants' response to Special Master Order #23 explained that the 232 sample documents were part of a compilation of documents in a "zip file" sent to Hudson Cook, and that this compilation of documents reflects "the thoughts and impressions of Navient's counsel and falls within settled work product protections," citing, *inter alia, Sporck,* 759 F.2d at 316.[9] (Doc. 272 at 1.) Significantly, Defendants' response to Special Master Order #23 represented that 214 of the 232 sample documents from this compilation were policies and procedures contained on Defendants' internal document repository called "KnowledgeShare"; that Defendants produced more than 25,000 documents from KnowledgeShare; and "to the extent there are responsive KnowledgeShare documents contained in the work product compilation, they would have been

---

[8] The 232 documents were listed separately on Defendants' Supplemental Spreadsheet at rows 42 through 273.

[9] It appears that the zip file sent to Hudson Cook contained approximately 3,500 documents. (*See* Tr. of April 23, 2019 conference call at 19.)

produced as part of Defendants' normal search and review process." (Doc. 272 at 2.)

During our April 23, 2019 conference call, Defendants stated that they would produce all KnowledgeShare "documents that are attached to [their] compilation claim which would cover a large number of those 3500 [documents in the zip file sent to Hudson Cook] as well as a large number of the remaining work product only claims." (Tr. of April 23, 2019 conference call at 22.)  In response to the Bureau's concern that KnowledgeShare may not contain exact duplicates of the documents on the Hudson Cook zip file, I directed that Defendants first produce the KnowledgeShare documents and then a determination could be made as to whether any additional production should be made.  (*Id.* at 24.)

Special Master Order #25 (Doc. 276), issued following the conclusion of my *in camera* review of the sample documents, directed that:

> 1. Defendants shall produce those documents found in the KnowledgeShare repository that are identified in rows 42 through 273 of Defendants' Supplemental Spreadsheet no later than **May 3, 2019.**
>
> 2. Defendants shall indicate in writing whether they will produce the documents identified in rows 292 through 382, 386 through 392, and 397 through 400 no later than **April 29, 2019.**
>
> 3. No later than **April 29, 2019,** Defendants shall elaborate in writing the reasons why they contend that the documents identified by Log Nos. 4012, 4136, 6465, 23721, 33645, 33710, and 33729 on Defendants' Supplemental Privilege Log are protected from disclosure by the attorney work product doctrine.

> 4. No later than **April 29, 2019,** Defendants shall indicate in
> writing whether a final copy of the draft identified in Log No. 5824
> and the reports identified in Log Nos. 6359 and 6360 have been
> produced.

*Id.* at 2.

Defendants timely complied with Special Master Order #25. Their April 29,

2019 letter (Doc. 281) stated that, in addition to producing the KnowledgeShare

versions of the sample documents found in rows 42 through 273, they would

produce the KnowledgeShare documents that were part of compilations and found

in rows 292 through 382 of the Supplemental Spreadsheet. As to the documents

identified in rows 386 through 392 and rows 397 through 400, Defendants

represented that they were parts of compilations reflecting the thoughts and

impressions of counsel, but had otherwise been produced during discovery. As to

the other documents identified by Log Number in Special Master Order #25,

Defendants stated that they would produce Log No. 4136,[10] and that final versions

of Log Nos. 6359 and 6360 had been produced.[11] The other documents

---

[10] This document is identified in row 7 of the Supplemental Spreadsheet,
which describes it as a "spreadsheet prepared at the request of in-house counsel for
the purpose of facilitating the rendering of legal advice regarding preparations for
meeting with [Federal Student Aid]."

[11] These documents are identified in rows 10 and 11 of the Supplemental
Spreadsheet, and are described as trust reports dealing with student loans.

specifically mentioned in Special Master Order #25 will be addressed in the

Discussion section of this Report, which follows.

### III.   DISCUSSION

As noted above, the documents comprising the sample set submitted for *in camera* review were accompanied by the Supplemental Spreadsheet consisting of 412 rows and six columns.  The documents are identified in the columns by the sample number selected randomly and set forth in Special Master Order #7; Defendants' Log Number; the date of the document; the "Logged Email Subject or File Name"; the type of privilege claimed to protect the document from discovery; and a succinct supplemental description of the document. The specific documents are listed in rows 4 through 412, accounting for a sample size of 409 documents. Where the sample set included documents that were part of a "family" of documents, e.g., a document for which protection was claimed because it was part of a compilation of documents provided to counsel, Defendants' production included the parent document, e.g., the email that transmitted the document compilation.[12]

The sample set itself can be divided into the following five groups: (1) documents compiled by or for counsel for which only work product protection has

---

[12] Provision of the parent document greatly facilitated understanding the context for the privilege claim.

been claimed; (2) documents compiled by or for counsel for which both work product and attorney client protection have been claimed; (3) communications involving counsel for which only work product protection has been claimed; (4) communications involving counsel for which both work product and attorney-privilege protection have been claimed; and (5) communications involving counsel for which only attorney-privilege protection has been claimed.  Each group will be addressed seriatim.

### A. Documents Compiled by or for Counsel Protected as Work Product

The overwhelming majority of documents in the sample are documents that on their face do not reflect attorney opinion or thought processes, but are instead documents compiled by or for counsel.  Two hundred ninety-three (293) of the 409 documents are within this grouping, which can be divided by family into six sub-groups.

The first subgroup consists of two documents (Log Nos. 10944 and 10945) identified in rows 15 and 16 of the Supplemental Spreadsheet.  The parent email (Log No. 10942) makes clear that the two documents were provided to determine whether they should be part of Defendants' response to respond to allegations

concerning Defendants' student loan servicing practices.  The documents fall

clearly within the work product doctrine.[13]

The second subgroup also consist of only two documents (Log Nos. 14462

and 14478) identified in rows 27 and 28.  The parent email (Log. No. 14458

identified in row 26) also fell within the sample set, and is claimed to be protected

as both work product and attorney-client communications.  As above, the

documents were compiled to assist counsel in responding to the Bureau's

investigation and are plainly protected as work product.

The third subgroup consists of four documents, identified in rows 29 through

32.  The parent email (Log No. 14490), which is not part of the sample set,

indicates that the attachments that include the documents in rows 29 through 32,

were compiled in connection with the Bureau's investigation.  Although neither the

sender nor the recipients on the email are identified as attorneys, the description of

the documents on the Supplemental Spreadsheet states that the "[a]ttached

documents [were] collected to assist in-house counsel Joel Mayer, Dena Glaeser,

and Tom Broadhead in responding to the CFPB's examination report in

anticipation of litigation."  This assertion cannot be verified by the parent

---

[13] The documents are relevant to the issues in this litigation, but need not be produced as part of the compilation that accompanied the transmittal email.

document.  Accordingly, Defendants will be required to verify by affidavit or declaration the assertion made on the Supplemental Spreadsheet.

The fourth subgroup, consisting of six documents identified in rows 33 through 38, suffers from the same deficiency.  The parent email, Log No. 14585, makes clear that attached documents pertain to the Bureau investigation, but does not indicate that the documents were sent to counsel.  Accordingly, Defendants will be required to verify the assertion in the Supplemental Spreadsheet that the documents were gathered to assist in-house counsel in responding to the Bureau's investigation.

The fifth subgroup, consisting of 232 documents in rows 42 through 273 of the Supplemental Spreadsheet, was the subject of Special Master Order #23.  As noted above, the Bureau responded to Special Master Order #23 by letter dated April 22, 2019.  (Doc. 272.)  The letter explains that the documents identified in rows 42 through 273 were part of a compilation of documents sent to outside counsel, Hudson Cook, LLP, to render advice to Defendants.  In addition, Defendants have agreed to produce from its internal document repository, KnowledgeShare, versions of these documents.  Defendants' letter brief provides an adequate foundation for the assertion of work product protection for these 232 documents.  Moreover, Defendants' agreement to produce versions of the Documents from the KnowledgeShare repository essentially moots any concern that relevant documents

have been withheld.  Accordingly, nothing more need be done with respect to these 232 documents.

Defendants likewise agreed to produce the KnowledgeShare documents from the final subgroup of document compilations claimed to be protected from discovery by the work product doctrine.  Sub-group 6 covers 47 documents in rows 336 through 382 of the Supplemental Spreadsheet.  The parent to the sixth sub-group, Log No. 27131, includes counsel as an addressee, and the context makes clear that the documents are part of a compilation intended to assist counsel in rendering advice in anticipation of this litigation.  Defendants, moreover, agreed by letter dated April 29, 2019 (Doc. 281) to produce the KnowledgeShare versions of the documents in this sub-group.  Accordingly, nothing more be done with respect to this family of documents.

### B. Documents Compiled by or for Counsel Protected by Work Product and Attorney-Client Privilege

Sixty-nine documents can be categorized as materials provided to or requested by counsel to assist in representing Defendants.  They are found in rows 13, 22, 23, 25, 274-77, 282, 292-335, 385-92, 393, 396-400, and 405-06 of the Supplemental Spreadsheet.  The parent of the 44 documents found at rows 292 through 335, Log No. 26471, is an email chain that includes counsel.  The email makes clear that the attached documents were requested by and provided to counsel to assist in their representation of Defendants in connection with litigation

anticipated to be brought by the Bureau.  As such, the documents identified in rows 292 through 335 fall within the work product doctrine.  The documents, however, are plainly relevant and otherwise discoverable.  Defendants were correct to withhold them to the extent they could be seen as a collection of documents sought by counsel, but have agreed to produce the KnowledgeShare versions of these documents.  (Doc. 281 at 1.)  There is no need for any other action on this compilation of documents.

The documents identified in rows 13 (Log No. 7406), 22 (Log No. 11605), 23 (Log No. 12541), and 25 (Log No. 14277) have parent emails that make clear that the documents were requested by counsel to assist in representing Defendants in connection with the Bureau's investigation.  They plainly fall within the work product protection.

So, too, do the documents identified in rows 274 (Log No. 20172) and 275 (Log No. 2017).  The parent email (Log No. 20170) is an email chain that includes counsel and makes clear that the attached documents were sought by counsel to assist in representing Defendants in connection with this anticipated litigation.

The parent email (Log No. 20787) for the documents found in rows 276 (Log No. 20790) and 277 (Log No. 20796) involves counsel, and it is clear from the content of the email that the documents were sought by counsel in connection

with this anticipated litigation. The attachments found in rows 276 and 277 were properly classified by Defendants as work product material.

The document identified at row 282 (Log No. 23281) has as its parent an email (Log No. 23275) that makes clear that the document was provided to counsel concerning issues raised in this litigation. The document is protected by the work product doctrine.

The document identified at row 385 (Log No. 29183) has a parent email (Log No. 29175) that clearly indicates that the document was provided to counsel in connection with the Bureau's investigation. The attachment, having been sought by counsel, is protected by the work product doctrine.

The seven documents identified in rows 386 through 392 were the subject of Special Master Order #25 and Defendants' April 29, 2019 reply to that Order. (Doc. 281.) Defendants asserted:

> The documents identified in rows 386 through 392 of the Supplement are part of a set of documents compiled to assist counsel in the rendering of legal advice relating to the CFPB 's investigation and in anticipation of the present litigation. All seven sample documents are procedural documents, but they are not from the KnowledgeShare repository and some of the procedures are specific to entities that are not parties to this litigation. Defendants have already produced the documents that relate to Defendants. Because their selection reflects the thoughts and impressions of Navient's counsel and the CFPB is not prejudiced by Defendants' withholding of this family, Defendants continue to withhold these documents.

(*Id.* at 1.)  Review of the parent email for this family of documents, Log No.

29378, confirms that the attachments were properly claimed to be protected by the

work product doctrine.

The documents found in rows 393 (Log No. 29514) and 396 (Log No.

30222) have parent emails that make clear that documents were provided to

counsel in connection with anticipated litigation.  The description for these

documents on the Supplemental Privilege Log is confirmed by a review of the

parent emails and the documents in question.  They were provided to counsel in

connection with anticipated litigation, and the claim of work product protection

was appropriate.

Defendants' reply to Special Master Order #25 addressed the documents

identified in rows 397 through 400 as follows:

> The documents identified in rows 397 through 400 of the
> Supplement are part of a set of documents compiled to assist
> counsel in the rendering of legal advice relating to the CFPB's
> investigation and in anticipation of the present litigation. All four
> sample documents are records from the CFPB's online portal
> through which borrowers submit complaints and Navient submits
> responses. The CFPB has independent access to these documents;
> additionally, Navient has produced all four documents in this
> litigation. Because their selection reflects the thoughts and
> impressions of Navient's counsel and the CFPB is not prejudiced by
> Defendants' withholding of this family, Defendants continue to
> withhold these documents.

(Doc. 281 at 2.)  The documents, comprising some of the attachments to an email

involving counsel (Log No. 30550), fall within the work product protection.

The final two documents in this category are found in rows 405 (Log No. 32472) and 406 (Log No. 32483).  They were part of a collection of documents sent by counsel in an email dated March 29, 2016, Log No. 32462.  Defendants properly claimed protection for these documents under the work product doctrine.

### C. Communications for Which Only Work Product Protection Is Claimed.

There are only three documents that fall within this group.  They are found in rows 403, 404, and 408.  The document in row 403 (Log No. 32145) is a February 29, 2016 email to counsel transmitting the document in row 404 (Log No. 32146), described in the Supplemental Spreadsheet as "summarizing information request from the CFPB regarding the CFPB's Civil Investigative Demand to assist outside counsel WilmerHale in formulating a response in anticipation of litigation regarding the CFPB's claims concerning servicing and collection of student loans." These documents clearly constitute work product.

The document in row 408, Log No. 33710, was a subject of Special Master Order #25 and addressed in Defendants' April 29, 2019 Order as follows:

> This email chain discusses strategy relating to the identification of and analysis of borrower phone calls performed at the direction of in-house and outside counsel. This analysis was done to provide data, which was incorporated into a white paper drafted by WilmerHale in anticipation of the present litigation. The document is protected by the work product doctrine because it reflects the data counsel believed was important to the anticipated litigation and the methods used to compile that information.

(Doc. 281 at 3.)  This explanation suffices to show why work product protection

was properly claimed over this document.

**D. Communications for Which Both Work Product and Attorney-Client Privilege Are Claimed.**

There are 31 documents for which both work product and attorney client

privilege protection have been claimed.  The first is found in row 5 of the

Supplemental Spreadsheet, Log No. 3595, an email to counsel concerning a certain

class action.  It is plainly protected as either work product or a communication

between client and counsel.

The second is found in row 6, Log No. 4012, and is a subject of Special

Master Order #25.  Defendants' April 29, 2019 response to this Order explains

why this document is protected from discovery:

> This document is comprised of litigation materials from wage
> garnishment proceedings compiled for in-house counsel to assist in
> responding to a regulatory request. The subject of the transmitting
> email notes that the communications were considered at that time to
> be privileged.  Although some portions of the document appear to
> be public filings, the document also includes an account record
> cover sheet that appears to have been compiled for counsel and
> some of the documents contain handwritten notes.

(Doc. 281 at 1.)  This explanation does not suffice to justify withholding

from production those parts of the document that are public filings.

Accordingly, Defendants will be directed to produce the public filings that

are part of Log No. 4012.

The documents described in rows 17 through 21 of the Supplemental Spreadsheet, drafts of responses to the Bureau's examination report and related materials, are plainly protected as either work product or attorney-client communications. The October 21, 2014 email in row 24, Log No. 14007, deals with responding to a Bureau examination report. The December 1, 2014 email described in row 26, Log No. 14458, concerns the Bureau's Multi-State Findings audit, and is protected either as work product or a client-attorney communication. The December 8, 2014 email described in row 39, Log. No. 14743, concerns the Bureau's Pioneer Credit examination report, and is protected as work product or an attorney-client communication. The document described in row 40, Log No. 14913, is a copy of a document that had been marked up to assist in preparing a response to the Bureau's Pioneer Credit examination report. The marked up document is protected either as work product or a communication between client and counsel. The document described in row 41, Log No. 15692, is a draft of a WilmerHale letter concerning the Pioneer Credit investigation. It is plainly protected as work product.

The next grouping of communications for which both work product and attorney-client privilege protection are claimed is found at rows 278 through 281 of the Supplemental Spreadsheet. Review of these documents confirms the accuracy of their descriptions on the Supplemental Spreadsheet. They are draft

presentations made by outside counsel, an email chain that reflects counsel's
advice, and a draft of a response to a Bureau CID.  The documents are plainly
protected from discovery.

Review of the documents in rows 283 through 291 also confirms the
accuracy of their descriptions set forth in the Supplemental Spreadsheet: they are
drafts of responses to the Bureau's claims concerning student loan servicing and
email chains related to those claims.  One of the documents in this grouping, Log
No. 23721 described at row 284, was a subject of Special Master Order #25.  The
following is Defendants' explanation for why this document is not discoverable:

> This document is a draft spreadsheet of borrower data that was
> created at the direction of outside counsel Jonice Gray Tucker of
> Buckley Sandler LLP.  Ms. Tucker, in consultation with in-house
> counsel Tom Broadhead and Joel Mayer, requested this information
> to assist in responding to a Civil Investigative Demand from the
> CFPB. This data, which was compiled in anticipation of the present
> litigation, reflects the thoughts and impressions of legal counsel.

(Doc. 281 at 2.)  This explanation suffices to corroborate Defendants' decision to
withhold this document from discovery.  Indeed, none of the documents found in
rows 283 through 291 are discoverable.

The document described in row 383 of the Supplemental Spreadsheet, Log
No. 28771, is accurately described as an "[e]mail chain rendering legal advice and
requesting information necessary to render legal advice of outside counsel
WilmerHale and Buckley Sandler in connection with anticipated litigation

regarding the CFPB's claims concerning servicing and collection of student loans."

The description of the document identified in row 384, Log No. 29049, is also

accurate. It is an "[e]mail from outside counsel Michael Kilgarriff (Kirkland &

Ellis) rendering legal advice and providing compiled documents reflecting legal

thoughts and strategy regarding Navient's defense in anticipated litigation against

state Attorneys General claims." These documents are plainly protected from

discovery. So, too, are the documents in rows 394 (Log No. 30067 – an email

chain involving counsel and concerning claims against Defendants); 395 (Log No.

30145 – an October 14, 2015 student borrower complaint sent to counsel for legal

advice); 409 (Log No. 33729[14]); and 412 (Log No. 36089 – an email chain

involving counsel and pertaining to the Bureau's claims in this litigation).

---

[14] This document is a subject of Special Master Order #25, and for which
Defendants provided the following adequate explanation for protecting it from
discovery:

> This document contains talking points, marked "Privileged &
> Confidential, Attorney Work Product, Attorney-Client
> Communication," that were drafted to guide discussions during a
> meeting with the CFPB to discuss the investigation and in
> anticipation of the present litigation. While the discussion that
> occurred during the meeting is not confidential (and the CFPB is
> aware of what was said during that meeting), this document served
> as a confidential guide for Navient counsel and reflects in-house
> and outside counsel's legal advice and strategy.

(Doc. 281 at 3.)

In summary, except for part of Log No. 4012, the documents that consist of communications for which both work product and attorney-client protection have been claimed are immune from discovery, whether it be work product protection of attorney-client privilege.  Those documents would not be counted as "errors" for purposes of determining whether Defendants' document production suffered from an overly-aggressive protection of information.

### E.    Communications for Which Only Attorney-Client Privilege Is Claimed.

There are 12 documents that fall within this sub-group, found in rows 4, 7 through 12, 14, 402, 407, 410 and 411 of the Supplemental Spreadsheet.  In response to Special Master Order #25, Defendants agreed to produce one of these documents, Log No. 4136, found in row 7.  (Doc. 281 at 2.)  Special Master Order #25 also directed Defendants to explain the bases for claiming attorney-client protection on the documents described in rows 12 and 407.  The document identified in row 12, Log No. 6465, is a slide presentation.  Defendants explained the rationale for withholding this document as follows:

> The document is a PowerPoint presentation with an attorney-client privilege header that describes legal compliance issues and ongoing litigation matters. The slides were presented in a meeting, which included in-house counsel as attendees, and particular slides reflect the provision of legal advice.

(Doc. 281 at 2.)  This explanation suffices to warrant protection of this document under the attorney-client privilege.

27

The document identified in row 403, Log No. 33645, is a spreadsheet of data

embedded in a slide presentation.  Defendants explained the reason for withholding

this document as follows:

> This document contains data embedded in a draft PowerPoint
> presentation created in collaboration with in-house counsel Mark
> Heleen and circulated to in-house counsel and outside counsel
> WilmerHale and Kirkland & Ellis for additional legal advice. The
> slide deck was created for use in a meeting with the CFPB during
> the CFPB 's civil investigation and in anticipation of the present
> litigation. Defendants withheld this presentation because it contains
> the legal advice of counsel and was created in anticipation of
> litigation. Defendants have produced the final version of the
> presentation.

(Doc. 281 at 3.)  The parent of this document, Log No. 33643, is an email to,

among others, Attorney Heleen, and confirms the attorney-client nature of this

document.

The remaining nine documents were properly withheld based on the

attorney-client privilege.  Log No. 2127, found in row 4, is an email from in-house

counsel Peter Greco responding to a request for legal advice from within Navient.

Log No. 5824, found in row 8, is described in the Supplemental Spreadsheet as a

"draft summary prepared at the request of counsel to respond to CFPB inquiry

concerning servicing and collection of student loans."  In response to Special

Master Order #25, Defendants stated that they did produce a subsequent version of

the summary that did not include the attorney-client privilege legend.  (Doc. 281 at

3.)  Log No. 6357, found in row 9, is part of a collection of documents requested

by outside counsel in connection with due diligence requests.  The parent for this document, Log No. 6350, makes clear that this document, as well as the documents in row 10 (Log No. 6359) and row 11 (Log No. 6360), were included in communications from the client to counsel.[15]  Log No. 9492, found in row 14, is a spreadsheet represented to contain advice of counsel to prepare for a meeting with the office of Federal Student Aid.  Log No. 31689, found in row 402, is a flow chart depicting the process for discharging a student loan due to death.  The Supplemental Spreadsheet, along with the parent document, Navient-02610492, indicate that the flow chart was requested by in-house counsel for the purpose of providing legal advice regarding the discharge of student debt due to death.  Log No. 34825, described in row 410, is an email to Defendants' in-house counsel from a member of Defendants' staff transmitting a draft document pertaining to the Bureau's Request for Information issued in connection with the development of the Payback Playbook.  Finally, Log No. 36089, found in row 412, is a redacted email chain from July of 2016.  The redactions are communications to in-house counsel from a member of Defendants' staff that are covered by the attorney-client privilege.[16]

---

[15] As noted above, final versions of the reports that comprise Log Nos. 6359 and 6360 were produced to the Bureau.

[16] Notably, the unredacted parts of this email chain concerned information sent to the Bureau.

In summary, of the 12 documents purported to be attorney-client privileged communications, Defendants have agreed to produce one, Log No. 4136. The remaining eleven documents are covered by the attorney-client privilege.

## IV.   CONCLUSION

With very limited exceptions, Defendants' withholding of documents from discovery has been appropriate. Defendants will be required to provide a declaration or affidavit justifying the claim of work product protection for the documents identified in rows 29 through 38 of the Supplemental Spreadsheet (Log Nos. 14502, 14510, 14538, 14542, 14610, 14615, 14630, 14631, 14636, and 14647). Defendants will also be required to produce the public filings that are part of the document identified in row 6, Log No. 4012.

Defendants' initial classification of documents as falling exclusively under the work product doctrine, however, has not been as accurate. The consequence, if any, resulting from the inaccurate classification of documents as falling under the work product doctrine will be addressed during our next weekly conference call.


s/ Thomas I. Vanaskie
THOMAS I. VANASKIE
SPECIAL MASTER

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CONSUMER FINANCIAL         :
PROTECTION BUREAU,         :
                           :
            Plaintiff      :
                           :
                           :      3:17-CV-101
        v.                 :      (Judge Mariani)
                           :
                           :
NAVIENT CORPORATION, et al., :
                           :
        Defendants.        :

## ORDER

**NOW,** this 28th day of May 2019, in accordance with the foregoing Special
Master Report #11, **IT IS HEREBY ORDERED THAT:**

1. No later than June 3, 2019, Defendants shall file a declaration or affidavit
   justifying the claim of work product protection for the documents identified
   in rows 29 through 38 of the Supplemental Spreadsheet (Log Nos. 14502,
   14510, 14538, 14542, 14610, 14615, 14630, 14631, 14636, and 14647).

2. No later than June 3, 2019, Defendants shall produce the public filings that
   are part of the document identified in row 6 of the Supplemental
   Spreadsheet, Log No. 4012.

3. The parties shall be prepared to address during our June 4, 2019 conference call the consequences, if any, of Defendants' inaccurate classification of documents as being protected only under the work product doctrine.

4. Objections to this Special Master Report #11 and Order must be submitted no later than twenty-one (21) days after service of this Order.

s/ Thomas I. Vanaskie
THOMAS I. VANASKIE
SPECIAL MASTER