WILMERHALE

May 31, 2019

**Daniel P. Kearney**

+1 202 663 6285 (t)
+1 202 663 6363 (f)
daniel.kearney@wilmerhale.com

**VIA ECF**

Judge Thomas I. Vanaskie
JAMS, Inc.
1717 Arch Street, Suite 3810
Philadelphia, Pennsylvania 19103

      Re:   *CFPB v. Navient Corp., et al.*, Case No. 3:17-cv-00101-RDM

Dear Judge Vanaskie:

      Pursuant to Special Master Order Number 33, Defendants respectfully submit this letter setting forth their position on whether the Court should conduct *in camera* review of a discrete set of deliberative process documents withheld by the CFPB on its April 30 log. For the reasons explained below Defendants believe that this review is necessary.

**April 30 Log**:

      On April 30, the CFPB produced a log asserting deliberative process privilege over 7,125 documents. The CFPB did not comply with the requirements for properly asserting the privilege, which requires that such assertions must be "lodged by the head of the department which has control over the matter" and supported by a declaration demonstrating that the person has reviewed the withheld documents and determined them to be privileged. *U.S. v. O'Neill*, 619 F.3d 222, 226 (3d Cir. 1980) (quoting *U.S. v. Reynolds*, 345 U.S. 1, 8 (1953)); s*ee also Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*, 267 F.R.D. 1, 4 (D.D.C. 2010) ("To avoid waiving privilege, the . . . agency must 'make a detailed argument, including affidavits from the proper governmental authorities . . . .'"). In its March 24 letter, the CFPB offered no argument to explain why this requirement should be waived here.

      Without the required declaration, Defendants must guess the relevance of the documents based on the log's vague descriptions of them—the same type of descriptions Judge Mariani previously found inadequate on an earlier log.[1] Despite this obstacle, Defendants voluntarily narrowed the universe to 629 documents (only 8.8% of the deliberative process documents logged) that appear to be similar in nature to documents that the Special Master ordered produced in its prior *in camera* deliberative process review. Defendants believe that the number of documents at issue could be substantially reduced by (1) removal of duplicates, and (2) a good faith application by the CFPB of the Special Master's prior rulings and guidance.

      All 629 of these documents were previously withheld by the CFPB on the basis that they were not relevant. Defendants did not learn of their existence until April 30. Defendants believe

---

[1] Doc. 140 at 7; Dec. 10, 2018 Hearing Tr. at 48:22-49:4; 82:19-22.

WILMERHALE

Judge Thomas I. Vanaskie
May 31, 2019
Page 2

that there are potential trial exhibits in this set of documents because the *in camera* review of documents with similar descriptions resulted in the production of critical documents.

Defendants' request is therefore narrowly tailored to their need for the identified documents, and the universe could be further reduced with the CFPB's cooperation. In addition, to reduce the burden on the Special Master, Defendants are not seeking another reasoned opinion with respect to documents determined through *in camera* review to have been properly withheld. Defendants request only an order setting forth documents determined appropriate for production.

**The CFPB's May 24 Letters:**

Three weeks ago, the CFPB represented that all discovery-related issues "have already been placed out there" and that they "don't have anything new."[2] When Defendants raised the need for *in camera* review of the 629 documents, the Special Master asked the CFPB to "have in mind whether there's some ability to compromise . . . or come up with a path that moves us forward and . . . doesn't jeopardize that discovery cutoff of June 7th."[3]

Rather than propose a compromise, the CFPB responded with a barrage of accusations against defense counsel. The Court ordered the CFPB to file a letter of apology with respect to one—that there were improper *ex parte* communications with the Special Master—but there are many other rhetoric-laden misstatements that are equally baseless. Two examples:

- The CFPB stated: "The aggressive methods of Defendants' process server has been causing witnesses to cease cooperating after being placed on the Bureau's disclosures."[4] Defendants are unaware of any issues with the process server, and the CFPB has never disclosed any. In fact, the process server has been specifically directed not to use aggressive tactics. Nor can service be avoided as the CFPB suggests because the CFPB does not represent the borrowers; there is case law in the Third Circuit requiring strict adherence to the personal service requirement of Rule 45 for subpoenas on non-parties.[5]

- The CFPB stated: "[T]he Bureau warns prospective witnesses that, based on the depositions that have occurred, Navient will investigate every detail of the witnesses' personal lives … including … medical issues, hobbies, and vehicle choices." The CFPB's suggestion that Defendants have acted improperly is without merit. Witness credibility is critical. Accordingly, it is not improper, for example, to explore that a

---

[2] May 14, 2019 Hearing Tr. at 10:6-8.

[3] May 21, 2019 Hearing Tr. at 27:18-22.

[4] Doc. 308 at 4.

[5] *See, e.g.*, *Fiorentino v. Cabot Oil & Gas Corp.*, No. 3:09-cv-2284, 2012 WL 1281600, at *2 (M.D. Pa. Jan. 6, 2012).

WILMERHALE

borrower chose to pay for luxury automobiles rather than make payments on student loans. Nor is it improper to explore news articles related to the CFPB's lead witness's use of marijuana and public presence as a psychic.

The CFPB's substantive response does not address the need for review of the newly logged deliberative process documents. Instead, their letter offers up a number of irrelevant issues in an effort to extract a "bilateral" pound of flesh from Defendants. And as usual, the CFPB's letter casts Defendants' discovery conduct in the most inflammatory terms possible. The fact that we have become accustomed to the CFPB's repeated and unsupported accusations of bad faith does not make them any less offensive. The Special Master has been intimately involved with counsel for months. We are confident that the Special Master recognizes the professional manner in which defense counsel have conducted themselves.

Below is additional context for the CFPB's eleventh hour "bilateral" requests. Defendants feel compelled to offer this context because the CFPB first raised these issues after hours last Friday, without first raising them in a meet and confer, and the Special Master did not have any of this context when the matters were discussed on Tuesday's standing call.

**CFPB Demand #1: "Every email that Mr. Remondi sent or received regarding the weekly call review."**

The CFPB suggests that Defendants improperly withheld emails attaching recorded calls to Mr. Remondi, but that is plainly not the case. Mr. Remondi was included by the CFPB as a custodian in the May 2018 global compromise agreement, and *the CFPB itself dictated the search terms to be run over his documents*.[6] The documents returned by the search were reviewed, and responsive documents produced. The fact of the matter is that the CFPB's search terms were unlikely to hit on the call review documents; as Mr. Remondi testified, the recorded calls generally arrived "via e-mail, as attachments to that email, . . . with no commentary or analysis." The ugly suggestion that there was deliberate withholding is unsupported. In fact, Defendants have produced nearly 18,000 documents involving Mr. Remondi in this litigation.

**CFPB Demand #2: "[E]very email that Mr. Montgomery sent to or received from an entity other than Navient Corporation or one of its subsidiaries"**

The CFPB cites emails to Bob Montgomery as an example of "incriminating documents that have not been provided to the Bureau." Again, the suggestion is that the Defendants have acted in bad faith, but the CFPB is well aware that Mr. Montgomery was not included by the parties as an email custodian in the global compromise. Nevertheless, the CFPB contrives "grave concerns" that some of Mr. Montgomery's emails were not produced (over 26,000 documents were in fact produced for Mr. Montgomery through other custodians). Indeed, if they

---

[6] Ex. 1, at 1.

were legitimate, the CFPB could have raised its "grave concerns" about Mr. Montgomery's emails at any point over the last year.  The i3 Group produced Exhibit C almost one year ago in June 2018, and the CFPB deposed Mr. Montgomery in August 2018, using Exhibit C as an exhibit in the deposition.  But the CFPB said nothing about his emails until Defendants sought *in camera* review of the recently-logged deliberative process documents.

> **CFPB Demand #3: "All calls and correspondence for every deposed borrower, along with an affidavit itemizing every call and correspondence that could not be located within Navient's servicing systems, and describing the steps undertaken to locate such calls and correspondence"**

This demand has already been litigated and resolved.  Undeterred, the CFPB revisits the issue now to improperly attack Defendants' integrity.  There is nothing more for Defendants to do, as the history of this issue makes clear.

In February 2018, Defendants began deposing the CFPB's borrower witnesses.  In advance of the depositions, Defendants reviewed a borrower's loan history—which is documented on a screen called a "151"—and identified records and call recordings that related to the issues for which the borrower was designated by the CFPB.  Defendants then conducted a reasonable search for each of those records and calls, and produced them as a courtesy to the CFPB.  Defendants were transparent as to the process that they were following in good faith.  Still, almost one year ago, in June 2018, the CFPB demanded that Defendants search for and produce <u>all</u> communications with the borrowers, including routine calls to change an address or regarding issues that have nothing to do with this lawsuit.  As the Special Master is aware, locating individual call recordings is burdensome.  Defendants offered a straightforward solution.  Defendants invited the CFPB to undertake the same process that Defendants were using to locate potentially responsive communications—specifically, to review the borrowers' "151" loan histories and identify any additional communications it believed were relevant.

The CFPB refused to engage in this solution, claiming that reviewing the "151" loan histories and highlighting the relevant communications was unduly burdensome.  The parties reached an impasse, and raised the issue with Judge Mariani on August 5, 2018.  When Defendants explained the burden involved, Judge Mariani asked Defendants to propose a search process.  Doc. 106 at 51:22-53:12.  Defendants proposed that the CFPB "look at the loan history [and] identify the calls that relate to the specific activities at issue," and Defendants would "go and try to locate those calls and correspondence."  *Id.* at 54:9-11.  The CFPB then agreed that the parties could "proceed from there and see how that works out."  *Id.* at 55:16-18.

The CFPB did nothing for four months.  On December 7, 2018, the date of the prior discovery deadline, the CFPB sent Defendants a list of calls and correspondence for deposed borrowers that it believed were relevant and that it claimed had not been produced.  On January

WILMERHALE

Judge Thomas I. Vanaskie
May 31, 2019
Page 5

16, 2019, Defendants sent the CFPB a letter explaining (1) that Defendants had in fact *already produced* many of the calls and correspondence that the CFPB claimed were missing; (2) that many call recordings prior to 2013—which were the bulk of the CFPB's requests—were unavailable, as Defendants had already explained many times and as the CFPB had seen for itself during its site visit in August 2018; (3) that many of the CFPB's requests were for items that did not have independent records but were instead simply notations on a borrower's "151" loan history; and (4) that other CFPB requests related to records that were plainly not relevant, such as call recordings about a borrower's loans that were not at issue. Ex 2.

Nonetheless, to close out this issue, Defendants searched for and produced every available call recording and correspondence that the CFPB requested. We completed production on February 15, 2019. The CFPB never raised any issues with this production and has never claimed that it is missing any relevant records for the borrowers. Nor does it do so in its May 24 letter. Instead, it points to precisely *two letters* and *three calls*—records that were produced as part of a specifically-agreed process before Judge Mariani—as evidence of Defendants' "improper[]" conduct, and accuses us of misrepresentations to the Court. Enough. The CFPB's accusations are beyond the pale, and its call recording request is a remanufactured issue of no substance. Between August 5, 2018 and now, the CFPB has availed itself of the opportunity to identify calls for these borrowers *precisely once* (in December). Even now, it has not identified a single call that it is missing without explanation. The CFPB's demand for all records and an affidavit describing what has already been stated repeatedly would serve no purpose other than to impose a needless and extremely onerous burden on Defendants.

The new discovery deadline affords the Special Master appropriate time to review *in camera* the 629 documents identified for deliberative process review. Based on the additional context provided, that *in camera* review should be de-coupled from the CFPB's strategic "mutual" grievances. To do otherwise rewards the CFPB for ignoring the law of the case developed through the Special Master's thoughtful written analysis of documents already reviewed *in camera* and honors the false equivalency created by the CFPB regarding these very different disputes. To the extent the Court intends to order bilateral relief, Defendants would propose that the path forward be limited to a reasonable search for #1 and #2.

Respectfully submitted,

/s/ Daniel P. Kearney