

1700 G Street NW,
Washington, DC 20552

August 21, 2019

**Via ECF and Email**

The Honorable Thomas I. Vanaskie, Special Master
U.S. District Court, Middle District of Pennsylvania
William J. Nealon Federal Bldg. & U.S. Courthouse
235 N. Washington Avenue

    Re:    *CFPB v. Navient Corp., et al.*, Case No. 3:17-CV-00101-RDM

Dear Judge Vanaskie:

    I write on behalf of the Bureau regarding the adequacy of Defendants' declaration regarding their searches for records relating to deposed borrowers. History has shown that despite assertions that all such responsive materials have been produced, each subsequent search has yielded additional, previously-unproduced borrower records that are relevant to a core issue in this case. Accordingly, it is critical that Defendants' latest assertion that no more needs to be done to locate approximately 133 missing borrower records[1] be supported by an adequate sworn statement from an individual with personal knowledge.

    Defendants' search and production of borrower records has occurred in three rounds. The first search and production of records occurred in the days or weeks before each borrower's deposition. The second production occurred in February 2019, after the Bureau raised the withholding of responsive borrower records with Judge Mariani earlier in 2018. The third round of production was completed this month, after the Bureau raised again with Your Honor in May 2019 our ongoing concern that responsive borrower records were still being withheld.

    At each stage of the Bureau's efforts to secure missing borrower records, the Bureau's requests have been met with substantial resistance from Defendants. In connection with the Bureau's attempt a year ago to compel Defendants to produce borrower records, Defendants represented to the Court, in an August 2018 letter, that they had produced all relevant documents pertaining to borrowers who had been or were scheduled to be deposed. *See* Doc. 100, at 1 ("Defendants are not withholding relevant documents related to borrowers identified by the CFPB."). In connection with the Bureau's May 2019 effort to obtain missing borrower records,

---

[1] The 133 missing borrower records relate to 15 borrowers whom the Bureau identified as potential witnesses.

Defendants represented to Your Honor that "Defendants searched for and produced every available call recording and correspondence that the CFPB requested." Doc. 316, at 5 (May 31, 2019).

These unambiguous statements have proven to be inaccurate. As recounted in the Bureau's May 24, 2019 letter to Your Honor, even after Defendants represented to Judge Mariani in August of 2018 that they were not withholding relevant documents for borrowers whom the Bureau had identified as potential witnesses, Defendants later produced records relating to those same borrowers. *See* Doc. 307, at 2-3 (emailed in unredacted form to Your Honor on May 24, 2019 at 5:21 p.m.) (recounting instances in which relevant call recordings and documents were withheld until after the relevant borrower's deposition was completed). Those borrower records include multiple call recordings wherein Defendants failed to discuss income-driven repayment options prior to processing forbearances. *Id.* Those same borrower records include multiple documents that confirmed when a borrower enrolled in a forbearance and the applicable dates of the forbearance. *Id.* The produced documents are plainly relevant to this case.

Defendants' subsequent May 31, 2019 representation to Your Honor that they were not withholding relevant borrower records (Doc. 316, at 5) was demonstrated to be inaccurate this month, when they produced 13 additional borrower records. Those records included yet another call recording wherein Defendants enrolled an unemployed borrower in a 12-month forbearance without ever mentioning income-driven repayment options. Ex. 1 (NAV-06590454) (filed under seal). In no uncertain terms, Defendants advised the borrower that her "best option" was to place her federal loans in forbearance, and that she could do so for 12 months. *Id.*, at approximately 14:30.

The failure to produce borrower records has been consequential. Defendants have not hesitated to press the advantage associated with the information asymmetry created in the absence of relevant borrower records. They proceeded with borrower depositions while the Bureau lacked access to key information about the borrowers' loan histories. This prevented the Bureau from adequately preparing for the depositions. And it prevented the witnesses from preparing for their depositions or testifying with the aid of call recordings and documents that confirmed their memories. During the depositions, Defendants sought to establish contrary narratives and pressed witnesses to reconsider their stated recollection. Meanwhile, the Bureau lacked documents that could have been used to refresh witnesses' recollections during the depositions. For example, during the deposition of C.P., counsel for Defendants questioned the witness about a September 2011 forbearance that resolved two months of delinquency and postponed her next ten months of payments. Ex. 2, Excerpt of C.P. Deposition Transcript 153:8-156:3 (Mar. 28, 2018). During the deposition, counsel for Defendants asked the witness, "Is it possible that you were put in forbearance in order to apply for deferment?" *Id.* 155:3-5. The answer is no, as the call recording makes plain. But when pressed about events that took place seven years prior, and lacking Defendants' available information about her loan history, the witness could only testify that she did not know. And the Bureau could not refresh the witness's recollection because Defendants did not produce the relevant call recording until August 2019, seventeen months after the March 2018 deposition. Other deposition transcripts, which Defendants have said they will use to impeach borrowers' testimony, reflect similar problems.

Defendants continued to press their advantage when they moved for summary judgment in January of this year, prior to their February and August 2019 productions of certain missing borrower records. A central proposition in that motion was that none of the Bureau's borrower witnesses supported the Bureau's claim that Defendants had processed forbearances without advising borrowers about income-driven repayment plans. *See, e.g.*, Doc. 161, at 20 ("[t]he experiences of the identified borrowers do not support the allegation that Navient failed to inform them about IDR."). The missing borrower records that arrived in February and August of 2019 provided additional evidence that refutes Defendants' proposition.

This history shows a pattern: the Bureau seeks missing records from Defendants; Defendants represent that no relevant records have been withheld and so no more should be produced; but once compelled, Defendants produce additional records that are relevant to core issues in this case and supportive of the Bureau's claims. Defendants now claim that their production of borrower records is complete, and resist production of an adequate sworn statement that would allow the Bureau and Your Honor to assess whether any further search and production should be required. To date, Defendants have not provided information to explain why relevant records represented to be unavailable at one point in time have proven to be available at a subsequent time. One question that needs to be answered is: *What changed from the first to the second to the third searches that produced such varied results?* Answering such a question requires an understanding of what precise processes and parameters were used for each search, who participated in each search, and what standard of relevance Defendants employed in selecting which records to search and produce. An adequate sworn statement from an individual with personal knowledge would allow the Bureau and Your Honor to understand how and why the searches were different (if they were) and whether there remain deficiencies that, if addressed, would yield additional missing borrower records.

Such efforts are appropriate in light of the importance of the records at issue. Each additional search—conducted despite statements that there was nothing more to produce—has yielded missing borrower records that the Bureau intends to use at trial. Defendants have challenged the credibility and the experiences of the Bureau's borrower witnesses and will continue to do so. The deprivation of key evidence shedding light on those borrowers' experiences and buttressing the credibility of their testimony prejudices the Bureau's case. At a minimum, Defendants should furnish comprehensive, sworn information that explains why and how this deprivation occurred, and allows Your Honor to determine whether Defendants should search for other relevant borrower records that have not been produced.

During the parties' conferral on this issue, Defendants produced a declaration that the Bureau anticipates will be offered anew today. That declaration is inadequate for a variety of reasons, including that it states that the current search was of "relevant" databases without addressing whether additional databases were omitted. Defendants have refused to clarify. Most importantly, the declaration did not seek to explain why each of the multiple rounds of searches produced such varied results when the sole task was to locate specific borrower records. The declaration included virtually no information about the processes, parameters, or participants associated with the searches. Nor did it address the standard of relevance Defendants applied to their search and production of borrower records. At best, the declaration's discussion of the most recent search is cursory and conclusory. Given the history of prior cursory and conclusory

statements proving to be inaccurate, an adequate declaration here requires much more detail.[2]

                         Sincerely,

                         /s/ *Nicholas Lee*
                         Nicholas Lee
                         Senior Litigation Counsel

---

[2] The Bureau anticipates that Defendants will again argue that calls from 2009 through 2012 may not exist. We simply note that 11 of the 13 call recordings produced this month are from that period. Defendants have yet to provide information explaining why those calls were not produced following prior searches.

Separately, the Bureau also notes that several of the missing call recordings are from 2013, 2014, 2015, and 2016, raising serious questions about why these more recent call recordings remain unaccounted for. For example, an October 6, 2015 entry on borrower Z.B.'s 151 screen states, "Borr req FORB/Fin hardship; B agreed to terms orally." Although this is shorthand, it is the Bureau's understanding that this entry documents an October 2015 call in which Z.B.'s loans were placed into forbearance over the phone. Nonetheless, the call recording has not been produced, nor have Defendants explained why it has not been produced.