IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CONSUMER FINANCIAL     :
PROTECTION BUREAU,      :
                              :
        Plaintiff      :
                              :
                              :     3:17-CV-101
       v.             :     (Judge Mariani)
                              :
                              :
NAVIENT CORPORATION, et al.,  :
                              :
      Defendants.     :

SPECIAL MASTER REPORT #14 – CONFIDENTIALITY
DESIGNATIONS AND THE SEALING OF A BRIEF

## I.    INTRODUCTION

Plaintiff Consumer Financial Protection Bureau (the "Bureau") contests the

designation of certain documents and deposition excerpts as "confidential" by

Defendants (referred to in this report collectively as "Navient").  The discovery

matter was designated as "confidential" pursuant to the terms of a stipulated

protective order.  (Doc.[1] 66-1 and Doc. 67.)  One consequence of that designation

is to require that the designated documents and deposition excerpts (defined in the

stipulated protective order as "Protected Material"), when submitted to the Court,

---

[1] The designation "Doc." followed by a number refers to the docket entry
number on the electronically-maintained docket sheet for this case.

be filed under seal. (Doc. 66-1, ¶ 7.2(a).) Another consequence is that any document filed with the Court that reveals "Protected Material" must be filed under seal. (*Id.* at ¶ 11.)

The Bureau cited to the contested "Protected Material" in the Brief filed with the Court in support of a motion to defer the deadline for its response to Defendants' partial summary judgment motion. As a result, not only the cited exhibits, but also the Bureau's Brief, were filed under seal. The Bureau asks that the "Protected Material" in question be unsealed in whole or in part, thereby allowing its Brief to be unsealed. Alternatively, the Bureau "requests that only the Bureau's brief . . . be unsealed, and the ten exhibits can remain sealed. . . ." (Doc. 332 at 1.) Navient resists both alternatives, asserting that disclosure of the "Protected Material" will injure its competitive position as one of only a handful of student loan servicers under contract with the United States Department of Education.

Having received written and oral argument from the parties, and after careful consideration, I have concluded that the Brief should be unsealed. As explained at greater length below, the Brief is a "judicial record" to which a presumption of public access attaches. Navient bears the burden of overcoming the presumption of public access by showing that unsealing the Brief will cause it "a clearly defined and serious injury." *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 924

F.3d 662, 672 (3d Cir. 2019).  Navient has not made that showing.  The references

to the Protected Material in the Brief do not reveal the intricate details of Navient's

business model and loan servicing strategies.  In fact, Navient cited to some of the

same Protected Material in the Statement of Undisputed Material Facts submitted

in support of its partial summary judgment motion (Doc. 162) without deeming it

necessary to make that filing under seal.  Indeed, Navient has not made any

argument that unsealing only the Brief will reveal any confidential business

information.

As to the underlying discovery material cited by the Bureau and filed under

seal, Navient strongly contests treating those documents as "judicial records,"

thereby avoiding the presumption of public access.  Instead, according to Navient,

protection *vel non* should be assessed under the standards governing protective

orders issued pursuant to Federal Rule of Civil Procedure 26(c), as explicated in

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 785-88 (3d Cir. 1994), and, more

recently, in *Avandia,* 924 F.3d at 670-72.  The Bureau argues that because the

discovery materials were submitted in connection with a dispositive motion, they

qualify as "judicial records," subject to the presumption of public accessibility.

The Bureau also argues that even if the documents in question are not regarded as

"judicial records," Navient has not shown the necessary "good cause" to have them

sealed pursuant to Fed. R. Civ. P. 26(c).  Because I have concluded that the Brief

should be unsealed, and the Bureau has indicated that its main objective is to unseal the Brief, I will not reach the question of public access to the discovery material.

## II.   BACKGROUND

This litigation concerns, in principal part, the student loan servicing practices of Navient Corporation and its wholly-owned subsidiary, Navient Solutions, Inc., formerly know as Sallie Mae, Inc.  The Bureau contends that Navient's student loan servicing practices, involving millions of student borrowers, violated the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5531, 5536(a), 5564, 5565.  One of the Bureau's claims is that Navient wrongfully "steered" student borrowers experiencing long-term financial hardship into loan repayment "forbearance" programs instead of "income based repayment" ("IBR") programs that the Bureau contends were more advantageous for student borrowers.

Extensive discovery in this case has been conducted pursuant to a stipulated protective order (Doc. 66), approved by the Court on November 3, 2017.  (Doc. 67.)  The protective order is self-executing.  That is, a party's designation of a document or deposition transcript as "confidential" results in that document or deposition transcript being classified as "Protected Material" and triggers the safeguards of the protective order.  (Doc. 66, ¶ 5.)  One of those safeguards is that Protected Material must be filed with the Court under seal.  (*Id.*, ¶ 7.2(a).)

Furthermore, "[a]ny document that is filed with the Court that reveals or discloses any Protected Material, unless the Parties otherwise agree in writing or the Court otherwise orders, shall be filed under seal, in accordance with the procedures set forth in Local Rule 5.8." (*Id.*, ¶ 11.)

A producing party's designation of a document as "confidential," however, is not conclusive. A receiving party may challenge the designation at any time. (*Id.*, ¶ 6.1.) If the parties are unable to resolve the matter after a meet and conferral process, the receiving party may request judicial resolution, with the producing party bearing the "burden to establish that the information has been appropriately designated as Confidential." (*Id.*, ¶ 6.4.)

On January 17, 2019, Navient moved for partial summary judgment, seeking dismissal of the Bureau's claim of wrongful "steering" of student loan borrowers into "forbearance" and away from IBR plans. (Doc. 160.) In support of its motion, Navient filed a "Statement of Facts," (Doc. 162), along with 80 exhibits. (Doc. 163.) Navient sought and obtained approval to file many of the exhibits under seal. (Docs. 165 and 194.) It did not, however, seek leave to file under seal its Statement of Facts, even though the Statement made references to material it had designated as "confidential."[2]

---

[2] Paragraph 7.3 of the stipulated protective order provided that "[n]othing in this Order affects or restricts the manner in which Protected Material is or may be used by the Designating Party. Such use shall not waive the protections of this

On February 6, 2019, the Bureau moved to defer the deadline for its response to the motion for partial summary judgment and to prohibit Navient from filing any additional summary judgment motions prior to the close of discovery. (Doc. 212, referred to in this Report as "Motion to Defer.")  The Brief in support of its motion was filed the following day.  Attached to the Brief were several exhibits that had been designated by Navient as "confidential," and thus constituted "Protected Material" under the stipulated protective order.[3]  The Brief included quotations from and references to this "Protected Material."  Accordingly, consistent with paragraph 11 of the stipulated protective order, the Bureau filed the Brief and accompanying exhibits under seal.

On February 20, 2019, without awaiting Navient's response to the Motion to Defer, the District Court denied the motion for partial summary judgment as

---

Order and shall not entitle other Parties or non-parties to use or disclose such information in violation of this Order. . . ."

[3] There are ten exhibits to the Brief that are at issue here.  The exhibits, attached collectively as Exhibit C to the Bureau's March 22, 2019 letter to the Special Master (Doc. 274-3), are: (1) a 2010 memorandum that describes some of Navient's student loan servicing practices; (2) an excerpt from Navient's training materials intended to give guidance to Navient representatives dealing with delinquent borrowers; (3) excerpts from the deposition of Matthew Bailer, the former head of Navient's call centers; (4) excerpts from the deposition of Suzanne Croft, a Navient call center supervisor; (5-9) summaries of telephone communications with student borrowers and related "coaching" advice; and (10) excerpts from the deposition of Johnathan Powell concerning how Navient monitored and coached its representative in their dealings with student borrowers.

premature.  (Doc. 228.)  In the course of explaining its decision, the District Court

quoted from the Bureau's Brief in support of its Motion to Defer, agreeing with the

Bureau that "it would be most efficient for the parties to 'focus their efforts on

bringing fact discovery to a close' rather than filing or responding to summary

judgment motions."  (*Id.* at 1-2, quoting the Brief (Doc. 213) at 17.)  The District

Court also denied the Motion to Defer as moot.  (Doc. 228 at 3.)

Prior to the District Court's denial of the partial summary judgment motion

and the Motion to Defer, the Bureau initiated a challenge to the confidentiality

designation of the exhibits submitted in support of the Motion to Defer.[4]  The

parties' efforts to resolve matter were unsuccessful.  On March 22, 2019, the

Bureau wrote to the Special Master to secure a ruling that the exhibits should not

be sealed, or alternatively, that only those parts of the documents found to be

confidential be sealed.  (Doc. 274-1 at 5.)  Navient countered with its letter of

March 29, 2019, which was accompanied by six exhibits.  (Doc.)  The parties'

letter briefs were addressed during a telephonic conference on June 10, 2019.  As a

result of that conference, Navient was directed to provide evidentiary support for

their designation of the documents in question as confidential.  (Special Master

Order #36, Doc. 326.)  Navient was also ordered to produce its suggested

---

[4] The Bureau's pursuit of the protective order's mandated meet and conferral
process is documented in emails attached as Exhibit A to the Bureau's March 22,
2019 letter to the Special Master (Doc. 274-2.)

redactions of those parts of deposition transcripts that it regarded as confidential. (*Id.*)  Navient timely complied on June 24, 2019 by submitting (1) a declaration of its Vice President of Title IV Servicing; (2) proposed redactions of deposition transcripts; and (3) a letter brief.  (Doc. 328.)  The Bureau replied with its own letter brief dated July 3, 2019 along with exhibits.  (Doc. 332.)  Oral argument was again heard by telephone on July 16, 2019.

## III.   DISCUSSION

The genesis of this dispute is a rather standard protective order commonplace in complex litigation, such as this matter.  The authority for the order is Rule 26(c) of the Federal Rules of Civil Procedure, which, in pertinent part, provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Protective orders such as the one issued in this case facilitate the discovery process by requiring that large amounts of discovery material be maintained as confidential without a judicial determination of the need for confidentiality on a document-by-document basis.  Only when the confidentiality designation is challenged is the question of "good cause" brought into play.  In *Pansy*, the Third Circuit explained that "good cause" as used in Rule 26(c) means "that disclosure will work a clearly defined and serious injury to the party seeking closure."  23 F.3d at 786.

That standard applies to material disclosed during discovery.  Material filed

with a court, however, stands on different footing.  "In both criminal and civil

cases, a common law right of access attaches 'to judicial proceedings and

records.'"  *Avandia*, 924 F.3d at 672 (citation omitted).  The common law right is

"[a]nalytically distinct from the District Court's ability to protect discovery

materials under Rule 26(c)" because there is a presumption in favor of public

access for judicial records, but not for discovery material.  Thus, this presumption

acts as "a thumb on the scale in favor of openness. . . ."  *Id.* at 676.

The mere filing of discovery material with a court, however, does not

necessarily make it a "judicial record," presumptively accessible by the public.  In

*Leucadia v. Applied Extrusion Techs, Inc.*, 998 F.2d 157, 165 (3d Cir. 1993), the

court drew a distinction between "material filed in connection with nondiscovery

pretrial motions, whether . . . case dispositive or not," and "discovery motions and

their supporting documents."  As to the latter, there is no presumptive right of

access.

Even if the filing of a document qualifies it as a "judicial record," "the common

law right of access is 'not absolute.'"  *Avandia*, 924 F.3d at 672 (citation omitted).

The presumption, however, is strong.  *Id.*  "To overcome that strong presumption,

the District Court must articulate 'the compelling, countervailing interests to be

protected,' make 'specific findings on the record concerning the effects of

disclosure,' and 'provide[] an opportunity for interested third parties to be heard.'" *Id.* at 672-73.

Acknowledging that "[t]he standard for sealing 'judicial records' is 'more rigorous' than the test for ordinary discovery materials," (Doc. 328 at 1 n.1), Navient maintains that the documents in question should not be regarded as "judicial records" even though they were part of a court filing. According to Navient, the test for "whether a document filed with the court is a judicial record turns on 'the use the court has made of it,'" (*id.* at 1, quoting *N. Jersey Media Grp., Inc. v. United States*, 836 F.3d 421, 435 (3d Cir. 2016), and the District Court made no use of the documents in question because it denied the Bureau's Motion to Defer as moot.

This argument ignores the fact that the District Court made use of the Brief filed in support of the Motion to Defer. As noted above, the District Court quoted from the Brief in denying, without prejudice, Navient's motion for partial summary judgment. Thus, even under the test postulated by Navient, the Brief is a "judicial record."

In any event, the operative test for whether a document is a "judicial record" is not whether the court has made use of it. As reaffirmed as recently as May of this year in *Avandia*, "[a] 'judicial record' is a document that 'has been filed with the court . . . or otherwise somehow incorporated or integrated into a district court's

10

adjudicatory proceedings.'" 924 F.3d at 672 (citation omitted).[5]  The Brief in support of the Motion to Defer was filed in connection with a nondiscovery motion, *i.e.*, a motion for partial summary judgment.  Navient's summary judgment motion claimed that the Bureau could not present evidence of "steering" student loan borrowers into forbearance and away from IBR plans.  The Bureau contested this assertion while arguing that Navient's motion was premature as substantial discovery had yet to be completed.

Court filings made in connection with a summary judgment motion are regarded as "judicial records," requiring application of "the exacting common law right of access standard, including the 'strong presumption' of access,'" before [granting] continued confidentiality." *Avandia*, 924 F.3d at 675.  *Accord, Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 660–62 (3d Cir. 1991).  And it matters not that the District Court denied the summary judgment motion as premature and denied as moot the Bureau's Motion to Defer.  "[P]apers filed in connection with a motion for summary judgment are not entitled to be shielded from public access merely because the district court denied the motion rather than granted it." *Republic of Philippines v. Westinghouse Elec. Corp.*, 949

---

[5]An exception, however, is made for discovery motions and documents filed in connection with such motions. *See N. Jersey Media Grp.*, 836 F.3d at 435.

F.2d 653, 661 (3d Cir. 1991)  As explained in *Mine Safety Appliances Co. v. North River Insurance Co.*, 73 F. Supp. 3d 544, 559 (W.D. Pa. 2014):

> The disposition of a [summary judgment] motion does not affect the presumption that applies to such submissions. This is because the need for public scrutiny is at its zenith when the motion is dispositive and is of a comparable level when the motion is denied because the ruling tends to shape the scope and substance of the litigation as the parties proceed to trial.

Navient's reliance upon *N. Jersey Media Group* to assert that the operative test is the use to which a filed document has been made by the court is misplaced.  That case concerned the status of a letter that purportedly identified an unindicted co-conspirator in the New Jersey "Bridgegate" prosecution.  836 F.3d at 424.  The prosecutors sent the letter to defense counsel and emailed a copy of the letter to the District Judge.  *Id.* at 433.  They did not file the letter with the Clerk of Court, nor ask the District Judge to take any action in connection with the letter.  The Third Circuit denied a media group's request for access to the letter "[i]n light of its present lack of adjudicatory significance," explaining that "[t]he Letter was intended as an aid to the defense, not as an aid to the judge in rendering a decision or for some other judicial purpose."  *Id.* at 436.  Here, by way of contrast, the Brief was filed with the Clerk of Court for the explicit purpose of convincing the District Judge to take a specific adjudicatory action.  Accordingly, the strong presumption of public access attaches to the Brief.

It was thus incumbent upon Navient to present an evidentiary foundation establishing the substantial interests in secrecy that overcome the strong presumption of public access. *See Leucadia*, 998 F.2d at 165 ("The burden is on the party who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption.") (Internal quotation marks and citation omitted.) Navient "must make a 'particularized showing of the need for continued secrecy.'" *Id.* at 166 (citations omitted). "[C]areful factfinding and balancing of competing interests is required before the strong presumption of openness can be overcome by the secrecy interests of private litigants." *Id.* at 167. And this balancing must be done on a document-by-document basis. *Id.* It is the role of the District Court "to protect the legitimate public interest in filed materials from overly broad and unjustifiable protective orders agreed to by the parties for their self-interests." *Id.* at 165.

The evidence presented by Navient – the Declaration of its Vice President of Title IV Servicing – does not compel the conclusion that Navient's privacy interests trump the right of public access to the Brief. After addressing each of the ten exhibits to the Brief, the Vice President of Title IV Servicing concludes that unsealing the documents would reveal internal policies and communications strategies and procedures. Navient argues that release of that information would

harm it in the highly competitive market for Department of Education student loan servicing business.[6]

The Brief, however, does not divulge the details of any marketing or communications strategies. Instead, it extracts information from documents marked as "confidential" to show that there appears to be evidentiary support for the Bureau's claim that student borrowers had been "steered" away from IBR programs and into the relatively disadvantageous "forbearance" of loan payments. That the Bureau may have "cherry picked" quotations from the documents in question is neither surprising nor grounds for sealing a judicial record. Advocates are expected to use evidence in a way that furthers their clients' position. The adversarial process allows the opposing advocate the opportunity to place the information used against it in the proper context.

In this case, Navient's publicly-available Statement of Facts (Doc. 162) cites to and quotes from some of the same "confidential" documents that the Bureau cites to and quotes from in its Brief. For example, paragraph 229 of Navient's

---

[6] Significantly, however, Navient has publicly disclosed its approaches for dealing with delinquent student loan borrowers, including its call strategy. *See* https://studylib.net/doc/5297036/loan-servicing-overview(last visited Aug. 26, 2019); https://www.navient.com/assets/about/investors/webcasts/2012FFELPOverviewvFinal.pdf (last visited Aug. 26, 2019). Thus, its assertion that its approach to delinquent student loan borrowers is proprietary and competitively sensitive rings somewhat hollow.

Statement of Facts avers that "Navient's procedures and training material state in a red box that 'Forbearance should not be considered until all other options have been exhausted," and cites to training materials filed under seal. (Doc. 162 at 51 n. 273.) The Bureau counters this assertion by quoting one sentence from a June 2010 memorandum and quoting from the same training materials quoted by Navient.[7] The Bureau's assertions in the Brief are highly generalized, and the quotations reflect statements made by Navient that support the Bureau's position on its steering claims. Communications and loan servicing strategies are not disclosed.

Paragraph 230 of Navient's Statement of Facts avers that its "representatives have used an online tool that guided them 'to ask specific questions designed to determine the best option for the borrower based on their current situation,'" citing to a sealed exhibit. (Doc. 162 at 51 n. 274.) The Bureau countered by referring to deposition testimony that it asserts contradicts this assertion, contending that IBR options were not discussed with student borrowers. The transcripts had been designated as "confidential" by Navient, but the information provided by the Bureau in relation to the deposition testimony is both historical and generic. It

---

[7] The June 2010 memorandum is referred to by the parties as "Document #1" to the Bureau's Brief in support of its Motion to Defer, and the training materials, which have since been revised, are referred to by the parties as "Document #2."

concerns what information was communicated to student borrowers in 2011 and 2012. No competitive harm can be inferred from the disclosure of this dated information in the Bureau's Brief.[8]

Paragraph 231 of Navient's Statement asserts that it "has multiple processes for monitoring and listening to representatives' phone calls with borrowers to check whether representatives discuss repayment options based on a borrower's financial circumstances." (Doc. 162 at 51.) The Bureau cites to email exchanges concerning the results of this "monitoring and listening" that suggest that borrower "steering" away from IBR programs persisted into 2016. No competitive harm to Navient can be discerned from the Bureau's use of email exchanges resulting from a "monitoring and listening" program that Navient itself disclosed.

---

[8] "[S]ealing must be based on *current evidence* to show how public dissemination of the pertinent materials *now* would cause the competitive harm." *Avandia*, 924 F.3d at 678 (Internal quotation marks and citation omitted; emphasis in original). The Bureau's Brief specifies that the Bureau is referring to the state of affairs as it existed 7 to 8 years ago. It is difficult to discern how this stale information can cause competitive harm to Navient today. *See Zavala v. Wal-Mart Corp.*, No. CIV.A.03-5309 JAG, 2007 WL 2688934, at *10 (D.N.J. Sept. 12, 2007) (refusing to seal material dating back more than three years because staleness precluded a finding of present competitive harm); *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 111 F.R.D. 326, 331 (D. Del. 1986) ("[I]t is hard to imagine how Keebler's methods for acquiring information three years ago concerning the physical construction of P & G's cookie facility warrant protection from disclosure at this late date.").

Paragraph 232 of Navient's Statement alleges that "[w]hen Navient identifies a call where a representative does not discuss appropriate repayment options, Navient's practice has been to coach the representative and contact the borrower to discuss available options, including [IBR] plans where appropriate." (*Id.*)  In support of this averment, Navient cites to deposition testimony that it filed under seal. (*Id.*, n. 276.)  The Bureau's Brief cites to deposition testimony labeled as confidential that, according to the Bureau, is inconsistent with Navient's assertion. Once again, no competitive harm to Navient can be discerned from unsealing the Brief.

Statements in the Bureau's Brief may cause Navient some embarrassment and reputational harm.  Indeed, Navient's initial letter response on this issue stressed that the Bureau was unfairly maligning Navient through the selective use of snippets of information from material designated to be confidential.  The Third Circuit, however, has "repeatedly said that concern about a company's public image, embarrassment, or reputational injury, without more, is insufficient to rebut the presumption of public access." *Avandia*, 924 F.3d at 676 (citations omitted); *see also Mine Safety Appliances*, 73 F. Supp. 3d at 561 ("disclosures that merely carry a potential to affect adversely sales and/or a potential loss in capital stock value fall short of warranting secrecy").

Access to "judicial records" is a presumptive right because openness of the

judicial process "promotes public confidence in the judicial system; diminishes

possibilities for injustice, incompetence, perjury, and fraud; and provides the

public with a more complete understanding of the judicial system and a better

perception of its fairness." *Id.* at 677 (internal quotation marks and citation

omitted). It is especially important to assure access to "judicial records" in

litigation concerning matters of significant public importance, such as this case.

Navient services the loans of millions of student borrowers, and the public has a

right to know both Navient's position concerning the claims asserted against it and

the position of the public agency that has sued Navient. "The potential of the

litigation to affect the rights of such members of the public gives rise to a

heightened need for judicial transparency and warrants particular strictness in the

test for overriding the right of access." *Mine Safety Appliances*, 73 F. Supp. 3d at

561 (W.D. Pa. 2014). "Compelling countervailing interests to be protected" must

be established to justify sealing of a judicial record such as the Bureau's Brief. *Id.*

In summary, there is no proprietary, budgetary, strategic, or other sensitive

information disclosed in the Brief in support of the Motion to Defer that could be

used by a competitor of Navient.  Any harm to Navient is solely reputational, which does not warrant the sealing of the Brief.[9]

As to the ten exhibits to the Brief, the Bureau has made clear that its primary concern is the Brief.  The only reason the Brief was filed under seal is because it cites to Protected Material.  The Bureau sought unsealing of the ten exhibits, in whole or in part, so that the Brief could be unsealed.

The court's role in this circumstance is to examine *each* sealed document to gauge whether its release will result in "a clearly defined and serious injury to the party seeking closure." *Avandia*, 924 F.3d at 672 (internal quotation marks and citation omitted).  "[T]he court has an inherent obligation to review and supervise the files being placed on its docket and a concomitant obligation to assure that the use of its authority to keep matters from public scrutiny properly is being employed." *Mine Safety Appliances*, 73 F. Supp. 3d at 557.  One of the sealed judicial records is the Brief itself.  The mere fact that the protective order calls for sealing judicial records that reveal Protected Material does not overcome the presumption of public access to such a judicial record.  Here, careful review of the Brief reveals no competitive harm.  Sealing the Brief is not warranted.

---

[9] Navient argues that the Bureau has not identified any interest that is advanced by unsealing the Brief.  Even if that is true, it is irrelevant.  The burden is on Navient to justify the sealing of a judicial record, and not on the Bureau to demonstrate an interest in disclosure.  *See Avandia*, 924 F.3d at 669.

Having reached this conclusion, there is no need to consider whether the ten exhibits should be unsealed, in whole or in part.  It may be that parts of the sealed exhibits may be made public.  Indeed, Navient has suggested unsealing parts of the deposition transcripts attached as exhibits to the Bureau's Brief in support of the Motion to Defer.[10]  But the more nuanced consideration of each of the discovery documents has been rendered moot by the Bureau's alternative request that the Brief be unsealed and "the ten exhibits . . . remain sealed, comparable to Navient's public filing of its summary judgment brief and statement of facts."[11]

## IV.   CONCLUSION

For the foregoing reasons, the Bureau's request to unseal the Brief in Support of its Motion to Defer (Doc. 213) will be granted.  The Clerk of Court will be directed to unseal the Brief if no objection to this determination is made by any party within twenty-one (21) days of this decision.  An appropriate order follows.

s/ Thomas I. Vanaskie<br>
THOMAS I. VANASKIE<br>
SPECIAL MASTER

---

[10] The Bureau has agreed with Navient's proposed redactions of the testimony of Mathew Bailer, so the parties are free to have the unredacted parts disclosed.  As to the excerpts from the transcript of the deposition of Suzanne Croft, Navient has proposed redacting all but an objection it had raised.  Effectively, therefore, Navient is insisting that all her testimony remain sealed.

[11] Upon request of any party, I will undertake the document-by-document review of the ten exhibits to determine whether continued sealing, in whole or in part, is justified.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CONSUMER FINANCIAL**<br>**PROTECTION BUREAU,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| | : | **3:17-CV-101** |
| **v.** | : | **(Judge Mariani)** |
| | : | |
| | : | |
| **NAVIENT CORPORATION, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## ORDER

**NOW,** this 27th Day of August 2019, in accordance with the foregoing Special Master Report #14, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's request to unseal the Brief in Support of its "Motion to Defer the Deadline for its Response to Defendants' Motion for Partial Summary Judgment and to Prohibit Further Motions for Summary Judgment before the Closing of Discovery" (Doc. 213) is granted.  The Brief shall be unsealed if no party objects to this Order and the accompanying Special Master Report #14 within twenty-one days of the date of this Order.

2. The Plaintiff's request to unseal ten exhibits attached to that brief is denied, without prejudice.

3.  Objections to the foregoing Special Master Report #14 and this Order must

be submitted no later than twenty-one (21) days after service of this Order.

s/ Thomas I. Vanaskie
THOMAS I. VANASKIE
SPECIAL MASTER

2