IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CONSUMER FINANCIAL
PROTECTION BUREAU,

    Plaintiff

v.

NAVIENT CORPORATION, et al.,

    Defendants.

3:17-CV-101
(Judge Mariani)

## SPECIAL MASTER REPORT #15 – ADEQUACY OF SEARCH FOR STUDENT BORROWER CALL RECORDS

### I. INTRODUCTION

Plaintiff Consumer Financial Protection Bureau (the "Bureau") requests that Defendants (referred to in this report collectively as "Navient") be compelled to submit detailed affidavits or declarations concerning the efforts undertaken over the course of this litigation to locate recordings and other records of communications with student loan borrowers (referred to in this Report as "call records"). For the reasons that follow, Navient will be required to submit an affidavit or declaration concerning its most recent efforts to produce call records,

but will not be compelled to describe the efforts undertaken in connection with its earlier production of student borrower call records.

## II. BACKGROUND

This litigation concerns, in principal part, the student loan servicing practices of Navient Corporation and its wholly-owned subsidiary, Navient Solutions, Inc., formerly known as Sallie Mae, Inc. The Bureau contends, among other things, that Navient's student loan servicing practices, dating back many years and involving millions of student borrowers, violated the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5531, 5536(a), 5564, 5565.

As might be expected in litigation of this nature, discovery has been massive. A central topic of discovery has been recordings of telephonic communications between Navient's representatives and student borrowers. The recordings may be the best evidence of what information was provided by Navient to student borrowers.

Essentially, there have been three separate production of call records by Navient. The first production occurred in connection with Navient's depositions of student borrowers, which began in February of 2018. The Bureau had identified a number of student borrowers whom it believed would support its claims. Before taking the depositions, Navient searched for and produced call records involving some, but not all, of the student borrowers identified by the Bureau.

Contending that Navient's production was inadequate, the Bureau raised the issue with Judge Robert D. Mariani. During a conference call held on August 8, 2018, the parties agreed to a way forward on this issue. Specifically, Navient agreed to provide the Bureau with the computerized loan history for the specifically-identified student borrowers (known as "151 screens").[1] The Bureau was then to identify specific items, including recordings of telephonic communications, on the 151 screens that it wanted Navient to produce. (Doc. 106 at 53-56.) The process for then producing recordings and other documents pertaining to the servicing of particular student loans was described during the August 8, 2018 hearing as follows:

> [W]e have to look at the call notes, look at the time and date, go to the system where that call would have been located, match the time and date with the agent name who took the call and see if we can find the borrower's call. Sometimes calls were never recorded in the first place. For older time periods they rolled off the system after 30 days. Even for current calls, there could be cases where

---

[1] As explained by a Navient lawyer during the August 8, 2018 conference:

> [T]here's a screen [the 151 screen that shows the whole history of the loan. Every letter sent, every call made. You know, every e-mail sent, that's what you can see from that screen. For older records, even like a letter sent to the borrower, for example, a disclosure of some kind, you have to look at that screen, click -- click the entry, that gets sent to another part of the business, downloaded, and then we can produce it.

(Doc. 106 at 52.)

> maybe the agent didn't log on properly so it's not stored under the agent's name. So it is actually a really manual process to get these call recordings pulled. It's not a matter of pulling it all up at once, downloading it and sending it over.

(*Id.* 52-53.) Noting that the Bureau has sought call records dating back to 2009, Navient's attorney also represented that "the client actually does have to manually pull each individual piece of correspondence. And that's just the correspondence. Call recordings are even more difficult because over time they've been on five different call recording systems." (*Id.* at 52.)

On December 7, 2018, after receiving the 151 screens, the Bureau provided Navient with a 26-page list of items, including phone call recordings, that it wanted produced. Navient's counsel responded by letter dated January 16, 2019. After observing that many of the items on the 26-page list had already been produced, Navient's counsel stated:

> Most of the recordings you have requested on December 7 are from 2009 through 2012 so it is unsurprising that when Navient searched for them last year, the recordings were unavailable. We will confirm once again whether certain recordings are unavailable and will produce any we are able to locate in Navient's possession that relate to the claims identified for particular borrowers.

(Ex. 2 to Navient's May 31, 2019 letter to the Special Master (Doc. 317), at 1-2.) Although Navient had previously represented that all call records that could be located had been produced, additional call records were then found, with production completed by February 15, 2019. (Doc. 316 at 5.)

By letter dated May 24, 2019, the Bureau raised again the completeness of Navient's production of call records, asking that Navient be compelled to produce "all calls and correspondence for every deposed borrower, along with an affidavit itemizing every call and correspondence that could not be located within Navient's servicing systems, and describing the steps undertaken to locate such calls and correspondence." (Doc. 307 at 4.) Navient responded by letter dated May 31, 2019, pointing out that the Bureau had "not identified a single call that it is missing without explanation," and asking that the Bureau's "demand for all records and an affidavit describing what has already been stated repeatedly" be rejected. (Doc. 316 at 5.)

This matter was addressed during our June 4, 2019 conference call. As a result of that call, the Bureau was directed to identify the documents and recordings on the December 7, 2018 26-page list of call records that the Bureau was claiming had not been produced. The Bureau did so on July 12, 2019, emailing Navient a list of more than 180 call record entries involving 15 student borrowers that it contended had yet to be produced. Navient responded on August 5, 2019. It informed the Bureau that 38 of the entries on the Bureau's July 12, 2019 list had already been produced. In addition, despite having previously represented that it had produced all available call records, Navient produced one

5

letter and 13 call recordings involving 5 of the 15 student borrowers for whom the Bureau sought call records in its July 12, 2019 email.

The following day, August 6, 2019, the Bureau raised again the question of the completeness of Navient's production of call records, asking that Navient be required "to produce an affidavit from an appropriate individual, describing the search and the results of the search so that we can understand whether these outstanding call recordings were searched for, if they exist, if they were destroyed, when they were destroyed, things like that." (Aug. 6, 2019 Tr. at 8.) The parties were directed to meet and confer on this question and report in writing whether they had been able to resolve the matter. (Special Master Order #41, Doc. 336.) By letter dated August 15, 2019, the Bureau wrote that the parties had not been able resolve the issue. The parties were then directed to set forth in writing their respective positions on the question of whether Navient should be required to provide a declaration chronicling its efforts to retrieve and produce call records by August 21, 2019, with a telephonic status conference to be conducted on August 22, 2019.

The parties timely submitted their written statements. Accompanying Navient's August 21, 2019 letter (Doc. 340) was a declaration from a Navient litigation paralegal dated August 14, 2019 that described in cursory terms the most recent search that resulted in the production of the 13 call recordings.

Contesting the adequacy of the paralegal's declaration, the Bureau, in its letter of August 21, 2019, asserted:

> That declaration is inadequate for a variety of reasons, including that it states that the current search was of "relevant" databases without addressing whether additional databases were omitted. Defendants have refused to clarify. Most importantly, the declaration did not seek to explain why each of the multiple rounds of searches produced such varied results when the sole task was to locate specific borrower records. The declaration included virtually no information about the processes, parameters, or participants associated with the searches. Nor did it address the standard of relevance Defendants applied to their search and production of borrower records.

(Doc. 341 at 3-4.)

The parties were again accorded an opportunity to address this matter during our August 22, 2019 conference call. The Bureau requested that a decision on the need for and content of any declaration be deferred until after I had received and listened to a recording of a 2011 conversation between a student borrower and a Navient representative that had only been produced on August 5, 2019. I have listened to that 34-minute recording (in which the only option afforded the unemployed and financially-distressed student borrower is forbearance of payments) and have carefully considered the parties' arguments as presented in multiple letters and during several conference calls.

## III. DISCUSSION

Statements subject to the penalty of perjury are often required where, as here, a party represents that it has searched for and produced all pertinent records only to later produce additional relevant documents. *See, e.g., Little Hocking Water Assn., Inc. v. E.I. du Pont de Nemours & Co.*, 94 F. Supp. 3d 893, 930–31 (S.D. Ohio 2015); *Sloan Valve Co. v. Zurn Indus., Inc.*, No. 10-CV-204, 2012 WL 1886353, at *11 (N.D. Ill. May 23, 2012); *Farmers Ins. Exch. v. West*, No. CV 11-2297 (PAM/JJK), 2012 WL 12894845, at *4–5 (D. Minn. Sept. 21, 2012); *Lavi v. City of New York*, No. 05 CIV 8007 RMB DF, 2007 WL 1573904, at *3–4 (S.D.N.Y. May 24, 2007); *C & M Oil Co. v. CITGO Petroleum Corp.*, No. 04-22901-CIV, 2007 WL 9751801, at *24 (S.D. Fla. Feb. 28, 2007); *Eley v. Herman*, No. 1:04-CV-416, 2005 WL 3115304, at *2 (N.D. Ind. Nov. 21, 2005); *Radetsky v. Binney & Smith, Inc.*, No. 85 CIV. 4379 (PNL), 1989 WL 234026, at *3 (S.D.N.Y. Dec. 13, 1989). Navient did, in fact, relent and provide a declaration from a litigation paralegal. So, the question here is the adequacy of that declaration.

The Bureau contends that the declaration is inadequate for three reasons: first, it concerns only the most recent search conducted for approximately 180 specifically identified documents; second, it fails to explain the "standard of relevance" applied in undertaking the searches; and third, it lacks information

about "the processes, parameters, or participants associated with the searches." (Doc. 341 at 3.)

As to the first contention, I discern no value in having Navient rehash the work that was undertaken in connection with its earlier searches. Ultimately, the Bureau received the 151 screens for the student borrowers it had identified. The Bureau then identified specific documents it was seeking, with the universe of documents eventually reduced to about 150 call records. All that matters, therefore, is how Navient conducted the most recent search that could not locate approximately 133 call records.

This determination also resolves the second contention. The standard of relevance is irrelevant to the last search because Navient looked for the specific items sought by the Bureau. As explained by Navient during our August 22, 2019 conference call, no relevance filter was applied as the most recent search was " a mechanical exercise . . . in that we were just simply trying to find each of the entries that the CFPB identified." (Aug. 22, 2019 Tr. at 11.)

I do find, however, that the declaration provided by Navient is not sufficiently detailed to provide an understanding as to whether the search was sufficiently thorough. The litigation paralegal's declaration is a mere 8 paragraphs long. While it asserts that searches were run "across the relevant Navient call recording databases," (Declaration, ¶ 6), the declaration mentions

9

only three databases whereas counsel for Navient stated during the August 8, 2018 conference that there were five different recording systems. While the declaration states that the searchers used "available data, including borrower phone number, borrower social security number, date and time of call, and agent code," it does not explain whether there were other means or terms that could be applied to search for the requested records. Nor does the declaration identify who undertook the search, the locations that were searched, the qualifications of those conducting the searches, the instructions that were provided to undertake the searches, or the number of hours expended in the effort. Instead, the declaration merely asserts in conclusory fashion that the searches were "extensive."

There is no basis at this time to conclude that Navient's search was not undertaken in good faith. The fact that Navient produced 13 call records a few weeks ago suggests that it is attempting to be as comprehensive as possible in its production of these important records. But, at the same time, the failure to produce the call records until the close of an extended period for fact discovery is perplexing. Under these circumstances, more detail from a knowledgeable and qualified person is needed before it can be concluded that additional searching would be fruitless. Navient should provide a declaration that contains the kind of information that was imparted to Judge Mariani during the August

8, 2018 hearing, explaining in detail how the most recent search was conducted, including such information as what was searched, what search terminology was used, who conducted the search, who supervised the search, the amount of time expended in conduction with the search, whether there were databases that were considered as potential repositories of the records being sought that were not searched and why they were not searched, and why counsel said in August of 2018 that there were five systems containing call recordings but only three systems were searched.

## IV. CONCLUSION

For the foregoing reasons, Navient will be directed to provide a more detailed declaration concerning its most recent effort to produce call records. An appropriate Order follows.

s/ Thomas I. Vanaskie<br>
THOMAS I. VANASKIE<br>
SPECIAL MASTER

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CONSUMER FINANCIAL** : <br> **PROTECTION BUREAU,** : <br> : <br> **Plaintiff** : <br> : <br> :     **3:17-CV-101** <br> **v.** :     **(Judge Mariani)** <br> : <br> : <br> **NAVIENT CORPORATION, et al.,** : <br> : <br> **Defendants.** : | |

## ORDER

**NOW,** this 28th Day of August 2019, in accordance with the foregoing Special Master Report #15, **IT IS HEREBY ORDERED THAT:**

1. No later than September 25, 2019, Defendants shall file a declaration and/or affidavit from the person or persons with personal knowledge detailing the efforts Defendants undertook in July and August of this year to locate the call records specifically requested by Plaintiff. The declaration or affidavit shall identify the persons who participated in the search, their qualifications; the databases that were searched; the potentially relevant databases that were not searched and why; the search criteria that were employed; the call recording systems in use by Defendants during the relevant time period;

explain whether there are three or five recording systems that may contain the requested call records; the amount of time expended in conducting the search; and any other information that will facilitate a conclusion that no additional searching need be required.

2. Objections to the foregoing Special Master Report #15 and this Order must be submitted no later than twenty-one (21) days after service of the Report and this Order.

s/ Thomas I. Vanaskie
THOMAS I. VANASKIE
SPECIAL MASTER