# WILMERHALE

September 13, 2019

**Daniel P. Kearney**

+1 202 663 6285 (t)
+1 202 663 6363 (f)
daniel.kearneyt@wilmerhale.com

**VIA ECF**

Judge Thomas I. Vanaskie
JAMS, Inc.
1717 Arch Street, Suite 3810
Philadelphia, Pennsylvania 19103

      Re:  *CFPB v. Navient Corp., et al.*, Case No. 3:17-CV-00101-RDM

Dear Judge Vanaskie:

      I write regarding Special Master Report #14, which granted the CFPB's request to unseal its brief in support of its motion to defer the deadline to respond to Navient's motion for partial summary judgment. The Report also denied, without prejudice, the CFPB's request to unseal ten exhibits the CFPB filed in support of its motion to defer, but it invited the parties to request further review of those exhibits "to determine whether continued sealing, in whole or in part, is justified." *See* Doc. 345 at 20-21.

      Although Defendants recognize the important interests served by an open judicial process, Defendants respectfully disagree that these interests weigh in favor of unsealing the CFPB's brief, particularly without the context of the full accompanying exhibits on which the CFPB's brief purports to rely. Portions of the CFPB's brief so seriously mischaracterize the exhibits that disclosing the brief alone risks misinforming the public about the issues in this litigation.

      In addition, as the Report explains, the adversarial process typically "allows the opposing advocate to place the information used against it in the proper context." Doc. 345 at 14. In this instance, however, Defendants did not have that opportunity because the Court denied the CFPB's motion as moot before Defendants responded. The public record therefore lacks the information needed to assess the CFPB's arguments and place its advocacy in context. In particular, we note the following as to several exhibits:

**June 2010 Memorandum**

      The brief's treatment of a June 2010 memo by former Sallie Mae employee Matthew Bailer deserves particular mention. The CFPB highlights a single overwrought phrase from the memo and entirely ignores the associated context. For one, the 2010 memo says *nothing* about "steering" borrowers on phone calls—the CFPB's core allegation. Rather, the memo discusses forbearance as a tool to help borrowers resolve delinquencies and avoid default, which is exactly what the Government's rules contemplate. *See, e.g.*, 34 CFR § 682.211 (the Education Department "encourages a lender to grant forbearance for the benefit of a borrower . . . in order

WilmerHale

Judge Thomas I. Vanaskie
September 13, 2019
Page 2

to prevent the borrower . . . from defaulting"). And Mr. Bailer himself testified that the memo's statements refer to the use of forbearance to resolve past delinquencies, which is a necessary step for borrowers to regain eligibility for other options such as Income-Driven Repayment ("IDR") plans. Doc. 261 Ex. 3. Furthermore, the CFPB entirely ignores the memo's statement regarding Navient's efforts to "improve our ability to communicate the benefits of . . . 'Income Based Repayment,'" a government program which in 2010 was almost brand new. *See* Doc. 213 at A2. This relevant context illustrates that the CFPB's characterization of the 2010 memo is unfair and misleading. Taken as a whole, the memo reflects Navient's ongoing efforts to enhance borrower education amid changes to the options available under the federal student loan program.

### Call Center "Job Aid"

The CFPB's discussion of a "job aid" previously used in Navient's call centers similarly omits important context regarding the document itself and the way it was used by Navient representatives. For example, the brief fails to mention the procedure's prominent admonition that "forbearance should not be considered until all other options have been exhausted." Doc. 213 at A5. The CFPB's brief also overlooks the fact that officials at the Department of Education reviewed this document on multiple occasions, and raised no concerns about its content at all.

### Testimony of Navient Employees

The CFPB's brief also purports to summarize testimony by various Navient employees to support the Bureau's allegations. But the *actual* witness testimony clearly contradicts the CFPB's assertions. For example, citing the testimony of Jonathan Powell, the CFPB asserts that "even if . . . a representative was deemed not to have properly discussed IDR as a repayment option, the representative's conduct would not be written up in any way or lead to any sort of warning." Doc. 213 at 10. But as the exhibit shows, Mr. Powell said the opposite: such a call would result in "coaching" the employee representative to "figure out what we need to do to change [the representative's] practices moving forward," and that further discipline would result if the representative did not correct the issue. *See* Doc. 213 at A109-110.

Similarly, relying on the testimony of Suzanne Croft, the CFPB audaciously asserts that "through at least 2012 and perhaps for years after that, the job aid that guided calls with delinquent borrowers did not include IDR as an option." CFPB Br. at 6. But the CFPB has the *actual job aids* from that time period, which clearly show IDR included as an option.[1]

---

[1] As just one example, the "job aid" the CFPB cites in its brief is a 2011 version of training materials that discuss IDR. *See* Doc. 261 Ex. 6 (Deposition of Matthew Bailer Tr. 123-132) (discussing 2010 and 2011 versions of the document marked NAV-02071059, which is also included at page A5 of the CFPB's brief).

WILMERHALE

Judge Thomas I. Vanaskie
September 13, 2019
Page 3

Moreover, Ms. Croft testified only to the unremarkable fact that she did not recall precisely when IDR options were incorporated into those procedures. *See* Doc. 213 at A12-13.

<p style="text-align:center">* * *</p>

In light of the above, Navient will be unduly prejudiced if the CFPB's brief is unsealed and the ten exhibits discussed in Special Master Report #14 remain sealed. Accordingly, although Defendants continue to believe that they are properly designated confidential, Defendants request that those exhibits be contemporaneously unsealed to provide the public with a more complete and fair understanding of the facts.

<div style="padding-left: 50%">
Sincerely,

/s/ Daniel P. Kearney
</div>