IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | : |
| Plaintiff | : |
| v. | : 3:17-CV-101 <br> : (Judge Mariani) |
| NAVIENT CORPORATION, et al., | : |
| Defendants. | : |

### SPECIAL MASTER ORDER #57

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Presently at issue in this long-running dispute over the adequacy of Defendants' search for recordings of phone calls between Defendants' representatives and student loan borrowers is the September 25, 2019 Declaration of Stephanie K. Box, a litigation paralegal at Defendant Navient Solutions, LLC. (Doc. 361-1.) This Declaration was presented pursuant to Special Master Report #15 and the Order accompanying that Report. (Doc. 347.) That Report and Order were precipitated by Plaintiff's challenge to an earlier declaration from Ms. Box (Doc. 340-1) that had described in cursory terms the search of Defendants' computerized call recording systems that returned 13 calls involving 5 student loan borrowers from a list of approximately 150 records of 15 student loan borrowers

submitted by Plaintiff in July of 2019.[1] Concluding that the first declaration of Ms. Box was insufficient to assess the reasonableness of Defendants' search efforts, the Order accompanying Special Master Report #15 directed Defendants to submit an affidavit or declaration that

> shall identify the persons who participated in the search[;] their qualifications; the databases that were searched; the potentially relevant databases that were not searched and why; the search criteria that were employed; the call recording systems in use by Defendants during the relevant time period; explain whether there are three or five recording systems that may contain the requested call records; the amount of time expended in conducting the search; and any other information that will facilitate a conclusion that no additional searching need be required.

(Doc. 347 at 12-13.)

The purpose of requiring another declaration was to confirm that the search for the items on Plaintiff's July 2019 list was "sufficiently thorough." (*Id.* at 9.) The Declaration submitted on September 25, 2019, although imprecise as to some matters, provided much of the information called for in Special Master Report #15.

Pointing out some of the imprecision of the second declaration from Ms. Box, Plaintiff, by letter dated October 25, 2019, challenged the adequacy of that Declaration. (Doc. 377.) Specifically, Plaintiff contended that the Declaration "omits two key sets of information that are necessary to determine whether the July

---

[1] The list is attached as Exhibit A to Ms. Box's September 25th Declaration.

search was sufficient." (*Id.* at 1.) The first omission, according to Plaintiff, was that the Declaration "is vague as to whether Navient employed available search criteria in a way that returned comprehensive and *reliable* results from its call systems." (*Id*; emphasis in original.) And the second omission, according to Plaintiff, was that the Declaration "is vague as to whether Navient searched multiple call systems or only one system for any given recording, and if the latter, how the Navient employee could know for sure which single system to search and why that call recording could not possibly reside in another system." (*Id.*)

As to the first omission, Plaintiff expressed considerable concern about the assertion in paragraph 7 of the September 25th Declaration that "[d]ifferent combinations of information entered into these [search] fields may yield a different result." Plaintiff elaborated:

> [T]the declaration does not explain how or why the results may vary. Based on this statement, it is unclear whether different searches would yield different groups of results, all of which should include the relevant call; or whether one combination of search criteria run for a particular call could successfully locate that call while another combination of search criteria run for the same call could fail to locate that call.

As to the second omission, Plaintiff pointed out that the Declaration was unclear as to whether multiple systems were searched when calls occurred while Defendants were transitioning from one call recording system, known as "NICE," to another system, "ININ." Plaintiff also contended that the Declaration was

3

unclear as to whether the outbound call system, known as "Noble," used exclusively by Defendants' Customer Resolution Services ("CRS") section, was searched as well as the pertinent inbound call system.[2]

Plaintiff requested that Defendants be ordered to provide yet another declaration to answer the following questions:

> 1. Why do different combinations of information entered to search for a particular call recording yield different results? In what way do results vary when different combinations of information are entered into a search? Are there instances in which one combination of search criteria will successfully locate a particular call while another combination of search criteria will fail to locate that same call? Provide a response that is specific to each combination of search terms and each system (to the extent the explanation differs from system to system).
> 2. What steps did Navient take to ensure that where one combination of search criteria would locate a particular call but another combination of search criteria would not locate that same

---

[2] Defendants had two sections interacting with student loan borrowers. CRS became involved when a student borrower's account was delinquent. The other business section is known as "Servicing," and as the term implies, handled loan servicing inquiries, including requests for assistance from student borrowers who may be experiencing financial distress but were not behind in their payments. Servicing did not use the Noble system. CRS migrated from NICE to ININ between November of 2013 and May of 2016. Servicing migrated from NICE to ININ between September of 2014 and December of 2014. Thus, for calls involving CRS, a "sufficiently thorough" search for any calls occurring between November of 2013 and May of 2016 would have included NICE, ININ, and Noble (assuming the information on the list provided by Plaintiff in July of 2019 did not enable the searchers to determine whether the call was incoming or outgoing). For other periods of time for calls involving CRS, a "sufficiently thorough" search would encompass the pertinent incoming call recording system and Noble. As to calls involving Servicing, a "sufficiently thorough" search would have included both NICE and ININ when the call occurred between September and December of 2014.

4

call, Navient ran a combination of search criteria that would locate the call?
3. In what combination(s) was information entered into ININ, NICE, or Noble in order to search for call recordings? Because each system is capable of being searched by different types of information, responses should be given for each of the three call systems searched.
4. Over what dates was ININ used in the Servicing and CRS business lines, respectively? Over what dates was NICE used in the Servicing and CRS business lines, respectively? Over what dates was Noble used in the CRS business line?
5. Did Navient search multiple call systems across ININ, NICE, and Noble in order to obtain any individual call recording? How did Navient determine when to do so?
6. For any call recordings for which Navient only searched one system, how does Navient know with certainty which system to search and why that call could not possibly reside in another system?
7. In the event more than one employee searched for a particular call recording, how did the searches conducted by each employee differ?
8. Why did counsel for Navient state on August 8, 2018, that searching for call recordings was burdensome "because over time they've been on five different call recording systems"?
9. What is the name and title of the person "who supervised the search" undertaken by Navient in July 2019?

(*Id.* at 3-4.)

By Special Master Order #56 (Doc. 378), dated October 28, 2019, Defendants were directed to reply to Plaintiff's October 25th letter by November 1, 2019, and a telephone conference on this matter was scheduled for November 4, 2019. Defendants' timely letter reply of November 1, 2019 (Doc. 379), took issue with Plaintiff's request for what Defendants described as "a new declaration seeking all sorts of minutiae regarding the call search, including what amounts to a

call, Navient ran a combination of search criteria that would locate the call?
3. In what combination(s) was information entered into ININ, NICE, or Noble in order to search for call recordings? Because each system is capable of being searched by different types of information, responses should be given for each of the three call systems searched.
4. Over what dates was ININ used in the Servicing and CRS business lines, respectively? Over what dates was NICE used in the Servicing and CRS business lines, respectively? Over what dates was Noble used in the CRS business line?
5. Did Navient search multiple call systems across ININ, NICE, and Noble in order to obtain any individual call recording? How did Navient determine when to do so?
6. For any call recordings for which Navient only searched one system, how does Navient know with certainty which system to search and why that call could not possibly reside in another system?
7. In the event more than one employee searched for a particular call recording, how did the searches conducted by each employee differ?
8. Why did counsel for Navient state on August 8, 2018, that searching for call recordings was burdensome "because over time they've been on five different call recording systems"?
9. What is the name and title of the person "who supervised the search" undertaken by Navient in July 2019?

(*Id.* at 3-4.)

By Special Master Order #56 (Doc. 378), dated October 28, 2019, Defendants were directed to reply to Plaintiff's October 25th letter by November 1, 2019, and a telephone conference on this matter was scheduled for November 4, 2019. Defendants' timely letter reply of November 1, 2019 (Doc. 379), took issue with Plaintiff's request for what Defendants described as "a new declaration seeking all sorts of minutiae regarding the call search, including what amounts to a

call-by-call—and indeed, search-by-search—recreation of Defendants' search efforts." (*Id.* at 1-2.)

The parties' respective positions were presented in greater detail during the November 4th conference call. During the call, Plaintiff expressed satisfaction with Defendants' explanation that only three call recording systems were relevant: ININ, NICE, and Noble. Plaintiff also accepted defense counsel's representation that Ms. Box supervised the search, although it did want to know whether Ms. Box herself was supervised by anyone. For its part, Defendants agreed to supplement Ms. Box's Declaration by identifying the 35 entries on Exhibit A to her Declaration that "reflected notations in the account in the servicing system for which there are no independent records or, . . . reflected calls where there was no contact with an agent and, therefore, no call was recorded." (Doc. 361-1 at 1.)

That leaves approximately 101 requests for which no recordings or other material was found.[3] I agree with Defendants that an item-by-item recreation of the searches conducted by the search team is not warranted. As noted above, much of the information mentioned in Special Master Report #15 has been provided. For instance, the September 25th Declaration identified the persons conducting the

---

[3] There were approximately 150 items involving 15 student borrowers for which searches were requested. As explained by Ms. Box, 35 entries did not involve recorded calls or other records, and 13 calls and 1 letter were produced in August of this year, leaving 101 records unaccounted for.

search, their qualifications, and the search fields for specific recording systems, e.g., ININ could be searched by borrower phone number. (Doc. 361-1 at 2.) Thus, a new declaration that addresses the very detailed questions propounded in Plaintiff's October 25, 2019 letter is not warranted.

But even Defendants acknowledged that the Declaration was imprecise in certain respects, e.g., in not articulating that both ININ and NICE were searched during periods when Servicing and CRS were transitioning from NICE to ININ. Nor is it clear from the Declaration when the Noble system was searched for a particular call. Finally, the assertion that "[d]ifferent combinations of information entered into [search] fields may yield a different result," and how the search team took that factor into consideration needs explanation. Accordingly, Defendants will be directed to provide yet another declaration that

1. Confirms that Ms. Box supervised the search efforts undertaken in connection with the list attached as Exhibit A to the September 25th Declaration, and addresses whether Ms. Box was supervised by any other person and if so, by whom.

2. Identifies the 35 entries on Exhibit A to the September 25th Declaration that would not involve a call recording or other record.

3. Specifies the call recording system(s) searched for each of the remaining 101 entries on Exhibit A to the September 25th Declaration.

4. Explains in a more comprehensible manner the assertion in paragraph 7 of the September 25th Declaration that "[d]ifferent combinations of information entered into [search] fields may yield a different result," and that describes any steps taken to ensure that where one combination of search criteria would not locate a particular call but another combination of search criteria would locate that same call, Defendants ran the combination of search criteria that would locate the call. In this regard, it would be helpful if the declaration provided some examples of the search terms what were used for specific search fields.

**NOW, THEREFORE, THIS 13th DAY OF NOVEMBER, 2019, IT IS HEREBY ORDERED THAT:**

1. No later than November 26, 2019, Defendants shall provide a declaration or affidavit addressing the matters identified in paragraphs numbered 1 through 4 above.

2. Plaintiff's request for a declaration or affidavit that responds to the multiple questions posed in its letter of October 25, 2019 (Doc. 377) is **DENIED**.

3. Objections to this Order must be submitted no later than twenty-one (21) days after service of this Order.

s/ Thomas I. Vanaskie
THOMAS I. VANASKIE
SPECIAL MASTER