# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Consumer Financial Protection Bureau,

    Plaintiff,

    v.

Navient Corporation, *et al.*,

    Defendants.

Case No. 3:17-CV-00101-RDM
(Hon. Robert D. Mariani)

ELECTRONICALLY FILED

---

# PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE EVIDENCE FROM OUTSIDE THE RELEVANT TIME PERIOD FOR THIS LITIGATION, OR ALTERNATIVELY, IN SUPPORT OF ITS MOTION TO MODIFY THE SPECIAL MASTER'S ORDER DENYING PRODUCTION OF DATA POST-DATING <u>THE RELEVANT TIME PERIOD FOR THIS LITIGATION</u>

Cara Petersen
*Acting Enforcement Director*

David Rubenstein
*Deputy Enforcement Director*

Thomas Kim
*Assistant Deputy Enforcement Director*

Nicholas Jabbour, DC 500626
Manuel Arreaza, DC 1015283
Ebony Sunala Johnson, VA 76890
Nicholas Lee, DC 1004186
Andrea Matthews, MA 694538
Jonathan Reischl, IL 6305260
*Enforcement Attorneys*

*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

INTRODUCTION. ................................................................................1

FACTS AND PROCEDURAL HISTORY.. ...........................................3

    I.    On May 4, 2018, the Court issued an Opinion and Order
          establishing the "relevant time period for this litigation." ....................3

    II.    In a December 20, 2019 hearing, Navient indicated that it
           would seek to selectively introduce borrower data outside
           the relevant time period for this litigation. ...........................................6

STATEMENT OF QUESTIONS INVOLVED ........................................11

ARGUMENT...........................................................................11

    I.    If Navient wants to rely on documents and data outside the relevant
          time period for this litigation, it should have timely moved for
          reconsideration of the May 4, 2018 Opinion and Order. ....................11

    II.    If the Court expands the relevant time period for this litigation,
           Navient should be required to produce the data post-dating
           January 18, 2017 to avoid prejudice to the Bureau. ...........................14

CONCLUSION............................................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Costantino v. City of Atl. City*,
    152 F. Supp. 3d 311 (D.N.J. 2015)................................................................. 15

*Daee v. JP Morgan Chase Bank*,
    2015 WL 2078699 (M.D. Tenn. May 4, 2015) ............................................ 16

*Doe v. Luzerne County, Pennsylvania*,
    2008 WL 11492970 (M.D. Pa. Aug. 12, 2008)............................................ 16

*Hypolite v. Zamora*,
    2016 WL 5156787 (E.D. Cal. Sept. 20, 2016) ............................................ 15

*In re Continental Airlines, Inc.*,
    279 F.3d 226 (3d Cir. 2002) ........................................................................ 12

*Music Grp. Macao Commercial Offshore Ltd. v. Foote*,
    2015 WL 3882448 (N.D. Cal. June 23, 2015)............................................. 16

*R.D. v. Shohola Camp Ground & Resort*,
    2017 WL 1178050 (M.D. Pa. Mar. 30, 2017) ............................................. 16

*Snapp v. United Transp. Union*,
    2014 WL 5365552 (W.D. Wash. Oct. 21, 2014)......................................... 16

*Valdez v. Travelers Indem. Co. of Connecticut*,
    2013 WL 3989583 (N.D. Cal. Aug. 2, 2013).............................................. 15

*Waldorf v. Shuta*,
    142 F.3d 601 (3d Cir. 1998) ........................................................................ 12

*Walker v. Nw. Airlines Corp.*,
    2002 WL 32539635 (D. Minn. Oct. 28, 2002)........................................... 17

## **Statutes**

12 U.S.C. § 5531 ......................................................................................... 3

12 U.S.C. § 5536 ......................................................................................... 3

## **Rules**

Federal Rule of Civil Procedure 26(e)(2) ................................................. 17

Federal Rule of Civil Procedure 53(f) ...................................................... 14

# **INTRODUCTION**

In this Court's May 4, 2018 Opinion, which followed a hearing to address Navient's refusal to produce many categories of documents, the Court held that "the relevant time period for this litigation is the effective date of Defendants' contracts with the Department of Education, June 17, 2009, through the date that this lawsuit was filed, January 18, 2017." Doc 88, at 21. Prior to that hearing, in February 2018, the Bureau had propounded request for production #34, in support of its steering claim, seeking certain data relating to borrowers in income-driven repayment (IDR) plans and forbearance from January 1, 2009 through the date of trial. *See* Bureau's Second Set of Requests for Production (Exhibit A), at 11-12. After the May 4, 2018 Opinion and Order, however, the Bureau narrowed RFP #34 to be compliant with the Court-ordered "relevant time period for this litigation." Other aspects of discovery were similarly narrowed to be compliant with the Court-ordered relevant time period for this litigation.

At the December 20, 2019 hearing before the Special Master, Navient indicated that it intends to selectively introduce borrower data post-dating January 18, 2017, where Navient believes that data will be helpful in attacking the Bureau's steering claim, while omitting and refusing to produce the full universe of the data, which the Bureau anticipates will amplify and enhance its steering claim. Navient should not be allowed to introduce cherry-picked evidence post-dating the relevant

time period for this litigation. If Navient wanted to introduce evidence outside the relevant time period for this litigation, it should have moved for reconsideration of the Court's May 4, 2018 Opinion and Order. It did not do so. It cannot now do an end-run around its failure to seek reconsideration by declaring, after fact discovery is over, that it intends to act in contravention of that Opinion and Order.

Navient appears to take the view that any question it wants to ask at trial is fair game, and that it can introduce evidence that was not within the scope of allowable discovery, regardless of the Court's rulings: "I really actually don't understand the rule where the Consumer Financial Protection Bureau would offer up a witness at trial and then purport to limit the testimony that that witness could give on cross-examination." 12/20/19 Hearing Tr. at 51. Contrary to Navient's statement, however, that is exactly how trials function – they are constrained by rulings that occurred earlier in the case regarding relevance. Navient does not get to ignore prior Court rulings, unilaterally decide that it will ask whatever it wants to ask, and selectively introduce documents from a universe of evidence that was not fair game during discovery and to which only Navient has access.

Accordingly, the Bureau respectfully moves *in limine* for an order holding the parties to the relevant time period for this litigation set forth in the Court's May 4, 2018 Opinion and Order, and precluding the use of any evidence concerning events outside that period. If this motion is denied, then the Bureau seeks

production of only one category of documents post-dating January 18, 2017: the

data that would be responsive to RFP #34. This is a limited request: while the

Bureau narrowed its written discovery requests to be compliant with the May 4,

2018 Opinion and Order, the Bureau seeks only production of this single category

of information to address, in part, the problem caused by Navient's belated attempt

to expand the relevant time period.

## **FACTS AND PROCEDURAL HISTORY**

**I.     On May 4, 2018, the Court issued an Opinion and Order establishing
the "relevant time period for this litigation."**

The first two counts of the Bureau's complaint allege that Navient violated

the Consumer Financial Protection Act's prohibitions against abusive acts and

practices, 12 U.S.C. §§ 5531(d)(2)(C), 5536(a)(1)(B), and unfair acts and practices,

12 U.S.C. §§ 5531(c), 5536(a)(1)(B), when Navient steered federal loan borrowers

experiencing financial hardship that was not short-term or temporary into

forbearance, before or instead of advising them about IDR plans. IDR plans are a

repayment option that allow borrowers to pay an amount that is based on their

current income and household size, thereby accounting for the fact that borrowers'

incomes may fluctuate over time. Those plans have numerous benefits to

borrowers, such as avoidance of interest capitalization, interest subsidies, and

potential loan cancellation. In contrast to IDR, forbearance is not a repayment plan,

but is instead a postponement tool that allows a borrower to avoid making payments temporarily.

On February 28, 2018, in support of the Bureau's steering claim, the Bureau propounded RFP #34, which sought data "[f]or every borrower who, during the applicable time period, enrolled in forbearance or any income-driven repayment plan for any of the borrower's federal loans." Bureau's Second Set of Requests for Production (Exhibit A), at 11-12. In addition, the Bureau indicated that the time period for this request was "January 1, 2009 to the present," and that the obligation to produce data was "continuing in nature, up to and during the course of the trial." *Id.* at 2, 7. Subsequently, following a hearing before the Court to address various discovery issues, the Court issued an Opinion, on May 4, 2018, stating in part:

> Upon review of the Complaint, the materials submitted, and the parties' arguments, the Court has determined that the relevant time period for this litigation is the effective date of Defendants' contracts with the Department of Education, June 17, 2009, through the date that this lawsuit was filed, January 18, 2017.

Doc. 88, at 21. The accompanying Order stated in part as follows:

> With respect to Plaintiff's request for Defendants to search records beyond the time periods they have already searched, (Doc. 74 at 5-7), Defendants' objection is OVERRULED IN PART and as follows: The relevant time period for discovery in this litigation is June 17, 2009, through January 18, 2017. With respect to the requests for production of documents that have already been served and absent an agreement between the parties to the contrary, either side may request documents from the other within this time frame.

4

Doc. 89, at ¶ 6. Thus, the Court defined the "relevant time period for this litigation" to begin on June 17, 2009, and to end on January 18, 2017.

In accordance with the Court's May 4, 2018 Opinion and Order, the parties subsequently agreed that only data from the relevant time period for this litigation would be produced in response to RFP #34.

The parties also acted consistent with the Court's order regarding the relevant time period in other ways. For example, during the Bureau's re-direct of a consumer witness during a July 2019 deposition, Navient insisted that the Bureau withdraw questions about events post-dating the relevant time period for this litigation, and the Bureau heeded that request:

> MR. LYONS [Navient lawyer]: We have a standing objection to any questions coming outside of the relevant discovery period[] . . . .
>
> MR. ARREAZA [Bureau lawyer]: . . . I will withdraw the question. . . .
>
> MR. LYONS: . . . Are you withdrawing every question you have asked related to any questions outside the relevant discovery period? . . . I think you may have prior to the immediate question, I think you may have asked a question that came outside for, activity that came outside the discovery period.
>
> MR. ARREAZA: We will go ahead and withdraw anything that's outside of the discovery period, any question that I have with respect to the post-January 2017 period.
>
> MR. LYONS: Okay.
>
> MR. ARREAZA: All right?
>
> MR. LYONS: Okay.

July 12, 2019 consumer deposition, at pages 131-133 (Exhibit B).[1]

## II. In a December 20, 2019 hearing, Navient indicated that it would seek to selectively introduce borrower data outside the relevant time period for this litigation.

Following Navient's production of its expert reports, the Bureau became

concerned that Navient might be intending to rely upon data post-dating the

relevant time period for the litigation. Specifically, Dr. Xiaoling Lim Ang, who is

Navient's expert rebutting the Bureau's econometrics and statistics expert who has

estimated the injury to certain borrowers who enrolled in forbearance rather than

IDR (Dr. Charles Mullin), wrote about events that occurred after January 18, 2017.

Rebuttal Expert Report of Dr. Xiaoling Lim Ang (Exhibit C), at ¶¶ 31, 92. When

the Bureau objected to those portions of Dr. Ang's report, Navient refused to have

Dr. Ang amend or remove those portions of her report. *See* Doc. 390.

---

[1] Exhibits B, C, and D to this brief are being transmitted to the Court clerk for filing under seal.

In limited instances, particularly at depositions, some evidence was produced that went beyond the relevant time period, but that is of no consequence to the relief requested in this motion. For example, a witness could be asked questions at a deposition about a current practice as a way of trying to get that witness to recall what happened during the relevant time period. To the extent there were such limited exceptions, documentary evidence and testimony outside of the relevant time period that was obtained in discovery should not be admissible at trial, in accordance with the May 4, 2018 Opinion and Order. And the fact remains that, as a general matter, discovery—and in particular, document discovery—was limited to events within the "relevant time period."

More important than the specific portions of Dr. Ang's report was Navient's unambiguous announcement of its intention at trial to flout the Court-ordered relevant time period for this litigation. Specifically, at the December 20, 2019 hearing before the Special Master, Navient indicated that it now takes the position that evidence post-dating the relevant time period is relevant for all borrowers covered by RFP #34. In addressing a question from the Special Master about borrower data post-dating the relevant period, Navient's counsel stated,

> Because the same issues that we are talking about [about how borrowers fare in forbearance and IDR], . . . will persist. There will be things relevant to borrowers, individual witnesses at trial, et cetera, that will be relevant to litigation. Mr. Jabbour [Bureau counsel] wants to provide a rule that none of those things can ever be considered in connection with this case and, obviously, we think that's the wrong way to go.

12/20/19 Hearing Tr. at 43.

Navient's counsel also stated, "So nearly all the borrowers encompassed in the claims, potentially, have years and maybe even decades to go before their loans are repaid and there are lots of things that can happen in the interim that affect the long-term costs and benefits of IDR. They can get married, their families can grow, their incomes can change. And all of those things . . . can affect whether IDR ends up being good or bad for borrowers." *Id.* at 36-37. So, in effect, Navient's view is that all borrower data post-dating January 18, 2017, and continuing through trial, is relevant.

Consistent with its view that all data post-dating January 18, 2017 is

relevant, Navient indicated an intention to contravene the Court's May 4, 2018

Order by asking questions at trial about events that are not within the relevant time

period. Specifically, Navient's counsel stated with respect to one borrower that

"[i]f she is going to show up at trial, we feel that it is appropriate for us to continue

to ask her all sorts of questions about her history as a student loan borrower," and

made clear that those questions would include events post-dating January 18, 2017.

*See* 12/20/19 Hearing Tr. at 48. Navient also claimed that it did not understand a

rule where it would be constrained, by the relevance standard, as to what it could

ask a witness on cross-examination. *See id.* at 51 ("I really actually don't

understand the rule where the Consumer Financial Protection Bureau would offer

up a witness at trial and then purport to limit the testimony that that witness could

give on cross-examination.").

Navient also made clear that it will make selective use certain post-January

18, 2017 data to attempt to attack the opinions offered by at least one of the

Bureau's experts. Specifically, the report of Dr. Mullin calculates the harm to

certain borrowers who enrolled in forbearance, but discounts this harm for

borrowers who eventually enrolled in IDR during the relevant time period and

failed to recertify their enrollment at some point. *See* Amended Expert Report of

Charles H. Mullin (Exhibit D), at ¶¶ 55 n.32, 109. But Dr. Mullin had no way of

8

predicting which specific borrowers might fail to recertify their enrollment in IDR

after January 18, 2017 because that data was not produced.

Navient, however, has indicated that it will cherry-pick examples from data

post-dating January 18, 2017 relating to borrowers who did not recertify their

enrollment in IDR as a way of apparently trying to mount a spurious critique of Dr.

Mullin – arguing essentially that he did not take account of data that Navient has

failed to produce that would show specifically which borrowers did not recertify

their IDR enrollment after January 18, 2017. *See* 12/20/19 Hearing Tr. at 34-35;

Rebuttal Expert Report of Dr. Xiaoling Lim Ang (Exhibit C), at ¶ 31.

This critique is deeply problematic because Navient is using the failure to

produce data post-dating January 18, 2017 strategically to imply that Dr. Mullin

has over-estimated borrower harm – when in fact, production of the full post-

January 18, 2017 data would almost certainly show that the *aggregate* harm has

increased across the borrower universe. The *aggregate* harm would increase

because Dr. Mullin stopped his calculations as of January 18, 2017, and most

borrowers whom he found to be in the population of affected borrowers would

likely see their calculated harm increase with the passage of time, rather than

decrease, if all of the post-January 18, 2017 data had been produced and

considered in Dr. Mullin's analysis. Thus, Navient's critique of Dr. Mullin seeks to

exploit the non-production of data outside the relevant time period in a highly

misleading way. Using selective data points, Navient wants to argue that Dr. Mullin over-estimated harm, whereas full production of the data that Navient intends to rely upon would show the opposite.

In summary, the state of play is as follows: (1) Navient admitted that it believes data from after January 18, 2017 is relevant; (2) Navient admitted that it intends to ask witnesses about that data; (3) Navient admitted that it intends to mount spurious and misleading critiques of the opinions offered by the Bureau's expert based on selective use of that data; and (4) that data was not produced to the Bureau. Nonetheless, in light of the Court's May 4, 2018 Opinion and Order, the Special Master denied the Bureau's request to order production of the data post-dating January 18, 2017.

Thus, the Bureau has now been placed in the position where Navient has signaled its intention to use data post-dating January 2017 without the Bureau having access to that data. Accordingly, the Bureau brings this motion to request that the Court enter an order *in limine* holding the parties to the relevant time period for the litigation. But in the event that the Court decides to expand the relevant time period for the litigation, the appropriate course of action is to order production of data post-dating January 18, 2017 that is responsive to RFP #34, as the Bureau originally requested when it propounded the RFP in February 2018.

## STATEMENT OF QUESTION INVOLVED

1.      Should the parties be prohibited from using – in summary judgment briefing, at trial, and otherwise in this litigation – evidence concerning events outside the "relevant time period for this litigation" established in the Court's May 4, 2018 Opinion and Order?

**Suggested answer**: Yes. The parties should not be allowed to use evidence concerning events that the Court has already determined are not relevant.

2.      If the Court decides to expand the relevant time period for the litigation, or to otherwise allow Navient to introduce evidence concerning events outside the relevant time period, is it appropriate to order production of data responsive to RFP #34 that post-dates January 18, 2017?

**Suggested answer**: Yes. If the relevant time period is expanded, or if Navient is otherwise allowed to selectively use evidence concerning events outside the relevant time period, to which the Bureau does not have access, Navient should be ordered to produce the full data set responsive to RFP #34.

## ARGUMENT

**I.      If Navient wants to rely on documents and data outside the relevant time period for this litigation, it should have timely moved for reconsideration of the May 4, 2018 Opinion and Order.**

The Court's May 4, 2018 Opinion and Order are unambiguous as to the time boundaries for this litigation. Navient never moved for reconsideration of that

11

Opinion and Order, and the time for doing so has long expired. *See* Local Rule 7.10 ("Any motion for reconsideration or reargument must be accompanied by a supporting brief and filed within fourteen (14) days after the entry of the order concerned."). It is procedurally improper, however, for Navient to now indicate that it intends to selectively introduce certain evidence outside the relevant time period for the litigation. By pressing this position, Navient is effectively requesting that the Court set aside its definition of the "relevant time period for this litigation." The proper vehicle for such a request was a motion for reconsideration.

With Navient having failed to timely move for reconsideration, the "relevant time period for this litigation" is the law of the case, and all parties must abide by it. Under the law of the case doctrine, absent extraordinary circumstances not present here, once an issue has been decided, parties may not relitigate that issue in the same case. *See, e.g.*, *Waldorf v. Shuta*, 142 F.3d 601, 616, n.4 (3d Cir. 1998). The policy supporting the law of the case is critical. To avoid unnecessary delays and costs, each stage of litigation builds on earlier stages, and the law of the case doctrine limits re-litigation of an issue once it has been decided in an earlier stage of the same litigation. *See, e.g.*, *In re Continental Airlines, Inc.*, 279 F.3d 226, 232-33 (3d Cir. 2002). Rather, once a court has decided an issue, the parties need to take the court's ruling into account and adjust their litigation strategies accordingly.

Indeed, it would make no sense for a court to opine that something is not relevant for purposes of discovery, and then to allow a party to introduce that irrelevant evidence at trial. When a court defines what is relevant in discovery, that ruling necessarily needs to carry forward throughout the case. Otherwise, a party could get a ruling that prevents access to a trove of information on the grounds that the information is irrelevant, then later, after the discovery period has closed, strategically disregard that ruling. This would put the opposing party at a severe disadvantage, as the party possessing the trove of information would be able to selectively use that information at trial without allowing the opposing party to vet the information. For example, if unproduced data contains one million data points, and 10% of them are favorable to the defendant, the defendant should not be able to selectively use those 10% of data points and act as though they are representative of all of the unproduced data. That is precisely what is occurring here.

In short, the law of the case doctrine bars Navient's attempt to set aside the Court's earlier decision establishing the relevant time period for this litigation. The Court should hold the parties to the relevant time period, by precluding the use of evidence concerning events occurring outside that time period.

II.     **If the Court expands the relevant time period for this litigation, Navient should be required to produce the data post-dating January 18, 2017 to avoid prejudice to the Bureau.**

If the Court denies the Bureau's motion *in limine* to preclude the use of evidence concerning events outside the relevant time period established in its May 4, 2018 Opinion and Order, then Navient should be ordered to produce all borrower data responsive to RFP #34 for the time period post-dating January 18, 2017.[2] For the reasons discussed above, allowing Navient to cherry-pick data points from outside the relevant time period and elicit testimony about those isolated and selective data points, while depriving the Bureau of access to the universe of data necessary to effectively respond to that evidence, would be severely prejudicial to the Bureau. As previously described, among other things, this would allow Navient to argue that Dr. Mullins's estimate of injury was inflated when in fact, production of the full data set would actually increase the estimated harm.  Thus, such a result would not only be unfair to the Bureau, but also misleading to the factfinder.

---

[2] Because the Special Master entered an Order denying production of this data (*see* Doc. 386, at ¶ 3), this request seeks modification of the Special Master's Order pursuant to Federal Rule of Civil Procedure 53(f)(2). All aspects of the Special Master's Order denying this discovery are reviewed under a *de novo* standard. *See* Fed. R. Civ. P. 53(f)(3), (4).

14

To even the playing field, either both sides should be able to use the post-January 18, 2017 data, or neither side should. *See, e.g.*, *Costantino v. City of Atl. City*, 152 F. Supp. 3d 311, 335 (D.N.J. 2015) ("Atlantic City cannot 'have it both ways.' On the one hand, Atlantic City refuses to produce more IA [Internal Affairs] files but on the other hand it wants to argue plaintiff did not review enough IA files to meaningfully evaluate its IA process. . . . Atlantic City must live with the consequences of its strategy. Given its insistence that it wants to argue plaintiff did not review enough IA files, all IA files must be produced."); *Valdez v. Travelers Indem. Co. of Connecticut*, 2013 WL 3989583, at *1, 9 (N.D. Cal. Aug. 2, 2013) (holding that because "Plaintiffs have put their financial condition at issue in this litigation," they could not object to the production of their financial information); *Hypolite v. Zamora*, 2016 WL 5156787, at *3 (E.D. Cal. Sept. 20, 2016) ("Plaintiff has placed his mental condition at issue and thereby waived his privacy rights with respect to his mental health records.").

In addition to the principle that documents on a subject matter must be produced where a litigant places that subject matter at issue, the fact that Navient has indicated that it will selectively make affirmative use of certain data post-dating January 18, 2017 further warrants in favor of production of that data. Indeed, courts consistently reject the notion that a litigant can selectively produce or use a limited set of documents or data to its advantage, while concealing the

15

complete set from the opposing party. *See, e.g.*, *R.D. v. Shohola Camp Ground & Resort*, 2017 WL 1178050, at *4 (M.D. Pa. Mar. 30, 2017) (holding that party could not use certain information to advance its case, while withholding documents on the "same specific subject matter which ought in fairness to be disclosed"); *Doe v. Luzerne County, Pennsylvania*, 2008 WL 11492970, at *6 (M.D. Pa. Aug. 12, 2008) ("[I]t would be fundamentally unfair to allow a party to disclose opinions which support its position and simultaneously conceal those that are unfavorable or adverse to its position.") (quotation omitted); *Music Grp. Macao Commercial Offshore Ltd. v. Foote*, 2015 WL 3882448, at *7 (N.D. Cal. June 23, 2015) ("Plaintiff cannot have it both ways, declining to produce the personnel records for Defendant's review but choosing to describe their contents to their advantage."); *Daee v. JP Morgan Chase Bank*, 2015 WL 2078699, at *11 (M.D. Tenn. May 4, 2015) ("Chase seems to believe that . . . it can selectively produce records that favor its position (whatever that position may be at a certain point in time), and that it can prevent reasonable inquiry into the veracity of its (shifting) representations and the import of underlying records. The court's orders and the federal rules trump Chase's discovery preferences."); *Snapp v. United Transp. Union*, 2014 WL 5365552, at *2 (W.D. Wash. Oct. 21, 2014) ("This Court will not permit any litigant to selectively produce a portion of his medical records and to rely upon them to obtain a judgment, while simultaneously refusing to disclose (or

to otherwise obstruct the production of) all of his discoverable medical records.");
*Walker v. Nw. Airlines Corp.*, 2002 WL 32539635, at *4 (D. Minn. Oct. 28, 2002)
("[T]he Court is unwilling to allow Plaintiff to have it both ways. Plaintiff may not
remain free to use expert testimony in the course of proving his emotional damages
while at the same time refuse to produce his medical records which may effectively
undermine such testimony.").

For the reasons above, if the Court denies the Bureau's motion *in limine* to
preclude the use of evidence outside the relevant time period for this litigation, the
Bureau respectfully requests entry of an order requiring production, as soon as
practicable, of borrower data responsive to RFP #34 from January 18, 2017 to the
present, and requiring a further supplemental production again within two weeks of
the first day of trial.[3]

## CONCLUSION

For the foregoing reasons, the Bureau respectfully requests that the Court
enter the attached proposed order precluding evidence concerning events outside
the relevant time period for this litigation, as established in the Court's May 4,

---

[3] In the event that the Court orders production of the data responsive to RFP
#34 that is outside the relevant time period, Dr. Charles Mullin will supplement or
amend his report to take into account the newly produced data, as authorized by
Federal Rule of Civil Procedure 26(e)(2).

2018 Opinion and Order. In the alternative, the Bureau respectfully requests that

the Court enter an order requiring Navient produce the borrower data post-dating

January 18, 2017 that is responsive to the Bureau's request for production #34,

both now and again within two weeks of the first day of trial.

Dated: January 10, 2020          Respectfully submitted,

                                 Cara Petersen
                                 *Acting Enforcement Director*

                                 David Rubenstein
                                 *Deputy Enforcement Director*

                                 Thomas Kim
                                 *Assistant Deputy Enforcement Director*

                                 ___/s/ Nicholas Jabbour_____
                                 Nicholas Jabbour, DC 500626
                                 (Nicholas.Jabbour@cfpb.gov; 202-435-7508)
                                 Ebony Sunala Johnson, VA 76890
                                 (Ebony.Johnson@cfpb.gov; 202-435-7245)
                                 Nicholas Lee, DC 1004186
                                 (Nicholas.Lee@cfpb.gov; 202-435-7059)
                                 Manuel Arreaza, DC 1015283
                                 (Manuel.Arreaza@cfpb.gov; 202-435-7850)
                                 Andrea Matthews, MA 694538
                                 (Andrea.Matthews@cfpb.gov; 202-435-7591)
                                 Jonathan Reischl, IL 6305260
                                 (Jonathan.Reischl@cfpb.gov; 202-435-9202)
                                 *Enforcement Attorneys*

                                 1700 G Street NW
                                 Washington, DC 20552
                                 Fax: 202-435-9346

                                 *Attorneys for Plaintiff*

## <u>CERTIFICATE OF WORD COUNT</u>

Pursuant to Local Rule 7.8(b)(2), I hereby certify that the foregoing brief

contains 4080 words.

   /s/ Nicholas Jabbour         

Nicholas Jabbour, DC 500626

Nicholas.Jabbour@cfpb.gov

1700 G Street NW

Washington, DC 20552

Phone: 202-435-7508

Fax: 202-435-9346

*Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

I certify that on January 10, 2020, I filed the foregoing document, as well as

Exhibit A, with the Court's ECF system, which will send notification of such filing

to counsel for Defendants. I also certify that, on January 10, 2020, I emailed

Exhibits B, C, and D to counsel for Defendants, in addition to placing a copy in the

mail to the Court clerk.

   /s/ Nicholas Jabbour      
Nicholas Jabbour, DC 500626
Nicholas.Jabbour@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-7508
Fax: 202-435-9346

*Attorney for Plaintiff*