**WILMERHALE**

January 13, 2020

**Daniel P. Kearney**

**VIA ECF AND E-MAIL**

+1 202 663 6285 (t)
+1 202 663 6363 (f)
daniel.kearney@wilmerhale.com

Hon. Thomas I. Vanaskie
Stevens & Lee
425 Spruce Street, Suite 300
Scranton, Pennsylvania 18503

Re:   *CFPB v. Navient Corp., et al.*, Case No. 3:17-cv-00101-RDM (M.D. Pa.)

Dear Judge Vanaskie:

Pursuant to Special Master Order #61, I write in response to the CFPB's December 27, 2019 letter. Doc. 387. In its letter, the CFPB requests an extraordinary and drastic outcome: the disqualification of Defendants' expert Dr. Xiaoling Lim Ang due to an asserted conflict of interest based on her sporadic interactions with enforcement attorneys fifteen months or more before this case was filed. And it makes this request on the basis of secret documents, submitted only *in camera*. But even the CFPB's characterization of those documents falls far short of showing that Dr. Ang received specific confidential information substantially related to the issues in this case. Instead, the CFPB seeks to apply a theory of *per se* disqualification that finds no support in the case law and is directly contrary to the rules that apply to the post-service activities of former government employees.[1]

**I.   Procedural Issues**

Expert disqualification "is a drastic measure." *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004). Defendants retained Dr. Ang on the understanding that there was no conflict, and they would be severely prejudiced by her disqualification. And, the unprecedented scope of the disqualification rule proffered by the CFPB, as well as the personal attacks that have been lodged against Dr. Ang, could have profound effects on Dr. Ang's consulting practice beyond this matter. Given what is at stake, Defendants and Dr. Ang are entitled to a process that ensures the serious issues that have been raised are fairly and properly considered.

*First*, as a preliminary matter, while Defendants are prepared to have the Special Master decide this issue in the first instance, there is an open question whether the CFPB's disqualification request falls within the scope of matters referred by Judge Mariani. When Defendants previously sought to exclude testimony from the CFPB's expert, the CFPB objected that the issue was not a "discovery matter[]," and therefore "not properly before the Special

---

[1] This letter is 7 pages in length, which exceeds the applicable five-page limit. Defendants respectfully request leave to exceed that limit in light of the seriousness of the assertions made by the CFPB.

**WILMERHALE**

Judge Thomas Vanaskie
January 13, 2020
Page 2

Master." Sept. 16, 2019 Hr'g Tr. 16:5-9.  The reason for the CFPB's abrupt reversal is unclear and requires explanation.  Defendants want to ensure that expert testimony issues raised by both sides are resolved in a consistent manner.

*Second*, Defendants, or at a minimum Dr. Ang, should be permitted to review the documents upon which the CFPB relies.  Defendants are currently in the position of disputing the CFPB's characterizations without access to the communications themselves.  The CFPB's characterizations are inconsistent with Dr. Ang's recollections.  Contrary to the CFPB's depiction of Dr. Ang as a *de facto* expert on the matter, Dr. Ang does not recall "ever being aware of any CFPB investigation or enforcement proceeding against Navient." Ex. A ¶ 3.  Dr. Ang worked on self-directed research related to the CFPB's regulatory functions, *id.* ¶¶ 8, 12-13; she also participated in "cross-bureau policy working groups comprised of representatives from various CFPB divisions," including enforcement, *id.* ¶ 14; and she had occasional interactions with enforcement attorneys on general policy and research matters and technical questions pertaining to the general storage, retrieval, and processing of student loan servicing data, *id.* ¶¶ 4, 10-11, 15.  The CFPB points to a handful of documents to assert that "Dr. Ang worked directly on the Navient investigation."  Doc. 387, at 1, *see also id.* at 2-3 (listing and briefly characterizing documents).  Without seeing the documents, Defendants are at a disadvantage in rebutting the CFPB's claims.[2]  At the very least, Dr. Ang, as a party to the communications, should be permitted to review the documents to refresh her recollection and, where appropriate, dispute the CFPB's representations.

The CFPB's cited cases for its proposed *in camera* review are inapposite.  Each concerns the review of documents in support of motions to disqualify *attorneys*, not experts, who previously represented adverse parties.  *See O'Donnell v. Robert Half Int'l, Inc.*, 641 F. Supp. 2d 84, 85 (D. Mass. 2009); *Islander East Rental Program v. Ferguson*, 917 F. Supp. 504, 506 (S.D. Tex. 1996) (affidavit identified "specific confidences" provided to former attorney); *Decora Inc. v. DW Wallcovering, Inc.*, 899 F. Supp. 132, 134 (S.D.N.Y. 1995) (*in camera* hearing to identify "actual confidences" communicated to former attorney); *Rogers v. Pittston Co.*, 800 F. Supp. 350, 351 (W.D. Va. 1992) (attorney received "actual confidences" in document submitted *in camera*).  Because "experts and attorneys assume different roles in litigation," the standards applicable to motions to disqualify attorneys do not apply with respect to experts.  *United States ex rel. Cherry Hill Convalescent Ctr. v. Healthcare Rehab Sys.*, 994 F. Supp. 244, 249 (D.N.J. 1997); *Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080, 1083 (C.D. Cal. 2001) ("Unlike attorney-client communications, discussions between parties or counsel and experts do not carry the presumption that confidential information was exchanged.").  Moreover, the CFPB has made no effort to identify, as to each document, the basis for its privilege assertion (*e.g.*, deliberative

---

[2] Defendants note that some of the documents submitted *in camera* appear to be final documents.  Doc. 387, at 3.  It is unclear why Defendants are not permitted to review documents they previously received.

WILMERHALE

Judge Thomas Vanaskie
January 13, 2020
Page 3

process or some other basis) or to explain why redaction would be insufficient to protect any privileged information.

*Third*, given the extraordinary nature of the CFPB's request, an in-person hearing is warranted before any decision to grant disqualification. Disqualifying an expert witness due to an alleged conflict of interest is a rare and severe measure. *See Hewlett-Packard Co.*, 330 F. Supp. 2d at 1092 ("[D]isqualification is a drastic measure that courts should impose only hesitantly, reluctantly, and rarely."); *Grant Thornton, LLP v. FDIC*, 297 F. Supp. 2d 880, 882 (S.D. W.Va. 2004) (similar). The burden to disqualify is high, and disqualification due to an alleged conflict of interest is a highly fact-intensive inquiry, requiring careful consideration of all relevant evidence. *See, e.g.*, *Paul ex rel. Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 273-76, 282 (S.D. Ohio 1988) (denying motion to disqualify expert based on detailed findings of fact following hearing). An in-person hearing would allow for the presence of Dr. Ang, and would permit the Court to pose questions to Dr. Ang directly.

## II. There is no basis to disqualify Dr. Ang

To the extent the Court considers the merits at this time, the CFPB falls well short of showing that the weighty consequence of disqualification is appropriate. As an initial matter, there is nothing in Dr. Ang's report itself that the CFPB claims to have been confidential. The CFPB's challenge is that Dr. Ang was somehow tainted by interactions with enforcement lawyers that took place fifteen months or more before this lawsuit was even filed. As Dr. Ang's detailed declaration demonstrates, the CFPB's allegations are inconsistent with Dr. Ang's role at the CFPB and the nature of her interactions with enforcement attorneys. Dr. Ang's declaration contains critical factual information that is only summarized briefly in this letter. Particularly in light of Dr. Ang's detailed account of her time at the CFPB—and the CFPB's failure to identify *any* specific confidential information Dr. Ang obtained that was substantially related to the issues in this case—the CFPB's conclusory assertion that Dr. Ang's occasional communications with enforcement attorneys must have "exposed [her] to the[ir] mental strategies and impressions," Doc. 387, at 3, cannot support disqualification.

### A. The two-part test applies, and does not support disqualification

Where a party seeks to disqualify an adversary's expert witness due to the party's prior employment of the expert, the fact-intensive two-part conflict-of-interest test applies. *See In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2010 WL 1416548, at *3 (M.D. Ga. Apr. 1 2010) (applying two-part test to request to disqualify former employee); *Eastman Kodak Co. v. Agfa-Gevaert N.V.*, 2003 WL 23101783, at *1 (W.D.N.Y. Dec. 4, 2003) (same); *Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, LLC*, 202 F.R.D. 426, 429 (E.D. Pa. 2001) (same). This test requires that the party seeking disqualification establish both that it had a confidential relationship with the expert and that it actually disclosed "confidential information

WilmerHale

Judge Thomas Vanaskie
January 13, 2020
Page 4

[to the expert] which was substantially related" to the current litigation.  *Greene, Tweed*, 202 F.R.D. at 432.

Even assuming that the CFPB had a confidential relationship with Dr. Ang during her employment, it has not demonstrated that it actually disclosed to her any relevant confidential or privileged information.  Disqualification is appropriate only if the expert was "privy to substantial confidential information from [the party seeking disqualification] that [is] relevant to the issues in the case."  *Id.* at 429 (quoting *Space Systems/Loral v. Martin Marietta Corp.*, 1995 WL 686369, at *2 (N.D. Cal. Nov. 15, 1995)).  "[G]eneral experience" relevant to the litigation is not enough.  *Viskase Corp. v. W.R. Grace & Co.-Conn.*, 1992 WL 13679, at *2 (N.D. Ill. Jan. 24, 1992).  Rather, the expert must have received confidential information that directly pertains to the current litigation, *see Cherry Hill Convalescent Ctr.*, 994 F. Supp. at 251, and "that has affected or will affect the expert's opinions."  *Grant Thornton, LLP*, 297 F. Supp. 2d at 883; *accord 3D Sys. v. Envisiontec, Inc.*, 2008 WL 4449595, at *5 (E.D. Mich. Oct. 1, 2008).

The CFPB does not identify any confidential information that the agency provided to Dr. Ang or that appears in Dr. Ang's report, and Dr. Ang does not recall ever reviewing Navient-specific data during her employment.  In fact, Dr. Ang does not recall, while she was employed with the Bureau, even being aware of a CFPB investigation of Navient. Ex. A ¶¶ 3, 34.  As a research economist and member of the CFPB's Research, Markets, and Regulations Division ("Research Division"), Dr. Ang worked on policy research. *Id.* ¶¶ 3, 8, 16. The Research Division is wholly separate from the CFPB's Enforcement Division and, throughout Dr. Ang's employment, was located in a separate building. *Id.* ¶ 17.  On occasion, Dr. Ang interacted with enforcement attorneys on policy issues or on technical questions related to "general industry data collection, structure, and processing." *Id.* ¶ 4; *see also id.* ¶ 10 ("I also served on occasion as an economic and policy resource . . . . The discussions and other communications that I had with enforcement attorneys generally related to data structures that could occur in the course of business for participants in a particular market (e.g., what data fields might be collected, how such data might be processed, stored, and retrieved, etc.).").  Any input she provided to enforcement attorneys was "provided independently of the facts, merits, or other circumstances of any individual firm."  *Id.* ¶ 11.  Indeed, Dr. Ang did not have access to the Enforcement Division's restricted and confidential files.  *Id.* ¶ 17.

Such technical and policy-level communications do not involve Dr. Ang's receipt of confidential information relevant to this case and cannot warrant disqualification.  *See Nikkal Indus., Ltd. v. Salton, Inc.*, 689 F. Supp. 187, 188, 191-92 (S.D.N.Y. 1988) ("technical information," such as "techniques for conducting a market survey" is not confidential); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 1995 WL 925673, at *6-7 (E.D. Pa. May 5, 1995) (historical knowledge of agency regulation not confidential).  And contemporaneous communications from the time of Dr. Ang's departure confirm that her work focused on "larger

participant rulemakings and Title XIV rulemakings" and "not directly on related enforcement o[r] supervision matters related to specific entities or persons." Ex. A-2, at 2.

Indeed, the CFPB's submissions appear, based on the descriptions provided in its letter, to reflect only the kind of technical involvement insufficient to justify disqualification. The CFPB's letter indicates that Dr. Ang communicated on technical matters of data collection, including how to obtain certain kinds of data. Doc. 387, at 2-3. That is not the kind of information that supports disqualification. *Koch Refining Co. v. Jennifer Boudreau M/V*, 85 F.3d 1178, 1182 (5th Cir. 1996). Rather, like advising on "how to perform market research" or "potential techniques for conducting a market survey," communicating on such technical matters does not bar a previous employee from subsequently serving as an adversary's expert. *Nikkal Indus., Ltd.*, 689 F. Supp. at 188, 191-92.

Moreover, the CFPB's production history belies its argument that Dr. Ang had substantial involvement in the Navient investigation. The CFPB did not previously produce or log the documents referenced in its December 27 letter despite its earlier representations that it "cast[] a wide net . . . to find responsive documents." Doc. 110, at 1. Indeed, the CFPB initially produced only two e-mails sent to Dr. Ang: one concerning a 2014 site visit conducted by the CFPB's Office of Markets, unrelated to the Enforcement Division's investigation, *see* Ex. A ¶ 38; and the second a summary of initial responses to the CFPB's student loan servicing request for information, again not related to the investigation. By Court order, the CFPB then produced approximately 20 more e-mails to or from Dr. Ang that included the term "Navient." Notably, the CFPB initially withheld these communications on relevance grounds. *See* Dec. 10, 2018 Hr'g Tr. 6:24-8:4. And while Dr. Ang appears on the CFPB's privilege logs, the category descriptions for those entries indicate that they relate to broad policy-making initiatives and not to the Navient investigation. That is consistent with Dr. Ang's recollection of the scope of her employment at the CFPB, and insufficient to justify disqualification. *See, e.g.*, *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 1995 WL 925673, at *2, *6-7 (communications concerning agency policies, processes, and regulation not confidential for purposes of expert disqualification).

### B. The "bright-line rule" does not apply

Unable to identify substantial and relevant confidential information that would disqualify Dr. Ang, the CFPB instead relies on a purported "bright-line rule" that would bar her participation. But there is no such "bright-line rule" applicable here, for several reasons.

*First*, to the extent courts have applied the rule, they have done so only where it is "*undisputed* that the consultant was previously *retained as an expert* by the adverse party in the same litigation *and* had *received confidential information*." *Rhodes v. E.I. Du Pont De Nemours & Co.*, 558 F. Supp. 2d 660, 664 (S.D. W.Va. 2008) (emphases added) (quoting *Wang Labs. Inc.*

*v. Toshiba Corp.*, 762 F. Supp. 1246, 1248 (E.D. Va. 1991)). But Dr. Ang was *not* retained by the CFPB as an expert in this litigation. She was previously employed by the CFPB as a research economist in an entirely separate division and had only incidental contact with enforcement attorneys on discrete, technical matters not specific to the Navient investigation. Ex. A ¶¶ 10-11, 15-17. As discussed above, Dr. Ang was not aware of any investigation of Navient while at the CFPB, and disputes that she received any Navient-specific data or information about any investigation into Navient. *Id.* ¶¶ 3, 11. By its own terms, the CFPB's "bright-line rule" does not apply.

*Second*, the bright-line test is of dubious application, and no court has ever relied on it as the sole basis to disqualify an expert. Courts have noted that the bright-line test "lack[s] . . . support," *Rhodes*, 558 F. Supp. 2d at 666, and refused to apply the rule in all but the most narrow circumstances, *see Howmedica Osteonics Corp. v. Zimmer*, 2007 WL 4440173, at *2 (D. N.J. Dec. 17, 2007). And even where the rule has been applied, courts always go on to hold that the same result follows under the two-part test. *See Rhodes*, 558 F. Supp. 2d at 666 (noting that courts relying on bright-line test do not rely on it alone); *see also Calendar Research LLC v. StubHub, Inc.*, 2017 WL 10378337, at *2 (C.D. Cal. Sept. 22, 2017) (applying both bright-line and two-part test to disqualify expert based on previous retention by party seeking disqualification); *Howmedica Osteonics Corp.*, 2007 WL 4440173, at *3-4 (finding disqualification appropriate under both bright-line and two-part test). Indeed, the "bright-line rule" seems to add nothing to the standard conflict-of-interest analysis.

*Third*, the CFPB's baseless charges of "side-switching" are inconsistent with the actual rules governing the post-service activities of former government employees. Former federal employees are barred from working on matters involving *specific parties* that they "participated personally and substantially" in during their employment. 18 U.S.C. § 207(a)(1).[3] "Participation in peripheral aspects of a matter or in aspects not *directly* involving the *substantive merits* of a matter . . . is *not* substantial." 5 C.F.R. § 2641.201(i)(3) (emphases added). As a CFPB research economist, Dr. Ang primarily "work[ed] on policy projects." Ex. A ¶ 15. As a technical and policy expert, she had occasional communications with CFPB enforcement attorneys "on agency policy and general industry data questions." *Id.* She "was never assigned to any enforcement matter and do[es] not recall ever being involved in the merits (or other particular facts or

---

[3] Even where this rule is implicated, federal law expressly provides for courts to permit, by order, former government employees to serve as expert witnesses in litigation. 18 U.S.C. § 207(j)(6); *see Northwest. Environmental Defense. Center v. United States Army Corps of Engineers*, 2019 WL 2372591, at *6 (D. Or. June 5, 2019) (noting that § 207 was enacted "to address corruption concerns about former government employees using knowledge of specific matters they obtained during their government service for the benefit of other parties involved in those same matters," and stating that "even if [the expert's] testimony fell within the scope of [§ 207]" the court would issue an order authorizing the testimony).

WILMERHALE

Judge Thomas Vanaskie
January 13, 2020
Page 7

circumstances) of any enforcement investigation." *Id.* In other words, she was not "personally and substantially involved" in the Navient enforcement matter. Further, when she departed the CFPB, Dr. Ang sought advice from Bureau ethics counsel about restrictions based on her activities as an employee, and was advised that nothing prevented her from working on "a specific enforcement or supervisory matter" after "leav[ing] the Bureau." Ex. A-2, at 1. Contrary to those ethics rules, the sweeping disqualification standard offered by the CFPB now would appear to broadly bar Dr. Ang (and presumably other research employees) from working on any matter involving CFPB student loan policy.

Nothing in the law requires that result. The purpose of the conflict-of-interest rule is to protect the "fairness and integrity of judicial proceedings." *Grant Thornton, LLP*, 297 F. Supp. 2d at 882. There is nothing unfair or untoward about Dr. Ang's participation as an expert in this case. Apart from the fact that, while at the CFPB, Dr. Ang received no confidential information relevant to the issues in the litigation, even a cursory review of Dr. Ang's report demonstrates that the report has nothing to do with any of the communications described by the CFPB. *See Fed. Trade Comm'n v. Innovative Designs, Inc.*, 2018 WL 1334830, at *8 (W.D. Pa. Mar. 15, 2018) (moving party "bears the 'burden of pointing to specific and unambiguous confidential disclosures'" and "the confidential communications or disclosures must *pertain to the present litigation*" (emphasis added)). Disqualification motions are rightly subject to a "high standard of proof"—not least because they are sometimes "brought for purely strategic reasons" and because disqualification can result in substantial prejudice to a defendant. *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 729 (E.D. Va. 1990). The CFPB's motion fails to meet that high standard.

\*   \*   \*

The CFPB has not met its burden for disqualification. To the extent the Court intends to further consider the issue, Defendants should be permitted to review the documents relied upon by the CFPB and to appear with Dr. Ang at an in-person hearing.

Sincerely,

/s/ Daniel P. Kearney