# WILMERHALE

January 23, 2020

**VIA ECF**

**Karin Dryhurst**

+1 202 663 6248 (t)
+1 202 663 6363 (f)
karin.dryhurst@wilmerhale.com

Judge Thomas I. Vanaskie
JAMS, Inc.
1717 Arch Street, Suite 3810
Philadelphia, Pennsylvania 19103

Re:  *CFPB v. Navient Corp., et al.*, Case No. 3:17-CV-00101-RDM

Dear Judge Vanaskie:

Pursuant to Special Master Order #63, I write in response to the CFPB's January 13, 2020 letter. Doc. 394. Federal Rule 26(b)(4)(C) and the work product doctrine protect the communications at issue.

Based only on TransUnion simulations and contrary to the factual evidence in the record, Dr. Turner "opined" that Navient reported the AL ("assigned to government") special comment code for TPD-discharged loans between June 2014 and December 2014. Doc. 385-1 (Expert Witness Report of Dr. Michael A. Turner) ¶¶ 41, 70. In rebuttal, Mr. Varghese reviewed previously produced documents demonstrating that Navient made programming and system changes to end reporting of the code for TPD-discharged loans in June 2014. Doc. 383-1 (Expert Witness Report of Beji Varghese) ¶¶ 104–05. As further confirmation that these systemic changes were implemented, Mr. Varghese reviewed credit reporting data for 25 accounts, which showed that none of the accounts had the code reported between June and September 2014. *Id.* ¶ 178. No simulation or data manipulation was performed to select the accounts and, indeed, any 25 of the accounts would confirm that the systemic change was executed and that Navient did not report the AL special comment code for TPD-discharged loans between June 2014 and December 2014. The very same information regarding the 25 accounts that Mr. Varghese reviewed has already been produced to the CFPB.

In its December 6, 2019 letter, the CFPB requested three categories of documents related to Mr. Varghese's review of the 25 accounts. As previously explained, Defendants do not possess any non-privileged documents in these three categories. More specifically:

a) There were no written communications between Mr. Varghese (or his assistants) and Navient;

b) Based on a reasonable search, there are no internal Navient documents relating to the selection of the 25 accounts other than the data that was produced to the CFPB on November 8, 2019; and

**WILMERHALE**

Judge Thomas I. Vanaskie
January 23, 2020
Page 2

      c) There are no communications with counsel that identify facts or data or identify assumptions that have not been disclosed to the CFPB.

The CFPB now also requests e-mail communications between Navient's counsel and its employees that are plainly protected. Fed. R. Civ. P. 26(b)(3).

In seeking these materials, the CFPB primarily relies on outdated cases permitting discovery of materials from a non-testifying expert that had been provided to the party's testifying expert. *See Johnson v. Gmeinder*, 191 F.R.D. 638, 641-42, 649-50 (D. Kan. 2000); *In re Interco, Inc.*, 146 B.R. 447, 450 (Bankr. E.D. MO. 1992). The CFPB oddly ignores the 2010 amendment of Federal Rule 26(b)(4) to "alter the outcome in cases that have relied on the [prior] formulation in requiring disclosure of all attorney-expert communications . . . . The amendments to Rule 26(b)(4) make this change explicit by providing work-product protection against discovery regarding . . . attorney-expert communications." Fed. R. Civ. P. 26 adv. comm. notes. In addition, Mr. Jones is a Navient employee, not a non-testifying expert, who merely provided factual records at the direction of counsel, which were then produced to the CFPB. There is no parallel to the custom simulation performed by TransUnion, for which there was no assertion of work-product protection.

Citing no authority, the CFPB claims that the transmission of materials from a party to counsel and then to an expert removes work product protection. Yet the CFPB fails to explain why this standard should not apply universally and therefore why the CFPB should not be required to produce all its communications transmitting materials to its experts.[1] For example, the CFPB provided its expert Dr. Oren Bar-Gill with a selection (but not all) of Navient's written disclosures. Neither the CFPB nor Dr. Bar-Gill explained how that selection was made, nor did the CFPB produce its communications transmitting those documents to Dr. Bar-Gill. The CFPB was not obligated to produce its communications transmitting materials to its own experts, and neither is Navient. The CFPB cannot have it both ways.

Nevertheless, with no basis whatsoever the CFPB claims that Navient is "disclosing selective accounts that have been cherry-picked," and that the "communications . . . might reveal, for example, what methods were used to select those accounts and whether the larger population of accounts has different characteristics." Doc. 394, at 2. The method for selecting the accounts has already been disclosed in Mr. Varghese's report. Doc. 383-1 ¶ 173 ("Navient provided a selection of 5 non-defaulted, TPD-discharged accounts for each month from May

---

[1] The CFPB asserts that it is seeking fact work product. But the CFPB cannot meet its burden to show "a substantial need and inability to obtain the equivalent without undue hardship." *Straus v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 237 (E.D.N.Y. 2007). As the declaration shows, the facts have already been produced to the CFPB. Doc. 390-1, ¶ 4.

**WILMERHALE**

Judge Thomas I. Vanaskie
January 23, 2020
Page 3

2014 – September 2014, for a total of 25 accounts").[2]  The CFPB is free to cross-examine Mr. Varghese regarding his reliance on data for 25 accounts selected by a Navient employee.  To be clear, the suggestion that these communications will show that Navient "cherry-picked" 25 favorable accounts is demonstrably false.

      In short, there are two sets of communications at issue, both of which are protected.  Federal Rule 26(b)(4) protects counsel's communications with Mr. Varghese, and the work product doctrine protects counsel's communications with Mr. Jones.  The CFPB's request should be denied.

Respectfully submitted,

/s/ Karin Dryhurst

---

[2] The CFPB also knows how the information was collected and provided.  Doc. 383-1, ¶ 175 ("Navient provided the borrower's Metro 2® fields furnished for the month the account was transferred to ED and source system screenshots effective the month of the transfer.").