

1700 G Street NW,
Washington, DC 20552
February 12, 2020

**Via ECF**

The Honorable Thomas I. Vanaskie, Special Master
Stevens & Lee
425 Spruce Street, Suite 300
Scranton, PA 18503



Re:  *CFPB v. Navient Corp., et al.*, Case No. 3:17-CV-00101-RDM

Dear Judge Vanaskie:

In accordance with Special Master Order #68 (Doc. 421), I am writing to respond to Navient's February 10, 2020 letter (Doc. 419). As an initial matter, it is useful to summarize where the parties' productions stand:

- The Bureau has submitted for *in camera* review various documents regarding the events from Dr. Ang's employment at the Bureau that the Bureau believes are relevant to its motion to disqualify Dr. Ang. The Bureau has produced redacted versions of those documents to Navient.

- Navient submitted for *in camera* review its communications with Dr. Ang through the date of her retention by WilmerHale. Navient has produced redacted versions of these documents to the Bureau, with the redactions encompassing all aspects of the documents except the portions that Navient deemed to be "information that relates to Dr. Ang's role at the CFPB." *See* Navient's 2/7/20 Letter.

- Dr. Ang has produced emails from her personal account mentioning "Navient" or "Sallie Mae" from the period from August 1, 2017 through February 6, 2018. *See* Navient's 2/7/20 Letter, Exhibit 6. For the period from November 10, 2015 to August 1, 2017, she has submitted emails mentioning "Navient" or "Sallie Mae" only for *in camera* review, subject to further discussion at the February 14 hearing concerning whether redacted versions should be produced to the Bureau. *See* Docs. 421, 424.

The issue that has now arisen is that Navient believes it is entitled to unredacted versions of the Bureau's documents. The Bureau believes that any discussion regarding potential production of the parties' privileged materials must be moored to the applicable legal standards. The Bureau believes that there are three legal standards in play:

**1.     The side-switching test**

As the Bureau indicated in its December 27, 2019 letter, a "bright-line rule" applies when an expert engages in "side-switching." *Rhodes v. E.I. Du Pont De Nemours & Co.*, 558 F.Supp.2d 660, 666 (S.D. W. Va. 2008). This rule is "simple": "It requires disqualification when an expert switches sides in the same dispute." *Calendar Research LLC v. StubHub, Inc.*, 2017 WL 10378337, at *2 (C.D. Cal. Sept. 22, 2017).

Under this test, there is no need for any privileged material to be unredacted because the mere fact *that* Dr. Ang worked on the Navient matter as a Bureau employee before she switched sides is all the Bureau needs to show. To the extent Your Honor seeks witness testimony to clarify her role while she was employed by the Bureau, the hearing need not go beyond the issue of

whether Dr. Ang worked on the Navient matter while she was employed by the Bureau.  The redacted portions of the Bureau's production are not necessary to resolve this issue.

    **2.**        **The two-part test as applied to a situation where the expert was exposed to attorney work product belonging to the party seeking disqualification**

The two-part conflict of interest test asks: (1) whether it was "objectively reasonable" for the moving party "to believe that a confidential relationship existed" with the individual now being proffered by the opposing party as an expert; and (2) whether any confidential or privileged information was disclosed by the moving party to the expert, "sufficiently related" to this litigation. *In re C.R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 2014 WL 6960396, at *7 (S.D.W. Va. Dec. 8, 2014). Navient has not disputed that the first prong of this test is satisfied. *See* Doc. 393, at 3-4.

Under the second prong of the test, information about litigation strategy and mental impressions from the moving party's attorneys is deemed to be sufficiently related to the litigation, regardless of the content of that information. *See, e.g., Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575, 581, 584 (D.N.J. 1994) (disqualifying expert who "learned [the moving party's] litigation strategy," despite expert's claim that he "did not and will not remember and ultimately use that information"); *Wang Labs., Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1249 (E.D. Va. 1991) (disqualifying expert to whom moving party had made disclosures of work product, and noting that "[w]hile the value of the disclosures is debatable, their essential work-product nature is not"); *In re C.R. Bard, Inc.*, 2014 WL 6960396, at *12 ("Bard's counsel plainly shared mental impressions and litigation strategy that can readily be identified as attorney work product, falling within the definition of confidential information for the purposes of the answering the second question of the two-part test.").

As is the case with the first test above, there is no need under this test for any privileged material to be unredacted. The fact that Dr. Ang was exposed to the mental impressions and legal strategies of the Bureau attorneys running the Navient investigation that directly led to this action is capable of being tested by the unredacted portions of the Bureau's production. As shown in the cases cited above, once it is established *that* the expert was exposed to the attorney work product of the party seeking disqualification, the substantive details of the communications transmitting that work product to the expert are not relevant. Thus, to determine the outcome of this test, the hearing need not go beyond whether Dr. Ang received attorney work product from the Bureau attorneys working on the Navient matter while she was employed by the Bureau. The redacted portions of the Bureau's production are not necessary to resolve that question.

    **3.**        **The two-part test as applied to a situation where the expert received confidential information other than opinion work product from the party seeking disqualification**

Based on Navient's February 10, 2020 letter, it appears that Navient intends to contest whether the work that Dr. Ang has done for Navient is "sufficiently related" to the confidential information to which she was privy at the Bureau, and that it believes the redacted portions of the Bureau's documents are essential to resolving this issue. In the event that Your Honor believes that it is appropriate to examine the *content* of the discussions and work in which Dr. Ang participated for both the Bureau and Navient in order to make a determination about whether her work for the Bureau is "sufficiently related" to her work for Navient, the Bureau believes it is important to ensure that Navient's production is sufficient to fairly conduct this inquiry.

Under the two-part conflict of interest test, where the issue is the content of the expert's work for each of the opposing parties, the inquiry is focused on the nature of the confidential information received from the moving party and how that expert has made, or might be able to make, use of that confidential information in working for the opposing party. *See, e.g.*, *Marvin Lumber & Cedar Co. v. Norton Co.*, 113 F.R.D. 588, 591-92 (D. Minn. 1986) (analyzing relationship between expert's knowledge from prior work and the issues in the litigation). Under this test, the Bureau has produced evidence showing that, in addition to receiving the opinion work product of the Bureau's attorneys involved in the Navient matter, Dr. Ang also received other confidential information not specifically directed toward the Navient matter while she was employed by the Bureau. The Bureau's evidence amply establishes that Dr. Ang's work for the Bureau is "sufficiently related" to her work for Navient, particularly in light of the fact that Dr. Ang worked on this exact matter while at the Bureau, and also worked on projects that Navient has indicated are central to its defenses in this litigation. And as the Bureau has noted, the notion that Dr. Ang can segregate her past work for the Bureau from her current work for Navient "is unworkable if not quixotic," and it is impossible to discern all of the various ways that her past work for the Bureau might have influenced, or might continue to influence, her current work for Navient. *See* Bureau's 12/27/19 Letter at 5-6 (quotation omitted).

Nonetheless, if Navient wants to argue that Dr. Ang's work for Navient is not "sufficiently related" to her work at the Bureau, there is no way (based on Navient's current production) to fully vet the extent to which her work at the Bureau has infiltrated her work for Navient. For example, one area of concern is that Navient's scant production to date suggests that the scope of Dr. Ang's engagement with Navient may extend far beyond what is in her expert report. For example, in her pitch to Navient, Dr. Ang touted her expertise—including the fact that she "[p]rovided advisory services" on enforcement matters while at the Bureau—as being useful not only in rebutting the Bureau's steering allegations, but also in rebutting the Bureau's payment processing, cosigner release, recertification, and debt collection allegations. *See* Navient's 2/7/20 Letter, Exhibit 3, at slides 7, 39-45 of slide deck. Thus, if Navient is intending to claim, as its letter suggests, that Dr. Ang's work for Navient is not adequately related to her work at the Bureau, Navient's production should be significantly expanded to cover all communications with Dr. Ang throughout the course of her retention by Navient, regardless of whether those communications directly bear on the specific issues discussed in her expert report and regardless of the date of the communications.

To the extent Your Honor believes that materials that have been redacted by the Bureau and Navient are relevant, they would only be relevant to this third test, which focuses on the content of Dr. Ang's work for the Bureau and for Navient.[1] In such an event, the Bureau believes that the best course is for the parties' privileged materials to be reviewed only *in camera*. However, if any privileged material is to be unredacted, the same standard should apply to both parties. It is puzzling that Navient has sought unredaction of the Bureau's privileged materials, when Navient itself has redacted exactly the same type of material that the Bureau redacted. Just as the Bureau redacted substantive discussions about this litigation with or at the direction of the Bureau's attorneys, that appears to have been the principle animating Navient's redactions as well. Thus, it is illogical for Navient to be insisting that certain material be unredacted only in the Bureau's production.

Again, however, the Bureau stresses that its preference is to leave the parties' redactions of privileged material in place. As the Bureau articulated in its December 27, 2019 letter (at page 7), "a party should not have to jeopardize its privileged information in the context of a motion arising

---

[1] For the reasons discussed above, this third test need not be applied in this case.

exclusively from the conduct of opposing counsel in choosing to hire an individual with a conflict of interest," and "*in camera* review is the accepted method for reconciling a court's need to decide motions for disqualification with a party's right to prevent disclosure of privileged information." And Navient's proposal of now exposing Dr. Ang to the Bureau's privileged material (material that she claims not to remember at this juncture) is especially troublesome: it would render Dr. Ang's involvement in this litigation even more problematic than it already is. Privileges need not be, and should not be, violated to adjudicate the issue of Dr. Ang's disqualification.

Respectfully submitted,

/s/ Nick Jabbour