# **APPENDIX OF UNPUBLISHED OPINIONS**

A. *Benjamin v. V.I. Port Auth.*,
   684 F. App'x 207 (3d Cir. 2017)

B. *First Telebanc Corp. v. First Union Corp.*,
   2007 WL 9702557 (S.D. Fla. Aug. 6, 2007)

A

684 Fed.Appx. 207
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued
on or after Jan. 1, 2007. See also U.S.Ct. of
Appeals 3rd Cir. App. I, IOP 5.1, 5.3, and 5.7.
United States Court of Appeals, Third Circuit.

Vincent Lionel BENJAMIN, et
al.; * Terri L. Griffiths, Appellant
v.
V.I. PORT AUTHORITY; Kenn Hobson, in their
official capacity; Cassan Pancham, in their official
capacity; Virgin Islands Economic Development
Authority; Economic Development Commission;
Percival Clouden, Chief Executive Officer, in his
official capacity; Ritz-Carlton Virgin Islands Inc.;
Marriott International, Inc.; Kelly Tours, Inc.;
Ritz Carlton Club; Plantation Bay LLC; Caneel
Bay, Inc.; CBI Acquisitions, d/b/a Caneel Bay, A
Rosewood Resort; Rosewood Hotels & Resorts
LLC; Starwood Hotels & Resorts Worldwide,
Inc., d/b/a Westin Resort; Windridge, Inc., d/b/
a Windspree; McLaughlin Anderson Villa Rentals;
Virgin Islands Hotel and Tourism Association, f/
k/a St. Thomas and St. John Hotel Association;
Wheatley Taxi Service and Tours; Freddy
Lettsome, d/b/a Dynamic Tours; Alex Bordeaux;
McLaughlin Anderson Vacations, Ltd.; Nancy
Anderson; McAnderson Real Estate, Inc.; East End
Operations, Inc., d/b/a East End Tax Association
Vincent Lionel Benjamin, et al
v.
V.I. Port Authority; Kenn Hobson, in their official
capacity; Cassan Pancham, in their official capacity;
Virgin Islands Economic Development Authority;
Economic Development Commission; Percival
Clouden, Chief Executive Officer, in his official
capacity; Ritz-Carlton Virgin Islands Inc.; Marriott
International, Inc.; Kelly Tours, Inc.; Ritz Carlton
Club; Plantation Bay LLC; Caneel Bay, Inc.; CBI
Acquisitions, d/b/a Caneel Bay, A Rosewood Resort;
Rosewood Hotels & Resorts LLC; Starwood Hotels
& Resorts Worldwide, Inc., d/b/a Westin Resort;
Windridge, Inc., d/b/a Windspree; McLaughlin
Anderson Villa Rentals; Virgin Islands Hotel and
Tourism Association, f/k/a St. Thomas and St.
John Hotel Association; Wheatley Taxi Service
and Tours; Freddy Lettsome, d/b/a Dynamic
Tours; Alex Bordeaux; McLaughlin Anderson
Vacations, Ltd.; Nancy Anderson; McAnderson
Real Estate, Inc.; East End Operations, Inc., d/
b/a East End Tax Association; Westin St. John
Hotel Company Inc., d/b/d Westin Resort St. John

Nos. 15-1406
|
Nos. 15-3496 & 15-3497
|
Appeal No. 15-1406 Argued on December 8, 2015
|
Appeals Nos. 15-3496 & 15-3497 Submitted
under Third Circuit LAR 34.1(a) on July 27, 2016
|
(Opinion filed: March 27, 2017)

**Synopsis**
**Background:** Taxi association and individual taxi drivers brought action against Virgin Islands Port Authority and various other defendants, including hotels and another taxi company, for violating statute granting the association exclusive concession to provide taxi service to persons leaving airport. The District Court for the Virgin Islands, No. 08-cv-00142, Juan R. Sanchez, J., 2015 WL 5535237, dismissed claims and denied association's attorney's motion to withdraw as counsel. Association, drivers, and attorney appealed.

**Holdings:** The Court of Appeals, Roth, Circuit Judge, held that:

under Virgin Island corporate law, taxi association's litigation committee lacked authority to act on the association's behalf;

evidence was insufficient to support claim that association's board of directors independently ordered the association's counsel to file lawsuit;

under Virgin Islands law, any attempts by taxi association to ratify decision to file lawsuit were either untimely or improper; and

district court did not abuse its discretion in dismissing taxi drivers' claims for failure to prosecute.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Dismiss.

**\*209** Appeal from the District Court of the Virgin Islands, (D.C. No. 08-cv-00142), District Judge: Honorable Juan R. Sanchez

**Attorneys and Law Firms**

Virgin Islands Taxi Association (VITA), Desmond Casimir, Leo Casimir, Joseph Frederick, Albert Knight, Winston Parker, Kelvin Peters, Jermaine Petty, George Richardson, Benoit Stuart, Vincent Walters, Michael Williams and Julia Percival, Personal Representative for the Estate of Errol Percival, Appellants in No. 15-3496

Kerry Harrigan, Dr. Thomas E. Donoghue, as the Personal Representative of Patrick Roach, Junior Richardson and Stetson Richardson, Appellants in No. 15-3497

Terri L. Griffiths, Esq. (Argued) P.O. Box 8647 St. Thomas, VI 00801 Counsel for Appellants in No 15-1406

Before: [*] FISHER, KRAUSE and ROTH, Circuit Judges

OPINION [**]

ROTH, Circuit Judge

Attorneys representing the Virgin Islands Taxi Association (VITA) and sixty-seven individual taxi drivers brought an **\*210** action in the District Court of the Virgin Islands against the Virgin Islands Port Authority and various other defendants, including hotels and another taxi company, for violating the exclusive taxi concession at Cyril E. King Airport on St. Thomas. The District Court dismissed VITA's claims and the claims of three individual drivers because the attorneys lacked authorization to file suit on behalf of VITA or the drivers, while the claims of the remaining drivers were dismissed for failure to prosecute. As this dismissal was being adjudicated by the District Court, Terri Griffiths, one of VITA's attorneys, appealed an order denying her motion to withdraw as counsel. We will affirm the District Court's dismissal of all claims, and we will consequently dismiss as moot Griffiths' appeal of the order denying her motion withdraw.

## I.

A Virgin Islands statute passed in 1986 granted VITA an exclusive concession at Cyril E. King Airport to provide taxi service to persons leaving the airport. The Virgin Islands Port Authority, which manages the airport, was responsible for enforcing the concession by redirecting non-VITA ground transportation. The concession had a ten-year term with an option to renew for an additional ten-year term, beginning with VITA's acceptance of the concession in 1987. The concession was renewed in 1997, and it expired in 2007 after two ten-year terms. In 2012, VITA was granted a new concession by a statute that mirrored the 1987 concession.

In 2008, Griffiths entered an appearance in the District Court of the Virgin Islands on behalf of VITA in an action against the VI Port Authority.[1] Griffiths was directed to file the lawsuit by a litigation committee created by VITA's nine-member board. Allegedly, the litigation committee was created after certain VITA board members with business ties to the defendants leaked materials related to the District Court action. The amended complaint names six board members of VITA as defendants. Another attorney, Lee Rohn, was brought on as co-counsel at the time the lawsuit was filed. In 2009, the case was stayed, pending a determination as to whether Griffiths was authorized to bring a lawsuit on behalf of VITA.

A VITA corporate resolution dated March 2, 2015, stated that Griffiths had withdrawn from representation and that VITA would retain Rohn as legal counsel for the District Court case. The same resolution also sought to ratify the litigation committee's grant of authorization to file the District Court case. On March 30, the District Court held oral argument on the issue of whether the lawsuit had been properly authorized. Rohn submitted an appearance on behalf of VITA and three individual plaintiffs. Following oral argument, the District Court dismissed all claims. Rohn appeals on behalf of VITA and twelve individually named plaintiffs, while Griffiths appeals on behalf of four individually named plaintiffs.

## II.[2]

On appeal, Rohn argues that the District Court erred in determining that she and Griffiths did not have authority to file suit on behalf of VITA and three of the individually named plaintiffs. Both Rohn and Griffiths further argue that the District **\*211** Court erred in dismissing the remaining plaintiffs' claims for failure to prosecute.

### A.

We will first address whether dismissal of VITA's claims, as well as the claims of the three individually named plaintiffs, was proper. We interpret the District Court's dismissal of VITA's and the three individual plaintiffs' claims as a dismissal for lack of standing. Our review over questions of standing is plenary.[3]

In dismissing VITA's claims, the District Court made three determinations: first, that the litigation committee did not have authority to direct Griffiths to file a lawsuit in 2008; second, that VITA did not otherwise authorize the suit at the time it was filed; and third, that any attempts by VITA to ratify the District Court litigation were either improper or untimely.

Both parties agree that Virgin Islands corporate law governs this case. While plaintiffs argue that Virgin Island law is unresolved on the question of authority to engage in litigation, we agree with the District Court that the statute makes clear that "every corporation" is "managed by a board of directors," unless otherwise provided by the statute or the corporation's articles of incorporation.[4] And, as the District Court explained, 13 V.I.C. § 65 permits the delegation to a committee of powers reserved to the board of directors provided that the committee is formed pursuant to a board resolution, consists of at least two members of the board, and otherwise conforms to any additional requirements in the corporation's bylaws or the resolution itself.[5] One of VITA's bylaws requires that a properly formed committee consist of at least three board members. Because the litigation committee was not formed by a board resolution, in violation of 13 V.I.C. § 65, and included only two board members, in violation of VITA's bylaws, the District Court concluded the committee could not act on VITA's behalf. Rohn, on VITA's behalf, argues that adherence to corporate formalities is not the only means through which a corporation may delegate authority. In support, she cites to a case of this Court, *Schoonejongen v. Curtiss-Wright Corp.*, where we held that a corporate board "may freely delegate the authority to manage the business and affairs of the corporation," and that such authority may be express or implied.[6] The District Court concluded that *Schoonejongen* involved an application of Delaware corporate law, rather than Virgin Islands corporate law, and as such was inapplicable if Virgin Islands law commanded a different result. We find the District Court's analysis persuasive, as it relied on existing Virgin Islands law in rendering its conclusion that corporate authority may only be delegated to a properly-formed committee. Because the litigation committee was not properly vested with authority to act on VITA's behalf, it did not have authority, whether express or implied, to initiate the Federal litigation.

The District Court also determined that VITA's board had not otherwise authorized this action. This conclusion was based on, *inter alia*, the fact that six of the board's nine members were named as defendants in the amended complaint, a lack of any board minutes evincing authorization, and a repudiation of the District Court action by the board's president **\*212** shortly after the action had been filed. Without any evidence that could reasonably support the conclusion that VITA's board authorized this action, we agree that VITA's board did not independently authorize the filing of this suit.

Lastly, the District Court concluded that any attempts to ratify the decision to file the District Court action were either untimely or improper. Finding no applicable Virgin Islands law on ratification, the District Court properly relied on *FEC v. NRA Political Victory Fund*, where the Supreme Court held that ratification, which is governed by principles of agency law, requires "that the party ratifying ... be able not merely to do the act ratified at the time the act was done, *but also at the time the ratification was made.*"[7] VITA's claims are all premised on harms that accrued in 2007 at the latest—nearly eight years prior to the ratification attempt, and beyond the statutes of limitations of each of VITA's claims, the longest of which is six years.[8] Following *NRA Political Victory Fund*,[9] the District Court determined that VITA's attempt in March 2015 to ratify this suit came too late to be effective. An earlier alleged attempt at ratification —occurring in July, 2010—mentioned only the re-hiring of Griffiths as VITA's attorney, without explicitly mentioning this lawsuit. We find the District Court's application of the Restatement appropriate in the case at hand, and accordingly we adopt its conclusion that any attempts at ratification were either untimely or improper. We will therefore affirm the dismissal of VITA's claims.

Three of the individually named plaintiffs had their claims dismissed for much the same reason that VITA's claims were dismissed: Rohn and Griffiths had no records from these plaintiffs that they had authorized the suit at the time it was filed, and their subsequent attempts to ratify the suit came too late to be effective. Given that the retainer agreements Rohn submitted were dated between February 7 and March 2, 2015, and no evidence of authorization to bring suit at the time the action was commenced was produced, we will affirm the dismissal of these claims as well.

### B.

We next turn to the District Court's dismissal of the remaining plaintiffs' claims for failure to prosecute. We review this dismissal for abuse of discretion. [10]

Before dismissing a case for failure to prosecute, a court must consider and balance the factors identified by this Court in *Poulis v. State Farm Fire & Casualty Co.*:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of **\*213** alternative sanctions; and (6) the meritoriousness of the claim or defense. [11]

The District Court gave thorough consideration to the *Poulis* factors, noting specifically that all but three of the individual plaintiffs had not appeared before the court or provided any indication of their desire to continue the action. The District Court further noted that, even without applying the *Poulis* factors, the individual plaintiffs' failures to comply with the court's orders would make dismissal appropriate because adjudication of the case had become impossible. The District Court's analysis on these issues was exhaustive, and therefore we find no abuse of discretion.

### III.

For the reasons set forth above, we will affirm the order of the District Court. Additionally, we will dismiss as moot Griffiths' appeal of her motion to withdraw as counsel.

**All Citations**

684 Fed.Appx. 207

---

### Footnotes

| | |
|---|---|
| \* | The Honorable D. Michael Fisher assumed senior status on February 1, 2017. |
| \*\* | This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent. |
| 1 | A lawsuit based on the same facts was filed in Virgin Islands Superior Court in 1997. Those proceedings have been stayed pending a resolution in this case. |
| 2 | The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. |
| 3 | *Miller v. Rite Aid Corp.*, 334 F.3d 335, 340 (3d Cir. 2003). |
| 4 | 13 V.I.C. § 61. |
| 5 | 13 V.I.C. § 65. |
| 6 | 143 F.3d 120, 127 (3d Cir. 1998). |
| 7 | 513 U.S. 88, 98, 115 S.Ct. 537, 130 L.Ed.2d 439 (1994). |
| 8 | 5 V.I.C. § 31(3)(A) (imposing a six year statute of limitations for a breach of contract claim). |

| | |
|---|---|
| 9 | 513 U.S. at 98, 115 S.Ct. 537 (explaining that where "an act to be effective in creating a right against another or to deprive him of a right must be performed before a specific time, an affirmance is not effective against the other unless made before such time" (quoting Restatement (Second) of Agency § 90)). |
| 10 | *Spain v. Gallegos*, 26 F.3d 439, 454 n.17 (3d Cir. 1994). |
| 11 | 747 F.2d 863, 868 (3d Cir. 1984) (emphasis removed). |

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

B

Case 3:17-cv-00101-RDM Document 505-2 Filed 07/10/20 Page 9 of 19
First Telebanc Corp. v. First Union Corporation, Not Reported in Fed. Supp. (2007)
2007 WL 9702557

2007 WL 9702557
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

FIRST TELEBANC CORP., a/k/a Net First Financial Corporation, Plaintiff,
v.
FIRST UNION CORPORATION, Defendant.

CASE NO: 02-80715-CIV-GOLD/TURNOFF
|
Signed 08/06/2007

**Attorneys and Law Firms**

Atlee W. Wampler, III, Wampler Buchanan Walker Chabrow Banciella & Stanley PA, Pinecrest, FL, Barry Steven Mittelberg, Barry S. Mittelberg, P.A., Coral Springs, FL, J. Stephen Walker, J. Stephen Walker PC, Michael J. Rovell, Rovell & Associates, Chicago, IL, for Plaintiff.

Karen Jessica Jerome Smith, Groelle & Salmon, Wellington, FL, Padmavathi Ghanta Hinrichs, Padma Hinrichs, P.A., Palm Beach, FL, Susan Fleischner Kornspan, Boca Raton, FL, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT: CLOSING CASE

THE HONORABLE ALAN S. GOLD, UNITED STATES DISTRICT JUDGE

**\*1** This cause comes before the Court on Defendant First Union's Motion for Summary Judgment **[DE 35]** and its Supplemental Motion for Summary Judgment **[DE 79]**. I have reviewed the Motions, the Plaintiff's Responses, and the Defendant's Replies, and I have heard argument from the parties. In addition, I have reviewed all exhibits and supplemental filings of the parties. Upon consideration of the record in this case, in light of the relevant legal standards and case law, I grant summary judgment in favor of First Union.

### I. Factual Background

The early background of this case was set forth by Florida's Fourth District Court of Appeals in *Net First Nat'l Bank v. First Telebanc Corp.*, 834 So. 2d 944 (Fla. 4th DCA 2003). The parties do not dispute the facts as set forth by that court:

This complex case involves two groups of investors battling for control of Net First National Bank ("the Bank") and the Bank's sole shareholder, First Telebanc Corporation ("the holding company"). The events leading to the present rift in leadership began in January 1999, when the directors of the Bank appointed Keith Duffy to fill a vacant director position. Sometime prior to May 2000, the Bank was designated a "troubled institution" under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA").

In June 2000, Duffy began acting as president and chief executive officer of the Bank. Throughout this time, the Bank experienced increasing financial difficulties, resulting in a Consent Order and Stipulation between the Office of the Comptroller of Currency ("OCC") and the Bank. The order gave the OCC increased oversight of the Bank's business dealings, most importantly a veto power over any proposed senior executive officer.

Pursuant to FIRREA requirements, Duffy submitted a form 914 Notice to the OCC detailing his qualifications for his senior executive and director positions with the Bank. Duffy was later interviewed, and the OCC declined to grant him authority to act as a senior executive of the Bank, stating that he did not have sufficient experience to hold a leadership position in a "problem bank." The OCC did not object at that time to Duffy's continuing as a director.

In February 2001, however, the OCC nullified its non-objection to Duffy serving as director. In a five-page letter, the OCC detailed material misrepresentations and omissions Duffy made in the biographical portion of his 914 application and his interview. The OCC found that Duffy gave a false answer and omitted material information regarding his past involvement with a state-chartered bank, then continued to misrepresent facts and give inconsistent explanations in subsequent documents and his interview.

At the center of Duffy's misrepresentations to the OCC was his past involvement with a state-chartered bank. Duffy failed to disclose that his application to serve as president of the state bank was disapproved by Florida's Department of Banking and Finance. Duffy also failed to disclose that after disapproval, he continued to serve as president of the state bank, in violation of the Department's numerous demands that he step down. The state bank was in poor financial condition and under a cease and desist order

from the State Comptroller when Duffy arrived, and it deteriorated further during his tenure, with criticism of his performance including "inappropriate insider transactions involving Duffy-related companies, a number of violations of laws, and continued noncompliance with the cease and desist order." As a result, the OCC withdrew its approval for Duffy to have any connection with Bank leadership.

**\*2** In September 2000, the Federal Reserve Bank notified the board of the holding company that the OCC decision not only precluded Duffy from serving as a director of the Bank, but governed his actions as a director of the holding company as well. The Federal Reserve warned that "holding company board of directors' minutes should clearly note Mr. Duffy's abstention from all policymaking decisions regarding the bank." Several months later, in May 2001, the holding company elected six directors of the Bank. They included Duffy, Randall Rossilli, and Laura Pugliese, with Duffy's directorship subject to the outcome of a pending appeal of the OCC nullification. The OCC responded by advising the Bank's directors that "Mr. Duffy may not participate in the affairs of the bank or otherwise act as an 'institution affiliated party' in board meetings or under any other circumstances," and that such participation subjected other directors to civil penalties. Duffy's appeal of the OCC nullification was resolved against him.

*Id.* at 946-47. The controversy continued. As of September, 2001, the holding company board consisted of Duffy, Rossilli, and Bradley Groves. *Id.* at 947. Over the next several months, numerous board meetings and shareholder meetings were held; new board members were appointed, and ultimately the shareholders voted to remove Duffy and Groves from the board, and elect a new slate of board members. *Id.* Duffy led a group of Plaintiffs who filed suit against both the bank and the holding company, seeking temporary injunctions to stop the shareholders from removing him from the board. After several unsuccessful attempts, Duffy succeeded in gaining the injunction. *Id.* at 948. The trial court ordered as follows:

1. Defendants, and anyone acting in concert with Defendants, are enjoined in any way from acting in any official capacity on behalf of [the holding company], as director or otherwise.

2. Defendants, and anyone acting in concert with Defendants, are enjoined from interfering with Duffy and Groves' performing their duties as the lawful Board of Directors of [the holding company].

3. Defendants, and anyone acting in concert with Defendants, are enjoined from interfering in any way with the access of Duffy or Groves to the corporate funds, records, or offices of [the holding company].

4. [The holding company], Duffy and Groves shall, within 60 days, call an annual meeting, at which meeting the shareholders of [the holding company] shall elect directors as required by the Articles of Incorporation and Bylaws of [the holding company].

5. L. Pugliese, Rossilli, Connors, and Pasley are hereby enjoined from acting as directors of Net First National Bank.

6. Plaintiffs shall file an injunction bond in the amount of $ 250,000.00 within 72 hours of the entry of this Order or the injunction set forth herein shall be immediately dissolved.

*Id.* at 948-49. Less than one month after the trial court issued the injunction, the OCC closed the Bank and named the Federal Deposit Insurance Corporation ("FDIC") receiver. *Id.* at 949.

The case was appealed, and came before Florida's Fourth District Court of Appeals. The court reversed the trial court, and lifted the injunction. In its decision, the court made various findings of fact. Notable among those findings was the fact that Duffy did not have the legal right to act as he did regarding the makeup of the board:

Duffy was precluded from any leadership role in the Bank because of material misrepresentations and omissions made to the OCC, but at the injunction hearing he described himself as the Bank president. The picture that emerges from these facts is not that the Plaintiffs had a substantial likelihood of success on the merits or a clear legal right to injunctive relief.

\* \* \*

Not only does Pugliese's potential status as a director of the holding company cast doubt on Duffy and Groves's actions at the November 20 meeting, Duffy acted beyond his legal capacity in voting on policy decisions affecting the Bank.

*Id.* at 949-50.

While the state court case between Duffy, the bank, and the holding company was ongoing, the Plaintiff in this case, First Telebanc, filed suit against First Union Bank in

Case 3:17-cv-00101-RDM   Document 505-2   Filed 07/10/20   Page 11 of 19

First Telebanc Corp. v. First Union Corporation, Not Reported in Fed. Supp. (2007)
2007 WL 9702557

state court. First Union removed the case to the Southern District of Florida based on diversity jurisdiction on July 30, 2002. [DE 1]. First Telebanc had three claims against First Union: breach of contract, negligent misrepresentation, and fraudulent inducement. The case was at the time assigned to the Honorable Wilkie Ferguson; he adopted the Report and Recommendation of Magistrate Judge Snow, and dismissed Counts II and III of the Complaint. [DE 32]. Only the breach of contract claim remained.

**\*3** On February 27, 2003, First Union filed a motion to stay the case, on the grounds that it had learned of the decision entered by the Fourth District Court of Appeals cited above. [DE 24]. In its motion, First Union requested that the case be stayed until it was able to file a motion for summary judgment against First Telebanc. First Union attached to its motion a letter from counsel for the board of directors of First Telebanc. The letter states, in relevant part, as follows:

> As you are aware, we represent the Appellants in the appeal in which the 4th DCA has recently issued an opinion and Mandate. (See copies enclosed). In summary, the opinion overturns Judge Wessel's preliminary injunction in its entirety, and contains significant findings regarding your clients (Mr. Duffy in particular) and their position vis a vis First Telebanc. While we understand that the Appellees are trying to obtain rehearing in this matter, the Mandate is in effect and as a result, our clients are the ones who have authority to undertake actions on behalf of Net First Financial ("former bank holding company), including the commencement of prosecution of litigation. We are aware of at least two legal actions filed by your firm on behalf of former bank holding company. These include a legal action against First Union (now "Wachovia") related to the sale of Boca Raton National Bank.

> Our clients believe that any such action is baseless, frivolous and without merit and is designed to cover the negligence of Mr. Duffy and his various counsel in failing to properly operate/represent the bank after its acquisition, failing to initially structure the transaction and closing documents properly, failure to complete a proper due diligence and understand the regulatory "status" of the bank during the period of ownership by First Union as opposed to it operating as a stand along entity post-closing, and other matters which would preclude any claim against this entity. Regardless, it is my client's belief that no claim exists or should be pursued against First Union/ Wachovia and that any pending action in this regard should be dismissed.

> We are therefore demanding that the pending action be dismissed. We further demand that you provide this office with a list of any and all action of which you are aware which are being prosecuted or defended by First Telebanc, and that you take no further action in those lawsuits without first consulting with this office.

One month later, on April 9, 2003, First Union filed a motion for summary judgment against First Telebanc. [DE 35]. The basis of the motion was that the lawsuit had been initiated by Duffy on behalf of the bank, and that Duffy had no legal authority to act on behalf of the bank. At about the same time, the board of directors of First Telebanc moved to intervene in the action between Duffy and First Union, claiming that Duffy lacked authority to pursue the action on the bank's behalf.

On May 22, 2003, the case was reassigned to me. [DE 45], Shortly thereafter, Magistrate Judge Snow issued a report and recommendation that First Union's motion for stay be granted. I adopted the report and recommendation, and set oral argument on First Union's motion for summary judgment. [DE 55, 60]. On August 15, 2003, I heard oral argument on the motion for summary judgment. At that argument, the parties argued that the case should be stayed pending the outcome of the state case still ongoing in the Fifteenth Judicial Circuit, Palm Beach County. That case involved decisions required by the Fourth District Court of Appeals' remand to the state court to determine who legally comprised the board of directors of First Telebanc. I decided that the most prudent course of action was to stay the case pending a decision by the state court, to avoid the possibility of conflicting findings between the two courts. [DE 66], First Union moved for reconsideration of the order, which I denied, finding that First Union would suffer no prejudice from the stay. The case was therefore stayed pending the outcome of the state court case. [DE 68].

**\*4** On December 4, 2006, First Telebanc moved to reopen the case, as the state court case was closed. [DE 69]. First Telebanc informed this Court that the parties to the state court case had settled the matter, and in the settlement had agreed that

> With respect to the past business affairs of the Company (i.e. First Telebanc), the Board of Directors of First Telebanc were Duffy, Groves, and Rosselli. Further, the Company

and specifically Duffy, on behalf of the Company, had the authority to file and pursue the lawsuit filed by the Company against Wachovia Bank f/k/a First Union National Bank ... All parties acknowledge that from this point forward, Duffy and Groves are the only Directors of the Company.

First Telebanc argued that the

> [d]isposition of state court proceedings in Palm Beach County Circuit Court as outlined above establishes unequivocally that at all times material to this case, Keith Duffy had the authority to act on behalf of First Telebanc in regard to the filing and prosecution of First Telebanc's complaint against First Union Corp.

[DE 69].

First Union responded, arguing that the case should not be reopened, because no judicial determination had been made regarding the makeup of the board of directors, which was a condition precedent to reopening the case. Alternatively, First Union argued that its motion for summary judgment should be granted for the same reasons earlier argued: that Duffy did not have the authority to litigate the case on behalf of First Telebanc. [DE 70]. On January 16, 2007, I granted First Telebanc's motion to reopen the case, and set a briefing schedule for First Union's renewed motion for summary judgment. [DE 78]. In its supplemental motion for summary judgment, First Union argues that summary should be granted on the grounds that Duffy did not have the authority to pursue claims against it on behalf of First Telebanc. First Union points to the decision by the Fourth District Court of Appeals in *Net First Nat'l Bank v. First Telebanc Corp.,* 834 So. 2d 944 (Fla. 4th DCA 2003), and the findings of fact contained therein, as described above. First Union also points to the January 10, 2002 affidavit of Randall R. Rossilli, in which he states that on December 18, 2001, a special shareholder's meeting was held, in which Duffy and Groves were unanimously removed from First Telebanc's Board of Directors.

In its response, First Telebanc does not dispute the existence of the *Net First Nat'l Bank v. First Telebanc Corp.* case, nor the existence of the Rossilli affidavit. First Telebanc relies upon the settlement agreement in the state court case, in which the parties agreed that Duffy and Groves, and Rossilli were the only members of Telebanc's board of directors at times material to this litigation. First Union does not dispute the existence of the settlement agreement: only its legal effect.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Bishop v. Birmingham Police Dep't,* 361 F.3d 607, 609 (11th Cir. 2004).

**\*5** The moving party bears the initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party satisfies this burden, the burden shifts to the party opposing the motion to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553 (1986). A factual dispute is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248; *Denney v. City of Albany,* 247 F.3d 1172, 1181 (11th Cir. 2001).

In assessing whether the movant has met its burden, the court should view the evidence in the light most favorable to the party opposing the motion and should resolve all reasonable doubts about the facts in favor of the non-moving party. *Denney,* 247 F.3d at 1181. In determining whether to grant summary judgment, the court must remember that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are

Case 3:17-cv-00101-RDM Document 505-2 Filed 07/10/20 Page 13 of 19

First Telebanc Corp. v. First Union Corporation, Not Reported in Fed. Supp. (2007)
2007 WL 9702557

jury functions, not those of a judge." *Anderson,* 477 U.S. at 255.

Upon review of the record and the parties' arguments, I grant First Union's motion for summary judgment.

### III. Analysis

Several issues must be addressed to determine whether summary judgment should be granted in favor of First Union: (1) whether Duffy had the authority to act on behalf of First Telebanc when he initiated this lawsuit; (2) whether the settlement agreement regarding Duffy's authority creates retroactive authority for Duffy; (3) whether the subsequent ratification by the Board of Directors of Duffy's authority creates retroactive authority for Duffy; (4) whether the second ratification by the Board creates retroactive authority for Duffy; (5) whether First Union has standing to assert Duffy's lack of authority. I will address each issue in turn.

### A. Whether Duffy had the authority to act on behalf of First Telebanc when he initiated this lawsuit

#### 1. Duffy lacked authority as President and CEO

First Union argues that Duffy did not have the authority to file this lawsuit on behalf of the bank. In support of this position, First Union cites to Florida statutes and case law which hold that only the directors of a corporation have the power to manage the business affairs of a corporation-including the power to bring a lawsuit-unless the articles of incorporation or bylaws provide otherwise. *See* Fla. Stat. § 607.0801(2)("All corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed under the direction of, its board of directors, subject to any limitation set forth in the articles of incorporation or in an agreement authorized under s. 607.0732"); Fla. Stat. § 607.0206(2) ("The bylaws of a corporation may contain any provision for managing the business and regulating the affairs of the corporation that is not inconsistent with law or the articles of incorporation"); *Citizens National Bank of St. Petersberg v. Peters,* 175 So. 2d 54, 56 (Fla. 2d DCA 1965)("The corporation law of this State vests in directors the management of the corporate business").

In this action, Duffy has stated by way of affidavit that he initiated this lawsuit in his capacity as President of First Telebanc Corporation: not as a director of the corporation.

(Duffy Affidavit, DE 35, p. 187).[1] He also provided no evidence that the Board of Directors authorized the initial filing of the lawsuit. Under Florida law, therefore, Duffy did not have authority to initiate the lawsuit unless the articles of incorporation or the bylaws of the corporation conferred such authority upon him. However, neither the company's articles of incorporation nor its bylaws confer such authority upon the President or CEO. Pursuant to First Telebanc's Articles of Incorporation, *all* corporate powers are vested in the Board of Directors:

> **\*6** The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors. In addition to the powers and authority expressly conferred upon them by the Florida Statutes or by these Articles of Incorporation or the Bylaws of the Corporation, the directors are hereby empowered to exercise all such powers and do all such acts as may be exercised or done by the corporation.

Similarly, the Bylaws vest all power with the Board of Directors:

> All corporation powers shall be exercised by or under the authority of the Board of Directors, and the business and affairs of this Corporation shall be managed under the direction of the Board of Directors.

As noted above, First Telebanc has provided no evidence that the Board of Directors ever approved the filing of this lawsuit against First Union. In fact, the only evidence as to whether the Board approved the action shows the opposite; the letter from the Board's counsel expressly directs Duffy to dismiss the action, because the Board had determined that the case was "baseless, frivolous, and without merit." (DE 81-2). In accordance with Florida law and First Telebanc's Articles of Incorporation and its Bylaws, Duffy acted without authority in his initiation of this lawsuit against First Union.

First Telebanc Corp. v. First Union Corporation, Not Reported in Fed. Supp. (2007)
2007 WL 9702557

Case 3:17-cv-00101-RDM   Document 505-2   Filed 07/10/20   Page 14 of 19

### 2. Duffy lacked authority due to the mandate of the OCC

Notably, First Telebanc fails to address, *in any fashion,* the determination by the Office of the Comptroller of Currency ("OCC") that Duffy was prohibited from participating in the affairs of the bank. As discussed above, the OCC expressly held that "Mr. Duffy may not participate in the affairs of the bank or otherwise act as an 'institution affiliated party' in board meetings or under any other circumstances." As the Fourth District Court of Appeals held, this decision by the OCC precluded Duffy from having any legal right to seek relief on behalf of the bank.

During oral argument, First Telebanc argued that Duffy was not acting on behalf of the bank itself, but only on behalf of the holding company. The OCC, argues First Telebanc, could not forbid Duffy to act on behalf of the holding company. This argument is disingenuous. The holding company had only one asset: the bank. The affairs of the holding company are therefore necessarily the affairs of the bank itself. Moreover, this argument is ineffective for the reasons stated above; *i.e.,* that Duffy, as President and CEO, had no authority to initiate the lawsuit in any event.

The OCC is a federal agency charged with regulating banking throughout the nation. 12 U.S.C. § 1. "The National Bank Act establishes the primacy of the federal government, through the Office of the Comptroller of the Currency, as the regulatory authority over national banks." *Bank of Am., N.A. v. McCann,* 444 F. Supp. 2d 1227, 1231 (N.D. Fla. 2006). The decision of the OCC was clear that Duffy was precluded from participating in any fashion with the affairs of First Telebanc. He therefore had no authority to initiate the instant lawsuit against First Union.

### 3. Duffy's authority to act is barred by the Fourth District Court of Appeals' Decision

First Telebanc also fails to acknowledge the effect of the Fourth District Court of Appeals' opinion. First Telebanc claims that the Fourth District Court of Appeals merely reversed the preliminary injunction because it found that Duffy did not have a substantial likelihood of success on the merits, and made no factual findings as to whether or not Duffy had the authority to file suit against the board of directors. First Telebanc is mistaken. The Fourth District Court of Appeals did, indeed, make factual findings concerning Duffy's authority: "Duffy was precluded from any leadership role in the Bank because of material misrepresentations and omissions made to the OCC ... Duffy acted beyond his legal capacity in voting on policy decisions affecting the Bank." *Net First Nat'l Bank v. First Telebanc Corp.,* 834 So. 2d 944, 949-950. (Fla. 4th DCA 2003). The court further found that "The ultimate effect of the injunction was to wrest physical control of the Bank and its assets from Defendants and hand it to Duffy, when Duffy was precluded by federal authority from participating in running the Bank, at the Bank level and the holding company level." *Id.* at 949.

**\*7** Neither of the parties have raised the issue of whether collateral estoppel or the doctrine of the law of the case prevents this Court from considering the issue of Duffy's legal authority to act on behalf of First Telebanc in the wake of the Fourth District's opinion. However, I need not raise that issue *sua sponte,* because summary judgment is appropriate for First Union for other reasons. [2]

### 4. Duffy was without authority to initiate the lawsuit

Viewing all of the undisputed facts in the record before me, I must conclude that at the outset of the litigation in this case, Duffy had no authority to act on behalf of first Telebanc. Duffy was therefore without authority to bring suit on behalf of Telebanc against First Union. First Telebanc has failed to raise any genuine issue of fact to refute the fact that the lawsuit was improperly filed. This case must therefore be dismissed unless some future actions conferred retroactive authority upon Duffy such that he could properly file the lawsuit.

### B. Whether the settlement agreement provided retroactive authority for Duffy to initiate this lawsuit

First Telebanc argues that the settlement agreement between Duffy, Groves, and Rossilli confirms that Duffy had authority to act on behalf of Telebanc when he originally initiated this lawsuit. In particular, First Telebanc focuses on the portion of the settlement agreement that reads:

> With respect to the past business affairs of the Company (i.e. First Telebanc), the Board of Directors of First Telebanc were Duffy, Groves, and Rosselli. Further, the Company and specifically Duffy, on behalf of the Company, had the authority to file and pursue the lawsuit filed by the

**First Telebanc Corp. v. First Union Corporation, Not Reported in Fed. Supp. (2007)**
2007 WL 9702557

Case 3:17-cv-00101-RDM   Document 505-2   Filed 07/10/20   Page 15 of 19

Company against Wachovia Bank f/k/a First Union National Bank.

First Union argues that the settlement agreement reached between the various parties to the state court lawsuit has no legal effect relevant to a decision in this case. I concur with First Union. [3]

When I originally stayed this case pending the outcome of the decision in the state court as to who comprised the board of directors, I was concerned that some holdings in this case might conflict with determinations of the state court case. That court, however, never made any judicial determination as to who comprised the board. The parties to that case entered into a negotiated settlement, which is not binding upon this Court, nor binding upon the Defendant in this case, First Union, who was not a party to the state court action. Upon review of the record, it is clear that the issue of who were the members of the board of directors of First Telebanc at the time of the lawsuit is irrelevant to the question of whether Duffy had the authority to initiated the lawsuit. In his affidavit, Duffy acknowledged that he, alone, initiated the lawsuit, and there is no dispute between the parties that Duffy, alone, initiated the lawsuit in this case. Duffy states in his affidavit that he initiated the lawsuit in his capacity and President and CEO of First Telebanc. As discussed above, under Florida law Duffy had no authority to act in that capacity. Additionally, given the undisputed fact that the OCC-a federal body governing national banks-had prohibited Duffy from acting in connection with First Telebanc in any fashion, the makeup of the board at the time of the lawsuit is irrelevant.

**\*8** The self-serving, negotiated settlement agreement cannot retroactively confer authority upon Duffy to file suit when he was precluded from doing so by virtue of Florida law and the OCC. First Telebanc has failed to raise any issue of material fact as to whether Duffy had authority to initiate the lawsuit in this case. The undisputed facts show that he clearly did not.

**C. Whether the Board's ratification of Duffy's action creates retroactive authority for Duffy to initiate this lawsuit**

First Telebanc takes the position that, assuming *arguendo* Duffy did not have the authority to initiate this lawsuit, the subsequent ratification of the lawsuit by the Board of Directors endows him with such authority. Attached to its opposition to First Union's motion for summary judgment are two Resolutions by the Board of Directors of First Telebanc: one grants permission to Michael J. Rovell, Esq., to re-open this case and pursue it on behalf of First Telebanc; the other expressly ratifies Duffy's earlier actions in initiating the lawsuit on behalf of First Telebanc. These documents were executed by Duffy and Groves in October, 2006 and January, 2007.

There is no question that, under Florida law, a board of directors may ratify the previously unauthorized actions of a board member, director, or other office-holder of a corporation. See *Gentry-Futch Co. v. Gentry,* 90 Fla. 595, 612 (Fla. 1925)("While a corporation cannot ratify absolutely void and ultra vires acts, it may, like an individual, ratify any act done on its behalf which it had the power to do or to authorize to be done in the first instance"); *Wimbledon Townhouse Condominium I, Asso. v. Wolfson,* 510 So. 2d 1106, 1108 (Fla. 4th DCA 1987)("We also find merit in appellant's argument that the board of directors of a condominium association may ratify its prior acts"), citing *Hillsboro Light Towers, Inc. v. Sherrill,* 474 So.2d 1219 (Fla. 4th DCA 1985); *Zinger v. Gattis,* 382 So.2d 379 (Fla. 5th DCA 1980).

First Union argues that Florida law also holds that a board of directors may not ratify unlawful acts. First Union is correct in its statement of Florida law, but this alone does not resolve the issue. Florida courts have held that a board of directors may not ratify unlawful acts. *See, e.g., Flight Equip. & Eng'g Corp. v. Shelton,* 103 So. 2d 615, 621 (Fla. 1958) ("It cannot be disputed that a board of directors of a corporation is without power to ratify that which it cannot do directly or that which it could not authorize be done initially. It has no power to ratify a void or illegal act."); *Gentry-Futch Co. v. Gentry,* 1925, 90 Fla. 595,106 So. 473 ("a corporation cannot ratify absolutely void and ultra vires acts"). Other courts, examining basic corporate law principles have similarly held: *Wolf v. Frank,* 477 F.2d 467, 477 (5th Cir. 1973); 2A William M. Fletcher, Encyclopedia of the Law of Private Corporations, § 752 (2000) (noting that, like other cases of agency, a corporation cannot ratify "acts done in violation of law or in contravention of public policy").

Applying these principles, First Union argues that under Florida corporations law, Duffy had no power to initiate the lawsuit against First Union on behalf of First Telebanc; therefore, it argues, the board of directors cannot subsequently ratify Duffy's unlawful act. First Union's position has some

Case 3:17-cv-00101-RDM   Document 505-2   Filed 07/10/20   Page 16 of 19

First Telebanc Corp. v. First Union Corporation, Not Reported in Fed. Supp. (2007)
2007 WL 9702557

merit. Duffy was proscribed by the OCC from participating in any actions on behalf of the bank. His initiation of the lawsuit, therefore, could be seen as unlawful, in the sense that he lacked lawful authority to initiate the suit. [4]

**\*9** However, the law is clear that a board may ratify any act which it could have originally authorized. As the Florida Supreme Court stated in *Gentry-Futch*, "While a corporation cannot ratify absolutely void and ultra vires acts, it may, like an individual, ratify any act done on its behalf which it had the power to do or to authorize to be done in the first instance." *Gentry-Futch,* 90 Fla. at 612. In this case, while the board of directors may not have been able to authorize Duffy to initiate the lawsuit, the board could have initiated the lawsuit itself. In accordance with Florida law, therefore, the board may subsequently ratify the filing of the lawsuit.

Notwithstanding the board's theoretical ability to ratify the initiation of the lawsuit, problems remain given the facts of this case. First Union points out that the attempted ratification fails as a matter of law under First Telebanc's Articles of Incorporation. The Articles mandate that the "Board of Directors of the Corporation shall be comprised of not less than three (3) nor more than fifteen (15) directors." [DE 35, Exhibit B to Exhibit 4]. The Resolution by the Board, attached in support of First Telebanc's opposition to First Union's motion for summary judgment, is signed by only two Board members, and indeed makes clear that the Board consists of only two members. Without three members, the Board does not comply with First Telebanc's Articles of Incorporation, and therefore cannot take any authorized action.

Moreover, of the two board members ratifying Duffy's action, one is Duffy himself, who was proscribed by the OCC from acting as a director. In *Wolf v. Frank,* 477 F.2d 467, 477 (5th Cir. 1973), the Fifth Circuit, applying Florida corporations law, stated that "We also recognize the general rule that 'ratification can never be made on the part of the corporation by the same persons who wrongfully assume the power to make the contract,' " citing *Flight Equipment & Engineering Corp. v. Shelton,* 103 So.2d 615, 621 (1958).

Viewing all evidence in the record in the light most favorable to First Telebanc, I can only conclude that First Telebanc has not raised a genuine issue of material fact to demonstrate that ratification in this case has any effect.

First Union further argues that the ratification of January 24, 2007 is ineffective because the cause of action is barred by the statute of limitations. [5] The original Complaint was filed on June 5, 2002, alleging a breach of contract. The allegations in the Complaint make clear that the alleged breach occurred on September 9, 1997, when First Union allegedly failed to make certain disclosures to First Telebanc regarding the financial soundness of the bank sought to be acquired by First Telebanc.

Under Florida law, the statute of limitations on a breach of contract action is five years. Fla. Stat. § 95.11(1)(b). If the cause of action accrued on September 9, 1997, the statute of limitations to bring that cause of action expired on September 9, 2002. *See Medical Jet, S.A. v. Signature Flight Support-Palm Beach, Inc.,* 941 So. 2d 576, 578 (Fla. 4th DCA 2006)("For a breach of contract action, it is well established that a statute of limitations runs from the time of the breach, although no damage occurs until later").

**\*10** While ratification of an unauthorized act may relate back to the original act, such ratification will only relate back if the rights of third parties have not been affected in the interim:

> A corporation, like an individual, may ratify and thereby render binding upon it the originally unauthorized acts of its officers or other agents. [T]he ratification of an act done by a previously unauthorized officer or agent is, unless rights of third persons have intervened, equivalent to a prior authority and relates back and supplies the authority to do such an act.

*Boyce v. Chemical Plastics, Inc.,* 175 F.2d 839, 842 (8th Cir. 1949)(citations and ellipses omitted). In this case, the rights First Union have been affected: specifically, its right to be free from suit under the statute of limitations.

The United States Supreme Court explained the limitations of a party's ability to ratify the acts of its agent:

> If an act to be effective in creating a right against another or to deprive him of a right must be performed before a specific time, an affirmance is not effective against the other unless made before such time.... "The bringing of an action, or of an appeal, by a purported agent can not be ratified after the cause of action or right to appeal has

Case 3:17-cv-00101-RDM    Document 505-2    Filed 07/10/20    Page 17 of 19

**First Telebanc Corp. v. First Union Corporation, Not Reported in Fed. Supp. (2007)**
2007 WL 9702557

been terminated by lapse of time". Though in a different context, we have recognized the rationale behind this rule: "The intervening rights of third persons cannot be defeated by the ratification. In other words, it is essential that the party ratifying should be able not merely to do the act ratified at the time the act was done, *but also at the time the ratification was made*"

*FEC v. NRA Political Victory Fund,* 513 U.S. 88, 98 (U.S. 1994)(emphasis in original). Thus, ratification attempted after the statute of limitations has run on a cause of action is ineffective. *See Town of Nasewaupee bay v. City of Sturgeon Bay,* 251 N.W.2d 845 (Wis. 1977)(dismissing complaint where boards' attempted ratification of unauthorized but timely commencement of lawsuit came after statute of limitations had run); *Miernicki v. Duluth Curling Club,* 699 N.W.2d 787 (Minn. App. 2005)(granting summary judgment where attempted ratification occurred after expiration of statute of limitations).

To permit ratification after a statute of limitations has expired would be to render the limitations periods meaningless. As First Union argues, were a party to have the unilateral power to retroactively ratify its agent's actions years after their occurrence, a defendant could be exposed to liability for an indefinite period of time. Limitations are designed to prevent precisely that type of prolonged exposure to suit.

In this case, while the Board of Directors could have initiated the lawsuit in 2002, it could not now initiate the lawsuit because the statute of limitations is long since passed. The ratification is therefore ineffective, and fails to create an issue of material fact in this case. Duffy did not originally have the authority to file suit against First Union, and the Board's belated attempts to ratify that action fail as a matter of law.

### D. Whether the second ratification by the Board of Duffy's actions creates retroactive authority for Duffy to initiate this lawsuit

 *\*11*  Following oral argument on First Union's Motion for Summary Judgment, First Telebanc filed with this Court Duffy's resignation from the board, along with a Resolution of the board of First Telebanc. In this Resolution, the Board consists of three members, and does not include Duffy. This new Board ratified Duffy's action in filing the initial lawsuit on June 5, 2002. First Telebanc appears to concede that its earlier attempt at ratification failed on several bases, and attempts to cure those deficiencies with this new ratification.

However, as First Union correctly argues, this new ratification attempt is also legally invalid.

As First Union points out, First Telebanc's new filings are both unsworn and untimely. The Eleventh Circuit has stated that "only 'pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, can be considered by the district court in reviewing a summary judgment motion." *Carr v. Tatangelo,* 338 F.3d 1259, 1273 (11th Cir. 2003). First Telebanc's newly filed Resolution of the Board fits into none of these categories. Instead, it is an unsworn document filed *after* the motion for summary judgment was fully briefed, and *after* oral argument was held. Fed. R. Civ. P. 56(c) provides that" [t]he adverse party prior to the day of hearing may serve opposing affidavits." Clearly, this latest Resolution is not an affidavit, nor was it filed prior to the day of the hearing.

It appears that First Telebanc is attempting to cure its earlier papers, whose deficiencies were made clear during oral argument. For First Telebanc to attempt to change the record at this late stage appears to be merely a last ditch effort to avoid summary judgment. Such a filing is not in accordance with the Rules of Federal Procedure, and need not be considered by this Court.

However, even if I were to consider the effect of this latest attempt at ratification, I would find that it fails as a matter of law. This new ratification is ineffective on the grounds that the statute of limitations has expired on this breach of contract action. As discussed above, the January, 2007 ratification was invalid as time-barred; this new June, 2007 ratification is similarly barred.

First Telebanc has failed to create any genuine issue of material fact to defeat First Union's assertion that this lawsuit was, and continues to be, unauthorized. Duffy has never had the authority to file this suit, and as a matter of law, the Board may not now-ten years after the alleged breach of contract-ratify the action.

### E. Whether First Union has standing to assert Duffy's lack of authority

First Telebanc claims that First Union's motion for summary judgment must fail because First Union does not have standing to assert Duffy's lack of authority. First Telebanc cites no legal authority in support of its position; it merely makes the statement that "[a]lthough First Union clearly had a parochial interest in which faction ultimately was held

to be in control of First Telebanc's Board of Directors and therefore this action, at no time did First Union have standing to participate in the resolution of that dispute." First Telebanc misses the point here. First Union did not participate in the state court case in which the identity of the board of directors was at issue, and had no reason to. As First Union has agreed, its position as to the lack of authority for *this* case to go forward has no bearing on who was, or is, a member of the board of directors of First Telebanc. Because the undisputed evidence shows that Duffy initiated the lawsuit on his own, and because he lacked the authority to act, the makeup of the board at any time is simply irrelevant to First Union's position in its motion for summary judgment.

**\*12** As to whether First Union has standing to question whether this lawsuit against it is proper, it is ludicrous to suggest it does not, A party has standing where it "has a sufficient stake in the controversy, with a legally cognizable interest which would be affected by the outcome of the litigation." *Accela, Inc. v. Sarasota Cty.,* 901 So. 2d 237, 238 (Fla. 2d DCA 2005). First Union clearly has an interest in whether Duffy had the authority to file the lawsuit against it, just as any defendant has an interest in whether the suit against it is properly brought. For the rule to be otherwise, a plaintiff with no connection to another entity could file lawsuits on its behalf, and the defendant would be forced to defend a suit brought by an improper party. For example, should a stranger to the corporation file suit against First Union, alleging that First Union had harmed the corporation, First Union would undeniably have standing to assert that the suit was improperly brought. *See Bend v. Basham,* 471 F.3d 1199 (11th Cir. 2006)(noting that among the prudential requirements for standing, a plaintiff cannot raise the rights of third parties). Given the OCC's decision that Duffy was prohibited from acting on behalf of the bank, a stranger to the corporation would have the same authority to file suit against First Union in this case as did Duffy.

First Telebanc misapprehends the standing issue. It is the plaintiff who must demonstrate its standing to bring the subject action. The United States Constitution limits the jurisdiction of the Federal Courts by permitting them to consider only disputes that rise to the level of being "cases" or "controversies." *Hugh Johnson Enterprises, Inc. v. City of Winter Park, Florida,* 2007 WL 1047071 at \*2 (Slip Copy)(11th Cir. 2007). In order for there to be a real case or controversy, the plaintiff must have legal authority to initiate the action. Without such legal authority, the case is not ripe for consideration. "The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes." *Id.* Independently, this Court may examine whether a plaintiff has standing, and whether, as a result, this Court has jurisdiction to hear a matter. It is the responsibility of the claimant to substantiate, when the issue is raised, that it is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers. *Elend v. Basham,* 471 F.3d 1199 (11th Cir. 2006).

In this case, Duffy had no corporate authority to file the lawsuit on behalf of the bank; he therefore had no standing to bring the action. Without standing, there is no case or controversy as to the plaintiff. Upon independent review, therefore, I conclude that this case is not properly before this court, and cannot proceed.

### IV. Conclusion

In light of all of the foregoing, summary judgment must be granted in favor of First Union. Viewing the all of the undisputed facts in the light most favorable to First Telebanc, summary judgment must be entered for First Union as a matter of law.

It is hereby **ORDERED and ADJUDGED** that:

1. First Union's Motion for Summary Judgment **[DE 35, 79] is GRANTED.**

2. First Telebanc's Complaint is DISMISSED.

3. This case is CLOSED.

4. All pending motions are DENIED as moot.

**DONE AND ORDERED** in chambers at Miami, Florida, this 6th day of August, 2007.

**All Citations**

Not Reported in Fed. Supp., 2007 WL 9702557

First Telebanc Corp. v. First Union Corporation, Not Reported in Fed. Supp. (2007)
Case 3:17-cv-00101-RDM   Document 505-2   Filed 07/10/20   Page 19 of 19
2007 WL 9702557

## Footnotes

1   Florida's Fourth District Court of Appeals also found that Duffy was not a director at the time he initiated the lawsuit, as he had been removed from the board.

2   Notably, under the doctrine of the law of the case, while the trial court on remand from the Fourth District Court of Appeals could have made a determination as to the makeup of the board of directors, it could not determine that Duffy had authority to file the lawsuit, as the Fourth District Court of Appeals had definitively determined that Duffy had no authority to act on behalf of the bank. *Engle v. Liggett Group, Inc.,* 945 So. 2d 1246, 1266 (Fla. 2006)("Law of the case 'requires that questions of law actually decided on appeal must govern the case in the same court and the trial court, through all subsequent stages of the proceedings' "). Moreover, under that same doctrine, I could make a finding contrary to that of the Fourth District Court of Appeals only if the decision was "clearly erroneous and would work a manifest injustice." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817 (U.S. 1988). Because I do not find that the Fourth District Court of Appeals' decision was clearly erroneous, under the law of the case I conclude that Duffy had no authority to act on behalf of the bank.

3   It is also worth note that while First Telebanc attempts to discard any findings made by the Fourth Circuit Court of Appeals as irrelevant, it attempts to rely upon a settlement agreement in a trial court case as legally binding.

4   This interpretation of "unlawful" is, however, a stretch. This is not a situation in which, for example, a director entered into a contract to purchase cocaine when he had no authority to act for the corporation. No board could ratify that action, as it is clearly an illegal act. In any event, the attempted ratification fails for the reasons discussed below.

5   Notably, the Resolution ratifying Duffy's actions was executed on January 24, 2007, and was attached as an exhibit to First Telebanc's Response in Opposition to First Union's Supplemental Motion for Summary Judgment. In its Reply, First Union raised the argument that the attempted ratification was barred by the statute of limitations. First Telebanc did not request leave to file a sur-reply to address the statute of limitations argument, nor did it address the statute of limitations issue at oral argument.

---

**End of Document**   © 2020 Thomson Reuters. No claim to original U.S. Government Works.