# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| Consumer Financial Protection Bureau, | ) | |
| | ) | |
| | ) | |
| *Plaintiff,* | ) | Civil Action No. 3:CV-17-00101 |
| | ) | (Hon. Robert D. Mariani) |
| v. | ) | |
| | ) | |
| Navient Corporation, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO STRIKE DECLARATIONS OF
# <u>EBONY JOHNSON AND CHRISTOPHER ALBANESE</u>

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...............................................................................1

QUESTION PRESENTED......................................................................................2

FACTUAL BACKGROUND....................................................................................3

ARGUMENT .....................................................................................................6

I.     BECAUSE NEITHER DECLARANT WAS DISCLOSED AS A WITNESS, NEITHER CAN TESTIFY AT TRIAL OR ON SUMMARY JUDGMENT....................6

II.    MS. JOHNSON'S DECLARATION IS INADMISSIBLE AS IMPROPER EXPERT TESTIMONY BY AN ATTORNEY......................................................................10

    A.    The CFPB's Attorney May Not Testify In This Case........................10

    B.    Ms. Johnson May Not Offer Expert Opinions On Statistical Sampling, Nor May She Parrot An Expert's Opinions......................12

III.    MR. ALBANESE'S DECLARATION IS INADMISSIBLE BECAUSE IT CONTAINS IMPROPER OPINIONS WITHHELD AS PRIVILEGED...........................15

    A.    The CFPB May Not Use Work Product As Shield And Sword.........15

    B.    Mr. Albanese's Declaration Is Improper Opinion Testimony ............17

CONCLUSION ..................................................................................................22

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Bailey v. Viacom Inc.*,
435 Fed. App'x 85 (3d Cir. 2011) ..................................................................8

*Berckeley Investment Group, Ltd. v. Colkitt*,
455 F.3d 195 (3d Cir. 2006) ..........................................................................17

*Dura Automotive Systems of Indiana, Inc. v. CTS Corp.*,
285 F.3d 609 (7th Cir. 2002) .........................................................................14

*Ely v. Cabot Oil & Gas Corp.*,
2016 WL 4169220 (M.D. Pa. Feb. 17, 2016) ................................................14

*Gallatin Fuels, Inc. v Westchester Fire Insurance Co.*,
2006 WL 2289789 (W.D. Pa. Jan. 13, 2006) .................................................17

*Hartle v. FirstEnergy Generation Corp.*,
2014 WL 1235826 (W.D. Pa. Mar. 25, 2014) ................................................14

*Hered, LLC v. Seneca Insurance Co.*,
2009 WL 4260667 (M.D. Pa. July 10, 2009) ...........................................14–15

*In re Avandia Marketing, Sales Practices & Product Liability Litigation*,
415 F. Supp. 3d 498 (E.D. Pa. 2019) .......................................................15–16

*In re TMI Litigation*,
193 F.3d 613 (3d Cir. 1999) ......................................................................9, 10

*Inglett & Co. v. Everglades Fertilizer Co.*,
255 F.2d 342 (5th Cir. 1958) ....................................................................11, 12

*Konstantopoulos v. Westvaco Corp.*,
112 F.3d 710 (3d Cir. 1997) (Alito, J.) ............................................................7

*Miller Electric Construction, Inc. v. Devine Lighting Co.*,
421 F. Supp. 1020 (W.D. Pa. 1976) ...............................................................11

*Moran v. Davita, Inc.*,
2008 WL 4447093 (D.N.J. Sept. 26, 2008) ...................................................17

*Murray v. Gemplus Int'l, S.A.*,
    217 F.R.D. 362 (E.D. Pa. 2003) .................................................................15

*Roberts v. United States*,
    2012 WL 2374656 (D.N.J. June 22, 2012).............................................9–10

*Siemens Medical Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*,
    2008 WL 3862091 (D. Del. Aug. 20, 2008)................................................17

*St. Paul Fire & Marine Insurance Co. v. Nolen Group, Inc.*,
    2005 WL 1168380 (E.D. Pa. May 13, 2005)...............................................14

*TK-7 Corp. v. Estate of Barbouti*,
    993 F.2d 722 (10th Cir. 1993) ..................................................................14

*United States v. Birdman*,
    602 F.2d 547 (3d Cir. 1979) .....................................................................11

*United States v. Dicker*,
    853 F.2d 1103 (3d Cir. 1988) ...................................................................20

*United States v. Freeman*,
    730 F.3d 590 (6th Cir. 2013) ....................................................................20

*United States v. Fulton*,
    837 F.3d 281 (3d Cir. 2016) .....................................................................20

*United States v. Letscher*,
    83 F. Supp. 2d 367 (S.D.N.Y. 1999) .........................................................11

*United States v. Torralba-Mendia*,
    784 F.3d 652 (9th Cir. 2015) ....................................................................20

*United States v. Williams*,
    827 F.3d 1134 (D.C. Cir. 2016)................................................................20

*Universal Athletic Sales Co. v. American Gym Recreational & Athletic
    Equipment Corp.*,
    546 F.2d 530 (3d Cir. 1976) ...............................................................10–11

*Webb v. Tahsin Industrial Corp.*,
    2016 WL 454821 (M.D. Pa. Feb. 5, 2016)..........................................8–9, 10

## RULES

Fed. R. Civ. P. 37 ...................................................................................6

Fed. R. Civ. P. 56 ...................................................................................6

Fed. R. Evid. 701 .........................................................................18, 20, 21

Fed. R. Evid. 702 .........................................................................14, 18, 20

Pa. Code of Prof. Ethics Rule 3.7 ...........................................................11

## OTHER AUTHORITIES

FED. JUD. CTR., REFERENCE MANUAL ON SCIENTIFIC EVIDENCE (3d ed. 2011), https://www.fjc.gov/sites/default/files/2015/SciMan3D01.pdf.....................13

## PRELIMINARY STATEMENT

Lacking admissible evidence to support its claim that Navient "steered" borrowers into forbearance, the CFPB moves for summary judgment based on two declarations from its own employees—never before disclosed as witnesses— setting forth opinions they are unqualified to offer.  At issue are declarations from Ebony Johnson, a CFPB enforcement attorney in this case, and Christopher Albanese, a CFPB investigator on the enforcement team.  *See* Exs. A ("Johnson Decl."), B ("Albanese Decl.").[1]  This testimony could not be presented at trial and may not be considered on summary judgment.

Both declarations relate to a call sampling and review exercise performed by the CFPB and its expert.  Ms. Johnson's declaration purports to describe ██████ ███████████████████████████████████████████████████.  The CFPB relies entirely on Ms. Johnson's declaration to assert that the exercise resulted in a ████████████████████—a conclusion that amounts to an expert opinion.  Yet Ms. Johnson has not been qualified as a statistical expert, and can neither offer her own statistical evidence nor parrot an expert's conclusions.  Moreover, as an attorney in this case, Ms. Johnson may not offer any testimony.

---

[1] The CFPB submitted these declarations as Exhibits 288 and 289 to its Statement of Undisputed Materials Facts, Doc. 483.  The CFPB designated these documents as confidential.

Mr. Albanese's declaration purports to describe █████████████ ████████████████████████████████████████████ ████████████████████████. During expert discovery, the CFPB flatly refused to produce information about the review, claiming that it was privileged and constituted attorney work product. Yet the CFPB now seeks to present ██ ██████████████ as evidence. Privilege cannot be used as both sword and shield, and the CFPB made its choice to shield its call review from discovery. In addition, Mr. Albanese's declaration presents inadmissible opinion testimony.

Beyond these fundamental deficiencies, neither witness was disclosed in discovery, which forecloses their use at trial and on summary judgment. Both declarations represent an attempted end-run around the rules of evidence and make use of improperly withheld information.

## QUESTION PRESENTED

Whether the declarations, along with the paragraphs in the CFPB's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment, Doc. 483 ¶¶ 145–51, and the portions of the CFPB's Brief in Support of its Motion for Summary Judgment, Doc. 482 at 9–10, 37–38, that rely on them should be struck; they should.

## **FACTUAL BACKGROUND**

The declarations relate to work performed by Dr. Charles Mullin, a self-described expert in ████████████ at Bates White, ████████████ ████████ and the CFPB enforcement team's review of that sample.  Doc. 356 (Sept. 12, 2019 Ltr. from CFPB to Special Master) at 1.  According to Dr. Mullin, he used his ████████████████████████████ to ████████ a ████████ for sampling, which he described as a ████████████████ that is ████████████████ Doc. 350, Ex. 1 (Expert Report of Dr. Charles H. Mullin) ("Mullin Rep.") ¶¶ 1, 66, 68, 74.  The CFPB enforcement team then listened to the sample calls produced by Navient in discovery to determine whether particular calls "exhibited steering," according to the CFPB's definition. Doc. 470-1, Ex. A (Sept. 27, 2019 Ltr. from CFPB pursuant to Special Master Order #47) at 1; *see also* Albanese Decl. ¶ 4 (describing ████████████ ████████).

Prior to summary judgment, the CFPB represented to the Court and Navient that "the reports of Dr. Mullin and any opposing expert from Navient are not needed for resolution of summary judgment," Doc. 440 (Plaintiff's Motion for an Enlargement of Time) at 5, and that the CFPB's determinations from its call review would not be presented ████████████████ Doc. 372 (Oct. 8, 2019 Ltr. from CFPB to Special Master) at 2.  Despite these assurances,

3

the CFPB now proffers ███████████████████████████████

████████████████████ in support of its summary judgment motion.

As context, Dr. Mullin's initial report relied on █████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ Doc. 356 at 2.  Navient objected to the CFPB's

attempt to clothe the opinions of its enforcement team in an expert report and

sought discovery of:

> all information . . . regarding [the CFPB's] "steering" analysis—
> including the definition for "steering" that was developed and used by
> the CFPB, the criteria that were applied to determine which calls
> "exhibited steering," the method by which the determination of whether
> a call "exhibited steering" was made for each call reviewed, and any
> documents or records created during the review.

Doc. 350 (Sept. 6, 2019 Ltr. from Defs. to Special Master) at 3.  The CFPB

resisted this discovery, claiming ██████████████████████████████

████████████████████████ Doc. 356 at 3.

When Navient objected, the Special Master ordered the CFPB to produce the

requested materials and supplement its response to Navient's interrogatories, Doc.

357 (Special Master Order #47), which had asked the CFPB to "[d]escribe each

instance in which Navient Solutions 'steered' a Navient Borrower," and produce

"[a]ll documents considered or relied upon in responding," Ex. C (Navient's First

Set of Interrogatories) at 9, 19.  The CFPB produced its definition of "steering,"

but withheld all other materials based on attorney-client privilege and the work product doctrine.  Doc. 470-1, Ex. A at 2–3.

In light of the reasserted privilege claim, Navient sought further relief, arguing that, "[i]f the CFPB intends to introduce its call review exercise into evidence through some other witness or by other means it is required to disclose it, . . . so that [Navient] can seek appropriate discovery."  Doc. 367 (Oct. 2, 2019 Ltr. from Defs. to Special Master) at 3 n.3.  The CFPB responded that ███████

███████████████████████████████████████████████████████

███████████████████████████  Doc 372 at 2.  Navient argued that if the CFPB was "going to claim [a]ttorney/[c]lient [p]rivilege," then Dr. Mullin "should not be permitted to get on the stand and say anything about the CFPB's secret call review."  Ex. D (Oct. 9, 2019 Hrg. Tr.) at 49:20–22.  The CFPB responded, "**[t]here's going to be *no* testimony about any aspect of the [CFPB's] call review**."  *Id.* at 50:9–11 (emphasis added).  The Special Master denied further discovery based on this commitment and the CFPB's agreement to withdraw the CFPB's "steering" opinions from Dr. Mullin's report.  Doc. 371 (Special Master Order #53).  The Special Master ordered the CFPB to submit a revised report from Dr. Mullin "that makes clear . . . that he will not be expressing any opinion on . . . whether any particular communication . . . exhibited . . . steering."  *Id.*  The CFPB served an amended report from Dr. Mullin on October 21, 2019.

## **ARGUMENT**

Ms. Johnson's and Mr. Albanese's declarations must be struck.  Declarations offered in support of summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. Proc. 56(c)(4).  Neither declaration comes close to meeting these requirements.

## I.    BECAUSE NEITHER DECLARANT WAS DISCLOSED AS A WITNESS, NEITHER CAN TESTIFY AT TRIAL OR ON SUMMARY JUDGMENT

"If a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. Proc. 37(c)(1).  Given the CFPB's blatant failure to comply with Rule 26, the Special Master's orders, and its own representations, fundamental fairness requires this Court to strike Ms. Johnson's and Mr. Albanese's declarations.

During more than two years of discovery, the CFPB updated its initial disclosures seven times, designating (and de-designating) dozens of witnesses.  *See* Ex. E (Plaintiff's Disclosures).  Despite the Special Master setting a clear deadline of July 8, 2019, for final supplemental disclosures, Doc. 315 (Special Master Order #33) at 2, the CFPB never designated Ms. Johnson or Mr. Albanese as witnesses, Ex. E.  Indeed, Mr. Albanese was never even disclosed as having information relevant to the case.  *Id.*

Although courts may, in some circumstances, excuse a party's failure to supplement its disclosures, Third Circuit precedent makes clear that such leniency would be inappropriate here. Four factors frame the analysis:

> (1) [T]he prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order.

*Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719–20 (3d Cir. 1997) (Alito, J.).

All four factors favor striking the declarations, but the critical factor here is the CFPB's willful failure to comply with the Special Master's orders. Here, the CFPB's conduct goes far beyond missing a disclosure deadline. The CFPB did not merely fail to identify Ms. Johnson and Mr. Albanese as witnesses prior to summary judgment; it *affirmatively represented* that it would not present the content now contained in their declarations—representations on which both the Court and Navient relied.

With regard to the call review exercise that the CFPB shielded with work product assertions, the CFPB told the Special Master, "[i]t is not the case that we intend to unveil some work product at [a] late juncture." Ex. F (Sept. 16, 2019 Hrg. Tr.) at *3:22–23. The CFPB further represented that it would ███████

████████████████████████████████████████████████████████████████

████████████████████████████████ Doc. 372 at 2.  Based on

these representations, which the Special Master found had "moved the ball

forward," Ex. D at 59:13–14, the Special Master did not require the CFPB to

produce additional information from its call review, Doc. 371.  And based on the

CFPB's representation that "the reports of Dr. Mullin and any opposing expert

from Navient are not needed for resolution of summary judgment," Doc. 440 at 5,

the Special Master likewise allowed the parties to proceed to summary judgment

without resolution of discovery into Dr. Mullin's sampling methodology.

Yet, the CFPB's motion for summary judgment now relies on declarations

that present ████████████████████████████████████

████████ through its own employees.  The CFPB denying discovery on the basis

that it has no plans to use the material, and then relying on the material at summary

judgment, is quintessentially the type of conduct that requires striking the

declarations.  *See Bailey v. Viacom Inc.*, 435 Fed. App'x 85, 89–90 (3d Cir. 2011)

(affirming exclusion of expert where plaintiffs represented they were not putting

forward expert and defendants moved for summary judgment based on that

representation); *Webb v. Tahsin Indus. Corp.*, 2016 WL 454821, at *4 (M.D. Pa.

Feb. 5, 2016) ("[S]everal courts in the Third Circuit's venire have held that expert

identification, untimely expert replacement, and other related expert disclosure

deficiencies typically constitute 'flagrant disregard' of a district court's scheduling order, thereby warranting exclusion.").

The "prejudice and surprise" here is also grievous:  Navient learned of these two witnesses for the first time when the CFPB filed its summary judgment motion on May 19, 2020.  Navient is unfairly forced to oppose the CFPB's motion for summary judgment without the opportunity to test the conclusions offered by these new declarants.  *See In re TMI Litig.*, 193 F.3d 613, 718, 721–22 (3d Cir. 1999) (affirming finding of prejudice where previously undisclosed reports were offered eight months after the close of expert discovery and without explanation).

Nor can this prejudice be cured before summary judgment briefing is complete, or without a complete disruption of the progress made in finally reaching the summary judgment stage.  The Complaint in this case was filed following a three-year investigation, in which Navient produced thousands of documents and offered numerous employees for depositions.  Notwithstanding the wealth of data at the CFPB's disposal at the inception of this case, discovery continued for almost three more years, requiring six extensions (four at the CFPB's sole request) and the involvement of the Special Master.  Docs. 82, 104, 141, 315, 344, 435.  Now that the protracted discovery phase has finally reached its close, the prejudice of reopening that process is immense and unacceptable.  *See Roberts v. United States*, 2012 WL 2374656, at *5 (D.N.J. June 22, 2012) (excluding witnesses where case

had been pending "for nearly three years," with "an extremely lengthy period of very active discovery," which was extended "on five occasions, four at [the p]laintiff's request"); *see also In re TMI Litig.*, 193 F.3d at 722 (affirming exclusion where permitting untimely expert reports would be disruptive).

Even before reaching the infirmities discussed below, given "the high level of prejudice Defendant[s] would encounter as a result of the introduction of new substantive evidence so late in the litigation and so far past this Court's clearly demarcated deadlines" and the conduct on the part of the CFPB leading up to this point, on this basis alone "the only fair result" is exclusion. *Webb*, 2016 WL 454821, at *7.

## II.   MS. JOHNSON'S DECLARATION IS INADMISSIBLE AS IMPROPER EXPERT TESTIMONY BY AN ATTORNEY

It should go without saying that a party's attorney may not copy an expert's conclusions into a declaration, sign her own name at the bottom, and submit it as evidence in support of summary judgment.  Incredibly, though, that is exactly what the CFPB has done.  The CFPB's attorney may not testify in this case.  And even if she could, she certainly may not regurgitate an expert opinion.  Ms. Johnson's declaration must be struck.

### A.   The CFPB's Attorney May Not Testify In This Case

It is generally "inappropriate for an attorney . . . to testify on behalf of a client."  *Universal Athletic Sales Co. v. Am. Gym. Recreational & Athletic Equip.*

10

*Corp.*, 546 F.2d 530, 538 (3d Cir. 1976).  Because it is an "unnatural, if not virtually impossible, task for counsel, in his own case, to drop his garments of advocacy and take on the somber garb of an objective fact-stater," "the adversary system functions best when the role[s] . . . of counsel [and] witness [are] sharply separated." *Inglett & Co. v. Everglades Fertilizer Co.*, 255 F.2d 342, 348–50 (5th Cir. 1958); *see also Universal Athletic Sales Co.*, 546 F.2d at 538 ("[T]he role of an advocate and of a witness are inconsistent.").

Given this bifurcation of roles, professional ethics typically prohibit an attorney from "act[ing] as [an] advocate at a trial in which the lawyer is likely to be a necessary witness."  Pa. Code of Prof. Ethics Rule 3.7.  "The courts have shared the legal profession's disapproval of the double role of advocate-witness." *United States v. Birdman*, 602 F.2d 547, 552–53 & n.14 (3d Cir. 1979) (collecting cases); *see also Miller Elec. Constr., Inc. v. Devine Lighting Co.*, 421 F. Supp. 1020, 1024 (W.D. Pa. 1976) (refusing to "permit counsel to both conduct the trial of the case and testify for his client in a contested matter unless no other alternative will avoid manifest unfairness to the client").  Moreover, Ms. Johnson's substantive declaration is far from the "common" use of an attorney affidavit "to put documents before the Court" or "set forth the procedural history of this case." *United States v. Letscher*, 83 F. Supp. 2d 367, 381 (S.D.N.Y. 1999).

Ms. Johnson cannot be both an advocate for the CFPB and a witness in this case. This Court should reject Ms. Johnson's attempt to "become the voice on summary judgment," *Inglett*, 255 F.2d at 350, and strike her declaration.

### B. Ms. Johnson May Not Offer Expert Opinions On Statistical Sampling, Nor May She Parrot An Expert's Opinions

After assuring Navient and the Court that Dr. Mullin's report would not be needed for summary judgment, the CFPB now ██████████████████ █████████████ a declaration from its own enforcement attorney. But Ms. Johnson has not been put forward as an expert in statistics and therefore is not qualified to opine. Nor may counsel for a party simply parrot the opinions of an expert, as Ms. Johnson's declaration attempts to do.

Although the CFPB did its best to present the declaration as a factual recitation, there can be no dispute that it presents expert opinions. Ms. Johnson's description of ████████████████████████████████ ████████████████████████████████████████ ██████. *Compare, e.g.*, Johnson Decl. ¶ 6 ████████████████ ████████████████████████████████████ ████████████████████████████, *with* Mullin Rep. ¶ 97 (explaining ████████████████████████████████████████). And although Ms. Johnson studiously avoids using the words ████████████ ██████ the CFPB's statement of facts makes that leap for her. *See* Doc. 483

¶ 145 (citing Ms. Johnson's declaration as evidence that ███████████

████████████████).  ████████████████████████ is precisely

what the CFPB claims Dr. Mullin ██████████████ to do.  Doc. 356 at 1.

Though the words "random" and "sample" have crept into legal (and lay)

vocabularies, "[s]tatisticians use the term[s] in a far more technical sense."  Fed.

Jud. Ctr., Reference Manual on Scientific Evidence 230 (3d ed. 2011).[2]  A

true "sample" must be "random[] in the technical sense [to] provide[] assurance of

unbiased estimates."  *Id.*  If the CFPB's "sample" was not selected according to

this more technical sense of randomness, any conclusions the CFPB wishes to

extrapolate beyond its sample would be invalid.  *Id.* ("Looser definitions of

randomness are inadequate for statistical purposes."); *see also* Defendants'

Response to Plaintiff's Statement of Undisputed Material Facts Ex. 18 ¶¶ 7–8.[3]

Yet, the CFPB relies on the sample to claim that ████████████████████

████████████  Doc. 482 at 9.

Indeed, the CFPB has recognized that whether a sample is reliable is not a

simple and readily ascertainable fact appropriate for lay evidence.  To the contrary,

the CFPB argued that the relevant question for Dr. Mullin was ███████████

████████████████████████████  Doc. 356 at 4, acknowledging Navient's

---

[2] *Available at* https://www.fjc.gov/sites/default/files/2015/SciMan3D01.pdf.

[3] Filed concurrently with this Motion to Strike.

prerogative to "test [the sampling] analysis . . . through deposition," Ex. F at
*2:14–15.  Yet having made those admissions, and after assuring Navient no
deposition of Dr. Mullin would be necessary for summary judgment, the CFPB
now ambushes Navient with Dr. Mullin's expert opinions through Ms. Johnson's
declaration.

Ms. Johnson has not claimed to be a statistician.  She has not put forward
any reason to believe that she is qualified "by knowledge, skill, experience,
training, or education" to testify about sampling methodology.  Fed. R. Evid. 702.
Quite simply, "[t]here is no evidence that [s]he is qualified to opine" regarding the
validity of a statistical sample.  *Hartle v. FirstEnergy Generation Corp.*, 2014 WL
1235826, at *6 (W.D. Pa. Mar. 25, 2014).

Nor can Ms. Johnson serve as a "mouthpiece of [an] expert."  *St. Paul Fire
& Marine Ins. Co. v. Nolen Grp., Inc.*, 2005 WL 1168380, at *9–10 (E.D. Pa. May
13, 2005) (citing *Dura Automotive Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609,
613–14 (7th Cir. 2002)).  This is true where an expert serves as a mouthpiece of
another expert, and *a fortiori* where a lay witness (much less an attorney-advocate)
attempts to do the same.  A witness may not simply "assum[e]" the reliability of an
expert's work and repeat it wholesale.  *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d
722, 732 (10th Cir. 1993); *see also Ely v. Cabot Oil & Gas Corp.*, 2016 WL
4169220, at *6–7 (M.D. Pa. Feb. 17, 2016).  Ms. Johnson cannot "simply 'parrot'

14

the ideas of other experts or individuals." *Hered, LLC v. Seneca Ins. Co.*, 2009 WL 4260667, at *2 (M.D. Pa. July 10, 2009) (Vanaskie, J.).  Ms. Johnson's declaration must be struck.

### III.  MR. ALBANESE'S DECLARATION IS INADMISSIBLE BECAUSE IT CONTAINS IMPROPER OPINIONS WITHHELD AS PRIVILEGED

Prevented from submitting its "steering" opinions through Dr. Mullin, the CFPB now ███████████████████████ declaration of one of its own investigators—despite express assurances to the Court that "[t]here's going to be *no* testimony about any aspect of the [CFPB's] call review." Ex. D at 50:9–11 (emphasis added).  Having asserted work product to shield those determinations from discovery, the CFPB may not now use that same information as an evidentiary "sword."  Furthermore, the declaration offers inadmissible opinion testimony and therefore may not be considered on summary judgment.

### A.  The CFPB May Not Use Work Product As Shield And Sword

The CFPB opposed, on work product grounds, discovery of the method by which the CFPB reviewed and categorized calls as "steering" and of any evidence developed in that exercise.  Yet it now improperly attempts to offer ██████ ███████████████████ as evidence through Mr. Albanese's declaration. Parties may not "utilize [] privilege as an offensive weapon, selectively disclosing communications in order to help its case." *Murray v. Gemplus Int'l, S.A.*, 217 F.R.D. 362, 366–67 (E.D. Pa. 2003); *see also In re Avandia Mktg., Sales Practices*

*& Prod. Liab. Litig.*, 415 F. Supp. 3d 498, 507–08 (E.D. Pa. 2019) ("Work-product protection may not be used as both a sword and a shield to disclose otherwise protected information that helps and withhold information that hurts."). That is exactly what the CFPB seeks to do here.

The circumstances of the CFPB's refusal to allow discovery could not be clearer. When Navient sought discovery of the CFPB's call-review exercise, the CFPB initially claimed that it would rely only on the calls themselves and that the CFPB's ████████████████████████████████████ Doc. 356 at 3. After the CFPB then seemed to walk that claim back, *see* Ex. F at *3:3–*4:3, the Special Master ordered it to produce "any documents or records created during the [CFPB's call] review." Doc. 357 at 4. Yet the CFPB refused, once again retreating to its claim that "any documents that could be deemed to be responsive to" the order were privileged or attorney work product. Doc. 470-1, Ex. A at 2–3. The Special Master accepted the CFPB's unequivocal invocation of the privilege, and the material was never produced. Despite this, Mr. Albanese's declaration now purports to present evidence describing █████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████ Albanese Decl. ¶ 4, the same "criteria used to classify a call as exhibiting steering," Doc. 470-1, Ex. A at 1–2.

Having invoked work-product protection to shield its internal call review from discovery, the CFPB may not now use a declaration describing ████ ████ to support its motion for summary judgment. The Court may "start and end [its] analysis with the fundamental principle of fairness." *Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 2008 WL 3862091, at *1 (D. Del. Aug. 20, 2008). No party may "use confidential information as both a shield and a sword." *Id.* As the Third Circuit has explained, a party may not "rely upon" evidence "without permitting [the other party] the opportunity to probe the surrounding circumstances and substance." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 222 (3d Cir. 2006); *see also Moran v. Davita, Inc.*, 2008 WL 4447093, at *6 (D.N.J. Sept. 26, 2008) (precluding "evidence and argument" where defendants had previously "use[d] privilege as a shield"); *Gallatin Fuels, Inc. v Westchester Fire Ins. Co.*, 2006 WL 2289789, at *1 (W.D. Pa. Jan. 13, 2006) (excluding "any documents or other information that [the defendant] has withheld from [the p]laintiff as privileged"). Because the CFPB refused to open up its call review for discovery, the declaration it offers describing that review must be struck.

## B.    Mr. Albanese's Declaration Is Improper Opinion Testimony

In addition, there is no evidentiary basis to admit Mr. Albanese's declaration, which ████████████████████ the CFPB submitted

17

with its motion.  Mr. Albanese is not a qualified expert testifying under Federal

Rule of Evidence 702.  Nor does he present admissible lay opinion testimony

under Federal Rule of Evidence 701.  Mr. Albanese's declaration must be struck.

Although some of the ▮▮▮▮▮▮▮▮▮▮▮ noted in the declaration may

appear factual, a close review shows that Mr. Albanese is offering ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Albanese Decl. ¶ 8(a). ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮, the Navient representative discussed "a payment based on [the

borrower's] income" with the possibility that student loans would be "forgiven."

Ex. G (NAV-05952147) at 14:1–5; *see* Albanese Decl. ¶ 9, Ex. A (▮▮▮▮▮

▮▮).[4]  Mr. Albanese either erroneously ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮.

In addition, ▮▮▮▮▮▮▮▮▮▮ on its face contains a number of

subjective determinations:  it requires that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[4] The call recordings cited in this Motion are on the disk provided to the Court by
the CFPB.  Defendants have submitted transcripts of the cited calls as exhibits.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████        Albanese Decl. ¶ 4(d) (emphases added).  Mr.

Albanese testifies ████████████████████, but a review of the calls

demonstrates that, for example, ████████████████████ is an

opinion, not a fact.  As just a few examples of the calls ████████████████

████████████████:

- A borrower asked the Navient representative if he could "defer [his] payment for now."  Ex. H (NAV-05952266) at 2:6–7.  When the representative instead offered "a repayment plan" that would "give [him] a lesser amount to pay or a possible zero dollars for the next 12 months," the borrower responded that he was "just kind of having problems for the next three or four months."  *Id.* at 3:15–17, 3:21–22.

- Another borrower explained that he needed "three months" of relief due to an unexpected expense, but confirmed that his "normal monthly payment of [$]169 is something that . . . [would] be affordable" after that period.  Ex. I (NAV-06399395) at 4:12, 4:23–5:4.

- Yet another borrower explained that her employer was "going to pay off [her] student loans" and she needed a forbearance only until that happened.  Ex. J (NAV- 05952140) at 2:24–25.

Mr. Albanese's determinations ████████████████████████

████████████ reflect his subjective *opinion* ████████████████████.

Such subjective opinions are inadmissible here.  The Federal Rules of Evidence provide two options for offering opinion testimony: (1) expert testimony under Rule 702, and (2) lay opinion testimony under Rule 701.  Mr. Albanese's declaration fails under both.

*First*, the Third Circuit, like other Circuit courts, has "held that the interpretation of clear conversations" on recorded calls is inadmissible under either Federal Rule of Evidence 701 or 702.  *United States v. Dicker*, 853 F.2d 1103, 1108–09 (3d Cir. 1988) (collecting cases).[5]  Given that Mr. Albanese's declaration seeks to ███████████████████████████████████████████████ ██████████████, it is therefore inadmissible.  *Second*, because Mr. Albanese was not disclosed as an expert and his declaration does not disclose any "scientific, technical, or other specialized knowledge," he cannot serve as an expert under Rule 702.  *Third*, Mr. Albanese's testimony fails to meet the requirement under Rule 701 that "permits a non-expert witness to offer her opinion to the jury if, and only if, her testimony is . . . rationally based on the witness's perception."  *United States v. Fulton*, 837 F.3d 281, 291 (3d Cir. 2016).  Such lay opinion testimony is permitted only where it "has the effect of describing something that the jurors could not experience for themselves by drawing upon the witness's sensory and

---

[5] *See also, e.g.*, *United States v. Williams*, 827 F.3d 1134, 1157 (D.C. Cir. 2016); *United States v. Torralba-Mendia*, 784 F.3d 652, 660 (9th Cir. 2015); *United States v. Freeman*, 730 F.3d 590, 597 (6th Cir. 2013).

experiential observations that were made as a *first-hand witness* to a particular

event." *Id.* (emphasis added).  Mr. Albanese did not participate in these calls; he

merely ███████████████████████████████████████████

███████████████████████████.  His declaration "amounts to little more than

choosing up sides [and] merely tells the [factfinder] what result to reach"—

precisely the type of lay opinion testimony Rule 701 "is carefully designed to

exclude." *Id.*   Mr. Albanese's declaration must be struck.

## <u>CONCLUSION</u>

The declarations of Ms. Johnson and Mr. Albanese should be struck, along with all portions of the CFPB's motion for summary judgment and statement of facts that rely on them.

Dated:  July 16, 2020

Respectfully submitted,

/s/ Jonathan E. Paikin
Jonathan E. Paikin (DC 466445) (*pro hac vice*)
Daniel P. Kearney (DC 977148) (*pro hac vice*)
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
jonathan.paikin@wilmerhale.com
daniel.kearney@wilmerhale.com
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

Daniel T. Brier (PA 52348)
Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
dbrier@mbklaw.com
Tel: 570-342-6100
Fax: 570-342-6147

*Counsel for Navient Corporation, Navient Solutions, LLC, and Pioneer Credit Recovery, Inc.*

## CERTIFICATE OF WORD COUNT

I hereby certify in accordance with Local Rule 7.8(b)(2) that the foregoing document is 5,000 words.

/s/ Karin Dryhurst
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

Dated:  July 16, 2020

# CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2020, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

/s/ Karin Dryhurst
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
   Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363