**THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Consumer Financial Protection Bureau, | |
| Plaintiff, | |
| v. | Case No. 3:17-CV-00101-RDM (Hon. Robert D. Mariani) |
| Navient Corporation, et al., | |
| Defendants. | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF
UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

# **TABLE OF CONTENTS**

I.      NAVIENT CORPORATION ........................................................................3

II.     COUNTS I–II ...........................................................................................5

III.    COUNTS III–IV .......................................................................................66

IV.     COUNT V.................................................................................................83

V.      COUNT VI ...............................................................................................96

VI.     COUNTS VII-X......................................................................................130

VII.    COUNT XI .............................................................................................147

In accordance with Local Rule 56.1, Defendants Navient Corporation, Navient Solutions, LLC ("Navient"), and Pioneer Credit Recovery, Inc. ("Pioneer") file this response to Plaintiff's Statement of Undisputed Material Facts ("PSUF").

Before turning to the specific responses, Defendants respectfully believe that the PSUF should be struck in its entirety for three reasons.

*First*, the PSUF does not comply with the Court's order that the statement of facts consist of no more than "400 numbered statements of fact" "which require[] a single response by the opposing party" and that "[n]o numbered statement of material fact may include subparts or subdivisions."  Doc. 463 at 2.  The CFPB has repeatedly consolidated multiple factual assertions into a single paragraph, including characterizing up to 450 individual phone calls or an entire borrower experience in one paragraph, requiring Defendants to provide hundreds of responses to a single paragraph.[1]  Defendants have endeavored to be responsive, even though it has required review of hundreds of call recordings for which the CFPB did not provide transcripts (and thus, no ability for the Court to independently determine whether the CFPB's factual assertions are correct without itself reviewing hundreds of audio recordings).

---

[1] *See, e.g.*, *infra* RSUF ¶¶ 145–51, 155, 288–89, 332–33, 338, 340, 344.

*Second*, several paragraphs do not comply with the requirement that "every statement of material fact . . . shall be accompanied by a specific reference to the parts of the record that support the statements."  Local Rule 56.1; Doc. 463 at 3. The CFPB has repeatedly cited material that either does not support the statement of fact whatsoever or, for example, misquotes or mischaracterizes testimony that could be quoted verbatim.[2]  In instances where the mistakes are not material for purposes of this motion, Defendants did not correct them.

*Third*, only admissible evidence can be considered on summary judgment. Fed. R. Civ. P. 56(c)(2).[3]  A significant number of the CFPB's factual assertions rely on inadmissible hearsay and subsequent remedial measures evidence, including inadvertently produced privileged material,[4] and/or rely on evidence outside of the statute of limitations for the CFPB's claims.[5]

---

[2] *See, e.g., id.* at ¶¶ 10, 52–53, 63–64, 79, 85, 92, 95, 163–64, 177, 182–84, 186, 189, 206–10, 216–17, 221–22, 238, 257, 260, 262, 274, 278, 282, 286, 311, 317, 347, 355, 357, 376, 381–85.

[3] Defendants reserve any and all evidentiary objections to the materials cited in support of the PSUF.

[4] *See, e.g., infra* RSUF ¶¶ 167–68, 170, 172–77, 194, 207–08, 212–15, 239, 240–49, 258–79, 283–84, 296, 298, 343–46.

[5] *See, e.g., id.* at ¶¶ 326–33, 335–38, 353–54.

## DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## I.   NAVIENT CORPORATION

1.     Admitted in part and denied in part.  Defendants admit that Navient is a subsidiary of Navient Corporation.  Defendants deny that Pioneer is a direct subsidiary of Navient Corporation because it is a subsidiary of Asset Performance Group, which is in turn a subsidiary of Navient Corporation.  RSUF Ex. 1 at NAV-02359522; RSUF Ex. 2 at 26:16–22 (Frazier).

2.     Admitted.

3.     Admitted.

4.     Admitted.

5.     Admitted in part and denied in part.  Defendants admit that Navient Corporation and its predecessors have been the signatories to the ED contract. Defendants deny that "Navient Corporation is currently the entity that contracts with ED for the servicing of ED-owned student loans" because Navient Corporation assigned the performance of the ED contract to Navient Solutions. *See* RSUF Ex. 3 at 78:1–9, 78:19–79:8 (Woods); RSUF Ex. 4; RSUF Ex. 5.

6.     Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 41 contains the quoted language, except for the bracketed additions of "Corporation."  That alteration changes the meaning of the quoted material, which

3

refers to both Navient Corporation and its subsidiaries. *Compare* PSUF Ex. 40 at A-677 (showing stockholder returns for "Navient Corporation" specifically), *with* PSUF Ex. 40 at A-644 (describing business of "Navient"). Defendants deny that PSUF Exhibit 284 "indicat[es] that the Internal Audit function of SLM Corporation was responsible for compliance of all subsidiaries." PSUF Exhibit 284 states that

███████████████████████████████████████████████

██████████████████████████████ PSUF Ex. 284 at A-8502 (emphasis added).

7.      Admitted in part and denied in part. Defendants admit that PSUF Exhibit 40 contains the quoted language, except for the bracketed additions of "Corporation." That alteration changes the meaning of the quoted material, which refers to both Navient Corporation and its subsidiaries. *See supra* RSUF ¶ 6.

8.      Admitted in part and denied in part. Defendants admit that PSUF Exhibit 40 contains the quoted language, except for the bracketed additions of "Corporation." That alteration changes the meaning of the quoted material, which refers to both Navient Corporation and its subsidiaries. *See supra* RSUF ¶ 6. Defendants deny that PSUF Exhibit 40 demonstrates Navient Corporation's involvement in its subsidiaries' strategic direction and risk management because, as the quoted language explains, "[e]ach business area within our organization is primarily responsible for managing its specific risks." PSUF Ex. 40 at A-741.

9.       Admitted in part and denied in part.  Defendants admit that Navient Corporation provided financing to Pioneer through a line of credit.  Defendants deny that it "performs accounting services *on behalf of Pioneer*" because the services are provided pursuant to a Business Services Agreement.  RSUF Ex. 4 at NAV-01144224.

10.      Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 14 contains the quoted language.  Defendants deny that Pioneer shares all information "about its activities and operations" because the statement is unaccompanied by a reference in the record which supports the statement of fact, and should be struck.  Doc. 463 at 3.

## II.    COUNTS I–II

11.      Admitted.

12.      Admitted.

13.      Admitted.

14.      Admitted.

15.      Admitted.

16.      Admitted.

17.      Admitted.

18.      Admitted.

19.      Admitted.

20.     Admitted.

21.     Admitted.

22.     Admitted.

23.     Admitted.

24.     Admitted.

25.     Admitted.

26.     Admitted.

27.     Admitted in part and denied in part.  Defendants admit that PSUF

Exhibit 27 contains the quoted language.  Defendants deny that "the spinoff of

servicing functions from SLM Corporation occurred in 2014," because servicing

functions remained with Sallie Mae, Inc., which became Navient Solutions.  RSUF

Ex. 6 at 2, 7.

28.     Admitted.

29.     Admitted.

30.     Admitted.

31.     Admitted in part and denied in part.  Defendants admit that "the types

of communication . . . regarding the availability of [IDR] plans" that customer

service representatives were expected to "have with borrowers" did not "change as

[ED] changed its pricing structure or its allocation metrics."  Defendants deny that

Navient's expectations were not based on direction from ED, including through its

compensation structure, which paid more for borrowers in repayment, and ED's allocation metrics, which assigned more loans to servicers based on a scorecard taking into account performance metrics and surveys.  SUF Ex. 5 at NAV-00000017, 0061 – 0064.  ED regularly collects data regarding the repayment options in which borrowers enroll and call center metrics—including average call time—to compare performance across servicers.  RSUF Ex. 7 at 51:13–55:14; 107:7–22 (Tessitore).  Each month, ED also collects thousands of recordings of calls between Navient and federal student loan borrowers, which it monitors to ensure servicers are "adhering to the regulations and [ED's] expectations" and whether borrowers are "given appropriate disclosures about repayment options [and] forbearance."  *Id.* at 65:18–68:19; 71:19–72:6; 75:22–76:4 (Tessitore).  ED then completes annual "Contractor Performance Assessment Reports" regarding servicer performance.  *Id.* at 88:10–20 (Tessitore).  For example, as part of its 2012-2013 assessment, ED determined that Navient ███████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████  *Id.* at 91:10–24 (Tessitore); RSUF Ex. 8 at NAV-00975862.

32.    Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 27 contains the quoted language.  Defendants deny that delinquent

borrowers "typically" respond to written communications "by phone," because although Mr. Remondi testified that this is "the most frequent form of action," PSUF Ex. 27 at A-296:19–20 (Remondi), he also explained that "everyone responds differently." *Id.* at A-295:8 (Remondi).

33.    Admitted.

34.    Admitted.

35.    Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 11 contains the quoted language.  Defendants deny that Navient's expectations were not based on direction from ED, including through its compensation structure. *See supra* RSUF ¶ 31.

36.    Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 10 contains the quoted language, and that Navient has continuously instructed representatives to present "forbearance as the last option," before and after the change in compensation from ED in 2014.  Defendants deny that Navient's instruction was not based on direction from ED, including through its compensation structure. *See supra* RSUF ¶ 31.

37.    Admitted.

38.    Admitted in part and denied in part.  Defendants admit that Mr. Remondi testified that even if a borrower seeks forbearance at the beginning of the call, Navient's expectation is for the representative to attempt to ask questions

regarding whether the hardship is short-term and whether the borrower is aware of other options.  Defendants otherwise deny paragraph 38 because Mr. Remondi also testified that the ability to ask those questions depends on "the willingness of the customer to engage in that conversation."  PSUF Ex. 27 at A-278:4–6 (Remondi); *see also id.* at A-277:17–19 ("Sometimes the customer comes in knowing exactly what they want and is determined to get that option and move on.").

39.    Admitted in part and denied in part.  Defendants admit that Mr. Remondi testified that even if a borrower has declined IDR in one time period, Navient "may still expect" a call center representative to discuss IDR on a subsequent call with that borrower.  Defendants deny that IDR should be discussed in all circumstances because Mr. Remondi testified that the expectation is that IDR would be discussed "[i]f it was appropriate."  PSUF Ex. 27 at A-300:8 (Remondi). In the portion of Mr. Remondi's response omitted by the ellipsis, Mr. Remondi explained that the borrower's "account history," "loan balance," and other "information . . . the customer service rep was looking at at [the] time" would indicate whether discussing IDR again was "appropriate."  *Id.* at A-299:17–300:9 (Remondi).  As Mr. Remondi explained, "looking at a single transaction with a customer and not knowing any of the other details, it's very hard to make a judgment call on what should or should not have happened on [a] call."  *Id.* at A-300:15–19 (Remondi).

40.     Admitted.

41.     Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 12 contains the quoted language.  Defendants deny that enrolling a borrower in forbearance for "the full 60 months . . . was allowed."  ED regulations permit servicers to enroll borrowers in forbearance for no more than twelve months at a time.  *See* 34 C.F.R. § 685.205(c); 34 CFR § 682.211(c).  Defendants further deny that "the company should enroll the borrower in a minimal forbearance of three months duration."  Navient must grant requests for forbearance that do not exceed the limits set by ED rules.  *See* 34 C.F.R. § 685.205(c); § 682.211(c).

42.     Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 12 contains the quoted language.  Defendants deny that the call center supervisor testified that the representative was "supposed to inform the borrower of other options that are much better for the borrower in the long term."  The supervisor testified that Navient expected representatives to offer to discuss long-term options with borrowers, RSUF Ex. 9 at 252:25–254:13 (Powell), but that sometimes "borrowers are like, no, just put me into forbearance for a year," *id.* at 253:8–10 (Powell).

43.     Admitted in part and denied in part.  Defendants admit that "use of verbal forbearances . . . was limited to 36 consecutive months, and that consecutive months of forbearance could not be granted beyond that."  Defendants deny that

this was "guidance."  Rather, it was a contractual requirement.  *See* PSUF Ex. 101 at A-1971.

44.    Admitted.

45.    Admitted.

46.    Admitted.

47.    Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 8 contains the quoted language, and that the materials presented at ED's annual Federal Student Aid Conference are made available online.  Defendants deny that these materials "reflect guidance or expectations that ED has already formally conveyed to servicers."  Materials presented at the conference may not provide the full guidance and expectations ED has formally conveyed to servicers.  For example, ED also conveys guidance through regular meetings with servicers.  Following one meeting in September 2013, Navient organized at ED's request an "Income-Driven Repayment Plan (IDR) Workgroup" of student loan servicers to "improve overall customer understanding of IDR plans" and "increase IDR take rates."  RSUF Ex. 10 at NAV-00697447.  And at a meeting in October 2015, Navient presented for ED's consideration the results of a pilot program testing whether a verbal IDR application process could "improve the take-up rate for IDR plans."  RSUF Ex. 11 at 91:5–20 (Battle) (discussing RSUF Ex. 12).

48.    Admitted.

49.     Admitted.

50.     Admitted in part and denied in part.  Defendants admit that a Rule 30(b)(6) designee for ED testified that the quoted language was in part "reflective of the Department's understanding."  PSUF Ex. 8 at A-47:12–13 (Battle). Defendants deny that ED "communicated [this expectation] to servicers as early as 2011."  The document through which ED purportedly communicated this "expectation" is a 2011 contract change request that imposed a 36-month limit on forbearance unless "the supervisor has reviewed and determined that efforts to place the borrower on an affirmative repayment plan or deferment (if eligible) have been attempted and extension justified."  PSUF Ex. 101 at A-1971.  Moreover, while the change request's "Background" section also states "[b]efore applying a forbearance, borrowers are always counseled on the various repayment plans," *id*., ED's designee confirmed that this "counsel[ing]" includes information provided through "[e]ither written disclosures or [servicer] website[s]," RSUF Ex. 11 at 184:4–8, 19–20 (Battle).

51.     Admitted.

52.     Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 8 contains the quoted language.  Defendants deny that ED's testimony represented "ED's expectations of servicer counseling."  The cited testimony makes no reference to "counseling" or ED's general "expectations" for discussions

with borrowers, and this assertion should be struck. Doc. 463 at 3.  Rather, the testimony pertains to a particular "hypothetical borrower who had been unemployed for 13 months," and how ED would "expect the servicer to respond" to that situation.  PSUF Ex. 8 at A-60:21–22, A-63:7–19 (Battle).

53.      Denied.  Paragraph 53 is unaccompanied by a reference in the record which supports the statement of fact, and should be struck.  Doc. 463 at 3.  To the extent further response is required, Defendants deny paragraph 53 because the Rule 30(b)(6) designee for ED testified that, in a presentation she gave, she was "trying to describe" that "forbearance would not be the first choice" in a hypothetical conversation "[o]ver the telephone" and that ED is "expecting the servicers to describe and help the borrower understand repayment options before we seek a deferment or forbearance option."  PSUF Ex. 8 at A-52:24–53:6 (Battle).

54.      Admitted in part and denied in part.  Defendants admit that at the 2012 Federal Student Aid conference, ED described its expectations to include the quoted language.  Defendants deny that these were "expectations for phone-based communications."  ED's Rule 30(b)(6) designee testified that "when we talk about communication channels, all of the servicers have basic toll-free numbers, they have IBR's or conversants, they have self-service tools. . . . Some are very much on social media – Facebook, Twitter, cellphones – whatever they can do in order to catch – to reach – that borrower."  PSUF Ex. 102 at A-1985.

55.     Admitted.

56.     Admitted.

57.     Admitted in part and denied in part.  Defendants deny that ED placed general "limits . . . on the use of forbearance."  The presentation reflects ED's "Decision to Standardize" with respect to "Forbearance Limits," because ED had "discovered that some borrowers were on general forbearances for extended periods of time."  PSUF Ex. 58 at A-1183.  ED noted, "[t]herefore, the forbearance process and rules were reevaluated to place a limit on a borrower request to extend forbearance, in cases where there was 36 months of consecutive forbearance."  *Id.*  Defendants admit that the "Objectives" of that change included the quoted objectives.

58.     Admitted in part and denied in part.  Defendants admit that a Rule 30(b)(6) designee for ED was asked:  "[D]oes the Department expect that *every* borrower of federal loans will be able to understand the repayment options that are available to them based on written notices alone?"  PSUF Ex. 8 at A-65:12–15 (Battle) (emphasis added).  She answered: "No."  *Id.* at A-65:16 (Battle).  Defendants deny that ED does not expect borrowers to understand repayment options based on written notices.  *See, e.g.*, RSUF Ex. 11 at 184:9–20 (Battle) (explaining that "[e]ither written disclosures or [servicer] website[s]" can "appropriately notif[y]" borrowers about "options other than forbearance.").  ED's

view that written notices can effectively inform borrowers of their options is

further reflected in the regular email campaigns ED conducted and in which

Navient and other servicers were required to participate.  For example, in a 2015

campaign, ED sent communications "to approximately 800,000 borrowers . . . to

ensure that these borrowers have the information they need to consider and apply

for the repayment option that best works for them."  RSUF Ex. 13 at

NAV-00021732.  ED directed Navient and other servicers to provide information

regarding the repayment plans that borrowers selected after receiving these emails,

as well as information regarding borrowers who contacted their servicer in

response to the communication.  *Id.*  The effort was based on a similar campaign

ED conducted in 2014.  *Id.*; *see also* RSUF Ex. 14.

59.    Admitted.

60.    Admitted.

61.    Admitted in part and denied in part.  Defendants admit that PSUF

Exhibit 67 contains the quoted language.  Defendants deny that "a 2010 internal

Navient memorandum discussed strategies by which the company could 'drive

down unit cost while maximizing fee revenue.'"  The document stated, "our goal is

to drive down unit cost while maximizing fee revenue and winning the default

scorecard," *while also* "view[ing] Borrower Education as another key component

of our mission" and "point[ing] [borrowers] to the optimal solution based on their

unique circumstances[.]" PSUF Ex. 67 at A-1279.  The very next sentence after the quoted language included in PSUF paragraph 61 states, "That mix is likely to change over time as we improve our ability to communicate the benefits of and fulfill other programs such as 'Income Based Repayment.'" *Id.*  To that end, Mr. Bailer sent an email the same month describing several IDR-related initiatives and stated, "We view IBR [as] critical to the success of CRS in both ED and FFELP primarily because it addresses the proprietary borrower issue – students graduating with debt levels that their salaries will never be able to support (doctor and attorney debt levels with burger-flipper salaries).  It is the silver bullet for the long-term payment problem."  RSUF Ex. 15 at NAV-04439665.  Likewise, a "Critical Point" in the 2010 CRS New Hire Workbook states, "[w]hen the borrower calls requesting a forbearance, you should advise of their options available other than forbearance (Deferment, Auto Debit, Payment options)."  RSUF Ex. 16 at 55.

62.    Admitted in part and denied in part.  Defendants admit that deferments and grace periods are entitlements.  Defendants deny that "deferment" and "grace periods" are the only "entitlements."  Mr. Bailer testified that the entitlements he was referring to in PSUF Exhibit 67 included "[i]ncome-based repayment, deferment of any variety and other repayment options of which I can't all remember offhand."  RSUF Ex. 17 at 98:3–23 (Bailer).

63.     Admitted in part and denied in part.  Defendants admit that, in June 2013, Navient scheduled an "ED Collection Strategy Options Discussion." Defendants deny that "the only opportunity listed was to '[e]xpand use of forbearance prospectively."  The internal document circulated ahead of the scheduled discussion referenced "opportunities to improve margin" as compared to the "[c]urrent philosophy," which was to "[m]aximize use of repayment options" and "[m]inimize use of forbearance prospectively."  PSUF Ex. 66 at A-1277. Defendants deny that "Navient discussed" these topics because it is unaccompanied by a reference in the record which supports the statement of fact and it should be struck.  Doc. 463 at 3.

64.     Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 66 is dated June 2013 and listed the cons of expanding the use of prospective forbearance, including "[c]ounter to public statements" and "[n]ot in the best interests of the borrowers."  Defendants deny that it is a "strategy document" because that statement is unaccompanied by a reference in the record that supports the statement of fact, and should be struck.  Doc. 463 at 3.

65.     Denied.  Defendants deny paragraph 65 because the Navient employee whose testimony is cited—Johnathan Powell, a supervisor in one of Navient's call centers—was not discussing circumstances in which "a borrower called seeking advice about repayment options."  Rather, Mr. Powell was

discussing Navient's "low talk time report," RSUF Ex. 9 at 32:13–21 (Powell),

which lists calls under 3.5 minutes, *id.*, and which Navient supervisors review as "a

check to make sure [representatives are] doing everything correctly," PSUF Ex. 12

at A-98:19–20 (Powell). █████████████████████████████████████

██████████████████████████████████████████████████

████████  RSUF Ex. 18 ¶ 31.  ██████████████████████████████

████████████████████████████████  *Id*.  And the call used in

the CFPB's own expert survey as an example of a call that "described" IDR and its

benefits lasted just over four minutes.  SUF Ex. 152 at 241:22–242:23 (Erdem).

66.    Admitted in part and denied in part.  Defendants deny that the facts

contained in paragraph 66 are material because the quoted language refers only to

██████████████████████████████████████████████████████

██████████████████████████████████████  PSUF

Ex. 287 at A-8569.

To the extent further response is required, Defendants admit that PSUF

Exhibit 287 contains the quoted language.  Defendants deny that ███████

█████████████████████████████████████████████████████

██████████  *Id.* at A-8556.

67.    Admitted.

68.    Admitted.

69.     Admitted.

70.     Admitted in part and denied in part.  Defendants deny that the models were "referred to as critical accounting assumptions."  PSUF Ex. 31 at A-342:21–343:2 (Zorick).  Defendants admit that Navient Corporation had "models related to loan performance," PSUF ¶ 70, and "items that had financial statement impact" and that those models "*informed* what [the company] referred to as critical accounting assumptions."  PSUF Ex. 31 at A-342:21–A-343:2 (Zorick). Defendants deny that these models were "maintained" by Navient because activities related to asset-backed securities were performed by Navient Corporation.  *See* RSUF Ex. 23 at NAV-00001221; RSUF Ex. 148 at 41:11–15, 214:16–215:9, 239:20–240:10 (O'Connell).

71.     Admitted.

72.     Admitted.

73.     Admitted.

74.     Admitted in part and denied in part.  Defendants admit that ███

████████████████████████████████████████████████  Defendants

deny the first sentence in paragraph 74.  IDR utilization was factored in Navient Corporation's critical accounting assumptions prior to 2015 through "the historical data [Navient Corporation was] using to calculate a prepayment rate."  PSUF Ex. 31 at A-348:16–21 (Zorick).

75.     Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 31 contains the quoted language.  Defendants otherwise deny paragraph 75.  Activities related to asset-backed securities were performed by Navient Corporation.  *See* RSUF Ex. 148 at 41:11–15, 214:16–215:9, 239:20–240:10 (O'Connell); RSUF Ex. 23 at NAV-00001221.  As Ms. Zorick testified, the company accounted for prepayments, and IDR was included in that analysis.  *See* PSUF Ex. 31 at A-365:25–366:10 (Zorick).  Further, Ms. Zorick testified that the company continued looking at IDR usage each quarter to see if anything was changing and whether they would need to update the models if the historical prepayment data was not accurately accounting for IDR utilization.  *See id.* at A-365:25–A-366:19 (Zorick).

76.     Admitted.

77.     Admitted.

78.     Admitted.

79.     Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 77 contains the quoted language.  Defendants deny this paragraph to the extent it implies Barrow Hanley was a significant investor in asset-backed securities issued by Navient Corporation because paragraph 79 is unaccompanied by a reference in the record which supports that statement of fact, and it should be struck.  Doc. 463 at 3.  To the extent further response is required, Barrow Hanley is

an <u>equity</u> investor, and it currently owns a 2.82% stake.  *See* RSUF Ex. 20 (last

visited July 10, 2020); *see also* RSUF Ex. 21 at 302:8–12 (Remondi).

80.    Admitted, except that the quote should say "we do promote *it* as a

repayment tool," PSUF Ex. 77 at A-1423 (emphasis added), not "we do promote *is*

as a repayment tool."

81.    Admitted in part and denied in part.  Defendants admit that PSUF

Exhibit 92 contains the quoted language.  Defendants deny that the email was "to a

Navient employee" because activities related to asset-backed securities were

performed by Navient Corporation.  *See* RSUF Ex. 148 at 214:16–215:9

(O'Connell); *see also id.* at 41:11–15, 239:20–240:10; RSUF Ex. 23 at

NAV-00001221.

82.    Admitted in part and denied in part.  Defendants admit that PSUF

Exhibit 94 contains the quoted language.  Defendants deny that the email was sent

to "a Navient employee" because activities related to asset-backed securities were

performed by Navient Corporation.  *See* RSUF Ex. 148 at 41:11–15, 214:16-215:9,

239:20–240:10 (O'Connell); RSUF Ex. 23 at NAV-00001221.

83.    Admitted in part and denied in part.  Defendants admit that PSUF

Exhibit 94 contains the quoted language.  Defendants deny that Mr. Rein said that

the quoted language ██████████████████████████████████████

████████████████████████████████████████████████████████

 Steve McGarry, head of investor relations, RSUF Ex. 22 at 114:16–23 (Zorick), ████████████████████ ████████████████████████ PSUF Ex. 94 at A-1805.

84.     Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 94 contains the quoted language.  Defendants deny that ███████ ████████████████████ and deny that ███████ ████████████████████████ ████████████████ One of the "reasons" why usage of IDR for FFELP loans is lower than it is for Direct loans is because FFELP loans are eligible for fewer IDR programs than Direct Loans.  *See* PSUF Ex. 51 at A-1113.

85.     Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 93 contains the quoted language.  Defendants deny that Barclays "sought a comparison" because it is unaccompanied by a reference in the record which supports the statement of fact and should be struck.  Doc. 463 at 3.  Defendants also deny in part that "Navient employees received an email."  At least some of the employees are Navient Corporation employees.  RSUF Ex. 19.  And activities related to asset-backed securities were performed by Navient Corporation.  *See*

RSUF Ex. 148 at 214:16-215:9 (O'Connell); *see also id.* at 41:11–15, 239:20–240:10; RSUF Ex. 23 at NAV-00001221.

86.    Admitted.

87.    Admitted.

88.    Admitted.

89.    Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 98 contains the quoted language.  Defendants deny that "the company" was questioned to the extent it refers to any company other than Navient Corporation. The question was sent to an employee of Navient Corporation.  RSUF Ex. 19.

90.    Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 97 contains the quoted language.  Defendants deny that "the company" received questions to the extent it refers to any company other than Navient Corporation.  The question was sent to an employee of Navient Corporation.  *See* RSUF Ex. 19.

91.    Admitted.

92.    Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 31 contains the quoted language.  Defendants deny that, "[f]rom April 2015 through November 2016, downgrade watches by Moody's and Fitch affected the securitization activities of Navient Corporation."  That statement is unaccompanied by a reference to the record which supports it, and should be

struck.  Doc. 463 at 3.  To the extent further response is required, Ms. Zorick testified that the "downgrade watches were relevant to [her] work at the company" from April 2015 until she left in November 2016.  PSUF Ex. 31 at A-353:2–8 (Zorick).  She did not testify that they "affected the securitization activities of Navient Corporation."

93.     Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 31 contains the quoted language.  Defendants deny that "[i]t is important to Navient Corporation that it avoid a 'downgrade' of its asset-backed securities in order to retain 'strong relationships' with the investors in those securities."  Ms. Zorick testified that, "[t]here's no direct consequence to the company itself . . . if a security is downgraded."  PSUF Ex. 31 at A-354:6–14 (Zorick).

94.     Admitted.

95.     Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 40 contains the quoted language and that Navient Corporation extended the maturity dates of the bonds.  Defendants deny that any measures were "costly" because it is unaccompanied by a reference in the record which supports the statement of fact and should be struck.  Doc. 463 at 3.  These statements were included in a section of the 2015 10-K entitled "Funding and Liquidity Risk Management," and there is no indication that these measures were "costly."  PSUF Ex. 40 at A-730–A-731.  Furthermore, Navient recommended that Moody's

"should assume" such measures would occur, and "the liquidity required to do so is minimal." RSUF Ex. 23 at NAV-00001175 – 1176.

96. Denied. Defendants deny that the quoted material describes the "risks to its asset-backed securities posed by income-driven repayment plans," and deny that the quotation is accurate. An entire paragraph has been excised between the first and second paragraphs with no indication that it was left out. *See* PSUF Ex. 41 at A-869. Further, the sentence included above as "[T]he terms of the education loans may be extended as a result of . . . income-driven repayment plans" actually reads: "[T]he terms of the education loans may be extended as a result of grace periods, deferment periods, income-driven repayment plans or other repayment terms or monthly payment amount modifications agreed to by the servicer, for example." PSUF Ex. 41 at A-869.

97. Admitted.

98. Admitted in part and denied in part. Defendants admit that PSUF Exhibit 23 contains the quoted language. Defendants deny that the testimony applies "generally." The witness was employed until February 2012, so he could only testify regarding the use of the guide up to that date. *See* RSUF Ex. 17 at 9:15–23 (Bailer). Further, the witness testified that the company "would adjust these documents" as "there was increasing clarity from the department about the rules of IBR." *Id.* at 149:1–4 (Bailer).

99.     Admitted in part and denied in part.  Defendants admit that the attachment to the email in PSUF Exhibit 69 was a repayment guide used in 2011 that provided guidance to representatives on various repayment options. Defendants deny that PSUF Exhibit 69 is "[t]he repayment guide used in 2011" because Navient representatives had a variety of tools and procedures to guide their conversations with borrowers.  For example, the repayment "hierarchy" for "offering customers assistance when having difficulty making their monthly payments" directed representatives to discuss "repayment option[s]" first and forbearance last.  RSUF Ex. 24 at NAV-01666672.

Defendants further deny that the guide provided a "decision tree."  Navient's 30(b)(6) designee testified that such a "reference tool" was "purely a guide that [agents] can use as a reference to try and get the right questions to help [] guide the conversation with the customer."  RSUF Ex. 25 at 177:17–21 (Peterson).

100.    Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 72 contains the quoted language, although the quoted language appears at A-1385, not A-1384.  Defendants deny that the guide provided a "decision tree" for the reasons stated in response to paragraph 99.  *See supra* RSUF ¶ 99.

101.    Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 72 contains the quoted language.  Defendants deny that the document contains a "decision tree" that "rout[es]" representatives to a particular "set of

options" for the reasons stated in the response to paragraph 99. *See supra* RSUF

¶ 99. Defendants deny that "IDR plans were only shown as options to be presented

to borrowers who could pay some portion of their monthly payment," and that "[i]f

the borrower could not afford to make any payment, the decision tree routed the

representative to only to forbearance and deferment as options to be presented to

that borrower." Mr. Bailer, who participated in the development of a similar guide,

testified that these guides were "never intended to be a script or prescriptive though

[sic] shalt do this in this situation." PSUF Ex. 23 at A-249:18–20 (Bailer). He

explained that "[i]t's a tool to guide the conversation. It wasn't meant to be a

policy statement on if this, then that . . . [i]t was very much a way to formulate the

structure of the phone call." RSUF Ex. 17 at 138:21–139:4 (Bailer). Furthermore,

Navient's 30(b)(6) designee, when asked whether the guide should be interpreted

that way, testified "that's not the way the conversations go," RSUF Ex. 25 at

178:4–5 (Peterson), and explained that "our representatives are *not* using this as a

true flow of if they say yes, then you should automatically go to the top or the

bottom or the left or the right." *Id.* at 177:6–9 (Peterson) (emphasis added).

Instead, Navient employees understood that IDR should be discussed with

borrowers who could not afford to make any payment because borrowers could be

eligible for a $0 payment under an IDR plan. *See, e.g.*, RSUF Ex. 26 at 99:25–

100:12 (Croft); RSUF Ex. 27 at 184:20–23 (Catt); RSUF Ex. 28 at 95:23–96:4 (Oliver).

102.   Admitted in part and denied in part.  Defendants deny that the second page of the repayment guide "sorted options according to whether a borrower" could make payments.  The options are sorted in the same order as Navient's repayment options "hierarchy," with repayment plans first, including IDR, and forbearance last.  RSUF Ex. 24 at NAV-01666672.  Defendants admit that the guide states "CAN NOT [sic] Make Monthly Payments" next to deferment and forbearance.  PSUF Ex. 69 at A-1291; PSUF Ex. 72 at A-1387.

103.   Admitted.

104.   Denied.  Defendants deny paragraph 104 for the reasons stated in response to paragraph 102.  *See supra* RSUF ¶ 102.

105.   Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 278 contains the quoted language.  Defendants deny that the document was used in the manner described.  Navient's Rule 30(b)(6) designee testified that this document "is not what the agents would work from."  SUF Ex. 148 at 184:20–21 (Peterson).  Instead, the document is "a visual depiction at the very highest level" of a separate "interactive tool that [representatives] interact with when they're talking to the customer."  *Id.* at 181:24–182:15 (Peterson).  That tool has "many questions that are not depicted on [this document]," which are geared toward

28

"trying to find the least expensive overall program for the customer." RSUF Ex. 25 at 186:5–188:1 (Peterson). The document cited merely provided representatives with "a very high-level understanding of what they are going experience when they use [the tool]." *Id.* at 186:16–18 (Peterson).

106.   Admitted in part and denied in part. Defendants admit that "[a] Rule 30(b)(6) designee for ED reviewed the 2011 repayment guide in the course of a Rule 30(b)(6) deposition of ED." Defendants deny that the guide was used as a "decision tree" for the reasons stated in the responses to paragraphs 99–101. *See supra* RSUF ¶¶ 99–101.

107.   Denied. The cited testimony by ED's designee concerns only the CFPB's interpretation of the document as applied to one "hypothetical borrower who had been unemployed for 13 months." PSUF Ex. 8 at A-60:21–61:3 (Battle). Moreover, the repayment guide was provided to ED multiple times, and was approved by ED before the guide was distributed for use in Navient's call centers. *See* RSUF Ex. 7 at 24:18–25:6, 34:23–40:5 (Tessitore); RSUF Ex. 29 at NAV-00781753; RSUF Ex. 30 at NAV-00686505. One ED official responded that the guide looked "really helpful." RSUF Ex. 30 at NAV-00686237. ED also confirmed directly that Navient's calls with borrowers aligned with ED's expectations, including through site visits during which ED officials listened to such calls. RSUF Ex. 7 at 147:15–148:8 (Tessitore). As part of one such visit in

March 2017, ED reviewed more than 2,000 calls between Navient and federal student loan borrowers from between January 1, 2014 and March 30, 2017.  *Id.* at 163:12–167:13 (Tessitore); RSUF Ex. 31 at ED000569.  In November 2018, ED issued a statement that, based on the March 2017 site visit, as well as its "own due diligence . . . and . . . analysis of Navient as compared with other servicers," it had "concluded that Navient was not improperly steering borrowers into forbearance." RSUF Ex. 32 at *1.  According to the statement, "the duration of forbearances for Navient borrowers was actually among the lowest of the Department's nine servicers," while "Navient also had among the highest take-up rates for income-driven repayment plans, as well as longer than average call durations in comparison to all servicers."  *Id.* at *2.

108.   Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 11 contains the quoted language.  Defendants deny that the reports were "about how their average call handle time compared with that of their peers" because the report ██████████████████████████████████████ ████████████████████████████████  RSUF Ex. 33.

109.   Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 100 contains the quoted language.  Defendants deny that the performance metrics were based only on "average call times" because the declaration also identified "the accuracy of information conveyed to borrowers" and "caller

feedback from surveys."  PSUF Ex. 100 at A-1961 ¶ 10.  Furthermore, the former

employee whose declaration is cited in paragraph 109 testified that the metrics

included "first-call resolution" and a "customer service score."  RSUF Ex. 34 at

253:25–254:7 (Sabulski).  Defendants also deny that the former employee was

referring to the same "reports" referenced in paragraph 108.  *See supra* PSUF

¶ 108.  The declarant was only employed by Navient for five months, from

November 2012 to March 2013.  PSUF Ex. 100 at A-1958 ¶ 3.

110.    Admitted in part and denied in part.  Defendants admit that PSUF

Exhibit 11 contains the quoted language.  Defendants deny that the "Navient Rule

30(b)(6) designee testified that falling below a certain average handle time would

disqualify an employee from receiving incentive-based compensation."  PSUF Ex.

11 at A-90:6–9 (Peterson).  This testimony was referring to only a single

"incentive compensation [plan] for customer service specialists in 2013."  RSUF

Ex. 25 at 126:8–11 (Peterson); RSUF Ex. 35 at NSI-019-0000137.  Navient used

various incentive plans over time and for different call center divisions, and the

factors to qualify for incentive compensation varied by plan.  *See, e.g.*, RSUF Ex. 9

at 38:20–40:13 (Powell) (describing period in which average call time was not an

incentive plan factor for certain call center divisions).

As to the plan referenced in this paragraph, there were several factors that

could disqualify a representative from receiving incentive compensation, █████

█████████████████████████████████████████, RSUF Ex. 35 at NSI-019-0000137, as well as low "first call resolution" scores, which were determined based on whether a customer called Navient again shortly after speaking to a representative about an issue, in order to assess "how well [the representative] did at answering the customer's question the first time that they called."  RSUF Ex. 25 at 113:20–22 (Peterson).

111.   Admitted in part and denied in part.  Defendants admit that Mr. Bailer testified that "[t]heir compensation was generally based on a base salary plus an incentive plan that would have been based on what I might call key performance indicators like statistical metrics plus some more subjective components, if you will."  PSUF Ex. 23 at A-245:18–22 (Bailer).  Defendants deny that the incentive plans did not change over time.  Mr. Bailer was employed until February 2012, RSUF Ex. 17 at 9:15–16 (Bailer), and testified to his recollection of the key performance indicators during that time as including "resolving a phone call on the first attempt," "time and attendance," "something related to the average duration of the phone call," "something related to a customer satisfaction score," and "results of phone monitoring."  *Id.* at 23:4–16 (Bailer).

112.   Admitted.

113.   Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 83 contains the quoted language.  Defendants deny that "Navient call

center managers encouraged their employees to get through calls quickly."

███████████████████████████████████████████   PSUF Ex. 83 at

A-1504.  Supervisors testified that feedback based on "overexplaining" was meant

to encourage representatives to "be more concise with the information" to not

overcomplicate things for borrowers.  RSUF Ex. 36 at 100:10–16 (Sachs); *see also*

RSUF Ex. 37 at 285:15–18, 286:14–16 (Keenan) (supervisor did not "expect

anybody to do shortcuts," or "cut corners"); RSUF Ex. 17 at 30:15–19 (Bailer)

("[I]f someone was repeating some bit of information ad nauseam for no benefit

where it was clear that the customer already understood what we were trying to

explain, that would be means for feedback for that agent.").  It would not be an

instance of "over-explaining" to discuss particular aspects of IDR, and feedback

would be given to agents "that have left out some of the details" of IDR.  RSUF

Ex. 36 at 104:16–105:4 (Sachs).

Moreover, Navient employees testified that Navient's call time targets

benefitted borrowers, because they encouraged representatives to learn "more

about [repayment] programs" and become "more efficient in explaining them."

RSUF Ex. 28 at 157:10–21 (Oliver).  As one supervisor explained, when a call

"becomes too long, it can actually be detrimental to your customer, because you

talk about things that don't relate to the customer's questions, which triggers more

questions or a lack of confidence in the answer, which makes them call back."
RSUF Ex. 27 at 173:14–20 (Catt).

114.   Admitted.

115.   Admitted.

116.   Admitted.

117.   Admitted in part and denied in part.  Defendants admit that PSUF
Exhibit 90 contains the quoted language.  Defendants deny ██████████████

████████████████████████████████████████████████████████████

████████████████████████████████████  PSUF Ex. 90 at A-1771.

118.   Admitted.

119.   Admitted.

120.   Admitted in part and denied in part.  Defendants admit that PSUF
Exhibit 88 contains the quoted language.  Defendants deny that "[e]ven exceeding
the goal by one second would draw criticism." ██████████████████

████████████████████████████  PSUF Ex. 88 at A-1736.

121.   Admitted in part and denied in part.  Defendants admit that PSUF
Exhibit 83 contains the quoted language.  Defendants deny ██████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████  PSUF Ex.
83 at A-1496.

122.   Admitted.

123.   Admitted that PSUF Exhibit 100 contains the quoted language, but denied that paragraph 123 is material because the declaration is contradicted by the declarant's deposition testimony.  *See In re CITX Corp.*, 448 F.3d 672, 679 (3d Cir. 2006) (recognizing that discovery during a deposition of "untruths" in a witness's affidavit warrant discounting the affidavit for purposes of summary judgment).  The declarant, Lynn Sabulski, testified that she did not enroll borrowers in forbearance rather than "[d]iscussing each option such that a borrower could make an informed decision" to "help [her] keep the call under seven minutes."  PSUF Ex. 100 at A-1965 ¶ 18.  Instead she "attempt[ed] to meet the [call time] metrics to the best of [her] ability while also providing thorough and accurate information to the borrowers, and when those two intentions overlapped, [her] tendency was to provide additional information."  RSUF Ex. 34 at 252:13–19 (Sabulski).  Ms. Sabulski explained that she was "trained [by Navient] to provide information about income-driven repayment options," *id.* at 310:12–14 (Sabulski), and described that training as "extremely thorough," *id.* at 207:4–11 (Sabulski), and "consistent with providing quality customer service," PSUF Ex. 100 at A-1959–A-1960 ¶ 6.  She acknowledged that she was able to advise borrowers about IDR plans on calls lasting less than seven minutes.  RSUF Ex. 34 at 241:23–247:6 (Sabulski).  Ms. Sabulski also could not identify any Navient representative who

enrolled borrowers in forbearance or avoided discussing IDR in order to shorten their call times.  *Id.* at 306:9–310:11 (Sabulski).

124.   Admitted that PSUF Exhibit 100 contains the quoted language, but denied that paragraph 124 is material because the declaration is contradicted by the declarant's deposition testimony for the reasons stated in the response to paragraph 123.  *See supra* RSUF ¶ 123; *In re CITX Corp.*, 448 F.3d at 679.  It is also contradicted by the testimony of other representatives the CFPB identified as witnesses who testified that they adhered to policies requiring them to inform borrowers about IDR prior to offering forbearance.  *See, e.g.*, RSUF Ex. 37 at 240:21–241:22 (Keenan); RSUF Ex. 38 at 30:8–32:20, 114:12–25, 147:10–148:24 (Roney); RSUF Ex. 28 at 95:23–97:13, 134:14–35:15 (Oliver); RSUF Ex. 39 at 55:12–16 (Holman).[6]

125.   Admitted in part and denied in part.  Defendants admit that Navient's call center supervisors reviewed calls on a monthly basis for the representatives that they supervised.  Defendants deny that "the supervisor was only required to listen to five to ten calls per month for each representative, and those calls could cover any subject."  Mr. Powell continued to testify that "[b]etween the team lead

---

[6] These employees were identified by the CFPB from a spreadsheet produced by Navient containing the names and contact information for 3,107 former representatives.  *See* RSUF Ex. 40.

and the supervisor, we listen to plenty more" than "five to ten per month . . . for a particular agent."  RSUF Ex. 9 at 31:3–11 (Powell); *see also id.* at 25:7–28:17 (Powell).  As Mr. Powell explained, the calls he listens to are "only one level" of Navient's call monitoring efforts.  *Id.* at 65:8 (Powell).  In addition to call center management, quality assurance listens to thousands of calls each month, RSUF Ex. 41 at 78:22–80:14 (Wisnewski), as do separate first-level compliance and corporate compliance groups, RSUF Ex. 42 at 46:22–47:12, 77:16–78:8 (Potomis).  In addition, biweekly "calibration" meetings are held in which members of quality assurance, compliance, and call center management all "listen to calls" and "make sure . . . expectations are the same" across groups.  RSUF Ex. 41 at 93:9–94:8 (Wisnewski).

126.   Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 12 contains the quoted language.  Defendants deny that, "[i]f a supervisor listened to a call in which a customer service representative was found not to have advised a borrower about IDR options, the conduct would not be written up."  In the very next sentence after the quoted language, Mr. Powell testified, "The [quality assurance] score would be a direct consequence which could trickle into her incentive[.]"  PSUF Ex. 12 at A-102:18–19 (Powell).  Mr. Powell further testified that supervisors "would monitor it to determine if the problem persists."  SUF Ex. 124 at 184:11–17 (Powell).  Also, this conduct was repeatedly written up

in employees' monthly performance evaluations.  PSUF Ex. 91 at A-1785



); PSUF Ex. 87 at A-1708 (

);

PSUF Ex. 79 at A-1474 (

); PSUF Ex. 79 at A-1477 (

); PSUF Ex. 79 at A-1479 (

); PSUF Ex. 86 at A-1698 (

); PSUF Ex. 89 at A-1743 (

); PSUF Ex. 83 at A-1495 (

).  *See also* PSUF Ex. 90 at A-1767–A-1772, A-1774–A-1775,

A-1777–A-1778, A-1780–A-1781.  Finally, other current and former Navient

supervisors confirmed that representatives who failed to inform borrowers about

appropriate repayment options would face discipline, up to and including

termination.  *See, e.g.*, RSUF Ex. 26 at 83:11–84:8 (Croft); RSUF Ex. 37 at 157:8–

18 (Keenan) (former Navient supervisor testified she "fired people" for "failing to follow the quality criteria").

127.   Admitted.

128.   Admitted in part and denied in part.  Defendants admit that "coaching points included feedback on the performance of call center representatives." Defendants deny the statement that follows.  The purpose of "calibration" meetings is to "ensure accurate monitoring" of calls between borrowers and Navient representatives.  RSUF Ex. 41 at 93:9–11 (Wisnewski).  Members of quality assurance, compliance, and call center management all "listen to calls" and "score" them in order to make sure members of these groups are "on the same page."  *Id.* at 93:12–22 (Wisnewski).  Navient's Director of Quality Assurance testified, "if there's an error on the call . . . if an agent should have done something better, then [the calibration session is] the time when we kind of vet that out . . . to make sure that . . . our expectations are the same."  *Id.* at 93:23–94:2 (Wisnewski).

129.   Admitted.

130.   Admitted.

131.   Admitted.

132.   Admitted.

133.   Admitted.

134.   Admitted.

135.    Admitted.

136.    Admitted.

137.    Admitted.

138.    Admitted.

139.    Admitted, but denied that the facts contained in paragraph 139 are material because the representative processed an administrative forbearance "to bring the account current," PSUF Ex. 76 at A-1418, which the CFPB has said is not at issue in this lawsuit, Doc. 491 at 6.

140.    Admitted in part and denied in part.  Defendants admit that PSUF Exhibits 59, 63, 80, and 81 describe calls that employees indicated would be sent to Mr. Remondi.  Defendants deny that these exhibits describe "calls in which the borrower was not adequately advised on IDR options," as that language appears nowhere in the documents cited.  Moreover, the exhibits describe just one call on which a borrower enrolled in a voluntary forbearance without the representative discussing IDR; that borrower had "called asking to postpone payment until the end of the month but mentioned she can start making payments by January." PSUF Ex. 59 at A-1235.  The remaining descriptions do not state that the calls ended in voluntary forbearance.  *See* PSUF Ex. 63 at A-1265 (stating "IBR option should have been explored" on call where representative offered a deferment, and processed administrative forbearance); PSUF Ex. 80 at A-1482–A-1483

(describing call on which "IBR should have been explored prior to Graduated repayment"); PSUF Ex. 81 at A-1486 (describing call on which representative "should have asked questions that will determine the borrower's eligibility for a repayment plan like IBR or Deferment before processing Forbearance," without specifying what type of forbearance was processed). And other representatives discussed IDR but were encouraged to tell borrowers about submitting IDR applications online. *See* PSUF Ex. 59 at A-1235; PSUF Ex. 81 at A-1486. In addition, Mr. Remondi testified that after receiving such calls, he would "have some follow-up . . . to see what were the circumstances," including "[w]hat was the situation with the account," whether the borrower had "a very small amount of outstanding balance," or had "explicitly rejected IDR at some previous contact in the past." RSUF Ex. 21 at 220:12–221:19 (Remondi).

141. Admitted in part and denied in part. Defendants admit that PSUF Exhibit 149 contains the quoted language. Defendants deny the statement preceding the quoted material. i3 Group was hired by universities, which have a "tremendous stake" in keeping their students' default rates low because "[t]heir federal funding is based, partially on . . . how many students have defaulted." RSUF Ex. 43 at 30:12–25 (Farmer). Ralph Farmer, a former i3 group employee, explained that as a student counselor at i3, he "would make calls through a list provided by a database to students who were delinquent on their loans. And once

talking with them, I would explain to them the programs available to help them get out of this delinquency and the long-term-solution to their debt." *Id.* at 21:23–22:4 (Farmer).  Mr. Farmer testified that he had "no remembrance of Sallie Mae directing a borrower towards the forbearance or other program that I felt was inappropriate during the time I was a counselor." *Id.* at 66:13–16 (Farmer).  Mr. Farmer further acknowledged that concerns he raised at i3 were focused on instances in which deferments were offered, not forbearances. *Id.* at 110:5–112:21, 127:20–128:4 (Farmer).

142.   Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 56 contains the quoted language.  Defendants deny that the i3 representative was "explaining how Navient representatives" were not offering IDR.  A Navient employee wrote in response that she "believe[s] this may be isolated to one agent.  I asked numerous supervisors if they were aware of any system thresholds that required a supervisor to override to send an IBR form to a borrower under 30k.  No one had heard a thing in reference to this.  In addition, it is CRS procedure to really push for the borrower to submit the IBR application on the studentloans.gov website to apply instead of sending them a form because it is a much more efficient process for the borrower."  PSUF Ex. 56 at A-1161.

143.   Admitted in part and denied in part.  Defendants deny that Exhibit 82 is material because it concerns Navient's "CollegeServ" division, PSUF Ex. 82,

which is a separate call center that "support[s] customer service calls

from . . . schools," not borrowers, RSUF Ex. 17 at 12:8–11 (Bailer).

To the extent further response is required, Defendants admit that PSUF

Exhibit 82 contains the quoted language.  Defendants deny that the document

concerns multiple "representatives" because the University of Phoenix

representative describes only one call and makes clear that "[t]his is the first time I

have gotten this and was hoping we can confirm this procedure to prepare for

future calls."  PSUF Ex. 82 at A-1490.  In addition, the document shows that a

supervisor in the CollegeServ division was asked to review and "see if the team

needs some updated info to be able to speak accurately to IBR related questions."

*Id.* at A-1489.

144.   Admitted in part and denied in part.  Defendants admit that PSUF

Exhibit 82 contains the quoted language.  Defendants deny that the quoted

language describes "Navient's policy" for the reasons stated in response to

paragraph 143.  *See supra* RSUF ¶ 143.

145.   Admitted in part and denied in part.  Paragraph 145 violates the

Court's order that the statement of fact should consist of no more than "400

numbered statements of fact" "which require[] a single response by the opposing

party" and that "[n]o numbered statement of material fact may include subparts or

subdivisions," Doc. 463 at 2.  It presents as a single fact what are multiple

assertions regarding the CFPB's purported call sample. The paragraph should be struck.

To the extent further response is required, Defendants admit that the CFPB requested call recordings, and that Defendants produced call recordings in response. Defendants admit that certain call recordings produced to the CFPB contained "call fragments, automated scripts only, conversations with someone other than the borrower, a busy signal, or calls where forbearance was not discussed or placed on the loan during the course of the call." PSUF ¶ 145.

Defendants deny that data regarding these calls "indicated that the borrower enrolled in a prospective forbearance but not a retroactive forbearance" on "1,124 call recordings covering 1,103 calls." As explained in Defendants' response to paragraph 151, various calls in the CFPB's purported "sample" did not involve borrowers who "enrolled in a prospective forbearance." *See infra* RSUF ¶ 151.

Defendants deny that the calls represented a "stratified random sample." The statement should be struck because it is not supported by the cited declaration, which is itself inadmissible expert opinion testimony improperly presented by a CFPB attorney. *See* Doc. 508.



*See* RSUF Ex. 18 ¶ 10 (noting more than twenty-four million call records for the period 2011 through 2016).



*Id.* at ¶¶ 13–18.

RSUF

Ex. 18 ¶¶ 23, 25.

RSUF Ex. 18 ¶¶ 22–23.

███████████████████████████████████████████████████████ [7] RSUF

Ex. 44 ¶¶ 5–7, Ex. B; RSUF Ex. 45.  At least 143 borrowers had discussions about

---

[7] The CFPB has summarized hundreds of call recordings in single paragraphs, and Defendants have endeavored to respond to the CFPB's factual assertions without further burdening the Court.  Defendants have provided the Court with transcripts of the calls quoted as examples, which can be found at the exhibit numbers noted. Defendants have provided additional call recordings that support the denials on a disk in a folder labeled RSUF Ex. 45; Defendants will provide transcripts of any additional cited call recordings at the Court's request.  *See* RSUF Ex. 45 at NAV-06591497, NAV-06591684, NAV-06591275, NAV-06591285, NAV-06591289, NAV-06591307, NAV-06591311, NAV-06591314, NAV-06591328, NAV-06591336, NAV-06591340, NAV-06591345, NAV-06591352, NAV-06591355, NAV-06591409, NAV-06591417, NAV-06591420, NAV-06591421, NAV-06591426, NAV-06591433, NAV-06591434, NAV-06591485, NAV-06591490, NAV-06591496, NAV-06591514, NAV-06591521, NAV-06591524, NAV-06591530, NAV-06591541, NAV-06591543, NAV-06591544, NAV-06591547, NAV-06591549, NAV-06591560, NAV-06591563, NAV-06591576, NAV-06591585, NAV-06591595, NAV-06591608, NAV-06591612, NAV-06591615, NAV-06591617, NAV-06591625, NAV-06591630, NAV-06591634, NAV-06591647, NAV-06591653, NAV-06591663, NAV-06591666, NAV-06591670, NAV-06591671, NAV-06591691, NAV-06591694, NAV-06591701, NAV-06591703, NAV-06591704, NAV-06591708, NAV-06591725, NAV-06591726, NAV-06591730, NAV-06591750, NAV-06591764, NAV-06591773, NAV-06591776, NAV-06591778, NAV-06591804, NAV-06591810, NAV-06591826, NAV-06591835, NAV-06591836, NAV-06591843, NAV-06591869, NAV-06591878, NAV-06591885, NAV-06591890, NAV-06591895, NAV-06591912, NAV-06591913, NAV-06591916, NAV-06591919, NAV-06591920, NAV-06591923, NAV-06591924, NAV-06591926, NAV-06591929, NAV-06591931, NAV-06591932, NAV-06591935.

IDR with Navient representatives after the calls identified in PSUF Exhibit 289.[8]

RSUF Ex. 44 ¶¶ 5–7, Ex. B.

---

[8] *See* RSUF Ex. 45 at NAV-06591720, NAV-06591821, NAV-06591873, NAV-06591770, NAV-06591698, NAV-06591380, NAV-06591463, NAV-06591513, NAV-06591807, NAV-06591643, NAV-06591626, NAV-06591267, NAV-06591905, NAV-06591535, NAV-06591591, NAV-06591428, NAV-06591939, NAV-06591452, NAV-06591566, NAV-06591326, NAV-06591300, NAV-06591792, NAV-06591461, NAV-06591656, NAV-06591358, NAV-06591288, NAV-06591412, NAV-06591729, NAV-06591592, NAV-06591320, NAV-06591516, NAV-06591312, NAV-06591371, NAV-06591479, NAV-06591495, NAV-06591655, NAV-06591667, NAV-06591844, NAV-06591390, NAV-06591710, NAV-06591642, NAV-06591413, NAV-06591441, NAV-06591256, NAV-06591475, NAV-06591765, NAV-06591478, NAV-06591472, NAV-06591386, NAV-06591435, NAV-06591294, NAV-06591364, NAV-06591690, NAV-06591493, NAV-06591712, NAV-06591736, NAV-06591904, NAV-06591739, NAV-06591464, NAV-06591633, NAV-06591570, NAV-06591862, NAV-06591324, NAV-06591857, NAV-06591632, NAV-06591439, NAV-06591554, NAV-06591375, NAV-06591638, NAV-06591775, NAV-06591411, NAV-06591271, NAV-06591480, NAV-06591332, NAV-06591333, NAV-06591590, NAV-06591605, NAV-06591525, NAV-06591886, NAV-06591741, NAV-06591466, NAV-06591369, NAV-06591553, NAV-06591377, NAV-06591457, NAV-06591444, NAV-06591491, NAV-06591556, NAV-06591596, NAV-06591443, NAV-06591286, NAV-06591648, NAV-06591864, NAV-06591728, NAV-06591628, NAV-06591432, NAV-06591659, NAV-06591453, NAV-06591462, NAV-06591429, NAV-06591388, NAV-06591651, NAV-06591896, NAV-06591270, NAV-06591760, NAV-06591811, NAV-06591445, NAV-06591933, NAV-06591714, NAV-06591545, NAV-06591724, NAV-06591813, NAV-06591874, NAV-06591467, NAV-06591831, NAV-06591503, NAV-06591449, NAV-06591523, NAV-06591711, NAV-06591677, NAV-06591934, NAV-06591456, NAV-06591290, NAV-06591814, NAV-06591756, NAV-06591501, NAV-06591258, NAV-06591427, NAV-06591565, NAV-06591892, NAV-06591897.

The chart below provides some illustrative examples.

| Call Recording and Transcript Exhibits | Time in relation to CFPB's requested call | Call Description |
|---|---|---|
| RSUF Ex. 46; RSUF Ex. 47 at 3:7–11 | < 2 weeks prior | Navient to borrower: "one thing we could do is get you signed up on a payment plan that is based off of your taxable income. And since your taxable income is zero it would default your monthly payment to zero." <br><br> When the borrower asked if he instead had "any deferment or forbearance left," the representative responded, "you do have those available, but this is really a lot better than the deferment or forbearance" because "there's an interest subsidy [and] it's just a very simple application process." |
| RSUF Ex. 48; RSUF Ex. 49 at 8:9–12 | 15 days prior | Navient told borrower he was "eligible for a zero-dollar monthly payment for a year. And the government will pay the interest on your subsidized loans." |
| RSUF Ex. 50; RSUF Ex. 51 at 9:17–10:3 | 6 weeks prior | Navient to borrower: "what you want to do is you want to go ahead and apply for [income-based repayment]"[9] |
| RSUF Ex. 54; RSUF Ex. 55 at 16:24–17:5 | 6 weeks prior | Navient to borrower: "[t]he income based repayment plan is the best option for you because you . . . still go ahead and make payments on your loans.  And the best thing about this income based repayment |

---

[9] This borrower had an additional call less than three months prior, on which a Navient representative informed her she "could qualify for the income-based repayment, and [her] payment could be reduced as low as $259," to which the borrower responded "[o]h, my gosh.  I don't know where you are, but I could hug you."  RSUF Ex. 52; RSUF Ex. 53 at 5:1–7.

| | | plan is your federal loan may be forgiven after 25 years." |
|---|---|---|
| RSUF Ex. 56; RSUF Ex. 57 at 5:1–7 | < 3 months prior | Navient to borrower: "if you're currently not working and you have zero income there is a form which we can send you called an income based repayment to give you a zero payment for 12 months." |
| RSUF Ex. 58; RSUF Ex. 59 at 4:23–25 | < 1 month prior | Navient to borrower: "that income driven repayment plan, that would be the best thing to do." |
| RSUF Ex. 60; RSUF Ex. 61 at 9:9–14 | < 8 months prior | Navient to borrower: "qualified for income based repayment plan [with] a calculated $0 payment each month." |
| RSUF Ex. 62; RSUF Ex. 63 at 6:1–3, 7:5–8 | < 2 months prior | Navient told borrower he was "eligible for income based repayment" and "advise[d] him] that [he] apply." |
| RSUF Ex. 64; RSUF Ex. 65 at 4:20–23 | < 3 months prior | Navient to borrower: "[y]ou actually qualify for an income-base[d] repayment plan, which . . . saves on interest." |
| RSUF Ex. 66; RSUF Ex. 67 at 6:8–9, 7:12–16 | < 3 months prior | Navient told borrower she was "prequalif[ied] for [the income-based repayment plan]," which "lowers your payments down to zero dollars a month based off of the fact that you receive zero dollars a month in income." |
| RSUF Ex. 68; RSUF Ex. 69 at 4:16–19 | < 3 months prior | Navient to borrower: "based on your current situation . . . you will qualify for a zero-dollar payment on the income-based repayment plan." |
| RSUF Ex. 70; RSUF Ex. 71 at 5:18–24 | < 3 months prior | Navient to borrower: "you are actually qualified to apply for the income-based repayment plan.  And for the next 12 months we can go ahead and zero out your monthly payment." |
| RSUF Ex. 72; RSUF Ex. 73 at 4:17–22 | < 3 months prior | Navient to borrower: "I'm going to prequalify you for an option that -- for the IBR plan where your payments could be low as zero dollars a month for the next 12 months . . . I'll send out that application." |

| RSUF Ex. 74<br>RSUF Ex. 75 at<br>3:25–4:1, 6:1–5 | 1 week later | Navient representative told borrower "[her] better option's probably gonna be doing an income based repayment program" under which she would be "eligible for zero-dollar payment for up to 12 months at a time"[10] |
|---|---|---|
| RSUF Ex. 77;<br>RSUF Ex. 78 at<br>5:21–22, 83–7 | < 1 month after | Navient asked borrower questions to "see if [she] qualif[ied] for the income based repayment plan," which "might be [her] best option." |
| RSUF Ex. 79<br>RSUF Ex. 80 at<br>4:2–5 | < 3 months after | Navient told borrower: "I would suggest sending in the income based repayment plan before the rest of your loans go into repayment." |
| RSUF Ex. 81;<br>RSUF Ex. 82 at<br>8:13–17 | < 3 months after | Navient told borrower to "look at income-based repayment," but the borrower said she had "already been over that plan" and it was "not going to qualify [her] for anything lower." |

146.    Denied.  Paragraph 146 should be struck because it contravenes the

Court's order that the statement of facts should consist of no more than "400

numbered statements of fact" "which require[] a single response by the opposing

party" and that "[n]o numbered statement of material fact may include subparts or

subdivisions," Doc. 463 at 2.  The CFPB improperly presents as a single factual

assertion 345 separate factual assertions regarding 345 calls.  In addition, PSUF

---

[10] This borrower also had an additional call less than two months *before* the call requested by the CFPB, on which IDR was also discussed.  *See* RSUF Ex. 76; RSUF Ex. 44 ¶¶ 5–7, Ex. B.

Exhibit 289 is a declaration drafted by a previously undisclosed witness that summarizes a call review over which the CFPB previously claimed privilege, and should be struck.  *See* Doc. 508.

To the extent further response is required, Defendants deny that "the Navient representative did not mention IDR at any point during the call, other than in the scripted forbearance terms disclosure read or played by the Navient representative before granting the forbearance" applies to all 345 calls cited.  For example, on the call identified as NAV-05952147,[11] the Navient representative discusses "*a payment based on your income*" with the possibility that student loans would be "forgive[n]."  RSUF Ex. 83 at 14:2 (emphasis added).  The borrower responds that while she could "see the benefit" of such a plan for borrowers with "over $100,000 in debt," it is not ideal for someone with "balances as small as [hers]," since her "goal is to have [her loans] paid off in five [years]."  *Id.* at 14:7–17; *see also*, *e.g.*, NAV-05952311; RSUF Ex. 84 at 4:3–6, 19–23 (representative discusses "repayment plans . . . many of which are tied to income," but based on the

---

[11] The call recordings cited by Defendants in response to ¶¶ 146–57 are located on the CD the CFPB provided to the Court in the folders marked "Steering Calls, Group A," "Steering Calls, Group B," and "Steering Calls, Group C."  The CFPB did not provide transcripts of these calls.  Defendants have submitted transcripts of the call recordings quoted as examples in the RSUF.

borrower's income, she was "already in the repayment option that would get you the lowest [payment]").

Defendants further deny paragraph 146 because it cites to various calls on which it is apparent that the borrower did not qualify for options other than forbearance, even if IDR was not explicitly discussed.  For example, on the call identified as NAV-06399164, after obtaining the borrower's income and family size, the representative explains the borrower is "over the poverty guideline," such that his only option is forbearance.  RSUF Ex. 85 at 3:13–15; *see also, e.g.*, NAV-05952366; RSUF Ex. 86 at 3:23–25 (representative explains that borrower's monthly income of "5,800 for a family size of two is way above poverty guidelines so definitely forbearance will be your best option"); *see also* NAV-05952286; NAV-06398961; NAV-06399447; NAV-05952252; NAV-06322153; NAV-06398832; NAV-06322154; NAV-05952318; NAV-06399477; NAV-05952342; NAV-05952199; NAV-05952142; NAV-05952095; NAV-06322091.

Defendants further deny paragraph 146 because it cites to various calls on which borrowers refused to discuss options other than forbearance.  For example, on the call identified as NAV-05952492, the borrower calls and requests a forbearance and the representative explains that he is "going to ask [the borrower] a couple questions . . .  to see if maybe we can put you in something else that

52

would better help you." *Id.*; RSUF Ex. 87 at 3:9–15.  The borrower responds that

if the representative is "referring to . . . other repayment plans," she has already

"gotten some information" and "plan[s] to look into that later" but she "just

want[s] to . . . do the forbearance for now." *Id.* at 3:16–24.  *See also, e.g.*,

NAV-06399230; RSUF Ex. 88 at 3:5–22 (after borrower requests forbearance, the

representative asks if the borrower wants "to see if [he] qualif[ies] for anything

else," but the borrower responds that he wants "[j]ust [the forbearance] for now");

NAV-06398925; RSUF Ex. 89 at 3:1–8 (when asked if he would like help

"find[ing] another option besides [forbearance]," the borrower responds "No.  I

already spoke to someone about this last month and decided that I'm better off

doing it this way for now any ways"); *see also* NAV-06399233; NAV-06322118;

NAV-05952201; NAV-05952264; NAV-06399076.

147.   Denied.  Paragraph 147 should be struck because it contravenes the

Court's order that the statement of facts should consist of no more than "400

numbered statements of fact" "which require[] a single response by the opposing

party" and that "[n]o numbered statement of material fact may include subparts or

subdivisions," Doc. 463 at 2; *see supra* RSUF ¶ 146.  Defendants count at least six

separate factual assertions regarding each of the seventy-two calls.  Paragraph 147

likewise relies on PSUF Exhibit 289, the declaration of a previously undisclosed

witness that summarizes a call review over which the CFPB previously claimed

privilege, which should be struck. *See* Doc. 508.

To the extent further response is required, Defendants deny paragraph 147

because the factual assertions it contains do not apply to all seventy-two of the

phone calls cited. For example, on the recording identified as NAV-05952256, the

representative explains that, based on the borrower's income and other

information, "the regular standard payment" is the "lowest" payment amount

available. RSUF Ex. 90 at 3:23–24. *See also, e.g.*, NAV-05952273; RSUF Ex. 91

at 5:20–24 (representative explains that IDR "would get you a zero [dollar

payment]"); NAV-05952555; RSUF Ex. 92 at 5:10–22 (borrower provides income

and family size, and representative explains that IDR would result in a "higher

payment"); NAV-06399282; RSUF Ex. 93 at 4:9–21 (after obtaining the

borrower's income ("52,000") and family size ("single"), the representative

explains "I was trying to see if we could do, like, an income driven [plan] to get a

lower payment but . . . that wouldn't work with that income."); *see also*

NAV-06399200; NAV-05952056; NAV-05952218; NAV-05952283; NAV-

05952285; NAV-05952293; NAV-05952445; NAV-05952481; NAV-06322123;

NAV-06322148; NAV-06398679.

Defendants further deny paragraph 147 because a number of the recordings

cited are calls on which borrowers refuse to provide the information necessary to

calculate their IDR eligibility and payment amount.  *See, e.g.*, NAV-06399455,
NAV-05952105; NAV-06322088; NAV-05952210; NAV-05952447;
NAV-05952451; NAV-05952452; NAV-05952515; NAV-05952448;
NAV-06322112; NAV-06399061; NAV-06399175.

148.   Denied.  Paragraph 148 should be struck because it contravenes the
Court's order that the statement of facts should consist of no more than "400
numbered statements of fact" "which require[] a single response by the opposing
party" and that "[n]o numbered statement of material fact may include subparts or
subdivisions," Doc. 463 at 2; *see supra* RSUF ¶ 146.  Paragraph 148 makes three
separate assertions regarding each of the thirty-three calls listed.  Paragraph 148
also relies on PSUF Exhibit 289, the declaration of a previously undisclosed
witness that summarizes a call review over which the CFPB previously claimed
privilege, which should be struck.  *See* Doc. 508.

To the extent further response is required, Defendants deny paragraph 148
because the factual assertions it contains do not all apply to all thirty-three of the
phone calls cited.  *See e.g.*, NAV-05952388; RSUF Ex. 94 at 7:17–24
(representative explains that under IDR, the borrower could be eligible for "20-
year loan forgiveness" and "any interest on your subsidized loans is going to be
paid for by the federal government"); NAV-05952242; RSUF Ex. 95 at 5:16–21
(representative describes IDR as "a very beneficial plan" that "sets you up for loan

forgiveness after 25 years," but the borrower requested forbearance "for [a] while until [he] [could] just get [his] feet more on the ground, since [he] just switched jobs").

Defendants further deny paragraph 148 because the phone calls cited include numerous calls on which borrowers said they could not afford their payment under an IDR plan and therefore would not receive the asserted benefits.[12]

The chart below provides some illustrative examples.

| Call Recording and Transcript Exhibits | Call Description |
| --- | --- |
| NAV-06398682; RSUF Ex. 96 at 3:17–18, 5:7–11 | Borrower explains his income is "over $100,000." The representative explains that with that income, IDR would "take [the] payment down from $1,726 to about $878," which the borrower said he still could not afford. |
| NAV-06399339; RSUF Ex. 97 at 5:14–21, 6:8–20 | Representative explains that "an income based repayment option" would get the borrower's payment "down to about $50 a month," but the borrower was "unable to make any sort of payment" and asks for a six-month forbearance to get "financially stable" since he "just got a new job." |
| NAV-05952122; RSUF Ex. 98 at 4:4–9, 5:19–21 | After obtaining the borrower's income ("8,000 a month"), the representative explains "if you did the Income-Based Repayment, you would be down . . . at 656.15 every month." The borrower asks if there is a way to "just postpone payments altogether for a certain amount of time." |

---

[12] *See also* NAV-05952254, NAV-05952235, NAV-05952465, NAV-05952397, NAV-06322109, NAV-06399213, NAV-06399222, NAV-05952183, NAV-06399016, NAV-06399160, NAV-06322119, NAV-06399483, NAV-05952157, NAV-06399156.

| NAV-06399254; RSUF Ex. 99 at 9:8–13, 13:15–18 | Representative explains that "going based off [the borrower's] income . . . would actually increase the payment" because the borrower is "already on a graduated repayment plan." Because the borrower could not afford that payment amount, the representative provided a six-month forbearance. |
|---|---|

149.   Denied.  Paragraph 149 should be struck because it contravenes the

Court's order that the statement of facts should consist of no more than "400

numbered statements of fact" "which require[] a single response by the opposing

party" and that "[n]o numbered statement of material fact may include subparts or

subdivisions," Doc. 463 at 2; *see supra* RSUF ¶ 146.  Defendants count at least

four separate factual assertions regarding 450 calls.  Paragraph 149 likewise relies

on PSUF Exhibit 289, the declaration of a previously undisclosed witness that

summarizes a call review over which the CFPB previously claimed privilege,

which should be struck.  *See* Doc. 508.

To the extent further response is required, Defendants deny paragraph 149,

which relies on numerous calls on which borrowers indicated that the

circumstances giving rise to their hardship were in fact short-term and would

conclude within the period for which a forbearance would be provided.[13]

The chart below provides some illustrative examples.

| Call Recording and Transcript Exhibits | Call Description |
|---|---|
| NAV-05952140; RSUF Ex. 100 at 2:18–3:3 | Borrower explains that her employer is "going to pay off [her] student loans" and she needs a forbearance until that process is completed. |
| NAV-05952223; RSUF Ex. 101 at 4:3–16 | Borrower wants to "postpone the payments [from September] until October," at which point he will be "back in classes" for his Ph.D. and his loans will go "back into a deferment." |

---

[13] *See* NAV-06399131, NAV-06322117, NAV-05952135, NAV-05952156, NAV-05952147, NAV-05952149, NAV-05952182, NAV-05952237, NAV-06399236, NAV-05952497, NAV-05952301, NAV-05952308, NAV-06399468, NAV-05952324, NAV-05952325, NAV-05952340, NAV-05952350, NAV-05952358, NAV-05952438, NAV-05952441, NAV-05952442, NAV-05952163, NAV-05952473, NAV-06322110, NAV-05952530, NAV-05952542, NAV-06322037, NAV-06322057, NAV-06322063, NAV-06322103, NAV-05952287, NAV-06399161, NAV-05952233, NAV-06399147, NAV-06322179, NAV-06399089, NAV-05952323, NAV-05952270, NAV-06398757, NAV-05952248, NAV-06398799, NAV-06322131, NAV-06399086, NAV-06399133, NAV-06322184, NAV-06399123, NAV-06399122, NAV-06398778, NAV-05952385, NAV-06399430, NAV-06398819, NAV-06398814, NAV-06399301, NAV-06398834, NAV-06399271, NAV-06398837, NAV-06398863, NAV-06398874, NAV-06399077, NAV-05952148, NAV-06399206, NAV-06399218, NAV-06398797, NAV-06399238, NAV-06399110, NAV-06399003, NAV-06399010, NAV-06399023, NAV-06399055, NAV-06398726, NAV-05952417, NAV-06398889, NAV-06398893, NAV-06398979, NAV-06322157, NAV-06399459, NAV-05952132, NAV-06398734, NAV-06398802, NAV-05952092, NAV-05952283, NAV-05952352, NAV-05952410, NAV-05952444, NAV-05952533, NAV-06321964, NAV-06322104, NAV-06399170, NAV-06399232, NAV-06398960, NAV-06399281, NAV-06399293.

| | |
|---|---|
| NAV-05952146;<br>RSUF Ex. 102 at 4:3–11 | Borrower requests forbearance, and representative explains that "we do have other options outside of a forbearance" and asks if the borrower wants to "see if [she] qualif[ies] for anything else first;" borrower responds "I just need to do a forbearance [for] about . . . two months or three months." |
| NAV-06322182;<br>RSUF Ex. 103 at 3:1–9 | Borrower requests forbearance and explains that he was "plan[ning] on starting school in the fall . . . so [he] really only need[s] it for about maybe three to four months." |
| NAV-05952266;<br>RSUF Ex. 104 at 3:14–23 | After representative offers "a repayment plan" that would "give [the borrower] a lesser amount to pay or a possible zero dollars for the next 12 months," the borrower responds that he is "just kind of having problems for the next three or four months." |
| NAV-06399395;<br>RSUF Ex. 105 at 4:23–5:4 | Borrower explains he needs assistance for "three months" due to an unexpected expense, but confirms that his "normal monthly payment of $169 is something that . . . will be affordable" when the forbearance is over. |
| NAV-06399186;<br>RSUF Ex. 106 at 3:4–8 | Borrower "not able to make the payment for next month" and requests forbearance until "January," at which point she will "be able to start making payments." |
| NAV-05952464;<br>RSUF Ex. 107 at 3:15–24 | Borrower explains she is "at the end of consolidating" and requests forbearance "until March" because she "should actually be done consolidating by then." |
| NAV-06399272;<br>RSUF Ex. 108 at 4:5–19,<br>6:20–22 | Borrower "in the process of . . . apply[ing] for disability" and "should be well situated" by the time the forbearance ends. |
| NAV-06399199;<br>RSUF Ex. 109 at 3:14–17,<br>6:10–18 | Borrower "going back to school here, here [sic] relatively soon," and representative recommends "an Income-Based Repayment plan" when the borrower "resume[s] paying." |
| NAV-05952145;<br>RSUF Ex. 110 at 2:21–4:9 | Representative offers to "get [the borrower] qualified for one of our Income-Based Repayment Programs" under which "if you don't have an income, your payment would be zero," but the |

59

| | borrower explains that she "just graduated" and wanted only a 3-month forbearance "until [she] pass[ed] the boards" and "start[ed] working." |
|---|---|

Defendants further deny paragraph 149 because borrowers █████████████

████████████████████████████████████████████████

█████ began making payments following the conclusion of that forbearance on a

payment plan other than IDR.  RSUF Ex. 111 at *14–19 (showing borrower on call

identified as NAV-05952312 resumed payments following four-month forbearance

from April to August 2015); RSUF Ex. 112 at *10–37 (showing borrower

identified in NAV-06321955 resumed payments following December 2012

forbearance, paying off loans in full by 2017); RSUF Ex. 113 at *49–72 (showing

borrower on call NAV-06399237 resumed payments following forbearance from

September 2014 to March 2015).

150.    Admitted in part and denied in part.  Paragraph 150 should be struck

because it contravenes the Court's order that the statement of facts should consist

of no more than "400 numbered statements of fact" "which require[] a single

response by the opposing party" and that "[n]o numbered statement of material fact

may include subparts or subdivisions," Doc. 463 at 2; *see supra* RSUF ¶ 146.

Paragraph 150 makes distinct factual assertions regarding each of the 450 calls

cited.  Paragraph 150 likewise relies on PSUF Exhibit 289, the declaration of a

previously undisclosed witness that summarizes a call review over which the CFPB previously claimed privilege, which should be struck. *See* Doc. 508.

To the extent further response is required, Defendants deny paragraph 150. As explained in Defendants' response to paragraph 151, the statement that borrowers on these recordings were "granted prospective forbearance" is incorrect regarding at least fifty of the 450 recordings cited. *See infra* RSUF ¶ 151. For the remaining calls where a borrower did enroll in forbearance, Defendants admit that borrowers agreed that "you are willing but temporarily unable to make your payments due to hardship" and that "you may be eligible for repayment options, which include . . . income driven repayment plans." SUF ¶ 209.

151. Denied. Paragraph 151 should be struck because it contravenes the Court's order that the statement of facts should consist of no more than "400 numbered statements of fact" "which require[] a single response by the opposing party" and that "[n]o numbered statement of material fact may include subparts or subdivisions," Doc. 463 at 2; *see supra* RSUF ¶ 146. Paragraph 151 makes distinct factual assertions regarding each of the 450 calls cited. Paragraph 151 likewise relies on Exhibit 289, the declaration of a previously undisclosed witness that summarizes a call review over which the CFPB previously claimed privilege, which should be struck. *See* Doc. 508.

To the extent further response is required, Defendants deny paragraph 151

because the statement that borrowers "proceeded with enrolling in prospective

forbearance" is not true for all 450 of the calls cited.  PSUF Exhibit 288 lists



PSUF Ex. 288 at A-8595.  However,                              are nonetheless

included in PSUF Exhibit 289, which is the document cited in paragraph 151.[14]

PSUF Ex. 289.  According to PSUF Exhibit 288,

PSUF Ex. 288 at A-8595.

Defendants further deny paragraph 151 because additional calls did not

result in the borrower "enrolling in prospective forbearance."  *See, e.g.*,

NAV-05952472; NAV-06321958; NAV-06322183; NAV-06399260;

---

[14]                                          from PSUF Exhibit 289 are
identified as NAV-05952129, NAV-05952131, NAV-05952189, NAV-05952234,
NAV-05952260, NAV-05952319, NAV-05952331, NAV-05952418,
NAV-06321876, NAV-06321888, NAV-06321891, NAV-06321897,
NAV-06321898, NAV-06321901, NAV-06321902, NAV-06321916,
NAV-06321917, NAV-06321930, NAV-06321976, NAV-06322075,
NAV-06322093, NAV-06322191, NAV-06399159, NAV-06398754,
NAV-06398827, NAV-06398829, NAV-06399072, NAV-06399171,
NAV-06399201, NAV-06399239, NAV-06398991, NAV-06399008,
NAV-06399011, NAV-06398749, NAV-06398751, and NAV-06399344.

NAV-06398948; NAV-06399191; NAV-06399018; NAV-06398704;

NAV-06398911; NAV-06398937; NAV-06398950; NAV-06399321;

NAV-06399389; NAV-06399391.

Defendants further deny that the scripted forbearance terms disclosure did

not lead any borrower to change her decision to enter into the forbearance.

Borrowers on various calls stated their intention to apply for an IDR plan, even

though they also wished to enroll in a prospective forbearance.  *See, e.g.*,

NAV-05952092; NAV-06399081; NAV-06399250.  And even though other

borrowers did not explicitly express an intention to enroll in IDR, ███████████

███████████████████████████████████████████████████

███████████████████████████████████████ RSUF Ex. 18

¶¶ 27–28.

    152.   Admitted.

    153.   Admitted.

    154.   Admitted.

    155.   Admitted in part and denied in part.  Paragraph 155 should be struck

because it contravenes the Court's order that the statement of facts should consist

of no more than "400 numbered statements of fact" "which require[] a single

response by the opposing party" and that "[n]o numbered statement of material fact

may include subparts or subdivisions," Doc. 463 at 2; *see supra* RSUF ¶ 146.

Paragraph 155 presents as a single statement what are separate assertions regarding each of the 450 phone calls cited.

To the extent further response is required, Defendants admit that the call identified as NAV-06399277 includes the quoted conversation. Defendants deny that this conversation represents a call on which a borrower "demonstrates complete reliance on the representative to advise the borrower" or that the representative "fostered such reliance," which are improper legal conclusions, not facts.

Moreover, whether a borrower relied on Navient cannot be determined from an individual phone call. A prior call shows that the same borrower had engaged a third-party representative to speak with Navient "on [her] behalf" about her student loans, and that Navient informed this representative that a "good thing" for the borrower would be "the income based repayment plan" under which the borrower's payment "could go as low as zero dollars depending on her income." RSUF Ex. 45 at NAV-06591355; RSUF Ex. 114 at 2:4–6, 9:14–19.

Defendants further deny paragraph 155 because a number of the calls cited involved borrowers who did not indicate any reliance. For example, on the call identified as NAV-06399046, the borrower calls and says, "I need a forbearance on my loans." RSUF Ex. 115 at 2:24–25. The representative tries to qualify the borrower for other options, but the borrower's father joins the call and says "what

we'd like to do is just get the forbearance." *See id.* at 4:5–6. ██████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ RSUF Ex. 18

¶ 20 n.4.[15]

156.   Admitted in part and denied in part.  Defendants admit that the call

identified as NAV-06321973 included the quoted conversation.  Defendants deny

that the borrower had choices other than forbearance.  The borrower had "a parent

plus loan" that did not qualify for IDR, as well as "unsubsidized Stafford loans"

---

[15] *See also* NAV-06322164, NAV-06322164, NAV-06399046, NAV-06399163, NAV-05952094, NAV-05952119, NAV-05952170, NAV-05952243, NAV-06399027, NAV-06399333, NAV-05952107, NAV-06399170, NAV-05952160, NAV-06399258, NAV-06398960, NAV-05952165, NAV-05952440, NAV-05952203, NAV-06398838, NAV-06399334, NAV-05952244, NAV-06399281, NAV-05952207, NAV-06399088, NAV-06398813, NAV-05952086, NAV-06399293, NAV-05952533, NAV-05952214, NAV-05952217, NAV-06398906, NAV-06399020, NAV-06399033, NAV-06399036, NAV-06399095, NAV-05952434, NAV-06399214, NAV-06398677, NAV-06399274, NAV-05952138, NAV-06399007, NAV-05952040, NAV-05952546, NAV-06322137, NAV-06322104, NAV-06322102, NAV-05952100, NAV-06321964, NAV-05952226, NAV-05952108, NAV-06398767, NAV-06399104, NAV-06398890, NAV-05952505, NAV-06322114, NAV-06398828, NAV-06399426, NAV-05952372, NAV-06398815, NAV-05952410, NAV-06398844, NAV-06322193, NAV-06322130, NAV-06399232, NAV-05952352, NAV-06399103, NAV-05952152, NAV-06398766, NAV-05952490, NAV-06398759, NAV-06398784, NAV-06321955, NAV-05952070, NAV-05952454, NAV-05952444, NAV-06399240, NAV-06322111, NAV-06399127, NAV-06398678, NAV-06398887, NAV-05952398, NAV-05952172, NAV-06399290, NAV-05952211, NAV-05952133, NAV-05952169, NAV-06399034, and NAV-06399004.

that would not be eligible for interest subsidies under either deferment or IDR. NAV-06321973; RSUF Ex. 116 at 4:5–16. The borrower did not have any subsidized loans. *Id.* For the reasons stated in response to paragraph 155, Defendants also deny that this call represents an "example" of borrower "reliance." *See supra* RSUF ¶ 155.

157. Admitted in part and denied in part. Defendants admit that the call identified as NAV-06398950 included the quoted conversation. Defendants deny that the borrower on this call made an "inquiry about options." NAV-06398950; RSUF Ex. 117 at 3:8–11. The borrower on this call was "applying for a deferment," but because she only had two months of deferment eligibility remaining the representative suggested a "student loan debt burden forbearance." NAV-06398950; RSUF Ex. 117 at 4:24–5:4. This type of forbearance is different from a voluntary forbearance and requires the borrower to complete a written application in order to qualify. RSUF Ex. 117 at 5:13–18. The only forbearance the borrower received on this call was a non-capitalizing administrative forbearance to permit them time to complete the application. *Id.* at 7:23–8:5. For the reasons stated in response to paragraph 155, Defendants also deny that this call represents an "example" of borrower "reliance." *See supra* RSUF ¶ 155.

## III.   COUNTS III–IV

158. Admitted.

159.   Admitted in part and denied in part.  Defendants admit that Mr.
Stullken was Navient's Senior Director of Customer Experience as of 2017.  PSUF
Ex. 20 at A-196:6–20 (Stullken).  Defendants deny the summary of his testimony.
When asked what an "e-mail wrapper" is, Mr. Stullken testified:  "We can't send
you all the information you need in one e-mail – or in an e-mail that you would
think to pull up on your phone.  So what we do is we'll send you a wrapper that'll
give you information relevant to what we're trying to communicate with you
about.  And if you want more detail, you can go to your in-box on your online
account and pull that down and read all the details, but the wrapper is really to get
your attention on why we're e-mailing, why we're communicating with you."  *Id.*
at A-203:6–17 (Stullken).

160.   Admitted in part and denied in part.  Defendants admit that the email
contained a hyperlink.  Defendants deny that the hyperlink was "to Navient's
website."  The email contained a hyperlink not to Navient's website, but to the
borrower's media server.  PSUF Ex. 122 at A-2128; *see infra* RSUF ¶¶ 179–80
(citing PSUF Ex. 139) (showing "Click to Media Server rate[s]").

161.   Admitted in part and denied in part.  Defendants admit that PSUF
Exhibit 122 contains the quoted language.  Defendants deny the statement that
"[t]he body of the email did not provide any greater detail than its subject line"
because the body of the email further stated: "Remember, by managing your

loan(s) online, you have access to several convenient features, such as: . . . Read your past email correspondence with us and view loan documents we previously sent to you. . . . Learn more about available repayment options and how to apply. . . . Return documents easily by taking advantage of our Document Upload feature available online.  Simply click on the Customer Support dropdown and select Upload Documents."  PSUF Ex. 122 at A-2128.  Defendants deny that the document was *only* accessible through the hyperlink.  As PSUF paragraph 161 notes, a borrower could "log in to [her] account" directly to view the document.

162.    Admitted in part and denied in part.  Defendants admit the wrapper was described as "generic."  Defendants deny that "[i]t was 'generic' because it gave no indication about what type of document the borrower would see if she logged into her account to view the hyperlinked document."  The statement is unaccompanied by a reference in the record which supports the statement of fact, and it should be struck.  When asked "What's a generic wrapper," Mr. Stullken pointed to PSUF Exhibit 122.  *See* PSUF Ex. 20 at A-203–A-204.

163.    Admitted in part and denied in part.  Defendants admit that a borrower could log into her account to view the hyperlinked document, which was the notice reminding the borrower about the upcoming expiration of her IDR plan and the need to renew the plan.  Defendants otherwise deny that "the borrower would have *discovered*" the IDR notice because it is unaccompanied by a reference in the

record which supports the statement of fact and should be struck.  Doc. 463 at 3.

Borrowers consented to receiving such notices in their online accounts.  SUF

¶¶ 231–34.

164.   Admitted in part and denied in part.  Defendants admit that three

borrowers submitted comments about "spam" to Navient's "Opinion Lab,"—"a

place on [Navient's] website where customers could leave commentary about . . .

[their] experience on the website."  RSUF Ex. 118 at 144:6–22 (Stullken).

Defendants deny that borrowers complained about the "volume" of spam because

it is unaccompanied by a reference in the record which supports the statement of

fact, and it should be struck.  Doc. 463 at 3.  Defendants also deny that "borrowers

regularly receive" five to fifteen emails per month.  PSUF Exhibit 120 ███████

████████████████████  PSUF Ex. 120 at A-2118o–A-2118q.

165.   Admitted in part and denied in part.  Defendants admit the quoted

subject lines are contained in the cited PSUF Exhibits, which are dated 2013 and

2014.  Defendants deny that "Navient conducted extensive testing of dozens of

email subject lines, and the results of this test were reported in dozens of emails"

and that "The testing measured the rates at which borrowers open various emails

with different subject lines."  PSUF Exhibits 127, 128, 129, and 132 reflect "daily"

"email campaign reporting," not testing.

166.    Denied.  As explained in response to paragraph 165, PSUF Exhibits 127, 128, 129, and 132 are not "tests," but instead reflect "daily" "email campaign reporting," showing the "email volume," "open rate" and other figures regarding various email "campaigns."  *See supra* RSUF ¶ 165.

167.    Admitted, but denied that the facts contained in paragraph 167 are material because PSUF Exhibit 125 is inadmissible subsequent remedial measures evidence.  *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 407; *Reynolds v. Univ. of Pennsylvania*, 483 F. App'x 726, 730–33 (3d Cir. 2012); *Hogan v. City of Easton*, No. CIV. A. 04-759, 2006 WL 3702637, at *7–8 (E.D. Pa. Dec. 12, 2006).  PSUF Exhibit 125 is ███████████████████████████████████████

███████████████████████████████████   PSUF ¶ 172.

168.    Admitted, but denied that the facts contained in paragraph 168 are material because PSUF Exhibit 126 is inadmissible subsequent remedial measures evidence.  *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 407; *Reynolds*, 483 F. App'x at 730–33; *Hogan*, 2006 WL 3702637, at *7–8.  PSUF Exhibit 126 is ██████████

████████████████████████████████████████

███████████████████   PSUF ¶ 172.   █████████████████████

████████████████████████████████████████

██████████████████   PSUF Ex. 126 at A-2145.  Ms. Peterson testified that Siegel + Gale was retained to "help us simplify our correspondence" with borrowers.

RSUF Ex. 25 at 96:5–11 (Peterson). ███████████████████████████

███████████████████████████████  RSUF Ex. 119 at

NAV-01516192.

169.   Admitted in part and denied in part.  Defendants admit that PSUF

Exhibit 20 contains the quoted language.  Defendants deny that "Navient

documents that were simply notifications to borrowers, such as those informing

borrowers that a forbearance had been processed, and which required no action on

the part of the borrower, utilized the same generic email."  Mr. Stullken testified

that a forbearance approval notification utilized a generic wrapper—he did not

testify that such emails were "simply notifications."  PSUF Ex. 20 at A-208:23–

A-210:2 (Stullken).  Mr. Stullken testified that there were "other documents that

were going out at that time with a generic wrapper," RSUF Ex. 118 at 257:6–10

(Stullken), and that Navient has "continually push[ed] to move more and more

wrappers into specific."  PSUF Ex. 20 at A-2014:9–16 (Stullken).  Ms. Peterson

testified that "[t]he generic wrapper was our – was used for every email until

approximately -- we started making changes to wrappers in the 20 -- roughly 2014,

2015 period.  Prior to that time, we actually had policy that did not allow us to put

information into the body of our email, and that was based off of privacy.  So we

were concerned our information security was trying to protect the privacy of our

customers by not putting too much private information into the body of the email

in case that email doesn't belong to our customer.  So that policy was not changed until the 2014, 2015 timeline, and then at that point in time, we started updating our email wrappers to include more specific information."  RSUF Ex. 25 at 101:5–17 (Peterson).  Prior to these updates, policies regarding customer communications required that unencrypted emails include "as few unencrypted data elements as necessary to effect the purpose of the communication" and "[i]n no event" could such emails include "more than 10 [non-public] data elements."  RSUF Ex. 120 at NAV-05154566.  Ms. Peterson further testified that Navient is "in a constant state of trying to figure out the best balance between customer privacy and customer experience, and so with multiple conversations with our information security team, a new policy was drafted that would get them comfortable with putting a certain number of elements and then limited type of elements into the body of the email.  So that was worked through with our information security team at that point, and I think it's just as technology has changed and more and more people are using this form of communication."  RSUF Ex. 25 at 102:7–17 (Peterson).

170.   Admitted in part and denied in part.  Paragraph 170 is denied and not material because PSUF Exhibit 119 is inadmissible subsequent remedial measures evidence. *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 407; *Reynolds*, 483 F. App'x at 730–33; *Hogan*, 2006 WL 3702637, at *7–8.  Exhibit 119 concerns Navient's

efforts to improve its communications to borrowers before the email was revised in March 2015.

To the extent further response is required, Defendants admit PSUF Exhibit 119 contains the quoted language.  Defendants deny that the document "stated that the generic email is part of a '[w]eak communication strategy for customers that need to renew their IBR.'"  The document lists the "weak communication strategy" and "generic" email wrapper as separate issues, with the former concerning the fact that "[o]nly one letter/e-mail is sent to customers 95 days prior to renewal date," which Navient changed in mid-2015.  PSUF Ex. 119 at A-2116a to A-2116b; PSUF Ex. 116 at A-2101–A-2102.

171.   Admitted.

172.   Admitted in part and denied in part.  Paragraph 172 is denied and not material because PSUF Exhibit 124 is inadmissible subsequent remedial measures evidence.  *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 407; *Reynolds*, 483 F. App'x at 730–33; *Hogan*, 2006 WL 3702637, at *7–8.  PSUF Exhibit 124 concerns Navient's efforts to improve and simplify its communications to borrowers.

To the extent further response is required, Defendants admit PSUF Exhibit 124 contains the quoted language, but the quote should say "it's important that you apply soon to renew your repayment plan!" and "*If you choose not to renew your plan*."  PSUF Ex. 124 at A-2138.

173.    Denied.  Paragraph 173 is denied and not material because PSUF Exhibit 123 is inadmissible subsequent remedial measures evidence.  *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 407; *Reynolds*, 483 F. App'x at 730–33; *Hogan*, 2006 WL 3702637, at *7–8.  Exhibit 123 concerns Navient's efforts to improve its communications to borrowers.  Defendants deny the alteration of the quote from Exhibit 123 that "[t]he idea [behind the new email was] to provide as much information regarding this notification[.]"  The quoted language appears in the "Objective" section of the template for the email.  PSUF Ex. 123 at A-2131.  The full "Objective" section provides:  "To inform the customer that their Income-Based Repayment plan is about to expire and the customer needs to re-apply.  The idea is to provide as much information regarding this notification within the email wrapper to encourage them to log in to their account to view more detailed information.  This email will be sent directly to the customer's personal email address."  *Id.*

174.    Admitted in part and denied in part.  Paragraph 174 is denied and not material because PSUF Exhibit 116 is inadmissible subsequent remedial measures evidence.  *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 407; *Reynolds*, 483 F. App'x at 730–33; *Hogan*, 2006 WL 3702637, at *7–8.  PSUF Exhibit 116 concerns Navient's efforts to improve its communications to borrowers.

To the extent further response is required, Defendants admit that PSUF

Exhibit 116 contains the quoted language.  Defendants deny that this was an

"internal document[]" because PSUF Exhibit 116 is a June 10, 2015 presentation to

the Education Department entitled "FSA/Navient Quarterly Meeting: 2015 Web

Enhancements and IDR Renewal Initiatives."  PSUF Ex. 116 at A-2037.

175.   Admitted in part and denied in part.  Paragraph 175 is denied and not

material because PSUF Exhibit 134 is inadmissible subsequent remedial measures

evidence.  *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 407; *Reynolds*, 483 F. App'x

at 730–33; *Hogan*, 2006 WL 3702637, at *7–8.  PSUF Exhibit 134 concerns

██████████████████████████████████████████

To the extent further response is required, Defendants admit that PSUF

Exhibit 134 ████████████████████████████████████████

████████  Defendants otherwise deny paragraph 175.  ████████████████

████████████████████  PSUF Ex. 134 at A-2262.

176.   Admitted in part and denied in part.  Paragraph 176 is denied and not

material because PSUF Exhibit 137 is inadmissible subsequent remedial measures

evidence.  *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 407; *Reynolds*, 483 F. App'x

at 730–33; *Hogan*, 2006 WL 3702637, at *7–8.  PSUF Exhibit 137 concerns

██████████████████████████████████████████

To the extent further response is required, Defendants admit that █

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████ Defendants deny that █████████████████████

████████████████████████ *See* PSUF Ex. 137 at A-2282 ████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████).

177.   Admitted in part and denied in part.  Paragraph 177 is denied and not

material because PSUF Exhibit 138 is inadmissible subsequent remedial measures

evidence.  *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 407; *Reynolds*, 483 F. App'x

at 730–33; *Hogan*, 2006 WL 3702637, at *7–8.  PSUF Exhibit 138 concerns

████████████████████████████████████   █████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████ PSUF Ex. 138 at A-2289, A-2317.

To the extent further response is required, Defendants admit the document contains the quoted language. Defendants deny that "[t]he generic email required borrowers to log into their account to understand the purpose of the email." This statement is unaccompanied by a reference in the record which supports the statement, and should be struck. Doc. 463 at 3. Borrowers consenting to electronic communications had agreed to such communications. *See* SUF ¶¶ 231–33.

178.   Admitted in part and denied in part. The CFPB appears to be citing the "Clicked to Media Server" rates located at PSUF Ex. 139 at A-2329. Defendants admit that PSUF Exhibit 139 states that "the following are the percentages who 'Clicked to Media Server': 16% in 2012; 22% in 2013, and 21% in 2014." Defendants otherwise deny paragraph 178.

179.   Admitted in part and denied in part. Defendants admit that "the following are the percentages who 'Clicked to Media Server': 4% in 2012; 23% in 2013, and 21% in 2014." PSUF Ex. 139 at A-2329. Defendants otherwise deny paragraph 179.

180.   Admitted in part and denied in part. Defendants admit that PSUF Exhibit 139 contains the percentages for "Overall Open Rates" in those months. Defendants deny that paragraph 180 is describing the same metric as paragraph 178, which described the "Click to Media Server" rates.

77

181.   Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 139 contains the percentages for "Overall Open Rates" in those months for "borrowers with privately-owned FFELP loans who opened the email." Defendants deny the inaccurate quotation of the subject line.  The subject line for these statistics reads: "Your payment will increase soon!"—not "Your payment amount will increase soon!"  PSUF Ex. 139 at A-2331.  Defendants deny that paragraph 181 is describing the same metric as paragraph 179, which described the "Click to Media Server" rates.

182.   Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 99 states that ███████████████████████████████████████████ ██████████████████████████████████  Beyond that statement, paragraph 182 is unaccompanied by a reference in the record which supports the statement of fact, and should be struck.  Doc. 463 at 3.

183.   Admitted in part and denied in part.  PSUF Exhibit 113 is an incomplete document taken out of context because it appears to begin on slide five and has no title page.  Defendants therefore deny paragraph 183 because it is not supported by the document and should be struck.  Doc. 463 at 3.

To the extent further response is required, Defendants admit that PSUF Exhibit 113 states that ██████████████████████████████████████ ██████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████ PSUF Ex. 113 at

A-2024.

184.   Admitted in part and denied in part.  PSUF Exhibit 113 is an

incomplete document taken out of context because it appears to begin on slide five

and has no title page.  Defendants therefore deny paragraph 184 because it is not

supported by the document and should be struck.  Doc. 463 at 3.

To the extent further response is required, Defendants admit that PSUF

Exhibit 113 states that ███████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████████████

PSUF Ex. 113 at A-2025.

185.   Admitted.

186.   Admitted in part and denied in part.  Defendants admit that PSUF

Exhibits 121 and 118 contain the quoted language.  Defendants deny that the

quoted reminder notice cover letters were "in use from January 2010."  The

statement is unaccompanied by a reference in the record which supports the

statement of fact, and should be struck, Doc. 463 at 3, because the reminder notice

cover letters cited by the CFPB are dated February 9, 2012, *see* PSUF Ex. 121 at

A-2120 (letter updated "02/19/12"); PSUF Ex. 118 at A-2112 (letter updated "02/09/12").  The reminder notices cover letters prior to December 2011 did not include the language quoted in paragraph 186.  *See* SUF ¶ 224.

187.   Denied.  Defendants deny that the versions of the reminder notice cover letters in PSUF Exhibits 121 and 118 were "in use from January 2010," for the reasons stated in paragraph 186.  *See supra* RSUF ¶ 186.  Defendants also deny that the notice cover letter "did not separately identify any negative consequences from submitting incorrect or incomplete information other than a processing delay."  The reminder notice cover letter stated that the "IBR period *will expire* in approximately 90 days" if the borrower does not "complete the included Income-Based Repayment Plan Request Form."  PSUF Ex. 121 at A-2122; PSUF Ex. 118 at A-2113 (emphasis added).

Defendants further deny that PSUF Exhibits 118 and 121 are complete versions of the reminder notice.  These exhibits include only the cover letter. *Compare* PSUF Exs. 121, 118, *with* SUF Exs. 128, 132.  The H388 reminder notice cover letter states that the notice contains the following "Enclosures: Repayment Plan Selection Form[;] Repayment Plan Choice Form[;] Income-Based Repayment Plan Alternative Documentation of Income Request Form[;] [and] Difficulty Making Payments Disclosure."  PSUF Ex. 118 at A-2114.  The H356 reminder notice cover letter states that the notice contains the following

"Enclosures: Income-Based Repayment Plan Request Form[;] Income-Based Repayment Plan Alternative Documentation of Income Request Form[;] [and] Difficulty Making Payments Disclosure." PSUF Ex. 121 at A-2123. The PSUF Exhibits do not include any of these enclosures. *See* PSUF Ex. 118; PSUF Ex. 121. These forms identified "negative consequences from submitting incorrect or incomplete information." *See* SUF ¶¶ 220–21, 225–26.

188.   Denied. Defendants deny that the reminder notice cover letter was "in use from January 2010," for the reasons stated in response to paragraph 186. *See supra* RSUF ¶ 186. Defendants also deny that the reminder notice cover letter "did not provide an exact deadline by which the borrower had to submit correct and complete information to avoid any negative consequences." The reminder notice cover letter, which was dated, stated that the borrower's "IBR period will expire" if the borrower did not "complete the included Income-Based Repayment Plan Request Form" "in approximately 90 days." *See* PSUF Ex. 121 at A-2122; PSUF Ex. 118 at A-2113.

189.   Admitted in part and denied in part. Defendants admit that "types of errors in attempting to submit the recertification paperwork that can cause the paperwork to be incomplete or incorrect, includ[e] a missing spousal signature, missing tax returns, tax returns without the signature page, and incomplete documentation of alternative income." PSUF ¶ 189.

81

Defendants deny that "borrowers make a variety of types of errors" because it is unaccompanied by a reference in the record which supports that assertion, and should be struck.  Doc. 463 at 3.  PSUF Exhibit 131 does not identify any borrower who made any particular error.

190.    Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 115 contains the quoted language.  Defendants deny that the revision process occurred entirely in December 2012.  Starting in May 2011, ED engaged in a negotiated rulemaking process regarding proposed improvements to the IDR program.  77 Fed. Reg. 42,085–87, 42,146–48; *id.* at 42,088.  In July 2012, ED issued a contract modification instructing that, by December 2012, "the servicer shall send an *annual notification of terms and conditions* to the borrower indicating that the borrower is on IBR and explaining the terms and conditions of the plan," which included "[i]nformation about the requirement that the borrower provide updated AGI or other income documentation annually and explanation that the servicer will notify the borrower of this requirement in advance of the due date," and an "[e]xplanation of the consequences if the borrower does not submit updated information within (10) days of the soft deadline . . . including explanation that the monthly payment amount will increase, what the new monthly payment amount will be, and any unpaid interest will be capitalized at the end of the current annual

payment period." SUF ¶ 227. Navient implemented ED's instructions in December 2012. *See id.* at ¶ 228.

    191. Admitted.

## IV.   COUNT V

    192. Admitted in part and denied in part. Defendants admit that PSUF Exhibit 156 contains the quoted language. Defendants deny that Navient "advertised the cosigner release feature" and "encouraged borrowers."



JSUF ¶ 40.

    193. Admitted in part and denied in part. Defendants deny that the facts in paragraph 193 are material because the study described in PSUF Exhibit 164 did not measure the impact of the consecutive, on-time payment requirement that is at issue in Count V. *See generally* PSUF Ex. 164.

    To the extent further response is required, Defendants admit that PSUF Exhibit 164 states that 77% of undergraduate students surveyed and 84% of parents surveyed indicated something about the desirability of cosigner release as a

feature of the Smart Option Student Loan.  PSUF Ex. 164 at A-2679.  Defendants

deny that the study "gauge[d] the features of private loans most important to

potential borrowers."  The study discusses the "features of the Smart Option

Student Loan," not all private loans.  *Id.*  Defendants deny the last sentence of

paragraph 193.  PSUF Exhibit 164 does not provide any information about the

survey questions or methodology.  In any event, the results indicate that "cosigner

release is *not* a statistical key driver" of Smart Option Student Loan "interest," *id.*

at A-2679 (emphasis added), and cosigner release impacted borrowers' and

cosigners' likelihood to apply by no more than 1.4% for students and 2.5% for

parent cosigners, *id.* at A-2680.

194.   Denied.  Paragraph 194 is denied and not material because the

complaints, which the CFPB relies on for their truth, are hearsay within hearsay

not subject to any exception to the rule against the admission of hearsay.  *See* Fed.

R. Civ. P. 56(c)(2); Fed. R. Evid. 802, 805; *QVC, Inc. v. MJC Am., Ltd.*, No. CIV.

08-3830, 2012 WL 33026, at *2 (E.D. Pa. Jan. 6, 2012); *Schriner v. Sysco Food

Serv. of Cent. Pa.*, No. CIV. 1CV032122, 2005 WL 1498497, at *1 n.2 (M.D. Pa.

June 23, 2005).

To the extent further response is required, Defendants deny that inquiries

regarding cosigner release requirements were "frequent."  ███████████████

█████████████████████████████████████████████████████████████

███████ JSUF ¶ 46.  The CFPB cites to fewer than 170 inquiries in 2014 and 2015.  *See* PSUF Ex. 145 (one complaint); PSUF Ex. 147 (one complaint); PSUF Ex. 154 (one complaint); PSUF Ex. 163 (one complaint); PSUF Ex. 285 at A-8505–A-8532 (164 complaints).

Paragraph 194 is also denied and not material because the vast majority of the cited inquiries and testimony do not identify any statements made by Navient. *See, e.g.*, PSUF Ex. 145 at A-2401; PSUF Ex. 147 at A-2436; PSUF Ex. 163 at A-2677; PSUF Ex. 285 at A-8514, A-8521 (Rows #57–80).  Further, most of the cited complaints do not involve borrowers who made lump-sum payments, the only borrowers at issue in the CFPB's claim.  *See, e.g.*, PSUF Ex. 154 at A-2507; PSUF Ex. 285 at A-8513 (Rows #31–56).  Other complaints involve borrowers who were ineligible for reasons other than the consecutive, on-time payment requirement.  *See, e.g.*, PSUF Ex. 285 at A-8524 (Row #138: "denied because he did not complete a cosigner release application"); *id.* at A-8525 (Row #165: "denied . . . due to a derogatory collection on his credit report").  Other complaints do not reveal whether the borrower had otherwise made the required *number* of consecutive payments.  *See, e.g.*, PSUF Ex. 145 at A-2401; PSUF Ex. 147 at A-2436; PSUF Ex. 163 at A-2667; PSUF Ex. 285 at A-8515 (Row #104: "she has been making her payments on time").  Finally, other complaints involved borrowers who did not make full principal and interest payments or made late

payments.  *See, e.g.*, PSUF Ex. 285 at A-8519 (Row #10: "customer requested interest only payments"); *id.* at A-8514 (Row #80: "made her July payment late and has been denied cosigner release because of it"); *id.* at A-8518 (Row #154: "denied the request due to one late payment").

195.   Admitted.

196.   Admitted.

197.   Denied.  Navient instructs representatives to place a message on the account when a customer requests cosigner release, and if a borrower is denied due to not making "the number of required principal and interest payments," the representative must "note the denial reason" and enter the associated code.  RSUF Ex. 121 at NAV-04914810 – 4811; *see also* RSUF Ex. 122 at NAV-02949370 (if cosigner release requested, "regardless if an application or denial is sent, you must place the following corr message on the account: GKO8 - COSIGNER RELEASE REQUESTED"); RSUF Ex. 121 at NAV-04914811 (instructions to enter appropriate code, including "MKA8 COS REL RCVD-DENIED REQUIRED P&I PAYMENTS NOT MET"); RSUF Ex. 123 at NAV-01634923 – 4924.  Navient also records in its servicing data the denial letters sent to the borrowers as a result of the screening process.  *See* RSUF Ex. 121 at NAV-04914810 – 4812 (describing P407 denial letter).  The cited testimony refers only to data provided in

response to a specific request for the number of formal applications received.

PSUF Ex. 5 at A-27:15–A-28:23 (Zemetro).

198.   Admitted.

199.   Admitted in part and denied in part.  Defendants admit that PSUF

Exhibit 156 contains the quoted language.  Defendants admit the last sentence of

paragraph 199 with respect to the websites identified in PSUF Exhibit 156.

Defendants deny that "Navient's consumer-facing materials advertised the

cosigner release policy" because the website did not purport to describe all aspects

of Navient's policy.  The website states "SALLIE MAE BANK RESERVES THE

RIGHT TO MODIFY OR DISCONTINUE PRODUCTS, SERVICES AND

BENEFITS AT ANY TIME WITHOUT NOTICE.  CHECK SALLIEMAE.COM

FOR THE MOST UP-TO-DATE PRODUCT INFORMATION."  PSUF Ex. 152

at A-2489.

200.   Admitted.

201.   Admitted.

202.   Admitted in part and denied in part.  Defendants admit that Navient

"[i]nvited" borrowers who "did not meet [Navient's] credit eligibility

requirements" to "[r]e-[a]pply with a [c]reditworthy [c]osigner" in letters dated

February 25, 2011 and May 19, 2011.  PSUF Ex. 160 at A-2664; PSUF Ex. 161 at

A-2668.  Defendants deny that "[t]he letters stated that a borrower may apply for

87

cosigner release if the borrower made a minimum number of consecutive, on-time payments."  PSUF Exhibits 160 and 161 state that "[y]ou may apply to release your cosigner from liability *if you have a satisfactory history of making principal and interest payments and meet the applicable eligibility criteria at the time of application*."  PSUF Ex. 160 at A-2664 (emphasis added); PSUF Ex. 161 at A-2668 (emphasis added).  A footnote on the third page of PSUF Exhibits 160 and 161 states that cosigner release is available for specified loan programs after twelve or twenty-four consecutive on-time principal and interest payments.  PSUF Ex. 160 at A-2666; PSUF Ex. 161 at A-2670.  Defendants deny that the phrases "consecutive on-time payments" and "consecutive on-time principal and interest payments" were not "further defined."  PSUF Exhibit 160 also stated "[t]he release of a cosigner is at the sole discretion of Sallie Mae.  The borrower must have a satisfactory history of making principal and interest payments . . . ."  PSUF Ex. 160 at A-2666.

203.   Admitted.

204.   Admitted.

205.   Admitted.

206.   Denied.  Paragraph 206 is unaccompanied by a reference in the record which supports the statement of fact, and should be struck.  Doc. 463 at 3. Defendants deny the statement "[t]hrough at least mid-2015," because as of August

88

2014, Navient's procedure stated ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████   SUF Ex. 156 at NAV-01637873, 7892 (publish date of August 25, 2014)

(emphasis in original).  Defendants further deny paragraph 206 because Lisa

Stashik testified that making a payment of a "multiplier of two months" "would not

qualify" because "[t]he requirement is 12 on-time payments. . . .  So paying

ahead . . . is different than *12* on-time payments."  RSUF Ex. 124 at 46:11–17,

48:16–49:2 (Stashik) (emphasis added).  When asked why "Navient view[ed] that

differently," Ms. Stashik responded, "[Navient is] looking for the customer to

demonstrate that they can make 12 on-time payments."  *Id.* at 49:3–7 (Stashik).

Navient's internal analyses demonstrated ████████████████████████

████████████████████████████████████████

████████████████   *See* RSUF Ex. 125 at NAV-01145861 (████████

████████████████████); RSUF Ex. 126 at NAV-01146028 (████).

207.   Denied.  Paragraph 207 is unaccompanied by a reference in the record

which supports the statement of fact, and should be struck.  Doc. 463 at 3.  PSUF

Exhibit 143 is ████████████████████████████████

████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████████████

████████████████ PSUF Ex. 143 at A-2371 (emphasis in original). ████████████

███████████████████████████████████████████████

████████

Paragraph 207 is also denied and not material because the December 16,

2015 email at A-2373 in PSUF Exhibit 143 is ██████████████████████████████████

███████████████████████████████████████, and is therefore hearsay

within hearsay not subject to any exception to the rule against the admission of

hearsay.  *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 802, 805; *QVC, Inc.*, 2012 WL

33026, at *2; *Schriner*, 2005 WL 1498497, at *1 n.2.

To the extent further response is required, Defendants deny that it was

Navient's policy to "reset the borrower's progress to zero when the borrower

received a $0 bill and paid $0 in response."  SUF Ex. 157 at *5–6 (borrower who

did not make a payment one month due to his paid-ahead status was approved for

cosigner release after he made the required twenty-four payments).  None of

Navient's policies or procedures state or instruct to "reset the borrower's progress

to zero when the borrower received a $0 bill and paid $0 in response."  Navient's

procedures have stated that lump-sum payments and paid ahead accounts were "not

valid" ways of "satisfying the on time payment requirement" for cosigner release.

PSUF Ex. 159 at A-2644; *see also* RSUF Ex. 122 at NAV-02949370 ("Lump sum

payments will not accelerate the borrower's ability to apply [for cosigner release] . . . .  If a lump sum is received, the request for cosigner release cannot be submitted until after the time frame of required monthly payments has passed.").

Defendants also deny paragraph 207 for the reasons stated in paragraph 206. *See supra* RSUF ¶ 206.

208.   Denied.  Paragraph 208 is not a fact, but an immaterial hypothetical. Paragraph 208 is also unaccompanied by a reference in the record which supports the statement, and should be struck.  Doc. 463 at 3.  Paragraph 208 is also denied and not material because PSUF Exhibit 143 cannot be presented in a form that would be admissible in evidence for the reasons stated in response to paragraph 207.  *See supra* RSUF ¶ 207.  To the extent further response is required, Defendants deny paragraph 208 for the reasons stated in response to paragraph 207.  *See id*.

209.   Denied.  Paragraph 209 is unaccompanied by a reference in the record which supports the statement of fact, and should be struck.  Doc. 463 at 3. Paragraph 209 is also denied and not material because PSUF Exhibit 143 cannot be presented in a form that would be admissible in evidence for the reasons stated in response to paragraph 207.  *See supra* RSUF ¶ 207.  To the extent further response is required, Defendants deny paragraph 209 for the reasons stated in response to paragraph 207.  *See id*.

210.   Admitted in part and denied in part.  Paragraph 210 is unaccompanied by a reference in the record which supports the statement that Navient had an "undisclosed requirement," and the statement should be struck.  Doc. 463 at 3.

Paragraph 210 is also denied and not material because the evidence cited to support paragraph 208 cannot be presented in a form that would be admissible in evidence for the reasons stated in response to paragraph 207.  *See supra* RSUF ¶ 207.

To the extent further response is required, Defendants admit that PSUF Exhibit 155 contains the quoted language.  Defendants admit that, until August 2014, ███████████████████████████████████████████████ ███████████████████████████████████████████████ PSUF Ex. 155 at A-2526. ████████████████████████████ ██████████████████████████████████████████ *Id.*; *see also* RSUF Ex. 122 at NAV-02949370 ("Lump sum payments will not accelerate the borrower's ability to apply [for cosigner release] . . . .  If a lump sum is received, the request for cosigner release cannot be submitted until after the time frame of required monthly payments has passed.").

211.   Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 159 contains the quoted language.  Defendants deny the statement

preceding the quoted language for the reasons stated in response to paragraph 207.

*See supra* RSUF ¶ 207.

212.   Admitted, but denied that the facts contained in paragraph 212 are

material because PSUF Exhibit 148 is inadmissible subsequent remedial measures

evidence.  *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 407; *Reynolds*, 483 F. App'x

at 730–33; *Hogan*, 2006 WL 3702637, at *7–8.  PSUF Exhibit 148 is also

inadvertently produced privileged material and should not be considered.[16]

███████████████████████████████████████████

███████████████████████    PSUF Ex. 148 at A-2449.

213.   Admitted, but denied that the facts contained in paragraph 213 are

material because PSUF Exhibit 148 is inadmissible subsequent remedial measures

evidence.  *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 407; *Reynolds*, 483 F. App'x

at 730–33; *Hogan*, 2006 WL 3702637, at *7–8.  PSUF Exhibit 148 is also

inadvertently produced privileged material and should not be considered.  ████

---

[16] Pursuant to Paragraph 5.3 of the Stipulated Protective Order (Doc. 66-1), on June 2, Navient sent a Notice of Recall, redacted version, and a copy of the Engagement Letter whereby counsel retained the consultant to perform the work.  On June 26, the CFPB notified Navient that it disagreed with the privilege claim, and thereby had until July 10 to present its challenge to the privilege designation to the Court.  *Id*. (Paragraph 5.3(d)).  Because it failed to do so, the CFPB was required to destroy all copies of the privileged version of the document on July 15.  *Id*. (Paragraph 5.3(g)).

██████████████████████████████████████████

████████████████████████ PSUF Ex. 148 at A-2449; PSUF Ex. 150 at A-2473.

214.   Admitted in part and denied in part.  Paragraph 214 is denied and not material because Exhibit 157 is inadmissible subsequent remedial measures evidence.  *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 407; *Reynolds*, 483 F. App'x at 730–33; *Hogan*, 2006 WL 3702637, at *7–8.

To the extent further response is required, Defendants admit the first sentence of paragraph 214.  Defendants deny the remainder of paragraph 214.  The slide states that ████████████████████████████████

████████████████████████████████████████████

████████████████████ PSUF Exhibit 157 at A-2588.  ████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████ *Id.* ████████████████

████████████████████████████████████████████

████████████████████████████

215.   Admitted in part and denied in part.  Paragraph 215 is denied and not material because the complaints, which the CFPB relies on for their truth, are hearsay within hearsay not subject to any exception to the rule against the

admission of hearsay.  *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 802, 805; *QVC,*

*Inc.*, 2012 WL 33026, at *2; *Schriner*, 2005 WL 1498497, at *1 n.2.

To the extent further response is required, Defendants admit ███████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████  Defendants deny the second sentence of paragraph

215 because PSUF Exhibit 153 contains only four "complaints."  PSUF Ex. 153 at

A-2499.  These complaints are also not material because they either do not identify

a statement made by Navient regarding the number of consecutive, on-time

payments to be made, or do not demonstrate that the borrower made a lump-sum

payment and would otherwise qualify for cosigner release.  *Id.* at A-2499, A-2501.

216.   Denied.  Paragraph 216 is unaccompanied by a reference in the record

which supports the statement of fact, and should be struck for the reasons stated in

paragraph 207.  Doc. 463 at 3.

Paragraph 216 is also denied and not material because PSUF Exhibit 143

cannot be presented in a form that would be admissible in evidence for the reasons

stated in response to paragraph 207.  *See supra* RSUF ¶ 207.

To the extent further response is required, Defendants deny paragraph 216.

As of August 2014, Navient's procedures ███████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████   SUF Ex. 156 at NAV-01637892.

217.   Admitted in part and denied in part.  Paragraph 217 is unaccompanied by a reference in the record which supports the statement of fact, and should be struck.  Doc. 463 at 3.  To the extent further response is required, Defendants admit that PSUF Exhibits 17, 146, and 159 contain the quoted language.  Defendants deny that Navient's cosigner release procedures were changed in December 2015. As of August 2014, Navient's procedure ██████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████   SUF Ex. 156 at NAV-01637892.

## V.    COUNT VI

218.   Admitted.

219.   Admitted.

220.   Admitted in part and denied in part.  Defendants admit that borrowers sometimes submitted "multiples of the regular monthly payment amount indicated in the borrower's billing statement."  Defendants deny the use of the term "multiplier overpayment," which is a term created by the CFPB and does not have a standard usage within Navient.

221.   Admitted in part and denied in part.  Defendants admit that for federal loans, "[i]f a prepayment equals or exceeds the monthly repayment amount under the borrower's repayment plan, [Navient] . . . [a]dvances the due date of the next payment unless the borrower requests otherwise."  34 CFR § 685.211(a)(3)(ii) (Direct Loans); *see also id.* § 682.209(b)(2)(ii) (FFELP Loans) ("If the prepayment amount equals or exceeds the monthly payment amount under the repayment schedule established for the loan, the lender shall apply the prepayment to future installments by advancing the next payment due date, unless the borrower requests otherwise."); SUF Ex. 197 (Federal and Private Loans owned by Navient). Defendants deny the remainder of paragraph 221, along with footnote eight in its entirety, which are unaccompanied by a reference in the record which supports those statements of fact, and should be struck.  Doc. 463 at 3.

222.   Admitted in part and denied in part.  Defendants admit that borrowers have submitted loan payments through a number of channels.  Defendants deny that "each [payment channel] required a different method for the borrower to request an allocation or application different from Navient's default methodology," because it is unaccompanied by a reference in the record, and should be struck. Doc. 463 at 3.

223.   Admitted.

224.   Denied.  Borrowers could allocate payments to specific loans while enrolled in Auto Pay by "send[ing] electronic payments on Mobile MYL."  PSUF Ex. 180 at A-3222.  Borrowers could also contact Navient to "split" the borrower's loans "into separate bill groups to allow payment to specific loans on the full site." *Id.*  Navient expanded its online platform capability in 2016 to permit borrowers to allocate their payments to specific loans without splitting their loans into separate bill groups or using Mobile MYL.  PSUF Ex. 20 at A-200:3–19 (Stullken).

225.   Admitted in part and denied in part.  Defendants admit that ███████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████   Defendants deny that the time period extended through 2017.

The source cited states that ████████████████████████████████████

███████████████████████████████████████████

PSUF Ex. 187 at A-3518.

226.   Admitted.

227.   Admitted in part and denied in part.  Defendants admit that payments submitted by physical check must be mailed to either a Navient or third-party lockbox, depending on the holder of the loans.  Defendants deny that there was any discretion regarding the lockbox to receive payments.  ██████████████████

█████████████████████████████████████████

████████████████████████████  *See* SUF ¶ 272.

228.   Admitted in part and denied in part.  Defendants admit that "borrowers and cosigners seeking to apply or allocate payments in a specific manner different than Navient's default method" were permitted to "[e]nclose with each check 'special instructions' consisting of a separate sheet of paper with instructions."  Defendants deny that Navient "required" borrowers to use this method because borrowers could also "call in to tell [Navient] to change their payment allocation."  *See* PSUF Ex. 11 at A-85:4–11 (Peterson).

229.   Admitted.

230.   Admitted in part and denied in part.  Defendants admit that Navient had an automated system that weighed envelopes "to detect a separate sheet of instructions" and that system was "unable to detect a request that was made on the face of the check, such as an instruction written on the memo line of a check."  Defendants deny that all systems that Navient used for "processing mailed payments" were "focused on using weight."  Navient "educate[s] and train[s] [the] team in the mail center to the best of our ability to try to recognize those instances where the instruction is on the memo line of the check and to out-sort that payment to ensure that it's manually reviewed."  PSUF Ex. 22 at A-238:9–13 (Harman).

231.   Admitted.

232.  Admitted.

233.  Admitted.

234.  Admitted in part and denied in part.  Defendants admit that borrowers "wishing to allocate such payments [submitted to third-party bill payers] to specific loans in the same billing group" were permitted to "to contact Navient and specifically request that Navient separate the loans into separate billing groups." Defendants deny that Navient could control whether a third-party bill payer permitted borrowers to allocate payments to specific loans within a billing group. *See* RSUF Ex. 127 at 165:10–24 (Zemetro) (Q: "Is [Navient] able to control any of the parameters with respect to which payments are submitted by the consumer to a bill payer?"  A: "We cannot."). ███████████████████████████

████████████████████████████████████████

████████████████████████████ *See, e.g.*, PSUF Ex. 29 at A-320:15– 17 (TC) (███████████████████████████████████

████████████████████████████ ).

235.  Admitted in part and denied in part.  Defendants admit that "borrowers seeking to allocate payments to specific loans in the same billing group" were permitted to "call or email Navient after submitting each payment through the third-party bill payment platform to request that the payment be reallocated."  Defendants deny that Navient could control whether a third-party bill

100

payer permitted borrowers to allocate payments to specific loans within a billing group for the reasons stated in response to paragraph 234.

236.   Admitted.

237.   Admitted.

238.   Admitted in part and denied in part.  Defendants admit that "[p]ayments submitted through speaking with a Navient representative by phone could be allocated to specific loans in a manner that differed from Navient's default method."  Defendants deny that Navient employees incorrectly entered or implemented borrowers' allocation instructions received over the phone, because it is unaccompanied by a reference in the record which supports that assertion, and should be struck.  Doc. 463 at 3.  To the extent further response is required, Navient agents undergo training and supervisors review agent calls to "mak[e] sure that they're documenting the information correctly on the account, [and] working through the CLASS screens correctly."  RSUF Ex. 36 at 32:3–6 (Sachs).

239.   Admitted, but denied that paragraph 239 is material because PSUF Exhibits 204 and 179 are inadmissible subsequent remedial measures evidence. *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 407; *Reynolds*, 483 F. App'x at 730–33; *Hogan*, 2006 WL 3702637, at *7–8.  Navient engaged The Lab as part of an effort to improve its payment application processes.  *See* PSUF Ex. 178 at A-3123; PSUF

Ex. 179 at A-3209–A-3211; PSUF Ex. 204 at A-4397 (noting ongoing "work that [The Lab] is doing with payment reapplied").

240.   Admitted in part and denied in part.  Paragraph 240 is denied and not material for the reasons stated in response to paragraph 239.  *See supra* RSUF ¶ 239.

To the extent further response is required, Defendants admit that Navient's Senior Director Linda Gramlich provided a report to The Lab in a June 23, 2011 email.  Defendants deny that the 29,760 payments were "misapplied."  The email cited ███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████  *Id.* (emphasis in original).

241.   Admitted in part and denied in part.  Paragraph 241 is denied and not material for the reasons stated in response to paragraph 239.  *See supra* RSUF ¶ 239.

To the extent further response is required, Defendants admit that ████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████ Defendants

deny that Ms. Gramlich described any "issue" as a "systemic problem."

Defendants admit that ████████████████████████████████

██████████████████████████████████ PSUF Ex. 219 at

A-4679 ████████████████████████████████████) (emphasis

in original); *id.* ███████████████████████████████)); *see*

*also* PSUF Ex. 209 at A-4496 (describing "system limitations on MYL").

242.   Admitted in part and denied in part.  Paragraph 242 is denied and not

material for the reasons stated in response to paragraph 239.  *See supra* RSUF

¶ 239.

To the extent further response is required, Defendants admit that ██

██████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████ PSUF Ex. 219 at A-4679–A-4680.  Defendants

deny that Navient's processes resulted in the reapplied payments. ██████

██████████████████████████████████████████████

██████████████████████████████████████████ *Id.*

at A-4680.  Defendants admit that ███████████████████████

██████████████████████████████████████████████████████

*Id.*  Additionally, ███████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████   *Id.* (emphasis added).

243.   Admitted, but denied that paragraph 243 is material for the reasons stated in response to paragraph 239.  *See supra* RSUF ¶ 239.

244.   Admitted in part and denied in part.  Paragraph 244 is denied and not material for the reasons stated in response to paragraph 239.  *See supra* RSUF ¶ 239.

To the extent further response is required, Defendants deny that the presentation discussed The Lab's "findings."  The Lab identified as a "Key Improvement Opportunity" for "Collections" that "[t]he payment reapplication process [was] time consuming, redundant and error prone."  PSUF Ex. 178 at A-3111.  Defendants admit that a portion of the September 27, 2011 presentation related to a "Payment Reapply Project."

245.   Admitted in part and denied in part.  Paragraph 245 is denied and not material for the reasons stated in response to paragraph 239.  *See supra* RSUF ¶ 239.

To the extent further response is required, Defendants admit that the September 27, 2011 presentation identified three "Root Cause[s]" for "Payment Reapplications" at the time: "System Issues," "Customer Behavior," and "Collector Guidance."  PSUF Ex. 178 at A-3114.  Defendants admit that the "System Issues" identified included "MYL does not allow a customer to designate loan level payment application," *id.* at A-3115, and that the "Collector Guidance" included that "Collection agents do not possess accurate resource materials to assist in providing guidance to our customers" and "[a]s a result agents provide inaccurate or unclear guidance for remitting payments," *id.* at A-3117.  Defendants deny that these "issues" persisted because the same presentation stated that "System Updates" installed on September 17, 2011 included "MYL customers can apply additional funds at loan level," *id.* at A-3119, and "Collector Training" was to include "reference material," "[r]efresher [t]raining," and "[o]ngoing feedback," *id.* at A-3121.

246.   Admitted in part and denied in part.  Paragraph 246 is denied and not material for the reasons stated in response to paragraph 239.  *See supra* RSUF ¶ 239.

To the extent further response is required, Defendants admit that The Lab provided an October 2011 presentation titled "Improving Financial Services Operations: The Enterprise-wide Process Improvement [EPI] Initiative," related to

105

"Collections-Misapplied Payments." PSUF Ex. 179 at A-3191. Defendants deny that the presentation describes The Lab's analysis of "approximately 30,000 monthly *misapplied* payments." It describes The Lab's analysis of "reapplied" payments. PSUF Ex. 179 at A-3194.

247. Admitted in part and denied in part. Paragraph 247 is denied and not material for the reasons stated in response to paragraph 239. *See supra* RSUF ¶ 239.

To the extent further response is required, Defendants admit that The Lab presented reasons for payment reapplications that included MYL (6,469 payment reapplications). Defendants admit that a total of 5,555 payment reapplications were attributed to FiServ and Chase bill payer systems, a total of 1,927 were attributed to Speedpay, and a total of 894 were attributed to "Credit Cards – PA" and 1,158 to "Credit Card Postings -IN." PSUF Ex. 179 at A-3195. Defendants deny that The Lab "noted that . . . payment application errors were spread across payment channels." The presentation uses the word reapplication, not error, and the only observation made is that "The Top 12 Reasons for Payment Reapplication Account for 76% of All Reapplications." *See id.*

248. Admitted, but denied that the facts contained in paragraph 248 are material for the reasons stated in response to paragraph 239. *See supra* RSUF ¶ 239.

249.   Admitted, but denied that the facts contained in paragraph 249 are material for the reasons stated in response to paragraph 239.  *See supra* RSUF ¶ 239.

250.   Admitted, but denied that the facts contained in paragraph 250 are material because PSUF Exhibits 209, 176, and 177 are training materials created for Asset Performance Group ("APG") collectors.  Although APG is a subsidiary of Navient Corporation, it is neither a defendant in this case nor a shareholder in Navient Solutions, the defendant against whom the CFPB asserts its claim related to payment processing.  RSUF Ex. 1 at NAV-02359522.

251.   Admitted in part and denied in part.  Defendants deny that the facts contained in paragraph 251 are material for the reasons stated in response to paragraph 250.  *See supra* RSUF ¶ 250.  To the extent further response is required, Defendants admit that PSUF Exhibit 209 contains the quoted language and states that "Mailed/Bank Payments was 26% of the misapplied payments."  Defendants deny that these were described as "errors."

252.   Admitted in part and denied in part.  Defendants deny that the facts contained in paragraph 252 are material for the reasons stated in response to paragraph 250.  *See supra* RSUF ¶ 250.  To the extent further response is required, Defendants admit that PSUF Exhibit 209 contains the quoted language. Defendants deny that 15% of errors are a result of "Navient's 'payment processing

team allocating Speedpay payments incorrectly." The statement regarding

Navient's payment processing team is included on a different slide that states,

"Why do payments get misapplied? Facilitator provide scenarios they've seen,"

which included "[p]ayment processing team allocating Speedpay payments

incorrectly." PSUF Ex. 209 at A-4493.

253. Admitted.

254. Admitted.

255. Admitted.

256. Admitted.

257. Denied. Paragraph 257 is unaccompanied by a reference in the record

which supports the statements of fact, and should be struck. Doc. 463 at 3. To the

extent further response is required, Defendants deny paragraph 257 because

Navient conducted testing and quality-checks of all business units that reviewed

both "regular calls" and "calls that [already] went to an escalated cue" to capture

complaints and inquiries that may not have previously been documented in the CSI

database. *See* RSUF Ex. 128 at 70:10–17, 65:17–22 (Kamionka).

258. Admitted in part and denied in part. Paragraph 258 is denied and not

material because PSUF Exhibit 191 is inadmissible subsequent remedial measures

evidence. OCA reports are compiled "for the purpose of self-evaluation." *Hogan*,

2006 WL 3702637 at *8; *see also* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 407;

*Reynolds*, 483 F. App'x at 730–33.

To the extent further response is required, Defendants admit that 

Defendants deny that "OCA reports typically focused on the number of

'substantiated' complaints."

*See* PSUF Ex.

191 at A-3619, A-3624–A-3627.

259.   Admitted, but denied that the facts contained in paragraph 259 are

material for the reasons stated in response to paragraph 258. *See supra* RSUF

¶ 258.

260.   Admitted in part and denied in part.  Paragraph 260 is denied and not

material for the reasons stated in response to paragraph 258. *See supra* RSUF

¶ 258.

To the extent further response is required, Defendants admit that

███████████████████ Defendants deny that the phrase "Payment Issues"

"included payment misapplications," because it is unaccompanied by a reference in

the record which supports that assertion, and should be struck.  Doc. 463 at 3.

261.   Admitted in part and denied in part.  Paragraph 261 is denied and not

material for the reasons stated in response to paragraph 258.  *See supra* RSUF

¶ 258.

To the extent further response is required, Defendants admit that ████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████ Defendants deny that ████████████████

████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████   *See* PSUF Ex. 195 at A-3934–A-3937.

262.   Admitted in part and denied in part.  Paragraph 262 is denied and not

material for the reasons stated in response to paragraph 258.  *See supra* RSUF

¶ 258.

To the extent further response is required, Defendants admit that ██████

████████████████████████████████████████████

████████████████████████████████████████████

 PSUF Ex. 196 at

A-4050.  Defendants admit that

*Id.*  Defendants deny that the "breaks" represented a

"large number of complaints," because it is unaccompanied by a reference in the

record which supports that assertion, and should be struck.  Doc. 463 at 3.

263.   Admitted in part and denied in part.  Paragraph 263 is denied and not

material for the reasons stated in response to paragraph 258.  *See supra* RSUF

¶ 258.

To the extent further response is required, Defendants admit that

Defendants admit that

PSUF Ex.

196 at A-4038.  Defendants admit that

Defendants deny that Navient had discretion regarding whether to use

Pay.gov.  Navient's contract with ED states that "[t]he servicer shall require

entities making payments on Government loans . . . to direct payments to a

Treasury designated service including . . . Pay.gov." SUF Ex. 5 at

NAV-00000029.

264.    Admitted, but denied that the facts contained in paragraph 264 are

material because PSUF Exhibit 199 is inadmissible subsequent remedial measures

evidence. *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 407; *Reynolds*, 483 F. App'x

at 730–33; *Hogan*, 2006 WL 3702637, at *7–8. The dashboard reports are

compiled for "the purpose of self-evaluation," *Hogan*, 2006 WL 3702637, at *8,

and detail the corresponding "Action Plan/Resolution" Navient took following the

testing. *See, e.g.*, PSUF Ex. 199 at A-4293.

265.    Admitted in part and denied in part. Paragraph 265 is denied and not

material for the reasons stated in response to paragraph 264. *See supra* RSUF

¶ 264.

To the extent further response is required, Defendants admit that 

PSUF Ex. 190 at A-3565.  PSUF Exhibit 190

*Id.*

Defendants further deny

that 

*See, e.g.*, PSUF Ex. 190 at A-3573

); *id.* (

); *id.* at A-3573–A-3574

); *id.* at A-3575 (

).

266.   Admitted in part and denied in part.  Paragraph 266 is denied and not material for the reasons stated in response to paragraph 264.  *See supra* RSUF ¶ 264.

113

To the extent further response is required, Defendants admit that ██

████████████████████████████████████████████

██████████████████████████████████ and that

████████████████████████████████████████████

██████████████████████████ Defendants deny that ████████

████████████████████████████████████████████

██████████████████████████ PSUF Ex. 193 at A-3833.

267.   Admitted in part and denied in part.  Paragraph 267 is denied and not
material for the reasons stated in response to paragraph 264.  *See supra* RSUF
¶ 264.

To the extent further response is required, Defendants admit that ██

████████████████████████████████████████████

██████████████████████████ Defendants deny that the facts contained
in paragraph 267 are material because the quoted language refers to Sallie Mae
Bank, which is neither a defendant in this case nor a current affiliate of Navient
Solutions, the defendant against whom the CFPB asserts its claim related to
payment processing.  Defendants deny that ████████████████████████

████████████████████████████████████████████

██████████████████████████ Defendants also deny that ████████████

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████   PSUF Ex. 170 at A-2815.

268.   Admitted in part and denied in part.  Paragraph 268 is denied and not

material for the reasons stated in response to paragraph 264.  *See supra* RSUF

¶ 264.

To the extent further response is required, Defendants admit that ██

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████   Defendants deny that ██████████

███████████████████████████████████████████

███████████████████████████████████████

██████████████████████████   PSUF Ex. 194 at A-3925.

269.   Admitted in part and denied in part.  Paragraph 269 is denied and not

material for the reasons stated in response to paragraph 264.  *See supra* RSUF

¶ 264.

To the extent further response is required, Defendants admit that PSUF

Exhibit 214 contains the quoted language and states that ████████████

█████████████████████████   Defendants deny that ████████████

████████████████████████████████████████████████████████

██████████████████████████████ PSUF Ex. 214 at A-4597.

270.   Admitted in part and denied in part.  Paragraph 270 is denied and not

material for the reasons stated in response to paragraph 264.  *See supra* RSUF

¶ 264.

To the extent further response is required, Defendants admit that █

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████ PSUF Ex. 171 at A-2846.

Defendants deny that ████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████ *Id.*

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████████

 *Id.*;

*see also id.* at A-2848 (███████████████████

███████████████████████████████████

███). ████████████████████████████████████

███████████████████████████████████

█████████████████ *Id.*

271.   Admitted in part and denied in part.  Paragraph 271 is denied and not

material because the Compliance Committee minutes discuss inadmissible

subsequent remedial measures evidence.  *See* Fed. R. Civ. P. 56(c)(2); Fed. R.

Evid. 407; *Reynolds*, 483 F. App'x at 730–33; *Hogan*, 2006 WL 3702637, at *7–8.

To the extent further response is required, Defendants admit that PSUF

Exhibit 192 contains the quoted language.  Defendants deny the statements prior to

the quotation in paragraph 271.  ████████████████████████████

████████████████████████████████████, and the Corporate

Compliance Committee reporting structure has changed over time.  At times, the

Compliance Committee has been a Management Committee, comprised of

management from different Navient affiliates, not a committee of the Board of

Directors.  PSUF Ex. 185 at A-3511.  The Compliance Committee reported to the

Enterprise Risk Committee, which then reported to the Audit Committee, which

reported to the Navient Corporation Board of Directors.  *See id.* at A-3511.

Defendants deny that the quoted language was part of a "discussion of application and allocation issues." The discussion was about ███████

███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

PSUF Ex. 192 at A-3721.

272.   Admitted in part and denied in part. Paragraph 272 is denied and not material because the presentations prepared by Navient's Task Force discuss inadmissible subsequent remedial measures. *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 407; *Reynolds*, 483 F. App'x at 730–33; *Hogan*, 2006 WL 3702637, at *7–8. The presentation  was conducted for "the purpose of self-evaluation," *Hogan*, 2006 WL 3702637, at *8, and describes "[c]hanges made alongside the Task Force efforts," PSUF Ex. 198 at A-4187, and "[m]anagement [r]esponse" to the "Internal Audit Report," *id.* at A-4184.

Defendants admit that "[a] March 11, 2014 presentation by Navient's 'Payment Allocation Task Force' ('Task Force') provided recommendations to Navient's Executive Management regarding payment processing issues," and that the observations were based in part on interviews with Navient borrowers who had submitted overpayments in the past year. Defendants deny that "the Task Force detailed its findings . . . based on complaints and escalated inquiries." The Task

Force notes that the "findings" in the March 11, 2014 presentation are based only on "phase one" of research: interviews "with 20 customers who have made more than the minimum payment at least once in the previous 12-month period."  PSUF Ex. 198 at A-4215.

273.   Admitted, but denied that paragraph 273 is material for the reasons stated in response to paragraph 272.  *See supra* RSUF ¶ 272.

274.   Admitted in part and denied in part.  Paragraph 274 is denied and not material because the evidence cited to support paragraph 274 cannot be presented in a form that would be admissible in evidence.  The statement that "[t]he Task Force . . . noted that some customers would choose to allocate payments if it were easier to do so," which the CFPB relies on for its truth, is hearsay within hearsay not subject to any exception to the rule against the admission of hearsay.  *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 802, 805; *QVC, Inc.*, 2012 WL 33026, at *2; *Schriner*, 2005 WL 1498497, at *1 n.2.  Paragraph 274 is also denied and not material for the reasons stated in response to paragraph 272.  *See supra* RSUF ¶ 272.

To the extent further response is required, Defendants admit that "[t]he Task force further recommended exploring simplification of processes 'to make it easier for customers to designate payment or extra payment to one or more loans.'" PSUF Ex. 198 at A-4212.  Defendants deny that the Task Force "noted that some

customers would choose to allocate payments if it were easier to do so." This portion of the statement is unaccompanied by a reference in the record which supports it, and should be struck. Doc. 463 at 3. The cited material states, "[c]ustomers who do not choose to indicate a particular loan against which to allocate extra payments do so because it isn't easy to indicate, or they don't differentiate among their loans." PSUF Ex. 198 at A-4215.

275.   Admitted, but denied that paragraph 275 is material because PSUF Exhibits 183, 186, and 197 are inadmissible subsequent remedial measures evidence. ████████████████████████████████████████

████████████████████████████████████████████████████

PSUF Ex. 197 at A-4125. *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 407; *Reynolds*, 483 F. App'x at 730–33; *Hogan*, 2006 WL 3702637, at *7–8.

276.   Admitted, but denied that paragraph 276 is material for the reasons stated in response to paragraph 275. *See supra* RSUF ¶ 275.

277.   Admitted, but denied that paragraph 277 is material for the reasons stated in response to paragraph 275. *See supra* RSUF ¶ 275.

278.   Admitted in part and denied in part. Paragraph 278 is denied and not material because the evidence cited to support paragraph 287 cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2). To the extent the CFPB relies on "quotations from surveyed borrowers" for their truth,

this is hearsay within hearsay not subject to any exception to the rule against the admission of hearsay.  *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 802, 805; *QVC, Inc.*, 2012 WL 33026, at *2; *Schriner*, 2005 WL 1498497, at *1 n.2.  Paragraph 278 is also denied and not material for the reasons stated in response to paragraph 275.  *See supra* RSUF ¶ 275.

To the extent further response is required, Defendants admit that ██████

████████████████████████████████████████████████████████████

████████████████████████████████████  Defendants deny that the presentation "included quotations from surveyed borrowers describing Navient's failure to honor payment instructions" because this statement is unaccompanied by a reference in the record which supports the statement of fact, and should be struck.  Doc. 463 at 3.

279.   Admitted, but denied that paragraph 279 is material for the reasons stated in response to paragraph 275.  *See supra* RSUF ¶ 275.

280.   Admitted.

281.   Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 180 was ████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████  Defendants deny that the statement applies broadly "with respect to borrowers attempting to allocate extra payments to higher-interest loans."  Mr.

Stullken was describing ███████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ PSUF Ex. 180 at

A-3222. ███████████████████████████████████████

████████ *Id.*

282.   Admitted in part and denied in part.  Defendants deny that the

borrower "mailed instructions with his payments every month for a year, but his

payments were correctly applied and/or allocated just three times," because it is

unaccompanied by a reference in the record which supports that assertion, and

should be struck.  Doc. 463 at 3.  To the extent further response is required,

Defendants admit that ██████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████ SUF Ex. 177 at

147:15–19 (SW), ████████████████████████████████████████

█████████████████████ *id.* at 104:20–22 (SW).

283.   Admitted, but denied that paragraph 283 is material because PSUF Exhibits 178 and 179 are inadmissible subsequent remedial measures evidence for the reasons stated in response to paragraph 239.  *See supra* RSUF ¶ 239.

284.   Admitted in part and denied in part.  Paragraph 284 is denied and not material because the customer interviews, which the CFPB relies on for their truth, are hearsay within hearsay not subject to any exception to the rule against the admission of hearsay.  *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 802, 805; *QVC, Inc.*, 2012 WL 33026, at *2; *Schriner*, 2005 WL 1498497, at *1 n.2.  Paragraph 284 is also denied and not material because PSUF Exhibit 198 is inadmissible subsequent remedial measures evidence for the reasons stated in response to paragraph 272.  *See supra* RSUF ¶ 272.

To the extent further response is required, Defendants admit that PSUF Exhibit 198 contains the quoted language.  Defendants deny that the quote was a "key finding" of customer interviewers as the quotation is incomplete:  the presentation states that "[c]ustomers who do not choose to indicate a particular loan against which to allocate extra payments do so because it isn't easy to indicate, *or they don't differentiate among their loans.*"  PSUF Ex. 198 at A-4215 (emphasis added).  Defendants also deny that the research found that "some borrowers" do not allocate extra payments, to the extent that "some borrowers"

does not clarify that the "method" for this finding was interviews "conducted with

20 customers." *Id.*

285.   Admitted.

286.   Denied.  Paragraph 286 is denied and not material because the

complaint, which the CFPB relies on for its truth, is hearsay within hearsay not

subject to any exception to the rule against the admission of hearsay.  *See* Fed. R.

Civ. P. 56(c)(2); Fed. R. Evid. 802, 805; *QVC, Inc.*, 2012 WL 33026, at *2;

*Schriner*, 2005 WL 1498497, at *1 n.2.

To the extent further response is required, Defendants deny that "Navient

had misapplied certain payments."  This statement is unaccompanied by a

reference in the record which supports the statement of fact, and should be struck.

Doc. 463 at 3.  Defendants also deny that "this resulted in the borrower's account

being reported as past due and the borrower incurring late fees."  PSUF Exhibit

173 clearly states that the borrower's payments were "corrected and any late fees

assessed were reversed" and Navient "[a]lso provided a declining balance payment

history on the account."  PSUF Ex. 173 at A-2921.

287.   Admitted in part and denied in part.  Paragraph 287 is denied and not

material because the complaints, which the CFPB relies on for their truth, are

hearsay within hearsay and neither level of hearsay is subject to any exception to

the rule against the admission of hearsay.  *See* Fed. R. Civ. P. 56(c)(2); Fed. R.

Evid. 802, 805; *QVC, Inc.*, 2012 WL 33026, at \*2; *Schriner*, 2005 WL 1498497, at

\*1 n.2.  First, the CFPB's Consumer Complaint Database is not a record of

regularly conducted activity or a public record excepted from the rule against

hearsay because the Database is an unreliable source.  *See* Fed. R. Evid. 803(7)(C),

(8)(B); RSUF Ex. 129 at 3 (discussing unreliability of CFPB database); RSUF Ex.

130 at \*ii (finding that the CFPB has "not established separate management

controls to ensure the accuracy of data" and finding "several noticeable

inaccuracies" in the CFPB Consumer Complaint Database).  Second, the

underlying complaints constitute a second level of hearsay not subject to any

exception.

To the extent further response is required, Defendants admit that paragraph

287 is a summary of a borrower's complaint.  Defendants deny the description of

the complaint, as Navient's response states that the borrower made one payment

that, "[d]ue to a recent system enhancement, . . . was inadvertently applied to only

one of [the borrower's] private loans, causing [the borrower's] other two private

loans to appear to be past due."  PSUF Ex. 168 at A-2731.  The "application of

payment was corrected . . . [and] any late fees assessed as a result of the misapplied

payment have been reversed."  *Id.*

288.   Denied.  Paragraph 288 violates the Court's order that the statement of

fact should consist of no more than "400 numbered statements of fact" "which

require[] a single response by the opposing party" and that "[n]o numbered

statement of material fact may include subparts or subdivisions," Doc. 463 at 2.

Paragraph 288 is a summary of the entire purported experience of one of the

CFPB's witnesses.  It contains multiple purported facts, and should be struck.

To the extent further response is required, Defendants deny paragraph 288.

*See* SUF ¶¶ 279–85.

289.   Denied.  Paragraph 289 violates the Court's order that the statement of

facts should consist of no more than "400 numbered statements of fact" "which

require[] a single response by the opposing party" and that "[n]o numbered

statement of material fact may include subparts or subdivisions." Doc. 463 at 2.

Paragraph 289 is a summary of the entire purported experience of one of the

CFPB's witnesses.  It contains multiple purported facts, and should be struck.

To the extent further response is required, Defendants deny that this

paragraph discusses "another borrower" because this is the same borrower

discussed in paragraphs 281 and 282, and as described in those paragraphs,

Defendants admit that 

SUF Ex. 177 at 147:15–19 (SW),

*id.* at 104:20–22 (SW).

290.   Admitted in part and denied in part.  Defendants admit that the

borrower called Navient to break up her billing group so that she could allocate

overpayments to specific loans.  Defendants deny that "[s]he reported that she had

to call in multiple times before she was told that Navient needed to break up her

billing group in order for her to be able to do so."  The borrower testified, "I think I

may have called three times, I really don't remember."  PSUF Ex. 13 at A-106.

291.   Denied.  First, Defendants deny that



*See* SUF ¶¶ 297–298.  Second, Defendants

deny that

SUF Ex. 178 at 127:9–128:9 (TC).  Finally, Defendants deny that

PSUF

Ex. 29 at A-325:3–13 (TC).

292.   Admitted in part and denied in part.  Defendants admit that "standing instructions" refer to "a borrower's direction" to allocate future payments in the same manner on a recurring basis.  Defendants deny that "standing instructions" permit a borrower to apply or allocate "all future payments in a certain manner" because standing instructions are limited to qualifying payments and payments must be applied according to the terms of the promissory note.  *See* PSUF Ex. 224 at A-4708–A-4709; PSUF Ex. 205 at A-4401.

293.   Admitted.

294.   Admitted.

295.   Admitted.

296.   Admitted, but denied that paragraph 296 is material because PSUF Exhibit 198 is inadmissible subsequent remedial measures evidence for the reasons stated in response to paragraph 272.  *See supra* RSUF ¶ 272.

297.   Admitted in part and denied in part.  Defendants admit that



These projects were proposed in a memorandum issued by ED referred to as the "Mitchell Memorandum," which included a proposal that borrowers "provide standing instructions for overpayments," RSUF Ex. 131 at 27.

*See* SUF ¶ 274.  Defendants deny that

█████████████████████████████████

█████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████        PSUF Ex. 220 at A-4684.

298.   Admitted, but denied that paragraph 298 is material because it is
inadmissible subsequent remedial measures evidence.  *See* Fed. R. Civ. P. 56(c)(2);
Fed. R. Evid. 407; *Reynolds*, 483 F. App'x at 730–33; *Hogan*, 2006 WL 3702637,
at *7–8.

299.   Admitted.

300.   Admitted in part and denied in part.  Defendants deny that the quoted
description applies to all systems of record.  For example, representatives must
submit certain borrower requests, including requests for payment adjustments, into
the IDT system, which has specific codes or tags for particular issues, such as
requests for payment adjustments.  *See, e.g.*, RSUF Ex. 132 at NAV-02709350 –
9355.  Defendants admit ████████████████████████████

█████████████████████████████████

███████

301.   Admitted.

302.   Admitted.

303.   Admitted in part and denied in part.  Defendants admit that 

Defendants deny that

*See, e.g.,*

PSUF Ex. 191 at A-3619, A-3624–A-3627; *see* RSUF ¶¶ 253–58.

## VI.   COUNTS VII-X

304.   Admitted.

305.   Admitted.

306.   Admitted.

307.   Admitted.

308.   Admitted.

309.   Admitted.

310.   Admitted in part and denied in part.  Defendants admit that loan consolidation can be accomplished more quickly than rehabilitation.  Defendants deny that a loan consolidation "resolves" the default.  Consolidation pays off the defaulted loan, and the new consolidated loan is in active repayment.  However, "consolidation of a defaulted loan does not remove the record of the default from

[the borrower's] credit history." SUF Ex. 195 at 5. Defendants further deny that "a consolidation does not require the borrower to make any payments before proceeding with the consolidation" for all federal loan consolidations. If a borrower is not eligible or does not agree to repay the consolidated loan under IDR, the borrower must "make three consecutive, voluntary, on-time, full monthly payments on the defaulted loan" before it can be consolidated. *Id.*

311. Denied. Paragraph 311 is unaccompanied by a reference in the record which supports the statement of fact, and should be struck. Doc. 463 at 3. PSUF Exhibit 14 is deposition testimony of Pioneer's CEO, Jack Frazier. Mr. Frazier responded "yes" to the following question: "Since rehab has the minimum $5 payment amount, is it fair to say that borrowers who consolidate could pay less *during the nine months* if they would have been making rehab payments?" PSUF Ex. 14 at A-138:19–23 (Frazier) (emphasis added). The testimony does not relate to whether consolidation is less costly overall than rehabilitation, nor does it relate to whether borrowers choose consolidation instead of rehabilitation because it costs less money overall.

312. Admitted in part and denied in part. Defendants admit that PSUF Exhibit 14 contains the quoted language. Defendants deny that Mr. Frazier testified regarding "the speed at which consolidation occurs." The CFPB's counsel asked, "Under what circumstances do borrowers prefer consolidation over

rehabilitation?"  Mr. Frazier responded with the quotation cited in paragraph 312.

PSUF Ex. 14 at A-136:11–15 (Frazier).

313.   Admitted in part and denied in part.  Defendants admit "that a

borrower who consolidates" may be able to "immediately enroll in an IDR plan,"

and that a borrower who rehabilitates "ha[s] to make nine monthly payments

before being able to do so."  Defendants deny that a borrower who consolidates "is

able to immediately enroll" because the borrower must nonetheless qualify for

IDR.  Defendants also deny that payments in rehabilitation will be more than

payments in IDR.  A rehabilitation payment can be as low as $5 a month.  PSUF

Ex. 14 at A-138:19–20 (Frazier).

314.   Admitted.

315.   Admitted in part and denied in part.  Defendants admit that these are

benefits of consolidation.  Defendants deny that these are benefits of consolidation

*as compared to* benefits of rehabilitation.  During the alleged time period, ███████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████     *See* PSUF Ex.

246 at A-6110.  Unlike with rehabilitation, where the default trade line is removed,

after consolidation the default trade line remains on the individual's credit report

with the notation of "paid in full."  After a borrower consolidates a federal loan,

the collection fees are reduced and absorbed into the loan's principal.  PSUF Ex.

14 at A-139:4–23 (Frazier).  By contrast, after a borrower rehabilitates an ED loan, the remaining collection fees are waived.  *Id.* at A-124:25–A-125:16, A-138:9–11 (Frazier).

316.   Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 14 contains the quoted language.  Defendants deny that such options are generally available to borrowers.  Immediately prior to the quoted material in paragraph 316, Mr. Frazier testified that borrowers would "not typically [have] the resources to pay off the debt in full."  PSUF Ex. 14 at A-116:13–14 (Frazier).  ED states that payment in full is "not a practical option for most borrowers."  SUF Ex. 195 at 1.

317.   Admitted in part and denied in part.  Defendants admit that staying in default is technically an "option" for borrowers.  Defendants deny that Mr. Frazier explained that staying in default "can be in a borrower's interest."  That portion of paragraph 317 is unaccompanied by a reference in the record which supports the statement of fact, and should be struck.  Doc. 463 at 3.

318.   Admitted.

319.   Admitted.

320.   Admitted.

321.   Admitted.

322.   Admitted.

323.   Admitted.

324.   Admitted.

325.   Admitted in part and denied in part.  Defendants admit that "Pioneer developed its own manual for its collectors to use, which Pioneer titled the Department of Education Training Participant Manual ("Pioneer's Training Manual.")."  PSUF ¶ 325.  Defendants deny the statement that "Pioneer did not provide its collectors with the PCA Manual."  Collectors "are not provided with the manual in its entirety, but [the] training material is based on that manual and [collectors] would have access to all of the training material."  PSUF Ex. 14 at A-142:13–16 (Frazier).

326.   Admitted, but denied that the facts contained in paragraph 326 are material because the statute of limitations period for the CFPB's claims under the CFPA at the earliest begins on January 18, 2014 (and January 18, 2016 for the CFPB's claims under the FDCPA), and therefore any language that was in place prior to January 18, 2014 is immaterial.

327.   Admitted, but denied that the facts contained in paragraph 327 are material because the statute of limitations period for the CFPB's claims under the CFPA at the earliest begins on January 18, 2014 (and January 18, 2016 for the CFPB's claims under the FDCPA), and therefore any language that was in place prior to January 18, 2014 is immaterial.

328.   Admitted, but denied that the facts contained in paragraph 328 are material because the statute of limitations period for the CFPB's claims under the CFPA begins at the earliest on January 18, 2014 (and January 18, 2016 for the CFPB's claims under the FDCPA), and therefore any language that was in place prior to January 18, 2014 is immaterial.

329.   Admitted, but denied that the facts contained in paragraph 329 are material because the statute of limitations period for the CFPB's claims under the CFPA at the earliest begins on January 18, 2014 (and January 18, 2016 for the CFPB's claims under the FDCPA), and therefore any language that was in place prior to January 18, 2014 is immaterial.

330.   Admitted, but denied that the facts contained in paragraph 330 are material because the statute of limitations period for the CFPB's claims under the CFPA at the earliest begins on January 18, 2014 (and January 18, 2016 for the CFPB's claims under the FDCPA), and therefore any language that was in place prior to January 18, 2014 is immaterial.

331.   Admitted, but denied that the facts contained in paragraph 331 are material to the extent they relate to the time period before January 18, 2014.  The statute of limitations period for the CFPB's claims under the CFPA at the earliest begins on January 18, 2014 (and January 18, 2016 for the CFPB's claims under the

FDCPA), and therefore any correspondence from before January 18, 2014 is immaterial.

332.   Denied.  Paragraph 332 violates the Court's order that the statement of facts should consist of no more than "400 numbered statements of fact" "which require[] a single response by the opposing party" and that "[n]o numbered statement of material fact may include subparts or subdivisions," Doc. 463 at 2, and should be struck.

Defendants further deny that the facts in paragraph 332 are material because the statute of limitations period for the CFPB's claims under the CFPA at the earliest begins on January 18, 2014 (and January 18, 2016 for the CFPB's claims under the FDCPA), and each of the calls cited in paragraph 332 occurred before January 18, 2014.

To the extent further response is required, Defendants admit that the cited calls contain the quoted language.  Defendants deny that Pioneer agents made these statements "from February 2010 to January 2014."  Each of the cited calls occurred between January 1, 2012 and March 31, 2013.  SUF ¶ 349; SUF Ex. 210 at 3.

333.   Admitted in part and denied in part.  Paragraph 333 violates the Court's order that the statement of facts should consist of no more than "400 numbered statements of fact" "which require[] a single response by the opposing

party" and that "[n]o numbered statement of material fact may include subparts or subdivisions," Doc. 463 at 2, and should be struck.

Defendants further deny that the facts in paragraph 333 are material because the statute of limitations period for the CFPB's claims under the CFPA at the earliest begins on January 18, 2014 (and January 18, 2016 for the CFPB's claims under the FDCPA), and each of the calls cited in paragraph 333 occurred before January 18, 2014. SUF ¶ 349; SUF Ex. 210 at 3.

To the extent further response is required, Defendants admit that the cited calls contain the quoted language. Defendants deny that "collectors conveyed to consumers that all of the collection fees would be removed upon completion of loan rehabilitation," because the calls only support that Pioneer collectors conveyed certain language regarding collection fees on five occasions.

334. Admitted.

335. Admitted, but denied that the facts contained in paragraph 335 are material because the statute of limitations period for the CFPB's claims under the CFPA at the earliest begins on January 18, 2014 (and January 18, 2016 for the CFPB's claims under the FDCPA), and therefore any language that was in place prior to January 18, 2014 is immaterial.

336. Admitted, but denied that the facts contained in paragraph 336 are material because the statute of limitations period for the CFPB's claims under the

CFPA at the earliest begins on January 18, 2014 (and January 18, 2016 for the CFPB's claims under the FDCPA), and therefore any language that was in place prior to January 18, 2014 is immaterial.

337.   Admitted, but denied that the facts contained in paragraph 337 are material because the statute of limitations period for the CFPB's claims under the CFPA at the earliest begins on January 18, 2014 (and January 18, 2016 for the CFPB's claims under the FDCPA), and therefore any language that was in place prior to January 18, 2014 is immaterial.

338.   Admitted in part and denied in part.  Paragraph 338 violates the Court's order that the statement of facts should consist of no more than "400 numbered statements of fact" "which require[] a single response by the opposing party" and that "[n]o numbered statement of material fact may include subparts or subdivisions," Doc. 463 at 2, and should be struck.

Defendants further deny that the facts in paragraph 338 are material because the statute of limitations period for the CFPB's claims under the CFPA at the earliest begins on January 18, 2014 (and January 18, 2016 for the CFPB's claims under the FDCPA), and each of the calls cited in paragraph 338 occurred before January 18, 2014.  SUF ¶ 349; SUF Ex. 210 at 3.

To the extent further response is required, Defendants deny that Pioneer agents made these statements "from February 2010 to January 2014."  Each of the

cited calls occurred between January 1, 2012 and March 31, 2013. *Id.* Defendants admit that the cited calls contain the quoted language. Defendants deny that "collectors conveyed to consumers that all of the collection fees would be removed upon completion of loan rehabilitation," because the calls only support that Pioneer collectors conveyed specific language regarding collection fees on four occasions.

339. Admitted.

340. Admitted in part and denied in part. Paragraph 340 violates the Court's order that the statement of facts should consist of no more than "400 numbered statements of fact" "which require[] a single response by the opposing party" and that "[n]o numbered statement of material fact may include subparts or subdivisions," Doc. 463 at 2, and should be struck.

Defendants further deny that the facts in paragraph 340 are material because the statute of limitations period for the CFPB's claims under the CFPA at the earliest begins on January 18, 2014 (and January 18, 2016 for the CFPB's claims under the FDCPA), and each of the calls cited in paragraph 340 occurred before January 18, 2014. SUF ¶ 349; SUF Ex. 210 at 3.

To the extent further response is required, Defendants deny that paragraph 340 accurately quotes the statement made in AR.017.22. The Pioneer agent did not make the following statement "Now I can save you the collection fees which is going to be $1,599.37. Okay, I can save those for you if we're able to set you up

into a program. . . . I could save you $1,599.37 if we're able to secure something. That alone will be removed just for completing the program." Defendants otherwise admit that the cited calls contain the quoted language.

341.    Admitted.

342.    Admitted in part and denied in part. Defendants admit that PSUF Exhibit 228 contains the quoted language. Defendants deny that the quoted material is part of a "sample script." Collection specialists "were not required to follow verbatim" the "Initial Rehab Talk-Off." *See* RSUF Ex. 133 at 67:2–20 (Kirsch). "Rehab Talk Offs" are "guidelines . . . to be followed when pitching a rehabilitation program to a debtor." SUF Ex. 198 at NAV-00062586; SUF Ex. 202 at NSI-016-0028590. Defendants further deny that the July 11, 2014 Rehab Process Guide was the first time that a "Rehab Talk Off" included the following language: "any remaining collection fees on your loan(s) will be waived." That same language was included in the ED Participant Guide in place as of April 21, 2014. SUF ¶ 344; SUF Ex. 204 at NAV-01916551.

343.    Admitted in part and denied in part. Paragraph 343 is denied and not material because Pioneer's call listening tests are inadmissible subsequent remedial measures evidence. *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 407; *Reynolds*, 483 F. App'x at 730–33; *Hogan*, 2006 WL 3702637, at *7–8. To the extent paragraph 343 implies that Pioneer's internal compliance testing shows evidence of false or

misleading statements, that assertion is also denied and not material as a legal conclusion.

To the extent further response is required, Defendants admit that Pioneer conducted call listening to ensure compliance with Pioneer's policies and procedures.  Defendants deny that paragraph 343 is material because Exhibit 14 does not indicate what the statements were and whether they relate at all to the alleged misstatements.

344.   Denied.  Paragraph 344 violates the Court's order that the statement of fact should consist of no more than "400 numbered statements of fact" "which require[] a single response by the opposing party" and that "[n]o numbered statement of material fact may include subparts or subdivisions," Doc. 463 at 2, and should be struck.

Paragraph 344 is also denied and not material for four additional reasons. First, Pioneer's call listening tests are inadmissible subsequent remedial measures evidence.  *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 407; *Reynolds*, 483 F. App'x at 730–33; *Hogan*, 2006 WL 3702637, at *7–8.  Second, the assertions that a statement was false or misleading are legal conclusions, not facts.  Third, Exhibit 14 does not identify the statements made and whether they relate to the alleged misstatements, or how the testing described in PSUF Exhibit 14, at A-146d to A-146f, relates to the testing identified PSUF Exhibits 231–33.  Fourth, the

CFPB's two witnesses suggest that borrowers were not misled by the alleged statements. One witness (JS) correctly believed based on the statement he heard that rehabilitation "would remove the fact that [he] had ever actually defaulted on the loans." RSUF Ex. 134 at 142:7–143:19 (JS); *see also id.* at 151:19–21 (JS).

███████████████████████████████████████████

█████████████████████████████████ RSUF Ex. 135 at 130:20–133:7, 148:20–149:17, 173:18–175:4 (KMC).

To the extent further response is required, Defendants deny that "the testing revealed that collectors made false or misleading statements concerning the benefits of rehabilitation." Mr. Frazier testified that the emails do not describe the final assessment because "if we listened to these calls and we didn't agree with the assessment, then that would be the catalyst for further dialogue on the topic." RSUF Ex. 2 at 151:19–152:2 (Frazier). Defendants also deny that Pioneer identified a "false or misleading statement" in January 2015 █████████████

████████████████████████████████████████

█████████████████████████████████████

████████ PSUF Ex. 233 at A-5349. PSUF Exhibit 233 ███████████

███████████████████████████████ *Id.* at A-5348 ████████

████████████████████████████████████████

████████ ).

345.    Admitted, but denied that the facts contained in paragraph 345 are material because Pioneer's updates to its procedures are inadmissible subsequent remedial measures evidence.  *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 407; *Reynolds*, 483 F. App'x at 730–33; *Hogan*, 2006 WL 3702637, at *7–8.

346.    Denied.  Paragraph 346 is denied and not material because Pioneer's call listening tests and results are inadmissible subsequent remedial measures evidence.  *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 407; *Reynolds*, 483 F. App'x at 730–33; *Hogan*, 2006 WL 3702637, at *7–8.

Defendants admit that PSUF Exhibit 240 (NAV-00244963) shows that ███

████████████████████████████████████████████████████████████

PSUF Ex. 240 at A-5687–88.  Defendants further admit that PSUF Exhibit 240 (NAV-00244963) █████████████████████████████████████████████

████████████████████████████████ but deny that this fact is material. ███

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████

347.    Admitted in part and denied in part.  Paragraph 347 is unaccompanied by a reference in the record which supports the statement of fact, and should be struck.  Doc. 463 at 3.  The testimony at PSUF Exhibit 14 at A-118 does not

mention whether borrowers are "typically aware of the [Rehabilitation] program and rely on Pioneer representations." Such a statement is also an unsupported legal conclusion. *See also* SUF Ex. 213 at 61:7–13, 68:17–24 (JS); SUF Ex. 252; SUF Ex. 214 at *4 (lines 6–16), *18 (lines 1–5) (one of the two witnesses the CFPB identified for the Pioneer claims had already completed a rehabilitation with another company and knew how the rehabilitation program worked). Defendants admit that Jack Frazier testified, "I would say [collectors] spend time educating borrowers on what the benefits [of rehabilitation] are." PSUF Ex. 14 at A-118:16–17 (Frazier).

348.   Admitted.

349.   Admitted.

350.    Admitted in part and denied in part. Defendants admit that PSUF Exhibit 14 contains the quoted language. Defendants deny that "rehabilitation *has constituted*" that percentage "since 2012" because Jack Frazier testified that "[the amount of revenue that Pioneer generated from its rehabilitation line of business on an annual basis] varies over the years. I would probably need financial statements to answer that with accuracy; but, you know, absent that, a general ballpark would be 75 to 80 percent of our revenue on the student loan contract would come from loan rehabilitation activities." PSUF Ex. 14 at A-150:21–A-151:4 (Frazier).

351.   Admitted in part and denied in part.  Defendants admit that certain collectors could receive various incentives based upon helping borrowers enroll in rehabilitation.  The incentive plans have "varied over time."  PSUF Ex. 14 at A-144:5–6 (Frazier).  Defendants deny that incentives were provided based only on enrolling borrowers in rehabilitation because Jack Frazier testified that there were "[c]ompliance detractors . . . if there's exceptions to the compliance rules we have in place, then a collector could have their incentive reduced."  RSUF Ex. 2 at 135:23–136:1 (Frazier).  He testified that "[m]isrepresentation, conduct-type violations" would lead to a collector having her incentives reduced and an infraction assessed.  *Id.* at 136:5–21 (Frazier).

352.   Admitted.

353.   Denied.  The facts in paragraph 353 are based entirely on the deposition testimony of one former employee, who stopped working at Pioneer in November 2012, RSUF Ex. 133 at 113:18–115:5 (Kirsch), which is outside the statute of limitations period for this claim, which begins on January 18, 2014 (and January 18, 2016 for the CFPB's claims under the FDCPA).  She testified that *she*, not Pioneer agents more generally, was yelled at "quite often" and "at least 10 times a week."

354.   Admitted in part and denied in part.  Defendants deny that the facts contained in paragraph 354 are material.  The facts in paragraph 354 are based

entirely on the deposition testimony of Ms. Kirsch, who stopped working at Pioneer in November 2012, RSUF Ex. 133 at 113:18–115:5 (Kirsch), which is outside the statute of limitations period for this claim, which begins on January 18, 2014 (and January 18, 2016 for the CFPB's claims under the FDCPA).

Defendants admit that former employee Barbra Kirsch stated that "collectors 'didn't discuss any drawbacks' of rehabilitation with consumers." Defendants deny that there are any "drawbacks" to rehabilitation. To the extent the CFPB is referring to the fact that a borrower must make a monthly payment of at least $5 for nine consecutive months, Defendants deny that a borrower establishing a payment history is a drawback, but in any event, █████████████████████ ████████████████████████████████████████████████ PSUF Ex. 230 at A-5149.

355.   Admitted in part and denied in part. Defendants admit that PSUF Exhibit 279 contains the quoted language. Defendants deny that "[c]ollectors are *directed* 'not to mention Consolidation or Monthly billing,'" because paragraph 355 is unaccompanied by a reference in the record which supports the statement, and should be struck. Doc. 463 at 3. The 2014 Rehab Process Guide includes an "Initial Rehab Set-Up Workflow" that prioritizes asking first if the "borrower *want[s]* to do rehab." SUF Ex. 203 at NAV-00062769 (emphasis added).

## VII.   COUNT XI

356.   Admitted.

357.   Admitted in part and denied in part.  Defendants admit that the dates in column "D" of NAV-00003384 list the first date on which Navient reported the Special Comment Code "AL" for 19,604 borrowers and the dates range from October 31, 2012 through May 31, 2014.  Defendants deny that "Navient furnished the Special Comment Code 'AL'" "until May 2014," because beginning in November 2013, Navient instituted a manual process to remove Special Comment Code "AL" each month from its reporting for borrowers whose loans had been discharged due to TPD so that the "AL" code would not appear on those borrowers' credit reports.  SUF ¶ 325.  Defendants deny that the borrowers identified in NAV-00003384 were "affected."  The assertion  is unaccompanied by a reference in the record which supports the statement of fact, and should be struck.  Doc. 463 at 3.  Equifax, Experian, and TransUnion did not view Special Comment Code "AL" as negative.  RSUF Ex. 136 (███████████████████ ██████████████████████████████████████████████████ ██████ ); *see also infra* RSUF ¶ 382.

358.   Admitted.

359.   Admitted in part and denied in part.  Defendants admit that PSUF Exhibit 269 contains the chart copied in paragraph 359.  Defendants deny that the

chart summarizes the complete guidance contained in PSUF Exhibit 269.  The

guidance also states that Special Comment Code "AL" means "Student loan –

permanently assigned to government" and "G" means "In Collection prior to

transfer."  PSUF Ex. 269 at A-7177–A-7178.

     360.   Admitted in part and denied in part.  Defendants admit that PSUF

Exhibit 269 contains the quoted language.  Defendants deny that PSUF Exhibit 269

contains an "instruct[ion]" from ED to lenders/servicers.  The full quotation from

PSUF Exhibit 269 actually states, "The *consumer data industry recommends* that

the lender report Status Code '05' and the Payment Rating . . . ."  PSUF Ex. 269 at

A-7180 (emphasis added).  Defendants further deny that ED instructed servicers to

report Status Code "05" and the Payment Rating to the exclusion of other codes

because Navient was required to report dozens of other pieces of information each

month, such as the Payment History Profile.  *See* SUF ¶ 309.  *See also* PSUF Ex.

274 at A-7668–A-7682.  ED and the CDIA elsewhere used explicit language to

prohibit the use of certain codes, but did not do so here.  *See, e.g.*, PSUF Ex. 269 at

A-7181 ("The deferred code should not be reported."); SUF Ex. 180 at NAV-

01144691 ("Debt Being Paid Through Insurance (Account Status Code should ***not***

be 13 or 61-65)"); *id.* at NAV-01144810 ("**For Defaulted Loans**: . . . report *only*

the following . . .").

     361.   Admitted.

362.   Admitted.

363.   Admitted, but denied that the facts contained in paragraph 363 are material because Navient is not a Perkins School.  *See infra* PSUF ¶ 365.

364.   Admitted, but denied that portions of PSUF Exhibit 269 pertaining to "Perkins Schools" are material because Navient is not a Perkins School. *See infra* PSUF ¶ 365.

365.   Admitted.

366.   Admitted.

367.   Admitted.

368.   Admitted.

369.   Admitted in part and denied in part.  Defendants admit that the title of section 11-8 of the 2011, 2012, and 2013 CRRGs is "LENDER/ SERVICER/ SECONDARY MARKET REPORTING GUIDELINES: Total and Permanent Disability Discharge Procedures for Title IV Loans - Federal Perkins Loan Program and FFEL."  Defendants deny that section 11-8 of the 2011, 2012, and 2013 CRRGs contains the sole guidance "as to how a servicer . . . should furnish credit reporting information to the credit reporting agencies . . . in the event that a borrower's loan is discharged because of a TPD."  The CRRG instructs furnishers to report several other fields not addressed by section 11-8, including Payment History Profile, and is encouraged by the CRRG to report special comment codes

"to further define the account."  *See* SUF Ex. 180 at NAV-01144608 (listing

certain fields as "[r]equired"); *see also id.* at NAV-01144599 (providing

"applicable fields within the Metro 2 Format . . . that apply to Student Loans"),

NAV-01144634 (defining "Special Comment Codes").  These other codes enabled

CRAs to determine if an account was current or in default.  SUF ¶¶ 309, 313–15.

RSUF Ex. 137 at 66:15–69:9 (Wright).  Moreover, section 11-3 of the 2011-2013

CRRGs, titled "LENDER/ SERVICER/ SECONDARY MARKET REPORTING

GUIDELINES," also includes guidance "[f]or student loans that are guaranteed."

*See* SUF Ex. 180 at NAV-01144802.  FFELP loans belonging to borrowers who

received a TPD discharge are guaranteed loans.  JSUF ¶ 2; 34 C.F.R. § 682.100(b).

370.   Admitted in part and denied in part.  Defendants admit that section

11-8 of the 2011, 2012, and 2013 CRRGs contained identical information, and that

PSUF Exhibit 180 contains the quoted language.  Defendants deny that section 11-

8 provides the sole "guidance regarding how servicers should furnish credit

reporting information for non-defaulted TPD-discharged loans" for the reasons

stated in response to paragraph 369.  *See supra* RSUF ¶ 369.

371.   Admitted in part and denied in part.  Defendants admit that Special

Comment Code "AL" does not appear in CRRG section 11-8 under the subheading

"Non-defaulted loans."  Defendants deny that "Section 11-8 . . . contained no

indication that servicers should report the Special Comment Code 'AL.'"  Where

the CRRG prohibited the use of certain codes, it did so explicitly, *see, e.g.*, SUF Ex. 180 at NAV-01144691 ("Debt Being Paid Through Insurance (Account Status Code should ***not*** be 13 or 61-65)"); *id.* at NAV-01144810 ("**For Defaulted Loans**: . . . report *only* the following . . ."); PSUF Ex. 269 at A-7181 ("The deferred code should not be reported."), and Section 11-8 contains no such prohibition on reporting Special Comment Code "AL."

372.   Admitted in part and denied in part.  Defendants admit that section 11-8 contains a section with the heading "Federal Perkins Loan Program: Defaulted loan" that states, "[r]eport Account Status Code 05, Payment Rating G and Special Comment Code AL."  Defendants admit that Special Comment Code "AL" is not referred to elsewhere in section 11-8 of the 2011 to 2013 CRRGs. Defendants deny that portions of PSUF Exhibits 274, 275, and 276 pertaining to "Perkins Schools" are material because Navient is not a Perkins School.  *See supra* PSUF ¶ 365.  Defendants deny that section 11-8 of the 2011, 2012, and 2013 CRRGs instructs servicers to *not* report Special Comment Code "AL," for the reasons stated in response to paragraphs 360 and 371.  *See supra* RSUF ¶¶ 360, 371.

373.   Admitted in part and denied in part.  Defendants admit that the documents identified in PSUF Exhibit 268 and PSUF Exhibits 254–264 are policies and procedures related to Navient's credit reporting.  Defendants deny that

the documents identified in PSUF Exhibit 268 "comprised" all of Navient's policies and procedures related to credit reporting because Navient has other policies and procedures related to credit reporting.  *See*, *e.g,* RSUF Ex. 138 ("[FCRA] – Responsibilities of Users of Consumer Reports and Furnishing Information to Consumer Reporting Agencies); RSUF Ex. 139 ("Student Loan Credit Reporting Procedure – Updates to Information"); RSUF Ex. 140 ("Quality Control Procedure" for ensuring Credit Bureau Management adequately responds to consumer disputes).

374.   Admitted in part and denied in part.  Defendants admit that Navient's policy was to utilize the CRRG to ensure accurate credit reporting.  Defendants deny that "[n]one of [Navient's] procedures indicated that guidance from ED was to be considered" in its credit reporting.  *See* PSUF Ex. 256 at A-6874 ("[Credit Bureau Management] staff will be apprised by Compliance of revisions to policies and procedures as required."); RSUF Ex. 141 at 50:6–17 (Carson) ("In the situation where [ED] would provide guidance, generally that wouldn't come directly to our [Credit Bureau Management] department . . . .  Anything on direct guidance would be funneled through our compliance department."); RSUF Ex. 142 at 104:9–17 (Jones) (testifying that Navient would identify need to update policies and procedures for credit reporting through "[n]otification from the Department of Education").  ED's guidance in PSUF Exhibit 269 reflected the CDIA's guidance.

*See* PSUF Ex. 269 at A-7179 (stating that it is "[b]ased on Consumer Data Industry

. . . Recommendations").

375.   Admitted in part and denied in part.  Defendants admit that Mr. Jones

testified that he had not seen documents identical to PSUF Exhibits 269 or 253

before.  Defendants deny that paragraph 375 is material because whether Mr. Jones

recalled seeing a specific version of a document has no relevance to the

reasonableness of Navient's policies and procedures or the accuracy of its credit

reporting.  Defendants further deny that Mr. Jones was not aware of the content of

the guidance from ED related to credit reporting for loans discharged due to a TPD

for the reasons stated in paragraph 374.  *See supra* RSUF ¶ 374.

376.   Denied.  Paragraph 376 is unaccompanied by a reference in the record

that supports the statement of fact, and should be struck.  Doc. 463 at 3.

To the extent further response is required, Defendants deny paragraph 376.

Navient's policies and procedures required Credit Bureau Management to use the

Metro 2 Format and the CRRG to ensure that it furnished accurate information to

the CRAs.  PSUF Ex. 258 at A-6882 ("Accepted by all consumer reporting

agencies, the Metro 2 Format enables the reporting of accurate, complete and

timely <u>credit</u> information and meets all requirements of the Fair Credit Reporting

Act and all applicable state laws.  [Navient] utilizes the Metro 2 Format to

facilitate accurate, complete and timely transmission of consumer data to CRAs."

(emphasis in original)); PSUF Ex. 257 at A-6877.  Navient's Credit Bureau

Management, Compliance, and Legal departments were responsible for Navient's

policies and procedures.  RSUF Ex. 142 at 87:2–88:17 (Jones).  Navient's

procedures further stated that it was the responsibility of Navient's Compliance,

Legal, and Credit Bureau Management departments to work together "to identify,

resolve and correct any reporting issue to comply with Metro II standards," PSUF

Ex. 257 at A-6879, and for Credit Bureau Management to utilize controls and data

audits to ensure accurate reporting, PSUF Ex. 258 at A-6887.  "Once a reporting

issue is identified, [Credit Bureau Management] will work with Compliance and/or

Legal as applicable, and consult the Consumer Data Industry Association

representatives to determine the appropriate method of resolution."  PSUF Ex. 256

at A-6873.  Credit Bureau Management managers were required to "subscribe to

updates to the [CRRG]."  PSUF Ex. 256 at A-6874.  Navient's policies also

required "Compliance and [Navient] Data Furnishers" to "share . . . Metro2 [sic]

and other regulatory updates, and any other best practices to assist each other with

data furnishing obligations."  PSUF Ex. 258 at A-6887; *see also* PSUF Ex. 25at

44:4–19 (Carson) (testifying that Navient's Credit Bureau Management personnel

would consult the CRRG, Metro 2 Task Force, Compliance, or Legal to discern

how to report credit information in a given scenario).  Navient documented

changes to the codes reported to the CRAs.  *See* RSUF Ex. 141 at 95:23–97:19

(Carson).

377.   Admitted in part and denied in part.  Defendants admit that PSUF

Exhibits 258 and 259 contain a chart titled "Key Roles & Responsibilities," with a

column titled "Responsibility."  Defendants deny that "in every instance in which

such a chart appears, the chart is empty other than the column headings."  *See, e.g.*,

RSUF Ex. 143 at NAV-04289819; RSUF Ex. 144 at NAV-02575904 (laying out

the roles and responsibilities for Bank Compliance and Business Area Data

Furnishers).  The CFPB did not provide Exhibits 258 and 259 in native form,

which would show the content that was hyperlinked in the versions provided by the

CFPB, including the names, dates, and owners for the policies.  *See* RSUF Exs.

145, 146 (native versions of PSUF Exhibits 258 and 259).  Information related to

the roles and responsibilities of Navient personnel related to credit reporting is also

found elsewhere in Navient's policies and procedures.  *See, e.g.*, PSUF Ex. 255 at

A-6868 (containing descriptions of "Roles and Responsibilities" under Navient's

Consumer Reporting Program including responsibilities for "Controls," "Quality

Review of Consumer Disputes," "Service Providers," and "Periodic Review of the

Program").

378.   Admitted in part and denied in part.  Defendants admit the first

sentence of paragraph 378.  The second sentence of paragraph 378 is denied

because Navient's policies and procedures provided that Navient would follow the Metro 2 Format as explained in the CRRG to ensure that it furnished accurate information to the CRAs.  *See supra* RSUF ¶ 376.  The CRRGs provided information for reporting values "that apply to Student Loans," including loans discharged due to a TPD.  *See supra* RSUF ¶ 369.

379.   Admitted.

380.   Admitted in part and denied in part.  Defendants admit that Navient furnished Special Comment Code "AL" from October 31, 2012 until November 2013.  Defendants deny that Navient reported Special Comment Code "AL" from at least November 2013 through May 2014, for the reasons stated in response to paragraph 375.  *See supra* RSUF ¶ 375.  Defendants deny that Brad Jones testified that NAV-0000384 identifies "affected borrowers" for the reasons stated in response to paragraphs 357, 381, and 382.  *See supra* RSUF ¶ 357; *infra* RSUF ¶¶ 381–82.

381.   Admitted in part and denied in part.  Defendants admit that Navient reported Special Comment Code "AL" for certain FFELP loans discharged due to the borrower's TPD.  Defendants deny that "Navient's reporting *affected* a total of 57,635 student loans belonging to 19,604 borrowers with TPD," because this statement is unaccompanied by a reference in the record, and should be struck.  Doc. 463 at 3.  To the extent further response is required, Defendants deny that

57,635 student loans belonging to 19,604 borrowers were "affected" by Navient's reporting of Special Comment Code "AL." *See supra* RSUF ¶ 357.  Navient sent NAV-00003384 to the consumer reporting agencies in 2014 with the request █████

████████████████████████████████████████████████████████

██████ SUF ¶ 328.  NAV-0003384 included *all* TPD-discharged loans for which Navient had ever reported Special Comment Code "AL," even if the "AL" code had already been removed from the borrower's credit file through Navient's manual process that began in November 2013.  RSUF Ex. 142 at 182:25–185:14, 214:2–215:18 (Jones); SUF ¶ 325.

382.   Admitted in part and denied in part.  Defendants admit that ███████

████████████████████████████████████████████████████████

███████████████████████████ PSUF Ex. 28 at A-305:25–306:2 (AW).  Defendants admit that █████████████████████████████████████████████

Defendants deny that █████████████████████████████████

██████████, because the statement is unaccompanied by a reference in the record, and should be struck.  Doc. 463 at 3.  ███████████████████████

████████████████████████████████████████████████████████

██████████ RSUF Ex. 147 at 24:5–25:6; 86:6–12 (AW); *see also id.* at 119:25–120:4 (██████████████████████████████████████████████); *id.* at

91:10–15 (█████████████████████████████████████████

████████████); *id.* at 95:3–10 (███████████████████████

█████████████████████████████████████).

383.   Admitted in part and denied in part.  Defendants admit the first

sentence of paragraph 383.  Defendants deny that ████████████████

████████████████████████████████████ because

these statements are unaccompanied by a reference in the record, and should be

struck.  Doc. 463 at 3.

To the extent further response is required, Defendants deny that █████

████████████████████████████████████████

█████████████, *see supra* RSUF ¶ 382, ███████████████

████████████████ RSUF Ex. 147 at 24:5–25:6, 86:6–12 (AW)

(████████████████████████████████████████

████████████████████████████████).

████████████████████████████████████████

████████████ *Id.* at 31:13–33:6; 45:13–22, 56:8–10, 76:4–23 (AW).

████████████████████████████████████████

████████████ *Id.* at 76:24–6, 77:20–78:3, 89:20–25 (AW).

Defendants deny that ███████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████ RSUF

Ex. 147 at 19:17–23 (AW); *see also id.* at 91:10–15 (████████████████

███████████████████████████████████

██████████████████████████); *id.* at 95:3–10 (████████████

████████████████████████████████████████████████

█████████████).

     Defendants further deny that ████████████████████████

████████████████████████████████████

████████████████████████████████████████████████

███████ PSUF Ex. 28 at 92:2–5 (AW).

     384.   Admitted in part and denied in part.  Defendants admit that ████

████████████████████████████████████ Defendants deny

that ████████████████████████████████████████

██████ because the statement is unaccompanied by a reference in the record, and

should be struck.  Doc. 463 at 3.

     To the extent further response is required, Defendants deny that ████

████████████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████████ RSUF Ex. 147 at 98:5–13,

100:15–22, 102:19–103:19, 104:12–105:19 (AW).

    385.   Admitted in part and denied in part.  Defendants admit ██████

█████████████████████████████████

█████████████████████████████████

██████████████████ Defendants deny that the loans identified in

NAV-00003384 were "affected," because it is unaccompanied by a reference in the

record which supports that assertion, and should be struck.  Doc. 463 at 3.  *See also*

*supra* RSUF ¶¶ 357, 381–82.