# EXHIBIT 22

Page 1

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---------------------------------x
CONSUMER FINANCIAL PROTECTION    Civil Action No.
BUREAU,                          3:17-cv-00101
   Plaintiff,
v.
NAVIENT CORPORATION, et al.,
   Defendants.
---------------------------------x

DEPOSITION OF WENDY ZORICK
Washington, D.C.
Thursday, August 29, 2019

Page 2

         Thursday, August 29, 2019
         9:35 a.m.

       The following is the transcript of the deposition of WENDY ZORICK held at the offices of the Consumer Financial Protection Bureau, 1990 K Street, NW, Washington, DC 20006.

Reported by: Linda S. Kinkade, RDR CRR RMR RPR CSR
Registered Diplomate Reporter, Nationally Certified Realtime Reporter, Registered Professional Reporter with Merit Distinction, Certified Shorthand Reporter (CA), Notary Public, within and for the District of Columbia, and official duly authorized to administer oaths and/or affirmations.

Page 3

APPEARANCES:

On Behalf of the CONSUMER FINANCIAL PROTECTION BUREAU:
   Consumer Financial Protection Bureau
   Supervision, Enforcement, Fair Lending &
   Equal Opportunity
   1700 G Street, NW
   Washington, DC 20552
   (202) 435-7591
   By: Andrea Matthews, Esq.
   andrea.matthews@cfpb.gov
   By: Chelsea Peter, Esq.
   chelsea.peter@cfpb.gov

On Behalf of NAVIENT CORPORATION, et al.:
   Wilmer Cutler Pickering Hale and Dorr LLP
   1875 Pennsylvania Avenue, NW
   Washington, DC 20006
   (202) 663-6285
   By: Daniel Kearney, Esq.
   daniel.kearney@wilmerhale.com

Page 4

A P P E A R A N C E S (continued):

On Behalf of Navient Defendants:
   Navient
   2001 Edmund Halley Drive
   Reston, Virginia 20191
   (703) 810-3000
   By: Matthew Sheldon, Esq.

   Also present:
      Whitney Harris, CFPB

Page 113

1  would look for the investor to articulate what
2  impacts they were interested in.
3          (Exhibit 5 marked for
4          identification.)
5      Q. The court reporter has handed you what she
6  has kindly marked as Zorick Exhibit 5, which is a
7  single-page document that begins with the Bates
8   number NAV-06075230 and ends with the Bates number
9  NAV-06075231.  Please take all the time you need.
10     A. Okay.
11     Q. What is Exhibit 5?
12     A. Exhibit 5 is an email chain which appears
13 to be a continuation of the prior chain.
14     Q. Does it add any new information to the
15 prior chain?
16     A. In the chain Leo Subler connects Mark Rein
17 with Xavier, and Mark asks internal finance and
18 investor relations staff to coordinate a discussion
19 between BlackRock and the company.
20     Q. Do you see the email sent by Leo Subler
21 that is dated January 9th, 2013 at 3:05 p.m.?
22     A. Yes.
23     Q. Can you please read to me the text of that
24 email?
25     A. "Sure.  Assume your focus will be on

Page 114

1  FFELP, correct?"
2      Q. And who is he writing that email to?
3      A. To Xavier Goss at BlackRock.
4      Q. And what is Xavier's response?
5      A. Xavier confirms, "yes, FFELP."
6      Q. Does this email chain confirm that
7  BlackRock was seeking information about income-based
8  repayment and its potential impact going forward on
9  student loan holding relating to FFELP loans?
10        MR. KEARNEY:  Objection, foundation.
11     A. It appears to do so.
12     Q. Who does Mark send the top email to at the
13 beginning of this -- at the top of this chain?
14     A. The email is directed to Steve McGarry and
15 Joe Fisher.
16     Q. Who is Steve McGarry?
17     A. I don't recall Steve's set of
18 responsibilities at this time.  At various points in
19 the history of the company he was its head of
20 investor relations, also had other executive
21 responsibilities in the finance team, and
22 subsequently I believe he, again, had executive
23 responsibilities at Sallie Mae after the spin.
24     Q. At Sallie Mae after the spin?
25     A. Yes.

Page 115

1      Q. Did he remain at Sallie Mae?
2      A. Yes.
3      Q. He did not continue on to Navient?
4      A. That's right.
5      Q. Is Joe Fisher also on this email?
6      A. Yes.
7      Q. We discussed him before in relation to
8  Exhibit 2?
9      A. Sorry.  What was your -- can you just
10 repeat?
11     Q. Sure.  Had we discussed Joe Fisher before
12 today?
13     A. Joe was on a prior email chain that we've
14 discussed.
15     Q. What was his function at the company
16 during this time?
17     A. Joe was subsequently head of investor
18 relations at Navient after the spin.  At this time,
19 as I recall, he bore investor relations
20 responsibilities, but I don't recall exactly what his
21 title and role was.
22     Q. In his email at the top of the chain Mark
23 says, quote, "Can you all please coordinate this call
24 between BlackRock and the proper SLM folks," end
25 quote.  Did I get that right?

Page 116

1      A. Yes.
2      Q. Do you have an understanding of who the
3  proper SLM folks would have been?
4      A. No.
5      Q. Would they have included you?
6      A. It's possible.
7      Q. Would they have included other people who
8  worked with you?
9      A. Do you mean specifically direct reports of
10 my team or other colleagues in the finance
11 organization or something else?
12     Q. Either of the two possibilities you listed
13 first.
14     A. It's unlikely that anyone else on my team
15 would have been involved in fielding this type of
16 question at this time.  Mark addressed the other
17 finance staff in this email already, who I might
18 expect to be part of such a discussion.
19     Q. When you say that it's unlikely that
20 anyone else on your team would have been involved at
21 that time, do you mean anyone else aside from you or
22 anyone else aside from Steven McGarry and Joe Fisher?
23     A. When I referred to my team, I refer -- I'm
24 referring to my direct reports.  So people in my
25 reporting structure would not have gone to anyone

```
 1                    C E R T I F I C A T E

 2

 3          I, LINDA S. KINKADE, Registered Diplomate
      Reporter, Certified Realtime Reporter, Registered
 4    Merit Reporter, Certified Shorthand Reporter, and
      Notary Public, do hereby certify that prior to the
 5    commencement of examination the deponent herein was
      duly sworn by me to testify truthfully under penalty
 6    of perjury.

 7          I FURTHER CERTIFY that the foregoing is a true
      and accurate transcript of the proceedings as
 8    reported by me stenographically to the best of my
      ability.
 9
            I FURTHER CERTIFY that I am neither counsel
10    for nor related to nor employed by any of the parties
      to this case and have no interest, financial or
11    otherwise, in its outcome.

12          IN WITNESS WHEREOF, I have hereunto set my
      hand and affixed my notarial seal this 30th day of
13    August, 2019.
            My commission expires:  July 31, 2022
14
      s//  _____Linda S. Kinkade_____
15    NOTARY PUBLIC IN AND FOR
      THE DISTRICT OF COLUMBIA
16

17

18

19

20

21

22

23

24

25
```

# ERRATA

I, Wendy Zorick, wish to make the following changes, for the following reasons:

| Page: Line | Correction | Reason |
| --- | --- | --- |
| 71:5 | Change "field" to "deal" | Transcription error |
| 147:25 | Change "access" to "excess" | Transcription error |
| 158:16 | Change "Low level" to "Loan level" | Transcription error |
| 168:10 | Change "cumulative and deferment" to "forbearance and deferment" | Transcription error |

## ACKNOWLEDGMENT OF DEPONENT

I, Wendy Zorick, do hereby certify that I have read the forgoing 219 pages and that they are a true and accurate transcript of the testimony given by me in the above entitled action on August 29, 2019, except for the corrections or changes in form or substance noted on this Errata Sheet.

Date: 10/9/2019

Signature of Witness: _____

Wendy Zorick