# EXHIBIT 31



Federal Student Aid | PROUD SPONSOR of the AMERICAN MIND®
An OFFICE of the U.S. DEPARTMENT of EDUCATION

Navient Use of Forbearance
Site Visit Review

**Report Date:** May 18, 2017
**On Site Date:** March 20 – 24, 2017

PREPARED FOR:
FSA Business Operations
Washington, DC

ON-SITE REVIEW TEAM:
Colby Jennings, Soo Kang, George Moghaddam,
Lisa Oldre, Jason Vann and Michael Wood

## Table of Contents

Site Visit Observations ........................................................................................................... 2
Servicer Response .................................................................................................................. 5
Review Methodology ............................................................................................................ 10



A 326
EXHIBIT
DATE: 5/24/18
SUSAN ASHE

This presentation, document or report and analyses are provided for Internal-Use only and may not be shared outside of Federal Student Aid without the permission of FSA-Operations Services. This presentation, document, report or analysis was created to aid the Department of Education in complying with its legal obligation to collect federal student loan debt. These work products may also be used to inform the creation of future Department and FSA policies.

## Site Visit Observations

During the site visit, the FSA Review Team listened to recorded inbound calls and evaluated accounts based solely on a review of the servicing histories for some of those calls. The review team also did a side-by-side review with representatives to listen to live inbound calls. As part of the review, Navient also presented their inbound and outbound call processes. While on-site, the FSA Review Team discovered Navient inadvertently provided only inbound calls, even though the team requested all calls as part of the sample; Navient provided the requested outbound call recordings shortly thereafter. Because of this, the Call Monitoring Team completed the review off-site.

**CALL CENTER REVIEW**

FSA listened to 388 inbound and 2,000 outbound calls, for a total of 2,388 calls. Of these, FSA determined that 13 inbound and 207 outbound calls did not provide the borrowers with all of their options. For these 220 calls, Navient offered only forbearance.

Observation 1: For 220 of the calls, Navient CSRs neglected to offer the borrower an option other than forbearance. In several instances, this occurred after the borrower made a promise to pay within a short time of the call – usually within a time frame that would cause no additional detriment to the borrower. While this isn't a contractual requirement, these borrowers were not given the opportunity to decide if another option (like one of the Income Driven plans or a deferment) would have been more favorable. And in some instances, interest was capitalized when another option may have prevented it.

*Recommendation:* FSA recommends that Navient asks questions so the borrower is able to determine which option (like promise to pay) would be most beneficial to resolve the delinquency. If the borrower is willing and able to make a payment to resolve the delinquency on the account, and can continue to make payments, FSA does not believe a borrower should use unnecessary forbearance time that will result in interest capitalization.

Observation 2: Similar to the first observation, many CSRs did not offer alternative or beneficial options when attempting to assist borrowers with bringing their account current or managing repayment. CSRs did not ask probing questions to determine if it would be more beneficial for the borrower to enter a deferment or to change to one of the Income Driven Repayment (IDR) options.

*Recommendation:* FSA recommends that Navient provide borrowers with all options available so that the borrower may make an informed decision based on their current situation. The use of forbearance in lieu of any other options can cause more undue hardship to a borrower in the long term.

**SERVICING HISTORY REVIEW**

ED000561

When reviewing accounts in Navient's CLASS system, it isn't always easy to determine exactly what happened on a given call. Of the forty accounts, the review team was able to determine that 21 of them offered the borrower an option other than forbearance. For the other nineteen accounts, FSA asked for Navient to provide the call that resulted in the notation on the account; eight of those did not offer the borrower any other option.

*Observation #1*: On twenty percent of the samples (8 out of 40 accounts), Navient offered the borrower *only* forbearance. In a few of these instances, borrowers offered information that suggested their income had changed (like going through a divorce, recently lost job or was in the process of taking a new job). However, Navient did not suggest a new repayment plan or an unemployment deferment. In other instances, the borrower requested a month or two of forbearance and Navient provided the forbearance without probing to see if there was a better option available to the borrower.

*Recommendation*: Six out of eight of the forbearance only accounts were for calls occurring before July 1, 2015. Since then, Navient has less turnover/higher staff retention (due to various adjustments within their training process). This could explain why the calls had a higher success rate after that date (2 out of 40, or five percent, of the calls offered only forbearance). However, FSA recommends that Navient provide communication/on-going training to their agents so that borrowers consistently receive all of their options – repay, IDR, deferment and forbearance.

*Observation #2*: About half of the time (21 out of 40 accounts), Navient's notes were not clear enough to determine what happened on the account. For example, entries on the same day would have a comment suggesting that the borrower both accepted and rejected the forbearance. It was unclear whether this was the same call or a different call. One reason for this is the CLASS system does not provide the timestamp to show when a transaction happened, unless the call was routed through the IVR. Another reason for this is because Navient's CARES system used to notate the account that the borrower rejected the forbearance when CSRs went to a different section of the CARES system. This issue of "rejecting forbearance" was resolved with a system upgrade in June 2016. In other examples, the phone agent clearly provided several options (repay, IDR, deferment) before ultimately giving the borrower the forbearance option. However, the note only displayed that the forbearance was processed without a discussion of the other options.

*Recommendation*: In June 2016, Navient updated their system so that the CARES screens don't "reject" forbearance when a phone agent goes to another screen. However, it is still not clear what happens on each call based on the notes left in the CLASS system. FSA recommends Navient notate each account so that the notes match exactly what happens on each call.

*Observation #3*: The review team was not able to determine what happened on four of the accounts because Navient was not able to provide all of the calls requested for the servicing history review. For two of the samples, Navient provided calls; however, they were not the calls matching the date of requested

sample. For two other samples, Navient was not able to provide calls at all. This is because the CARES calls have to be provided manually, and it is difficult for Navient to identify calls within a reasonable timeframe. For example, they needed to provide five calls for one borrower just to get the call matching the requested date.

*Recommendation*: To prevent confusion and promote accuracy, FSA recommends that Navient perform a level of QC on each request to ensure Navient is providing FSA with the information requested.

**LIVE SIDE-BY-SIDE REVIEW**

For the side-by-side reviews, the review team listened to live calls as they entered the system. The agents were friendly and polite. However, Navient CSRs have varying degrees of skill when navigating calls. For example, one of the agents recently finished the eleven week training course and did a good job navigating the call. However, a more seasoned agent was not able to provide the next steps for a disabled borrower wanting to apply for discharge based on a determination by the Social Security Administration. After the review team left site, Navient provided CR 3294 (SSA match for TPD) to their staff for additional education.

## Servicer Response

Navient's response:

Thank you for your assessment. Navient listened to and evaluated all the calls and reviewed all servicing history accounts deemed as servicing opportunities by FSA. Our review entailed a holistic evaluation of not only the call, but of all pertinent servicing history and other account information. Before addressing the three specific review categories, we would like to share a few general comments.

- We disagree with 168 of the 228 servicing opportunity determinations (call review and servicing history review). In most cases, we believe the representatives appropriately followed our call flow procedures and found the best solution for the borrowers.

- Servicers have not been provided with FSA specific preferences relative to call center scripting that prescribes in what instances to offer long term solutions such as IDR, when to offer other options such as graduated repayment or forbearance, and whether the servicer should counsel the borrower "away from" options requested by the borrower. Nor are we aware of any requirement that borrowers receive all of their repayment options- IDR, deferment and forbearance- on each and every call. As such, we do not believe a rating of pass or fail is appropriate for this review. Servicers are required to provide numerous disclosures to borrowers on the various repayment options and Navient complies with those requirements. These disclosures and call center interactions result in the borrower receiving information concerning their options when you look at them in their totality. We have developed extensive training programs and call flow procedures to guide representative discussions with borrowers, and regularly assess representative adherence with our policies and practices. Our practices and policies serve borrowers well as evidence by the lower delinquency and default rates experienced by Navient-serviced borrowers, and the rates in which borrowers serviced by Navient enroll in IDR and other nonstandard plans. Our assessment of the calls and "agree" or "disagree" is based on whether the representative followed our internal procedures. If FSA chooses to require all servicers to discuss IDR to all borrowers on all calls or to require all servicer representatives follow a common call flow, specific requirements should be provided in an approved Change Request.

- Including the presentation on March 21, we have discussed our call flow and probing questions with FSA on several occasions. We believe our call flow results in borrowers being offered the best solutions for their current situations. We have scripting, tools, and training geared to provide consistent borrower information on the myriad of student loan repayment solutions. As depicted in the attached training graphic, our agent training and available tools promote IDR when appropriate as a long-term solution. This

5

ED000564

is also monitored in ongoing call calibration sessions, mentoring, and quality control activities.



Repayment Options Conversation.pdf

- Every borrower who receives a verbal forbearance was advised during the call of the terms of the forbearance and that they may be eligible for other repayment options, which include standard, graduated, extended or income driven repayment plans. Every borrower was required to accept the terms of the forbearance following this verbal disclosure.

- Every borrower who received a verbal forbearance also received a letter with enclosures that confirms the forbearance transaction and provides a clear and conspicuous disclosure of other repayment options like IDR, loan consolidation and deferment. The option to shorten or cancel the forbearance along with an example of the effects of capitalized interest during deferment or forbearance are provided in the letter.

- In 2016, Navient provided more than 154 million communications promoting IDR and other repayment options to our 10 million federal loan borrowers. In addition, in 2016 we educated and modeled repayment plans for 2.4 million borrowers.

- As demonstrated by the examples below, we believe the calls were appropriately handled in accordance with Navient's internal procedures. A detailed response for each call identified by FSA a servicing opportunity is attached- Appendix A.



Appendix A - Navient Detailed Re·

- The sampling criteria of calls less than 5 minutes is not a representative sample of all calls. While calls that end in forbearance are on average longer than calls that end in IDR, in both cases the average call length is greater than 5 minutes. Therefore, a sample of only calls under 5 minutes would include more calls that ended in something other than forbearance or IDR. In short, the sampling methodology is not representative of all Navient calls and thus it would be inappropriate for users of this report to draw conclusions or compliance ratings based on the data in this report. We suggest that the report clarify that this is a sample of only a subset of Navient calls, specifically calls of a lower duration.

- Given the scope of our comments, we request the opportunity to review another draft of this report before it is issued as a final report.

6

**CALL CENTER REVIEW**

FSA Observation 1 & 2: Navient agrees that in some limited instances agents offered forbearance when probing for IDR would have been a better approach and consistent with our internal procedures; however, we believe in the majority of instances representatives handled the call appropriately and in accordance with calls scripts and flows.

While a complete summary of the specific call findings and our call-by-call analysis is included in Appendix A, below are some examples of our differing analysis:

Howard (XXX-XX-0778) - The borrower was prequalified for an Unemployment Deferment by an outbound default prevention associate. The associate took the Unemployment Deferment path vs. the IDR path because the borrower stated the loans should be paid in the future by the Veteran's Administration. Consequently, the associate resolved the past due balance with an administrative forbearance and provided 60 days of prospective administrative forbearance for the forms to be completed by the borrower. We believe we found the best solution for this borrower.

Wesley (XXX-XX-3085) - The borrower had a $508 outstanding balance. The borrower indicated he couldn't afford his monthly payment due to unemployment. The default prevention associate did share that Income Driven Repayment was an option. However, the associate informed the borrower that this option would significantly extend the repayment terms due to the low balance. A level standard repayment plan will pay the loan off in 8 months vs. 23 months in an IDR plan. The associate prequalified the borrower for an Unemployment Deferment. The associate resolved the past due balance with an administrative forbearance and provided 60 days of prospective administrative forbearance for the forms to be completed by the borrower. We believe we found the best solution for this borrower.

Carrillo (XXX-XX-2596) - The borrower called to check the status of her account. She submitted an Unemployment Deferment but received a bill in the mail and was questioning if she needed to remit payment. At the time of the call, the Unemployment Deferment had already been applied and the agent advised the bill could be disregarded. Given that the Unemployment Deferment had already been applied, we believe the agent interacted appropriately during this call.

McSherry (XXX-XX-1294) – The borrower called to confirm she completed the Student Loan Debt Forbearance correctly. Based on a review of the account, IDR was modeled on a prior call (July 18, 2014) and the calculated payment amount did not provide relief so Student Loan Debt Forbearance was offered. IDR would not have been discussed on this call again as the borrower was not seeking additional relief. She was merely confirming she had done everything correctly prior to sending the deferment, which was received and processed by September 10, 2014.

**SERVICING HISTORY REVIEW**

FSA Observation 1: In mid-2015 agents from the Inbound Borrower Call Center completed an 8-hour IDR refresher class, which focused not only on program and processing rules but also scenario based activities intended to mirror common issues and call types. Information from this refresher module was also incorporated into our New Hire Curriculum. Our agents are trained to probe to assess whether the customer needs short term or long term payment relief and then proceed down the resulting path to qualify the customer for repayment options, deferment or forbearance based on their individual circumstances and needs.

In addition, IDR related items are frequent topics in our team meeting agendas where we routinely highlight items such as call flow, probing questions and best practices for customers who are experiencing financial hardship.

Navient reviewed all the accounts identified by FSA as servicing opportunities in the Servicing History Review category. In our evaluation of the pertinent servicing history, other account information and the associated call, we disagree with the assessment that eight accounts "failed".

Some examples where the accounts and call were handled appropriately and in accordance with our calls scripts and flows include:

Sweitzer (XXX-XX-7725) - At the onset of the call, the borrower specifically requested forbearance "just for one month". The borrower did not indicate hardship making the scheduled payment or that long-term relief was necessary. Due to the specific request from the borrower for short term relief, forbearance was the best option available to the borrower. The borrower made all scheduled payments since this forbearance ended and has sought no additional relief.

Veno (XXX-XX-9913) - The borrower requested temporary relief (2-months) as he was changing jobs and returning to school. The borrower did return to school as indicated during the call and enrollment information was received and a school deferment was applied beginning on September 30, 2014. Due to the specific request from the borrower for short term relief and the near-term possibility of an in-school deferment, forbearance was the best option for this borrower.

FSA Observation 2:
Our agents are trained to utilize system generated correspondence history messages where appropriate to document reasons for our highest volume call types. They are also trained to include specific "free form" messages where needed to ensure that important elements of the conversation are documented for future reference.

Additionally, in October 2015 we modified CARES (the GUI used by call center agents) so that any Repayment Option modeling completed by the agent writes a correspondence note to the system of record (CLASS) and details the information

collected related to income, spousal status and dependents as well as the resulting payment amount calculated under an IDR plan.

Further, in October, 2016 we launched a redesigned CARES Repayment Options Calculator that provides all eligible repayment plans to the agent in a grid view, which allows them to comprehensively calculate and review all eligible options at once. This provides for more efficient and effective discussion on repayment options with our customers.

Regarding the observation related to "rejected forbearance", there was a time when a correspondence history message indicating the customer declined forbearance would write to the system of record (CLASS) if an agent accessed the Forbearance window in CARES without processing a forbearance. For example, if an agent accessed the Forbearance window to determine if time was available, this correspondence history message would write to history even if forbearance was not discussed outright or discussed as an option and the borrower opted for another option. This was corrected in June 2016 and no longer occurs.

FSA Observation 3: Due to the age of some of the accounts requested for review in this category, Navient acknowledges that some call recordings were difficult to find as they were outside the call recording retention period required by FSA (30 days from date of call or 12 months if selected by FSA for monitoring). Regarding the missing calls, FSA requested call recordings on 19 accounts to facilitate the Servicing History Review. Of those 19 accounts, FSA noted that we were unable to provide call recordings on 4 accounts. We reviewed these four calls noted and made the following determinations:
- One recording (the 03/02/15 call for SSN xxx-xx-7725) was a supplemental call and was not the recording associated with the forbearance processing in question.
- One recording (the 02/26/15 call for SSN xxx-xx-2035) was noted with an incorrect date; Navient provided the call recorded on 03/06/14 which coincided with the date the forbearance in question was processed.
- Two recordings (the 08/03/15 call for SSN xxx-xx-9261 and the 11/09/15 call for SSN xxx-xx-0921) were located post-review.

**LIVE SIDE-BY-SIDE REVIEW**

Navient provided feedback to the representative who handled the TPD related call. Our procedures and standard call handling protocol is to direct customers who have specific TPD-related questions to the designated TPD servicer for assistance from a subject matter expert. While our agents are trained in general eligibility guidelines, they are not trained to handle specific application or detailed eligibility questions. Moreover, we believe it is a better customer service experience to have a borrower contact the servicer who is empowered to assist the borrower, i.e. the designated TBD servicer, rather than have a lengthy conversation with a customer and only then tell them they need to talk to another servicer.

9

## Review Methodology

### SITE VISIT REVIEW OBJECTIVE

The objective of the site visit was to assess whether the use of forbearance by Navient CSRs met the standards outlined in federal regulations, contractual requirements, and implemented Change Requests (CR). More specifically, the review team evaluated whether or not the Navient agents offered all the applicable options before placing a borrower in forbearance.

### STANDARDS

#### Statutory & Regulatory

The regulations and requirements governing IDR are:

- Direct Loans – 34 CFR 685.205, 685.208-210 and 685.221
- FFEL – 34 CFR 682.211 and 682.215

#### Change Requests

The implementation of Change Requests:

- CR 3290 – Call Center Branch-Specialty and Other Monitored Calls
- CR 3373 – Revised Recorded Call Data Selection and Volume

### METHODOLOGY

#### Materials Requested

Navient granted the review team access to their CLASS servicing system and Citrix environment where the stored calls are located. Navient also provided CSRs for the team to sit with in order to evaluate live phone calls.

#### Sampling

Navient provided over two million inbound calls from 01/01/14 through 03/01/17. From this list, the team randomly selected 700 phone calls – 200 each from 2014, 2015 and 2016, and 100 from 2017. For the servicing history review, Navient queried the list of two million calls for calls that resulted in forbearance. This resulted in a list of over 219,000 calls; the review team randomly selected fifty (50) accounts from that list. Navient also provided six CSRs for side-by-sides. For the outbound calls, Navient provided outbound calls from 3/23/2015 through 03/23/17. The team randomly selected 2,000 calls and listened to all of those calls.

#### Testing

10

The review team listened to phone calls and reviewed CLASS to determine if Navient CSRs properly handled phone calls.

The reviewers evaluated forbearance usage—

- Based on agents handling calls—
    - Providing repayment plans (including IDR);
    - Providing all options; and
- Based on servicing history—
    - Notations on account to determine what happened on calls; and
    - Accuracy of information provided in account history and on calls.

11

ED000570