IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>v.<br><br>Navient Corporation, *et al.*,<br><br>Defendants. | Case No. 3:17-CV-00101-RDM<br>(Hon. Robert D. Mariani)<br><br><br><br>Electronically Filed |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Consumer Financial Protection Bureau ("Bureau") respectfully files this brief in opposition to Defendants' Motion for Judgment on the Pleadings (Doc. 504). Defendants' motion is premised on the notion that, as a result of the Supreme Court's decision in *Seila Law LLC v. CFPB*, 2020 WL 3492641 (U.S. June 29, 2020), which held that the for-cause removal provision in the Consumer Financial Protection Act ("CFPA") is unconstitutional and severable from the CFPA, the Court must dismiss the Bureau's Complaint. The Court has already rejected exactly this argument.

**COUNTER-STATEMENT OF FACTS AND PROCEDURAL HISTORY**

1.  Shortly after the Bureau filed its Complaint, Defendants moved to dismiss it on numerous grounds, arguing, among other things, that the Bureau was unconstitutional because the President could remove the Bureau's Director only for

cause. *See* Doc. 29, at 15-18. As the Bureau explained in its argument before this Court, if the for-cause removal provision were held unconstitutional, that would not affect the validity of the remainder of the CFPA because the provision is severable. *See* Doc. 55, at 94-95 (citing 12 U.S.C. § 5302).

In denying Defendants' motion to dismiss, the Court thoroughly analyzed the constitutional issues raised by Defendants and rejected them, including the argument that the for-cause removal provision rendered the Bureau unconstitutional. Doc. 57, at 21-43. The Court went on to hold that, even if the for-cause removal provision were held unconstitutional, it could be severed from the CFPA, and "the severance would not affect the CFPB's ability to maintain the present suit." Doc. 57, at 43.

After the Court denied Defendants' motion to dismiss, Defendants filed their answer. *See* Doc. 61. This case has now proceeded through discovery, and summary judgment briefing is scheduled to be completed on August 18, 2020. *See* Doc. 480, at ¶ 2.

2. *Seila Law* involved an action brought by the Bureau to enforce a civil investigative demand ("CID") issued to Seila Law LLC, a California-based law firm that provides debt-related legal services to clients. 2020 WL 3492641, at *6. (A CID is a form of compulsory process used by the Bureau to obtain information before any decision to commence litigation. *See* 12 U.S.C. § 5562(c)(1).) The law

firm refused to comply with the CID on the ground that the Bureau was unconstitutional, and the Bureau brought suit in federal district court to enforce compliance. 2020 WL 3492641, at *7. The district court ordered enforcement, the Ninth Circuit affirmed, and the Supreme Court granted Seila Law's petition for certiorari. *Id.*

In *Seila Law*, the Supreme Court held that while the CFPA's for-cause removal provision was unconstitutional, it could be severed from the remainder of the CFPA (mirroring this Court's conclusion from three years earlier). *Id*. at *22. The Supreme Court stressed that its holding was a limited one and was not meant to "trigger a major regulatory disruption" that "would leave appreciable damage to Congress's work in the consumer-finance arena." *Id*. at *21. As the Supreme Court noted, "The provisions of the [CFPA] bearing on the CFPB's structure and duties remain fully operative without the offending tenure restriction. Those provisions are capable of functioning independently, and there is nothing in the text or history of the [CFPA] that demonstrates Congress would have preferred *no* CFPB to a CFPB supervised by the President. Quite the opposite." *Id*. at *20 (emphasis in original).

In light of the lack of factual and legal development on the issue of ratification, the Supreme Court declined to address ratification, and instead remanded that issue to the lower courts. *Id.* at *19, 22. However, the Supreme

Court specifically refused to endorse the view of Justice Thomas, who contended that "the temporary involvement of an unconstitutionally insulated officer in an otherwise valid prosecution requires dismissal." *Id*. at *19 n.12.

Subsequent to the decision in *Seila Law*, Director Kraninger, who is now removable by the President at will, ratified the decision to file the Complaint in this case. *See* Doc. 506-1. As the Bureau explained in its notice regarding that ratification, in the wake of the decision in *Seila Law* rendering her removable at will, the Bureau's Director considered the basis for the decision to file the Complaint in this proceeding, and then formally ratified that decision. *See* Doc. 506.

Now, despite Director Kraninger's ratification and this Court's prior decision on the issue of severability, Defendants argue that the Bureau's case must be dismissed.

## ARGUMENT

**I.   The Court's August 2017 Opinion remains correct, and the Bureau can continue to prosecute this lawsuit.**

In *Seila Law*, the Supreme Court specifically rejected the argument that Seila Law was entitled to have the Bureau's action dismissed. Instead, the Supreme Court held that the only issues before it were whether the CFPA's for-cause removal provision was unconstitutional (it was), and whether the provision could be severed from the CFPA (it could). With respect to the impact of its decision on

4

the Bureau's action, the Supreme Court remanded and left that up to the lower courts. 2020 WL 3492641, at *22.

This Court has already considered what should happen if the for-cause removal provision were held unconstitutional and severable from the CFPA. In support of their March 2017 Motion to Dismiss, Defendants argued that the Bureau's action would have to be dismissed. Doc. 43, at 7-8. Not so, said this Court. Instead, the Court concluded that "in the event that the Bureau's structure is found to be unconstitutional and the problematic provisions are severed from the CFP Act, the severance would not affect the CFPB's ability to maintain the present suit." Doc. 57, at 43. The reason for this was that "the President [would then have] the ability to make the determination as to whether or not he or she wishes for the Director to continue with the present litigation." *Id.* (citing *Buckley v. Valeo*, 424 U.S. 1 (1976), *John Doe Co. v. CFPB*, 849 F.3d 1129, 1133 (D.C. Cir. 2017)).[1] Thus, as this Court has already held, the Supreme Court's holding that the for-cause removal provision is invalid and severable from the remainder of the CFPA should not derail the Bureau's enforcement action.

---

[1] Although this Court cited *Buckley*, it did not, as Defendants mistakenly suggest (Def. Br. at 2, 3), rely on *Buckley's* holding and hold that the Bureau's past actions would be entitled to *de facto* validity. As explained above, what this Court actually held was that an action such as this one could go forward because the President, through the Bureau's Director, could determine whether it should. Doc. 57, at 42-43.

## II. Defendants' contention that the Director's cannot ratify this lawsuit is meritless.

As the Bureau explained in its Notice Regarding *Seila Law LLC v. CFPB* and Ratification (Doc. 506), in the wake of the decision in *Seila Law* rendering her removable at will, the Bureau's Director considered the basis for the decision to file the Complaint in this proceeding, and then formally ratified that decision. *See also* Doc. 506-1 (Director's Declaration of Ratification). What this means is that this matter now continues with the express approval of a Director who is fully accountable to the President.

Defendants argue that *FEC v. NRA Political Victory Fund*, 6 F.3d 821 (D.C. Cir. 1993), supports dismissal, but they ignore a later decision by the same court (indeed by the same judge): *FEC v. Legi-Tech, Inc.*, 75 F.3d 704 (D.C. Cir. 1996).[2] *NRA Political Victory Fund* involved a law enforcement action that was brought by

---

[2] Defendants also contend that *Lucia v. SEC*, 138 S. Ct. 2044 (2018), supports dismissal. Def. Br. at 8. It does not. After holding that the administrative law judge who presided over Lucia's trial had not been constitutionally appointed, the Court held that Lucia was entitled to a new hearing before a properly appointed official. *Id.* at 2055. Here, of course, the "hearing" is not at issue because it is being conducted by this Court, not by any officer whose appointment is subject to challenge. What has been called into question by Defendants is the issuance of the Complaint in this proceeding. Thus, all that the Defendants are entitled to is a new decision by a properly accountable official on whether to file that Complaint. They got exactly that when the Bureau's Director – who is now fully accountable to the President – ratified that decision.

an unconstitutionally structured agency and that was never ratified by a properly constituted agency. The D.C. Circuit held that the FEC was unconstitutionally structured because it included congressional members, and, being "aware of no theory" that would allow it to do otherwise, the D.C. Circuit dismissed the judgment. 6 F.3d at 827-28. Shortly after that decision, the FEC reconstituted itself without the congressional members. It then ratified its ongoing enforcement actions, including one against Legi-Tech. Legi-Tech argued, however, that it was entitled to dismissal because, when the FEC had issued its complaint, it was still unconstitutionally structured. The D.C. Circuit disagreed. The court held that ratification by a properly constituted FEC was an adequate remedy for the constitutional problem with the initial complaint. *FEC v. Legi-Tech,* 75 F.3d at 708-09. Thus, it allowed the FEC to continue with its enforcement action without having "to return to square one." *Id*. at 708.

The situation here is very similar to *Legi-Tech*.[3] In 2017, when the Bureau issued its Complaint against Defendants, the for-cause removal provision still

---

[3] However, this case bears no resemblance to *CFPB v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 784 (S.D.N.Y. 2018). *See* Def. Br. at 4. The court there concluded that the for-cause removal provision was unconstitutional. But instead of severing the provision, the court held that the unconstitutional removal provision rendered the entire CFPA – and the Bureau along with it – invalid. Not surprisingly, because the court believed that the Bureau should no longer exist, it held that ratification was not an adequate remedy. 332 F. Supp. 3d at 785.

purported to limit the President's ability to remove the Bureau's Director. But after *Seila Law*, the Bureau's Director ratified this action.[4] Now, as a result, this case will go forward under the supervision of a Director who is directly responsible to the President. Thus, this ratification cures any constitutional problem with the issuance of the Complaint. *See also CFPB v. Gordon*, 819 F.3d 1179, 1190-92 (9th Cir. 2016) (refusing to dismiss enforcement action initially approved by unconstitutionally appointed official because properly appointed official later ratified the action, and holding that the ratification "cures any Article II deficiencies").

Defendants argue that a ratification at the present time by the Bureau's Director cannot be effective because the statute of limitations has now run on the violations alleged in the Complaint. Def. Brief at 5-8. This heads-I-win-tails-you-lose argument is simply wrong. The CFPA's statute of limitations provides that,

---

[4] Defendants contend that the Bureau could not ratify the Complaint until 25 days after the decision in *Seila Law* because that is when the judgment in that case takes effect. Def. Brief at 8 n.6 (citing *Texas v. United States*, 798 F.3d 1108 (D.C. Cir. 2015), and Sup. Ct. R. 45). But it is the Supreme Court's *judgments*, not its holdings, that are delayed for 25 days. *See* Sup. Ct. R. 45. This means that the remand of *Seila Law* to the Ninth Circuit – the Supreme Court's judgment – would not occur for 25 days. No such delay applies to the Court's conclusion that that CFPA's for-cause removal provision is unconstitutional and therefore inoperative. *Cf. In re Zermeno-Gomez*, 868 F.3d 1048, 1052 (9th Cir. 2017) (decision by the Ninth Circuit is binding on lower courts even before the mandate issues). As a result, the Director was already removable at will on July 9, 2020 when she signed her Declaration of Ratification.

"[e]xcept as otherwise permitted by law or equity, no action may be brought under [the CFPA] more than 3 years *after the date of discovery* of the violation to which an action relates." 12 U.S.C. § 5564(g)(1) (emphasis added).[5] Defendants are wrong to claim that even though the Bureau attempted to prosecute its claims in a manner consistent with the CFPA, the statute of limitations in this case not only began to run, but, in fact, expired before the Bureau could ever lawfully file suit.[6] That is, Defendants contend that, prior to *Seila Law*, the Bureau was sufficiently constitutional so that it could "discover" violations of the CFPA and begin the

---

[5] Defendants suggest that even shorter statutes of limitations apply to Counts IX – XI because those counts allege violations of the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA"). Def. Brief at 1 n.1, 8 & n.7. But what Defendants miss is that when the Bureau enforces those acts, violations are "deemed to be a violation" of the CFPA. 15 U.S.C. § 1681s(d) (FCRA); 15 U.S.C. § 1692*l*(c) (FDCPA).  To "deem" means "[t]o treat (something) as if [] it were really something else." Black's Law Dictionary (10th ed. 2014). Thus, by providing that a violation of those acts "shall be deemed" a violation of the CFPA, Congress provided that violations should be treated as if they were violations of the CFPA. Therefore, the same statute of limitations applies to Counts IX – XI as applies to the other counts of the Complaint.

[6] Defendants misrepresent the record and suggest that the Bureau has taken the position that the date of discovery is irrelevant to its claims. *See* Def. Brief at 7 n.5. The quote used by Defendants was in response to an interrogatory from Defendant Pioneer Credit Recovery, Inc. ("Pioneer") asking the Bureau when it discovered the violations against Pioneer. The Bureau simply noted that, with respect to Pioneer's legal violations, the Bureau was "only asserting claims for violations that occurred . . . within three years of the filing of the Complaint," and thus those claims were of course timely "discovered" within three years of the filing of the Complaint. *See* Doc. 471, at Ex. 209 at *4-*6.

9

ticking of the statute of limitations clock, but was insufficiently constitutional to file a complaint and stop the running of that clock.

Defendants do not cite any case in which a statute of limitations was construed to run before a party (let alone the federal government) could lawfully file suit and obtain relief. *Cf. Johnson v. United States*, 544 U.S. 295, 305 (2005) (calling it "highly doubtful" that Congress intended a time limit on pursuing a claim to expire before the claim arose).[7] This is not surprising. "Statutes of limitations are designed to encourage plaintiffs to pursue diligent prosecution of known claims." *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049 (2017) (quotation omitted). The Bureau certainly did that with respect to Defendants. *See generally id.* ("[L]imitations periods begin to run when the cause of action accrues—that is, *when the plaintiff can file suit and obtain relief*.") (quotation omitted, emphasis added).

Moreover, the CFPA's statute of limitations applies "[e]xcept as otherwise permitted by law or equity[.]" 12 U.S.C. § 5564(g)(1). Here, equity surely

---

[7] Neither *Benjamin v. V.I. Port Authority*, 684 Fed. Appx. 207 (3d Cir. 2017), nor *FEC v. NRA Political Victory Fund*, 513 U.S. 88 (1994), is such a case. In both of those cases, the court rejected ratification because the party attempting to ratify the agent's action could have, but failed to, ratify within the limitations period. That is not the situation here because the Bureau's Director could not have corrected the constitutional flaw in the filing of the Bureau's Complaint until after the Supreme Court issued its decision in *Seila Law*.

permitted the Bureau, now that it is led by a Director who is removable by the President at will, to ratify claims it had already brought during the limitations period. Indeed, courts have equitably tolled the application of a statute of limitations where "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 & nn.3-4 (1990); *see also D.J.S.-W. v. United States*, 962 F.3d 745, 749-52 (3d Cir. 2020) (holding that equitable tolling is appropriate if the plaintiff has pursued its rights diligently, and some extraordinary circumstance prevented timely filing). This is because statutes of limitations "assure fairness to defendants" and "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence is lost, memories have faded, and witnesses have disappeared." *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 215–16 (3d Cir. 2002) (quoting *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428 (1965)). Allowing the Bureau to continue to prosecute its claims in light of the Director's ratification risks no unfair surprise or other injustice to Defendants because the Bureau timely filed its claims and the parties have already completed discovery. *See Advanced Disposal Servs. E., Inc. v. NLRB*, 820 F.3d 592, 603–04 (3d Cir. 2016) ("[W]e are quick to note that as an equitable remedy, ratification has been applied flexibly and has often been adapted to deal with unique and unusual circumstances.").

## **CONCLUSION**

Because this Court has already held that this proceeding could continue even if the CFPA's for-cause removal provision were held unconstitutional, and because the Bureau's Director has ratified the Bureau's decision to file the Complaint, the Bureau respectfully requests that the Court deny Defendant's Motion for Judgment on the Pleadings.

Dated: July 24, 2020				Respectfully submitted,

Thomas G. Ward
*Enforcement Director*

David Rubenstein
*Deputy Enforcement Director*

Thomas Kim
*Assistant Deputy Enforcement Director*

  /s/ Nicholas Jabbour
Nicholas Jabbour, DC 500626
(Nicholas.Jabbour@cfpb.gov; 202-435-7508)
Ebony Sunala Johnson, VA 76890
(Ebony.Johnson@cfpb.gov; 202-435-7245)
Nicholas Lee, DC 1004186
(Nicholas.Lee@cfpb.gov; 202-435-7059)
Andrea Matthews, MA 694538
(Andrea.Matthews@cfpb.gov; 202-435-7591)
Carl Moore, MD 0912160268
(carl.moore@cfpb.gov; 202-435-9107)
Tracee Plowell, NY 2994457
(tracee.plowell@cfpb.gov; 202-435-9861)
*Enforcement Attorneys*

1700 G Street NW
Washington, DC 20552
Fax: 202-435-9346

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I certify that on July 24, 2020, I filed the foregoing document with the Court's ECF system, which will send notification of such filing to counsel for Defendants.

        /s/ Nicholas Jabbour
Nicholas Jabbour, DC 500626
Nicholas.Jabbour@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-7508
Fax: 202-435-9346

*Attorney for Plaintiff*