IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Consumer Financial Protection Bureau, | ) ) ) | |
| *Plaintiff*, | ) ) ) | Civil Action No. 3:CV-17-00101 (Hon. Robert D. Mariani) |
| v. | ) ) | **Oral Argument Requested** |
| Navient Corporation, *et al.*, | ) ) | |
| *Defendants*. | ) ) | |

**DEFENDANTS' REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Dismissal of this action is mandated by binding Supreme Court and Third Circuit precedent in *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), *Federal Election Commission v. NRA Political Victory Fund*, 513 U.S. 88, 98 (1994), and *Advanced Disposal Services East, Inc. v. N.L.R.B.*, 820 F.3d 592, 603 (3d Cir. 2016).

The following is undisputed: This action was filed on January 18, 2017 by an unconstitutional agency not properly accountable to the President. CFPB Br. at 1. The unconstitutional filing of this suit is curable—if at all—only through a valid ratification by a director who is removable at will by the President. *Id.* at 3-4 (citing *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020)). On July 9, 2020, Director Kraninger purported to ratify the filing of the Complaint. Doc. 506-1.

The *only* question for the Court, then, is whether the Director validly ratified this lawsuit on July 9, 2020. Both Supreme Court and Third Circuit precedent make clear that she did not. Ratification is governed by principles of agency law, under which "it is essential that the party ratifying should be able not merely to do the act ratified at the time the act was done, *but also at the time the ratification was made*." *Advanced Disposal Servs. E.*, 820 F.3d at 603 (quoting *NRA Political Victory Fund*, 513 U.S. at 98) (emphasis in original). At the time of the purported ratification, the longest statute of limitations applicable here (three years) had already run. *See* 12 U.S.C. § 5564(g)(1) (limitations period for Consumer Financial Protection Act ("CFPA") claims). Because Director Kraninger could not have *instituted* this lawsuit on July 9, 2020 based on the expiration of the statute of limitations, she also lacked the power to *ratify* the suit. Thus, the ratification came "too late in the day to be effective," and the suit must be dismissed. *NRA Political Victory Fund*, 513 U.S. at 98.

The CFPB's brief attempts to obscure the import of this binding precedent in several ways. None save the CFPB's lawsuit.

*First*, the CFPB claims that this Court "already rejected" Defendants' argument for dismissal. *See* CFPB Br. at 1, 4-5. That is impossible. At the time the Court rejected the Defendants' constitutional challenge to the Bureau's structure, *Seila Law* was not yet decided, and Director Kraninger had not issued

2

any ratification. Even the CFPB acknowledges (Br. at 7-8) that its lawsuit cannot proceed unless properly ratified by a constitutionally accountable Director. The question before the Court is whether Director Kraninger's July 9, 2020 ratification was valid—an issue that the Court did not and could not decide in 2017.

*Second*, the CFPB relies on various cases where suit was allowed to proceed *in the absence* of any statute of limitations issue affecting the validity of the ratification. CFPB Br. at 6-8. None of those cases speak to the issue here, which is controlled by the Supreme Court's ruling in *NRA Victory Fund*. Under that ruling, Director Kraninger lacked the power to ratify this suit because the statute of limitations had already expired, and "[t]he bringing of an action . . . by a purported agent can not be ratified after the cause of action . . . has been terminated by lapse of time." *NRA Political Victory Fund*, 513 U.S. at 98 (quoting Restatement (Second) of Agency § 90, cmt. a (Am. Law Inst. 1958)).

*Third*, the CFPB contends that Director Kraninger's ratification is valid because the conduct alleged in its January 18, 2017 complaint was somehow not "discover[ed]" until June 29, 2020, the date *Seila Law* was decided and its Director became constitutionally empowered to lawfully file suit. *See* CFPB Br. at 8-10. That contention defies reality. Defendants' alleged conduct was obviously "discover[ed]" more than three years ago not only by the CFPB, but by at least the

two state attorneys general that filed nearly identical claims on the same day.[1] The CFPB's implicit contention must instead be that *Seila Law* operates to *retroactively toll* the statute of limitations for any CFPA claim until July 9, 2020, such that the CFPB could also bring *new actions* against other defendants seeking penalties and other relief for any conduct it now "discovers," including conduct that occurred as early as the Bureau's inception in 2011 (or perhaps earlier).

The CFPB cites no legal authority for this extraordinary proposition. Nor could it: as the Supreme Court "held long ago, the cases in which 'a statute of limitation may be suspended by causes not mentioned in the statute itself . . . are very limited in character, and are to be admitted with great caution; otherwise the court would make the law instead of administering it.'" *Gabelli v. S.E.C.*, 568 U.S. 442, 454 (2013) (quoting *Amy v. Watertown*, 130 U.S. 320, 324 (1889)). The

---

[1] *See* Compl., *Illinois v. Navient Corp.*, No. 2017-CH-00761, 2017 WL 374522 (Ill. Cir. Ct., filed Jan. 18, 2017); Compl., *Washington v. Navient Corp.*, No. 17-2-01115-1 SEA (Wash. Super. Ct., filed Jan. 18, 2017). Contrary to what the CFPB implies, the CFPA's statute of limitations does not require *actual discovery by the CFPB*. The statute of limitations begins to run on "the date of discovery of [a] violation," which is a "term of art" that means the date "a reasonably diligent plaintiff would have discovered the facts constituting the violation." *Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 273 (3d Cir. 2013) (quoting *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010)); *see also CFPB v. Nationwide Biweekly Admin., Inc.*, 2017 WL 3948396, at *10 (N.D. Cal. Sept. 8, 2017) (applying "reasonably diligent plaintiff" rule to CFPA claims). Based on that standard, the "date of discovery" of the relevant conduct clearly was no later than January 18, 2017, when the lawsuit was originally filed.

CFPB provides no reason why an agency's unconstitutional structure should represent one of the "very limited" cases in which a statute of limitations may be tolled for reasons "not mentioned in the statute itself." *Id.*  Nor does the CFPB cite any authority for its position that statutes of limitations do not run when an agency is unconstitutionally structured.[2] Such a result directly contravenes the Supreme Court's recognition of "the importance of time limits on penalty actions." *Gabelli*, 568 U.S. at 452 (affirming that it "'would be utterly repugnant to the genius of our laws' if actions for penalties could 'be brought at any distance of time'") (quoting *Adams v. Woods*, 6 U.S. (2 Cranch) 336, 342 (1805)).  It also runs afoul of the Supreme Court's directive that parties be afforded a "remed[y]" for structural constitutional violations that both "cure the constitutional error" and create "incentives to raise [constitutional] challenges." *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2055 & n.5 (2018).

*Fourth*, in a last ditch effort to escape controlling precedent, the CFPB invokes "equity," arguing that dismissal would be unfair.  CFPB Br. at 10-11.  But "equity" did not override statutorily imposed deadlines in *NRA Political Victory*

---

[2] Contrary to the CFPB's contention, courts have recognized that a statute of limitations may begin to run before a plaintiff can lawfully file a lawsuit. *See, e.g.*, *Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*, 547 F. Supp. 2d 1, 5 (D.D.C. 2008) (recognizing that the statute of limitations on claims under the Employee Retirement Income Security Act runs from the time of an alleged violation, even though a plaintiff cannot lawfully sue before exhausting administrative remedies).

*Fund*, 513 U.S. at 98, or *Benjamin v. V.I. Port Auth.*, 684 F. App'x 207, 212 (3d Cir. 2017), despite the severe results for the parties in those cases. *See, e.g. NRA Political Victory Fund*, 513 U.S. at 99 (barring the Federal Election Commission from obtaining Supreme Court review of a decision invalidating the agency's structure); *Benjamin*, 684 F. App'x at 213 (dismissing suit by taxi drivers association challenging government's violation of exclusivity agreement).[3] The result can be no different here. Not surprisingly, the CFPB cites no case in which "equity" overrode the principle that a party must have authority "to do the act ratified . . . *at the time the ratification was made.*" *NRA Political Victory Fund*, 513 U.S. at 98 (recognizing that if the authority to bring an action "has been terminated by lapse of time" then "[t]he bringing of an action . . . can not be ratified" (quoting Restatement (Second) of Agency § 90 cmt. a (Am. Law Inst. 1958)).

Even if "equity" were relevant to the ratification rule set forth in *NRA Political Victory Fund*, the Supreme Court has explained in other contexts that

---

[3] *See also Town of Nasewaupee v. City of Sturgeon Bay*, 251 N.W.2d 845, 848-49 (Wis. 1977) (dismissing suit by town council challenging annexation of town lands); *Miernicki v. Duluth Curling Club*, 699 N.W.2d 787, 789 (Minn. Ct. App. 2005) (dismissing action brought by children of man severely injured in fall); *First Telebanc Corp. v. First Union Corp.*, 2007 WL 9702557, at *10 (S.D. Fla. Aug. 6, 2007) (granting summary judgment to defendant based on plaintiff's failure to timely ratify lawsuit).

"equitable tolling" is available only when a plaintiff demonstrates that "some extraordinary circumstance stood in [its] way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)) (emphasis added).[4] But here, the CFPB advances the remarkable claim, without support, that its *own unconstitutional structure* satisfies that standard and that the agency's earlier unconstitutional conduct (*i.e.*, the filing of this lawsuit) should allow it to proceed with a suit that it would be barred from bringing today.[5] Thus, the CFPB contends that it should *benefit* from the very conduct that caused Defendants' constitutional injury and that the Bureau now concedes was "infect[ed]" by the agency's unconstitutionality. Reply Brief for Respondent at 7, *Seila Law LLC v. CFPB*, No.

---

[4] Contrary to the CFPB's suggestion, neither its purported "diligence" in pursuing this suit nor the supposed "absence of prejudice" to Defendants provides "an independent basis for invoking the doctrine of equitable tolling." *Menominee*, 136 S. Ct. 750 at 756-57 & n.5 (quoting *Baldwin Cty. Welcome Center v. Brown*, 466 U.S. 147, 152 (1984)); *see also id.* at 756 (recognizing the "extraordinary circumstances" test as a "distinct[] element" that a party seeking tolling must independently satisfy).

[5] Moreover, the CFPB's argument that it could not have previously ratified this lawsuit is contrary to its position before other courts that the CFPB's former Acting Director validly ratified actions taken by the prior permanent Director. *See, e.g.*, *CFPB v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 784-85 (S.D.N.Y. 2018). The CFPB cannot have it both ways: if the failure to ratify earlier was "within [the CFPB's] control," that is yet another reason equitable tolling is unavailable here. *See Menominee*, 136 S. Ct. at 756-57 (recognizing that equitable tolling is unavailable "when a litigant was responsible for its own delay").

19-7 (U.S. Feb. 2020). That contention turns "equity" on its head, and runs counter to the Supreme Court's directive that courts are to provide "relief" to parties who successfully challenge the constitutionality of government actions. *See Ryder v. United States*, 515 U.S. 177, 182-83 (1995); *see also Lucia*, 138 S. Ct. at 2055 & n.5.

## CONCLUSION

The Complaint must be dismissed with prejudice.

## REQUEST FOR ORAL ARGUMENT

Defendants respectfully request oral argument on this Motion.

Dated: August 5, 2020                    Respectfully submitted,

/s/ Jonathan E. Paikin
Jonathan E. Paikin (DC 466445) (*pro hac vice*)
Daniel P. Kearney (DC 977148) (*pro hac vice*)
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Gary R. Dyal (DC 176830) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
jonathan.paikin@wilmerhale.com
daniel.kearney@wilmerhale.com
karin.dryhurst@wilmerhale.com
gary.dyal@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

        Daniel T. Brier (PA 52348)
        Myers Brier & Kelly, LLP
        425 Spruce Street, Suite 200
        Scranton, PA 18503
        dbrier@mbklaw.com
        Tel: 570-342-6100
        Fax: 570-342-6147

*Counsel for Navient Corporation, Navient Solutions, LLC, and Pioneer Credit Recovery, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2020, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service:

/s/ Karin Dryhurst
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363