# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Consumer Financial Protection Bureau, | ) | |
| | ) | |
| | ) | |
| *Plaintiff*, | ) | Civil Action No. 3:CV-17-00101 |
| | ) | (Hon. Robert D. Mariani) |
| v. | ) | |
| | ) | |
| Navient Corporation, *et al.,* | ) | |
| | ) | |
| *Defendants*. | ) | |

# DEFENDANTS' REPLY IN SUPPORT OF
# MOTION TO STRIKE DECLARATIONS OF
# <u>EBONY JOHNSON AND CHRISTOPHER ALBANESE</u>

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................1

ARGUMENT ...........................................................................................3

I.   MS. JOHNSON'S DECLARATION AND THE ASSERTIONS THE CFPB
     MAKES IN RELIANCE ON IT ARE IMPROPER AND MUST BE STRUCK ...............3

     A.   Ms. Johnson's Declaration Goes Far Beyond Providing
          Procedural History ....................................................................3

     B.   Because Ms. Johnson's Declaration Provides No Support For A
          Valid Statistical Sample, Conclusory Assertions Based On That
          "Sample" Must Be Struck ...........................................................5

II.  MR. ALBANESE'S DECLARATION IS NOT A PROPER RULE 1006
     SUMMARY AND SHOULD BE STRUCK ............................................................8

     A.   Mr. Albanese Was Not Disclosed .........................................8

     B.   Mr. Albanese's Declaration Is Not A Rule 1006 Summary ................9

     C.   The CFPB Has Not Met Its Burden To Demonstrate
          Mr. Albanese's Summary Is Accurate ................................13

     D.   Mr. Albanese Should Not Be Permitted To Present The
          Determinations Of the CFPB's Call Review When It Shielded
          The Process, Methods, And Basis For Its Conclusions From
          Discovery By Privilege Assertions ......................................15

     E.   The Special Master Did Not Decide These Issues ..............................16

CONCLUSION .......................................................................................19

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Berckeley Investment Group, Ltd. v. Colkitt*,
    455 F.3d 195 (3d Cir. 2006) ..........................................................................15

*Campbell v. Conway*,
    611 B.R. 38 (M.D. Pa. 2020)..........................................................................13

*Chavez v. IBP, Inc.*,
    No. CV-01-5093-RHW,
    2005 WL 8158586 (E.D. Wash. May 18, 2005) .............................................9

*Colón-Fontánez v. Municipality of San Juan*,
    660 F.3d 17 (1st Cir. 2011)..............................................................................8

*EEOC v. Kaplan Higher Education Corp.*,
    748 F.3d 749 (6th Cir. 2014) ...........................................................................6

*Eichorn v. AT&T Corp.*,
    484 F.3d 644 (3d Cir. 2007) ......................................................................8, 13

*Ewell v. NBA Properties, Inc.*,
    94 F. Supp. 3d 612 (D.N.J. 2015)....................................................................6

*FTC v. Vantage Point Services, LLC*,
    266 F. Supp. 3d 648 (W.D.N.Y. 2017)............................................................5

*General Refractories Co. v. First State Insurance Co.*,
    No. CIV.A. 04-3509,
    2015 WL 3450391 (E.D. Pa. May 29, 2015)..................................................12

*In re Engers v. AT&T*,
    No. CIVA 98-CV-3660 JLL,
    2005 WL 6460846 (D.N.J. Sept. 9, 2005).......................................................9

*Lovo v. Express Courier International, Inc.*,
    No. 4:16-CV-853-Y,
    2018 WL 6573132 (N.D. Tex. Oct. 24, 2018) ...........................................8–9

*North Trade U.S., Inc. v. Guinness Bass Import Co.*,
No. 3:03CV1892CFDTPS,
2006 WL 2263885 (D. Conn. Aug. 7, 2006) .................................................... 5

*Peat, Inc. v. Vanguard Research, Inc.*,
378 F.3d 1154 (11th Cir. 2004) ..................................................................... 8

*Pritchard v. Liggett & Myers Tobacco Co.*,
295 F.2d 292 (3d Cir. 1961) ........................................................................ 11

*SEC v. Badian*,
822 F. Supp. 2d 352 (S.D.N.Y. 2011) ............................................................ 9

*SEC v. Das*,
No. 8:10CV102,
2012 WL 425182 (D. Neb. Feb. 8, 2012) ....................................................... 9

*Sitts v. United States*,
811 F.2d 736 (2d Cir. 1987) .......................................................................... 5

*United States v. Bray*,
139 F.3d 1104 (6th Cir. 1998) ..................................................................... 12

*United States v. Dicker*,
853 F.2d 1103 (3d Cir. 1988) ............................................................... 2, 9, 12

*United States v. Francis*,
131 F.3d 1452 (11th Cir. 1997) ................................................................... 12

*United States v. Georgiou*,
777 F.3d 125 (3d Cir. 2015) .......................................................................... 8

*United States v. Hawkins*,
796 F.3d 843 (8th Cir. 2015) ...................................................................... 12

*United States v. Hevener*,
382 F. Supp. 2d 719 (E.D. Pa. 2005) ........................................................... 13

*United States v. Lynch*,
735 F. App'x 780 (3d Cir. 2018) ...................................................... 11, 12, 14

*United States v. Mehta*,
594 F.3d 277 (4th Cir. 2010) ........................................................................ 6

*United States v. Murray*,
  468 F. App'x 104 (3d Cir. 2012) .......................................................................6

*United States v. Saldana*,
  473 F. App'x 118 (3d Cir. 2012) ..............................................................10, 13

*United States v. Sarraga-Solana*,
  No. CRIM.A. 04-144-6-JJF,
  2005 WL 3701472 (D. Del. Oct. 6, 2005) ...............................................10, 13

*United States v. Swanquist*,
  161 F.3d 1064 (7th Cir. 1998) ........................................................................8

*United States v. White*,
  737 F.3d 1121 (7th Cir. 2013) ......................................................................12

*United States for Use & Benefit of Evergreen Pipeline Construction
  Co., Inc. v. Merritt Meridian Construction Corp.*,
  95 F.3d 153 (2d Cir. 1996) ...........................................................................13

## RULES

Fed. R. Civ. P. 56 .........................................................................................3

## OTHER AUTHORITIES

31 Fed. Prac. & Proc. Evid. (1st ed. Apr. 2020 update)
  § 8043 ...........................................................................................................8
  § 8044 .........................................................................................................14

FED. JUD. CTR., REFERENCE MANUAL ON SCIENTIFIC EVIDENCE (3d ed. 2011) ........6

## PRELIMINARY STATEMENT

In an attempt to salvage the declarations of Ms. Johnson and Mr. Albanese, the CFPB retreats and argues that the declarations are admissible for the very limited purposes of providing background procedural history or a summary of other admissible evidence.  The CFPB goes to great lengths to try to mold the declarations into these narrow categories.  But the declarations plainly go beyond the narrow limits that even the CFPB acknowledges govern such background or summary material.  And if there was any lingering question about the scope of the declarations, the Court need look no further than the many assertions about "steering" in the CFPB's summary judgment papers that exclusively cite these declarations in support.  The declarations are improper and must be struck.

The CFPB now claims that Ms. Johnson is merely offering "procedural history" and yet relies on her declaration to proffer that 450 calls (out of 24 million) demonstrate that "steering" was "pervasive."  It concedes that Ms. Johnson cannot offer an opinion on "statistical sampling" and even withdraws its statement that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  But at the same time, the CFPB relies exclusively on Ms. Johnson's description of the "sample" in making conclusory sweeping assertions about Defendants' conduct in its papers.  If Ms. Johnson's declaration is truly no more than "procedural"

background, those conclusory assertions have no foundation or support and must be struck.

Next, the CFPB claims that Mr. Albanese's declaration is a mere Rule 1006 summary, even though it looks nothing like a list of dates, call participants, or call times that would be typical summary evidence of call data.  In truth, Mr. Albanese's expansive declaration does not present objective facts at all, but rather offers ███████████████████████████ "interpretation of clear conversations" on recorded calls—material that the Third Circuit has held to be improper opinion testimony.  *United States v. Dicker*, 853 F.2d 1103, 1108–09 (3d Cir. 1988).  The declaration is all the more inappropriate because, when Defendants previously sought discovery about the call review, the CFPB asserted privilege to prevent any inquiry into the very interpretations and conclusions that Mr. Albanese now presents as "evidence."  Moreover, the CFPB's contention that the Special Master has already ruled Mr. Albanese's declaration admissible is meritless.  The CFPB does not cite any such order by the Special Master (because there is none), nor does it claim that it provided Mr. Albanese's name or a proposed Rule 1006 exhibit to the Special Master (it did neither).  The notion that the Special Master ruled *sub silentio* on this issue is therefore quite incredible and desperate.  But to ensure the parties have the benefit of the history on this issue, Defendants have no objection to having the Special Master decide the Motion in the first instance (and

2

presumably the CFPB would concur).  In any event, the only question before the

Court is whether Mr. Albanese's declaration is admissible as a proper Rule 1006

summary.  It is not, and therefore must be struck.

## ARGUMENT

### I.  MS. JOHNSON'S DECLARATION AND THE ASSERTIONS THE CFPB MAKES IN RELIANCE ON IT ARE IMPROPER AND MUST BE STRUCK

The CFPB claims that Ms. Johnson's declaration simply provides "a

procedural history" within her personal knowledge.  Doc. 520 ("CFPB Opp.") at 9.

But Ms. Johnson's declaration goes far beyond a permissible attorney declaration,

instead offering evidence about Navient's data that she is not competent to offer.

To the extent Ms. Johnson's declaration goes beyond stating that the CFPB

requested recordings of calls from Navient and that Navient provided them, Ms.

Johnson's declaration must be struck.  Moreover, because Ms. Johnson does not,

and indisputably cannot, offer an opinion that the calls were a valid random

statistical sample, all statements that seek to extrapolate from the "sample" must be

struck.

#### A.  Ms. Johnson's Declaration Goes Far Beyond Providing Procedural History

"An affidavit or declaration used to support or oppose a motion must be

made on personal knowledge . . . and show that the affiant or declarant is

competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  No one

would dispute that any attorney of record on this matter can attest that the CFPB

requested certain call recordings and Navient produced them.  Defendants would stipulate to such background facts.

But Ms. Johnson's declaration does far more.  Ms. Johnson testifies to ████ ██████████████████████████████████████ Doc. 508, Ex. A ("Johnson Decl.") ¶ 3, but she does not explain ████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████ CFPB Opp., Ex. C at 10.[1]

Moreover, when Defendants requested information about that "sampling methodology" during fact discovery, the CFPB objected that such information "[would] be outlined in [the CFPB's] expert's report," which was the "time that it's appropriate for [Defendants] to have that information."  Ex. 1 at 5:1–24.  What was previously expressly withheld as a subject for experts ████████████ ██████████████████████████.  CFPB Opp. at 9.

The CFPB's case citations lend no support.  None involve an attorney's description of an expert's review of what the expert himself ████████████ ████, CFPB Opp., Ex. C at 10, and two of the three cases affirmatively disregarded portions of affidavits that went beyond introduction of documents or presentation

---

[1]  Ms. Johnson has elsewhere explained the delineation of responsibilities between the CFPB's expert at Bates White, Dr. Charles Mullin, and the CFPB:  "*He* took that sample, *the Bureau* reviewed that sample . . . ."  CFPB Opp., Ex. A at 17:23 (emphases added).

of "dates and events in the litigation about which any attorney involved in th[e] case would seem to have knowledge." *N. Trade U.S., Inc. v. Guinness Bass Imp. Co.*, No. 3:03CV1892CFDTPS, 2006 WL 2263885, at \*3–4 (D. Conn. Aug. 7, 2006) (holding that an attorney's declaration "not based on personal knowledge carries no weight" and "much of" the declaration "should be disregarded").[2]

> ### B. Because Ms. Johnson's Declaration Provides No Support For A Valid Statistical Sample, Conclusory Assertions Based On That "Sample" Must Be Struck

The CFPB acknowledges that ███████████████████████████ ████████████████████████████████████████ CFPB Opp. at 3 n.2, and insists her declaration ███████████████████ *id.* at 10. Yet the CFPB inexplicably asserts that there is "no dispute that the calls produced by Navient were a 'sample.'" *Id.* at 3 n.2. A non-random set of produced calls may be a "selection," but it is not a "sample" except in the most unscientific sense of the word—*i.e.*, a set from which nothing meaningful can be extrapolated or inferred. Defendants have previously explained why the statistical conclusions being asserted by the CFPB were inappropriate, unsupported, and wrong. *See, e.g.*,

---

[2] *See also Sitts v. United States*, 811 F.2d 736, 742 (2d Cir. 1987) (allowing attorney affidavit stating merely that plaintiff did not identify a medical expert in discovery); *FTC v. Vantage Point Servs.*, LLC, 266 F. Supp. 3d 648, 654 (W.D.N.Y. 2017) (declining to consider portion of attorney affidavit that "veers into legal argument and factual allegations for which [the attorney] has no personal knowledge").

Doc. 509 at 20, 27, 28, 30.  In the opening brief on this Motion, Defendants

explained that a "true 'sample' must be 'random[] in the technical sense [to]

provide[] assurance of unbiased estimates,'" and "[i]f the CFPB's 'sample' was not

selected according to this more technical sense of randomness, any conclusions the

CFPB wishes to extrapolate beyond its sample would be invalid."  Doc. 508 at 13

(quoting FED. JUD. CTR., REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 230 (3d

ed. 2011)).[3]

Without evidence of a statistically valid "sample" (which the CFPB ███

████████, CFPB Opp. at 3 n.2), the CFPB cannot extrapolate from the

"sample" to reach conclusions about Navient's practices as a whole.  At most, even

assuming each of the 450 calls was properly characterized as "steering," that is less

than 0.002% of the 24 million calls during the time period.  Neither the CFPB nor

the Court can draw any conclusions about what those calls say about any other call

or about Navient's practices as a whole, Doc. 510 ¶ 145.

---

[3] *See also, e.g.*, *EEOC v. Kaplan Higher Educ. Corp.*, 748 F.3d 749, 753–54 (6th
Cir. 2014) (unrepresentative sample "not a reliable means"); *United States v.
Mehta*, 594 F.3d 277, 283 (4th Cir. 2010) (without evidence that the "sample
offered was representative of the larger group," the district court "erred in using
that sample to extrapolate . . . for the larger group"); *Ewell v. NBA Props., Inc.*, 94
F. Supp. 3d 612, 627–28 (D.N.J. 2015) ("If the sample was not random, we cannot
draw valid statistical conclusions."); *cf. United States v. Murray*, 468 F. App'x
104, 110 (3d Cir. 2012) ("[R]eliable extrapolations from representative sample
data may be used . . . ." (citing *Mehta*, 594 F.3d at 283)).

The CFPB nevertheless relies on Ms. Johnson's declaration—and nothing else—to make sweeping assertions that require extrapolation from its "sample." Indeed, the first sentence of its opposition to this Motion claims that the "sample of calls . . . *indisputably demonstrates* that Navient *pervasively* steered borrowers into forbearance." CFPB Opp. at 1 (emphases added). Yet the CFPB also admits elsewhere, without acknowledging the inconsistency, that ███████████████ ██████████████████████████████████████—Ms. Johnson's declaration. In a footnote, ████████████████████████████████████████ ████████████████████████████████████████████████ CFPB Opp. at 3 n.2. The CFPB lacks any support in the record for the assertions listed below, which *necessarily rely on* the calls being a random sample, as well as any characterization of the calls as a "sample," which should be similarly withdrawn or struck.

- "And a *sample of calls* produced by Navient confirms that the steering conduct has been *pervasive* and continued throughout the relevant time period. PSUF ¶¶ 145-151." Doc. 482 at 9 (emphases added).

- "The Bureau's review of a *sample of calls* from Navient demonstrates that borrowers who called about payment difficulties were *routinely* placed into a prospective forbearance without IDR being mentioned at all. PSUF ¶¶ 145, 146." Doc. 482 at 37 (emphases added).

- "Navient's steering practices were *systemic*. The Bureau reviewed a *random sample of Navient calls* which confirmed that Navient's steering was *widespread*. The *pervasiveness* of steering in the sample reflects Navient's policies and procedures that incentivized steering, as described in the

Bureau's motion for summary judgment."  CFPB's Brief In Opposition To Defendants' Motion For Summary Judgment at 5 (emphases added).

## II.   MR. ALBANESE'S DECLARATION IS NOT A PROPER RULE 1006 SUMMARY AND SHOULD BE STRUCK

The CFPB claims that Mr. Albanese's declaration is admissible under Rule 1006.  But "Rule 1006 does no more than create an exception to Rule 1002, which requires an original to prove contents of writings, recordings, and photographs." 31 Fed. Prac. & Proc. Evid. § 8043 (1st ed. Apr. 2020 update).  The CFPB may not use Rule 1006 as a "a back-door vehicle for the introduction of evidence which is otherwise inadmissible."  *Eichorn v. AT&T Corp.*, 484 F.3d 644, 650 (3d Cir. 2007) (quoting *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1160 (11th Cir. 2004)).

### A.   Mr. Albanese Was Not Disclosed

The CFPB acknowledges that Mr. Albanese was never disclosed, but claims such disclosure was not required for a Rule 1006 witness.  That is wrong.[4]  "This

---

[4] The CFPB's case law does not support its contention that disclosure of a summary witness is categorically not required.  *See United States v. Georgiou*, 777 F.3d 125, 143–44 (3d Cir. 2015) (testimony admissible under Rule 701 and witness therefore did not need to be disclosed as an expert); *Colón-Fontánez v. Municipality of San Juan*, 660 F.3d 17, 31 (1st Cir. 2011) (no surprise where party had ample notice of the identity of the person who prepared the summary chart); *United States v. Swanquist*, 161 F.3d 1064, 1073 (7th Cir. 1998) (witness who testified solely about what records showed and was restricted from "offering his own opinion or inferences" did not testify as an expert); *Lovo v. Express Courier Int'l, Inc.*, No. 4:16-CV-853-Y, 2018 WL 6573132, at *1 (N.D. Tex. Oct. 24, 2018) (summary exhibit with damages calculations did not need to be disclosed

Court is unaware of any law exempting 'summary witnesses' from Rule 26's

requirements . . . .   Rule 37(c) precludes a party from using 'any witness' not

disclosed pursuant to Rule 26, absent 'substantial justification' for that non-

disclosure, and Rule 26(a)(1)(A) exempts only impeachment witnesses from its

initial disclosure requirement."  *In re Engers v. AT&T*, No. CIVA 98-CV-3660

JLL, 2005 WL 6460846, at *2 (D.N.J. Sept. 9, 2005).  Moreover, given that Mr.

Albanese offers lay opinion testimony, not a "summary," the CFPB offers no

argument as to why its failure to disclose him should be excused.  *See* Doc. 508

at 6–10.

### B.    Mr. Albanese's Declaration Is Not A Rule 1006 Summary

The CFPB offers no answer to the Third Circuit's holding that

"interpretation of clear conversations" on recorded calls is inadmissible opinion

testimony.  *United States v. Dicker*, 853 F.2d 1103, 1108–09 (3d Cir. 1988); Doc.

508 at 20–21.  The ███████████████ in Mr. Albanese's declaration are not the sort

of straightforward facts typical of a Rule 1006 summary, which might include a list

---

where proponent did not intend to show exhibit to jury); *SEC v. Das*, No.
8:10CV102, 2012 WL 425182, at *3–4 (D. Neb. Feb. 8, 2012) (individual
disclosed as expert could act as summary witness without a second disclosure);
*SEC v. Badian*, 822 F. Supp. 2d 352, 367 (S.D.N.Y. 2011) (no showing of
prejudice where the undisclosed witness merely provided a summary); *Chavez v.
IBP, Inc.*, No. CV-01-5093-RHW, 2005 WL 8158586, at *1 (E.D. Wash. May 18,
2005) (new damages theory that was a simple calculation disclosed in an expert
deposition did not need to be disclosed under Rule 26).

of the length of calls, a list of telephone records,[5] toll records,[6] or a list of the

names of callers.

For example, ███████████████ —that Navient representatives ███████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████ Doc. 508, Ex. B ("Albanese Decl.") ¶ 4 (emphases

added)—is embedded with subjective opinions and speculation.

Specifically, in testifying that calls ██████████████████████, Mr.

Albanese is not reporting on objectively identifiable facts; rather, he is offering

subjective judgments that ████████████████████████████████████

██████████████████████████████. In each of the calls below, someone

other than Mr. Albanese could have fairly formed a different opinion based on the

same facts:

---

[5] *United States v. Saldana*, 473 F. App'x 118, 123 (3d Cir. 2012).

[6] *United States v. Sarraga-Solana*, No. CRIM.A. 04-144-6-JJF, 2005 WL 3701472, at *3 (D. Del. Oct. 6, 2005).

- where a borrower explained that he needed "three or four months" to get his "feet under [him]" after graduating and getting an "okay job," Doc. 508, Ex. H at 3:19–24;

- where a borrower explained that her work was "going to pay off [her] student loans" and she was going through the application process, Doc. 508, Ex. J at 2:23–25; and

- where a borrower explained that he needed "three months" of relief as he paid off a $826 ticket, Doc. 508, Ex. I at 4:3–12[7]; *see also* Doc. 510 ¶ 149 (providing other examples).

Rule 1006 is designed to streamline a trial by allowing observable attributes

in admissible evidence to be aggregated in summary form.

> In this Circuit, a district court's finding that the exhibits qualified under Rule 1006 is itself a determination that they are not infected with the preparer's own subjective views.  Prior to permitting the use of a summary document under Rule 1006, the district court must assure that "the summation accurately summarizes the materials involved by not referring to information not contained in the original."

*United States v. Lynch*, 735 F. App'x 780, 787 (3d Cir. 2018) (quoting *Pritchard v.*

*Liggett & Myers Tobacco Co.*, 295 F.2d 292, 300–01 (3d Cir. 1961)).  Mr.

Albanese's conclusions plainly do not lend themselves to a Rule 1006 summary

presentation.

The question here is not whether Mr. Albanese is right or wrong; it is only

whether this testimony is admissible under Rule 1006.[8]  It plainly is not.  Mr.

---

[7] The CFPB does not even attempt to explain why ███████████████████ ████████████████████.

[8] Nonetheless, the fact that there is a question as to whether Mr. Albanese is right or wrong itself demonstrates that his declaration is inadmissible under Rule 1006.

Albanese is offering ████████████████████████, contrary to

Third Circuit law. *Dicker*, 853 F.2d at 1108–09. Summary exhibits may not

contain arguments about how the summarized records should be characterized,[9] or

"make arguments about the inferences the jury should draw from" the summarized

documents, *Gen. Refractories Co. v. First State Ins. Co.*, No. CIV.A. 04-3509,

2015 WL 3450391, at *8 (E.D. Pa. May 29, 2015) (quoting *United States v. White*,

737 F.3d 1121, 1135 (7th Cir. 2013)).[10]

The CFPB cites out-of-circuit case law suggesting that summaries may

contain assumptions—"so long as supporting evidence [for the assumptions] has

been presented previously to the jury," *United States v. Francis*, 131 F.3d 1452,

1458 (11th Cir. 1997) (citation omitted). Mr. Albanese's declaration does not even

come close to meeting this standard,[11] but in any event, that is not the law in this

---

[9] *See United States v. Hawkins*, 796 F.3d 843, 866 (8th Cir. 2015) (excluding summary exhibit where it reframed evidence in argumentative manner and labeled statements as "false and misleading" or "exaggerations"); *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998) (information in summary cannot be "embellished by or annotated with the conclusions of or inferences drawn by the proponent, whether in the form of labels, captions, highlighting techniques, or otherwise").

[10] The Third Circuit's decision in *Lynch* is not to the contrary. It merely provides that a summary "need not accurately reflect *all*," as opposed to some of, "*the facts in the case*." 735 F. App'x at 786 (emphases added).

[11] The CFPB has made no showing that the assumptions underlying Mr. Albanese's categorizations are supported by otherwise admissible evidence.

Circuit.[12]  To the contrary, the Third Circuit has held that a purported summary

that "went beyond the data . . . summarized and included several assumptions,

inferences, and projections about future events, which represent[ed] [the

proponent's opinion], rather than the underlying information," is opinion

testimony, not a proper Rule 1006 summary.  *Eichorn*, 484 F.3d at 650; *see also*

*Campbell v. Conway*, 611 B.R. 38, 45 (M.D. Pa. 2020) (holding that exhibit was

"not a summary but, rather, a synthesis of information" because it required

"assumptions").[13]

### C.    The CFPB Has Not Met Its Burden To Demonstrate Mr. Albanese's Summary Is Accurate

Mr. Albanese's declaration fails to meet another requirement for

admissibility under Rule 1006:  it is not accurate.  To be admissible, summaries

---

[12] The CFPB also cites *United States for Use & Benefit of Evergreen Pipeline Construction Co. v. Merritt Meridian Construction Corp.*, 95 F.3d 153, 163 (2d Cir. 1996), for its contention that "[o]bjections that [a] summary [does] not fairly represent the documents and [is] excessively confusing and misleading go more to its weight than to its admissibility." CFPB Opp. at 14.  In fact, all that case held was that a summary was properly admitted even though it was based on documents not admitted into evidence.  *See Merritt Meridian Constr. Corp.*, 95 F.3d at 163.

[13] The CFPB cites to three cases within the Third Circuit.  *See* CFPB Opp. at 14–15.  Two hold that voluminous phone records can be summarized in a proper Rule 1006 exhibit.  *See Saldana*, 473 F. App'x at 123; *Sarraga-Solana*, 2005 WL 3701472, at *5.  The third case, *United States v. Hevener*, 382 F. Supp. 2d 719 (E.D. Pa. 2005), decided before the Third Circuit decided *Eichorn*, 484 F.3d at 644, held only that summaries were admissible where they were "based on" "financial statements and records" and did not "presume or predict information." *Id.* at 730.

"must be supported by a foundation showing that the exhibit is an accurate summary of the underlying materials." *Lynch*, 735 F. App'x at 785; *see also* 31 Fed. Prac. & Proc. Evid. § 8044 (1st ed. Apr. 2020 update) ("[T]he proponent [of a Rule 1006 summary] must show that it accurately summarizes the source materials.").  The CFPB has not met its burden.

The CFPB has already acknowledged ███████████, CFPB Opp. at 12–13, in response to Defendants' opening brief, and there are others:

- ████████████████████████████████████████
  █████████████████████████████████, *see* Doc. 510, Ex. 84 at 4:3–6, 19–23.

- ████████████████████████████████████████
  ████████████████  *See id.* Ex. 90 at 3:11–24; Ex. 91 at 5:20–24; Ex. 92 at 5:10–22; Ex. 93 at 4:9–21.

- ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████ *Compare* Johnson Decl. ¶ 8 & Ex. A (████████
  ████████, *with* Albanese Decl. ¶ 6 & Ex. A (████████████████
  ████████████).

Because the CFPB has not met its burden to show the "summary" is accurate, it is inadmissible for this reason as well.

**D.    Mr. Albanese Should Not Be Permitted To Present The Determinations Of the CFPB's Call Review When It Shielded The Process, Methods, And Basis For Its Conclusions From Discovery By Privilege Assertions**

The CFPB would be right that Defendants are not entitled to its lawyers'

analysis of the evidence, CFPB Opp. at 18–19, but it cannot make that claim while

also offering ███████████████████████████████████

████████████████████████████. *See* Albanese Decl. ¶ 4

(describing ██████████████████████████████); CFPB Opp.,

Ex. D at 2 (objecting on privilege grounds to the production of documents created

by Mr. Albanese).

More aptly, the CFPB cannot offer ████████████████████████

while at the same time preventing discovery into how ██████████████ were

made. *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 222 (3d Cir. 2006)

(party may not "rely upon" evidence "without permitting [the other party] the

opportunity to probe the surrounding circumstances and substance").  Again, just

as Defendants would be entitled to discovery if an expert opined that calls

representatives did not provide adequate information, when the CFPB seeks to

offer ████████████ through Mr. Albanese, Defendants would be entitled to

understand how he came to that conclusion.  Because the CFPB challenged and

prevented any discovery into the process, methods, or basis for the determinations

on privilege grounds, it cannot now affirmatively rely on the ultimate conclusions.

15

### E.     The Special Master Did Not Decide These Issues

The CFPB claims that the Special Master already considered these

arguments and approved Mr. Albanese's declaration, CFPB Opp. at 1–2, 15–16,

20–22, even though the declaration was not before him and was not produced until

more than seven months later.[14]  This is a gross distortion of the proceedings

before the Special Master.

The CFPB asks the Court to gloss over the protracted discovery proceedings

before the Special Master and accept the CFPB's representation that the Special

Master casually endorsed the CFPB's future use of a summary witness to offer

opinions.  What actually happened can be verified by reviewing the proceedings

before the Special Master.  Navient objected to portions of Dr. Mullin's initial

report, which incorporated the CFPB's "steering" determinations, and sought

discovery of information regarding the CFPB's "steering" analysis.  Doc. 350 at 3.

The Special Master had two concerns: (1) "from a trial management perspective,"

whether the CFPB intended to play 400 call recordings or provide 400 transcripts

for the jury, CFPB Opp., Ex. A at 36:14–24, and (2) that it was "equally important

that . . . Navient have an understanding of how those calls got classified as steering

calls," *id.* at 36:25–37:2.  The Special Master therefore ruled that Defendants were

---

[14] *Compare* Albanese Decl. (dated May 18, 2020), *with* CFPB Opp., Ex. B (Oct. 9, 2019 hearing transcript).

entitled to "any documentation concerning" how "the determination of whether a call exhibited steering was made for each call reviewed," *id.* at 35:21–36:8. The CFPB asserted work product over all documents created during their call review. Doc. 470-1, Ex. A at 2–3. Defendants again objected. Doc. 367 at 3 n.3. The CFPB represented there would be no witness testimony on the call review:

> [T]o promote an efficient presentation of the evidence and to aid the jury in understanding the calls in the sample, the Bureau likely will seek to introduce exhibits into evidence that accurately summarize various facts about what was said or not said on the calls. *This will not be done through any fact or expert witness, but rather through summary exhibits* . . . .

CFPB Opp., Ex. E at 2 (Letter from CFPB to Special Master) (emphasis added). Because the CFPB agreed to submit a revised report from Dr. Mullin that would not include the CFPB's "steering" conclusions and suggested that it would present "a Rule 1006 summary," the Special Master did not require further discovery into the CFPB's "steering" conclusions, CFPB Opp., Ex. B, 56:20–57:8; Doc. 371.[15]

Most critically, on the question of whether the Special Master has already ruled on this motion, the CFPB did not present Mr. Albanese's declaration until filing its summary judgment motion. CFPB Opp., Ex. B at 39:11–13; Albanese Decl. (dated May 18, 2020). All that Defendants and the Special Master had seen, at the time the CFPB claims the Special Master decided these issues, was the

---

[15] Although the CFPB inserted the word "witness" in brackets, CFPB Opp. at 11, the Special Master in fact said nothing about the appropriateness of a summary witness, CFPB Opp. Ex. B at 59:13–15.

CFPB's representation that it would "seek to introduce exhibits into evidence that accurately summarize various facts about what was said or not said on the calls." CFPB Opp., Ex. E at 2.[16]

---

[16] In support of its contention that Defendants already raised the arguments in this Motion, the CFPB first cites a footnote in a letter Defendants sent *before the CFPB announced its intention to use a summary exhibit*, let alone presented Mr. Albanese's declaration. *See* CFPB Opp. at 7 (citing Doc. 367 (letter from Defendants dated Oct. 2, 2019)); CFPB Opp., Ex. E (letter from CFPB dated Oct. 8, 2019 announcing intention to use summary exhibit). The CFPB also cites an October 9, 2019 hearing where Defendants argued that, if Dr. Mullin was relying on a summary exhibit, it should have been produced as part of expert discovery and that a summary exhibit would not support Dr. Mullins's conclusions, and noted that "the CFPB has not even given us a copy of the summary exhibit that they say they want to introduce at trial." CFPB Opp., Ex. B at 37:22–39:16. These objections merely demonstrate that neither Mr. Albanese's declaration, nor any version of any summary exhibit, was before the Special Master.

## **CONCLUSION**

The declarations of Ms. Johnson and Mr. Albanese should be struck, along with all portions of the CFPB's summary judgment filings that rely on them.

Dated:  August 13, 2020                    Respectfully submitted,

                                           /s/ Jonathan E. Paikin
                                           Jonathan E. Paikin (DC 466445) (*pro hac vice*)
                                           Daniel P. Kearney (DC 977148) (*pro hac vice*)
                                           Karin Dryhurst (DC 1034290) (*pro hac vice*)
                                           Wilmer Cutler Pickering
                                             Hale and Dorr LLP
                                           1875 Pennsylvania Avenue, NW
                                           Washington, DC 20006
                                           jonathan.paikin@wilmerhale.com
                                           daniel.kearney@wilmerhale.com
                                           karin.dryhurst@wilmerhale.com
                                           Tel: 202-663-6000
                                           Fax: 202-663-6363

                                           Daniel T. Brier (PA 52348)
                                           Myers Brier & Kelly, LLP
                                           425 Spruce Street, Suite 200
                                           Scranton, PA 18503
                                           dbrier@mbklaw.com
                                           Tel: 570-342-6100
                                           Fax: 570-342-6147

                                           *Counsel for Navient Corporation, Navient Solutions, LLC, and Pioneer Credit Recovery, Inc.*

## CERTIFICATE OF WORD COUNT

I hereby certify in accordance with Local Rule 7.8(b)(2) that the foregoing

document is 4,677 words.

/s/ Karin Dryhurst
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

Dated:  August 13, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2020, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

/s/ Karin Dryhurst
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363