**THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Consumer Financial Protection Bureau, | ) | |
| | ) | |
| | ) | |
| *Plaintiff,* | ) | Civil Action No. 3:CV-17-00101 |
| | ) | (Hon. Robert D. Mariani) |
| v. | ) | |
| | ) | |
| Navient Corporation, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S RESPONSE TO
DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

# TABLE OF CONTENTS

Page

BACKGROUND ................................................................................................1

QUESTION PRESENTED .................................................................................3

ARGUMENT ......................................................................................................3

I.     THE PARTY OPPOSING SUMMARY JUDGMENT MUST
       SUBMIT A "SHORT AND CONCISE STATEMENT OF THE
       MATERIAL FACTS"..................................................................................4

II.    "[E]VERY DENIAL OR PARTIAL DENIAL . . . SHALL BE
       ACCOMPANIED BY A SPECIFIC REFERENCE TO THE PARTS
       OF THE RECORD THAT SUPPORT THE STATEMENTS" ......................5

       A.     Unsupported Denials Based On Claims That Borrower
              Information Might Exist That Was Not Produced ..............................6

       B.     Unsupported Denials That Disclosures Were Sent ...............................7

              1.     Borrower Contacts ....................................................................7

              2.     Renewal Notices .......................................................................8

       C.     Unsupported Denials Based On Assertions That There May
              Have Been Different Written Procedures Or That Procedures
              Were Not Provided To Call Center Representatives ..........................10

       D.     Unsupported Denials That Call Center Representatives Did Not
              Check Eligibility Or That Borrowers Were Ineligible For IDR .........10

       E.     Other Unsupported Denials................................................................11

       F.     Denials Based On Inadmissible Evidence...........................................12

III.   "THE PARTY RESPONDING TO ANY STATEMENT OF
       MATERIAL FACT IS PROHIBITED FROM ADDING
       ADDITIONAL LANGUAGE . . . INTENDED TO ADD
       ASSERTIONS OF FACT . . . EXTRANEOUS TO THE PARTY'S
       ADMISSION OR DENIAL" .......................................................................13

IV.    "THE PARTY RESPONDING TO ANY STATEMENT OF
       MATERIAL FACT IS PROHIBITED FROM ADDING
       ADDITIONAL LANGUAGE . . . INTENDED TO ADD . . .
       ARGUMENT EXTRANEOUS TO THE PARTY'S ADMISSION OR
       DENIAL"...................................................................................................15

CONCLUSION ...................................................................................................19

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Chinniah v. East Pennsboro Township*,
No. 1:CV-08-1330, 2012 WL 2006749 (M.D. Pa. Feb. 29,
2012), *adopted by* 2012 WL 2003493 (M.D. Pa. June 5, 2012) ..................16

*DeGroat v. DeFebo*,
87 F. Supp. 3d 706 (M.D. Pa. 2015)...........................................................1, 2

*Gentile v. DES, Properties, Inc.*,
No. 3:08-CV-2330, 2012 WL 2792347 (M.D. Pa. July 9, 2012)..................15

*Hairston v. Lappin*,
No. 1:11-CV-1379, 2013 WL 5701637 (M.D. Pa. Oct. 18, 2013), *aff'd
sub nom. Hairston v. Dir. Bureau of Prisons*, 563 F. App'x 893 (3d Cir.
2014) ...........................................................................................................13

*Markovich v. Panther Valley School District*,
No. CIV.A. 3:13-3096, 2015 WL 4077758 (M.D. Pa. July 6,
2015) ...........................................................................................................16

*Park v. Veasie*,
No. 3:09-CV-2177, 2011 WL 1831708 (M.D. Pa. May 11,
2011) ...........................................................................................................16

*Perez v. Great Wolf Lodge of the Poconos LLC*,
200 F. Supp. 3d 471 (M.D. Pa. 2016).........................................................15

*Rau v. Allstate Fire & Casualty Insurance Co.*,
793 F. App'x 84 (3d Cir. 2019) ................................................................2–3

*Selective Insurance Co. of America v. Novitsky*,
No. 3:17-CV-2376, 2019 WL 1009389 (M.D. Pa. Mar. 1, 2019)................14

*Shuman v. Remtron, Inc.*,
No. 4:09-CV-00003, 2012 WL 315445 (M.D. Pa. Feb. 1, 2012) ..................5

*United States v. Polshenski*,
No. 3:16-CV-2515, 2018 WL 806469 (M.D. Pa. Feb. 9, 2018) ....................5

*Weitzner v. Sanofi Pasteur, Inc.*,
    909 F.3d 604 (3d Cir. 2018) ...............................................................................16

*Weitzner v. Sanofi Pasteur, Inc.*,
    No. 3:11-CV-02198, 2017 WL 3894888 (M.D. Pa. Sept. 6,
    2017), *aff'd*, 909 F.3d 604 (3d Cir. 2018) ........................................................2

## STATUTES, RULES, AND REGULATIONS

34 C.F.R.
    § 682.200 ...................................................................................................12
    § 682.209 ...................................................................................................11
    § 682.215 ...................................................................................................11
    § 685.209 ...................................................................................................11
    § 685.221 ...................................................................................................11

Fed. R. Civ. P. 56 ...................................................................................................13

M.D. Penn. L.R. 56.1 ........................................................................................*passim*

## BACKGROUND

"The purpose of [Local Rule 56.1] is obvious: it enables the court to identify contested facts expeditiously and prevents factual disputes from becoming obscured by a lengthy record." *DeGroat v. DeFebo*, 87 F. Supp. 3d 706, 716 (M.D. Pa. 2015).  On April 22, 2020, the Court issued an Order expressly warning: "every denial or partial denial . . . shall be accompanied by a specific reference to the parts of the record that support the statements"; "the party responding to any statement of material fact is prohibited from adding additional language to its admission or denial . . . intended to add assertions of fact or argument extraneous to the party's admission or denial"; "[a]ny statement of material fact which is unaccompanied by a reference in the record which supports the statement of fact is subject to being stricken"; and "any denial or partial denial of a statement of material fact which fails to comply with the Order shall result in the statement of material fact being deemed admitted."  Doc. 463.

In direct contravention of this Court's Orders, the Local Rules, and the Federal Rules of Civil Procedure, the CFPB filed a more than 300-page response to Defendants' Statement of Undisputed Material Facts replete with unsupported, argumentative, unresponsive, and prolix denials of facts.  Many of those denials concern facts that, by any reasonable measure, are undisputed.  For example, the CFPB baldly denies, without citing any record evidence, that Navient's letters were

sent to borrowers despite Defendants producing the correspondence histories for millions of borrowers, including the CFPB's borrower witnesses.  Likewise, the CFPB denies that Navient's servicing procedures stated in a red box that "Forbearance should not be considered until all other options have been exhausted," on the ground that Defendants submitted four exemplar versions covering a four-year time period and not every single iteration that was produced in discovery.

The Court should strike the offending paragraphs, if not the CFPB's response in its entirety.  *See DeGroat*, 87 F. Supp. 3d at 716 (striking plaintiffs' entire response that did "not comply with Local Rule 56.1" because it was "over twice as long" as defendants' statement and "consistently add[ed] facts" that were irrelevant); *Weitzner v. Sanofi Pasteur, Inc.*, No. 3:11-CV-02198, 2017 WL 3894888, at *12 & n.6 (M.D. Pa. Sept. 6, 2017) (striking all but six paragraphs of plaintiffs' response that was "over twice as long" as defendants' statement and regularly "attempt[ed] to explain or contextualize a fact presented by the [d]efendants"), *aff'd*, 909 F.3d 604 (3d Cir. 2018).  In the alternative, because the CFPB's response merely "aim[s] to create the appearance of factual disputes," the statements it improperly denies should be deemed admitted.  *See Rau v. Allstate Fire & Cas. Ins. Co.*, 793 F. App'x 84, 87 (3d Cir. 2019) (affirming *Rau v. Allstate*

*Fire & Cas. Ins. Co.*, No. 3:16-CV-0359, 2018 WL 6422121 (M.D. Pa. Dec. 6, 2018) (Mariani, J.); *see also* Doc. 463 ¶ 5.

## QUESTION PRESENTED

Whether the CFPB's response to Defendants' Statement of Undisputed Material Facts In Support of Defendants' Motion For Summary Judgment ("PRSUF") should be struck.

## ARGUMENT

The CFPB's response attempts to obscure the reality that it lacks admissible evidence to prove essential elements of its case.  On summary judgment, the CFPB must submit actual proof, not conclusory assertions and speculation.  Local Rule 56.1 exists precisely to prohibit what the CFPB has done here.  This Court issued an Order elaborating on that Rule and admonishing that "each party is expected to act in good faith and admit any material fact which is undisputed and *only deny* any material fact which that party *in good faith believes is in dispute*."  Doc. 452 ¶ 4 (emphases added).  Denials of facts known to be true, without record cites or based on speculation, are not appropriate.

The CFPB's response flagrantly violates the Court's instructions. Defendants have set forth below specific deficiencies in the CFPB's response, identifying the paragraphs that are most improper and explaining the reasons why. Defendants have also attempted to group together similar categories of

deficiencies, though many offending paragraphs fall into multiple categories.

Given the extent of the CFPB's non-compliance, it is not possible to catalogue

every deficiency in the response.[1]

## I.     THE PARTY OPPOSING SUMMARY JUDGMENT MUST SUBMIT A "*SHORT AND CONCISE* STATEMENT OF THE MATERIAL FACTS"[2]

The Court ordered the parties to confer regarding the "maximum number of

factual assertions" to be set forth in their respective statements of material facts.

Doc. 452 ¶ 5.  Defendants suggested "a limit of no more than 400 factual assertions

per side."  Doc. 463 at 2.  Although the CFPB had initially proposed a limit of

1,250 factual assertions, it then offered either a "compromise figure" of 1,000

factual statements, or in the alternative, a combined word limit of 50,000 words for

each side's brief and statement of material facts.  Doc. 461 at 2.  The Court ordered

the parties to limit their respective statements of facts to "400 numbered statements

of fact."  Doc. 463 ¶ 1.  In accordance with the Court's order, Defendants filed a

Statement of Undisputed Material Facts ("SUF"), consisting of 376 paragraphs set

forth in 97 pages and 18,733 words.  Doc. 471.

---

[1] Defendants have also provided a list of the specific paragraphs that most seriously violate the Local Rules and the Court's Orders in its accompanying Motion.

[2] M.D. Penn. L.R. 56.1 (emphasis added).

The CFPB took a distinctly more expansive approach in response.  *See* PRSUF.  Omitting Defendants' paragraphs, which the CFPB included, the CFPB's response totals 305 pages and 69,895 words. Ex. 1 ¶ 2.  The response is neither short nor concise—at *three times* the length of Defendants' Statement and almost 20,000 more words than the CFPB had proposed as a *combined* limit for its opening brief and statement of facts.

## II.     "[E]VERY DENIAL OR PARTIAL DENIAL . . . SHALL BE ACCOMPANIED BY A SPECIFIC REFERENCE TO THE PARTS OF THE RECORD THAT SUPPORT THE STATEMENTS"[3]

The CFPB repeatedly denies Defendants' statements of fact without citing any contrary evidence and in situations where the facts could not in good faith be disputed.  Compliance with Local Rule 56.1 requires a responding party to "provide a citation to the record that *supports* any such denial."  *United States v. Polshenski*, No. 3:16-CV-2515, 2018 WL 806469, at *1 n.1 (M.D. Pa. Feb. 9, 2018) (emphasis added); *see also Shuman v. Remtron, Inc.*, No. 4:09-CV-00003, 2012 WL 315445, at *2 n.6 (M.D. Pa. Feb. 1, 2012) ("[W]here a party purports to deny or to dispute a fact but does not include a citation to the record that supports such a denial or dispute, we deem the fact undisputed.").

---

[3] Doc. 463 ¶ 3 (alteration and internal quotation marks omitted) (quoting M.D. Penn. L.R. 56.1).

### A.   Unsupported Denials Based On Claims That Borrower Information Might Exist That Was Not Produced

The CFPB denies facts and attempts to excuse its lack of support by claiming that Defendants withheld borrower data that might have provided a basis for a denial.  As an initial matter, the claim that information was withheld by Defendants is absurd.  The discovery process was carefully administered by the Special Master, and discovery closed without objection from the CFPB.  The breadth and scope of information produced during nearly six years of investigation and discovery in this case, which includes *eleven terabytes* of uncompressed borrower data, may be unprecedented.  The CFPB's manufactured, post-hoc discovery complaints are well beyond the proper scope of a statement of facts.  But in any event, the CFPB's assertions are both unsupported and unsupportable.

- The CFPB asserts, without any citation to the record, that "Navient may have data capable of identifying . . . borrowers" who received IDR renewal communications at issue in Counts III and IV, but "such data was not produced."  PRSUF ¶ 1.  Not so.  Defendants produced data for all borrowers who enrolled in IDR from June 2009 to January 2017, including information about all correspondence sent to those borrowers during that time period.  Ex. 2 at *2.

- The CFPB claims that "because of deficiencies in Navient's recordkeeping, identification of the universe of borrowers affected by Navient's deception regarding [cosigner release] is impossible."  PRSUF ¶ 262.  But again, Defendants produced data for borrowers with cosigned private loans, including the correspondence histories for those borrowers and data related to cosigner release.  Ex. 2 at *3.

### B.   Unsupported Denials That Disclosures Were Sent

#### 1.   Borrower Contacts

The CFPB repeatedly denies that Navient's letters were sent to borrowers generally, *see* PRSUF ¶¶ 6–11, and that particular letters or emails were sent to the CFPB's identified borrower witnesses, *see id.* ¶¶ 15–16, 27, 34, 39, 42, 46, 48, 54, 60, 62, 65,  96, 98, 103–04, 107, 122–23, 124, 126, 144–46, 151, 153, 162–65, 169, 176–77, 185, 188, 200.[4]  The CFPB cites no evidence in support of these denials, nor could it.  Defendants produced the correspondence histories for all borrowers who enrolled in IDR or forbearance during the requested time period. Ex. 2 at *2.  And as the CFPB knows from its two-day site visit to observe Defendants' systems, Ex. 1 ¶ 3, the correspondence data automatically log each piece of correspondence sent to a borrower, including the code for the letter that was sent, *id.* ¶ 3 & Ex. A; Ex. 3 at 59:2–13, 60:23–25, and the template codes are reflected on the letters.[5]

---

[4] The CFPB similarly denies without support that Navient made phone calls to borrowers.  PRSUF ¶¶ 128, 149.

[5] To illustrate, the CFPB denies Defendants' paragraph 6, arguing that neither the letters sent to individual borrowers nor the template letters "establish" that the letters were sent.  But the CFPB cites no evidence to suggest that such letters were *not* sent.  And the evidence in the record is plainly to the contrary.  The template code (e.g. H311) appears on each exhibit cited in support of Defendants' paragraph 6.  SUF Ex. 6 at *1; SUF Ex. 7 at *25; SUF Ex. 8 at *14; SUF Ex. 9 at NAV-03305437; SUF Ex. 10 at NAV-04066646; SUF Ex. 11 at NAV-02431400; SUF Ex. 12 at NAV-03860737; SUF Ex. 13 at NAV-01575324.  In turn, the

The CFPB nevertheless disputes that letters were sent because at one point the system stored the information necessary to regenerate those communications rather than copies of the actual communications.[6]  But the very exhibit the CFPB cites states that a regeneration "looked like it would have looked when it was actually sent."  PRSUF Ex. 346 at A-10538:21–25.  In other words, the regenerated communication *is an exact duplicate of the original*.  And even though the CFPB's own exhibits establish that Navient started storing copies of sent communications in 2014, *see id.* at A-10538:13–25, the CFPB implausibly denies on that same ground that letters were sent in 2015, 2016, and 2017, PRSUF ¶¶ 65, 98, 126.[7]

> 2.    *Renewal Notices*

The CFPB makes similar denials regarding the IDR renewal notices at issue in Count IV, again claiming that the exhibits do not "show" that documents were sent to borrowers.  *See, e.g.*, PRSUF ¶ 217.  These denials are baseless for similar reasons and belied by the cited exhibits.  Specifically:

---

template code (e.g. H311) appears in the correspondence histories for the CFPB's borrower witnesses, *see e.g.*, SUF Ex. 53 at NAV-02967333, and in the data produced for the remaining borrowers, RSUF Ex. 18 at 10 n.30.  To the extent the CFPB is challenging the authenticity of these records, Defendants have attached a declaration from the employee responsible for collecting them.  *See* Ex. 4.

[6] *See* PRSUF ¶¶ 15–16, 27, 34, 39, 42, 46, 48, 54, 60, 65, 98, 107, 122–24, 126, 144–46, 151, 162–65, 169, 176–77, 185, 188, 200.

[7] The CFPB similarly denies the content of Navient's website by denying its authenticity.  PRSUF ¶ 12.  Defendants previously produced a declaration authenticating its website screenshots.  *See* Ex. 5.

- The CFPB denies that IDR renewal forms were enclosed with the IDR renewal letters. *See id.* ¶¶ 216, 217, 220–22, 225–26. In support, the CFPB cites only Defendants' exhibits, which easily contradict the CFPB's denials. For example, next to "Enclosures," the template for the H356 IDR renewal letter lists three enclosures, including the "Income-Based Repayment Plan Request Form." SUF Ex. 127. The body of the letter also lists three enclosures, including the "Income-Based Repayment Plan Request Form." *Id.* The as-sent version includes the cover letter and the form. SUF Ex. 128. And the correspondence histories show that the "Income-Driven Repayment Form" was sent with the H356 IDR renewal letter. SUF Ex. 62 at NAV-02966112. The CFPB cites nothing to the contrary.

- The CFPB denies that the cover letters sent to borrowers were dated because the templates do not contain a "date field." *See* PRSUF ¶¶ 218, 223. The CFPB cites no evidence to support its denial, and it elsewhere admits that the letters were in fact dated when sent. *See id.* ¶ 218.

- The CFPB denies that "every [version] Navient has ever sent" of its cover letters contained the language in the templates quoted by Defendants or that the cited letters were "sent at all time periods." *Id.* ¶¶ 218, 222, 223. But the evidence submitted shows that the letters at issue did contain the quoted language, SUF Exs. 127–29, 132, and the CFPB has cited no evidence to show that other versions did not.

- The CFPB denies that the language quoted in Defendants' paragraphs 219 and 224 was added to the letters no earlier than December 2011. PRSUF ¶¶ 219, 224. The CFPB cites no earlier version of the letter in support of its denial; nor could it because the earlier versions of the letter do not contain the quoted language. *See, e.g.*, Ex. 6; PRSUF Ex. 351.

- The CFPB also denies that the revised letters were sent to ED for review, PRSUF ¶ 229, while at the same time acknowledging that the cited exhibit "demonstrates that Navient sent a version of the H356 letter to ED."

### C.    Unsupported Denials Based On Assertions That There May Have Been Different Written Procedures Or That Procedures Were Not Provided To Call Center Representatives

The CFPB denies various statements about Navient's servicing procedures,

again speculating that documents might exist that contradict Defendants' exhibits,

but citing none.

- The CFPB denies that Navient's procedures cover "the full period," or were used "for any period" other than the publish date on the documents.  PRSUF ¶¶ 204–08, 211.  In an effort to avoid burdening the Court, Defendants did not submit every single version of procedures from multi-year time periods. Defendants did, however, submit versions from multiple years to show consistency over time, and despite having every iteration from the time period in its possession, the CFPB cites no inconsistent procedures.

- The CFPB also asserts that "Navient has cited no documentary or testimonial evidence establishing whether and how Navient representatives accessed or interacted with the cited documents." *Id.* ¶¶ 204–08, 211; *see also id.* ¶ 212.  As the CFPB is aware, call center procedures are accessible to representatives on Navient's internal KnowledgeShare system, RSUF Ex. 25 at 149:1–11, 149:19–152:25, and Defendants cited testimony regarding the use of call monitoring procedures, SUF Ex. 114 at 152:3–153:11, 159:12–23.  The CFPB cites nothing to support its denials that these procedures were used.

### D.    Unsupported Denials That Call Center Representatives Did Not Check Eligibility Or That Borrowers Were Ineligible For IDR

The CFPB denies, without support, that representatives checked the

eligibility of its borrower witnesses for IDR during phone calls because servicing

records contain ███████████████████████████████████████████

██████████████████████████████.  *See* PRSUF ¶¶ 26, 41, 43, 45, 85; *see also id.* ¶¶ 44, 53.  But the notes are hardly cryptic; they include statements such

as, "IBR elig checked." SUF Ex. 53 at NAV-02967333. And the record evidence

shows that when the servicing records state that the representative checked IDR

eligibility, the representative did so. *See e.g.*, PRSUF ¶ 53 (comparing SUF Ex. 55

at NAV-02359395 to call recording at NAV-02359054).[8] The CFPB cites no

evidence to the contrary.

The CFPB also denies that individual borrower witnesses were ineligible for

IDR, claiming that borrowers were eligible based on their income. PRSUF ¶¶ 31–

32, 36–37. But as the CFPB elsewhere admits, IDR eligibility also depends on

loan type, family size, and the program requirements during the relevant time

period. JSUF ¶¶ 16–18; *see also* 34 C.F.R. §§ 682.209, 682.215, 685.209,

685.221. Without this information, the CFPB's assertions that borrowers were

eligible for IDR are entirely unsupported.

### E.    Other Unsupported Denials

Throughout the CFPB's 300-plus page response are multiple other instances

where the CFPB denies facts without an evidentiary basis:

- The CFPB denies the content of electronic consent forms, claiming that the forms were in use only for private loans. PRSUF ¶ 231. The CFPB attempts to create confusion because the documents discuss loan

---

[8] In support of its denials, the CFPB cites ███████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████. *See, e.g.*, PRSUF ¶ 26 (citing servicing records for borrowers GH (PRSUF Ex. 402), CC (PRSUF Ex. 403), and MP (SUF Ex. 64) in response to a statement about borrower NN). These assertions are irrelevant since they do not speak to the fact at issue in Defendants' statement.

applications and cosigners, but as the CFPB is aware, FFELP loans were originated by private lenders, JSUF ¶ 2, and they could have cosigners, 34 C.F.R. § 682.200 ("individual who signs a promissory note and agrees to repay the loan in the event that the borrower does not").  Defendants submitted three versions of the forms to demonstrate consistency over time, SUF Ex. 136–38, and the CFPB offers no citation to any consent form with differing content.  The CFPB likewise denies the consent forms were used for ED communications, again citing no contrary evidence.  PRSUF ¶ 232–33.

- The CFPB denies, without any citation in support, that cosigner release will only be granted if the borrower can meet certain credit underwriting criteria. *Id.* ¶ 258.

- The CFPB denies that certain calls with borrowers took place on particular dates because the "audio file[s] do[] not contain any metadata establishing [their] date." *Id.* ¶¶ 355, 366.  Defendants' exhibits contain ▮▮▮▮▮. *See* SUF Ex. 211 at NAV-05860169; *id.* Ex. 214 at NAV-06590367.  The CFPB cites nothing to suggest that the dates are not reliable.

- The CFPB denies quoted deposition testimony where a borrower testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. PRSUF ¶ 354.  The CFPB then quotes additional testimony where the borrower ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*  The very testimony the CFPB quotes supports Defendants' statement.[9]

## F.    Denials Based On Inadmissible Evidence

A number of the CFPB's denials rely only on evidence that cannot be presented in admissible form and are therefore unsupported.  *See id.* ¶ 1 (declaration of undisclosed witness offering improper testimony); *id.* ¶¶ 260, 262–

---

[9] The CFPB similarly denies quoted borrower testimony in other responses. PRSUF ¶ 35, 49, 237, 293–94.

67 (inadmissible hearsay); *id.* ¶ 349 (subsequent remedial measures). These statements should be deemed admitted. *See* Fed. R. Civ. P. 56(c)(1)–(2); *Hairston v. Lappin*, No. 1:11-CV-1379, 2013 WL 5701637, at *4 n.4 (M.D. Pa. Oct. 18, 2013) (deeming fact undisputed where party's denial is not based on "any . . . form of admissible evidence"), *aff'd sub nom. Hairston v. Dir. Bureau of Prisons*, 563 F. App'x 893 (3d Cir. 2014).

Further, despite affirmatively representing to the Court and Navient that "the reports of Dr. Mullin and any opposing expert from Navient are not needed for resolution of summary judgment," Doc. 440 at 5, the CFPB now tries to slip Dr. Mullin's report into its exhibits in the guise of background, *see* PRSUF Ex. 391. Having made this representation, and having avoided Dr. Mullin being deposed, the CFPB cannot now submit the report as an exhibit. The report, PRSUF Ex. 391, and the CFPB's response relying on it, PRSUF ¶ 1, should be struck.

## III. "THE PARTY RESPONDING TO ANY STATEMENT OF MATERIAL FACT IS PROHIBITED FROM ADDING ADDITIONAL LANGUAGE . . . INTENDED TO ADD ASSERTIONS OF FACT . . . EXTRANEOUS TO THE PARTY'S ADMISSION OR DENIAL"[10]

Many of the CFPB's responses are styled as statements "denied in part," but are actually admissions coupled with extraneous and unsupported assertions of fact in violation of the Court's order. Doc. 463 ¶ 2. The statements should be deemed

---

[10] Doc. 463 ¶ 2.

admitted and the extraneous responses struck. *See Selective Ins. Co. of Am. v. Novitsky*, No. 3:17-CV-2376, 2019 WL 1009389, at *2–3 (M.D. Pa. Mar. 1, 2019) (Mariani, J.) (deeming certain factual statements admitted where denials failed to respond to the actual statements made); Doc. 463 ¶ 2.

- In response to a direct quote from a single entry in Navient's records for one borrower, the CFPB admits that ████████████████████ ████████████████████████████████████████████ ████████████████████. PRSUF ¶ 89. The CFPB then adds nearly two pages of extraneous and unsupported assertions. For example, the CFPB claims that, prior to that phone call, the borrower had been "steered into forbearance," and speculates that "after years of steering [the borrower], Navient had no option left but to counsel him about IBR." *Id.* The CFPB cites ████████████████████████ ████████████████████, but cites no evidence to support that he had been "steered." *Id.* The CFPB does not explain how it can tell that a phone call met its "steering" criteria from the face of Navient's servicing records. The CFPB makes similar unsupported assertions regarding phone calls throughout its responses.[11]

- In response to a direct quote from a single letter to one borrower, the CFPB admits that the letter includes the quoted language and then adds a nearly two-page denial of facts not even asserted in Defendants' statement. *Id.* ¶ 98. For example, the CFPB "denies the implication that [the borrower] requested forbearance of his own accord." *Id.* That argumentative and unsupported assertion is not responsive to the statement of fact, which simply quotes from a letter sent to the borrower.[12]

---

[11] *See* PRSUF ¶¶ 17–24, 37, 39, 44, 69, 71, 77, 79, 81–82, 86–89, 102, 114, 116, 121, 126, 133, 141, 146, 154–57, 160–61, 163–65, 169, 170–72, 174–75, 177, 185–87, 189–90, 192, 195–97, 199, 201.

[12] The CFPB makes similar argumentative and unresponsive assertions regarding other borrowers. PRSUF ¶¶ 29, 33, 50–51, 73, 75, 105–06, 109–10, 117–20, 127, 129, 132, 140, 148, 173, 180, 182–83, 202, 238, 243–44, 248–49, 282, 287–88, 296, 299, 301–03.

- In response to a direct quote from a single borrower complaint, the CFPB admits that the complaint contains the quoted language, and then proceeds for an additional page with unsupported and argumentative assertions that have nothing to do with that borrower's complaint.  *Id.* ¶ 267.

- In response to a direct quote from borrower testimony regarding the asserted harm she experienced, the CFPB admits that the borrower testified as stated, and then proceeds to identify supposed additional "harms," including an unsupported statement "that she paid additional interest" and speculation that she will pay "more interest over the life of her loans."  *Id.* ¶ 285.  In fact, the borrower states in the cited testimony that she would have been harmed "*if [she] had paid more interest*," and speculates that she "would imagine" that she would have paid more interest.  PRSUF Ex. 294 at A-8705:13–25 (emphasis added).[13]

## IV.   "THE PARTY RESPONDING TO ANY STATEMENT OF MATERIAL FACT IS PROHIBITED FROM ADDING ADDITIONAL LANGUAGE . . . INTENDED TO ADD . . . ARGUMENT EXTRANEOUS TO THE PARTY'S ADMISSION OR DENIAL"[14]

Argument and legal conclusions are inappropriate in response to a statement of facts.  *See Gentile v. DES, Properties, Inc.*, No. 3:08-CV-2330, 2012 WL 2792347, at *4 (M.D. Pa. July 9, 2012) (Mariani, J.) (assigning "any conclusions of law or inappropriate arguments no evidentiary value"); *Perez v. Great Wolf Lodge of the Poconos LLC*, 200 F. Supp. 3d 471, 474 n.1 (M.D. Pa. 2016) (Mariani, J.) (striking responses as "unresponsive or as improperly containing legal arguments or conclusions").  Courts in the Middle District of Pennsylvania

---

[13] In addition, in response to paragraphs stating that various documents were sent to borrowers, the CFPB unresponsively denies that the borrowers *received* the documents.  PRSUF ¶¶ 133–35.

[14] Doc. 463 ¶ 2.

routinely strike or disregard such responses. *See, e.g.*, *Weitzner*, 909 F.3d 604 at

613–14 (affirming district court's decision to strike portions of plaintiffs' response

to statement of facts that were "argumentative in violation of Local Rule 56.1");

*Markovich v. Panther Valley Sch. Dist.*, No. CIV.A. 3:13-3096, 2015 WL

4077758, at *2 n.2 (M.D. Pa. July 6, 2015) ("Plaintiff's counter statement of

material facts is not proper under L.R. 56.1, M.D.Pa., as they are legal conclusions

to which no response is required."); *Chinniah v. E. Pennsboro Twp.*, No. 1:CV-08-

1330, 2012 WL 2006749, at *5 (M.D. Pa. Feb. 29, 2012) (disregarding portions of

response to statement of fact that "consist of legal conclusions"), *adopted by* 2012

WL 2003493 (M.D. Pa. June 5, 2012); *Park v. Veasie*, No. 3:09-CV-2177, 2011

WL 1831708, at *2 (M.D. Pa. May 11, 2011) (excluding portions of a response

that were "unnecessarily argumentative and improperly included in a short and

concise statement of material facts").  Significant portions of the CFPB's responses

constitute improper argument and legal conclusions and should be struck.  Six

categories of statements are set forth below.

 *First*, the CFPB repeatedly argues that information that Navient provided to

borrowers was insufficient for them to "make an informed choice," or that

borrowers did not "make an informed choice."  *See* PRSUF ¶¶ 28, 44, 48, 52, 79,

87, 107, 108.[15]  Similarly, the CFPB argues that █████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████  *Id.* ¶ 209.  The CFPB does not dispute Defendants' direct

quotations from the record, but instead improperly argues about the conclusion to

be drawn from those facts.

*Second*, the CFPB denies that letters were "effectively sent" when the letters

were posted to a borrower's online account, rather than sent by postal mail.  *Id.*

¶¶ 216–17, 222.  The CFPB does not dispute that the cited exhibits cited are copies

of the letters sent by postal mail to borrowers and posted to borrowers' accounts.

*Id.*  Whether the letter was sent "effectively" is improper argument, not a basis to

deny a fact.[16]

*Third*, the CFPB denies a direct quotation from an ED contract modification

based on a legal argument that the instruction in the contract modification was not

a "*new* requirement."  *Id.* ¶ 227 (emphasis in original).  Whether a contract

modification represented a new legal requirement plainly constitutes impermissible

---

[15] The CFPB makes other similar argumentative denials elsewhere.  *See* PRSUF ¶¶ 59, 61, 70, 76, 83, 166.

[16] The CFPB similarly denies whether Navient procedures were "effective." PRSUF ¶ 210.

legal argument.  The CFPB further relies on this legal argument to deny that Navient made changes following the contract modification and that ED paid for them, but cites no factual evidence to support these denials.  *Id.* at ¶¶ 228, 230.

*Fourth*, the CFPB argues that the form attached to Navient's IDR renewal letter "states nothing about the consequences of inadvertently submitting an incomplete or incorrect application for recertification."  *Id.* ¶ 221.  Defendants' statement of fact quotes directly from the form.  Whether the quoted statements sufficiently convey "the consequences" of not submitting the required paperwork is the subject of legal argument, not an appropriate basis for responding to a statement of fact.

*Fifth*, the CFPB denies various facts regarding borrower complaints, which Defendants' statements quote directly, and makes arguments about the conclusions to be drawn from the complaints, including conclusions that are unquestionably legal:

- The CFPB asserts that a borrower "complaint involved Navient's *false or misleading representations*" and was evidence that the borrower "was *deceived.*"  *Id.* ¶ 265 (emphases added).[17]

- The CFPB asserts that "Navient's recounting . . . strongly suggests that Navient *misinformed* the borrower," and claims its view is the "*most reasonable interpretation*" of the exhibit.  *Id.* ¶ 266 (emphases added).

---

[17] The CFPB also improperly argues that various statements by Pioneer were "false" or "misleading."  PRSUF ¶¶ 349–50, 356.

- The CFPB denies that a borrower, who testified that "no late fees were assessed" on his account, suffered "no financial consequences" because the time he spent "*can be assigned a monetary value*." *Id.* ¶ 305 (emphasis added).

*Sixth*, the CFPB claims that use of a certain credit reporting field "*creates a false impression*." *Id.* ¶ 314 (emphasis added). That is plainly legal argument.[18] In addition, the CFPB responds with arguments regarding Navient's "past reporting practices," *id.*, that are not responsive to Defendants' statement of fact setting forth the meaning of a particular credit reporting code based on credit reporting guidance. SUF ¶ 314. The CFPB's argumentative responses are improper.

## **CONCLUSION**

The CFPB's response to Defendant's Statement of Undisputed Facts should be struck in whole or in part. The statements corresponding to the struck responses should be deemed admitted.

---

[18] The CFPB makes similarly improper arguments in response to other citations to credit reporting guidance. PRSUF ¶¶ 313, 315, 318.

Dated:  August 18, 2020          Respectfully submitted,

/s/ Jonathan E. Paikin
Jonathan E. Paikin (DC 466445) (*pro hac vice*)
Daniel P. Kearney (DC 977148) (*pro hac vice*)
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
jonathan.paikin@wilmerhale.com
daniel.kearney@wilmerhale.com
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

Daniel T. Brier (PA 52348)
Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
dbrier@mbklaw.com
Tel: 570-342-6100
Fax: 570-342-6147

*Counsel for Navient Corporation, Navient Solutions, LLC, and Pioneer Credit Recovery, Inc.*

# CERTIFICATE OF WORD COUNT

I hereby certify in accordance with Local Rule 7.8(b)(2) that the foregoing document is 4,940 words.

/s/ Karin Dryhurst
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

Dated:  August 18, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2020, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

/s/ Karin Dryhurst
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363