## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Consumer Financial Protection Bureau, | ) ) ) | |
| *Plaintiff*, | ) ) | Civil Action No. 3:CV-17-00101 (Hon. Robert D. Mariani) |
| v. | ) ) | |
| Navient Corporation, *et al.,* | ) ) | |
| *Defendants*. | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF
## <u>MOTION FOR SUMMARY JUDGMENT</u>

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................1

ARGUMENT ..............................................................................................2

I.   The CFPB Failed To Establish Essential Elements For Its "Steering" Claims (Counts I And II) ...................................................2

  A.   The CFPB Cites No Evidence Of "Unreasonable Advantage" Or "Substantial Injury" .........................................4

    1.   The CFPB Cites No Evidence of Substantial Injury ........5

    2.   The CFPB Cites No Evidence That Navient Took "Unreasonable Advantage" Of Borrowers ......................7

  B.   The CFPB Also Fails To Meet Its Burden To Show That Any Asserted Harm Was "Not Reasonably Avoidable" ...........8

    1.   The CFPB's New Requirements Are Contrary To Law ...............................................................................9

    2.   The CFPB Has Not Met Its Burden To Present Evidence That Any Injury Was Not Reasonably Avoidable.........................................................................12

    3.   The CFPB's Reliance On Deception Law Is Misplaced.......................................................................16

II.  Summary Judgment Should Be Granted For Navient On The CFPB's Remaining Unfairness Claims ...............................................17

  A.   There Is No Evidence Of Substantial Injury That Was Not Reasonably Avoidable From Navient's IDR Recertification Email (Count III)...............................................17

  B.   There Is No Evidence Of An Act Or Practice That Caused Substantial Injury With Respect to Navient's Payment Processing (Count VI)................................................20

III.    Summary Judgment Should Be Granted For Defendants On The
        CFPB's Deception Claims ................................................................23

        A.    There Is No Evidence That Navient's IDR Recertification
              Notice Was Misleading Or Material (Count IV) .....................24

        B.    There Is No Evidence That Navient's Statements
              Regarding Cosigner Release Were Misleading Or
              Material (Count V) ..................................................................28

        C.    There Is No Evidence That Pioneer Made A Materially
              Misleading Statement Regarding The Benefits Of
              Rehabilitation During The Limitations Period (Counts
              VII-X) ......................................................................................31

IV.     Summary Judgment Should Be Granted On The CFPB's Fair
        Credit Reporting Act Claim Because Navient's Credit
        Reporting Was Accurate (Count XI) ...............................................34

V.      Summary Judgment Should Be Granted On Conduct Alleged
        To Have Occurred Prior To January 20, 2012 Because It Is
        Outside The Statute Of Limitations Period ......................................37

CONCLUSION ........................................................................................41

# TABLE OF AUTHORITIES

Page(s)

*Adams v. National Engineering Service Corp.*,
620 F. Supp. 2d 319 (D. Conn. 2009) ...........................................................34

*American Brands, Inc. v. R. J. Reynolds Tobacco Co.*,
413 F. Supp. 1352 (S.D.N.Y. 1976) ...............................................................24

*Barrer v. Chase Bank, USA, N.A.*,
566 F.3d 883 (9th Cir. 2009) ..........................................................................26

*Bowen v. Georgetown University Hospital*,
488 U.S. 204 (1988).........................................................................................24

*Cahlin v. General Motors Acceptance Corp.*,
936 F.2d 1151 (11th Cir. 1991) ......................................................................36

*CFPB v. Gordon*,
819 F.3d 1179 (9th Cir. 2016) ..................................................................30, 33

*CFPB v. ITT Educational Services*, *Inc.*,
219 F. Supp. 3d 878 (S.D. Ind. 2015)...................................................8, 21, 22

*CFPB v. NDG Financial Corp.*,
2016 WL 7188792 (S.D.N.Y. Dec. 2, 2016)..................................................28

*Cohen v. American Security Insurance Co.*,
735 F.3d 601 (7th Cir. 2013) ...................................................................16–17

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) ........................................................13–14, 16

*Dickerson v. U.S. Steel Corp.*,
1977 WL 833 (E.D. Pa. Feb. 28, 1977)..........................................................32

*Ewell v. NBA Properties, Inc.*,
94 F. Supp. 3d 612 (D.N.J. 2015)............................................................12–13

*FTC v. Adept Management Inc.*,
2018 WL 4623152 (D. Or. Sept. 25, 2018)....................................................26

*FTC v. Alcoholism Cure Corp.*,
2011 WL 13137951 (M.D. Fla. Sept. 16, 2011) ...........................................20

*FTC v. Amazon.com, Inc.*,
2016 WL 10654030 (W.D. Wash. July 22, 2016)............................22, 23, 26

*FTC v. AMG Capital Management, LLC*,
910 F.3d 417 (9th Cir. 2018), *cert. granted*, 2020 WL 3865250
(U.S. July 9, 2020) ...........................................................................................29

*FTC v. Brown & Williamson Tobacco Corp.*,
778 F.2d 35 (D.C. Cir. 1985)............................................................24, 28, 29

*FTC v. Capital Choice Consumer Credit, Inc.*,
2004 WL 5149998 (S.D. Fla. Feb. 20, 2004), *aff'd*, 157 F. App'x
248 (11th Cir. 2005) .........................................................................................28

*FTC v. Cleverlink Trading Ltd.*,
519 F. Supp. 2d 784 (N.D. Ill. 2007)..............................................................19

*FTC v. Davison Associates, Inc.*,
431 F. Supp. 2d 548 (W.D. Pa. 2006) .............................................................25

*FTC v. Direct Benefits Group, LLC*,
2013 WL 3771322 (M.D. Fla. July 18, 2013) .........................................19–20

*FTC v. Direct Marketing Concepts, Inc.*,
2004 WL 1399185 (D. Mass. June 23, 2004).................................................29

*FTC v. Freecom Communications, Inc.*,
401 F.3d 1192 (10th Cir. 2005) .........................................................................5

*FTC v. Loma International Business Group*,
2013 WL 2455986 (D. Md. June 5, 2013) ......................................................28

*FTC v. Neovi, Inc.*,
604 F.3d 1150 (9th Cir. 2010) .........................................................................23

*FTC v. Neovi, Inc.*,
598 F. Supp. 2d 1104 (S.D. Cal. Sept. 16, 2008) ...........................................22

*FTC v. Roca Labs, Inc.*,
345 F. Supp. 3d 1375 (M.D. Fla. 2018) ..........................................................19

*FTC v. Washington Data Resources*,
    856 F. Supp. 2d 1247 (M.D. Fla. 2012), *aff'd*, 704 F.3d 1323
    (11th Cir. 2013) ........................................................................................25

*FTC v. Wilcox*,
    926 F. Supp. 1091 (S.D. Fla. 1995)..........................................................25

*FTC v. Windward Marketing, Inc.*,
    1997 WL 33642380 (N.D. Ga. Sept. 30, 1997)........................................23

*FTC v. Wyndham Worldwide Corp.*,
    799 F.3d 236 (3d Cir. 2015) .................................................................5, 23

*Gabelli v. SEC*,
    568 U.S. 442 (2013)............................................................................38, 39

*Goldenstein v. Repossessors Inc.*,
    815 F.3d 142 (3d Cir. 2016) .......................................................................1

*In re Asbestos Products Liability Litigation (No. VI)*,
    837 F.3d 231 (3d Cir. 2016) .....................................................................14

*In re Facebook PPC Advertising Litigation*,
    709 F. Supp. 2d 762 (N.D. Cal. 2010)......................................................20

*Kraft, Inc. v. FTC*,
    970 F.2d 311 (7th Cir. 1992) ....................................................................28

*LabMD, Inc. v. FTC*,
    678 F. App'x 816 (11th Cir. 2016)......................................................22, 23

*Lockette v. Morgan Stanley*,
    2018 WL 4778920 (S.D.N.Y. Oct. 3, 2018)..............................................19

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010)..................................................................................38

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck
    Consumer Pharmaceuticals Co.*,
    290 F.3d 578 (3d Cir. 2002) .....................................................................33

*Novartis Corp. v. FTC*,
    223 F.3d 783 (D.C. Cir. 2000)..................................................................30

*Orkin Exterminating Co. v. FTC*,
    849 F.2d 1354 (11th Cir. 1988) ................................................................16, 23

*Pennsylvania v. Navient Corp.*,
    — F.3d —, 2020 WL 4280677 (3d Cir. July 27, 2020) ................................11

*Pension Trust Fund for Operating Engineers v. Mortgage Asset*
    *Securitization Transactions, Inc.*,
    730 F.3d 263 (3d Cir. 2013) ...................................................................37–38

*PHH Corp. v. CFPB*,
    839 F.3d 1 (D.C. Cir. 2016), *reh'g en banc granted, order*
    *vacated on other grounds* (Feb. 16, 2017) .............................................31, 38

*Plazza v. Airbnb, Inc.*,
    289 F. Supp. 3d 537 (S.D.N.Y. 2018) .........................................................19

*Removatron International Corp. v. FTC*,
    884 F.2d 1489 (1st Cir. 1989).......................................................................26

*Robbins v. Comcast Cable Communications, LLC*,
    2019 WL 4139297 (W.D. Wash. Aug. 30, 2019)..........................................19

*Rotella v. Wood*,
    528 U.S. 549 (2000).......................................................................................38

*Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*,
    902 F.2d 222 (3d Cir. 1990) ...................................................................26, 28

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 (2d Cir. 2012) ........................................................................19

*Schweitzer v. Equifax Info. Solutions, LLC*,
    441 F. App'x 896 (3d Cir. 2011)............................................................34, 35

*Seamans v. Temple University*,
    744 F.3d 853 (3d Cir. 2014) ........................................................................34

*SEC v. Brown*,
    878 F. Supp. 2d 109 (D.D.C. 2012)..............................................................39

*Siegel Co. v. FTC*,
    150 F.2d 751 (3d Cir. 1944) ..........................................................................5

*Stone v. Troy Construction, LLC*,
  935 F.3d 111 (3d Cir. 2019) .......................................................................37

*United States v. Commercial Recovery Systems, Inc.*,
  179 F. Supp. 3d 728 (E.D. Tex. 2016) .......................................................29

## STATUTES, RULES, AND REGULATIONS

12 U.S.C.
  § 5531 ...................................................................................1, 4, 8, 13, 17
  § 5564 ...........................................................................................................37

15 U.S.C. § 1692k ...............................................................................................31

Fed. R. Evid.
  801 ...............................................................................................................35
  803 ...............................................................................................................35
  804 ...............................................................................................................35
  807 ...............................................................................................................35

12 C.F.R.
  § 1005.31 ......................................................................................................16
  § 1026.1 ........................................................................................................16
  § 1030.1 ........................................................................................................16

34 C.F.R.
  § 682.209 .........................................................................................15, 16, 21
  § 682.211 .............................................................................................6, 12, 13
  § 682.215 ......................................................................................................15
  § 682.402 ......................................................................................................34
  § 685.205 ......................................................................................................12
  § 685.209 ......................................................................................................15
  § 685.210 ......................................................................................................16
  § 685.211 ......................................................................................................21
  § 685.221 ......................................................................................................15

77 Fed. Reg. 42,085 (July 17, 2012).................................................................24

77 Fed. Reg. 66,088 (Nov. 1, 2012)............................................................24, 27

## OTHER AUTHORITIES

CFPB Payback Playbook (2017),
> https://files.consumerfinance.gov/f/documents/201701_cfpb_pay
> back-playbook-disclosures-revised.pdf .........................................................6–7

FTC Policy Statement on Unfairness (Dec. 17, 1980),
> https://www.ftc.gov/public-statements/1980/12/ftc-policy-
> statement-unfairness ...................................................................................22

Merriam-Webster, Consecutive, https://www.merriam-
> webster.com/dictionary/consecutive...........................................................29

Merriam-Webster, On Time, https://www.merriam-
> webster.com/dictionary/time .......................................................................29

Merriam-Webster, Payment, https://www.merriam-
> webster.com/dictionary/payment.................................................................29

## PRELIMINARY STATEMENT

The CFPB's lawsuit suffers from a basic failure of proof.  Defendants are entitled to summary judgment on a claim if admissible evidence demonstrating a triable issue is lacking for *any* one of the elements the CFPB must prove.  *See Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016).  The CFPB fails to satisfy *its* burden to come forward with evidence on the deficiencies raised by Defendants' motion, instead claiming Defendants somehow made concessions by not moving on *other* legal elements or because Defendants "provide no defense."  CFPB Opp. at 18.

Reading the CFPB's "steering" discussion, it is easy to forget that, to prove Counts I and II, the CFPB must show (among other things) that enrolling in forbearance instead of income-driven repayment ("IDR") "caused substantial injury" that was not "reasonably avoidable," and that Navient took "unreasonable advantage of" "reasonable reliance by the consumer."  12 U.S.C. § 5531(c)(1), (d)(2).  The CFPB makes no attempt to tie these elements to its purported proof.  The same is true on its other claims.  It asserts, for instance, that unfairness claims (Counts III, VI) do not require "actual injury" and that deception claims (Counts IV–V, VII–X) do not require "actual deception."  But the CFPB must have *evidence*—not just speculation—that practices were in fact "likely" to result in harm or statements were "likely" to mislead.  It has none.  And on its final claim

(Count XI), it offers no evidence that Navient's credit reporting was inaccurate or misleading.

When the elements at issue on this motion are examined, the CFPB's lack of proof is laid bare. If there were any truth to its claims of widespread misconduct, the CFPB's years of investigation and expansive discovery should have turned up a parade of borrowers to testify. Instead, the CFPB bristles at the suggestion that it is required to prove its case through the borrower testimony it once promised. The CFPB laments that "it is impossible to identify the particular borrowers" who were supposedly harmed, *id.* at 4, ignoring Defendants' massive productions of information (including *eleven terabytes* of data for more than *six million borrowers*). Nor has the CFPB pointed to any other admissible evidence to replace it. Summary judgment is the time to come forward with evidence, not excuses, and the CFPB has no admissible evidence for essential elements of its claims. Summary judgment should be granted.

## <u>ARGUMENT</u>

### I. THE CFPB FAILED TO ESTABLISH ESSENTIAL ELEMENTS FOR ITS "STEERING" CLAIMS (COUNTS I AND II)

The CFPB goes to great lengths to explain what its "steering" claims are not. It turns out that "steering" does not involve coercion, CFPB Opp. at 16–17, deception, *id.* at 22–29, or any affirmative statement made to a borrower, *id.* at 15–16. None of these arguments (which are really concessions) alleviate the CFPB's

burden to present admissible evidence to prove the elements of "unfairness" and "abusiveness."

The current version of the CFPB's ever-changing epithet—"steering"— amounts to a prescriptive requirement for Navient to provide "individually-tailored advice," *id.* at 20, each time a borrower requests forbearance, including "calculat[ing] the borrower's estimated payment under IDR and communicat[ing] that amount" and describing three supposed "benefits" of IDR (but none of its potential drawbacks), *id.* at 15.  Setting aside that Navient's website includes an easily accessible tool for borrowers to calculate their potential IDR payments, Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment ("SUF") ¶¶ 12, 37, and that Navient representatives *did* calculate borrowers' payments and describe potential benefits where appropriate, *e.g. id.* ¶¶ 23, 50, 133, 187, the CFPB's requirement cannot be derived from the elements of "unfairness" and "abusiveness."  The CFPB itself seems to know this: Just last month, the agency promulgated a final rule expressly rejecting the view that "unfairness" and "abusiveness" require "individually-tailored advice." *Compare* CFPB Opp. at 20 *with* CFPB, Final Rule on Payday, Vehicle Title, and

Certain High-Cost Installment Loans ("Revocation Final Rule") at 46–48 (July 7, 2020).[1]

The CFPB has neither the law nor the evidence to support its latest "steering" incarnation.  *First*, the CFPB lacks any evidence that Navient caused a borrower "substantial injury" (to prove unfairness) or took "unreasonable advantage" of a borrower (to prove abusiveness).  The CFPB's failure of proof on these elements requires summary judgment in Navient's favor.  *Second*, the CFPB's bare assertion that any (unproven) injury from a call between Navient and a borrower was not "reasonably avoidable" relies on an erroneous legal standard it has rejected and disregards the undisputed fact that Navient *did* inform all borrowers about IDR.

## A. The CFPB Cites No Evidence Of "Unreasonable Advantage" Or "Substantial Injury"

Defendants moved for summary judgment on the CFPB's "steering" claims on the grounds that the CFPB could not establish that a borrower suffered "substantial injury" from forbearance, as required for an unfairness claim, 12 U.S.C. § 5531(c)(1), or that Navient took "unreasonable advantage" of borrowers by permitting them to enroll in that option, as required for an abusiveness claim, 12 U.S.C. § 5531(d)(2)(C).  The CFPB's Opposition does not

---

[1] https://files.consumerfinance.gov/f/documents/cfpb_payday_final-rule-2020-revocation.pdf.

even attempt to point the Court to *evidence* of "substantial injury" or "unreasonable advantage."  CFPB Opp. at 5–31.

### 1. *The CFPB Cites No Evidence of Substantial Injury*

The CFPB attempts to excuse its lack of evidence of "substantial injury" by arguing that evidence of "actual injury" is not required.  CFPB Opp. at 4 n.2, 12–13.  But its claim that Navient's past conduct was *likely* to cause injury entails that some consumers have been *actually injured*, especially when the CFPB has asserted that the practice allegedly affected hundreds of thousands, if not millions, of consumers.  The CFPB cites no unfairness case where a plaintiff survived summary judgment without any evidence of injury.[2]

Rather than demonstrate injury, the CFPB starts from the premise that forbearance (*i.e.*, not being required to make loan payments) is a *per se* harm, such that the Court can presume—without evidence—that borrowers who enrolled in that option suffered "substantial injury."  That position is contrary to law and the CFPB's own admissions.

---

[2] Both *Siegel Co. v. FTC*, 150 F.2d 751 (3d Cir. 1944), and *FTC v. Freecom Communications, Inc.*, 401 F.3d 1192 (10th Cir. 2005), dealt with deception claims.  In *FTC v. Wyndham Worldwide Corp.*, the Third Circuit recognized that the prohibition against practices "likely" to cause substantial injury merely "contemplates the possibility that conduct can be unfair *before* actual injury occurs."  799 F.3d 236, 246 (3d Cir. 2015) (emphasis added) (affirming denial of motion to dismiss where FTC had alleged 619,000 consumers experienced at least $10.6 million in losses).  Because the CFPB's claims concern "actual and completed harms," it cannot prove its case without evidence of injury.  *See id.*

*First*, federal law provides that forbearance is a borrower *benefit* made available by Congress and encouraged by ED for borrowers who are "currently unable to make scheduled payments."  34 C.F.R. § 682.211(a)(2)(i); *see id.* § 682.211(a)(1) ("[ED] encourages a lender to grant forbearance for the benefit of a borrower . . . .").  A borrower who is "unable to make scheduled payments" suffers *no harm whatsoever* from a forbearance; rather, the borrower benefits because missed payments are not treated as delinquency and do not cause the loan to advance toward default.  The mere fact that additional options may also be beneficial to the borrower does not transform a benefit like forbearance into a "substantial injury."  The CFPB cites no case to the contrary.

*Second*, the CFPB concedes that whether forbearance is the "right option" depends on "the specific borrower's circumstances."  CFPB Opp. at 20; *see also id.* at 26 ("which option is best" is "specific to the individual"); *id.* at 21 ("particular borrowers" would find IDR to be "the better option").  This individualized inquiry depends on both the borrower's *present* situation (whether she qualifies for IDR, can afford the IDR payment, or is eligible for other options), and on whether *future* circumstances will result in her "paying more over the life of the loan" under IDR—a downside that the CFPB has publicly acknowledged but

conveniently ignores here, *see* CFPB Payback Playbook (2017).[3]  To show that forbearance was not the "right option," the CFPB must demonstrate, based on individual borrower circumstances, that a borrower was worse off in forbearance relative to other options, including IDR.

Although the CFPB admits that the comparative benefits of forbearance and IDR are "specific to the individual," CFPB Opp. at 26, it insists that its claims "do not require proof of violations on an individualized consumer basis," *id.* at 14. Instead, the CFPB maintains that Navient violated the law with respect to *all borrowers* whose calls match the CFPB's "steering" criteria, regardless of whether IDR represented a viable or beneficial option.  *Id.* at 9.  *See also* Doc. 509 at 39–42.  Indeed, the CFPB claims that borrowers who do not even qualify for IDR can nonetheless be "steered," despite "not suffer[ing] monetary harm," CFPB Opp. at 9, confirming that the so-called practice of "steering" is entirely divorced from any showing of injury.

### 2.   *The CFPB Cites No Evidence That Navient Took "Unreasonable Advantage" Of Borrowers*

In its motion, Defendants challenged the CFPB to produce evidence supporting the "unreasonable advantage" element of "abusiveness."  Doc. 470 at 37.  In response, the CFPB waives the issue by completely ignoring it.  The

---

[3] https://files.consumerfinance.gov/f/documents/201701_cfpb_payback-playbookdisclosures-revised.pdf.

CFPB's Opposition cites no evidence that Navient gained *any* advantage from granting requests for forbearance—much less an "unreasonable" one as required. 12 U.S.C. § 5531(d)(2)(C).  "The ordinary meaning of 'to take advantage of' is 'to make use of for one's own benefit,' to 'use to advantage,' or to 'profit by.'" *CFPB v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d, 878, 918 (S.D. Ind. 2015).  The CFPB's Opposition points to no profit or benefit obtained by Navient, and the evidence directly contradicts any such assertion, *see* Defendants' Response to Plaintiff's Statement of Undisputed Material Facts ("RSUF") Ex. 18 ¶ 31 (███████████

██████████████████████████████████████████); *see also* RSUF ¶ 31 (ED paid more for borrowers in IDR than for borrowers in forbearance).  Because the CFPB has not shown any "unreasonable advantage," its abusiveness claim fails.

### B. The CFPB Also Fails To Meet Its Burden To Show That Any Asserted Harm Was "Not Reasonably Avoidable"

The CFPB's unfairness claim fails for another independent reason: it has failed to show any harm was "not reasonably avoidable."  The CFPB argues that the information Navient repeatedly provided to borrowers about IDR "provide[s] no defense," CFPB Opp. at 7, 18, and does not "remedy" the calls the CFPB classifies as "steering," *id.* at 22.  But it is *the CFPB's burden* to show that any potential harm "is not reasonably avoidable by consumers."  12 U.S.C. § 5531(c)(1).  Rather than satisfy its burden, the CFPB invents a new requirement

that all borrowers seeking forbearance benefits first receive "individually-tailored advice" about IDR, Opp. at 20, and claims that *only* through a call meeting its newly-announced criteria could borrowers "reasonably avoid" any harm from forbearance, *id.* at 18–20.  This argument fails for three reasons.

### 1.    *The CFPB's New Requirements Are Contrary To Law*

Throughout this litigation, the CFPB has adapted the definition of its "steering" pejorative to suit its needs.  For example:

- The Court denied Defendants' motion to dismiss based on allegations that Navient "pushed" borrowers into forbearance.  Doc. 57 at 45.

- In opposing Defendants' earlier partial summary judgment motion, the CFPB claimed that Navient "promot[ed] forbearance," and would mention only "forbearance and deferments" to borrowers "who [could not] make any payment."  Doc. 213 at 5–6.

In its latest rendering, "steering" can occur even if Navient informs a borrower about IDR, *see, e.g.*, Plaintiff's Response to Defendants' Statement of Undisputed Material Facts In Support of Defendants' Motion For Summary Judgment ("PRSUF") ¶ 180, even if Navient determined that the borrower did not qualify for IDR, RSUF ¶ 147; RSUF Ex. 93, and ████████████████████ ████████████████████, PRSUF ¶ 20, or respond to Navient's offers to qualify them for IDR with abuse and profanity, *id.* ¶ 199.  The CFPB has again redefined "steering," this time to impose a retroactive rule *prohibiting* Navient from granting forbearance (an ED-mandated benefit) on a call without first

"understand[ing] [the borrower's] set of circumstances," "calculat[ing] the borrower's estimated [IDR] payment," and "describ[ing] the benefits of IDR," CFPB Opp. at 15.

This version of "steering"—under which a borrower can never avoid harm unless she receives "individually-tailored advice" nudging her toward IDR—has no basis in unfairness law.  The CFPB cites no unfairness precedent that looks remotely like the claim it asserts here.  Indeed, the CFPB has itself expressly rejected the view that a provider must individually assess a borrower's financial circumstances to render any potential injury "reasonably avoidable"—a proposition the CFPB described as "problematic" and contrary to decades of unfairness law.  Revocation Final Rule at 51; *see also id.* at 34–36, 46–48.

The CFPB attempts to distinguish its "steering" criteria on the ground that, unlike its recent rule, requiring "individually-tailored advice" here would not technically "prohibit" borrowers from obtaining forbearance.  *See* CFPB Opp. at 16, 20.  The rule makes no such distinction.  It states categorically that the law "*does not require* that consumers understand their individualized risk for injury to be reasonably avoidable."  Revocation Final Rule at 47 (emphasis added).  The relevant inquiry is whether a consumer has "sufficient awareness of the risk of injury" and "reasonable steps they can take to avoid that injury."  *Id.*  Here, the CFPB does not dispute that Navient—on every single phone call—told borrowers

10

they "may be eligible for repayment options, which include . . . income driven repayment plans" before granting a request for forbearance.  *See* PRSUF ¶ 209. Nor can there be any dispute that repeated notices were sent to borrowers informing them about IDR or that information about IDR was widely available on Navient and ED websites, among other sources.  SUF ¶¶ 13, 94, 153, 186.

The CFPB's claim that its new "steering" rule can be found in "ED's expectations of Navient's job responsibilities," CFPB Opp. at 19, is likewise meritless.  As the Third Circuit explained last month, "federal law details what, when, and how loan servicers must communicate with borrowers regarding the availability of IDR," *Pennsylvania v. Navient Corp.*, — F.3d —, 2020 WL 4280677, at *2 (3d Cir. July 27, 2020), and ED "regulations do not require federal loan servicers to disclose the availability of IDR on each phone call," *id.* at *3, much less provide individualized advice.  ED has likewise confirmed that it is not a contractual requirement to even mention IDR before granting forbearance on a phone call.  *See, e.g.*, RSUF Ex. 31 at ED000561.

Far from reflecting ED's expectations, the CFPB's requirements *conflict* with them.  Although the CFPB claims that its "steering" criteria would not "prohibit" a borrower from choosing forbearance, that assurance is belied by the calls it offers as purported evidence of "steering."  CFPB Opp. at 16.  For example, the CFPB classifies as "steering" numerous calls on which borrowers requested

forbearance and then *refused* to discuss other options, including IDR.  *See, e.g.*,

RSUF ¶ 146, Exs. 87–89.  The only way to render such a call lawful, according to

the CFPB, would be for Navient to decline to grant forbearance at all—which

would directly contravene ED rules entitling a borrower to obtain forbearance if a

servicer "reasonably believes . . . that the borrower . . . intends to repay the loan

but . . . is currently unable to make scheduled payments."  34 C.F.R.

§§ 682.211(a)(2)(i), 685.205(a)(1).

> 2.   *The CFPB Has Not Met Its Burden To Present Evidence That Any Injury Was Not Reasonably Avoidable*

The CFPB concedes elsewhere in its Opposition that "evidence of

borrowers' experiences should control" whether "injury was reasonably

avoidable."  CFPB Opp. at 41.  Nevertheless, and despite assuring the Court that it

would present representative borrower testimony, Doc. 87 at 6:18–19, the CFPB

now disclaims reliance on individual borrowers, CFPB Opp. at 12.

The CFPB instead points to a purportedly "random sample" of calls to claim

without support that "steering" was "systemic," "widespread," and "pervasive."

CFPB Opp. at 5.  After filing its Opposition, the CFPB withdrew its assertion that

████████████████████████████████ Doc. 520 at 3 n.2, which means that no

extrapolation is possible from the 450 isolated calls (out of 24 million) that it

classified as "steering."  *See Ewell v. NBA Props., Inc.*, 94 F. Supp. 3d 612, 627–

28 (D.N.J. 2015) ("If the sample was not random, we cannot draw valid statistical

conclusions."); Doc. 522 at 6 n.3.  Moreover, the CFPB's own "steering" calls directly contradict the assertion that borrowers could not avoid any injury.  CFPB Opp. at 20.  The CFPB admits that many of its borrower witnesses enrolled in IDR after calls that it deemed to be "steering."  *See, e.g.*, PRSUF ¶¶ 53–55, 66–67, 183–84.  ████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████  RSUF ¶ 151.  The CFPB has nothing to answer this evidence.

In any event, whether any harm was "not reasonably avoidable" cannot be shown through an isolated phone call.  12 U.S.C. § 5531(c)(1).  Each borrower who had a call the CFPB classified as "steering" received information about IDR prior to the call.  RSUF ¶ 145.  That evidence is further buttressed by the experiences of the borrower witnesses the CFPB now abandons.  Each was informed about IDR before enrolling in forbearance, including through numerous written notices, SUF ¶¶ 6–11, and on phone calls, *see* Doc. 470-1, Ex. C.  Consistent with ED rules, borrowers were also informed about "the terms of the forbearance" and "the impact of capitalization."  34 C.F.R. § 682.211; *see* Plaintiff's Statement of Undisputed Material Facts In Support of its Motion for Summary Judgment ("PSUF") Ex. 289 at A-8641.  Borrowers, armed with this information, had "reason to anticipate" the consequences of forbearance and the

"means to avoid it" by pursuing IDR or some other alternative. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168–69 (9th Cir. 2012).

In the face of this evidence, the CFPB falls back on speculation and conjecture, which are insufficient to defeat summary judgment. *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 837 F.3d 231, 235 (3d Cir. 2016).

*First*, the CFPB relies on two supposed *gaps* in the evidence to argue that borrowers were "steered."

1.  The CFPB points to notations in servicing records indicating that borrowers enrolled in forbearance during phone calls. *See, e.g.*, PRSUF ¶¶ 44, 161, 165, 185.  But the CFPB does not explain how these notations showing mere enrollment in forbearance can be evidence that IDR was *not* discussed on a call—much less that the call met the CFPB's multi-step "steering" criteria.  In fact, calls with the CFPB's (now abandoned) borrower witnesses provide ample examples where a discussion about IDR was not reflected in a notation on the borrower's account.  *Compare, e.g.*, SUF Ex. 16 at *32–34 (FB call transcript); SUF Ex. 60 at *3–4 (UE call transcript); SUF Ex. 99 at *39 (KR call transcript), *with* SUF Ex. 55 at NAV-02359392 (FB account history); SUF Ex. 59 at NAV-02356749–50 (UE account history); SUF Ex. 96 at NAV-01576469–70 (KR account history).

2.  The CFPB likewise speculates that certain borrowers determined to be ineligible *may have* been eligible for IDR based on their incomes.  *See, e.g.*,

PRSUF ¶¶ 32, 37.  But as the CFPB admits, IDR eligibility cannot be determined on income alone and depends on family size, loan type, and program requirements. Joint Statement of Undisputed Facts ("JSUF") ¶¶ 16–18.  *See also* 34 C.F.R. §§ 682.209, 682.215, 685.209, 685.221.  For example, one of the borrowers for whom the CFPB makes this unsupported claim primarily had private loans, SUF ¶ 35, which are not eligible for IDR and are not taken into account when calculating the IDR payment for federal loans, 34 C.F.R. §§ 682.215(a), 685.221(a).

*Second*, the CFPB offers conclusory assertions that Navient's disclosures "did not contain the information necessary to enable borrowers to reasonably avoid . . . injury," CFPB Opp. at 19; *see also id.* at 20–21 (theorizing that borrowers who receive IDR notices "could easily assume that forbearance is the best option for them"); *id.* at 20 n.7 (claiming that a borrower informed about IDR "*may* still choose forbearance unless she is aware of [IDR's] benefits" (emphasis added)).  The CFPB's speculation is not evidence.  Nor can the CFPB escape its burden by purporting to limit its claim to "borrowers for whom [Navient's disclosures] were insufficient," *id.* at 7, because the CFPB has not demonstrated that the notices were insufficient for any borrower to reasonably avoid harm.

### 3.     *The CFPB's Reliance On Deception Law Is Misplaced*

As the CFPB acknowledges, its "steering claims are not alleged" as "deceptive acts and practices."  CFPB Opp. at 22.  The CFPB nonetheless proceeds for seven pages to recount cases where "disclaimers" do not "cure" false or misleading statements.  *See id.* at 22–29.[4]  But the relevant question under applicable law is whether the CFPB has met its burden to show that borrowers could "not reasonably avoid" any injury.  Unfairness law looks to the information available to consumers to determine whether borrowers had "reason to anticipate" any harm and "the means to avoid" it.  *Davis*, 691 F.3d at 1168–69.  And contrary to the CFPB's assertions, the fact that Navient also informed borrowers about IDR after enrollment in forbearance shows that borrowers can "mitigate" any "damage afterward," *Orkin Exterminating Co. v. FTC*, 849 F.2d 1354, 1365 (11th Cir. 1988), because borrowers can change their repayment plan at any time, 34 C.F.R. §§ 682.209(a)(6)(xi), 685.210(b).  Finally, although the CFPB perhaps mistakenly includes *Cohen v. American Security Insurance Co.*, 735 F.3d 601 (7th Cir. 2013), in its detour into deception law, *Cohen* involved both deception and unfairness

---

[4] The CFPB's litigation position that borrowers had no "general obligation . . . to read documents sent to them," CFPB Opp. at 27, calls into question numerous federal disclosure regimes, including its own, *see, e.g.*, 12 C.F.R. §§ 1005.31(a)(2), 1026.1(b), 1030.1(b).  It also disregards the wealth of authority confirming that claims involving *omission* of information are defeated by evidence that such information was contained in disclosures or otherwise available.  *See* Doc. 470 at 26 & n.8 (collecting cases).

claims, and the court there determined that "disclosures, notices, and correspondence conclusively defeat[ed]" both, *id.* at 608.

## II.   SUMMARY JUDGMENT SHOULD BE GRANTED FOR NAVIENT ON THE CFPB'S REMAINING UNFAIRNESS CLAIMS

Summary judgment is also warranted on the CFPB's remaining unfairness claims (Counts III and VI) because it has no evidence of "substantial injury" that was not "reasonably avoidable" as a result of Navient's "act or practice." 12 U.S.C. § 5531(c)(1).

### A.   There Is No Evidence Of Substantial Injury That Was Not Reasonably Avoidable From Navient's IDR Recertification Email (Count III)

In Count III, the CFPB asserts that Navient's practice of sending an email with a link to an IDR recertification notice posted on borrowers' online accounts was unfair because the email did not include the content of the awaiting message. Compl. ¶¶ 149–50.  Despite years of discovery, the CFPB offers no admissible evidence of "substantial injury" that was not "reasonably avoidable," and instead seeks to apply a motion to dismiss standard on summary judgment, CFPB Opp. at 41 (citing Doc. 57 at 51).

*First*, the CFPB does not even attempt to argue that it has evidence of "substantial injury."  *See* CFPB Opp. at 31–42.  That waiver is dispositive and requires summary judgment for Navient.

*Second*, the CFPB fails to proffer evidence to show that any (theoretical) injury was "not reasonably avoidable."  The CFPB admits that borrowers consented to electronic correspondence, JSUF ¶ 34; *see also* Doc. 470 at 41 n.14, but denies that borrowers consented to that correspondence being posted to their accounts, CFPB Opp. at 38–41, citing no evidence in support, PRSUF ¶¶ 231–33. The CFPB speculates that because Navient went the extra step of telling borrowers to check their accounts when new information was posted, it was "reasonable" for borrowers to disregard the consent, "*not* . . . monitor their online accounts," and ignore the email because the subject line said only "New Document Ready To View!"  CFPB Opp. at 39.  Speculation is not evidence.

In any event, the CFPB admits that  *Id.* at 40 n.11. ,

Doc. 470 at 41, and

, Doc. 471 ¶ 239.[5]  The CFPB otherwise relies on internal emails and data related to                                              , prototypical

---

[5] The CFPB suggests that the link would not take borrowers to their media server and instead would take them only to Navient's website.  CFPB Opp. at 33.  That is incorrect, as the CFPB's evidence demonstrates.  *See* PSUF Ex. 139 (summarizing "Click to Media Server rate"); *see also* Doc. 471 ¶ 234; Doc. 510 ¶¶ 160, 178–81.

inadmissible "subsequent remedial measures," *see* Doc. 509 at 45–46.[6]  Although

such before-and-after results were sufficient to survive a motion to dismiss, CFPB

Opp. at 37–38, they are not admissible at summary judgment.  The CFPB's other

evidence—a handful of complaints about "spam" unrelated to the email at issue

and an example of a borrower receiving multiple emails—do not suffice.  Doc. 509

at 45; RSUF ¶ 164.

The CFPB again distracts from its failure of proof through a lengthy

discussion of inapposite case law.  CFPB Opp. at 35–37.  Unsurprisingly, none of

its cases conclude that a subject line or hyperlink are *per se* unfair or otherwise

relieve the CFPB of its burden to prove injury was not reasonably avoidable.[7]

---

[6] The CFPB disclaims reliance on its expert's survey, CFPB Opp. at 34 n.10, and asks the Court to ignore that Dr. Erdem found that ███████████████████ ███████████████████████████████████ *id.* at 34.

[7] Most involve whether an emailed hyperlink was sufficient to form a binding and enforceable contract.  *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 123 n.14 (2d Cir. 2012); *Robbins v. Comcast Cable Commc'ns, LLC*, 2019 WL 4139297 (W.D. Wash. Aug. 30, 2019); *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 551 n.20 (S.D.N.Y. 2018); *Lockette v. Morgan Stanley*, 2018 WL 4778920 (S.D.N.Y. Oct. 3, 2018).  One involves a violation of the FTC's unsolicited pornography and adult labeling rules.  *FTC v. Cleverlink Trading Ltd.*, 519 F. Supp. 2d 784, 793 (N.D. Ill. 2007).  Another determined that linked-to Terms and Conditions were insufficient to "dispel the net impression" created by a *deceptive* claim, *FTC v. Roca Labs, Inc.*, 345 F. Supp. 3d 1375, 1392 (M.D. Fla. 2018); the CFPB does not allege deception here.  The only unfairness cases cited deal with companies billing consumers without their consent, where *the defendants* pointed to an email to rebut the plaintiff's evidence; the emails were not the subject of the plaintiff's claims.  *FTC v. Direct Benefits Grp., LLC*, 2013 WL 3771322, at *8 (M.D. Fla. July 18,

**B.**     **There Is No Evidence Of An Act Or Practice That Caused Substantial Injury With Respect to Navient's Payment Processing (Count VI)**

The CFPB's Opposition fails to cure three deficiencies in its payment processing claim; each provides an independent ground for summary judgment.

No Identified Practice.  The CFPB asserts a generalized critique that Navient "creat[ed] unreasonable obstacles" to borrowers' ability to apply and allocate overpayments.  CFPB Opp. at 53.  What those "obstacles" are, the CFPB does not say.  Although the CFPB mentions the "potential solution" of "standing instructions," in the next breath, it says standing instructions were not "required," *id.* at 56–57 n.17, and therefore it could not be unlawful not to have them.[8]  The only other specific practice mentioned is combining a borrower's federal loans into billing groups, resulting in a single bill showing one consolidated monthly payment.  *Id.* at 56.  But as with standing instructions, any claim that the use of billing groups itself constituted an "unfair" practice is precluded by ED regulations, which require servicers to use billing groups unless borrowers instruct

---

2013); *FTC v. Alcoholism Cure Corp.*, 2011 WL 13137951, at *54–55 (M.D. Fla. Sept. 16, 2011); *In re Facebook PPC Advert. Litig.*, 709 F. Supp. 2d 762, 772 (N.D. Cal. 2010).

[8] This forecloses reliance on all but one of the CFPB's borrower witnesses, whose complaints related ██████████████, SUF ¶¶ 279–300.

otherwise, 34 C.F.R. § 682.209(a)(6)(xii). ████████████████████

████████████. SUF ¶ 298.

The CFPB's argument that borrowers have a "right" to choose how to apply or allocate overpayments distracts from the fact that the CFPB has not identified any coherent practice that supposedly *infringed* on such a right.[9]  And the CFPB's further assertion that "[i]mpairment of a borrower's right is inherently injurious," CFPB Opp. at 54, rests on the unsupported premise that any right was actually impaired.  It is undisputed that ███████████████████████████

███████████████████████████████████. SUF ¶¶ 282, 288, 293, 296, 299.

No Causation.  Because it does not identify a practice, the CFPB necessarily fails to prove that a particular practice led to any particular injury.  *See ITT Educ. Servs.*, 219 F. Supp. 3d at 918 n.34 ("proximate cause is indeed a [necessary] element" of a CFPA "theory of liability").  Nonetheless, the CFPB asserts that

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████ CFPB Opp. at 54.

---

[9] Regulations dictate how payments on federal loans are applied.  *See* 34 C.F.R. § 685.211(a)(1) (applied first to fees, then interest, and then principal).

21

But the CFPB has no evidence of any borrower deprived of such benefits, let alone that any practice "caused" such deprivation.

No Substantial Injury.  The CFPB's purported proof on this element is speculative and does not withstand scrutiny.  *First*, the CFPB claims that documents ████████████████████████████████████████ CFPB Opp. at 54–55.  These documents refer generally to the potential "impact" of "misapplied payments"; there is no discussion of who was harmed, whether such harm actually occurred, or what led to this harm.  PSUF Ex. 178 at A-3113. "[S]peculative harm will not suffice." *ITT Educ. Servs.*, 219 F. Supp. 3d at 913. *Second*, the CFPB cites, but does not quantify, ████████████████████ ████████████████████████.  CFPB Opp. at 55.  As the CFPB's own cases show, no court has held that time spent, on its own, constitutes a "substantial injury." *FTC v. Neovi, Inc.*, 598 F. Supp. 2d 1104, 1115 (S.D. Cal. Sept. 16, 2008); *FTC v. Amazon.com, Inc.*, 2016 WL 10654030, at *8 (W.D. Wash. July 22, 2016).  Such a conclusion would be inconsistent with decades-old precedent that "subjective types of harm . . . will not ordinarily make a practice unfair." *LabMD, Inc. v. FTC*, 678 F. App'x 816, 820 (11th Cir. 2016) (quoting FTC Policy Statement on Unfairness (Dec. 17, 1980)[10]).

---

[10] https://www.ftc.gov/public-statements/1980/12/ftc-policy-statement-unfairness.

Lacking evidence, the CFPB argues that none is required.  That is incorrect. *First*, each of the cases the CFPB cites on this point involved evidence supporting a "concrete and quantifiable finding" of harm.[11]  *Second*, the CFPB speculates that "[m]any borrowers may not be aware" of any errors, CFPB Opp. at 57, and argues that it "need only show that Defendants' acts and practices were 'likely' to cause' substantial consumer injury, not actual consumer injury."  CFPB Opp. at 57.  But the only other case it cites applied a motion to dismiss standard where no evidence *at all* is required.  *See FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 242 (3d Cir. 2015).  At summary judgment, the CFPB must come forward with evidence. Its own vague speculation that harm is "likely" to occur is not enough.  *See LabMD*, 678 F. App'x at 821 (rejecting interpretation of "'likely' to include something that has a low likelihood").

## III.   SUMMARY JUDGMENT SHOULD BE GRANTED FOR DEFENDANTS ON THE CFPB'S DECEPTION CLAIMS

As to its deception claims, the CFPB once again argues that no evidence is required—effectively acknowledging it has none.  But the law is clear that where a claim involves "'literally true or grammatically correct' statements, the trial judge

---

[11] *See FTC v. Neovi, Inc.*, 604 F.3d 1150, 1157–58 (9th Cir. 2010) ($402 million in fraudulent checks); *FTC v. Amazon.com, Inc.*, 2016 WL 10654030 (W.D. Wash. July 22, 2016) ($26 million in unauthorized charges); *see also Orkin Exterminating Co. v. FTC*, 849 F.2d 1354 (11th Cir. 1988) ($7 million in unauthorized revenue); *FTC v. Windward Mktg., Inc.*, 1997 WL 33642380 (N.D. Ga. Sept. 30, 1997) (40% of $15 million in bank drafts unauthorized).

cannot make a finding of deceptiveness unless the parties provide '*evidence of substance*' about what 'the person to whom the [statement] is addressed find[s] to be the message.'" *FTC v. Brown & Williamson Tobacco Corp.*, 778 F.2d 35, 40 (D.C. Cir. 1985) (emphases added) (quoting *Am. Brands, Inc. v. R. J. Reynolds Tobacco Co.*, 413 F. Supp. 1352, 1357 (S.D.N.Y. 1976)).  The CFPB fails to offer such evidence.

### A.   There Is No Evidence That Navient's IDR Recertification Notice Was Misleading Or Material (Count IV)

The CFPB does not even attempt to argue that the statements in Count IV were expressly false, CFPB Opp. at 43, and therefore must come forward with evidence showing that the statements were both misleading and material.  Once again, the CFPB has not met its burden on either element.[12]

No Evidence That Notices Were Misleading.  The CFPB cites almost nothing to meet its burden to show the notices were misleading.  *Id.* at 43–48.  The

_____

[12] Despite the CFPB's claim that ED's requirements were in effect before December 2012, CFPB Opp. at 49, ED explicitly recognized that its previous regulations "[did] not require that borrowers be notified each year in advance of the annual requirement to provide income information and certify family size, nor [did] current regulations specify a deadline by which the borrower must provide this information."  77 Fed. Reg. 42,085, 42,106 (July 17, 2012); 77 Fed. Reg. 66,088, 66,088 (Nov. 1, 2012) ("regulations are effective July 1, 2013").  The CFPB's attempt to require these disclosures retroactively under the guise of a deception claim is impermissible.  *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("[R]ules will not be construed to have retroactive effect unless their language requires this result.").

only thing it mentions is its expert's survey, *id.* at 45, despite elsewhere

disclaiming reliance on its experts, *id.* at 34 n.10.  But on its face, the survey lends

no support because ███████████████████████████████████████████

███████████████████████████; it cannot speak to the "net impression" of

the entire notice "on a reasonable consumer."  *FTC v. Davison Assocs., Inc.*, 431 F.

Supp. 2d 548, 559–60 (W.D. Pa. 2006).[13]  Lacking evidence, the CFPB argues that

it "need not show that every reasonable consumer was misled," but the cases it

cites for this proposition show that it must have evidence that *someone* was

misled.[14]

The CFPB also makes two arguments that the Court should disregard the

federal forms accompanying the supposedly deceptive letter, contrary to the

applicable case law and the CFPB's own guidance that a notice "must be viewed as

a whole without emphasizing isolated words or phrases," Doc. 470 at 50–51.

---

[13] The survey has two other obvious flaws.  First, ███████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████. SUF Ex. 4 at 53 n.1 & 54 n.1.

Second, ███████████████████████████████████████████████

██████████████████████████████████████████████. *See id.*

¶ 76; *supra* pp. 18–19.

[14] *See FTC v. Wilcox*, 926 F. Supp. 1091, 1098–99 (S.D. Fla. 1995) (evidence
included 65 sworn consumer declarations); *FTC v. Washington Data Res.*, 856 F.
Supp. 2d 1247, 1275 (M.D. Fla. 2012) (FTC did *not* show deception where it had
"no evidence" that "a prospective purchaser acting reasonably under the
circumstances" would be misled), *aff'd*, 704 F.3d 1323 (11th Cir. 2013).

*First*, the CFPB baselessly denies the fact that the ED forms were attached to the recertification notices.  CFPB Opp. 46.  The notices themselves demonstrate that the forms were enclosed, *see* SUF Ex. 127–129, 132, and the CFPB cites nothing to support its denial of that fact, *see* PRSUF ¶¶ 216–17, 220–222, 225–26.

*Second*, the CFPB argues that other statements in the letter and attached forms were not "prominent" enough to "change" or correct the meaning of the two sentences it claims were misleading.  CFPB Opp. at 44, 46–48.[15]  Three responses:

1.      Appearing above—and therefore more "prominently"— than the statements the CFPB cites in the cover letter for ED loans is the following statement:  "If you don't provide the requested information, you'll remain in the IBR plan but your monthly student loan payment could increase significantly."  SUF Ex. 129.

---

[15] Only if the overall impression is deceptive do courts proceed to examine "disclaimers."  *See, e.g., FTC v. Adept Mgmt. Inc.*, 2018 WL 4623152, at *2–3 (D. Or. Sept. 25, 2018).  The other cases the CFPB cites discuss the deference owed to FTC findings of deception following administrative review, *Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1497 (1st Cir. 1989) (concluding that FTC had sufficient evidence to support its findings); *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228 (3d Cir. 1990), or do not involve deception claims, *Barrer v. Chase Bank, USA, N.A.*, 566 F.3d 883, 892 (9th Cir. 2009) (determining whether disclosure met Regulation Z requirement to be "conspicuous"); *Amazon.com, Inc.*, 2016 WL 10654030, at *2 (summarizing facts relevant to unfairness claim).

2.      There is no basis for the CFPB's assertion that the enclosed federal forms were "less prominent because they were in a different document than the reminder notice."  CFPB Opp. at 47.  Navient's cover letter specifically referred the borrower to the forms.  *See, e.g.*, SUF Ex. 127 at NAV-02553939 ("[P]lease complete the included Income-Based Repayment Plan Request Form.").  Moreover, the only borrowers at issue in the CFPB's claim, CFPB Opp. 48—those who chose to submit paperwork—necessarily referred to the form *because they filled it out* when they attempted to recertify, SUF ¶¶ 221, 225.

3.      The CFPB's complaints about the "prominence," font, and format of the warnings in the enclosed recertification forms should be directed at ED.  SUF Exs. 128–29.  Moreover, the CFPB's claim that the warnings "applied only to borrowers who . . . do not qualify," CFPB Opp. at 47–48, is incorrect and directly contradicted by ED, *see* 77 Fed. Reg. 66,088, 66,105 (Nov. 1, 2012) ("[A] borrower who fail[ed] to provide the annual income information required by [ED] is considered to no longer have a [partial financial hardship]" and the "capitalization of unpaid interest is not a penalty, but rather a result of the borrower's failure to comply with the terms and conditions of the repayment plan that the borrower chose.").

No Evidence of Materiality.  The CFPB also claims it needs no evidence of materiality, CFPB Opp. at 48–49, but materiality cannot be presumed for claims of

implied misrepresentations such as this one, *see Kraft, Inc. v. FTC*, 970 F.2d 311, 322–23 (7th Cir. 1992).[16]   The CFPB therefore must show that the omission is "likely to affect the consumer's conduct."   *CFPB v. NDG Fin. Corp.*, 2016 WL 7188792, at *14 (S.D.N.Y.  Dec. 2, 2016).  Instead, the CFPB speculates about what the "borrowers at issue" would do "to ensure that they submitted a complete and accurate application."  CFPB Opp. at 48.  Yet the CFPB has not even identified the "borrowers at issue," SUF ¶ 1, let alone shown that the asserted omission was likely to affect the borrowers' actions and somehow lead them to "inadvertently" submit incomplete paperwork, CFPB Opp. at 43.

> ### B.   There Is No Evidence That Navient's Statements Regarding Cosigner Release Were Misleading Or Material (Count V)

The CFPB's attempts to excuse its lack of proof on each required element for its cosigner release deception claim fare no better.

<u>The Statements Were True.</u>  The CFPB's contention that Defendants "admitted" deception, CFPB Opp. at 50–52, is audacious and wrong.  Student loan payments are scheduled monthly, which means that consecutive payments are

---

[16] The CFPB's citations are not to the contrary, as in each case, either the plaintiff did present evidence or the court found that the plaintiff failed to provide sufficient evidence.  *See, e.g.*, *Sandoz Pharm.*, 902 F.2d at 229; *Brown & Williamson Tobacco Corp.*, 778 F.2d at 40; *FTC v. Loma Int'l Bus. Grp.*, 2013 WL 2455986, at *6 (D. Md. June 5, 2013); *FTC v. Capital Choice Consumer Credit, Inc.*, 2004 WL 5149998, at *33 (S.D. Fla. Feb. 20, 2004), *aff'd*, 157 F. App'x 248 (11th Cir. 2005).

made in consecutive months.  Navient stated that borrowers must make 12 or 24 "consecutive, on-time payments," meaning 12 or 24 "acts of paying," "following one after the other in order," "at the appointed time" or "on schedule," which was monthly.[17]  That was true.

No Evidence The Statement Was Misleading.  Because the statements are not expressly false, the CFPB must present evidence that they were misleading. *See Brown & Williamson Tobacco Corp.*, 778 F.2d at 40; *see also* Doc. 509 at 58–59 (collecting cases).  The CFPB cites isolated and vague consumer complaints, CFPB Opp. at 51, made by consumers not disclosed as witnesses—which are untested and inadmissible hearsay.  Doc. 509 at 59 n.17.  On their face, however, most only discuss cosigner release generally, RSUF ¶ 194, and none fit into the

---

[17] Merriam-Webster, Consecutive, https://www.merriam-webster.com/dictionary/consecutive; *see also* Merriam-Webster, Payment, https://www.merriam-webster.com/dictionary/payment; Merriam-Webster, On Time, https://www.merriam-webster.com/dictionary/time.  The CFPB's cases further illustrate the unambiguous message required for something to be expressly false.  *See FTC v. Direct Mktg. Concepts, Inc.*, 2004 WL 1399185, at *3 (D. Mass. June 23, 2004) (statements that supplements could "cure, treat, or prevent cancer" and other ailments were false based on scientific expert testimony that they could not); *FTC v. AMG Capital Mgmt. LLC*, 910 F.3d 417, 422–23 (9th Cir. 2018) (providing example where disclosed "total amount of payments" was $390 and actual amount was $975), *cert. granted*, 2020 WL 3865250 (U.S. July 9, 2020); *United States v. Commercial Recovery Sys., Inc.*, 179 F. Supp. 3d 728, 735–36 (E.D. Tex. 2016) (Fair Debt Collection Practices Act violations where collectors represented that they were attorneys when they were not, threatened to file suit but did not, threatened to engage in seizure or garnishment but did not, and stated debts were the subject of litigation when they were not).

only hypothetical scenario in which the CFPB claims the statements would be misleading: where a consumer read a particular statement, paid ahead on her loans, otherwise made the required number of payments, asked to apply for cosigner release, and was denied. *See* Doc. 509 at 60–61; *see also* RSUF ¶ 194.[18]

No Evidence of Materiality. The very case the CFPB cites serves only to illustrate the CFPB's failure on this element. *See* CFPB Opp. at 52 (relying on *Novartis Corp. v. FTC*, 223 F.3d 783, 786 (D.C. Cir. 2000) (FTC provided expert testimony and consumer and marketplace studies to show materiality)). With no evidence the specific statement at issue was material, the CFPB instead speculates that cosigner release *in general* is material, pointing to the fact that Navient told consumers about cosigner release; received inquiries about cosigner release (fewer than 170 inquiries ███████████████████, RSUF ¶ 194); and conducted a survey that found "cosigner release is *not* a statistical key driver" of interest, RSUF ¶ 193 (emphasis added). None of this speculation suffices to show that the specific statement at issue was material to any consumer's decision to take out or cosign a loan. *See CFPB v. Gordon*, 819 F.3d 1179, 1192 (9th Cir. 2016).

---

[18] The CFPB seeks to excuse its utter failure of proof by erroneously blaming Navient's recordkeeping. CFPB Opp. at 4. Not only is this incorrect, RSUF ¶ 197, but the CFPB has had years to develop borrower testimony, survey evidence, or anything else.

### C.   There Is No Evidence That Pioneer Made A Materially Misleading Statement Regarding The Benefits Of Rehabilitation During The Limitations Period (Counts VII-X)

The CFPB lacks evidence that Pioneer made any misstatement regarding the benefits of rehabilitation during the limitations period or that such a statement was material to a borrower's decision to enroll in rehabilitation.[19]

No Evidence of a Misstatement.  It is undisputed that the representations at issue are those that Pioneer made after January 18, 2014, CFPB Opp. at 59,[20] and even though this claim relates to alleged misstatements on phone calls, Compl. ¶¶ 122–24, the CFPB has not identified *a single phone call* after this date, PRSUF Ex. 392.  Instead, the CFPB points to (1) three emails from Pioneer's compliance testing, (2) Pioneer's training materials, and (3) two written statements.  None raise a triable issue of fact.

*1.    Call Testing Compliance Emails.*  These emails actually establish exactly the opposite of what the CFPB contends: █████████████████████

---

[19] The CFPB incorrectly claims that Pioneer "do[es] not contest" that it made misleading misrepresentations.  CFPB Opp. at 59.  Not so.  *See* Doc. 509 at 64–65.  In any event, Pioneer need only show the absence of proof on any one element to be entitled to summary judgment.

[20] While not relevant given the lack of proof for the longer period, the limitations period for the Fair Debt Collection Practices Act claims is one year.  15 U.S.C. § 1692k(d); *PHH Corp. v. CFPB*, 839 F.3d 1, 51 (D.C. Cir. 2016), *reh'g en banc granted, order vacated on other grounds* (Feb. 16, 2017), *on reh'g en banc*, 881 F.3d 75 (D.C. Cir. 2018) (statute of limitations in the underlying statute applies).

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████. PSUF Exs. 232, 233, 325.

2.    *Training Materials.*  Pioneer's training materials do not instruct agents

to tout benefits that borrowers will not in fact receive.[21]  To the contrary, the CFPB

claims that *if* a Pioneer agent repeated the pre-July 2014 talk-offs *verbatim*

borrowers may have had a misimpression as to the specific details of

rehabilitation's benefits.  The evidence contradicts this claim, *see supra* n.19, but

in any event, the call recording evidence that exists (from before the limitations

period) shows that agents did *not* follow the talk-offs verbatim.  Doc. 509 at 63–64.

Pioneer's training materials therefore are not evidence of any misstatement during

the limitations period.[22]

3.    *Letters.*  The CFPB newly relies on two written statements that it

never identified during discovery.  One statement—████████████████████████████

---

[21] The CFPB cites two inapposite cases to argue that "deception claims can be
established through sales scripts," CFPB Opp. at 62 n.19, but unlike here, the
materials there explicitly referenced a benefit that consumers did not in fact
receive.

[22] Pre-limitations period evidence is only relevant if it sheds light on conduct
within the limitations period.  *Dickerson v. U.S. Steel Corp.*, 1977 WL 833, at *2
(E.D. Pa. Feb. 28, 1977).  As noted, the pre-limitations calls, which do not track
the post-limitations talk-offs, instead undermine the CFPB's claims of violations
during the limitations period.

███████████████████████████████████████████

███████████. PSUF Ex. 229 at NAV-00062927–28 (███████████

███████████████████████████████████████████

███████████████████████████████████████

██████).  The second statement—"Negative credit remarks reported for

rehabilitated loan(s) will be removed from your credit history"—is not inaccurate

or misleading.  "Negative credit remarks," *i.e.* the default, "will be removed."

No Evidence of Materiality.  The CFPB again claims that it needs no

evidence because Pioneer's statements are presumptively material—but the CFPB

does not claim that Pioneer made literally false statements.  *See Novartis*

*Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290

F.3d, 578, 587 (3d Cir. 2002).  *See supra* pp. 27–28.  The CFPB speculates that the

statements were material because the *general* benefits of rehabilitation are

important to consumers.  But the question is whether any *misrepresentations* about

those benefits were "likely to affect" the decision to enroll in rehabilitation.

*Gordon*, 819 F.3d at 1192.  Specifically, would a borrower in default choose *not* to

enroll in rehabilitation because a small portion of her payments went to collection

fees, when no other option waived *any* collection fees?  Would a borrower choose

*not* to enroll in rehabilitation because only the default status, as opposed to prior

delinquencies, would be removed when no other option removed the default status

at all?  The CFPB offers no evidence that these alleged statements—rather than the actual benefits of rehabilitation—caused anyone (including the CFPB's two borrower witnesses) to enroll in rehabilitation.

**IV.**  **SUMMARY JUDGMENT SHOULD BE GRANTED ON THE CFPB'S FAIR CREDIT REPORTING ACT CLAIM BECAUSE NAVIENT'S CREDIT REPORTING WAS ACCURATE (COUNT XI)**

The question before the Court on this motion is whether the CFPB has met its burden to show that Special Comment Code "AL" was inaccurate.  *See Schweitzer v. Equifax Info. Sols., LLC*, 441 F. App'x 896, 902 (3d Cir. 2011). Because it has failed to do so, no further inquiry into Navient's procedures is necessary.  *See Adams v. Nat'l Eng'g Serv. Corp.*, 620 F. Supp. 2d 319, 330 (D. Conn. 2009).[23]

---

[23] Although the evidence shows that Navient established reasonable procedures, Doc. 509 at 70–72, Defendants did not move on this element because it is typically a jury question, *see Seamans v. Temple Univ*., 744 F.3d 853, 864–65 (3d Cir. 2014).  That precludes summary judgment for the CFPB, not Navient.  The CFPB conflates this element with the one at issue, arguing (incorrectly) that "there are no documents explaining how . . . Navient took full account" of credit reporting guidance.  CFPB Opp. at 68–73.  To the contrary, Navient's reporting was consistent with credit reporting guidance.  As both parties agree, "[f]or TPD claims accepted for FFELP loans, the guaranty agency typically accepts and pays the claim."  JSUF ¶ 60.  Navient followed the guidance's instruction to report the "AL" code and Status Code "05" for loans paid by the guarantor.  Doc. 470 at 60–61; SUF ¶¶ 310–11, 317–18.  This guidance is equally applicable to TPD-discharged loans belonging to veterans.  These claims are paid on behalf of ED, who then reimburses the guaranty agency.  SUF Ex. 181 at NAV-01854024; 34 C.F.R. § 682.402(c)(9)(xii).  The guidance does not provide different instructions for borrowers with service-related disabilities.  SUF Ex. 180 at NAV-01144807; SUF ¶ 318.

Nowhere in its Opposition does the CFPB identify what was inaccurate about Special Comment Code "AL," CFPB Opp. at 68–73, or what "misleading impression" it conveyed, *id.* at 74–76. Initially, the CFPB's theory was that ███████ ████████████████████████████████████████████████████████████ SUF ¶ 329. Discovery disproved that theory, and the CFPB has now abandoned it, CFPB Opp. at 72–73. Critically, the CFPB offers nothing else to explain how the "AL" code was inaccurate.[24] Nor could it; as the CFPB appears to concede, the "AL" code "semantically sounds right," CFPB Opp. at 72. *See also* SUF Ex. 193 ¶ 28 (███████████████████████████████████████████████████ ███████████).[25]

Once Navient accurately reports information, it has no control over or responsibility for how third parties interpret it. Nevertheless, the CFPB asserts that

---

[24] The CFPB objects to the admissibility of FICO's acknowledgment that the "AL" code was accurate in a letter it sent to the Washington State Attorney General's Office. *See* SUF Ex. 188. This statement bearing the indicia of reliability of a letter sent to a government agency is admissible for the truth that the "AL" code was accurate under several hearsay exceptions, Fed. Rs. Evid. 803(6), 804(b)(3), 807, and even if it were not, it is admissible for the non-hearsay purpose of showing FICO's belief that the "AL" code was accurate, Fed. R. Evid. 801.

[25] The CFPB seems to suggest that accuracy depends on something other than whether the reporting correctly reflected the status of the account, but that is contrary to law. *See Schweitzer*, 441 F. App'x at 902 (credit reporting accurate where consumer's tax lien had been released and credit report indicated "release" of the lien); *id.* at 903 (question of fact regarding accuracy where account that was not discharged in bankruptcy was identified as "Included in Bankruptcy").

the "AL" code was viewed as "highly derogatory" and this somehow transformed an accurate code into an *inaccurate* one. That makes no sense, but even so, the CFPB cites as evidence ████████████████████████████████

████████████████████████████████████████. PRSUF Ex. 320 at A-8951, A-8957, A-8959. There is no evidence that credit reporting agencies or creditors viewed Special Comment Code "AL" as a negative or analogous to default. SUF ¶¶ 320, 324. Nor does the "AL" code indicate delinquency, default, or bankruptcy, which are reported in separate fields,[26] using separate codes. *See* SUF ¶¶ 313–15; PSUF Ex. 274 at A-7773 (codes used to report bankruptcy); RSUF Ex. 137 at 66:15–69:9 (████████████████████████████████████

████████████████████████████████████). In any event, there is "no duty to report only that information which is favorable or beneficial to the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1158 (11th Cir. 1991).

---

[26] The CFPB now claims that Navient's zero-filled reporting of the Date of First Delinquency "impugned consumers' credit." CFPB Opp. at 76. As Defendants' expert testified, whether to blank-fill or zero-fill a field is "a field-by-field specification." PRSUF Ex. 309 at A-8902:4–8 (Varghese). Credit reporting guidance instructed that the Date of Delinquency field should be zero-filled when no payments were missed and the account was "Current." SUF Ex. 180 at NAV-01144604, NAV-01144701; *see also* PSUF Ex. 276 at A-8204.

Lacking a theory of how Special Comment Code "AL" was inaccurate, the CFPB argues that Navient's decision to stop using the code is some sort of admission. *First,* it is unsettling that a federal agency would argue that a decision to stop a challenged practice is somehow an admission of a violation. Not only does it run afoul of the Rules of Evidence, but it also provides a strong disincentive to take subsequent remedial measures. *See Stone v. Troy Constr., LLC*, 935 F.3d 111, 151 n.13 (3d Cir. 2019). *Second,* if anything, the CFPB's own investigation shows that ██████████████████████████████ ██████████████, SUF Ex. 191; ceasing use of the code was thus intended to stop any harm from *FICO*'s conduct, not Navient's. *Third,* ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ SUF Ex. 185 at NAV-02512338.

## V.   SUMMARY JUDGMENT SHOULD BE GRANTED ON CONDUCT ALLEGED TO HAVE OCCURRED PRIOR TO JANUARY 20, 2012 BECAUSE IT IS OUTSIDE THE STATUTE OF LIMITATIONS PERIOD

The CFPA provides that "no action may be brought under this title more than three years after the date of discovery of the violation to which an action relates." 12 U.S.C. § 5564(g). "[D]ate of discovery" is a "term of art" that means a claim accrues "(1) when the plaintiff did in fact discover, or (2) *when a reasonably diligent plaintiff would have discovered*, 'the facts constituting the

violation'—whichever comes first." *Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 273 (3d Cir. 2013) (emphasis added) (quoting *Merck & Co. v. Reynolds*, 559 U.S. 633, 637, 644 (2010)).

The CFPB again comes forward with no evidence regarding the date of discovery and simply asserts without support that the Court must assume it first discovered the alleged violations on the day it formally initiated its investigation in August 2013, such that none of its claims are time barred.  Three responses:

*First*, courts have "look[ed] askance . . . at the idea that the CFPB is free to pursue an . . . enforcement action for an indefinite period of time after the relevant conduct took place." *PHH Corp. v. CFPB*, 839 F.3d 1, 55 (D.C. Cir. 2016); *see also Rotella v. Wood*, 528 U.S. 549, 554 (2000) (rejecting a rule that would "have extended the limitations period to many decades, and so beyond any limit that Congress could have contemplated").  "The CFPB's interpretation is especially alarming because the agency can seek civil penalties," and "the Supreme Court has emphatically stressed the importance of statutes of limitations in civil penalty provisions." *PHH Corp.*, 839 F.3d at 55 (citing *Gabelli v. SEC*, 568 U.S. 442 (2013)).

*Second*, the notion that the CFPB first discovered alleged violations in August 2013 is implausible.  "Unlike the private party who has no reason to

suspect [misconduct], the [CFPB's] very purpose is to root it out, and it has many legal tools at hand to aid in that pursuit." *Gabelli*, 568 U.S. at 451. For example, in October 2011, the CFPB entered into an information sharing agreement with ED, Ex. 1, and gained access to the information ED collects from Navient and other servicers, RSUF ¶ 31. Using that date, the claims would have expired in October 2014, prior to execution of the tolling agreement on January 20, 2015, SUF ¶ 375.

*Third*, the CFPB has asserted neither when it discovered the claims, nor offered any facts to show it "used due diligence in trying to uncover" Navient's alleged wrongdoing, so it cannot benefit from the discovery rule here. *SEC v. Brown*, 878 F. Supp. 2d 109, 120 (D.D.C. 2012). Such facts are uniquely in the CFPB's possession, as it has withheld documents related to its supervision and investigation as privileged. *See Gabelli*, 568 U.S. at 453 ("[I]n the midst of any inquiry as to what it knew when, the Government can be expected to assert various privileges, such as law enforcement, attorney-client, work product, or deliberative process, further complicating judicial attempts to apply the discovery rule"). Therefore, only those claims it would have discovered within the three years prior

to the tolling agreement are timely, and the limitations period begins on January

20, 2012.[27]

---

[27] The CFPB does not dispute that the limitations period for Navient Corporation
begins on January 18, 2014.  CFPB Opp. at 76–77.

## **CONCLUSION**

Defendants' Motion should be granted on all counts.


Dated:  August 18, 2020                    Respectfully submitted,


                                                    /s/ Jonathan E. Paikin
                                                    Jonathan E. Paikin (DC 466445) (*pro hac vice*)
                                                    Daniel P. Kearney (DC 977148) (*pro hac vice*)
                                                    Karin Dryhurst (DC 1034290) (*pro hac vice*)
                                                    Wilmer Cutler Pickering
                                                      Hale and Dorr LLP
                                                    1875 Pennsylvania Avenue, NW
                                                    Washington, DC 20006
                                                    jonathan.paikin@wilmerhale.com
                                                    daniel.kearney@wilmerhale.com
                                                    karin.dryhurst@wilmerhale.com
                                                    Tel: 202-663-6000
                                                    Fax: 202-663-6363

                                                    Daniel T. Brier (PA 52348)
                                                    Myers Brier & Kelly, LLP
                                                    425 Spruce Street, Suite 200
                                                    Scranton, PA 18503
                                                    dbrier@mbklaw.com
                                                    Tel: 570-342-6100
                                                    Fax: 570-342-6147

                                                    *Counsel for Navient Corporation, Navient Solutions, LLC, and Pioneer Credit Recovery, Inc.*

41

## CERTIFICATE OF WORD COUNT

I hereby certify in accordance with Local Rule 7.8(b)(2) that the foregoing

document is 9,842 words.

/s/ Karin Dryhurst
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

Dated:  August 18, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2020, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

/s/ Karin Dryhurst
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363