# EXHIBIT 1

# Memorandum of Understanding Between
# The Bureau of Consumer Financial Protection and
# The U.S. Department of Education
# Concerning the Sharing of Information

**Introduction and Purpose**

This Memorandum of Understanding (MOU) is entered into between the Bureau of Consumer Financial Protection (Bureau) and the U.S. Department of Education (ED). Title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act (the Dodd-Frank Act or Act) establishes the Bureau, an independent entity with authority to regulate the offering and provision of consumer financial products or services under Federal consumer financial laws as set forth in the Dodd-Frank Act.

This MOU sets forth the agreement between the Bureau and ED (collectively, the Agencies or the Parties) with respect to sharing, to the extent permitted by applicable privacy laws and regulations, information in connection with their responsibilities under the Dodd-Frank Act. In addition, pursuant to Section 1035 of the Act, this MOU provides the framework for the Parties' "coordination in providing assistance to and serving borrowers seeking to resolve complaints related to their private education or Federal student loans."

The Bureau enters into this MOU pursuant to its authority under sections 1012 and 1035 of the Consumer Financial Protection Act of 2010, Pub. L. No. 111-203, Title X (the Dodd-Frank Act or Act) (codified at 12 U.S.C. 5492, 5535). ED enters into this MOU pursuant to its authority under Sections 415 and 419 of the Department of Education Organization Act, Pub. L. No. 96-88 (Codified at 20 U.S.C. 3475, 3479).

**Information Sharing**

1. In addition to the sharing described below, to the extent the providing Agency (the Provider) deems appropriate and necessary, the Provider may, at its discretion, share information in any form with the other Agency (the Recipient).
2. For the purposes of the Bureau's Congressional reporting, research, market analysis, complaint resolution, enforcement, supervision, financial education, engagement, and rulemaking needs, ED agrees to work with the Bureau to identify requirements and costs for the Bureau to access ED databases, as applicable, to the extent permitted by applicable privacy statutes and regulations.
3. In addition to the information described in paragraph 2, the Bureau may request and, if the disclosure is permitted by applicable privacy statutes and regulations, obtain information concerning consumer complaints and other information pertaining to specific entities or classes of entities from ED that are relevant to the exercise of the Bureau's supervisory enforcement or regulatory functions.

**Educational Content**

1. Educational content means any published or public material that increases the public's understanding of an issue or program. This would include, but is not limited to curricula, frequently asked questions, and material from posters.
2. Existing educational content: ED hereby grants the Bureau permission to reproduce, or otherwise use without modification, all educational content made available to the public by ED as of the date of this MOU for use in the Bureau's consumer education and engagement mission, including on the Bureau's Web site.
3. Future educational content: The Bureau and ED may reproduce educational content created by the other if they provide prior notice to the creating agency.

**Complaint Handling**

Both the Bureau and ED may receive comments, inquiries, and requests for assistance (complaints) from student loan borrowers. The items below describe how the Bureau and ED will cooperate to help borrowers resolve their requests for assistance per section 1035 of the Act.

1. The Bureau and ED shall transfer complaints to the other Agency to the extent permitted by applicable privacy laws and regulations. The Bureau will provide ED with at least 60 days notice before these transfer processes shall commence.
2. For all complaints received by the Bureau related to the origination, disbursement, and servicing of loans made, insured, or guaranteed under Title IV of the Higher Education Act of 1965, as amended (Title IV loans), the Bureau shall direct the complaint to ED within 10 days of contact by the consumer. The agencies shall work to establish an efficient collaborative process to address complaints received by the Bureau about private collection agency actions related to defaulted Title IV loans.
3. For any complaint received by ED related to any private education loan, as defined by the Truth in Lending Act, 15 U.S.C. section 1650(a)(7), ED shall direct the complaint to the Bureau within 10 days of contact by the consumer.
4. For any complaints concerning both Title IV loans and private education loans, the Agency receiving the complaint shall work to resolve the component of the complaint over which it has responsibility and notify the borrower that the remaining portion of the complaint will be referred to the other Agency. The Agencies shall work to determine an efficient process to collaborate to ensure coordination in providing assistance to and serving borrowers seeking to resolve complaints related to their private education or Federal student loans.
5. The Agencies shall provide reports to one another, at least quarterly, that summarize the nature of complaints received, characteristics of borrowers, complaint status, and any available information regarding resolution status. The Agencies shall work to ensure that reporting categories and definitions are consistent in order to ensure comparability.

6. Each Agency shall develop a mutually agreed-upon preferred data format for the electronic transfer of data for complaints referred to the other Agency. The Agencies should reasonably work to accommodate this data format request.
7. Nothing in this section shall be construed to limit either Agency's otherwise existing authorities.

## Permissible Uses and Confidentiality of Exchanged Information

The Parties agree as follows:

1. The Parties will comply with the standards applicable to Federal agencies for protection of the privacy and confidentiality of personally identifiable information and for data security and integration.
2. If one Party provides access for the other Party to information that is not publicly available, the Party making the information available may impose, after consultation with the other Party, such conditions upon the other Party's use or further dissemination of the information as are reasonably necessary to protect individuals' privacy interests under the Privacy Act, 5 U.S.C. section 552a, the Party's deliberative process, or any interest protected by the exemptions to the Freedom of Information Act, 5 U.S.C. section 552(b) and the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. section 1232g. Any such conditions shall be reduced to writing and be provided before the relevant exchange of information.
3. The Parties agree that the exchange of information pursuant to the MOU is not intended to constitute public disclosure and is not intended to constitute a waiver of any applicable privileges, nor is such exchange intended to waive any provision of any applicable law. The Parties expressly reserve all evidentiary privileges and immunities applicable to the information shared under this MOU.

## General Terms

1. This MOU is effective upon the signatures by representatives of the Parties and remains effective until thirty days after any Party hereto provides written notice to the other party of its intent to terminate the MOU.
2. In the event this MOU is terminated, information exchanges pursuant to this MOU shall continue to be treated in accordance with any conditions imposed by the Party providing the information, unless such conditions are waived or altered by the Party providing the information.
3. The Parties to the MOU may from time to time amend this MOU in writing, and such amendments when executed by the Parties shall then become a part of the MOU.
4. This MOU may be executed in separate counterparts, each of which when executed and delivered shall be deemed an original, and all of which taken together shall constitute one and the same MOU.
5. This MOU does not transfer funds between the Parties or commit the Parties to transfer funds. Each Party shall bear its own costs of complying with this MOU. In the event funds must be transferred between the Parties for the provision of goods or services,

access to ED databases, or any other purpose, such transfer shall be accomplished by a separate interagency agreement.

6. Attachment A to this agreement includes the name, office, and contact information, including addresses and telephone and fax numbers, for the appropriate official(s) to contact for purposes of notices and exchanges of information.  This contact information will be updated as appropriate.


FOR THE BUREAU OF CONSUMER FINANCIAL PROTECTION


By _____

Title _Private Education Loan Ombudsman, CFPB_

Date _10-19-2011_____


FOR THE U.S. DEPARTMENT OF EDUCATION


By _____

Title _Assistant Secretary, OPE_____

Date _10-19-2011_____


By _____

Title _Chief Operating Officer, FSA_____

Date _10-19-2011_____

**ATTACHMENT A**

For the purposes of notices and exchanges, please contact:

Consumer Financial Protection Bureau

Jeffrey Riley
Office of the Executive Secretary
Phone:  202-435-7497
Fax:  202-435-7329
Jeffrey.Riley@cfpb.gov

Please also copy the following distribution list:
studentloanombudsman@cfpb.gov

Department of Education

Debra Wiley
Federal Student Aid/Customer Experience
Phone:  202-377-3801
Fax:  202-275-5000
Debra.Wiley@ed.gov

Please also copy the following distribution list:
Phil.Martin@ed.gov
Gail.McLarnon@ed.gov
Joyce.DeMoss@ed.gov