## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| Consumer Financial Protection Bureau, | ) | |
| | ) | |
| | ) | |
| *Plaintiff*, | ) | Civil Action No. 3:CV-17-00101 |
| | ) | (Hon. Robert D. Mariani) |
| v. | ) | |
| | ) | |
| Navient Corporation, *et al.,* | ) | |
| | ) | |
| *Defendants*. | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF
## MOTION TO STRIKE PLAINTIFF'S RESPONSE TO
## <u>DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................1

ARGUMENT ......................................................................................1

I. THE CFPB FAILS TO EXCUSE ITS VIOLATION OF THE REQUIREMENT TO SUBMIT A "*SHORT AND CONCISE* STATEMENT OF THE MATERIAL FACTS" ...........................................................................................1

II. THE CFPB FAILS TO EXCUSE ITS VIOLATION OF THE REQUIREMENT THAT "[E]VERY DENIAL OR PARTIAL DENIAL . . . SHALL BE ACCOMPANIED BY A SPECIFIC REFERENCE TO THE PARTS OF THE RECORD THAT SUPPORT THE STATEMENTS" .......................................3

    A. Unsupported Denials Based On Claims That Borrower Information Might Exist But Was Not Produced..................................4

    B. Unsupported Denials That Disclosures Were Sent ............................4

        1. Borrower Contacts ........................................................4

        2. Renewal Notices ..........................................................7

    C. Unsupported Denials Based On Assertions That There May Have Been Different Written Procedures Or That Procedures Were Not Provided To Call Center Representatives ..........................8

    D. Unsupported Denials That Call Center Representatives Did Not Check Borrower Eligibility Or That Borrowers Were Ineligible For IDR............................................................................9

    E. Other Unsupported Denials................................................10

    F. Denials Based On Inadmissible Evidence...........................................10

III. THE CFPB FAILS TO EXCUSE ITS VIOLATION OF THE REQUIREMENT THAT "THE PARTY RESPONDING TO ANY STATEMENT OF MATERIAL FACT IS PROHIBITED FROM ADDING ADDITIONAL LANGUAGE . . . INTENDED TO ADD ASSERTIONS OF FACT . . . EXTRANEOUS TO THE PARTY'S ADMISSION OR DENIAL".................................................12

IV.   THE CFPB FAILS TO EXCUSE ITS VIOLATION OF THE RULE THAT "THE
      PARTY RESPONDING TO ANY STATEMENT OF MATERIAL FACT IS
      PROHIBITED FROM ADDING ADDITIONAL LANGUAGE . . . INTENDED TO
      ADD . . . ARGUMENT EXTRANEOUS TO THE PARTY'S ADMISSION OR
      DENIAL" ...................................................................................................... 13

V.    DEFENDANTS' RESPONSE TO THE CFPB'S STATEMENT OF FACTS WAS
      PROPER ......................................................................................................... 15

CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Brown v. Chicago Transit Authority Retirement Plan*,
   197 F. App'x 475 (7th Cir. 2006) ..................................................................5

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..................................................................................3–4

*DeGroat v. DeFebo*,
   87 F. Supp. 3d 706 (M.D. Pa. 2015) ..........................................................2–3

*Tarrant v. Northland Group, Inc.*,
   No. 3:10-CV-1204, 2012 WL 140431 (M.D. Tenn. Jan. 18,
   2012) ..........................................................................................................5–6

*Walton v. Johnson & Johnson Servs., Inc.*,
   347 F.3d 1272 (11th Cir. 2003) ....................................................................5

*Weitzner v. Sanofi Pasteur, Inc.*,
   No. 3:11-CV-02198, 2017 WL 3894888 (M.D. Pa. Sept. 6,
   2017), *aff'd*, 909 F.3d 604 (3d Cir. 2018) ....................................................3

## STATUTES, RULES, AND REGULATIONS

Fed. R. Evid. 407 .......................................................................................11

Fed. R. Evid. 803 .......................................................................................10

M.D. Pa. L.R. 56.1 ...................................................................................1, 3

## PRELIMINARY STATEMENT

The CFPB's response to Defendants' Statement of Undisputed Material Facts ("PRSUF") failed in multiple ways to comply with the Federal Rules of Civil Procedure, the Local Rules, and this Court's Orders.  Many responses were drawn-out or argumentative; others included denials that were speculative or unsupported by cited evidence.  Overall, the responses reflected an effort to evade genuinely undisputed issues in this case by means of denials that lack any good faith basis. Indeed, the CFPB's failures are so plain that its opposition to Defendant's motion to strike makes virtually no effort to defend its responses and instead, in an attempt to distract, points the finger back at Defendants.  The proper remedy—one common in this judicial district—is to strike the CFPB's non-compliant responses and deem the corresponding factual assertions admitted.

## ARGUMENT

I.   **THE CFPB FAILS TO EXCUSE ITS VIOLATION OF THE REQUIREMENT TO SUBMIT A "*SHORT AND CONCISE* STATEMENT OF THE MATERIAL FACTS"[1]**

The CFPB's response was *three times* the length of Defendants' Statement of Undisputed Material Facts ("SUF")—not "short and concise" as the Local Rules require.  Yet, rather than offer an explanation for this failure, the CFPB offers excuses.

---

[1] M.D. Pa. L.R. 56.1 (emphasis added).

*First*, the CFPB claims that its PRSUF was long because Defendants' statements were "broad, compound, and unsupported."  CFPB Opp. at 6.  But the CFPB does not cite a single example, and a review of Defendants' SUF demonstrates that the CFPB's assertion is incorrect:  the length of the CFPB's responses bears no relationship to Defendants' statements.  *Compare* SUF ¶¶ 89, 98, 267, 285 (providing one- or two-sentence-long factual statements containing direct quotations from record evidence), *with* PRSUF ¶¶ 89, 98, 267, 285 (responding with lengthy dissertations); *see also* Doc. 525 at 14–15.

*Second*, the CFPB complains that it could not simply admit assertions because "the overwhelming majority of conduct at issue and documents cited belong to Defendants," and the CFPB "has no independent, first-hand knowledge." CFPB Opp. at 6.  This makes no sense.  During years of discovery, the parties have taken 70 depositions and Defendants produced eleven terabytes of uncompressed borrower data and nearly one million documents to the CFPB.  The CFPB cannot deny facts merely by claiming that it lacks "independent, first-hand knowledge"; it has the burden of proving its claims.  The CFPB's failure to develop evidence cannot excuse its failure to "act in good faith and admit any material fact which is undisputed and only deny any material fact which that party in good faith believes is in dispute," as this Court requires.  Doc. 452 ¶ 4.  That failure warrants striking the CFPB's response.  *See DeGroat v. DeFebo*, 87 F. Supp. 3d 706, 716–17 (M.D.

Pa. 2015); *Weitzner v. Sanofi Pasteur, Inc.*, No. 3:11-CV-02198, 2017 WL

3894888, at *12 & n.6 (M.D. Pa. Sept. 6, 2017), *aff'd*, 909 F.3d 604 (3d Cir.

2018).

## II.   THE CFPB FAILS TO EXCUSE ITS VIOLATION OF THE REQUIREMENT THAT "[E]VERY DENIAL OR PARTIAL DENIAL . . . SHALL BE ACCOMPANIED BY A SPECIFIC REFERENCE TO THE PARTS OF THE RECORD THAT SUPPORT THE STATEMENTS"[2]

The CFPB also improperly denied facts without citing any contrary

evidence, Doc. 525 at 5–13, in violation of the Court's orders that "[a]ny denial of

an opposing party's statement of material facts must be made in good faith," Doc.

452 ¶ 4, and that "every denial or partial denial thereof shall be accompanied by a

specific 'reference[] to the parts of the record that support the statements,'" Doc.

463 ¶ 3 (quoting M.D. Pa. L.R. 56.1).

Again, the CFPB offers almost nothing in response.  Its only argument is

that the evidence cited in Defendants' SUF somehow does not "establish[]" the

statements (with no explanation as to why), and therefore it need not present any

contrary evidence.  CFPB Opp. at 7.  The CFPB even protests that requiring it to

present contrary evidence "flips the burden."  CFPB Opp. at 13.  But the CFPB

"will bear the burden of proof at trial," and it must "go beyond the pleadings and

by [its] own affidavits, or by the depositions, answers to interrogatories, and

---

[2] Doc. 463 ¶ 3 (alteration and internal quotation marks omitted) (quoting M.D. Pa. L.R. 56.1).

admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).  The CFPB has failed to do so, and its denials should be struck.

### A.     Unsupported Denials Based On Claims That Borrower Information Might Exist But Was Not Produced

The CFPB improperly denied certain facts based on assertions that Defendants "withheld" borrower data that, according to the CFPB, might have supported a denial.  Doc. 525 at 6.  Its opposition to Defendants' motion to strike does not even attempt to support the baseless speculation that such undiscovered evidence might exist.  Because these denials lack any factual basis, they should be struck.  *See* PRSUF ¶¶ 1, 262.

### B.     Unsupported Denials That Disclosures Were Sent

#### 1.     *Borrower Contacts*

The CFPB's responses also include unsupported denials that Navient sent letters to borrowers, including on the purported ground that (during a certain period) Navient's system only stored information to "regenerate" communications, rather than photocopies of the communications themselves.  Doc. 525 at 7–8.  This assertion is baseless because the CFPB's own evidence shows that the regenerated documents are exact copies of the actual letters sent to borrowers, *id*., and the CFPB does not defend this assertion in its Opposition.

The CFPB now says that it "[u]sually" made these denials because "Defendants simply cited a copy of a form letter or email without citing any evidence (*e.g.*, testimony or declaration) to show that it was in fact sent to (or received by) borrowers."  CFPB Opp. at 9.  This is one of many examples where the CFPB's arguments are completely disconnected from the actual record.  For one, the communication templates describe the circumstances in which borrower letters were sent, and thus are *themselves* evidence that the letters were sent. Moreover, Defendants cited not only templates, but also actual copies of letters sent to borrowers and testimony demonstrating that letters were sent.  *See* SUF ¶¶ 6–9, 15–16, 39, 54, 60, 103–04, 126, 162–65, 185, 200.  That a borrower, years later, does not recognize a specific letter, CFPB Opp. at 9, does not create a dispute of fact as to whether Navient sent the letter.  *See Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1287 n.13 (11th Cir. 2003) ("The fact that neither [the plaintiff] nor another employee remember receiving the policy (as opposed to being able to definitely testify that they never received it), is not particularly probative of whether [the plaintiff] did in fact receive a copy of the policy.").[3]

---

[3] *See also Brown v. Chicago Transit Auth. Ret. Plan*, 197 F. App'x 475, 481 (7th Cir. 2006) ("[The plaintiff's] inability to remember the letters is not enough to create a disputed issue of material fact as to the letters' authenticity."); *Tarrant v. Northland Grp., Inc.*, No. 3:10-CV-1204, 2012 WL 140431, at *4–5 (M.D. Tenn. Jan. 18, 2012) (granting summary judgment where defendant presented evidence a letter was sent, including the company's "account notes, which are automatically

This evidence is further reinforced by Navient's CLASS system, which maintains logs of all correspondence sent to borrowers.  Doc. 525 at 7.  The CFPB complains that it need not "simply accept that certain codes in Navient's servicing history (CLASS 151 screens) alone establish that the cited correspondence was sent."  CFPB Opp. at 9.  But both the borrower letters themselves and the CLASS screens demonstrate that correspondence was sent, and the CFPB has neither evidence nor a good faith basis to support its denial.[4]

Finally, the CFPB's opposition does not even defend its unsupported denials that Navient made phone calls to borrowers, PRSUF ¶¶ 128, 149, or its challenges to the authenticity of Defendants' website, *id.* ¶ 12.

_____

generated each time a letter for a specific account under collection is either mailed or returned, [and which] showed that the letter was sent," and plaintiff "testified only that she did not remember whether she received" it).

[4] Contrary to the CFPB's claims, Defendants did not submit additional evidence to "cure . . . deficiencies."  CFPB Opp. at 10.  The evidence Defendants cited in support of its Statement is more than sufficient to establish the stated facts. Indeed, things such as whether a routine form letter was sent or a referenced enclosure was included are typically uncontroversial.  Yet, after years of investigation and discovery, the CFPB—which, as a government agency should have responsibilities to the truth that extend beyond those of an ordinary plaintiff—seeks to present a counterfactual world where disclosures were not sent or policies did not exist.  On summary judgment, however, the facts developed during years of nearly unfettered discovery are the evidence against which the legal elements are applied.  When the CFPB challenged that evidence with unsupported, counterfactual, and conclusory denials, Defendants submitted on their motion to strike even more evidence known to the CFPB to demonstrate that the CFPB did not simply fail to provide a record cite, but rather had no good faith basis for its denials.

The denials in the following paragraphs should therefore be struck.  *See* PRSUF ¶¶ 6–12, 15–16, 27, 34, 39, 42, 46, 48, 54, 60, 62, 65, 96, 98, 103–04, 107, 122–24, 126, 128, 144–46, 149, 151, 153, 162–65, 169, 176–77, 185, 188, 200.

2.    *Renewal Notices*

The CFPB's response includes a raft of conclusory denials that Navient's IDR renewal notices enclosed a government form, that the notices contained certain language, that the notices were dated, that the notice was sent to the Department of Education ("ED") for review, and that certain language was added no earlier than December 2011.  CFPB Opp. at 10–12.  Yet documentary evidence supports Defendants' statements, and the CFPB offers no contrary evidence.  Doc. 525 at 8–9.  Offering no evidence that the forms were *not* included with the letters, the CFPB instead claims that Defendants must provide "testimonial evidence establishing that the form was attached to the cited letter," CFPB Opp. at 10. Although it is evident from the face of the letter that the forms were enclosed, Defendants have pointed to additional support in the record to show there can be no good faith dispute over this issue.  Doc. 525 at 9.  The CFPB ignores this evidence, instead standing on the argument that it can simply deny the enclosures were included with no cited factual basis for the denial whatsoever.  Regarding the content of the notices, the CFPB again faults Defendants for using "exemplar documents without explanatory testimony," CFPB Opp. at 11, but it cites no

7

contrary evidence.  The CFPB does not even offer any defense of certain denials, such as its denials that the letters were dated, PRSUF ¶¶ 218, 223, or its denial that the letter was sent to ED, PRSUF ¶ 229, and cites no contrary evidence for its denial that the letter was sent to ED "for review."  The CFPB's denials of the following paragraphs should therefore be struck.  *See* PRSUF ¶¶ 216–26, 229.

> ### C.   Unsupported Denials Based On Assertions That There May Have Been Different Written Procedures Or That Procedures Were Not Provided To Call Center Representatives

The CFPB's responses improperly denied (1) aspects of Navient's servicing procedures based on speculation that other documents *might* exist to contradict Defendants' exhibits, and (2) that Navient representatives used the cited procedure documents.  Doc. 525 at 10.  Once again, the CFPB denied these statements without offering any contrary evidence.

In its opposition, the CFPB insists it has no obligation to cite evidence, arguing instead that the procedure documents "do[] not carry Defendants' burden of establishing that they were in effect during the entire period."  CFPB Opp. at 13.  But the documents themselves are dated and thus are evidence that the policies were in effect.  Moreover, the CFPB has access to *every version* of the cited policies; if there were any evidence contradicting Defendant's statements (there is not), the CFPB could have cited it.  Finally, the CFPB's opposition does not even attempt to justify its denials that Navient representatives accessed or interacted

with the cited procedure documents.  The denials in the following paragraphs should be struck.  *See* PRSUF ¶¶ 204–08, 211–12.

### D.  Unsupported Denials That Call Center Representatives Did Not Check Borrower Eligibility Or That Borrowers Were Ineligible For IDR

The CFPB's responses improperly denied, without evidence, that representatives checked IDR eligibility, despite the presence of notations like "IBR elig checked" in the servicing data, *see, e.g.,* SUF Ex. 53 at NAV-02967333, and that certain borrowers were ineligible for IDR.  Doc. 525 at 10–11.

Once again, the CFPB's opposition offers unsupported speculation instead of evidence.  It claims that the *absence* of additional record notations somehow disproves that IDR eligibility was checked, stating (without evidence) that "the borrower's income, family size, or monthly payment amount" would "ordinarily [be] recorded when modeling repayment options."  CFPB Opp. at 13.  But the evidence shows that IDR eligibility was in fact checked when it was noted in the servicing data, regardless of whether additional notations were also made.  *See, e.g.*, PRSUF ¶ 53 (recognizing that IDR eligibility was checked, despite the absence of the additional notations the CFPB claims are "ordinarily recorded").[5]

_____

[5] Indeed, the evidence shows that IDR eligibility was frequently checked even when there was *no* notation in the servicing data.  *Compare, e.g.*, SUF Ex. 16 at *32–34 (FB call transcript); SUF Ex. 60 at *3–4 (UE call transcript); SUF Ex. 99 at *39 (KR call transcript), *with* SUF Ex. 55 at NAV-02359392 (FB account

The CFPB asserts that the "absence of a business record is admissible to show an event did not occur," CFPB Opp. at 13–14, but that is only true when "a record was regularly kept for a matter of that kind," Fed. R. Evid. 803(7), and the CFPB has not proffered any evidence that additional notations were "regularly" made when IDR eligibility was checked.  Finally, the CFPB does not even attempt to argue that it has shown borrowers were eligible for IDR contrary to the testimonial evidence cited by Defendants.  The CFPB's denials in the following paragraphs should be struck.  *See* PRSUF ¶¶ 26, 31–32, 36–37, 41, 43–45, 53, 85.

### E.   Other Unsupported Denials

Defendants moved to strike various other denials that lack any evidentiary support.  Doc. 525 at 11–12.  The CFPB's opposition offers no substantive defense, merely making conclusory claims that its responses "were proper."  CFPB Opp. at 14.  The denials in the following paragraphs should be struck.  *See* PRSUF ¶¶ 35, 49, 231–33, 237, 258, 293–94, 354–55, 366.

### F.   Denials Based On Inadmissible Evidence

Defendants moved to strike denials based on inadmissible evidence.  Doc. 525 at 12–13.  The CFPB asserts that the evidence is admissible, referencing the

---

history); SUF Ex. 59 at NAV-02356749–50 (UE account history); SUF Ex. 96 at NAV-01576469–70 (KR account history).  And the CFPB has not offered even a single example where a notation in the servicing data indicated IDR eligibility was checked, but the call recording demonstrated that it was not.

arguments in its Reply in Support of its Motion for Summary Judgment ("CFPB Reply"), where it claimed that Federal Rule of Evidence 407 somehow does not apply to cases under the Consumer Financial Protection Act and that certain exhibits are not hearsay.  CFPB Opp. at 15 (citing CFPB Reply at 40–44).  At its core, this issue arises because the CFPB seeks to rely on internal compliance processes designed to ensure that Navient's thousands of employees were following the policies the CFPB says did not exist.

The CFPB has no support whatsoever for its remarkable assertion that the rules of evidence do not apply to its case.  CFPB Reply at 40.  And its argument that Rule 407 does not apply to changes undertaken at the "request or authority of a regulatory agency," *id.*, is irrelevant, as these changes were not so undertaken (each change was in fact voluntary).  Moreover, the CFPB's argument that Rule 407 does not apply to claims that do not require actual injury is merely another admission that it lacks proof of injury—and there is no reason why Rule 407 would not apply to unfairness or deception claims.[6]

The CFPB's denials based on inadmissible evidence in the following paragraphs should be struck.  *See* PRSUF ¶¶ 1, 260, 262–67, 349.

---

[6] In addition, the CFPB should be held to its representation that it would defend against summary judgment without relying on Dr. Mullin's report.  PRSUF ¶ 1.

## III. THE CFPB FAILS TO EXCUSE ITS VIOLATION OF THE REQUIREMENT THAT "THE PARTY RESPONDING TO ANY STATEMENT OF MATERIAL FACT IS PROHIBITED FROM ADDING ADDITIONAL LANGUAGE . . . INTENDED TO ADD ASSERTIONS OF FACT . . . EXTRANEOUS TO THE PARTY'S ADMISSION OR DENIAL"[7]

Defendants also moved to strike denials that were in fact admissions coupled with extraneous and unsupported assertions of fact. Doc. 525 at 13–15. The CFPB's opposition contends that it was merely denying Defendants' "characterizations." But that contention does not withstand scrutiny. The CFPB's responses use obvious misinterpretations of Defendants' statements, or of cited testimony or documents, as an excuse to add extraneous facts and make unsupported factual and legal arguments. For example:

- The CFPB denies quotations from a borrower's history that ███████ ███████ SUF ¶ 89, claiming this factual statement "effectively represents that Navient adequately informed the borrower . . . about IDR rather than steering him into forbearance," CFPB Opp. at 17.

- The CFPB denies quotations from a letter sent to a borrower, SUF ¶ 98, by arguing these quotations somehow "impl[y] that [the borrower] had made a 'request for forbearance,'" CFPB Opp. at 17.

- The CFPB claims that Defendants did not accurately describe the borrower's complaint, CFPB Opp. at 18 (discussing SUF ¶ 267), but rather than respond with portions of the complaint that Defendants purportedly omitted, the CFPB responds with more than a page of irrelevant material, unsupported legal argument, and assumptions about Navient's policies, PRSUF ¶ 267.

- The CFPB claims that Defendants inaccurately stated that the borrower "testified that any harm she suffered was 'in terms of . . . mak[ing] more

---

[7] Doc. 463 ¶ 2.

phone calls,'" SUF ¶ 285, claiming that the witness "did not" "limit[] her testimony in this way," CFPB Opp. at 18.  In fact, the quoted testimony was in response to a question of whether the witness suffered any "additional harms" "other than the frustration of having to call Navient," SUF Ex. 174 at 125:2–5, and the CFPB failed to point to any contrary testimony showing she suffered other harms.

This is not permissible, and the CFPB's extraneous responses in the following paragraphs should be struck.  *See* PRSUF ¶¶ 17–24, 29, 33, 37, 39, 44, 50–51, 69, 71, 73, 75, 77, 79, 81–82, 86–89, 98, 102, 105–06, 109–10, 114, 116–21, 126–27, 129, 132–35, 140–41, 146, 148, 154–57, 160–61, 163–65, 169–75, 177, 180, 182–83, 185–87, 189–90, 192, 195–97, 199, 201–02, 238, 243–44, 248–49, 267, 282, 285, 287–88, 296, 299, 301–03.

**IV.    THE CFPB FAILS TO EXCUSE ITS VIOLATION OF THE RULE THAT "THE PARTY RESPONDING TO ANY STATEMENT OF MATERIAL FACT IS PROHIBITED FROM ADDING ADDITIONAL LANGUAGE . . . INTENDED TO ADD . . . ARGUMENT EXTRANEOUS TO THE PARTY'S ADMISSION OR DENIAL"[8]**

Defendants moved to strike responses containing inappropriate argument or legal conclusions.  Doc. 525 at 15–19.  The CFPB offers essentially no response, instead merely asserting that it "appropriately responded" to supposedly "loaded" language or "argumentative interpretations" by Defendants.  CFPB Opp. at 18.  A review of the record demonstrates that the CFPB sought to avoid admitting facts by injecting argument.  By way of some examples:

---

[8] Doc. 463 ¶ 2.

- The CFPB claims that Defendants' statements that a borrower "enrolled in a forbearance," SUF ¶ 44, implied that "the borrower evaluated the options that were actually available and made a decision," CFPB Opp. at 19. *See also* SUF ¶¶ 107, 108.

- The CFPB claims that Defendants' simple factual statements that a borrower "did not apply for IDR," SUF ¶ 28, "assumed facts not in evidence," "for example, that the borrower evaluated the options that were actually available and made a decision," CFPB Opp. at 19. *See also* SUF ¶¶ 79, 87.

- The CFPB claims that Defendants' statement that "Navient sent [a borrower] information about IDR," SUF ¶ 48, implied that the borrower was "'informed' of certain concepts," CFPB Opp. at 19.[9]

- The CFPB claims that Defendants' statements that Navient has "sent" communications, SUF ¶¶ 216–217, 222, is somehow "not merely a factual assertion," CFPB Opp. at 20.

- The CFPB erroneously claims that SUF paragraphs 266, 305, and 314 are "argumentative interpretations of evidence." CFPB Opp. at 21. Paragraph 266 simply quotes from borrower complaints and makes the factual statements that certain facts are or are not contained in the complaints; paragraph 314 is a short factual explanation of what a particular credit reporting code means; and paragraph 305 is a straightforward and accurate assertion that a borrower did not experience financial consequences.[10]

- The CFPB objects, CFPB Opp. at 19, to Defendants' statement that "[b]efore granting a forbearance over the phone, Navient requires a borrower to agree that 'you are willing but temporarily unable to make your payments due to hardship' and that 'you may be eligible for repayment options, which include . . . income driven repayment plans,'" SUF ¶ 209, despite the fact that the borrower must "agree to these terms" before the forbearance is processed, SUF Ex. 111 at NAV-01723760–61.

---

[9] The CFPB likewise objects to the term "informed" in SUF paragraph 52, even though the CFPB admits the term is accurately quoted from a borrower's deposition, PRSUF ¶ 52.

[10] The CFPB offers no defense of its argumentative denials in paragraphs 265, 349, 350, or 356 except to state that they are "appropriate." CFPB Opp. at 21.

- The CFPB does not dispute that SUF Ex. 133 is a contract modification from July 2012 or that it contains the quoted language in SUF ¶ 227.  Its page-long explanation that the modification terms reflected "an existing requirement" is an extraneous and improper legal argument.  *See* PRSUF ¶ 227.  Likewise, its denials of SUF ¶ 228 reflect its improper legal interpretation of the obligations created by the contract.

The CFPB's extraneous argument in the following paragraphs must be struck.  *See* PRSUF ¶¶ 28, 44, 48, 52, 59, 61, 70, 76, 79, 83, 87, 107–08, 166, 209–10, 216–17, 221–22, 227–28, 230, 265–66, 305, 313–15, 318, 349–50, 356.

## V. DEFENDANTS' RESPONSE TO THE CFPB'S STATEMENT OF FACTS WAS PROPER

Rather than justify its responses, the CFPB seeks to deflect attention from its non-compliance by making conclusory accusations about Defendants' responses.  Defendants drafted their responses with the Local Rules and the Court's admonitions in mind.  Defendants fully expected to be held to those standards and believe that a review of Defendants' responses will show that the CFPB's accusations are unfounded.  (Tellingly, the CFPB did not move to strike Defendants' responses.)

As an initial matter, the CFPB concedes that Defendants did not deny facts they had no good faith basis to deny.  But the CFPB claims credit, asserting that its "facts were, on the whole, far more narrowly drafted . . . [so] Defendants were forced to admit many of them."  CFPB Opp. at 7.  In fact, the CFPB's Statement of Undisputed Material Facts ("PSUF") clearly violated this Court's rules, going so

far as to characterize 450 individual calls in a single paragraph. *See, e.g.* Defendants' Response to Plaintiff's Statement of Undisputed Material Facts ("RSUF") ¶¶ 149–51. Nevertheless, at great burden and expense, Defendants parsed through the CFPB's complex and compound assertions and only denied statements where it had both evidence and a good faith basis to do so. Indeed, Defendants admitted paragraphs even where the CFPB's record citations did not support them, but the facts were not in genuine dispute. *See, e.g.*, RSUF ¶ 185 (admitting certain language was used from January 2010 through December 2012, despite CFPB citing only templates updated in February 2012).

The CFPB's shotgun accusations generally fall into three categories: (1) where Defendants partially denied statements of fact and provided concise explanations and citations in support; (2) where Defendants denied a statement's materiality and provided an explanation; and (3) where Defendants responded to the CFPB's legal argument. All three categories of responses are entirely proper and stand in marked contrast to the CFPB's approach.

*Partial Denials.* Where the CFPB's statements were not fully supported by evidence, Defendants made partial denials and cited specific evidence that refuted the CFPB's statements, as required. Doc. 463 ¶ 3. Indeed, in the color-coded exhibit the CFPB attached to its opposition, the blue highlighted sections are the specific factual support for the partial denials. This stands in contrast to the

CFPB's approach of denying statements supported by evidence without providing *any* contrary evidence.  *See* CFPB Opp. at 12 (claiming that its approach was appropriate because Defendants supposedly "repeatedly confined their admissions to the specific date or version of the cited document," citing RSUF ¶¶ 110, 186, 375).[11]  In response to the specific paragraphs raised by the CFPB:

- Defendants denied the CFPB's statement that average call time "would disqualify an employee from receiving incentive-based compensation," citing to evidence that Navient used different incentive compensation programs in different divisions and at different times, and that the factors to qualify for incentive compensation varied by plan.  RSUF ¶ 110.

- Defendants denied the CFPB's statement, relying on a 2012 document, that particular language was used beginning in 2010, citing evidence that the language was added in 2011.  RSUF ¶ 186.

- Defendants admitted that a deponent testified he did not see particular documents, but denied the CFPB's claim that he had never seen "ED's guidance" before, pointing to evidence demonstrating how he received ED guidance.  RSUF ¶ 375.

- Defendants denied the claim that ED communicated a particular "understanding" to servicers as early as 2011, because the CFPB's statement misrepresented what ED said and the basis for that testimony, PSUF ¶ 50.[12]  The 2011 change request, through which ED communicated its understanding, did not support the CFPB's assertion that, as a general matter, "deferment and forbearance should not be the first option" for borrowers, PSUF ¶ 50.  *See* RSUF ¶ 50.  Rather, it

---

[11] Where the CFPB made broad assertions, citing examples, Defendants only denied where they had a good faith basis for doing so.  *See, e.g.*, RSUF ¶ 331 (admitting statement that certain language was used from February 2013 through March 2014, despite CFPB citing only examples from February 2013 and March 2014).

[12] Contrary to the CFPB's claims, CFPB Opp. at 4, Defendants' denial is not based on any distinction between the terms "expectation" and "understanding."

placed restrictions on granting forbearance to specific borrowers (those previously enrolled in forbearance for 36 months), based on an understanding that forbearance should not be the "first option" for *those* borrowers. *Id.*

- Defendants denied the CFPB's misleading reference to a document as a "strategy document," PSUF ¶ 64, where its title explicitly states that it is a document for "discussion," PSUF Ex. 66, and Defendants were unable to locate any evidence that the discussion in fact occurred.

- Defendants denied the CFPB's description of a document as showing that ███████████████████████████████████████████ ████████████████████████████████████ PSUF ¶ 121, where the cited document in fact stated that ███████████████████████ ████████████████████████████████RSUF ¶ 121.

- Defendants denied the CFPB's statement that a letter was revised "[i]n December 2012," PSUF ¶ 190, citing evidence that revisions occurred over the course of 2011 and 2012, RSUF ¶ 190.

- Defendants denied the CFPB's characterization of Pioneer's talk-offs as a "sample script," PSUF ¶ 342, citing contrary evidence demonstrating that they were not used as a script, RSUF ¶ 342.[13]

*Materiality.* The CFPB's opposition inaccurately ignores real differences in the parties' denials of materiality. Where Defendants denied the materiality of a statement, they provided a brief explanation, again citing facts in the record as required. *See, e.g.*, RSUF ¶¶ 123–24, 139, 143, 193–94, 215, 250–52, 265, 267, 344, 346, 363–64, 372, 375. In contrast, the CFPB used materiality denials as a

---

[13] Where the CFPB elsewhere inaccurately characterized or summarized testimony or documents, Defendants clarified what the quoted testimony or document actually said. *See, e.g.*, RSUF ¶¶ 57, 117, 159, 169, 241, 270, 271, 281, 287, 357, 359.

pretext to insert multiple pages of legal argument and extraneous factual material. *See, e.g.*, PRSUF ¶¶ 89, 141, 163, 175, 177, 186, 199, 200, 221, 266.

*Legal Argument.* Defendants did not introduce legal argument, but where the CFPB improperly made erroneous legal arguments in its statement, Defendants pointed it out. For example, where the CFPB misleadingly relied on only one section of the Credit Reporting Resource Guide to advance an incorrect legal interpretation of its guidance, PSUF ¶ 371, Defendants introduced necessary context, RSUF ¶ 371, to correct the CFPB's legal argument. And where the CFPB improperly argued that certain phone calls showed "complete reliance" on the part of borrowers and that representatives "fostered such reliance," PSUF ¶ 155; *see also id.* ¶ 156–57, Defendants merely responded to that legal argument with examples of contrary calls, RSUF ¶¶ 155–57.

## <u>CONCLUSION</u>

The CFPB's response to Defendant's Statement of Undisputed Facts should be struck in whole or in part. The statements corresponding to the struck responses should be deemed admitted.

Dated: September 15, 2020            Respectfully submitted,

/s/ Jonathan E. Paikin
Jonathan E. Paikin (DC 466445) (*pro hac vice*)
Daniel P. Kearney (DC 977148) (*pro hac vice*)
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
   Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
jonathan.paikin@wilmerhale.com
daniel.kearney@wilmerhale.com
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

Daniel T. Brier (PA 52348)
Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
dbrier@mbklaw.com
Tel: 570-342-6100
Fax: 570-342-6147

*Counsel for Navient Corporation, Navient Solutions, LLC, and Pioneer Credit Recovery, Inc.*

## CERTIFICATE OF WORD COUNT

I hereby certify in accordance with Local Rule 7.8(b)(2) that the foregoing document is 4,991 words.

<div style="margin-left: 40%;">

/s/ Karin Dryhurst
_____
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

</div>

Dated:  September 15, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2020, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

<div style="text-align: right;">

/s/ Karin Dryhurst
Karin Dryhurst (DC 1034290) (*pro hac vice*)
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
karin.dryhurst@wilmerhale.com
Tel: 202-663-6000
Fax: 202-663-6363

</div>