## <u>APPENDIX OF UNPUBLISHED OPINIONS</u>

A.      *Tarrant v. Northland Group, Inc.*,
        No. 3:10-CV-1204, 2012 WL 140431 (M.D. Tenn. Jan. 18, 2012)

B.      *Weitzner v. Sanofi Pasteur, Inc.*,
        No. 3:11-CV-02198, 2017 WL 3894888 (M.D. Pa. Sept. 6, 2017)



KeyCite Yellow Flag - Negative Treatment

Distinguished by Stephens v. Troy Capital, LLC, M.D.Tenn., May 4, 2015

2012 WL 140431
Only the Westlaw citation is currently available.
United States District Court,
M.D. Tennessee,
Nashville Division.

Gussie Belle TARRANT, Plaintiff,

v.

NORTHLAND GROUP, INC., Defendant.

No. 3:10–cv–1204.
|
Jan. 18, 2012.

**Attorneys and Law Firms**

Amy L. Bennecoff, Kimmel & Silverman, P.C., Ambler, PA,
Michael J. McNulty, McNulty & Associates, Nashville, TN,
for Plaintiff.

Kevin B. Wilson, Kevin B. Wilson Law Offices, Chattanooga,
TN, for Defendant.

*MEMORANDUM*

ALETA A. TRAUGER, District Judge.

**\*1** Pending before the court is the defendant's Motion for
Summary Judgment (Docket No. 15), to which the plaintiff
has responded (Docket No. 17), and the defendant has filed a
reply (Docket No. 18). For the reasons discussed herein, the
defendant's motion will be granted.

*FACTUAL BACKGROUND*

The plaintiff, Gussie Belle Tarrant ("Ms.Tarrant"), owes
a debt to Department Stores National Bank ("DSNB") in
connection with a Macy's charge account. [1] DSNB eventually
placed that debt with the defendant, Northland Group, Inc.
("Northland"), for collection on approximately September 8,
2009. [2] Northland subsequently sent a letter to the plaintiff
notifying her of the debt and advising her of her rights under
the Fair Debt Collection Practices Act ("FDCPA") to dispute
the debt. In addition, it made repeated attempts to reach Ms.

Tarrant telephonically over the course of approximately the
next four months, succeeding twice. This case arises from
those actions.

[1]   Unless otherwise noted, the facts are drawn from
the defendant's statement of undisputed facts
(Docket No. 15, Ex. 2), the plaintiff's responses
thereto (Docket No. 17, Ex. 3), the defendant's
reply (Docket No. 18, Ex. 1), and related exhibits.
The court draws all reasonable inferences in favor
of the non-moving party. *Matsushita Elec. Indus.
Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587,
106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Brown v.
United States,* 583 F.3d 916, 919 (6th Cir.2009).

[2]   The plaintiff neither admits nor disputes this
statement of fact, but instead simply states that she
"is without sufficient knowledge to admit or deny
this allegation." (*See* Docket No. 17, Ex. 3 ¶ 5.)
She responds to other paragraphs of the defendant's
statement of facts in the same fashion. (*See id.* ¶¶ 8,
11–13.) The plaintiff's response is improper under
both the Local Rules and Federal Rule of Civil
Procedure 56.

For instance, Local Rule 56.01(c) expressly
provides that any party opposing a summary
judgment motion "must respond to each fact
set forth by the movant by *either:* (i) agreeing
that the fact is undisputed; (ii) agreeing that
the fact is undisputed for the purpose of ruling
on the motion for summary judgment only; or
(iii) demonstrating that the fact is disputed."
M.D. Tenn. R. 56.01(c) (emphasis added).
Federal Rule of Civil Procedure 56 similarly
precludes a response like the plaintiff's, absent
an affidavit or declaration from the non-movant
explaining why it cannot present "facts essential
to justify its opposition." *See* Fed.R.Civ.P. 56(c)-
(d). Accordingly, the court will consider the facts
in paragraphs 5, 8, and 11–13 of the defendant's
statement of facts to be undisputed for the
purposes of this motion. *See* M.D. Tenn. R.
56.01(g) ("Failure to respond to a moving party's
statement of material facts ... within the time
periods provided by these Rules shall indicate
that the asserted facts are not disputed for
purposes of summary judgment."); Fed.R.Civ.P.
56(e) (providing that court may consider fact
undisputed for purposes of summary judgment

motion where party "fails to properly address another party's assertion of fact as required by Rule 56(c)").

After receiving the debt from DSNB, Northland sent a letter to Ms. Tarrant informing her of the debt and her right to dispute its validity on September 9, 2009. [3] This letter was one of two sent by Northland to Ms. Tarrant on that date. [4] It was sent to the plaintiff's home address in Old Hickory, Tennessee, [5] and it disclosed the amount of the debt ($373.22) and the name of the creditor to whom the debt was owed (DSNB/Macy's). The letter also contained the following disclosures:

[3]     While the plaintiff denies that Northland sent her a letter, the record evidence shows otherwise. Indeed, at her deposition, the plaintiff testified that she did not remember whether she received a letter from Northland notifying her of her right to dispute the debt under the FDCPA. (Docket No. 17, Ex. 2, Ex. A at 9–10, 29–30, 42.) In contrast, Northland submitted evidence demonstrating that it sent a letter to the plaintiff on September 9, 2009, disclosing her FDCPA rights. As per the affidavits of Greg Gruett, Northland's Executive Vice President of Operations, the company's account notes showed that a letter was sent to Ms. Tarrant on September 9, 2009. (Docket No. 15, Ex. 3 ¶¶ 1, 9; Docket No. 18, Ex. 2 ¶ 6.) Mr. Gruett stated that the account notes are created and kept in the ordinary course of business and are automatically generated each time a letter for a specific account is mailed or returned. (Docket No. 15, Ex. 3 ¶¶ 5, 9; Docket No. 18, Ex. 2 ¶¶ 4–5.) He added that he is personally familiar with Northland's practices and systems and fully understands "how to determine from [Northland's] regularly kept business records if a letter has been sent and/or returned." (Docket No. 18, Ex. 2 ¶¶ 1, 7.) Mr. Gruett similarly testified at his deposition that the account notes reflected that a letter was sent to the plaintiff on September 9, 2009, disclosing her FDCPA rights. (Docket No. 17, Ex. 2, Ex. B, at 28–30, 37.) Moreover, Don Plantenberg, the General Manager of Bridgz Marketing ("Bridgz"), Northland's vendor for printing and mailing letters, stated by affidavit that Bridgz printed the September 9, 2009 letter addressed to Ms. Tarrant disclosing her statutory rights and delivered it to the United States Postal

Service on September 9, 2009. (Docket No. 18, Ex. 4 ¶¶ 1, 6.) Mr. Plantenberg added that the postal service did not report this letter as being undeliverable. (Docket No. 18, Ex. 4, ¶ 6.)

[4]     The parties have neither attached the other September 9, 2009 letter to their summary judgment papers nor have they discussed its relevance to the issues presented in the instant motion.

[5]     It is undisputed that the plaintiff resided at the same address at all times relevant to this lawsuit.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice [,] this office will provide you with the name and address of the original creditor, if different from the current creditor.

After it was sent, this letter was not returned to Northland by the United States Postal Service for being undeliverable. Northland also unsuccessfully attempted to contact Ms. Tarrant telephonically on September 9, 2009. [6] This was the first of 39 calls Northland made to the plaintiff's home phone number [7] over the span of approximately four months in connection with its debt collection efforts. [8] Of those 39 calls, Northland successfully conversed with the plaintiff on only two occasions. Northland's first successful telephonic communication with the plaintiff occurred on October 29, 2009. During that conversation, the plaintiff informed the defendant's representative that she did not have any money to pay off her debt, did not know when she would have any money to do so, and was currently unemployed. The representative ended the conversation by stating that Northland would call her back. The second conversation occurred over two months later, on January 13, 2010, wherein Ms. Tarrant informed a Northland representative that she continued to lack a job or any money to pay the debt and hung up. After this conversation, Northland placed Ms. Tarrant's account on hold and made no further collection efforts before returning the account to DSNB on approximately March 8, 2010.

[6] Paragraph 13 of Mr. Gruett's affidavit contained a log displaying all the calls made by Northland to the plaintiff during the entire collection period, which commenced on September 9, 2009. (Docket No. 15, Ex. 3 ¶ 13.) The information contained in the log was obtained from Northland's company records.

[7] It is undisputed that the plaintiff maintained the same home phone number at all times relevant to this lawsuit. At her deposition, the plaintiff testified that Northland had also called her cell phone. (Docket No. 17, Ex. 2, Ex. A at 6.) The plaintiff, however, has offered no other corroborating evidence supporting this statement. Indeed, she has failed to adduce any evidence concerning the circumstances surrounding the defendant's alleged calls to her cell phone. The defendant, on the other hand, cites Mr. Gruett's affidavits, which state that there was no indication in Northland's account notes that the company ever called Ms. Tarrant on her cell phone. (Docket No. 15, Ex. 3 ¶ 11; Docket No. 18, Ex. 2 ¶ 8.) His affidavits add that the account notes automatically record the date and time of each attempted telephone contact. (Docket No. 15, Ex. 3, ¶ 5; Docket No. 18, Ex. 2 ¶¶ 4, 8.) He also stated that a search of Northland's telephone bills and statements turned up no calls to the plaintiff's cell phone number during the collection period. (Docket No. 18, Ex. 2 ¶ 8.)

[8] Because Ms. Tarrant filed this action on December 20, 2010, Northland argues that, pursuant to the FDCPA's one-year statute of limitations, the relevant time period from which to analyze its calls to Ms. Tarrant commenced on December 20, 2009. *See* 15 U.S.C. § 1692k(d). Yet, the undisputed record evidence reveals a pattern of repeated calls made by the defendant over an approximately four-month period beginning in September of 2009 and continuing into the one-year limitations period. Because the plaintiff alleges that these repeated calls constituted actionable harassment under the FDCPA, her claim does not involve discrete acts, and thus "cannot be said to occur on any particular day." *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Accordingly, the continuing violation

doctrine is applicable, and the entire course of the defendant's conduct will be analyzed in connection with the plaintiff's harassment claim. *See Joseph v. J.J. Mac Intyre Cos.,* 281 F.Supp.2d 1156, 1159–62 (N.D.Cal.2003) (analogizing FDCPA claims alleging debtor harassment arising from series of repeated phone calls to Title VII hostile work environment claims and concluding that, because such claims do not involve discrete acts, the continuing violation doctrine is applicable).

**\*2** In those instances when it was unable to reach Ms. Tarrant, Northland never left a message on her answering machine. It is undisputed that Northland did not say anything improper, threatening or abusive when it spoke to Ms. Tarrant, and there is no evidence that it otherwise attempted to deceive her. Moreover, during the course of Northland's attempts to reach her telephonically, Ms. Tarrant never told the defendant not to call her.[9]

[9] When asked at her deposition if she ever told Northland not to contact her anymore, the plaintiff testified that she mailed a document to the company asking them not to contact her. (Docket No. 17, Ex. 2, Ex. A at 13.) Yet, the plaintiff also testified that she had no idea when she sent this alleged document and added that she did not make any copies. (*Id.* at 13–14.) The plaintiff also had trouble recalling precisely what it was that she sent, apart from the fact that it was a document she had obtained from Legal Aid that purportedly contained some codes indicating that the recipient is not to call anymore. (*Id.*) Later, when she was asked for a second time if she ever told Northland not to call again, she stated "I don't know. I had so many calls that I don't know ... from different numbers, so I told a bunch of them not to call anymore." (*Id.* at 27.)

The only probative evidence in the record concerning this issue shows that Northland did not receive any correspondence from Ms. Tarrant. In his affidavits, Mr. Gruett stated that Northland's account notes automatically note when correspondence is received concerning a specific account. (Docket No. 15, Ex. 3 ¶ 5; Docket No. 18, Ex. 2 ¶ 4.) He added that the company's account notes showed that Northland received no correspondence in connection with Ms. Tarrant's account. (*Id.*)

2012 WL 140431

At her deposition, the plaintiff testified that, aside from Northland, she received calls from other debt collectors. (Docket No. 17, Ex. 2, Ex. A at 27.) Indeed, the plaintiff had filed a separate lawsuit in this district involving another debt collector's alleged conduct during the same time period as the instant action. *See Tarrant v. Richard J. Boudreau & Assocs.,* No. 3:10–cv1205 (M.D. Tenn., filed Dec. 20, 2010). The factual allegations in that suit were virtually identical to those underlying the present action.

The plaintiff commenced this suit on December 20, 2010, alleging violations of the FDCPA. In particular, Ms. Tarrant alleges that Northland violated the FDCPA by: (1) failing to send her written notification within five days of its initial communication with her disclosing the debt owed to DSNB and her right to dispute it; and (2) making repeated or continuous telephone calls with the intent to harass her. (Docket No. 1 ¶¶ 12, 16, 23.) These acts are alleged to violate 15 U.S.C. §§ 1692g(a), 1692d, 1692d(5), and 1692(f). Northland filed the pending motion on November 14, 2011.

## ANALYSIS

### I. Standard of Review

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren,* 578 F.3d 351, 374 (6th Cir.2009); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan,* 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

At this stage, " 'the judge's function is not ... to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.' " *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's

proof must be more than "merely colorable." *Anderson,* 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan,* 578 F.3d at 374 (citing *Anderson,* 477 U.S. at 252).

## II. The Defendant's Motion

**\*3** The defendant has moved for summary judgment as to the plaintiff's claim under the FDCPA. This statute was enacted by Congress to eliminate "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). Conduct that is alleged to violate the FDCPA is analyzed under the "least sophisticated consumer" standard, which is an objective test. *Hartman v. Great Seneca Fin. Corp.,* 569 F.3d 606, 611–12 (6th Cir.2009). This standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Smith v. Computer Credit, Inc.,* 167 F.3d 1052, 1054 (6th Cir.1999).

In the present motion, Northland specifically contends that it is entitled to summary judgment on the plaintiff's 15 U.S.C. § 1692g(a) claim alleging that it failed to send her written notice disclosing the debt she owed to DSNB and her right to dispute that debt. [10] It also argues that summary judgment is proper as to the plaintiff's claim that Northland's frequent telephone calls were harassing in nature and thus violated § 1692d and, more specifically, § 1692d(5). Finally, it seeks summary judgment as to the plaintiff's § 1692(f) claim alleging that Northland used unfair or unconscionable means to collect or attempt to collect a debt. The court will address each of these arguments in turn.

[10] The defendant also argues that the plaintiff's § 1692g(a) claim is time-barred under the FDCPA's one-year statute of limitations. However, the defendant raised this argument for the first time in its reply brief. Such arguments "are generally not considered because such a practice deprives the non-moving party of its opportunity to address the new arguments." *G.C. ex rel. Johnson v. Wyndham Hotels and Resorts, LLC,* No. 2:10–cv–0037, 2011 WL 1930557, at \*4 (M.D.Tenn. May 19, 2011) (internal quotation marks and citation omitted).

### A. Failing to Send Written Notice in Violation of 15 U.S.C. § 1692g(a)

Section 1692g(a) requires a debt collector to send a consumer written notice containing the amount of the debt, the name

of the creditor, and a description of the procedures by which the consumer can dispute the debt and obtain the name and address of the original creditor. 15 U.S.C. § 1692g(a). The statute specifically provides that:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing —
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*Id.* The plaintiff alleges that Northland failed to send her a letter within 5 days of its initial communication with her containing the required disclosures.

 **\*4**  The undisputed record evidence shows that Northland sent a letter to Ms. Tarrant on September 9, 2009 containing all of the required statutory disclosures. The September 9th letter stated the amount of the debt ($373.22) and the name of the creditor (DSNB/Macy's). In addition, it informed the plaintiff how she could dispute the debt and obtain the name and address of the original creditor, if different from the current creditor. Indeed, the letter virtually restated the disclosures required by subsections (3)-(5) of § 1692g(a):

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice [,] this office will provide you with the name and address of the original creditor, if different from the current creditor.

Moreover, after this letter was sent to Ms. Tarrant, it was not returned to Northland by the United States Postal Service for being undeliverable.

The aforementioned disclosures were also made in Northland's initial communication with the plaintiff. The letter in which the disclosures concerning the plaintiff's FDCPA rights were made was one of two that Northland sent to Ms. Tarrant on September 9, 2009. [11] The mailing of both of those letters constituted a communication for purposes of the FDCPA, since it is undisputed that one of the two letters conveyed "information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Moreover, it is undisputed that the mailing of both of those letters represented the first communication Northland made with the plaintiff, as they were sent well before Northland successfully reached Ms. Tarrant telephonically for the first time on October 29, 2009.

[11]    As previously noted, the parties have discussed neither the contents of the other September 9th letter nor its relevance to the issues presented in the instant motion.

The plaintiff denies that Northland sent her a letter containing the required disclosures and contends that there instead remains a genuine dispute as to this fact precluding summary judgment. Yet, at her deposition, the plaintiff testified only that she did not remember whether she received the September 9th letter containing the required FDCPA disclosures. (Docket No. 17, Ex. 2, Ex. A at 9–10, 29–30, 42.)

2012 WL 140431

The plaintiff has otherwise presented no evidence supporting her assertion that the letter was not sent.

In contrast, Northland has presented probative evidence showing that it sent a letter to Ms. Tarrant on September 9, 2009 containing the required disclosures. For instance, according to the affidavit of Greg Gruett, Northland's Executive Vice President of Operations, the company's account notes, which are automatically generated each time a letter for a specific account under collection is either mailed or returned, showed that the letter was sent to Ms. Tarrant on September 9, 2009. (Docket No. 15, Ex. 3 ¶¶ 1, 5, 9; Docket No. 18, Ex. 2 ¶¶ 1, 4, 6.) Mr. Gruett testified to the same effect at his deposition. (Docket No. 17, Ex. 2, Ex. B at 28–30, 37.) Mr. Gruett also stated that he is personally familiar with Northland's practices and systems, that its account notes are created and kept by the company in the regular course of business, and that he fully understands "how to determine from [Northland's] regularly kept business records if a letter has been sent and/or returned." (Docket No. 15, Ex. 3 ¶ 5; Docket No. 18, Ex. 2 ¶¶ 1, 5, 7.) Moreover, Don Plantenberg, the General Manager of Bridgz Marketing ("Bridgz"), the vendor enlisted by Northland to print and deliver its letters, stated by affidavit that Bridgz printed the September 9, 2009 letter addressed to Ms. Tarrant containing the aforementioned disclosures and delivered it to the United States Postal Service on September 9, 2009. (Docket No. 18, Ex. 4 ¶¶ 1, 6.) Mr. Plantenberg added that the postal service did not report this letter as being undeliverable. (Docket No. 18, Ex. 4, ¶ 6.) "A letter mailed properly 'creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed,' " *Crosby v. Rohm & Haas Co.,* 480 F.3d 423, 430 (6th Cir.2007) (*quoting Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932)), and Ms. Tarrant's mere assertion denying that the September 9th letter was sent is not enough to rebut this presumption.

**\*5** In sum, the plaintiff has failed to present any evidence from which a reasonable juror could conclude that the September 9, 2009 letter containing the required statutory disclosures was not actually sent by Northland. Accordingly, the court will grant summary judgment to the defendant on the plaintiff's § 1692g(a) claim.

**B. Causing a Telephone to Ring With Intent to Annoy, Abuse, or Harass in Violation of 15 U.S.C. § 1692d(5)**

The plaintiff alleges that Northland's repeated telephone calls to her in connection with her debt violated 15 U.S.C. § 1692d and, more specifically, § 1692d(5). Under the statute:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> ....
>
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

15 U.S.C. § 1692d. Ms. Tarrant alleges that the frequency of the defendant's repeated telephone calls were harassing in nature and thus violated § 1692d(5).

In determining whether Northland's "calls amount to harassment, annoyance, or abuse, the volume of calls must be examined along with the pattern in which they were made and whether or not they were accompanied by oppressive conduct." *Daniel v. West Asset Mgmt., Inc.,* No. 11–10034, 2011 WL 5142980, at \*4 (E.D.Mich. Oct.28, 2011) (*quoting Pugliese v. Prof. Recovery Serv., Inc.,* No. 09–12262, 2010 WL 2632562, at \*9 (E.D.Mich. June 29, 2010). Moreover, a significant disparity between the number of telephone calls attempted by the defendant and the number of actual conversations with the plaintiff may suggest a difficulty in reaching the plaintiff, as opposed to an intent to harass. *Saltzman v. I.C. Sys., Inc.,* No. 09–10096, 2009 WL 3190359, at \*7 (E.D.Mich. Sept.30, 2009); *see also Hicks v. Am. Recovery Solutions, LLC,* No. 1:09 cv 2650, 2011 WL 4540755, at \*6 (N.D.Ohio Sept.29, 2011). There is, however, no bright line rule as to the number of telephone calls that raises the inference of intent. *Hicks,* 2011 WL 4540755, at \*6 (noting the disagreement among courts in different jurisdictions regarding the number of calls giving rise to inference of intent).

Having considered the record before it, the court concludes that no reasonable juror could find that the defendant's conduct demonstrated an intent to annoy, abuse, or harass Ms. Tarrant. Aside from citing the frequency of Northland's calls, Ms. Tarrant has failed to adduce any evidence concerning these calls that might reasonably raise an inference of an intent to harass. Indeed, it is undisputed that the defendant

said nothing improper, threatening, or abusive when it spoke to Ms. Tarrant. It also did not leave any messages on Ms. Tarrant's answering machine when it was unable to reach her.

 **\*6**  As to call frequency, while the plaintiff testified at deposition that Northland called her virtually every day, she did not recall any specific circumstances surrounding those calls and later testified that she received many calls from different debt collectors. (Docket No. 17, Ex. 2 Ex. A at 27.) Indeed, the only probative evidence in the record concerning the frequency and pattern of calls comes from the defendant, and the plaintiff has not suggested how this evidence demonstrates an intent to harass. The evidence shows that Northland made 39 calls over the approximately 4–month debt collection period. During that time, it is undisputed that Ms. Tarrant never told Northland not to call her. Moreover, of the 39 calls placed by Northland, only two resulted in actual conversations with Ms. Tarrant. This significant disparity suggests that Northland had difficulty in reaching Ms. Tarrant, rather than an intent to harass her. *See Saltzman,* 2009 WL 3190359, at \*6–7 (granting summary judgment to defendant on § 1692d(5) claim when defendant placed between twenty and fifty unsuccessful telephone calls and between two and ten successful calls during approximately one month time-period); *see also Fry v. Berks Credit & Collections, Inc.,* No. 3:11 cv 281, 2011 WL 6057781, at \*4 (N.D.Ohio Nov.17, 2011) (recommending summary judgment for defendant on § 1692d(5) claim when defendant placed 68 unsuccessful phone calls over approximately two-month period, had only one successful contact with the debtor's spouse, and no contact with the debtor), *rep't and rec. adopted,* No.3:11 cv 281, 2011 WL 6057695, at \*1 (N.D.Ohio Dec.6, 2011); *Pugliese,* 2010 WL 2632562, at \*9–10 (granting summary judgment to defendant on § 1692d(5) claim when defendant placed approximately 350 telephone calls over an eight-month period, but only had about 10 actual conversations with the plaintiffs).

Ms. Tarrant nonetheless contends that there is a question of fact as to whether Northland intended to make harassing calls because she mailed a document to the company requesting that they cease calling her. (Docket No. 17, Ex. 2 Ex. A at 13.) Yet, Ms. Tarrant's deposition testimony on this subject is inconclusive at best. After stating that she mailed a document to Northland, she testified that she had no idea when it was sent, did not make any copies of it, and was not sure precisely what it was that she sent. (*Id.* at 13–14.) Moreover, later in her deposition, when she was again asked if she ever told Northland not to call her, she stated

"I don't know. I had so many calls that I don't know ... from different numbers, so I told a bunch of them not to call anymore." (*Id.* at 27.) Here again, the only probative evidence in the record on this issue was presented by the defendant and shows that Northland did not receive any correspondence from Ms. Tarrant. Specifically, Mr. Gruett stated in his affidavits that Northland's account notes, which automatically note when correspondence is received concerning a specific account, revealed that Northland received no correspondence in connection with Ms. Tarrant's account. (Docket No. 15, Ex. 3 ¶ 5; Docket No. 18, Ex. 2 ¶ 4.)

 **\*7**  The plaintiff has not met her burden to produce evidence showing that there is a genuine dispute of material fact concerning her § 1692d(5) claim. As she has failed to adduce any evidence from which a reasonable juror could conclude that Northland acted intentionally to harass her, summary judgment will be granted, and the § 1692d(5) claim will be dismissed.

### C. Using Unfair or Unconscionable Means to Collect or Attempt to Collect a Debt in Violation of 15 U.S.C. § 1692f

Section 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Without limiting its general application, this provision provides that the following conduct constitutes a violation:

(1) the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

(3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

(4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

(5) Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—

(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

(B) there is no present intention to take possession of the property; or

(C) the property is exempt by law from such dispossession or disablement.

(7) Communicating with a consumer regarding a debt by post card.

(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

*Id.* Section 1692f allows a court to "sanction improper conduct that the FDCPA fails to address specifically." *Adams*

*v. Law Offices of Stuckert & Yates,* 926 F.Supp. 521, 528 (E.D.Pa.1996). Yet, in applying this section, courts "have focused on conduct of a nature similar or comparable to that listed in the statute—conduct that essentially amounts to a form of abuse not falling under another section." *Watson v. NCC Recovery, Inc.,* No. 1:11 cv 101, 2011 WL 3322844, at *5 (N.D.Ohio Aug.2, 2011) (citing *Adams,* 926 F.Supp. at 528).

**\*8** While Ms. Tarrant alleges that Northland violated § 1692f, she does not specify any conduct to support her § 1692f claim other than the allegedly harassing phone calls made during the debt-collection period. However, that conduct is specifically addressed under § 1692d(5) and the court has already disposed of the plaintiff's claim asserted under that section. Accordingly, summary judgment will be granted to the defendant, and the § 1692f claim will be dismissed.

### CONCLUSION

Based on the foregoing, the defendant's Motion for Summary Judgment (Docket No. 15) will be **GRANTED.**

An appropriate order will enter.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 140431

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

B

Case 3:17-cv-00101-RDM  Document 539-1  Filed 09/15/20  Page 12 of 24

Weitzner v. Sanofi Pasteur, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3894888

2017 WL 3894888
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Ari WEITZNER and Ari Weitzner, M.D.,
P.C., Individually and on Behalf of All
Others Similarly Situated, Plaintiffs,

v.

SANOFI PASTEUR, INC., formerly known as
Aventis Pasteur Inc., and Vaxserve, Inc., formerly
known as Vaccess America, Inc., Defendants.

CIVIL ACTION NO. 3:11-CV-02198
|
Signed 09/06/2017

**Attorneys and Law Firms**

Daniel A. Osborn, Osborn Law PC, New York, NY, P.
Timothy Kelly, Mattise & Kelly PC, Scranton, PA, Todd C.
Bank, Law Office of Todd C. Bank, Kew Gardens, NY, for
Plaintiffs.

Carl J. Greco, Jennifer Menichini, Greco Law Associates,
P.C., Scranton, PA, for Defendants.

**MEMORANDUM**

A. Richard Caputo, United States District Judge

 **\*1**  This case concerns a number of facsimiles that were
allegedly sent from Defendants to Plaintiffs in violation of the
Telephone Consumer Protection Act of 1991 ("TCPA"), 47
U.S.C. § 227(b)(1)(C).

Presently before the Court is: (1) a Motion to Strike
the November 29, 2016 Declaration of Ari Weitzer, M.D
("Third Weitzner Declaration") filed by Defendants Sanofi
Pasteur, Inc., and Vaxserve, Inc. (collectively "Defendants");
(2) a Motion to Strike Plaintiffs' Answer to Defendants'
Statement of Facts filed by Defendants; (3) a Motion for
Summary Judgment filed by Defendants; and (4) a Motion
for Class Certification filed by Plaintiffs Ari Weitzner and
Ari Weitzner, M.D., P.C. (collectively "Plaintiffs"). Because
the Third Weitzner Declaration is not a sham affidavit
and the information it contains is capable of admission at
trial, the Motion to Strike the Third Weitzner Declaration
will be denied. The Motion to Strike Plaintiffs' Answer to

Defendants' Statement of Facts, however, will be granted
in part as Plaintiffs' failed to comply with the Local Rules.
Defendants' Motion for Summary Judgment will be granted
in its entirety because American Pipe tolling does not apply
to shield those who initiated a prior action and subsequently
assert the same facts and claims in a new action. Because
Defendants' Motion for Summary Judgment will be granted,
Plaintiffs' Motion for Class Certification will be moot.

**I. Factual Background**

**A. The Parties**

 *1. Plaintiffs:*

Plaintiff Ari Weitzner, M.D. ("Dr. Weitzner"), is an
ophthalmologist who previously maintained his office in
Brooklyn, New York. (Doc. 1, ¶ 6). Dr. Weitzner is currently
employed as an employee of Union Square Eye Care. (Doc.
106, ¶ 8). Previously, Dr. Weitzner practiced though his own
professional corporation, Ari Weitzner, M.D., P.C. (Doc. 116,
¶ 2).

Ari Weitzner, M.D., P.C. ("P.C."), is also a Plaintiff in the
instant case. (Doc. 1, ¶ 7). The P.C. is a New York corporation
that maintains an "active" status with the New York Secretary
of State. (Doc. 116, Ex. A). While the P.C. remains active
on paper, it is undisputed that the P.C. has closed; it has no
assets, and no employees. (Doc. 106, ¶¶ 7, 44-46). Notably,
Dr. Weitzner is the sole shareholder of the P.C. (Doc. 106, ¶ 6).

 *2. Defendants:*

Defendant Sanofi Pastuer, Inc. ("Sanofi") is a Delaware
corporation that manufactures vaccines. (Doc. 106, ¶ 1).
Defendant VaxServe, Inc. ("VaxServe") is a pharmaceutical
distribution company based in Pennsylvania. (Doc. 106, ¶
2). VaxServe is a wholly owned subsidiary of Sanofi, with a
separate board of directors, business records, employees, and
principal place of business. (Doc. 106, ¶ 3).

**B. Conduct at Issue:**

Beginning on or prior to April 21, 2004, Plaintiffs allege
that Defendants were engaged in a nationwide fax-advertising
campaign in order to promote the sale of commercial
products. (Doc 1, ¶¶ 10-11, 17).

On April 21, 2004, Plaintiffs received a fax advertisement
("First Fax") via the fax machine at the offices of the P.C.

Case 3:17-cv-00101-RDM Document 539-1 Filed 09/15/20 Page 13 of 24

Weitzner v. Sanofi Pasteur, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3894888

(Doc. 106, at 23, 26). The First Fax offered discounts on pharmaceutical goods by various manufacturers. (Doc. 87, Ex. A). The fax denoted "VaxServe" in the upper right-hand corner. (Doc. 87, Ex. A). The fax does not indicate that it was sent by any party other than VaxServe. (Doc. 87, Ex. A; Doc. 106, at 25). Plaintiffs claim [1] to have received a second fax, also marked with the "VaxServe" stamp, on March 22, 2005 ("Second Fax"). (Doc. 116, at ¶ 7, Ex. C). The parties dispute who received the First and Second Fax. But, it has been admitted that the fax machine and number that received both faxes were registered to Dr. Walter Weitzner (Doc. 106, 27-29).

[1]    While this suit has been ongoing since November 28, 2011, Plaintiffs have mentioned the existence of the Second Fax for the first time in their Brief in Opposition to Defendants' motion for Summary Judgment.

 **2**  VaxServe admits to sending a number of advertisements during the time alleged by Plaintiffs; sending such advertisements were part of the company's business. (Doc. 106, ¶¶ 68-69). The decision regarding what products to include on any given advertisement was made internally at VaxServe. (Doc. 106, ¶ 68). In fact, none of the manufacturers, including Defendant Sanofi Pasteur, paid to include their products on the advertisements that were subsequently faxed. (Doc. 106, ¶ 69). In the instant matter, neither Plaintiffs nor Defendants are aware of how VaxServe came to possess the number for the fax machine in Dr. Weitzner's office. (Doc. 106, ¶¶ 70-73).

It was Dr. Weitzner's practice to collect unsolicited faxes received at his office and send them to Attorney Todd Bank, one of Plaintiffs' attorneys, once a week. (Doc. 106, ¶ 20). After reviewing the faxes that were passed to him by Dr. Weitzner, Attorney Bank would file charges against the company responsible for the unsolicited faxes. (Doc. 106, ¶ 21). [2]

[2]    Dr. Weitzner has filed at least 17 similar actions alleging violations of the TCPA. (Doc. 106, ¶ 33).

## C. The Complaint:

On November 26, 2011 Plaintiffs' filed this putative class action in this Court, alleging a violation of the TCPA. The class that Plaintiffs allege to represent has shifted a number of times over the course of this litigation. First, the Complaint defined the putative class as:

> [A]ll persons or entities (I) whose fax numbers were licensed, rented, or purchased by Defendants VaxServe or Sanofi from List Strategies, Inc.; (ii) whose fax numbers did not exist in Defendants' database on the date of Defendants' receipt thereof from List Strategies, Inc.; and (iii) who received an unsolicited fax advertisement transmitted to them on behalf of Defendants by VisionLab, Inc., Westfax, Inc., or Velofax LLP between February 14, 2005 and the date of the resolution of this lawsuit.

(Doc. 106, ¶ 15). But, in Plaintiffs' Memorandum in Support of their Motion for Class Certification, Plaintiffs identify the putative class as:

> [A]ll persons or entities to whom VisionLab, Inc., WestFax, Inc. or Velofax LLP sent facsimiles on behalf of Defendants between February 14, 2005 and the date of the resolution of this lawsuit for whom Defendants' only source of the name of the recipient was a list that had been provided to Defendants by List Strategies, Inc.

(Doc. 106, ¶ 16). Yet another change in the definition of the class is evident in Dr. Weitzner's Declaration in Support of the Motion for Class Certification. There, Plaintiffs defined the putative class as:

> [A]ll persons or entities that, between February 14, 2005, and the date of the resolution of this lawsuit, received faxes that were sent to them solely as a result of their fax numbers having

Case 3:17-cv-00101-RDM Document 539-1 Filed 09/15/20 Page 14 of 24

Weitzner v. Sanofi Pasteur, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3894888

been provided to the defendants by a
company called List Strategies, Inc.

(Doc. 106 ¶ 17). Lastly, in the Third Weitzner Declaration
and Plaintiffs' Memorandum in Opposition to Defendants'
Motion to Strike, Plaintiffs make a final revision and define
the class as beginning on February 14, 2001 and ending at the
resolution of this action. (Doc. 152, at 19).

## II. Procedural Background

### A. The State Court Action:

Litigation remains pending in the Lackawanna County Court
of Common Pleas involving Dr. Weitzner and the same
Defendants for an alleged TCPA violation stemming from
the same April 21, 2004 fax. (Doc. 106, ¶ 32). Dr. Weitzner
commenced the state-court action with the filing of a class
action complaint on February 14, 2005, seeking to represent a
class of persons who received unsolicited fax advertisements
from Defendants. The class identified in the state-court action
was defined as: "[Dr. Weitzner] and all other individuals who
received an unsolicited fax advertisement from Defendants
between January 2, 2001 and the date of the resolution of this
lawsuit." (Doc. 106, ¶ 31). Notably, the P.C. was neither a
named-plaintiff nor identified as a putative class member in
the state-court action. (Doc. 106 ¶¶ 34-36).

**\*3** On June 27, 2008, Judge Minora [3] issued an opinion and
order ruling on Defendants' motion for summary judgment
and Dr. Weitzner's motion to amend the complaint's class
definition. (Doc. 106, ¶ 50). The opinion concluded that a
class could include only Pennsylvania-resident fax recipients,
rather than the proposed nationwide class, and held that Dr.
Weitzner was not a proper representative plaintiff for class
action purposes. (Doc. 106, ¶ 50). Additionally, Judge Minora
found that Dr. Weitzner presented unique questions of fact
that would not be common to the class. (Doc. 106, ¶ 52). Judge
Minora permitted Dr. Weitzner to proceed on his individual
TCPA claim, but found that a two-year statute of limitations
applied to the TCPA claims under Pennsylvania law, and thus
limited Dr. Weitzner's claims to faxes he received within two
years of the date on which the complaint was filed. (Doc. 106,
¶ 50).

[3]

Judge Carmen D. Minora served as the presiding
judge in *Weitzner v. Sanofi Pasteur, Inc.* in the
Court of Common Pleas of Lackawanna County.

On July 25, 2008, Dr. Weitzner filed a notice of appeal from
the state court's June 27, 2008 order. On June 3, 2009, the
Superior Court concluded that the appeal was interlocutory
and premature, and therefore quashed the appeal. The
Superior Court noted that no motion for class certification was
ever filed or decided by the Court of Common Pleas.

### B. The Federal Action:

Plaintiffs commenced this action on November 26, 2011.
(Doc. 1). On February 6, 2012, Defendants filed their Motion
for Abstention, or in the alternative, to Dismiss Plaintiffs'
Complaint pursuant to Federal Rule of Civil Procedure 12(b)
(6), or, in the alternative, to Stay Proceedings. (Doc. 20).
On May 14, 2012, this Court denied Defendants' Motion,
specifically noting that it was not clear from the face of the
complaint that the statute of limitations barred the current
action, and thus it was not appropriate to dismiss at that
time. (Doc. 37). The Court also declined to address the
applicability, if any, of *American Pipe* tolling at that time.
(Doc. 37, at 15).

On November 12, 2013, Defendants filed their Answers and
Affirmative Defenses to Plaintiffs' Complaint. (Doc., at 57,
58). Just three days later, on November 15, 2013, Defendants
served Offers of Judgment pursuant to Federal Rule of Civil
Procedure 68 upon Plaintiffs; offering for judgment to be
entered against Defendants for the maximum statutory relief
available to Plaintiffs. (Doc. 60-1, at 1-2). Defendants filed
a Motion to Dismiss pursuant to Federal Rule of Civil
Procedure 12(b)(1) on December 4, 2013. (Doc. 59). This
Motion was denied by this Court by Order and Opinion dated
March 12, 2014. (Doc. 68). The Third Circuit affirmed on
April 6, 2016.

Plaintiffs' filed the instant Motion for Class Certification
on June 28, 2016. (Doc. 86). Defendants filed the instant
Motion for Summary Judgment on October 17, 2016. (Doc.
104). Pursuant to the Local Rule of the Middle District of
Pennsylvania, Defendants filed a Statement of Facts detailing
the material facts at issue in the litigation. Plaintiffs filed their
Answer to Defendants' Statement of Facts on November 29,
2016. (Doc. 118). Defendants have also filed two Motions
to Strike: Motion to Strike November 29, 2016 Declaration
of Ari Weitzner, M.D. (Doc. 143), and Motion to Strike
Plaintiffs' Answer to Defendants' Statement of Facts. (Doc.

Case 3:17-cv-00101-RDM   Document 539-1   Filed 09/15/20   Page 15 of 24

Weitzner v. Sanofi Pasteur, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3894888

145). These Motions were filed on January 27, 2017. All four Motions pending in this action are ripe for review.

### III. Legal Standard

#### A. Motion to Strike

Defendants move to strike the Third Weitzner Declaration and portions of Plaintiffs' Answer to Defendants' Statement of Facts from the record. Although neither Rule 56 nor Local Rule 56.1 specifically provide for a motion to strike, courts have held that a party wishing to challenge statements of fact made by opponents for defect under either Rule should move to strike, or face waiver of their objection. *See, e.g.*, *In Re Unisys Sav. Plan Litig.*, 74 F.3d 420, 437 n.12 (3d Cir. 1996) (explaining that the proper vehicle for an objection to a violation of Rule 56 is a Motion to Strike); *Hartshorn v. Throop Borough*, No. 3:07-CV-01333, 2009 WL 761270, at *8–9 (M.D. Pa. Mar. 19, 2009) (striking Plaintiffs' Statement of Facts from the record for non-compliance with Local Rule 56.1).

**\*4** Federal Rule of Civil Procedure 56 notes that affidavits in support or opposition to a motion for summary judgment shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. FED.R.CIV.P. 56(c)(4). If portions of an affidavit do not meet this standard, it is appropriate for the court to disregard the deficient portions of the record for the purpose of resolving a motion for summary judgment. *See In Re Unisys Sav. Plan Litig.*, 74 F.3d at 437 n.12.

Further, The United States District Court for the Middle District of Pennsylvania provides in its Local Rules that:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P.56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried. The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried. Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the *statement required to be served by the opposing party.*

Local Rule 56.1. The purpose of this rule is to "structure a party's summary judgment legal and factual theory into a format that permits and facilitates the court's direct and accurate consideration of the motion." *Gantt v. Absolute Machine Tools, Inc.*, No. 1:06-CV-1354, 2007 WL 2908254, at *3 (M.D. Pa. Oct. 4, 2007). It is well settled in this jurisdiction that a court "will adopt Defendants' Statement of Facts, except for those facts clearly disputed by Plaintiff with adequate record references." *McLaud v. Indus. Res.*, No. 3:14-CV-00737, 2016 WL 7048987 at *1 n.1 (M.D. Pa. Dec. 5, 2016); *see also United States ex rel. Paranich v. Sorgnard*, 286 F.Supp.2d 445, 448 n.3 (M.D. Pa. 2003); *N.J. Mfrs. Ins. Co. V. Brady*, No. 3:15-CV-02236, 2017 WL 264457 at *2 n.1 (M.D. Pa. Jan. 20, 2017). Alternatively, if the party opposing summary judgment fails to comply with the Local Rule it is within the courts discretion to strike the offending Statement of Facts. *See Hartshorn*, 2009 WL 761270, at *8–9.

#### B. Motion for Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Case 3:17-cv-00101-RDM   Document 539-1   Filed 09/15/20   Page 16 of 24

Weitzner v. Sanofi Pasteur, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3894888

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 247-48, 106 S.Ct. 2505. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**\*5** When considering whether there are genuine issues of material fact, the court is required to "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57, 106 S.Ct. 2505. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

In order to prevail on a motion for summary judgment, the non-moving party must show "specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing FED. R. CIV. P. 56(e)). Although the non-moving party's evidence may be either direct or circumstantial, and "need not be as great as a preponderance, the evidence must be more than a scintilla." *Id.* (quoting *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the

matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

## IV. Discussion

### A. Motion to Strike November 29, 2016 Declaration of Ari Weitzner, M.D.:

Defendants' now argue that the Third Weitzner Declaration was improper, and thus the Declaration and any reference to it should be stricken. Defendants' base their claim of impropriety on three grounds. First, Defendants invoke the Sham Affidavit Doctrine to argue that the Third Weitzner Declaration must be stricken as it disputes Dr. Weitzner's earlier sworn testimony without providing an adequate explanation for the conflict. Second, Defendants' argue that Dr. Weitzner lacked the personal knowledge required to author a Declaration compliant with Federal Rule of Civil Procedure 56(c). Third, Defendants contend that the Declaration serves to impermissibly expand the class definition in such a way that unduly prejudices the Defendants.

Plaintiffs do not directly address whether the Third Weitzner Declaration should be considered under the Sham Affidavit Doctrine, but do point to independent evidence to bolster the Declaration. Further, Plaintiffs fail to directly address whether Dr. Weitzner had the requisite personal knowledge of the claims and transactions in the Declaration and in the Complaint. However, Plaintiffs do argue that the information in the Declaration is capable of admission at trial and as such should be considered at summary judgment. Finally, Plaintiffs argue that the expansion of the class definition does not unduly prejudice the Defendants.

### 1. *The Sham Affidavit Doctrine does not bar the Third Weitzner Declaration.*

While the Federal Rules of Civil Procedure do not address how courts should address contradictory affidavits, the United States Court of Appeals for the Third Circuit ("Third Circuit") has held that "a party may not create a material issue of fact to defeat summary judgment by filling an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conduct." *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004) (citing *Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991)). "This principle of summary judgment practice is often referred to as the 'sham affidavit doctrine.' " *Price v. Trans Union, LLC*, 737 F.Supp.2d 281,

Case 3:17-cv-00101-RDM Document 539-1 Filed 09/15/20 Page 17 of 24

Weitzner v. Sanofi Pasteur, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3894888

286 (E.D. Pa. 2010) (internal citation omitted). The doctrine's purpose is to remove from the record any "affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement *solely* for the purpose of defeating summary judgment." *York Int'l Corp. V. Liberty Mut. Ins. Co.*, No. 1:10-CV-0692, 2015 WL 4162981, at *15 (M.D. Pa. July, 9, 2015) (emphasis added). To that end, the doctrine permits a district court to disregard an "affidavit that is submitted in opposition to a motion for summary judgment when the affidavit contradicts the affiant's prior deposition testimony." *Baer*, 392 F.3d at 624.

**\*6** Some courts have adopted a strict interpretation of the Sham Affidavit Doctrine. These courts will strike *any* affidavit that contradicts prior sworn deposition testimony. *See, e.g., Jones v. General Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991) ("[I]t is well settled that a plaintiff may not create a factual issue for the purpose of defeating a motion for summary judgment by filing an affidavit contradicting a statement the plaintiff made in a prior deposition."); *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292-93 (7th Cir. 1996) ("As a general rule, the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony."). The Third Circuit has not been so unforgiving. Rather, the Third Circuit has adopted a more flexible approach which provides that an affidavit will not be stricken "[w]hen there is independent evidence in the record to bolster an otherwise questionable affidavit," or when the affiant is able to provide a "satisfactory explanation" for the conflict between the prior deposition and the affidavit. *Hackman*, 932 F.2d at 241. However, when independent evidence does not exist and the affiant "does not explain the contradiction between a subsequent affidavit and a prior deposition, it is appropriate for the district court to disregard the subsequent affidavit and the alleged factual issue in dispute as sham...." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247 (3d Cir. 2007).

In this case, there is no question that the story provided by Dr. Weitzner has experienced variation over the course of litigation. First, and most importantly, Defendants point to the First Weitzner Declaration and subsequent deposition testimony where Dr. Weitzner made no mention of receiving any fax except the one received on April 21, 2004. (Doc. 106, ¶ 23-24) Now, in his Third Declaration, Dr. Weitzner claims he received a second fax on March 22, 2005. (Doc. 116). This would place Dr. Weitzner firmly within the class as it was defined in the Motion for Class Certification, and First

Weitzner Declaration. As properly noted by Defendants, this position was altered after Dr. Weitzner acknowledged at his second deposition on September 20, 2016 that if the First Fax was the only fax he or the P.C. received he would not be a member of the class he sought to represent. (Doc. 105, Ex. A).

While the timing of this modification is suspect, the Third Circuit directs this court to determine whether there is independent evidence or a satisfactory explanation to support the modification. Here, there is. Plaintiffs have produced evidence to support the modification: a March 22, 2005 fax in its entirety. (Doc. 116, Ex. B). The existence of the fax makes it more likely that Dr. Weitzner was simply "mistaken, confused, or without possession of all the facts during" his contradictory deposition, and negates the notion that he authored the Third Declaration with the sole intent to avoid summary judgment. *Rossi v. All Holding Co.*, No. 3:CV-11-1641, 2014 WL 346934, at * 7 (M.D. Pa. Jan. 30, 2014) (citing *Jiminez*, 503 F.3d at 254). This change in Weitzner's story will not render his Third Declaration a "sham."

Defendants also contend that the Third Weitzner Declaration contradicts prior deposition testimony related to the status of Ari Weitzner, M.D., P.C. Defendants argue that Dr. Weitzner has stated that the P.C. was closed, and at other times that it was active. Defendants point to the Second—now withdrawn—Weitzner Declaration and Dr. Weitzner's deposition testimony in an attempt to show that regarding the P.C. as active in the Third Declaration is a variation in Weitzner's story that contradicts prior sworn testimony. In the Second Declaration, Dr. Weitzner states that:

> The previous declaration that I submitted contained two oversights. First I left my optholmology practice in 2015 and joined one called Union Square Eye Care in Manhattan. However, my professional corporation, of which I am still the sole principal, has continued to maintain active status.

(Doc. 101, ¶ 2). Defendants argue that this contradicts his prior deposition testimony where he stated that the P.C. transacts no business, and has no employees. (Doc. 147, Ex. A at 25). But, Defendants are incorrect.

Case 3:17-cv-00101-RDM Document 539-1 Filed 09/15/20 Page 18 of 24

Weitzner v. Sanofi Pasteur, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3894888

**\*7** In each of the three Weitzner Declarations, Dr. Weitzner states that the P.C. remains in active status. As Plaintiffs correctly note, Defendants cite to no authority that supports the notion that a business must be operating to be considered "active." The fact that the business is not currently operating has not impacted the "active" status claimed by Dr. Weitzner or reported by the New York Department of State. Simply, the Sham Affidavit Doctrine does not apply on these facts.

Finally, the Defendants argue that the Third Weitzner Declaration contradicts prior sworn testimony provided by Dr. Weitzner regarding who received the faxes at issue. But, Dr. Weitzner has maintained throughout all three Declarations that the P.C. received a fax. This is evidenced by the fact the P.C. was named in each Declaration. Defendants point to his deposition testimony in which Dr. Weitzner states that the P.C. received no fax. (Doc. 105, Ex. A at 113.) While true, this contradiction does not render the Declaration a "sham." It is clear to the Court from the provided deposition testimony that Dr. Weitzner was, and still may be, "confused" about the distinction between his personal representation and his representation of the P.C. [4] *See Rossi*, 2014 WL 346934, at \*7. For this reason, this discrepancy will not cause the Court to strike the Third Weitzner Declaration.

[4]  On numerous occasions in Dr. Weitzner's third deposition he had to be reminded that there was a difference between his personal and representative capacity. And, on multiple occasions he confused the two. *See, e.g.*, Doc. 143-4, at 64:10-25; 65:1-5.

2. *The requirement of personal knowledge will not bar the Third Weitzner Declaration.*

Defendants argue that the Third Weitzner Declaration was not based on Dr. Weitzner's personal knowledge. Defendants only make a generalized claim that the entire Affidavit lacks personal knowledge, and does not point to a specific paragraph in the Third Weitzner Declaration. But, Defendants' argument references paragraphs seven and eight by implication. Thus, this Court will limit its analysis to those two paragraphs in the Third Weitzner Declaration.

Federal Rule of Civil Procedure 56(c)(4) provides that "[a]n affidavit or declaration used to support a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED.R.CIV.P.

56(c)(4). As such, a court should not credit statements in affidavits that amount to "unsupported assertions made in the absence of personal knowledge" *Reynolds v. Dep't of Army*, 439 Fed.Appx. 150, 152 (3d Cir. 2011). However, otherwise inadmissible evidence may be considered on summary judgment if the evidence is capable of being presented in an admissible form at trial. *See, e.g.*, *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990) ("We thus concluded that hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present the evidence through direct testimony, i.e., in a form that would be admissible at trial."); *Petruzzi's IGA Supermarkets v. Darling-Delaware Co.*, 998 F.2d 1224, 1235 n.9 (3d Cir. 1993) ("While this statement as it stands now is hearsay, in this circuit it can be considered on a motion for summary judgment because it is capable of being admissible at trial."). Thus, this analysis runs parallel to, and must consider, the Federal Rules of Evidence.

**\*8** Federal Rule of Evidence 602 governs the scope of witness testimony. Namely, it permits a witness to "testify to a matter only if sufficient evidence is introduced to support a finding that the witness has personal knowledge of the matter." FED.R.EVID. 602. The threshold for admissibility created by Rule 602 is quite low; testimony should be admitted if the judge could reasonably find that the witness perceived the events. *See, e.g.*, *Knopick v. Downey*, No. 1:09-CV-1287, 2013 WL 1882983, at \*12 (M.D. Pa. May 6, 2013) (citing *Sullivan v. Warminster Twp.*, 461 Fed.Appx. 157, 162 (3d Cir. 2012)). But, courts have not extended such leniency to allow witness testimony that is merely based on speculation as to what a third party believed or knew. *Id.*

Further, the Federal Rules of Evidence generally exclude hearsay evidence. Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted. *See* FED.R.EVID. 801(c). But, not all hearsay statements are inadmissible. In fact, the Federal Rules of Evidence provide that while some statements meet the traditional definition of hearsay they are considered "not hearsay." *See* FED.R.EVID. 801(d).

Defendants' contention that the entire Third Weitzner Declaration lacks personal knowledge is incorrect. Rather, as detailed below, certain averments within the Declaration lacked sufficient personal knowledge as required by the Federal Rules.

Weitzner v. Sanofi Pasteur, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3894888

First, paragraph seven of the Third Weitzner Declaration lacks the requisite personal knowledge. Paragraph seven states:

> Following discussions that I had about the class period with my counsel, Mr. Bank, to whom I had regularly sent my fax advertisements in 2004 and 2005, *Mr. Bank informed me* that there were additional faxes of the same type as the first Fax that were sent to the same fax number. One of these faxes was sent on or about March 22, 2005. ("Second Fax"). In addition, the Second Fax was sent to the same fax machine that had received the First Fax.

(Doc 116, at ¶ 7) (emphasis added). As Defendants correctly note, Dr. Weitzner did not have the requisite personal knowledge to make this statement. Dr. Weitzner admitted as much in his deposition on January 10, 2017:

> Q: Do you have any understanding, Dr. Weitzner of how many faxes you actually received other than based on the expertise of your lawyers?
>
> A: I have no independent recollection of how many faxes I received. That's exactly right.

(Doc. 145-4, at 62:21-25).

While Federal Rule of Civil Procedure 56(c)(4) and Federal Rule of Evidence 602 seem to bar this evidence because Dr. Weitzner admittedly lacked personal knowledge, it is important to remember that otherwise inadmissible evidence may be considered at summary judgment if it is capable of being presented in an admissible form at trial. While the existence and contents of the Second Fax as it stands now are inadmissible hearsay, it may still be considered at summary judgment because both are capable of being presented in an admissible form at trial. *See* FED.R.EVID. 801(d)(2); *Frankenberry v. FBI*, No. 3:08-1565, 2012 U.S. Dist. LEXIS 39027, at *19-20 (citing *J.F. Freeser, Inc.*, 909 F.2d at 1542; *Petruzzi's IGA Supermarkets, Inc.*, 998 F.2d at 1235 n.9). As such, it would be inappropriate to strike paragraph seven.

Second, paragraph eight of the Third Weitzner Declaration arguably lacks the requisite personal knowledge. Paragraph eight states:

> I understand that, based on several parts of this Complaint in this lawsuit, and depending upon this Court's resolution of legal issues pertaining to the statute of limitations, the class period could begin as early as February 14, 2001.

**\*9** Defendants asked Dr. Weitzner about this averment in his third deposition:

> Q: Is it accurate to say that you have no personal knowledge of any parts of the Complaint that could result in the class period beginning as early as February 14, 2001?
>
> A: I have no personal knowledge. I base—I rely on the expertise of my attorneys.
>
> Q: All right. So this understanding, then, that you have is based totally on the expertise of your lawyers?
>
> A: That's exactly right.

While Defendants' properly note that he has no personal knowledge regarding the parts of the Complaint that would allow for the expansion of the class period, paragraph eight is capable of admission at trial. Remember, the standard imposed by Rule 602 presents a low bar for admission. *See United States v. Gerard*, 507 Fed.Appx. 218, 222 (3d Cir. 2012) ("Rule 602 creates a low threshold for admissibility, and a judge should admit witness testimony if the jury could reasonably find that the witness perceived the event."); *United States v. Hickey*, 917 F.2d 901, 904 (6th Cir. 1990) ("Testimony should not be excluded for lack of personal knowledge unless no reasonable juror could believe that the witness had the ability and opportunity to perceive the event that he testifies about."); *Sullivan*, 461 Fed.Appx. at 162. All Plaintiffs would need to show is that Dr. Weitzner "perceived the events" that caused him to make the conclusions regarding the expansion of the class definition in his Third Declaration. Those "events" were meetings with his lawyers, and experiences at depositions held by the Defendants. When asked about those events at his third deposition, Dr. Weitzner provided a level of personal knowledge that would overcome a challenge under Rule 602 at trial. (Doc. 147, Ex. A at 47-48). Therefore, paragraph 8 will not be stricken.

Case 3:17-cv-00101-RDM Document 539-1 Filed 09/15/20 Page 20 of 24

Weitzner v. Sanofi Pasteur, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3894888

*3. The Third Weitzner Declaration does not impermissibly seek to expand the class definition and amendment is not prejudicial.*

Defendants' argue that although Plaintiffs assert that the Third Weitzner Declaration merely refines Dr. Weitzner's understanding of the class definition, Plaintiffs in fact impermissibly seek to amend the scope and definition of the class sought to be certified without leave of court. Defendants contend that such leave would be required. Further, Defendants believe that permitting any amendment at this stage would be prejudicial because the Third Weitzner Declaration was filed after Defendants had submitted their Brief in Opposition to Class Certification. Plaintiffs disagree. Plaintiffs contend that leave of court is not required for amendment, and that Defendants have suffered no prejudice as a result of such amendment.

Federal Rule of Civil Procedure 23(c)(1) provides a mechanism for modification of class definition, and as such "[a] court is not bound by the class definition proposed in the complaint." *Weisfeld v. Sun Chem. Corp.*, 84 Fed.Appx. 257, 259 (3d Cir. 2004) (citing *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993)). This is a sensible rule because holding a plaintiff to their original class definition "would ignore the ongoing refinement and give-and-take inherent in class action litigation, particularly in the formation of a workable class definition." *In the Matter of: Monumental Life Insurance Co.*, 365 F.3d 408, 414 (5th Cir. 2004). To this end, courts have allowed Plaintiffs to substantially modify proposed class definitions initially set forth in their Complaint throughout the course of litigation. *See, e.g.*, *Gates v. Rohm & Haas Co.*, 265 F.R.D. 208, 215 n.10 (E.D. Pa. 2010) (citing *Robidoux*, 987 F.2d at 937) (noting that Plaintiffs were permitted to substantially modify the proposed class definition in their reply brief).

**\*10** Here, the class definition provided in the Complaint identifies a class period from February 14, 2005 to the date of the resolution of this lawsuit. The First Weitzner Declaration contains a slightly different class definition than the Complaint. The Second Weitzner Declaration—now withdrawn—defined the class from June 1, 2002 to February 13, 2005. Now, in the Third Weitzner Declaration and Plaintiffs' Memorandum in Opposition to Defendants' Motion to Strike Declarations, define the class as beginning on February 14, 2001 to the resolution of this action. (Doc. 152, at 19). Such modification is illustrative of the "give-and-

take inherent in class action litigation," and not of an attempt to unduly prejudice Defendants.

While expansion of the class period has been permitted in the past, this Court must still determine whether the modification of the class definition at this time would unduly prejudice Defendants. Defendants' correctly note that the modification of the class currently at issue occurred in the Third Weitzner Declaration. This Declaration was filed on November 29, 2016 (Doc. 116); after Defendants had already filed their Brief in Opposition to Plaintiffs' Motion for Class Certification. (Doc. 102). Defendants claim that "[s]uch amendment this late in the litigation is prejudicial to Defendants, who are deprived of meaningful opportunity to present defenses to these additional claims." (Doc. 154, at 17). However, Defendants fail to meaningfully articulate the defenses foreclosed by the timing of the modification. Rather, Defendants throughout their brief call the claims included in this modification "untimely," or "time-barred." (Doc. 154, at 17; Doc. 154, at 12). As Plaintiffs note, Defendants already raise arguments related to the timeliness of claims in their papers. (Doc. 152 at 21-22). Moreover, Defendants had the opportunity to respond to the proposed class expansion in their brief in response to Plaintiffs' Brief in Opposition to Summary Judgment. Since Defendants have failed to offer any concrete prejudice caused by the timing of the modification, this Court will not grant the Motion to Strike.

### B. Motion to Strike Plaintiffs' Answer to Defendants' Statement of Facts:

Defendants move to strike Plaintiffs' Answer to Defendants' Statement of Facts pursuant to Local Rule 56.1 and Federal Rule of Civil Procedure 56. In doing so, Defendants contend that Plaintiffs failed to properly prepare their response in three distinct respects. First, Defendants claim the Plaintiffs failed to properly deny facts provided in Defendants' Statement of Facts as required by Federal Rule of Civil Procedure 56(e) and Local Rule 56.1. Their argument follows that since Plaintiffs failed to make any denial, even generally, to forty-nine (49) of the seventy-three (73) statements of fact produced by Defendants, all forty-nine (49) should be admitted. Second, Defendants argue that any denial supported by reference to the Third Weitzner Declaration is improper as the Declaration should be considered a "sham affidavit." Such a finding would strike seven (7) of Plaintiffs' responses. Finally, Defendants contend that Plaintiffs' response impermissibly contains lengthy argument, and thus should be stricken from the record. If Defendants are correct, only three (3) statements offered by Plaintiffs would remain.

Weitzner v. Sanofi Pasteur, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3894888

**\*11** Plaintiffs do not dispute that they failed to make even general denials to the forty-nine (49) statements identified by Defendants. Rather, Plaintiffs focus their argument on the propriety of the Third Weitzner Declaration and the form of statements contained in their response. Specifically, Plaintiffs claim that Defendants' reference and reliance on the Third Weitzner Declaration is improper under Local Rule 7.8(a). Further, without reference to a single authority, Plaintiffs contend that the statements contained within their response are not lengthy or argumentative in violation of the Federal or Local Rules.

### 1. *The forty-nine (49) unopposed statements contained in Defendants' Statement of Facts will be admitted.*

Defendants' correctly note that Plaintiffs failed to comply with Local Rule 56.1 when they did not specifically deny the averments made in Defendants' Statement of Facts. (Doc. 146, at 5-6). Rather than responding to each statement made by Defendants, (Doc. 106), Plaintiffs decided to respond to a mere twenty-four (24). (Doc. 118). Because Plaintiffs failed to provide any opposition to forty-nine (49) of the seventy-three (73) paragraphs in Defendants' Statement of Facts, all facts within the noted forty-nine (49) paragraphs will be considered unopposed and admitted under Local Rule 56.1. [5] *See Sorgnard*, 286 F.Supp.2d at 448 n.3.

[5]     The paragraphs in Defendants' Statement of Facts that were unopposed and will be deemed admitted are: 1; 2; 3; 4; 5; 8; 9; 10; 11; 12; 14; 15; 16; 17; 18; 19; 20; 23; 26; 27; 29; 30; 31; 32; 33; 34; 35; 39; 46; 47; 50; 51; 53; 55; 56; 57; 58; 62; 63; 64; 65; 66; 67; 68; 69; 70; 71; 72; and 73.

### 2. *Denials Supported by the Third Declaration of Dr. Weitzner will Not be Stricken.*

As noted above, the Motion to Strike the Third Weitzner Declaration will be denied. For this reason, any citation to the Third Declaration in Plaintiffs' Answer to Defendants' Statement of Facts will remain similarly intact. Notably, Local Rule 7.8(a) had no role in the Courts analysis.

### 3. *The form of Statements within Plaintiffs' response violate Local Rule 56.1 and will be stricken.*

As mentioned earlier, Local Rule 56.1 directs parties moving for summary judgment to provide the court with "a separate, short and concise statement of material facts, in numbered

paragraphs, as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1. Similarly it requires the non-moving party provide "a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required [from the moving party], as to which it is contended that there exists a genuine issue to be tried." *Id.* Both statements must "include references to the parts of the record that support" their factual statements. *Id.* The purpose of this statement of facts is "to structure a party's summary judgment legal and factual theory into a format that permits and facilitates the court's direct and accurate consideration to the motion." *Hartshorn*, 2009 WL 761270, at *3 (internal citation omitted). To this end, a proper statement of facts should enable "the court to identify contested facts expeditiously and [prevent] factual disputes from becoming obscured by a lengthy record." *Pinegar v. Shinseki*, No. 1:07-CV-0313, 2009 WL 1324125, at *1 (M.D. Pa. May, 12, 2009). Courts have the discretion to either strike a statement for non-compliance with the local rule, or deem the opposing statement admitted. *See, e.g., Hartshorn*, 2009 WL 761270, at *3; *Armenti v. Tomalis*, No. 1:12-CV-2039, 2016 WL 6493483, at *1-2 (M.D. Pa. Nov. 2, 2016).

**\*12** Defendants contend that many of Plaintiffs' responses contain impermissible argument and fail to provide "concise" statements in violation of Local Rule 56.1. In large part this Court agrees. Plaintiffs' have provided a lengthy [6] response that runs afoul of the purpose for Local Rule 56.1. The statements identified by Defendants [7] regularly include long excerpts from deposition testimony in an attempt to explain or contextualize a fact presented by the Defendants. Facially, this is impermissible under the Local Rule. Because this Court finds that many of the statements within Plaintiffs' response contravene the purpose of Local Rule 56.1, those statements will be stricken.

[6]     Plaintiffs' response can not be considered concise. While only responding to 24 of the 73 averments made in Defendants' Statement of Fact, Plaintiffs' response is over twice as long. As such, Plaintiffs' response is in violation of the Local Rules.

[7]     Defendants' specifically note the argumentative nature of Plaintiffs' responses to paragraphs: 13; 21; 24; 25; 36; 37; 38; 39; 41; 42; 43; 48; 49; 52; 54; 59; 60; and 61. All will be excluded.

Case 3:17-cv-00101-RDM   Document 539-1   Filed 09/15/20   Page 22 of 24

Weitzner v. Sanofi Pasteur, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3894888

Paragraph 40 will be similarly excluded for violating the Local Rule.

Therefore, only six (6) statements [8] made in Defendants' Statement of Facts will be considered contested for purposes of summary judgment.

[8]     The contested statements are found in paragraphs 6, 7, 22, 28, 44, and 45 of Defendants' Statement of Facts.

**C. Motion for Summary Judgment:**

Defendants' base their Motion for Summary Judgment on four separate and distinct grounds. [9] First, Defendants' argue that Plaintiffs' claims are time-barred by the statute of limitations because the tolling principles of *American Pipe* do not apply, and alternatively, even if they do apply, Plaintiffs filed their federal complaint after the statute of limitations expired. Second, Defendants argue that Plaintiffs lack standing because Defendants believe that neither Dr. Weitzner, nor his P.C. suffered cognizable injury during the defined class period. Third, Defendants contend that Plaintiffs have failed to demonstrate that Defendant Sanofi Pasteur, Inc. sent a fax to Plaintiffs, and as such Defendant Sanofi must be removed from this action. Finally, Defendants argue that the current named Plaintiffs are not members of the class they seek to represent, and thus as a matter of law summary judgment should be granted.

[9]     This Court will not address three of the four arguments presented by Defendants' because the inapplicability of American Pipe tolling is dispositive.

1. Plaintiffs' Individual and Class Claims are Time-Barred [10]

[10]     Defendants did not affirmatively raise the statute of limitations defense in their answer to the complaint as required by *Federal Rule of Civil Procedure 8(c)*, but this Court will still consider whether Plaintiffs claims are time-barred. *Federal Rule of Civil Procedure 8(c)* requires that "[i]n a pleading to a preceding pleading, a party should set forth affirmatively" the defense of statute of limitations. *FED.R.CIV.P. 8(c)*. Normally, when an a defendant fails to plead an affirmative defense in their answer, the defense is waived. *See Charpentier v.*

*Godsil*, 937 F.2d 859, 863-64 (3d Cir. 1991). However, since Plaintiffs offered no objection to the defense "when expressly invoked in [Defendants] motion for summary judgment," the Court will consider its validity. *Mitchell v. Guzick*, No. 3:02-CV-0178, 2004 U.S. Dist. LEXIS 29895, at *21 n.4 (M.D. Pa. July 26, 2004); *see Printz v. Greate Bay Cassino Corp.*, 705 F.2d 692, 694 (3d Cir. 1983) (noting that *Fed.R.Civ.P 15(c)* provides that issues tried by the express or implied consent of the parties "are treated in all respects as if they had been raised in the pleadings").

**\*13**  In *American Pipe & Construction Company v. Utah*, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). In other words, the filing of a class action lawsuit tolls the statute of limitations as to all asserted members of the previously filed class. *Id.* Tolling lasts "until the propriety of maintaining the suit as a class action is determined." *Leyse v. Bank of America N.A.*, 538 Fed.Appx. 156, 161 (3d Cir. 2013), *vacated on other grounds*, 804 F.3d 316 (3d Cir. 2015); *see Sawyer v. Atlas Heating and Sheet Metal Works, Inc.*, 642 F.3d 560, 563 (7th Cir. 2011) ("Tolling [under *American Pipe*] lasts from the day a class claim is asserted until the day the suit is conclusively not a class action—which may be because the judge rules adversely to the plaintiff, or because the plaintiff reads the handwriting on the wall and decides not to throw good money after bad.").

This doctrine is at the heart of the dispute between the parties before this Court at summary judgment. If the doctrine does not apply, Defendants are owed summary judgment as Plaintiffs' action would be barred as a matter of law. In this case, a four-year statute of limitations is appropriate. [11] The First Fax was received by Plaintiffs on April 21, 2004. (Doc. 106, ¶ 23). This means that without application of *American Pipe*, any federal complaint related to the First Fax would have needed to be filed by April 21, 2008. The Second Fax was received by Plaintiffs on March 22, 2005, and thus any federal complaint related to the Second Fax would have needed to be filed by March 22, 2009. Plaintiffs filed their federal Complaint on November 26, 2011. (Doc. 1). Therefore, without the application of a tolling doctrine it is clear Plaintiffs' Complaint is untimely.

Case 3:17-cv-00101-RDM  Document 539-1  Filed 09/15/20  Page 23 of 24
Weitzner v. Sanofi Pasteur, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3894888

11    As this Court suggested during the disposition of
the Motion to Dismiss, the four-year statute of
limitations will apply. *See Hawk Valley, Inc., v.
Taylor*, No. 10-CV-00804, 2012 WL 1079965,
at *9–10 (E.D. Pa. Mar. 30, 2012) (finding *Mims
v. Arrow Fin. Servs.*, LLC., 565 U.S. 368, 132
S.Ct. 740, 181 L.Ed.2d 881 (2012), an additional
support for rejecting the argument that state
statute of limitations applied to a TCPA claim);
*see also*, 645 F.3d at 561 (7th Cir. 2011).

### a. Class Claims

The first question this Court must address is whether or
not *American Pipe* tolling is applicable to the class claims
at issue. Defendants suggest that *American Pipe* is only
applicable for class claims when: (1) the proposed class is
substantively identical to the class sought to be certified in
the state-court action; (2) Plaintiffs were unnamed class members
in the state-court action; and (3) Plaintiffs are new class
representatives for the proposed class.

First, for tolling to apply, the claims do not have to be
identical, but only substantially similar to those brought
in the original action. *See In re Linerboard Antitrust
Litigation*, 223 F.R.D. 335, 351 (E.D. Pa. 2009) (citing
*Crown, Cork & Seal, Inc. v. Parker*, 462 U.S. 345, 355, 103
S.Ct. 2392, 76 L.Ed.2d 628 (1983)). Defendants properly
identify this requirement. But, Defendants incorrectly suggest
that Plaintiffs claims are not substantially similar to those
brought in the original action. The exact same legal question
is at issue: Did the Defendants violate the TCPA? And, the
factual averments presented by the state and federal claims
are nearly identical with exception for the class period.
Therefore, when viewing the facts in the light most favorable
to Plaintiffs, it is evident that Plaintiffs established that they
meet this requirement.

Second, when applying *American Pipe* to subsequent class
actions, Defendants are correct that the Third Circuit has
limited the doctrine's application to subsequent class actions
brought by *new* would-be class representatives. In fact,
the Third Circuit has recently stated that *American Pipe*
tolling does not apply when a named-plaintiff in a prior
action subsequently files another class action based on the
same claim as a named-plaintiff yet again. *See Leyse*, 538
Fed.Appx. at 162. ("*American Pipe* was intended to prevent
repetitious filings and to protect unnamed plaintiffs. This

concern is not relevant with respect to the named plaintiff
in the prior class action. Thus, we agree that the Supreme
Court did not intend for *American Pipe* tolling to protect
individuals like [plaintiff], who initiated the prior class action
and was a named plaintiff in that prior suit."); *see also
Vincent v. Money Store*, 915 F.Supp.2d 553, 561 (S.D.N.Y.
2013) (explaining that "[t]he policy behind *American Pipe*
counsels against allowing named plaintiffs in a prior class
action, as opposed to absent class members, to have their
claims tolled."). This requirement prevents an earlier class
representative from attempting to "resuscitate a class that a
court held to be inappropriate as a class action." *Yang v. Odom*,
392 F.3d 97, 104 (3d Cir. 2004) (citing *McKowan & Co., Ltd.
v. Jasmine, Ltd.*, 295 F.3d 380, (3d Cir. 2002)).

**\*14** In this case, it does appear that Dr. Weinstein is
attempting to "resuscitate" the failed state class action. As
noted above, the legal and factual claims presented in the
state and federal actions are nearly identical. Notably, Dr.
Weitzner was the named representative for the class in the
state court action, and is one of the named representatives in
the action now before this Court. This runs directly contrary
to the purpose of *American Pipe* tolling as it was described by
the Third Circuit in *Leyse. See* 538 Fed.Appx. at 162. It is true,
that Ari Weitzner, M.D., P.C. was not a named representative
in the action below. However, it would be a stretch of logic
to imagine the P.C., an entity solely owned and occasionally
operated by Dr. Weitzner, could be used to circumvent the
purpose of *American Pipe*. If that were the case, a single
Plaintiff could continue to "resuscitate" claims repeatedly by
hiding behind a corporate veil. Because Dr. Weitzner was the
class representative in the state court action, *American Pipe*
will not apply to the class claims.

Since *American Pipe* tolling is inapplicable to the class
claims, Defendants are owed summary judgment on the class
claims because they are time-barred. As such, summary
judgment will be granted in favor of the Defendants on the
class claims presently before this Court.

### b. Individual Claims

*American Pipe* tolling is similarly unavailable for Dr.
Weitzner's individual claim. Just as with new class claims,
individual claims may only be brought by those that did not
earlier serve as class representative. The Supreme Court has
suggested as much recently when it stated that *American
Pipe* was grounded in "policies of judicial administration,"

Case 3:17-cv-00101-RDM   Document 539-1   Filed 09/15/20   Page 24 of 24

Weitzner v. Sanofi Pasteur, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3894888

and "demonstrate only that *a person not a party* to a class suit may receive certain benefits (such as the tolling of a limitations period) related to that proceeding." *Smith v. Bayer Corp.*, 564 U.S. 299, 313 n.10, 131 S.Ct. 2368, 180 L.Ed.2d 341 (2011) (emphasis added). Put simply, the advantages of tolling articulated by the Supreme Court in *American Pipe* and *Crown Cork*. *See id.* do not apply to revived claims by class representatives. *See id.* The purpose of tolling during a class action was to reduce duplicative filings by encouraging unnamed class members to wait on filing their own complaints. *See American Pipe*, 414 U.S. at 553-554, 94 S.Ct. 756. To allow tolling for a named representative does not decrease duplicative filings as the named representative has already filed a complaint, and likely motions, on the issue. Because Dr. Weitzner was a class representative, *American Pipe* tolling does not apply to Dr. Weitzner's individual claim. Therefore, summary judgment will be granted in favor of Defendants for Dr. Weitzner's individual claim.

It is important to remember that "the tolling rule of American Pipe is a generous one, inviting abuse." *Crown, Cork & Seal Co., Inc.*, 462 U.S. at 354, 103 S.Ct. 2392 (1983) (Powell, J. concurring). It is in this vein that Defendants argue that allowing the P.C. to raise an individual claim contravenes the purpose of *American Pipe*, and *Leyse.* At bottom, Defendants argue that the P.C. is simply a shell used by Dr. Weitzner to revive the same claim, based on the same fax transmissions, that failed in state court. As was noted above, it is not the intent of *American Pipe* to protect those who "initiated the prior class action." *See Leyse*, 538 Fed.Appx. at 162.

Dr. Weitzner is the sole shareholder of the P.C., and as he notes, he "has always identified the P.C. with [himself]." (Doc. 116, ¶ 2). In fact, Plaintiffs acknowledge and admit [12] that Dr. Weitzner believes he and the P.C. are one. (Doc 106, ¶ 14). He bases the claims brought on behalf

of himself and the P.C. on identical evidence: the First and Second Fax. In every meaningful way, Dr. Weitzner would be the beneficiary of the P.C.'s individual claim, and thus tolling would serve protect a Plaintiff "who initiated the prior action." *Id.* Allowing the P.C., on these facts, to seek shelter from the statute of limitations through the use of the *American Pipe* tolling rule would condone the abuse of *American Pipe*. For this reason, *American Pipe* tolling will not apply to the P.C.'s individual claim, and this Court will grant summary judgment in favor of the Defendants.

[12]    Plaintiffs failed to deny that Dr. Weitzner believes he and the P.C. are the same entity in their Answer to Defendants' Statement of Facts. As such, the fact was deemed admitted.

### V. Conclusion

**\*15**  For the above stated reasons: Defendants' Motion to Strike the November 29, 2016 Declaration of Ari Weitzner will be denied; Defendants' Motion to Strike Plaintiffs' Answer to Defendants' Statement of Facts will be granted in part as Plaintiffs' failed to comply with the Local Rules; and Defendants' Motion for Summary Judgment will be granted in its entirety because *American Pipe* tolling does not apply to shield those who initiated a prior action and subsequently assert the same facts and claims in a new action. Finally, Plaintiffs' Motion for Class Certification is moot because this Court will grant Defendants' Motion for Summary Judgment.

An appropriate order follows.

### All Citations

Not Reported in Fed. Supp., 2017 WL 3894888

---

**End of Document**                          © 2020 Thomson Reuters. No claim to original U.S. Government Works.