# Exhibit 2

2020 WL 7043847
Only the Westlaw citation is currently available.
United States District Court, D.
Maryland, Southern Division.

BUREAU OF CONSUMER
FINANCIAL PROTECTION, Plaintiff,
v.
FAIR COLLECTIONS & OUTSOURCING,
INC., et al., Defendants.

Case No.: GJH-19-2817
|
11/30/2020

GEORGE J. HAZEL, United States District Judge

**MEMORANDUM OPINION**

**\*1** Plaintiff Consumer Financial Protection Bureau ("CFPB" or "Bureau") filed a seven-count Complaint against Fair Collection and Outsourcing, Inc., a third-party debt collection agency headquartered in Beltsville, Maryland. ECF No. 1. The suit also names as Defendants three affiliated companies and their owner Michael E. Sobota (hereinafter, collectively, referred to as "FCO" or "Defendants"). *Id.* The CFPB's Complaint asserts causes of action under the Credit Furnishers Rule, 12 C.F.R. § 1022.42 (Count I), the Fair Credit Reporting Act, 15 U.S.C. § 1681, et. seq. (Counts II through VI), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et. seq. (Count VII). *Id.* ¶¶ 88–123. Now pending before the Court is Defendants' Motion to Dismiss, and/or in the Alternative, for Stay of Proceedings. ECF No. 7. No hearing is necessary. Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendants' motion is denied.

**I. BACKGROUND**[1]
Defendants operate the largest debt collection company in the multi-unit housing industry. ECF No. 1 ¶ 1.[2] They collect debt on behalf of assisted living facilities and large apartment complexes, including student and military housing. *Id.* On September 25, 2019, the CFPB filed a seven-count Complaint against Defendants, alleging that Defendants failed to take steps to ensure the accuracy of the information about consumers that they furnish to consumer-reporting agencies, failed to conduct reasonable investigations of consumers' disputes about debts Defendants placed on their credit reports, reported information that was alleged to have been the result of identity theft without determining whether the information was accurate, and collected debt without a reasonable basis to assert it was owed, among other allegations. ECF No. 1 ¶¶ 88–123.

Defendants moved to dismiss this lawsuit, claiming that the structure of CFPB was unconstitutional and that Plaintiff therefore lacked standing. ECF No. 7. Defendants alternatively moved for a stay of proceedings until the Supreme Court decided *Seila Law v. Consumer Financial Protection Bureau,* ___ U.S. ___, 140 S. Ct. 2183 (2020), as that case involved the constitutionality of the CFPB. *See id.* On June 29, 2020, before this Court ruled on Defendants' motion, the Supreme Court decided *Seila Law*, holding that the CFPB's enabling statute violates Article II of the Constitution to the extent it contained a provision only permitting removal of the CFPB's single Director by the President for cause, but finding that clause separable, and thus upholding the constitutionality of the agency. *See Seila Law*, 140 S. Ct. 2183.

Three days after the issuance of the *Seila Law* opinion, the Bureau's Director filed a declaration ratifying the Bureau's decision to bring this lawsuit. ECF No. 14-1. Defendants moved for leave to file supplemental briefing to address the legality of the Director's post-*Seila Law* ratification. ECF No. 15. This Court granted Defendants' motion. ECF No. 18. Defendants submitted supplemental briefing in support of their motion to dismiss or stay proceedings on September 14, 2020, ECF No. 19, the CFPB responded on September 21, 2020, ECF No. 20, and Defendants submitted their reply on October 5, 2020, ECF NO. 22.

**II. MOTION TO STAY**
**\*2** As an alternative to dismissal, Defendants ask the Court to stay this lawsuit pending a ruling by the Supreme Court in *Collins v. Mnuchin*, No. 19-422, 2020 WL 3865248, (cert. granted July 9, 2020). A district court has broad discretion to stay proceedings as part of its inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *See Landis v. N. Am.*, 299 U.S. 248, 254 (1936). But that discretion is not without limits. *In re Sacramento Mun. Utility Dist.*, 395 Fed. App'x 684, 687 (Fed. Cir. 2010). A court must "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 255; *see also United States v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977) ("The determination by a district

judge in granting or denying a motion to stay proceedings calls for an exercise of judgment to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket.").

"When considering a discretionary motion to stay, courts typically examine three factors:
(1) the impact on the orderly course of justice, sometimes referred to as judicial economy, measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected from a stay; (2) the hardship to the moving party if the case is not stayed; and (3) the potential damage or prejudice to the non-moving party if a stay is granted." *Int'l Refugee Assistance Project v. Trump*, 323 F. Supp. 3d 726, 731 (D. Md. 2018). "[A] district court has discretion to stay actions when proceedings in another matter involve similar issues." *Popoola v. MD-Individual Practice Ass'n, Inc.*, No. Civ.A.DKC 2000–2946, 2001 WL 579774 (D. Md. May 23, 2001) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1360 (2d. ed. 1990)). In order to issue a stay, a court must be satisfied that a "pressing need" exists, and that "the need for a stay outweighs any possible harm to the nonmovant." *Elite Const. Team, Inc. v. Wal-Mart Stores, Inc.*, JKB-14-2358, 2015 WL 925927, at *3 (D. Md. Mar. 2, 2015).

Defendants argue that a stay is warranted because the issues presented in its Motion to Dismiss are pending before the Supreme Court in *Collins v. Mnuchin*, and thus this Court should wait for the Supreme Court's ruling. According to Defendant, "the Court is considering whether the Federal Housing Financial Agency's ("FHFA") structure violates the separation of powers, and if so, whether it should set aside action taken by the FHFA when it was unconstitutionally structured." ECF No. 19 at 9. Because, Defendants assert, "[a] related remedy is sought here, i.e., dismissal of a lawsuit filed by an unconstitutional created agency," *id.*, *Collins v. Mnuchin* presents "the potential for a dispositive ruling in favor of FCO," *id.* at 25. In the Court's view, however, Defendant's preferred outcome is not sufficiently likely to warrant a stay.

First, *Collins v. Mnuchin* will not, by necessity, translate to a case involving a different agency, given that there are key factual differences between the CFPB and FHFA. Therefore, it is far from certain that even if the Supreme Court finds the FHFA's structure unconstitutional and proceeds to determine the proper remedy, its holding would be controlling with respect to the CFPB.

Furthermore, *Collins v. Mnuchin* does not involve an action that was subsequently ratified and, thus, the question of ratification is not at issue in that case—as the challengers stated in their brief before the Fifth Circuit, "[t]he validity of any efforts at ratification would need to be decided in a future case depending on the specific procedures used and facts presented." Suppl. En Banc Br. of Pls.-Appellants at 35, *Collins v. Mnuchin*, No. 17-20364 (5th Cir. filed Dec. 12, 2018). Thus, although Defendants state, "[i]f the Supreme Court in *Collins v. Mnuchin* holds that agency action taken during the period when it was unconstitutionally structured must be set aside, this ruling would require this Court to dismiss the present enforcement action," ECF No. 19 at 25, that is not necessarily true. *Collins v. Mnuchin* will be addressing that question only with respect to an unratified action. [3] This case, involving a ratified action, presents a separate question. Moreover, regarding that separate question —whether a later-ratified action originally taken during the period when an agency was unconstitutionally structured must be set aside—as discussed below, *Seila Law* has already suggested that the answer is no. If dismissal were absolutely required, it would not have remanded to the Ninth Circuit for a determination of the validity and permissibility of ratification, as doing so would have been "futile." 140 S. Ct. at 2208.

**\*3** Given the uncertainty surrounding the effect a decision in *Collins v. Mnuchin* will have on the present case, the Court will deny Defendant's Motion to Stay.

### III. MOTION TO DISMISS

**A. Standard of Review**
Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing this Court lacks jurisdiction over the matter because the Bureau lacks standing. *See, e.g.*, *Miller v. Pacific Shore Funding*, 224 F.Supp.2d 994-95 (D. Md. 2002) (citing *Marshall v. Meadows*, 105 F.3d 904, 905-96 (4th Cir. 1977)). "A district court should grant a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.' " *Upstate Forever v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 645 (4th Cir. 2018) (quoting *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)). "The burden of establishing subject matter jurisdiction rests with the plaintiff." *Demetres v. East West Constr.*, 776 F.3d 271, 272 (4th Cir. 2015). "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), 'the district

court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.' " *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). Where jurisdiction "ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. 506 (1868)).

**B. Discussion**
Defendants assert four reasons they contend require dismissal of this matter, arguing that (1) dismissal is the proper remedy for constitutional defects; (2) the CFPB lacks standing to bring the matter; (3) the CFPB Director's July 2 ratification was invalid; and (4) the CFPB's funding structure is unconstitutional. The Court will address each argument in turn.

**1. Dismissal for Constitutional Defects**
Defendants first argue that because *Seila Law* established that the Bureau's leadership structure, consisting of one Director only removable by the President for cause, was constitutionally defective, dismissal is the appropriate remedy. ECF No. 19 at 11. Defendants rely on several cases involving improper appointments of government officials to assert that " 'one who makes a timely challenge to the constitutional validity of' a government official's authority 'is entitled to a decision on the merits of the question and whatever relief may be appropriate.' " ECF No. 19 at 10 (quoting *Ryder v. United States*, 515 U.S. 177, 182–83 (1995)). The Supreme Court has determined that such relief is important in order to incentivize litigants to bring these challenges. *Ryder*, 515 U.S. at 182–83; *see also Lucia v. SEC*, __ U.S. __, 138 S. Ct. 2044, 2055 n.5 (2018). According to Defendants, the only remedy that would provide appropriate relief in this case and the proper incentive for future plaintiffs considering challenges to unconstitutional action by government officials is dismissal. ECF No. 22 at 7. The Court disagrees.

*4 Although defective actions should not be permitted to proceed unabated and unremedied, courts are not required to dismiss every case involving a constitutional defect. Instead, courts must provide a remedy tailored to the defect at issue. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (noting "general rule that remedies should be tailored to the injury suffered from the constitutional violation"); *cf. Seila Law*, 140 S. Ct. at 2209 ("Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem[.]" (quoting *Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 493 (2010)). For example, in two of the cases that Defendants raise, the Supreme Court found that a new hearing before a properly appointed (and, in *Lucia*, a different) judge was the appropriate, tailored remedy. *See Ryder v. United States*, 515 U.S. 177, 188 (1995); *see also Lucia v. SEC*, __ U.S. __, 138 S. Ct. 2044, 2055 (2018). As the court noted in *BCFP v. Law Offices of Chrystal Moroney, P.C.*, *Ryder* and *Lucia* present an "apples-and-oranges comparison" to the present case, as the adjudication here is before this Court rather than the improperly appointed or removable official. No. 7:20-cv-03240, Hr'g Tr. at 61 (S.D.N.Y Aug. 19, 2020). However, the underlying principle is instructive: reevaluation of the decision—whether a ruling in an adjudication or a decision to bring an enforcement action—by a properly appointed and removable Director can provide an adequate and tailored remedy for certain constitutional defects, and dismissal is not required.

This is consistent with the approach taken by the Supreme Court in *Seila Law*. Although Defendants state that in *Seila Law* "[a] majority of the Supreme Court recognized that 'dismiss[al]' is the 'straightforward remedy' for the undisputed "constitutional defect" in the filing of a CFPB enforcement action," ECF No. 19 at 11, they distort the Supreme Court's words. The Supreme Court merely acknowledged that "petitioner seeks a straightforward remedy," that being a dismissal. *Seila Law*, 140 S. Ct. at 2208. But, while noting that dismissal would have been a clear-cut solution, the majority did not find it to necessarily be the appropriate one—only two Justices would have dismissed the CFPB's petition for an order of enforcement in that case. Instead, the Supreme Court remanded the case for the lower court to consider whether the civil investigative demand was validly ratified, and determined that such a remand would not be "futile." 140 S. Ct. at 2208. Because the Supreme Court did not find dismissal necessary to remedy the same constitutional defect at issue here or to incentivize further constitutional challenges, and found that ratification at least warranted consideration, this Court will follow suit, and will therefore proceed to determine whether dismissal is warranted on other grounds.

**2. Standing**

Defendants further argue that the Supreme Court's finding of a constitutional defect in its leadership structure voids the CFPB's standing as of the filing of the case. ECF No. 19 at 11–13. However, as the Ninth Circuit found in *Gordon*, in a government enforcement action, "it is the Executive Branch, not any particular individual, that has Article III standing." *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1187 (9th Cir. 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 576 (1992)). In that case, the Ninth Circuit found that the Article II flaw in Director Cordray's initial recess appointment "does not alter the Executive Branch's interest or power in having federal law enforced." *Id*. at 1189. "While the failure to have a properly confirmed director may raise Article II Appointments Clause issues," the court concluded, "it does not implicate our Article III jurisdiction to hear this case." *Id*.; *see also id*. at 1190 (observing that "no court, including the Supreme Court, has ever suggested that Article II problems nullify Article III jurisdiction").

This finding comports with the history of cases involving Article II defects that have not been dismissed for lack of standing. *See, e.g.*, *Legi–Tech*, 75 F.3d at 708; *Wilkes-Barre Hosp. Co. v. NLRB*, 857 F.3d 364 (D.C. Cir. 2017). It also aligns with *Legi-Tech* and *LaRouche*, which found parties' "separation of powers claim[s]"—their objections to the FEC's constitutional structure—to be waivable defenses, which would not have been possible had the objections implicated the courts' Article III jurisdiction to hear the cases. *FEC v. Legi-Tech, Inc.*, 75 F.3d 704, 707 (D.C. Cir. 1996); *see also LaRouche v. FEC*, 28 F.3d 137, 140 (D.C. Cir. 1994) (the constitutional objection to the FEC's composition could be waived because the fact that the FEC was "improperly constituted" did not affect "[the court's] authority to consider the FEC's enforcement action," but rather "[the FEC's] authority to bring it"). Moreover, as Plaintiff correctly notes, had the holding in *Seila Law* voided the CFPB's standing, the Supreme Court would not have remanded the case to the Ninth Circuit. *Cf*. 140 S. Ct. at 2208 (recognizing that the Court should not return the case to the Ninth Circuit if "such a remand would be futile"). Accordingly, this Court joins others in finding "[t]he outcome of *Seila Law* does not mean there is no Article III jurisdiction over this action." *Bureau of Consumer Fin. Prot. v. Chou Team Realty LLC*, No. SACV2043JVSADSX, 2020 WL 5540179, at *3 (C.D. Cal. Aug. 21, 2020); *see also CFPB v. RD Legal Funding, LLC*, No. 18-2743, Summ. Order (S.D.N.Y. Oct. 30, 2020) (allowing case to proceed and remanding case to district court for determination on the validity of Director Kraninger's ratification of the enforcement action); *BCFP v. Law Offices of Crystal Moroney*, P.C., No. 7:20-cv-03240 (S.D.N.Y. Aug. 19, 2020) (finding ratification of earlier enforcement action valid and allowing case to proceed).

### 3. Ratification

**\*5** The Court next turns to a question left unanswered by *Seila Law*: whether the current CFPB Director properly ratified the enforcement action. Ratification is a principle drawn from agency law in which an agent originally acted without authority, but the principal later approves of the agent's prior unauthorized acts such that they remain in effect. *See GDG Acquisitions LLC v. Government of Belize*, 849 F.3d 1299, 1310 (11th Cir. 2017) (noting that ratification assumes that the agent "did not have actual authority at the time he acted"); *Wilkes-Barre Hosp. Co. v. NLRB*, 857 F.3d 364, 371 (D.C. Cir. 2017) (explaining role of principal that ratifies prior unauthorized acts of agent). In the context of administrative agencies, actions have been ratified when the leadership of an agency acted without authority, but leadership with proper authority later affirmed the action. *See, e.g.*, *Wilkes-Barre Hosp. Co. v. NLRB*, 857 F.3d 364, 371 (D.C. Cir. 2017); *Legi–Tech*, 75 F.3d at 709; *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 796 F.3d 111, 124 (D.C. Cir. 2015); *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1191 (9th Cir. 2016); *see also* Restatement (Second) § 93(3) ("The affirmance can be made by an agent authorized so to do."). Several circuits have also considered whether an individual can "self-ratify" an action—that is, whether a specific person can ratify an action that he or she had initially taken before a constitutional defect has been remedied—and have found those ratifications can be effective. *See, e.g.*, *Advanced Disposal Servs. E., Inc. v. NLRB*, 820 F.3d 592, 602–03 (3d Cir. 2016); *CFPB v. Gordon*, 819 F.3d 1179, 1185–86, 1190–91 (9th Cir. 2016); *Wilkes-Barre Hosp. Co., LLC v. Nat'l Labor Relations Bd.*, 857 F.3d 364, 372 (D.C. Cir. 2017).

In order for a ratification to be valid, the principal, here, the CFPB, must have had the ability to do the act both at the time it was done and at the time of ratification. 513 U.S. 88, 98 (1994); *see also Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1191 (9th Cir. 2016); *State Nat'l Bank of Big Spring v. Lew*, 197 F. Supp. 3d 177, 184 (D.D.C. 2016) ("[I]t is the principal, the CFPB, who must at all times have the authority to take the challenged action."); *see also Gordon*, 819 F.3d at 1191. Defendants claim the CFPB lacked the ability to file this case both at the time it did so and at the time of ratification. The Court will consider each argument.

First, Defendants argue that because the defect at issue was "structural," it infected the entire agency, and thus the CFPB lacked authority to initiate the enforcement action in the first place. Therefore, Defendants contend, ratification cannot cure the defect. In making this argument, Defendants attempt to distinguish this case from those in which ratification was found effective, arguing those cases involved defects that were "limited to an individual's appointment" and rendered only the agent without authority, not the agency as a whole. *See* ECF No. 22 at 4 ("This defect [in *Gordon*] only concerned the authority of the Director as the Bureau's agent and not the authority of the Bureau itself.").

The Court finds that Defendants' emphasis on the distinction between "appointment" and "structural" defects obscures the key inquiry—the CFPB's authority at the time of the enforcement action. Indeed, the delineation between appointment and structural defects does not find support in prior case law, which conflates the two, describing Appointments Clause problems as structural and rejecting arguments that this meant ratification was impossible. *See, e.g.*, *Fed. Election Comm'n v. Legi-Tech, Inc.*, 75 F.3d 704, 708 (D.C. Cir. 1996) (discussing the "effects of the unconstitutional structure of the FEC" and finding "Legi–Tech's contention that the FEC's reconstitution and ratification is not an effective remedy because separation of powers is a 'structural' constitutional defect that necessarily voids all prior decisions is overstated"); *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 796 F.3d 111, 123 (D.C. Cir. 2015) (noting that "an Appointments Clause violation is a structural error").

*6 Moreover, while *Gordon*, *Wilkes Barre*, and others indeed center on invalid recess appointments that can plausibly be said to "involve[ ] defects limited to the method by which a particular individual was appointed to an otherwise unchallenged office," ECF No. 22 at 4, *Legi-Tech* and *Intercollegiate Broad. Sys.* involve defects that are broader and more "structural" than Defendants acknowledge. *Legi-Tech* involved a finding that "the presence of the two congressional officers as non-voting ex officio members of the FEC violated the Constitution" and that "the FEC is unconstitutionally composed." 75 F.3d at 706–07. *Intercollegiate Broad. Sys.*, involved officers who were appointed by the Librarian of Congress and were not removable without cause, thus rendering them improperly appointed principal officers. 796 F.3d at 115. Nevertheless, ratification was permitted in both cases, meaning these broader, structural defects did not void the agencies' authority.

Finally, Defendants' appointments/structural distinction minimizes the significance of the appointment violations they reference. The recess appointments found unconstitutional in *Gordon* and *Noel Canning*, 705 F.3d 490, 493, 514 (D.C. Cir. 2013), *aff 'd*, 573 U.S. 513, 557 (2014), for example, were not deemed impermissible simply because they violated the courts' ideals of procedural propriety, but because they implicated the same concerns at issue here— they threatened the carefully crafted balance between the executive and legislative branches. Additionally, that certain cases "involved defects limited to the method by which a particular individual was appointed," ECF No. 22 at 4, does not mean the defect was confined to that individual alone. Instead, those defects, like the one at issue here, raise concerns precisely because of the control the leader exercises over the agency's actions. This is true whether the agent is improperly appointed or improperly removable. It is therefore not clear why, according to Defendants, ratification would be permissible in certain cases "where the defect is limited to an individual's appointment," and thus " 'address[ ] situations in which an agent was without authority at the time he or she acted,' " *id.* (quoting *CFPB v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 785 (S.D.N.Y. 2018)), but not here, where the defect was limited to an individual Director's insulation from removal.

The important determination is whether *Seila Law*, read as a whole, dictates that the CFPB lacked authority during the time in which it was led by an improperly removable Director. It does not. The holding in *Seila Law* did not affect the CFPB's authority—only that of its Director. Indeed, the Supreme Court stated, if "the offending removal provision means the entire agency is unconstitutional and powerless to act, then a remand would be pointless," 140 S. Ct. at 2208, before finding, to the contrary, "the removal provision can be severed from the other statutory provisions relating to the CFPB's powers and responsibilities" and remanding the case to the Ninth Circuit, *id.* at 2209. The problem was the Director, and that problem was severable, leaving the agency and its authority intact.[4] The Supreme Court proceeded to determine: "[t]he provisions of the Dodd-Frank Act bearing on the CFPB's structure and duties remain fully operative without the offending tenure restriction." *Id.* That it found they *remained* operative, rather than merely becoming so in the wake of the Supreme Court's decision, suggests that *Seila Law* did not find the *agency* had been acting without authority

in the time that the removal procedures for Director violated the Constitution. In sum, because the constitutional violation was limited to the removability of the Director, and not the authority of the agency as a whole, and because the Supreme Court found the defect severable, the CFPB was not acting without authority at the time the enforcement action at issue was initiated.

**\*7** *Bowsher*, relied on by Defendants, is not to the contrary. In *Bowsher*, the Supreme Court found a section of the Balanced Budget and Emergency Deficit Control Act of 1985 unconstitutional because it made the Comptroller General removable only by Congress, allowing Congress to unlawfully "retain[ ] control over the execution of the Act"—"in essence, permit[ting] a constitutional veto." *Bowsher v. Synar*, 478 U.S. 714, 734, 726 (1986). The Court concluded that Congress "cannot reserve for itself the power of removal of an officer charged with the execution of the laws except by impeachment." *Id.* at 726. Defendants imply *Bowsher* stands for the principle that "[i]f the President lacks the ability to remove an agency's head, the *agency* is unaccountable and cannot be 'entrusted with executive powers,' " ECF No. 22 at 2 (citing *Bowsher*, 478 U.S. at 732) (emphasis added), suggesting the agency itself lacked authority. But that quote actually states, in full, "because Congress has retained removal authority over the Comptroller General, *he* may not be entrusted with executive powers." 478 U.S. at 732 (emphasis added). The Court did not find that the agency that the Comptroller General headed, the General Accounting Office, was unaccountable—the party without authority was the agent, not the agency. Therefore, *Bowsher* does not dictate that an unconstitutional removal clause voids the actions of the agency as a whole.

Having determined that the CFPB had authority to initiate the enforcement action on September 25, 2019, the Court turns to its authority to ratify the prior action. According to Defendants, the Director's ratification of the enforcement action was invalid because it was "premature," as the *Seila Law* judgment had not yet issued, only the opinion. ECF No. 19 at 16. The Court need not decide this question, as even if the Notice of Ratification was filed prematurely, Plaintiff's continued prosecution of this case after the Supreme Court's judgment issued reflects "the principal's assent (or conduct that justifies a reasonable assumption of assent) to be bound by the prior action of another person or entity," which is sufficient to ratify the prior acts. *See Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019) (citing Restatement (Third) of Agency § 4.01)). And, of course, if Defendants were right that the initial ratification was premature and thus improper, Plaintiff could simply ratify the enforcement action tomorrow with the same result. Nevertheless, because the CFPB had authority to ratify the enforcement action, the ratification was proper.

### 4. Constitutionality: Funding Structure

Finally, Defendants argue this matter should be dismissed because the CFPB's funding structure "violates the separation-of-powers maxim, embodied in the Appropriations Clause." ECF No. 19 at 19. The CFPB is funded through two mechanisms. First, the Director annually requests an amount from the Federal Reserve, which is not to exceed 12 percent of the total operating expenses of the Federal Reserve System. 12 U.S.C. § 5497(a)(2). If the Bureau requires funds beyond that capped allotment, it must seek them through congressional appropriation. *Id.* § 5497(e). Second, the CFPB collects penalties in a separate fund called the "Consumer Financial Civil Penalty Fund," which is used to compensate victims of activities prohibited by "Federal consumer financial law" or, if not practicable, for consumer education and financial literacy programs. *Id.* § 5497(d). This insulation from the annual appropriations process and from congressional review stemmed from Congress' own determination that "the assurance of adequate funding, independent of the Congressional appropriations process, is absolutely essential to the independent operations of any financial regulator." S. Rep. No. 111-176, at 163 (2010).

The Constitution provides that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. art. I, § 9, cl. 7. The Supreme Court has "underscore[d] the straightforward and explicit command of the Appropriations Clause. 'It means simply that no money can be paid out of the Treasury unless it has been appropriated by an act of Congress.' " *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990) (quoting *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937)). This clear command ensures that "Congress's control over federal expenditures is 'absolute' "—that its power over the purse is exclusive and that no funds are expended beyond what Congress has approved. *U.S. Dep't of Navy v. Fed. Labor Relations Auth.*, 665 F.3d 1339, 1348 (D.C. Cir. 2012).

**\*8** Here, an act of Congress provided for the CFPB's funding, satisfying the Appropriations Clause's simple mandate. That Congress funded the CFPB outside the normal appropriations process does not create a constitutional problem. Indeed, the Constitution does not "prohibit

Congress from creating funding mechanisms that enjoy some degree of insulation from its own year-to-year control." *Consumer Fin. Prot. Bureau v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878, 896–97 (S.D. Ind. 2015). "Congress itself may choose...to loosen its own reins on public expenditure." *Am. Fed'n of Gov't Emps., AFL–CIO, Local 1647 v. Fed. Labor Relations Auth.*, 388 F.3d 405, 409 (3d Cir. 2004). This can include "authoriz[ing] appropriations that continue for a longer period of time," *id.*, or by creating self-financing programs that are reliant "on fees, assessments, or investments," *PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 95 (D.C. Cir. 2018), abrogated by *Seila Law*, 140 S. Ct. 2183; *see also Consumer Fin. Prot. Bureau v. Morgan Drexen, Inc.*, 60 F. Supp. 3d 1082, 1089 (C.D. Cal. 2014) ("The Appropriations Clause 'does not in any way circumscribe Congress from creating self-financing programs...without first appropriating the funds as it does in typical appropriation and supplement appropriation acts.' " (quoting *AINS, Inc. v. United States*, 56 Fed. Cl. 522, 539 (Fed. Cl. 2003), *aff'd*, 365 F.3d 1333 (Fed. Cir. 2004), *abrogated on other grounds by Slattery v. United States*, 635 F.3d 1298 (Fed. Cir. 2011)). "The Court is aware of no authority supporting the notion that an independent source of funding creates a separation-of-powers problem." *Rop v. Fed. Hous. Fin. Agency*, No. 1:17-CV-497, 2020 WL 5361991, at *26 (W.D. Mich. Sept. 8, 2020).

As an example, the Federal Reserve has existed as an independent agency funded outside the normal appropriations process for over one hundred years. *See* Federal Reserve Act, Pub. L. No. 63-43, § 10, 38 Stat. 251, 261 (1913) (codified as amended at 12 U.S.C. § 243). In fact, there are a number of independent agencies that operate completely outside of the normal annual appropriations process. *See* 12 U.S.C. § 1811, et seq. (Federal Deposit Insurance Corporation); 12 U.S.C. § 1755 (National Credit Union Administration); 12 U.S.C. § 4516 (Federal Housing Finance Agency); 12 U.S.C. § 2250 (Farm Credit Administration); 15 U.S.C. § 7219 (Public Company Accounting Oversight Board); 12 U.S.C. § 16 (Office of the Comptroller of the Currency); *see also PHH Corp.*, 881 F.3d at ("Congress has consistently exempted financial regulators from appropriations[.]").

Ultimately, the key inquiry for separation-of-powers purposes is whether Congress, rather than the executive or judicial branches, exercised the power of the purse. *See CFPB v. D & D Mktg.*, No. CV 15-9692 PSG (EX), 2016 WL 8849698, at *5 (C.D. Cal. Nov. 17, 2016) ("Congress's decision to allow the CFPB to self-fund through the Federal Reserve instead of annual appropriations from Congress does not violate the Appropriations Clause because it was still Congress, and not the executive or judicial branch, that made the decision about how the CFPB should be funded."). Here, Congress chose to fund the CFPB through the dual mechanisms outlined in the statute, shielding the CFPB from the traditional appropriations process to better effectuate its goal of creating an independent financial regulator. Moreover, the appropriation was not boundless, but instead was tied to a formula and other conditions. *See BCFP v. Law Offices of Chrystal Moroney, P.C.*, No. 7:20-cv-03240, Hr'g Tr. at 59, 79 (S.D.N.Y Aug. 19, 2020). The Court will not second-guess this exercise of Congressional appropriations authority. [5]

**\*9** Moreover, while Defendants correctly note that *Seila Law* did not directly confront the constitutionality of the CFPB's funding structure, its finding that the "only constitutional defect . ..in the CFPB's structure is the Director's insulation from removal," *Seila Law*, 140 S. Ct. at 2209, and the fact that it referenced the CFPB's funding structure only as an aggravator of "the agency's threat to Presidential control," *id.* at 2204, implied that the CFPB's source of funding itself did not present a constitutional defect. *See BCFP v. Law Offices of Chrystal Moroney, P.C.*, No. 7:20-cv-03240, Hr'g Tr. at 55 (S.D.N.Y Aug. 19, 2020) ("[A]lthough the Bureau's funding structure was not directly at issue in *Seila Law*, in deciding to sever the for-cause removal provision of the CFPA, the Supreme Court did note 'the only constitutional defect we have identified in the CFPB structure is the director's insulation from removal,' and that that constitutional defect 'disappear[ed]' with a director removable at will by the President."). To the extent it exacerbated the problems with the for-clause removal clause, it threatened to tread on the President's authority, not that of Congress, *Seila Law*, 140 S. Ct. at 2204 (expressing concern that "this financial freedom makes it even more likely that the agency will 'slip from the Executive's control'"), and the Supreme Court severed the removability clause to correct the balance.

Because the CFPB's funding structure complies with the Appropriations Clause's mandate that Congress control the power of the purse, the Court joins others that have considered the question in finding the CFPB's funding constitutional and declines to dismiss this case on that basis. *See, e.g.*, *BCFP v. Law Offices of Chrystal Moroney, P.C.*, No. 7:20-cv-03240 (S.D.N.Y Aug. 19, 2020); *ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878; *Morgan Drexen, Inc.*, 60 F. Supp. 3d 1082; *CFPB v. D & D Mktg.*, 2016 WL 8849698; *PHH Corp.*, 881 F.3d

75; *Consumer Fin. Prot. Bureau v. Navient Corp.*, No. 3:17-CV-101, 2017 WL 3380530, at *16 (M.D. Pa. Aug. 4, 2017).

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, and/or in the Alternative, for Stay of Proceedings, ECF No. 7, shall be denied. A separate Order follows.

Dated: November 30, 2020   /s/

GEORGE J. HAZEL

United States District Judge

**All Citations**

Slip Copy, 2020 WL 7043847

### Footnotes

| | |
|---|---|
| 1 | For purposes of considering Defendants' Motion to Dismiss, the Court accepts the facts alleged in the Complaint as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). |
| 2 | Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system. |
| 3 | Indeed, setting aside such an unratified action would be consistent with precedent. *See, e.g.*, *FEC v. NRA Political Victory Fund*; *Noel Canning v. NRLB*, 705 F.3d 490, 493 (D.C. Cir. 2013), *aff'd*, 573 U.S. 513 (2014) (holding that unratified actions taken by the NLRB when it lacked a quorum void). Notably, after *Noel Canning* was decided, the agencies ratified decisions made when the NLRB lacked a quorum, and those ratifications were upheld. *See, e.g.*, *McKinney v. Ozburn-Hessey Logistics, LLC*, 875 F.3d 333, 338 (6th Cir. 2017). |
| 4 | *Cf. Consumer Fin. Prot. Bureau v. RD Legal Funding,* LLC, 332 F. Supp. 3d 729, 785 (S.D.N.Y. 2018), *amended*, No. 17-CV-890 (LAP), 2018 WL 11219167 (S.D.N.Y. Sept. 12, 2018), *vacated and remanded*, No. 18-2743, 2020 WL 6372988 (2d Cir. Oct. 30, 2020), *and aff'd in part, rev'd in part and remanded*, No. 18-2743, 2020 WL 6372988 (2d Cir. Oct. 30, 2020) (finding ratification ineffective after determining the removal provision was *not* severable, as therefore the agency "lacks authority to bring this enforcement action because its composition violates the Constitution's separation of powers"). *RD Legal Funding* is now remanded for a determination on ratification, as the Supreme Court's decision in *Seila Law* contradicted its finding that the removal provision was severable and thus the CFPB lacked enforcement authority. |
| 5 | *See also BCFP v. Law Offices of Chrystal Moroney, P.C.*, No. 7:20-cv-03240, Hr'g Tr. at 57–58 (S.D.N.Y Aug. 19, 2020) (finding, to the extent the defendant was arguing that the nondelegation applies because Congress has improperly transferred its authority to another branch of government, this argument failed because Congress had supplied an intelligible principle to guide the delegee's use of discretion, as required by the Supreme Court). |

**End of Document**   © 2020 Thomson Reuters. No claim to original U.S. Government Works.