THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CONSUMER FINANCIAL          :
PROTECTION BUREAU,          :
                            :
            Plaintiff,      :
                            :   3:17-CV-101
      v.                    :   (JUDGE MARIANI)
                            :
NAVIENT CORPORATION, et al.,:
                            :
            Defendants.     :

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff, the Consumer Financial Protection Bureau ("CFPB" or "Bureau"), filed a

Complaint in the above-captioned action on January 18, 2017.  (Doc. 1).  The eleven count

Complaint alleges that Defendants, Navient Corporation, Navient Solutions, Inc., and

Pioneer Credit Recovery, Inc., (collectively "Navient"), committed various violations of the

Consumer Financial Protection Act ("CFPA" or "Act"), 12 U.S.C. §§ 5531, 5536 (Counts I-

VIII), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e (Counts IX-X), and

Regulation V of the Fair Credit Reporting Act, 12 C.F.R. §1022.42 (Count XI).  (Doc. 1).

On March 24, 2017, Navient filed a Motion to Dismiss or, in the alternative, for a

More Definite Statement (Doc. 28), which this Court denied on August 4, 2017 (Docs. 57,

58).  Following the Court's Opinion and Order, the parties raised a myriad of discovery

disputes, necessitating a number of conference calls, oral argument, and opinions and

orders from this Court in an effort to resolve these issues.  On January 16, 2019, upon

agreement by the parties, the Court appointed the Honorable Thomas I. Vanaskie (Retired)

as Special Master in this case to decide "current and future discovery disputes in this action"

(Doc. 158), which resulted in approximately 18 Special Master Reports and 74 Orders by

the Special Master between January, 2019 and April, 2020.

Following the completion of extensive discovery, in May, 2020, the CFPB filed a

Motion for Summary Judgment (Doc. 468) "with respect to liability on all claims in the

complaint" and Navient filed a Motion for Summary Judgment (Doc. 469) as to all counts of

the complaint, each submitting lengthy briefs and statements of material fact[1] and

voluminous exhibits in support of their respective positions.

On June 29, 2020, the Supreme Court issued a decision in *Seila Law LLC v.*

*Consumer Financial Protection Bureau*, 140 S.Ct. 2183 (2020) (hereinafter "*Seila*").  The

Supreme Court held therein that the structure of the CFPB violated the Constitution's

separation of powers; but because the provision addressing the CFPB Director's removal

---

[1] Due to a dispute between the parties as to the number of statements of material fact each party
should be allowed to set forth, wherein the CFPB requested a "compromise figure of 1000 material facts"
and Navient requested "400 factual assertions per side", the Court ordered that the parties could each file a
statement of material facts not to exceed 400 numbered statements of fact, but further provided that the
parties could file a joint statement of undisputed material facts which may "contain an unlimited number of
agreed upon statements."  (Doc. 463).  The parties thereafter filed a Joint Statement of Undisputed Facts
containing 63 numbered paragraphs (Doc. 481), CFPB filed a 141-page statement of material facts
consisting of 385 numbered paragraphs (Doc. 483), and Navient filed a 97-page statement of material facts
containing 376 numbered paragraphs (Doc. 471).

protection was "severable from the other statutory provisions bearing on the CFPB's authority," the CFPB could continue to operate, *id*. at 2192.

Defendants filed a Motion for Judgment on the Pleadings (Doc. 504) on July 10, 2020, based on the *Seila* decision.  On July 14, 2020, the CFPB filed a "Notice Regarding *Seila Law LLC v. CFPB* and Ratification" (Doc. 506), explaining that "in the wake of the decision in *Seila Law* rendering [the CFPB Director] removable at will, the Bureau's Director has considered the basis for the decision to file the complaint in this proceeding, and has ratified that decision."  Attached to the CFPB's notice was the Declaration of Kathleen L. Kraninger, Director of Plaintiff Consumer Financial Protection Bureau, Regarding Ratification (Doc. 506-1).  Director Kraninger stated therein that in her "capacity as the Bureau's Director, [she has] considered the basis for the Bureau's decision to file the above-captioned lawsuit against Defendants" and that "[o]n behalf of the Bureau, [she] hereby ratif[ies] the decision to file the above-captioned lawsuit against Defendants."  (*Id*. at ¶¶ 4-5).

The Motion for Judgment on the Pleadings has been fully briefed and is now ripe. Because a decision on this motion may be dispositive of the entire action, the Court finds it necessary to address Defendants' motion for judgment on the pleadings prior to turning to the parties' cross-motions for summary judgment (Docs. 468, 469), Objection to the Special Master's Report (Doc. 459), and other pending evidentiary motions and unresolved discovery disputes (*see e.g.* Docs. 391, 507, 519, 524, 543).

For the reasons that follow, the Court will deny Defendants' Motion (Doc. 504).

## II. STANDARD OF REVIEW

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Under Federal Rule of Civil Procedure 12, judgment on the pleadings is only appropriate in favor of the moving party when that party "clearly establishes that no material issue of fact remains to be resolved" such that the party is "entitled to judgment as a matter of law."  *Rosenau v. Unifund Corp.,* 539 F.3d 218, 221 (3d Cir. 2008) (internal quotation omitted).  When reviewing a motion for judgment on the pleadings, a court must view the facts in the plaintiff's complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Allah v. Al-Hafeez,* 226 F.3d 247, 249 (3d Cir. 2000); *Snyder v. Daugherty,* 899 F.Supp.2d 391, 396 (W.D. Pa. 2012).  A district court thus applies the same standard to a judgment on the pleadings as a motion to dismiss pursuant to Rule 12(b)(6), but may also review the answer and instruments attached to the pleadings.  *Brautigam v. Fraley,* 684 F.Supp.2d 589, 591-592 (M.D. Pa. 2010).

## III. ANALYSIS

This Court has previously set forth the extensive factual allegations contained in the CFPB's Complaint (*see* Doc. 57)(memorandum opinion denying Defendants' motion to dismiss) and need not do so here as Navient's motion for judgment on the pleadings does not challenge the facts of the Complaint.  Rather, Navient asserts that, in light of the Supreme Court's recent decision in *Seila*, "[i]t is now established law that the CFPB never had constitutional authority to bring this action and that the filing of this lawsuit was

unauthorized and unlawful" and further that because the statute of limitations ran on all of

the CFPB's claims prior to the decision in *Seila*, any ratification now by a Director of the

CFPB who is properly subject to the President's removal power would be improper in that it

"cannot revive the statute of limitations period."  (Doc. 505, at 1).

In *Seila*, the Supreme Court held that "the structure of the CFPB violates the

separation of powers"; however "the CFPB Director's removal protection is severable from

the other statutory provisions bearing on the CFPB's authority" and "[t]he agency may

therefore continue to operate, but its Director, in light of our decision, must be removable by

the President at will." 140 S.Ct. at 2192.  In so holding, the Supreme Court severed 12

U.S.C. § 5491(c)(3), which states that "The President may remove the Director for

inefficiency, neglect of duty, or malfeasance in office", from the remainder of the provisions

in § 5491 ("Establishment of the Bureau of Consumer Financial Protection").  The Supreme

Court found that "[t]he only constitutional defect we have identified in the CFPB's structure

is the Director's insulation from removal" and thus "[i]f the Director were removable at will by

the President, the constitutional violation would disappear."  *Id*. at 2209.  Upon review of the

Dodd-Frank Act, the Supreme Court explained:

> The provisions of the Dodd-Frank Act bearing on the CFPB's structure and
> duties remain fully operative without the offending tenure restriction. Those
> provisions are capable of functioning independently, and there is nothing in the
> text or history of the Dodd-Frank Act that demonstrates Congress would have
> preferred *no* CFPB to a CFPB supervised by the President.

*Id.* (emphasis in original). The Supreme Court thus remanded the case to the Court of Appeals for the Ninth Circuit "to consider whether the civil investigative demand was validly ratified." *Id.* at 2211. In so doing, the majority rejected Justice Thomas' "belie[f] that any ratification is irrelevant" as set forth in his partial concurrence and partial dissent. *Id.* at 2208 n.12.[2]

In applying the doctrine of ratification, "it is essential that the party ratifying should be able not merely to do the act ratified at the time the act was done, *but also at the time the ratification was made.*" *Federal Election Commission v. NRA Political Victory Fund*, 513 U.S. 88, 98 (1994)(emphasis in original). "This 'timing problem' has since been read to require that the ratifier have the 'power' to reconsider the earlier decision at the time of ratification." *Advanced Disposal Servs. East, Inc. v. NLRB*, 820 F.3d 592, 603 (3d Cir. 2016). Further, where an agency ratifies a previously unauthorized agency action, there are three general requirements for ratification:

> First, the ratifier must, at the time of ratification, . . . have the authority to take the action to be ratified. Second, the ratifier must have full knowledge of the decision to be ratified. Third, the ratifier must make a detached and considered affirmation of the earlier decision.

---

[2] The majority opinion characterized Justice Thomas' view that "any ratification is irrelevant" as indicating that "even if the issuance of the demand and initiation of this suit have been validly ratified, Director Kraninger's activities in litigating the case – after inheriting it from an Acting Director, but before becoming removable at will herself in light of our decision – present a distinct constitutional injury requiring immediate dismissal." *Seila*, 140 S.Ct. at 2208 n. 12. But the majority opinion declined to adopt Justice Thomas' view, stating "whether and when the temporary involvement of an unconstitutionally insulated officer *in an otherwise valid prosecution* requires dismissal falls outside the questions presented, has not been fully briefed, and is best resolved by the lower courts in the first instance." *Id.* (emphasis added).

*Id.* at 602. [3]

Navient's argument turns on two points: (1) that, as a result of *Seila*, the CFPB never had the constitutional authority to bring this action and thus the filing of the action in 2017 was unauthorized and unlawful, and (2) that Director Kraninger could not properly ratify the action in July, 2020 because the statute of limitations had already run on each of the CFPB's claims.[4]

Despite Navient's arguments, the Supreme Court's limited holding in *Seila* does not entitle Navient to judgment on the pleadings and dismissal of this matter.  Navient's arguments in support of their motion stray far from the Supreme Court's holding in *Seila* and overlook precisely what *Seila* decided.

First, the Court in *Seila* held that "the CFPB's leadership by a single individual removable only for inefficiency, neglect, or malfeasance violates the separation of powers." *Seila*, 140 S.Ct. at 2197.  Thus, only the single sentence set forth in subsection (c)(3) of

_____

[3] Defendants do not argue that Director Kraninger did not "have full knowledge of the decision to be ratified" or that she did not make "a detached and considered affirmation of the earlier decision", *Advanced Disposal Servs. East, Inc.* 820 F.3d at 602, and thus the Court deems those requirements not to be at issue.

[4] Following the Supreme Court's decision in *Seila* and the filing of Navient's Motion for Judgment on the Pleadings, the CFPB filed its Notice and Ratification by Director Kraninger (Doc. 506).  The Bureau stated therein that in its brief in opposition to Defendants' motion, it would "explain why, as a result of this ratification, this enforcement action may proceed apace."  *Id*.  CFPB's brief in opposition to Defendants' motion does not argue that ratification was unnecessary – rather, the CFPB has conceded the necessity of ratification.  Were the CFPB's position otherwise, this Court would have recognized the existence of an issue deserving of further briefing by the parties, specifically whether ratification of the CFPB's initiation of suit in this case in 2017 is necessary in that, arguably, the sole purpose of the Court's ruling in *Seila* was to ensure that the CFPB's Director is subject to summary removal by the President in accordance with the executive powers of Article II of the Constitution.

Section 5491 of the Act was held to be unconstitutional and therefore unenforceable as a violation of the separation of powers doctrine and the executive power invested in the President by Article II of the Constitution.

Having concluded that "the CFBP's leadership by a single independent Director violates the separation of powers", the Court turned to the appropriate remedy. *Seila*, 140 S.Ct. at 2207. The Court reasoned that, if the Director's removal protection was severable from the other provisions of the Dodd-Frank Act that established the CFPB, "then the CFPB may continue to exist and operate notwithstanding Congress's unconstitutional attempt to insulate the agency's Director from removal by the President." *Id*. at 2207-2208; *see also, id*. at 2209 ("The only constitutional defect we have identified in the CFPB's structure is the Director's insulation from removal. If the Director were removal at will by the President, the constitutional violation would disappear. We must therefore decide whether the removal provision can be severed from the other statutory provisions relating to the CFPB's powers and responsibilities.").

In addressing the severability issue, the *Seila* Court first acknowledged Petitioner's argument that the CFPB Director's protection from removal could not be severed from the other statutory provisions that define the CFPB's authority. The Court explained that "[i]f petitioner is correct, the offending removal provision means the entire agency is unconstitutional and powerless to act, then a remand would be pointless." *Id*. at 2208. The Court thus reasoned that "with no agency left with statutory authority to maintain this suit or

otherwise enforce the demand, the appropriate disposition would be to reverse with

instructions to deny the Government's petition to enforce the agency's demand for

documents and dismiss the case, as petitioner requests." *Id*. However, "[i]f, on the other

hand, the removal restriction is severable, we must instead remand for the Government to

press its ratification arguments in further proceedings." *Id*.

Citing its decision in *Free Enterprise Fund v. Public Company Accounting Oversight*

*Board*, 561 U.S. 477 (2010), the Supreme Court held the unconstitutional grant of tenure to

the CFPB Director in Section 5491(c)(3) was severable from the remainder of the Act:

> In *Free Enterprise Fund*, we found a set of unconstitutional removal provisions
> severable even in the absence of an express severability clause because the
> surviving provisions were capable of "functioning independently" and "nothing
> in the statute's text or historical context [made] it evident that Congress, faced
> with the limitations imposed by the Constitution, would have preferred no Board
> at all to a Board whose members are removable at will." 561 U.S. at 509, 130
> S. Ct. 138 (internal quotation marks omitted).

> So too here.  The provisions of the Dodd-Frank Act bearing on the CFPB's
> structure and duties remain fully operative without the offending tenure
> restriction.  Those provisions are capable of functioning independently, and
> there is nothing in the text of history of the Dodd-Frank Act that demonstrates
> Congress would have preferred *no* CFPB to a CFPB supervised by the
> President.  Quite the opposite.  Unlike the Sarbanes-Oxley Act at issue in *Free
> Enterprise Fund*, the Dodd-Frank Act contains an express severability clause.
> There is no need to wonder what Congress would have wanted if "any provision
> of this Act" is "held to be unconstitutional" because it has told us: "the remainder
> of this Act" should "not be affected."  12 U.S.C. § 5302.

*Seila*, 140 S.Ct. at 2209.  The Supreme Court, in finding the Director's removal protection

severable from the other provisions of the Dodd-Frank Act that establish the CFPB, further

found it "clear that Congress would prefer that we use a scalpel rather than a bulldozer in curing the [identified] constitutional defect." *Id*. at 2210-2211.

The Court therefore remanded the case in *Seila* to the Ninth Circuit Court of Appeals to consider "whether the civil investigation demand was validly ratified." *Id*. at 2211.

Here, Navient's assertion that the CFPB "never had constitutional authority to bring this action" is belied by *Seila*'s implicit finding that the CFPB always had the authority to act, despite the Supreme Court's finding that the removal protection was unconstitutional. As the Court explained, "[i]f petitioner is correct [that the CFPB Director's protection from removal could not be severed from the other statutory provisions], the offending removal provision means the entire agency is unconstitutional and powerless to act, then a remand would be pointless." *Seila*, 140 S.Ct. at 2208. The Court rejected petitioner's position, instead remanding the action to the Ninth Circuit with instructions to consider the issue of ratification. Because a proper ratification could only be possible if, in the first instance, the ratifying party could do the act ratified at the time the act was done, a remand would have been unnecessary if the majority in *Seila* intended its opinion to be read as holding that the CFPB lacked the authority to act at any time prior to the severance of the offending provision. The Supreme Court left the agency, and its ability to act, intact, and specifically found that "[t]he provisions of the Dodd-Frank Act bearing on the CFPB's structure and duties *remain* fully operative without the offending tenure restriction." *Id*. at 2209 (emphasis added). The Supreme Court also explained that if the Director's removal protection was

severable from the other provisions of the Dodd-Frank Act that established the CFPB, which

it was, "then the CFPB may *continue to exist and operate* notwithstanding Congress's

unconstitutional attempt to insulate the agency's Director from removal by the President."

*Id*. at 2207-2208 (emphasis added).  The use of words including "remain fully operative" and

"continue to exist and operate" demonstrates that the Court's decision was not intended to

invalidate past actions by the CFPB, but rather was limited in scope to the narrow finding

that removal provision was unconstitutional but severable "from the other statutory

provisions relating to the CFPB's powers and responsibilities," *Seila*, 140 S.Ct. at 2209.[5]

This Court's determination that the CFPB's action was properly brought and timely

filed in 2017 and no ratification issue exists by virtue of the *Seila* Court's excision of

subsection (c)(3) from § 5491 of the Act[6] is also consonant with the reasoning of the Court

in *Consumer Financial Protection Bureau v. Gordon*, 819 F.3d 1179 (9th Cir. 2016).  There,

the Ninth Circuit held that agency existed for Article III purposes despite the fact that the

Director of the CFPB, Richard Cordray, while holding his position as a result of a recess

---

[5] Defendants assert that the Court in *Seila* "recognized that its decision called into question the validity of any actions taken by the CFPB when it was unlawfully constituted" (Doc. 505, at 2-3), citing to page 36 of the Supreme Court's decision (also found at 140 S.Ct. at 2211).  Review of this passage in *Seila* does not reveal such "recogni[tion]" by the Supreme Court and it is clear that Defendants, again, take liberties in their representation of the *Seila* Court's opinion and holding.

[6] The Court notes that Navient has argued in its pending motion for summary judgment that the statute of limitations requires partial dismissal of certain counts in the Complaint.  (*See e.g.,*  Doc. 470, at 63-66).  The Court's opinion herein is limited to whether a statute of limitations issue exists as a result of *Seila* and should not be interpreted by any party as an adjudication of Defendants' summary judgment argument.

appointment, lacked the constitutional authority to act on the agency's behalf at the time the action was filed.

Specifically, in *Gordon*, in July of 2012, the CFPB filed a civil enforcement action against Gordon, alleging violations of two sections of the CFPA.  At that time, Mr. Cordray had been appointed by President Obama as Director of the CFPB by virtue of the President's recess-appointment powers.  As the result of a Supreme Court decision in a separate case, the parties in *Gordon* agreed that Mr. Cordray's January 2012 recess appointment was invalid, but that his re-appointment, following Senate confirmation on July 16, 2013, was valid.  *Gordon*, 819 F.3d at 1185-1186.  On August 30, 2012, the CFPB issued a Notice of Ratification "affirm[ing] and ratify[ing] any and all actions [he] took" while serving "as a recess appointee."  *Id*. at 1186.

The Court in *Gordon* began by addressing Article III standing in the case.  There, the Judicial Education Project ("JEP") filed an amicus brief and its argument was summarized by the Court as follows:

> JEP argues that Cordray's improper recess appointment divests our court of jurisdiction. According to JEP, the lack of a valid director from the outset means that the CFPB never existed for Article III purposes until July 2013, when the Senate confirmed Cordray, because the CFPB purportedly could only operate with a properly confirmed director in place. Not only did Cordray lack authority to initiate any civil enforcement actions, the argument goes, but so did any inferior officers that Cordray appointed – essentially an Article II version of the fruit of the poisonous tree doctrine.

*Id.* at 1188.  The Ninth Circuit rejected this argument, explaining that

> Here, Congress authorized the CFPB to bring actions in federal court to enforce
> certain consumer protection statutes and regulations. *See* 12 U.S.C. § 5564(a)-
> (b)(authorizing the CFPB to "commence a civil action against" violators of
> federal consumer financial protection laws and "act in its own name and
> through its own attorneys in enforcing" the laws under its jurisdiction). And with
> this authorization, the Executive Branch, through the CFPB, need not suffer a
> "particularized injury" – it is charged under Article II to enforce federal law. . .
> That its director was improperly appointed does not alter the Executive
> Branch's interest or power in having federal law enforced . . .  While the failure
> to have a properly confirmed director may raise Article II Appointments Clause
> issues, it does not implicate our Article III jurisdiction to hear this case.

*Id*. at 1188-1189.  *See also*, *id.* at 1189 ("the initially flawed appointment of Cordray is an

Article II question, and every court confronted with this issue has analyzed it as such.").

The Ninth Circuit, having found that it had jurisdiction to hear the case, turned to the

Article II issue before it, finding that "[t]he initial invalid appointment of Cordray also is not

fatal to this case [and t]he subsequent valid appointment, coupled with Cordray's August 30,

2013 ratification, cures any initial Article II deficiencies."  *Gordon*, 819 F.3d at 1190-1190.

The Court, citing to the Supreme Court's decision in *NRA Political Victory Fund*, first

reiterated that the issue of ratification is governed by principles of agency law, including the

Restatement of Agency.  *Id*. at 1191.  Under the Second Restatement, the Court explained

that if the CFPB "had authority to bring the action in question, then the subsequent August

2013 ratification of the decision to bring the case against Gordon is sufficient."  *Id*. at 1191.

Under the "less stringent" Third Restatement, the "ratification is valid even if the principal did

not have capacity to act at the time, so long as the person ratifying has the capacity to act at

the time of ratification." *Id*. at 1191.[7]  Thus, the Circuit concluded that "[b]ecause the CFPB

had the authority to bring the action at the time Gordon was charged, Cordray's August

2013 ratification, done after he was properly appointed as Director, resolves any

Appointments Clause deficiencies." *Id*. at 1192.

In reaching its decision in *Gordon*, the Court also relied on *Federal Election*

*Commission v. Legi-Tech*, 75 F.3d 704 (D.C. Cir. 1996), another case which rejects the

position Navient now seeks to advance.

In *Legi-Tech*, the FEC brought a civil enforcement proceeding against Legi-Tech, a

computer database service.  Following the commencement of the civil enforcement

proceeding, the D.C. Circuit held in a separate action that "the presence of two

congressional officers as non-voting *ex officio* members of the FEC violated the Constitution

and that the FEC therefore had no authority to bring the enforcement action," but further

determined that the *ex officio* provision was severable.  *Legi-Tech*, 75 F.3d at 706.

_____

[7] The Restatement (Third) of Agency § 4.04(1) states that "A person may ratify an act if (a) the person existed at the time of the act, and (b) the person had capacity . . . at the time of ratifying the act." The commentary to this subsection notes a departure from the ratification principles set forth in the Restatement (Second) of Agency, noting that "it is not necessary for ratification that the principal have had capacity as well at the time of the act that the ratification concerns" and explaining that:

> Earlier statements of ratification doctrine were more stringent on this score, requiring that the principal have had capacity at the time of the original act as well as at the time of ratification. See Restatement Second, Agency § 84(1). There were two rationales for the restriction. The first was that ratification's legal consequences relate back to the time of the original act. . . . Contemporary cases do not support restricting ratification on this basis. The second rationale was that, if an act carried no legal consequences because it was illegal, it could not be ratified because it could not have been initially authorized by the principal. . . . In contrast, within this Restatement, whether an action taken by an agent is illegal is not treated as a question of the principal's capacity.

Restatement (Third) of Agency § 404, cmt. (b).

Following that decision, the FEC immediately voted to reconstitute itself and soon thereafter voted to authorize the General Counsel to continue the litigation in *Legi-Tech*. *Id*. The D.C. Circuit described "Legi–Tech's contention that the FEC's reconstitution and ratification is not an effective remedy because separation of powers is a 'structural' constitutional defect that necessarily voids all prior decisions" as "overstated" and further explained that, although Legi-Tech was prejudiced "when the FEC brought suit", the "relevant issue is the degree of continuing prejudice now, after the FEC's reconstitution and ratification, and whether that degree of prejudice – if it exists – requires dismissal." *Id*. at 708. The Court ultimately rejected Legi-Tech's arguments in support of dismissal, finding "the better course is to take the FEC's post-reconstruction ratification of its prior decisions at face value and treat it as an adequate remedy for the . . . constitutional violation." *Id*. at 709.

This Court finds further support in the Ninth Circuit's recent decision in *CFPB v. Seila Law, LLC*, -- F.3d --, 2020 WL 7705549 (9th Cir., Dec. 29, 2020) (hereinafter "*Seila Law*"), addressing the ratification issue remanded to it by the Supreme Court. There, the Ninth Circuit similarly relied on *Gordon* and *Legi-Tech* and rejected Seila Law's argument that Director Kraninger could not validly ratify the CFPB's earlier actions because the agency lacked the authority to take those actions in 2017 when the CFPB issued a civil investigative demand to Seila Law. In so doing, the Court explained that "Director Kraninger's ratification remedies any constitutional injury that Seila Law may have suffered due to the manner in which the CFPB was originally structured." *Seila Law,* 2020 WL 7705549, at *2. The Court

reasoned that "[a]ny concerns that Seila Law might have had about being subjected to investigation without adequate presidential oversight and control have now been resolved. A Director well aware that she may be removed by the President at will has ratified her predecessors' earlier decisions to issue and enforce the [civil investigative demand]." *Id.*

The Ninth Circuit rejected an almost-identical argument to that now before this Court, *i.e.* that "until the Supreme Court invalidated the for-cause removal provision, the CFPB was exercising executive power unlawfully, which in turn rendered all of the agency's prior actions void at the time they were taken and hence incapable of being ratified", *Seila Law*, 2020 WL 7705549, at * 2.  Relying on *Gordon*, wherein the Court found that "the CFPB as an agency has the authority to bring the enforcement action both 'at the time the act was done' and at 'the time the ratification was made,'" *id*. at *3 (citing *Gordon*, 819 F.3d at 1191-1192), the Court in *Seila Law* explained:

> Just as in *Gordon*, the constitutional infirmity relates to the Director alone, not to the legality of the agency itself. Although the Supreme Court held in *Seila Law* that the CFPB's "structure" violated the separation of powers, 140 S. Ct. at 2192, the Court explained that "[t]he only constitutional defect we have identified in the CFPB's structure is the Director's insulation from removal." *Id.* at 2209. Nothing in the Court's decision suggests that it believed this defect rendered all of the agency's prior actions void. Indeed, had that been the Court's view, it presumably would have ordered the dismissal of this proceeding rather than remanding for us to consider whether the agency's actions relating to the CID had been validly ratified.

*Seila Law,* 2020 WL 7705549, at *3. The Ninth Circuit found further support in *Legi-Tech*, finding that "[t]aken together, *Legi-Tech* and *Gordon* confirm that ratification is available to cure both Appointments Clause defects and structural, separation-of-powers defects." *Id*.

Finally, unlike a number of cases cited by the parties, wherein at issue was the

*appointment(s)* or *formations* of the agency boards or Director, in *Seila*, the Supreme Court's

limited holding excised only a provision addressing the *removability* of the CFPB director.

*Compare e.g., F.E.C. v. NRA Political Victory Fund*, 6 F.3d 821 (D.C. Cir. 1993)(holding that

the composition of the FEC as set forth in the statute was unconstitutional, and noting that

statute at issue was silent as to President's removal authority); *Lucia v. S.E.C.*, 138 S.Ct.

2044 (2018) (holding that Administrative Law Judges for the Securities and Exchange

Commission are "Officers of the United States," and thus appointment of these ALJs by SEC

staff members violated the Appointments Clause) *with, generally, Seila Law LLC v. CFPB*,

140 S.Ct. 2183 (2020) (finding only removal provision to be unconstitutional).  *See also*,

*Collins v. Mnuchin*, 938 F.3d 553, 593 (5th Cir. 2019) (Haynes, J.) (explaining that

"[r]estrictions on removal are different" from categories of cases where "officers were vested

with authority that was never properly theirs to exercise" and that in cases where a removal

protection is at issue, "the conclusion is that the officers are duly appointed by the appropriate

officials and exercise authority that is properly theirs . . . [but] that, once appointed, they are

too distant from presidential oversight to satisfy the Constitution's requirements."), *cert.*

*granted*, -- S.Ct. --, 2020 WL 3865249 (Mem.) (July 9, 2020).  Furthermore, while

unconstitutional removal protections are more easily subject to a remedy less severe than

dismissal of an action, cases such as *Legi-Tech* and *Gordon* demonstrate that courts have

repeatedly held that even unconstitutional provisions governing appointment(s) or formations

of an agency board or Director can nonetheless be cured through ratification by a properly appointed official. *See also, Jooce v. F.D.A.*, --F.3d--, 2020 WL 7034417, at *2 (D.C. Cir. 2020) ("This court has repeatedly recognized that ratification can remedy a defect arising from the decision of an improperly appointed official.").[8]

As a result, Navient's assertion that, in light of the Supreme Court's recent decision in *Seila*, "[i]t is now established law that the CFPB never had constitutional authority to bring this action and that the filing of this lawsuit was unauthorized and unlawful" (Doc. 505, at 1) is without merit. Rather, the case law supports a finding that this action was lawfully brought in 2017 by the CFPB and is not subject to dismissal on that ground. However, the Court must turn to whether the July, 2020 ratification of this lawsuit by Director Kraninger, who is now subject to the President's summary power of removal, was valid in light of the expiration of the statute of limitations.

---

[8] It must be further noted that, despite the unconstitutional removal provision, there is no indication that the President of the United States would have taken other action had the Director of the CFPB been subject to summary removal in 2017 or at any time prior to June, 2020. Here, when the CFPB filed suit in January of 2017, Richard Cordray served as Director of the CFPB. Since that time, Mick Mulvaney has served as Acting Director, and Kathleen Kraninger was appointed in December, 2018. Director Kraninger ratified the initiation of suit on July 9, 2020. (Doc. 506-1). Following the Supreme Court's holding in *Seila* that the CFPB's removal protection was unconstitutional, the President did not remove Director Kraninger as was his now-established right. The purpose of the ratification of the instant suit by Director Kraninger, given the *Seila* Court's severance of the removal provision set forth at § 5491(c)(3), can only be to establish the approval of the Bureau's lawsuit by a Director who serves at the pleasure of the President and is subject to summary removal. In this way, the ratification by Director Kraninger is subject to the President's power to summarily remove her. From this, the corollary conclusion is that the decision of the President to decline to remove her shows no opposition by the Executive Branch to the commencement, and continuation, of this suit against Navient or the policies underlying it.

Navient's principal argument in moving for judgment on the pleadings is that Director Kraninger's July, 2020, ratification comes too late, in that the statute of limitations on each of the CFPB's claims against Navient expired prior to June, 2020, when *Seila* was decided. (*See* Doc. 505).  In other words, Navient's argument is premised on the caselaw and agency restatements which would require that the ratifying party, the CFPB, must be able to do the act ratified (the bringing of the present action) "at the time the ratification was made", *NRA Political Victory Fund*, 513 U.S. at 98, *i.e.*, in July of 2020.

Navient's argument relies principally on the Supreme Court's decision in *NRA Political Victory Fund*.  The Supreme Court case arose from an appeal of the D.C. Circuit's holding "that the congressionally mandated composition of [the Federal Election Commission] (FEC), including as it did representatives of the Senate and House as nonvoting members, violated the separation-of-powers principle embodied in the Constitution."  513 U.S. at 90.  The Supreme Court declined to reach the merits of the appeal, holding that the FEC could not independently file a Petition for *certiorari* in the U.S. Supreme Court; that only the Solicitor General had authority to do so, and that the Solicitor General's after-the-fact authorization did not relate back to the time of the FEC's unauthorized filing so as to make it timely.

Specifically, the Supreme Court in *NRA Political Victory Fund* concluded that "the FEC is not authorized to petition for certiorari in this Court on its own, and that the effort of the Solicitor General to authorize the FEC's petition after the time for filing it had expired did not breathe life into it."  513 U.S. at 90.  The Court found that the 90-day period within which

a Petition for Certiorari in a civil case must be filed is "mandatory and jurisdictional." *Id*.

While the Court found that the FEC's Petition would appear to be timely, it also held that the

FEC lacked statutory authority to represent itself before the Supreme Court and thus could

not independently file a Petition for Certiorari, requiring instead the Solicitor General's

authorization. The Solicitor General's authorization did not come until more than 120 days

after the deadline for filing a Petition for Certiorari had passed. Thus, the issue before the

Court became a "determin[ation] [of] whether this 'after-the-fact' authorization relates back

to the date of the FEC's unauthorized filing so as to make it timely"; concluding "that it does

not." *Id.* at 98.

In reaching its holding, the *NRA Political Victory Fund* Court explained that the

"question is at least presumptively governed by principles of agency law, and in particular

the doctrine of ratification." *Id*.

> "If an act to be effective in creating a right against another or to deprive him of
> a right must be performed before a specific time, an affirmance is not effective
> against the other unless made before such time." Restatement (Second) of
> Agency § 90 (1958); *see also id.,* Comment *a* ("The bringing of an action, or of
> an appeal, by a purported agent can not be ratified after the cause of action or
> right to appeal has been terminated by lapse of time"). Though in a different
> context, we have recognized the rationale behind this rule: "The intervening
> rights of third persons cannot be defeated by the ratification. In other words, it
> is essential that the party ratifying should be able not merely to do the act
> ratified at the time the act was done, *but also at the time the ratification was
> made.*" *Cook v. Tullis,* 85 U.S. (18 Wall.) 332, 338, 21 L.Ed. 933 (1874)
> (emphasis added).

*Id*. Applying these principles, the Supreme Court thus held that "the FEC may not

independently file a petition for certiorari in this Court under 2 U.S.C. § 437d(a)(6), and that

the Solicitor General's 'after-the-fact' authorization does not relate back to the FEC's

unauthorized filing so as to make it timely." *Id*. at 99.

In light of the clear language in *NRA Political Victory Fund* and the Restatement

(Second) of Agency (as well as the Restatement (Third) of Agency), this Court must reject

the CFPB's argument that the statute of limitations could not have run until the CFPB was

made aware of its unconstitutional structure following *Seila*.[9]  Plaintiff accurately

summarizes the issue as follows:

---

[9] In the present action, although the legal principles set forth by the Supreme Court's decision in *NRA Political Victory Fund* are controlling, this Court notes that significant procedural and factual differences exist between that case and the present CFPB action.

For the reasons previously explained, nothing in the *Seila* decision can reasonably be read to indicate that the CFPB was without statutory authority to initiate this case, as was the FEC in its attempt to file a Petition for Certiorari in *NRA Political Victory Fund*.  There, only the Solicitor General had the authority to file such a Petition on behalf of the FEC and his filing came too late to meet the 90-day filing requirement.  Thus, the decision in *NRA Political Victory Fund* turns on the basic proposition that the FEC never had the authority to file a Petition for Certiorari, and the Solicitor General, who did have such authority, did so too late.  Here, the Court's decision in *Seila* is careful to instruct that CFPB's "structure and duties remain fully operative" and that those responsibilities were not altered by the severance of the offending removal provision.  Unlike in *NRA Political Victory Fund*, the CFPB as an agency had the authority to file the present lawsuit in 2017 and the Court's decision in *Seila* does not vitiate the CFPB's decision to do so at that time.  Otherwise stated, here, the CFPB's actions in 2017 and throughout this action were valid and lawfully taken pursuant to the agency's statutory authority; the FEC never had the authority to petition for certiorari to the Supreme Court, and thus ratification was not possible as that agency's action in filing the appeal was never validly undertaken.

The Supreme Court's decision in *NRA Political Victory Fund* is further distinguishable in that, there, the issue before the Supreme Court did not turn on the constitutionality of the FEC's structure or the agency's stated statutory ability to act later found to be unconstitutional.  Rather, in *NRA Political Victory Fund*, the Supreme Court did not reach the merits of the D.C. Circuit Court's decision.  Instead, the Supreme Court recognized that "no dispute exists as to the FEC's authority to litigate this case in the District Court or the Court of Appeals; the question here concerns only the FEC's independent litigating authority before this Court when it proceeds under [2 U.S.C. § 437d(a)(6)]."  *NRA Political Victory Fund*, 513 U.S. at 92.  The Supreme Court's analysis demonstrated that the FEC *never* had the statutory authority to litigate the case before that Court, and always must have received the Solicitor General's authorization to file a petition for certiorari.  There, the Supreme Court's decision rested in part of a finding that "[i]f the Solicitor General were allowed to retroactively authorize untimely agency petitions, he would have the unilateral power to extend the 90–day statutory period by days, weeks, or, as here, even months*." Id*. at

Defendants argue that a ratification at the present time by the Bureau's Director cannot be effective because the statute of limitations has now run on the violations alleged in the Complaint. Def. Brief at 5-8. This heads-I-win-tails-you-lose argument is simply wrong. The CFPA's statute of limitations provides that, "[e]xcept as otherwise permitted by law or equity, no action may be brought under [the CFPA] more than 3 years *after the date of discovery* of the violation to which an action relates." 12 U.S.C. § 5564(g)(1) (emphasis added). Defendants are wrong to claim that even though the Bureau attempted to prosecute its claims in a manner consistent with the CFPA, the statute of limitations in this case not only began to run, but, in fact, expired before the Bureau could ever lawfully file suit. That is, Defendants contend that, prior to *Seila Law*, the Bureau was sufficiently constitutional so that it could "discover" violations of the CFPA and begin the ticking of the statute of limitations clock, but was insufficiently constitutional to file a complaint and stop the running of that clock.

Defendants do not cite any case in which a statute of limitations was construed to run before a party (let alone the federal government) could lawfully file suit and obtain relief. *Cf. Johnson v. United States*, 544 U.S. 295, 305 (2005) (calling it "highly doubtful" that Congress intended a time limit on pursuing a claim to expire before the claim arose). This is not surprising. "Statutes of limitations are designed to encourage plaintiffs to pursue diligent prosecution of known claims." *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049 (2017) (quotation omitted). The Bureau certainly did that with respect to Defendants. *See generally id.* ("[L]imitations periods begin to run when the cause of action accrues – that is, when the plaintiff can file suit and obtain relief.") (quotation omitted, emphasis added).

(Doc. 518, at 8-10). The Court agrees with Plaintiff that Defendant cannot both assert that

the agency did not have the ability to bring the lawsuit in 2017 but then argue that the

agency is now barred by the statute of limitations because it did not bring the action at an

---

89. In the present case, the CFPB's ability to ratify is not unlimited in time. Rather, its ratification came as soon as the Supreme Court issued a ruling indicating ratification of this action may be necessary. This immediate ratification, and diligence in pursuing this action prior to the Supreme Court's decision in *Seila*, support the Court's conclusion, *infra*, that even if the ratification by Director Kraninger came outside the statute of limitations, equitable tolling is an appropriate remedy in the present case.

earlier time. However, because the CFPB itself was constitutional and *did* have the authority to bring the lawsuit in 2017, the CFPB's argument that the statute of limitations does not bar the Director from properly ratifying the action is without support. As explained by the Third Circuit, pursuant to *NRA Political Victory Fund*, the ratifying party must have the ability to act at the time the ratification was made, and this "timing problem" has "been read to require that the ratifier have the 'power' to reconsider the earlier decision at the time of ratification." *Advanced Disposal Servs. East, Inc.*, 820 F.3d at 603. Here, assuming that the CFPB discovered the violations more than three years prior to the July, 2020, ratification, Director Kraninger would not now have the "power" to reconsider the prior decision to bring suit, as the statute of limitations has expired. Rather, in the absence of an equitable remedy, the Court is bound by the application of a basic principle of ratification, despite its potentially draconian result: that Director Kraninger's ratification came outside of the statute of limitations for the CFPB's claims and she was thus without the ability to act in this action at the time the ratification was made in July of 2020.

Nonetheless, assuming that the statute of limitations may otherwise bar this lawsuit, due to CFPB's diligent pursuit of its rights, and the existence of an extraordinary circumstance which stood in its way, the doctrine of equitable tolling operates to toll the statute of limitations in this action and save the CFPB's case from dismissal.

Ratification may be used as an equitable remedy and thus "has been applied flexibly and has often been adapted to deal with unique and unusual circumstances." *Advanced*

*Disposal Servs. East, Inc.,* 820 F.3d at 603.  With respect to equitable tolling, as

summarized by the Supreme Court:

> As a general matter, equitable tolling [of federal statutes of limitations] pauses the running of, or "tolls," a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action. *See, e.g., Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). Because the doctrine effectively extends an otherwise discrete limitations period set by Congress, whether equitable tolling is available is fundamentally a question of statutory intent. . . .

> As applied to federal statutes of limitations, the inquiry begins with the understanding that Congress "legislate[s] against a background of common-law adjudicatory principles." *Astoria Fed. Sav. & Loan Assn. v. Solimino,* 501 U.S. 104, 108, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). Equitable tolling, a long-established feature of American jurisprudence derived from "the old chancery rule," *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946), is just such a principle. *See Young v. United States,* 535 U.S. 43, 49-50, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002) ("Congress must be presumed to draft limitations periods in light of this background principle"); *Bailey v. Glover,* 21 Wall. 342, 349-350, 22 L.Ed. 636 (1875). We therefore presume that equitable tolling applies if the period in question is a statute of limitations and if tolling is consistent with the statute. *Young, supra,* at 49-50, 122 S.Ct. 1036 ("It is hornbook law that limitations periods are 'customarily subject to "equitable tolling,"' unless tolling would be 'inconsistent with the text of the relevant statute'" (citation omitted)).

*Lozano v. Montoya Alvarez,* 572 U.S. 1, 10-11 (2014) (some internal citations omitted).

"[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant

establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that

some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee*

*Indian Tribe of Wis. v. United States*, 136 S.Ct. 750, 755 (2016) (quoting *Holland v. Florida*,

560 U.S. 631, 649 (2010)).  A Court should treat these requirements as distinct elements

and need not address both where a Court has already found that the litigant failed to satisfy

one of the elements. *Id*. at 755. The diligence prong covers "those affairs within the

litigant's control" whereas the extraordinary-circumstances prong covers "matters outside"

the litigant's control. *Id*. at 756. "[T]he absence of prejudice to the opposing party is not an

independent basis for invoking the doctrine [of equitable tolling] and sanctioning deviations

from established procedures. Rather, the absence of prejudice is a factor to be considered

in determining whether the doctrine of equitable tolling should apply *once a factor that might*

*justify such tolling is identified*." *Id*. at 757 n. 5 (internal citations and quotation marks

omitted)(emphasis in original).

> In sum,

> It is well established that a court may "rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff [shows []he] has 'been prevented from filing in a timely manner due to sufficiently inequitable circumstances.'" [*Santos ex. rel. Beato v. United States,* 559 F.3d 189, 197 (3d Cir. 2009)] (quoting *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999)). Tolling "is [an] extraordinary" remedy, *id.*, and "is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair," *Miller v. N.J. State Dep't of Corr.*, 145 F.3d 616, 618 (3d Cir. 1998) (alterations in original) (quoting *Shendock v. Dir., Office of Workers' Comp. Programs*, 893 F.2d 1458, 1462 (3d Cir. 1990) (en banc)).

*D.J.S.-W. v. United States*, 962 F.3d 745, 749-750 (3d Cir. 2020).

As a threshold issue, the Court finds that Congress' statutory intent with respect to

the Dodd-Frank Act clearly contemplated the availability of equitable tolling. The Act, in

addressing the time for bringing an action by the CFPB, provides that "[e]xcept as otherwise

permitted by law *or equity*, no action may be brought under this title more than 3 years after

the date of discovery of the violation to which an action relates." 12 U.S.C. § 5564(g)(1) (emphasis added). This language allows for the "presum[ption]" that equitable tolling is available as the period in question is a statute of limitations, *i.e.* three years, and where tolling is consistent with the Act's explicit recognition that "equity" may affect this three-year limitation period. *See Lozano*, 572 U.S. at 11. Thus, equitable tolling here is consistent with the statute and Congress' statutory intent in enacting the Dodd-Frank Act.[10]

The Court therefore turns to the first element of the analysis to determine whether the CFPB is entitled to equitable tolling of the statute of limitations: whether the CFPB has been pursuing its rights diligently.

The Supreme Court has "allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period. . . [but has] generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

Here, the Ratification of the action by the Director of the CFPB in July, 2020 was not the result of a failure to timely and diligently research, allege, and/or follow the applicable substantive and procedural law. The CFPB filed suit against the defendants on January 18,

_____

[10] Unlike in *NRA Political Victory Fund*, where the Court's opinion relied, in part, on a finding that the 90-day period at issue was "mandatory and jurisdictional" and the Court was without "authority to extend the period for filing except as Congress permits", 513 U.S. at 99, in the present case the statute of limitations is subject to equitable tolling as Congress specifically included language in the Dodd-Frank Act contemplating that a pause on, or tolling of, the three year statutory period may be necessary, *see* 12 U.S.C. § 5564(g)(1).

2017.  As set forth, *supra*, since that time, the parties have engaged in extensive discovery and regular motion practice and, following more than three years of discovery, the submission of cross-motions for summary judgment in May of 2020 (*see* Docs. 468, 469). During the period between the filing of this action in 2017, and the parties' submissions of summary judgment motions, the parties consistently raised discovery disputes, necessitating numerous conference calls, oral arguments/hearings, and opinions and orders by this Court and the Special Master appointed in January, 2019.[11]  Since the inception of this case, CFPB has diligently and actively pursued its claims against Navient, engaged in zealous advocacy in support of its positions, and sought to timely advance this action.  The docket in this case clearly reflects the CFPB's active pursuit of this case since 2017.

The record in this action also demonstrates that there has been no failure on the part of the plaintiff to preserve its legal rights.  Rather, the CFPB consistently endeavored to preserve its legal rights through the filing of this case and diligent pursuit of its claims throughout the action.  The sole defect in its diligent pursuit is that, at the time of the action's filing and through the expiration of the statute of limitations period, the CFPB Director was not removable at will.  However, despite having been Director of the CFPB since December 11, 2018, Director Kraninger, and both CFPB Directors prior to her, *could not* have validly ratified

---

[11] For example, the Special Master issued approximately 18 Special Master Reports and 74 Orders between January, 2019 and April, 2020.  Prior to the appointment of the Special Master, this Court held oral argument on, and ruled upon, Defendants' Motion to dismiss, and conducted a number of telephone conferences and in court oral arguments to address the parties' repeated discovery disputes.

this action prior to the Supreme Court's decision in *Seila* in June, 2020, which severed the offending tenure provision and rendered her removable at will, because until that time, the Director of the CFPB was still subject to 12 U.S.C. § 5491(c)(3).  No amount of diligence, research, investigation, or action, by the CFPB prior to the Supreme Court's decision could have avoided (or rectified) the statute of limitations issue now before this Court.

The CFPB, and its Director, took all actions within their control to timely file this action within the statutory period and diligently pursue the CFPB's legal rights throughout this litigation.  The Court therefore finds that the first element of the equitable tolling analysis has been met.

To meet the second prong of the equitable tolling test, a litigant must show that the circumstances which caused that litigant's delay "are both extraordinary *and* beyond its control."  *Menominee Indian Tribe*, 136 S.Ct. at 756 (emphasis in original).

Here, the Supreme Court's June, 2020, decision in *Seila*, and the severance of § 5491(c)(3) from the Dodd-Frank Act, present an extraordinary matter which was beyond the control of the CFPB.  Further, these circumstances are "unique" and "unusual", weighing in favor of applying the doctrine of equitable tolling.  *See Advanced Disposal Servs. East, Inc.* 820 F.3d at 603 ("we are quick to note that as an equitable remedy, ratification has been applied flexibly and has often been adapted to deal with unique and unusual circumstances.").

The Supreme Court's decision in *Seila* was undisputedly not an "affair[] within the litigant's control," *Menominee Indian Tribe*, 136 S.Ct. at 756.  Rather, prior to this decision, a

number of courts across the country who had addressed the constitutionality of the CFPB's structure found it to be constitutional, including this Court and the lower courts in *Seila*. *See e.g.*, *CFPB v. Seila Law LLC*, 923 F.3d 690 (9th Cir. 2019); *PHH Corp. v. CFPB*, 881 F.3d 75 (D.C. Cir. 2018); *CFPB v. Morgan Drexen, Inc.*, 60 F.Supp.3d 1082 (C.D. Cal. 2014); *CFPB v. ITT Educ. Servs., Inc.*, 219 F.Supp.3d 878 (S.D. Ind. 2015). Although this, without more, arguably may not constitute the basis for a finding of an "extraordinary circumstance",[12] as previously stated in addressing the diligence element of the equitable tolling analysis, even if the CFPB did question the constitutionality of statutory protection afforded to its Director, the CFPB was unable to take any action to rectify this defect until the Supreme Court's decision in *Seila* in June of 2020. Had Director Kraninger, or a previous CFPB Director, ratified this action prior to June, 2020, such ratification would have been ineffective because it would have been done at a time when the Director was still statutorily protected and not subject to removal at-will by the Executive. Any defect in the

---

[12] In *Menominee Indian Tribe of Wisconsin v. United States*, the D.C. Circuit explained that the "general rule . . . is that legal decisions based on unclear or contrary precedent justify tolling in only the rarest instances" but acknowledged "that a lack of clear legal precedent might constitute an extraordinary circumstance." 764 F.3d 51, 61-62 (D.C. Cir. 2014). The Supreme Court, in affirming the Circuit Court, found that Plaintiff was not entitled to equitable relief as the "Tribe's mistake, in essence, was its inference that the reasoning of the *Ramah* class certification decision . . . applied to the putative *Cherokee Nation* class", and that this mistaken reliance was "not an obstacle beyond its control" but rather was "fundamentally no different from a garden variety claim of excusable neglect," *Menominee Indian Tribe*, 136 S.Ct. at 756-757 (internal quotation marks omitted). However, the Supreme Court explained that the Tribe's "mistake" "is quite different from relying on *actually binding* precedent that is subsequently reversed." *Id*. at 757 (emphasis in original). In so stating, the Supreme Court in *Menominee Indian Tribe* clarified that it was declining to decide the question of whether a reversal in binding precedent may merit tolling, *id*. at 757 n.4.

CFPB's timely pursuit of this action was caused by an obstacle "beyond its control", namely the statutory language of 12 U.S.C. § 5491(c)(3).[13]

Having found that the CFPB has been pursuing his rights diligently, and that an extraordinary circumstance stood in its way and prevented a perfected timely filing, the Court looks to the prejudice suffered by Navient if the doctrine of equitable tolling is applied. *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) ("[The] absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified, [but] it is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures.").

Application of equitable tolling to the CFPB's claims, and thus allowing this action to proceed, presents little, if any, prejudice to Navient.  As with any defendant when equitable tolling is at issue, prejudice exists in so far as the claims set forth in this action are now outside of the statute of limitations.  However, no other prejudice exists here.  Defendants have been on notice of this action and the legal claims against them since the filing of the Complaint in January, 2017.  Defendants have actively engaged in extensive discovery and motion practice in advancing this case, and the case is at a significantly advanced stage of

---

[13] The reasons set forth for this Court's determination that the CFPB diligently pursued its rights also weigh in favor of a finding that the circumstances which caused the CFPB's delay are extraordinary and beyond its control.  *See D.J.S.-W*, 962 F.3d at 751 (recognizing that "diligence" and "extraordinary circumstances" are distinct elements but explaining that "prior [Third Circuit] case law [which] may appear to have blended the two components, . . . is merely a reflection of the fact that, in practice, the two elements often go hand in hand.").

litigation where discovery has been completed and cross-motions for summary judgment are now pending.  Director Kraninger's Ratification of this lawsuit only serves to establish that this action continues with the approval of a Director removable at will by the President of the United States.  It does nothing to alter in any way the CFPB's claims against Navient or alter any substantive defenses Defendants may have intended to rely on either on summary judgment or at trial, if necessary.  *Cf. Legi-Tech*, 75 F.3d at 709 (finding that the FEC's post-reconstruction ratification of its prior decisions were an adequate remedy to address any prejudice to Legi-Tech for the previously identified constitutional violation in the FEC's composition).

In summary, for the reasons discussed in this memorandum opinion, the Court finds that "sufficient inequitable circumstances" exist and that a "rigid application of a limitation period [is] unfair" such that the "extraordinary remedy" of equitable tolling is proper here. *See D.J.S.-W.*, 962 F.3d at 749-750.  The present action was timely filed under existing law, at a time where there was no finding that a provision of the Dodd-Frank Act was unconstitutional.  The case has been continuously and vigorously litigated for approximately four years and the Supreme Court's severance in *Seila* of the offending provision in the Dodd-Frank Act constituted an extraordinary circumstance outside of the CFPB's control. Further, the Director of the CFPB immediately ratified this action following the *Seila* decision, further demonstrating diligent pursuit of this action.  Nothing in *Seila* indicates that the Supreme Court intended that its holding should result in a finding that this lawsuit is void

*ab initio*.  Rather, if Navient is correct that this case must now be dismissed as a result of

the Supreme Court's limited holding in *Seila* due to ratification outside the statute of

limitations, this would necessitate the dismissal of a number of actions that the CFPB has

brought and continues to pursue in other courts, despite any fault on the part of the CFPB,

which runs directly contrary to the Supreme Court's concerns in *Seila. See Seila*, 140 S.Ct.

at 2210 (agreeing with Solicitor General and House of Representatives that the shift caused

by the elimination of the CFPB "would trigger a major regulatory disruption and would leave

appreciable damage to Congress's work in the consumer-finance arena" and explaining that

no other agency "has the authority to administer the Dodd-Frank Act's new prohibition on

unfair and deceptive practices in the consumer-finance sector.").  A finding that this action

must be dismissed, where no other agency had in 2017, or has now, the power to enforce

key provisions of the Dodd-Frank Act (which are at issue in this case), effectively allows

Navient and others to avoid defending their actions, alleged by the CFPB to be unlawful,

due to the severance of a portion of the Act which was both the existing law at the time of

the filing of the lawsuit and until June 29, 2020.  Nor does the offending provision have any

effect on the substance or merits of the CFPB's allegations and claims.  For these reasons,

although the statute of limitations may otherwise bar the CFPB's claims and require

dismissal of this action, the Court will apply the doctrine of equitable tolling and consider this

case as having been timely ratified.

Accordingly, the Court will deny Navient's Motion for Judgment on the Pleadings (Doc. 504).

## IV. CONCLUSION

For the reasons set forth herein, this Court will deny Navient's Motion for Judgment on the Pleadings (Doc. 504).  A separate Order follows.

Robert D. Mariani
United States District Judge