THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CONSUMER FINANCIAL          :
PROTECTION BUREAU,          :
                            :
            Plaintiff,      :
                            :     3:17-CV-101
        v.                  :     (JUDGE MARIANI)
                            :
NAVIENT CORPORATION, et al.,    :
                            :
            Defendants.     :

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff, the Consumer Financial Protection Bureau ("CFPB" or "Bureau"), filed a

Complaint in the above-captioned action on January 18, 2017.  (Doc. 1).  The eleven count

Complaint alleges that Defendants, Navient Corporation, Navient Solutions, Inc., and

Pioneer Credit Recovery, Inc., (collectively "Navient"), committed various violations of the

Consumer Financial Protection Act ("CFPA" or "Act"), 12 U.S.C. §§ 5531, 5536 (Counts I-

VIII), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e (Counts IX-X), and

Regulation V of the Fair Credit Reporting Act, 12 C.F.R. §1022.42 (Count XI).  (Doc. 1).

On June 29, 2020, the Supreme Court issued a decision in *Seila Law LLC v.

Consumer Financial Protection Bureau*, 140 S.Ct. 2183 (2020) (hereinafter "*Seila Law*").  The

Supreme Court held therein that the structure of the CFPB, and specifically 12 U.S.C. §

5491(c)(3), violated the Constitution's separation of powers; but because that provision

addressing the CFPB Director's removal protection was "severable from the other statutory provisions bearing on the CFPB's authority," the CFPB could continue to operate, *id*. at 2192.

Following *Seila Law*, on July 10, 2020, Navient filed a Motion for Judgment on the Pleadings (Doc. 504) asserting that, in light of the Supreme Court's decision, "[i]t is now established law that the CFPB never had constitutional authority to bring this action and that the filing of this lawsuit was unauthorized and unlawful" and further that because the statute of limitations ran on all of the CFPB's claims prior to the decision in *Seila Law*, any ratification now by a Director of the CFPB who is properly subject to the President's removal power would be improper in that it "cannot revive the statute of limitations period."  (Doc. 505, at 1).

On July 14, 2020, the CFPB filed a "Notice Regarding *Seila Law LLC v. CFPB* and Ratification" (Doc. 506), explaining that "in the wake of the decision in *Seila Law* rendering [the CFPB Director] removable at will, the Bureau's Director has considered the basis for the decision to file the complaint in this proceeding, and has ratified that decision" and attaching thereto a Declaration of Kathleen L. Kraninger, Director of Plaintiff Consumer Financial Protection Bureau, Regarding Ratification (Doc. 506-1) dated July 9, 2020.

This Court issued a memorandum opinion and order (Docs. 557, 558) on January 13, 2021, denying Navient's Motion for Judgment on the Pleadings.  In so doing, the Court found that the CFPB had the authority to bring this action in January of 2017 but that the July, 2020, ratification of the lawsuit by CFPB Director Kraninger was outside of the statute

2

of limitations. The Court thus concluded that, in the absence of an equitable remedy, an application of the principles of ratification would require dismissal of the CFPB's action.[1] However, upon review of the record, the Court held that due to CFPB's diligent pursuit of its rights throughout this case, and the existence of an extraordinary circumstance which stood in its way, *i.e.* the Supreme Court's decision in *Seila Law* and the severance of § 5491(c)(3) from the Dodd-Frank Act, the doctrine of equitable tolling operated to toll the statute of limitations in this action and save the CFPB's case from dismissal.

Now before the Court is Defendants' Motion for Certification and Stay (Doc. 559), requesting a certificate for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) limited to the question of whether an agency's constitutional defect warrants equitable tolling.

For the reasons that follow, the Court will certify the Court's January 13, 2021 Order, and specifically the following question of law, for interlocutory appeal under 28 U.S.C. § 1292(b):

> Whether an act of ratification, performed after the statute of limitations has expired, is subject to equitable tolling, so as to permit the valid ratification of the original action which was filed within the statute of limitations but which was

---

[1] As this Court previously explained,

In applying the doctrine of ratification, "it is essential that the party ratifying should be able not merely to do the act ratified at the time the act was done, *but also at the time the ratification was made*." *Federal Election Commission v. NRA Political Victory Fund*, 513 U.S. 88, 98 (1994)(emphasis in original). "This 'timing problem' has since been read to require that the ratifier have the 'power' to reconsider the earlier decision at the time of ratification." *Advanced Disposal Servs. East, Inc. v. NLRB*, 820 F.3d 592, 603 (3d Cir. 2016).

(Doc. 557, at 6). In the present action, this Court determined that ratification of the CFPB's lawsuit failed, subject to the Court's later application of the doctrine of equitable tolling, where Director Kraninger did not have the power to act at the time the ratification was made because the July, 2020, ratification came after the statute of limitations had expired on all of the claims set forth in the CFPB's Complaint.

3

> filed at a time when the structure of the federal agency was unconstitutional
> and where the legal determination of the presence of the structural defect came
> after the expiration of the statute of limitations.

The Court will further grant Defendants' motion to stay this action pending a resolution of

the appeal to the Court of Appeals for the Third Circuit.

## II. STANDARD FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B)

In most cases, only "final decisions" of district courts are appealable to the courts of

appeals. *See* 28 U.S.C. § 1291; Fed. R. Civ. P. 54(a) ("'Judgment' as used in these rules

includes a decree and any order from which an appeal lies."). An interlocutory order by a

district court, such as this Court's January 13, 2021 Order denying Navient's motion for

judgment on the pleadings which allows the case to proceed, is not such a "final decision."

However, under 28 U.S.C. § 1292(b), interlocutory orders can be appealable if

certified by the district court and subsequently accepted by the court of appeals for

consideration. 28 U.S.C. § 1292(b). "Section 1292(b) was the result of dissatisfaction with

the prolongation of litigation and with harm to litigants uncorrectable on appeal from a final

judgment which sometimes resulted from strict application of the federal final judgment

rule." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 753 (3d Cir. 1974). The purpose of

Section 1292(b) is to avoid "a wasted protracted trial if it could early be determined that

there might be no liability," such as "cases in which a long trial results from a pretrial order

erroneously overruling a defense going to the right to maintain the action." *Id.* at 754 (citing

legislative history of Section 1292(b)). However, "Congress intended that [S]ection 1292(b)

should be sparingly applied.  It is to be used only in exceptional cases where an

intermediate appeal may avoid protracted and expensive litigation and is not intended to

open the floodgates to a vast number of appeals from interlocutory orders in ordinary

litigation." *Milbert v. Bison Labs., Inc.*, 260 F.2d 431, 433 (3d Cir. 1958).

> Section 1292(b) states:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that **such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation**, he shall so state in writing in such order.  The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b) (bold added).  Thus, "[f]or a district court to properly grant a certificate

of appealability under § 1292(b), its order must: (1) involve a 'controlling question of law,' (2)

offer 'substantial grounds for difference of opinion' as to its correctness, and (3) if

immediately appealed, 'materially advance the ultimate termination of the litigation.'" *G.L. v.

Ligonier Valley Sch. Dist. Auth.*, 2013 WL 6858963, at *6 (W.D. Pa. Dec. 30, 2013) (quoting

*Katz*, 496 F.2d at 754), *aff'd and remanded*, 802 F.3d 601 (3d Cir. 2015).  *See also*, *J.B. ex

rel. Benjamin v. Fassnacht*, 801 F.3d 336, 339 n.8 (3d Cir. 2015).  The movant bears the

burden of demonstrating that certification of the order for appeal is warranted. *See Orson,*

*Inc. v. Miramax Film Corp.*, 867 F.Supp. 319, 320 (E.D. Pa. 1994) (citing *Rottomund v. Cont'l Assurance Co.*, 813 F.Supp. 1104, 1112 (E.D. Pa. 1992)).

Courts in the Third Circuit have further defined the three elements of the Section 1292(b) test.  First, "[a] controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal."  *Katz*, 496 F.2d at 755. "'Controlling' means serious to the conduct of the litigation in a practical or legal sense." *FTC v. Wyndham Worldwide Corp.*, 10 F.Supp.3d 602, 633 (D.N.J. 2014) (citations omitted), *aff'd*, 799 F.3d 236 (3d Cir. 2015).

Next, "[a] 'substantial ground for difference of opinion' must arise out of doubt as to the correct legal standard, such as conflicting precedent, the absence of controlling law, or complex statutory interpretation."  *Karlo v. Pittsburgh Glass Works, LLC*, 2014 WL 12539666, at *1 (W.D. Pa. July 3, 2014) (citing *Glover v. Udren*, 2013 WL 3072377, at *3 (W.D. Pa. June 18, 2013)).  Questions of first impression can present substantial grounds for difference of opinion.  *Nationwide Life Ins. Co. v. Commw. Land Title Ins. Co.*, 2011 WL 1044864, at *3 (E.D. Pa. Mar. 23, 2011) ("The sheer absence of any persuasive, let alone controlling, law on this issue is sufficient on its own to provide substantial grounds for difference of opinion."); *see also Wyndham*, 10 F.Supp.3d at 634-635 (certifying for appeal an issue of first impression regarding the application of the FTC Act to a data security breach and noting that the "novelty" of the liability issues means that "reasonable jurists may differ over the court's resolution" of the issues).  However, "[a] party's strong disagreement

6

with the Court's ruling does not constitute a 'substantial ground for difference of opinion[,] . . . [n]or does a dispute over the application of settled law to a particular set of facts." *Karlo*, 2014 WL 12539666, at \*1 (citations omitted).

"Finally, a § 1292(b) certification 'materially advances the ultimate termination of the litigation' where the interlocutory appeal eliminates: '(1) the need for trial; (2) complex issues that would complicate the trial; or (3) issues that would make discovery more costly or burdensome.'" *Karlo*, 2014 WL 12539666, at \*1 (quoting *Litgo N.J., Inc. v. Martin*, 2011 WL 1134676, at \*3 (D.N.J. Mar. 25, 2011)).

In addition to the three elements of the Section 1292(b) test, another factor for district courts meriting consideration is whether the issues in the action are of "nationwide significance." *Wyndham*, 10 F.Supp.3d at 636 (considering, in a consumer protection enforcement action brought by the FTC, "the nationwide significance of the issues in this action – which indisputably affect customers and businesses in a climate where we collectively struggle to maintain privacy while enjoying the benefits of the digital age"); *Nationwide Life Ins. Co.*, 2011 WL 1044864, at \*4 ("Moreover, the Third Circuit's determination of this issue could potentially have a widespread impact on the underwriting and application of land title insurance policies in the United States.").

## III. ANALYSIS

Defendants' brief in support of its Motion for Certification and Stay asserts that:

The Court's application of equitable tolling to cure the untimely ratification meets all the requirements for certification under 28 U.S.C. § 1292(b), and

7

merits prompt appellate review. It involves a novel application of equitable tolling: to Defendants' knowledge, no court has previously found that an agency's constitutional defect warrants equitable tolling. Moreover, the order involves a controlling question of law, and an appeal may materially advance the ultimate termination of the litigation.

(Doc. 561, at 2). Navient thus requests that this Court certify the question of whether an agency's constitutional defect warrants equitable tolling and stay this action pending resolution of the interlocutory appeal by the Court of Appeals for the Third Circuit.

### A. Certification of the Court's Order pursuant to 28 U.S.C. § 1292(b)

As set forth, *supra,* a district court may grant a certificate of appealability under § 1292(b) if its order: (1) involves a controlling question of law, (2) offers substantial grounds for difference of opinion as to its correctness, and (3) if immediately appealed, materially advances the ultimate termination of the litigation.

Here, Navient first argues that the question at issue is "clearly controlling" because "[i]f the Third Circuit were to reverse the Court's determination that equitable tolling applies, this action is time-barred" and the entire action would have to be dismissed. (Doc. 561, at 4). Navient further asserts that the issue of whether "an agency's unconstitutional structure justifies equitable tolling" is appropriate for interlocutory review where it "does not hinge on the resolution of any disputed factual questions" or require the appellate court to "wade into a voluminous factual record." (*Id.*).

In response, the CFPB contends that "reversal of this Court's holding regarding equitable tolling would not require dismissal." (Doc. 562, at 4). Rather, the CFPB asserts

8

that if the Third Circuit were to agree with this Court's findings "that under *Seila Law* 'the CFPB always had the authority to act' and that 'the CFPB's action was properly brought and timely filed in 2017'" and that "'the CFPB's actions in 2017 and throughout this action were valid and lawfully taken pursuant to the agency's statutory authority'", then the appellate court "could conclude that the statute of limitations presents no obstacle to Director Kraninger's ratification even without equitable tolling." (Doc. 562, at 4-5)(quoting Doc. 557, at 10, 11, 21 n.9).[2] Alternatively, the CFPB advances that the Third Circuit could "conclude that Director Kraninger's ratification provides Defendants with a remedy that 'adequately addressed the prejudice' from the CFPA's unconstitutional removal provision without regard to whether the statute of limitations would have barred the Bureau from filing suit at the time of the ratification." (Doc. 562, at 5) (citing *FEC v. Legi-Tech, Inc.*, 75 F.3d 704, 708 (D.C. Cir. 1996)).

The Court finds that the issue of whether an agency's constitutional defect warrants equitable tolling is serious to the conduct of this litigation in both a practical and legal sense, *see Wyndham Worldwide Corp.*, 10 F.Supp.3d at 633, and is a controlling question of law. Should the Third Circuit find that equitable tolling is unavailable to save the CFPB's action

---

[2] The CFPB's arguments obliquely raise the suggestion that ratification may not have been necessary in the present action. However, the CFPB later acknowledges that "one recent appellate decision, and four recent district court decisions . . . reached the same decision as this Court – ratification is the appropriate remedy for a defendant in an action initially brought by the Bureau at a time when its Director was not fully accountable to the President." (Doc. 562, at 8-9 n. 5). Further, to the extent that the CFPB now contends that ratification may not have been necessary here, as this Court specifically noted in its memorandum opinion denying the motion for judgment on the pleadings, "the CFPB has conceded the necessity of ratification." (Doc. 557, at 7 n.4).

from dismissal where the ratification comes after the statute of limitations has run, this

action would be subject to dismissal.  Further, where the CFPB has conceded the necessity

of ratification, and it is undisputed that Director Kraninger's ratification came more than

three years after the initiation of the lawsuit, and thus even longer after the alleged

violations at issue occurred and the CFPB discovered those violations alleged in the

Complaint, the issue before the appellate court is narrowed and the possibility of other

outcomes, as suggested by the CFPB, is diminished.[3]  If this Court erred in applying the

doctrine of equitable tolling, it would almost certainly lead to a reversal on appeal and

dismissal of this action. The practical effect of a reversal would mean that further extensive

litigation and proceedings, likely including a lengthy and factually and legally complex trial,

would be needless and unnecessary.  *See e.g. Nationwide Life Ins. Co.,* 2011 WL 1044864,

at * 2 (A "controlling question of law" is one which: "(1) if decided erroneously, would lead to

reversal on appeal; or (2) is 'serious to the conduct of the litigation either practically or

legally.'")(quoting *Katz,* 496 F.2d at 755).  Further, certification of this Court's order

addresses certain fundamental concerns of the draftsmen of § 1292(b), including "a wasted

protracted trial if it could early be determined that there might be no liability," such as in

---

[3] The Court is aware that "'once leave to appeal is granted the court of appeals is not restricted to a decision of the question of law which in the district judge's view was controlling'", and the appellate court may thus consider other grounds raised by the parties before the district court. *Fried v. JP Morgan Chase & Co.*, 850 F.3d 590, 604 (quoting *Katz*, 496 F.2d at 754)). Thus, the CFPB's argument that the Third Circuit, even in accepting the interlocutory appeal, may issue a decision which does not specifically reach the issue of equitable tolling but nonetheless allows this action to proceed under a different theory, is not an impossibility.

"cases in which a long trial results from a pretrial order erroneously overruling a defense going to the right to maintain the action" and "cases involving prolonged assessment of damages after determination of liability," *Katz*, 496 F.2d at 754 (citing legislative history of Section 1292(b)).

In addition, because the purely legal question certified to the Third Circuit would either lead to dismissal of the action in its entirety or would allow the entire case to go forward, certification of the Court's order would not run afoul of the strong policy established by federal law against piecemeal appeals. *See Zygmuntowicz v. Hosp. Inv., Inc.*, 828 F.Supp. 346, 353 (E.D. Pa. 1993).[4]

This Court thus concludes that its January 13, 2021 Order involves a controlling issue of law, which weighs in favor of certification to the Third Circuit Court of Appeals.

The Navient Defendants further argue that the second element of the Section 1292(b) test – that this Court's order offers "substantial grounds for difference of opinion" as to its correctness – is met.  Navient notes that "[n]either the CFPB nor the Court has cited a case holding that a government agency's constitutional defect constitutes an extraordinary circumstance to support equitable tolling, thereby removing the remedy from constitutional injury . . . and Defendants are aware of no such decision."  (Doc. 561, at 5-6).  Navient additionally sets forth cases currently pending in the Fifth and Ninth Circuits "addressing the

---

[4] Even assuming the CFPB is correct that the Third Circuit may choose to affirm or reverse this Court's order on other grounds, this would not alter the ultimate effect of the appeal – the action would either proceed in its entirety or be dismissed in its entirety.

same question" and argues that the Third Circuit should also "have the opportunity to address this question before this Court and the parties expend additional substantial resources." (*Id*. at 6).

In turn, the CFPB contends that Navient "do[es] not identify any conflicting precedent, do[es] not argue the absence of controlling law, and do[es] not contend that any complex statutory interpretation is involved" but rather only seeks interlocutory review of "the application of settled law", i.e. the principles of equitable tolling, "to a particular set of facts." (Doc. 562, at 6).

Here, the application of the doctrine of equitable tolling in a case such as the one before this Court, where a federal agency has been found to be unconstitutionally structured but able to continue operating, and where that agency was unable to validly ratify an action until after the statute of limitations expired on its claims, has never to this Court's, or the parties', knowledge been addressed by any federal appellate court. The CFPB's assertion that no "conflicting precedent" has been identified is precisely the reason that the Court's Order is properly the subject for certification. The legal question to be certified to the Third Circuit, is not, as the CFPB suggests, whether this Court correctly applied each of the well-established equitable tolling factors to the facts of this case, but rather whether equitable tolling was available in the first instance in a case where ratification within the statute of limitations was impossible due to a yet-to-be identified unconstitutional defect in a federal agency's structure. This question does not appear to have been addressed by any court in

the United States, and in particular by any appellate court, leaving the district court with an

issue of first impression without any legally or factually similar guidance upon which to rely.

Not only is there a lack of conflicting precedent, there is no supporting precedent; indeed,

no party has identified *any* comparable precedent.[5]  *See e.g., Reese v. BP Exploration*

*(Alaska) Inc.*, 643 F.3d 681, 688, n.5 (9th Cir. 2011) (rejecting Appellee's "formalistic

requirement" that adverse authority must exist prior to an issue being subject to interlocutory

review and explaining that "[a] substantial ground for difference of opinion exists where

reasonable jurists might disagree on an issue's resolution, not merely where they have

already disagreed.  Stated another way, when novel legal issues are presented, on which

fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for

interlocutory appeal without first awaiting development of contradictory precedent.").

   For these reasons, Navient has successfully established that this Court's Order

offers a substantial ground for difference of opinion as to its correctness.

_____

   [5] The Court notes that the Ninth Circuit expressly declined to address the statute of limitations
issue in *CFPB v. Seila Law LLC*, --F.3d--, 2020 WL 7705549, at 3-4 (2020) on remand from the Supreme
Court, finding Seila Law's statute of limitations argument to be premature where "it is impossible to know at
this point whether such an action would (or would not) be timely", *id*. at 4.  However, several other actions
are currently pending before the Ninth Circuit which may address the issue of whether the CFPB Director
can validly ratify an action after the statute of limitations has expired.  *See e.g. CFPB v. CashCall, Inc.*,
Nos. 18-55407 & 18-55479 (9th Cir.); *CFPB v. Nationwide Biweekly Admin.*, No. 18-15431 (9th Cir.).
Although the case is now stayed, it also appears that the Fifth Circuit may consider this issue in the near
future.  *See CFPB v. All American Check Cashing*, No. 18-60302 (5th Cir.).
   As both the Ninth and Fifth Circuits' opinions and judgments, while providing persuasive authority,
will not be binding on courts within the Third Circuit, nor is it certain that these appellate courts will reach
the legal question at issue or if so, when this will occur, it is imperative that the Third Circuit have the
opportunity to evaluate this issue and ultimately aid this case in either moving it forward or reaching a final
resolution.

With respect to the third element of the Section 1292(b) test, Navient asserts that it is "clear that an appeal may materially advance the ultimate termination of the litigation" where a reversal on appeal would be dispositive of the entire action and eliminate the need for trial. (Doc. 561, at 7). However, the CFPB argues that it "is far from clear that a trial is even necessary in this case: Both the Bureau and the Defendants have filed motions for summary judgment", which may eliminate, or significantly reduce, the issues for trial. (Doc. 562, at 9).

As previously stated, *supra*, should the Third Circuit Court of Appeals reverse this Court's application of the doctrine of equitable tolling, this case would be subject to immediate dismissal. Navient is thus correct in asserting that the need for any further proceedings, including trial, would be eliminated in such a situation. Although fact discovery has been completed in this action,[6] certification of the Court's order would materially advance the ultimate termination of the litigation by possibly eliminating both the need for trial and, concomitantly, complex legal, factual, and procedural issues that would complicate the trial.

Nor, in light of the numerous and complex legal and factual issues in this case, can the Court agree with the CFPB's predictive statement that it "is far from clear that a trial is even necessary in this case" due to the parties' cross-motions for summary judgment (Doc.

---

[6] Although fact discovery has been completed, the resolution by this Court of several outstanding disputes, including the CFPB's Objections to the Special Master's Order Denying Request to Disqualify Dr. Ang, may require the parties to engage in further expert discovery.

562, at 9).  For example, as previously noted by this Court in its memorandum opinion denying Defendants' motion for judgment on the pleadings, in support of their respective motions for summary judgment "the parties . . . filed a Joint Statement of Undisputed Facts containing 63 numbered paragraphs (Doc. 481), CFPB filed a 141-page statement of material facts consisting of 385 numbered paragraphs (Doc. 483), and Navient filed a 97-page statement of material facts containing 376 numbered paragraphs (Doc. 471)", (see Doc. 557, at 2 n.1).  While this Court expresses no opinion on the merits of either party's motion, on the face of the cross-motions, briefs, and supporting documents, including the numerous factual disputes set forth in the parties' statements of fact and responses thereto, it is clear that the CFPB's contention that trial is likely not necessary constitutes either unwarranted optimism or disingenuous advocacy.

As a result, this Court's certification of its Order will materially advance this matter and provide a resolution to a largely, if not entirely, undeveloped and undecided application of the doctrine of equitable tolling.

Finally, the Court turns to the issue of whether the legal issue in this action is of "nationwide significance," see e.g. Wyndham, 10 F.Supp. 3d at 636.  The CFPB argues that "equitable tolling is only relevant in ongoing Bureau law enforcement actions that were initiated sufficiently long ago so that the relevant statute of limitations would have expired by the time the Bureau's Director ratified the initiation of the action", and the legal issue is not of

15

"nationwide significance" here where there is "only one other case brought within the Third Circuit that satisfies these conditions."  (Doc. 562, at 10).  This argument misses the point.

As noted by this Court, *supra*, the legal question at issue is presently before the Ninth and Fifth Circuits.  Furthermore, the Second Circuit recently remanded an action to the District Court for the Southern District of New York for that court "to consider in the first instance the validity of Director Kraninger's ratification of this enforcement action", *CFPB v. RD Legal Funding, LLC*, 828 F.App'x 68, 70 (Mem.) (2d Cir. 2020) (Mandate issued Feb. 10, 2021), and it is therefore likely that the Second Circuit may also address this issue on appeal in the future.

In addition, although the CFPB asserts that *CFPB v. National Collegiate Master Student Loan Trust*, pending in the District Court for the District of Delaware, *i.e.* the "only . . . other case brought within the Third Circuit" which involves the legal question at issue here, is different because there is a factual dispute as to whether the CFPB prosecuted the case diligently (Doc. 562, at 11), this does not attenuate the import of the present issue to that case.  Should the Delaware District Court disagree with Defendants and find that the CFPB did prosecute the action diligently, it is imperative that the Court know whether the doctrine of equitable tolling is even available.  Similarly, should the Third Circuit decide that equitable tolling cannot be applied here, the issue is eliminated in the Delaware case.

As noted by this Court in its prior memorandum opinion, "if Navient is correct that this case must now be dismissed as a result of the Supreme Court's limited holding in *Seila* due

to ratification outside the statute of limitations, this would necessitate the dismissal of a number of actions that the CFPB has brought and continues to pursue in other courts. . . ." (Doc. 557 at 32).  Although there may be a limited number of cases currently pending within the Third Circuit where ratification by the CFPB outside of the statute of limitations is at issue, this does not lessen the national significance of this issue. Rather, as demonstrated by the pendency of this legal issue before several circuit courts across the country, this issue is of nationwide importance and a decision by the Third Circuit is instrumental in the contextual development of the application of equitable tolling. *See e.g., Nationwide Life Ins. Co.*, 2011 WL 1044864, at *4 ("the Third Circuit's determination of this issue could potentially have a widespread impact on the underwriting and application of land title insurance policies in the United States.").  Further, it is of note that a resolution of the legal question here is likely to have a wider impact than only on those cases brought by the CFPB and is not specifically limited to the provisions of the CFPA and the CFPB's ability to operate.  Instead, a decision by the Third Circuit on whether the CFPB's defective structure, the unconstitutionality of which was not determined until after the applicable statue of limitations had expired, warrants the application of equitable tolling for purposes of effecting a valid ratification, could have a significant impact on a number of future cases involving the ability of a federal agency to ratify a cause of action outside the statute of limitations where a constitutional defect has been found by the court.

For the afore-stated reasons, the Court finds that its January 13, 2021 order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), and will thus grant Navient's request for certification and certify the order for interlocutory appeal under 28 U.S.C. § 1292(b).

## B. Stay of Action Pending Resolution of the Appeal

The "application for an appeal [under 28 U.S.C. § 1292(b)] shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b).  As explained by the Supreme Court,

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).  As such, "[a] stay is not a matter of right, even if irreparable injury might otherwise result" but "is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case."  *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal citations and quotations marks omitted).  The party seeking the stay has the burden of establishing that a stay is appropriate in the district court case. *Id.* at 433-434; *Landis v. N. Am. Co.*, 299 U.S. at 256-257.

A district court's decision with respect to the grant or denial of a stay is subject to abuse-of-discretion review.  *See Walsh v. George*, 650 F.App'x. 130, 132 (3d Cir. 2016).

In the present action, a stay pending resolution of the interlocutory appeal is appropriate. As this Court has explained in determining that certification of its order for interlocutory appeal is warranted, resolution of this legal question will determine whether this action can proceed, or must be dismissed, in its entirety. Furthermore, in addition to eliminating the need for trial, should the Third Circuit reverse this Court's application of the doctrine of equitable tolling, that reversal would also negate the need for the resolution of a number of outstanding disputes in this action, including decisions which could result in the need for further expert discovery, and would also eliminate the undoubted filing, and resolution, of further discovery and legal and procedural disputes among the parties. In light of the significance of the appellate court's decision on the ability of this case to proceed, there is little value in expending significant resources by the court and litigants, particularly where the purpose of § 1292(b) is to avoid "a wasted protracted trial if it could early be determined that there might be no liability," including in "cases in which a long trial results from a pretrial order erroneously overruling a defense going to the right to maintain the action" and "cases involving prolonged assessment of damages after determination of liability," *Katz*, 496 F.2d at 754. Indeed, courts have routinely granted a stay where they have certified an order for interlocutory appeal. *See e.g., Lupian v. Joseph Cory Holdings, LLC*, 2017 WL 1483313, at *3 (D.N.J. Apr. 24, 2017) (finding that a stay of district court proceedings pending outcome of petition for interlocutory appeal was warranted in light of the Court's conclusion that the three § 1292(b) factors were met); *United States ex rel.*

*Brown v. Pfizer, Inc.*, 2017 WL 2691927, at *5 (E.D. Pa. June 22, 2017) (finding that a "stay is appropriate in this action in order to facilitate" the objectives of § 1292(b) and to "eliminate complex issues and make discovery easier and less costly for the parties."); *Pub. Int. Rsch. Grp. of N.J., Inc. v. Hercules, Inc.*, 830 F.Supp. 1549, 1559 (D.N.J. 1993)("In light of our decision to certify the issue of notice to the Third Circuit, the court will stay the proceedings in this case, as well as the proceedings related to the plaintiffs' new complaint, pending the resolution of this issue in the Third Circuit on certification."); *Sayles v. Allstate Ins. Co.*, 2017 WL 2985402, at * 3 (M.D. Pa. July 13, 2017) (concluding stay was appropriate "because the issues awaiting resolution are dependent upon the outcome of the certified appeal.").

## IV. CONCLUSION

For the reasons set forth herein, the Court will grant Navient's Motion for Certification and Stay (Doc. 559) and certify the Court's January 13, 2021, order, and specifically the following question of law for interlocutory appeal under 28 U.S.C. § 1292(b):

> Whether an act of ratification, performed after the statute of limitations has expired, is subject to equitable tolling, so as to permit the valid ratification of the original action which was filed within the statute of limitations but which was filed at a time when the structure of the federal agency was unconstitutional and where the legal determination of the presence of the structural defect came after the expiration of the statute of limitations.

A separate Order follows.

Robert D. Mariani
United States District Judge