# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Consumer Financial Protection Bureau, | Case No. 3:17-CV-00101-RDM |
| Plaintiff, | |
| v. | **STIPULATED FINAL JUDGMENT AND ORDER** |
| Navient Corporation, et al., | |
| Defendants. | |

FILED
SCRANTON

SEP 1 2 2024

PER_____
DEPUTY CLERK

    The Consumer Financial Protection Bureau ("Bureau") commenced this civil action on January 18, 2017 to obtain injunctive and monetary relief and civil penalties, from Navient Solutions, LLC, Pioneer Credit Recovery, Inc., and Navient Corporation. The Complaint alleges violations of sections 1031(a) and 1036(a)(1) of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a), 5536(a)(1); section 1022.42(a) of Regulation V, the implementing regulation of the Fair Credit Reporting Act ("FCRA"), 12 C.F.R. § 1022.42(a); and section 807 of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e, in connection with Defendants' student loan servicing and debt collection practices.

    The Bureau and Defendants agree to entry of this Stipulated Final Judgment and Order ("Order"), without adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the conduct alleged in the Complaint.

## FINDINGS

1.     This Court has jurisdiction over the parties and the subject matter of this action.

2.     Defendants neither admit nor deny any allegations in the Complaint, except as specified in this Order. For purposes of this Order, Defendants admit the facts necessary to establish the Court's jurisdiction over them and the subject matter of this action.

3.     Defendants waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order and any claim they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each Party agrees to bear its own costs and expenses, including, without limitation, attorneys' fees.

4.     Entry of this Order is in the public interest.

## DEFINITIONS

5.     The following definitions apply to this Order:

   a.     **"Alternative Repayment Plans"** means Income-Driven Repayment Plans and extended and graduated repayment plans.

   b.     **"Assisting Others"** includes, but is not limited to:

   i.     consulting in any form whatsoever for remuneration;

   ii.    providing paralegal or administrative support services;

2

    iii.    performing customer service functions, including but not limited to, receiving or responding to consumer complaints;

    iv.    formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including but not limited to, any telephone sales script, direct mail solicitation, or the text of any Internet website, email, or other electronic communication or advertisement;

    v.    formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including but not limited to, web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

    vi.    providing names of, or assisting in the generation of, potential customers; and

    vii.    performing marketing, billing, or payment services of any kind.

c.    "**Board**" means Navient Corporation's duly-elected and acting Board of Directors.

d.    "**Clearly and Conspicuously**" or "**Clear and Conspicuous**" means:

    i.    In textual communications (e.g., printed publications or words displayed on the screen of an electronic device), the disclosure must be of a type size and location sufficiently noticeable for an

3

          ordinary consumer to read and comprehend it, in print that contrasts with the background on which it appears.

    ii.    In communications disseminated orally or through audible means, the disclosure must be delivered in a volume and cadence sufficient for an ordinary consumer to hear and comprehend it.

    iii.    In all instances, the disclosure must be in an understandable language and syntax, and with nothing contrary to, inconsistent with, or in mitigation of the disclosures used in any communication with the consumer.

e.    **"Consumer Reporting Agency"** has the meaning provided in section 603 of the FCRA, 15 U.S.C. § 1681 *et seq.*, and any amendments thereto. As of the date of entry of this Order, "Consumer Reporting Agency" is defined under the FCRA as any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

f.    **"Defendants"** means Navient Solutions, LLC, Pioneer Credit Recovery, Inc., and Navient Corporation, and their successors and assigns.

g.   **"Deferment"** means a temporary postponement of monthly loan payments pursuant to 34 C.F.R. § 682.210.

h.   **"Direct Loan"** means any student loan made to a borrower under the William D. Ford Federal Direct Loan Program, pursuant to 20 U.S.C. Part D.

i.   **"Discretionary Forbearance"** means any forbearance other than a Mandatory Forbearance. "Discretionary Forbearances" are also referred to as "general forbearances" and include any forbearance that the loan holder or loan servicer is permitted but not required to grant, pursuant to 34 C.F.R. § 682.211.

j.   **"Effective Date"** means the date on which the Order is entered by the Court.

k.   **"Enforcement Director"** means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or their delegate.

l.   **"FFELP Loan"** means any student loan made to a borrower under the Federal Family Education Loan Program, pursuant to 20 U.S.C. Part B.

m.   **"Forbearance"** means an option that permits the temporary cessation of student loan payments or an extension of time for making student loan payments, pursuant to 34 C.F.R. § 682.211. "Forbearance" includes any Discretionary Forbearance or Mandatory Forbearance and excludes any Deferment.

n.   **"Income-Driven Repayment Plan"** or **"IDR Plan"** has the same meaning as promulgated by the United

5

States Department of Education, including the following plans: Revised Pay As You Earn (REPAYE), Pay As You Earn (PAYE), Income-Based Repayment (IBR), Income-Contingent Repayment (ICR), the Saving on a Valuable Education (SAVE) Plan, and any similar plan that the U.S. Department of Education later classifies as an income-driven repayment plan.

o.  **"Mandatory Forbearance"** means any forbearance that a lender or loan servicer is required to grant under 34 C.F.R. § 682.211(h).

p.  **"MOHELA"** means the Missouri Higher Education Loan Authority.

q.  **"MOHELA Transaction"** means Navient's transaction with MOHELA under which MOHELA became a Sub-Servicer to Navient Solutions, pursuant to an agreement between Navient and MOHELA dated May 7, 2024.

r.  **"Navient"** means Navient Corporation and Navient Solutions, collectively.

s.  **"Navient Affiliate"** means Navient Credit Finance Corporation, any subsidiary of Navient Credit Finance Corporation, or any securitization trust established by any subsidiary of Navient Credit Finance Corporation, and their predecessors, successors, and assigns.

t.  **"Navient Corporation"** means Navient Corporation and its successors and assigns.

u.  **"Navient Solutions"** means Navient Solutions, LLC, and its successors and assigns.

6

v.   **"Ordinary Course FFELP Loan Repurchases"**
means (a) repurchases of FFELP Loans that are required
or permitted under the terms of any agreement in
connection with any securitization or any warehouse
facility sponsored by Navient or any Navient Affiliate or
other securitization owned by Navient; (b) repurchases of
FFELP Loans that are required under the terms of any
agreement in connection with any sale by Navient or any
Navient Affiliate of any FFELP Loans to third-parties, in
which such repurchases are required in the event that
representations and warranties Navient made about such
loans were not true and correct at the time of the sale; and
(c) repurchases of FFELP Loans from FFELP guarantors
required by the terms of the Higher Education Act or the
terms of any guarantee agreement. "Ordinary Course
FFELP Loan Repurchases" do not include: (a) purchases
of FFELP Loans that were never owned by any Defendant
or any Navient Affiliate as of the Effective Date; and (b)
repurchases of rehabilitated FFELP Loans.

w.   **"Pioneer"** means Pioneer Credit Recovery, Inc., and its
successors and assigns.

x.   **"PSLF"** means the Public Service Loan Forgiveness
Program, a U.S. Department of Education program
intended to encourage individuals to enter and continue
in full-time public service employment by forgiving the
remaining balance of their qualifying federal student

loans after they satisfy certain public service and loan payment requirements.

y.    **"Related Consumer Action"** means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against a Defendant based on substantially the same facts as described in the Complaint.

z.    **"Required FFELP Loan Purchases"** means purchases of FFELP Loans that are required under the terms of any agreement by Navient or any of its affiliates in connection with any third-party servicing or subservicing agreement, in which such purchases are required in the event of a material servicing error.

aa.   **"Sub-servicer"** means any company to whom responsibility for servicing is sold, transferred, assigned, or subcontracted by any Defendant with respect to any federal loan made, guaranteed, or insured under Title IV of the Higher Education Act, 20 U.S.C. § 1078 *et seq.*, or any private education loan as defined by the Truth in Lending Act, 15 U.S.C. § 1650(a)(8).

bb.   **"Supervision Director"** means the Assistant Director of the Office of Supervision Policy for the Consumer Financial Protection Bureau, or their delegate.

cc.   **"TEPSLF"** means the Temporary Expanded Public Service Loan Forgiveness Program, a U.S. Department of Education program that provides loan forgiveness for qualifying federal student loan borrowers who made some

8

or all of their requisite monthly PSLF payments under a repayment plan that does not qualify for PSLF.

dd.   **"TLF"** means the Teacher Loan Forgiveness Program, a U.S. Department of Education program intended to encourage individuals to enter and continue in the teaching profession by forgiving a specified amount of their qualifying federal student loans after they satisfy certain teaching requirements and meet any other qualifications.

# I.
## CONDUCT PROVISIONS

### Permanent Ban on Servicing of Direct Loans

**IT IS ORDERED** that:

6.    Navient, whether acting directly or indirectly, is permanently restrained from:

a.   Engaging in, or participating in, or Assisting Others in the servicing of any Direct Loan;

b.   Entering into or performing operations under any contract with the Department of Education for the purposes of implementing any program related to student aid arising under Title IV of the Higher Education Act of 1965, as amended, including but not limited to serving as a vendor for the Office of Federal Student Aid's Business Processing Operations; and

c.   Holding any ownership interest in any person engaged in or Assisting Others in the servicing of Direct Loans.

Nothing in this Paragraph shall prohibit any Sub-servicer from servicing Direct Loans. Nothing in this Consent Order shall be read as an exception to this Paragraph.

## Permanent Ban on Acquiring Additional and Servicing of FFELP Loans

**IT IS FURTHER ORDERED** that:

7.     Navient, whether acting directly or indirectly, is permanently restrained from:

        a.     Acquiring any ownership interest, directly or indirectly, in any FFELP Loan on or after the Effective Date;

        b.     Engaging in, participating in, or Assisting Others in the servicing of any FFELP Loan; and

        c.     Holding any ownership interest in any person engaged in or Assisting Others in the servicing of FFELP Loans.

Nothing in this Paragraph shall: (a) limit Navient's ability to be the master servicer for its portfolio of FFELP Loans consistent with the terms of its securitization or warehouse facilities, third-party servicing or subservicing agreements, or the MOHELA Transaction; (b) limit Ordinary Course FFELP Loan Repurchases or Required FFELP Loan Purchases; or (c) prohibit any Sub-servicer from servicing FFELP Loans. Nothing in this Consent Order shall be read as an exception to this Paragraph.

## Servicing Terms

**IT IS FURTHER ORDERED** that:

8.     The conduct provisions contained in Paragraphs 10-64 of this Order apply to the servicing of all federal loans made, guaranteed, or insured under Title IV of the Higher Education Act, 20 U.S.C. § 1078 *et*

*seq.*, and all private education loans as defined by the Truth in Lending Act, 15 U.S.C. § 1650(a)(8), performed by Navient or any Sub-servicer for Navient who receives actual notice of this Order, unless otherwise specified. Servicing of loans for which Navient is the master servicer may not be performed entirely by a third-party company that is not a Sub-servicer.

9.      Navient and its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with it who receive actual notice of this Order, including any Sub-servicer for Navient who receives actual notice of this Order, whether acting directly or indirectly, may not violate sections 1031 or 1036(a) of the CFPA, 12 U.S.C. §§ 5531, 5536(a); section 1022.42(a) of Regulation V, 12 C.F.R. § 1022.42; and section 807 of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e.

## **Payment Processing**

**IT IS FURTHER ORDERED** that:

Navient shall implement or continue its practice(s), as applicable to:

10.      **Crediting of Payments.** Promptly and accurately credit payments to the borrower's account not later than the date a mailed payment is received by Navient or by its contractor. This Paragraph 10 shall not be construed to apply to U.S. Department of Education loans for which Navient does not receive borrower payments.

      a.      **Changes in Navient's Payment Requirements or Policies.** If Navient makes any material change to requirements or policies relating to the receiving, processing, or handling of loan payments that affect borrower or cosigner action or any change in the lockbox address, provide written notice of the change to the

affected borrowers and/or cosigners, as applicable, no less than 30 days before the effective date of the change.

b.  **Grace Period for Payment Non-Compliance.** For at least 60 days after the effective date of such change, not impose any late fee, interest accrual other than normal interest, or other charge; furnish negative credit information; cause the loss of any benefit to the borrower or cosigner; or treat any payment that complies with the previous policy as late for any other purpose.

11.  **Default Payment Processing Methodology for Loans Grouped for Billing Purposes.**

a.  Unless otherwise instructed by the borrower, for any payment or payments in excess of the total amount due across all loans in the billing group ("prepayment"), prioritize allocations to loans by the highest interest rate in descending order, provided, however, if multiple loans are at the same highest rate, first to unsubsidized highest rate federal loans and then to subsidized federal loans with that same highest rate.

b.  Unless otherwise instructed by the borrower, for any payment that does not satisfy the total monthly amount due across all loans in the billing group (an "underpayment"), allocate first to the most delinquent loan, then once all loans are brought to the same level of delinquency, to the loan with the lowest regular monthly payment, then according to the payment allocation methodology in Paragraph 11(a), above.

12

c.  Clearly and Conspicuously provide its default application and allocation of prepayments and underpayments methodologies on Navient's website(s) and in its billing statements. These notices shall be accompanied by a statement informing the borrower and cosigner that they may instruct the servicer of their loan to use a different payment allocation methodology, and a description of the method(s) by which the borrower or cosigner can make such an instruction.

12.  **One-Time and Standing Instructions from Borrowers or Cosigners Regarding Processing Payments.** Allow borrowers and cosigners to provide one-time or standing instructions regarding payment allocation on any loan or billing group.

13.  **Requirements Related to Payments by Third Parties.** Permit borrowers and cosigners to request that a third-party payment made on behalf of, or for the benefit of, that borrower or cosigner be reallocated based on the borrower or cosigner's requested allocation within 60 days of the payment date to the extent permitted by the third-party payor and terms of the applicable promissory note or federal requirements.

14.  **Requirements Related to Advancement of Due Date.** When a borrower or cosigner submits a payment via Navient's online platform that is sufficient to trigger advancement of the current due date and at least one subsequent due date, permit borrowers the choice of either (i) opting out of advancement of the due date, or (ii) electing advancement of the due date.

15.  **Conformity to the Terms of Loans owned by the U.S. Department of Education.** In the event that Navient is not servicing

federal loans owned by the U.S. Department of Education and the Department issues rules, regulations, change orders, or Dear Colleague letters addressing payment processing, application, or methodologies, at the option of Navient, Navient may apply such payment processing, application, or methodologies to FFELP Loans serviced by Navient, and servicing of FFELP Loans in conformity with such rules, regulations, change order, or Dear Colleague Letter shall be deemed in compliance with the provisions of Paragraphs 10-16 of this Order.

16. **Terms of Promissory Note.** Notwithstanding any specific requirement set forth above, no provision of this Order shall require Navient to apply allocation instructions that conflict with the terms of a borrower's promissory note or federal requirements.

## Fees

**IT IS FURTHER ORDERED** that:

17. Navient shall implement or continue its practice, as applicable, to not charge the following fees: fees to enter a Forbearance status; late fees assessed on a per-loan basis at a fixed-dollar amount; multiple fees for a single late payment; or fees to process payments, unless required by applicable law, rule, or regulation or under contract with the owner of the loan where the owner of the loan is authorized to assess such a fee or to the extent that a third-party payment service charges such a fee to process payment.

## Billing Statements & Payment Histories

**IT IS FURTHER ORDERED** that:

For a period of five (5) years from the Effective Date, Navient shall implement or continue its practice, as applicable to:

14

18.   **Mandatory Billing Statement Notices.** Include on every billing statement that Navient sends to a borrower or cosigner, at a minimum, the following information. This information shall also appear on the borrower's online account.

    a.   On the account level:

        i.   Total amount due (including fees, if applicable), including a breakdown of this amount between the total amount past due and the total current scheduled monthly payment;

        ii.   Total outstanding balance on the account, including a breakdown of this amount among fees, interest, and principal;

        iii.   Fees assessed during the current billing cycle;

        iv.   The date by which payment of the regular monthly payment amount must be received to avoid incurring additional late fees in the next billing cycle; and

        v.   For federal loan accounts, the name of the borrower's current repayment plan. If, however, the account is or was previously in an Income-Driven Repayment Plan but payments are no longer being calculated based on income, the borrower's account portal on Navient's website(s) will explain this fact and how to find information related to recertifying income and family size or reapplying for income-driven repayment, as applicable.

19.   **Payment Histories.**

a.   Provide a written payment history to a borrower or cosigner upon request or provide the borrower with instructions as to how to access such history on Navient's website(s), at no cost to the borrower or cosigner, within 30 days of receiving the request to the extent practicable. The written payment history may be provided to the borrower or cosigner in either electronic or paper format. The payment history shall contain:

  i.    The current interest rate for the loan(s) at issue;

  ii.   The original loan amount for the loan(s) at issue;

  iii.  The outstanding principal loan balance for the loan(s) at issue as of the date of the request;

  iv.   The total amount of accrued interest since disbursement;

  v.    The date Navient posted each payment;

  vi.   The amount of each payment applied to fees, interest, and principal;

  vii.  The date any interest was capitalized for the loan(s) at issue, the amount of interest capitalized, and the reason for the capitalization event; and

  viii. The current repayment plan for each such loan.

20.   Where possible, the full payment history for all loans shall be available online. Where the full payment history of one or more loans cannot be made available online, Navient shall ensure that no less than one (1) year of payment history for such loans is available online.

## **Borrower Communications for Federal Loans**

**IT IS FURTHER ORDERED** that:

21.     The provisions of Paragraphs 21-35 apply only to federal loans made, guaranteed, or insured under Title IV of the Higher Education Act, 20 U.S.C. § 1078 *et seq.* For a period of five (5) years from the Effective Date, Navient shall implement or continue its practice, as applicable to:

22.     **Policies Regarding Oral Communications & Prioritization of Alternative Repayment Plans.** Maintain policies and procedures designed to ensure that, before any borrower is placed into a Deferment or Discretionary Forbearance, Navient shall inform such borrower regarding:

      a.     The existence and availability of Alternative Repayment Plans. If the borrower has a loan type that is eligible for an Income-Driven Repayment Plan (including through consolidation), this includes: (i) explaining (1) that IDR Plan payments may be as low as $0 per month depending on the borrower's income and family size, (2) that most IDR Plans provide potential interest subsidies, and (3) that IDR Plans provide the possibility of loan forgiveness after meeting certain qualifying payments requirements; and (ii) offering to estimate an income-driven payment amount based on the borrower's stated income and family size;

      b.     If applicable, the method for applying for Alternative Repayment Plans, either by: (i) directing borrowers to Navient's website(s) for accessing application materials for Alternative Repayment Plans (including, for borrowers

who must consolidate to access Income-Driven Repayment Plans, a consolidation application); or (ii) by providing the borrower with the toll-free telephone number to call and request a paper copy of the applications; and

c.   The provisions of Paragraphs 22(a) and (b) of this Order shall not apply to Deferments or Forbearances where enrollment is automatic based upon where the borrower lives or is serving in the military, such as disaster or military Forbearances, in the case of Deferment due to in-school enrollment, or administrative Forbearance due to bankruptcy or disability. The foregoing exception shall apply even where the borrower may have the ability to opt out of such Forbearance or Deferment.

23.   **Alternative Repayment Specialists.** Except as provided herein, designate personnel who have received enhanced training consistent with Enhanced Training for Alternative Repayment Specialists outlined in Paragraph 23(b) of this Order. These specially designated personnel are hereinafter referred to as "Alternative Repayment Specialists."

a.   **Role of Alternative Repayment Specialists.** Alternative Repayment Specialists assist borrowers as set forth below regarding Alternative Repayment Plans.

b.   **Enhanced Training for Alternative Repayment Specialists.** Train agents to provide accurate and timely information regarding Alternative Repayment Plans. The

enhanced training for Alternative Repayment Specialists shall include training on:

i.  Alternative Repayment Plans, as well as other options such as Forbearance and Deferment;

ii.  Eligibility for, and features, primary benefits, and primary costs associated with, different Alternative Repayment Plans, as well as Forbearance and Deferment; and

iii.  Actions that the borrower must take to be evaluated for these options, including actions the borrower must take to submit an IDR Plan application or to qualify for Alternative Repayment Plans. Navient shall implement and administer testing at least annually to determine the satisfactory completion of the enhanced training with regard to each Alternative Repayment Specialist.

c.  **Access to Alternative Repayment Specialists.** The following types of borrowers shall be routed to Alternative Repayment Specialists:

i.  Any borrower who is at least 60 days delinquent; or

ii.  Any borrower who is presently enrolled in a Discretionary Forbearance and has been enrolled in Discretionary Forbearance for more than six (6) months of the previous twelve (12) months.

d.  **Monitoring of Alternative Repayment Specialists.** Monitor Alternative Repayment Specialists, including periodic call listening and reviews to monitor the

Alternative Repayment Specialists' compliance with these terms.

 e. **Compensation & Incentives for Agents.** Not utilize any compensation plan, including any incentive compensation plan, or any penalty, that is intended to minimize the time agents engage in oral communications with borrowers in a manner inconsistent with Paragraphs 22 or 23 of this Order, or where such a plan or penalty is reasonably foreseeable to have that effect.

 f. **Role of Navient Agents Who Are Not Designated Alternative Repayment Specialists.** Navient will continue to require all of its call agents, including those who are not designated Alternative Repayment Specialists, to advise all borrowers of the availability of Alternative Repayment Plans whenever the borrower, or their payment history, indicates that the borrower is experiencing financial hardship and that the nature of the hardship may not be temporary.

24. **Limitations.** The requirements that are enumerated in Paragraph 22 of this Order shall not prevent any Alternative Repayment Specialist from: (a) providing any information specifically requested by the borrower or responding to any question presented by the borrower, regardless of timing; and (b) respecting a borrower's request to end the call or to not discuss Alternative Repayment Plans. Nor shall the requirements of Paragraph 22 of this Order prevent the Alternative Repayment Specialist from assisting a borrower with any other Request for Assistance, as that term is defined in Paragraph 62 of this Order; nor apply to any oral

communication between an Alternative Repayment Specialist and a borrower in which the sole topic discussed is a recertification of the borrower's income and family size pursuant to any type of application for an Alternative Repayment Plan.

25. **Policies Regarding Inquiry into Public Service.** Maintain policies and procedures designed to ensure that, if a borrower calls Navient after the Effective Date, a live customer service agent shall inquire at that time, and at least once a year thereafter: (a) whether the borrower is employed in public service, such as by a government or nonprofit employer; and (b) whether the borrower is interested in learning more about PSLF or TEPSLF. Navient may develop an interactive tool to solicit answers to these questions from borrowers and an individual borrower's provision of answers through this tool in a given year shall be deemed to be in compliance with this subsection for that year.

a. If the borrower answers affirmatively, Navient shall:

i. Place a code on the borrower's account in accordance with Paragraph 26(c) below; and

ii. Offer to forward the borrower to, or schedule a call back from, a Public Service Specialist.

b. If a borrower goes a year thereafter without calling Navient, Navient shall develop and place a Clear and Conspicuous notice on the borrower's online account page informing the borrower that, if they are employed in public service, such as by a government or nonprofit employer, they can contact a Public Service Specialist to learn more about PSLF or TEPSLF. Such notice shall also link to a U.S. Department of Education website where

borrowers can obtain more information on PSLF and
TEPSLF.

26.   **Public Service Specialists.** Designate personnel who have
received enhanced training, consistent with Enhanced Training for Public
Service Specialists described in Paragraph 26(b) of this Order. These
special designated personnel are hereinafter referred to as "Public Service
Specialists."

    a.   **Role of Public Service Specialists.** Public Service
Specialists shall be available to assist borrowers as set
forth below regarding PSLF, TEPSLF, and TLF, and
respond to complaints concerning these programs as
described in Paragraph 30 of this Order.

    b.   **Enhanced Training for Public Service Specialists.**
Regularly train Public Service Specialists to provide
borrowers with accurate, complete, and timely
information regarding PSLF, TEPSLF, and TLF. The
enhanced training for Public Service Specialists shall
include training on:

        i.   PSLF, TEPSLF, and TLF, including eligible loan
types, steps borrowers can take to obtain an eligible
loan type and associated consequences, qualifying
employment requirements, qualifying repayment
plan requirements and the features of those plans,
qualifying payment requirements, features of PSLF,
TEPSLF, and TLF, forms associated with the
programs, the sequence in which forms must be
submitted or in which actions must be taken,

actions that borrowers must take to succeed in pursuing forgiveness, and actions that will hinder borrowers' eligibility or progress toward forgiveness, common problems that borrowers encounter with the programs, and borrowers' options for contesting denials and, if relevant to the inquiry, payment count errors;

ii.   TLF's relationship to PSLF and TEPSLF;

iii.  U.S. Department of Education policy changes that relate to PSLF, TEPSLF, and TLF;

iv.   When and where to make appropriate referrals relating to PSLF, TEPSLF, and TLF including to any servicer designated by the U.S. Department of Education to administer PSLF, TEPSLF, or TLF;

v.    Informational resources and tools available from the U.S. Department of Education or other servicers designated by the U.S. Department of Education as a servicer for PSLF, TEPSLF, and TLF; and

vi.   Actions that the borrower must take to be evaluated for and become eligible for an IDR Plan, PSLF, TEPSLF, and TLF including actions the borrower must take to submit an IDR Plan, PSLF, TEPSLF, or TLF related application or certification.

Navient shall implement and administer testing at least annually to determine the satisfactory completion of the enhanced training with regard to each Public Service Specialist.

c.   **Access to Public Service Specialists and Public Service Code.** The following types of borrowers shall be assigned a public service code and, to the extent a borrower is not already speaking to a Public Service Specialist, shall be offered to be routed to, or offered a call back from, a Public Service Specialist:

i.   Any borrower with one or more Federal loans serviced and identifiable by Navient who mistakenly submits a PSLF or TEPSLF certification or application to Navient;

ii.   Any borrower who expresses interest in, indicates an intent to try to qualify for, or requests information about PSLF, TEPSLF, or TLF;

iii.   Any borrower who, on a call with Navient's agent, uses keywords or phrases indicating eligibility, intent, or desire to qualify for or receive more information about PSLF, TEPSLF, or TLF;

iv.   Any borrower who, on a call with Navient's agent, expresses an interest in speaking with a Public Service Specialist; and

v.   Any borrower with a complaint, question, or inquiry about PSLF, TEPSLF, or TLF.

d.   **Monitoring Relating to Public Service.** Conduct regular call monitoring and review to evaluate whether questions were prompted and asked; whether calls were transferred to, or scheduled with, Public Service Specialists in compliance with these terms; whether

24

Public Service Specialists complied with these terms;
whether Public Service Specialists provided borrowers
with complete and accurate information and advice; and
whether the public service code was appropriately entered
and maintained in Navient's system of record. Monitoring
of Public Service Specialists shall also include a review of
the time borrowers spend on "hold" or in a queue
awaiting contact with a Public Service Specialist. Wait
times for Public Service Specialists shall be held to the
same requirements or standards that Navient applies to
other specialized customer service agents such as military
specialists.

    e.    **Compensation & Incentives for Agents.** Not utilize
any compensation plan, including any incentive
compensation plan, or any penalty, that is intended to
minimize the time agents engage in oral communications
with borrowers in a manner inconsistent with Paragraph
22 or 23 of this Order, or where such a plan or penalty is
reasonably foreseeable to have that effect.

27.    **Outreach to Borrowers Related to PSLF & TEPSLF.**
Navient shall develop a notice and distribute it at least annually to all
borrowers who have loan types that do not qualify for PSLF (to the extent
that such borrowers can consolidate these loans into a Direct Loan that
does qualify or are otherwise not permanently ineligible), are currently
enrolled in repayment plans that do not qualify for PSLF, or received a
public service code in Navient's system of record pursuant to Paragraph
26(c) of this Order. The notice shall Clearly and Conspicuously identify

each of the borrower's federal loans in a single notice and indicate whether each loan is a qualifying loan type and whether each is in a qualifying repayment plan. If one or more of the borrower's loans are not a qualifying loan type, the notice shall identify how the borrower can obtain a qualifying loan type for the one or more loans that are not a qualifying loan type. If one or more of the borrower's loans are not in qualifying repayment plans, the notice shall: identify qualifying repayment plans and the steps the borrower can take to change to a qualifying repayment plan, and indicate that TEPSLF may cover payments made on the wrong repayment plan. The notice shall Clearly and Conspicuously indicate that PSLF has other requirements in addition to having a qualifying loan type and repayment plan. The notice shall Clearly and Conspicuously:

    a.    Include a web address for a U.S. Department of Education website where borrowers can obtain more information on PSLF and TEPSLF and a link to where they can obtain the PSLF and TEPSLF certification and application;

    b.    Provide contact information for Public Service Specialists; and

    c.    Provide contact information for the Federal Student Aid Ombudsman Group.

28.    **Changing to Non-Qualifying PSLF Repayment Plans.** If a borrower has one or more Direct Loans and a public service code and indicates that they may want to change repayment plans for such Direct Loan(s), Navient shall offer to transfer the borrower to a Public Service Specialist. Before a borrower changes to a repayment plan that does not qualify towards PSLF via telephone, Navient will inform the borrower that the chosen plan does not qualify towards PSLF. If a borrower changes or is

changed to a repayment plan that does not qualify towards PSLF via means other than telephone, within 30 days of the repayment plan change, Navient will notify the borrower in writing that the chosen plan does not qualify towards PSLF. This notice shall Clearly and Conspicuously include a web address for a U.S. Department of Education website where borrowers can obtain more information on PSLF and TEPSLF and provide contact information for Public Service Specialists.

29.   **Consolidating PSLF Eligible Loans.** Defendants will not assist or advise that a borrower consolidate PSLF eligible loans without accurately informing the borrower about whether qualifying payments the borrower already made toward forgiveness of those loans will or will not be lost as a result of consolidation of PSLF-eligible loans. If Defendants send a borrower a consolidation application, they will include with that application a notice that accurately and Clearly and Conspicuously informs the borrower about any consequences that consolidation of PSLF-eligible loans may have on qualifying payments toward forgiveness on those loans.

30.   **PSLF Specific Disputes.** In response to complaints received by Navient from formerly or currently serviced borrowers concerning PSLF/TEPSLF, Navient shall assign one or more Office of Customer Advocate ("OCA") specialists who have received enhanced training consistent with Paragraph 26(b) of this Order ("OCA-Public Service Specialists") to review whether the borrower's payments did not qualify for PSLF/TEPSLF and whether Navient made a contributing servicing error, misrepresentation, or omission. To make this determination, the OCA-Public Service Specialists shall review the account history for all loans, including without limitation, if any, payment records, Electronic Fund Transfers, written and electronic correspondence, prior complaints or

escalated inquiries, phone calls and recordings, and notes related to phone calls, prior audits in which the borrower's account was identified as subject to a problem, records from prior servicers that are in Navient's possession, and any other information/documentation Navient typically reviews. The OCA-Public Service Specialist shall document their findings and communicate those findings and the reasons for those findings to the borrower in writing.

    a.    If Navient is unable to provide evidence disputing a borrower's complaint that Navient made a contributing error, misrepresentation, or omission, Navient will not dispute that Navient made such error, misrepresentation, or omission.

    b.    If Navient finds evidence that supports a borrower's complaint that Navient made a contributing error, misrepresentation, or omission, Navient will acknowledge to the borrower that Navient made such error, misrepresentation, or omission.

    c.    If the immediately foregoing Paragraphs 30(a) or 30(b) of this Order apply, Navient will communicate its findings and the reasons for those findings to the borrower's current servicer, copying the U.S. Department of Education, and encourage the servicer and the U.S. Department of Education to provide forgiveness or a correction to the borrower's qualifying payment count if the reason payments were non-qualifying may have related to an error, misrepresentation, or omission.

d.   If the borrower's complaint relates to having the right loan type but making payments under the wrong repayment plan, then the findings that Navient provides to the borrower shall include information about the potential relief available under TEPSLF.

31.   **Oral Communications Regarding Amounts Owed.** Implement or maintain policies and procedures to disclose to borrowers and cosigners, concurrent with any payment demand, the payment amount required to cure a borrower's delinquency or avoid negative credit reporting, and to permit borrowers to pay that amount without requiring borrowers to make any monthly payment prior to its scheduled due date.

32.   **Cover Emails Accompanying Electronic Billing Statements.** Cover emails from Navient notifying a borrower with a delinquent federal education loan that an electronic billing statement is available on Navient's website(s) shall disclose the steps the borrower can take to learn about Alternative Repayment Plans.

33.   **Website Notices of Alternative Repayment Plans.** Maintain on Navient's website(s) a description of Alternative Repayment Plans and a link to the U.S. Department of Education website where borrowers can obtain more information and apply.

34.   **Requirements Related to Recertification of Income and Family Size Under an IDR Plan.** For any borrower enrolled in an IDR Plan: At a reasonable time period prior to the then current IDR Plan recertification deadline ("annual deadline"), send written or electronic notices to the borrower regarding the requirement and the deadline to recertify the borrower's income and family size. Between 90 days and 20 days prior to the borrower's annual deadline, Navient shall make no fewer

29

than four attempts to contact borrowers who are enrolled in an IDR Plan but have not submitted an application to recertify income and family size, and shall make at least one additional attempt if the borrower has not submitted an application after the annual deadline date has passed.

35. **Cover Emails Accompanying IDR Plan Recertification Communications.** Include in the subject field of any electronic communication relating to an upcoming IDR Plan recertification the following statement, or a substantially similar statement: "Take Action Now or Your Monthly Payment May Increase."

## Consolidation

**IT IS FURTHER ORDERED** that:

36. The provisions of Paragraphs 37-38 of this Order apply only to federal loans made and guaranteed or insured under Title IV of the Higher Education Act, 20 U.S.C. § 1078 *et seq.* After completion of the MOHELA Transaction, Navient shall require that MOHELA complies with the requirements of Paragraphs 37-38.

37. **Responding to Borrower Inquiries Regarding Consolidation.** Navient shall respond to borrower inquiries regarding consolidation of FFELP Loans into a Direct Consolidation Loan with accurate and complete information.

38. **Timely Providing the Loan Verification Certification.** For each borrower for whom Navient receives a Loan Verification Certificate, Navient shall complete and return to the Department of Education the accurate Loan Verification Certification of the amount owed within ten (10) business days of receipt, regardless of whether the paper or

electronic return method has been chosen, consistent with 34 C.F.R. § 685.220(f)(1)(i).

### **Borrower Communications for Private Education Loans**

**IT IS FURTHER ORDERED** that:

39.    The provisions of Paragraphs 40-43 of this Order apply to servicing and collections of all private education loans (15 U.S.C. § 1650).

40.    **Private Student Loan Alternative Repayment Arrangements.** Navient shall not misrepresent the availability of, or requirements or qualifications for, private student loan alternative repayment arrangements.

41.    **Properly Evaluating Private Student Loan Alternative Repayment Arrangement Requests From A Borrower.** Navient shall establish policies and procedures and implement them consistently in order to facilitate the evaluation of private student loan alternative repayment arrangement requests.

42.    **Oral Communications Regarding Amounts Owed.** Navient shall implement or maintain policies and procedures to disclose to borrowers and cosigners, concurrent with any payment demand, the payment amount required to cure a borrower's delinquency or avoid negative credit reporting, and to permit borrowers to pay that amount without requiring borrowers to make any monthly payment prior to its scheduled due date.

43.    **Oral and Written Communications Regarding Bankruptcy.** Navient shall not inform borrowers that private loans are non-dischargeable in bankruptcy or unlikely to be dischargeable in bankruptcy. Navient shall establish policies and procedures to ensure that

they direct borrowers who raise the issue of bankruptcy to discuss the potential for loan discharge with bankruptcy counsel.

## **Cosigned Loans**

**IT IS FURTHER ORDERED** that:

Navient shall implement or continue its practice, as applicable to:

44.   **Notice of Cosigner Release.** For all loan accounts that may be eligible for the potential release of a cosigner based upon the terms and conditions of their loans, provide a one-time notice ("Notice of Cosigner Release") describing: the criteria then in effect for qualifying for cosigner release; an explanation as to what constitutes a consecutive, on-time payment; a web address where the cosigner release application can be accessed and if the notice is electronic, a link thereto; statements that (i) Navient will evaluate the borrower's credit history and ability to repay before granting cosigner release and describe the process for applying for cosigner release; (ii) borrowers should check their payment history to determine whether they have met the consecutive on-time payment requirement; (iii) overpayments of more than the monthly payment amount may not count toward cosigner release; (iv) payments made by a borrower's employer may not count towards cosigner release; and (v) a phone number borrowers can call if they have questions about cosigner release.

45.   **Website Publication of Information Related to Cosigner Release.** Post the information contained in the Notice of Cosigner Release, described in Paragraph 44 of this Order, on Navient's website(s).

46.   **Qualifying Payments for Consecutive, On-Time Payments Requirement.** In calculating consecutive, on-time payments for purposes of qualifying for cosigner release, include each consecutive, scheduled principal and interest payment immediately preceding the cosigner release application submission.

a.   Except as defined by the terms of the loan or its promissory note, the following payments qualify for cosigner release: Any on-time payments made within the billing cycle, including payments within the grace period, which would constitute a full principal and interest payment for that billing cycle and shall not include any payments made pursuant to an interest rate reduction program or other program permitting partial or no payment.

b.   Not restart a borrower's progress toward meeting the consecutive, on-time payment requirement for cosigner release if, due to a prepayment which resulted in the advancement of a due date, the borrower makes no payment in response to a $0 bill.

47.   **Notice Concerning Impact on Certain Payment Arrangements.** If a borrower or cosigner requests a change in terms that would restart the borrower's progress towards meeting the consecutive, on-time payment requirement for cosigner release, notify the borrower in writing of the impact of such an arrangement and provide such borrower the right to withdraw or reverse the request to avoid such impact. If the request for the change in terms is made over the phone or online, Navient shall inform the borrower or cosigner of the impact of such an arrangement

and provide the borrower or cosigner the right to withdraw or reverse the request to avoid such impact.

48. **Notice of Incomplete Application for Cosigner Release.** If Navient requires a written application to apply for cosigner release and receives an incomplete application, send the borrower a written notice that includes the following information, within 30 days of receipt of such incomplete application:

      a.    A statement that the application is incomplete;

      b.    The information needed by Navient to consider the application complete; and

      c.    The date by which the applicant must furnish the missing information after which date the application may be denied, which must be no less than 30 days from which the notification is postmarked or emailed.

49. **Cosigner Release Denial.** In the event that Navient denies cosigner release, Navient will provide the borrower a denial letter that Clearly and Conspicuously provides the reasons for such denial.

## Payoff

**IT IS FURTHER ORDERED** that:

Navient shall implement or continue its practice, as applicable to:

50. **Online Information Regarding Payoff Process.** Maintain a Clear and Conspicuous description on Navient's website(s) of the methods by which a borrower or cosigner may obtain a valid Payoff Statement for a single loan or group of loans.

51. **Controls for Accurate Payoff Statements.** Maintain policies and procedures to ensure that each payoff amount communicated

to the payoff requestor, whether orally or in a payoff statement, is accurate for the corresponding expiration date stated therein.

52.   **Paid in Full Notice.** When Navient receives a payment in good funds equal to or exceeding the amount indicated in the payoff statement for a particular loan or loans, provide within 75 days of such receipt, at no cost to the borrower or cosigner, a written or electronic notice to borrowers and any cosigners confirming that no outstanding balance remains on such loan(s).

53.   **Notice of Attempt to Pay Off.** If Navient receives a payment greater than or equal to 95 percent of the outstanding balance of a borrower's loan(s) in a group but less than the amount required to pay the loan in full, provide a monthly billing statement to the borrower setting forth, among other items, the remaining unpaid principal balance as of the statement date.

54.   **Refund of Overpayments Following Payoff.** Remain in compliance with U.S. Department of Education regulations for refunding overpayments following payoff. Navient shall disclose its policy for refund of overpayments following payoff on Navient's website(s).

## <u>Requirements Related to the Transfer of Servicing</u>

**IT IS FURTHER ORDERED** that:

Navient shall implement or continue its practice, as applicable to:

55.   **Notice by Transferor Servicer at the Time of Transfer of Servicing.** When acting as the Transferor Servicer, as defined in Regulation X, 12 C.F.R. § 1024.31, provide to each borrower and cosigner subject to the transfer a written notice ("Notice by Transferor Servicer") not less than 15 days before the effective date of the transfer.

56.    **Notice by Transferee Servicer.** When acting as the Transferee Servicer, as defined in Regulation X, 12 C.F.R. § 1024.31, provide to each borrower and cosigner subject to the transfer a written notice ("Notice by Transferee Servicer") not more than 15 days after the effective date of the transfer.

57.    **Prohibition on Late Fees during Servicing Transfers.** During a period covering at least the 60-day period beginning on the effective date of transfer of the servicing of a loan, a payment timely made to the Transferor Servicer may not be treated as late for any purpose by Navient when acting as the Transferee Servicer.

58.    **Transferor Forwarding of Payment Received.** To the extent practicable, for at least 120 days beginning on the effective date of transfer of servicing of a loan, when Navient is acting as the Transferor Servicer, use reasonable efforts to forward payments received to the Transferee Servicer.

59.    **Electronic Fund Transfer Authority.** Unless a borrower's authorizations for recurring electronic fund transfers are automatically transferred to the Transferee Servicer, when Navient is acting as Transferee Servicer, make available to a borrower or cosigner whose loan servicing is transferred an online, telephone, and written process through which borrowers may make a new authorization for recurring electronic fund transfers.

60.    **Certain Transfers Excluded.** The following transfers are not assignments, sales, or transfers of loan servicing for purposes of Paragraphs 55-61 of this Order if there is:

       a.    No change in the payee, address to which payment must be delivered, account number, or amount of payment due;

b.    A transfer between affiliates;

c.    A transfer that results from a merger or acquisition of servicers or Sub-servicers;

d.    A transfer that occurs between master servicers without changing the Sub-servicer; or

e.    A transfer that occurs pursuant to U.S. Department of Education direction or instruction.

61.    **Communication with Borrowers/Transferees on Servicer Transfers Related to PSLF.** Notwithstanding the foregoing exclusions, when Navient is acting as the Transferor Servicer, assign Public Service Specialists to handle questions from formerly and currently serviced borrowers, and from Transferee Servicers about billing and payment histories, repayment plans, missing or incomplete loan information, including any information relevant to PSLF and TEPSLF, and shall ensure successful and timely transfer of loan data sufficient for the Transferee Servicer to determine whether the borrower has made qualifying payments for the PSLF or TEPSLF programs while serviced by Navient. Navient shall also ensure that the Transferee Servicer receives any information in Navient's possession relevant to such determinations that came from a prior servicer.

## Requests for Assistance, Account Dispute Resolution, and Appeals

**IT IS FURTHER ORDERED** that:

62.    **Requests for Assistance.** Navient shall implement or continue its practice to maintain reasonable policies and procedures for providing readily accessible methods for borrowers or cosigners to submit a request, inquiry, or complaint by phone, email, or U.S. mail; and

processing, investigating, responding to, and resolving all inquiries, complaints, account disputes, and requests for documentation ("Request for Assistance") from borrowers or cosigners in a timely and effective manner.

63.    **Appealing Requests for Assistance Outcomes.** Navient shall provide on Navient's website(s) a description of how to appeal decisions made by the OCA and a description of the appeal process.

## Post-Default Collections

**IT IS FURTHER ORDERED** that:

64.    **Communications Regarding Post-Default Resolution Options.** When discussing the terms and conditions of federal education loan rehabilitation, Navient must accurately and Clearly and Conspicuously describe the characteristics, requirements, and consequences of each post-default resolution option available to borrowers, including the impact on a borrower's credit, the application of collection fees, and the requirements for disability discharge.

## Pioneer

65.    In the event that Pioneer engages in or resumes federal education loan debt collection activities, Pioneer and its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with it who receive actual notice of this Order, whether acting directly or indirectly, may not violate sections 1031 or 1036(a) of the CFPA, 12 U.S.C. §§ 5531, 5536(a), and section 807 of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e, and when discussing the terms and conditions of federal education loan rehabilitation, Pioneer must accurately and Clearly and Conspicuously describe the characteristics,

requirements, and consequences of each post-default resolution option available to borrowers, including the impact on a borrower's credit, the application of collection fees, and the requirements for disability discharge.

## II.
## Compliance Plan

**IT IS FURTHER ORDERED** that:

66.     Within 60 days of the Effective Date, Navient must create and implement a comprehensive compliance plan designed to ensure that Navient's student loan servicing activities comply with all applicable laws that the Bureau enforces, including Federal consumer financial laws, and the terms of this Order (Compliance Plan). The Compliance Plan must include, at a minimum:

      a.      Detailed steps for addressing each action required by this Order;

      b.      A mechanism to ensure that the Board is kept apprised of the status of compliance actions; and

      c.      Specific timeframes and deadlines for implementation of the steps described above.

Navient will provide the Compliance Plan to the Bureau upon request.

67.     In the event that Pioneer engages in or resumes federal education loan debt collection activities, Pioneer must create and implement a comprehensive compliance plan designed to ensure that Pioneer's debt collection activities comply with all applicable laws that the Bureau enforces, including Federal consumer financial laws, and the terms of this Order (Compliance Plan). The Compliance Plan must include, at a minimum:

a. Detailed steps for addressing each action required by this Order;

b. A mechanism to ensure that the Board is kept apprised of the status of compliance actions; and

c. Specific timeframes and deadlines for implementation of the steps described above.

Pioneer will provide the Compliance Plan to the Bureau upon request.

### III.
### Role of the Board and Executives

**IT IS FURTHER ORDERED** that:

68. The Board has the ultimate responsibility for ensuring that the Defendants comply with this Order.

69. Defendants' Chief Executive Officers and the Board must review all plans and reports required by this Order, and any submissions to the Bureau prior to such submission.

70. One year after the Effective Date, Defendants must submit to the Supervision Director an accurate written compliance progress report (Compliance Report) that has been approved by the Board, the accuracy of which is sworn to under penalty of perjury, and which, at a minimum:

a. Describes the steps that the Board and Defendants' Chief Executive Officers have taken to reasonably assess whether Defendants are complying with the Compliance Plan and each applicable paragraph and subparagraph of the Order;

b. Describes in detail whether and how Defendants have complied with the Compliance Plan and each applicable paragraph and subparagraph of the Order, including the

manner of verification of such compliance and any corrective actions taken to remedy potential non-compliance with the applicable requirement, paragraph, or subparagraph; and

c.    Attaches a copy of each Order Acknowledgment obtained under Section VIII, unless previously submitted to the Bureau.

71.    The Board and Defendants' Chief Executive Officers must:

a.    Authorize whatever actions are necessary for Defendants to assess whether Defendants are complying with the Compliance Plan and each applicable paragraph and subparagraph of the Order;

b.    Authorize whatever actions, including corrective actions, are necessary for Defendants to fully comply with the Compliance Plan and each applicable paragraph and subparagraph of the Order; and

c.    Require timely reporting by management to the Board and Defendants' Chief Executive Officers on the status of compliance obligations.

## MONETARY PROVISIONS

### IV.
### Order to Pay Redress

**IT IS FURTHER ORDERED** that:

72.    A judgment for monetary relief and redress is entered in favor of the Bureau and against the Defendants, jointly and severally, in the amount of $100 million.

73.   Within 10 days of the Effective Date, Defendants must pay to the Bureau, by wire transfer to the Bureau or to the Bureau's agent, and according to the Bureau's wiring instructions, $100 million in full satisfaction of the judgment as ordered in Paragraph 72 of this Section.

74.   Any funds received by the Bureau in satisfaction of this judgment will be deposited into a fund or funds administered by the Bureau or the Bureau's agent according to applicable statutes and regulations to be used for redress for injured consumers as identified by the Bureau, including, but not limited to, refund of moneys, restitution, damages or other monetary relief, and for any attendant expenses for the administration of any such redress.

75.   If the Bureau determines, in its sole discretion, that redress to consumers is wholly or partially impracticable or otherwise inappropriate, or if funds remain after redress is completed, the Bureau will deposit any remaining funds in the U.S. Treasury. Defendants will have no right to challenge any actions that the Bureau or its representatives may take under this Section.

76.   Payment of redress to any consumer under this Order may not be conditioned on that consumer waiving any right.

## V.
## Order to Pay Civil Money Penalty

**IT IS FURTHER ORDERED** that:

77.   Under section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in the Complaint, Defendants must pay a civil money penalty of $20 million to the Bureau.

78.     Within 10 days of the Effective Date, Defendants must pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

79.     The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

80.     Defendants must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Defendants may not:

   a.   Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

   b.   Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

81.     To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Defendants may not argue that any Defendant is entitled to, nor may any Defendant benefit by, any offset or reduction of any compensatory monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund. If the court in any Related Consumer Action offsets or otherwise reduces the amount of compensatory monetary remedies imposed against any Defendant based on the civil money penalty paid in this action or based on any payment that the Bureau makes from the Civil Penalty Fund, Defendants must, within 30 days after entry of a final order granting such

43

offset or reduction, notify the Bureau, and pay the amount of the offset or reduction to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

## VI.
## Additional Monetary Provisions

**IT IS FURTHER ORDERED** that:

82.   In the event of any default on Defendants' obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of entry of judgment to the date of payment, and will immediately become due and payable.

83.   Defendants relinquish all dominion, control, and title to the funds paid under this Order to the fullest extent permitted by law and no part of the funds may be returned to Defendants.

84.   The facts alleged in the Complaint will be taken as true and be given collateral estoppel effect, without further proof, in any subsequent action by the Bureau to enforce the Order or its rights to any payment or monetary judgment under the Order.

85.   Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Number or Employer Identification Number), which Defendants previously submitted to the Bureau, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

86.   Within 30 days of the entry of a final judgment, order, or settlement in a Related Consumer Action, Defendants must notify the Supervision Director of the final judgment, order, or settlement in writing.

That notification must indicate the amount of redress, if any, that Defendants paid or are required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid.

## COMPLIANCE PROVISIONS
### VII.
### Reporting Requirements

**IT IS FURTHER ORDERED** that:

87.     Defendants must notify the Bureau of any development that may affect compliance obligations arising under this Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Defendants; or a change in any Defendant's name or address. Defendants must provide this notice at least 30 days before the development or as soon as practicable after the learning about the development, but in any case, no longer than 14 days after the development.

88.     Within 7 days of the Effective Date, each Defendant must:

    a.    Designate at least one telephone number and email, physical, and postal address as points of contact that the Bureau may use to communicate with the Defendant;

    b.    Designate at least one telephone number and email, physical, and postal address as points of contact for

consumers with inquiries related to consumer relief under the Order;

c.     Identify all businesses for which the Defendant is the majority owner, or that the Defendant directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

d.     Describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales.

89.     Defendants must report any change in the information required to be submitted under Paragraph 88 at least 30 days before the change or as soon as practicable after learning about the change, whichever is sooner.

## VIII.
## Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED** that:

90.     Within 7 days of the Effective Date, each Defendant must submit to the Bureau an acknowledgment of receipt of this Order, sworn under penalty of perjury.

91.     Within 30 days of the Effective Date, Defendants must deliver a copy of this Order to each of its and its Sub-servicer's board members and executive officers, as well as to any of its and its Sub-servicer's managers who have responsibilities related to the subject matter of the Order.

92.     For 5 years from the Effective Date, Defendants must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section VII, any future board members and executive officers of Defendant or any Sub-servicer, as well as to any of its

and its Sub-servicer's managers who have responsibilities related to the subject matter of the Order.

93.   Defendants must secure a signed and dated statement acknowledging receipt of a copy of this Order, within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

94.   Ninety days from the Effective Date, Defendants must provide the Bureau with a list of all persons and their titles to whom this Order was delivered through that date under Paragraphs 91 and 92 and a copy of all signed and dated statements acknowledging of receipt of this Order under Paragraph 93.

## IX.
## Recordkeeping

**IT IS FURTHER ORDERED** that:

95.   Defendants must retain, for at least 10 years from the Effective Date, the following business records:

  a.   All documents and records necessary to demonstrate full compliance with the Compliance Plan and each provision of this Order, including all submissions to the Bureau.

  b.   Copies of all policies, procedures, guidance documents, or training materials provided to employees, agents, or subcontractors of Navient relating to the handling of, or communications with, borrowers who indicate that they are having difficulty paying their student loans, would like to reduce payments on their student loans (including paying zero), or would like to enroll in Forbearance or an Alternative Repayment Plan, including all scripts,

flowcharts, job aids, and decision trees relating to such interactions or communications;

c.     Copies of all policies and procedures relating to compensation and incentives provided to call agents, Alternative Repayment Specialists, Public Service Specialists, and their respective supervisors;

d.     Copies of all policies and procedures relating to written communications with borrowers about recertifying income and family size for Income-Driven Repayment Plan, including templates of all such written communications;

e.     Copies of all policies and procedures relating to cosigner release, including any disclosures relating to cosigner release;

f.     Copies of all policies and procedures relating to furnishing information about student loan borrowers to Consumer Reporting Agencies;

g.     All consumer complaints and refund requests (whether received directly or indirectly, such as through a third party), and any responses to those complaints or requests; and

h.     All information in Defendants' possession as of the Effective Date relating to the identity and last-known location of any consumer who received a Discretionary Forbearance on at least one loan that was eligible for an Income-Driven Repayment Plan from July 21, 2011 to January 18, 2017 or who received a Total and Permanent

Disability ("TPD") discharge and for whom Special
Comment Code "AL" was reported from January 1, 2012,
to December 31, 2014.

96.    All documents and records must be maintained in their original
electronic format. Data should be maintained in such a way that access,
retrieval, auditing, and production are not hindered.

97.    Defendants must make these materials available to the Bureau
upon the Bureau's request.

## X.
## Notices

**IT IS FURTHER ORDERED** that:

98.    Unless otherwise directed in writing by the Bureau, Defendants
must provide all submissions, requests, communications, or other
documents relating to this Order in writing, with the subject line, "CFPB v.
Navient Corporation et al., Case No. 3:17-CV-00101-RDM," and send them
by email to Enforcement_Compliance@cfpb.gov:

> ATTN: Supervision Director
> Consumer Financial Protection Bureau
> Office of Supervision

## XI.
## Cooperation with the Bureau

**IT IS FURTHER ORDERED** that:

99.    Defendants must cooperate fully to help the Bureau determine
the identity and last-known location of each consumer who received a
Discretionary Forbearance on at least one loan that was eligible for an
Income-Driven Repayment Plan from July 21, 2011 to January 18, 2017 or
who received a TPD discharge and for whom Special Comment Code "AL"

was reported from January 1, 2012, to December 31, 2014, to the extent such information is in Defendants' possession or control. Defendants must provide such information in its possession or control within 14 days of receiving a written request from the Bureau.

100.   Upon request by the Bureau for the last-known contact information for any borrower with a commercial FFELP loan that is held or serviced by any Defendant or Sub-servicer, Defendants must either (a) provide such information, as reflected in Defendants' records, to the Bureau within 10 business days of the Bureau's request or (b) request such information from the Sub-servicer within 10 business days of the Bureau's request and provide such information to the Bureau within 5 business days of Defendants' receipt of such information from the Sub-servicer.

101.   Defendants must remain registered for the Bureau's Company Portal and in connection with responding to consumer complaints and inquiries on the Company Portal, must comply with the timely response requirements set forth in § 1034(b)(1)-(3) of the CFPA, 12 U.S.C. § 5534(b).

## XII.
## Compliance Monitoring

**IT IS FURTHER ORDERED** that:

102.   Within 14 days of receipt of a written request from the Bureau, Defendants must submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; provide sworn testimony; or produce documents.

103.   Defendants must permit Bureau representatives to interview any employee or other person affiliated with Defendants who has agreed to such an interview regarding: (a) this matter; (b) anything related to or

associated with the conduct described in the Complaint; or (c) compliance with this Order. The person interviewed may have counsel present.

104.   Nothing in this Order will limit the Bureau's lawful use of compulsory process, under 12 C.F.R. § 1080.6.

## XIII.
## Transfer or Assignment of Operations

105.   Should any Defendant seek to sell, transfer, assign, or subcontract all or part of its operations that are the subject of this Order or any of its servicing rights or obligations that are the subject of this Order to any entity, including any Sub-servicer, Defendants must, as a condition of the sale, transfer, assignment, or subcontract, include in the written agreement provisions that require the buyer, transferee, assignee or subcontractor to (1) comply with the applicable provisions of this Order; and (2) if the buyer, transferee, assignee, or subcontractor further sells, transfers, assigns, or subcontracts all or part of its operations that are subject of this Order or any of its servicing rights or obligations that are the subject of this Order, include in the written agreement provisions that require such further buyer, transferee, assignee, or subcontractor to comply with the applicable provisions of this Order.

106.   The Bureau releases and discharges Defendants from all potential liability for law violations that the Bureau has or might have asserted based on the allegations of the Complaint, to the extent such practices occurred before the Effective Date and the Bureau knows about them as of the Effective Date. The Bureau may use the practices described in the Complaint in future enforcement actions against Defendants and their affiliates, including, without limitation, to establish a pattern or practice of violations or the continuation of a pattern or practice of

violations or to calculate the amount of any penalty. This release does not preclude or affect any right of the Bureau to determine and ensure compliance with this Order, or to seek penalties for any violations of this Order.

## XIV.
## Retention of Jurisdiction

**IT IS FURTHER ORDERED** that:

107.   All pending motions are hereby denied as moot.

108.   The Court will retain jurisdiction of this matter for the purpose of enforcing this Order.

**IT IS SO ORDERED**.

DATED this 12 day of September, 2024.

_____

United States District Court Judge